## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064-TLS |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE RETENTION AND
APPOINTMENT OF PRIME CLERK LLC AS CLAIMS, NOTICING,
AND SOLICITATION AGENT, EFFECTIVE *NUNC PRO TUNC* TO THE
PETITION DATE AND (II) GRANTING RELATED RELIEF**

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state as follows in support of this application (this "Application"):

### Relief Requested

1.    The Debtors seek entry of an order, pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), appointing Prime Clerk LLC ("Prime Clerk") as claims, noticing and solicitation agent ("Claims and Noticing Agent") in the Debtors' chapter 11 cases effective *nunc pro tunc* to the Petition Date (as defined below).  In support of this Application, the Debtors submit the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

Declaration of Benjamin J. Steele, Vice President of Prime Clerk (the "Steele Declaration"), filed contemporaneously herewith, and respectfully represent as follows:

## Jurisdiction, Venue, and Procedural Background

2.    The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are sections 156(c) of title 28 of the United States Code, 28 U.S.C. §§ 1-4105 (the "Judicial Code") and section 503(b) of the Bankruptcy Code, and 9013-1.C of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

## Background

5.    The Debtors are engaged in the sale of general merchandise including clothing, accessories, electronics, and home furnishings, as well as company operated pharmacy and optical services departments.  The Debtors are headquartered in Green Bay, Wisconsin, and operate approximately 367 stores in 25 states throughout the United States, as well as e-commerce operations.  The Debtors and their non-Debtor subsidiaries generated approximately $2.6 billion in revenue in fiscal year 2017 and currently employ approximately 14,000 people throughout the United States.

2

6.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated.

7.      A description of the Debtors' businesses is more fully set forth in the *Declaration of Russell L. Steinhorst, Chief Executive Officer of Specialty Retail Shops Holding Corp., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.

### Prime Clerk's Qualifications

8.      The Debtors request entry of an order appointing Prime Clerk to serve as the Debtors' Claims and Noticing Agent. This retention is the most effective and efficient manner of noticing the creditors and parties in interest of the filing of these chapter 11 cases and other developments and soliciting and tabulating votes.  In that capacity, Prime Clerk will (i) serve as the noticing agent to mail notices to parties in interest; (ii) provide computerized claims, objection, solicitation, and balloting database services; and (iii) and provide expertise, consultation, and assistance in claim and ballot processing and other administrative services with respect to the Debtors' bankruptcy cases, pursuant to the provisions of the engagement agreement attached hereto as **Exhibit A** (the "Engagement Agreement").

9.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and

3

facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in other districts nationwide. Prime Clerk's active cases include: *In re Parker Drilling Co.*, No. 18-36958 (MI) (Bankr. S.D. Tex.); *In re iHeart, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex.); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex.); *In re Vanguard Nat. Res., LLC,* No. 17-30560 (MI) (Bankr. S.D. Tex.); *In re Ultrapetrol (Bahamas) Ltd.,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *In re General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.); *In re Lily Robotics, Inc.,* No. 17-10426 (KJC) (Bankr. D. Del.); *In re Bonanza Creek Energy, Inc.,* No. 17-10015 (KJC) (Bankr. D. Del.); *In re Violin Memory, Inc.,* No. 16-12782 (LSS) (Bankr. D. Del.); *In re Gracious Home LLC,* No. 16-13500 (MKV) (Bankr. S.D.N.Y.); *In re DirectBuy Holdings, Inc.,* No. 16-12435 (CSS) (Bankr. D. Del.); *In re Am. Apparel, LLC,* No. 16-12551 (BLS) (Bankr. D. Del.); *In re DACCO Transmission Parts (NY), Inc.,* No. 16-13245 (MKV) (Bankr. S.D.N.Y.); *In re Shoreline Energy LLC,* No. 16-35571 (DRJ) (Bankr. S.D. Tex.); *In re Golfsmith Int'l Holdings, Inc.,* No. 16-12033 (LSS) (Bankr. D. Del.); *In re Int'l Shipholding Corp.,* No. 16-12220 (SMB) (Bankr. S.D.N.Y.); *In re Glob. Geophysical Servs, LLC,* No. 16-20306 (DRJ) (Bankr. S.D. Tex.); *In re Hercules Offshore, Inc.,* No. 16-11385 (KJC) (Bankr. D. Del.); *In re Fairway Grp. Holdings Corp.*, No. 16-11241 (MEW) (Bankr. S.D.N.Y.); *In re Aéropostale, Inc.,* No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Pacific Sunwear of Cal., Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bankr. D. Del.); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bankr. W.D. Tex.); *In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL) (Bankr. S.D.N.Y.); *In re Abengoa Bioenergy US Holding, LLC*, No. 16 41161 (KAS) (Bankr. E.D. Mo.);

*In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo.); *In re RCS Capital Corp.*,

No. 16-10223 (MFW) (Bankr. D. Del.); *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del.);

*In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo.); *In re New Gulf Res., LLC*, No. 15-

12566 (BLS) (Bankr. D. Del.); *In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr.

D. Del.).

10.     By appointing Prime Clerk as the Claims and Noticing Agent in these chapter 11

cases, the distribution of notices and the processing of claims will be expedited and the Clerk of

the United States Bankruptcy Court for the District of Nebraska (the "Clerk") will be assisted in

handling the administrative burden of processing what may be an overwhelming number of claims.

The Debtors submit, based on all engagement proposals obtained and reviewed, that Prime Clerk's

rates are competitive and reasonable given Prime Clerk's quality of services and expertise.  The

terms of Prime Clerk's retention are set forth in the Engagement Agreement.

### Services to be Provided

11.     This Application pertains to the work to be performed by Prime Clerk under 11

U.S.C. § 327 and under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c).  Under

the Engagement Agreement, Prime Clerk will perform the following tasks in its role as Claims and

Noticing Agent, as well as all quality control relating thereto:

(a)     Assist the Debtors with the preparation and distribution of all required
notices and documents in these chapter 11 cases in accordance with the
Bankruptcy Code and the Bankruptcy Rules in the form and manner
directed by the Debtors and/or the Court including (i) notice of the
commencement of these chapter 11 cases and the initial meeting of
creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any
claims bar date, (iii) notices of transfers of claims, (iv) notices of objections
to claims and objections to transfers of claims, (v) notices of any hearings
on a disclosure statement and confirmation of the Debtors' plan or plans of
reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the
effective date of any plan and (vii) all other notices, orders, pleadings,
publications and other documents as the Debtors or Court may deem

necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)    Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d)    Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)    For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service and (iv) the date served;

(f)    Maintain any original proofs of claim Prime Clerk receives in a secure area;

(g)    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(h)    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed;

(i)    Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(j)    Assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(k)     Monitor the Court's docket in these chapter 11 cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

(l)     Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements;

(m)     If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Prime Clerk of entry of the order converting the cases;

(n)     Thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Prime Clerk as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(o)     At the close of these chapter 11 cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the applicable Federal Records Center or (B) any other location requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims;

(p)     Assist with, among other things, the Debtors with plan-solicitation services including: (i) balloting, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such, (ii) distribution of applicable solicitation materials, (iii) tabulation and calculation of votes, (iv) determining with respect to each ballot cast, its timeliness and its compliance with the Bankruptcy Code, Bankruptcy Rules, and procedures ordered by this Court; (v) preparing an official ballot certification and testifying, if necessary, in support of the ballot tabulation results; and (vi) in connection with the foregoing services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

(q)     Assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

(r)     Provide a confidential data room, if requested;

(s)     Manage and coordinate any distributions pursuant to a chapter 11 plan; and

(t)     Provide such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement that may be requested from time to time by the Debtors, the Court or the Clerk's Office.

12.     The Clerk of the Court shall maintain its own register, which shall be the official claims register.  Parties filing proofs of claim or interest shall file claims only with the Clerk of the Court.

13.     Prime Clerk will follow the notice, claims, and solicitation procedures that conform to the guidelines promulgated by the Clerk, the Judicial Conference of the United States, and as may be entered by the Court's order.

**Professional Compensation**

14.     The Debtors respectfully request that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business pursuant to the Engagement Agreement without further application to or order of the Court.  Prime Clerk agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

15.     Prior to the Petition Date, the Debtors provided Prime Clerk an advance in the amount of $40,000.  Prime Clerk seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

16.    Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Prime Clerk and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Retention Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these chapter 11 cases.

### Indemnification

17.    Under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Prime Clerk and its members, officers, employees, representatives and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Retention Order.  The Debtors believe that such an indemnification obligation is customary, reasonable and necessary to retain the services of the Claims and Noticing Agent in these chapter 11 cases.

### Disinterestedness

18.    Prime Clerk has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration, Prime Clerk has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

19.    To the best of the Debtors' knowledge, Prime Clerk is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), as Prime Clerk represents in the Steele Declaration, among other things, that:

9

(a) Prime Clerk, its members and employees are not and were not, within two years before the date of the filing of these chapter 11 cases, creditors, equity security holders, insiders or employees of the Debtors;

(b) Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c) By accepting employment in these chapter 11 cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d) In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e) Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f) In its capacity as Claims and Noticing Agent in these chapter 11 cases, Prime Clerk will not intentionally misrepresent any fact to any person.

(g) Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(h) Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(i) None of the services provided by Prime Clerk as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

20.    Prime Clerk believes that it does not have any relationships with creditors or parties in interest that would present a disqualifying conflict of interest.  Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

**Basis for Relief**

21.     Section 156(c) of title 28 of the United States Code, which governs the staffing and

expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the

office of the Clerk for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices, dockets,
> calendars, and other administrative information to parties in cases
> filed under the provisions of title 11, United States Code, where the
> costs of such facilities or services are paid for out of the assets of the
> estate and are not charged to the United States.  The utilization of
> such facilities or services shall be subject to such conditions and
> limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

22.     Accordingly, section 156(c) of title 28 of the Judicial Code empowers the Court to

utilize outside agents and facilities for notice and claims purposes, provided that the Debtors'

estates pay the cost of such services. Therefore, for all of the foregoing reasons, the Debtors believe

that the retention of Prime Clerk as the Claims and Noticing Agent in these chapter 11 cases is

necessary and in the best interests of the Debtors, their estates, and their creditors. Furthermore,

the Debtors respectfully submit that the fees and expenses that would be incurred by Prime Clerk

under the proposed engagement would be administrative in nature and, therefore, should not be

subject to standard fee application procedures of professionals.

23.     Courts in the Eighth Circuit and other jurisdictions have approved similar relief in

other chapter 11 cases. *See, e.g.*, *In re Gordmans Stores, Inc.*, No. 17-80304 (TLS) (Bankr. D.

Neb., Mar. 13, 2017); *In re Noranda Aluminum, Inc.*, No. 16-10083 (Bankr. E.D. Mo. Feb. 12,

2016); *In re Arch Coal, Inc.*, No. 16-40120 (Bankr. E.D. Mo. Jan. 15, 2016); *In re Bakers Footwear*

*Grp., Inc.*, No. 15-33896 (Bankr. E.D. Mo. Oct. 9, 2012); *In re Falcon Prods., Inc.*, No. 05-41108

(Bankr. E.D. Mo. March 10, 2005); *see also In re James River Coal Company*, No. 14-31848

(KRH) (Bankr. E.D. Va. Apr. 19, 2014); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495

(KRH) (Bankr. E.D. Va. Nov. 13, 2012); *In re Workflow Mgmt.*, No. 10-74617 (SCS) (Bankr. E.D.

Va. Oct. 8, 2010); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010);

*In re Greenbrier Hotel Corp.*, No. 09-31703 (KRH) (Bankr. E.D. Va. Mar. 20, 2009).

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

24.     To implement the foregoing successfully, the Debtors seek a waiver of the notice

requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use,

sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

25.     The Debtors have provided notice of this Motion to the following parties or their

respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) the holders

of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents

under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility;

(e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service;

(g) the United States Securities and Exchange Commission; (h) the office of the attorneys general

for the states in which the Debtors operate; (i) the United States Attorney's Office for the District

of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need

be given.

## No Prior Request

26.     No prior request for the relief sought in this Application has been made to this or

any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: January 16, 2019

/s/

Russell L. Steinhorst
Chief Executive Officer
Specialty Retail Shops Holding Corp.

Dated:  January 16, 2019 /s/ *Michael T. Eversden*
 Omaha, Nebraska James J. Niemeier (NE Bar No. 18838)
  Michael T. Eversden (NE Bar No. 21941)
  Lauren R. Goodman (NE Bar No. 24645)
  **MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
  First National Tower, Suite 3700
  1601 Dodge Street
  Omaha, Nebraska 68102
  Telephone: (402) 341-3070
  Facsimile: (402) 341-0216
  Email: jniemeier@mcgrathnorth.com
   meversden@mcgrathnorth.com
   lgoodman@mcgrathnorth.com

  - and -

  James H.M. Sprayregen, P.C.
  Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
  Travis M. Bayer (*pro hac vice* pending)
  Jamie Netznik (*pro hac vice* pending)
  **KIRKLAND & ELLIS LLP**
  **KIRKLAND & ELLIS INTERNATIONAL LLP**
  300 North LaSalle
  Chicago, Illinois 60654
  Telephone: (312) 862-2000
  Facsimile: (312) 862-2200
  Email: james.sprayregen@kirkland.com
   patrick.nash@kirkland.com
   travis.bayer@kirkland.com
   jamie.netznik@kirkland.com

  - and -

  Steven Serajeddini (*pro hac vice* pending)
  Daniel Rudewicz (*pro hac vice* pending)
  **KIRKLAND & ELLIS LLP**
  **KIRKLAND & ELLIS INTERNATIONAL LLP**
  601 Lexington Avenue
  New York, New York 10022
  Telephone: (212) 446-4800
  Facsimile: (212) 446-4900
  Email: steven.serajeddini@kirkland.com
   daniel.rudewicz@kirkland.com

  *Proposed Co-Counsel to the Debtors*

**<u>Exhibit A</u>**

**Engagement Agreement**



### Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of November 27, 2018 between Prime Clerk LLC ("*Prime Clerk*") and Specialty Retail Shops Holding Corp. (together with its affiliates and subsidiaries, the "*Company*").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "*Services*").

   (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "*Company Parties*") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice, however, the Services provided hereunder shall comply with applicable bankruptcy laws and regulations.

2. **Rates, Expenses and Payment**

   (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "*Rate Structure*"). The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

   (c) Prime Clerk will bill the Company monthly. All invoices shall be due and payable within thirty (30) days of receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder.

   (d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

**Prime Clerk**

invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $40,000.  Prime Clerk may use such advance against unpaid fees and expenses hereunder.  Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  Prime Clerk shall provide 30 days' notice to the Company of such increases.

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

**5.  Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs,

2

**Prime Clerk**

systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

6.  <u>Bank Accounts</u>

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

7.  <u>Term and Termination</u>

    (a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the receipt of invoice; provided that the Bankruptcy Court does not prevent or prohibit such payment or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

    (b)  If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

    (c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

    (d)  If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8.  <u>No Representations or Warranties</u>

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

9.  <u>Indemnification</u>

    (a)  To the fullest extent permitted by applicable law, Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates,

**Prime Clerk**

consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, reasonable counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)  Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)  The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

(d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein (including the indemnification obligations set forth above), Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  In no event shall either party be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a)  The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b)  The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

(c)  Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company

**Prime Clerk**

        30 days' notice.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

   (d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that it and any of its subsidiaries shall not directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. Integration; Severability; Modifications; Assignment

   (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

   (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

**Prime Clerk**

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Prime Clerk:    Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, NY 10022
Attn: Shai Waisman
Tel: (212) 257-5450
Email: swaisman@primeclerk.com

If to the Company:    Specialty Retail Shops Holding Corp.
700 Pilgrim Way
Green Bay, WI 54304
Attn: Russ Steinhorst
Tel: (920_ 429-2211
Email: russ.steinhorst@shopko.com

With a copy to:    Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn: Jamie R. Netznik
Tel: (312) 862-2307
Email: jamie.netznik@kirkland.com

*[Signature page follows]*

6

**Prime Clerk**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

**By:**   Shira D. Weiner
**Title:**   General Counsel

**Specialty Retail Shops Holding Corp.**

By:
Title:

# Rates

### Claim and Noticing Rates[1]

| Title | Hourly Rate |
|-------|-------------|
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $45 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $95 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports.  Prime Clerk's Senior Consultants average over five years of experience. | $65 - $165 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $195 |
| **Chief Operating Officer and Executive Vice President**<br>Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | No charge |

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours.  Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.



### Solicitation, Balloting and Tabulation Rates[2]

| | |
|---|---|
| **Solicitation Consultant** | $190 |

The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience.

| | |
|---|---|
| **Director of Solicitation** | $210 |

The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney.

### Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page[3] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | No charge |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

### Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

---

[2] Certain fees may be applicable to noticing, solicitation and corporate action events involving holders of public securities.

[3] Volume discounts will be applied to large mailings.



### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

### On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

### Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

### Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

