## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19- 80064 -TLS |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION
## AND POSTPETITION TAXES AND FEES AND (II) GRANTING RELATED RELIEF

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state

as follows in support of this motion (this "Motion"):

### Relief Requested

1.     The Debtors seek entry of an order, authorizing the Debtors to:  (a) remit and pay

certain taxes and fees (as defined below) that accrued prior to the Petition Date; and (b) granting

related relief.[2]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]     The relief sought herein would be subject to:  (a) any order approving the Debtors' use of cash collateral and/or any postpetition financing facilities (the "DIP Order"), the documentation in respect of any such postpetition financing facilities and/or use of cash collateral (the "DIP Documents"), the budget governing any such postpetition financing and/or use of cash collateral (the "DIP Budget"); and (b) any and all claims, liens, security interests, and priorities granted in connection with such postpetition financing facilities and/or use of cash collateral (the "DIP Claims").

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Rule 9013-1 of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

## Background

5.      The Debtors are engaged in the sale of general merchandise including clothing, accessories, electronics, and home furnishings, as well as company operated pharmacy and optical services departments.  The Debtors are headquartered in Green Bay, Wisconsin, and operate approximately 367 stores in 25 states throughout the United States, as well as e-commerce operations.  The Debtors and their non-Debtor subsidiaries generated approximately $2.6 billion in revenue in fiscal year 2017 and currently employ approximately 14,000 people throughout the United States.

6.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors have

requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated.

7.    A description of the Debtors' businesses is more fully set forth in the *Declaration of Russell L. Steinhorst, Chief Executive Officer of Specialty Retail Shops Holding Corp., in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith.

### The Debtor's Taxes and Fees Obligations

8.    The Debtors collect, withhold, and incur sales, use, withholding, income, franchise, and property taxes, as well as other business and regulatory fees (collectively, the "<u>Taxes and Fees</u>").[3]  The Debtors remit the Taxes and Fees to various federal, state, and local governments, including taxing and licensing authorities, identified in a schedule attached hereto as **Exhibit A**[4] (collectively, the "<u>Authorities</u>").  Taxes and Fees are remitted and paid by the Debtors through checks and electronic funds transfers that are processed through their banks and other financial institutions.  The Debtors estimate that approximately $31.6 million in Taxes and Fees are outstanding as of the Petition Date, in addition to other amounts that will become due and owing to the Authorities after the Petition Date in the ordinary course.

---

[3]    By this Motion, the Debtors do not seek the authority to collect and remit state and federal employee-related taxes and withholdings.  Such relief is instead requested in the *Debtors' Motion for Entry of An Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.

[4]    Although **Exhibit A** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit A**.  By this Motion, the Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit A**.  In the event the Debtors pay any Authority not included on **Exhibit A**, the Debtors will file a notice with the Court listing such Authority within 15 days of such payment.

9.      The Debtors pay the Taxes and Fees to the Authorities on a periodic basis, remitting them monthly, quarterly, semi-annually, or annually depending on the nature and incurrence of a particular Tax or Fee.  The Debtors seek authority pursuant to this Motion to make such payments where:  (a) Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees accrued or were incurred prepetition but were not paid prepetition or were paid in an amount less than actually owed; (c) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities; or (d) Taxes and Fees incurred for prepetition periods may become due after the commencement of these chapter 11 cases.

10.      In addition, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates.

11.      The Taxes and Fees are summarized as follows:

| Category | Description | Approximate Amount Accrued as of Petition Date | Approximate Amount Due During the Next 21 Days |
|---|---|---|---|
| **Sales and Use Taxes** | Taxes imposed on the sale and purchase of certain goods and services | $11,500,000 | $11,500,000 |
| **Income Taxes** | Taxes imposed on the Debtors' income in the ordinary course of operating their businesses | $0 | $0 |
| **Franchise Taxes** | Taxes required to conduct business in the ordinary course | $0 | $0 |
| **Property Taxes** | Taxes and obligations related to real and personal property holdings | $18,800,000 | $3,800.000[5] |
| **Miscellaneous Taxes and Fees** | The Debtors remit other taxes and fees required to operate their business in certain states, including business and occupation taxes and commercial activity taxes | $159,000 | $159,000 |

---

[5]   This estimate represents the sum of all property tax payments which are due and payable through February 1, 2019.

4

| Category | Description | Approximate Amount Accrued as of Petition Date | Approximate Amount Due During the Next 21 Days |
|---|---|---|---|
| **Audits** | Investigations by the Authorities with respect to the above categories, which may result in the imposition of Assessments (as defined herein), together with interest and possible fines and penalties to become payable | $1,100,000[6] | $0 |
| **Total** | | $31,559,000 | $15,459,000 |

II.    **Sales and Use Taxes**.

12.    The Debtors incur, collect, and remit sales and use taxes to the Authorities in connection with the sale and purchase of goods and services (collectively, the "Sales and Use Taxes").    Additionally, the Debtors purchase a variety of equipment, materials, supplies, and services necessary for the operation of their business from vendors who may not operate or be registered to collect tax in the state where the goods are to be delivered or the services are to be performed and, therefore, these vendors do not charge the Debtors sales tax in connection with such purchases of goods or services.    In these cases, applicable law generally requires the Debtors to subsequently pay use taxes on such purchases to the applicable Authorities.    The Debtors generally remit Sales and Use Taxes on a monthly basis.

13.    In 2017, the Debtors paid approximately $106.3 million in the aggregate in Sales and Use Taxes to the Authorities, excluding sales tax paid directly to vendors.    As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $ 11.7 million in

---

[6]    This estimate includes the Assessments that the applicable taxing authorities have asserted may be charged against the Debtors.    To the extent the Assessments exceed $1,100,000, the Debtors reserve the right to seek further relief from the Court to pay additional prepetition Taxes and Fees.    Nothing in the above table, this Motion, or any related order constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment.    The Debtors expressly reserve all rights with respect to any Audit.    Furthermore, the Debtors reserve the right to contest any Assessment, if any, claimed to be due as a result of the Audits.

sales and use taxes that have not been remitted to the relevant Authorities, $11.7 million of which are currently payable or will become payable during the next 21 days.

### III.    Income and Franchise Taxes.[7]

14.    Historically, in the ordinary course of operating their businesses, the Debtors have incurred state and federal income taxes, including some amounts on account of foreign income taxes (collectively, the "Income Taxes").  The Debtors pay income taxes on a quarterly basis. In addition, the Debtors are required to pay various state franchise taxes independent of income taxes in certain jurisdictions in order to continue conducting their businesses pursuant to state laws (collectively, the "Franchise Taxes" and, together with the Income Taxes, the "Income and Franchise Taxes").  The Debtors typically pay the Franchise Taxes alongside state income tax, although in certain jurisdictions, Franchise Taxes are paid separately on a quarterly or annual basis. In 2017, the Debtors paid approximately $157,000 in Income and Franchise Taxes to the applicable Authorities.  As of the Petition Date, the Debtors estimate that do not owe any amounts to the relevant Authorities on account of prepetition Income and Franchise Taxes, nor will any such amounts become payable during the next 21 days.[8]

### IV.    Property Taxes.

15.    State and local laws in the jurisdictions where the Debtors operate generally grant Authorities the power to levy property taxes against the Debtors' real and personal property (collectively, the "Property Taxes").  To avoid the imposition of statutory liens on their real and personal property, the Debtors typically pay property taxes in the ordinary course of business on

---

[7]    The Debtors reserve the right to make deferred payments on account of the Income and Franchise Taxes at the end of these chapter 11 cases pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

[8]    In certain jurisdictions, franchise taxes are included on the Debtors' state income tax return.  For the avoidance of doubt, the Debtors are seeking authority to continue remitting franchise taxes which are included on income tax returns in the ordinary course of business and consistent with past practices.

an annual or semi-annual basis, depending on the Authority.  In 2017, the Debtors paid approximately $23 million in Property Taxes to the applicable Authorities.  The Debtors estimate that they have accrued approximately $18.8 million in property taxes as of the Petition Date, of which approximately $3.8 million is currently payable or will become payable during the next 21 days.

**V.    Miscellaneous Taxes and Fees**.

16.    The Debtors incur a variety of taxes and fees required to operate their businesses in certain states and foreign jurisdictions, including business and occupation taxes, business licensing and annual report fees, commercial activity taxes, fees related to liquor sales, and gross margin taxes.  The Debtors remit these taxes and fees to the relevant Authorities on a monthly, quarterly, or annual basis, depending on the Authority.[9]  In general, the Debtors pay to the appropriate Authorities such fees as the Debtors deem reasonably appropriate for the operation of their businesses.

17.    In 2017, the aggregate amount of miscellaneous taxes and fees that the Debtors paid was approximately $617,000.  As of the Petition Date, the Debtors estimate that they owe approximately $159,000 to the relevant Authorities on account of business taxes and fees, of which approximately $159,000 are currently payable or will become payable during the next 21 days.

**VI.    Audits**.

18.    The Debtors are currently subject to ongoing audit investigations in several jurisdictions and may be subject to further investigations on account of tax returns and/or obligations in prior years (collectively, the "Audits").  The Audits may result in additional

---

[9]    Any fees related to liquor sales are likely claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code, but the Debtors seek permission here to pay those fees out of an abundance of caution.

prepetition Taxes and Fees being assessed against the Debtors (such additional Taxes and Fees, collectively, the "Assessments").  The Debtors estimate that, pursuant to the Audits, the Debtors may be subject to $1.1 million in Assessments, including work paper, interest and other costs, pursuant to the Audits.[10]  This estimate, however, is preliminary and subject to change and further investigations may occur in the ordinary course.

### Basis for Relief

19.    The Debtors believe that any failure to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways:  (a) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the restructuring process; (b) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (c) certain of the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key employees from their duties related to the Debtors' restructuring.  In addition, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates. Moreover, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both.

I.    **Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates**.

20.    Many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors.  *See, e.g.*, I.R.C. § 7501 (stating that certain taxes and fees are held in trust).  As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code.  *See, e.g.*, *Begier v. Internal Revenue*

---

[10]    Nothing in this Motion or any related order constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment.  The Debtors expressly reserve all rights with respect to any Audit.  Furthermore, the Debtors reserve the right to contest any Assessment, if any, claimed to be due as a result of the Audits.

*Serv.*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *In re First Pay, Inc.*, 773 F.3d 583, 590 (4th Cir. 2014) (same); *DuCharmes & Co. v. Mich.* (*In re DuCharmes & Co.*), 852 F.2d 194 (6th Cir. 1988) (per curiam) (same); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dept. of Revenue* (*In re Rosenow*), 715 F.2d 277, 279–82 (7th Cir. 1983) (same); *W. Surety Co. v. Waite* (*In re Waite*), 698 F.2d 1177, 1179 (11th Cir. 1983) (same).  To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d) of the Bankruptcy Code.  *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104–05 (Bankr. E.D. Pa. 1987).  Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[11]

## II.    Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment under the Bankruptcy Code.

21.    Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment before general unsecured claims.  *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment).  Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties if such amounts are not paid.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").  Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy

---

[11]    For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.

III.    **Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment**.

22.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to pay certain prepetition claims.  Courts generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re Total Hockey, Inc.*, No. 16-44815 (CER) (Bankr. E.D. Mo. July 8, 2016) (authorizing debtor to pay certain prepetition taxes); *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. Apr. 15, 2016) (same); *In re Arch Coal, Inc*., No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 14, 2016); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing debtor to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authorizing debtor to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as requested herein.

23.    Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor

10

to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *CoServ*, 273 B.R. at 497.

24.     In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See, e.g.*, *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's organization").  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176.

25.     These standards are satisfied here.  The Debtors' ability to pay the Taxes and Fees is critical to the efficient and value-maximizing administration of the Debtors' estates.  If certain Taxes and Fees remain unpaid, certain Governmental Authorities may seek to impose penalties on the Debtors' directors, officers, or employees, thereby distracting them from the administration of the Debtors' chapter 11 cases. *See, e.g.*, Neb. Rev. Stat. § 77-2713(1) ("Any person required . . . to pay over any tax . . . [who fails to pay such tax] shall . . . be guilty of a Class IV felony.").  Any

collection action on account of such penalties, and any ensuing liability, would distract the Debtors

and their personnel to the detriment of all parties in interest.  The dedicated and active participation

of the Debtors' officers and employees is essential to the orderly administration of these chapter

11 cases and maximizing the value of the Debtors' estates for the benefit of their stakeholders.

26.     Further, the Debtors' liability to pay the Taxes and Fees may ultimately result in

increased tax liability for the Debtors if interest and penalties accrue on the tax claims.  Many of

the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the

Bankruptcy Code.  As priority claims, these obligations must be paid in full before any general

unsecured obligations of the Debtors may be satisfied.  The Debtors' failure to pay the prepetition

Taxes and Fees as they come due thus may ultimately increase the amount of priority claims held

by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured

creditors and other stakeholders. *See* 11 U.S.C. § 507(a)(8)(C), (G).  Accordingly, the Court should

grant the Debtors authority to pay, in their sole discretion, the prepetition Taxes and Fees as

provided herein.

27.     Courts in this circuit and other jurisdictions have often authorized payment of

prepetition taxes under section 363(b) of the Bankruptcy Code. *See, e.g.*, *In re Gordmans Stores,

Inc.*, No. 17-80304 (TLS) (Bankr. D. Neb. Mar. 14, 2017) (authorizing debtors to pay prepetition

taxes); *In re Total Hockey, Inc.*, No. 16-44815 (CER) (Bankr. E.D. Mo. July 8, 2016) (same); *In

re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. Apr. 15, 2016) (same); *In re

Arch Coal, Inc*., No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 14, 2016) (same); *see also In re*

*Breitburn Energy Partners LP*, No. 16-11390 (SMB) (Bankr. S.D.N.Y. June 15, 2016) (same); *In re Aeropostale, Inc.*, No 16-11275 (SHL) (Bankr. S.D.N.Y. June 3, 2016) (same).[12]

**IV.     Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

28.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing and cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or electronic transfer requests as relating to an authorized payment in respect of the Taxes and Fees. Accordingly, the Debtors believe that checks or electronic transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or electronic transfer requests in respect of the relief requested in this Motion.

**The Requirements of Bankruptcy Rule 6003 Are Satisfied**

29.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to pay the Taxes and Fees that in the ordinary course of business as well as granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases.  As supported by the First Day Declaration, failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For

---

[12]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

30.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

31.    Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim, (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Notice**

32.      The Debtors have provided notice of this Motion to the following parties or their

respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) the holders

of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents

under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility;

(e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service;

(g) the United States Securities and Exchange Commission; (h) the office of the attorneys general

for the states in which the Debtors operate; (i) the United States Attorney's Office for the District

of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need

be given.

**No Prior Request**

33.      No prior request for the relief sought in this Motion has been made to this or any

other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an Order granting the

relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

Dated:  January 16, 2019
  Omaha, Nebraska

/s/ *Michael T. Eversden*

James J. Niemeier (NE Bar No. 18838)
Michael T. Eversden (NE Bar No. 21941)
Lauren R. Goodman (NE Bar No. 24645)
**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:     (402) 341-3070
Facsimile:      (402) 341-0216
Email:           jniemeier@mcgrathnorth.com
                      meversden@mcgrathnorth.com
                      lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Travis M. Bayer (*pro hac vice* pending)
Jamie Netznik (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           james.sprayregen@kirkland.com
                      patrick.nash@kirkland.com
                      travis.bayer@kirkland.com
                      jamie.netznik@kirkland.com

- and -

Steven Serajeddini (*pro hac vice* pending)
Daniel Rudewicz (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           steven.serajeddini@kirkland.com
                      daniel.rudewicz@kirkland.com

*Proposed Co-Counsel to the Debtors*

16

## Exhibit A

## Authorities

| Tax Authority Name | Type |
|---|---|
| CITY OF GRAND ISLAND | Business & Occupation |
| CITY OF LINCOLN, NE | Business & Occupation |
| CITY OF LACEY, WA | Business & Occupation |
| Ohio Tax Commission | Commercial Activity Tax |
| DELAWARE SECRETARY OF STATE | Franchise |
| CA State Board of Equalization | Other |
| MATTRESS RECYCLING COUNCIL | Other |
| CO Dept of Revenue | Other |
| IRS - DEPARTMENT OF TREASURY | Other |
| ID State Tax Commision | Other |
| IN Dept of Revenue | Other |
| KS Dept of Revenue | Other |
| KY State Treasurer | Other |
| MI Dept of Treasury | Other |
| MN Dept of Revenue | Other |
| ND Office of State Tax Commissioner | Other |
| NE Dept of Revenue | Other |
| NM Taxation & Revenue Dept | Other |
| Nevada Department of Revenue | Other |
| OH Business Gateway | Other |
| OK Tax Commission | Other |
| OR Depart of Revunue | Other |
| SD Dept of Revenue | Other |
| TN Dept of Revenue | Other |
| TX State Controller | Other |
| UT State Tax Commissioner | Other |
| PCA PRODUCTS STEWARDSHIP, INC | Other |
| WI Dept of Revenue | Other |
| WYOMING DEPARTMENT OF REVENUE | Other |
| AL Depart of Revenue | Sales & Use |
| AZ Dept of Revenue | Sales & Use |
| CA State Board of Equalization | Sales & Use |
| City oF Whitefish | Sales & Use |
| CO Dept of Revenue | Sales & Use |
| GA Depart of Revenue | Sales & Use |
| ID State Tax Commision | Sales & Use |
| IL DEPARTMENT OF REVENUE | Sales & Use |
| IN Dept of Revenue | Sales & Use |
| IOWA DEPARTMENT OF REVENUE | Sales & Use |
| KS Dept of Revenue | Sales & Use |
| KY State Treasurer | Sales & Use |
| LA Depart of Revenue | Sales & Use |
| MD Depart of Revenue | Sales & Use |

| Tax Authority Name | Type |
| --- | --- |
| ME Depart of Revenue | Sales & Use |
| MI Dept of Treasury | Sales & Use |
| MISSOURI DEPARTMENT OF REVENUE | Sales & Use |
| MN Dept of Revenue | Sales & Use |
| NC Depart of Revenue | Sales & Use |
| ND Office of State Tax Commissioner | Sales & Use |
| NE Dept of Revenue | Sales & Use |
| NJ Depart of Revenue | Sales & Use |
| NM Taxation & Revenue Dept | Sales & Use |
| NV Dept of Taxation | Sales & Use |
| OH Business Gateway | Sales & Use |
| OK Tax Commission | Sales & Use |
| PA Depart of Revenue | Sales & Use |
| RI Depart of Revenue | Sales & Use |
| SD Dept of Revenue | Sales & Use |
| TN Dept of Revenue | Sales & Use |
| TX State Controller | Sales & Use |
| UT State Tax Commissioner | Sales & Use |
| WA Dept of Revenue | Sales & Use |
| WI Dept of Revenue | Sales & Use |
| WV Depart of Revenue | Sales & Use |
| WYOMING DEPARTMENT OF REVENUE | Sales & Use |
| ARIZONA - Personal Property | Property |
| ARIZONA - Real Estate | Property |
| CALIFORNIA - Real Estate | Property |
| CALIFORNIA - Personal Property | Property |
| COLORADO - Personal Property | Property |
| COLORADO - Real Estateal Estate | Property |
| IOWA - Real Estate | Property |
| IDAHO - Personal Property | Property |
| IDAHO - Real Estate | Property |
| ILLINOIS - Real Estate | Property |
| INDIANA - Real Estate | Property |
| INDIANA - Personal Property | Property |
| KANSAS - Real Estate | Property |
| KANSAS - Personal Property | Property |
| KENTUCKY - Real Estate | Property |
| KENTUCKY - Personal Property | Property |
| MICHIGAN - Real Estate | Property |
| MICHIGAN - Personal Property | Property |
| MINNESOTA - Real Estate | Property |
| MISSOURI - Personal Property | Property |
| MISSOURI - Real Estate | Property |
| MONTANA - Real Estate | Property |
| MONTANA - Personal Property | Property |
| NORTH DAKOTA - Real Estate | Property |
| NEBRASKA - Personal Property | Property |

| Tax Authority Name | Type |
|---|---|
| NEBRASKA - Real Estate | Property |
| NEW MEXICO - Personal Property | Property |
| NEW MEXICO - Real Estate | Property |
| NEVADA - Real Estate | Property |
| NEVADA - Personal Property | Property |
| OHIO - Real Estate | Property |
| OKLAHOMA - Real Estate | Property |
| OKLAHOMA - Personal Property | Property |
| OREGON - Real Estate | Property |
| OREGON - Personal Property | Property |
| SOUTH DAKOTA - Real Estate | Property |
| TEXAS - Personal Property | Property |
| TEXAS - Real Estate | Property |
| UTAH - Personal Property | Property |
| UTAH - Real Estate | Property |
| WASHINGTON - Real Estate | Property |
| WASHINGTON - Personal Property | Property |
| WISCONSIN - Personal Property | Property |
| WISCONSIN - Real Estate | Property |
| WYOMING - Personal Property | Property |
| WYOMING - Real Estate | Property |
| Arizona | Income |
| California | Income |
| Colorado | Income |
| Federal | Income |
| Idaho | Income |
| Illinois | Income |
| Indiana | Income |
| Iowa | Income |
| Kansas | Income |
| Kentucky | Income |
| Michigan - CIT | Income |
| Minnesota | Income |
| Missouri | Income |
| Montana | Income |
| Nebraska | Income |
| New Mexico | Income |
| North Dakota | Income |
| Oklahoma | Income |
| Oregon | Income |
| Tennessee | Income |
| Texas | Income |
| Utah | Income |
| Wisconsin | Income |
| Marion, KY | Income |
| Crittenden County, KY | Income |
| Minerva, OH | Income |

| Tax Authority Name | Type |
| --- | --- |
| Woodsfield, OH | Income |
| Michigan | Income |