## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064-TLS |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### DEBTORS' MOTION FOR ENTRY OF
### AN ORDER (I) APPROVING THE ADEQUACY
### OF THE DISCLOSURE STATEMENT, (II) APPROVING THE
### SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO
### CONFIRMATION OF THE DEBTORS' PROPOSED JOINT CHAPTER
### 11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES
### IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES
### WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.     The Debtors seek entry of an order, granting the following relief and such other relief as is just and proper:

     a.    ***Disclosure Statement.***  Approving the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Specialty Retail Shops Holding Corp and Its Debtor Affiliates*, substantially in the form

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); ShopKo Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin, 54304.

attached as **Schedule 1** (the "Disclosure Statement")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b.   ***Solicitation and Voting Procedures.***   Approving procedures for: (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "Solicitation and Voting Procedures"), substantially in the form attached as **Schedule 2**;

c.   ***Ballots.***   Approving each of the Class 2, Class 3, Class 4, Class 5, Class 6, and Class 7 ballots (together, the "Ballots"), substantially in the form attached as **Schedule 3**, **Schedule 4**, **Schedule 5**, and **Schedule 6**, **Schedule 7**, and **Schedule 8**, respectively;

d.   ***Solicitation Packages.***   Approving the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages") that will be sent to, among others, Holders of Claims entitled to vote to accept or reject the Plan, in compliance with Bankruptcy Rules 3017(d) and 2002(b);

e.   ***Cover Letter.***   Approving the form of letter (the "Cover Letter") that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan urging such parties to vote in favor of the Plan, substantially in the form attached as **Schedule 12**;

f.   ***Confirmation Hearing Notice.***   Approving the form and manner of notice of the hearing to be held by the Court to consider Confirmation of the Plan (the "Confirmation Hearing," and the notice thereof, the "Confirmation Hearing Notice") pursuant to section 1129 of the Bankruptcy Code, substantially in the form attached as **Schedule 13**;

g.   ***Plan Supplement Notice.***   Approving the notice related to the filing of the Plan Supplement, substantially in the form attached to the as **Schedule 14** (the "Plan Supplement Notice");

h.   ***Non-Voting Status Notices.***   Approving: (i) the form of notice applicable to Holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; (ii) the form of notice applicable to Holders of Interests that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code,

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and Its Debtor Affiliates*, filed contemporaneously herewith (as amended, supplemented, or modified from time to time, the "Plan").

conclusively deemed to reject the Plan; and (iii) the form of notice applicable to Holders of Claims that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim (each, a "<u>Non-Voting Status Notice</u>"), substantially in the forms attached attached as **Schedule 9**, **Schedule 10**, and **Schedule 11**, respectively;

i.  ***Assumption and Rejection Notices.*** Approving the form of notices to counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan, (the "<u>Assumption Notice</u>" and the "<u>Rejection Notice</u>," respectively) substantially in the forms attached as **Schedule 15** and **Schedule 16**, respectively; and

j.  ***Confirmation Dates.*** Establishing the following dates and deadlines with respect to Confirmation, subject to modification as necessary (the "<u>Confirmation Timeline</u>").

| Event | Date | Description |
|---|---|---|
| Disclosure Statement Objection Deadline | February 15, 2019, at 4:00 p.m., prevailing Central Time | Deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties (the "<u>Disclosure Statement Objection Deadline</u>") |
| Disclosure Statement Hearing Date | February 22, 2019 at 11:00 a.m., prevailing Central Time | Date for the hearing to consider the approval of the Debtors' Disclosure Statement (the "<u>Disclosure Statement Hearing Date</u>") |
| Voting Record Date | February 22, 2019 | Date for determining (i) which Holders of Claims in the Voting Classes, as defined herein, are entitled to vote to accept or reject the Plan and (ii) whether Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim or Interest (the "<u>Voting Record Date</u>") |

| Event | Date | Description |
|---|---|---|
| Solicitation Deadline | Three business days following entry of the order approving the Disclosure Statement (expected to be February 25, 2019) | Deadline for distributing Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan (the "Solicitation Deadline") |
| Publication Deadline | February 28, 2019 | Last date by which the Debtors will submit the Confirmation Hearing Notice in a format modified for publication (the "Publication Notice") |
| Voting Deadline | March 25, 2019, at 4:00 p.m., prevailing Central Time | Deadline by which *all* Ballots must be properly executed, completed, and delivered so that they are *actually received* (the "Voting Deadline") by Prime Clerk LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent")[3] |
| Plan Objection Deadline | March 25, 2019, at 4:00 p.m., prevailing Central Time | Deadline by which objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline") |
| Deadline to File Confirmation Brief | April 1, 2019, at 12:00 p.m., prevailing Central Time | Date by which the Debtors shall file their brief in support of Confirmation (the "Confirmation Brief Deadline") |
| Plan Objection Response Deadline | April 1, 2019, at 12:00 p.m., prevailing Central Time | Deadline by which responses to objections to the Plan must be filed with the Court and served so as to be *actually received* by the appropriate notice parties (the "Plan Objection Response Deadline") |
| Deadline to File Voting Report | March 29, 2019, at 12:00 p.m., prevailing Central Time | Date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court |

---

[3]    Contemporaneously herewith, the Debtors filed a motion with the Court to authorize the Debtors to retain and employ Prime Clerk LLC, to provide noticing and claims services and serve as Notice and Claims Agent.

| Event | Date | Description |
|-------|------|-------------|
| Confirmation Hearing Date | April 3, 2019, at 11:00 a.m., prevailing Central Time | Date and time for the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing Date") |

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The bases for the relief requested herein are sections 105, 363, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020, and Rules 2002-1 and 3016-1 of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

### Plan Summary

4.      The Debtors have created a transaction structure and process that they believe will preserve and capitalize on the value inherent in their business and brand.  With the support of their secured lenders, the Debtors commenced these cases with a chapter 11 plan that includes a "sale toggle" feature contemplating either (a) a reorganization supported by a plan sponsor or (b) the sale of the Debtors' assets to a third party.

5.      The Plan provides for the following distributions to be made to the Debtors' creditors:

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|-------|----------------|-------------------------------------|
| 1 | Other Secured Claims | Each Holder of an Allowed Other Secured Claim will receive, at the Debtors' election: (a) payment in full in Cash, which may come from the Other Secured Reserve; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired. |
| 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim will receive its Pro Rata share of the Priority Claims Reserve.  The failure to object to Confirmation by a Holder of an Allowed Other Priority Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code. |
| 3 | Revolving Loan A Claims | If the Equitization Restructuring occurs, each Holder of an Allowed Revolving Loan A Claim will either: (a) receive payment in full in Cash of such Holder's Allowed Revolving Loan A Claim; or (b) with the consent of such Holder, receive its Pro Rata share of the Exit Facility.<br><br>If the Asset Sale Restructuring occurs, each Holder of an Allowed Revolving Loan A Claim shall receive its Pro Rata share of the Distribution Proceeds available for distribution from time to time as provided in Article VIII.G hereof, until such Allowed Revolving Loan A Claims are paid in full. |
| 4 | Revolving Loan A-1 Claims | If the Equitization Restructuring occurs, each Holder Allowed Revolving Loan A-1 Claim will either: (a) receive payment in full in Cash of such Holder's Allowed Revolving Loan A-1 Claim or (b) with the consent of such Holder, receive its Pro Rata share of the Exit Facility.<br><br>If the Asset Sale Restructuring occurs, each Holder of an Allowed Revolving Loan A-1 Claim shall receive its Pro Rata share of the Distribution Proceeds available for distribution from time to time as provided in Article VIII.G hereof, until such Allowed Revolving Loan A-1 Claims are paid in full. |
| 5 | Term Loan B Claims | If the Equitization Restructuring occurs, each Holder of an Allowed Term Loan B Claim will receive either:  (a) payment in full in cash; or (b) as agreed by such Holder of an Allowed Term Loan B Claim and the Debtors, its Pro Rata share of the Exit Facility.<br><br>If the Asset Sale Restructuring occurs, each Holder of an Allowed Term Loan B Claim shall receive its Pro Rata share of the Distribution Proceeds available for distribution from time to time as provided in Article VIII.G hereof, until such Allowed Term Loan B Claims are paid in full. |

| Class | Claim/Interest | Treatment of Claim/Equity Interest |
|---|---|---|
| 6 | Term Loan B-1 Claims | If the Equitization Restructuring occurs, each Holder of an Allowed Term Loan B-1 Claim will receive its Pro Rata share of 19.9% of the New Shopko Interests subject to dilution by the Plan Sponsor Investment and the Management Incentive Plan.<br><br>If the Asset Sale Restructuring occurs, each Holder of an Allowed Term Loan B-1 Claim shall receive its Pro Rata share of the Distribution Proceeds available for distribution from time to time as provided in Article VIII.G hereof, until such Allowed Term Loan B-1 Claims are paid in full. |
| 7 | General Unsecured Claims | If the Equitization Restructuring occurs, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of, at the election of the Debtors, either (a) 80.1% of the New Shopko Interests, subject to dilution by the Plan Sponsor Investment and the Management Incentive Plan, or (b) its Pro Rata share of the GUC Equitization Distribution in one or more distributions. |
| 8 | Intercompany Claims | Each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will either be Reinstated or canceled and released at the option of the Debtors; provided, that no distributions shall be made on account of any such Intercompany Claims. |
| 9 | Intercompany Interests | Each Allowed Intercompany Interest shall be Reinstated for administrative convenience or canceled and released without any distribution on account of such interests at the option of the Debtors. |
| 10 | Interests in Shopko | Each Allowed Interest in Shopko shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in Shopko shall be entitled to any recovery or distribution under the Plan on account of such Interests. |
| 11 | Section 510(b) Claims | Section 510(b) Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim. The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist. |

6.    In accordance with the foregoing description of the treatment of Holders of Claims and Interests, the Plan contemplates classifying Holders of Claims and Interests into certain Classes of Claims and Interests for all purposes, including with respect to voting on the Plan, pursuant to section 1126 of the Bankruptcy Code.  The following chart represents the Classes of Claims and Interests under the Plan:[4]

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Impaired / Unimpaired | Entitled to Vote |
| 3 | Revolving Loan A Claims | Unimpaired / Impaired | Entitled to Vote |
| 4 | Revolving Loan A-1 Claims | Unimpaired / Impaired | Entitled to Vote |
| 5 | Term Loan B Claims | Impaired | Entitled to Vote |
| 6 | Term Loan B-1 Claims | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote |
| 9 | Intercompany Interests | Unimpaired | Presumed to Accept |
| 10 | Interests in ShopKo | Impaired | Deemed to Reject |
| 11 | Section 510(b) Claims | Impaired | Deemed to Reject |

7.    Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Class 2, Class 3, Class 4, Class 5, Class 6, and Class 7 (the "Voting Classes").  The Debtors are *not* proposing to

---

[4]    The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor.  The Debtors reserve the right to modify the Plan in accordance with the terms thereof, including the right to withdraw the Plan as to an individual Debtor at any time before the Confirmation Date.

solicit votes from Holders of Claims and Interests in Classes 1, 8, 9, 10, and 11 (each a "Non-Voting Class" and collectively, the "Non-Voting Classes").

**Basis for Relief**

**I.      The Court Should Approve the Disclosure Statement.**

**A. The Standard for Approval of the Disclosure Statement.**

8.      Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

9.      The primary purpose of a disclosure statement is to provide all material information that creditors and interest Holders affected by a proposed plan need to make an informed decision regarding whether or not to vote for the plan.  *See, e.g.*, *In re Huggins*, No. 12-42692 (TJM), 2013 WL 4502825, at *2 (Bankr. D. Neb. Aug. 22, 2013); *In re Apex Oil Co.*, 101 B.R. 92, 98 (Bankr. E.D. Mo. 1989) ("The disclosure statement is primarily a source of information upon which creditors make an informed judgment about the merits of a plan of reorganization."); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Tranel*, 940 F.2d 1168, 1175 (8th Cir. 1991) (holding that the debtor's disclosure statement must prominently

disclose material content to permit interest holders to make an "informed judgment" about the plan); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."). Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization. *Century Glove, Inc.*, 860 F.2d at 100.

10.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case. 11 U.S.C. § 1125(a)(1) ("'adequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records"); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("the information required will necessarily be governed by the circumstances of the case").

11.    Courts in the Eighth Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court. *See, e.g.*, *In re Puff*, No. BR 10-01877, 2011 WL 2604759, at *3–5 (Bankr. N.D. Iowa June 30, 2011) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.") (citations omitted); *In re Tranel*, 940 F.2d 1168, 1175 (8th Cir. 1991) ("Implicit in section 1125 of the Bankruptcy Code is the recognition that "[i]n

10

reorganization cases, there is frequently great uncertainty, [and t]herefore the need for flexibility is greatest.") (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess., 408-409 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6364, 6365); *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (noting that the definition of adequate information leaves the bankruptcy court with "wide discretion").

12.    In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

    a.    the events that led to the filing of a bankruptcy petition;

    b.    the relationship of the debtor with its affiliates;

    c.    a description of the available assets and their value;

    d.    information relevant to the company's liquidation;

    e.    the source of information stated in the disclosure statement;

    f.    the debtors' condition while in chapter 11;

    g.    claims asserted against the debtor;

    h.    the estimated return to creditors under a chapter 7 liquidation;

    i.    information relevant to the plan administrator;

    j.    the chapter 11 plan or a summary thereof;

    k.    financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

    l.    information relevant to the risks posed to creditors under the plan;

    m.    the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

    n.    litigation likely to arise in a nonbankruptcy context; and

    o.    tax attributes of the debtors.

13.     *See, e.g.*, *In re Puff*, 2011 WL 2604759, at *3 (collecting cases and factors); *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (same); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).  Disclosure regarding all topics is not necessary in every case; the above factors are only a general "yardstick" and need to be modified as the circumstances and size of each case warrant.  *See In re Puff*, 2011 WL 2604759 at *4; *In re U.S. Brass Corp.*, 194 B.R. at 424; *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

**B.  The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

14.     The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article VI |
| Events Leading to the Chapter 11 Cases | An overview of the Debtors' out-of-court restructuring efforts in response to deteriorating economic conditions, including the negotiations with respect to the Plan. | Article VII |
| Events of the Chapter 11 Cases | A summary of the motions filed on the Petition Date as well as some significant events of these chapter 11 cases. | Article IX |

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article XI |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, including a liquidation analysis, financial projections, and a valuation. | Article XII |
| Risk Factors | Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article X |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article XIV |
| Recommendation | A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan. | Article XV |

15.     Based on the foregoing, the Debtors submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to Holders of Claims entitled to vote to accept or reject the Plan.  Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and therefore should be approved.

**C. The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan.**

16.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  Fed. R. Bankr. P. 3016(c).

17.     Article X.H of the Plan describes in detail the entities subject to an injunction under

the Plan and the acts that they are enjoined from pursuing.  Further, the language in Article X.H

of the Plan is in bold, making it conspicuous to anyone who reads it.  Moreover, Article X.D, E,

and F of the Plan describe in detail the entities subject to or providing a release under the Plan, and

the Claims and Causes of Action so released, and Article X.G of the Plan describes in detail the

entities entitled to exculpation under the Plan.  Each of the foregoing sections is set forth,

conspicuously, in bold.  Accordingly, the Debtors respectfully submit that the Disclosure

Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and

parties enjoined, released, or exculpated by the Plan.

## II.     The Court Should Approve the Solicitation and Voting Procedures, Including the Voting and Tabulation Procedures, the Materials, and the Timeline for Soliciting Votes on the Plan.

### A.   The Standard for Approval of Voting and Tabulation Procedures.

18.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted
> by creditors, other than any entity designated under section (e) of
> this section, that hold at least two-thirds in amount and more than
> one-half in number of the allowed claims of such class held by
> creditors, other than any entity designed under subsection (e) of this
> section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).  Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n

acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or

rejected, be signed by the creditor or equity security holder or an authorized agent and conform to

the appropriate Official Form."  Fed. R. Bankr. P. 3018(c).  Consistent with these requirements,

the Debtors propose to use the Solicitation and Voting Procedures, which procedures include

specific voting and tabulation requirements and processes, as follows:

**B. Completion of Ballots.**

19.    To facilitate the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria.  Specifically, the Voting and Tabulation Procedures provide that the Debtors not count a Ballot if it is, among other things, illegible, submitted by a Holder of a Claim or Interest that is not entitled to vote on the Plan, unsigned, or not clearly marked.  Further, the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report.

**C. General Ballot Tabulation and Voting Procedures.**

20.    The proposed Voting and Tabulation Procedures set forth specific criteria with respect to the general tabulation of Ballots, and voting procedures applicable to Holders of Claims. The Debtors believe that the proposed Voting and Tabulation Procedures will facilitate the Plan confirmation process.  Specifically, the procedures will clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Debtors submit that the Voting and Tabulation Procedures are in the best interests of their estates, Holders of Claims, and other parties in interest, and that good cause supports the relief requested herein.

**D. The Court Should Approve the Forms of the Ballots.**

21.    In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and customized the Ballots.  Although based on Official Form B 314, the Ballots have been modified to (a) address the particular circumstances of the Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in certain of the Voting Classes.

15

The proposed Ballots for the Voting Classes are annexed as **Schedule 3**, **Schedule 4**, **Schedule 5**, and **Schedule 6**, **Schedule 7**, and **Schedule 8** hereto.  The Debtors respectfully submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

### E. The Court Should Approve the Form and Distribution of the Solicitation Packages and Cover Letter to Parties Entitled to Vote on the Plan.

22.    Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed.  Fed. R. Bankr. P. 3017(d).

23.    In accordance with this requirement, the Debtors propose to send the Solicitation Packages to provide Holders of Claims in the Voting Classes with the information they need to be able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Deadline, the Debtors will cause the Solicitation Packages to be distributed by first-class U.S. mail to those Holders of Claims in the Voting Classes.  Each Solicitation Package will include the following materials:

      a.      a copy of the Solicitation and Voting Procedures;

      b.      a Ballot, together with detailed voting instructions and a pre-addressed, postage prepaid return envelope;

      c.      the Cover Letter;

      d.      the Disclosure Statement (and exhibits thereto, including the Plan);

      e.      the Order (without exhibits except the Solicitation and Voting Procedures, as set forth above);

      f.      the Confirmation Hearing Notice; and

      g.      such other materials as the Court may direct.

24.    The Debtors request that they be authorized to distribute the Plan, the Disclosure Statement, and the Order (without exhibits, except for the Solicitation and Voting Procedures) to

Holders of Claims entitled to vote on the Plan in electronic format (i.e. on a CD-ROM or flash drive). The Ballots, the Cover Letter, and the Confirmation Hearing Notice will *only* be provided in paper format. Distribution in this manner will translate into significant monetary savings for the Debtors' estates (the Plan, the Disclosure Statement, and the proposed Order, collectively, total hundreds of pages) by reducing printing and postage costs. Bankruptcy courts have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 cases in the interest of saving printing and mailing costs. *See, e.g.*, *In re Payless Holdings LLC*, No. 17-42267 (KAS) (Bankr. E.D. Mo. June 15, 2017) (authorizing the debtors to transmit solicitation documents in flash drive format); *accord In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (RDD) (Bankr. S.D.N.Y. Oct. 17, 2017) (same); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. Oct. 5, 2017) (same); *In re rue21, Inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. July 14, 2017) (same); *In re The Gymboree Corp.*, No. 17 32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (same).[5]

25.    Additionally, the Debtors will provide (a) complete Solicitation Packages (excluding the Ballots) to the Office of the United States Trustee for the District of Nebraska (the "U.S. Trustee") and (b) the Disclosure Statement (and exhibits thereto, including the Plan) and Order (both in electronic format), as well as the Confirmation Hearing Notice to all parties required to be notified under Rule 2002 of the Bankruptcy Rules and Rule 2002-1 of the Local Rules (the "2002 List") as of the Voting Record Date. Any party that receives the materials in electronic format but would prefer paper format may contact the Notice and Claims Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at

---

[5]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

the Debtors' expense).  The Debtors will not mail Solicitation Packages or other solicitation materials to Holders of Claims that have already been paid in full during the Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court.

26.    The Debtors respectfully request that the Notice and Claims Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors, (c) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

27.    In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by the Notice and Claims Agent.  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a Holder to submit an electronic signature).  Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

**F.  The Court Should Approve Procedures for the Resolution of Disputed Claims for Voting Purposes.**

28.     The Debtors have established Solicitation and Voting Procedures, which includes procedures for the treatment of Claims in a Voting Class subject to pending objections. Such procedures contemplate furnishing the Holder of such Claim with a Disputed Claim Notice and deeming the Holder not entitled to vote to accept or reject the Plan on account of such Claim until the occurrence of a Resolution Event (as such terms are defined in the Solicitation and Voting Procedures).   The Debtors respectfully request this Court authorize the procedures for the resolution of Disputed Claims as such procedures are customary and should be approved.

**G.  The Court Should Approve the Notice of Confirmation Hearing.**

29.     The Debtors will serve the Confirmation Hearing Notice on all known Holders of Claims and Interests and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) by no later than the Solicitation Deadline (expected to be February 25, 2019), which will provide all parties in interest with at least 28 days' notice of the Plan Objection Deadline and the Confirmation Hearing.   The Confirmation Hearing Notice will include the following: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (*excluding* Ballots) from the Notice and Claims Agent and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Plan Objection Deadline; and (e) notice of the Confirmation Hearing Date and information related thereto.

30.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Fed. R. Bankr. P. 2002(l).   Therefore, in addition to the foregoing distribution of the Confirmation Hearing

Notice, the Debtors will publish the Publication Notice within seven (7) business days after the Solicitation Deadline on one occasion in the national editions of *USA Today* (national edition) and *Omaha World-Herald*.  The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail.  Additionally, service and publication of the Confirmation Hearing Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

### H.  The Court Should Approve the Plan Supplement Notice.

31.    The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be filed by the Debtors no later than 14 days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement.  *See* Plan at Art. I.A. 94.  If an Equitization Restructuring occurs, the Plan Supplement shall comprise, among other documents, the following:  (a) New Organizational Documents; (b)  Exit Facility Credit Agreements, if any; (c) Schedule of Assumed Executory Contracts and Unexpired Leases; (d) Schedule of Rejected Executory Contracts and Unexpired Leases; (e) a list of retained Causes of Action; (f) New Stockholders' Agreement, if any; (g) Plan Sponsor Agreement; (h) a document listing the members of the New Boards and the officers of the Reorganized Debtors, if any; (i) under the Asset Sale Restructuring, the identity of the Plan Administrator and the compensation of the Plan Administrator; (j) the Management Incentive Plan and (k) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan.

32.    To ensure that all Holders of Claims and Interests receive notice of the Debtors'

filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date

the Debtors file the Plan Supplement, or as soon as practicable thereafter.  Accordingly, the Plan

Supplement Notice should be approved.

**I.    The Court Should Approve the Form of Notices to Non-Voting Classes.**

33.    As discussed above, the Non-Voting Classes are ***not*** entitled to vote on the Plan.

As a result, they will ***not*** receive Solicitation Packages and, instead, the Debtors propose that such

parties receive a Non-Voting Status Notice.

| Non-Voting Classes | Status | Treatment |
|---|---|---|
| 1 and 9 | Unimpaired—Conclusively Presumed to Accept | Will receive a notice, substantially in the form attached to the Order as <u>Schedule 9</u>, in lieu of a Solicitation Package. |
| 10 and 11 | Impaired—Deemed to Reject | Will receive a notice, substantially in the form attached to the Order as <u>Schedule 10</u>, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim.  As such, Holders of such Claims will receive a notice, substantially in the form attached to the Order as <u>Schedule 11</u> (which notice shall be served together with such objection). |

34.    The Debtors will not provide the holders of Class 8 Intercompany Claims, Class 9

Intercompany Interests, Class 10 Interest in Shopko, or Class 11 Section 510(b) Claims with a

Solicitation Package or any other type of notice in connection with solicitation.  Intercompany

Claims, Interests in Shopko, Intercompany Interests, and Section 510(b) Claims, will receive no

distribution made on account of the Intercompany Claims, Interests in Shopko, Intercompany

Interests, and Section 510(b) Claims (as applicable).  Thus, Holders of Intercompany Claims,

Interests in Shopko, Intercompany Interests, and Section 510(b) Claims will not be entitled to vote

to accept or reject the Plan.  Nevertheless, in light of the fact that the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors are requesting a waiver from any requirement to serve Solicitation Packages upon such Holders of Intercompany Claims and Intercompany Interests.  Moreover, the Debtors do not believe that there are any Section 510(b) Claims.  Therefore, a waiver of the requirement to serve Solicitation Packages upon Holders of Claims and Interests set forth in Classes nine through eleven is appropriate.

35.    Each of the Non-Voting Status Notices will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (*excluding* Ballots) from the Notice and Claims Agent free of charge and/or the Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan; (c) notice of the Plan Objection Deadline; and (d) notice of the Confirmation Hearing Date; and (e) information related thereto.

36.    The Debtors believe that the mailing of Non-Voting Status Notices in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims and Interests in the Non-Voting Classes.

37.    The Debtors further request that they not be required to mail Solicitation Packages or other solicitation materials to:  (a) Holders of Claims that have already been paid in full during the Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; or (b) any party to whom a notice of the

hearing regarding the Court's approval of the Disclosure Statement (the "Disclosure Statement Hearing Notice") was sent but was subsequently returned as undeliverable.

**J.   The Court Should Approve the Notices to Contract and Lease Counterparties.**

38.    Article V.A. of the Plan provides that each of the Debtors' Executory Contracts and Unexpired Leases will be deemed assumed and assigned to the Reorganized Debtors as of the Effective Date, except for: (a) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (b) those that have been previously rejected by a Final Order; (c) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (d) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date. *See* Plan at Art. V.A. Additionally, Article V.C. of the Plan provides that the Debtors will provide Cure Notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties. *Id.* at Art. V.C.

39.    To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption or rejection of their Executory Contract or Unexpired Lease (and any corresponding Cure Claim) pursuant to the Plan, the Debtors will mail an Assumption Notice or a Rejection Notice, as appropriate, within the time periods specified in the Plan.

**K.   The Court Should Approve the Voting Record Date, Solicitation Deadline, and Voting Deadline.**

40.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar

provision regarding determination of the record date for voting purposes.  Fed. R. Bankr. P. 3018(a).

41.    The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish February 22, 2019**,** as the Voting Record Date.  Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim ***only if***:  (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date; or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

42.    The Debtors request that, after the Debtors distribute Solicitation Packages to Holders of Claims entitled to vote on the Plan by the Solicitation Deadline, the Court require that all Holders of Claims entitled to vote on the Plan complete, execute, and return their customized Ballots (in accordance with the instructions on the Ballots) so that they are ***actually received*** by the Notice and Claims Agent on or before the Voting Deadline.

43.    The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan at least 21 days within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules.  *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the

approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).  Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Packages to the Holders of Claims in the Voting Classes.

**III.    The Court Should Approve the Procedures for Confirming the Plan.**

   **A.  The Court Should Approve the Confirmation Hearing Date.**

44.    Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation. 11 U.S.C. § 1128.  Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan.  Fed. R. Bankr. P. 3017(c).  In accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code, the Debtors request that the Court establish April 3, 2019, at 11:00 a.m., prevailing Central Time as the Confirmation Hearing Date.  The Debtors further request that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than such adjournment announced in open court and/or a notice of adjournment filed with the Court and served on the 2002 List.

   **B.  The Court Should Approve the Procedures for Filing Objections to the Plan.**

45.    Bankruptcy Rules 2002(b) and (d) require no less than 28 days' notice to all holders of claims or interests of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan.  The Debtors request that the Court establish March 25, 2019, at 4:00 p.m., prevailing Central Time, as the Plan Objection Deadline.

46.    The Debtors also request that the Court direct the manner in which parties in interest may object to confirmation of the Plan.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to

confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). The Confirmation Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

    a.    be in writing;

    b.    conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court;

    c.    state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

    d.    be filed with the Court (contemporaneously with a proof of service) upon the applicable notice parties so to be ***actually received*** on or before the Plan Objection Deadline.

47. The Debtors also request that they (and other parties in support of the Plan) be permitted to file a reply to any objections to Confirmation of the Plan and a memorandum in support of confirmation by April 1, 2019, at 12:00 p.m., prevailing Central Time.

48. The Debtors believe that the Confirmation Brief Deadline will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Confirmation Hearing.

49. The Debtors believe that the Plan Objection Deadline, the Plan Objection Response Deadline, and the Confirmation Brief Deadline will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Confirmation Hearing.

### Non-Substantive Modifications

50. The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter,

Solicitation and Voting Procedures, Plan Supplement Notice, Assumption and Rejection Notices, Voting and Tabulation Procedures, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

### Notice

51.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

52.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated:  January 16, 2019<br>Omaha, Nebraska | /s/ Michael T. Eversden |

James J. Niemeier (NE Bar No. 18838)
Michael T. Eversden (NE Bar No. 21941)
Lauren R. Goodman (NE Bar No. 24645)
**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:    (402) 341-3070
Facsimile:    (402) 341-0216
Email:    jniemeier@mcgrathnorth.com
    meversden@mcgrathnorth.com
    lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Jamie Netznik (*pro hac vice* pending)
Travis M. Bayer (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    patrick.nash@kirkland.com
    jamie.netznik@kirkland.com
    travis.bayer@kirkland.com

- and -

Steven Serajeddini (*pro hac vice* pending)
Daniel Rudewicz (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    steven.serajeddini@kirkland.com
    daniel.rudewicz@kirkland.com

*Proposed Co-Counsel to the Debtors*