**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064-TLS |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |

**JOINT CHAPTER 11 PLAN OF**
**SPECIALTY RETAIL SHOPS HOLDING CORP. AND ITS DEBTOR AFFILIATES[2]**

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST.**

**YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

**THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

---

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Travis Bayer (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

-and-

Steven Serajeddini (*pro hac vice* pending)
Daniel Rudewicz (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James J. Niemeier (NE Bar No. 18838)
Michael T. Eversden (NE Bar No. 21941)
Lauren R. Goodman (NE Bar No. 24645)
**McGRATH NORTH MULLIN & KRATZ, PC LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:    (402) 341-3070

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

Dated:  January 16, 2019

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); Shopko Holding Company, LLC (0171); Shopko Institutional Care Services Co., LLC (7112); Shopko Optical Manufacturing, LLC (6346); Shopko Properties, LLC (0865); Shopko Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]    The Debtors have filed this Plan with certain key provisions omitted. The Debtors continue to negotiate the Plan, including the key provisions, with their stakeholders. Accordingly, the Plan remains subject to substantial modification in all respects.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW .................................................................................................. 1
    A.    Defined Terms ............................................................................................................ 1
    B.    Rules of Interpretation ............................................................................................ 12
    C.    Computation of Time .............................................................................................. 12
    D.    Governing Law ........................................................................................................ 12
    E.    Reference to Monetary Figures ............................................................................... 12
    F.    Controlling Document ............................................................................................ 12
    G.    Nonconsolidated Plan ............................................................................................ 13

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS .......................... 13
    A.    Administrative Claims and Priority Tax Claims ..................................................... 13
    B.    Professional Compensation ..................................................................................... 13
    C.    DIP Claims .............................................................................................................. 14
    D.    Statutory Fees.......................................................................................................... 14

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........... 15
    A.    Summary of Classification ...................................................................................... 15
    B.    Treatment of Claims and Interests .......................................................................... 15
    C.    Special Provision Governing Unimpaired Claims .................................................. 19
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................. 19
    E.    Elimination of Vacant Classes ............................................................................... 19
    F.    Voting Classes; Presumed Acceptance by Non-Voting Classes ............................. 19
    G.    Subordinated Claims and Interests ......................................................................... 19

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ................................. 19
    A.    General Settlement of Claims ................................................................................. 19
    B.    Restructuring Transactions ..................................................................................... 20
    C.    Cancelation of Notes, Instruments, Certificates, and Other Documents. ............... 20
    D.    Exemption from Certain Taxes and Fees ................................................................ 20
    E.    The Equitization Restructuring ............................................................................... 20
    F.    The Asset Sale Restructuring .................................................................................. 24

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....... 27
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ........... 27
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.............. 27
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .......... 28
    D.    Indemnification Obligations ................................................................................... 29
    E.    Insurance Policies ................................................................................................... 29
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ........ 29
    G.    Reservation of Rights ............................................................................................. 29
    H.    Nonoccurrence of Effective Date ........................................................................... 29

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .................................... 29
    A.    Timing and Calculation of Amounts to Be Distributed........................................... 29
    B.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ............. 30
    C.    Manner of Payment. ................................................................................................ 30
    D.    Registration or Private Placement Exemption......................................................... 31
    E.    Tax Issues and Compliance with Tax Requirements .............................................. 31
    F.    Allocations ............................................................................................................. 31
    G.    No Postpetition Interest on Claims.......................................................................... 32
    H.    Setoffs and Recoupment ......................................................................................... 32
    I.    Claims Paid or Payable by Third Parties................................................................. 32

**ARTICLE VII. THE PLAN ADMINISTRATOR** ...............................................................................32
    A.    The Plan Administrator ................................................................................33
    B.    Wind-Down .................................................................................................34
    C.    Exculpation, Indemnification, Insurance, & Liability Limitation ..............34
    D.    Tax Returns .................................................................................................34
    E.    Dissolution of the Reorganized Shopko .....................................................35

**ARTICLE VIII. RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR**....................35
    A.    Establishment of Reserve Accounts ...........................................................35
    B.    Undeliverable Distribution Reserve ...........................................................35
    C.    Priority Claims Reserve ..............................................................................36
    D.    Wind-Down Reserve ...................................................................................36
    E.    Other Secured Claim Reserve .....................................................................36
    F.    GUC Asset Sale Reserve .............................................................................36
    G.    Distribution Proceeds/Priority Waterfall ...................................................37
    H.    The General Account and Distribution Reserve Account Adjustments ........37

**ARTICLE IX. PROCEDURES FOR RESOLVING CONTINGENT,   UNLIQUIDATED, AND DISPUTED CLAIMS**............................................................................................................38
    A.    Allowance of Claims ..................................................................................38
    B.    Claims Administration Responsibilities .....................................................38
    C.    Estimation of Claims ..................................................................................38
    D.    Claims Reserve ...........................................................................................38
    E.    Adjustment to Claims Without Objection ...................................................39
    F.    Time to File Objections to Claims ..............................................................39
    G.    Disallowance of Claims ..............................................................................39
    H.    Amendments to Claims ...............................................................................39
    I.    No Distributions Pending Allowance ..........................................................39
    J.    Distributions After Allowance ....................................................................40

**ARTICLE X. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**.........40
    A.    Compromise and Settlement of Claims, Interests, and Controversies .........40
    B.    Discharge of Claims and Termination of Interests......................................40
    C.    Term of Injunctions or Stays.......................................................................41
    D.    **Release of Liens** .......................................................................................41
    E.    **Debtor Release** ........................................................................................41
    F.    **Release by Holders of Claims or Interests** ............................................42
    G.    **Exculpation** ............................................................................................43
    H.    **Injunction** ...............................................................................................43
    I.    Protection Against Discriminatory Treatment .............................................43
    J.    Recoupment ................................................................................................44
    K.    Subordination Rights...................................................................................44

**ARTICLE XI. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ...................................................................................................................44
    A.    Conditions Precedent to the Effective Date ................................................44
    B.    Waiver of Conditions..................................................................................44
    C.    Substantial Consummation ..........................................................................44
    D.    Effect of Nonoccurrence of Conditions to the Effective Date......................45

**ARTICLE XII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**............45
    A.    Modification and Amendments....................................................................45
    B.    Effect of Confirmation on Modifications....................................................45
    C.    Revocation or Withdrawal of the Plan ........................................................45

**ARTICLE XIII. RETENTION OF JURISDICTION** ......................................................................45

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** ........................................................................**47**
    A.     Immediate Binding Effect ................................................................................47
    B.     Additional Documents ....................................................................................47
    C.     Dissolution of the Creditors' Committee ........................................................47
    D.     Reservation of Rights .....................................................................................48
    E.     Successors and Assigns ...................................................................................48
    F.     Service of Documents .....................................................................................48
    G.     Entire Agreement ...........................................................................................49
    H.     Exhibits .........................................................................................................49
    I.     Nonseverability of Plan Provisions ................................................................49
    J.     Votes Solicited in Good Faith ........................................................................49
    K.     Waiver or Estoppel.........................................................................................49

## INTRODUCTION

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.  The Debtors propose this Plan for the resolution of outstanding Claims against, and Interests in, the Debtors.  Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan constitutes a separate plan for each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.      *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; and (d) all DIP Claims.

2.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which:  (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

3.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

4.      "*Asset Sales*" means the sale or sales of all or substantially of the Debtors' assets under this Plan or as otherwise authorized by order of the Bankruptcy Court or the Bankruptcy Code.

5.      "*Asset Sale Restructuring*" means a restructuring under this Plan providing for the Asset Sales.

6.      "*Allowed*" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Court; *provided* that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  For the avoidance of doubt, a Proof

of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

7.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the debtors in possession, the Estates, or other appropriate parties in interest have asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

8.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time, as applicable to the Chapter 11 Cases.

9.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Nebraska having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Nebraska.

10.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

11.    "*Bar Date*" means the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed.

12.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

13.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

14.    "*Cash Consideration*" means any proceeds paid or payable in Cash by buyers to the Debtors in connection with the Asset Sales; *provided*, *however*, that, for the avoidance of doubt, Cash Consideration includes any Cash or Cash equivalents returned (whether before or after the Effective Date) to the Debtors or their Estates, including (a) the return of any deposits of Cash or Cash equivalents and (b) the release of Cash or Cash equivalents used to collateralize any of the Debtors' surety bonds, insurance policies or utility contracts.

15.    "*Causes of Action*" means any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

16.    "*Chapter 11 Cases*" means when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

17.    "*Claim*" means a claim, as defined in section 101(5) of the Bankruptcy Code, asserted against a Debtor.

18.    "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to Claims.

19.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

20.     "*Class*" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

21.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in the Plan.

22.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

23.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court, if any, to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

24.     "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25.     "*Consummation*" means the occurrence of the Effective Date.

26.     "*Credit Agreement*" that certain Third Amended and Restated Loan and Security Agreement, dated as of February 7, 2012 (as amended from time to time), by and among Shopko, as borrower, and certain of its subsidiaries as borrowers or guarantors, certain lenders party thereto, the Credit Agreement Primary Agent, and the Term Loan B-1 Agent, which governs the Revolving Loan A, Revolving Loan A-1, Term Loan B, and Term Loan B-1.

27.     "*Credit Agreement Deficiency Claim*" means, pursuant to the priority set forth in the Credit Agreement, the portion of the Revolving Loan A Claims, Revolving Loan A-1 Claims, Term Loan B Claims, and Term Loan B-1 Claims, as applicable, that constitute unsecured Claims under section 506(a) of the Bankruptcy Code.

28.     "*Credit Agreement Primary Agent*" means Wells Fargo Bank, N.A., in its capacity as administrative agent (other than with respect to the Term Loans B-1) for the Revolving Loan A, Revolving Loan A-1, and Term Loan B under the Credit Agreement.

29.     "*Creditors' Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

30.     "*Cure Claim*" means a monetary Claim based upon a Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

31.     "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include:  (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

32.     "*Cure/Assumption Objection Deadline*" means the date that is 14 days after filing of the Schedule of Assumed Executory Contracts and Unexpired Leases with the Plan Supplement and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Schedule of Assumed Executory Contracts and Unexpired Leases after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, or an Executory Contract or Unexpired Lease proposed to be assumed by the Reorganized Debtors is proposed to be assigned to a third party after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Schedule of Assumed Executory Contracts and Unexpired Leases with such modification and (b) the date of the scheduled Confirmation Hearing.

33.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of any of the Debtors for liability of any current or former directors, managers, officers, and members.

34.    "*Debtors*" means, collectively, each of the following (the debtors and debtors in possession in the Chapter 11 Cases):  (a) Specialty Retail Shops Holding Corp.; (b) Pamida Stores Operating Co., LLC; (c) Pamida Transportation LLC; (d) Penn-Daniels, LLC; (e) Place's Associates' Expansion, LLC; (f) Retained R/E SPE, LLC; (g) Shopko Finance, LLC; (h) Shopko Gift Card Co., LLC; (i) Shopko Holding Company, LLC; (j) Shopko Institutional Care Services Co., LLC; (k) Shopko Optical Manufacturing, LLC; (l) Shopko Properties, LLC; (m) Shopko Stores Operating Co., LLC; and (n) SVS Trucking, LLC.

35.    "*DIP Agent*" means Wells Fargo Bank, N.A., in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, together with its respective successors and assigns in such capacity.

36.    "*DIP Claim*" means any Claim against any of the Debtors arising under the DIP Facility (as such term is defined in the DIP Order) or the DIP Orders, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and obligations.

37.    "*DIP Credit Agreement*" means that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated as of January 16, 2019, by and among the Debtors and the DIP Lenders, as it may be amended, restated, supplemented, or otherwise modified from time to time.

38.    "*DIP Facility*" has the meaning set forth in the DIP Orders.

39.    "*DIP Lenders*" means, collectively, the lenders from time to time party to the DIP Credit Agreement.

40.    "*DIP Orders*" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Credit Agreement and incur postpetition obligations thereunder.

41.    "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

42.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto.

43.    "*Disputed*" means a Claim that is not yet Allowed.

44.    "*Distribution Proceeds*" means all Cash of the Debtors available on the Effective Date after the funding of the Priority Claims Reserve, the Other Secured Claims Reserve, the Professional Fee Escrow Account, and the Wind-Down Reserve, available for distribution under Article VIII.G hereof.

45.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

46.    "*Distribution Reserve Accounts*" means the Priority Claims Reserve, the Undeliverable Distribution Reserve, the Wind-Down Reserve, the Other Secured Claims Reserve, and the GUC Asset Sale Reserve established pursuant to this Plan.

47.    "*DTC*" means the Depository Trust Company.

48.    "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtors on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article XI.A hereof have been satisfied or waived (in accordance with Article XI.B); and (c) the Plan is declared effective.

49.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

50.    "*Equitization Restructuring*" means the transactions and reorganization contemplated by, and pursuant to, this Plan under which the New Shopko Interests are distributed, among other things.

51.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

52.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  the Debtors and Reorganized Debtors and each Debtor's respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such.[3]

53.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

54.    "*Exit Facility*" means either:  (a) a replacement credit facility, pursuant to which the DIP Lenders will convert all of their outstanding DIP Claims and commitments under the DIP Facility into commitments under such Exit Facility; or (b) a new credit facility in an amount sufficient to repay in full in Cash on the Effective Date the portion of the DIP Facility provided by the DIP Lenders and to provide incremental liquidity, if any.

55.    "*Exit Facility Credit Agreements*" means the credit agreements governing the Exit Facility, if any.

56.    "*Exit Facility Documents*" means the Exit Facility Credit Agreements and related documents governing the Exit Facility.

57.    "*Exit Facility Agent*" means the agent under the Exit Facility Credit Agreement, together with its respective successors and assigns in such capacity.

58.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

59.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent.

60.    "*Final Order*" means:  (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction; or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may

---

3    **NTD:** Only upon such Required Consenting Stakeholders' execution of relevant agreement.

be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

61.    "*General Account*" means a general account:  (a) into which shall be deposited revenues and proceeds of all assets of the Debtors, including proceeds of the Asset Sales, and Cash of the Debtors in an amount in excess of the amount required to adequately maintain the Distribution Reserve Accounts as described in Article VIII.H (*provided* that the General Account shall not include funds required to be deposited into the Distribution Reserve Accounts); (b) from which shall be made payments to any Distribution Reserve Account (other than GUC Asset Sale Reserve) in an amount sufficient to adequately maintain such Distribution Reserve Account as described in Article VIII.H; and (c) from which payments shall be made according to the priority set forth in Article VIII.G.

62.    "*General Unsecured Claim*" means any Claim other than:  (a) an Administrative Claim; (b) a Secured Tax Claim; (c) an Other Secured Claim; (d) a Priority Tax Claim; (e) an Other Priority Claim; (f) a Revolving Loan A Claim; (g) a Revolving Loan A-1 Claim; (h) a Term Loan B Claim; (i) a Term Loan B-1 Claim; (j) an Intercompany Claim; (k) a DIP Claim; or (l) a Section 510(b) Claim; *provided*, *however*, that General Unsecured Claims shall include the Credit Agreement Deficiency Claim, if any.

63.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

64.    "*GUC Asset Sale Reserve*" means a separate, segregated account to be established and maintained by the Plan Administrator and funded with the Distribution Proceeds pursuant to Article VIII.F hereof.

65.    "*GUC Equitization Distribution*" means $100,000 in Cash, less any professional fees incurred by the Creditors' Committee, to be funded on the Effective Date into the GUC Equitization Reserve and distributed in accordance with the Plan; *provided* that the GUC Equitization Distribution shall first fund the Administrative Claims Distribution Pool to the extent the Debtors' Cash on hand in excess of the Minimum Liquidity Threshold on the Effective Date accounting for all other distributions under the Plan is less than an amount equal to the total amount of Allowed Administrative Claims and Priority Claims.

66.    "*GUC Equitization Reserve*" means, if a Equitization Restructuring occurs, a separate reserve account that will be funded with the GUC Equitization Distribution on the Effective Date pursuant to Article VII.D hereof for distribution to the Holders of Allowed General Unsecured Claims as provided in Article VII.D.

67.    "*Holder*" means an Entity holding a Claim or Interest, as applicable.

68.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69.    "*Intercompany Claim*" means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor or a Debtor's Affiliate.

70.    "*Intercompany Interest*" means, other than an Interest in Shopko, an Interest in one Debtor held by another Debtor or a Debtor's Affiliate.

71.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

72.    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. [●]].

6

73.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, as applicable to the Chapter 11 Cases.

74.     "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

75.     "*Management Incentive Plan*" means, if an Equitization Restructuring occurs, a post-Effective Date management incentive plan, the material terms of which shall be consistent with Article IV of the Plan.

76.     "*Minimum Liquidity Threshold*" means, after giving effect to the full funding of the Plan Sponsor Investment, $50 million in the aggregate of unrestricted Cash and Cash equivalents included in the consolidated balance sheet of the Reorganized Debtors as of such date (including undrawn availability under the Exit Facility Credit Agreements) or as otherwise determined by the Debtors on or before the Confirmation Hearing.

77.     "*New Boards*" means, if an Equitization Restructuring occurs, the initial board of directors, members, or managers, as applicable, of each Reorganized Debtor.

78.     "*New Organizational Documents*" means, if an Equitization Restructuring occurs, the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors, which forms shall be included in the Plan Supplement.

79.     "*New Shopko Interests*" means, if an Equitization Restructuring occurs, interests in Reorganized Shopko.

80.     "*New Stockholders' Agreement*" means the agreement with respect to the New Shopko Interests, the form of which shall be included in the Plan Supplement.

81.      "*Notice and Claims Agent*" means Prime Clerk LLC.

82.     "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:   (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases.

83.     "*Other Secured Claim*" means any Secured Claim other than Claims arising under the Credit Agreement.

84.     "*Other Secured Claims Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Other Secured Claims Reserve Amount pursuant to Article VIII.E.

85.     "*Other Secured Claims Reserve Amount*" means Cash in an amount to be determined by the Debtors, which amount shall be funded by the Debtors and used by the Plan Administrator for the payment of Allowed Other Secured Claims to the extent that such Other Secured Claims have not been satisfied pursuant to Article III.B.2 on or before the Effective Date.

86.     "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

87.     "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

88.     "*Plan*" means this plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments thereto.

89.     "*Plan Administrator*" means the person selected by the Debtors to administer the Plan Administrator Assets if the Asset Sale Restructuring has occurred.  For the avoidance of doubt, all costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Plan Administrator Assets.

90.      "*Plan Administrator Assets*" means, if the Asset Sale Restructuring has occurred, on the Effective Date, all assets of the Estates vested in the Plan Administrator, and, thereafter, all assets held from time to time by the Plan Administrator.

91.      "*Plan Sponsor*" means, collectively, one or more sponsors or other financial institutions providing the Plan Sponsor Investment.

92.      "*Plan Sponsor Agreement*" means that certain Plan Sponsor Agreement, dated as of [●], 2019, by and among each of the Debtors and the Plan Sponsor.

93.      "*Plan Sponsor Investment*" means the investment, if any, by the Plan Sponsor under the Plan Sponsor Agreement.

94.      "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors no later than 14 days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement.  If a Equitization Restructuring occurs, the Plan Supplement shall comprise, among other documents, the following:  (a) New Organizational Documents; (b)  Exit Facility Credit Agreements, if any; (c) Schedule of Assumed Executory Contracts and Unexpired Leases; (d) Schedule of Rejected Executory Contracts and Unexpired Leases; (e) a list of retained Causes of Action; (f) New Stockholders' Agreement, if any; (g) Plan Sponsor Agreement; (h) a document listing the members of the New Boards and the officers of the Reorganized Debtors, if any; (i) under the Asset Sale Restructuring, the identity of the Plan Administrator and the compensation of the Plan Administrator; (j) the Management Incentive Plan and (k) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan. The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with Article X of the Plan.

95.      "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

96.      "*Priority Claims Reserve*" means (i) under the Equitization Restructuring, the lesser of (a) the Debtors' Cash on hand in excess of the Minimum Liquidity Threshold on the Effective Date accounting for all other distributions under the Plan and (b) an amount equal to the total amount of Allowed Administrative Claims and Priority Claims; or (ii) under the Asset Sale Restructuring, the account to be established and maintained by the Plan Administrator and funded with the Priority Claims Reserve Amount pursuant to Article VIII.C hereof.

97.      "*Priority Claims Reserve Amount*" means $ [●], which amount shall be funded by the Debtors and used by the Plan Administrator for payment of Allowed Priority Claims and Allowed Administrative Claims payable pursuant to Article II.A to the extent that such Priority Claims and Administrative Claims have not been paid in full on or before the Effective Date; *provided*, *however*, that for the avoidance of doubt, such Allowed Administrative Claims payable pursuant to Article II.A do not include DIP Claims or Professional Fee Claims, which shall be paid according to Article II.A and Article II.B, respectively, to the extent such DIP Claims or Professional Fee Claims have not already been paid during the Chapter 11 Cases.

98.      "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

99.      "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

100.     "*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

101.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

102.    "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the total Professional Fee Reserve Amount funded by the Reorganized Debtors on the Effective Date.

103.    "*Professional Fee Reserve Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

104.    "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Cases.

105.    "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

106.    "*Released Party*" means each of the following in their capacity as such:  (a) the Debtors and Reorganized Debtors; (b) the Debtors' current and former officers, directors, and managers; and (c)each of the foregoing Entities' respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such; *provided* that any Holder of a Claim or Interest that elects to "opt out" of granting releases by timely objecting to the Plan's third-party release provisions shall not be a "Released Party."

107.    "*Releasing Party*" means, collectively, and in each case solely in its capacity as such:  (a) the Debtors; (b) the Credit Agreement Primary Agent; (c) the Term Loan B-1 Agent; (d) each Holder of a Claim or Interest entitled to vote to accept or reject the Plan that (i) votes to accept the Plan or (ii) votes to reject the Plan or does not vote to accept or reject the Plan but does not affirmatively elect to "opt out" of being a Releasing Party by timely objecting to the Plan's third-party release provisions; (e) each Holder of a Claim or Interest that is Unimpaired and presumed to accept the Plan; (f) each Holder of a Claim or Interest that is deemed to reject the Plan that does not affirmatively elect to "opt out" of being a Releasing Party by timely objecting to the Plan's third-party release provisions; and (g) with respect each of the Debtors, the Reorganized Debtors and the foregoing entities described in clauses (a) through (g), such entities' current and former affiliates, and such entities' and such affiliates' partners, subsidiaries, predecessors, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), members, officers, principals, employees, agents, managed accounts or funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, together with their respective successors and assigns.

108.    "*Reorganized Debtors*" means Reorganized Shopko and each of the other Debtors as reorganized pursuant to and under the Plan.

109.    "*Reorganized Shopko*" means either:  (a) Shopko, or any successor thereto, as reorganized pursuant to and under the Plan; (b) a new corporation or limited liability company that may be formed or caused to be formed by the Debtors to, among other things, directly or indirectly acquire substantially all of the assets and/or stock of the Debtors and issue the New Shopko Interests to be distributed or sold pursuant to the Plan; (c) or the Plan Administrator, or any other successor to the forgoing.

110.    "*Reorganized Shopko Board*" means the New Board of Reorganized Shopko on and after the Effective Date.

111.    "*Restructuring*" means the restructuring of the Debtors on the terms of the Plan.

112.    "*Restructuring Documents*" means the Plan, the Disclosure Statement, the Plan Supplement, and the various agreements and other documents formalizing or implementing the Plan and the transactions contemplated thereunder.

113.    "*Restructuring Transactions*" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors reasonably determine to be necessary to implement the Restructuring, as described in more detail in Article IV.A herein.

114.    "*Retained Causes of Action List*" means a list of all retained Claims and Causes of Action of the Debtors, identified in the Plan Supplement.

115.    "*Revolving Loan A*" means the total Revolving Loan A Commitments made pursuant to (and as defined in) the Credit Agreement, made by or on behalf of certain lenders for the ratable accounts of such lenders, pursuant to the Credit Agreement.

116.    "*Revolving Loan A Claim*" means any Claim arising under or related to the Revolving Loan A.

117.    "*Revolving Loan A-1*" means the total Revolving Loan A-1 Commitments made pursuant to (and as defined in) the Credit Agreement, made by or on behalf of certain lenders for the ratable accounts of such lenders, pursuant to the Credit Agreement.

118.    "*Revolving Loan A-1 Claim*" means any Claim arising under or related to the Revolving Loan A-1.

119.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Reorganized Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time in accordance with the Plan, which shall be in form and substance acceptable to the Debtors.

120.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time in accordance with the Plan, which shall be in form and substance acceptable to the Debtors.

121.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

122.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

123.    "*Secured*" means when, referring to a Claim:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

124.    "*Secured Tax Claim*" means any Secured Claim against any of the Debtors that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

125.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

126.    "Securities Exchange Act" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as amended.

127.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

128.    "*Shopko*" means Specialty Retail Shops Holding Corp.

129.    "*Special Committee*" means the special committee created by the board of directors of Shopko.

130.    "*Spirit*" means Spirit Realty L.P. and its affiliates.

131.    "*Store Closing GOB Sales Order*" means the order of the Bankruptcy Court approving the Debtors' going out of business sales in accordance with Section 363 of the Bankruptcy Code, entered on [●] [Docket No. [●]].

132.    "*Term Loan B*" means the total Term Loan B Commitments made pursuant to (and as defined in) the Credit Agreement, made by or on behalf of certain lenders for the ratable accounts of such lenders, pursuant to the Credit Agreement.

133.    "*Term Loan B Claim*" means any Claim derived from or based upon the Term Loan B.

134.    "*Term Loan B-1*" means the total Term Loan B-1 Commitments made pursuant to (and as defined in) the Credit Agreement made by or on behalf of Spirit for the ratable account of Spirit, pursuant to the Credit Agreement.

135.    "*Term Loan B-1 Agent*" means Spirit, in its capacity as administrative and collateral agent of the Term Loan B-1, on behalf of itself as a lender pursuant to the terms of the Credit Agreement and any replacement or successor agent on behalf of Spirit as the Term Loan B-1 lenders.

136.    "*Term Loan B-1 Claim*" means any Claim arising under or related to the Term Loan B-1.

137.    "*Undeliverable Distribution Reserve*" means a segregated account established by the Plan Administrator established in accordance with Article VIII.B hereof.

138.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Nebraska.

139.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

140.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

141.    "*Voting Deadline*" means [●], at 5:00 p.m. (prevailing Central Time).

142.    "*Wind Down*" means the wind down and dissolution of the Debtors' Estates following the Effective Date as set forth in Article VIII.B hereof.

143.    "*Wind-Down Amount*" means Cash in an amount to be determined by the Debtors, which amount shall be funded by the Debtors and used by the Plan Administrator to fund the Wind Down.

144.    "*Wind-Down Reserve*" means a segregated account established by the Plan Administrator established in accordance with Article VIII.D.

B.    *Rules of Interpretation*

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; and (14) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or

in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

G.    *Nonconsolidated Plan*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Claims and Priority Tax Claims*

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party by the Claims Objection Bar Date.

Except with respect to Administrative Claims that are Professional Fee Claims or DIP Claims, and except to the extent that an Administrative Claim or Priority Tax Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim or Priority Tax Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim or Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, its Pro Rata share of the Priority Claims Reserve.

The failure to object to Confirmation by a Holder of an Allowed Administrative Claim or Priority Tax Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code; *provided*, *however*, that the Holders of such Claims shall be deemed to consent to the treatment on account of such Claims as provided herein.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

If the Asset Sale Restructuring occurs, any amounts remaining in the Priority Claims Reserve after payment of all Allowed Administrative Claims and all Allowed Priority Claims shall promptly be transferred to the General Account and shall be distributed according to the priority set forth in Article VIII.G without any further action or order of the Court.

B.    *Professional Compensation*

1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than 45 days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the

Professional Fee Escrow Account up to the full Allowed amount.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Reorganized Debtors or the Plan Administrator, as applicable, shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

2. Professional Fee Escrow Account

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.  If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims will be paid by the Reorganized Debtors.

3. Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4. Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

C. *DIP Claims*

As of the Effective Date, the DIP Claims shall be Allowed Claims in the full amount outstanding under the DIP Credit Agreements, including principal, interest, fees, and expenses.

Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction of the Allowed DIP Claims, each Holder of an Allowed DIP Claim: (i) if the Equitization Restructuring occurs, will either be:  (a) indefeasibly repaid in full in Cash on the Effective Date; or (b) with the consent of such Holder, receive its Pro Rata share of the Exit Facility; or (ii) if the Asset Sale Restructuring occurs, paid all Distribution Proceeds available for distribution under Article VIII.G hereof until such Allowed DIP Claims are repaid in full. As used in this paragraph "repaid in full in Cash" shall mean the indefeasible payment in full in Cash of all DIP Claims, the cancelation, backing, or cash collateralization of letters of credit under the DIP Facility in accordance with the terms of the DIP Documents, and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility.

D. *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, to the extent applicable, the Reorganized Debtors

shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Reorganized Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.     *Summary of Classification*

Claims and Interests, except for DIP Claims, Administrative Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

1.     Class Identification

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Impaired | Entitled to Vote |
| 3 | Revolving Loan A Claims | Impaired | Entitled to Vote |
| 4 | Revolving Loan A-1 Claims | Impaired | Entitled to Vote |
| 5 | Term Loan B Claims | Impaired | Entitled to Vote |
| 6 | Term Loan B-1 Claims | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote |
| 9 | Intercompany Interests | Unimpaired | Presumed to Accept |
| 10 | Interests in Shopko | Impaired | Deemed to Reject |
| 11 | Section 510(b) Claims | Impaired | Deemed to Reject |

B.     *Treatment of Claims and Interests*

Subject to Article VI hereof, each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.      Class 1 – Other Secured Claims

    a.      *Classification*:  Class 1 consists of Other Secured Claims against any Debtor.

    b.      *Treatment*:  Each Holder of an Allowed Other Secured Claim will receive, at the Debtors' election: (a) payment in full in Cash, which may come from the Other Secured Claims Reserve; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired.

    c.      *Voting*:  Class 1 is Unimpaired.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Priority Claims

    a.      *Classification*:  Class 2 consists of Other Priority Claims.

    b.      *Treatment*: Each Holder of an Allowed Other Priority Claim will receive its Pro Rata share of the Priority Claims Reserve.  The failure to object to Confirmation by a Holder of an Allowed Other Priority Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.

    c.      *Voting*:  Class 2 is Impaired.  Holders of Other Priority Claims are entitled to vote to accept or reject the Plan.

3.      Class 3 – Revolving Loan A Claims

    a.      *Classification*:  Class 3 consists of all Revolving Loan A Claims.

    b.      *Treatment*:  If the Equitization Restructuring occurs, each Holder of an Allowed Revolving Loan A Claim will either: (a) receive payment in full in Cash of such Holder's Allowed Revolving Loan A Claim; or (b) with the consent of such Holder, receive its Pro Rata share of the Exit Facility.

        If the Asset Sale Restructuring occurs, each Holder of an Allowed Revolving Loan A Claim shall receive its Pro Rata share of the Distribution Proceeds available for distribution from time to time as provided in Article VIII.G hereof, until such Allowed Revolving Loan A Claims are paid in full.

    c.      *Voting*:  Class 3 is Impaired.  Holders of Allowed Revolving Loan A-1 Claim are entitled to vote to accept or reject the Plan.

4.      Class 4 – Revolving Loan A-1 Claims

    a.      *Classification*:  Class 4 consists of all Revolving Loan A-1 Claims.

    b.      *Treatment*:  If the Equitization Restructuring occurs, each Holder Allowed Revolving Loan A-1 Claim will either: (a) receive payment in full in Cash of such Holder's Allowed Revolving Loan A-1 Claim or (b) with the consent of such Holder, receive its Pro Rata share of the Exit Facility.

        If the Asset Sale Restructuring occurs, each Holder of an Allowed Revolving Loan A-1 Claim shall receive its Pro Rata share of the Distribution Proceeds available for distribution

from time to time as provided in Article VIII.G hereof, until such Allowed Revolving Loan A-1 Claims are paid in full.

    c.     *Voting*: Class 4 is Impaired. Holders of Allowed Revolving Loan A-1 Claim are entitled to vote to accept or reject the Plan.

5.     <u>Class 5 – Term Loan B Claims</u>

    a.     *Classification*: Class 5 consists of all Term Loan B Claims.

    b.     *Treatment*: If the Equitization Restructuring occurs, each Holder of an Allowed Term Loan B Claim will receive either: (a) payment in full in cash; or (b) as agreed by such Holder of an Allowed Term Loan B Claim and the Debtors, its Pro Rata share of the Exit Facility.

        If the Asset Sale Restructuring occurs, each Holder of an Allowed Term Loan B Claim shall receive its Pro Rata share of the Distribution Proceeds available for distribution from time to time as provided in Article VIII.G hereof, until such Allowed Term Loan B Claims are paid in full.

    c.     *Voting*: Class 5 is Impaired. Holders of Allowed Term Loan B Claims are entitled to vote to accept or reject the Plan.

6.     <u>Class 6 – Term Loan B-1 Claims</u>

    a.     *Classification*: Class 6 consists of all Term Loan B-1 Claims.

    b.     *Treatment*: If the Equitization Restructuring occurs, each Holder of an Allowed Term Loan B-1 Claim will receive its Pro Rata share of 19.9% of the New Shopko Interests subject to dilution by the Plan Sponsor Investment and the Management Incentive Plan.

        If the Asset Sale Restructuring occurs, each Holder of an Allowed Term Loan B-1 Claim shall receive its Pro Rata share of the Distribution Proceeds available for distribution from time to time as provided in Article VIII.G hereof, until such Allowed Term Loan B-1 Claims are paid in full.

    c.     *Voting*: Class 6 is Impaired. Holders of Allowed Term Loan B-1 Claims are entitled to vote to accept or reject the Plan.

7.     <u>Class 7 – General Unsecured Claims</u>

    a.     *Classification*: Class 7 consists of all General Unsecured Claims.

    b.     *Treatment*: If the Equitization Restructuring occurs, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of, at the election of the Debtors, either (a) 80.1 % of the New Shopko Interests, subject to dilution by the Plan Sponsor Investment and the Management Incentive Plan, or (b) its Pro Rata share of the GUC Equitization Distribution in one or more distributions.

        If the Asset Sale Restructuring occurs, each Holder of a General Unsecured Claim will receive its Pro Rata share of the Distribution Proceeds as provided in Article VIII.G hereof.

    c.     *Voting*: Class 7 is Impaired. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

17

8.  Class 8 – Intercompany Claims

    a.  *Classification*:  Class 8 consists of all Intercompany Claims.

    b.  *Treatment*:  Each Allowed Intercompany Claim, unless otherwise provided for under the Plan, will either be Reinstated or canceled and released at the option of the Debtors; *provided* that no distributions shall be made on account of any such Intercompany Claims.

    c.  *Voting*:  Class 8 is either Unimpaired, and the Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and the Holders of Allowed Intercompany Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

9.  Class 9 – Intercompany Interests

    a.  *Classification*:  Class 9 consists of all Intercompany Interests.

    b.  *Treatment*:  Each Allowed Intercompany Interest shall be Reinstated for administrative convenience or canceled and released without any distribution on account of such interests at the option of the Debtors.

    *Voting*:  Class 9 is either Unimpaired, and the Holders of Allowed Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and the Holders of Allowed Intercompany Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

10.  Class 10 –Interests in Shopko

    a.  *Classification*:  Class 10 consists of all Interests in Shopko.

    b.  *Treatment*:  Each Allowed Interest in Shopko shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in Shopko shall be entitled to any recovery or distribution under the Plan on account of such Interests.

    c.  *Voting*:  Class 10 is Impaired.  Holders of Interests in Shopko are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

11.  Class 11 – Section 510(b) Claims

    a.  *Classification*:  Class 11 consists of all Section 510(b) Claims.

    b.  *Treatment*:  Section 510(b) Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim.  The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

    c.  *Voting*:  Class 11 is Impaired.  Holders of Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims and Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

G.    *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN[4]**

A.    *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy

---

[4]    The Special Committee, with the assistance of its counsel and advisors, is currently undertaking an investigation into Estate claims and Causes of Action. The Debtors reserve all rights to modify the Plan, including the release provisions of the Plan, and the Debtors reserve all rights and claims with respect thereto.

Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

B.     *Restructuring Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including, without limitation:  (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions; (e) all transactions necessary to provide for the purchase of substantially all of the assets of, or Interests in, any of the Debtors by one or more Entities to be wholly owned by Reorganized Shopko, which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

C.     *Cancelation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised.

D.     *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the Asset Sales, or the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

E.     *The Equitization Restructuring*

Unless otherwise determined by the Debtors before the Confirmation Hearing, the Debtors shall effectuate the Equitization Restructuring.  The following provisions shall govern the Equitization Restructuring.

1.     Sources of Consideration for Plan of Reorganization Distributions

The Reorganized Debtors shall fund distributions under the Plan from the following sources:

a.     Cash on Hand

The Reorganized Debtors shall use Cash on hand to fund distributions to certain Holders of Allowed Claims in accordance with Article III of the Plan.

         b.         Issuance and Distribution of New Shopko Interests

On the Effective Date, the Reorganized Debtors shall issue the New Shopko Interests to fund distributions to certain Holders of Allowed Claims in accordance with Article III of the Plan.  The issuance of New Shopko Interests under the Plan, as well as options, or other equity awards, if any, reserved under the Management Incentive Plan, is duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors or the Holders of Claims.

On the Effective Date, Holders of New Shopko Interests shall be parties to the New Stockholders' Agreement, in substantially the form included in the Plan Supplement.  On the Effective Date, Reorganized Shopko shall enter into and deliver the New Stockholders' Agreement to each Entity that is intended to be a party thereto, and such New Stockholders' Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of New Shopko Interests shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized Shopko.

         c.         Exit Facility

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility.  Confirmation of the Plan shall be deemed approval of the Exit Facility and the Exit Facility Documents, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the Exit Facility.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents (i) shall be deemed to be granted, (ii) shall be legal, binding, and enforceable Liens on, and security interests in, the applicable collateral in accordance with the respective terms of the Exit Facility Documents, (iii) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit Facility Documents, and (iv) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.  The Reorganized Debtors and the Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order (subject solely to the occurrence of the Effective Date) and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

         d.         Plan Sponsor Investment

On the Effective Date, the Plan Sponsor shall consummate the Plan Sponsor Investment, if any, in exchange for [●]% of the New Shopko Interests, subject to dilution by Management Incentive Plan. The Cash received from the Plan Sponsor Investment shall be contributed to the Reorganized Debtors on the Effective Date.

         2.         Corporate Existence

Except as otherwise provided in the Plan, the New Organizational Documents, the New Stockholders' Agreement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in

which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

3.      Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors, including interests held by the Debtors in their respective non-Debtor subsidiaries, shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.      Corporate Action

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (1) the implementation of the Restructuring Transactions; (2) the selection of the directors and officers for the Reorganized Debtors; (3) the entry into the Exit Facilities and the incurrence of credit thereunder; (4) the adoption of the Management Incentive Plan by the Reorganized Shopko Board; (5) the issuance and distribution of the New Shopko Interests; and (6) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors, or the other Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors, or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the Exit Facilities, the New Shopko Interests, and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Article IV.E.4 shall be effective notwithstanding any requirements under non-bankruptcy law.

5.      New Organizational Documents

On the Effective Date, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation.  The New Organizational Documents shall be consistent with section 1123(a)(6) of the Bankruptcy Code.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective states of incorporation and their respective New Organizational Documents.

6.      Directors and Officers of the Reorganized Debtors

As of the Effective Date, the terms of the current members of the board of directors of the Debtors shall expire, and the New Boards and new officers of each of the Reorganized Debtors shall be appointed in accordance with the New Organizational Documents and other constituent documents of each Reorganized Debtor.   The Reorganized Shopko Board will be composed of [●] members as of the Effective Date as follows: (a) Chief Executive Officer of the Reorganized Shopko (who shall be the Chief Executive Officer of Specialty Retail Shops Holding Corp. immediately prior to the occurrence of the Effective Date); and (b) [●].

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will, to the extent reasonably practicable, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the New Boards, as well as those Persons that will serve as officers of the Reorganized Debtors. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed. Provisions regarding the removal, appointment, and replacement of members of the New Boards will be disclosed in the New Organizational Documents.

7.      Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtors, their officers, and the members of the New Boards, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Shopko Interests, and the Exit Facilities, in the name of and on behalf of Reorganized Shopko or the Reorganized Debtors, as applicable, without the need for any approvals, authorization, or consents.

8.      Preservation of Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in the Reorganized Debtors' sole discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

9.      Director and Officer Liability Insurance

To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed. Under the Restructuring, all indemnification obligations in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements,

23

employment contracts, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

10.     Management Incentive Plan

The Reorganized Shopko Board will be authorized to implement the Management Incentive Plan.  The Management Incentive Plan shall provide for the issuance of options and/or equity based compensation to certain members of management of Reorganized Shopko.  New Shopko Interests representing up to 10% of the New Shopko Interests outstanding as of the Effective Date on a fully-diluted basis shall be reserved for issuance in connection with the Management Incentive Plan.

11.     Employee Obligations

On the Effective Date, the Debtors shall be deemed to have assumed each of the written contracts, agreements, policies, programs and plans for compensation, bonuses, reimbursement, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the Debtors' current and former employees, directors, officers, and managers, including executive compensation programs and existing compensation arrangements for the employees of the Debtors (but excluding any severance agreements with any of Debtors' former employees).

12.     Reporting Upon Emergence

On the Effective Date, none of the New Shopko Interests will be registered under the Securities Act or the Securities Exchange Act or listed on a national securities exchange, Reorganized Shopko will not be a reporting company under the Securities Exchange Act, Reorganized Shopko shall not be required to and will not file Securities Exchange Act reports with the Securities and Exchange Commission or any other entity or party, and Reorganized Shopko shall not be required to file monthly operating reports with the Bankruptcy Court after the Effective Date. In order to prevent Reorganized Shopko from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, a separate agreement or Reorganized Shopko's organizational documents may impose certain trading restrictions, and the New Shopko Interests may be subject to certain transfer and other restrictions designed to maintain Reorganized Shopko as a private, non-reporting company.

Notwithstanding the foregoing in this Section 12, from and after the Effective Date, Reorganized Shopko shall be required to provide (via separate agreement or in its organizational documents) to its shareholders audited annual and unaudited quarterly financial statements for such periods, with such statements being prepared in accordance with U.S. GAAP (for the avoidance of doubt, no SAS 100 review, compliance with any other requirement of Regulation S-X under the Securities Act or narrative disclosure required to be provided by reporting companies under the Securities Exchange Act in periodic or other reports (including, without limitation, a Management's Discussion and Analysis of Financial Condition and Results of Operations) is required in connection with the delivery of the required financial statements).  Reorganized Debtors may also be required to provide certain financial information to other parties pursuant to contracts that are in effect on or after the Effective Date.

F.     *The Asset Sale Restructuring*

If the Asset Sale Restructuring occurs, the following provisions shall govern.

1.     Vesting of Assets

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, the assets of the Debtors shall vest in the Reorganized Shopko for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the

Effective Date, the Debtors and the Reorganized Shopko may operate their business and use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

2.      Reorganized Shopko

On and after the Effective Date, the Reorganized Shopko shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) establishing and funding the Distribution Reserve Accounts, (e) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Retained Causes of Action List in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Purchase Agreements, if any, and (h) administering the Plan in an efficacious manner. The Reorganized Shopko shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

3.      Plan Administrator

The Plan Administrator shall act for the Reorganized Shopko in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, sale director of the Reorganized Shopko shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Reorganized Shopko, and shall succeed to the powers of the Reorganized Shopko's managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Shopko as further described in Article VII hereof.

4.      Dissolution and Board of the Debtors

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor. Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtors with respect to its affairs. Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of Shopko under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of Shopko or any of its affiliates.

5.      Release of Liens

Except as otherwise expressly provided herein, on the Effective Date, all Liens on any property of any Debtors or the Reorganized Shopko shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors or the Reorganized Shopko shall be automatically discharged and released.

6.      Preservation of Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the Plan Administrator all rights to commence, prosecute or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Plan Administrator pursuant to the terms of the Plan.  The Plan Administrator may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Plan Administrator may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Plan Administrator deems appropriate, including on a contingency fee basis.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Action against them.  The Debtors and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan; *provided* that the Debtors, in consultation with the Plan Administrator after the Effective Date, may prosecute any such Cause of Action against any party only in connection with their objection to and resolution of any Claim asserted by such party.  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Plan Administrator expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The Plan Administrator reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

7.      Director and Officer Liability Insurance

The Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date, and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order from the Bankruptcy Court, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed; *provided*, *however*, that the Holder(s) of a Claim for an indemnity obligation will look only to the D&O Liability Insurance Policies for recovery and not the Estates.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

If the Equitization Restructuring occurs, on the Confirmation Date, except as otherwise provided in the Plan or otherwise agreed to by the Debtors and the counterparty to an Executory Contract or Unexpired Lease, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected in the Chapter 11 Cases, shall be deemed assumed by the Reorganized Debtors, effective as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, not to be unreasonably withheld, and regardless of whether such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, other than:  (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected by a Final Order; (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.  Except as otherwise provided in the Plan, the Debtors shall assume, assume and assign, or reject, as the case may be, Executory Contracts and Unexpired Leases set forth in the applicable Schedules in the Plan Supplement.  Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order.  Unless otherwise indicated or agreed by the Debtors and the applicable contract counterparties, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law or as otherwise agreed by the Debtors and the applicable counterparty to the Executory Contract or Unexpired Lease.

If the Asset Sale Restructuring occurs, on the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) 30 days after the Debtors provide notice of surrender of possession to a landlord of a rejected lease where surrender occurs after entry of an order approving such rejection; and (3) 30 days after notice of any rejection that occurs after the Effective Date. **Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within**

27

**such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Reorganized Shopko, or the property for any of the foregoing without the need for any objection by the Debtors, Reorganized Debtors, or the Plan Administrator, as applicable, or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

If an Equitization Restructuring occurs, counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be served with a notice of rejection of Executory Contracts and Unexpired Leases substantially in the form approved by the Bankruptcy Court, pursuant to the Bankruptcy Court order approving the Disclosure Statement, as soon as reasonably practicable following entry of the Bankruptcy Court order approving the Disclosure Statement.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree. In the event of a dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the Cure Claims shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least eight days before the Voting Deadline, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Claim must be Filed by the Cure/Assumption Objection Deadline.** Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure Claim. To the extent that the Debtors seek to assume and assign an Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee in the applicable Cure Notice and/or Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned.

In the event of an unresolved dispute regarding (1) the amount of any Cure Claim, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, or (3) any other matter pertaining to assumption, assignment, or payments of any Cure Claims required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order(s) of the Bankruptcy Court.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Claim, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to, or action, order, or approval of, the Bankruptcy Court.

D.     *Indemnification Obligations*

All indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

E.     *Insurance Policies*

Without limiting Article IV.E.9, all of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

F.     *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.     *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder.

H.     *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Executory Contract or Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such

payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

     1.      Delivery of Distributions

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VI, or Interests shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors or Plan Administrator: (a) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the Plan Administrator, as applicable, after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors have not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Cases on such Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

     2.      No Fractional Distributions

No fractional shares of New Shopko Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Shopko Interests that is not a whole number, the actual distribution of shares of New Shopko Interests shall be rounded as follows: (a) fractions of one-half or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefore. The total number of authorized shares of New Shopko Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

     3.      Minimum Distributions

Holders of Allowed Claims entitled to distributions of $100 (whether Cash or otherwise) or less shall not receive distributions, and each such Claim shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claim against the Reorganized Debtors or the Plan Administrator, as applicable, or their property.

     4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtors or the Plan Administrator, as applicable, have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtors or the Plan Administrator, as applicable, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

C.      *Manner of Payment.*

Unless otherwise set forth herein, all distributions of Cash and the New Shopko Interests, as applicable, to the Holders of Allowed Claims under the Plan shall be made by the Reorganized Debtors or the Reorganized Shopko, as applicable.  At the option of the Reorganized Debtors or the Reorganized Shopko, as applicable, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

D.      *Registration or Private Placement Exemption*

If a Equitization Restructuring occurs, the New Shopko Interests are or may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

Pursuant to section 1145 of the Bankruptcy Code, the issuances of the New Shopko Interests as contemplated by the Plan are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  The New Shopko Interests (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of Reorganized Shopko as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of Title 11 of the United States Code.

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Shopko Interests through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Shopko Interests or under applicable securities laws.  DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Shopko Interests issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Shopko Interests issued under the Plan are exempt from registration and/or eligible for DTC book entry delivery, settlement, and depository services.

E.      *Tax Issues and Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Reorganized Debtors or the Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors or the Plan Administrator, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors or the Plan Administrator, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

F.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

G.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

H.    *Setoffs and Recoupment*

The Debtors or the Reorganized Debtors or Reorganized Shopko, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or the Reorganized Shopko of any such Claim it may have against the Holder of such Claim.

I.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor, Reorganized Debtor, or Reorganized Shopko, such Claim shall be Disallowed without an objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, Reorganized Debtor, or Reorganized Shopko on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor, Reorganized Debtor, or Reorganized Shopko, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything herein to the contrary (including, without limitation, Article VIII), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**THE PLAN ADMINISTRATOR**

The following provisions shall apply only if an Asset Sale Restructuring occurs and a Plan Administrator is appointed.

A.    *The Plan Administrator*

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors and the Reorganized Shopko, including:  (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Reorganized Shopko; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts; (3) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Reorganized Shopko; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Reorganized Shopko; (7) administering and paying taxes of the Reorganized Shopko, including filing tax returns; (8) representing the interests of the Reorganized Shopko or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Reorganized Shopko shall be terminated.

1.    Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order.  The Plan Administrator shall be the exclusive trustee of the assets of the Reorganized Shopko for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.    Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Reorganized Shopko from the Wind-Down Reserve upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

3.    Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Wind-Down Reserve.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

4.    Plan Administrator Expenses

All costs, expenses and obligations incurred by the Plan Administrator in administering this Plan, the Reorganized Shopko, or in any manner connected, incidental or related thereto, in effecting distributions from the

Reorganized Shopko thereunder (including the reimbursement of reasonable expenses) shall be a charge against the assets of the Reorganized Shopko remaining from time to time in the hands of the Plan Administrator.  Such costs, expenses and obligations shall be paid from the Wind-Down Reserve.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

B.      *Wind-Down*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall:  (1) cause the Debtors and the Reorganized Shopko, as applicable, to comply with, and abide by, the terms of the Purchase Agreements and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the Effective Date, except with respect to the Reorganized Shopko as set forth herein, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

C.      *Exculpation, Indemnification, Insurance & Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Reorganized Shopko.  The Plan Administrator may obtain, at the expense of the Reorganized Shopko and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Reorganized Shopko.  The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

D.      *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

E.      *Dissolution of the Reorganized Shopko*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Reorganized Shopko shall be deemed to be dissolved without any further action by the Reorganized Shopko, including the filing of any documents with the secretary of state for the state in which the Reorganized Shopko is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Reorganized Shopko in and withdraw the Reorganized Shopko from applicable state(s).

## ARTICLE VIII.
## RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR

The following provisions shall apply only if an Asset Sale Restructuring occurs and a Plan Administrator is appointed.

A.      *Establishment of Reserve Accounts*

The Plan Administrator shall establish each of the Distribution Reserve Accounts (which may be affected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Plan Administrator).

B.      *Undeliverable Distribution Reserve*

1.      Deposits

If a distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article I.A.1 of this Plan.

2.      Forfeiture

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within three months after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against any Debtor, any Estate, the Plan Administrator, the Reorganized Shopko, or their respective properties or assets. In such cases, any Cash or other property held by the Reorganized Shopko in the Undeliverable Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Reorganized Shopko, notwithstanding any federal or state escheat laws to the contrary, and shall promptly be transferred to the General Account to be distributed according to the priority set forth in Article VIII.G without any further action or order of the Court; *provided* that any undeliverable or unclaimed distribution on account of an Allowed General Unsecured Claim shall be transferred to the GUC Asset Sale Reserve.

3.      Disclaimer

The Plan Administrator and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Claim Holder, or (ii) obtain an executed Internal Revenue Service Form W-9 from any Claim Holder; *provided* that in his or her sole discretion, the Plan Administrator may periodically publish notice of unclaimed distributions.

4.      Distribution from Reserve

Within fifteen (15) Business Days after the Holder of an Allowed Claim satisfies the requirements of this Plan, such that the distribution(s) attributable to its Claim is no longer an undeliverable or unclaimed distribution (provided that satisfaction occurs within the time limits set forth in Article I.A.1 of this Plan), the Plan Administrator shall distribute out of the Undeliverable Distribution Reserve the amount of the undeliverable or unclaimed distribution attributable to such Claim, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, to the General Account.

C.    *Priority Claims Reserve*

On the Effective Date, the Plan Administrator shall establish the Priority Claims Reserve by depositing Cash in the amount of the Priority Claims Reserve Amount into the Priority Claims Reserve. The Priority Claims Reserve Amount shall be used to pay Holders of all Allowed Priority Claims and Allowed Administrative Claims their respective Pro Rata share of the Priority Claims Reserve, to the extent that such Priority Claims and Administrative Claims have not been paid in full on or before the Effective Date. If all or any portion of a Priority Claim or Administrative Claim shall become a Disallowed Claim, then the amount on deposit in the Priority Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Priority Claims Reserve, shall remain in the Priority Claims Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Priority Claims Reserve is sufficient to ensure that all Allowed Priority Claims and Allowed Administrative Claims will be paid in accordance with the Plan, and shall otherwise promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Court. Any amounts remaining in the Priority Claims Reserve after payment of all Allowed Priority Claims and Allowed Administrative Claims shall promptly be transferred to the General Account and shall be distributed according to the priority set forth in Article VIII.G without any further action or order of the Court.

D.    *Wind-Down Reserve*

On the Effective Date, the Plan Administrator shall establish the Wind-Down Reserve by depositing Cash in the amount of the Wind-Down Amount into the Wind-Down Reserve. The Wind-Down Reserve shall be used by the Plan Administrator solely to satisfy the expenses of the Reorganized Shopko and the Plan Administrator as set forth in the Plan; *provided* that all costs and expenses associated with the winding up of the Reorganized Shopko and the storage of records and documents shall constitute expenses of the Reorganized Shopko and shall be paid from the Wind-Down Reserve. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes. Any amounts remaining in the Wind-Down Reserve after payment of all expenses of the Reorganized Shopko and the Plan Administrator shall promptly be transferred to the General Account and shall be distributed according to the priority set forth in Article VIII.G without any further action or order of the Court.

E.    *Other Secured Claim Reserve*

On the Effective Date, the Plan Administrator shall establish the Other Secured Claims Reserve by depositing Cash in the amount of the Other Secured Claims Reserve Amount into the Other Secured Claims Reserve. The Other Secured Claims Reserve Amount shall be used to pay Allowed Other Secured Claims. If all or any portion of an Other Secured Claim shall become a Disallowed Claim, then the amount on deposit in the Other Secured Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Other Secured Claims Reserve, shall remain in the Other Secured Claims Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Other Secured Claims Reserve is sufficient to ensure that all Allowed Other Secured Claims will be paid in accordance with the Plan, and shall otherwise promptly be transferred to the General Account to be distributed in accordance with the Plan without any further action or order of the Court. Any amounts remaining in the Other Secured Claims Reserve after satisfaction of all Allowed Other Secured Claims shall promptly be transferred to the General Account and shall be distributed according to the priority set forth in Article VIII.G without any further action or order of the Court.

F.    *GUC Asset Sale Reserve*

On the Effective Date, the Plan Administrator shall establish and thereafter maintain the GUC Asset Sale Reserve in a separate, segregated account by depositing the Distribution Proceeds into the GUC Asset Sale Reserve.

The Distribution Proceeds shall be used to pay Allowed General Unsecured Claims on a Pro Rata basis.  If all or any portion of a General Unsecured Claim shall become a Disallowed Claim, then the amount on deposit in the GUC Asset Sale Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the GUC Asset Sale Reserve, shall remain in the GUC Asset Sale Reserve and be distributed to holders of Allowed General Unsecured Claims in accordance with the Plan.

Notwithstanding anything to the contrary herein, neither the Plan Administrator, the Reorganized Shopko nor any other party in interest shall be obligated to fund the GUC Asset Sale Reserve in an aggregate amount in excess of the Distribution Proceeds.

G.       *Distribution Proceeds/Priority Waterfall*

After the funding of the Priority Claims Reserve, the Other Secured Claims Reserve, the Professional Fee Escrow Account, and the Wind-Down Reserve, the Plan Administrator shall deliver to the DIP Agent, on a periodic basis, all Distribution Proceeds available for distribution from time to time to the Holders of Allowed DIP Claims pursuant to Article II.A hereof.

After the DIP Claims have been paid in full, the Plan Administrator shall deliver to the Credit Agreement Primary Agent and the Term Loan B-1 Agent, as applicable, on a periodic basis, all Distribution Proceeds available for distribution from time to time to the Holders of Allowed Revolving Loan A Claims, Revolving Loan A-1 Claims, Term Loan B Claims, and Term Loan B-1 Claims, pursuant to Article III.B.3 hereof to be paid on account of, and pursuant to the priority set forth in the Credit Agreement, the Allowed Revolving Loan A Claims, Revolving Loan A-1 Claims, Term Loan B Claims.

After the Revolving Loan A Claims, Revolving Loan A-1 Claims, Term Loan B Claims, and Term Loan B-1 Claims have been paid in full, all remaining Distribution Proceeds shall be allocated and paid to the applicable Holders of Claims until paid in full from time to time in the following priority (in each case on a Pro Rata basis): (i) *first*, on account of all Allowed Priority Claims and Allowed Administrative Claims; and (ii) *second,* on account of any Allowed General Unsecured Claims.

H.       *The General Account and Distribution Reserve Account Adjustments*

Beginning on the first anniversary of the Effective Date or at such other times as the Plan Administrator shall determine as appropriate, and thereafter, on each anniversary of the Effective Date, the Plan Administrator shall determine the amount of Cash required to adequately maintain each of the Distribution Reserve Accounts (other than the GUC Asset Sale Reserve).  Other than with respect to amounts held in the GUC Asset Sale Reserve, if after making and giving effect to any determination referred to in the immediately preceding sentence, the Plan Administrator determines that any Distribution Reserve Account (i) contains Cash in an amount in excess of the amount then required to adequately maintain such Distribution Reserve Account, then at any such time the Plan Administrator shall transfer such surplus Cash to the General Account to be used or distributed according to the priority set forth in this Article VIII.H, or (ii) does not contain Cash in an amount sufficient to adequately maintain such Distribution Reserve Account (other than the GUC Asset Sale Reserve), then at any such time the Plan Administrator shall transfer Cash from the General Account, to the extent Cash is available in the General Account until the deficit in such Distribution Reserve Account is eliminated.  Any funds in the General Account not needed to eliminate a Distribution Reserve Account deficit shall be allocated and paid in the following priority (in each case on a Pro Rata basis):  (x) *first*, to the extent such funds constitute Distribution Proceeds, pursuant to the priority set forth in the Credit Agreement, to each Holder of an Allowed Revolving Loan A Claim, Revolving Loan A-1 Claim, Term Loan B Claim, Term Loan B-1 Claim until such Allowed Revolving Loan A Claim, Revolving Loan A-1 Claim, Term Loan B Claim, Term Loan B-1 Claims paid are full; and (z) *second*, to each Holder of an Allowed General Unsecured Claim.

# ARTICLE IX.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims*

After the Effective Date, each of the Reorganized Debtors or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, shall have the sole authority to File and prosecute objections to Claims, and the Reorganized Debtors shall have the sole authority to:  (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  On and after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise.

C.      *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors, Reorganized Debtors, or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Claims Reserve*

If the Equitization Restructuring occurs, on the Effective Date, the Reorganized Debtors shall establish the GUC Equitization Reserve, which GUC Equitization Reserve shall be funded with the GUC Equitization Distribution and shall be administered by the Reorganized Debtors.  As soon as practicable after the Effective Date, the Reorganized Debtors shall make a Pro Rata distribution to all Allowed General Unsecured Claims from the GUC Equitization Reserve using the amount of the GUC Equitization Distribution as the denominator in calculating such Pro Rata distribution.  The Reorganized Debtors shall make one or more additional distributions to General Unsecured

Claims, in its discretion, until all General Unsecured Claims have been resolved. The Reorganized Debtors shall hold Cash in the GUC Equitization Reserve in the same Pro Rata share in trust for the benefit of the Holders of Disputed General Unsecured Claims. Once all General Unsecured Claims have been resolved, the Reorganized Debtors shall make a final distribution in order to distribute the remaining Cash in the GUC Equitization Reserve Pro Rata to all Allowed General Unsecured Claims using the total amount of Allowed General Unsecured Claims as the denominator. The Reorganized Debtors shall distribute all such amounts (net of any expenses, including any taxes relating thereto but excluding any legal fees or time of employees of the Reorganized Debtors associated with the reconciliation of such claims), as provided herein, as such Claims or Interests are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date under Article III of the Plan solely to the extent of the amounts available in the GUC Equitization Reserve.

E.      *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, without an objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

F.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

G.      *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors or the Plan Administrator, as applicable. All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**Except as otherwise provided herein or as agreed to by the Reorganized Debtors or the Plan Administrator, as applicable, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of, the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

H.      *Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Reorganized Debtors, or the Plan Administrator, as applicable, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court to the maximum extent provided by applicable law.

I.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtors or the Plan Administrator, as applicable.

J.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtors shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

## ARTICLE X.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS[5]

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have, or any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors or the Plan Administrator, as applicable, may compromise and settle any Claims and Causes of Action against other Entities.

B.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action against any Debtor of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Causes of Action accrued before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. Unless expressly provided in the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

---

[5]     The Special Committee, with the assistance of its counsel and advisors, is currently undertaking an investigation into Estate claims and Causes of Action. The Debtors reserve all rights to modify the Plan, including the release provisions of the Plan, and the Debtors reserve all rights and claims with respect thereto.

C.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

D.    **Release of Liens**

**Except as otherwise specifically provided in the Plan, the Exit Facility Documents, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors or the Reorganized Shopko, as applicable, and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors, Reorganized Debtors, or the Reorganized Shopko, as applicable. The DIP Agent, the Credit Agreement Primary Agent, and the Term Loan B-1 Agent shall execute and deliver all documents reasonably requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.**

E.    **Debtor Release**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, Plan Administrator, and their Estates from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, Plan Administrator, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:**

(a)    **the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Documents;**

(b)    **any Restructuring Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan;**

(c)    **the Chapter 11 Cases, the Disclosure Statement, the Plan, the DIP Credit Agreements, the DIP Facilities, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the New Shopko Interests) pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or**

(d)    **the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Document, or any**

41

document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth above, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the releases set forth above are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the releases set forth above; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (6) a bar to any of the Debtors asserting any claim released by the releases set forth above against any of the Released Parties.

F.      *Release by Holders of Claims or Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, or the Reorganized Shopko, as applicable, and other Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

(a)      the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the other Restructuring Documents;

(b)      any Restructuring Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan;

(c)      the Chapter 11 Cases, the Disclosure Statement, the Plan, the DIP Credit Agreements, the DIP Facilities, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or

(d)      the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release set forth above, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the third-party release set forth above is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing

Parties asserting any Claim released by the third-party release set forth above against any of the Released Parties.

G.    *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the Plan, the DIP Credit Agreements, the DIP Facilities, the Exit Facility Credit Agreement, the Exit Facility Documents, or any Restructuring Document, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon closing of the Chapter 11 Cases or the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

H.    *Injunction*

Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Reorganized Debtors or the Reorganized Shopko, as applicable, or the other Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

I.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup against such Claim any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has provided notice of such recoupment in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article XI.B hereof):

1.      if the Equitization Restructuring occurs, all conditions precedent to the effectiveness of the Exit Facilities shall have been satisfied or duly waived;

2.      the Confirmation Order shall have been duly entered and in full force and effect;

3.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Restructuring;

4.      all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court; and

5.      the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan.

B.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article XI may be waived only by consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.      *Effect of Nonoccurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of or related to the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      resolve any matters related to:  (a) the assumption or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims

45

related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.        ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.        adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.        adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.        enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.        enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.        resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.        issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.I.1 hereof;

14.        enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.        determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

16.        adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.        consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.        determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.       hear and determine all disputes involving the Exit Facilities;

20.       hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.       hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

22.       enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

23.       hear any other matter not inconsistent with the Bankruptcy Code;

24.       enter an order closing the Chapter 11 Cases; and

25.       enforce the injunction, release, and exculpation provisions provided in Article VIII hereof.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article XI.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order, shall be immediately effective and enforceable and deemed binding upon the Debtors, Reorganized Debtors, or Reorganized Shopko, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims and Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Dissolution of the Creditors' Committee*

On the Effective Date, the Creditors' Committee, if any is appointed, shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the Creditors' Committee and its Professionals.  The Reorganized Debtors or Reorganized Shopko, as applicable, shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date.

D.      *Reservation of Rights*

Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to any Claims or Interests.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to, the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Service of Documents*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

the Debtors:      Specialty Retail Shops Holding Corp.
700 Pilgrim Way
Green Bay, Wisconsin 54304
Attn.: Russ Steinhorst

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn.:  Patrick J. Nash, Jr., P.C., and Travis Bayer

-and-

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn.:  Steven Serajeddini and Daniel Rudewicz

-and-

McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Attn.:  James J. Niemeier

After the Effective Date, the Reorganized Debtors or Reorganized Shopko, as applicable, shall have the authority to send a notice to parties in interest providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors or the Reorganized Shopko, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.       *Entire Agreement*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.       *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at **https://cases.primeclerk.com/Shopko**.

I.       *Nonseverability of Plan Provisions*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

J.       *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Reorganized Debtors or Reorganized Shopko, as applicable, will have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

K.       *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

49

Respectfully submitted, as of the date first set forth above,

SPECIALTY RETAIL SHOPS HOLDING CORP. (on behalf
of itself and all other Debtors)

By:    */s/ Russell Steinhorst*

Name:    Russell Steinhorst

Title:    Chief Executive Officer