**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064-TLS |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 16** |

**INTERIM ORDER GRANTING THE
DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO ASSUME
THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES
FOR STORE CLOSING SALES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Interim Order"): (a) authorizing the Debtors to assume the Consulting Agreement, (b) authorizing and approving the Sale Guidelines, with such sales to be free and clear of all liens, claims, and encumbrances, (c) granting related relief and (d) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

FOUND AND DETERMINED THAT:[3]

1.  The Debtors have advanced sound business reasons for seeking to assume the Consulting Agreement, Letter Agreements, and adopt the Sale Guidelines, on an interim basis subject to the Final Hearing, as set forth in the Motion and at the Hearing, and entering into the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

2.  The conduct of the Store Closings in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Store Closure Assets.

3.  The Consulting Agreement was negotiated, proposed and entered into by the Consultant and the Debtors without collusion, in good faith, and from arm's length bargaining positions.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052

4.     The assumption of the Consulting Agreement on an interim basis is a sound exercise of the Debtors' business judgment.

5.     The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient and sound business purposes and justifications for the relief approved herein.

6.     The Store Closings and Sales are in the best interest of the Debtors' estates.

7.     The entry of this Interim Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore;

IT IS HEREBY ORDERED THAT:

8.     The Motion is granted on an interim basis as set forth in this Interim Order.

9.     The final hearing (the "Final Hearing") on the Motion shall be held on February 7, 2019, at 1:00 PM, prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time on February 4, 2019, and served on the following parties:  (a) the Debtors, Specialty Retail Shops Holding Corp., 700 Pilgrim Way, Green Bay, Wisconsin 54304, Attn:  Russell L. Steinhorst, Chief Operating Officer; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn:  Travis Bayer, Esq.; Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Steven Serajeddini, Esq. (c) proposed co-counsel to the Debtors, McGrath North Mullin & Kratz, P.C. LLO, 1601 Dodge St., Omaha, Nebraska 68102, Attn: James Niemeier, Esq.; (d) the Office of the United States Trustee for the District of Nebraska, 111 South 18th Plaza, # 1125 Omaha, Nebraska 68102, Attn:  Jerry Jensen, Esq.; (e) counsel to Wells Fargo Bank, N.A., Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Chad Simon,

Esq.; and (f) counsel to the official committee of unsecured creditors (if any) appointed in these chapter 11 cases (collectively, the "Notice Parties").

10. The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Order.

11. To the extent of any conflict between this Interim Order, the Sale Guidelines, and the Consulting Agreement, the terms of this Interim Order shall control over all other documents and the Sale Guidelines shall control over the Consulting Agreement.

12. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall take effect immediately upon its entry.

I. **Authority to Assume the Consulting Agreement and Letter Agreements.**

13. The assumption of the Consulting Agreement and Letter Agreements by the Debtors pursuant to section 365 of the Bankruptcy Code is approved on an interim basis. The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreement and Letter Agreements, including, (i) making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant or a further order of the Court, (ii) allowing the sale of Additional Consultant Goods, and (iii) participating in an Augmentation Program, all as permitted under the Consulting Agreement. Consultant's fees and expenses shall be paid from the gross proceeds of the Sales, without adherence to any weekly, monthly or aggregate limitation in a DIP financing or cash collateral budget entered in connection with these chapter 11 cases, but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budget attached thereto.

14. Subject to the restrictions set forth in this Interim Order and the Sale Guidelines, the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Sales; and each of the

4

transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Store Closings prior to the date of this Interim Order, are hereby approved and ratified.

15. Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of the Consultant's fraud, willful misconduct, or gross negligence.

**II. Authority to Engage in Store Closings.**

16. The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct the Store Closings in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreement.

17. The Sale Guidelines are approved in their entirety on an interim basis.

18. The Debtors are authorized to discontinue operations at the Stores in accordance with this Interim Order and the Sale Guidelines.

19. All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

20. Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Store Closings and to take the related actions authorized herein.

**III.    Conduct of the Sales.**

21.     All newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales and the sale of Merchandise and FF&E pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines and the Consulting Agreement.

22.     The Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closings without necessity of further order of this Court as provided in the Consulting Agreement or the Sale Guidelines, including, but not limited to, advertising the sale as a "store closing sale", "sale on everything", "everything must go", or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

23.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise and FF&E, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (a) the Final Hearing, or (b) within two business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

24. Except as expressly provided in the Consulting Agreement, the sale of the Merchandise and FF&E shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the Merchandise and FF&E), the rejection of leases, abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Sales or the Store Closings. Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided*, the Store Closings and Sales are conducted in accordance with the terms of this Interim Order and the Sale Guidelines. The Consultant and landlords of the closing locations are authorized to enter into agreements (the "Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Consultant and any such landlords, *provided* that nothing in such Side Letters affects the provisions of this Interim Order. In the event of any conflict between the Sale Guidelines, this Order, and any Side Letter, the terms of such Side Letter shall control.

25. Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales or the sale of Merchandise or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or

7

otherwise impeding, the conduct of the Store Closings, and/or (b) instituting any action or proceeding in any court (other than in the Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or other liquidation sales at the closing locations and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

26. In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Interim Order.

27. All sales of Store Closure Assets shall be "as is" and final. Returns related to the purchase of Store Closure Assets shall not be accepted at stores that are not participating in the Store Closings.

28. The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The

Consultant shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Consulting Agreement. This Interim Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

29. Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell and all sales of Store Closure Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all of any liens, claims, encumbrances, and other interests; provided, however, that any such of any liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

30. To the extent that the Debtors propose to sell or abandon FF&E which may contain personal and/or confidential information about the Debtors' employees and/or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

31. The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets among, and into, the Stores. The Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement.

32. Notwithstanding this or any other provision of this Interim Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or

9

otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Consulting Agreement pursuant to an agency agreement or otherwise ("Additional Assets"). The Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, *provided* that such services guarantee, transaction, or acquisition is approved by separate order of this Court.

33. The Debtors and the Consultant are authorized and empowered to include Additional Consultant Goods in the Sale in accordance with this Order and the Closing Store Agreement. Sales of Additional Consultant Goods shall be run through the Debtors' cash register systems; provided, however, that the Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise. The Consultant shall provide signage in the Closing Stores notifying customers that Additional Consultant Goods has been included in the sale.

34. Subject solely to the Consultant's obligations to pay the Additional Consultant Goods Fee, at all times and for all purposes, the Additional Consultant Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including the Debtor's secured lenders), shall have any claim against any of the Additional Consultant Goods or their proceeds. Subject solely to Consultant's obligations to pay the Debtors the Additional Consultant Goods Fee and the security interest of the lenders in such Additional Consultant Goods Fee, the Additional Consultant Goods and the identifiable proceeds thereof are

10

not properly of the Debtors or their estates and do not constitute property of the Debtors' or their estates subject to any lender's lien. The Additional Consultant Goods shall at all times remain subject to the exclusive control of the Consultant, and the Liquidation Consultant shall insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard thereto.

35.   The Additional Consultant Goods shall be consigned to Debtors as a true consignment under Article 9 of the Uniform Commercial Code ("UCC"). The Liquidation Consultant is hereby granted a valid, binding and enforceable first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the gross proceeds, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Consultant is hereby authorized to deliver (and Debtors shall cooperate with the delivery of) all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Consultant's interest in the Additional Consultant Goods as consigned goods thereunder and the Debtors as the consignees therefor, and Consultant's security interest in and lien upon such Additional Consultant Goods and proceeds thereof).

**IV.   Procedures Relating to Additional Stores.**

36.   To the extent that the Debtors seek to conduct the Sales at any Additional Closing Store, the Sale Guidelines and this Interim Order shall apply to the Additional Closing Stores.

37.   Prior to conducting the Sales at any Additional Closing Store, the Debtors will file a list of such Additional Closing Stores with this Court (the "Additional Closing Store List"), and serve a notice of their intent to conduct the Sales at the Additional Closing Stores on the applicable landlords (the "Additional Closing Store Landlords") and interested parties, including the U.S. Trustee, the DIP ABL Agent, the DIP Term Loan B Agent, any statutory committee of creditors appointed in the Merchant's bankruptcy case, the prepetition secured parties that comprise the

11

Merchant's capital structure, by email (to the extent available to the Debtors) or overnight mail. With respect to Additional Closing Store Landlords, the Debtors will mail such notice to the notice address set forth in the lease for such Additional Closing Store (or, if none, at the last known address available to the Debtors).

38. The Additional Closing Store Landlords and any interested parties shall have seven days after service of the applicable Additional Closing Store List to object to the application of this Interim Order or the Final Order. If no timely objections are filed with respect to the application of this Interim Order or the Final Order to an Additional Closing Store, the Debtors should be authorized, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, to proceed with conducting the Sales at the Additional Closing Store in accordance with this Interim Order or the Final Order, as applicable, the Sale Guidelines, and the Consulting Agreement. If any objections are filed with respect to the application of this Interim Order or the Final Order, as applicable, to an Additional Closing Store, and such objections are not resolved, the objections and the application of this Interim Order or the Final Order, as applicable, to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary, so that the Debtors can move promptly to maximize value and minimize expenses for the benefit of their creditors and stakeholders.

**V.    Dispute Resolution Procedures with Governmental Units.**

39. Nothing in this Interim Order, the Consulting Agreement, or the Sale Guidelines, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this

12

Interim Order, the Consulting Agreement, or the Sale Guidelines shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.  The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, the "General Laws").  Nothing in this Interim Order, the Consulting Agreement, or the Sale Guidelines, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Interim Order.  Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

40.  To the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the sale

and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the dispute resolution procedures in this section shall apply.

    i.    Provided that the Sales are conducted in accordance with the terms of the Interim Order, or the Final Order, as applicable, and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors and the Consultant will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of the Interim Order, or the Final Order, as applicable, and the Sale Guidelines without the necessity of further showing compliance with any Liquidation Sale Laws.

    ii.    Within three business days after entry of the Interim Order, the Debtors will serve by first-class mail, copies of the Interim Order, the proposed Final Order, the Consulting Agreement, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Sales are being held; (c) the division of consumer protection for each state where the Sales are being held; (d) the chief legal counsel for the local jurisdiction; and (e) the landlords for the Stores (collectively, the "Dispute Notice Parties").

    iii.    With respect to any Additional Closing Stores, within three business days after filing any Additional Closing Store List with the Court, the Debtors will serve by first-class mail, copies of the Interim Order or Final Order, as applicable, the Consulting Agreement, and the Sale Guidelines on the Dispute Notice Parties.

    iv.    To the extent that there is a dispute arising from or relating to the Sales, the Interim Order, or the proposed Final Order, as applicable, the Consulting Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of the Interim Order, or service of an Additional Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Travis Bayer and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Steven N. Serajeddini; (b) proposed local counsel to the Debtors McGrath North Mullin & Kratz, P.C. LLO, 1601 Dodge St., Omaha, Nebraska 68102, Attn: James Niemeier, Esq., and (c) Riemer Braunstein, Seven Times Square, New York New York 10036, Attn: Steven Fox, Esq. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

14

  v.  In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order, or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any Interim Order or Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to the Interim Order or the Final Order, absent further order of the Court.  Upon the entry of the Interim Order or the Final Order, as applicable, the Court grants authority for the Debtors and the Consultant to conduct the Sales pursuant to the terms of the Interim Order or the Final Order, as applicable, the Consulting Agreement, and/or the Sale Guidelines and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

41. Subject to paragraphs 36 and 37 above, each and every federal, state, or local agency, departmental or Governmental Unit with regulatory authority over the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sales.

42. Provided that the Sales are conducted in accordance with the terms of this Interim Order, the Consulting Agreement, and the Sale Guidelines, and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of this Interim Order and the Sale Guidelines without the necessity of further showing compliance with any such Liquidation Sale Laws.

43. Within three business days of this Interim Order, the Debtors shall serve copies of this Interim Order, the Consulting Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on: (a) the Debtors, Specialty Retail Shops Holding Corp., 700 Pilgrim Way, Green Bay, Wisconsin, 54304, Attn: Russell L. Steinhorst, Chief Operating Officer; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Travis Bayer, Esq.; Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Steven Serajeddini, Esq. (c) proposed co-counsel to the Debtors, McGrath North Mullin & Kratz, P.C. LLO, 1601 Dodge St., Omaha, Nebraska 68102, Attn: James Niemeier, Esq.; (d) the Office of the United States Trustee for the District of Nebraska, 111 South 18th Plaza, # 1125 Omaha, Nebraska 68102, Attn: Jerry Jensen, Esq.; (e) counsel to Wells Fargo Bank, N.A., Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Chad Simon, Esq.; and (f) counsel to the official committee of unsecured creditors (if any) appointed in these chapter 11 cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**VI.    Other Provisions.**

44. The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

45. To the extent the Debtors are subject to any state "fast pay" laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

46.  Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim, (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, priority or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

47.  Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

48.  The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

49.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

50.  Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent possible.

51.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

52. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Omaha, Nebraska
Dated: __January 18__, 2019        /s/Thomas L. Saladino
                                    UNITED STATES BANKRUPTCY JUDGE