IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., | ) | Case No. |
| *et al.,* [1] | ) | |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MOTION OF MCKESSON CORPORATION INC. TO TRANSFER VENUE OF AFFILIATED CHAPTER 11 BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF WISCONSIN**

By this Motion, McKesson Corporation ("McKesson"), seeks the entry of an order transferring venue for the affiliated bankruptcy cases of Shopko Stores to the United States Bankruptcy Court for the Eastern District of Wisconsin (the "Wisconsin Court").

## I.    INTRODUCTION

1.    On January 16, 2019 (the "Petition Date"), the Debtors filed thirteen separate bankruptcy petitions pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court").

2.    It appears that the sole basis for the venue of the Debtors' bankruptcy cases in Nebraska is by virtue of the first-filing Debtor entity, Pamida Transportation LLC (Pamida Transportation"). That entity is the only Debtor that was formed under the laws of Nebraska;

---

[1] The thirteen Debtors in these chapter 11 cases are: Specialty Retail Shops Holding Corp.; Pamida Stores Operating Co., LLC; Pamida Transportation LLC; Penn-Daniels, LLC; Place's Associates' Expansion, LLC; Retained R/E SPE, LLC; Shopko Finance, LLC; ShopKo Gift Card Co., LLC; ShopKo Holding Company, LLC; ShopKo Institutional Care Services Co., LLC; ShopKo Optical Manufacturing, LLC; ShopKo Properties, LLC; ShopKo Stores Operating Co., LLC; SVS Trucking, LLC. Debtors are sometimes referred to collectively in this Motion as "Shopko."

BN 35493201v1

upon its filing venue is purportedly appropriate for all of the Debtors' other entities as "affiliates" of Pamida Transportation pursuant to 28 U.S.C. § 1408(2).[2]

3. Formed in December 20, 2005, Pamida Transportation appears to be nothing more than a vestige of Pamida Stores, a Nebraska-based retailer that was purchased by Shopko and subsumed into Shopko's operations. A business report on Pamida Transportion demonstrates that it has no employees, lists an address that no longer corresponds with the business located there and includes a telephone number that is "de-listed" according to the Lexis Public Records search.[3] An accurate copy of the Lexis search that contains this information is annexed to the contemporaneously-filed Declaration of Bernard D. Bollinger, Jr. (the "Bollinger Declaration") as Exhibit 1.

4. The address listed on Pamida Transportation's petition also does not appear to correspond with any business located there. Attempts to obtain a list of creditors for Pamida Transportation have not been successful, as Debtors' counsel has not yet provided the list that was requested two days ago in part due to insistence upon a confidentiality agreement even though this Court made clear at the first day hearings in this case that individual creditor lists should be provided upon request. The Debtors' failure to provide the creditor lists as of the filing of this Motion is demonstrated by the emails annexed to the Bollinger Declaration as Exhibit 2.

---

[2] Of the remaining Shopko entities that filed, six were formed in Delaware; three were formed in Minnesota; two in Wisconsin and one in Mississippi. An accurate copy of the list of entities and their states' of formation is annexed to the Bollinger Declaration Exhibit 3.

[3] Multiple attempts to call that number resulted in a failure of any party to answer the line. A gGoogle search of Pamida Transporation revealed an address at 700 Pilgrim Way, Green Bay, WI and a phone number of (920) 429-2211that is the number for Shopko's corporate offices there.

BN 35493201v1

5. Instead of listing its creditors, the Pamida Transportation petition includes a consolidated list of Debtors' 30 largest creditors. None of those creditors has a mailing address in Nebraska and none appears to be a creditor of Pamida Transportation.

6. Pursuant to the interim financing arrangement approved by the Bankruptcy Court, the administrative agent and collateral agent for itself and others that are parties to the Debtors' debtor-in-possession credit agreement is Wells Fargo Bank, NA ("Wells"), successor by merger to Wachovia Bank N.A ("Wachovia").  Wells is headquartered in San Francisco California.

7. While the initial UCC Financing Statements filed by Wachovia were filed in Nebraska and indicated a mailing address for Pamida Transportation identical to that listed on the petition filed with this Court, on March 5, 2013, Wachovia filed a UCC Financing Statement Amendment changing the address of Pamida Transportation from its former Nebraska address to 700 Pilgrim Way, Green Bay WI, 54304.  Bollinger Declaration at Exhibit 4.  That address is the same address listed as the principal place of business and mailing address on eleven of the thirteen bankruptcy petitions filed by Debtors.

8. In fact, it cannot be questioned that Shopko's principal place of business is located at that address in Green Bay.  That is where Shopko is headquartered and that address is Debtors' mailing address.  Declaration of Russell L. Steinhorst (Docket No. 4) at para. 5.

9. The Shopko website does list twenty-seven of its "over 300 general merchandise stores throughout the Midwestern, Northwestern and Southwestern regions of the United States" as being located in Nebraska, and one of its three distribution centers is also located in Nebraska. Nevertheless, an address search on the Shopko website of that listed for Pamida Transportation yields no Shopko stores at that address and a general search of that address on the site yields no results.

10. As set forth herein, overwhelming cause exists to transfer venue of the Debtors' bankruptcy cases to the Wisconsin Court.  The interests of creditors, employees and other interested parties is best served by having this bankruptcy case administered by the Wisconsin Court as that is the location of Debtors' principal place of business and is the "nerve center" for Debtor's business operations.

11. All of these reasons, and many more, support transferring venue of these just-filed Chapter 11 cases.

## II.   LEGAL ANALYSIS

### A.   Venue Transfer to the Eastern District of Wisconsin Is Warranted.

12. Section 1408 of Title 28 of the United State Code establishes the venue eligibility requirements for the filing of a bankruptcy case, providing for venue in the district where a debtor is domiciled, has its principal place of business or where its principal assets are located.  It also provides that venue is appropriate in that district for a debtor's affiliates.  Thus, while on first glance the Debtors may technically meet the requirements for venue in the Bankruptcy Court for the District of Nebraska, a deeper analysis reveals that Debtors "manufactured" venue in a locale nearly 600 miles from its nerve center in Green Bay by filing a petition for an entity that has no business operations, employees or creditors.

13. The only reasonable conclusion to be drawn is that the Debtors have engaged in forum shopping in an effort to neutralize creditor involvement in these bankruptcy cases. The Debtors know the geographical location of the body of its creditors. By requiring them to participate in a distant court, the Debtors seek to minimize their impact on the Debtors' restructuring efforts. Venue in Nebraska helps ensures that creditors will be disenfranchised from complete and effective participation in these bankruptcy cases. The Debtors are taking advantage of the fact that absent full and vigorous involvement by the broad range of creditor

constituencies in these cases, they will be able to advance their own interests (and potentially the interests of unknown others) at the expense of their creditors, thereby subverting the goals and policies of the Bankruptcy Code.

14. Several courts have concluded that when a debtor manufactures eligibility, venue is improper and transfer of the debtor's case is warranted. For example, a Bankruptcy Court in the Southern District of New York transferred venue when it found that a subsidiary was formed on the eve of the bankruptcy filing in order to create eligibility in the filing jurisdiction. *In re Patriot Coal Corp.*, 482 B.R. 718 (Bankr. S.D.N.Y. 2012). There, two New York corporations had been formed on the eve of bankruptcy, had minimal assets and were formed so that the "main" debtor and 98 of its other affiliates could file chapter 11 petitions in the Bankruptcy Court for the Southern District of New York, resulting in a transfer of because failure to do so "would elevate form over substance in a way that would be an affront to the purpose of the bankruptcy venue statute and the integrity of the bankruptcy system." *Id.* at 744. Similarly, in *In re Columbia Western, Inc.*, an Oregon corporation with headquarters located in Portland filed a bankruptcy petition in the District of Massachusetts two days after executing a month to month lease for limited office space in Worcester from which it did not operate. *In re Columbia Western, Inc.* 183 B.R. 660 (Bankr. D. Mass. 1995). The Bankruptcy Court there concluded that venue was improper under § 1408 and transferred the bankruptcy case to the District of Oregon.

15. In fact, the manufacturing of venue eligibility, including the filing for a company that has no ongoing business operations, fails to meet the requirements of 11 U.S.C. § 109 and may constitute bad faith. In *In re Double W Enterprises, Inc.*, the court found that a chapter 11 debtor did not operate "any sort of on-going business" and had no "trade or business debt resulting from any traditional business operation." 240 B.R. 450, 454 (Bankcr. M. D. Fla. 1999),

resulting in a determination that the case had not been filed for a "proper purpose" and, thus, was a bad faith filing. *Id*. Similarly, the Court in *In re First Financial Enterprises, Inc.*, 99 B.R. 751, (Bankr. W.D. Tex. 1989) determined a filing to be in bad faith where there were no ongoing business operations and there was no reasonable likelihood of rehabilitation.

16.     Similarly, nearly identical facts, including the lack of an ongoing business, few creditors and insufficient cash, was determined by the Sixth Circuit Appellate Court to constitute a bad faith filing. *In re Laguna Associates Ltd. Partnership*, 30 F.3d 734, 738 (6th Cir. 1994). Multiple cases in this Circuit have determined that a lack of good faith in filing a bankruptcy petition is cause for dismissal under 11 U.S.C. § 1112(b). *In re Galloway Farms, Inc.*, 82 B.R. 486, 489 (Bankr. S.D. Iowa 1987)("[A] number of courts have determined that lack of good faith in the filing of a petition is sufficient "cause" for dismissal under § 1112(b)."); *In re Kerzman*, 63 B.R. 393, 394 (Bankr. Dist. N.D. 1986)("The absence of good faith on the part of a debtor in filing a petition is sufficient cause for its dismissal."). Here, since Pamida Transportation lacks creditors and has no business operations that could support any attempt to reorganize, it is difficult to imagine how its filing should constitute a sufficient basis for the venue of twelve affiliated entities that have their "nerve center" nearly 600 miles away.

17.     Since actions taken by a debtor strictly to create venue or jurisdiction should not be given any legal effect, the Debtors fail to meet the requirements for venue in this district under 28 U.S.C. § 1408. Thus, pursuant to Bankruptcy Rule 1014(a)(2), the Debtors' bankruptcy cases should be transferred to the Wisconsin Court. *See*, e. g., *In re Taflan*, 312 B.R. 588, 590 (N.D. W.Va. 2004) ("Thus, if a venue is improper, the bankruptcy court must either dismiss the action or transfer the same, if transfer is in the interest of justice or for the convenience of the parties.").

B. **The Interest of Justice and the Convenience of the Parties Dictate That This Court Transfer Debtors' Cases.**

18.     The principles of both law and equity also support the transfer of the Debtors' cases to the Wisconsin Court. 28 U.S.C. § 1412 provides that "[a] district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Bankruptcy Rule 1014(a)(1) also provides the court may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

19.     Many courts have determined that forum shopping is not in the interest of justice. "The Court has found as a fact that this case was filed in the Southern District for "forum shopping"--to try out the Southern District, after repeated unfavorable rulings, and a restrictive order, in the Eastern District. The interests of justice require that this Court not reward such an effort." *In re Eclair Bakery, Ltd.*, 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000). *See also*, *In re Maruki*, 97 B.R. 166 (Bankr. S. D.N.Y. 1988) (the "interests of justice" do not include flagrant forum shopping).

20.     This issue was similarly addressed by the Court in *In re Abacus Broadcasting Corp.*, 154 B.R. 682 (Bankr. W.D. Tex. 1993): "Then there is the issue of forum shopping. How much deference should be given to a forum selected primarily by the lawyers, for their own convenience or concern for remuneration? How much deference should be given to a debtor's concern that it get what it perceives to be a "debtor's judge?" Whenever a creditor raises the venue question, none at all. Forum shopping has never been favored by federal courts, and courts are quick to discern the evil in all its disguises." *Id.*, at 686-687.

21.     In determining the convenience of the parties, many courts consider the factors set out by the Fifth Circuit Court of Appeals in *In re Commonwealth Oil Refining Co.*, 59 6 F.2d

1239 (5th Cir. 1979). See, e.g., *In re Hideaway Apts. I, L.P.,* 1999 Bankr. LEXIS 2013, *5 (Bankr. D. Neb. 1999) where the Court granted a motion to change venue from the District of Nebraska to the Northern District of Oklahoma based upon the *Commonwealth* factors ("In order to determine whether the transfer is in the interest of justice, courts have formulated a six-part test. The test inquires into, (1) the proximity of the creditors to the court, (2) the proximity of the debtor to the court, (3) the proximity of witnesses necessary to the administration of the estate, (4) the location of the assets, (5) the economic administration of the estate, and (6) the necessity for ancillary administration if liquidation should result."). *Id.* See also, *In re Caesars Entm't Operating Co.*, 2015 Bankr. LEXIS 314, at *19 (Bankr. D. Del. Feb. 2, 2015).

22. An evaluation of all of these factors, as applied to the Debtors' bankruptcy cases, weighs in favor of transferring these cases to the Wisconsin Court.

    a. Proximity of the Creditors to the Court: very few of Debtors' creditors are based in Nebraska. The location of twenty-seven stores and a distribution center there alone is not sufficient to satisfy this criteria. Instead, more creditors are located in close proximity to the Wisconsin Court, and many of the legal issues presented by this case must be determined in accordance with Wisconsin law.

    b. Proximity of the Debtors and Proximity of the Witnesses Necessary to Administration of the Estates: Shopko's principal place of business is in Green Bay and the vast majority of its store locations and employees are located out of Nebraska. Debtors' key employees who may be called upon to testify in this matter or otherwise appear at hearings are likely based out of Green Bay.

    c.  Location of the Debtors' Assets: the principal location of Shopko's assets is in Green Bay.  There are assets located in several states where Shopko has stores, but Green Bay is a more central location than Omaha.

    d.  Economic Administration of the Estate: transferring the venue of the Debtors' cases to Wisconsin will alleviate the considerable time and expense that will be incurred by both the Debtors and their creditors if forced to travel to Omaha.  In light of headquarters in Green Bay and the increased proximity of creditors to the Wisconsin Court, that location is a more economic alternative for most involved.

  *23.*  Accordingly, the *Commonwealth* factors for the determination of the convenience of the parties weigh in favor of the transfer of venue to the Wisconsin Court. When combined with the well-established principle that forum shopping is not in the interest of justice, 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1) require transfer of venue to the Wisconsin Court.

//

//

//

BN 35493201v1

### III. CONCLUSION

24. The transfer of venue for the Debtors' cases to the Wisconsin Court is appropriate because Pamida Transportation is not an entity that would withstand a dismissal motion in this district, thereby making it an improper basis for venue of the other twelve Shopko entities. Similarly, the interests of justice and convenience of the parties dictate the requested venue transfer.

Dated: January 18, 2019

CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, L.L.P.

*/s/ Michael J. Whaley*
Richard P. Garden, Jr., #17685
Michael J. Whaley, #19390
Sterling Ridge
12910 Pierce Street, Suite 200
Omaha, NE  68124
Telephone: (402) 397-1700
Facsimile:  (402) 397-1806
rgarden@clinewilliams.com
mwhaley@clinewilliams.com

and

BUCHALTER
A Professional Corporation

*/s/ Jeffrey S. Garfinkle*
Jeffrey S. Garfinkle (CA 153496)
18400 Von Karmen Avenue
Irvine, CA 92612
Tel: (949) 760-0182
Facsimile: (949-720-0182
jgarfinkle@buchalter.com

BN 35493201v1