## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) ) ) | Case No. 19-80064 (TLS) |
| Debtors. | ) ) ) | (Jointly Administered) |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE RETENTION AND EMPLOYMENT OF HILCO REAL ESTATE, LLC EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE, (B) WAIVING CERTAIN TIMEKEEPING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-1, AND (C) GRANTING RELATED RELIEF

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state as follows in support of this application (this "Application")[2] for entry of an order (the "Order"), (a) authorizing the Debtors to employ and retain Hilco Real Estate, LLC ("Hilco Real Estate") as their real estate advisors pursuant to the terms and conditions of the Services Agreement (as defined herein), effective *nunc pro tunc* to the Petition Date (as defined herein), (b) waiving certain timekeeping requirements pursuant to Local Rule 2016-1, and (c) granting related relief.   In support of this Application, the Debtors submit the Declaration of Sarah K. Baker, Vice President

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); ShopKo Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592);. The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin, 54304.

[2]    A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Russell L. Steinhorst, Chief Executive Officer of Specialty Retail Shops Holding Corp., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 4] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions under chapter 11.

and Assistant General Counsel at Hilco Trading, LLC (the "Baker Declaration")[3], filed contemporaneously herewith.  In further support of this Application, the Debtors respectfully state as follows.

### Relief Requested

1.      By this Application, the Debtors seek entry of an order, (a) authorizing the Debtors to employ and retain Hilco Real Estate as their real estate advisors pursuant to the terms and conditions of the Services Agreement, effective *nunc pro tunc* to the Petition Date, (b) waiving certain timekeeping requirements pursuant to Local Rule 2016-1, and (c) granting related relief.

### Jurisdiction

2.      The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Rule 2016-1 of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

---

[3] Capitalized terms not used herein shall have the meaning ascribed to them in the Services Agreement.

**Background**

5.      Specialty Retail Shops Holding Corp. ("ShopKo"), together with its Debtor affiliates, is a retail company that historically engaged in the sale of general merchandise including clothing and accessories, electronics, and home furnishings, as well as company operated pharmacy and optical services departments at over 367 stores in 25 states throughout the United States and through e-commerce operations. The Debtors are headquartered in Green Bay, Wisconsin. The Debtors and their non-Debtor subsidiaries generated approximately $2.6 billion in revenue in fiscal year 2017 and currently employ approximately 14,000 people in the United States.

6.      On January 16, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 25]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases. On January 18, 2019, the United States Trustee for the District of Nebraska (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 95].

**Hilco Real Estate's Qualifications**

7.      Hilco Real Estate is a diversified real estate consulting and advisory firm that evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate located both nationally and internationally. Hilco Real Estate and/or certain of its professionals have provided real estate advisory services to debtors in many cases, including, among others: *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (Bankr. D. Del. May 3, 2018); *In re hhgregg, Inc.*,

Case No. 17-01302 (Bankr S.D. Ind. April 6, 2017); *In re City Sports, Inc.*, Case No. 15-12054 (KG) (Bankr D. Del. Nov. 23, 2015); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. Nov. 6, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. February 25, 2013); and *In re Great Atlantic and Pacific Tea Company, Inc.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Mar. 15, 2011).

8.      The Debtors have selected Hilco Real Estate as their real estate advisors based upon, among other things: (a) the Debtors' need to retain a skilled real estate advisory firm to provide advice with respect to the Debtors' numerous real property leases and ownership interests; and (b) Hilco Real Estate's extensive experience and expertise in providing consulting and advisory services in connection with the restructuring of leasehold interests and sales of real property ownership interests in chapter 11 cases such as these.  In light of the size of these chapter 11 cases, Hilco Real Estate's resources, capabilities, and experience are important to the Debtors' successful real property portfolio restructuring.  An experienced real estate consultant such as Hilco Real Estate fulfills a critical service and complements the services offered by the Debtors' other professionals.  For these reasons, the Debtors believe that Hilco Real Estate is both well-qualified and uniquely able to perform the services for which it is being sought to be retained in these chapter 11 cases in an efficient and timely manner, as well as that the retention and employment of Hilco Real Estate is in the best interests of the Debtors, their estates, and other parties in interest.

9.      Hilco Real Estate commenced its engagement with the Debtors to provide real estate advisory services in connection with the Debtors' chapter 11 cases pursuant to a real estate consulting and advisory services agreement, dated as of December 6, 2018 (the "Services Agreement"), a copy of which is attached hereto as **Exhibit A**.

## Services to be Provided

10.     As further set forth in the Services Agreement, the Debtors have requested that

Hilco Real Estate serve as real estate advisor during these chapter 11 cases to perform a broad

range of services (the "Services") on behalf of the Debtors in connection with the Debtors' real

property holdings.  Among other things, the Services include:[4]

   a.    meeting with the Debtors to ascertain the Debtors' goals, objectives and
         financial parameters and working with the Debtors' management on an
         ongoing basis to review the Debtors' real estate portfolio, or portions
         thereof, in order to develop an appropriate series of cost savings and value
         strategies on both a portfolio-wide and property-by-property basis;

   b.    mutually agreeing with the Debtors with respect to a strategic plan for
         restructuring the Debtors' Leases and negotiating sales of the Debtors'
         Properties (the "Strategic Plan");

   c.    at the Debtors' direction and on the Debtors' behalf, engaging with the
         landlord for a particular Lease to negotiate the terms of a restructuring
         agreement for such Lease in accordance with the Strategic Plan, and
         engaging with potential purchasers of the Debtors' Properties to negotiate
         the terms of purchase and sale agreements;

   d.    providing periodic written reports to the Debtors regarding the status of the
         negotiations in subsection (c); and

   e.    assisting the Debtors in closing the pertinent lease restructuring agreements
         and real property purchase and sale agreements.

11.     The Services are necessary to enable the Debtors to maximize the value of their

estates.  All of the Services will be undertaken at the request of the Debtors.

## Professional Compensation

12.     Real estate advisors such as Hilco Real Estate do not typically charge for their

services on an hourly basis.  Instead, compensation arrangements such as those contemplated by

---

[4]    The summary provided herein is otherwise for illustrative purposes only.  In the event of any inconsistency
between the Services as set forth herein and the Services Agreement, the Services Agreement will control.
Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to them in the
Services Agreement.

the Services Agreement are customary.  Further, such compensation arrangements are consistent

with and typical of compensation arrangements entered into by Hilco Real Estate and other

comparable firms in connection with the rendering of similar services under similar circumstances.

13.     Subject to the Court's authorization, the Debtors will compensate Hilco Real Estate

in accordance with the terms and conditions and at the times set forth in the Services Agreement,

which provides in relevant part for the following compensation structure (the "Fee Structure"):[5]

a.      for each Lease that becomes a Restructured Lease, Hilco Real Estate shall earn a fee equal to the Restructured Lease Savings Fee equal to the sum of (i) $1,000 and (ii) the aggregate Restructured Lease Savings multiplied by three percent (inclusive of term shortening, although the fee percentage attributable to such term shortening shall be calculated using two and three quarters percent and shall be capped at $15,000 per Lease).  The amounts payable on account of a Restructured Lease shall be paid in a lump sum upon closing of the transaction having the effect of restructuring the Lease, subject to any applicable orders of the Court and other applicable United States Trustee guidelines and laws;

b.      For each Property that is sold, Hilco Real Estate shall earn a fee equal to four percent of the Gross Sale Proceeds.  The fee shall be payable at the time of closing on a sale of a Property, subject to any applicable orders of the Court and other applicable United States Trustee guidelines and laws; and

c.      all fees payable to Hilco Real Estate under the Services Agreement shall be free and clear of any liens, claims, and encumbrances, including the liens of any secured parties, subject to any applicable orders of the Court and other applicable United States Trustee guidelines and laws.

14.     In addition to any fees payable to Hilco Real Estate, the Debtors will reimburse

Hilco Real Estate for its reasonable, documented (through receipts or invoices) out-of-pocket

expenses incurred in performing the Services, including, without limitation, reasonable expenses

---

[5]     The summary provided herein is otherwise for illustrative purposes only and is subject to the Services Agreement in all respects.  In the event of any inconsistency between the Fee Structure as set forth herein and the Services Agreement he Services Agreement will control.

of postage and overnight express courier fees and other mutually agreed-upon expenses incurred in connection with performing the Services.

15.     The Debtors believe that the Fee Structure is comparable to compensation generally charged by real estate advisory firms of similar stature to Hilco Real Estate for comparable engagements, both in and out of bankruptcy.  Furthermore, the Debtors believe that the Fee Structure is consistent with Hilco Real Estate's normal and customary billing practices for cases of comparable size that require the level and scope of the services to be provided in these chapter 11 cases.  Moreover, the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Hilco Real Estate and its professionals, and in the light of the fact that such commitment may foreclose other opportunities for Hilco Real Estate and that the actual time and commitment required of Hilco Real Estate and its professionals to perform the services may vary substantially from week to week or month to month, creating "peak load" issues for Hilco Real Estate.

16.     Hilco Real Estate's expertise and experience in the realm of restructuring real estate leases and sales of real property for client companies were important factors in determining the Fee Structure.  The Debtors believe that the ultimate benefit of the Services cannot be measured by reference to the number of hours to be expended by Hilco Real Estate's professionals in the performance of such Services.  The Debtors also believe that by using a transactional fee structure, Hilco Real Estate's compensation is directly tied to and contingent upon the level of cost savings from restructuring the Debtors' Leases, and the amount of proceeds from sales of the Debtors' Properties, and aligns the interests of Hilco Real Estate with those of the Debtors.

17.     Hilco Real Estate intends to apply for final compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases,

subject to the Court's approval, after notice and a hearing, and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the compensation guidelines promulgated by the Office of the United States Trustee (the "U.S. Trustee Guidelines"), and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived).

18.    Due to the transactional fee structure of the engagement, Hilco Real Estate requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a) and the U.S. Trustee Guidelines.  Sales and marketing agents generally are not compensated based on hours devoted to their services, and instead are compensated based on fee structures similar to the one proposed in this case.  Notwithstanding that Hilco Real Estate does not charge for its services on an hourly basis, Hilco Real Estate will nonetheless file a certification of its fees, commissions, and reimbursable expenses with the Court and cause such certification to be served on the U.S. Trustee and the Debtors, as well as any other entities required by the Debtors or the Court.  Hilco Real Estate will file a final fee application for allowance of the fees and expenses payable under the Services Agreement.

19.    The Debtors respectfully submit that the Fee Structure set forth above is reasonable and should be approved under section 328(a) of the Bankruptcy Code, which specifically authorizes compensation of a professional person on a "percentage fee" or "contingent fee" basis. 11 U.S.C. § 328(a).  The compensation terms negotiated with Hilco Real Estate were the result of arm's-length negotiations, and the Debtors believe such terms are fair and reasonable.

## **Indemnification**

20.    The Services Agreement provides that the Debtors and Hilco Real Estate owe certain indemnification obligations to each other.  The provisions governing the Debtors and Hilco Real Estate's indemnification obligations (the "Indemnification Provisions") are attached to and

made a part of the Services Agreement. The Indemnification Provisions were fully negotiated between the Debtors and Hilco Real Estate at arm's length. The Debtors and Hilco Real Estate believe that the Indemnification Provisions are customary and reasonable for real estate advisory engagements, both in chapter 11 cases and outside of chapter 11, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

### No Duplication of Services

21.    The Debtors believe that the services Hilco Real Estate will provide will be complementary rather than duplicative of the services to be performed by other professionals. The Debtors are very mindful of the need to avoid duplication of services, and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Hilco Real Estate's retention as real estate advisor.

### Hilco Real Estate's Disinterestedness

22.    Hilco Real Estate has reviewed the list of parties in interest provided by the Debtors. To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Baker Declaration, Hilco Real Estate: (a) does not hold any interest materially adverse to the Debtors' estates; (b) has no connection with the Debtors, their creditors, equity security holders, or related parties herein; and (c) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code (as modified by section 1107(b) of the Bankruptcy Code). The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance, upon the Baker Declaration.

23.    A schedule detailing the payments received by Hilco Real Estate in the 90-day period prior to the Petition Date is attached as **Schedule 3** to **Exhibit A**. The Debtors have paid two installments of the Retainer, of which Hilco is holding $50,000, and three invoices for lease restructuring services, which invoices were paid pursuant to the Services Agreement and in the

ordinary course of business.  As of the Petition Date, Hilco Real Estate does not hold a prepetition claim against the Debtors for services rendered.

24.     The Debtors have been informed that Hilco Real Estate will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, Hilco Real Estate will promptly inform the Court as required by Bankruptcy Rule 2014(a).

25.     As set forth in the Baker Declaration, Hilco Real Estate has not shared or agreed to share any of its compensation from the Debtors with any other person except as permitted by section 504 of the Bankruptcy Code.

### **Basis for Relief**

26.     The Debtors seek approval of the retention and employment of Hilco Real Estate pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).   Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons."  11 U.S.C. § 327(a).   Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

27.     Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and real estate advisors, on more flexible terms that reflect the nature

of their services and market conditions.   As the U.S. Court of Appeals for the Fifth Circuit

recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co. (In re*

*National Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997),

> Prior to 1978 the most able professionals were often unwilling to work for
> bankruptcy estates where their compensation would be subject to the uncertainties
> of what a judge thought the work was worth after it had been done.  That uncertainty
> continues under the present § 330 of the Bankruptcy Code, which provides that the
> court award to professional consultants "reasonable compensation" based on
> relevant factors of time and comparable costs, etc.   Under present § 328 the
> professional may avoid that uncertainty by obtaining court approval of
> compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

28.     The Debtors respectfully submit that they should be authorized to retain and employ

Hilco Real Estate in accordance with the terms and conditions of the Services Agreement.  First,

as discussed above and in the Baker Declaration, Hilco Real Estate satisfies the disinterestedness

standard in section 327(a) of the Bankruptcy Code.[6]  Moreover, Hilco Real Estate has already

become familiar with the Debtors' business operations and real estate portfolio, and has committed

a significant amount of time and effort with respect to the restructuring of the leases contemplated

under the Services Agreement.  Hilco Real Estate's services are needed postpetition to assist with

negotiations, as necessary, to favorably renegotiate and restructure certain of the Debtors' leases

for the benefit of the Debtors' estates.  Hilco Real Estate has extensive experience and an excellent

reputation in providing high-quality real estate advisory services to debtors in bankruptcy

---

[6]     Bankruptcy Rule 2014(a) requires that an application be made for retention of professionals under section 327 of
Bankruptcy Code.  Pursuant to Bankruptcy Rule 2014(a), the application must, among other things, "state the
specific facts showing . . . , to the best of the applicant's knowledge, all of the person's connections with the
debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee,
or any person employed in the office of the United States trustee."  Fed. R. Bankr. P. 2014.  Additionally, the
application "shall be accompanied by a verified statement of the person to be employed setting forth the person's
connections" to the parties in interest listed above.  *Id.*  Here, Bankruptcy Rule 2014 is satisfied by the contents
of this Application and the Baker Declaration attached hereto.

reorganizations and other restructurings.  The Debtors believe that Hilco Real Estate is well qualified to provide the Services to the Debtors in a cost-effective, efficient, and timely manner.

29.    In addition, the Debtors believe that the Fee Structure is market based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee Structure appropriately reflects the nature and scope of Services, Hilco Real Estate's substantial experience with respect to lease restructuring services and sales of real property, and the fee and expense structures typically utilized by Hilco Real Estate and other leading advisory firms that do not bill their clients on an hourly basis.  In particular, the Debtors believe the Fee Structure creates a proper fee mix based on the overall success of Hilco Real Estate's efforts to restructure the Debtors' various lease obligations.

30.    Indeed, courts routinely approve similar fixed and contingency fee arrangements in other large chapter 11 cases.  *See, e.g.*, *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (Bankr. D. Del. May 3, 2018) (approving a flexible fee structure and engagement letter under section 328 of the Bankruptcy Code on the grounds that both were reasonable); *In re hhgregg, Inc.*, Case No. 17-01302 (Bankr S.D. Ind. April 6, 2017) (same); *In re City Sports, Inc.*, Case No. 15-12054 (KG) (Bankr D. Del. Nov. 23, 2015) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 18, 2013) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013) (same).[7]

31.    Furthermore, as set forth above, notwithstanding approval of the Services Agreement under section 328(a) of the Bankruptcy Code, Hilco Real Estate intends to apply for

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these orders are available upon request of the Debtors' proposed counsel.

compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court (to the extent compliance is not waived) and consistent with the Fee Structure set forth in the Services Agreement. Because it is not customary for Hilco Real Estate to keep detailed time records similar to those customarily kept by attorneys, however, the Debtors are seeking, on behalf of Hilco Real Estate, a waiver of the requirements of Local Rule 2016-1 to bill activities in one-tenth of an hour increments, to provide or conform to a schedule of hourly rates, and to divide activity descriptions into general project categories of time. *See* Neb. Bankr. L.R. 2016-1.

32.     Additionally, the Debtors and Hilco Real Estate believe that the Indemnification Provisions, as modified in the Order, are customary and reasonable for advisory engagements, both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions in this district. *See, e.g.*, *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (Bankr. D. Del. May 3, 2018) (approving indemnification provisions as part of retention of debtors' professional); *In re hhgregg, Inc.*, Case No. 17-01302 (Bankr S.D. Ind. April 6, 2017) (same); *In re City Sports, Inc.*, Case No. 15-12054 (KG) (Bankr D. Del. Nov. 23, 2015) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 18, 2013) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013) (same).

33.     The Debtors also believe that employment of Hilco Real Estate effective *nunc pro tunc* to the Petition Date is warranted under the circumstances of these chapter 11 cases. Hilco Real Estate has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated lease restructuring and real property sale transactions. *See, e.g.*, *In re Arkansas*

13

*Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).. Accordingly, the Debtors respectfully submit that the Application should be granted as in the best interests of the Debtors, their estates, and all parties in interest.

### Notice

34.     The Debtors have provided notice of this Application to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) counsel to the Committee; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

35.     No prior request for the relief sought in this Application has been made to this or any other court.

[R*emainder of page intentionally left blank*]

WHEREFORE, for the reasons set forth herein and in the Baker Declaration, the Debtors respectfully request entry of an order granting the relief requested herein and granting such other relief as is just and proper.

Dated: January 21, 2019

Russell L. Steinhorst
Chief Executive Officer
Specialty Retail Shops Holding Corp.

## EXHIBIT A

**Services Agreement**

## REAL ESTATE CONSULTING AND ADVISORY SERVICES AGREEMENT

This Real Estate Consulting and Advisory Services Agreement (this "Agreement") is entered into effective as of December 6, 2018 (the "Effective Date"), by and between Hilco Real Estate, LLC ("Hilco") and Shopko Stores Operating Co., LLC, and its affiliates and subsidiaries (collectively, the "Company").

Recitals:

WHEREAS, the Company is the owner of certain leasehold interests including, without limitation, the Leases listed on Exhibit A attached hereto (each a "Lease" and collectively, the "Leases");

WHEREAS, Company is the owner of real property, including, without limitation, the Properties listed on Exhibit B attached hereto (each a "Property", and collectively, the "Properties"); and

WHEREAS, the Company seeks to engage Hilco to provide certain consulting services in connection with the Properties and Leases as identified in Exhibit A and Exhibit B provided herein.

Agreement:

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Hilco agree as follows:

1) <u>Consulting and Advisory Services</u>.  Hilco shall provide the consulting and advisory services described below (collectively, the "Services") to the Company with respect to the Leases and the Properties:

   a) Meet with the Company and/or its representatives to ascertain the Company's goals, objectives and financial parameters;

   b) Mutually agree with the Company with respect to a strategic plan for restructuring the Leases with respect to rent and/or term reduction(s) and the sale of the Properties (the "Strategy");

   c) On the Company's behalf, following specific authorization by the Company to engage with respect to a particular Lease or Property, negotiate the Lease rent and/or term reductions with the landlords and purchase and sale agreements for the Properties, in accordance with the Strategy;

   d) Provide written weekly reports to the Company regarding the status of such negotiations as well as a routine weekly call with the Company to discuss progress on each of the Leases and Properties, unless otherwise agreed to by the parties hereto; and

1

e) Assist the Company in closing the pertinent Lease rent and/or term reductions and the Property purchase and sale agreements.

The Company may remove Lease locations from <u>Exhibit A</u> (each a "Removed Lease"); provided, however, that in the event a transaction occurs during the term of this Agreement that would have given rise to a fee due to Hilco on account of such Removed Lease had such Removed Lease remained on <u>Exhibit A</u>, Hilco shall be due a fee from the Company equal to fifty percent (50.0%) of the fee that would have otherwise been due Hilco pursuant to Section 4 hereof had such Removed Lease remained on <u>Exhibit A</u>.

2) <u>Term and Termination</u>.

   a) <u>Term</u>. The term of this Agreement shall commence upon the Effective Date and shall expire on the date that is the earlier of:  (i) eight (8) months from the Effective Date; (ii) any applicable orders of any United States Bankruptcy Court; (iii) the dismissal and/or conversion of any bankruptcy case filed by Company; (iv) the effective date of the Company's plan of reorganization or entry of a sale approval order for the sale of substantially all of the Company's assets in a 363 sale process if the Company files for bankruptcy protection; or (v) in the event that the Company does not to file for bankruptcy protection by March 1, 2019.

   b) <u>Termination</u>. The Company shall have the right to terminate this Agreement for cause upon written notice to Hilco.  Termination for cause shall mean any termination as a result of Hilco's failure to diligently perform the Services, fraud, misrepresentation, gross negligence, willful misconduct, or material breach by Hilco of any of the terms of this Agreement.

   c) <u>Effect of Termination</u>.  Upon termination of this Agreement by the Company, Hilco shall: (i) immediately discontinue all Services; and (ii) deliver to the Company all information, reports, papers, and other materials prepared or obtained by Hilco in performing the Services, whether completed or in process.  Upon termination, the Company shall be liable only for payment of accrued and unpaid Expenses of Hilco as of the effective date of the termination and no compensation or fee shall be due or payable hereunder, except as set forth in Section 6.

3) <u>Authority</u>. Hilco shall serve as the Company's exclusive unaffiliated agent for the purpose of the Services for the Leases.  All communications and inquiries directed to the Company regarding rent and/or term reductions for the Leases shall be redirected to Hilco, unless otherwise agreed to by Hilco and the Company.  Hilco shall promptly advise the Company of all offers made with respect to the Leases and Properties.  Following the specific authorization by the Company to engage with parties for a particular Lease or Property, Hilco is authorized only to negotiate the terms of agreements with respect to the rent and/or term reductions for such Lease(s) or the sale of the Properties in accordance with the Strategy at the direction and on the behalf of the Company, but not to commit the Company to any such agreement or arrangement or to sign any instrument on behalf of the Company.  The Company has the right, in its sole and absolute discretion, to accept or reject any offers with respect to the Leases and Properties, and, in the event of such rejection, the Company shall

2

not be liable to Hilco for any fee or compensation, except as provided in Sections 4 and 6 below.

4) <u>Compensation</u>. As compensation for Hilco's Services, the Company will pay to Hilco compensation in accordance with the following.

   a) <u>Certain Definitions</u>.  For clarity, this Agreement shall apply to all Services performed during the Term only.

      i) "Restructured Lease" means any Lease for which the Company enters into a written agreement with the applicable landlord that modifies and/or renews the terms of such Lease, including agreements for reduced rent, term shortening or other savings in advance of a termination and/or rejection; provided, however, that for the avoidance of doubt and notwithstanding anything herein to the contrary, any Lease that is assigned or sold to a purchaser of all or substantially all of the Company's or a division of the Company's assets (or as a result of a change in control) shall not, solely as a result of such sale or assignment, be considered a Restructured Lease.

      ii) "Restructured Lease Savings Fee" means, for any Restructured Lease, an amount equal to a base fee of $1,000, *plus* the aggregate Restructured Lease Savings multiplied by three  percent (3.00%) (inclusive of term shortening, although the Restructured Lease Savings Fee percentage on the Restructured Lease Savings attributable to term shortening shall be calculated using two and three quarters percent (2.75%) instead of the otherwise applicable three percent (3.00%)).

      iii) "Restructured Lease Savings" means an amount equal to the net savings created by a Restructured Lease, which shall be calculated as the aggregate reduction of base rent, percentage rent and CAM (if applicable), payable under a lease, *plus* the aggregate amount of any cash or cash equivalents  (excluding CapEx) secured from the landlord.  Where term is extended or renewed and the rent during such extended or renewed period is not specifically fixed or calculable pursuant to the terms of the Lease, Restructured Lease Savings for such extended or renewed term shall be calculated using the last year's gross rent immediately prior to the extended or renewed period under such Lease as the baseline (or, the gross rent for such option term if the rent is fixed or calculable for the option term under the Lease) less the reduced gross rent for such extended period negotiated in connection with the restructuring.  For the avoidance of doubt, and except as set forth in the immediately preceding sentence, rent to be paid during the extended or renewed term shall not be used to offset net savings in calculating Restructured Lease Savings.

   b) <u>Restructuring</u>.  For each Lease that becomes a Restructured Lease, Hilco shall earn a fee equal to the Restructured Lease Savings Fee.  The amounts payable on account of a Restructured Lease shall be paid in a lump sum upon closing of the transaction restructuring and/or renewing the Lease; subject to any applicable orders of any United States Bankruptcy Court and other applicable United States Trustee guidelines and laws.

c) <u>Free and Clear</u>.  All fees payable to Hilco hereunder shall be free and clear of any liens, claims and encumbrances, including the liens of any secured parties; subject to any applicable orders of any United States Bankruptcy Court and other applicable United States Trustee guidelines and laws.

d) <u>Property Sales</u>.  In the event a Property is sold, Hilco shall earn a fee equal to four percent (4.00%) of the Gross Sale Proceeds.  If an outside, third party broker procures a buyer for any Property, the Company shall be responsible for paying such third-party brokerage fees.  Each such fee shall be payable at the time of closing on a sale of the Property.  For purposes hereof, "Gross Sale Proceeds" shall mean the aggregate cash or non-cash consideration received by the Company in consideration of the Property.  The value of non-cash consideration received for a Property shall be determined by mutual agreement between Hilco and the Company.  Hilco shall not be responsible for any other fees or commissions in connection with the disposition of the Property, including, but not limited to, any fees or commissions that may be owed to the Company's previous real estate brokers.

e) <u>Retainer</u>.  Subject to any applicable orders of any United States Bankruptcy Court and other applicable United States Trustee guidelines and laws, the Company shall pay Hilco a retainer (the "Retainer") in three installments of $50,000 each, with the first installment due upon execution of this Agreement and the next installments due on the first business day of each month thereafter (beginning January 1, 2019).  Hilco shall offset the Retainer against the final invoice(s) (as determined by the parties, acting reasonably) for fees earned hereunder; <u>provided</u>, <u>however</u>, that in no event shall Hilco have any obligation to refund $75,000 of the Retainer.

5) <u>Expenses</u>. All Expenses (defined below) shall be borne by the Company, and Hilco shall be entitled to reimbursement from the Company for all Expenses. Billing shall be monthly, and invoices are due not later than thirty (30) days after the date of invoice. "Expenses" means all reasonable, documented (through receipts or invoices) out-of-pocket expenses incurred by Hilco in connection with its performance of its Services hereunder, including, reasonable expenses of postage and courier/overnight express fees and other mutually agreed upon expenses incurred in connection with performing the services required by this Agreement. The Company shall not be responsible for any Expenses with respect to the Leases and Properties that exceed $5,000 without its prior written consent and Hilco shall provide the Company or its representatives (as so directed) with weekly reports detailing the amount of expenses incurred to date. Hilco and the Company shall separately agree to a budget for the anticipated Expenses for the Leases and Properties.

6) <u>Survival</u>. Within fifteen (15) calendar days after the termination of this Agreement, Hilco shall provide the Company with a list of all third parties, including landlords (each, a "Prospect") that Hilco has engaged in negotiations during the term of this Agreement with respect to the Leases and the Properties covered hereunder. If within thirty (30) days after the expiration of the Term of this Agreement, or any extension thereof agreed to in writing by the Company and Hilco, the Company (or any successor or assign of the Company, if such written agreement is entered into in connection with a sale or transfer pursuant to section 363 of the Bankruptcy Code, a plan reorganization or any other method of transfer (including designation rights)) and any

4

Prospect should enter into a written agreement covered by this Agreement, incorporating deal terms that are identical or reasonably similar to the terms that were negotiated and/or proposed by Hilco in connection with the Leases or, alternatively, has submitted a letter of intent, draft purchase and sale agreement or introduced into a potential transaction (i.e. contained within the above referenced list) by Hilco in connection with the Properties, then Hilco shall be entitled to a fee calculated in accordance with the terms of this Agreement. Notwithstanding the foregoing, in the event this Agreement is terminated by the Company for cause pursuant to Section 2.b., then this Section 6 shall not apply.

7) <u>Hilco and Company Covenants</u>.  In consideration of this Agreement, Hilco agrees to utilize commercially reasonable efforts and diligence to achieve the purpose of this Agreement. Hilco shall conduct all negotiations on behalf of the Company in a professional and businesslike manner and in accordance with the Company's and its officers', representatives' and counsel's reasonable instructions. The Company agrees to cooperate reasonably with Hilco and to make available to Hilco such information as Hilco reasonably requests, including true and correct copies of the Leases, all information relating to occupancy-related expenses for the Leases and related correspondence.

8) <u>Confidentiality</u>.  Hilco acknowledges that information furnished or made available by the Company, its employees or representatives to Hilco and its employees or representatives relating to the Leases and the business or affairs of the Company is confidential and is the property of the Company. During and after the term of this Agreement, Hilco will not disclose any such information to any person or use any such information for any purpose other than the performance of its obligations hereunder, in each case, without the prior written consent of the Company.

9) <u>Assignment; Successors and Assigns</u>.  Neither party may assign its rights or delegate any of its obligations hereunder without the prior written consent of the other party; provided, however, that Hilco shall be permitted to sub-broker/co-broker with local brokers to assist with the Services and comply with applicable law, if necessary; provided, further, that Hilco shall be liable for any breach of the terms and conditions of this Agreement by its sub-brokers/co-brokers; provided, further, that the Company shall be permitted to assign and transfer this Agreement and its rights and obligations hereunder, without the consent of Hilco, to a purchaser of the Leases(s) pursuant to section 363 of the Bankruptcy Code or otherwise. For the avoidance of doubt, if a purchaser of the Company's or a division of the Company's assets (whether through a credit bid, plan of reorganization, 363 sale or otherwise) acquires the Leases and/or the Properties (or any portion thereof), directly or through designation rights, and enters into an agreement (in connection with such purchase) for a Lease or Property within ninety (90) days after the purchase of the Company's or a division of the Company's assets that incorporates deal terms that are identical or reasonably similar to terms that were negotiated and/or proposed by Hilco in connection with the Leases or Properties, then Hilco shall be entitled to the applicable fee with respect to such Lease and/or Property, and such fee shall be paid by the Company, or, in the event such purchaser assumes this Agreement and the Company's obligations hereunder, by the purchaser. Subject to that limitation, this Agreement shall be binding upon and shall inure to the benefit of each party and its successors and assigns.

10) <u>Indemnification</u>.

5

a) The Company shall indemnify and defend Hilco and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by Hilco, including without limitation, reasonable legal expenses, arising from, related to, or in any way connected with (i) the Company's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in this Agreement and (ii) the fraud, negligence (including omissions) or willful misconduct of the Company, its officers, directors, employees, agents (excluding Hilco) or representatives.

b) Hilco shall indemnify and defend the Company and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by the Company, including without limitation, reasonable legal expenses, arising from, related to, or in any way connected with (i) Hilco's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in this Agreement and (ii) the fraud, negligence (including omissions) or willful misconduct of Hilco, its officers, directors, employees, agents or representatives.

11) <u>General Provisions</u>.

a) The Company and Hilco shall deal with each other fairly and in good faith so as to allow both parties to perform their duties and earn the benefits of this Agreement.

b) The Company recognizes and acknowledges that the services to be provided by Hilco pursuant to this Agreement are, in general, transactional in nature, and Hilco will not be billing the Company by the hour or maintaining time records. It is agreed that Hilco is not requested or required to maintain such time records and that its compensation will be fixed on the percentages set forth herein.

c) Any correspondence or required notice shall be addressed as follows:

<div style="margin-left: 2em;">

If to Hilco:        Hilco Real Estate, LLC
5 Revere Drive
Suite 320
Northbrook, Illinois 60062
Tel.   (847) 418-2086
Fax   (847) 521-7818
Attn:  Ryan Lawlor
Email: rlawlor@hilcoglobal.com

If to the Company:    ShopKo Stores Operating Co., LLC
700 Pilgrim Way
Green Bay, WI 54304
ATTN:  Vice President – Real Estate (Donna Capichano

</div>

6

d) This Agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

e) By executing or otherwise accepting this Agreement, the Company and Hilco acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

f) The construction, validity and interpretation of this Agreement will be governed by the internal law of the State of Delaware, without regard to any choice of law principle that might otherwise result in the application of the law of any other jurisdiction. The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other in respect of any matter arising out of or in connection with this Agreement.

g) This Agreement may be executed in original counterparts, and if executed and delivered via facsimile shall be deemed the equivalent of an original.

h) The parties hereto agree, and the Company hereby expressly acknowledges, that Hilco has not guaranteed the Company any return or results with respect to the services to be provided.

i) This Agreement constitutes the entire agreement between the Company and Hilco and supersedes all prior discussions, negotiations, understandings, representations, and agreements, whether oral or written. This Agreement shall not be modified or amended in any respect except by a written instrument executed by or on behalf of the parties to this Agreement.

j) If either party institutes legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs actually incurred.

k) Hilco may use the Company's name on Hilco's representative client lists, in any advertisements, publications or as a reference; provided that no details of Hilco's representation of the Company are included without the Company's prior consent.

l) In the event the Company seeks protection under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in a United States Bankruptcy Court (the "Bankruptcy Court") of proper jurisdiction, the Company agrees to promptly request entry of an order under sections 327 and 328 of the Bankruptcy Code, in form and substance acceptable to Hilco in its sole discretion, authorizing the Company's assumption and/or retention of Hilco under this Agreement, which the Company agrees to use the Company's best efforts to obtain (the "Retention Order"). The Company will use the Company's reasonable efforts to ensure that the Retention Order shall specifically provide that: (i) Hilco is being retained pursuant to sections 327 and 328 of the Bankruptcy Code by the Company; and (ii) the payment of all fees and reimbursement of expenses hereunder to

7

Hilco is approved under section 328 of the Bankruptcy Code and shall be free and clear of all liens, claims and encumbrances.

\*          \*          \*

IN WITNESS WHEREOF, the Company and Hilco have executed and delivered this Agreement as of the date first above written.

**SHOPKO STORES OPERATING CO.,**
**LLC,** and its affiliates and subsidiaries

**HILCO REAL ESTATE, LLC**

By: _Donna Capichano_
Title: Vice President Store Development
Date: 12|6|18

By: _____ Ryan Lawlor
Title: Senior Vice President
Date: 12/6/18

# EXHIBIT A

## LEASES

Exhibit A

| # | Address | City | St |
|---|---------|------|-----|
| 528 | 148 MAIN ST | ROUNDUP | MT |
| 678 | 1004 N ELM ST | JEFFERSON | IA |
| 214 | N2934 Highway 22 | WAUTOMA | WI |
| 510 | 800 RIVERSIDE DR | WAUPACA | WI |
| 529 | 125 E GLENDALE ST | DILLON | MT |
| 3886 | 2201 Commerce Dr. | Grundy Center | IA |
| 683 | 109 N MARKET ST | AUDUBON | IA |
| 749 | 301 1ST AVE S | SAINT JAMES | MN |
| 647 | 1101 N INDIANA AVE | SYRACUSE | IN |
| 215 | 100 County Road B, Suite W181 | SHAWANO | WI |
| 180 | 3271 Marketplace Drive | Council Bluffs | IA |
| 686 | 902 S LOCUST ST | GLENWOOD | IA |
| 101 | 4501 E ARROWHEAD PKWY | SIOUX FALLS | SD |
| 709 | 1307 S STATE HIGHWAY 32 | EL DORADO SPRINGS | MO |
| 604 | 1011 E SPRUCE ST | ABBOTSFORD | WI |
| 622 | E9916 STATE HIGHWAY M28 | WETMORE | MI |
| 20 | 2400 ROSE ST | LA CROSSE | WI |
| 688 | 413 HURON STREET | MISSOURI VALLEY | IA |
| 704 | 1300 STONE ST | FALLS CITY | NE |
| 164 | 255 JOHN F KENNEDY RD | DUBUQUE | IA |
| 729 | 777 BYPASS RD | BRANDENBURG | KY |
| 47 | 100 S 66TH ST | LINCOLN | NE |
| 558 | 614 W 3RD ST | REDFIELD | SD |
| 571 | 620 E HIGHWAY 12 | WEBSTER | SD |
| 569 | 1400 MORNINGSIDE DR | MILBANK | SD |
| 736 | 727 15TH AVE SW | VALLEY CITY | ND |
| 774 | 100 WASHINGTON ST | LIVINGSTON | MT |
| 616 | 2541 S BAY SHORE DR | SISTER BAY | WI |
| 696 | 505 W HOLME ST | NORTON | KS |
| 628 | 1009 7TH AVE | TWO HARBORS | MN |
| 542 | 1301 S MAIN ST | PERRYTON | TX |
| 606 | 56835 STATION DR | CALUMET | MI |
| 174 | 2323 W. Pioneer Parkway | Peoria | IL |
| 760 | 1105 BRIDGER DR | GREEN RIVER | WY |
| 732 | 3225 10TH ST E | GLENCOE | MN |

1

| 786 | 801 N BROADWAY ST | RED OAK | IA |
| 652 | 400 S MAIN ST | BROOKLYN | MI |
| 172 | 3400 N 27TH ST | LINCOLN | NE |
| 769 | 1159 S CENTRAL AVE | SIDNEY | MT |
| 546 | 333 S. LINCON STREET | BURLINGTON | CO |
| 551 | 334 N HALLECK ST | DEMOTTE | IN |
| 534 | 602 MAIN AVE W | ROLLA | ND |
| 743 | 1900 HIGHWAY 49 | BEULAH | ND |
| 653 | 174 JAMES ROBERTSON DR # 391 | GLADWIN | MI |
| 659 | 2410 DAHLKE AVE | AUBURN | NE |
| 658 | 123 N 24TH ST | BEATRICE | NE |
| 755 | 1701 16TH ST | WHEATLAND | WY |
| 681 | 202 OAK GROVE DR | IDA GROVE | IA |
| 753 | 2701 HIGHWAY 18 W | HOT SPRINGS | SD |
| 33 | 1640 APPLETON RD | MENASHA | WI |
| 24 | 955 W CLAIREMONT AVE | EAU CLAIRE | WI |
| 667 | 1501 PARK ST | SHELDON | IA |
| 620 | 810 N RAILROAD ST | EAGLE RIVER | WI |
| 211 | 2402 Central Avenue | ESTHERVILLE | IA |
| 679 | 1006 S COUNTY RD | TOLEDO | IA |
| 684 | 106 SMITH ST | BLOOMFIELD | IA |
| 550 | 100 E HELENA ST | DILLON | MT |
| 509 | 2820 ROOSEVELT RD | MARINETTE | WI |
| 737 | 932 W 12TH ST | GRAFTON | ND |
| 741 | 225 HIGHWAY 2 SE | RUGBY | ND |
| 694 | 312 FLACK AVE | ALLIANCE | NE |
| 14 | 822 PARK AVE | BEAVER DAM | WI |
| 757 | 1 N 5TH AVE | BELLE FOURCHE | SD |
| 766 | 1950 W ROOSEVELT HWY | SHELBY | MT |
| 545 | 2008 W GRAND XING | MOBRIDGE | SD |
| 791 | 616 E US HIGHWAY 9 | FOREST CITY | IA |
| 541 | 509 BLAIR ST | DALHART | TX |
| 575 | 910 W AVENUE D | LOVINGTON | NM |
| 646 | 3825 S HURON RD | STANDISH | MI |
| 633 | 1333 4TH AVE S | PARK FALLS | WI |
| 617 | N 2585 PLAZA RD | WAUTOMA | WI |
| 720 | 100 CROSS COUNTY PLZ | BATESVILLE | IN |
| 685 | 1425 EDGINGTON AVE | ELDORA | IA |
| 540 | 334 E. HWY. 302 | KERMIT | TX |
| 735 | 190 SOUTHGATE DR | AITKIN | MN |
| 552 | 1420 N 8TH ST | OAKES | ND |
| 568 | 200 10TH AVE SE | NEW PRAGUE | MN |

| | | |
|---|---|---|
| 536 | 515 E OKLAHOMA AVE | ULYSSES | KS |
| 547 | 4791 COUNTY ROAD 10 | MOOSE LAKE | MN |
| 676 | 1901 COURT AVE | CHARITON | IA |
| 690 | 1533 BURLINGTON ST | HOLDREGE | NE |
| 745 | 1140 E 5TH ST | WINNER | SD |
| 773 | 825 NE MAIN ST | LEWISTOWN | MT |
| 750 | 2155 1ST AVE N | WINDOM | MN |
| 605 | 340 HIGHWAY 65 S | MORA | MN |
| 687 | 202 SW KENT ST | GREENFIELD | IA |
| 751 | 1712 SD HIGHWAY 10 | SISSETON | SD |
| 665 | 808 4TH ST SE | HAMPTON | IA |
| 610 | 650 US HIGHWAY 41 W | ISHPEMING | MI |
| 677 | 2220 HWY 175 W | ONAWA | IA |
| 1 | 216 S MILITARY AVE | GREEN BAY | WI |
| 548 | 416 US HIGHWAY 59 | MAHNOMEN | MN |
| 535 | 320 HWY. 12 EAST | BOWMAN | ND |
| 705 | 2001 E 9TH ST | TRENTON | MO |
| 537 | 1026 N INDEPENDENCE AVE | BELOIT | KS |
| 619 | 220 W LINCOLN ST | ADAMS | WI |
| 695 | 2353 S E ST | BROKEN BOW | NE |
| 648 | 2655 W. CHICAGO BLVD. | TECUMSEH | MI |
| 532 | 102 COLLEGE DRIVE | NEW TOWN | ND |
| 691 | 100 TEXAS TRAIL DR | OGALLALA | NE |
| 693 | 821 W CRAWFORD ST | CLAY CENTER | KS |
| 692 | 1150 E 3RD ST | SUPERIOR | NE |
| 775 | 1600 W. HWY 2 | LIBBY | MT |
| 761 | 205 BOYD AVE | NEWCASTLE | WY |
| 40 | 3025 HAMILTON BLVD | SIOUX CITY | IA |
| 747 | 405 W INTERSTATE DR | LUVERNE | MN |
| 700 | 1217 S HIGHWAY 71 | KIMBALL | NE |
| 702 | 908 E 14TH ST | LARNED | KS |
| 701 | 1212 W MAIN ST | LYONS | KS |
| 649 | 1995 S CEDAR ST | IMLAY CITY | MI |
| 554 | 1203 N MAIN ST | ANDREWS | TX |
| 763 | 1135 MOUNT RUSHMORE RD | CUSTER | SD |
| 764 | 129 HARMONY ST | BUFFALO | WY |
| 734 | 601 DIVISION AVE S | CAVALIER | ND |
| 632 | 650 BEAVERBOOK AVE | SPOONER | WI |
| 776 | 513 GREYBULL AVE | GREYBULL | WY |
| 122 | 1340 N WENATCHEE AVE | WENATCHEE | WA |
| 748 | 1002 7TH ST SE | PIPESTONE | MN |
| 79 | 200 S 18TH AVE | WAUSAU | WI |
| 85 | 5800 S REDWOOD RD | SALT LAKE CITY | UT |

| 668 | 660 W MILWAUKEE ST | NEW HAMPTON | IA |
| 664 | 511 10TH AVE N | HUMBOLDT | IA |
| 624 | 15900 PICTURE BAY TRL | LANSE | MI |
| 512 | 598 LUCAS LN | ELLSWORTH | WI |
| 641 | 110 WATTERS DR | DWIGHT | IL |
| 656 | 784 S CEDAR ST STE E | KALKASKA | MI |
| 758 | 1950 E RICHARDS ST | DOUGLAS | WY |
| 171 | 1800 PLOVER RD | PLOVER | WI |
| 560 | 816 E STATE RD | FAIRVIEW | OK |
| 765 | 1080 HWY 414P.O. BOX 219 | MOUNTAIN VIEW | WY |
| 128 | 1370 HWY 2 EAST | KALISPELL | MT |
| 706 | 111 LEROUX ST | DONIPHAN | MO |
| 573 | 87 S FOSSIL ST | RUSSELL | KS |
| 572 | 401 US HIGHWAY 24 | LEADVILLE | CO |
| 539 | 1907 S STOCKTON AVE | MONAHANS | TX |
| 570 | 905 W. SD HIGHWAY | WAGNER | SD |
| 580 | 6717 HIGHWAY 200 | CARRINGTON | ND |
| 579 | 502 E 8TH AVE | YUMA | CO |
| 566 | 215 MAIN AVE NE | WARROAD | MN |
| 567 | 810 DIEKMANN DR | PAYNESVILLE | MN |
| 576 | 2500 US-90 | ALPINE | TX |
| 669 | 1345 S FREDERICK AVE | OELWEIN | IA |
| 578 | 415 US HIGHWAY 24 N | BUENA VISTA | CO |
| 581 | 1709 HIGHWAY 32 | LISBON | ND |
| 574 | 2052 E COMMERCIAL AVE | LOWELL | IN |
| 585 | 935 3rd Street SE | MAYVILLE | ND |
| 586 | 1401 State Street | PHILLIPSBURG | KS |
| 587 | 1180 S 16th Street | CLARINDA | IA |
| 582 | 1000 US Business 67 | PRESIDIO | TX |
| 583 | 860 S Main Street | BLANDING | UT |
| 520 | 2585 State Hwy 14 | ALBION | NE |
| 618 | 1515 E MAIN ST | REEDSBURG | WI |
| 104 | 747 S MAIN ST | BRIGHAM CITY | UT |
| 88 | 1150 N MAIN ST | LAYTON | UT |
| 87 | 1018 WASHINGTON BLVD | OGDEN | UT |
| 45 | 601 GALVIN RD S | BELLEVUE | NE |
| 134 | 1450 S GRAND AVE | PULLMAN | WA |
| 84 | 1553 WEST 9000 SO.ST | WEST JORDAN | UT |
| 503 | 1011 N WISCONSIN ST | PORT WASHINGTON | WI |
| 502 | 2585 LINEVILLE RD | GREEN BAY | WI |
| 501 | 3705 MONROE RD | DE PERE | WI |
| 577 | 308 S 2ND ST | CANADIAN | TX |
| 607 | 1010 S MAINLINE DR | SEYMOUR | WI |

| 213 | 705 W. Marshall Howard Blvd | LITTLEFIELD | TX |
| 608 | 1010 W RYAN ST | BRILLION | WI |
| 682 | 2099 CHATBURN AVE | HARLAN | IA |
| 93 | 60 NE BEND RIVER MALL DR | BEND | OR |
| 98 | 2815 CHAD DR | EUGENE | OR |
| 111 | 1230 LANCASTER DRIVE | SALEM | OR |
| 113 | 5500 MARTIN WAY E | LACEY | WA |
| 105 | 125 S STATE ST | OREM | UT |
| 83 | 2165 EAST 9400 SOUTH | SANDY CITY | UT |
| 65 | 8105 W FAIRVIEW AVE | BOISE | ID |
| 738 | 300 JAKE ST | PERHAM | MN |
| 675 | 402 E HIGHWAY 92 | WINTERSET | IA |
| 697 | 1710 NORTH ST | SENECA | KS |
| 788 | 200 COMMERCE DR | COLUMBUS | WI |
| 789 | 825 W FULTON ST | WAUPACA | WI |
| 790 | 409 JUNCTION AVE | STANLEY | WI |
| 661 | 500 PLAZA DR | WEST POINT | NE |
| 744 | 1087 3RD ST NW | ROSEAU | MN |
| 742 | 421 GATEWAY DR NE | EAST GRAND FORKS | MN |
| 740 | 116 E. STATE HWY 28 | MORRIS | MN |
| 635 | 251 S 4TH ST | SAVANNA | IL |
| 170 | 2200 LINCOLN ST | RHINELANDER | WI |
| 629 | 1500 E SHERIDAN ST | ELY | MN |
| 627 | 1008 E DIVISION ST | NEILLSVILLE | WI |
| 670 | 615 DEARBORN ST | WAYNE | NE |
| 553 | 1903 N BUCKEYE AVE | ABILENE | KS |
| 613 | 916 E MAIN ST | WINNECONNE | WI |
| 611 | 201 S 3RD ST | SAINT PETER | MN |
| 526 | 679 SOUTH WASHINGTON STREET | AFTON | WY |
| 623 | 890 RIVERSIDE PLZ | IRON RIVER | MI |
| 662 | 211 S 23RD ST | PLATTSMOUTH | NE |
| 178 | N 66 W 25201 COUNTY RD V V | SUSSEX | WI |
| 792 | 79 HOMETOWN DR | TOMAHAWK | WI |
| 177 | 2320 LINEVILLE RD | GREEN BAY | WI |
| 179 | 5630 SAINT CROIX TRL | NORTH BRANCH | MN |
| 505 | 2101 E EVERGREEN DR | APPLETON | WI |
| 504 | W3208 VAN ROY RD | APPLETON | WI |
| 523 | 525 E HIGHWAY 20 | VALENTINE | NE |
| 752 | 1100 E VALLEY RD | TORRINGTON | WY |
| 767 | 100 S 20TH ST | WORLAND | WY |
| 601 | 802 N MAIN ST | KEWAUNEE | WI |
| 602 | 126 CHARLES ST | OCONTO | WI |

| | | | |
|---|---|---|---|
| 793 | 2050 HORICON STREET | MAYVILLE | WI |
| 642 | 540 JENNER DR | ALLEGAN | MI |
| 796 | 301 Mantorville Ave S | KASSON | MN |
| 794 | 814 13TH AVENUE SW | QUINCY | WA |
| 80 | 2201 ZEIER RD | MADISON | WI |
| 68 | 800 E 17TH ST | IDAHO FALLS | ID |
| 32 | 2101 W BROADWAY | MONONA | WI |
| 95 | 2655 S BROADWAY AVE | BOISE | ID |
| 5 | 230 NORTH WISCONSIN STREET | DEPERE | WI |
| 18 | 1710 S MAIN ST | WEST BEND | WI |
| 66 | 9520 N NEWPORT HWY | SPOKANE | WA |
| 108 | 955 N MAIN ST | SPANISH FORK | UT |
| 109 | 4060 RIVERDALE RD | RIVERDALE | UT |
| 39 | 4200 S 27TH ST | LINCOLN | NE |
| 33 | 1578 APPLETON RD | MENASHA | WI |
| 81 | 5801 SUMMITVIEW AVE | YAKIMA | WA |
| 141 | 313 N ROOSEVELT AVE | BURLINGTON | IA |
| 64 | 2100 CALDWELL BLVD | NAMPA | ID |
| 538 | 710 N LL AND G AVE | ANTHONY | KS |
| 555 | 1145 S HIGHWAY 191 | MOAB | UT |
| 795 | 1026 S. Challis St. | SALMON | ID |
| 797 | 6475 HWY 93 S, # 15 | WHITEFISH | MT |
| 799 | 440 W MAIN ST | TREMONTON | UT |
| 557 | 1174 N MAIN ST | NEPHI | UT |
| 549 | 1001 N CENTER AVE | HARDIN | MT |
| 556 | 471 WINE COUNTRY RD | PROSSER | WA |
| 798 | 1635 E HIGHWAY 40 | BALLARD | UT |
| 563 | 406 GATEWAY AVE | MAUSTON | WI |
| 600 | 911 S K Avenue | VINTON | IA |
| 565 | 1610 N 2ND ST | CHEROKEE | IA |
| 561 | 145 BROADWAY AVE N | COKATO | MN |
| 564 | 200 RED BULL DIVISION DR. | WEBSTER CITY | IA |
| 562 | 702 WESTVIEW LANE | STANLEY | ND |
| 592 | 1300 E Central Avenue | COMANCHE | TX |
| 589 | 22422 Hwy 9 | CRESCO | IA |
| 588 | 660 N Main Street | BEAVER | UT |
| 598 | 207 S Mountain Avenue | SPRINGERVILLE | AZ |
| 200 | 1950 N. Highway 89 | CHINO VALLEY | AZ |
| 594 | 1951 E. King Avenue | CHAMBERLAIN | SD |
| 596 | 1208 N. Highway 77 | DELL RAPIDS | SD |
| 597 | 133 Trotter Avenue | ORD | NE |
| 201 | 3402 Main Street | EMMETSBURG | IA |
| 584 | 6355 Main Street | BONNERS FERRY | ID |

| 203 | 124 Lumar Dr | JACKSBORO | TX |
| 559 | 1105 Michigan Ave | OROFINO | ID |
| 208 | 711 S. Main Street | SEYMOUR | TX |
| 209 | 908 NW 6th Street | TULIA | TX |
| 212 | 301 E Highway 20 | GORDON | NE |
| 202 | 927 North Avenue G | CLIFTON | TX |
| 206 | 701 Great Basin Blvd | ELY | NV |
| 205 | 94 North 400 East | DELTA | UT |
| 207 | 67 Selkirk Way | OLDTOWN | ID |
| 543 | 600 US HIGHWAY 2 E | WOLF POINT | MT |
| 97 | 4850 W 3500 S | WEST VALLEY CITY | UT |
| 127 | 1450 E GENEVA ST | DELAVAN | WI |
| 100 | 699 GREEN BAY ROAD | NEENAH | WI |
| 57 | 405 COTTONWOOD DR | WINONA | MN |
| 96 | 55 LAKE BLVD | REDDING | CA |
| 7 | 4344 MORMON COULEE RD | LA CROSSE | WI |
| 56 | 14445 W CENTER RD | OMAHA | NE |
| 544 | 500 N CENTRAL AVE | SIDNEY | MT |
| 609 | 1120 STATE ROAD 67 | KIEL | WI |
| 69 | 217 W IRONWOOD DR | COEUR D ALENE | ID |
| 62 | 301 NORTHWEST BYP | GREAT FALLS | MT |
| 63 | 4215 YELLOWSTONE AVE | CHUBBUCK | ID |
| 53 | 510 E PHILIP AVE | NORTH PLATTE | NE |
| 38 | 2208 N WEBB RD | GRAND ISLAND | NE |
| 78 | 1845 HAINES AVE | RAPID CITY | SD |
| 129 | 4515 S REGAL ST | SPOKANE | WA |
| 24 | 955 W CLAIREMONT AVE | EAU CLAIRE | WI |
| 106 | 905 S 24TH ST W | BILLINGS | MT |
| 59 | 1001 HIGHWAY 15 S | FAIRMONT | MN |
| 102 | 2741 ROOSEVELT RD | MARINETTE | WI |
| 92 | 867 N COLUMBIA CENTER BLVD | KENNEWICK | WA |
| 132 | 320 S ACCESS RD | RICE LAKE | WI |
| 99 | 9366 STATE ROAD 16 | ONALASKA | WI |
| 76 | 1601 W 41ST ST | SIOUX FALLS | SD |
| 3 | 3415 CALUMET AVE | MANITOWOC | WI |
| 89 | 1651 W ROSE ST | WALLA WALLA | WA |
| 139 | 3200 BROADWAY ST | QUINCY | IL |
| 82 | 5959 S STATE ST | MURRAY | UT |
| 29 | 7401 MINERAL POINT RD | MADISON | WI |
| 73 | 2530 RUDKIN RD | UNION GAP | WA |
| 533 | 6527 HIGHWAY 40 | TIOGA | ND |
| 771 | 117 W 1ST AVE | PLENTYWOOD | MT |

# EXHIBIT B

## PROPERTIES

### Exhibit B

| # | Status | City | State | Zip | Acres |
|---|--------|------|-------|-----|-------|
| 669 | Available | Oelwein | IA | 50662 | 3.93 |
| 52 | Available | Mason City | IA | 50401 | 2.26 |
| 114 | Available | Duluth | MN | 55811 | 0.54 |
| 669 | Available | Oelwein | IA | 50662 | 3.26 |
| 142 | Available | Fort Madison | IA | 52627 | 5.38 |
| 37 | Available | Chippewa Falls | WI | 54729 | 4.38 |
| 54 | Available | Watertown | SD | 57201 | 0.52 |
| 46 | Available | Omaha | NE | 68134 | 0.57 |
| 134 | Available | Pullman | WA | 99163 | 0.66 |
| 61 | Available | Saint Cloud | MN | 56304 | 0.64 |
| 125 | Available | Freeport | IL | 61032 | 1.5 |
| 145 | Available | Monmouth | IL | 61462 | 3.1 |
| 140 | Available | Jacksonville | IL | 62650 | 0.86 |
| 132 | Available | Rice Lake | WI | 54868 | 1.67 |
| 4 | Available | Green Bay | WI | 54302 | 0.88 |
| 640 | Available | Tuscola | IL | 61953 | 1.65 |
| 46 | Available | Omaha | NE | 68134 | 0.41 |
| 717 | Available | Minerva | OH | 44657 | 1.72 |
| 140 | Available | Jacksonville | IL | 62650 | 1.29 |
| 125 | Available | Freeport | IL | 61032 | 0.96 |
| 125 | Available | Freeport | IL | 61032 | 0.96 |
| 717 | Available | Minerva | OH | 44657 | 1.93 |
| 22 | Available | Mitchell | SD | 57301 | 0.84 |
| 123 | Available | Houghton | MI | 49931 | 0.53 |
| 123 | Available | Houghton | MI | 49931 | 0.55 |
| 775 | Available | Libby | MT | 59923 | 5.08 |
| 717 | Available | Minerva | OH | 44657 | 3.06 |
| 11 | Available | Kingsford | MI | 49802 | 1.32 |
| 11 | Available | Kingsford | MI | 49802 | 1.33 |
| 12 | Available | Wisconsin Rapids | WI | 54494 | 0.8 |
| 12 | Available | Wisconsin Rapids | WI | 54494 | 0.8 |
| 26 | Available | Beloit | WI | 53511 | 0.73 |
| 132 | Available | Rice Lake | WI | 54868 | 0.6 |
| 26 | Available | Beloit | WI | 53511 | 0.73 |
| 724 | Available | Marion | KY | 42064 | 0.65 |
| 631 | Available | Ashland | WI | 54806 | 0.5 |
| 749 | Available | Saint James | MN | 56081 | 5.09 |

8

| | | | | | |
|---|---|---|---|---|---|
| 31 | Available | Kenosha | WI | 53144 | 0.72 |
| 601 | Available | Kewaunee | WI | 54216 | 5.26 |
| 724 | Available | Marion | KY | 42064 | 0.93 |
| 768 | Available | Glasgow | MT | 59203 | 0.31 |
| 754 | Available | Rawlins | WY | 82301 | 1.01 |
| 727 | Available | Bloomfield | IN | 47424 | 0.64 |
| 26 | Available | Beloit | WI | 53511 | 0.39 |
| 31 | Available | Kenosha | WI | 53144 | 0.5 |
| 31 | Available | Kenosha | WI | 53144 | 0.5 |
| 725 | Available | Petersburg | IN | 47567 | 1.42 |
| 3017 | Available | Smithville | TN | 37166 | 1.73 |
| 639 | Available | Rockville | IN | 47872 | 0.78 |
| 630 | Available | Arcadia | WI | 54612 | 0.66 |
| 601 | Available | Kewaunee | WI | 54216 | 0.66 |
| 725 | Available | Petersburg | IN | 47567 | 1.74 |
| 671 | Available | Waukon | IA | 52172 | 0.99 |
| 726 | Available | Loogootee | IN | 47553 | 0.56 |
| 726 | Available | Loogootee | IN | 47553 | 0.39 |
| 3146 | Available | Mitchell | IN | 47446 | 0.66 |
| 703 | Available | Burlington | KS | 66839 | 1.7 |
| 602 | Available | Oconto | WI | 54154 | 0.57 |
| 725 | Available | Petersburg | IN | 47567 | 0.54 |
| 725 | Available | Petersburg | IN | 47567 | 1.42 |
| 724 | Available | Marion | KY | 42064 | 0.47 |
| 730 | Available | Hodgenville | KY | 42748 | 0.45 |
| 724 | Available | Marion | KY | 42064 | 1.07 |
| 3146 | Available | Mitchell | IN | 47446 | 1.55 |
| 719 | Available | Woodsfield | OH | 43793 | 0.72 |
| 728 | Available | Centerville | TN | 37033 | 0.3 |
| | | | | | |
| 514 | Available | Lake City | MI | 49651 | 1.36 |
| 3658 | Available | Ontonagon | MI | 49953 | 4.31 |
| 771 | Available | Plentywood | MT | 59254 | 1.19 |
| 533 | Available | Tioga | ND | 58852 | 4.1 |