**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064-TLS |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR APPROVAL OF A**
**SETTLEMENT WITH MCKESSON CORPORATION INC.**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] respectfully state

as follows in support of this motion (this "Motion"):

**Relief Requested**

1.    By this motion, the Debtors respectfully seek approval of a settlement, as set forth

and incorporated in this motion (the "Settlement") and the Stipulation and Settlement Agreement

(the "Stipulation") attached hereto as **Exhibit A**, between the Debtors and McKesson Corporation

Inc. (together with its affiliates, successors and assignees, collectively, "McKesson").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]    A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Russell L. Steinhorst, Chief Executive Officer of Specialty Retail Shops Holding Corp., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 4] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions under chapter 11.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 4001(d), and 9019, and Rule 9013-1.C of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

**Background**

5.      The Debtors are engaged in the sale of general merchandise including clothing, accessories, electronics, and home furnishings, as well as company operated pharmacy and optical services departments.  The Debtors are headquartered in Green Bay, Wisconsin, and operate approximately 367 stores in 25 states throughout the United States, as well as e-commerce operations.  The Debtors and their non-Debtor subsidiaries generated approximately $2.6 billion in revenue in fiscal year 2017 and currently employ approximately 14,000 people throughout the United States.

6.      On January 16, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 25].  No party has requested the appointment of a trustee or examiner in these chapter 11 cases.  On January 18, 2019, the United States Trustee for the District of Nebraska (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 95].

### Settlement Background

7.      On or about February 1, 2017, the Debtors and McKesson entered into that certain Restated Supply Agreement (together with all amendments, the "Supply Agreement"), whereby McKesson supplied the Debtors with pharmaceutical goods in connection with the Debtors' pharmacy business (the "Pharmaceutical Goods") and served as the Debtors' primary supplier of the Pharmaceutical Goods.  Among other provisions, the Supply Agreement contains a section governing "Returned Goods."  Supply Agreement, § 7  That section provides:

> **Return Goods Policy**.   Merchandise purchased by ShopKo pursuant to this Agreement will be subject to the terms and conditions of the Returned Goods Policy set forth in Attachment 2.
>
> **Unsaleable Merchandise Returns**.  ShopKo shall participate in McKesson's Buy Back Program for processing of the Pharmacies' eligible Prescription Products Unsaleable Merchandise through a third party returns processor.  The Parties shall follow the guidelines for the program, which are set forth in Attachment 2-1.

8.      During the short span of these chapter 11 cases, McKesson has filed multiple objections and a motion to transfer venue, as discussed further below.  The Settlement contained herein resolves all of these issues.

**I.      Postpetition Financing.**

9.      On the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 35] (the "DIP Motion").  McKesson filed a limited objection to the DIP Motion on January 16, 2019 [Docket No. 41] (the "DIP Objection"), arguing that the Debtors' proposed postpetition financing impermissibly impaired McKesson's reclamation rights and marshalling rights by granting liens to the Debtors' postpetition lenders senior in priority to all claims, including McKesson's reclamation rights and marshaling rights.  McKesson also expressed this objection to the DIP Motion at the hearing on the Petition Date.  The Court granted the DIP Motion on an interim basis on January 18, 2019 [Docket No. 89].

10.      This Settlement resolves all of McKesson's objections related to the DIP Motion. The Settlement also assists the Debtors in disposing of its remaining Pharmaceutical Goods through the agreed-upon processes in the Supply Agreement.

**II.      Sale Transaction and Bid Procedures.**

11.      On the Petition Date, the Debtors filed the *Debtors' Motion to for Entry of Orders (I) Establishing Bidding Procedures for the Pharmacy Assets, (II) Approving the Transactions, and (III) Granting Related Relief* [Docket No. 27] (the "Pharmacy Sale Motion").  The Court entered an order establishing the bidding procedures on January 17, 2019 [Docket No. 77] (the "Pharmacy Bid Procedures Order").

12.      Pursuant to the Pharmacy Bid Procedures Order, the Debtors conducted an auction on January 23, 2019, where they solicited and selected, with the assistance of their advisors and in

consultation of certain other parties, the highest or otherwise best offers for the sales, liquidations,

or other dispositions (such sales, liquidations, or other dispositions, the "Transactions") of the

Debtors' stock of prescription pharmaceutical inventory and/or the prescription files and records,

pharmacy customer lists and patient profiles located at, and for customers serviced from, the

Debtors' pharmacies.

13.     At the hearing on the Petition Date, McKesson expressed an objection to the

Pharmacy Sale Motion similar to their DIP Objection, arguing that the Transactions impaired

McKesson's reclamation rights and marshaling rights (the "Pharmacy Sale Objection").

14.     This Settlement resolves all of McKesson's objections to the Pharmacy Sale

Motion and related Transactions.

**III.    Transfer Venue.**

15.     On January 18, 2019, McKesson filed the *Motion of McKesson Corporation Inc. to*

*Transfer Venue of Affiliated Chapter 11 Bankruptcy Cases to the United States Bankruptcy Court*

*for the Eastern District of Wisconsin* [Docket No. 100] (the "Venue Motion"), whereby McKesson

requested the Court transfer the venue of these chapter 11 cases to the United States Bankruptcy

Court for the Eastern District of Wisconsin.  A hearing is currently scheduled on the Venue Motion

for January 28, 2019 at 1:30 p.m. (prevailing Central Time).

16.     This Settlement resolves all arguments asserted by McKesson in the Venue Motion.

**Terms of the Settlement**

17.     In an effort to reach a global resolution with McKesson on all matters, including

the DIP Objection, the Pharmacy Sale Objection, and Venue Motion and to dispose of the Debtors'

remaining Pharmaceutical Goods, the Debtors entered into negotiations with McKesson.

Productive discussions between both parties have resulted in a consensual resolution, which is

memorialized herein, and allows the Debtors to timely consummate the Transactions, dispose of

the bulk of the Debtors' unsaleable Pharmaceutical Goods, and avoid contested hearings on the

Pharmacy Sale Motion, DIP Motion, and Venue Motion, which benefits all parties in interest.

18.   Specifically, and subject to the Court's approval, the parties have agreed to resolve

all matters related to McKesson as follows:[3]

a.  McKesson will withdraw its objections to and will not contest entry of orders related to the DIP Motion and the Pharmacy Sale Motion, and McKesson shall withdraw the Venue Motion with prejudice.

b.  McKesson retains any rights it may have as of the date of this Stipulation, to the extent provided under the Bankruptcy Code or applicable law, to assert a claim and file a proof of claim for reclamation with respect to the Pharmaceutical Goods and marshaling rights, if any; *provided* that (a) any such claims and rights of McKesson shall be junior and subordinate in all respects to the liens, claims, and interests of the Agent and Lenders in the Collateral to the extent set forth in the Interim DIP Order or Final DIP Order; and (b) except as specifically set forth in paragraph 5, below, McKesson shall not assert (other than by filing a proof of claim) any such reclamation claims or marshalling rights, or seek adequate protection or a 507(b) Claim (as defined below) in connection with any such claims or rights, until the earlier of (i) the final indefeasible payment in full of all Obligations in accordance with the terms of the Loan Agreement and Interim DIP Order or Final DIP Order, as applicable; or (ii) the entry of final non-appealable orders (A) granting an Objection filed by any party other than McKesson in accordance with the Interim DIP Order or Final DIP Order that invalidates all liens of the Agent and Lenders on the Pharmaceutical Goods, and (B) denying any application of the Agent and Lenders for an administrative expense claim in connection with the Interim DIP Order or Final DIP Order, or in connection with the Loan Agreement or any funds advanced by the Lenders to the Debtors. For the avoidance of doubt, this Stipulation and Agreement shall not modify, impair, or waive and arguments or defenses of Debtors or any other party in defense or opposition to any such claims or arguments of McKesson.  For the further avoidance of doubt, McKesson is permitted to file a proof of claim against the Debtors' estates on account of its reclamation claims and marshaling rights.

c.  If (a) all Pre-Petition Obligations and Post-Petition Obligations (subject to Section 4.1 of the Interim DIP Order or Final DIP Order, as applicable) are indefeasibly paid in full in cash in accordance with the Loan Agreement, and (b) the Court enters a final order providing that, as of the Petition Date, McKesson held a valid enforceable reclamation claim with respect to the Pharmaceutical Goods and enforceable marshaling rights related to the

---

[3]   To the extent anything in this Motion is inconsistent with the Stipulation, the terms of the Stipulation shall control.

reclaimed Pharmaceutical Goods, then McKesson shall receive a superpriority claim to the extent allowed under section 507(b) of the Bankruptcy Code for the value of the reclamation and marshaling claims (the "507(b) Claim"); *provided* that any such 507(b) Claim shall be junior and subordinate in all respects to any allowed administrative claim of the Agent and Lenders pursuant to the Interim DIP Order or Final DIP Order, or in connection with the Loan Agreement or any funds advanced by the Lenders to the Debtors.

d.  No later than 120 days after entry of an order approving this Stipulation, the Debtors shall return any remaining Pharmaceutical Goods in their possession (which for the avoidance of date excludes any Pharmaceutical Goods sold by the Debtors before such date) previously delivered under the Supply Agreement, pursuant to section 7.A. of the Supply Agreement (the "Return Goods").  Upon acceptance of such Pharmaceutical Goods in accordance with the Supply Agreement and McKesson's standard procedures governing returned goods (as provided in the Supply Agreement), McKesson will provide the Debtor with an accounting of the credit value of such Pharmaceutical Goods (the "Return Goods Credit") calculated in accordance with McKesson's standard procedures governing returned goods (as provided in the Supply Agreement).

e.  Notwithstanding the terms set forth in Paragraphs 2-3 above, the Return Goods Credit shall be applied pro rata between McKesson's allowed administrative claim under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claim"), if any, and McKesson's allowed 507(b) Claim, if any, based on the following formula:

   (i)   503(b)(9) Claim:  50% of the Return Goods Credit.

   (ii)  507(b) Claim:  50% of the Return Goods Credit.

   If McKesson does not hold either a 503(b)(9) Claim or a 507(b) Claim, the portion of the Return Goods Credit attributable to such disallowed claim will be applied against McKesson's allowed general unsecured claim.  If the Return Goods Credit is sufficient to satisfy in full the 503(b)(9) Claim or the 507(b) Claim granted by the Court, then any excess Return Goods Credit shall be setoff against McKesson's allowed general unsecured claim.

f.  Notwithstanding sections 362 and 553 of the Bankruptcy Code, McKesson will be entitled to apply, setoff and/or recoup the Return Goods Credit against its allowed claims under sections 503(b)(9) and 507(b) of the Bankruptcy Code and its general unsecured claims, as provided herein.  The Return Goods Credit is not subject to disgorgement or recovery under Section 5 of the Bankruptcy Code.

g.  The Debtors shall propose the following language for the final orders approving the DIP Motion and Pharmacy Sale Motion:

Notwithstanding anything herein to the contrary, McKesson's rights to assert reclamation rights, marshalling rights, or a superpriority claim under section 507(b) of the Bankruptcy Code are preserved to the extent forth in the Stipulation and Settlement Agreement between Debtors and McKesson Corporation Inc. approved pursuant to the Court's order granting *Debtors' Motion for Approval of a Settlement with McKesson Corporation Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019.*

h. McKesson hereby agrees that it will not file an Objection or otherwise seek disgorgement or recovery of any amounts paid by the Debtors to the Agent and Lenders pursuant to the terms and conditions of the Loan Agreement.

i. Both parties reserve the right to seek appropriate relief from this Court for any breach or alleged breach of the foregoing terms.

19.     Absent the Settlement provided for herein, McKesson would have continued to prosecute its objections to the Debtors' proposed postpetition financing and the Transactions. Additionally, the Settlement provided for herein will allow the Debtors to avoid costly litigation in objecting to the Venue Motion.  The Settlement provided for herein also enables the Debtors to dispose of the bulk of its remaining Pharmaceutical Goods.  Accordingly, the Debtors believe that the compromises memorialized in the Settlement herein represent a sound exercise of the Debtors' business judgment and should be approved.

**Basis for Relief**

20.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement."  *See* Fed. R. Bankr. P. 9019(a).  "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  *See also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006) (same); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of

bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602 (5th Cir. 1980) (decided under the Bankruptcy Act).

21.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, equitable, and in the best interest of the estate. *See, e.g., In re Carlson*, No. 04-41534 (TJM), 2008 WL 345606, at *1 (Bankr. D. Neb. Jan. 7, 2008) (citation omitted). Ultimately, "the decision to approve a settlement under [Bankruptcy] Rule 9019 is within the discretion of the bankruptcy judge." *In re Racing Servs., Inc.*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005).When determining whether a settlement is fair, equitable, and in the best interest of an estate, courts in Nebraska consider, among other factors, "the expense, inconvenience, and delay associated with [the dispute] and the paramount interest of the creditors and a proper deference to their reasonable views." *In re Brodkey Bros., Inc.*, No. 13-80203 (TLS), 2013 WL 5636484, at *7 (Bankr. D. Neb. Oct. 15, 2013) (citing *Drexel Burnham Lambert, Inc., v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.),* 730 F.2d 1128, 1135 (8th Cir. 1984) (quoting *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929))); *ReGen Capital III, Inc. v. Official Comm. of Unsec. Creditors (In re Trism, Inc.),* 282 B.R. 662, 667 (B.A.P. 8th Cir.2002)).  For example, courts in Nebraska have found that a settlement is in the best interests of the estate when it reduces attorneys' fees that would otherwise be incurred. *See, e.g.*, *Carlson*, 2008 WL 345606, at *2.

22.     Importantly, it is well established that a proponent of a settlement need not convince the court that a settlement is the best possible compromise, but only that the settlement falls within the "range of reasonable compromises." *Carlson*, 2008 WL 345606, at *2 (citing *PW Enter., Inc. v. Kaler (In re Racing Servs., Inc.),* 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005)).

23.     Based on the foregoing considerations, the Debtors respectfully submit that the Settlement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates.  The Settlement avoids costly litigation related to the Venue Motion, the Pharmacy Sale Objection, and the DIP Objection and provides the Debtors with a clear path to finalizing the sale of the Debtors' stock of prescription pharmaceutical inventory and/or the prescription files and records and obtaining much-needed postpetition financing.

24.     The Settlement provides an agreed-upon mechanism for the Debtors to dispose of the bulk of the Pharmaceutical Goods, which remain unsold following consummation of the pharmacy location sales approved under the Pharmacy Sale Motion and the mechanism by which McKesson will apply any credits for the returned Pharmaceutical Goods.  To that end, it is important to note that the sale and transfer of pharmaceuticals is heavily restricted and regulated. As a "dispenser" of pharmaceutical products, the Debtors are subject to various Federal and state statutes and regulations.  One key Federal statute is the Drug Supply Chain Security Act (21 U.S.C. § 351, *et seq*. (the "DSCSA")).  The DSCSA limits the Debtors in that they can only sell or return the Pharmaceutical Goods to an "authorized trading partner."   McKesson qualifies as an "authorized trading partner" under the DSCSA.

25.     The Settlement reflects an arm's-length compromise negotiated among the Debtors and McKesson.  Accordingly, the Debtors respectfully request that the Court approve the Settlement as such action is a reasonable exercise of the Debtors' business judgment and in the best interest of their bankruptcy estates.

## Notice

26.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) counsel to the Committee; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents

under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility;

(f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission;

(h) the office of the attorneys general for the states in which the Debtors operate; (i) the United

States Attorney's Office for the District of Nebraska; (j) McKesson; and (k) any party that has

requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature

of the relief requested, no other or further notice need be given.  A copy of this Motion is also

available    on    the    website    of    the    Debtors'    notice    and    claims    agent    at

https://cases.primeclerk.com/shopko/.  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is required.

### No Prior Request

27.     No prior request for the relief sought in this motion has been made to this or any

other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving

the relief sought herein, and granting such other relief as the Court deems appropriate.

| | |
|---|---|
| Dated:   January 29, 2019<br> Omaha, Nebraska | /s/ Michael T. Eversden |

James J. Niemeier (NE Bar No. 18838)
Michael T. Eversden (NE Bar No. 21941)
Lauren R. Goodman (NE Bar No. 24645)
**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:   (402) 341-3070
Facsimile:   (402) 341-0216
Email:        jniemeier@mcgrathnorth.com
             meversden@mcgrathnorth.com
             lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Travis M. Bayer (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:        james.sprayregen@kirkland.com
             patrick.nash@kirkland.com
             travis.bayer@kirkland.com

- and -

Steven Serajeddini (admitted *pro hac vice*)
Daniel Rudewicz (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:        steven.serajeddini@kirkland.com
             daniel.rudewicz@kirkland.com

*Proposed Co-Counsel to the Debtors*

## <u>Exhibit A</u>

**Stipulation and Settlement Agreement**

## STIPULATION AND SETTLEMENT AGREEMENT

This Stipulation and Settlement Agreement (this "***Stipulation***"), dated as of January 25, 2019, by and among (i) Specialty Retail Shops Holding Corp. and certain of its affiliates (the "***Debtors***") and (ii) McKesson Corporation Inc. (together with its affiliates, successors and assignees, collectively, "***McKesson***").  Each of the Debtors and the McKesson is referred to as a "***Party***" and collectively, the "***Parties***."

**WHEREAS**, on or about February 1, 2017, the Debtors and McKesson entered into that certain Restated Supply Agreement (together with all amendments, the "***Supply Agreement***"), whereby McKesson supplied the Debtors with pharmaceutical goods ("***Pharmaceutical Goods***") in connection with the Debtors' pharmacy business.

**WHEREAS**, on January 16, 2019 (the "***Petition Date***"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in United States Bankruptcy Court for the District of Nebraska (the "***Court***").

**WHEREAS**, on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 35] (the "***DIP Motion***").

**WHEREAS**, McKesson filed a limited objection to the DIP Motion on January 16, 2019 [Docket No. 41] (the "***DIP Objection***").

**WHEREAS**, the Court granted the DIP Motion on an interim basis on January 18, 2019 [Docket No. 89].

**WHEREAS**, on the Petition Date, the Debtors filed the *Debtors' Motion to for Entry of Orders (I) Establishing Bidding Procedures for the Pharmacy Assets, (II) Approving the Transactions, and (III) Granting Related Relief* [Docket No. 27] (the "***Pharmacy Sale Motion***").

**WHEREAS**, the Court entered an order establishing the bidding procedures on January 17, 2019 [Docket No. 77] (the "***Pharmacy Bid Procedures Order***").

**WHEREAS**, at the hearing on the Petition Date, McKesson expressed an objection to the Pharmacy Sale Motion (the "***Pharmacy Sale Objection***").

**WHEREAS**, on January 18, 2019, McKesson filed the *Motion of McKesson Corporation Inc. to Transfer Venue of Affiliated Chapter 11 Bankruptcy Cases to the United States Bankruptcy Court for the Eastern District of Wisconsin* [Docket No. 100] (the "***Venue Motion***").

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**AGREEMENT**[1]

1.    Upon execution of this Stipulation, McKesson will withdraw its objections to and will not contest entry of orders related to the DIP Motion and the Pharmacy Sale Motion, and McKesson shall withdraw the Venue Motion with prejudice.

2.    McKesson retains any rights it may have as of the date of this Stipulation, to the extent provided under the Bankruptcy Code or applicable law, to assert a claim and file a proof of claim for reclamation with respect to the Pharmaceutical Goods and marshaling rights, if any; provided that (a) any such claims and rights of McKesson shall be junior and subordinate in all respects to the liens, claims, and interests of the Agent and Lenders in the Collateral to the extent set forth in the Interim DIP Order or Final DIP Order; and (b) except as specifically set forth in paragraph 5, below, McKesson shall not assert (other than by filing a proof of claim) any such reclamation claims or marshalling rights, or seek adequate protection or a 507(b) Claim (as defined below) in connection with any such claims or rights, until the earlier of (i) the final indefeasible payment in full of all Obligations in accordance with the terms of the Loan Agreement and Interim DIP Order or Final DIP Order, as applicable; or (ii) the entry of final non-appealable orders (A) granting an Objection filed by any party other than McKesson in accordance with the Interim DIP Order or Final DIP Order that invalidates all liens of the Agent and Lenders on the Pharmaceutical Goods, and (B) denying any application of the Agent and Lenders for an administrative expense claim in connection with the Interim DIP Order or Final DIP Order, or in connection with the Loan Agreement or any funds advanced by the Lenders to the Debtors. For the avoidance of doubt, this Stipulation and Agreement shall not modify, impair, or waive and arguments or defenses of Debtors or any other party in defense or opposition to any such claims or arguments of McKesson.  For the further avoidance of doubt, McKesson is permitted to file a proof of claim against the Debtors' estates on account of its reclamation claims and marshaling rights.

3.    If (a) all Pre-Petition Obligations and Post-Petition Obligations (subject to Section 4.1 of the Interim DIP Order or Final DIP Order, as applicable) are indefeasibly paid in full in cash in accordance with the Loan Agreement, and (b) the Court enters a final order providing that, as of the Petition Date, McKesson held a valid enforceable reclamation claim with respect to the Pharmaceutical Goods and enforceable marshaling rights related to the reclaimed Pharmaceutical Goods, then McKesson shall receive a superpriority claim to the extent allowed under section 507(b) of the Bankruptcy Code for the value of the reclamation and marshaling claims (the "***507(b) Claim***"); provided that any such 507(b) Claim shall be junior and subordinate in all respects to any allowed administrative claim of the Agent and Lenders

---

[1] Terms used but not defined herein have the meaning ascribed to them in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 89] ("***Interim DIP Order***").

5568986.2

pursuant to the Interim DIP Order or Final DIP Order, or in connection with the Loan Agreement or any funds advanced by the Lenders to the Debtors.

4.      No later than 120 days after entry of an order approving this Stipulation, the Debtors shall return any remaining Pharmaceutical Goods in their possession previously delivered under the Supply Agreement, pursuant to section 7.A. of the Supply Agreement (the "**Return Goods**").  Upon acceptance of such Pharmaceutical Goods in accordance with the Supply Agreement and McKesson's standard procedures governing returned goods (as provided in the Supply Agreement), McKesson will provide the Debtor with an accounting of the credit value of such Pharmaceutical Goods (the "**Return Goods Credit**") calculated in accordance with McKesson's standard procedures governing returned goods (as provided in the Supply Agreement).

5.      Notwithstanding the terms set forth in Paragraphs 2-3 above, the Return Goods Credit shall be applied pro rata between McKesson's allowed administrative claim under section 503(b)(9) of the Bankruptcy Code (the "**503(b)(9) Claim**"), if any, and McKesson's allowed 507(b) Claim, if any, based on the following formula:

> (i) 503(b)(9) Claim:  50% of the Return Goods Credit.

> (ii) 507(b) Claim:  50% of the Return Goods Credit.

If McKesson does not hold either a 503(b)(9) Claim or a 507(b) Claim, the portion of the Return Goods Credit attributable to such disallowed claim will be applied against McKesson's allowed general unsecured claim.  If the Return Goods Credit is sufficient to satisfy in full the 503(b)(9) Claim or the 507(b) Claim granted by the Court, then any excess Return Goods Credit shall be setoff against McKesson's allowed general unsecured claim.

6.      Notwithstanding sections 362 and 553 of the Bankruptcy Code, McKesson will be entitled to apply, setoff and/or recoup the Return Goods Credit against its allowed claims under sections 503(b)(9) and 507(b) of the Bankruptcy Code and its general unsecured claims, as provided herein.  The Return Goods Credit is not subject to disgorgement or recovery under Section 5 of the Bankruptcy Code.

7.      The Debtors shall propose the following language for the final orders approving the DIP Motion and Pharmacy Sale Motion:

> Notwithstanding anything herein to the contrary, McKesson's rights to assert reclamation rights, marshalling rights, or a superpriority claim under section 507(b) of the Bankruptcy Code are preserved to the extent forth in the Stipulation and Settlement Agreement between Debtors and McKesson Corporation Inc. approved pursuant to the Court's order granting *Debtors' Motion for Approval of a Settlement with McKesson Corporation Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019*.

3

5568986.2

8.      McKesson hereby agrees that it will not file an Objection or otherwise seek disgorgement or recovery of any amounts paid by the Debtors to the Agent and Lenders pursuant to the terms and conditions of the Loan Agreement.

9.      The Parties reserve the right to seek appropriate relief from the Court for any breach or alleged breach of the foregoing terms.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the parties hereto on the date first herein above written.

4

**SPECIALTY RETAIL SHOPS HOLDING CORP., on behalf of itself and each of its affiliated chapter 11 debtors**

By: _____

Name:

Title:

Date:

**MCKESSON CORPORATION INC.**

By:_____

Name:

Title:

Date:

6