**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re: <br><br> SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] <br><br> Debtors. | ) <br> ) Chapter 11 <br> ) <br> ) Case No.: 19-80064 (TLS) <br> ) <br> ) (Jointly Administered) <br> ) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) ESTABLISHING THE BIDDING PROCEDURES
FOR PLAN SPONSORS AND (II) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Specialty Retail Shops Holding Corp., *et al.*, the above-captioned debtors and debtors in possession (the "Debtors") hereby files this objection (the "Objection") to the *Debtors' Motion for Entry of an Order (I) Establishing the Bidding Procedures for Plan Sponsors and (II) Granting Related Relief* [Docket No. 38] (the "Plan Sponsor Bid Procedures Motion")[2]. In support of its Objection, the Committee respectfully represents as follows:

**INTRODUCTION**

1. The Committee has had recent conversations with the Debtors regarding its concerns with the Plan Sponsor Bid Procedures Motion and the parties are in the process of attempting to negotiate a resolution. The Committee believes that certain of its concerns are being addressed while other issues still are unresolved. Out of an abundance of caution, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2] Except as otherwise provided herein, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan Sponsor Bid Procedures Motion.

DOCS_LA:319118.1 78686/002

Committee is raising all of its concerns with the Plan Sponsor Bid Procedures Motion as filed herein while the parties continue their discussions.

## PRELIMINARY STATEMENT

2.      As the Court is keenly aware, the Committee is made up of two landlords and five trade creditors, and its constituency is made up of thousands of employees, and hundreds of vendors and landlords.  The Committee seeks to maximize the likelihood of a going concern bid in these cases, regardless of whether such bid is in the form of plan, a 363 sale (outside of a plan), or some other transaction.  The proposed Bid Procedures would only permit bids to be submitted in the form of a plan.  The Committee believes that the Bid Procedures should be made broader to allow non-plan bids to maximize the likelihood of attracting as many potential bidders as possible.

3.      Through the Plan Sponsor Bid Procedures Motion, the Debtors propose a process to identify a "plan sponsor" to effectuate: (i) the sale of the Debtors' assets (a "Sale Transaction") or (ii) a reorganization through the issuance, and purchase by the plan sponsor, of new common equity interests in the reorganized Debtors and the continued business of the Debtors (an "Equitization Transaction" and either a Sale Transaction or Equitization Transaction, as applicable, a "Transaction").  In each case, the Transaction would be effectuated through the Debtors' proposed chapter 11 plan, filed concurrently with the Plan Sponsor Bid Procedures Motion.

4.      The proposed Bid Procedures contain no alternative for bids for a sale of assets outside of a plan through a 363 sales process.  The Committee is concerned that potential bidders may be dissuaded from participating in bidding if they are required to confirm their sale through a plan.  Section 363 sales transactions can generally be concluded on a more expedited

timeframe and without negotiating allocation of sales proceeds for administrative claimants. Given the significant administrative shortfalls in the DIP Budget (as set forth in the Committee's concurrently filed DIP objection), allocation of sales proceeds will be an issue in these cases. Despite the Committee's request that the Bid Procedures allow bidders to proceed through a sale or a plan, the Committee's request has not been accepted to date.

5. The Committee has also expressed concern with the proposed sale timeline, particularly the February 21, 2019 bid deadline, which seems unnecessarily truncated. The Committee understands that the Debtors are revising their proposed sale timeline to allow bidders additional time, which the Committee is evaluating. The Committee also requested that the cash deposit proposed of 10% of the aggregate value of the cash and non-cash consideration of any bid be reduced to 5%, to which the Committee understands the Debtors have agreed.

6. Additionally, the Committee has the following concerns as well: (i) the Bid Procedures may impermissibly exclude the Committee and its members from certain aspects of the sale process; and (ii) the Bid Procedures must expressly reserve the Committee's right to challenge any credit bid and seek disgorgement if a credit bid is accepted and subsequently a successful lien or other challenge is sustained against the Prepetition Lenders.

7. As of the time of this Objection, the Form Equity Commitment Letter and Form Plan have not been provided to the Committee, and the Committee reserves all rights to review and comment on the same. The Committee understands that the Bid Procedures will also include a form asset purchase agreement, but the Committee has not yet seen that either.

8. Accordingly, the Committee respectfully submits that the Court deny the Plan Sponsor Bid Procedures Motion except as set forth herein.

**STATEMENT OF FACTS**

A. **General Background**

9. On January 16, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

10. On January 18, 2019, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of: (i) HanesBrands, Inc.; (ii) Rederlink Distribution Services; (iii) Home Products International N.A.; (iv) McKesson Corp.; (v) Notations, Inc.; (vi) LCN SKO Omaha (Multi) LLC; and (vii) Realty Income Corporation.

11. On the Petition Date, the Debtors filed the Plan Sponsor Bid Procedures Motion. The hearing on the Plan Sponsor Bid Procedures Motion is set for February 7, 2019 at 1:00 p.m. with responses due February 4, 2019.

B. **Debtors' DIP Motion**

12. On the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 35] (the "DIP Motion").[3] The milestones imposed by the Lenders are

---

[3] Capitalized terms in this section not otherwise defined herein shall have the meanings ascribed thereto in the DIP Financing Motion (as defined below).

embedded in the credit agreement attached to the DIP Motion and require, *inter alia*, that an order confirming a chapter 11 plan of reorganization in form satisfactory to the Lenders must be entered no later than April 12, 2019. DIP Motion, Ex. A (Ratification and Amendment Agreement, at § 5.4.m(iv)) [Docket No. 35].

13.     Following the First Day Hearing on January 16, 2019, the Court entered an order permitting the Debtors to borrow up to 115% of budgeted expenses from the DIP Lenders on an interim basis [Docket No. 89] (the "Interim DIP Order"). A hearing to approve the DIP Motion on a final basis is scheduled for February 7, 2019. Pursuant to the Interim DIP Order, the current deadline for the Committee to Challenge the Lenders' pre-petition liens and security interests is March 19, 2019 (60 days from the appointment of the Committee on January 18, 2019). *See* Interim DIP Order at ¶ 4.1 [Docket No. 89].

C.      **Bid Procedures Summary**

14.     Also on the Petition Date, the Debtors filed the Bid Procedures Motion. Through the Bid Procedures Motion, the Debtors seek an order (the "Bid Procedures Order") approving, among other things, the procedures governing the process for a Transaction (the "Bid Procedures") and the following timeline (the "Transaction Milestones"):

| Event | Date |
|---|---|
| Bid Procedures Hearing | February 7, 2019 |
| Bid Deadline | February 21, 2019 |
| Determine Baseline Bid | February 25, 2019 |
| Auction | February 26, 2019 |
| Plan Confirmation Hearing | April 12, 2019 |

15.     The Bid Procedures contemplate that the Debtors will continue to solicit Stalking Horse Bids (any such designated bidder, a "Stalking Horse Bidder") from potential bidders through their submission of proposed modifications to the general terms and conditions set forth

in the Form Equity Commitment Letter (or other applicable agreement providing the terms of the Transaction) and Form Plan (collectively, together with the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the bidder proposes to effectuate the Transaction, the "Transaction Documents").

16.     Under the Bid Procedures Motion, the Debtors may reimburse expenses and pay a "work fee" of Acceptable Bidders up to the aggregate amount of $1,000,000. *See* Bid Procedures Motion at p.17, ¶ f(i) [Docket No. 38]. Additionally, the DIP Lenders are entitled to credit bid at the Auction in accordance with their respective rights under section 363(k) of the Bankruptcy Code. *Id.* at p.13, ¶ e. In the event that the Debtors determine to select a Stalking Horse Bid, the Debtors attempt to reserve the right to seek Court approval for certain bid protections for the Stalking Horse Bidder, including a break-up fee and/or the above-mentioned expense reimbursement and work fee. *Id*. at p.17, ¶ f(ii).

## **OBJECTIONS**

17.     The goal of any chapter 11 case is to maximize the value of the debtor's estate for the benefit of all stakeholders, whether pursuant to a sale or a reorganization. *See In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics Corp., v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (same). To that end, bidding procedures in connection with the sale of estate property may only be approved where they benefit the estate by serving to maximize the value of the estate's assets. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535-37 (3d Cir. 1999) (affirming a bankruptcy court decision denying certain bid protections where the protections were not necessary to preserve value to the estate); *see also In re Reliant Energy Channelview LP*, 594 F.3d 200, 206-08 (3d Cir. 2010) (reaffirming the *O'Brien* standard); *In re*

*Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."). As a corollary, bidding procedures that hamper bidding and are not designed to assure the highest value for the assets of an estate must not be approved. *In re Jon J. Peterson, Inc.*, 411 B.R. 131, 137 (Bankr. W.D.N.Y. 2009).

### A. **Bids That Propose a Sale Transaction Outside of a Plan Should Be Considered**

18. As discussed above, the Bid Procedures contain no alternative for bids for a sale of assets outside of a plan. This requirement is prejudicial to general unsecured creditors. Among other concerns, as a result of the requirement that a sale be conducted through a plan, potential bidders may be dissuaded from participating as they may not want to incur the attendant expenses or delays associated with a plan, including payment of what could be substantial administrative expenses.

19. Moreover, in the Plan Sponsor Bid Procedures Motion, the Debtors are requesting an expedited sale timeline. If bids are permitted that contemplated a Transaction outside of a plan, there is the possibility of a more streamlined process that provides more time for due diligence and is likely to generate more interest and attract additional serious bidders.

20. Finally, there is no legitimate reason to require parties to proceed through a plan process when, as is expressly contemplated, one alternative end result in these cases is a sale of substantially all of the Debtors' assets. A transaction that is blessed under section 363(f) of the Bankruptcy Code will provide the same protections to the buyer as a sale under a plan and may provide flexibility to potential bidders that should not be unnecessarily foreclosed at this stage of the cases.

### B. **The Committee Must Be Integrally Involved in the Sale Process**

21.     Currently, the Bid Procedures do not provide any consultation rights to the Committee. In response to the Committee's request, the Debtors have provided the Committee with a revised mark-up of the Bid Procedures that addresses some, but not all, of the Committee's concerns. Given the expedited timeline in this case, it is critical that the Committee be actively involved in all aspects of the marketing process including, but not limited to, determining proof of financial ability to perform, qualifying bids, overbids, modifications to overbid increments, successful bids, backup bidders, conduct of the auction, payment of expense reimbursement, "work fees," and evaluation of the stalking horse bids and highest and best offer. Any order approving the Bid Procedures should incorporate the Committee's participation in all aspects of the sale process.

22.     Further, any final order approving the Bid Procedures should require that adequate assurance of future performance be demonstrated in connection with a bidder's proposed assumption of executory contracts and unexpired leases.

C.  **The Committee's Lien Challenge Rights Must Be Preserved**

23.     Pursuant to the Interim DIP Order, the current deadline to challenge the Lenders' liens or assert other claims and causes of action is March 19, 2019 (60 days from the appointment of the Committee on January 18, 2019) (the "Lien Challenge Deadline"). *See* Interim DIP Order at ¶ 4.1 [Docket No. 89]. However, according to the proposed Bid Procedures, the Lenders may credit bid their liens without any limitation. *See* Plan Sponsor Bid Procedures Motion, at p.13, ¶ (e)(ii). The Committee is concurrently seeking an extension of the Lien Challenge Deadline by separate objection to the DIP Motion.

24.     Here, the Bid Procedures should be clear that the Lenders' ability to credit bid remains subject to the Committee's lien challenge rights and that all such rights are fully

preserved. The Bid Procedures, Bid Procedures Order, and any order approving the Transaction must be revised to ensure that the Committee's challenge rights are preserved in the event that there is a credit bid. Further, if the Lenders wish to credit bid prior to the Lien Challenge Deadline, the Bid Procedures Order or any order approving the Transaction must require the lenders to repay the estates in cash in the event of a successful lien or other challenge.

25. Moreover, if a credit bid is allowed, the Bid Procedures and the Bid Procedures Order or Sale Order must make clear that the Lenders' alleged liens and security interests are not *ipso facto* valid by the entry of the Bid Procedures Order or any order approving the Transaction. As at least one court has held, unless this Court expressly reserves the Committee's rights, the entry of an order permitting a credit bid may be tantamount to an order approving the nature, extent and validity of the lien claim and also prevents a lien challenge. *In re Radnor Holdings Corp.*, 353 B.R. 820 (Bankr. D. Del. 2006). Thus, the Committee requests that if any credit bids are allowed, paragraph seven (7) of the proposed final Bidding Procedures order, all other Transaction related orders, and Bid Procedures include the following language:

> The failure of the Committee to object to a credit bid put forth by the Lenders, or the Court's approval of any such credit bid shall not (a) prejudice or impair the rights of the Committee to challenge the nature, extent, validity, priority, perfection or amount of Lenders' alleged liens, security interests and claims or (b) release Lenders from any claims and/or causes of action which can be brought against them by or on behalf of the Debtors' estates within the time period fixed by the Court and for the Committee to compel disgorgement.

26. Finally, the Committee requests that if a credit bid is allowed, the Sale Transaction must exclude any unencumbered prepetition assets or require a cash payment for those assets at fair market value.

D. **Certain of the Bid Protections Are Inappropriate**

27. The Debtors request that in the event that they designate one or more Stalking Horse Bids on or before the Stalking Horse Bid Deadline, they should be able to seek approval of bid protections including a break-up fee and/or expense reimbursement. *See* Plan Sponsor Bid Procedures Motion at p.17, ¶ g.

28. The reason bid protections are granted is because a stalking horse creates a clear floor and opportunity to bid against that floor. However, in these Chapter 11 cases, there is no basis for providing any bid protections because under these extremely abbreviated sale timelines, it is unlikely that sufficient time exists for a Stalking Horse Bidder to enhance the competitive bidding process or preserve the value of the estate. At a minimum, in order to afford appropriate oversight of such expenditures, the Committee should be given rights to approve or veto such protections on a case-by-case basis.

29. Courts recognize that break-up fees should not be allowed when they do not preserve the value of the estate or when the terms of a break-up fee could harm a debtor's estate or parties in interest. *See e.g. In re Lamb,* No. 96-1-1099-DK, 2002 WL 31508913, at *1 (Bankr. D. Md. Oct. 11, 2002) (citing *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535-36 (3d. Cir. 1999) (break-up fee denied because it was not necessary to preserve the value of the estate)); *In re Hupp Indus.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) (noting that one potential harm which follows an imprudent allowance of a break-up fee is a less meaningful auction process). Additionally, a party seeking an administrative expense must "carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *O'Brien*, 181 F.3d at 533.

30. Therefore, the Committee submits that, unless benefit to the estates is demonstrated to the Committee on a case-by-case basis, no break-up fee and/or expense reimbursement is permissible under the circumstances of these Chapter 11 cases.

## RESERVATION OF RIGHTS

31. The Committee expressly reserves all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this objection, to raise further and other objections to the Plan Sponsor Bid Procedures Motion and the form of Bid Procedures Order, and to introduce evidence prior to or at any hearing regarding the Plan Sponsor Bid Procedures Motion in the event that the Committee's objections are not resolved prior to such hearing.

32. This Objection only relates to the Plan Sponsor Bid Procedures Motion, not the terms and conditions of a Plan, an Equity Commitment Letter, or an asset purchase agreement that the Debtors may accept. Accordingly, the Committee reserves all rights to object to a Transaction Document of any kind that is accepted by the Debtors prior to the hearing on approval thereof and to objection to the Plan on any and all bases.

## CONCLUSION

33. For all of the foregoing reasons, the Committee respectfully requests that the Court deny approval of the Plan Sponsor Bid Procedures Motion and proposed Bid Procedures Order in the form presented.

Dated:   February 4, 2019

| PACHULSKI STANG ZIEHL & JONES LLP | GOOSMAN LAW FIRM, PLC |
|---|---|
| Robert J. Feinstein, Esq.<br>Bradford J. Sandler, Esq.<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone:  (212) 561-7700<br>Facsimile:  (212) 561-7777<br>E-mail:  rfeinstein@pszjlaw.com<br>            bsandler@pszjlaw.com<br><br>-and-<br><br>Jeffrey N. Pomerantz, Esq.<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone:  (310) 277-6910<br>Facsimile:  (310) 201-0760<br>E-mail:   jpomerantz@pszjlaw.com | */s/ Elizabeth M. Lally*<br>Elizabeth M. Lally, Esq.<br>Jeana L. Goosman, Esq.<br>Joel Carney, Esq.<br>The Advent Building<br>17838 Burke Street, Suite 250<br>Omaha, NE 68118<br>Telephone:  (402) 280-7648<br>Facsimile:  (402) 505-3967<br>E-mail:  lallye@goosmanlaw.com<br>            goosmanj@goosmanlaw.com<br>            carneyj@goosmanlaw.com<br><br>*Proposed Counsel for the Official Committee of Unsecured Creditors* |

## **CERTIFICATE OF SERVICE**

I certify that on February 4, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered with the CM/ECF system.

>   */s/ Elizabeth M. Lally*
>   Elizabeth M. Lally