## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064-TLS |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NON-AUCTION SALE NOTICE
## WITH RESPECT TO THE DEBTORS' PHARMACY ASSETS

On January 17, 2019 the United States Bankruptcy Court for the District of Nebraska (the "Court") entered the *Order (I) Establishing Bidding Procedures for the Pharmacy Assets and (II) Granting Related Relief* [Docket No. 77] (the "Bidding Procedures Order"),[2] attached hereto as **Exhibit A**, by which the Court approved procedures for the sale or transfer of the Debtors' stock of prescription pharmaceutical inventory located in the prescription pharmacies in the Debtors' stores (the "Pharmacy Inventory") and/or the prescription files and records, pharmacy customer lists and patient profiles (the "Pharmacy Files," together with the Pharmacy Inventory, the "Pharmacy Assets") located at, and for customers serviced from, such prescription pharmacies (the "Pharmacies").

**PLEASE TAKE FURTHER NOTICE** that the Debtors, in consultation with their advisors, selected the following Successful Bidders with respect to the Pharmacy Files listed on **Exhibit B** attached hereto.

**PLEASE TAKE FURTHER NOTICE** that parties who wish to submit a competing bid for the Pharmacy Files (a "Competing Bid") must deliver such Competing Bid to Houlihan Lokey, 225 South 6th Street, Minneapolis, Minnesota 55402, Attn: Matt Pruitt (mpruitt@hl.com), Eric Wodrich (ewodrich@hl.com), and Eric Kang (ekang@hl.com); proposed counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn: Travis Bayer,

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]   All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the *Debtors' Motion for Entry of Orders (I) Establishing Bidding Procedures for the Pharmacy Assets, (II) Approving the Transactions, and (III) Granting Related Relief* [Docket No. 27] (the "Bidding Procedures Motion").

(travis.bayer@kirkland.com), and Kirkland & Ellis LLP 601 Lexington Avenue, New York, NY 10022, Attn: Steven Serajeddini (steven.serajeddini@kirkland.com) and Daniel Rudewicz (daniel.rudewicz@kirkland.com); and with copy to the Official Committee of Unsecured Creditors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn:  Jeffrey Pomerantz, Esq., so as to be received by **February 18,  2019 at 4:00 p.m. prevailing Central Time**. Such Competing Bid must comply with all requirements contained in the bidding procedures attached as Exhibit 1 to the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that any Non-Auction Sale Notice Party that wishes to object to the proposed Sale must file a written objection (each, a "Sale Objection") so that such objection is filed with the Court by **February 18, 2019 at 4:00 p.m. prevailing Central Time** and serve such Sale Objection on:  (a) the Debtors, Specialty Retail Shops Holding Corp., 700 Pilgrim Way, Green Bay, Wisconsin 54304, Attn:  Russell Steinhorst, Chief Executive Officer; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn:  Travis Bayer; Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Steven Serajeddini; (c) proposed co-counsel to the Debtors, McGrath North Mullin & Kratz, P.C. LLO, 1601 Dodge St., Omaha, Nebraska 68102, Attn:  James Niemeier, Esq.; (d) the Office of the United States Trustee for the District of Nebraska, 111 South 18th Plaza, #1125, Omaha, Nebraska 68102, Attn:  Jerry Jensen, Esq.; (e)  counsel to Wells Fargo Bank, N.A., Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Chad Simon, Esq.; and (f) counsel to the Official Committee of Unsecured Creditors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn:  Jeffrey Pomerantz, Esq..

**PLEASE TAKE FURTHER NOTICE THAT** if (a) no Sale Objections are timely filed with the Court, and (b) the Debtors do not timely receive any Competing Bids, the Debtors will immediately consummate the Sale without further order of the Court.  If any Non-Auction Sale Notice Party files an objection to the Sale, the Pharmacy Files shall only be sold or transferred upon either (a) the consensual resolution of the Sale Objection by the parties or (b) further order of the Court after notice and a hearing, which hearing shall be at least seven (7) days after February 18, 2019.  If the Debtors receive a Competing Bid, the Debtors will evaluate such Competing Bid, in consultation with the Consultation Parties, and hold an Auction between only the initial purchaser and the competing bidder to determine the higher or otherwise better bid.  The Debtors shall be authorized to enter into a sale agreement with the successful bidder at the Auction without further order of this Court.

**PLEASE TAKE FURTHER NOTICE** that this Non-Auction Sale Notice is subject to the terms and conditions of the Bidding Procedures Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.  Copies of the Bidding Procedures Motion, the Bidding Procedures Order, this Non-Auction Sale Notice, and any other related documents are available:  (a) upon request to Prime Clerk LLC (the notice and claims agent retained in these chapter 11 cases) by calling **(844) 205-7495**; (b) by visiting the website maintained in these chapter 11 cases at **http://cases.primeclerk.com/shopko**; or (c) for a fee via PACER by visiting http://www.neb.uscourts.gov.

Dated: February 4, 2019          /s/ *Lauren R. Goodman*
   Omaha, Nebraska          James J. Niemeier (NE Bar No. 18838)
                                   Michael T. Eversden (NE Bar No. 21941)
                                   Lauren R. Goodman (NE Bar No. 24645)
**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:    (402) 341-3070
Facsimile:     (402) 341-0216
Email:         jniemeier@mcgrathnorth.com
                  meversden@mcgrathnorth.com
                  lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Travis M. Bayer (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
                  patrick.nash@kirkland.com
                  travis.bayer@kirkland.com

- and -

Steven Serajeddini (admitted *pro hac vice*)
Daniel Rudewicz (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:         steven.serajeddini@kirkland.com
                  daniel.rudewicz@kirkland.com

*Co-Counsel to the Debtors*

# **Exhibit A**

**Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064 (TLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 27, 28** |

### ORDER (I) ESTABLISHING BIDDING PROCEDURES
### FOR THE PHARMACY ASSETS AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Bidding Procedures Order"): (i) establishing the bidding procedures attached hereto as **Exhibit A** (the "Bidding Procedures"), by which the Debtors will solicit and select the highest or otherwise best offer(s) for the sale(s), liquidation(s), or other disposition(s) (such sale(s), liquidation(s), or other disposition(s), the "Transaction(s)") of the Debtors' stock of prescription pharmaceutical inventory located in the prescription pharmacies in the Debtors' stores (the "Pharmacy Inventory") and/or the prescription files and records, pharmacy customer lists and patient profiles (the "Pharmacy Files," together with the Pharmacy Inventory, the "Pharmacy Assets") located at, and for customers serviced from, such prescription pharmacies (the "Pharmacies"); (ii) approving the form and manner of notice

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

with respect to certain procedures, schedules, and agreements described herein and attached hereto

as **Exhibit B** (the "Transaction Notice"); (iii) scheduling of a final hearing (the "Transaction

Hearing") to approve the Transactions; (iv) approving the form agreements attached to the Bidding

Procedures; (v) approving procedures for selling certain Pharmacy Assets in the ordinary course;

and (vi) granting related relief; all as more fully set forth in the Motion; and upon the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and Nebraska General Rule 1.5 of the United States District Court for the District of

Nebraska; and that this Court may enter a final order consistent with Article III of the United States

Constitution; and this Court having found that venue of this proceeding and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate under the circumstances and no other

notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

     A.     The findings of fact and conclusions of law herein constitute the Court's findings

of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant

to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are

adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014, and Local Rule 6004-1.  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

D.    Notice of the Motion and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Notice of the Motion has been given to:  (a) the office of the U.S. Trustee for the District of Nebraska; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Accordingly, no further notice of the Motion or this Bidding Procedures Order is necessary or required.

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including: (a) establishing the Bidding Procedures, by which the Debtors will solicit and select the highest or otherwise best offer(s) for the Transaction(s) of the Debtors' Pharmacy Assets located at, and for customers serviced from, the Pharmacies; (b) approving the Transaction Notice; (c) scheduling of the Transaction Hearing to approve the Transactions; (d) approving the form agreements attached to the Bidding Procedures; (e) approving the procedures for selling certain Pharmacy Assets not sold at the Auction; and (g) granting related relief.  Such compelling and sound business justification, which was set forth in the Motion, the Spencer Declaration, and on the record at the hearing for such Motion, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      The Bidding Procedures, incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates.

G.      The Transaction Notice, substantially in the form attached hereto as **Exhibit B**, incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of:  (i) the date, time, and place of the Auction; (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Transaction and entry of the Transaction Order, and the date, time, and place of the Transaction Hearing; (iv) reasonably specific identification of the assets to be sold; (v) instructions for promptly obtaining copies of the Form APA; and (vi) a description of the Transaction as being free and clear of liens, claims, encumbrances, and other interests, with all

4

such liens, claims, encumbrances, and other interests attaching with the same validity and priority

to the Transaction proceeds, and no other or further notice of the Transaction shall be required.

H.      The Post-Auction Notice, substantially in the form attached hereto as **Exhibit C**

and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is

appropriate and reasonably calculated to provide all interested parties with timely and proper

notice of the Successful Bidder(s), and no other or further notice is required.

I.      The Debtors' prepetition marketing process has been reasonably calculated to

maximize value for the benefit of all stakeholders.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.[3]

2.      All objections to the relief requested in the Motion that have not been withdrawn,

waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed

with the Court, are overruled.

**I.      Timeline for the Transaction.**

3.       The Debtors are authorized to proceed with the Transaction in accordance with the

Bidding Procedures and are authorized to take any and all actions reasonably necessary or

appropriate to implement the Bidding Procedures in accordance with the following timeline:

| Action | Deadline |
|---|---|
| Bid Deadline | January 21, 2019, at 4:00 p.m. (prevailing Central Time) as the deadline by which bids for the assets (as well as all other documentation required under the Bidding Procedures for Potential Bidders (as defined in the Bidding Procedures)) must be actually received (the "Bid Deadline"). |

---

[3]   Notwithstanding anything to the contrary herein, the consummation of the Transaction is subject to entry of the Transaction Order.

| **Action** | **Deadline** |
|---|---|
| Auction | January 23, 2019, at 9:00 a.m.   (prevailing Central Time) will be held at the offices of Kirkland & Ellis LLP, located at 300 North LaSalle, Chicago, Illinois 60654, (or at any other location as the Debtors may hereafter designate on proper notice). |
| Transaction Objection Deadline | January 25, 2019, at 4:00 p.m. (prevailing Central Time) as the deadline to object to the Transaction. |
| Reply Deadline | January 28, 2019, at 1:00 p.m. (prevailing Central Time) as the deadline to reply to the Transaction Objections (at the Transaction Hearing). |
| Transaction Hearing | January 28, 2019, at 1:00 p.m. (prevailing Central Time). |

4.      For the avoidance of doubt, the Debtors reserve the right, and are authorized, to modify the above timeline and the Bidding Procedures in accordance with the provisions of the Bidding Procedures.

**II.      The Bidding Procedures.**

5.      The Bidding Procedures, attached as **Exhibit A** hereto, are incorporated herein and approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids related to the sale of the Pharmacy Assets and any Auction.  Any party desiring to submit a bid shall comply with the Bidding Procedures and this Bidding Procedures Order.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

6.      At or following the Auction, the Debtor may (a) select, in its business judgment, pursuant to the Bidding Procedures, (i) the highest or otherwise best bid as the Successful Bidder

and (ii) the second highest or otherwise second-best bid as the Backup Bidder; and (b) reject any

bid (regardless of whether such bid is a Qualified Bid) that, in such Debtor's business judgment,

is (i) inadequate, insufficient, or not the highest or otherwise best bid, (ii) not in conformity with

the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or

(iii) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders,

or other parties in interest, in each case subject to and in accordance with the Bidding Procedures.

For the avoidance of doubt, the Debtors are not required to name a Successful Bidder for any given

Pharmacy Asset or group thereof and may elect to not sell such asset to the highest or otherwise

best bidder.

7.      In the event a Successful Bidder does not close for any given Pharmacy Asset, the

Debtors will promptly file a supplemental notice on or before the closing deadline in the relevant

agreement, seeking to approve the sale to the Backup Bidder. The Backup Bidder shall not be

approved at the Transaction Hearing.

8.      The process and requirements associated with submitting a Qualified Bid are

approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of

the Debtors' estates, creditors, and other parties in interest.  As further described in the Bidding

Procedures, the Bid Deadline shall be at 4:00 p.m. (prevailing Central Time) on January 21, 2019.

Any disputes or objections to the selection of Qualified Bids, Successful Bids, or Backup Bids (all

as defined in the Bidding Procedures) shall be resolved by this Court at the Transaction Hearing

as set forth herein.

9.      The Debtors are authorized to conduct the Auction in accordance with the Bidding

Procedures.  The Auction shall take place at 9:00 a.m. (prevailing Central Time) on January 23,

2019 at the offices of the proposed counsels for the Debtors, Kirkland & Ellis LLP, located at 300

North LaSalle, Chicago, Illinois 60654 (or at any other location as the Debtors may hereafter designate on proper notice).

10. The Debtors shall file notice on the docket of these chapter 11 cases of the results of the Auction as soon as reasonably practicable after the close of the Auction.

## III. Notice Procedures.

11. The form of Transaction Notice substantially in the form attached hereto as **Exhibit B** (the "Transaction Notice") is approved.

    *A. Notice of Transaction, Auction, and Transaction Hearing.*

12. As soon as reasonably practicable after the entry of this Bidding Procedures Order, the Debtors shall serve the Transaction Notice, Form APA, Bidding Procedures Order, and Bidding Procedures by overnight mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon (a) the office of the U.S. Trustee for the District of Nebraska; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

13. In addition, as soon as reasonably practicable after the entry of this Bidding Procedures Order, the Debtors shall serve the Transaction Notice by overnight mail or, for those parties who have consented to receive notice by the ECF system, by ECF, upon (a) the office of the U.S. Trustee for the District of Nebraska; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents under the Debtors' prepetition

8

asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. Service of the Transaction Notice as described above shall be sufficient and proper notice of the Transaction with respect to known interested parties.

*B. Notice of Successful Bidder.*

14. As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file on the docket, but not serve, a notice identifying the Successful Bidder(s) (the "Post-Auction Notice"). The form of the Post-Auction Notice, substantially in the form attached hereto as **Exhibit C**, is approved.

**IV. Transaction Hearing.**

15. A Transaction Hearing to approve the Transaction regarding certain of the assets to the Successful Bidder shall be held on January 28, 2019, at 1:00 p.m. (prevailing Central Time), which may be adjourned or rescheduled without notice. At the Transaction Hearing, the Debtors will seek this Court's approval of the Successful Bid. The Transaction Hearing shall be an evidentiary hearing on matters relating to the Transaction and there will be no further bidding at the Transaction Hearing. In the event that the Successful Bidder cannot or refuses to consummate the Transaction, the Debtors may, in accordance with the Bidding Procedures, and after consultation with the Consultation Parties, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors shall request approval of, and authority to consummate, the Backup Bid from the Court on an expedited basis, as soon as reasonably practicable in accordance with the Court's calendar.

16.    Any and all objections, if any, to the Transaction (a "Transaction Objection") must
be filed by: January 25, 2019 at 4:00 p.m. (prevailing Central Time) (as applicable, the
"Transaction Objection Deadline").  Any Transaction Objection must be served on: (a) the Debtors,
Specialty Retail Shops Holding Corp., 700 Pilgrim Way, Green Bay, Wisconsin 54304,
Attn:  Russell Steinhorst, Chief Executive Officer; (b) proposed counsel to the Debtors, Kirkland
& Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn:  Travis Bayer, Esq. and Jamie
Netznik, Esq.; Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022,
Attn:  Steven Serajeddini, Esq.; (c) proposed co-counsel to the Debtors, McGrath North Mullin &
Kratz, P.C. LLO, 1601 Dodge St., Omaha, Nebraska 68102, Attn:  James Niemeier, Esq.; (d) the
Office of the United States Trustee for the District of Nebraska, 111 South 18th Plaza, #1125,
Omaha, Nebraska 68102, Attn: Jerry Jensen, Esq.; (e)  counsel to Wells Fargo Bank, N.A.,
Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Chad Simon, Esq.; and
(f) counsel to the official committee of unsecured creditors (if any) appointed in these chapter 11
cases, (collectively (a)–(f), the "Objection Recipients").   Any party failing to timely file a
Transaction Objection will be forever barred from objecting and will be deemed to have consented
to the Transaction, including the transfer of the Debtors' right, title and interest in, to, and under
the assets free and clear of any and all liens, claims, interests, and encumbrances in accordance
with the definitive agreement for the Transaction.

17.    All replies to any Transaction Objection must be filed by:  January 28, 2019 at 1:00
p.m. (prevailing Central Time) (as applicable, the "Reply Deadline").

**V.    Procedures for Unsold Property.**

18.    If the Debtors determine that selling a single location in the ordinary course of
business would maximize the value of a particular Pharmacy Asset being sold, or if the Debtors

determine that holding an Auction with respect to a particular Pharmacy Asset would not result in the highest or otherwise best offer for such asset, or if the Debtors receive no bids on certain Pharmacy Assets prior to the close of the Auction, or if the Debtors determine that the highest or otherwise best bid at the Auction will not, in the Debtors' business judgment maximize the value of a particular Pharmacy Asset being sold, the Debtors shall follow the following procedures (the "Non-Auction Transaction Procedures") to sell such Pharmacy Assets (the "Non-Auction Pharmacy Assets").

(a)     With regard to sales or transfers of Non-Auction Pharmacy Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price[4] less than or equal to $10,000,000:

(i)     subject to the procedures set forth herein, the Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interests of their estates and the sale price is higher or otherwise better than any bid received at the Auction, if applicable;

(ii)     subject to the Transaction Order and any conditions therein, any such Transactions shall be deemed final and fully authorized by the Court and free and clear of liens, with such liens attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the sale or transfer;

(iii)     the Debtors shall cause, as soon as reasonably practicable, a notice of such transaction (a "Non-Auction Transaction Notice") to be filed with the Court and served on: (a) the office of the U.S. Trustee for the District of Nebraska; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to

---

[4]     For purposes of these Non-Auction Transaction Procedures, "sale price" shall refer to the bidder's proposed purchase price as agreed to by the Debtors.

Bankruptcy Rule 2002.; and (l) any Qualified Bidder who placed a bid on such property at the Auction (collectively, the "Non-Auction Transaction Notice Parties");

(iv)    the content of the Non-Auction Transaction Notice shall consist of: (a) an identification of the Non-Auction Pharmacy Assets being sold or transferred; (b) an identification of the purchaser of the Pharmacy Assets; (c) the purchase price to be paid for the Non-Auction Pharmacy Assets; (d) the marketing or transaction process, including any commissions to be paid to third parties, used to sell the assets; and (e) the significant terms of the sale or transfer agreement[5];

(v)     if, within fourteen (14) days after receipt of such Non-Auction Transaction Notice by any of the Non-Auction Transaction Parties (or such additional time period as may be agreed to by the Debtors), (a) no written objections are filed with the Court, and (b) the Debtors do not receive any competing bids for any of the Non-Auction Pharmacy Assets being sold (a "Competing Bid"), the Debtors are authorized to immediately consummate such sale or transfer;

(vi)    if any Non-Auction Transaction Party files a written objection to any such sale or transfer with the Court within fourteen (14) days (or such additional time period as may be agreed to by the Debtors) after receipt of such Non-Auction Transaction Notice, the applicable Non-Auction Pharmacy Asset shall only be sold or transferred upon either (a) the consensual resolution of the objection by the parties or (b) further order of the Court after notice and a hearing; and

(vii)   if the Debtors receive a Competing Bid, the Debtors will evaluate such Competing Bid, in consultation with the Consultation Parties, and hold an Auction between only the initial purchaser and the competing bidder to determine the higher or otherwise better bid. The Debtors shall be authorized to enter into a transaction agreement with the successful bidder at the Auction without further order of this Court.

(b)     These Non-Auction Transaction Procedures shall not apply to any sale or transfer to an insider, committee member, or lender of the Debtors.

---

[5]   A copy of the definitive agreement for the applicable Non-Auction Pharmacy Assets shall be provided promptly to any Non-Auction Transaction Notice Parties upon request.

## VI.    **Miscellaneous.**

19.    Notwithstanding anything to the contrary in this Bidding Procedures Order, the agreements or otherwise, on the closing date of any Transaction, the proceeds of the Pharmacy Assets from the closing of such Transaction shall be paid to the agent under the DIP Credit Agreement (the "Agent") for application and payment of all obligations owing by the Debtors to Agent and the Lender (as defined in the DIP Orders), in accordance with the Interim DIP Order and Section 6.4(d) of the Loan Agreement(as defined in the DIP Orders), until such time as all such obligations have been fully repaid and satisfied in full in accordance with the terms and conditions of the DIP Orders and the Loan Agreement.

20.    Notwithstanding anything to the contrary contained in this Bidding Procedures Order or otherwise: (i) nothing in this Bidding Procedures Order shall amend, modify, or impair any provision of the DIP Order or DIP Budget, or the rights of the Agent and lenders thereunder; and (ii) to the extent of any conflict between the terms of this Bidding Procedures Order and the terms of the DIP Order, the terms of the DIP Order shall control.

21.    Notwithstanding anything else contained herein to the contrary, any party may seek marshalling or seek to assert reclamation claims prior to the Transaction Hearing, solely to the extent that any such remedies or claims exist.

22.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

23.    This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

24.     To the extent this Bidding Procedures Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Bidding Procedures Order shall govern.

25.     To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

26.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

27.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures and the implementation of this Bidding Procedures Order.

Omaha, Nebraska
Dated: January 17, 2019                         /s/Thomas L. Saladino
                                                UNITED STATES BANKRUPTCY JUDGE

Case 19-800064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:20:59    Desc Main
Document    Page 19 of 65

## Exhibit A

## Bidding Procedures

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064 (TLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## BIDDING PROCEDURES FOR
## THE DISPOSITION OF THE DEBTORS' PHARMACY ASSETS

On January 16, 2019, the United States Bankruptcy Court for the District of Nebraska (the "Court") entered the *Order (I) Establishing Bidding Procedures for the Pharmacy Assets and (II) Granting Related Relief* (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures. These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale(s), liquidation(s), or other disposition(s) (the "Transaction(s)") of the Debtors' stock of prescription pharmaceutical inventory located in the prescription pharmacies in the Debtors' stores (the "Pharmacy Inventory") and/or the prescription files and records, pharmacy customer lists and patient profiles (the "Pharmacy Files," together with the Pharmacy Inventory, the "Pharmacy Assets") located at, and for customers serviced from, such prescription pharmacies (the "Pharmacies").

## A.    Solicitation Process; Distribution of Bidding Procedures.

For any sale of the Pharmacy Assets in these chapter 11 cases (the "Bankruptcy Case"), Specialty Retail Shops Holding Corp. and affiliated Debtors (the "Debtors") and/or any such other agent of the Debtors shall, at the Debtors' direction, distribute these Bidding Procedures to any potential interested bidders. The Debtors, in the exercise of their reasonable business judgment may elect to exclude any Pharmacy Assets from these Bidding Procedures and sell such Pharmacy Assets at either a private or public sale, subject to Court approval of any alternative sale method. Furthermore, the Debtors may determine in their discretion whether to proceed with a sale of any Pharmacy Asset pursuant to these Bidding Procedures.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

### B.    Due Diligence.

To receive due diligence information, including full access to the Debtors' electronic data room and to receive additional non-public information regarding the Debtors, a potential bidder ("Potential Bidder") must deliver (or have delivered) to each of: (i) Houlihan Lokey, 225 South 6th Street, Minneapolis, Minnesota 55402, Attn: Matt Pruitt (mpruitt@hl.com), Eric Wodrich (ewodrich@hl.com), and Eric Kang (ekang@hl.com); and (ii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Steven Serajeddini (steven.serajeddini@kirkland.com) and Daniel Rudewicz (daniel.rudewicz@kirkland.com), and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Travis Bayer (travis.bayer@kirkland.com) and Jamie Netznik (jamie.netznik@kirkland.com), the following documents (collectively, the "Preliminary Bid Documents"):

(a)    an executed confidentiality agreement, substantially in the form attached hereto as **Exhibit 1**, to the extent the Potential Bidder has not already executed a confidentiality agreement on terms acceptable to the Debtors; and

(b)    proof by the Potential Bidder of its financial capacity to close a proposed Transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Pharmacy Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (with the assistance of their advisors).

Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors will determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit an irrevocable, good faith, and bona fide offer (a "Bid") and participate in the Auction, as applicable. Except as otherwise provided herein, only those Potential Bidders that have submitted acceptable Preliminary Bid Documents, as determined by the Debtors (each, an "Acceptable Bidder"), may submit Bids.

After the Debtors determine that a Potential Bidder is an Acceptable Bidder, the Debtors will provide such Acceptable Bidder with access to reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request. All due diligence requests must be directed to Houlihan Lokey, Inc. ("Houlihan Lokey") at the following email address: shopko@hl.com. To the extent reasonably practicable, Houlihan Lokey will also facilitate responses to such diligence requests at their discretion. The due diligence period will end on the Bid Deadline (as defined below), and, subsequent to the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

### C.    Eligibility of Bidders to Participate in Auction.

To be eligible to bid for the sale of any Pharmacy Assets in this Bankruptcy Case and otherwise participate in the Auction, each Acceptable Bidder must be determined, in the sole

discretion of the Debtors, to be a Qualified Bidder (as defined below). The Debtors shall have the sole right to determine whether a bidder is a Qualified Bidder.

**D.    Qualification of Bidders.**

Except as otherwise set forth herein, to be considered for status as a Qualified Bidder and to have a Qualified Bid, a bidder must:

(i)    Deliver so as to be received before **4:00 p.m. (prevailing Central Time) on January 21, 2019** (the "Bid Deadline"), to Houlihan Lokey, 225 South 6th Street, Minneapolis, Minnesota 55402, Attn: Matt Pruitt (mpruitt@hl.com), Eric Wodrich (ewodrich@hl.com) and Eric Kang (ekang@hl.com); with a copy to the Debtors' proposed counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Steven Serajeddini (steven.serajeddini@kirkland.com) and Daniel Rudewicz (daniel.rudewicz@kirkland.com), and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Travis Bayer (travis.bayer@kirkland.com) and Jamie Netznik (jamie.netznik@kirkland.com), a written offer to purchase a portion of the Pharmacy Assets at issue (a "Qualified Bid" and each Acceptable Bidder that submits a Qualified Bid, a "Qualified Bidder") that:

(a)    Consists of (i) an executed form of the applicable agreement for sale that may not deviate substantially from the terms of the applicable form asset purchase agreement attached hereto as **Exhibit 2** (such bidder's executed agreement, the "Bidder APA"); (ii) a Microsoft Word copy of the Bidder APA; and (iii) a PDF "redline" showing any proposed revisions in the Bidder APA against the form agreement.

(b)    Identifies the Pharmacy Assets proposed to be purchased, which may consist of either:  (a) Pharmacy Files and Pharmacy Inventory associated with one or more of the Pharmacies; (b) Pharmacy Inventory associated with one or more of the Pharmacies; and/or (c) Pharmacy Files associated with one or more of the Pharmacies.

(c)    Provides that the Bid is severable by location of the Pharmacy and by Pharmacy Files and Pharmacy Inventory if such Bid is not determined by the Debtors to be the Successful Bid or Backup Bid that becomes the Successful Bid with respect to the applicable Pharmacy Asset.

(d)    Is accompanied by a completed bidder registration form, substantially in the form attached hereto as **Exhibit 3** (the "Bidder Registration Form"), which must detail which of the Pharmacy Assets up for sale the Qualified Bidder proposes to purchase and list an allocation of a portion of the aggregate proposed purchase price to each of the Pharmacy Files or Pharmacy Inventory associated with each Pharmacy (on a location-by-location basis) included in its total Bid.

(e)     Contains no contingencies to the validity, effectiveness, and/or binding nature of the Bid, including contingencies for regulatory review or approval, due diligence or inspection, or financing of any kind.

(f)     Provides in the Bidder APA the bidder's proposed dates on which it prefers to consummate the transactions for each Pharmacy as contemplated by the Bidder APA; *provided*, *however*, that such proposed date shall be no earlier than one (1) business day after the conclusion of the Transaction Hearing and no later than fifteen (15) business days after the conclusion of the Auction; *provided*, *further,* that bidder acknowledges that the Debtors have the right to determine the dates on which to consummate the transactions for each Pharmacy.

(g)     Demonstrates, to the Debtors' satisfaction, that the bidder has the capacity to consummate the Transaction it is proposing within fifteen (15) business days.

(h)     Includes a statement from the bidder that: (i) it is prepared to enter into and consummate the Transactions contemplated in the Bidder APA immediately upon entry by the Court of an order approving the sale of the assets to such bidder; and (ii) the Qualified Bid, if determined to be a Successful Bid (defined below), or Backup Bids (defined below), will then be irrevocable for a period of fifteen (15) business days after the conclusion of the Auction.

(ii)    **ALL QUALIFIED BIDS SHALL BE DEEMED IRREVOCABLE, NOTWITHSTANDING ANY CONDITIONS LISTED IN THE APPLICABLE AGREEMENT. IN THE EVENT THAT A BIDDER SEEKS TO REVOKE SUCH BID, THE DEBTORS SHALL BE ENTITLED TO KEEP SUCH BIDDER'S DEPOSIT AND PURSUE ALL OTHER CONTRACTUAL REMEDIES UNDER LAW OR EQUITY.**

(iii)   No later than January 22, 2019, at 4:00 p.m. (prevailing Central Time), tender an earnest money deposit of 10.0% of the proposed purchase price for the Pharmacy Assets attributable to the Pharmacy Files proposed to be purchased (the "Qualified Bidder Deposit") by cashier's or certified check or wire transfer of immediately available funds, which deposit shall be held in a separate account for the benefit of the Debtors in accordance with the terms of the Bidder APA.[3] If a Qualified Bidder increases its Bid at the Auction and is the Successful Bidder such bidder must increase its Qualified Bidder Deposit to match the proposed purchase price submitted at the Auction. The wire transfer or check memo line must include (a) the company name listed on the Bidder Registration Form and (b) the pharmacy location(s) that correspond to the Bid.

---

[3]     For the avoidance of doubt, these funds are not property of the Debtors.

### E.    Rejection of "Qualified Bid" Status for Non-Conforming Bids.

The Debtors shall determine in their discretion which bids qualify as Qualified Bids and which bids shall be rejected as non-confirming bids. The Debtors shall have the right to reject bids as non-conforming bids; *provided*, *however*, the Debtors shall have the right, but not the obligation, to negotiate with any bidder with respect to clarification of any Bid.

### F.    Bid Deadline.

All Qualified Bids must be submitted to the Debtors and the Debtors' counsel in accordance with paragraph D (above) so as to be received not later than the Bid Deadline.

### G.    Terms of Auction.

The Debtors will conduct the Auction on the following terms:

(i)    **Time, Date and Location of Auction; Adjournment of Auction; Appearance of Qualified Bidders at Auction.** The Auction will take place at the offices of Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654. The Auction will be conducted on **January 23, 2019, at 9:00 a.m. (prevailing Central Time)**, and the Debtors will post notice of the Auction on the Debtors' case website: https://cases.primeclerk.com/shopko. The Debtors may modify the date, time, and place of the Auction by providing written notice to Qualified Bidders and filing a notice with the Court.

(ii)    **Permitted Attendees at Auction.** Unless otherwise ordered or directed by the Court, only representatives of the Debtors, any Qualified Bidders (and the professionals for each of the foregoing), and any other parties or potential bidders specifically invited or permitted to attend by the Debtors shall be entitled to attend the Auction.

(iii)    **Pharmacy Asset Lots.** At or before the Auction, the Debtors may group certain Pharmacy Assets into lots ("Lots"), and the Debtors reserve the right to change the Lots before or at the Auction.

(iv)    **Auction Bid Submission Procedures.** Auction bidding shall be subject to the following procedures:

(a)    For a Qualified Bid to be considered and in order for a Qualified Bidder to further bid at the Auction, Qualified Bidders must appear in person at the Auction, or through a duly authorized representative, unless alternative arrangements are agreed upon in advance by the Debtors.

(b)    Qualified Bidders and any other parties or potential bidders shall be entitled to make any subsequent bids for any Pharmacy Assets at the Auction.

(c)    Bidding will commence with the announcement of the highest or otherwise best Qualified Bid with respect to each Lot, which shall be determined

solely by the Debtors in their business judgment. Any Qualified Bidder may then submit successive bids in minimum increments, which will be determined by the Debtors at each Auction, and which will equal 5% (or more) of the total dollar value of the Pharmacy Assets being sold in the Lot (the "<u>Minimum Overbid Amount</u>"). The Minimum Overbid Amount may be different with respect to each asset or group of assets being auctioned.

(d)     If one or more Qualified Bids are received by the Debtors, each such Qualified Bidder shall have the right to improve its respective bid at the Auction.

(e)     Each successive bid submitted by any bidder at the Auction must contain a purchase price that, as determined by the Debtors, exceeds the then existing highest or otherwise best bid by at least the Minimum Overbid Amount.

(f)     At commencement of the Auction, the Debtors may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

(v)     **<u>No Collusion.</u>** Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Successful Bidder.

(vi)    **<u>Selection of Successful Bid.</u>** The Auction shall continue until there is only one bid remaining to purchase each of the Pharmacy Assets that the Debtors determine in their sole discretion, subject to Court approval, is the highest or otherwise best Qualified Bid with respect to such Pharmacy Assets (each such bid, a "<u>Successful Bid</u>" and each such bidder, a "<u>Successful Bidder</u>"). In making this decision, each Debtor shall consider the amount of the purchase price, the form of consideration being offered, the contents of the Bidder APA, the likelihood of such Qualified Bidder's ability to close the Transaction, the timing thereof, and the net benefit to the estates. Upon designation by the Debtors, the Successful Bidder shall have such rights and responsibilities of the purchaser, as set forth in the Bidder APA. Prior to the hearing on the Transaction (the "<u>Transaction Hearing</u>"), the Successful Bidder shall complete and execute a final or revised Bidder APA, as necessary to conform to the terms of the Auction, and all other agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made (such documents collectively, the "<u>Successful Bidder Sale Documents</u>"). The Successful Bid shall be irrevocable for a period of fifteen (15) business days after the conclusion of the Auction.

(vii)   **<u>Selection of Backup Bidders.</u>** The bidder of the second highest or otherwise best bid for a portion or all of the Pharmacy Assets may be deemed by the Debtors as a backup bidder (such bidder the "<u>Backup Bidder</u>" and such bid the "<u>Backup Bid</u>").

For the avoidance of doubt there may be multiple Backup Bidders. If the Debtors so designate a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute a purchase agreement in form and substance reasonably acceptable to the Debtors memorializing, among other things, the amount of the Backup Bid (the "Backup Bidder APA"). Upon the failure of the Successful Bidder to timely execute Successful Bidder Sale Documents acceptable to the Debtors or consummate its purchase of the Pharmacy Assets, pursuant to the terms of the Successful Bidder Sale Documents, the Debtors shall promptly file a supplemental notice seeking to approve the sale to the Backup Bidder, if applicable, on expedited notice and a hearing. The Backup Bidder APA shall be irrevocable for a period of fifteen (15) business days after the conclusion of the Auction.

(viii)  **Irrevocability of Bids; Rejection of Bids.** A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Qualified Bidder is not selected as the Backup Bidder. Unless determined by the Debtors to be the Successful Bid or Backup Bid, all other Qualified Bids and all other successive bids at the Auction shall be deemed rejected at the conclusion of the Auction.

**H.    Transaction Hearing.**

The Court shall hold a Transaction Hearing on **January 28, 2019 at 1:00 p.m. (prevailing Central Time)** to approve the sale of the Pharmacy Assets, if any. The Transaction Hearing will be held at the United States Bankruptcy Court for the District of Nebraska. At the Transaction Hearing, the Debtors will seek entry of an order approving and authorizing the proposed sale to the Successful Bidder(s). The Debtors shall ascertain whether the Successful Bidder and the Backup Bidder are insiders of one or more of the Debtors, whether the sale represents an arm's-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that the Successful Bidder or Backup Bidder may be deemed to be purchasing the Pharmacy Assets in good faith pursuant to 11 U.S.C. § 363(m). At the Transaction Hearing, the Debtors shall make a record of these findings with respect to the Successful Bidder and any order approving the Transactions shall include such findings in order to approve the sale to the Successful Bidder(s) pursuant to 11 U.S.C. § 363(m). The Transaction Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Transaction Hearing or the Debtors' filing notice of a rescheduled Transaction Hearing with the Court.

In the event the Successful Bidder does not close for any given Pharmacy Asset, the Debtors will promptly file a supplemental notice on or before the closing deadline in the relevant agreement, seeking to approve the sale to the Backup Bidder. The Backup Bidder shall not be approved at the Transaction Hearing.

**I.    Closing.**

The closing of the sale of the Pharmacy Assets will occur in accordance with the terms of the Successful Bidder Sale Documents or the purchase agreement of the entity otherwise authorized by the Court to purchase the Pharmacy Assets, as applicable.

**J.     Failure of Successful Bidder to Consummate Purchase.**

If any Successful Bidder fails to consummate the purchase of the applicable Pharmacy Assets pursuant to the terms of the Successful Bidder Sale Documents, and such failure is the result of such Successful Bidder's breach of, or default or failure to perform under, any Successful Bidder Sale Documents or the terms of these Bidding Procedures (the "Defaulting Bidder"), and/or fails to cooperate with the Debtors and their advisors to contest any objections to the purchase of the applicable Pharmacy Asset(s) and to appear for testimony, as needed, such Defaulting Bidder's Qualified Bidder Deposit shall be forfeited to the Debtors as liquidated damages, and the Debtors shall have all rights and remedies available under applicable law.

**K.     Disclosures.**

Qualified Bidders shall disclose to the Debtors all communications with other Qualified Bidders following the submission of a Qualified Bid until the sale of the Pharmacy Assets is consummated.

**L.     Commissions.**

The Debtors shall be under no obligation to pay commission to any agent or broker, with the exception of any agent or broker retained by the Debtors. All commissions, fees, or expenses for agents, other than as retained by the Debtors, may be paid by bidders at such bidder's discretion.

**M.     No Representation; Qualified Bidder's Duty to Review.**

Except as set forth in any executed purchase agreement approved by the Court, the Debtors are not making and have not at any time made any warranties or representations of any kind or character, express or implied, with respect to the Pharmacy Assets, including, but not limited to, any warranties or representations as to habitability, merchantability, fitness for a particular purpose, title, zoning, tax consequences, latent or patent physical or environmental condition, utilities, operating history or projections, valuation, governmental approvals, the compliance of the Pharmacy Assets with governmental laws (including accessibility for handicapped persons), the truth, accuracy, or completeness of any documents related to the Pharmacy Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Pharmacy Assets. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the Pharmacy Assets "AS-IS, WHERE IS, WITH ALL FAULTS," except to the extent expressly provided otherwise in the Court's order approving the sale. All bidders must agree that they have not relied on and will not rely on, and the Debtors are not liable for or bound by, any express or implied warranties, guaranties, statements, representations, or information pertaining to the Pharmacy Assets or relating thereto (including, specifically, information regarding the Pharmacy Assets distributed with respect to such assets) made or furnished by the Debtors or any agent representing or purporting to represent the Debtors, to whomever made or given, directly or indirectly, orally or in writing, unless specifically set forth in the Court's order approving the sale.

**N.     Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures, in their business

judgment, in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on Transactions, including: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Transaction Hearing; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) deeming any Bid a Qualified Bid or any bidder a Qualified Bidder. Nothing in these Bidding Procedures shall abrogate the fiduciary duties of the Debtors.

**O.**     **Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed (i) to have consented to the jurisdiction of the Court and (ii) to have waived any right to a jury trial in connection with any disputes relating to the Auction, the construction, and enforcement of these Bidding Procedures.

**P.**     **Return of Qualified Bidder Deposit.**

The Qualified Bidder Deposit of the Successful Bidder shall be applied to the purchase price of any Transaction that closes with respect to that Qualified Bidder. The Qualified Bidder Deposits for each Qualified Bidder shall be held in a separate account for the benefit of the Debtors in accordance with the terms of the Bidder APA and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on the date that is ten (10) business days after the close of the Auction.

**Q.**     **Fiduciary Out.**

Nothing in these Bidding Procedures shall require each Debtor's management or board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent each Debtor's management or board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

*[Remainder of page intentionally left blank]*

Case 19-800064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:20:59    Desc Main
Document      Page 29 of 65

# **Exhibit 1**

## **Confidentiality Agreement**

# CONFIDENTIALITY AGREEMENT
### (Mutual Disclosures)

     **THIS CONFIDENTIALITY AGREEMENT** ("Agreement") is entered into effective this \_\_\_\_ day of _____, 2019 between _____, a _____ corporation with offices at _____ ("Company"), and SHOPKO STORES OPERATING CO., LLC, a Delaware limited liability company with offices at 700 Pilgrim Way, Green Bay, WI 54307, ("ShopKo").

     1.  **Confidential Information**.  ShopKo and Company wish to conduct preliminary discussions concerning the possibility of establishing a business relationship between ShopKo and Company. This information is being collected for the sole purpose of evaluating a potential purchase and sale of pharmacy assets (the "Permitted Use").  In the course of such discussions, either party may obtain certain non-public information or data with respect to the other party's business operations, which may include, without limitation, descriptions of ShopKo's strategic plans, the identity of one or more other parties with whom ShopKo does business, descriptions of non-public transaction structure proposals, descriptions of ShopKo's and other entities' business operations, financial performance figures, financial projections,  business, customers, computer systems, inventory systems, distribution networks, strategies, store operations, billing and receivable operations, healthcare information including claims, strategies, systems development, and software, technical systems and product development methodologies and strategies, marketing and operational procedures and strategies, financial information and projections, business plans and client lists and other similar information.  Any such information disclosed by either party to the other party, whether provided before or after the date of this Agreement, including, for the avoidance of doubt, the existence and contents of this Agreement, is hereinafter referred to as the "Confidential Information."

     2.  **Corporate Affiliates**.  This Agreement is intended to encompass the corporate affiliates of both parties hereto. Consequently, affiliates of either party may disclose Confidential Information to the other party or its affiliates, and affiliates of either party may receive Confidential Information from the other party or its affiliates. The terms "disclosing party" and "receiving party" shall include affiliates of the parties hereto with respect to Confidential Information disclosed or received by the affiliates. The rights and obligations of the parties hereto shall inure to the benefit of their respective corporate affiliates and may be directly enforced by such affiliates.

     3.  **Use of Confidential Information**.  The receiving party acknowledges the economic value to the disclosing party of all Confidential Information. With respect to Confidential Information, the recipient shall:

    (a)    use the Confidential Information only for the Permitted Use;

    (b)    restrict disclosure of (i) the Confidential Information; (ii) the fact that the Confidential Information is being disclosed by or to either party; and (iii) the fact that discussions in connection with the Permitted Use are taking place; solely to those employees of such party and its affiliates with a "need to know" and not disclose it to any other person or entity without the prior written consent of the disclosing party;

    (c)    advise those employees who gain access to Confidential Information of their obligations with respect to the Confidential Information;

    (d)    make only the number of copies of the Confidential Information necessary to disseminate the information to those employees who are entitled to have access to it, and ensure that all confidentiality notices set forth on the Confidential Information are reproduced in full on such copies; and

    (e)    safeguard the Confidential Information with the same degree of care to avoid unauthorized disclosure as recipient uses to protect its own confidential and private information of a similar nature (but in no event less than a reasonable degree of care).

For the purposes of this Agreement only, "employees" includes outside counsel, investment bankers, accountants and other professional advisors. A "need to know" means that the employee requires the Confidential Information in order to perform his or her responsibilities in connection with the Permitted Use.

All communication between the parties with respect to the Permitted Use will be channeled only through designated individuals at each party's respective offices at the above-referenced addresses. Except to the extent required by law or by any securities exchange, neither party will make, or permit to be made by any of their affiliates, directors, officers, employees, representatives or agents any public statement or press release regarding the Permitted Use or the fact that discussions with regard to the Permitted Use are taking place without first consulting with the other party so that such public statement or press release may be jointly issued by the parties. No such public statement or press release shall be made or issued by either party unless and until jointly approved by both parties.

4. **Exceptions:** The obligations of Paragraph 3 shall not apply to any Confidential Information which the recipient can demonstrate:

(a)     is or becomes available to the public through no breach of this Agreement;

(b)     was previously known by the recipient without any obligation to hold it in confidence;

(c)     is received from a third party free to disclose such information without restriction;

(d)     is independently developed by the recipient without the use of Confidential Information of the disclosing party;

(e)     is approved for release by written authorization of the disclosing party, but only to the extent of and subject to such conditions as may be imposed in such written authorization;

(f)     is required by law or regulation to be disclosed, but only to the extent and for the purposes of such required disclosure; or

(g)     is disclosed in response to a valid order of a court or other governmental body of the United States or any political subdivisions thereof, but only to the extent of and for the purposes of such order; provided, however, that the recipient shall first notify the disclosing party of the order and permit the disclosing party to seek an appropriate protective order.

5. **Securities Laws**. Each party acknowledges that Federal securities laws prohibit any person or entity who has material, non-public information about a publicly-traded company (such as the Confidential Information) from purchasing or selling securities of such company or from its parent company, or from communicating such information to any other person or entity under circumstances in which it is reasonably foreseeable that such person or entity is likely to sell or purchase such securities.

6. **Return of Information**. Confidential Information, including permitted copies, shall be deemed the property of the disclosing party. The recipient shall, within twenty (20) days of a written request by the disclosing party, return all Confidential Information, including all copies thereof, to the disclosing party or, if so directed by the disclosing party, provide written certification that all Confidential Information has been destroyed in a manner which preserves its confidentiality.

7. **Reasonableness; Remedies**. Both parties acknowledge that these covenants are reasonable and necessary for the protection of the proprietary interests of each other and agree that an impending or existing violation of any provision of this Agreement may cause the disclosing party irreparable injury for which it would have no adequate remedy at law, and that the disclosing party shall be entitled to seek immediate injunctive relief prohibiting such violation, in addition to any other rights and remedies available to it. Each party agrees to reimburse the other party (if successful on the merits) for all court

costs and legal fees, including reasonable attorney's fees, incurred in enforcing this Agreement or
obtaining relief hereunder.

8. **Miscellaneous**.

a.      Nothing contained in this Agreement or in any discussions undertaken or disclosures
made pursuant hereto shall (i) be deemed a commitment on the part of ShopKo to engage in any
business relationship, contract or future dealing with Company or any other party, or (ii) limit
either party's right to conduct similar discussions or perform similar work to that undertaken
pursuant hereto, so long as said discussions or work do not violate this Agreement.

b.      No patent, copyright, trademark or other proprietary right is licensed, granted or
otherwise transferred by this Agreement or any disclosure hereunder, except for the right to use
such information in accordance with this Agreement.  Unless otherwise agreed to in writing by
the parties, no warranties of any kind are given with respect to the Confidential Information
disclosed under this Agreement, except each party warrants to the other that: (i) the party
providing the Confidential Information is the owner of such information; (ii) the provision of any
of the Confidential Information hereunder shall not violate or conflict with any third party's legal
(contractual or otherwise) rights with respect to such information.

c.      This Agreement shall be effective as of the date first written above and shall continue
until terminated by either party upon thirty (30) days prior written notice. All obligations
undertaken respecting Confidential Information already provided hereunder shall survive any
termination of this Agreement and remain in effect for a period of three (3) years after the date of
this Agreement.

d.      This Agreement may not be assigned by either party without the prior written consent of
the other, except to any of their respective affiliates upon prior written notice. No permitted
assignment shall relieve a party of its obligations hereunder with respect to Confidential
Information disclosed to that party prior to the assignment. Any assignment in violation of this
Section shall be void. This Agreement shall be binding upon the parties and their respective
successors and assigns.

e.      If any provision of this Agreement shall be held invalid or unenforceable, such provision
shall be deemed deleted from this Agreement and replaced by a valid and enforceable provision
which so far as possible achieves the parties' intent in agreeing to the original provision. The
remaining provisions of this Agreement shall continue in full force and effect.

f.      Each party (i) warrants that it has the authority to enter into this Agreement and to
lawfully make the disclosures contemplated hereunder and (ii) expressly agrees that with respect
to this Agreement facsimile signatures are binding on the parties.

g.      This Agreement represents the entire understanding between the parties with respect to
the subject matter hereof that supersedes all prior communications, agreements and
understandings relating thereto. The provisions of this Agreement may not be modified, amended
or waived, except by a written instrument duly executed by both parties. This Agreement shall be
governed in all respects by the laws of the State of Wisconsin, without regard for conflict of laws
principles.

Case 19-80064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:56:44    Desc Main
Document    Page 33 of 65

**IN WITNESS WHEREOF,** the parties have caused this Confidentiality Agreement to be duly executed as of the day and year first above written.

**COMPANY:**_____

By: _____

Name: _____

Title: _____


**SHOPKO STORES OPERATING CO., LLC**

By: _____

Name: _____

Title: _____

Case 19-800064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:26:59    Desc Main
Document    Page 34 of 65

### **Exhibit 2**

**Asset Purchase Agreement**

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT ("Agreement") is made and entered into as of the ____ day of _____, 2019, by and between SHOPKO STORES OPERATING CO., LLC, a Delaware limited liability company ("Seller"), and [●], a [●] ("Buyer").

## WITNESSETH:

**WHEREAS**, on [●] the Seller and its subsidiaries filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court")[, which are being jointly administered under the caption *In re [_____]*, Case No. [_____]] (the date of such filing, the "Petition Date" and Seller's and its subsidiaries' Chapter 11 cases administered in respect of such filing, the "Bankruptcy Cases").

**WHEREAS**, Seller is continuing to manage its properties and operate its businesses as debtors-in-possession under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code;

**WHEREAS**, Buyer desires to purchase the Acquired Assets (as defined below) from Seller, and Seller desires to sell, convey, and transfer to Buyer the Acquired Assets in a sale authorized by the Bankruptcy Court pursuant to, *inter alia*, Sections 105, 363, and 365 of the Bankruptcy Code, all on the terms and subject to the conditions set forth in this Agreement and the Bankruptcy Court's order approving this Agreement (such order, the "Sale Order");

**WHEREAS**, the Acquired Assets shall be purchased by Buyer pursuant to the Sale Order approving such sale, free and clear of all claims and encumbrances, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and the local rules for the Bankruptcy Court (together, the "Bankruptcy Rules");

**WHEREAS**, Seller owns and operates a prescription pharmacy in certain premises at the location or locations listed on <u>EXHIBIT A</u> (the "Premises");

**WHEREAS,** Buyer desires to purchase from Seller its stock of Prescription Drugs (defined below), and Seller's prescription files (as hereinafter described) located on the Premises; and

**WHEREAS,** Seller desires to sell said inventory and files upon the terms, covenants and agreements hereinafter provided;

**NOW, THEREFORE,** in consideration of the covenants and agreements set forth below, it is hereby mutually agreed by and between Seller and Buyer as follows:

1.      Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller upon the

terms, covenants and agreements contained in this Agreement, the following described personal property located at each of the Premises (the "Acquired Assets"):

(a)    other than as set forth on <u>Schedule 1(a)</u>, Seller's stock of "Prescription Drugs" (defined as all brand name and generic drugs required by law to be dispensed under the supervision of a registered or licensed pharmacist) at each of the Premises, which does not have a manufacturer's expiration date within thirty (30) days after the applicable Closing Date for such Premises (the "Inventory"); and

(b)    any and all prescription files and records, pharmacy customer lists and patient profiles maintained by Seller, including any of such files or records maintained by computer, for the two (2) year period immediately prior to the applicable Closing Date and located at, and for pharmacy customers serviced from, the Premises as of the applicable Closing Date for such Premises (collectively referred to as "Records").

2.    (a)    Buyer agrees to pay for the Acquired Assets as follows (the sum of clauses (i) and (ii) below, the "Purchase Price"):

(i)    For the Inventory to be sold hereunder, the purchase price as determined by the physical inventory to be taken in accordance with <u>Section 3(b)</u> (the "Inventory Price"); and

(ii)    For the Records, the sum of the purchase prices listed on <u>EXHIBIT A</u> (the "Records Purchase Price").

(b)    Prior to or concurrently with the execution of this Agreement, Buyer shall deposit an amount equal to $[●][1] (the "Deposit") by wire transfer of immediately available funds to [●][2], which will be held and distributed in accordance with the terms of this Agreement. Upon valid termination of this Agreement with respect to any Premises by Seller pursuant to <u>Section 4(f)(i)</u>, the portion of the Deposit applicable to such Premises shall be forfeited to Seller as liquidated damages, the parties shall cause to be paid such portion of the Deposit to Seller, and, without limiting the foregoing, Seller shall have all other rights and remedies available under law. Upon any other valid termination of this Agreement with respect to any Premises pursuant to <u>Section 4(f)</u>, the portion of the Deposit applicable to such Premises (calculated by taking 10% of the Records Purchase Price set forth on <u>EXHIBIT A</u> with respect to such Premises) shall be required to be returned to Buyer and the parties shall cause to be paid such portion of the Deposit to Buyer.

3.    (a)    The Parties agree that Seller will engage [●][3] (the "Data Converter") to convert the prescription files and record data included in the Records (the "Record Data") to the standard [●] data pull format. Seller agrees to provide such reasonable access, information and cooperation to the Data Converter as may be required to enable the Data Converter to deliver the Record Data to Buyer on the applicable Closing Date. In the event that the Record Data is not

---

[1] Note to Draft: To be an amount equal to 10% of the Records Purchase Price.
[2] Note to Draft: To insert deposit account details.
[3] Note to Draft: Buyer to insert one of (i) Two Point or (ii) Infowerks.

delivered to Buyer as of the applicable Closing Date, Seller shall provide Buyer with reasonable access to the Records following such Closing Date until the Data Converter delivers the Record Data to Buyer.  Notwithstanding anything herein to the contrary, Seller will only be obligated to provide the Record Data to Buyer in the standard [●] data pull format.

(b)    Seller shall hire a service reasonably acceptable to Buyer, as an independent inventory service (the "Inventory Service"), to conduct a physical inventory of the Inventory at each of the Premises on or as soon as reasonably practicable following the Closing Date for such Premise (or at such other time as the parties may agree in writing).  The cost of taking the physical inventory shall be borne by Buyer.  Seller and Buyer agree that the Inventory shall be valued at its "Net Acquisition Cost" as determined in accordance with Schedule 3(b) attached hereto.  Buyer and Seller agree to reasonably cooperate with each other to require that the Inventory Service provide a file to Buyer as soon as practicable following the completion of the physical inventory count at each of the Premises that includes the Net Acquisition Costs, the National Drug Codes ("NDC") and the quantities of the Inventory at such Premise (each such file, an "Inventory File").

4.    (a)    With respect to each of the Premises, the transactions contemplated by this Agreement shall be consummated at a closing (each, a "Closing") to be held at such Premise (or a place to be agreed upon between Seller and Buyer) on the Closing Date set forth opposite such Premise on EXHIBIT A, or on such other date as may be agreed upon in writing by Seller and Buyer; provided that, in the event a Closing with respect to any Premise would occur pursuant to this Section 4(a) at a time when the Sale Order has not been entered by the Bankruptcy Court, such Closing shall be delayed until such date on which the Sale Order has been entered by the Bankruptcy Court.  The date and event of each such Closing is referred to herein as a "Closing Date."

(b)    The following procedure shall be employed for each Closing:

(i)    At the Closing for each of the Premises, (A) Buyer shall pay to Seller 90% of the applicable portion and (B) the parties shall cause to be paid to Seller, from the Deposit, 10% of the applicable portion, in each case, of the Records Purchase Price set forth on EXHIBIT A for the Records from such Premises.

(ii)    Promptly, and in any event within two (2) business days, following receipt by Buyer of the Inventory File for each of the Premises, Buyer shall pay to Seller the applicable portion of the Inventory Purchase Price, determined in accordance with Schedule 3(b) and the Inventory File, for the Inventory from such Premises.

(iii)    At the Closing for each of the Premises, Seller shall execute and deliver to Buyer a Bill of Sale, in the form attached hereto as EXHIBIT B, conveying to Buyer complete and unencumbered title to the Records and Inventory to be sold under this Agreement for such Premise.

(iv)    At the Closing for each of the Premises, Seller shall immediately surrender possession of, and Buyer shall immediately take possession of, the Records for such Premise.  Buyer shall pay all data transfer costs related to the transfer of the Records from Seller to Buyer for each of the Premises, including, for the avoidance of doubt, all fees and expenses of the Data Converter.

3

(v)    Upon payment by Buyer to Seller of the Inventory Purchase Price for the Inventory from each of the Premises, Seller shall immediately surrender possession of, and Buyer shall immediately take possession of, the Inventory for such Premises.

(vi)    Buyer agrees in the event that, prior to each applicable Closing Date, Seller receives from any pharmacy customer any objection to the transfer of such pharmacy customer's prescription records to the Buyer's pharmacy and/or any instruction from a pharmacy customer to transfer said pharmacy customer's prescription records to a pharmacy other than the Buyer's pharmacy, Seller shall be relieved of its obligation to transfer such pharmacy customer's prescription records to Buyer except to the extent that such a transfer is required by law.  Buyer further agrees that in the event a pharmacy customer objects, after the applicable Closing Date for such Premises, to the transfer of such pharmacy customer's prescription records to the Buyer's pharmacy, Buyer shall immediately transfer such pharmacy customer's prescription records to the location designated by such pharmacy customer and shall further purge said pharmacy customer's prescription records from Buyer's files except to the extent Buyer is required by law to retain such Records.  For the avoidance of doubt, the Purchase Price to be paid by Buyer pursuant to this Agreement shall not be reduced, or otherwise impacted, by any of the foregoing matters described in this Section 4(b)(vi).  The provisions of this Section 4(b)(vi) shall survive each Closing.

(vii)    All payments made by Buyer to Seller pursuant to this Agreement shall be made by electronic wire transfer or delivery of other immediately available funds pursuant to the wire instructions attached hereto as EXHIBIT C.

(c)    Seller and Buyer shall each use commercially reasonable efforts to comply with all federal, state or local laws, regulations, ordinances and rules applicable to each respective party and relating to the sale of the Acquired Assets.  The parties agree that Seller shall notify the applicable State Boards of Pharmacy and post signage at each of the Premises (provided, however, that Buyer shall comply with any other legal requirements to notify the public and/or patients of each of the Premises), in each case, as soon as reasonably practicable after the date hereof.  Each of the parties shall provide a copy of the notices to be prepared pursuant to the preceding sentence to the other party prior to the submission of such notice to the applicable State Boards of Pharmacy or the public and/or patients.  The form and content of any notification to the public and/or patients of the Premises and of any signage posted at the Premises shall be subject to the prior approval of both parties, not to be unreasonably withheld, conditioned or delayed.

(d)    After the date hereof and prior to the Closing for each of the Premises, Buyer shall have the opportunity to interview and discuss post-Closing employment opportunities with Seller's employees of the applicable Premises on a date acceptable to Buyer and Seller, and Seller agrees to reasonably cooperate with Buyer if Buyer elects to hire any such employee of Seller effective at or after the applicable Closing and such employee accepts such offer of employment.

(e)    Seller and Buyer agree to reasonably cooperate with each other and to use their respective reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary to consummate the transactions contemplated hereby and to satisfy the conditions to each applicable Closing as soon as reasonably practicable following the date

4

hereof.

> (f)     Either party may terminate this Agreement with respect to any of the Premises by written notice to the other party:

>> (i)     if such other party has materially breached any of its obligations contained in this Agreement with respect to such Premise and such breach is not cured within three (3) days following receipt by such other party of written notice of such breach; provided, however, that no such termination may be made by a party if such party is in material breach of its obligations under this Agreement; or

>> (ii)     if the applicable Closing for such Premise shall not have occurred on or before the date that is 60 days following the date hereof; provided, however, that no such termination may be made by a party if the failure of the applicable Closing to occur on or before such date shall have been caused by the action or inaction of the terminating party.

> 5.     (a)     Seller agrees that all of the Records are confidential information.  From the date of this Agreement and continuing for a period of twenty-four (24) months after the Closing Date for each of the Premises, Seller will not, directly or indirectly, disclose any such confidential information to others without the prior written consent of Buyer.  The provisions of this Section 5(a) shall not be applicable to (i) information which is a matter of public knowledge, (ii) information which, after disclosure, becomes public knowledge other than through a breach of this Agreement, (iii) information lawfully obtained or independently developed by Seller and (iv) information which Seller is required by law, regulation or legal process to disclose.

> (b)     Following the Closing for each of the Premises, Seller shall terminate any advertising and yellow pages agreements for the pharmacy in the Premises.  At Buyer's written request and sole cost, commencing on the Closing Date for each of the Premises, Seller will arrange for an outgoing message on Seller's phone number for such Premises which directs physicians and Seller's pharmacy customers to a location and phone number designated by Buyer until the earlier of (i) thirty (30) days following each applicable Closing Date and (ii) the date Seller ceases operations at such Premises.  In the event that Seller has a pharmacy-only phone number in addition to a main-store phone number for the Premises, Seller and Buyer may arrange for the transfer of the pharmacy-only phone number to Buyer.

> (c)     Buyer and Seller agree that neither party shall produce any press releases or other advertising related to this Agreement or the transactions contemplated hereby at any time prior to or after each Closing unless otherwise agreed upon (as to both timing and content) by both parties except as may be required by law, proceeding (including the Bankruptcy Cases), or stock exchange rules or regulations; provided that in the event any such communication is required by law, proceeding (including the Bankruptcy Cases), or stock exchange rules or regulations, the disclosing party shall, to the extent permitted by law, provide the other party with a reasonable opportunity to review and comment upon any such disclosure and shall take into consideration such comments in good faith.

> (d)     Seller agrees that Buyer may, as of the Closing Date and ending on the

5

earlier of (i) thirty (30) days after the Closing Date for each of the Premises and (ii) the date Seller ceases operations at such Premises, post signs in the applicable Premises notifying customers that the Records will be relocating to [●], subject to landlord consent.  The content and location of such signs shall be subject to Seller's prior approval, not to be unreasonably withheld.

6.    (a)    This Agreement is for the sale of certain specified assets only (i.e., the Acquired Assets) and does not include Seller's accounts receivable in any form, and Buyer shall not assume any liability of any nature, except as expressly provided herein, as a result of the transaction contemplated in this Agreement.  Without limiting the generality of the foregoing, Buyer does not assume any type of successor liability as to trade creditors, unemployment, income, property, sales of other taxes, or otherwise.

(b)    Seller represents and warrants that, as of the date of each Closing, none of the Acquired Assets to be conveyed hereunder at such Closing will be subject to any lien, mortgage or encumbrance, and all of said property shall be conveyed free and clear of any right, title or interest of any entity or person, to the extent allowed under the Bankruptcy Code.

(c)    The parties agree to use commercially reasonable efforts to comply fully with the provisions of the United States Controlled Substance Act of 1970, as such act may relate to the transfer of the Acquired Assets  referred to herein, and with all applicable federal and state laws as they may relate to the transfer of the Acquired Assets.  Buyer shall comply with all applicable laws and regulations that may relate to the maintenance and confidentiality of the Records transferred hereunder.  Seller (with the assistance of Buyer) shall notify the appropriate governmental agencies, including the State Board of Pharmacy and the regional DEA office, of the transfer described herein.  Concurrently with Seller's transfer of the Inventory to Buyer, Buyer shall deliver to Seller one copy of a DEA order form for all controlled substances purchased hereunder.  At or promptly following the Closing for each of the Premises, Seller shall provide Buyer with all hard copy records that are required to be transferred pursuant to CFR 1301.52. with respect to controlled substances that are part of the Inventory (the "DEA Records") for the two (2) year period immediately prior to the date on which the physical inventory count at each of the Premises is completed.  Such DEA Records include DEA executed 222 forms and invoices; invoices for Schedule III-V drugs; powers of attorney for all who executed DEA 222 forms to purchase Schedule II drugs; all inventory records of controlled drugs (including initial inventory and biennial inventory); all DEA 106s filed during such two-year timeframe; all transfers/sales of controlled substances between pharmacies; all records of controlled drugs distributed, such as returns to suppliers, returns to reverse distributor and sales to prescriber's offices; and all daily controlled substance dispensing reports.

(d)    Buyer agrees to cooperate with Seller and provide access to any of the Records, the DEA Records and related Inventory after each Closing as necessary to respond to any federal, state or third-party audit or investigation.

7.    Seller represents and warrants to Buyer that Seller is a limited liability company duly organized and in good standing under the laws of the State of Delaware, that it has full power and authority to enter into and perform this Agreement.

Buyer represents and warrants to Seller that Buyer is a [●], duly formed and validly existing in good standing under the laws of the State of [●], that it has full power and authority to enter into and perform this Agreement, that it has not made an assignment for the benefit of creditors, that it is not subject to the jurisdiction of any bankruptcy court nor has it entered into any other arrangement or composition with creditors, that it has taken all appropriate action to enable it to perform this Agreement, and that Buyer is duly licensed to operate a pharmacy as required under applicable state law and is duly registered with the DEA.

8.      All notices hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, addressed, if to Seller, to Shopko Stores Operating Co., LLC, Attn: Russell Steinhorst – CEO, 700 Pilgrim Way, Green Bay, Wisconsin 54304, with a copy to Attn: Legal Department, Shopko Stores Operating Co., LLC, 700 Pilgrim Way, Green Bay, Wisconsin 54304 and if to Buyer, [●]; provided that each party by like notice may designate any further or different addresses to which subsequent notices shall be sent.

9.      This Agreement shall bind and benefit the successors and permitted assigns of the respective parties hereto.  This Agreement shall not be assigned by any party hereto, by operation of law or otherwise, without the prior written consent of the other party hereto, and any purported assignment in contravention of this Section 9 shall be null and void and of no force and effect.

10.     The risk of loss or damage to each of the Acquired Assets shall be upon Seller until Buyer receives physical possession of any such Acquired Assets in accordance with this Agreement.

11.     This Agreement constitutes the entire agreement between the parties and supersedes all prior offers, negotiations, and understandings, whether oral or written, with respect to this transaction between the parties hereto and may only be modified by a writing executed by both parties.  The parties hereto agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other agreement contemplated hereby, this Agreement shall govern and control.

12.     The representations, warranties and statements of each of Seller and Buyer contained in this Agreement constitute the sole and exclusive representations, warranties and statements (including by omission) of Seller and Buyer, as applicable, in connection with this Agreement or the transactions contemplated hereby and all other purported representations, warranties or statements (including by omission) are hereby disclaimed by Seller and Buyer.  None of the representations, warranties or statements of Seller or Buyer contained in this Agreement shall survive the applicable Closing with respect to each of the Premises and each such representation, warranty and statement shall terminate on and as of the applicable Closing, and no claims may be brought with respect to such representations, warranties or statements from or after the applicable Closing.  Each of Buyer and Seller has and will only rely on the representations and warranties of Seller or Buyer, as applicable, expressly and specifically set forth in this Agreement and hereby expressly and irrevocably acknowledges and agrees that it has not relied on any other representations, warranties or statements (including by omission) and shall not have any claim with respect to its purported use of, or reliance on, any such representations, warranties or statements (including by omission).  Notwithstanding anything herein to the contrary, Buyer is

7

acquiring the Acquired Assets on an "AS IS, WHERE IS" basis. In furtherance of the foregoing, except for the rights expressly set forth in this Agreement, each party hereby waives and releases the other party, such other party's affiliates and each of their respective officers, directors, employees, partners, members, managers, equityholders and representatives, to the fullest extent permitted under applicable law, from and against any and all other rights, claims and causes of action it may have against such other party or any of the other foregoing persons relating (directly or indirectly) to the subject matter of this Agreement or the transactions contemplated hereby.

13.     The parties each hereby waive compliance by Seller with the provisions of the "bulk sales," "bulk transfer" or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any of the Acquired Assets and the other transactions contemplated hereby. Upon request by Seller, Buyer shall deliver customary exemption certificates demonstrating Buyer's exemption from sales and use taxes for each of the jurisdictions in which the Premises are located.

14.     In the event of litigation between the parties in relation to the interpretation or enforcement of this Agreement, the reasonable attorneys' fees and court costs incurred by the party prevailing in such litigation shall be borne by the non-prevailing party.

15.     Buyer agrees that it will assist Seller in obtaining Bankruptcy Court approval of the Sale Order and in contesting any objections to transactions contemplated hereby, including furnishing affidavits or other documents or information as may be needed for filing with and appearing for testimony at the Bankruptcy Court.

16.     This Agreement and all claims, controversies and causes of action arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, including all matters of construction, validity, performance and enforcement. Each party hereto hereby consents to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Nebraska with respect to all matters arising under or relating to this Agreement. Each party hereto hereby irrevocably waives any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY LITIGATION, ACTION, PROCEEDING, CROSS-CLAIM OR COUNTERCLAIM IN ANY COURT (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO (i) THIS AGREEMENT OR THE VALIDITY, PERFORMANCE, INTERPRETATION OR ENFORCEMENT HEREOF OR (ii) THE ACTIONS OF SUCH PARTY IN THE NEGOTIATION, AUTHORIZATION, EXECUTION, DELIVERY, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF.

17.     The parties hereto agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, and that money damages or legal remedies would not be an adequate remedy for any such damages. Therefore, it is accordingly agreed that each party shall be entitled to enforce specifically the terms and provisions of this Agreement, or to enforce compliance with, the covenants and obligations of any other party, in any court of competent jurisdiction, and

appropriate injunctive relief shall be granted in connection therewith.  Any party seeking an injunction, a decree or order of specific performance shall not be required to provide any bond or other security in connection therewith and any such remedy shall be in addition and not in substitution for any other remedy to which such party is entitled at law or in equity.  For all purposes of this Agreement, the parties hereto agree that time is of the essence.

18.     This Agreement may be executed by facsimile or PDF copies in two or more counterparts and once so executed by the parties hereto, each such counterpart shall be deemed to be an original, but all such counterparts together shall constitute one agreement.

19.     The Recitals and all exhibits attached hereto are incorporated into this Agreement as if set forth in full herein.

Case 19-80064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:20:59    Desc Main
Document    Page 44 of 65

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered as of the day and year first above written.

SELLER:　　　　　**SHOPKO STORES OPERATING CO., LLC,**
　　　　　　　　　a Delaware limited liability company


　　　　　　　　　By: _____
　　　　　　　　　Its: _____



BUYER:　　　　　**[●],**


　　　　　　　　　By: _____
　　　　　　　　　Its: _____

## Schedule 1(a)

The following merchandise shall not be included in Inventory purchased by Buyer:

1. Pharmacy inventory not in its original container or package (including overfills)
2. Pharmacy inventory not listed in the current Red Book or Blue Book
3. Sample Pharmacy Inventory
4. Zostavax
5. Repackaged pharmaceuticals
6. Store supplies
7. Thalomid, Isotretinoin (including brand names Accutane, Amnesteen, Claravis, Sotret)

## Schedule 3(b)

### INVENTORY INSTRUCTIONS

In connection with the Purchase Agreement (the "Agreement") by and among [●] ("Buyer"), Shopko Stores Operating Co., LLC ("Seller") and any other parties thereto, this Schedule 3(b) sets forth the agreed upon methods, standards and procedures for counting and determining the value of the Inventory to be purchased by Buyer.


I.      *GENERAL INSTRUCTIONS*


A.      At least one qualified representative of both Buyer and Seller must be present throughout the inventory taking.


B.      The inventory shall be counted by a national third-party inventory service, with Buyer paying the cost of such service.


C.      No pre-counting of inventory will be permitted.


II.     *CUT-OFF PROCEDURE*


A.      All merchandise received up to and including the date the physical inventory is conducted (the "Inventory Date") shall be included in the inventory.  Seller shall be responsible for the payment of all invoices for merchandise received up to and including the Inventory Date.


III.    *PHARMACEUTICAL INVENTORY*


A.      "Net Acquisition Cost" shall be determined as follows:  Seller will provide a file from its computer system to locate the Seller's cost, which cost shall be the Net Acquisition Cost, and provide same to the inventory counting service.  In the event the inventory counting service is unable to obtain the Seller's cost from the file provided by Seller, then the parties agree that the Net Acquisition Cost will be calculated as follows:  AWP minus 20% for branded products and AWP minus 80% for generic products to arrive at the net cost.


B.      Open containers will be counted as tenths.


C.      Items to be excluded from the sale will be pulled and accumulated at a predesignated location for disposition at Seller's expense.


D.      Matters Related to Prescriptions.  Prior to the Inventory Date, Seller shall use reasonable efforts to fill and deliver to pharmacy customers any partial-fill prescriptions with a remaining quantity balance ("IOU Prescriptions").  For any IOU Prescriptions remaining on the Inventory Date, Seller shall credit the prescription to the customer or to the third-party payor, as

12

appropriate, on the Inventory Date.  Buyer assumes no liability for IOU Prescriptions.  In addition, prior to the Inventory Date, Seller shall reverse and return to stock any filled prescriptions that have not been picked up, providing all necessary notice to any third-party payors, and shall provide Buyer with a list of such prescriptions so that Buyer is prepared to fill such prescriptions on or after the Inventory Date.

E.       Buyer, Seller and the inventory service shall execute a breakdown report of the inventory evaluation as calculated by the inventory service.

## EXHIBIT A

| Premises | Closing Date | File Purchase Price | Buyer's Store Location |
|---|---|---|---|
| Shopko Pharmacy # [●] | | $ [●] | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## EXHIBIT B

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS, that for the consideration set forth in that certain Purchase and Sale Agreement (the "Agreement") dated _____, 2019 between SHOPKO STORES OPERATING CO., LLC, a Delaware limited liability company ("Seller"), and _____, a _____ ("Buyer"), the receipt and sufficiency of which is hereby acknowledged, Seller does hereby sell, convey, transfer and set over to Buyer, its successors and assigns, all of Seller's right, title and interest in and to the following personal property contained in Seller's retail prescription pharmacy located at _____ and as further identified in the Agreement:

1.   All prescription drug inventory as described on Schedule A attached hereto\*; and

2.   Any and all prescription files and records, customer lists and patient profiles maintained by Seller, including any of such files or records maintained by computer, for the two (2) year period immediately prior to the applicable Closing Date and located at, and for pharmacy customers serviced from, the Premises identified in the Agreement as of the applicable Closing Date for such Premises.

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Agreement.

TO HAVE AND TO HOLD, the same unto Buyer, its successors and assigns forever.

Seller hereby assigns and transfers to Buyer any and all warranties relating to said personal property which may be lawfully assigned or transferred.

IN WITNESS WHEREOF, Seller has hereunto caused this Bill of Sale to be executed this _____ day of _____, _____.


**SHOPKO STORES OPERATING CO., LLC**


By: _____
Title: _____


\*Attach a copy of the Inventory Service inventory report.

15

Case 19-800064-TLS   Doc 295   Filed 02/04/19   Entered 02/04/19 12:20:59   Desc Main
Document    Page 46 of 65

**<u>EXHIBIT C</u>**

**SELLER'S WIRE TRANSFER INSTRUCTIONS**

Case 19-800064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:26:59    Desc Main
Document    Page 47 of 65

## **Exhibit 3**

**Bidder Registration Form**

## OFFER AND BIDDER REGISTRATION FORM

_____ ("<u>Bidder</u>"), hereby:

- Offers to purchase the following Pharmacy Assets for the bid set forth below, pursuant to this Offer & Qualified Bidder Form and the terms and conditions of the accompanying purchase agreement (the "<u>Bidder APA</u>"), and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the *Bidding Procedures for the Disposition of the Debtors' Pharmacy Assets* subject to approval by the United States Bankruptcy Court for the District of Nebraska in the chapter 11 cases of *In re* [_____], Case No. [_____] (the "<u>Bidding Procedures</u>").

Bidder's offer is for the following Pharmacy Assets at the following bids:

| PHARMACY | PHARMACY INVENTORY BID/PURCHASE PRICE | PHARMACY FILES BID/PURCHASE PRICE | TOTAL PHARMACY ASSETS BID/PURCHASE PRICE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| <u>Aggregate Purchase Price:</u> | | | |

1

**<u>Bidder hereby warrants and represents as follows</u>**:

(a)     Bidder has received, reviewed, understands and agrees to abide by the terms and conditions of the Bidding Procedures, the terms and conditions of which are incorporated herein by reference.

(b)     Bidder has received, reviewed and understands the terms and conditions of the Bidder APA, the terms and conditions of which are incorporated herein by reference.

(c)     To the extent that the words and phrases which are capitalized in this Offer & Qualified Bidder Form have been defined in the Bidding Procedures or in the Bidder APA, those definitions are incorporated herein by reference.

(d)     Each Bid made at the Auction shall constitute a binding, irrevocable "Bid" pursuant to the Bidding Procedures.

(e)     Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the Pharmacy Assets on an as-is, where-is basis, with no contingencies.

(f)     Bidder (a) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Pharmacy in making its offer; (b) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Pharmacy or the completeness of any information provided in connection therewith or the Auction other than as provided in the Bidder APA; and (c) is not entitled to any break-up fee, termination fee, expense reimbursement, or similar type of payment, (d) and by submitting a Bidder APA, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under § 503 of title 11 of the United States Code related in any way to the submission of its bid, the Bidding Procedures, or any earnest money deposit.

(g)     Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder exclusively authorizes broker to submit such offer on behalf of Bidder and that any commission or fee of any type due and payable to such broker as a result of a Transaction shall be paid solely by Bidder and Bidder shall indemnify the Debtors and their agents in this regard, and (ii) Bidder acknowledges that it will comply with the Bidding Procedures.

(h)     Bidder acknowledges that, pursuant to, *inter alia*, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(i)     Bidder confirms that it has not engaged, and will not engage, in any collusion with respect to the bidding or the Transaction.

(j)     Identification of how the Bidder will pay the purchase price at Closing.

*[Signatures appear on following page]*

2

AGREED & ACCEPTED this _____ day of _____, 2019


Company: _____


By:_____
Name:
Title:


*BIDDER I.D.*

Bidder's Company: _____

Bidder's Address:_____

Bidder's Contact:_____

Bidder's Phone & Facsimile Numbers:_____

Bidder's Email Address: _____

Bidder's Tax ID Number:_____


*ATTORNEY OR AUTHORIZED AGENT I.D.*

Attorney or Agent Name:_____

Law Firm or Company: _____

Address:_____

Phone & Facsimile Numbers:_____

Email Address: _____


3

Case 19-800064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:26:59    Desc Main
Document    Page 51 of 65

## Exhibit B

**Transaction Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064 (TLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### NOTICE OF HEARING, BID DEADLINE, AND TRANSACTION HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (the "Debtors") are soliciting offers for the sale(s), liquidation(s), or other disposition(s) (such sale(s), liquidation(s), or other disposition(s), the "Transaction(s)") of the Debtors' stock of prescription pharmaceutical inventory located in the prescription pharmacies in the Debtors' stores (the "Pharmacy Inventory") and/or the prescription files and records, pharmacy customer lists and patient profiles (the "Pharmacy Files," together with the Pharmacy Inventory, the "Pharmacy Assets") located at, and for customers serviced from, such prescription pharmacies (the "Pharmacies") consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the District of Nebraska (the "Court") by entry of an order on [●] [Docket No. [●]] (the "Bidding Procedures Order").  **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**.  To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **January 21, 2019, at [4:00 p.m.] (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will conduct an Auction of the Pharmacy Assets **on January 23, 2019, at 9:00 a.m. (prevailing Central Time)** at the offices of Kirkland & Ellis LLP, located at 300 North LaSalle, Chicago, Illinois 60654.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Transaction at the Transaction Hearing scheduled to commence on or before **January 28, 2019, at 1:00 p.m. (prevailing Central Time)** (the "Transaction Hearing") before the Honorable Thomas L. Saladino, at the Court, 111 South 18th Plaza #1125, Omaha, Nebraska 68102.

**PLEASE TAKE FURTHER NOTICE** that objections to the relief requested in the Transaction Motion **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be **actually received** by **January 25, 2019, at 4:00 p.m. (prevailing Central Time)** by the following parties (the "Objection Recipients"):

| Proposed Co-Counsel to the Debtors | Proposed Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn.: Travis Bayer and Jamie R. Netznik<br><br>-and-<br><br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn.: Steven Serajeddini | McGrath North Mullin & Katz, P.C., LLO<br>First National Tower, Suite 3700<br>1601 Dodge Street<br>Omaha, Nebraska 68102<br>Attn.: James J. Niemeier, Michael T. Eversden, and Lauren R. Goodman |
| **The United States Trustee** | **Counsel to the Credit Agreement Agent** |
| Office of the United States Trustee for the District of Nebraska<br>111 South 18th Plaza, #1125<br>Omaha, Nebraska 68102<br>Attn: Jerry Jensen, Esq. | Otterbourg P.C.<br>230 Park Avenue,<br>New York, New York 10169,<br>Attn: Chad Simon, Esq. |

**PLEASE TAKE FURTHER NOTICE** that, if you object to the Transaction (a "Transaction Objection"), such Transaction Objection **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be **actually received** by January 25, 2019 at 4:00 p.m. (prevailing Central Time) by the Objection Recipients.

<u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE TRANSACTION OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE DISPOSITION OF THE DEBTORS' PHARMACY ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE AGREEMENT WITH THE SUCCESSFUL BIDDER.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Transaction Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, including the proposed

2

Case 19-80064-TLS   Doc 295   Filed 02/04/19   Entered 02/04/19 12:26:54   Desc Main
Document   Page 52 of 65

Transaction Order, are available:  (a) upon request to Prime Clerk LLC (the notice and claims agent retained in these chapter 11 cases) by calling **(844) 205-7495**; (b) by visiting the website maintained in these chapter 11 cases at **http://cases.primeclerk.com/shopko**; or (c) for a fee via PACER by visiting http://www.neb.uscourts.gov.

[*Remainder of page intentionally left blank*]

Dated: [_____], 2019        /s/ _____
   Omaha, Nebraska          James J. Niemeier (NE Bar No. 18838)
                              Michael T. Eversden (NE Bar No. 21941)
                              Lauren R. Goodman (NE Bar No. 24645)
                              **MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**

First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:    (402) 341-3070
Facsimile:    (402) 341-0216
Email:       jniemeier@mcgrathnorth.com
                 meversden@mcgrathnorth.com
                 lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Travis M. Bayer (*pro hac vice* pending)
Jamie Netznik (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:       james.sprayregen@kirkland.com
                 patrick.nash@kirkland.com
                 travis.bayer@kirkland.com
                 jamie.netznik@kirkland.com

- and -

Steven Serajeddini (*pro hac vice* pending)
Daniel Rudewicz (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:       steven.serajeddini@kirkland.com
                 daniel.rudewicz@kirkland.com

*Proposed Co-Counsel to the Debtors*

Case 19-800064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:26:59    Desc Main
Document      Page 60 of 65

**<u>Exhibit C</u>**

**Post-Auction Notice**

Case 19-800064-TLS    Doc 295    Filed 02/04/19    Entered 02/04/19 12:26:59    Desc Main
Document      Page 61 of 65

<u>**Exhibit C**</u>

**Post-Auction Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064  (TLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF SUCCESSFUL AND BACKUP BIDDER
## WITH RESPECT TO THE AUCTION OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (the "Debtors") are soliciting offers for the sale(s), liquidation(s), or other disposition(s) (such sale(s), liquidation(s), or other disposition(s), the "Transaction(s)") of the Debtors' stock of prescription pharmaceutical inventory located in the prescription pharmacies in the Debtors' stores (the "Pharmacy Inventory") and/or the prescription files and records, pharmacy customer lists and patient profiles (the "Pharmacy Files," together with the Pharmacy Inventory, the "Pharmacy Assets") located at, and for customers serviced from, such prescription pharmacies (the "Pharmacies") consistent with the bidding procedures (the "Bidding Procedures")[2] approved by the United States Bankruptcy Court for the District of Nebraska (the "Court") by entry of an order on [●] [Docket No. [●]] (the "Bidding Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that, on January 23, 2019, at 9:00 a.m. (prevailing Central Time), pursuant to the Bidding Procedures Order, the Debtors conducted the Auction with respect to certain of the Pharmacy Assets at the offices of Kirkland & Ellis LLP, located at 300 North LaSalle, Chicago, Illinois 60654.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals, selected the following Successful Bidder and Backup Bidder with respect to the Assets:

| Pharmacy Assets | Successful Bidder | Backup Bidder |
|---|---|---|
|  |  |  |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

PLEASE TAKE FURTHER NOTICE that the Transaction Hearing to consider approval of the sale, liquidation, or other disposition of the Pharmacy Assets to the Successful Bidders at the Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held before the Honorable Judge Thomas L. Saladino, at the Court, 111 South 18th Plaza #1125, Omaha, Nebraska 68102, **on January 28, 2019, at 1:00 p.m. (prevailing Central Time)**.

PLEASE TAKE FURTHER NOTICE, that at the Transaction Hearing, the Debtors will seek the Court's approval of the Successful Bid and the Backup Bid (if any). Unless the Court orders otherwise, the Transaction Hearing shall be an evidentiary hearing on matters relating to the Transaction and there will be no further bidding at the Transaction Hearing. In the event that the Successful Bidder cannot or refuses to consummate the Transaction because of the breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not required, to close with the Backup Bidder on the Backup Bid without further order of the Court.

PLEASE TAKE FURTHER NOTICE that this Notice of Successful Bidder and Backup Bidder is subject to the terms and conditions of the Transaction Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale, liquidation, or other disposition of the Pharmacy Assets and/or copies of any related document, including the Transaction Motion or the Bidding Procedures Order, may make a written request to: proposed counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn: Travis Bayer, Esq. (travis.bayer@kirkland.com) and Jamie R. Netznik, Esq. (jamie.netznik@kirkland.com); and 601 Lexington Avenue, New York, NY 10022, Attn: Steven Serajeddini Esq. (steven.serajeddini@kirkland.com) and Daniel Rudewicz (daniel.rudewicz@kirkland.com).

PLEASE TAKE FURTHER NOTICE that copies of the Transaction Motion, the Bidding Procedures Order, this Notice, and any other related documents are available: (a) upon request to Prime Clerk LLC (the notice and claims agent retained in these chapter 11 cases) by calling **(844) 205-7495**; (b) by visiting the website maintained in these chapter 11 cases at **http://cases.primeclerk.com/shopko**; or (c) for a fee via PACER by visiting http://www.neb.uscourts.gov.

[*Remainder of page intentionally left blank*]

Dated:    [_____], 2019          /s/ _____
  Omaha, Nebraska              James J. Niemeier (NE Bar No. 18838)
                                      Michael T. Eversden (NE Bar No. 21941)
                                        Lauren R. Goodman (NE Bar No. 24645)
                                        **MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**

First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:    (402) 341-3070
Facsimile:    (402) 341-0216
Email:          jniemeier@mcgrathnorth.com
                meversden@mcgrathnorth.com
                lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Travis M. Bayer (*pro hac vice* pending)
Jamie Netznik (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          james.sprayregen@kirkland.com
                patrick.nash@kirkland.com
                travis.bayer@kirkland.com
                jamie.netznik@kirkland.com

- and -

Steven Serajeddini (*pro hac vice* pending)
Daniel Rudewicz (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          steven.serajeddini@kirkland.com
                daniel.rudewicz@kirkland.com

*Proposed Co-Counsel to the Debtors*

3

**Exhibit B**

| Pharmacy Files (Store Number and Location) | Successful Bidder | Type of Agreement | Purchase Price |
|---|---|---|---|
| Shopko Pharmacy #696; 505 W. Holme Street Norton, Kansas 67654 | Rice, PA | Asset Purchase Agreement | $100.00 |
| Shopko Pharmacy #761 Boyd Avenue, Newcastle, WY | Weston County Hospital District dba Weston County Pharmacy | Asset Purchase Agreement | $10.00 |
| Shopko Pharmacy #145 Monmouth, IL | Axline's, Inc. | Asset Purchase Agreement | $100.00 |
| Shopko Pharmacy #795 1026 South Challis Street Salmon, ID 83467 | Safeway Market, Inc. | Asset Purchase Agreement | $100.00 |