**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re:<br><br>SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.* [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-80064-TLS |

**REPLY OF SHOPKO NOTE HOLDING, LLC (AS SUCCESSOR TO SPIRIT MTA REIT, L.P.) TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DEBTORS' MOTION FOR A FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Shopko Note Holding, LLC (as successor to Spirit MTA REIT, L.P.) ("SNH"), as the Term Loan B-1 Lender under the Third Amended and Restated Loan and Security Agreement dated February 7, 2012, as amended (the "Loan Agreement"), hereby respectfully submits this Reply to the Official Committee of Unsecured Creditors' (the "Committee") Objection (the "Objection") to Debtors' Motion for a Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (ii) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief, and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

## REPLY

1.  SNH writes to correct the record with respect to its extant status as a DIP Lender and its expectations for being fully included in the DIP Facility, including any roll up of the Pre-Petition Loans. By way of contrast, footnote 4 of the Committee's Objection states that the Term Loan B-1 is not to be rolled up, and paragraph 15 of the Objection states that Term Loan B-1 is not included in the DIP Facility.

2.  SNH is a DIP Lender under the DIP Facility, and is included as a DIP Lender as set forth in all of the DIP financing documentation. *See, e.g.*, Interim Order at ¶ 1 & § G(i) [Doc. No. 89]. To the extent that there was any ambiguity in the Debtors' pleadings, such ambiguity was clarified in the DIP financing documentation as well as on the record at the first day hearing. *See* Jan. 16. 2019 Hearing at 2:16:15-2:19:33 [Doc. No. 59].

3.  As a DIP Lender and as provided for in the DIP financing documentation, to the extent that the Court overrules the Committee's Objection, SNH fully expects the Term Loan B-1 to be rolled up alongside the loans of every other DIP Lender. *See, e.g.*, Ratification Agreement at §§ 5.1, 5.9 [Doc. No. 89].

4.  The Term Loan B-1 and all loans under the Loan Agreement share in the *exact same* pre-petition first lien on the Collateral as defined under the Loan Agreement. To the extent that the Term Loan B-1 is not rolled up but the other Pre-Petition Loans are rolled up, this would elevate the claims of other secured lenders, but not SNH, to superpriority status. As a practical matter, this means that the Term Loan B-1 alone will be forced to stand behind the administrative costs of these chapter 11 cases, including the continued accrual of professional fees and expenses.[2] SNH does not consent to same.

---

[2] While not the subject of this Reply, SNH hereby incorporates its Statement and Joinder to Debtors' Motion, filed January 27, 2019 [Doc. No. 193].

5. SNH is entitled to the same treatment as every other secured lender that shares in the same first lien. There is no basis for treating SNH differently from other lenders, irrespective of the fact that the Term Loan B-1 is contractually "last out" in payment waterfalls under the Loan Agreement. No party has suggested, for instance, that the Term Loan B should not be rolled up simply because it is second to last out in payment waterfalls under the Loan Agreement. Nor has any party identified a case in which any court has ever approved a DIP facility that effectively subordinates one secured lender's claim to other secured lenders that share in the same pre-petition lien, and there is no basis why this Court should be the first to do so.

6. SNH believes that the Committee's Objection should be overruled and that all of the Pre-Petition Loans, including the Term Loan B-1, should be rolled up through the entry of the final DIP order. For the avoidance of doubt, SNH objects to the entry of an order approving a roll up of all of the Pre-Petition Loans other than the Term Loan B-1.

## APPLICABLE LAW

7. When a debtor seeks post-petition credit "secured by a senior or equal lien on property of the estate that is subject to a lien," the court must ensure that "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d). Adequate protection is recognized as a fundamental right afforded secured creditors in bankruptcy proceedings and Bankruptcy judges "are required to grant Section 364(d) financing only upon a tangible demonstration of adequate protection." *In re LTAP US, LLLP*, No. 10-14125, 2011 Bankr. LEXIS 667, at *9 (Bankr. D. Del. Feb. 18, 2011) ("Priming is extraordinary relief requiring a strong showing that the loan to be subordinated is adequately protected."); *see also In re Marchand*, 61 B.R. 81, 85 (Bankr. E.D. Ark. 1986) (finding no adequate protection).

8.	The purpose of adequate protection is to ensure that the pre-petition lender receives the value for which it bargained pre-petition. *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) ("a debtor, in structuring a proposal of adequate protection for a secured creditor, 'should as nearly as possible under the circumstances provide the creditor with the value of his bargained for right'") (quoting *In re American Mariner Industries, Inc.*, 734 F.2d 426, 435 (9th Cir. 1984)); *In re T C Props. LLC,* 2002 Bankr. LEXIS 1802, at *13 (Bankr. D. Neb. Apr. 8, 2002) ("The debtor should make certain that the pre-petition creditor receives the same level of protection it would have had absent post-petition super-priority financing.") (citing *RTC v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (*en banc*)).  Further, "[d]ebtors carry the burden of proof on adequate protection." *In re Vegt*, 499 BR 631, 637 (Bankr. N.D. Iowa 2013) (citation omitted); 11 U.S.C. § 364(d)(2).  As a secured creditor and a DIP Lender, SNH has received adequate protection in the form of replacement liens on an interim basis.  But replacement liens cannot put SNH back in the positon it currently occupies if every other secured lender is granted superpriority claims that will subordinate SNH's claim.

9.	The existence of an "equity cushion" has been labeled "the preferred test in determining whether priming of a senior lien is appropriate." *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) (citing *In re Strug-Div., LLC*, 380 B.R. 505, 513 (Bankr. Ill. 2008).  Courts regularly reject proposed DIP loans that would prime existing lenders where the Debtor failed to demonstrate an ample equity cushion.[3]

---

[3] *RTC v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552 (3d Cir. 1994) (*en banc*) (denying priming DIP financing motion and finding lender not adequately protected because bankruptcy court, among other things, erroneously considered collateral that was already encumbered by the lender to be primed in its analysis); *In re LTAP US, LLLP*, 2011 Bankr. LEXIS 667 (Bankr. D. Del. Feb. 18, 2011) (priming DIP financing motion denied where debtor had no employees and market for life settlement insurance policies was distressed); *Shaw Indus., Inc. v. First Nat'l Bank (In re Shaw Indus., Inc.)*, 300 B.R. 861 (Bankr. W.D. Pa. 2003) (priming DIP financing motion denied where the equity cushion was insufficient because it was quickly eroding (the debtor's losses doubled each year for the past three years)); *In re Stoney Creek Techs., LLC*, 364 B.R. 882 (Bankr. E.D. Pa. 2007) (priming DIP financing motion denied where there was no foundation or basis to rely on debtors' projections and the testimony was not

10. That said, an equity cushion, in and of itself, does not justify the priming of a secured interest, without further justification. As this Court has explained:

> An equity cushion analysis contains certain inherent pitfalls. It must first be determined whether "going concern" or "liquidated" value is in issue. Then, a determination highly dependent on the forensic skills of "dueling appraisers" must be made. Conceptually, making such an analysis determinative may permit a debtor who can establish an equity cushion to foolishly "let the air out" of an equity cushion, while, on the other hand, it may direct the denial of permission to a debtor who lacks an equity cushion to enter into a transaction which is demonstrably wise and resourceful.
>
> Therefore, we believe that, while the presence of an equity cushion should be a relevant factor, it should not be a determinative factor in any "adequate protection" analysis, and particularly one relating to § 364(d)(1)(B). **The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.**

*T C Props, LLC*, 2002 Bankr. LEXIS 1802, *22-23 (Bankr. D. Neb. 2002) (emphasis added) (quoting *In re Aqua Assocs.,* 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991).

11. Here, there is no valid justification for any different treatment of SNH. Discriminating between similarly-situated secured creditors that share the same lien in the Collateral under the Loan Agreement violates "[a] major goal of the Bankruptcy Code[,] to treat equal classes of creditors equally." *Stoebner v. Consumers Energy Co. (In re LGI Energy Solutions, Inc.)*, 460 B.R. 720, 732 (B.A.P. 8th Cir. 2011) (quoting *Rine & Rine Auctioneers, Inc. v. Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.)*, 74 F.3d 854, 860 (8th Cir. 1996)); *see also In re Swann*, 149 B.R. 137, 145 (Bankr. D.S.D. 1993) ("A fundamental policy of the Bankruptcy Code is equality of distribution."). Indeed, "[a] debtor has never been allowed,

---

credible to support equity cushion); *In re C.B.G., Ltd*., 150 B.R. 570, 572-73 (Bankr. M.D. Pa. 1992) (16% equity cushion not adequate to support priming lien); *In re Reading Tube Indus*., 72 B.R. 329, 333 (Bankr. E.D. Pa. 1987) (section 364 not satisfied where debtor failed to allege existence of equity cushion); *but see In re Satcon Tech. Corp.*, No. 12-12869, 2012 Bankr. LEXIS 5812 (Bankr. D. Del. Dec. 7, 2012) (priming DIP financing motion granted after presentations by both parties' experts, upon finding that lenders had at least $12.5 million equity cushion).

in bankruptcy, to pick and choose between his creditors." *In re Young*, 102 B.R. 1022, 1023 (Bankr. W.D. Mo. 1993).  Rolling up some, but not all, of the Pre-Petition Loans fails this basic test.

## RELIEF REQUESTED

For the foregoing reasons, SNH respectfully requests that the Court fashion relief consistent with this Reply.

Dated:  Omaha, Nebraska
         February 4, 2019

SHOPKO NOTE HOLDING, LLC (as successor to Spirit MTA REIT, L.P.),

By: /s/ *Brian J. Koenig*
   Brian J. Koenig, NE#23807
   KOLEY JESSEN P.C., L.L.O.
   One Pacific Place, Suite 800
   1125 South 103rd Street
   Omaha, NE  68124-1079
   (402) 390-9500
   (402) 390-9005 (facsimile)
   Brian.Koenig@koleyjessen.com

and

   Brad Eric Scheler
   Michael C. Keats
   Peter B. Siroka
   FRIED, FRANK, HARRIS, SHRIVER &
     JACOBSON LLP
   One New York Plaza
   New York, New York 10004-1980
   (212) 859-8000
   Brad.Eric.Scheler@friedfrank.com
   Michael.Keats@friedfrank.com
   Peter.Siroka@friedfrank.com

*Attorneys for Shopko Note Holding, LLC (as successor to Spirit MTA REIT, L.P.)*

**CERTIFICATE OF SERVICE**

On this 4th day of February, 2019, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

/s/ *Brian J. Koenig*
Brian J. Koenig