## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064 (TLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket Nos. 38, 335** |

### ORDER (I) ESTABLISHING THE BIDDING PROCEDURES
### FOR PLAN SPONSORS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"): (a) authorizing and approving the bidding procedures attached hereto as **Exhibit A** (the "Bidding Procedures"),[2] (b) establishing certain dates and deadlines including, the Bid Deadline, and the date of Auction, if any, (c) approving the manner of notice of the Auction, if any, and (d) granting related relief; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures or the Motion, as applicable.

that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, THE COURT HEREBY FINDS THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The bases for the relief requested in the Motion are sections 105, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9014, and Local Rule 6004-1.  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties in interest.

D.    The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; and (ii) schedule the Auction and approve the manner of notice of the Auction.

E.    The Expense Reimbursement, Work Fee, and Breakup Fee are reasonable and appropriate under the circumstances and on the terms set forth in the Bidding Procedures, including in light of the size and nature of a Transaction and comparable transactions, the commitments that will be made, and the efforts that have been and will be expended by the Acceptable Bidders, notwithstanding that a proposed Transaction may be subject to better and higher offers, and may be necessary to induce the Acceptable Bidders to pursue a Transaction, as determined by the Debtors in an exercise of their business judgment.

F.    The Bidding Procedures, incorporated herein by reference as if fully set forth in this Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates.

G.    Nothing contained herein shall prejudice or impair any Secured Creditor's right to credit bid.

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted as provided herein.

2.    All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court are overruled.

A.     **Important Dates and Deadlines.**

      3.     **Stalking Horse Bid Deadline**. February 28, 2019, at 4:00 p.m. (prevailing Central Time), is the deadline by which bids must be submitted in accordance with the Bidding Procedures in order to be considered to be selected as the Stalking Horse Bidder.

      4.     **Stalking Horse Notice**. The Debtors shall file notice on the docket of these chapter 11 cases announcing the Stalking Horse Bidder, if any, no later than 4:00 p.m. (prevailing Central Time) on March 5, 2019.

      5.     **Bid Deadline**. March 14, 2019, at 4:00 p.m. (prevailing Central Time), is the deadline by which bids to participate at the Auction as a potential higher or better offer (as well as the Deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted in accordance with the terms of the Bidding Procedures.

      6.     **Baseline Bid**. March 18, 2019, at 12:00 p.m. (prevailing Central Time), the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment (the "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders and the Notice Parties, including counsel to the official committee of unsecured creditors (the "Committee") appointed in these cases. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Winning Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the number, type, and nature of any changes to the Form Equity Commitment Letter, Form APA, and Form Plan requested by the Qualified Bidder; (b) the amount and nature of the total consideration and the sources and certainty of funds for the payment thereof; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic

4

effect of any changes to the value to be received by the Debtors' estates from the Transaction contemplated by the Baseline Bid; (e) the tax consequences of such Qualified Bid; and (f) impact to vendors, landlords, and employees.

7.    **Auction**.  March 19, 2019, at 9:00 a.m. (prevailing Eastern Time), is the date and time the Auction, if any, which will be held at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022.  The Debtors shall post notice of the date, time, and place of the Auction on the website of the Debtors' notice and claims agent, Prime Clerk, LLC, at https://cases.primeclerk.com/shopko.

**B.    Auction, Bidding Procedures, and Related Relief.**

8.    The Bidding Procedures, attached hereto as **Exhibit A**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Transaction.  Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

9.    At the Auction, each Qualified Bidder will be entitled, but will not be obligated, to submit overbids and will be entitled in any such overbids to credit bid all or a portion of the value of the secured portion of its claims within the meaning of section 363(k) of the Bankruptcy Code, subject to the limits on credit bidding set forth in the Bidding Procedures.

10.    At the Auction, the Debtors may, in consultation with the Consultation Parties: (a) select, in their business judgment, pursuant to the Bidding Procedures, the highest or otherwise best Bid and the Winning Bidder or Backup Bidder; and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtors' business judgment, is (i) inadequate, insufficient, or not the highest or best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code,

the Bankruptcy Rules, or the Bidding Procedures, or (iii) contrary to, or otherwise not in the best interests of, the Debtors' estates, affected stakeholders, or other parties in interest.

11.     No person or entity, other than an Acceptable Bidder entitled to Expense Reimbursement or a Work Fee or a Stalking Horse Bidder entitled to a Breakup Fee, in each case as determined by the Debtors in their business judgment in consultation with the Consultation Parties, shall be entitled to any expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

12.     The Expense Reimbursements and Work Fees are approved on the terms set forth in the Bidding Procedures and the Debtors are authorized, but not directed, to incur and pay the Expense Reimbursement and Work Fees if the Debtors determine, in consultation with the Consultation Parties, that paying the Expense Reimbursement or Work Fee is in the best interest of the Debtors' estates and stakeholders.  Subject to the DIP Budget, to the extent such a determination is made to pay an Expense Reimbursement or Work Fee, it or they may be paid without further action or order by the Court; *provided* that, for the avoidance of doubt, the aggregate amount of the Expense Reimbursements and Work Fees paid by the Debtors shall not exceed $1,000,000.

13.     The Breakup Fee is approved on the terms set forth in the Bidding Procedures and the Debtors are authorized, but not directed, to incur and pay the Breakup Fee in an exercise of their business judgment, in consultation with the Consultation Parties, without further action or order by the Court; *provided* that, for the avoidance of doubt, (i) the amount of the Breakup Fee shall not exceed 3% of any proposed Stalking Horse Bidder Purchase Price; (ii) such Stalking

6

Horse Bidder is not (A) the DIP Agent, (B) the Credit Agreement Primary Agent, or (C) the Term

Loan B-1 Agent; and (iii) such Stalking Horse Bidder is not an insider of the Debtors as that term

is defined in section 101(31) of the Bankruptcy Code.

## C.    **Miscellaneous.**

14.    Notwithstanding anything to the contrary contained in this Order or otherwise: (i)

nothing in this Order shall amend, modify, or impair any provision of the DIP Order or DIP Budget,

or the rights of the DIP Agent and lenders thereunder; and (ii) to the extent of any conflict between

the terms of this Order and the terms of the DIP Order, the terms of the DIP Order shall control.

15.    The failure to include or reference a particular provision of the Bidding Procedures

specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a

provision.

16.    For the avoidance of doubt, (a) any assumption and assignment of any executory

contract or unexpired lease in connection with any Transaction shall be consummated pursuant to

a separate motion filed by the Debtors, the Plan, or separate procedures governing the assumption

and assignment of executory contracts and unexpired leases approved by this Court, and (b) any

such assumption and assignment must comply with applicable bankruptcy law, including with

respect to any requirement regarding adequate assurance of future performance.

17.    In the event of any inconsistencies between this Order and the Motion and/or the

Bidding Procedures, this Order shall govern in all respects.

18.    Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Omaha, Nebraska
Dated: February 12, 2019                          /s/Thomas L. Saladino
                                                  UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064 (TLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BIDDING PROCEDURES FOR THE TRANSFER OF**
**THE DEBTORS' ASSETS OR NEW SHOPKO INTERESTS**

On January 16, 2019 (the "Petition Date"), Specialty Retail Shops Holding Corp. and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nebraska (the "Court"). Also on the Petition Date, the Debtors filed a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan"). The Plan contemplates either (a) the sale of the Debtors' assets or (b) a reorganization through the issuance and purchase of new common equity interests in the reorganized Debtors (the "New Shopko Interests") and the continued business of the Debtors (a "Transaction").

On [●], the Court entered the *Order (I) Establishing Bidding Procedures for the Plan Sponsors and (II) Granting Related Relief* (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures. Under these Bidding Procedures, the Debtors will first select the Stalking Horse Bid (as defined below) after a closed bidding process (the "Stalking Horse Bidding Process"). After announcing the Stalking Horse Bid, the Debtors will then solicit further bids culminating in an auction intended to obtain a higher or otherwise best bid for the Transaction (the "Auction").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

**Marketing Process**

A.   **Contact Parties.**

The Debtors, in consultation with Houlihan Lokey, Inc. ("Houlihan Lokey"), the Debtors' investment banker, have developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Transaction.   The list of parties includes both strategic investors and financial investors (collectively, the "Contact Parties").   The Debtors and Houlihan Lokey will contact (to the extent not already contacted) the Contact Parties to explore their interest in pursuing a Transaction.   The Contact Parties may include parties whom the Debtors or their advisors previously contacted regarding a transaction, regardless of whether such parties expressed any interest at such time in pursuing a transaction.   The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party an information package consisting of: (i) a copy of the Bidding Procedures, the Bidding Procedures Order, and any other related documents; (ii) a form confidentiality agreement (a "Confidentiality Agreement"); and (iii) such other materials as appropriate under the circumstances.

B.   **Participation Requirements.**

To receive due diligence information, including full access to the Debtors' electronic data room and additional non-public information regarding the Debtors, a party interested in consummating a Transaction (a "Potential Bidder") should deliver (or have delivered) to each of: (i) Houlihan Lokey, 225 South 6th Street, Minneapolis, Minnesota 55402, Attn: Stephen Spencer (SSpencer@HL.com), and Houlihan Lokey, 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: Sanaz Memarsadeghi (SMemarsadeghi@HL.com) and Hussein El Husseini (HElhusseini@HL.com); and (ii) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Steven Serajeddini (steven.serajeddini@kirkland.com) and Daniel Rudewicz (daniel.rudewicz@kirkland.com), and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Travis Bayer (travis.bayer@kirkland.com), Whitney Fogelberg (whitney.fogelberg@kirkland.com), Matthew Arenson (matthew.arenson@kirland.com), and Kyle Elder (kyle.elder@kirkland.com) (the "Debtors' Advisors"), the following documents (collectively, the "Preliminary Bid Documents"):

(i)   an executed Confidentiality Agreement, substantially in the form attached hereto as **Exhibit 1**, to the extent not already executed; and

(ii)   proof or other documentation acceptable to the Debtors, after consultation with the Consultation Parties, of the Potential Bidder's financial capacity (i) to close a proposed Transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of consummating the Transaction, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (with the assistance of their advisors) and (ii) to provide adequate

2

assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such Potential Bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Transaction.

Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors will determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid to be the Stalking Horse Bidder (each as defined below) and participate in the Auction, as applicable, and will provide copies of any such notices to the Notice Parties. Except as otherwise determined in the Debtors' business judgment, only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "Acceptable Bidder") may submit Bids.

Beginning on or as soon as is reasonably practicable after the Debtors determine that a Potential Bidder is an Acceptable Bidder, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room. All due diligence requests must be directed to Houlihan Lokey at the following email address: shopko@hl.com. To the extent reasonably practicable, Houlihan Lokey will also facilitate meetings between any interested Acceptable Bidder and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their reasonable discretion. The due diligence period will end on the Bid Deadline (as defined below), and, subsequent to the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information, but may provide due diligence in their discretion.

Houlihan Lokey will provide access, in the electronic data room, to a form equity commitment letter ("Form Equity Commitment Letter"), form asset purchase agreement ("Form APA") and form chapter 11 plan ("Form Plan").

The Debtors and their advisors will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' business judgment, after consultation with the Consultation Parties, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Transaction.

For any Acceptable Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, or to delay providing, any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Acceptable Bidder at such time; and *provided further* that the Debtors shall notify the Committee of any decision to withhold such information.

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors, the Committee or their respective advisors regarding such Acceptable Bidder and its contemplated transaction.

C.      **Expense Reimbursement and Work Fee.**

Upon entry of the Bidding Procedures Order, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment and subject to the DIP Budget, to agree to reimburse the reasonable and documented out-of-pocket fees and expenses of one or more Acceptable Bidders (each, an "Expense Reimbursement"), and/or agree to pay one or more Acceptable Bidders a "work fee" or other similar cash fee (each, a "Work Fee") if the Debtors reasonably determine in their business judgment that any such Expense Reimbursement or Work Fee will encourage one or more parties to submit a Qualified Bid or result in a competitive bidding and Auction process. The aggregate amount of all Expense Reimbursements and Work Fees shall not exceed $1,000,000. Pursuant to the Bidding Procedures Order, the Debtors shall be authorized to indefeasibly pay any such amounts to such Acceptable Bidders pursuant to section 363(b)(1) of the Bankruptcy Code and any such amounts paid by the Debtors to such Acceptable Bidders will not be subject to disgorgement irrespective of whether the Acceptable Bidders receiving such reimbursements or payments are ultimately the Winning Bidder as long as such Acceptable Bidder acted in good faith.

### Stalking Horse Bidding Process

Under the Stalking Horse Bidding Process, Acceptable Bidders will prepare and submit definitive documentation, and the Debtors and certain selected Acceptable Bidders will continue to negotiate the terms of such definitive documentation. At the conclusion of this process, the Debtors will select the Acceptable Bidder with the highest or otherwise best Bid to serve as the Stalking Horse Bidder (as defined below).

A.      **Stalking Horse Bid Deadline.**

Acceptable Bidders that wish to be selected as the Stalking Horse Bidder must meet the Bid Requirements (defined below) and submit a substantially final version of the Form APA or the Form Equity Commitment Letter and the Form Plan (collectively, the "Bid Documentation") to each of the Debtors' Advisors so that it is **actually received** no later than **4:00 p.m. (prevailing Central Time) on February 28, 2019** (the "Stalking Horse Bid Deadline"). The Debtors may engage in further negotiation with each of the Acceptable Bidders regarding the Bid Documentation following the Stalking Horse Bid Deadline. The Bid Documentation should be submitted both as an executed PDF and in Word version, along with a marked version of all Bid Documentation against the form provided by the Debtors.

As soon as reasonably practicable after the Stalking Horse Bid Deadline, the Debtors will evaluate the Stalking Horse Bid Documentation submitted by each Acceptable Bidder and may engage in additional negotiations to finalize such Stalking Horse Bid Documentation with one or more Acceptable Bidders in their sole discretion. The Debtors attach considerable importance to the terms and conditions set forth in the draft Transaction Documents (as defined below) and the nature and extent of any revisions thereto will be an important consideration in the evaluation of bids.

### B.    Breakup Fee.

Upon entry of the Bidding Procedures Order, the Debtors shall be further authorized, but not obligated, in an exercise of their business judgment, after consultation with the Consultation Parties, to (a) select no more than one Acceptable Bidder to act as a Stalking Horse Bidder (defined below) in connection with the Auction and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, provide for a breakup fee (the "Breakup Fee") in an amount not to exceed three percent (3%) of the proposed Purchase Price, provided that (i) such Stalking Horse Bidder is not (A) the DIP Agent, (B) the Credit Agreement Primary Agent, or (C) the Term Loan B-1 Agent; and (ii) such Stalking Horse Bidder is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code. The amount of any Expense Reimbursement or Work Fee paid to any Stalking Horse Bidder pursuant to these Bidding Procedures shall be deducted from the Breakup Fee, if payable.

### C.    Stalking Horse Notice.

Following any additional negotiations to finalize the Stalking Horse Bid Documentation, the Debtors will select the Acceptable Bidder that has submitted the highest or otherwise best Bid to serve as the stalking horse bid (such Bid, the "Stalking Horse Bid," and such Acceptable Bidder, the "Stalking Horse Bidder"). At such time, the Debtors will execute all Stalking Horse Bid Documentation with such Stalking Horse Bidder (the "Stalking Horse Agreement") and file a notice with the Court announcing the Stalking Horse Bidder (the "Stalking Horse Notice") no later than **4:00 p.m. (prevailing Central Time) on March 5, 2019**.

### Process for Additional Qualified Bids and Auction

Following the selection of a Stalking Horse Bidder, if any, the Debtors will solicit further bids intended to obtain a higher or otherwise best bid for the Transaction.

### A.    Bid Deadline.

An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in .pdf or similar format) so as to be **actually received** on or before **March 14, 2019, at 4:00 p.m. (prevailing Central Time)** (the "Bid Deadline") to:

(i)    Houlihan Lokey, 225 South 6th Street, Minneapolis, Minnesota 55402, Attn: Stephen Spencer (SSpencer@HL.com), and Houlihan Lokey, 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: Sanaz Memarsadeghi (SMemarsadeghi@HL.com) and Hussein El Husseini (HElhusseini@HL.com); and

(ii)    Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Steven Serajeddini (steven.serajeddini@kirkland.com) and Daniel Rudewicz (daniel.rudewicz@kirkland.com), and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Travis Bayer (travis.bayer@kirkland.com), Whitney

Fogelberg (whitney.fogelberg@kirkland.com), Matthew Arenson (matthew.arenson@kirland.com), and Kyle Elder (kyle.elder@kirkland.com).

**B.**     **Bid Requirements.**

Each Bid by an Acceptable Bidder must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements"):

(i)     **Purpose**.  Each Acceptable Bidder must state what the Bid is an offer by the Acceptable Bidder to purchase, including the percentage of the New Shopko Interests, if applicable.

(ii)    **Purchase Price**.  Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, including, for example, certain liabilities to be assumed by the Acceptable Bidder (the "Purchase Price").

(iii)   **Deposit**.  Each Bid must be accompanied by a cash deposit in the amount equal to 5% of the aggregate value of the proposed Purchase Price of the Bid to be held in a separate account for the benefit of the Debtors (the "Deposit").

(iv)    **Marked Agreement**.  Each Bid must include a marked version of (i) the Form APA or (ii) the Form Equity Commitment Letter and the Form Plan, in each case, together with the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Acceptable Bidder proposes to effectuate the Transaction (collectively, the "Transaction Documents").  Any modifications to the Transaction contemplated by the Form Equity Commitment Letter, Form APA, and Form Plan must be submitted both as an executed PDF and in Word version, along with a marked version of all Transaction Documents against the form provided by the Debtors.

(v)     **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction after consultation with the Consultation Parties that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid, including providing adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such Acceptable Bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Transaction.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals.  For the avoidance of doubt, funding commitments for any Acceptable Bidder's Purchase Price may be provided by one or more of the Credit Agreement Primary Agent (as defined in the Plan), the Term Loan B-1 Agent (as defined in the Plan), and the DIP Agent (as defined in the Plan).

(vi)     **Contingencies; No Financing or Diligence Outs**.  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

(vii)    **Identity**.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation.  Each Bid should also include contact information for the specific person(s) and counsel whom Houlihan Lokey and Kirkland & Ellis LLP should contact regarding such Bid.

(viii)   **Authorization**.  Each Bid must contain evidence acceptable to the Debtors that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid, execution and delivery of the Transaction Documents, and the consummation of the Transaction contemplated in such Bid.

(ix)     **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Transaction prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Transaction or the completeness of any information provided in connection therewith or the Auction, except the representations and warranties as expressly stated in the Acceptable Bidder's Transaction Documents; and (iv) the Acceptable Bidder did not engage in any collusive conduct and acted in good faith in submitting its Bid.

By submitting its Bid, each Acceptable Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid, or seeking to reopen the Auction, after conclusion of the Auction.  **The submission of a Bid shall constitute a binding and irrevocable offer to consummate the Transaction reflected in such Bid.**

**C.     Minimum Value.**

If the Debtors have filed the Stalking Horse Notice, in addition to the Bid Requirements set forth above, the Bid must provide for a Purchase Price equal to: (a) the Purchase Price set forth in the Stalking Horse Bid, plus (b) the Overbid Increment (as defined below), plus (c) the Breakup

Fee, if any (provided that such Breakup Fee must be paid in cash), plus (d) any other amounts payable under the Stalking Horse Bid to the Stalking Horse Bidder (the "Minimum Value").

**D.      Designation of Qualified Bidders.**

A Bid will be considered a "Qualified Bid," and each Acceptable Bidder that submits a Qualified Bid will be considered a "Qualified Bidder," if the Debtors, after consultation with the Consultation Parties, determine that such Bid:

(i)      satisfies the Bid Requirements set forth above;

(ii)      provides a Purchase Price that exceeds the Minimum Value; and

(iii)      is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid (as defined below), within a time frame acceptable to the Debtors and the Committee.

Within two business days after the Bid Deadline, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties a copy of each Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Acceptable Bidder shall be notified by the Debtors and, and shall have until **March 18, 2019 at 4:00 p.m. (prevailing Central Time)**, to modify its bid to increase the purchase price or otherwise improve the terms of the Bid for the Debtors; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. If no Qualified Bid is received from an Acceptable Bidder pursuant to this paragraph, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three business days after the Bid Deadline.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *in addition* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors reserve the right to work with (a) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid or (b) Qualified Bidders to aggregate two or more Qualified Bid into a single Qualified Bid prior to the conclusion of the Auction. The Debtors reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which

event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

**E.      Right to Credit Bid.**

Any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

Subject to paragraph 4.1 of the DIP Order, notwithstanding anything to the contrary contained herein and absent a further order of the Court, each of (A) the DIP Agent, (B) the Credit Agreement Primary Agent, and (C) the Term Loan B-1 Agent shall have the right to credit bid all or any portion of the aggregate amount of its applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline and complies with section 363(k) of the Bankruptcy Code; *provided* that a credit bid shall not constitute a Qualified Bid if the Bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment).

**F.      No Qualified Bids.**

If the Debtors have received no Qualified Bids other than the Stalking Horse Bid as of the Bid Deadline, then the Auction will not occur and such Qualified Bid, if any, will be deemed the Winning Bid (as defined below).  The Debtors reserve all rights to extend the Bid Deadline to such later date that the Debtors believe is necessary, in their sole discretion, to obtain additional Qualified Bids.

**G.      The Auction.**

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid, the Debtors will conduct the Auction to determine the Winning Bidder with respect to the Transaction.

No later than **March 18, 2019, at 12:00 p.m. (prevailing Central Time)**, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment (the "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders, the Committee, and the Notice Parties.  The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Winning Bid shall take into account any factors the Debtors, after consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the number, type, and nature of any changes to the Form Equity Commitment Letter, the Form APA, and the Form Plan requested by the Qualified Bidder; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's

ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the Transaction contemplated by the Baseline Bid; (e) the tax consequences of such Qualified Bid; and (f) impact to vendors, landlords, and employees (collectively, the "Bid Assessment Criteria").

Unless otherwise indicated as provided by the Bidding Procedures Order, the Auction shall take place at **9:00 a.m. (prevailing Eastern Time) on March 19, 2019**, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later date and time or location as selected by the Debtors after consultation with the Consultation Parties; *provided*, *however*, that the Auction shall not be continued more than three days without the consent of the Consultation Parties. The Auction shall be conducted in a timely fashion according to the following procedures:

(i)     **The Debtors Shall Conduct the Auction**. The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid.

Only Qualified Bidders, the Debtors, the Credit Agreement Primary Agent, the Term Loan B-1 Agent, the DIP Agent, and the Committee (and its members), and each of their respective legal and financial advisors, and any other parties specifically invited or permitted to attend by the Debtors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Except as otherwise permitted by the Debtors, only Qualified Bidders shall be entitled to bid at the Auction.

(ii)    **Terms of Overbids**. "Overbid" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

(a)    Minimum Overbid Increment. Any Overbid following the Baseline Bid or following any subsequent Prevailing Highest Bid (as defined below) shall be in increments of value (including revised treatment under the Plan) equal to 1% of the Baseline Bid, unless otherwise determined by the Debtors in an exercise of their business judgment (the "Overbid Increment").

(b)    Conclusion of Each Overbid Round. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

      (c)    <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment after consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

      (d)    <u>Announcing Highest Bid</u>.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid Round, or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria, including any impact to vendors, employees, and landlords.

(iii)    **Consideration of Overbids**.  The Debtors reserve the right, in their business judgment, after consultation with the Consultation Parties, to adjourn the Auction one or more times, to, among other things (i) facilitate discussions between the Debtors and Potential Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.

(iv)    **Closing the Auction**.  The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in their business judgment, after consultation with the Consultation Parties, to be the highest or otherwise best Qualified Bid.  Such Qualified Bid shall be declared the "<u>Winning Bid</u>" and such Qualified Bidder, the "<u>Winning Bidder</u>," at which point the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Winning Bid is conditioned upon approval by the Court of the Winning Bid.  For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law.  As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, including, as applicable, the Plan, the Plan Supplement (as defined in the Plan), and the Confirmation Order (as defined in the Plan) and, as applicable, cause such definitive documentation to be filed with the Court.

11

  (v) **No Collusion; Good-Faith *Bona Fide* Offer**. Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Winning Bidder.

**H.** **Backup Bidder.**

  (i) Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction, as determined by the Debtors in the exercise of their business judgment, after consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "Backup Bidder") until such time that the Transaction is consummated through confirmation of the Plan, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

  (ii) The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors, at the conclusion of the Auction at the same time the Debtors announce the identity of the Winning Bidder. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time that the Transaction is consummated through confirmation of the Plan. The Backup Bidder's Deposit shall be held in a separate account pending confirmation of the Plan.

  (iii) If the Winning Bidder fails to consummate the approved Transaction contemplated by its Winning Bid, the Debtors may select the Backup Bidder as the Winning Bidder, and such Backup Bidder shall be deemed a Winning Bidder for all purposes. The Debtors will be authorized, but not required, to consummate the Transaction contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Winning Bidder's Deposit shall be forfeited to the Debtors' estates, and the Debtors, on behalf of themselves and their estates, specifically reserve the right to seek all available remedies against the defaulting Winning Bidder, including, but not limited to, specific performance.

**I.** **Notice and Consultation Parties.**

Information that must be provided to the "Notice Parties" under these Bidding Procedures must be provided to the following parties: (a) counsel to the Credit Agreement Primary Agent, Wells Fargo Bank, N.A., Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Chad Simon, Esq.; and (b) proposed counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017, Attn: Robert J. Feinstein and Bradford J. Sandler and Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn: Jeffrey N. Pomerantz; and (c) proposed co-counsel to

the Committee, Goosmann Law Firm, PLC, The Advent Building, Suite 250, Omaha, NE 68118, Attn: Elizabeth M. Lally, Jeana Goosmann, and Joel Carney**.**

The term "Consultation Parties" as used in these Bidding Procedures shall mean: (a) the Credit Agreement Primary Agent; and (b) the Committee.  To the extent that any Consultation Party submits a Bid, it shall no longer be a Consultation Party unless and until it (i) withdraws such Bid, (ii) does not thereafter become a Qualified Bidder, or (iii) becomes a Qualified Bidder but elects to not participate in, to cease bidding at, or to withdraw from the Auction.

**J.**    **"As Is, Where Is".**

Consummation of any Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted or agreed to by the Debtors.  Except as specifically accepted or agreed to by the Debtors, all of the Debtors' right, title, and interest in and to the respective assets or New Shopko Interests will be transferred to the Winning Bidder free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) and/or 1123(a)(5)(D) of the Bankruptcy Code.

By submitting a Bid, each Acceptable Bidder will be deemed to acknowledge and represent that it (i) has had an opportunity to conduct adequate due diligence regarding the Transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Transaction or the completeness of any information provided in connection therewith or the Auction, except the representations and warranties as expressly stated in the Acceptable Bidder's Transaction Documents; and (iv) the Acceptable Bidder did not engage in any collusive conduct and acted in good faith in submitting its Bid.

**K.**    **Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures in their business judgment, in consultation with the Consultation Parties, in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Transaction, including:  (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.  Nothing in these Bidding Procedures shall abrogate the fiduciary duties of the Debtors.  Notwithstanding anything to the contrary herein, the Debtors, in consultation with the Consultation Parties, may elect to consummate the Transaction under section 363(f) as opposed to a plan with the Winning Bidder, but, for the avoidance of doubt, the Debtors prefer that the Transaction be accomplished through a chapter 11 plan.

**L.**   **Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures

**M.**   **Approval of Winning Bid Hearing.**

A hearing to consider confirmation of a plan or sale (the "Hearing") pursuant to which the Debtors and the Winning Bidder intend to consummate the Transaction contemplated by the Winning Bid will be held **on or prior to April 12, 2019** and otherwise in accordance with any scheduling order entered by the Court.

**The Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Hearing.  No further notice of any such continuance will be required to be provided to any party.**

**N.**   **Return of Deposit.**

The Deposit of the Winning Bidder shall be applied to the Purchase Price of such Transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more separate accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Winning Bidder and the Backup Bidder) on the date that is three business days after the Auction.

If a Winning Bidder fails to consummate a proposed Transaction because of a breach by such Winning Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Winning Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates, and the Debtors shall be free to consummate the proposed Transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

**O.**   **No Modification of Bidding Procedures.**

These Bidding Procedures may not be modified except in accordance with Section K of these Bidding Procedures.

14

## <u>Exhibit 1</u>

**Form Confidentiality Agreement**

**[Date]**

**[Addressee's Name]**
**[Addressee's Title]**
**[Buyer's Name]**
**[Buyer's Address]**

Dear **[Addressee's Name]**:

You have expressed interest in pursuing a transaction (the "Transaction") involving certain assets of Specialty Retail Shops Holding Corp. and its subsidiaries (the "Company").  You understand that prior to or during the course of negotiations in respect of the Transaction, certain information concerning the Company and/or the Company's affiliates, including, without limitation, any Information Memorandum (or similar document) prepared in connection therewith, may be disclosed to you, your affiliates and your or their directors, officers, employees and advisors ("your representatives"), either in written form or orally (the "Evaluation Material").  In consideration of the Company agreeing to make the Evaluation Material available to you or your representatives, you agree as follows:

1. No disclosure of your interest in the Transaction or the Company will be made by you or your representatives prior to the date of closing of the Transaction between you and the Company, except as may be otherwise (a) agreed upon by you and the Company or (b) required by applicable law or regulatory authority, but only after you have complied with the requirements of paragraph 5.

2. The fact that the Company is providing Evaluation Material to you, the fact that the parties have had, are having or may have discussions concerning the Transaction, and any negotiations that may occur between you and the Company shall also be deemed Evaluation Material and treated in accordance with the provisions hereof.  All Evaluation Material will be held in complete confidence and, without the Company's prior written consent, will not be disclosed, in whole or in part, to any other person (other than such of your representatives who need access to any such materials or information for purposes of your evaluating or negotiating the Transaction), nor will any Evaluation Material be used in any way directly or indirectly detrimental to the Company or its affiliates or for any purpose other than your evaluation or negotiation of the Transaction.  The term "Evaluation Material" does not include any information:

   (a) which at the time of disclosure to you or your representatives is in the public domain or which after such disclosure comes into the public domain through no fault of you or your representatives; or

   (b) which was available to you on a non-confidential basis from a source other than the Company or its advisors, provided that such source is not and was not bound by a confidentiality agreement with the Company.

3. You shall be responsible for ensuring that your representatives adhere to the terms of the undertakings of this agreement as if such persons were original parties hereto.

4.  You acknowledge that, all Evaluation Material is and shall remain the exclusive property of the Company. You and your representatives will return to the Company upon demand, or in the event you cease to be interested in pursuing the Transaction, all Evaluation Material provided to you or your representatives, including all copies thereof which may have been made by or on behalf of you or your representatives, and you shall destroy, or cause to be destroyed, all notes or memoranda or other stored information of any kind prepared by you or your representatives relating to the Evaluation Material or negotiations generally, such destruction to be certified to the Company by your officer or other authorized person supervising such destruction; provided, however, that you shall be entitled to retain one copy of the Evaluation Material if necessary to comply with applicable law, rule or regulation, provided that any retained Evaluation Material shall remain subject to the terms of this agreement for so long as it is retained.

5.  If, based on the written advice of your outside legal counsel, you or your representatives become (or if it is reasonably likely that you or they shall become) legally compelled to disclose any Evaluation Material, immediate notice of such fact shall be given to the Company so that appropriate action may be taken by the Company, and you agree to cooperate with the Company in any manner reasonably requested by the Company.

6.  Without prejudice to any other rights or remedies the Company may have, you acknowledge and agree that money damages would not be an adequate remedy for any breach of this agreement and that the Company shall be entitled to seek the remedies of injunction, specific performance and other equitable relief for any threatened or actual breach of this agreement. You agree to, and to use your best efforts to cause your representatives to, waive any requirement for the securing or posting of any bond in connection with any such remedy.

7.  You acknowledge that, except as may be set forth in a definitive, written purchase agreement in respect of the Transaction, neither the Company or its affiliates, nor any of its or their directors, officers, employees or advisors shall have made or be deemed to have made, or shall be responsible for, any representations or warranties, express or implied, with respect to the accuracy or completeness of the Evaluation Material supplied under this agreement. Further, it is acknowledged hereby by you that only those representations and warranties made by the Company in a definitive, written purchase agreement in respect of the Transaction executed and delivered by an officer of each party or other authorized person on behalf of each party shall have any force or effect.

8.  During the period of two years commencing on the date hereof, neither you nor any of your affiliates who receive Evaluation Material (including without limitation knowledge of the Transaction) shall solicit or actively seek to hire, hire or employ any person who during such period is employed by the Company, whether or not such person would commit any breach of such person's contract of service in leaving such employment.

9.  You acknowledge and confirm that no information provided, or statements made, to you or your representatives prior to, in the course of or for the purpose of negotiations, will constitute an offer by the Company or on the Company's behalf, nor will any such information or statements form the basis of any commitment, contract or agreement (including, without limitation, an agreement in principle), to sell the Company or any of its capital stock or assets. You acknowledge that you shall have no claim whatsoever against the Company or any of its directors, officers, employees, advisors, attorneys, accountants, consultants, subcontractors,

affiliates, owners or representatives arising out of or relating to any Transaction or Evaluation Material.

10. You acknowledge that the Company and the Company's advisors shall be free to conduct the process in respect of the Transaction as they in their sole discretion shall determine, including, without limitation, negotiating and/or terminating negotiations with any prospective or interested parties at any time, with or without any reason therefor.

11. You will maintain contact with the Company at all times only through Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), the Company's financial advisor, or employees or representatives of the Company specified by Houlihan Lokey, and will not attempt any direct communication with the Company or any of its employees, customers, landlords or suppliers without the express permission of Houlihan Lokey.

12. No failure or delay by the Company in exercising any right, power or privilege under this agreement shall operate as a waiver thereof, and no waiver, amendment, supplement or modification hereof shall be effective, unless in writing and signed by an officer of the Company or other authorized person on its behalf.

13. The illegality, invalidity or unenforceability of any provision hereof under the laws of any jurisdiction shall not affect its legality, validity or enforceability under the laws of any other jurisdiction, nor the legality, validity or enforceability of any other provision.

14. This agreement shall terminate two years from the date hereof; provided, however, such termination shall not be deemed to limit, modify, waive or release any right or claim the Company may have which arises out of any breach or violation hereunder by you or your representatives that may occur prior to the termination.

15. Following the consummation of a Transaction, the Company's current shareholders and their affiliates shall retain the right to publish the Company's historical sales and EBITDA information for the period during which the Company was owned by such shareholders.

16. This agreement may be executed in one or more counterparts, each of which will be deemed an original copy of this agreement, and all of which, taken together, shall be deemed to constitute one and the same agreement.

17. In the event of any litigation or proceeding relating to this agreement (including, without limitation, any litigation or proceeding in the Company's bankruptcy case, the prevailing party(ies) in such litigation or proceeding shall be entitled to recover from the non-prevailing party(ies) all such costs and expenses (including, without limitation, all court or other tribunal costs and reasonable attorneys' fees) incurred by the prevailing party(ies) in connection with such litigation or proceeding.

This agreement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein. Any action arising out of or relating to this Agreement shall be heard and determined exclusively in the United States Bankruptcy Court for the District of Nebraska or the United States District Court for the District of Nebraska, and each of the parties hereto irrevocably submits to the jurisdiction of such federal courts located in Nebraska.

Very truly yours,

**Houlihan Lokey Capital, Inc.**, solely as Company's
representative

By: _____
     Name: **[Authorized Signatory's Name]**
     Title:   **[Authorized Signatory's Title]**

Accepted and agreed to as of the date hereof:

**[BUYER'S NAME]**

By: _____
     Name: **[Authorized Signatory's Name]**
     Title:   **[Authorized Signatory's Title]**