**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) ) ) | Case No: 19-80064-TLS |
| | **)** | (Jointly Administered) |
| Debtors. | **)** | |
| | ) | |

**LIMITED OBJECTION OF DELAWARE
TRUST COMPANY, AS SUCCESSOR INDENTURE
TRUSTEE, TO DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) APPROVING ADEQUACY OF THE DISCLOSURE STATEMENT,
(II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH
RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED JOINT CHAPTER
11 PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN
CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH
<u>RESPECT THERETO, AND (V) GRANTING RELATED RELIEF</u>**

Delaware Trust Company, solely in its capacities as Successor Indenture Trustee, Registrar and Paying Agent (the "***Indenture Trustee***"), by and through its undersigned counsel, Squire Patton Boggs (US) LLP, hereby files this Limited Objection (the "***Objection***") to the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [ECF No. 53] (the "***Disclosure Statement Procedures Motion***"). In support hereof, the Indenture Trustee states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Specialty Realty Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKp Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

**I.**

**PRELIMINARY STATEMENT**

1.  The attempt by the Debtors to move forward with the plan process at this early stage of these cases is premature. These cases were commenced less than thirty (30) days ago, yet the Debtors appear intent on pushing forward with a process that contains no clear terms and is built solely around hypothetical options. The Debtors do not currently have a clear idea of whether a plan sponsor exists and, if it does, if creditors will be better off under that scenario or a straight liquidation. While the Indenture Trustee does not object to the Debtors' attempts to begin a confirmation process based on plan sponsor or the sale of their assets, such a process should not begin until the parties in these cases, including the Debtors themselves, know the identity of the plan sponsor and the key terms related thereto. Yet, the Debtors are asking this Court and their creditors to move forward with a process that is based on pure speculation and contains no specifics. This Court should not entertain such efforts at this early stage. Rather, this process should only commence when the Debtors are able to formulate and file a plan and disclosure statement containing actual details of how the Debtors plan to reorganize and satisfy creditors' claims.

2.  To the extent that the Court decides to allow the Debtors to proceed with confirmation, the Court should require that the plan documents, including the Disclosure Statement and Ballots,[2] contain all relevant information and conform to standard voting practices. Specifically, the Disclosure Statement contains no mention of the Notes (defined below) or the claims asserted by Indenture Trustee under the Indenture Documents, which claims constitute one of the largest unsecured claims in these cases. Nor does the Disclosure Statement Procedures

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Disclosure Statement (defined below) or the Disclosure Statement Procedures Motion, as applicable.

Motion contain forms of Ballots that conform to the standard practice by which holders of the Notes (the "*Noteholders*") can vote on the Plan.[3] The Debtors' plan process appears to be the product of a desire to rush through the Chapter 11 process without compliance with basic disclosure requirements. While the Indenture Trustee certainly does not want to see these cases languish, it is clear that permitting the Debtors to move forward at such an early stage of these cases will not benefit these estates or their creditors. Thus, this Court should not waste its resources, the estates' resources, or the creditors' resources, to consider the Plan and Disclosure Statement, as currently proposed.[4]

## II.

## BACKGROUND

### A.    The Issuance of the Notes

3.    On March 12, 1992, Shopko Stores, Inc., as issuer, and First Trust National Association, as indenture trustee, entered into that certain Indenture (the "*Indenture*") pursuant to which the 9.25% Senior Notes due March 15, 2022 (the "*Notes*") were issued in the principal amount of $100,000,000.

4.    The Indenture was supplemented on or about May 22, 1998, to substitute Minnesota ShopKo as the issuer of the Notes (the "*First Supplemental Indenture*"). Thereafter, the parties entered into the (i) Second Supplemental Indenture dated August 16, 2005, which revised certain terms, representations and covenants in the Indenture (the "*Second Supplemental Indenture*"),

---

[3] The Indenture Trustee understands that the Local Rules of this Court may be the reason that the Debtors did not file forms of Ballots with the Disclosure Statement Approval Motion; however, the Indenture Trustee asserts that this Court should not approve the Ballots until all parties-in-interest, including the Indenture Trustee, has had the opportunity to review and comment on the form of the Ballots and the voting mechanics.

[4] Counsel for the Indenture Trustee has reached out to counsel for the Debtors to discuss and attempt to resolve the issues raised in this Limited Objection, including the issues relating to the voting mechanics; however, as of the date hereof, those issues have yet to be resolved. Counsel will continue to try to resolve the Indenture Trustee's issues in advance of the hearing on to consider the Disclosure Statement Approval Motion.

and (ii) Third Supplemental Indenture dated May 5, 2006, pursuant to which Shopko Stores Operating Co., LLC (the "*Issuer*"), was substituted as the issuer (the "*Third Supplemental Indenture*," together with the Indenture, the First Supplemental Indenture and the Second Supplemental Indenture, the "*Indenture Documents*").  Under the Indenture Documents, the Issuer appointed U.S. Bank National Association as Trustee, Registrar and Paying Agent.

5.  Shortly after the Petition Date, on January 25, 2019, the Issuer, U.S. Bank National Association and Delaware Trust Company entered into that certain Instrument of Resignation, Appointment and Acceptance whereby U.S. Bank National Association resigned its roles under the Indenture Documents and Delaware Trust Company succeeded to those roles.

6.  The Notes are currently outstanding in the amount of $5,699,000, plus interest, fees, costs and indemnities.

**B.    Commencement of the Cases**

7.  On January 16, 2019 (the "*Petition Date*"), each of the above-captioned Debtors (collectively, the "*Debtors*"), including the Issuer, filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*").  The Debtors remain in possession of their assets as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

8.  On the Petition Date, the Debtors filed (i) the Disclosure Statement Procedures Motion, (ii) the *Disclosure Statement for the Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and its Debtor Affiliates* [ECF No. 54] (the "*Disclosure Statement*") and (iii) the

*Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and its Debtor Affiliates* [ECF No. 55] (the "**Plan**").[5]

9.  Pursuant to the Disclosure Statement Procedures Motion, the Debtors seek approval of the Disclosure Statement, the form of Ballots to be sent to parties entitled to vote on the Plan and the schedule by which this Court will consider confirmation of the Plan. *See* Disclosure Statement Procedures Motion, ¶ 1. Notwithstanding this request, the Debtors did not attach as exhibits to the motion the documents they are asking this Court to approve. *See* ECF No. 53 (referring to Schedules to the Disclosure Statement Procedures Motion but not attaching the same).

10. As with the Disclosure Statement Procedures Motion, the Debtors filed both the Disclosure Statement and the Plan on the Petition Date. Neither document appears to be complete. As discussed herein, the Disclosure Statement contains no discussion of the Notes or the Debtors' obligations thereunder. In fact, there is no meaningful discussion of the Debtors non-secured creditor claims at all and none of the filings contain material information that is necessary for creditors to adequately evaluate the Plan, as proposed.

### III.

### **OBJECTION**

11. Moving forward with the confirmation process is premature at these early stages of the Debtors' cases. The Debtors have not (and cannot) file comprehensive documents that contain material terms of the Debtors' reorganization efforts because the Debtors do not yet know which reorganization path they will choose. While the Indenture Trustee appreciates the Debtors' desires to exit these Chapter 11 cases as expeditiously as possible, the Debtors cannot be permitted to

---

[5] Late on February 12, 2019, the Debtors filed amended versions of the Plan and Disclosure Statement. Given the late filing of those documents, the Indenture Trustee has not had a chance to review and analyze those documents and such documents are not addressed in this Limited Objection.

move so fast as to ignore the basic disclosure requirements of the Bankruptcy Code. Thus, starting a confirmation process that relies on a plan that is nothing more than a "form" without any substance would be a waste of estate resources, which could ultimately impair the chances of a successful reorganization. Accordingly, the confirmation process should be postponed.

12. To the extent the Court permits the confirmation process to proceed, the Court should deny the Disclosure Statement Procedures Motion and deny approval of the Disclosure Statement because neither contain adequate information as required by the Bankruptcy Code. The Disclosure Statement Procedures Motion references material exhibits, specifically the form of Ballots, which simply were not filed.[6] Likewise, the Disclosure Statement itself is woefully deficient because it is missing material information such as (i) a discussion of the Notes and the Debtors' obligations thereunder; (ii) estimated creditor recoveries (Disclosure Statement, § IV.D. ("Summary of Expected Recoveries" chart containing only blanks instead of actual estimated recoveries)); (iii) a discussion of releases and consideration provided by non-Debtor release parties (Disclosure Statement, § IV.L); and (iv) the relevant exhibits including a liquidating analysis, valuation analysis and a best interest of creditor discussion (Disclosure Statement, § XIII.B). As a result, the Court should either adjourn the hearing to consider approval of the Disclosure Statement Procedures Motion and the Disclosure Statement or deny such approval until the Debtors can amend the documents and provide creditors with a meaningful chance to review and comment.

---

[6] The Indenture Trustee understands that the Debtors' position is that they could not file the forms of Ballots due to Local Rule 9072-1. The Indenture Trustee asserts that the Ballots, while approved by an Order granting the Disclosure Statement Procedures Motion, are material exhibits that should be reviewed by parties-in-interest in advance of the hearing on the Disclosure Statement Procedures Motion and are separate exhibits, which are separate and distinct from any proposed order granting that motion.

## IV.

## ARGUMENT

### A. Approval of the Disclosure Statement Is Premature

13. By the Debtors' own admission, they do not know how they plan to emerge from these chapter 11 cases – through a sale/liquidation process or through a reorganization by way of a plan sponsor. The path chosen by the Debtors will certainly have a material impact on creditor recoveries. Yet, the Debtors are asking this Court (and creditors) to evaluate a plan that is premised on this "either/or" scenario. The Debtors are asking this without providing any, much less adequate, information on what either scenario would mean for creditor recoveries. This simply is not what the Bankruptcy Code requires as far as adequate disclosure. It is axiomatic that a disclosure statement should give creditors adequate information regarding the proposed reorganization but the Disclosure Statement here does not come close to that. Rather, it does the opposite by providing only the most basic information without describing any real substance. Moreover, the process established by the Debtors does not appear to address the realities needed for the Noteholders to vote on the Plan but without reviewing complete documents, such as the form proposed Ballots, the Indenture Trustee cannot truly assess and respond to the Debtors' requested relief. Indeed, the Indenture Trustee recognizes that events in a bankruptcy case are often fluid and that documents, such as the Disclosure Statement and Plan, may need to be revised, but that does not mean that the Debtors should be permitted to solicit votes based on documents with little to no detail simply because the Debtors agreed to abide by certain dates at the behest of a small fraction of stakeholders. Yet, that is exactly what the Debtors are seeking from this Court

and, given the circumstances of these cases, the Court should deny the Debtors' request, at this time.

14. Instead, the Court should hold the confirmation process in abeyance while the Debtors properly market themselves for an equity sponsor. After (or near the end of that process), the Debtors can then come back to this Court and initiate a proper confirmation process with documents that contain substantive facts and adequate information. Thus, the Indenture Trustee asserts that the Disclosure Statement Procedures Motion should, at best, be adjourned to allow the Debtors to complete the marketing process.

B. **The Disclosure Statement Does Not Contain Adequate Information**

15. To the extent that the Court proceeds with consideration of the Disclosure Statement Procedures Motion and the Disclosure Statement, it should deny approval of both. The Disclosure Statement does not contain adequate information as required by Section 1125 of the Bankruptcy Code and the Disclosure Statement Procedures Motion does not contain all relevant information and exhibits for the Court and parties to review and consider.

*1. The Debtors Fail to Satisfy the Requirements of Section 1125*

16. The primary purpose of a disclosure statement is to give creditors the information necessary for them to decide whether or not to accept a proposed plan of reorganization. *See Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1342 (8th Cir. 1985); *Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*, 229 B.R. 720, 733 (W.D. Tenn. 1999), *aff'd*, 226 F.3d 746 (6th Cir. 2000); *Matter of 183 Lorraine St. Assocs.,* 198 B.R. 16, 28 (E.D.N.Y. 1996) ("[t]he purpose of the disclosure statement is to classify claims into groups and to enable these groups of creditors to be fully informed when voting whether or not to accept a proposed plan."). Section 1125(b) of the Bankruptcy Code provides that an acceptance or a rejection of a plan of

reorganization may not be solicited until after a disclosure statement approved by the Bankruptcy Court as containing "adequate information" has been prepared and distributed to creditors. Adequate information is defined as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records…that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); *see also Mabey v. Sw. Elect. Power Co., (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998). To satisfy the "adequate information" requirement of Section 1125 of the Bankruptcy Code, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991). Thus, a disclosure statement should only be approved if it contains information that would permit a reasonable person to fairly and fully assess the pros and cons of a proposed plan of reorganization and cast its vote for or against a plan on a fully informed basis.

17. Approval of a disclosure statement should be denied when the disclosure statement does not contain adequate information. *See Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 696 (4th Cir. 1989); *In re R&G Props., Inc.*, 2009 WL 2043873, at *5 (Bankr. D. Vt. July 6, 2009) (declining to approve disclosure statement where debtor failed to sustain its burden of setting forth adequate information, and disclosure statement failed to satisfy the adequate information standard); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) (holding that approval of disclosure statement should be withheld if proposed plan not contain sufficient information "so that all creditors and equity shareholders can make an intelligent and informed decision as to whether to accept or reject the plan"); *see also In re Pecht*, 53 B.R. at 768 ("[I]f the disclosure statement does not adequately explain the provisions of a plan of

reorganization . . . the court can decline to approve the disclosure statement."). "Precisely what constitutes adequate information in any particular instance will develop on a case by case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case . . . ." H.R. Rep. No. 95-595, at 409 (1977). As the legislative history surrounding the passage of Section 1125 of the Bankruptcy Code makes clear, Congress intended for bankruptcy judges to exercise a great deal of discretion when considering the "adequacy of information" provided by a disclosure statement. *In re Cajun Elec.*, 150 F.3d at 518; *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 331 (Bankr. E.D. Pa. 1987).

18. Although the type and amount of information required to be contained in a disclosure statement varies from case to case, Section 1125 of the Bankruptcy Code is biased toward more disclosure rather than less. *See, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (stating that "[b]ecause creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated"); *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3d Cir. 1988) (same). Where, as here, a disclosure statement fails to provide information material to the proffered plan, courts will deny approval of the disclosure statement. *See*, *e.g.*, *Westland Oil Dev. Corp. v. Mcorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993) (stating that "[d]isclosure is the 'pivotal' concept in chapter 11 reorganization" and denying approval of a disclosure statement because it failed to properly disclose the existence of certain pre-petition causes of action (internal citations omitted)); *In re Metrocraft Publ'g Servs., Inc.*, 39 B.R. 567, 569-71 (Bankr. N.D. Ga. 1984) (denying approval where disclosure statement omitted information relating to the value of the

debtor's machinery, fixtures and equipment, the amount of unsecured claims, the ability to collect accounts receivable, and the estimated return to creditors in a chapter 7 liquidation).

19. Given the glaring deficiencies, substantial omissions and missing information in the Disclosure Statement, however, the Indenture Trustee cannot discuss each and every missing or inadequate piece of information; instead, this Limited Objection discusses and highlights only some of the significant areas lacking in disclosure. These categories include, among other things, the following salient and seemingly-required information:

a) A discussion regarding the issuance and treatment of the Notes and the Indenture Documents as well as the mechanics for Noteholders to vote on the Plan;

b) A discussion regarding the distribution mechanics as it relates to the Noteholders and the need to comply with the terms of the Indenture Documents as well as the Debtors' ability to satisfy its other obligations under the Indenture Documents, such as the fee and expense claims that can be asserted by the Indenture Trustee;

c) A discussion or information regarding the implementation of the reorganization and restructuring itself;

d) An explanation or description of the Debtor and estate claims being released under the Plan, including the identification of such claims and the value thereof;

e) A discussion of the need or basis supporting the releases provided under the Plan and what the Debtors and estates are giving up in exchange thereof;

f) A discussion supporting the exculpation provided under the Plan and the necessity and support for the exculpation with respect to non-fiduciaries;

g) Any detail or information regarding the terms and conditions of the New Shopko Interests, including equity and governance protections, and any reserve created under the Plan;[7]

h) Any information or discussion of the material or key terms of the restructuring transaction documents and agreements, including documents and agreements to be included as part of the Plan Supplement that may have an impact on the value of the currency to be paid under the Plan; and

i) Any discussion regarding the terms of exit financing.

---

[7] The term "New Shopko Interests" refers to the new interest in a Reorganized Shopko should the Debtors elect to pursue a reorganization with a Plan Sponsor. The value of these interest may form the basis of the only recovery for the Noteholders, yet the Disclosure Statement provides no discussion on the potential value nor does it provide any information regarding factors that may impact that value, including anticipated dilution from the Management Incentive Plan, and any restrictions that may be placed on the interests. The Disclosure Statement also fails to discuss the terms of the corporate governance document and proposed shareholder agreements, which also affect the value and liquidity of the New Shopko Interests.

20. Accordingly, the Disclosure Statement cannot be approved absent material amendments and modifications. Simply put, without significant and substantial revisions that result in the inclusion of additional information, creditors cannot understand what they are being asked to support and the consequences of their vote. If the Debtors are not willing to take the time or are unable to provide adequate information, the Court should defer approval of the Disclosure Statement until the relevant parties in interest complete their diligence and analysis.

*2. The Voting Procedures Are Deficient And Inadequate*

21. Moreover, the procedures by which the Debtors seek to solicit votes on the Plan are deficient and inadequate. As filed, the Disclosure Statement Procedures Motions references "Ballots" the forms of which are allegedly set forth on Schedule 3, Schedule 4, Schedule 5, Schedule 6, Schedule 7 and Schedule 8. The form Ballots and those Schedules; however, are not attached and are not available for review and comment by the creditors. Nor are there any ballot tabulation procedures. These documents are part of the motion itself, not any proposed order and should have been filed with and included in that motion. While this issue may sound minor to the general unsecured creditor, these documents are critically important to the Indenture Trustee. By the terms of the Indenture Documents, the Indenture Trustee cannot vote on the Plan on behalf of the Noteholders. Rather, the Noteholders themselves must vote on the Plan and such voting can only occur through the use of beneficial ballots and master ballots. Such a process takes time and the Debtors, the Indenture Trustee and the Voting Agent must carefully review the forms of Ballots and the timing to ensure that the proper parties – the beneficial owners of the Notes – receive ballots in time to return those ballots to the Voting Nominees who then can submit the Master Ballot to the Voting Agent. Yet, as filed, the Disclosure Statement Procedures Motion contains none of this information. Consequently, until the form of Ballots are timely provided, and the

Indenture Trustee has a meaningful opportunity to comment thereon, the Disclosure Statement Procedures Motion should not be approved.

## V.

## **CONCLUSION**

22. For the foregoing reasons, the Indenture Trustee respectfully requests that the Court (i) adjourn consideration of the Disclosure Statement Procedures Motion and the Disclosure Statement until such a time as the Debtors are able to identify the type of reorganization that they wish to pursue and the Debtors revise the documents accordingly, or (ii) deny the Disclosure Statement Procedures Motion and the Disclosure Statement because both are incomplete and do not satisfy the requirements of Section 1125 of the Bankruptcy Code, and (iii) grant such other and further relief as this Court deems just and appropriate.

Dated: Washington, DC
February 13, 2019

SQUIRE PATTON BOGGS (US) LLP

By: *Jeffrey N. Rothleder*
Jeffrey N. Rothleder (admitted *pro hac vice*)
Christopher J. Giaimo (admitted *pro hac vice*)
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: 202-457-6000
Facsimile: 202-457-6315
Email: jeffrey.rothleder@squirepb.com
christopher.giaimo@squirepb.com

*Counsel to Delaware Trust Company, as Trustee*

## CERTIFICATE OF SERVICE

I, Jeffrey N. Rothleder, hereby certify that on this 13th day of February 2019, the foregoing was served on (i) counsel for the Debtors, (a) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, Attn: Travis Bayer and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Steven Serajeddini and (b) McGrath North Mullin & Kratz, P.C., LLO, 1601 Dodge St, Omaha, NE 68102, Attn: James Niemeier, (ii) the Office of the United States Trustee, 111 South 18th Plaza, Suite 1148, Omaha, NE 68102, Attn: Jerry L. Jensen, Esq., and (iii) and all parties receiving service through the Court's CM/ECF system.

                                                      */s/ Jeffrey N. Rothleder*
                                                      Jeffrey N. Rothleder