# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

-------------------------------------------------------- X

| | |
|---|---|
| | : Chapter 11 |
| | : |
| SPECIALTY RETAIL SHOPS HOLDING | : Case No. 19-80064-TLS |
| CORP., *et al.*,[1] | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : **Re: Docket Nos. 35, 89, and 95** |

-------------------------------------------------------- X

## FINAL ORDER
## PURSUANT TO 11 U.S.C.
## §§ 105, 361, 362, 363, 364, AND 507 AND
## FED. R. BANKR. P. 2002, 4001 AND 9014 (I)
## AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION
## TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING
## THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING
## LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
## EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO
## THE PREPETITION LENDERS, (V) MODIFYING THE AUTOMATIC STAY,
## AND (VI) GRANTING RELATED RELIEF

Upon the motion [Docket No. 35] (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") pursuant to §§ 105, 361, 362, 363, 364(c)(1),

364(c)(2) and 364(c)(3), and 364(d) of title 11 of the United States Code (the "Bankruptcy

Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended,

the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2] Capitalized terms used but not defined in this Order shall have the same meanings ascribed to such terms in the Ratification Agreement or Loan Agreement, as applicable.

Bankruptcy Court for the District of Nebraska (the "Local Rules"), *inter alia* seeking, among

other things a final order:

(1)    authorizing ShopKo Properties, LLC, a Minnesota limited liability company

("Properties"), Penn-Daniels, LLC, a Delaware limited liability company ("Penn"), ShopKo

Stores Operating Co., LLC, a Delaware limited liability company ("ShopKo Operating"),

ShopKo Holding Company, LLC, a Wisconsin limited liability company formerly known as

ShopKo Holding Company, Inc. ("ShopKo Holdco"), ShopKo Optical Manufacturing, LLC, a

Wisconsin limited liability company ("Optical"), Specialty Retail Shops Holding Corp., a

Delaware corporation formerly known as SKO Group Holding Corp. ("Parent" or "Company"),

ShopKo Institutional Care Services Co., LLC, a Delaware limited liability company ("ShopKo

Institutional"), Retained R/E SPE, LLC, a Delaware limited liability company ("Retained R/E"),

and Pamida Stores Operating Co., LLC, a Delaware limited liability company ("Pamida

Operating", and together with Properties, Penn, ShopKo Operating, ShopKo Holdco, Optical,

Parent, ShopKo Institutional and Retained R/E, each as debtor and debtor-in-possession,

individually a "Borrower" and collectively, "Borrowers") to obtain, and for ShopKo Finance,

LLC, a Delaware limited liability company ("ShopKo Finance"), SVS Trucking, LLC, a

Minnesota limited liability company ("SVS"), ShopKo Gift Card Co., LLC, a Minnesota limited

liability company ("GiftCard"), Pamida Transportation, LLC, a Nebraska limited liability

company ("Transportation"), and Place's Associates' Expansion, LLC, a Missouri limited

liability company ("Expansion", and together with ShopKo Finance, SVS, GiftCard and

Transportation, each as debtor and debtor-in-possession, individually a "Guarantor" and

collectively, "Guarantors") to guarantee, unconditionally, on a joint and several basis, post-

petition financing in the form of a revolving credit, letter of credit, and term loan facility in

accordance with the terms and conditions set forth in the Pre-Petition Loan Agreement (as defined below), as ratified and amended by that certain Ratification and Amendment Agreement dated as of January 16, 2019 (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "Ratification Agreement") a copy of which is attached hereto as **Exhibit 1** (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "Loan Agreement"), by and among the Borrowers, the Guarantors, Wells Fargo Bank, National Association, as administrative agent and collateral agent (as "Prepetition ABL Agent," "Prepetition Term Loan B Agent," "ABL Agent," "Term Loan B Agent," or "Agent," as applicable), and issuing bank (as "Issuing Bank"), the revolving loan lenders party thereto (the "Prepetition ABL Lenders or "ABL Lenders," as applicable); the term loan B lenders party thereto (the "Prepetition Term Loan B Lenders" or "Term Loan B Lenders," as applicable and, together with the term loan B-1 lenders under the Pre-Petition Loan Agreement (the "Term Loan B-1 Lenders"), the "Lenders"), and the other Financing Agreements (as defined in the Ratification Agreement), and in accordance with the order granting the Motion entered by this Court on January 18, 2019 [Docket No. 89] (the "Interim Order"), and this final order (the "Final Financing Order"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below) pursuant to §§ 364(c)(2) and 364(c)(3), and 364(d) of the Bankruptcy Code (subject to the Carve-Out and the Permitted Liens (each as defined below));

(2)    subject to Section 4.1 of this Final Financing Order, declaring that all outstanding Pre-Petition ABL Obligations shall be deemed to be Post-Petition ABL Obligations arising under and subject to the Financing Agreements, with the outstanding principal amount of all Pre-Petition ABL Obligations being deemed to be replaced and refinanced into Post-Petition ABL

Obligations., and to deem all Pre-Petition ABL Obligations with respect to Letters of Credit to be Post-Petition ABL Obligations and to have been issued or provided, as applicable, under the Loan Agreement and the other Financing Agreements;

(3)      authorizing the Debtors to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Agent, for the benefit of itself and the other Lenders, in respect of all Post-Petition Obligations (subject to the Carve-Out (as defined below));

(4)      as set forth below, subject to Section 4.1 of this Final Financing Order, approving certain stipulations by the Debtors as set forth in this Final Financing Order in connection with the Pre-Petition Loan Agreement (as each term is defined below);

(5)      authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the Financing Agreements as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable and documented fees and disbursements of the Agents' and Lenders' respective attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the applicable Financing Agreements;

(6)      as set forth below, authorizing the Debtors to use Cash Collateral and all other Pre-Petition Collateral and to provide adequate protection to the Agent and the Lenders (each in their respective capacities under the Pre-Petition Loan Documents (as defined below)) to the extent set forth herein;

(7)      as set forth below, authorizing the Debtors to provide adequate protection to the Agent and the Lenders (each in their respective capacities under the Pre-Petition Loan Documents (as defined below));

(8)      approving the Debtors' waiver of their right to assert claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code, to the extent set forth below;

(9)      modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Financing Order to the extent hereinafter set forth; and

(10)      granting related relief.

The initial hearing on the Motion having been held by this Court on January 16, 2019 (the "Interim Hearing"), and the final hearing on the Motion having been held by this Court on February 7, 2019 (the "Final Hearing") and upon the record made by the Debtors at the Interim Hearing and the Final Hearing, including the Motion, the *Declaration of Russell Steinhorst in Support of First Day Motions* (the "First Day Declaration"), the *Declaration of Stephen Spencer in Support of Debtors' Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (i) Authorizing Debtors and Debtors in Possession to Obtain Postpetition Financing, (ii) Authorizing the Debtors to Use Cash Collateral, (iii) Granting Liens and Superpriority Administrative Expense Status, (iv) Granting Adequate Protection to Prepetition Lenders, (v) Modifying the Automatic Stay, (vi) Scheduling a Final Hearing, and (vii) Granting Related Relief* (the "Spencer Declaration"), and the filings and pleadings in the above-captioned chapter 11 cases (the "Cases"), the Court having found that the relief requested in the Motion is in the best interests of

Debtors, their estates, their creditors and other parties in interest, and represents a sound exercise

of the Debtors' business judgment and is essential for the continued operation of the Debtors'

businesses; it appearing to the Court that granting the relief requested in the Motion is necessary

to avoid immediate and irreparable harm to the Debtors and their estates; and notice of the

Motion, the relief requested therein, the Interim Hearing and the Final Hearing (the "Notice")

was appropriate under the circumstances; and the Notice having been served by the Debtors in

accordance with Bankruptcy Rule 4001 and 9014 and the Local Rules on (i) counsel to the

Agent;  (ii) the office of the U.S. Trustee; (iii) the holders of the thirty (30) largest unsecured

claims, on a consolidated basis, against the Debtors' estates; (iv) the Internal Revenue Service

and applicable state taxing authorities; (v) any party that had asserted or then may have asserted

a lien in the Debtors' assets; (vi) the office of attorneys general for the states in which the

Debtors operate; (viii) the United States Attorney's Office for the District of Nebraska; (ix) all

parties who had filed a notice of appearance and request for service of papers pursuant to

Bankruptcy Rule 2002; and (x) the United States Securities and Exchange Commission and the

opportunity for a hearing on the Motion was appropriate and no other notice need be provided;

and after due deliberation sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND

CONCLUSIONS OF LAW[3]:

A.      Petition.  On January 16, 2019 (the "Petition Date"), each Debtor filed a voluntary

petition (each, a "Petition") under chapter 11 of the Bankruptcy Code.  The Debtors continue to

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the
extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the
extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B.    <u>Disposition</u>.  The Motion is hereby granted on a final basis in accordance with the terms of this Final Financing Order.  Any objections to the Motion with respect to the entry of the Final Financing Order that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

C.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    <u>Committee Formation</u>.  On January 18, 2019, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), consisting of the following seven members: (i) Hanesbrands, Inc.; (ii) Readerlink Distribution Services, LLC; (iii) Home Products International N.A.; (iv) McKesson Corp.; (v) Notations, Inc.; (vi) LCN SKO Omaha (Multi) LLC; and (vii) Realty Income Corporation. [Docket No. 95].

E.    <u>Notice</u>.  Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing and the Final Hearing, or the entry of the Interim Order and this Final Financing Order shall be required.

F.    <u>Debtors' Acknowledgments and Agreements</u>.  After consultation with their attorneys and financial advisors, and without prejudice to the rights the Committee or other parties-in-interest as and to the extent set forth in Section 4.1 of this Final Financing Order, the

Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge and agree that:

> (i)      Pre-Petition Loan Documents.  Prior to the commencement of the Cases, Agent and the Lenders made loans, advances and provided other financial accommodations to Borrowers (the "Pre-Petition Borrowers"), pursuant to the terms and conditions set forth in (1) the Pre-Petition Loan Agreement (as defined in the Ratification Agreement and referred to herein as the "Pre-Petition Loan Agreement"); and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Agent or any Lender in connection with the Pre-Petition Loan Agreement, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Loan Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition Loan Documents").

> (ii)      Pre-Petition Loan Obligations.  As of the Petition Date, the Debtors were indebted to Agent and the Lenders under the Pre-Petition Loan Documents in respect of outstanding Revolving Loans in an aggregate amount of not less than $315 million (the "Pre-Petition ABL Obligations"), plus all other Loans, Letters of Credit, Bank Products, and all other Obligations (each as defined in the Pre-Petition Loan Agreement), including the Pre-Petition Obligations owed to the Term Loan B Agent and Term Loan B Lenders (the "Pre-Petition Term Loan B Obligations"), and to the Term Loan B-1 Agent and Term Loan B-1 Lenders (the "Pre-Petition Term Loan B-1 Obligations") in an aggregate outstanding principal

amount of not less than $400 million, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Obligations", as such term is further defined in the Ratification Agreement).   The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description, in any such case, arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Final Financing Order, which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations or liens and security interest securing the same described in clause (F)(iii) below, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non- bankruptcy law.   The Debtors and their estates (a) have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Agent or Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Pre-Petition Loan Documents or Pre-Petition Obligations; and (b) have waived, discharged, and released any right to challenge any of the Pre-Petition Obligations, including the priority of the Pre-Petition Obligations, and the validity, extent, and priority of the liens securing the Pre-Petition Obligations.

(iii)　　　Pre-Petition Collateral.   As of the Petition Date, the Pre-Petition Obligations were fully secured pursuant to the Pre-Petition Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by Debtors for fair consideration and reasonably equivalent value to Agent, for the benefit of itself and the other Lenders under the Pre-Petition Loan Documents, in and upon all of the Pre-Petition Collateral (as defined in the Ratification Agreement and hereinafter referred to as the "Pre-Petition Collateral"), subject only to the Carve Out, and to the liens specifically permitted under Section 9.8 of the Pre-Petition Loan Agreement to the extent that such security interests, liens or encumbrances are (A) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date securing valid, binding and unavoidable debt permitted under the Pre-Petition Loan Documents (or perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code), and (B) senior to, have not been, and are not subject to being subordinated to Agent's and Lenders' liens on and security interests in the Pre-Petition Collateral under the Pre-Petition Loan Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "Permitted Liens").  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Agent's and Lenders' liens, claims or security interests in the Pre-Petition Collateral.

(iv)　　　Default by the Debtors. The Debtors acknowledge and stipulate that the Loan Parties are in default of their obligations under the Pre-Petition Loan Documents.

(v)　　　Proof of Claim.  The acknowledgment by Debtors of the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of Agent and

Lenders in respect of the Pre-Petition Collateral as set forth herein and in the Pre-Petition Loan

Documents shall be deemed a timely filed proof of claim on behalf of Agent and the Lenders in

these Cases.

(vi)     Intercreditor Agreement. Agent and Sun Retail Finance Holdings, LLC, a

Delaware limited liability company are parties to that certain Intercreditor Agreement dated as of

February 7, 2012 (as amended, supplemented or otherwise modified from time to time, the

"Intercreditor Agreement"), which (x) confirms the senior priority of the security interests of

Agent in the assets and properties of Borrowers and Guarantors to the security interests of Pre-

Petition Junior Lender; (y) acknowledges and confirms the subordination of all liens and claims

held by the Pre-Petition Junior Lender against each Borrower and Guarantor and the Pre-Petition

Collateral to all such liens and claims held by the Agent and Lenders, and (z) provides certain

other rights and obligations between Agent and Lenders, on the one hand, and the Pre-Petition

Junior Lender, on the other hand, relating to the Pre-Petition Collateral.

G.     Findings Regarding the Post-Petition Financing.

(i)     Post-Petition Financing.  The Debtors have requested from each of the

Agent and the Lenders, and the Agent and Lenders are willing, to extend certain loans, advances

and other financial accommodations on the terms and conditions set forth in the Interim Order,

this Final Financing Order, the Loan Agreement and the other Financing Agreements (as defined

in the Ratification Agreement), respectively.

(ii)     Need for Post-Petition Financing.  The Debtors do not have sufficient

available sources of working capital, including cash collateral, to operate their businesses in the

ordinary course of business without the financing requested in the Motion.  The Debtors' ability

to maintain business relationships with their vendors, suppliers and customers, to pay their

employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates (as defined below).  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the Agent and Lenders as set forth in the Interim Order, this Final Financing Order, the Loan Agreement, and other Financing Agreements, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor.  Accordingly, the Debtors have an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates (as defined under § 541 of the Bankruptcy Code, the "Estates") in order to maximize the value of the Estates.

(iii)     No Credit Available on More Favorable Terms.  The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estates, or liens on property of the Estates not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  The Debtors have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by each of the Agent and Lenders pursuant to the Financing Agreements.

(iv)     Budget.  The Debtors have prepared and delivered to Agent and Lenders a 13-week budget (as defined in the Ratification Agreement, the "Budget") a summary of which is attached hereto as **Exhibit 2**.  Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected cash receipts and

disbursements of the Debtors for the periods covered thereby.  The Debtors represent that the

Budget is achievable in accordance with the terms of the Financing Agreements and this Final

Financing Order.  The Agent and Lenders are relying upon the Debtors' compliance with the

Budget in accordance with Section 5.3 of the Ratification Agreement, the other Financing

Agreements, and this Final Financing Order in determining to enter into the post-petition

financing arrangements provided for herein.  For the avoidance of doubt, all references to the

Budget shall be subject in all respects to any permitted variances.  The Debtors shall provide the

Committee's advisors with the same reports delivered to the Agent under section 5.3(a) of the

Ratification Agreement at the same such reports are delivered to the Agent.

(v)      Interim Financing Order.  On January 18, 2019 [Docket No. 89], the

Debtors were authorized to obtain financing from the Agent and Lenders on an interim basis in

accordance with the terms and conditions of the Loan Agreement, the other Financing

Agreements, and the Interim Order.

(vi)      Business Judgment and Good Faith Pursuant to § 364(e).  The terms of the

Financing Agreements, the Interim Order and this Final Financing Order are fair, just and

reasonable under the circumstances, are ordinary and appropriate for secured financing to

debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent

with their fiduciary duties, and are supported by reasonably equivalent value and fair

consideration.  The terms and conditions of the Financing Agreements, the Interim Order and

this Final Financing Order have been negotiated in good faith and at arms' length by and among

the Debtors and Agent, with all parties being represented by counsel.  Any credit extended under

the terms of the Interim Order or this Final Financing Order shall be deemed to have been

extended in good faith by the Agent and Lenders, as that term is used in § 364(e) of the Bankruptcy Code.

(vii)     <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and ongoing operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(viii)     <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Final Financing Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED THAT:

Section 1.     <u>Authorization and Conditions to Financing.</u>

1.1     <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Final Financing Order.  Except as otherwise expressly provided in this Final Financing Order, any objection to the entry of this Final Financing Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2     <u>Authorization to Borrow, Guaranty, and Use Loan Proceeds</u>.  Borrowers are hereby authorized and empowered on a final basis to continue borrowing and obtaining Loans, Letters of Credit and to incur indebtedness and other Post-Petition Obligations (as defined in the Ratification Agreement and hereinafter referred to as the "<u>Post-Petition Obligations</u>" and as solely related to the Revolving Loans A and the Revolving Loans A-1, the "<u>Post-Petition ABL</u>

14

Obligations") and the Guarantors are hereby authorized to guaranty such Post-Petition Obligations, pursuant to the terms and conditions of this Final Financing Order, the Loan Agreement, and the other Financing Agreements.  Subject to the terms and conditions contained in this Final Financing Order and the Financing Agreements, Borrowers shall use the proceeds of the Loans, Letters of Credit and other credit and financial accommodations provided by Agent and Lenders under the Loan Agreement and the other Financing Agreements solely for payment of expenses set forth in the Budget and amounts owing to Agent and Lenders and Debtors' Professionals in accordance with the terms and conditions of the Financing Agreements and this Final Financing Order.

      1.3     <u>Financing Documents</u>

      (a)     <u>Authorization</u>.  Debtors are hereby authorized on a final basis, to continue performing under, and complying with, all of the terms, conditions and covenants of the Loan Agreement and the other Financing Agreements.  The Loan Agreement and the other Financing Agreements shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of such agreements, documents and this Final Financing Order.  Subject to the rights of the Committee and all other parties in interest under Section 4.1, no obligation, payment, transfer or grant of security under the Loan Agreement, the other Financing Agreements, the Interim Order or this Final Financing Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.  The Debtors are hereby authorized and directed to pay, in accordance with this Final Financing Order, the principal, interest, fees, expenses and other amounts described in the Financing Agreements as such

become due and without need to obtain further Court approval, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, exit fees, servicing fees, yield maintenance premiums, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable and documented fees and disbursements of the Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Final Financing Order or the Financing Agreements. Upon execution and delivery, the Loan Agreement and other Financing Agreements shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

(b)      Approval; Evidence of Borrowing Arrangements.    Subject to Section 4.1, all terms, conditions and covenants set forth in the Financing Agreements (including, without limitation, the Loan Agreement) are approved on a final basis to the extent necessary to implement the terms and provisions of this Final Financing Order.    Subject to Section 4.1, all such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtors, Agent and Lenders, and (b) each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Loan Agreement and the other Financing Agreements for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of

Agent's and Lenders' consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Financing Agreements.

(c)    Amendment.    Subject to the terms and conditions of the Loan Agreement and the other Financing Agreements, Debtors and Agent may amend, modify, supplement or waive any provision of the Financing Agreements (a "DIP Loan Amendment") without further approval or order of the Court, so long as  (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the Financing Agreements, increase the Maximum Credit, increase or add an additional early termination fee, prepayment or repayment premium, add specific new events of default or enlarge the nature and extent of default remedies available to Agent and Lenders following an event of default) and is undertaken in good faith by Agent, Lenders and Debtors; (b) the Debtors provide prior written notice of the DIP Loan Amendment (the "DIP Loan Amendment Notice") to (i) the U.S. Trustee, and (ii) counsel to the Committee (collectively, the "Notice Parties"), and (c) the Debtors file the DIP Loan Amendment Notice with the Court; provided, however, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such amendment, modification or supplement, and provided further that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard.  Any material DIP Loan Amendment to the Financing Agreements must be approved by the Court to be effective.

1.4    Payment of Pre-Petition Debt.    Subject to Section 4.1, the Debtors are hereby authorized to repay all Pre-Petition Obligations in accordance with the Loan Agreement, the other Financing Agreements and this Final Financing Order, including, without limitation,

Sections 1.5 and 1.6 of this Final Financing Order. For the avoidance of any doubt, the rights of the Committee with respect to the validity, extent, and priority of the Pre-Petition Obligations and the liens securing the Pre-Petition Obligations are fully reserved and preserved to the extent provided in section 4.1 of this Final Financing Order. Debtors shall provide the Committee with five (5) business days' notice prior to the repayment of the principal amount of the Pre-Petition Term Loan B Obligations or Pre-Petition Term Loan B-1 Obligations from the proceeds of the Collateral; provided, that the Debtors' failure to provide such notice to the Committee shall not affect, prejudice, modify or impair the rights Agent and the Lenders to receive and apply such proceeds in accordance with the Financing Agreements.

       1.5    Payments and Application of Payments & Collateral Proceeds; Gradual Roll-Up. The Debtors are hereby authorized to make all payments and transfers of Estate property to the Agent as provided for, permitted and/or required under the Loan Agreement and the other Financing Agreements, which payments and transfers shall not be avoidable or recoverable from the Agent or any Lender under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. Additionally, and further subject to Section 4.1, (a) all proceeds of the Collateral (as defined herein) received by the Agent or any Lender, and any other amounts or payments received by the Agent or any Lender in respect of the Post-Petition Obligations, may be applied or deemed to be applied by the Agent, in its discretion, first to the indefeasible repayment in full of the Pre-Petition ABL Obligations, and then in repayment of the Post-Petition ABL Obligations, all in accordance with the Loan Agreement, the other Financing Agreements and this Final Financing Order; and (b) all Pre-Petition ABL Obligations outstanding on the date of this Final Financing Order shall be

deemed to be Post-Petition ABL Obligations arising under and subject to the Financing Agreements, with the outstanding principal amount of all Pre-Petition ABL Obligations being deemed to be replaced and refinanced into Post-Petition ABL Obligations. For the avoidance of doubt, the roll-up described in this paragraph shall not apply to the Pre-Petition Term Loan B Obligations or Pre-Petition Term Loan B-1 Obligations. Without limiting the generality of the foregoing, the Debtors are authorized without further order of this Court to pay or reimburse Agent and the Lenders for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Agent or the Lenders in connection with the financing transactions as provided in this Final Financing Order and the Financing Agreements, all of which shall be and are included as part of the principal amount of the Post-Petition Obligations and secured by the Collateral (as defined herein).

1.6     Proceeds of Avoidance Actions; Commercial Tort Claims. Notwithstanding anything to the contrary contained in this Final Financing Order or otherwise, unless and until all Pre-Petition ABL Obligations (if any), Post-Petition Obligations, the Post-Petition Superpriority Claim (defined below), and any Pre-Petition Adequate Protection Superpriority Claim (defined below) have been indefeasibly paid and satisfied in full in accordance with the terms of the Loan Agreement and other Financing Agreements, all proceeds and/or property received or recovered as a result of any Avoidance Actions or commercial tort claims (collectively, "Litigation Proceeds") shall be deposited into a segregated account maintained by the Debtor (the "Litigation Proceeds Account") and not used for any payment or distribution of any kind to any party or creditor other than (i) first, to the Agent for the indefeasible repayment in full of all Pre-Petition ABL Obligations (if any), Post-Petition

Obligations, the Post-Petition Superpriority Claim, and any Pre-Petition Adequate Protection Superpriority Claim in accordance with the terms of the Loan Agreement and other Financing Agreements, and (ii) second, following the indefeasible repayment in full of all Pre-Petition ABL Obligations (if any), Post-Petition Obligations, the Post-Petition Superpriority Claim, and any Pre-Petition Adequate Protection Superpriority Claim in accordance with the terms of the Loan Agreement and other Financing Agreements, shall vest with the Debtors.  The Debtors shall provide the Agent and Committee with five (5) business days' notice prior to the disbursement of Litigation Proceeds from the Litigation Proceeds Account; provided, that the Debtors' failure to provide such notice to the Committee shall not affect, prejudice, modify or impair the rights Agent and the Lenders to receive and apply such proceeds in accordance with the Financing Agreements.

       1.7      Continuation of Pre-Petition Procedures.  Except to the extent expressly set forth in the Financing Agreements, all pre-petition practices and procedures for the payment and collection of proceeds of the Collateral (as defined herein), the turnover of cash, the delivery of property to the Agent and the Lenders, including the Deposit Account Control Agreements (as such term is defined in the Loan Agreement) and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Cases.

       1.8      Chubb.  For the avoidance of doubt and notwithstanding anything herein or in the Financing Agreements to the contrary (including, without limitation, any other provision that purports to be preemptory or supervening), (i) to the extent ACE American Insurance Company, Federal Insurance Company, and/or any of their affiliates (collectively, and together with each of their successors "Chubb") had valid, enforceable, perfected and non-

avoidable liens and/or security interest on the Collateral as of the Petition Date, which liens and/or security interests were senior to the liens and/or security interests of each of the Lenders, such liens and/or security interests shall be senior to any liens and/or security interests granted pursuant to this Final Financing Order, and (ii) this Final Financing Order does not grant the Debtors any right to use any property (or proceeds thereof, except to the extent of any reversionary interest the Debtors may have in such proceeds) held by Chubb as collateral to secure obligations under insurance policies and related agreements. Nothing set forth in this paragraph 1.7 shall operate as a waiver of the rights, if any exist under applicable law, of the Debtors and their estates, Agent and Lenders, the Committee, or any other third party from challenging or otherwise objecting to the validity, priority, or extent of the liens and security interests of Chubb or any claims relating thereto, and any and all such rights shall be reserved.

1.9   _Payless Inventory_.   For the avoidance of doubt, and notwithstanding anything to the contrary in this Final Financing Order,  the Pre-Petition Replacement Lien and the Post-Petition Lien granted pursuant to this Final Financing Order shall not prime any Permitted Liens of Payless ShoeSource Inc. ("_Payless_") on the Payless inventory in the possession of the Debtors (the "_Payless Inventory_") pursuant to that certain License Agreement, dated July 23, 1999, between Shopko Stores, Inc. and Payless (as may be amended, modified, or supplemented from time to time, the "_1999 License Agreement_") and the License Agreement (Washington Shopko Big Box Stores) between ShopKo Stores Operating Co. and Payless (as may be amended, modified, or supplemented from time to time, the "Washington License Agreement" and together with the 1999 License Agreement, the "Payless License Agreements"). The Debtors are parties to the foregoing Payless License Agreements and are authorized to and shall remit sale proceeds of the Payless Inventory on which Payless holds a Permitted Lien, to

Payless in the ordinary course of business and pursuant to the express terms of the Payless License Agreements.

Section 2.    Post-Petition Lien; Superpriority Administrative Claim Status.

2.1    Post-Petition Lien.

(a)    Post-Petition Lien Granting.  To secure the prompt payment and performance of any and all Post-Petition Obligations (as defined in the Loan Agreement) of Debtors to the Agent and Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Agent, for the benefit of itself and the other Lenders, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of any of the Debtors' Estates may have (but subject to the Carve-Out (as defined below) and the Permitted Liens), in and upon all of the Collateral (as defined in the Loan Agreement and referred to herein as the "Collateral").  For the avoidance of doubt, "Collateral" does not include (i) any of the Debtors' unexpired real property leases to the extent that such unexpired leases prohibit the non-consensual grant of security interests or liens in such unexpired leases (in which case, the Collateral shall include the proceeds of such unexpired leases), (ii) claims or causes of action arising in or related to transfers or obligations avoided or actions maintained or taken pursuant to the Bankruptcy Code, applicable law or otherwise (the "Avoidance Actions") or commercial tort claims, including, without limitation, sections 542, 544, 545, 547, 548, 550, 551, or 553 of the Bankruptcy Code, provided that, the Collateral shall include any proceeds recovered relating to or arising from such Avoidance Actions and commercial tort claims or (iii) any funds held in trust by the Debtors that are not property of the Debtors' estates.

(b)    <u>Lien Priority in Collateral</u>.    The liens and security interests of Agent and Lenders granted under the Financing Agreements and this Final Financing Order in the Collateral securing all Post-Petition Obligations (as defined in the Loan Agreement) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that Agent's and Lenders' liens on and security interests in the Collateral shall be subject only to (a) Permitted Liens, and (b) the Carve-Out (as defined below).

(c)    <u>Right of Repayment</u>.    The right of Agent and Lenders to repayment in accordance with the Financing Agreements and this Final Financing Order from the sale or other disposition of the Collateral, or any proceeds thereof, shall be first and senior in priority to all other rights of repayment of every kind, nature, and description (other than the Carve-Out).

(d)    <u>Post-Petition Lien Perfection</u>.    This Final Financing Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to a Deposit Account Control Agreement or holding a Blocked Account (as defined in the Loan Agreement) or other depository account consisting of Collateral (a "<u>Perfection Act</u>").    Notwithstanding the foregoing, if Agent, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then Agent is authorized to

perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Final Financing Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Agent may choose to file, record or present a certified copy of this Final Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Final Financing Order in accordance with applicable law.  Should Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Financing Order.

(e)    Nullifying Pre-Petition Restrictions to Post-Petition Financing. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Financing Agreements, any provision that restricts, limits or impairs in any way any Debtor from granting Agent security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Financing Agreements or this Final Financing Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the Financing Agreements, shall not (a) be effective and/or enforceable against any such

Debtor(s), Agent or Lender(s), as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Agent and Lenders pursuant to this Final Financing Order or the Financing Agreements, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

2.2   <u>Superpriority Administrative Expenses</u>.  For all Post-Petition Obligations now existing or hereafter arising pursuant to this Final Financing Order, the Financing Agreements or otherwise, Agent, for the benefit of itself and the other Lenders, is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors (other than the Carve-Out), whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (other than the Carve-Out), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof (the "<u>Post-Petition Superpriority Claim</u>").

2.3   <u>Carve-Out</u>.

(a)   <u>Carve-Out</u>.  As used in this Final Financing Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under

section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Carve-Out"); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and, the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first business day following delivery by the Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").[4] For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the Post-Petition Obligations under the Loan Agreement, respectively, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

---

[4] Notwithstanding the foregoing, up to $500,000 of the Post-Carve Out Trigger Notice Cap may be used to pay Allowed Professional Fees of Professional Persons incurred prior to the delivery of a Carve Out Trigger Notice to the extent such Allowed Professional Fees exceed the Professional Fee Carve Out Cap (as defined below).

(b)      Fee Estimates.   Not later than 7:00 p.m. New York time on the third

business day of each week starting with the first full calendar week following the Closing Date,

each Professional Person shall deliver to the Debtors a statement setting forth a good-faith

estimate of the amount of fees and expenses incurred during the preceding week by such

Professional Person (through Saturday of such week, the "Calculation Date") (collectively,

"Estimated Fees and Expenses"), along with a good-faith estimate of the cumulative total amount

of unreimbursed fees and expenses incurred through the applicable Calculation Date and a

statement of the amount of such fees and expenses that have been paid to date by the Debtors

(each such statement, a "Weekly Statement"); provided, that within one business day of the

occurrence of the Termination Declaration Date (as defined below), each Professional Person

shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate

of the amount of fees and expenses incurred during the period commencing on the calendar day

after the most recent Calculation Date for which a Weekly Statement has been delivered and

concluding on the Termination Declaration Date.   If any Professional Person fails to deliver a

Weekly Statement within three calendar days after such Weekly Statement is due, such

Professional Person's entitlement (if any) to any funds in the Carve Out Accounts (as defined

below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the

applicable period(s) for which such Professional Person failed to deliver a Weekly Statement

covering such period shall be limited to the aggregate unpaid amount of Allowed Professional

Fees included in the Budget (as defined in the Ratification Agreement, the "Budget") for such

period for such Professional Person; provided, that such Professional Person shall be entitled to

be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees

included in the Budget for such period for such Professional Person from a reserve to be funded

by the Debtors from all cash on hand as of such date and any available cash thereafter held by any Debtor pursuant to paragraph 2.3(c) below.  Any deemed draw and borrowing pursuant to paragraph 2.3(c)(i)(x) for amounts under paragraph 2.3(a)(iii) above shall be limited to the greater of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses included in such Weekly Statements timely received by the Debtors prior to the Termination Declaration Date *plus*, without duplication, and (II) the aggregate unpaid amount of Estimated Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to the period through and including the Termination Declaration Date, and (y) the aggregate unpaid amount of Allowed Professional Fees included in the Budget for the period prior to the Termination Declaration Date (such amount, the Professional Fee Carve Out Cap").  For the avoidance of doubt, the Agent shall be entitled to maintain at all times a reserve (the "Carve-Out Reserve") in an amount (the "Carve-Out Reserve Amount") equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Budget at the applicable time, *plus* (ii) the Post-Carve Out Trigger Notice Cap, *plus* (iii) an amount equal to the amount of Allowed Professional Fees set forth in the Budget for the following week occurring after the most recent Calculation Date, *plus* (iv) the amounts contemplated under paragraph 2.3(a)(i) and 2.3(a)(ii) above.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the Closing Date, the Debtors shall deliver to the ABL Agent or Term Loan B Agent a report setting forth the Carve-Out Reserve Amount as of such time  (the "Fee Report"), and, in setting the Carve-Out Reserve, the Agent or Lenders shall be entitled to rely upon such reports in accordance with the Loan Agreement.  Prior to the delivery

of the first report setting forth the Carve-Out Reserve Amount, the Agent shall calculate the Carve-Out Reserve Amount by reference to the Budget for subsection (i) of the Carve-Out Reserve Amount.

(c)    Carve Out Reserves. The delivery of each Fee Report shall be accompanied by a formal borrowing request through the CEO portal and shall be (i) deemed a draw request and notice of borrowing by the Debtors for Revolving Loans under the Loan Agreement in an amount equal to the difference between (a) the current balance of the Pre-Carve Out Trigger Notice Reserve (as defined below) and (b) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors (as reflected in the Fee Report), and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Budget at the applicable time; and (ii) a direction from the Debtors to Agent to promptly wire the proceeds of such draw request to the Pre-Carve Out Trigger Notice Reserve (as defined below); *provided* that, upon the foregoing funding, the Agent and Lenders shall have no further obligation to fund the Pre-Carve Out Trigger Notice Reserve on account of any Allowed Professional Fees incurred through the Calculation Date for the most recent Fee Report delivered in accordance with Section 2.3(b) above.  On the day on which a Carve Out Trigger Notice is given by the Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall be deemed a draw request and notice of borrowing by the Debtors for Revolving Loans under the Loan Agreement in an amount equal to the sum of (x) the amounts set forth in paragraphs (a)(i) and (a)(ii), above, and (y) the then unpaid amounts of the Allowed Professional Fees up to the Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute Revolving Loans), and shall also constitute a demand to the Debtors to

utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable Revolving Loans pursuant to the foregoing clause of this paragraph (c)). The Debtors shall deposit and hold such amounts in a segregated account at the Agent (or such other institution as the Agent and the Debtors agree) in trust exclusively to pay such unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve"). On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for (1) Revolving Loans under the Loan Agreement in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute Revolving Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to Post-Carve Out Trigger Notice Cap (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable Revolving Loans pursuant to the foregoing clause of this paragraph (c)). The Debtors shall deposit and hold such amounts in a segregated account at the Agent in trust exclusively to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves"). On the third business day following the Termination Declaration Date and the deemed requests for the making of Revolving Loans as provided in this paragraph (c), notwithstanding anything in the Loan Agreement to the contrary, including with respect to (1) the existence of a Default or Event of Default, (2) the failure of the Debtors to satisfy any or all of the conditions precedent for the making of any Revolving Loans under the Loan Agreement, (3) any termination of the Commitments following an Event of Default, or (4)

the occurrence of the Maturity Date, each Lender with an outstanding Commitment shall make available to the Agent, as applicable, such Lender's pro rata share of such Loans, as applicable. For the avoidance of doubt, the Carve Out Reserves shall constitute the primary source for payment of Allowed Professional Fees entitled to benefit from the Carve Out, and any lien priorities or superpriority claims granted pursuant to this Final Financing Order to secure payment of the Carve Out shall be limited to any shortfall in funding as provided below.

        (d)      Application of Carve Out Reserves. (i)  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in subparagraphs (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap (other than amounts up to $500,000 to the extent the Pre-Carve Out Amounts exceed the Professional Fee Carve Out Cap), until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed *first* to the Agent on account of the applicable Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing Bank), and *thereafter*  to the Prepetition ABL Lenders in accordance with their rights and priorities as of the Petition Date.

        (ii)      All funds in the Post-Carve Out Trigger Notice Reserve (other than up to $500,000, which may be used to pay Pre-Carve Out Amounts to the extent they exceed the Professional Fee Carve Out Cap) shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts").  If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii),

below, all remaining funds shall be distributed *first* to the Agent on account of the applicable Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing Bank), and *thereafter* to the Prepetition ABL Lenders in accordance with their rights and priorities as of the Petition Date.

(iii)    Notwithstanding anything to the contrary in the Financing Agreements or this Final Financing Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph (c), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making any payments to the ABL Agent or the Prepetition ABL Lenders, as applicable.

(iv)    Notwithstanding anything to the contrary in the Financing Agreements or this Final Financing Order, following the third business day after delivery of a Carve Out Trigger Notice, the ABL Agent, the Prepetition ABL Agent, the Term Loan B Agent, and the Prepetition Term Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid as provided in paragraphs (ii) and (iii) above.

(v)    Notwithstanding anything to the contrary in this Final Financing Order, (i) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (ii)

subject to the limitations with respect to the ABL Agent, ABL Lenders, Prepetition ABL Agent and Prepetition ABL Lenders set forth in paragraph (b), above, in no way shall the Initial Budget, any Approved Budget, Annual Operating Forecast, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Loan Agreement, the Carve Out shall be senior to all liens and claims securing the Loan Agreement, the Adequate Protection Liens, and the Diminution in Value claims, and any and all other forms of adequate protection, liens, or claims securing the Post-Petition Obligations or the Pre-Petition Obligations.

(d)    No Direct Obligation To Pay Allowed Professional Fees.  The Agent and the Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Financing Order or otherwise shall be construed to obligate the Agent or the Lenders, or any Issuing Bank, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out; *provided* that, upon the funding in the first sentence of Section 2.3(c) above, the Agent and Lenders shall have no further obligation to fund the Pre-Carve Out Trigger Notice Reserve on account of any Allowed Professional Fees incurred through the Calculation Date for the most recent Fee Report delivered in accordance with Section 2.3(b) above.

(f)      <u>Payment of Carve Out On or After the Termination Declaration Date</u>.   Any

payment or reimbursement made on or after the occurrence of the Termination Declaration Date

in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-

for-dollar basis.   Any funding of the Carve Out shall be added to, and made a part of, the

Obligations secured by the Post-Petition Collateral and shall be otherwise entitled to the

protections granted under this Final Financing Order, the Financing Agreements, the Bankruptcy

Code, and applicable law.

2.4      <u>Payment of Carve-Out</u>.

Payment from the Carve-Out, whether by or on behalf of the Agent or any

Lender, shall not and shall not be deemed to reduce the Post-Petition Obligations, and shall not

and shall not be deemed to subordinate any of any of Agent's or Lender's liens and security

interests in the Pre-Petition Collateral, any other Collateral, the Pre-Petition Adequate Protection

Superpriority Claim (as defined below), or the Post-Petition Superpriority Claim to any junior

pre- or post-petition lien, interest or claim in favor of any other party.

2.5      <u>Excluded Professional Fees</u>.

(a)      Notwithstanding anything to the contrary in this Final Financing

Order, neither the proceeds of Collateral or any Loans, Letters of Credit or any other credit or

financial accommodations provided under or in connection with the Financing Agreements shall

be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any

Professional in connection with any of the following:

(i)      an assertion or joinder in any claim, counter-claim, action,

proceeding, application, motion, objection, defense or other contested matter seeking any

order, judgment, determination or similar relief: (A) challenging the legality, validity,

priority, perfection, or enforceability of (I) the Pre-Petition Obligations or Agent's and any Lender's liens on and security interests in the Pre-Petition Collateral, or (II) the Post-Petition Obligations or Agent's or any Lender's liens on and security interests in the Collateral; (B) invalidating, setting aside, avoiding, recharacterizing or subordinating, in whole or in part, (I) the Pre-Petition Obligations or the Agent's and Lenders' liens on and security interests in the Pre-Petition Collateral, or (II) the Post-Petition Obligations or Agent's or Lenders' liens on and security interests in the Collateral; or (C) preventing, hindering or delaying Agent's or Lenders' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of the Loan Agreement, the Financing Agreements, and this Final Financing Order;

(ii)     a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code) without the prior written consent of Agent;

(iii)     a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the Bankruptcy Code or otherwise incur Indebtedness (as defined in the Loan Agreement) without the prior written consent of Agent (except to the extent permitted under the Financing Agreements);

(iv)     the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Agent or any Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or

interest or disgorge any payments under chapter 5 of the Bankruptcy Code or any applicable state law equivalents;

(v)    the cost of investigation into any claims against Agent or any Lender arising under or in connection with the Pre-Petition Loan Documents in excess of $150,000; or

(vi)    any act which has or could directly, materially and adversely modify or compromise the rights and remedies of Agent or any Lender under this Final Financing Order, or which directly results in the occurrence of an Event of Default under this Final Financing Order or any Financing Agreements.

2.6    Limited Use of Cash Collateral; Adequate Protection.

(a)    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Financing Order, the Loan Agreement, the Financing Agreements, and in accordance with the Budget, Borrowers shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code)  subject to the liens and security interests granted to the Agent and Lenders for the period commencing on the date of this Final Financing Order and terminating upon the date on which the Agent delivers an Enforcement Notice (as defined below) to counsel for the Debtors, counsel for the Committee, and the U.S. Trustee, subject to the liens and security interests granted to the Agent and the Lenders; *provided* that during the Default Notice Period (as defined herein) the Debtors may use Cash Collateral solely for the following amounts and expenses: (i) to fund the Carve Out Reserves, as set forth in paragraph 2.3 above; and (ii) to meet payroll obligations and, as agreed by the Agent, in its sole discretion, to pay expenses critical to the administration of the Debtors' estates. Nothing in this Final Financing Order shall authorize the disposition of any assets of the Debtors or their Estates

outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Financing Order, the Financing Agreements and in accordance with the Budget.

(b)     Replacement Liens.  As adequate protection for the diminution in value of their interests in the Collateral (including Cash Collateral) on account of the Borrowers' use of such Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out on a dollar-for-dollar basis (collectively, the "Diminution in Value"), the Agent, for the benefit of itself and the Lenders, is by this Final Financing Order hereby granted, on a final basis, pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "Pre-Petition Replacement Lien").   The Pre-Petition Replacement Lien shall be junior and subordinate only to (A) the Carve-Out (B) the Permitted Liens, and (C) Agent's and Lenders' liens on the Collateral to secure the Post-Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)     Section 507(b) Priority Claims.  As adequate protection for the Diminution in Value, the Agent, for the benefit of itself and Lenders, is by this Final Financing Order hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in each of the Cases and any successor bankruptcy cases (the "Pre-Petition Adequate Protection Superpriority Claim").   The Pre-Petition Adequate Protection Superpriority Claim shall be junior only to (A) the Carve-Out, and (B) the Post-Petition Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims

against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)   <u>Adequate Protection Payments and Protections</u>.   As further adequate protection (the "<u>Adequate Protection Payments</u>") for the Diminution in Value, the Debtors are by this Final Financing Order authorized and directed to provide adequate protection to the Agent and Lenders in the form of payment in cash (i) of the reasonable fees, expenses, and disbursements (including without limitation, the reasonable and documented fees, expenses, and disbursements of counsel and third-party consultants and other vendors, including without limitation, financial advisors and auditors) incurred by the Agent arising prior to the Petition Date, and (ii) the reasonable fees, expenses, and disbursements (including without limitation, the fees, expenses, and disbursements of counsel and third-party consultants and other vendors, including without limitation, financial advisors and auditors) incurred by the Agent arising subsequent to the Petition Date.

Section 3.   <u>Default; Rights and Remedies; Relief from Stay</u>.

3.1   <u>Events of Default</u>.   The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under this Final Financing Order: (a) any Debtor's failure to perform, in any respect, any of their obligations under this Final Financing Order; (b) any Debtor's failure to perform, in any respect, any of their obligations under the Interim Order prior to the date of this Final Financing Order; or (c) an "Event of Default" under the Loan Agreement or any of the other Financing Agreements (except for an Event of Default under Section 5.4(m) of the Ratification Agreement, neither of which shall not be considered an "Event of Default").

3.2   <u>Rights and Remedies upon Event of Default</u>.   Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Final Financing Order, the Loan Agreement and

the other Financing Agreements, and (b) the Agent shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Final Financing Order or any Financing Agreement, as applicable, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Loans or provide or arrange for Letters of Credit on behalf of Debtors, setting off any Obligations with Collateral or proceeds in Agent's or any Lender's possession, and enforcing any and all rights with respect to the Collateral.  Agent and Lenders shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3    Expiration of Loan Commitment.    Upon the expiration of Borrowers' authority to borrow or otherwise obtain other credit accommodations from Agent and Lenders pursuant to the terms of this Final Financing Order and the Financing Agreements (except if such authority shall be extended with the prior written consent of Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by Agent or any Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Final Financing Order, all of the Post-Petition Obligations shall immediately become due and payable and Agent and Lenders shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtors or permit the use of Cash Collateral.

3.4    Modification of Automatic Stay.    The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court

or applicable law are hereby modified without further notice, application or order of the Court to

the extent necessary to permit Agent and each Lender to perform any act authorized or permitted

under or by virtue of this Final Financing Order or the Financing Agreements, as applicable,

including, without limitation, (a) to implement the post-petition financing arrangements

authorized by this Final Financing Order and pursuant to the terms of the Financing Agreements,

(b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right

or claim in the Collateral, (c) to assess, charge, collect, advance, deduct and receive payments

with respect to the Pre-Petition Obligations or the Post-Petition Obligations, as applicable,

including, without limitation, all interests, fees, costs and expenses permitted under the

Financing Agreements (subject to Section 5.12 of this Final Financing Order) and apply such

payments to the Pre-Petition Obligations or Post-Petition Obligations pursuant to the Financing

Agreements and/or this Final Financing Order, as applicable, and upon an Event of Default, (d)

declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral

and (e) to take any other action and exercise all other rights and remedies provided to it by this

Final Financing Order, the Financing Agreements or applicable law other than those rights and

remedies against the Collateral upon the expiration of the Default Notice Period (as defined

below).  In addition, and without limiting the foregoing, solely upon the occurrence of an Event

of Default and after providing five (5) business days (the "Default Notice Period") prior written

notice (the "Enforcement Notice") to (i) counsel for the Debtors, (ii) counsel for the Committee,

and (iii)  the U.S. Trustee, the Agent, acting on behalf of itself and the Lenders, without further

notice, application or order of the Court, shall be entitled to take any action and exercise all

rights and remedies provided to it by this Final Financing Order, the Financing Agreements or

applicable law that Agent may deem appropriate in its sole discretion to proceed against and

realize upon the Collateral or any other assets or properties of Debtors' Estates upon which the Agent, for the benefit of itself and the applicable Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations. Notwithstanding anything to the contrary, any action that Agent is otherwise permitted to take pursuant to this Final Financing Order to (i) terminate the commitments under the Financing Agreements, (ii) accelerate the Loans, (iii) send blocking notices or activation notices pursuant to the terms of any Deposit Account Control Agreement, (iv) repay any amounts owing in respect of the Obligations (including, without limitation, fees, indemnities and expense reimbursements) and (v) cash collateralize Letters of Credit and/or Bank Products issued pursuant to the Financing Agreements, in each case, shall not require any advance notice to the Debtors.   During the Default Notice Period, the Debtors and the Committee shall be entitled to seek an emergency hearing, and the Agent, and Lenders shall consent to such emergency hearing, within the Default Notice Period with the Court; *provided* that the sole issue that may be raised by the Debtors are whether an Event of Default has occurred and/or is continuing, and the Debtors hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the Agents or the Lenders set forth in this Final Financing Order or the Financing Agreements.

Section 4.        Representations; Covenants; and Waivers.

4.1    Objections to Pre-Petition Obligations.   Notwithstanding anything to the contrary in this Final Financing Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition

Obligations as of the Petition Date, or (b) the extent, legality, validity, perfection or enforceability of Agent's and Lenders' pre-petition liens and security interests in the Pre-Petition Collateral shall be properly filed with the Court by the Committee on or before the earlier of (i) sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, as such date may be extended by this Court for good cause shown pursuant to an application filed by the Committee prior to the expiration of such period and (ii) the entry of an order in any of the Chapter 11 Cases confirming a plan of reorganization or liquidation pursuant to section 1129 of the Bankruptcy Code; provided, however, that nothing herein shall permit any party to challenge the extent or validity of the Post-Petition Obligations for any disbursements in excess of the Pre-Petition Obligations.  If any such Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Objection, then nothing in this Final Financing Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Obligations or Agent's or Lenders' pre-petition liens on the Pre-Petition Collateral.  If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (i) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Agent's and Lenders' pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Carve-Out and Permitted Liens, and (ii) the Agent and the Lenders, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all

claims and causes of action related to or arising out of the Pre-Petition Loan Documents and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.  Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Agent or any Lenders in connection with all post-petition Loans and Letters of Credit, and any other post-petition financial and credit accommodations provided by Agent and the Lenders to Debtors in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Final Financing Order and the Financing Agreements.

4.2    Debtors' Waivers.   Prior to the indefeasible payment in full of all Obligations on terms and conditions satisfactory to Agent, the Debtors irrevocably waive any right that they may have:  (a) to use Cash Collateral of Agent and Lenders under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Final Financing Order or as may be otherwise expressly permitted pursuant to the Financing Agreements, (c) to challenge the application of any payments authorized by this Final Financing Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, (d) to propose, support or have a (x) plan of reorganization that is either inconsistent with the Ratification Agreement or does not provide for the indefeasible payment in cash in full and satisfaction of all Pre-Petition ABL Obligations, Post-Petition ABL Obligations, or Pre-Petition Term Loan B Obligations or (y) a plan of liquidation that is either inconsistent with the Ratification Agreement or does not provide for the indefeasible payment in cash in full and satisfaction of Obligations pursuant to the priority waterfall provisions contained in the Loan Agreement and the rights preserved under this

Final Financing Order, in each case (other than unmatured indemnity obligations for which claims have not been asserted and are not reasonably expected to be asserted at any time in the future) on the effective date of such plan in accordance with the terms and conditions set forth in the Loan Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Agent or any Lender as provided in this Final Financing Order and the Financing Agreements or Agent's or any Lender's exercise of such rights or remedies; provided, however, that Agent may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Agent or any Lender.

4.3     Section 506(c) Claims.   No costs or expenses of administration which have or may be incurred in the Cases shall be charged against Agent or any Lender, their respective claims or the Collateral pursuant to §§ 105 or 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Agent, and no such consent shall be implied from any other action, inaction or acquiescence by Agent or any Lender; provided that Debtors may seek such charge without Agent's consent if such charge allows for and does not impair the satisfaction in full of the Post-Petition ABL Obligations, Pre-Petition ABL Obligations, and Pre-Petition Term Loan B Obligations (a "Permitted Surcharge"). The Debtors' right to seek a Permitted Surcharge shall be fully preserved and nothing herein shall be deemed a waiver or release of a Permitted Surcharge.

4.4     Collateral Rights.   Until all Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Loan Agreement and the other Financing Agreements:

(a)     no other party shall foreclose or otherwise seek to enforce any junior lien or claim in Collateral; and

(b)     upon and after the declaration of the occurrence of an Event of Default, and subject to Agent obtaining relief from the automatic stay as provided for herein to enforce its rights and remedies against the Collateral, in connection with a liquidation of any of the Collateral, Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtors, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses.  Agent and Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Agent actually occupies or uses such assets or properties or for any fees, rentals or other amounts that may become due following the end of Agent's occupation or use).

4.5     Releases.

Subject to Section 4.1 above, in consideration of Agent and Lenders permitting Debtors to use the Pre-Petition Collateral (including Cash Collateral) and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Financing Agreements, the Interim Order and this Final Financing Order, each Debtor, on behalf

45

of itself and its successors and assigns, (collectively, the "Releasors"), hereby, forever releases, discharges and acquits Agent, each Lender, and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "Pre-Petition Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that any of the Releasors had, have or hereafter can or may have against Pre-Petition Releasees (or any of them) as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Obligations, Financing Agreements and any Loans, Letters of Credit, Bank Products or other financial accommodations made by Agent and/or the Lenders to Debtors pursuant to the Financing Agreements.  In addition, upon the repayment of all Obligations (as defined in the Loan Agreement) owed to the Agent and the Lenders by Debtors and termination of the rights and obligations arising under the Financing Agreements (which payment and termination shall be on terms and conditions acceptable to the Agent), the Agent and the Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring on or prior to the date of such repayment or termination in connection with or related to the Financing Agreements, the Interim Order or this Final Financing Order.

Section 5.       Other Rights and Post-Petition Obligations.

     5.1    No Modification or Stay of This Final Financing Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Financing Order, the Financing Agreements or any term hereunder or thereunder, (b) the failure to obtain a Final Financing Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or

conversion of one or more of the Cases (each, a "Subject Event"), (x) the acts taken by each of the Agent and the Lenders in accordance with this Final Financing Order, and (y) the Post-Petition Obligations incurred or arising prior to Agent's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Financing Order, and the acts taken by Agent and Lenders in accordance with this Final Financing Order, and the liens granted to Agent and Lenders in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Agent and each Lender pursuant to this Final Financing Order and the Financing Agreements shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Final Financing Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Final Financing Order by this Court or any other tribunal.

       5.2    Power to Waive Rights; Duties to Third Parties.  Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Financing Order that are in favor of Agent and Lenders (the "Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by Agent of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Agent or any Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to Agent or any Lender.

5.3     Disposition of Collateral.  Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside the ordinary course of business, other than pursuant to the terms of the Loan Agreement and the Budget, without the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Agent or any Lenders) and, in each case, an order of this Court.

5.4     Inventory.  Debtors shall not, without the consent of the Agent, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5     Reservation of Rights.  The terms, conditions and provisions of this Final Financing Order are in addition to and without prejudice to the rights of Agent and each Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Financing Agreements or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

5.6     Binding Effect.

(a)     The provisions of this Final Financing Order and the Financing Agreements, the Post-Petition Obligations, the Pre-Petition Adequate Protection Superpriority Claim, the Post-Petition Superpriority Claim and any and all rights, remedies, privileges and

benefits in favor of each of the Agent and the Lenders provided or acknowledged in this Final Financing Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Financing Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, *nunc pro tunc* to the Petition Date, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

(b)      Any order dismissing one or more of the Cases under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the Post-Petition Superpriority Claim and Agent's and Lenders' liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Final Financing Order shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)      In the event this Court modifies any of the provisions of this Final Financing Order or the Financing Agreements such modifications shall not affect the rights or priorities of Agent and Lenders pursuant to this Final Financing Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and this Final Financing Order shall otherwise remain in full force and effect to such extent.

(d)      This Final Financing Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee

or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor.  This Final Financing Order shall also inure to the benefit of Debtors, Agent, Lenders, and each of their respective successors and assigns.

5.7   Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.

(a)   All post-petition advances and other financial accommodations under the Loan Agreement and the other Financing Agreements are made in reliance on this Final Financing Order and there shall not at any time be entered in the Cases, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Financing Order) which (i) authorizes the use of cash collateral of Debtors in which Agent or Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which Agent or Lenders have a lien or security interest, except as expressly permitted hereunder or in the Financing Agreements, or (ii) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Agent or Lenders hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Agent and Lenders herein; unless, in each instance (x) Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Agent or any Lender, or (y) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Loan Agreement and the other Financing Agreements (other than unmatured indemnity obligations for which claims have not been asserted), including, without limitation, all debts and obligations of Debtors to Agent and Lenders which arise or

result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Agent. The security interests and liens granted to or for the benefit of Agent and Lenders hereunder and the rights of Agent and Lenders pursuant to this Final Financing Order and the Financing Agreements with respect to the Obligations and the Collateral are cumulative.

5.8     <u>No Owner/Operator Liability</u>.  Neither the Agent nor any Lender shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

5.9     <u>Marshalling</u>.  In no event shall Agent or any Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral; <u>provided</u> that the forgoing provision shall not limit the obligations of Debtors or Agent set forth in Section 1.6 of this Final Financing Order.  Agent and Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Agent or any Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

5.10     <u>Right of Setoff</u>.  To the extent any funds were on deposit with Agent as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with Agent or any Lender immediately prior to the filing of the Cases (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "<u>Deposited Funds</u>") are subject to rights of

setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of Agent or the applicable Lenders pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

5.11    Right to Credit Bid.  Subject to Section 4.1 and section 363(k) of the Bankruptcy Code, the Agent, on behalf of itself and the Lenders, shall have the right to "credit bid" the amount of its and their claims that are Obligations arising under the terms of the Financing Agreements, during any sale of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

5.12    Payment and Review of Lender Fees and Expenses.  Each Debtor shall pay all reasonable fees and expenses of the Agent and Lenders to the extent provided in the Financing Agreements, including, without limitation, the non-refundable payment to the Agent and the Lenders, as the case may be, including without limitation reasonable and documented professional fees and legal fees and expenses, whether incurred before or after the Petition Date; provided, that Debtors shall pay all such reasonable fees and expenses within seven (7) business days of delivery of a statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) to the Debtors and the Committee, unless, within such seven (7) business day period, the Debtors or the Committee serve a written objection upon the requesting party, in which case, the Debtors shall immediately pay such amounts that are not the subject of any objection and pay the withheld amount as subsequently agreed by the parties or ordered by the Court to be paid.

5.13    <u>Access to Collateral</u>.  Notwithstanding anything contained herein to the contrary (but subject to the last sentence of this paragraph 5.13) and without limiting any other rights or remedies of the Agent and Lenders contained in this Final Financing Order, the Financing Agreements, or otherwise available at law or in equity, and subject to the terms of the Loan Agreement, upon reasonable prior written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing, the Agent may, subject to the applicable notice provisions, if any, in this Final Financing Order and any separate applicable agreement by and between such landlord and the Agent enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the Agent shall be obligated only to pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the Agent, calculated on a daily per diem basis. Nothing herein or otherwise shall require the Agent to assume any lease as a condition to the rights afforded in this paragraph. For the avoidance of doubt, subject to (and without waiver of) the rights of the Agent under applicable nonbankruptcy law, the Agent can only enter upon a leased premises after an Event of Default in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or (ii) upon entry of an order of this Court obtained by motion of the Agent on such notice to the landlord as shall be required by this Court.

5.14    Notwithstanding anything else contained herein to the contrary, any party may seek marshalling or seek to assert reclamation claims prior to the Final Hearing, solely to the extent that any such remedies or claims exist.

5.15   <u>Stub Rent Agreement</u>.  The Debtors are authorized, but not directed, to enter into, and perform under, agreements in the form attached hereto as <u>Exhibit 3</u> with the landlords under the Debtors' unexpired leases in accordance with the Budget and the Financing Agreements.

5.16   <u>Term; Termination</u>.  Notwithstanding any provision of this Final Financing Order to the contrary, the term of the financing arrangements among Debtors, Agent and Lenders authorized by this Final Financing Order may be terminated pursuant to the terms of the Loan Agreement.

5.17   <u>Limited Effect</u>.  In the event of a conflict (a) between the terms and provisions of any of the Financing Agreements and this Final Financing Order, the terms and provisions of this Final Financing Order shall govern, interpreted as most consistent with the terms and provisions of the Financing Agreements; and (b) between the terms and provisions of this Final Financing Order, and the terms and provisions of any other order entered by this Court, the term of this Final Financing Order shall govern.

5.18   <u>Objections Overruled</u>.  All objections to the entry of this Final Financing Order are (to the extent not withdrawn, waived, or settled) hereby overruled.

5.19   <u>Retention of Jurisdiction</u>.  The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Financing Order, the Loan Agreement, and the other Financing Agreements.

Dated: February 14, 2019

/s/Thomas L. Saladino
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1
### Ratification Agreement

[Execution]

<u>RATIFICATION AND AMENDMENT AGREEMENT</u>

      This RATIFICATION AND AMENDMENT AGREEMENT (as the same may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced, the "**Ratification Agreement**"), dated as of January 16, 2019, is by and among Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National Association, a national banking association ("**Wells Fargo**"), in its capacity as agent for the Lenders (as hereinafter defined) pursuant to the Loan Agreement defined below (in such capacity, "**Agent**"), Wells Fargo, in its capacity as agent for the Term Loan B Lenders (in such capacity, "**Term Loan B Agent**" and collectively with Agent, the "**Agents**"), Shopko Note Holding, LLC, a Delaware limited liability company, successor to Spirit Realty L.P., in its capacity as agent for the Term Loan B-1 Lenders (in such capacity, "**Term Loan B-1 Agent**"), the parties to the Pre-Petition Loan Agreement as lenders (individually, each a "**Lender**" and collectively, "**Lenders**"), Wells Fargo, in its capacity as Collateral Agent (in such capacity, "**Collateral Agent**"), Wells Fargo, in its capacity as Issuing Bank (in such capacity, "**Issuing Bank**"), ShopKo Properties, LLC, a Minnesota limited liability company, as Debtor and Debtor-in-Possession ("**Properties**"), Penn-Daniels, LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("**Penn**"), ShopKo Stores Operating Co., LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("**ShopKo Operating**"), ShopKo Holding Company, LLC, a Wisconsin limited liability company formerly known as ShopKo Holding Company, Inc. , as Debtor and Debtor-in-Possession ("**ShopKo Holdco**"), ShopKo Optical Manufacturing, LLC, a Wisconsin limited liability company, as Debtor and Debtor-in-Possession ("**Optical**"), Specialty Retail Shops Holding Corp., a Delaware corporation formerly known as SKO Group Holding Corp. , as Debtor and Debtor-in-Possession ("**Parent**"), ShopKo Institutional Care Services Co., LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("**ShopKo Institutional**"), Retained R/E SPE, LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("**Retained R/E**"), Pamida Stores Operating Co., LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("**Pamida Operating**", and together with Properties, Penn, ShopKo Operating, ShopKo Holdco, Optical, Parent, ShopKo Institutional and Retained R/E, each individually a "**Borrower**" and collectively, "**Borrowers**"), ShopKo Finance, LLC, a Delaware limited liability company, as Debtor and Debtor-in-Possession ("**ShopKo Finance**"), SVS Trucking, LLC, a Minnesota limited liability company, as Debtor and Debtor-in-Possession ("**SVS**"), ShopKo Gift Card Co., LLC, a Minnesota limited liability company, as Debtor and Debtor-in-Possession ("**GiftCard**"), Pamida Transportation, LLC, a Nebraska limited liability company, as Debtor and Debtor-in-Possession ("**Transportation**"), and Place's Associates' Expansion, LLC, a Missouri limited liability company, as Debtor and Debtor-in-Possession ("**Expansion**", and together with ShopKo Finance, SVS, GiftCard and Transportation, each individually a "**Guarantor**" and collectively, "**Guarantors**").

<u>W I T N E S S E T H</u>:

      WHEREAS, Borrowers and Guarantors (collectively, the "**Debtors**") have commenced cases under Chapter 11 of the Bankruptcy Code (as defined herein) in the United States Bankruptcy Court for the District of Nebraska and each Borrower and each Guarantor has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Case (as defined below), Agent and Lenders made loans and advances and provided other financial or credit accommodations to Borrowers secured by substantially all assets and properties of Borrowers and Guarantors as set forth in the Pre-Petition Financing Agreements (as defined below);

WHEREAS, the Debtors are requesting that the Bankruptcy Court enter a Financing Order (defined below) pursuant to which Agent and Lenders may make post-petition loans and advances, and provide other financial accommodations, to Borrowers secured by substantially all the assets and properties of Borrowers and Guarantor as set forth in the Financing Order and the Financing Agreements (as defined below);

WHEREAS, Borrowers and Guarantors have requested that Agent and Lenders make post-petition loans and advances and provide other financial or credit accommodations to Borrowers and make certain amendments to the Pre-Petition Loan Agreement (as defined below) and the other Pre-Petition Financing Agreements, and Agent and Lenders are willing to do so, subject to the terms and conditions contained herein; and

WHEREAS, Borrowers and Guarantors desire to reaffirm their obligations to Agent and Lenders pursuant to the Pre-Petition Financing Agreements and acknowledge their continuing liabilities to Agent and Lenders thereunder in order to induce Agent and Lenders to make such post-petition loans and advances, and provide other financial accommodations, to Borrowers secured by substantially all the assets and properties of Borrowers and Guarantors set forth in the Financing Order.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agents, Term Loan B-1 Agent, Collateral Agent, Issuing Banks, Lenders, Borrowers, and Guarantors mutually covenant, warrant and agree as follows:

1.    DEFINITIONS.

    1.1    Additional Definitions.  As used herein, the following terms shall have the respective meanings given to them below and the Pre-Petition Loan Agreement and the other Pre-Petition Financing Agreements shall be deemed and are hereby amended to include, in addition and not in limitation, each of the following definitions:

        (a)    "**Adequate Protection Liens**" means the "Pre-Petition Replacement Lien" as defined in the Financing Order.

        (b)    "**Bankruptcy Court**" means the United States Bankruptcy Court or the United States District Court for the District of Nebraska.

        (c)    "**Bankruptcy Code**" means the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

2

(d)     **"Bankruptcy Events"** means the commencement of the Chapter 11 Cases, the events and conditions leading up to the commencement of the Chapter 11 Cases, the Store Closing GOB Sales, and the Rx Sale.

(e)     **"Budget"** means the thirteen (13) week budget delivered to Agent in accordance with Section 5.3 of the Ratification Agreement (a summary of such initial Budget attached to the Ratification Agreement as <u>Exhibit A</u>, in form and substance approved by the Agent), together with any subsequent or amended budgets thereto delivered to Agent and Lenders, in form and substance reasonably satisfactory to Agent (each such subsequent budget, a "**Budget**"), in accordance with the terms and conditions of the Ratification Agreement.

(f)     "**Carve-Out**" shall have the meaning set forth in the Financing Order.

(g)     **"Chapter 11 Case"** or **"Chapter 11 Cases"** means the cases under Chapter 11 of the Bankruptcy Code commenced by Debtors which are being jointly administered under the Bankruptcy Code and are pending in the Bankruptcy Court.

(h)     **"Committee"** means any official committee of unsecured creditors in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

(i)     **"Debtors"** means, collectively, Borrowers and Guarantors, each as Debtor and Debtor-in-Possession in the Chapter 11 Case.

(j)     **"DIP Fee Letter"** means the Fee Letter, dated as of the Ratification Closing Date, by and among Borrowers and Agent.

(k)     **"DIP Milestones"** has the meaning specified therefor in Section 5.4 of the Ratification Agreement.

(l)     **"Excluded Contracts"** has the meaning specified therefor in the definition of Post-Petition Collateral.

(m)     **"Financing Order"** means, as applicable, the Interim Financing Order, the Permanent Financing Order and such other orders relating thereto or authorizing the granting of credit by Agent and Lenders to Borrowers on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Case.

(n)     **"Interim Financing Order"** means, the order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing, in the form attached hereto as <u>Exhibit B</u> and/or otherwise in form and substance satisfactory to the Agent, together with all supplements, modifications, and amendments thereto consented to by the Agent, which, among other matters but not by way of limitation, authorizing, on an interim basis, the Borrowers to execute and perform under the terms of the Pre-Petition Financing Agreements, as amended and supplemented by the terms and conditions of the Ratification Agreement.

(o)    **"Loan Agreement"** means, the Pre-Petition Loan Agreement as ratified, amended, supplemented and otherwise modified by the Ratification Agreement, as the same now exists or may hereafter be amended from time to time.

(p)    **"Permanent Financing Order"** means, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing of the Bankruptcy Court, which order shall be in form and substance satisfactory to the Agent and from which no appeal or motion to reconsider has been filed, together with all supplements, modifications and amendments thereto, consented to by the Agent, which among other matters, but not by way of limitation, authorizes the Borrowers to obtain credit, incur the Post-Petition Obligations, assume or otherwise "roll-up" all Pre-Petition Obligations, and grant liens therefor and granting super-priority expense claims to Agent and Lenders with respect to all obligations due Agent and Lenders, subject to no priority claim or administrative expenses of the Chapter 11 Case or any other entity (other than the Carve-Out and Pre-Petition Priority Liens).

(q)    **"Petition Date"** means the date of the commencement of the Chapter 11 Case.

(r)    **"Plan of Reorganization"** has the meaning specified therefor in Section 5.4 of the Ratification Agreement.

(s)    **"Post-Petition Collateral"** means, collectively, all now existing and hereafter acquired real and personal property of each Debtor's estate, wherever located, of any kind, nature or description, including any such property in which a lien is granted to Agent or Collateral Agent pursuant to the Financing Agreements, the Financing Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation:

(i)    all of the Pre-Petition Collateral;

(ii)    all Accounts;

(iii)    all general intangibles, including, without limitation, all Intellectual Property;

(iv)    all goods, including, without limitation, Inventory and Equipment but excluding fixtures (as such term is defined in the UCC);

(v)    all Real Property and fixtures;

(vi)    all chattel paper, including, without limitation, all tangible and electronic chattel paper;

(vii)    all instruments, including, without limitation, all promissory notes;

(viii)    all documents and all credit card sales drafts, credit card sales slips or charge slips or receipts and other forms of store receipts;

(ix)    all deposit accounts;

(x)    all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights;

(xi)    all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of Receivables and other Collateral, including (A) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (B) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (C) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, Receivables or other Post-Petition Collateral, including returned, repossessed and reclaimed goods, and (D) deposits by and property of account debtors or other persons securing the obligations of account debtors;

(xii)    all (A) investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (B) monies, credit balances, deposits and other property of each Debtor now or hereafter held or received by or in transit to any Agent, any Lender or its Affiliates or at any other depository or other institution from or for the account of each Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiii)    all commercial tort claims, including, without limitation, those identified in the Information Certificate;

(xiv)    to the extent not otherwise described above, all Receivables;

(xv)    all Prescription Files and other Records;

(xvi)    all proceeds of any Excluded Contract;

(xvii)    effective upon entry of a Permanent Financing Order, all claims, rights, interests, assets and properties recovered by or on behalf of each Borrower and Guarantor or any trustee of such Borrower or Guarantor (whether in the Chapter 11 Case or any subsequent case to which any Chapter 11 Case is converted), including, without limitation, all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to (among others) Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code (but not, for the avoidance of doubt, such avoidance actions themselves); and

(xviii)    all products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the other Post-Petition Collateral.

Notwithstanding anything herein to the contrary, "Post-Petition Collateral" shall not include any security interests or liens (i) on any leasehold interest in Real Property that was not previously encumbered by security interests or liens in favor of Agent or Collateral Agent, for itself and the

benefit of Secured Parties, as of the Petition Date, but shall instead include all proceeds of such leasehold interests subject to any valid senior encumbrances; or (ii) any executory contract or agreement to the extent the contract or agreement does not permit the grant of a lien thereon and was not previously encumbered by security interest or liens in favor of Agent, for itself and the benefit of Secured Parties (the items described in clauses (i) and through (ii) above, collectively, the "**Excluded Contracts**").

(t)     "**Post-Petition Obligations**" means all Obligations (as defined in the Pre-Petition Loan Agreement) of any Debtor arising on and after the Petition Date and whether arising on or after the conversion or dismissal of the Chapter 11 Case, or before, during and after the confirmation of any plan of reorganization in the Chapter 11 Case, and whether arising under or related to this Ratification Agreement, the Loan Agreement, the other Financing Agreements, a Financing Order, by operation of law or otherwise, and whether incurred by such Debtor as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, debtor-in-possession facility fees, early termination fees, prepayment fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing.  For the avoidance of doubt, the Post-Petition Obligations shall include that portion of the outstanding Pre-Petition Obligations, which have been "rolled-up" from time to time as provided in the Financing Order.

(u)     "**Pre-Petition Collateral**" means, collectively, (i) all "Collateral" as such term is defined in the Pre-Petition Loan Agreement as in effect immediately prior to the Petition Date, (ii) all "Collateral" and "Pledged Property" (and terms of similar import) as such terms are defined in each of the other Pre-Petition Financing Agreements as in effect immediately prior to the Petition Date, and (iii) all other security for the Pre-Petition Obligations as provided in the Pre-Petition Loan Agreement and the other Pre-Petition Financing Agreements immediately prior to the Petition Date.

(v)     "**Pre-Petition Financing Agreements**" means the Financing Agreements (as defined in the Pre-Petition Loan Agreement), as in effect immediately prior to the Petition Date.

(w)     "**Pre-Petition Loan Agreement**" means the Third Amended and Restated Loan and Security Agreement, dated February 7, 2012, by and among Borrowers, Guarantors, Lenders, Agents and others, as amended by Amendment No. 1 to Third Amended and Restated Loan and Security Agreement, dated as of March 29, 2012, Amendment No. 2 to Third Amended and Restated Loan and Security Agreement, dated as of December 18, 2012, Amendment No. 3 to Third Amended and Restated Loan and Security Agreement and Consent, dated as of March 29, 2013, Amendment No. 4 to Third Amended and Restated Loan and Security Agreement and Consent, dated as of October 2, 2013, Amendment No. 5 to Third Amended and Restated Loan and Security Agreement, dated as of February 27, 2014, Amendment No. 6 to Third Amended and Restated Loan and Security Agreement, dated as of October 1, 2014, Amendment No. 7 to Third Amended and Restated Loan and Security Agreement, dated as of June 19, 2015, Amendment No. 8 to Third Amended and Restated Loan and Security Agreement, dated as of January 16, 2018 and Amendment No. 9 to Third Amended

Case 19-80064-TLS    Doc 425    Filed 02/14/19    Entered 02/14/19 14:39:49    Desc Main
Document    Page 62 of 329


and Restated Loan and Security Agreement, dated as of December 13, 2018, as in effect immediately prior to the Petition Date.

(x)    **"Pre-Petition Obligations"** means all Obligations (as such term is defined in the Pre-Petition Loan Agreement) arising at any time before the Petition Date.

(y)    **"Pre-Petition Priority Liens"** means, collectively, the liens permitted by the Pre-Petition Financing Agreements, to the extent any such permitted liens are valid, enforceable, properly perfected, non-avoidable and senior in priority to the liens securing the Pre-Petition Obligations as of the Petition Date (including any that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code).

(z)    **"Professionals"** means the Debtors' and any Committee's professionals, retained by either of them by final order of the Bankruptcy Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327, 328 or 1103(a) of the Bankruptcy Code.

(aa)    **"Ratification Agreement"** means the Ratification and Amendment Agreement, dated as of January 16, 2019, by and among Borrowers, Guarantors, Agents, Term Loan B-1 Agent, Collateral Agent, Issuing Banks and Lenders, as the same may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(bb)    **"Ratification Closing Date"** means the date on which all of the conditions precedent in Section 9 of the Ratification Agreement have been satisfied (or waived).

(cc)    **"Rx Auction"** has the meaning specified therefor in Section 5.4 of the Ratification Agreement.

(dd)    **"Rx Sale"** has the meaning specified therefor in Section 5.4 of the Ratification Agreement.

(ee)    **"Store Closing GOB Sales"** has the meaning specified therefor in Section 5.4 of the Ratification Agreement.

(ff)    **"Store Closing Liquidation Agreement"** has the meaning specified therefor in Section 5.4 of the Ratification Agreement.

1.2    Amendments to Definitions.

(a)    <u>Applicable Margin</u>.  The definition of "Applicable Margin" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" 'Applicable Margin' shall mean, at any time, as to the Interest Rate for Prime Rate Loans the applicable percentage (on a per annum basis) set forth below:

| Applicable | Applicable | Applicable |
|---|---|---|

5551993.7           7

| Prime Rate Margin for Revolving Loans A | Prime Rate Margin for Revolving Loans A-1 | Prime Rate Margin for Term Loans B |
|---|---|---|
| 2.75% | 4.00% | 9.50% |

(b)    <u>Agents and Lenders, etc.</u>  All references to the terms "Agent", "Term Loan B Agent", "Term Loan B-1 Agent", "Collateral Agent", "Issuing Banks" and "Lenders" shall include their respective successors and assigns.

(c)    <u>Borrowers, Guarantors and Debtors</u>.  All references to the terms "Borrowers", "Guarantors" or "Debtors" in the Financing Agreements shall be deemed and each such reference is hereby amended to mean and include (as applicable) the Debtors, each as defined herein, and their successors and assigns (including any trustee or other fiduciary hereafter appointed as any Debtor's legal representative, as applicable, or with respect to any Debtor the property of the estate of such Debtor whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case or cases and its successor upon conclusion of the Chapter 11 Case of such Debtor, as the case may be).

(d)    <u>Collateral</u>.  All references to the term "Collateral" in the Loan Agreement or the other Financing Agreements, or any other term referring to the security for the Pre-Petition Obligations, shall be deemed, and each such reference is hereby amended to mean, collectively, the Pre-Petition Collateral and the Post-Petition Collateral.  For the avoidance of doubt, any reference in the Ratification Agreement or any other Financing Agreement to a lien, security interest or other encumbrance of Agent shall include, without limitation, any lien, security interest or other encumbrance of Collateral Agent as an agent of Agent; it being understood that any lien, security interest or other encumbrance of the Collateral Agent shall be deemed to be also a lien, security interest or encumbrance of Agent.

(e)    <u>Debtors</u>.  All references to Debtors, including, without limitation, to the terms "Borrower," "Borrowers," "Guarantor" or "Guarantors" in the Loan Agreement or the other Financing Agreements shall be deemed, and each such reference is hereby amended, to mean and include the Debtors as defined herein, and their successors and assigns (including any trustee or other fiduciary hereafter appointed as its legal representative or with respect to the property of the estate of such Debtor whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case and its successor upon conclusion of the Chapter 11 Case of such Debtor).

(f)    <u>Direct Remittance Period</u>.  The definition of "Direct Remittance Period" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

"  'Direct Remittance Period' shall mean the period of all times during the Chapter 11 Cases."

(g)    <u>Disqualified Lender</u>.  The definition of "Disqualified Lender" in the Pre-Petition Loan Agreement is hereby amended by deleting the phrase "prior to the date of Amendment No. 7" and replacing it with "prior to the date of the Ratification Agreement".

(h)     Eligible Prescription Files.  The definition of "Eligible Prescription Files" in the Pre-Petition Loan Agreement is hereby amended by adding the following new sentence at the end thereof:

> "Notwithstanding anything to the contrary contained herein or in any of the other Financing Agreements, no Prescription File shall be deemed to be an Eligible Prescription File unless (i) such Prescription File satisfies the eligibility criteria set forth in the definition of Eligible Prescription Files and (ii) either (A) such Prescription File is the subject of a sale agreement, in form and substance acceptable to Agent, or (B) Agent otherwise deems such Prescription File to be acceptable in its sole discretion."

(i)     Eligible Transferee.  The definition of "Eligible Transferee" in the Pre-Petition Loan Agreement is hereby amended by (i) deleting the phrase "Sections 10.1(a)(i), 10.1(g), 10.1(h) or 10.1(o)" from clause (e) of such definition and replacing it with "Section 10.1(a)(i)" and (ii) deleting the phrase "unless an Event of Default has occurred and is continuing at the time such assignment is effected hereunder," from clause (i) of the proviso to such definition and replacing it with "unless an Event of Default under Section 10.1(a)(i) has occurred and is continuing at the time such assignment is effected hereunder,".

(j)     Financing Agreements.  All references to the term "Financing Agreements" in the Loan Agreement or the other Financing Agreements shall be deemed, and each such reference is hereby amended, to include, in addition and not in limitation, this Ratification Agreement and all of the Pre-Petition Financing Agreements, as ratified, assumed and adopted by each Borrower and Guarantor pursuant to the terms of the Ratification Agreement, as amended and supplemented thereby, and the Financing Order, as each of the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(k)     Indebtedness.  The definition of "Indebtedness" in the Pre-Petition Loan Agreement is hereby amended by deleting clause (b) therein and replacing it with the following:

> "(b) representing the balance deferred and unpaid of the purchase price of any property or services (except any such balance that constitutes an account payable to a trade creditor (whether or not an Affiliate) created, incurred, assumed or guaranteed by such Person in the ordinary course of business of such Person or during the pendency of the Chapter 11 Case and, in each case, payable in accordance with the Budget);"

(l)     Information Certificate.   The definition of "Information Certificate" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

> " 'Information Certificate' shall mean the Information Certificate of Borrowers and Guarantors constituting Exhibit C to the Ratification

Agreement containing material information with respect to Borrowers and Guarantors, their respective business and assets provided by or on behalf of Borrowers and Guarantors to the Agent in connection with the preparation of this Agreement and the other Financing Agreements and the financing arrangements provided for herein."

(m)     Interest Rate. Clause (a)(vii) of the definition of "Interest Rate" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

"(vii) as to Term Loans B-1, a rate equal to fourteen (14.00%) percent per annum."

(n)     Letter of Credit Limit. The definition of "Letter of Credit Limit" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" 'Letter of Credit Limit' shall mean $50,000,000."

(o)     Loan Agreement. All references to the term "Agreement" in the Pre-Petition Loan Agreement or the term "Loan Agreement" in the other Financing Agreements shall be deemed, and each such reference is hereby amended, to mean the Loan Agreement (as defined in the Ratification Agreement), and as ratified, assumed and adopted by each Borrower and Guarantor pursuant to the terms hereof and the Financing Order.

(p)     Material Adverse Effect. All references to the term "Material Adverse Effect," "material adverse effect" or "material adverse change" in the Loan Agreement, the Ratification Agreement or the other Financing Agreements shall be deemed, and each such reference is hereby amended, to add at the end thereof: "provided, that, the Bankruptcy Events shall not, individually or collectively, constitute a Material Adverse Effect."

(q)     Maximum Credit. The definition of "Maximum Credit" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" 'Maximum Credit' shall mean the amount of $513,471,687.50."

(r)     Obligations. All references to the term "Obligations" in the Loan Agreement, this Ratification Agreement or the other Financing Agreements shall be deemed, and each such reference is hereby amended, to mean both the Pre-Petition Obligations and the Post-Petition Obligations.

(s)     Renewal Date. The definition of "Renewal Date" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" 'Renewal Date' shall mean the earliest of: (a) the date that is three hundred and sixty-five (365) days after the commencement of the Chapter 11 Case, (b) thirty (30) days after the entry of the Interim Financing Order if the Permanent Financing Order has not been entered prior to the

10

expiration of such thirty (30) day period, (c) the substantial consummation (as defined in Section 1101 of the Bankruptcy Code and which for purposes hereof shall be no later than the "effective date") of the Plan of Reorganization, or (d) the date of confirmation of a plan of liquidation for Borrowers or Guarantors in the Chapter 11 Cases."

(t)    Reserves.    The definition of "Reserves" in the Pre-Petition Loan Agreement is hereby amended by adding the following clause at the end thereof:

"(d) In addition and not in limitation of the foregoing, Agent may establish Reserves in respect of: (i) the Carve-Out, (ii) the amount of any senior liens or claims in or against the Collateral that have priority over the liens and claims of Agent, and (iii) the amount of priority or administrative expense claims that require payment during the Chapter 11 Cases."

(u)    Revolving Loan A Limit.    The definition of "Revolving Loan A Limit" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" 'Revolving Loan A Limit' shall mean $400,000,000."

(v)    Term Loan B Limit.    The definition of "Term Loan B Limit" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" 'Term Loan B Limit' shall mean $49,055,312.50."

(w)    Term Loan B-1 Limit.    The definition of "Term Loan B-1 Limit" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" 'Term Loan B-1 Limit' shall mean $34,416,375."

(x)    Term Loan Priority Collateral Proceeds Event.    The definition of "Term Loan Priority Collateral Proceeds Event" in the Pre-Petition Loan Agreement is hereby amended by adding the following new sentence at the end thereof:

"Notwithstanding anything to the contrary contained herein or in any other Financing Agreement, a Term Loan Priority Collateral Proceeds Event shall be deemed to have occurred and be continuing at all times during the Chapter 11 Cases."

(y)    Term Loans B Action Default.    The definition of "Term Loans B Action Default" in the Pre-Petition Loan Agreement is hereby amended by deleting the reference to "10.1(f), 10.1(g), 10.1(h),".

(z)    Term Loans B-1 Action Default.  The definition of "Term Loans B-1 Action Default" in the Pre-Petition Loan Agreement is hereby amended by deleting the reference to "10.1(f), 10.1(g), 10.1(h),".

(aa)    Triggering Event.  The definition of "Triggering Event" in the Pre-Petition Loan Agreement is hereby amended by (i) deleting the phrase "the occurrence and continuance of an Event of Default under Section 10.1(f), 10.1(g) or 10.1(h) hereof" and replacing it with "[reserved]" and (ii) adding the following new sentence at the end thereof:

"Notwithstanding anything to the contrary contained herein or in any other Financing Agreement, a Triggering Event shall be deemed to have occurred and be continuing at all times during the Chapter 11 Cases."

1.3    Interpretation.

(a)    For purposes of this Ratification Agreement, unless otherwise defined or amended herein, including, but not limited to, those terms used or defined in the recitals hereto, all terms used herein shall have the respective meanings assigned to such terms in the Pre-Petition Loan Agreement, as amended, supplemented or otherwise modified by this Ratification Agreement.

(b)    All references to any term in the singular shall include the plural and all references to any term in the plural shall include the singular unless the context of such usage requires otherwise.

(c)    All terms not specifically defined herein which are defined in the Uniform Commercial Code, as in effect in the State of New York as of the date hereof, shall have the meaning set forth therein, except that the term "Lien" or "lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code.

2.    ACKNOWLEDGMENTS.

2.1    Pre-Petition Obligations.  Each Borrower and Guarantor hereby acknowledges, confirms and agrees that, as of January 15, 2019, Borrowers are indebted to Agent and Lenders in respect of all Pre-Petition Obligations in an aggregate principal amount of not less than $402,699,907.17 consisting of (a) Loans to each Borrower made pursuant to the Pre-Petition Financing Agreements, together with interest accrued and accruing thereon, and (b) Letter of Credit Obligations outstanding under the Pre-Petition Loan Agreement together with interest accrued and accruing thereon, and all costs, expenses, fees (including attorneys' fees and legal expenses), plus all other charges now or hereafter owed by Borrowers to Agent and Lenders, all of which are unconditionally owing by the Borrowers to the Agent and Lenders, without offset, defense or counterclaim of any kind, nature and description whatsoever.

2.2    Guaranteed Obligations.  Each Guarantor hereby acknowledges, confirms and agrees that:

(a)    all obligations of such Guarantors under the Pre-Petition Financing Agreements are unconditionally owing by such Guarantor to Agent and Lenders without offset, defense or counterclaim of any kind, nature and description whatsoever, and

(b)    the absolute and unconditional guarantee of the payment of the Pre-Petition Obligations by such Guarantor pursuant to the Pre-Petition Financing Agreements extends to all Post-Petition Obligations.

**2.3**    Acknowledgment of Security Interests.    Each Borrower and Guarantor hereby acknowledges, confirms and agrees that Agent and/or Collateral Agent, for the benefit of itself and the other Secured Parties, has and shall continue to have (a) valid, enforceable and perfected first priority and senior security interests in and liens upon all Pre-Petition Collateral heretofore granted to Agent and/or Collateral Agent pursuant to the Pre-Petition Financing Agreements as in effect immediately prior to the Petition Date to secure all of the Obligations, and (b) valid and enforceable first priority and senior security interests in and liens upon all Post-Petition Collateral granted to Agent and/or Collateral Agent, for the benefit of itself and the Secured Parties, under the Financing Order or hereunder or under any of the other Financing Agreements or otherwise granted to or held by Agent and/or Collateral Agent, in each case, subject only Pre-Petition Priority Liens and any other liens or encumbrances expressly permitted by the Financing Order that may have priority over the liens in favor of Agent.

**2.4**    Binding Effect of Documents.    Each Borrower and Guarantor hereby acknowledges, confirms and agrees that: (a) each of the Pre-Petition Financing Agreements to which it is a party was duly executed and delivered to Agent, Collateral Agent and Lenders by such Borrower or Guarantor and each is in full force and effect as of the date hereof, (b) the agreements and obligations of such Borrower or Guarantor contained in the Pre-Petition Financing Agreements constitute the legal, valid and binding obligations of such Borrower or Guarantor enforceable against it in accordance with the terms thereof, and such Borrower or Guarantor has no valid defense, offset or counterclaim to the enforcement of such obligations, and (c) Agent, Collateral Agent and Lenders are and shall be entitled to all of the rights, remedies and benefits provided for in (i), subject to the entry and terms of the Financing Order, the Financing Agreements and (ii) the Financing Order.

**3.**    ADOPTION AND RATIFICATION.

Each Borrower and Guarantor hereby (a) ratifies, assumes, adopts and agrees to be bound by all of the Pre-Petition Financing Agreements to which it is a party and (b) agrees to pay all of the Pre-Petition Obligations in accordance with the terms of such Pre-Petition Financing Agreements, as supplemented and amended by this Ratification Agreement, and in accordance with the Financing Order. All of the Pre-Petition Financing Agreements are hereby incorporated herein by reference and hereby are and shall be deemed adopted and assumed in full by Borrowers and Guarantors, each as Debtor and Debtor-in-Possession and considered as agreements between such Borrowers or Guarantors, on the one hand, and Agent, Collateral Agent and Lenders, on the other hand. Each Borrower and Guarantor party hereto hereby ratifies, restates, affirms and confirms all of the terms and conditions of the Pre-Petition Financing Agreements, as amended and supplemented pursuant hereto and the Financing Order,

and each Borrower and Guarantor, as Debtor and Debtor-in-Possession, agrees to be fully bound by the terms of the Financing Agreements to which such Borrower or Guarantor is a party.

**4.**     <u>GRANT OF SECURITY INTEREST</u>.

As collateral security for the prompt performance, observance and payment in full of all of the Obligations (including the Pre-Petition Obligations and the Post-Petition Obligations), Borrowers and Guarantors, each as Debtor and Debtor-in-Possession, hereby grant, pledge and assign to the Agent, for the benefit of itself and the other Secured Parties, and also confirm, reaffirm and restate the prior grant to Agent and/or Collateral Agent, for the benefit of itself and the other Secured Parties of, continuing senior priority security interests in and liens upon, and rights of setoff against, all of the Collateral.

**5.**     <u>ADDITIONAL REPRESENTATIONS, WARRANTIES AND COVENANTS</u>.

In addition to the representations, warranties and covenants made by Borrowers and Guarantors to Agent and Lenders, under the Loan Agreement or the other Financing Agreements (in each case, for the avoidance of doubt, as amended by or provided in this Ratification Agreement) each Borrower and Guarantor hereby represents, warrants and covenants to Agent and Lenders the following (which shall survive the execution and delivery of this Ratification Agreement), the truth and accuracy of which, or compliance with, to the extent such compliance does not violate the terms and provisions of the Bankruptcy Code, shall be a continuing condition precedent to the making of Loans by Agent and Lenders or the issuance of Letters of Credit under the Financing Agreements:

**5.1**     <u>Financing Order</u>.

(a)     No Borrower or Guarantor shall seek to have any Financing Order vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than with the prior written consent of Agent).

(b)     On or before the expiration of the Interim Financing Order, the Bankruptcy Court shall have entered the Permanent Financing Order authorizing the secured financing under the Financing Agreements on the terms and conditions contemplated herein, granting to Agent the security interests and liens and super-priority administrative expense claim status described in Section 5.9 hereof, modifying the automatic stay and containing other provisions required by Agent and its counsel. Agent, Lenders, Issuing Bank and other Secured Parties will not provide any loans or other financial accommodations other than those authorized under the Interim Financing Order unless, on or before the thirtieth day following the date of the commencement of the Chapter 11 Cases, such Permanent Financing Order shall have been entered, there shall be no appeal or other contest with respect to either of such orders and the time to appeal or contest such orders shall have expired.

(c)     Each Borrower and Guarantor hereby represents and warrants with, to and in favor of Agent and Lenders that each Financing Order has been duly entered, is valid, subsisting and continuing (and provides for, among other things, a valid, perfected, continuing, enforceable, non-avoidable first priority lien on the Collateral of each Borrower and Guarantor in favor of Agent and/or Collateral Agent, subject to the Carve-Out) and except as

otherwise expressly consented to by the Agent and the Lenders, has not been vacated, modified, reversed on appeal, or vacated or modified by any Bankruptcy Judge or District Court Judge and is not subject to any pending stay and on and after the date any other Financing Order is entered by the Bankruptcy Court, such other Financing Order shall have been duly entered, valid, subsisting and continuing and shall not have been vacated, modified, reversed on appeal, or vacated or modified by any Bankruptcy Judge or District Court Judge and shall not be subject to any pending stay.

        5.2     Use of Proceeds.  All Loans and Letters of Credit provided by Agent or any Lender to Borrowers pursuant to the Financing Order, the Loan Agreement or otherwise, shall only be used by Debtors for the working capital and general corporate purposes of Borrowers, including allowed administrative expenses incurred during the Chapter 11 Cases, all in accordance with the Budget.  Except for claims of Professionals in an amount not to exceed the Carve-Out (which, for the avoidance of doubt, may not be funded the Revolving Loans or Letters of Credit for any purpose provided in paragraph 2.5 of the Interim Financing Order), no portion of the administrative expenses or priority claims in the Chapter 11 Cases, other than those identified in the Budget to which Agent has specifically agreed in writing shall be funded with the Revolving Loans or Letters of Credit and the percentages and categories of permitted allocations of such claims and expenses shall be subject to approval by Agent.  Notwithstanding the foregoing, proceeds shall not be used by Borrowers or Guarantors to affirmatively commence or support, or to pay any professional fees incurred in connection with, any adversary proceeding, motion or other action that seeks to challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of Agent's liens, claims and rights.

        5.3     Budget.

        (a)     Borrowers shall deliver to Agent, in form and substance satisfactory to Agent, the following, each in form and substance satisfactory to Agent:

        (i)     on the Petition Date, a 13-week statement of availability, cash receipts and disbursements for the immediately following consecutive 13 weeks (the "**Initial Budget Period**"), set forth on a weekly basis, including the anticipated uses of the Financing Agreements for such period (the "**Budget**", as may be updated, amended or modified from time to time with the written consent of the Agent); and on or before April 5, 2019 an amendment to the Budget, in form and substance acceptable to the Agent, updating the Budget to include the 13-week period immediately following the Initial Budget Period.  Subsequent amendments shall be delivered to the Agent, in form and substance satisfactory to the Agent, two weeks prior to the final day of the Budget then in effect, updating the Budget to include the subsequent thirteen (13) week period.  Upon approval by the Agent, such budget shall be deemed to be the Budget for the next thirteen (13) week period;

        (ii)     commencing on the Wednesday following the second full week following the Petition Date, a weekly variance/reconciliation report on the Wednesday of each week setting forth on a weekly basis for the prior week and on a cumulative basis from the Petition Date through the fourth (4th) full week after the Petition Date and then on a rolling four (4) week basis at all times thereafter (each of the forgoing, a "**Measurement Period**"), (i) a comparison of the actual results to the projected amounts set forth in the Budget during such

15

periods for the following line items: (A) total cash receipts, and (B) total disbursements, noting therein variances from amounts set forth for such periods in the Budget; and (ii) an explanation for all material variances, in form satisfactory to the Agent and certified by the chief financial officer of the Company ("**DIP Variance Report**"); and

(iii)   a monthly update of financial projections on the 15th day of each month, setting forth updated projections for each line item of the Budget.

(b)   Each Debtor acknowledges, confirms and agrees that the following covenants shall be tested pursuant to the DIP Variance Report for the applicable Measurement Period ending as of each Saturday, with such testing commencing on the Wednesday following the first full two (2) weeks ending after the Petition Date: (i) the actual total cash receipts shall not be less than eighty five percent (85%) of the projected total cash receipts set forth in the Budget as set forth in line item of the Budget titled "Total Receipts" in respect of such Measurement Period, and (ii) the actual total cash disbursements shall not exceed by more than fifteen percent (15%) the projected total cash disbursements as set forth in line item of the Budget titled "Total Disbursements" in respect of such Measurement Period.

(c)   Each Debtor hereby confirms, acknowledges and agrees that, unless waived in writing by Agent, (i) a failure to maintain the deviations in the Budget in an amount equal to or less than the percentage set forth in Section 5.3(b) hereof shall constitute a material deviation from the Budget and an additional Event of Default (each, a "**Material Budget Deviation**") and (ii) the failure to deliver any reports with respect to any Budget, in form and substance satisfactory to Agent, as provided in Section 5.3(a) hereof shall constitute an Event of Default; <u>provided</u> that failure to maintain such deviations on account of Rx Sales receipts (which shall be deemed to be a variance in the actual proceeds received from Rx Sales from the projected proceeds from Rx Sales, as set forth in the line item of the Budget titled "Proceeds from Rx Asset Sales", in any given Measurement Period in excess of 15%), shall not constitute an Event of Default but shall result in the implementation of Sale Milestones (as defined below) reasonably acceptable to Agent.  Notwithstanding any approval by Agent of the Budget or any subsequent or amended Budget(s), Agent and Lenders will not, and shall not be required to, provide any Loans or Letters of Credit to any Borrower pursuant to the Budget, but shall only provide Loans and Letters of Credit in accordance with the terms and conditions set forth in the Loan Agreement as amended by this Ratification Agreement, the other Financing Agreements and the Financing Order.  Agent and Lenders are relying upon the Borrowers' delivery of, and compliance with, the Budget in accordance with this Section 5.3 in determining to enter into the post-petition financing arrangements provided for herein.

(d)   Notwithstanding any projected amounts set forth in the Budget relating to the costs and expenses of Agent and the other Secured Parties that are reimbursable by Borrowers or any other amounts owing by Borrowers to Agent and the Secured Parties (including, without limitation reasonable attorneys and consulting fees and expenses) in accordance with the Loan Agreement and the other Financing Agreements, such projections shall not limit, impair, modify or waive the Debtors' obligation to pay the actual amounts due to Agent and/or the other Secured Parties in respect of such costs, expenses and other amounts owing to Agent and such other Secured Parties in accordance with the Loan Agreement and the other Financing Agreements and the actual amounts paid in respect of such costs, expenses and

other amounts other shall not be subject to the variance compliance set forth in Section 5.3(b) hereof.

      5.4    <u>DIP Milestones</u>.  In addition to the continuing representations, warranties and covenants heretofore and hereafter made by Borrowers and Guarantors to Agent and Lenders, whether pursuant to the Financing Agreements or otherwise, and not in limitation thereof, each Borrower and Guarantor represents, warrants and covenants to the following (the "**DIP Milestones**"):

      (a)    On or prior to the commencement of the Chapter 11 Cases ("Petition Date"), the Debtors shall have commenced going out of business sales at the 67 store locations identified on <u>Schedule 1</u>, attached hereto, on terms and conditions acceptable to Agent;

      (b)    On the Petition Date, the Debtors shall file motions, each in form and substance satisfactory to the Agent, requesting approval from the Bankruptcy Court:

      (i)    to (A) conduct the Debtors' going out of business sales in accordance with Section 363 of the Bankruptcy Code at the 106 store locations identified on <u>Schedule 2</u> attached hereto (as may be amended from time to time with the prior written consent of Agent) on terms and conditions acceptable to Agent (the "Store Closing GOB Sales"); and (B) to assume Debtors' prepetition store closing liquidation agreement, entered into between Debtors and Gordon Brothers (the "Store Closing Liquidation Agreement"), in each case on terms and conditions satisfactory to the Agent;

      (ii)    of bidding and auction procedures, in form and substance satisfactory to Agent, in connection with the sale or sales of all or substantially all of the Debtors' Pharmacy Inventory and Prescription Files and related assets (the "Rx Bidding Procedures Motion");

      (iii)    of a Disclosure Statement and proposed plan of reorganization pursuant to Chapter 11 of the Bankruptcy Code (the "Plan of Reorganization"), each on terms and conditions  satisfactory to Agent (provided that nothing in this clause (iii) shall constitute a vote by Agent or any Lender in favor of the Plan of Reorganization or a commitment by Agent or any Lender to vote in favor of the Plan of Reorganization); and

      (iv)    of the senior secured financing under the Financing Agreements on the terms and conditions contemplated by the Loan Agreement, granting to Agent the security interests and liens and super-priority administrative expense claim status described above, modifying the automatic stay and other provisions required by the Agent and its counsel (the "DIP Financing")

      (c)    On or before the third (3rd) day following the Petition Date, the Bankruptcy Court shall have entered interim orders, each in form and substance satisfactory to Agent, authorizing (i) the Store Closing GOB Sales, and the assumption of the Store Closing Liquidation Agreement, and (ii) the bidding and auction procedures set forth in the Rx Bidding Procedures Motion (the "Rx Bidding Procedures Order"), and (iii) the DIP Financing, and scheduling a

hearing to approve the Disclosure Statement;

(d)     On or before the tenth (10th) day following the Petition Date, the Debtors shall have conducted an auction (the "Rx Auction") for the sale or sales of all or substantially all of the Debtors' Pharmacy Inventory, Prescription Files and related assets and properties and selected the winning bid(s) (the "Rx Sale") and is otherwise in form and substance reasonably satisfactory to Agent in connection with such Rx Sale;

(e)     On or before the thirteenth (13th) day following the Petition Date, the Bankruptcy Court shall have entered a (i) final Rx Bidding Procedures Order, and (ii) a final order approving the Rx Sale, which order shall be in form and substance acceptable to the Agent;

(f)     On or before the fourteenth (14th) day following the Petition Date, the Debtors shall have delivered an amendment to the Budget, in form and substance acceptable to Agent, solely to reflect adjustments directly arising from the Store Closing Liquidation Agreement.

(g)     On or before the thirtieth (30th) day following the Petition Date, the Bankruptcy Court shall have entered final orders, each in form and substance satisfactory to Agent authorizing (i) the Store Closing GOB Sales, (ii) the assumption of the Store Closing Liquidation Agreement, and (iii) the DIP Financing.

(h)     On or before March 1, 2019, the Debtors shall deliver to Agent a business plan for the Reorganized Debtors in form and substance acceptable to the Agent, including without limitation any financial projections, assumptions, and calculations reasonably requested by the Agent.

(i)     On or before the forty-fifth (45th) day following the Petition Date the Debtors shall have received court approval to extend the general time period to accept/reject leases from the permitted 120 day time period to not less than 210 days;

(j)     If the final Store Closing GOB Sales Order does not allow the Debtors to conduct going out of business sales for all or substantially all of the Debtors' remaining assets and properties, then on or before March 6, 2019, the Debtors shall have selected a "stalking horse" offer for the sale of all or substantially all of the Debtors' assets and properties and/or liquidation of the Debtors' assets, in form and substance acceptable to Agent;

(k)     If the final Store Closing GOB Sales Order does not allow the Debtors to conduct going out of business sales for all or substantially all of the Debtors' remaining assets and properties, then on or before March 8, 2019, the Debtors shall have filed in the Bankruptcy Court a motion (the "Sale Motion") seeking entry of a final order (the "Bidding Procedures Order") approving (A) the stalking horse sale agreement for all or substantially all of the Debtors' remaining assets ("Stalking Horse APA") and/or liquidation of the Debtors' assets, and (B) bidding and auction procedures (if necessary) in connection with a sale of all or substantially all remaining assets of each Debtor, pursuant to Section 363 of the Bankruptcy Code, which Sale Motion (including all deadlines contained therein) shall be reasonably satisfactory to the Agent (the "363 Sale");

(l)     On or before the forty-fifth (45th) day following the Petition Date, the Debtors

shall have consummated the Rx Sale, pursuant to one or more purchase agreements, in form and substance acceptable to Agent, entered into among the Debtors and the winning bidder(s) at the Rx Auction; provided that failure to comply with this milestone shall result in the commencement of the Sale Milestones (as defined below) and not constitute an Event of Default;

(m)   The Debtors shall comply with the following milestones ("Plan Milestones"); provided that failure to comply with these milestones shall result in the commencement of the Sale Milestones (as defined below) and not constitute an Event of Default:

(i) on or before March 14, 2019, Debtors shall deliver to Agent (A) a commitment letter in form and substance reasonably acceptable to Agent from one or more sponsors or other financial institutions reasonably acceptable to Agent (such sponsors or financial institutions referred to herein collectively as the "Sponsor"), reflecting, among other things, such Sponsor's commitment and financial wherewithal to provide financing sufficient to support the feasibility and confirmation of the Plan, on terms and conditions acceptable to Agent (the "Commitment Letter") (provided that nothing in this clause (i) shall constitute a vote by Agent or any Lender in favor of the Plan of Reorganization or a commitment by Agent or any Lender to vote in favor of the Plan of Reorganization), or (B) such other financial information and commitments in form and substance acceptable to Agent sufficient to demonstrate that Debtors will have sufficient liquidity and are otherwise likely to consummate the Plan of Reorganization and reorganize, in each case as Agent may determine in its sole discretion;

(ii) on or before March 22, 2019, the Debtors shall obtain an order from the Bankruptcy Court approving the Disclosure Statement on terms and conditions reasonably satisfactory to the Agent, and such order is not thereafter vacated, reversed, modified or altered on appeal or by reconsideration without the prior written consent of the Agent;

(iii) on or before April 5, 2019, Agent shall have received, in form and substance acceptable to Agent, a proposed order confirming the Plan of Reorganization pursuant to section 1129 of the Bankruptcy Code in form and substance acceptable to Agent (the "Proposed Confirmation Order"), which plan shall include procedures for the orderly wind down and liquidation of the Debtors' assets and properties in the event the conditions for reorganization are not satisfied (provided that nothing in this clause (iii) shall constitute a vote by Agent or any Lender in favor of the Plan of Reorganization or a commitment by Agent or any Lender to vote in favor of the Plan of Reorganization);

(iv) on or before April 12, 2019, the Debtors shall obtain an order from the Bankruptcy Court confirming the Plan of Reorganization pursuant to section 1129 of the Bankruptcy Code in form and substance acceptable to the Agent; and

(v) on or before April 15, 2019, the Effective Date under (and as defined in) the Plan of Reorganization shall occur;

(n)     If (i) the final Store Closing GOB Sales Order does not allow the Debtors to conduct going out of business sales for all or substantially all of the Debtors' remaining assets and properties, and (ii) Debtors fail to satisfy the Plan Milestone set forth in section (m)(i), then on or before March 15, 2019, Debtors shall deliver to Agent the Bidding Procedures Order entered by the Bankruptcy Court in form and substance acceptable to Agent;

(o)     If (i) Debtors fail to satisfy the Plan Milestone set forth in section (m)(i) above, and (ii) the Debtors have filed the Sale Motion in accordance with paragraph (k) above, then on or before March 20, 2019, the Debtors shall have obtained an order from the Bankruptcy Court approving the 363 Sale in form and substance acceptable to Agent, and providing for, among other things, the receipt by Agent of all cash proceeds from the 363 Sale to be applied to the indefeasible payment in full of all Obligations in accordance with Section 6.4 of the Loan Agreement and Financing Orders (the "363 Sale Order");

(p)     Notwithstanding anything to the contrary contained above, if at any time prior to expiration of the term of the Loan Agreement, (i) an Event of Default occurs and is continuing under the Loan Agreement without being waived in writing by Agent and, to the extent required pursuant to the Loan Agreement, by the requisite number of Lenders, (ii) there is a negative variance in the actual proceeds received from Rx Sales from the projected proceeds from Rx Sales, as set forth in the line item of the Budget titled "Proceeds from Rx Asset Sales", in any given Measurement Period of the Budget in excess of 15% or (iii) Debtors fail to comply with the Plan Milestones (each of the forgoing, a "Sale Trigger Event"), then Debtors shall comply with the following milestones ("Sale Milestones"):

(i) (A) on or before the date that is seven days following the date on which the Sale Trigger Event occurs, Debtors shall deliver to Agent a new 13-week statement of availability, cash receipts and disbursements for the immediately following consecutive 13 weeks ("Sale Budget") in form and substance acceptable to Agent, which upon Agent's written acceptance shall be the Budget, and (B) on or before the date that is two days following the date on which the Sale Trigger Event occurs, the Debtors shall either (i) commence the sale of all or substantially all of the Debtors' remaining assets and properties to the extent permitted by the final Store Closing GOB Sales Order and Store Closing Liquidation Agreement, or (ii) file the Sale Motion seeking entry of the Bidding Procedures Order in connection with a sale of all or substantially all remaining assets of each Debtor, pursuant to Section 363 of the Bankruptcy Code, which Sale Motion (including all deadlines contained therein) shall be satisfactory to the Agent; and

(ii) if the final Store Closing GOB Sales Order does not allow the Debtors to conduct going out of business sales for all or substantially all of the Debtors' remaining assets and properties, then:

(A)     on or before the date that is five days following the date on which the Sale Trigger Event occurs, the Bankruptcy Court shall have entered the Bidding Procedures Order;

(B)    on or before the date that is seven days following the date on which the Sale Trigger Event occurs, the Debtors shall have distributed Bid Packages (as defined in the Bidding Procedures Order) to each Person meeting the criteria for receipt of a Bid Package as set forth in the Bidding Procedures Order;

(C)    on or before the date that is ten days following the date on which the Sale Trigger Event occurs, the Debtors shall have received one or more qualified bids in form and substance acceptable to Agent;

(D)    on or before the date that is twelve days following the date on which the Sale Trigger Event occurs, the Debtors shall have conducted an auction for the sale or sales of all or substantially all of the Debtors' assets and properties and selected the winning bid(s) in connection with such 363 Sale;

(E)    on or before the date that is fourteen days following the date on which Sale Trigger Event occurs, the Bankruptcy Court shall have entered an order approving the 363 Sale, which order shall be in form and substance acceptable to the Agent and shall provide for, among other things, the receipt by Agent of all cash proceeds from the 363 Sale to be applied to the indefeasible payment in full of all Obligations in accordance with Section 6.4 of the Loan Agreement and Financing Orders.

5.5    Ratification of Deposit Account Control Agreement.  To the extent Agent deems it necessary in its reasonable discretion and promptly upon Agent's request, Borrowers and Guarantors shall promptly provide Agent with evidence, in form and substance satisfactory to Agent, that the Deposit Account Control Agreements (as defined in the Financing Order) and other deposit account arrangements provided for under Section 6.3 of the Loan Agreement have been ratified and amended by the parties thereto, or their respective successors in interest to reflect the commencement of the Chapter 11 Case, that each Borrower and each Guarantor, as Debtor and Debtor-in-Possession, is the successor in interest to such Borrower or Guarantor, that the Obligations secured by the Lien relating to each Deposit Account Control Agreement include both the Pre-Petition Obligations and the Post-Petition Obligations, that the Collateral covered by each Deposit Account Control Agreement includes both the Pre-Petition Collateral and the Post-Petition Collateral as provided for in the Ratification Agreement.

5.6    ERISA.  Each Borrower and Guarantor hereby represents and warrants with, to and in favor of Agent and Lenders that (a) there are no liens, security interests or encumbrances upon, in or against any assets or properties of any Borrower or Guarantor arising under ERISA, whether held by the Pension Benefit Guaranty Corporation (the "**PBGC**") or the contributing sponsor of, or a member of the controlled group thereof, any pension benefit plan of any Borrower or Guarantor and (b) no notice of lien has been filed by the PBGC (or any other Person) pursuant to ERISA against any assets or properties of any Borrower or Guarantor.

5.7    Maximum Outstanding Loans and Letters of Credit.  Notwithstanding anything to the contrary contained in the Loan Agreement or the other Financing Agreements, Agent and Lenders shall have no obligation whatsoever to make any Loan to the Borrowers or issue any Letters of Credit on behalf of the Borrowers to the extent that, immediately after giving effect to the making of such Loan or issuance of such Letter of Credit, the then aggregate

outstanding amount of all Loans and Letter of Credit Obligations would exceed at any time the Maximum Credit as determined by Agent in its discretion.

      5.8    <u>Financial Advisor</u>.

      (a)    The Debtors shall retain, at all times during which the Obligations remain outstanding, Berkeley Research Group LLC as its financial advisor (the "**Financial Advisor**"), at the sole cost and expense of the Debtors, on terms and conditions acceptable to Agent. The Financial Advisor shall, in consultation with the Debtors other advisors, (i) negotiate the terms of debtor in possession financing facilities for Parent and related adequate protection arrangements in respect of the Debtors' credit facilities, (ii) negotiate the terms of any plan or pre- or post-petition asset purchase agreement, and to enter into binding and definitive agreement(s) on behalf of the Debtors with respect to the foregoing, and (iii) supervise the structuring and conduct a sale or plan process for the Debtors, including negotiating the terms of any competing bids. The Debtors hereby irrevocably authorize and direct the Financial Advisor to consult with Agent and to share with Agent and Lenders, upon reasonable request therefor by Agent, all financial reports, budgets and any variances from same, other financial information, operational issues, matters related to the Collateral, all reports prepared or reviewed by the Financial Advisor, information on the sale and maintenance of the Debtors' businesses and assets and such other matters as the Agent may reasonably request; provided that the Financial Advisor shall not be required to provide copies of any reports (financial or otherwise) that are in "draft" or "work product" form or privileged. The Debtors agree to provide the Financial Advisor with complete access to all of the books and records of the Debtors, all of premises of the Debtors and to all management and employees of the Debtors as and when deemed necessary by the Financial Advisor.

      (b)    Any amendment, modification or termination of the retention agreement with the Financial Advisor without the prior written consent of Agent shall constitute an Event of Default. The Debtors acknowledge and agree that the Debtors shall cause the Financial Advisor, as further described in clause (a) above, (i) to keep Agent fully informed of the progress of the business and operations of the Debtors and to respond to any reasonable inquiries of Agent regarding the maintenance of the Borrower's businesses and the sale of their assets and (ii) to communicate and cooperate with Agent and share all information, as reasonably requested thereby, with Agent regarding the Debtors, and the sale and maintenance of the Debtors' businesses and assets.

      (c)    If the Financial Advisor resigns, the Debtors shall immediately notify Agent in writing and promptly after receipt thereof, provide Agent with a copy of any notice of resignation from such Financial Advisor. Any replacement or successor Financial Advisor shall be reasonably acceptable to Agent, shall be retained pursuant to a new retention agreement on terms and conditions reasonably acceptable to Agent within five (5) Business Days immediately following the notice of resignation of the resigning Financial Advisor and shall be approved by the Bankruptcy Court. Failure to comply with the terms and conditions of this Section shall constitute an Event of Default.

      5.9    <u>Super-Priority Administrative Expense</u>. Each Borrower and Guarantor hereby represents and warrants with, to and in favor of Agent and Lenders that all amounts

owing by Borrowers and Guarantors under the Loan Agreement at all times after entry of the Permanent Financing Order and for all sums advanced by Lenders during the period on and after the entry of the Interim Financing Order will constitute allowed super-priority administrative expense claims in the Chapter 11 Cases having priority over all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out to the extent provided in any Financing Order.

       **5.10**   <u>Early Termination</u>.  Notwithstanding anything to the contrary contained in this Ratification Agreement, the Loan Agreement or the other Financing Agreements, the parties hereto acknowledge and agree that, solely for purposes of Sections 3.2(d) and 3.2(e) of the Loan Agreement, the Events of Default described in Sections 10.1(g) and 10.1(h) of the Pre-Petition Loan Agreement have occurred and are continuing and survive the execution and effectiveness of this Ratification Agreement.

    **6.**     [Reserved].

    **7.**     <u>AMENDMENTS</u>.

       **7.1**   <u>Mandatory Prepayments</u>.   Section 2.1(d) of the Pre-Petition Loan Agreement is hereby amended by adding the following sentence at the end thereof:

        "In addition, in the event that Borrowers fail to meet the DIP Milestones (other than the Plan Milestones), Borrowers shall, upon demand by Agent, which may be made at any time or from time to time, immediately repay Loans and other Obligations to Agent in an amount equal to 100% of the net cash proceeds from asset sales generating during the Chapter 11 Cases, which shall be applied in accordance with Section 6.4 hereof."

       **7.2**   <u>Limits and Sublimits</u>.  Section 2 of the Pre-Petition Loan Agreement is hereby amended by adding the following new Section 2.6 at the end of such Section:

        "2.6   <u>Limit and Sublimit Construction</u>.  All limits and sublimits set forth in this Agreement, and any formula or other provision to which a limit or sublimit may apply, shall be determined on an aggregate basis considering together both the Pre-Petition Obligations and the Post-Petition Obligations."

       **7.3**   <u>Elimination of Eurodollar Rate Loans</u>.

       (a)     Section 3.1(b) of the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following is substituted therefor "(b) [Reserved]."

       (b)     Section 3.1(c) of the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following is substituted therefor "(c) [Reserved]."

       (c)     Notwithstanding anything to the contrary contained in the Loan Agreement, (i) all Eurodollar Rate Loans shall automatically convert to Prime Rate Loans as of the Ratification Closing Date without any action taken or required to be taken by any Person, (ii)

Borrowers shall not request or have any right to receive any Eurodollar Rate Loans from Agent and Lenders, and Borrowers shall not request or have any right to convert any Prime Rate Loans to Eurodollar Rate Loans, and (iii) Agent and Lenders shall not have any obligation to make any Eurodollar Rate Loans to any Borrower or to convert any Prime Rate Loans into Eurodollar Rate Loans. Notwithstanding anything to the contrary contained herein or in the Loan Agreement, the reference to the Adjusted Eurodollar Rate in the definition of "Prime Rate" is only with reference to determining the Prime Rate and any Loan made in reference to such rate shall not constitute a Eurodollar Rate Loan such that the provisions under Sections 3.3(b), (c) and (d) would have any application to the Prime Rate Loans.

   **7.4** <u>Letter of Credit Fees</u>.  Section 3.2(b) of the Pre-Petition Loan Agreement is hereby amended by deleting each reference to "which are Eurodollar Rate Loans".

   **7.5** <u>Special Provisions Regarding Collateral</u>.  Section 5.3 of the Pre-Petition Loan Agreement is hereby amended by deleting such Section in its entirety and replacing it with the following "5.3 [Reserved]."

   **7.6** <u>Payments</u>.  Section 6.4 of the Pre-Petition Loan Agreement is hereby amended by adding the following new subsection (h) at the end of such Section:

    "(h) Notwithstanding anything to the contrary contained in this Agreement or any of the other Financing Agreements, Agent shall, to the extent authorized by the Financing Orders, apply any such payments or proceeds <u>first</u>, to the Pre-Petition Obligations in accordance with Section 6.4 hereof until such Pre-Petition Obligations are paid and satisfied in full and <u>second</u>, to the Post-Petition Obligations in accordance with Section 6.4 hereof until such Post-Petition Obligations are paid and satisfied in full."

   **7.7** <u>Collection and Administration</u>.  Section 6 of the Pre-Petition Loan Agreement is hereby amended by adding the following new Section 6.13 at the end of such Section:

    "6.13 <u>Misapplied Payments</u>.  Notwithstanding anything to the contrary contained in this Agreement, if Agent in good faith determines that any amount of proceeds of Term Loan Priority Collateral have been applied to repay Obligations in accordance with Section 6.4(b):

     (a) Agent may establish a Reserve in an amount equal to such amount of proceeds, and

     (b) Borrowers shall be deemed to have requested, automatically and without the need for any further action, the borrowing of Revolving Loans A in an amount equal to such amount of proceeds, which Revolving Loans A shall be applied to repay Obligations in accordance with Section 6.4(d)."

    **7.8**   <u>Collateral Reporting</u>.  Section 7.1(a) of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the "." at the end of such section and substituting ";" therefor; and (ii) adding the following new subsections at the end of Section 7.1(a) as follows:

> "(viii)  daily, on each business day during the Chapter 11 Cases, a "roll-forward" of the Inventory (including without limitation Pharmacy Inventory) and Prescription Files;

> (ix)    no less frequently than weekly, on the Wednesday of each week during the Chapter 11 Cases, a report, in reasonable detail with respect to all Store Closing GOB Sales, Real Property sales, Rx Sales and sales, proposed sales or assignments of other Collateral outside the ordinary course of Debtors' businesses that have been made during the prior week including but not limited to all sales of the following categories of Collateral:  (A) inventory, (B) furniture, fixtures and equipment,(C) real property (including leases) and (D) intellectual property;

> (x)    upon Agent's request, monthly reports of the number of employees of Borrower and Guarantors to which any wage, salary or benefit statute or other law may apply as determined by Agent.

> (xi)    upon Agent's request, reports on the status of any sales or proposed sales of Collateral outside the ordinary course of Debtors' businesses, including any "going out of business" sales or pharmacy asset sales conducted prior to or during the Chapter 11 Cases."

    **7.9**   <u>Inventory Covenants</u>.

    (a)    Section 7.3(c) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with the following:

> "(c) other than as a result of the Store Closing GOB Sales and the Rx Sale, and except as permitted under Section 9.2 hereof, each Borrower and Guarantor shall not remove any Inventory from the locations set forth or permitted herein, without the prior written consent of Agent, except for sales of Inventory in the ordinary course of its business and except to move Inventory directly from one location set forth or permitted herein to another such location and except for Inventory shipped from the manufacturer thereof to a Borrower or Guarantor which is in transit to the locations set forth or permitted herein;"

    (b)    Section 7.3(d) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with the following:

> "(d) Borrowers shall, deliver or cause to be delivered to Agent written appraisals as to the Inventory in form, scope and methodology acceptable to Agent and by an appraiser acceptable to Agent, addressed to Agent and Lenders and upon which Agent and Lenders are expressly permitted to

rely, (i) one (1) time in any calendar quarter at Borrowers' expense, (ii) [reserved], (iii) in addition to the appraisals delivered pursuant to clauses (i) and (ii) above, at any time or times as Agent may reasonably request at Borrowers' expense upon the occurrence and during the continuance of an Event of Default and (iv) in addition to the appraisals delivered pursuant to clauses (i), (ii) and (iii) above, at any additional time or times as Agent may request at the expense of Lenders;"

**7.10**   <u>Equipment and Real Property Covenants</u>.

(a)   Section 7.4(a) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with the following:

"(a)(i) Borrowers shall, deliver or cause to be delivered to Agent written appraisals as to the Eligible Equipment in form, scope and methodology acceptable to Agent and by an appraiser acceptable to Agent, addressed to Agent and Lenders and upon which Agent and Lenders are expressly permitted to rely, (A) no more than one (1) time in any calendar quarter at Borrowers' expense upon Agent's request, (B) [reserved], (C) in addition to the appraisals delivered pursuant to clauses (A) and (B) above, at any time or times as Agent may reasonably request at Borrowers' expense upon the occurrence and during the continuance of an Event of Default and (D) in addition to the appraisals delivered pursuant to clauses (A), (B) and (C) above, at any additional time or times as Agent may request at the expense of Lenders, and (ii) Borrowers shall, deliver or cause to be delivered to Agent written appraisals as to the Eligible Real Property in form, scope and methodology acceptable to Agent and by an appraiser acceptable to Agent, addressed to Agent and Lenders and upon which Agent and Lenders are expressly permitted to rely, (A) no more than one (1) time in any calendar quarter at Borrowers' expense upon Agent's request, (B) [reserved], (C) in addition to the appraisals delivered pursuant to clauses (A) and (B) above, at any time or times as Agent may request at Borrowers' expense upon the occurrence and during the continuance of an Event of Default and (D) in addition to the appraisals delivered pursuant to clauses (A), (B) and (C) above, at any additional time or times as Agent may request at the expense of Lenders;"

(b)   Section 7.4(e) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with the following:

"(e) other than as a result of the Store Closing GOB Sales, and without limitation upon the rights of Borrowers and Guarantors to dispose of Equipment pursuant to Section 9.7(b) hereof, each Borrower and Guarantor shall not remove any Equipment from the locations set forth or permitted herein, except to the extent necessary to have any Equipment repaired or maintained in the ordinary course of its business or to move Equipment directly from one location set forth or permitted herein to

another such location and except for the movement of motor vehicles used by or for the benefit of Borrowers or Guarantors in the ordinary course of business;"

      7.11   <u>Prescription Files Covenants</u>.  Section 7.5(c) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with the following:

> "(c) Borrowers shall, deliver or cause to be delivered to Agent written appraisals as to the Prescription Files in form, scope and methodology acceptable to Agent and by an appraiser acceptable to Agent, addressed to Agent and Lenders and upon which Agent and Lenders are expressly permitted to rely, (i) one (1) time in any calendar quarter at Borrowers' expense, (ii) [reserved], (iii) in addition to the appraisals delivered pursuant to clauses (i) and (ii) above, at any time or times as Agent may reasonably request at Borrowers' expense upon the occurrence and during the continuance of an Event of Default and (iv) in addition to the appraisals delivered pursuant to clauses (i), (ii) and (iii) above, at any additional time or times as Agent may request at the expense of Lenders;"

      7.12   <u>Access to Premises</u>.  Section 7.9 of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with the following:

> "From time to time as requested by Agent, at the cost and expense of Borrowers, (a) Agent or its designee shall have complete access to all of each Borrower's and Guarantor's premises during normal business hours and after reasonable notice to Administrative Borrower, or at any time and without notice to Administrative Borrower if an Event of Default exists or has occurred and is continuing, for the purposes of inspecting, verifying and auditing the Collateral and all of each Borrower's and Guarantor's books and records, including the Records (it being agreed that unless an Event of Default shall exist or have occurred and be continuing, Agent shall not conduct more than one (1) field audit of the Collateral and books and records, including the Records of Borrowers and Guarantors, in any calendar quarter at the expense of Borrowers, <u>provided</u>, <u>that</u>, Agent may conduct additional field audits of the Collateral and books and records at the expense of Lenders, and (b) each Borrower and Guarantor shall promptly furnish to Agent such copies of such books and records or extracts therefrom as Agent may request, and any Lender's designee may use during normal business hours such of any Borrower's and Guarantor's personnel, equipment, supplies and premises as may be reasonably necessary for the foregoing and if an Event of Default exists or has occurred and is continuing for the collection of Receivables and realization of other Collateral.  Notwithstanding the foregoing, Agent may, at the expense of Borrowers, conduct field audits as Agent may reasonably require at any time upon the occurrence and during the continuance of an Event of Default."

7.13    Existence; Power and Authority.  Section 8.1 of the Pre-Petition Loan Agreement is hereby amended by (i) lower casing the word "The" in the second sentence therein and inserting immediately prior to such second sentence the following phrase "Subject to any entry of any required orders of the Bankruptcy Court including, without limitation, the entry of the Interim Financing Order and the Permanent Financing Order, as applicable," and (ii) lower casing the word "This" in the third sentence therein and inserting immediately prior to such third sentence the following phrase "Subject to the entry of the Interim Financing Order and the Permanent Financing Order, as applicable,".

7.14    Litigation. Section 8.6 of the Pre-Petition Loan Agreement is hereby amended by lower casing the word "Except" in the first sentence therein and inserting immediately prior to such first sentence the following phrase "Except for the Bankruptcy Events and".

7.15    Compliance with Other Agreements and Applicable Laws. (i) Section 8.7(a) of the Pre-Petition Loan Agreement is hereby amended by inserting immediately prior to the first sentence therein the following phrase "Other than as a result of the Bankruptcy Event (the exercise of remedies as a result of which are stayed under the Bankruptcy Code), the" and (ii) Section 8.7(b) of the Pre-Petition Loan Agreement is hereby amended by inserting immediately prior to the first sentence therein the following phrase "Subject to the entry of the Interim Financing Order and the Permanent Financing Order, as applicable, the".

7.16    Solvency. Section 8.12 of the Pre-Petition Loan Agreement is hereby amended by deleting clause (d) of such Section in its entirety and replacing it with "(d) [Reserved]."

7.17    Material Contracts. Section 8.15 of the Pre-Petition Loan Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

> "8.15    Material Contracts. Schedule 8.15 to the Information Certificate sets forth all Material Contracts to which any Borrower or Guarantor is a party or is bound as of the date hereof.  Borrowers and Guarantors have delivered true, correct and complete copies of such Material Contracts to Agent on or before the date hereof.  Other than the Bankruptcy Events, Borrowers and Guarantors are not in breach or in default in any material respect of or under any Material Contract and have not received any notice of the intention of any other party thereto to terminate any Material Contract, except where such breach, default or termination has not had or could not reasonably be expected to have a Material Adverse Effect or would otherwise be stayed by the filing of the Chapter 11 Case."

7.18    Credit Card Agreements.  Section 8.16 of the Pre-Petition Loan Agreement is hereby amended (i) by lower casing the word "No" in the fourth sentence therein and inserting immediately prior to such fourth sentence the following phrase "Other than the Bankruptcy Events," and (ii) by lower casing the word "Each" in the fifth sentence therein and inserting immediately prior to such fifth sentence the following phrase "Other than the Bankruptcy Events,".

5551993.7

**7.19**    <u>Payable Practices</u>. Section 8.17 of the Pre-Petition Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

"8.17    <u>Payable Practices</u>. Each Borrower and Guarantor has not made any material change in the historical accounts payable practices from those in effect immediately prior to the Ratification Closing Date (it being understood that the issuance of a Letter of Credit for the benefit of a vendor shall not, in and of itself, constitute a material change in the historical payable practices), except (i) as in accordance with the Budget, or (ii) with the written consent of the Agent."

**7.20**    <u>Accuracy and Completeness of Information</u>.    Section 8.22 of the Pre-Petition Loan Agreement is hereby amended by lower casing the word "Since" in the last sentence therein and inserting immediately prior to such last sentence the following phrase "Other than the Bankruptcy Events,".

**7.21**    <u>Compliance with Laws, Regulations, Etc</u>.    Section 9.3(a) of the Pre-Petition Loan Agreement is hereby amended by lower casing the word "Each" in the first sentence therein and inserting immediately prior to such first sentence the following phrase "Except to the extent non-compliance is permitted under the Bankruptcy Code,".

**7.22**    <u>Financial Statements and Other Information</u>.    Section 9.6(b) of the Pre-Petition Loan Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

"(b)    Borrowers and Guarantors shall promptly notify Agent and (solely in the case of clause (vii) below) Term Loan B Agent and Term Loan B-1 Agent in writing of the details of (i) any loss, damage, investigation, action, suit, proceeding or claim relating to Collateral having a value of more than $4,000,000 or which if adversely determined could reasonably be expected to result in a Material Adverse Effect, other than events arising as a result of the filing of the Chapter 11 Case, the exercise of remedies as a result of which are stayed under the Bankruptcy Code, (ii) any Material Contract being terminated or amended or any new Material Contract entered into (in which event Borrowers and Guarantors shall provide Agent with a copy of such Material Contract), (iii) any order, judgment or decree in excess of $4,000,000 shall have been entered against any Borrower or Guarantor any of its or their properties or assets, (iv) any notification of a material violation of laws or regulations received by any Borrower or Guarantor, (v) any ERISA Event, (vi) the occurrence of any Default or Event of Default, and (vii) the sale or other disposition of any Term Loan Priority Collateral during the continuance of a Term Loan Priority Collateral Proceeds Event."

**7.23**    <u>Financial Statements and Other Information</u>.    Section 9.6 of the Pre-Petition Loan Agreement is hereby amended by adding the following new subsection at the end of such Section:

"(f) Borrowers and Guarantors shall also provide Agent and Lenders with copies of all financial reports, schedules and other materials and information at any time furnished by or on behalf of any Borrower or Guarantor to the Bankruptcy Court (other than those filed on the docket of the Bankruptcy Court), or the U.S. Trustee, or any material information not previously provided to Agent with respect to the Chapter 11 Case that is provided to any creditors' committee or such Borrower or Guarantor's shareholders, substantially concurrently with the delivery thereof to the Bankruptcy Court, creditors' committee, U.S. Trustee or shareholders, as the case may be."

**7.24** <u>Sale of Assets, Consolidation, Merger, Dissolution, Etc.</u>

(a)     Section 9.7(b)(v) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with the following:

"(v) the Store Closing GOB Sales, the Rx Sale and any other sale or disposition of assets of Borrowers or Guarantors in connection with the Chapter 11 Case, in each case, in accordance with this Agreement, the Budget, Financing Orders, and any other order entered by the Bankruptcy Court in form and substance reasonably acceptable to Agent; <u>provided</u>, <u>that</u>, as to any such sale or disposition, Borrowers and Guarantors shall promptly apply all proceeds payable or deliverable to any Borrower or Guarantor in respect of such sale or disposition to the Obligations in accordance with the Loan Agreement ;"

(b)     Section 9.7(c) of the Pre-Petition Loan Agreement is hereby amended by (i) inserting immediately prior to the first sentence therein the following phrase "other than with respect to the Store Closing GOB Sales,", and (ii) deleting clause (vii) therein in its entirety.

**7.25** <u>Encumbrances</u>.

(a)     Section 9.8(m) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(m) [reserved];".

(b)     Section 9.8 of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the period appearing at the end of clause (u) of such definition and replacing it with a semi-colon, and (ii) adding the following clauses at the end thereof:

"(v) all liens existing on the Petition Date that were permitted under the Pre-Petition Loan Agreement to the extent such liens were legal, valid, binding, enforceable and non-avoidable as of the Petition Date (including any that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code), and are not otherwise avoided, recharacterized or subordinated after the Petition Date;

(w) the Adequate Protection Liens; and

30

(x) liens on the Collateral in respect of the Carve-Out."

**7.26** <u>Indebtedness</u>.   Notwithstanding anything to the contrary contained in Section 9.9 of the Loan Agreement or any other provision of the Loan Agreement or any of the other Financing Agreements, the Borrowers and Guarantors will not, and will not permit any Subsidiary, after the Ratification Closing Date, to optionally prepay, redeem, defease, purchase, or otherwise acquire any Indebtedness for borrowed money (other than the Obligations or as otherwise made in accordance with the Budget) without the prior written consent of the Agent.

**7.27** <u>Loans, Investments, Etc.</u>

(a)     Section 9.10(d) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(d) [reserved];".

(b)     Section 9.10(h) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(h) [reserved];".

(c)     Section 9.10(i) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(i) [reserved];".

(d)     Section 9.10(j) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(j) [reserved];".

(e)     Section 9.10(k) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(k) [reserved];".

(f)     Section 9.10 of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the "and" at the end of clause (m) thereof, (ii) deleting the "." at the end of clause (n) thereof and substituting ";" therefor, and (iii) adding the following new subsection (o) at the end of such Section:

"(o) in accordance with an express and separate line item in the Budget entitled "Permitted Investments"."

**7.28** <u>Dividends and Redemptions</u>.

(a)     Section 9.11(d) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(d) [reserved];".

(b)     Section 9.11(e) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with the following:

"(e) in accordance with an express and separate line item in the Budget entitled "Permitted Distributions"."

**7.29** <u>Transactions with Affiliates</u>.

(a)      Section 9.12(b)(iv) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(iv) [reserved];".

(b)      Section 9.12(b)(vi) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(vi) [reserved];".

(c)      Section 9.12(b)(vii) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(vii) [reserved];".

(d)      Section 9.12(b)(viii) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(viii) [reserved];".

(e)      Section 9.12(b)(ix) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(ix) [reserved];".

(f)      Section 9.12(b)(x) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(x) [reserved];".

(g)      Section 9.12 of the Pre-Petition Loan Agreement is hereby amended by adding the following new clause at the end thereof:

> "provided, that, any action otherwise prohibited by this Section 9.12 shall be authorized if such action is in accordance with an express and separate line item in the Budget entitled "Permitted Transactions with Affiliates"."

**7.30**   <u>Credit Card Agreements</u>.     Section 9.13 of the Pre-Petition Loan Agreement is hereby amended by lower casing the word "Each" in the first sentence therein and inserting immediately prior to such first sentence the following phrase "Other than the Bankruptcy Events,".

**7.31**   <u>Costs and Expenses</u>.  Section 9.22 of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the "." at the end of such section and substituting ";" therefor, (ii) deleting "and" before clause (h) thereof, and (iii) adding the following new subsection (i) at the end of such Section:

> "and (i) the reasonable costs and expenses incurred by Agent (including, without limitation attorneys and consulting fees and expenses) in connection with the Chapter 11 Cases."

**7.32**   <u>Minimum Excess Availability</u>.  Section 9.25 of the Pre-Petition Loan Agreement is hereby amended by deleting such Section in its entirety and replacing it with "9.25 [Reserved]."

**7.33**   <u>Events of Default</u>.  Section 10.1 of the Pre-Petition Loan Agreement is hereby amended as follows:

(a)      Section 10.1(f) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(f) [reserved];".

(b)     Section 10.1(g) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(g) [reserved];".

(c)     Section 10.1(h) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(h) [reserved];".

(d)     Section 10.1(i) of the Pre-Petition Loan Agreement is hereby amended by inserting immediately at the beginning thereof the following phrase "other than the Bankruptcy Events, any of the following shall occur:".

(e)     Section 10.1(j) of the Pre-Petition Loan Agreement is hereby amended and restated as follows:

"(j) any Credit Card Issuer or Credit Card Processor shall send notice to any Borrower that it is ceasing to make or suspending payments (excluding, for the avoidance of doubt, any additional reserves or holdbacks put in place as a result of the Bankruptcy Events) to any Borrower or Guarantor of amounts due or to become due to any Borrower or Guarantor or shall cease or suspend such payments, or shall send notice to any Borrower or Guarantor that it is terminating its arrangements with any Borrower or Guarantor or such arrangements shall terminate as a result of any event of default under such arrangements, which continues for more than the applicable cure period, if any, with respect thereto, unless such Borrower or Guarantor shall have entered into arrangements with another Credit Card Issuer or Credit Card Processor, as the case may be, within sixty (60) days after the date of any such notice;"

(f)     Section 10.1 of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the word "or" at the end of Section 10.1(p), (ii) replacing the period appearing at the end of Section 10.1(q) with a semicolon, and (iii) adding the following at the end of such Section:

"(r) the occurrence of any condition or event which permits Agent or Lenders to exercise any of the remedies set forth in the Financing Order, including, without limitation, any "Event of Default" (as defined in any Financing Order);

(s) the termination or non-renewal of the Financing Agreements as provided for in any Financing Order;

(t) any Loan Party suspends or discontinues all or any material part of its business (other than with respect to the Store Closing GOB Sales as defined in and permitted by the Ratification Agreement), or is enjoined by any court or governmental agency from continuing to conduct all or any material part of its business, or a trustee or examiner with expanded powers is appointed for any Loan Party, or any of their respective properties;

(u)  any act, condition or event occurring after the Petition Date that has or could reasonably expect to have a Material Adverse Effect;

(v) conversion of the Chapter 11 Cases to Chapter 7 case(s);

(w) the dismissal of the Chapter 11 Cases (or any subsequent Chapter 7 case) either voluntarily or involuntarily;

(x) grant of a lien on or other interest in any property of any Loan Party, other than a lien or encumbrance permitted by the Loan Agreement or any Financing Order (including the Carve-Out), which is superior to or ranks in parity with Agent's security interest in or lien upon the Collateral;

(y) the failure of Borrowers or Guarantors to comply with any Financing Order;

(z) any Financing Order is revoked, remanded, vacated, reversed, stayed, rescinded, modified, or amended on appeal;

(aa) the failure of Borrowers to comply with any of the DIP Milestones (excluding the Plan Milestones);

(bb) appointment of a trustee, examiner or disinterested person with expanded powers relating to the operations or the business of Borrowers or Guarantors in the Chapter 11 Cases;

(cc) any administrative expense claim is allowed having priority or ranking in parity with the rights of Agent (excluding the Carve-Out);

(dd) any plan of reorganization is confirmed without Agent's and Required Lender's consent;

(ee) any tested line items (other than proceeds from Rx Sales) set forth in the Budget adversely deviate from the projected amounts set forth for such line items by more than 15% for the applicable Measurement Period;

(ff) material adverse change in the assets, or business or prospects of Borrowers and Guarantors (taken as a whole) (it being understood that the commencement of the Chapter 11 Cases, and any defaults under agreements that have no effect under the terms of the Bankruptcy Code as a result of the commencement thereof shall not be deemed a material adverse change)."

**7.34**   Remedies.

(a)     Section 10.2(f) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(f) [Reserved]."

(b)     Section 10.2(j) of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "(j) [Reserved]."

7.35    <u>Governing Law; Choice of Forum; Service of Process; Jury Trial Waiver</u>. Sections 11.1(a) and (b) of the Pre-Petition Loan Agreement are hereby amended by deleting such Sections in their entirety and replacing them with the following:

"(a)     The validity, interpretation and enforcement of this Agreement and the other Financing Agreements (except as otherwise provided therein) and any dispute arising out of the relationship between the parties hereto, whether in contract, tort, equity or otherwise, shall be governed by (i) the internal laws of the State of New York but excluding any principles of conflicts of law or other rule of law that would cause the application of the law of any jurisdiction other than the laws of the State of New York, and (ii) to the extent applicable, the Bankruptcy Code.

(b)     Borrowers, Guarantors, Agents, Collateral Agent, Term Loan B-1 Agent, Lenders and Issuing Bank irrevocably consent and submit to the non-exclusive jurisdiction of the Bankruptcy Court, the Supreme Court of New York County, New York and the United States District Court for the Southern District of New York whichever Agent may elect, and waive any objection based on venue or forum non conveniens with respect to any action instituted therein arising under this Agreement or any of the other Financing Agreements or in any way connected with or related or incidental to the dealings of the parties hereto in respect of this Agreement or any of the other Financing Agreements or the transactions related hereto or thereto, in each case whether now existing or hereafter arising, and whether in contract, tort, equity or otherwise, and agree that any dispute with respect to any such matters shall be heard only in the courts described above (except that Agent and Lenders shall have the right to bring any action or proceeding against any Borrower or Guarantor or its or their property in the courts of any other jurisdiction which Agent deems necessary or appropriate in order to realize on the Collateral or to otherwise enforce its rights against any Borrower or Guarantor or its or their property)."

7.36    <u>Waiver of Notices, etc</u>. Section 11.2 of the Pre-Petition Loan Agreement is hereby amended by deleting such Section in its entirety and replacing it with the following:

"11.2  <u>Waiver of Notices, etc.</u>  Each Borrower and Guarantor hereby expressly waives:

(a) demand, presentment, protest and notice of protest and notice of dishonor with respect to any and all instruments and chattel paper, included in or evidencing any of the Obligations or the Collateral, and any and all other demands and notices of any kind or nature whatsoever with respect to the Obligations, the Collateral and this Agreement, except such

as are expressly provided for herein. No notice to or demand on any Borrower or Guarantor which Agent, Collateral Agent or any Lender may elect to give shall entitle such Borrower or Guarantor to any other or further notice or demand in the same, similar or other circumstances; and

(b) any right that any Borrower or Guarantor may have to seek authority (i) to use cash collateral of Agent, Lenders, Issuing Bank or any other Secured Party under Section 363 of the Bankruptcy Code, (ii) to obtain post-petition loans or other financial accommodations pursuant to Sections 364(c) or (d) of the Bankruptcy Code without the prior written consent of Agent, (iii) to challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of Agent's post-petition liens and claims, (iv) to challenge the application of any payments or collections received by Agent, Lenders, Issuing Bank or any other Secured Party to the obligations of Borrowers and Guarantors as provided for herein, (v) to propose or support a plan of reorganization that does not provide for the indefeasible payment in full in cash and satisfaction of all Obligations on the effective date of such plan, (vi) to surcharge the Collateral pursuant to Section 506(c) of the Bankruptcy Code, or (vii) to seek relief under the Bankruptcy Code, including without limitation, under Section 105, to the extent any such relief would in any way restrict or impair the rights and remedies of Agent or any Lender, Issuing Bank or other Secured Party as provided herein, the Financing Agreements or the Financing Orders."

**7.37** <u>Amendments and Waivers</u>. Section 11.3 of the Pre-Petition Loan Agreement is hereby amended by adding the following new subsection at the end of such Section:

"(f) Notwithstanding anything to the contrary contained herein or in any other Financing Agreement, amendments, waivers and consents with respect to the provisions of the Financing Agreements relating to the Budget, Financing Orders, Store Closing GOB Sales, Store Closing Liquidation Agreement, the Rx Auction or Rx Sales, any other sale or disposition of the Collateral, any of the DIP Milestones, any bankruptcy Reserves, or clauses (b), (c) or (d) of the definition of Renewal Date shall not require approval of any Secured Party other than the Agent."

**7.38** <u>Term</u>. Section 14.1 of the Pre-Petition Loan Agreement is hereby amended by deleting the phrase "June 19, 2020 (the 'Renewal Date')" and replacing it with "the Renewal Date".

**7.39** <u>Assignments; Participations</u>. Section 14.7(b) of the Pre-Petition Loan Agreement is hereby amended by deleting the reference to "$20,000,000" and substituting "$5,000,000" therefor.

**7.40**   Schedule of Commitments.  Schedule 1 to the Loan Agreement is hereby amended by deleting such Schedule in its entirety and replacing it with Schedule 1 in the form attached hereto as Exhibit D to this Ratification Agreement.

**7.41**   Schedule of Existing Letters of Credit.  Schedule 1.79 to the Pre-Petition Loan Agreement is hereby amended by deleting such Schedule in its entirety and replacing it with Schedule 1.79 in the form attached hereto as Exhibit E to this Ratification Agreement.

**8.**   RELEASE.

**8.1**   Release of Pre-Petition Claims.

(a)   Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, in consideration of the agreements of Agent, Lenders and each other Secured Party contained herein and the making of any Loans by Agent and Lenders, each Borrower and Guarantor, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on behalf of itself and its respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Agents, Term Loan B-1 Agent, Collateral Agent, each Lender, each other Secured Party and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Agents, Term Loan B-1 Agent, Collateral Agent, each Lender, each other Secured Party and all such other parties being hereinafter referred to collectively as the "**Releasees**" and individually as a "**Releasee**"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "**Pre-Petition Released Claim**" and collectively, "**Pre-Petition Released Claims**") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which any Borrower or Guarantor, or any of their respective successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Closing Date, including, without limitation, for or on account of, or in relation to, or in any way in connection with the Pre-Petition Loan Agreement and the other Financing Agreements, as amended and supplemented through the date hereof.

(b)   Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, each Borrower and Guarantor, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released, remised and discharged by each Borrower and Guarantor pursuant to this Section 8.1.  If any Borrower or Guarantor violates the foregoing covenant, Borrowers and Guarantors agree to pay, in addition to such other damages as any Releasee may

sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

8.2     Release of Post-Petition Claims. Upon the payment in full of all of the Obligations, in consideration of the agreements of Agents, Term Loan B-1 Agent, Collateral Agent, Issuing Banks and Lenders contained herein and the making of any Loans by Agent and Lenders, each Borrower and Guarantor hereby covenants and agrees to execute and deliver in favor of Agents, Term Loan B-1 Agent, Collateral Agent, Issuing Banks, Lenders and other Secured Parties a valid and binding termination and release agreement, in form and substance satisfactory to Agent. If any Borrower or Guarantor violates such covenant, Borrowers and Guarantors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

8.3     Releases Generally.

(a)     Each Borrower and Guarantor understands, acknowledges and agrees that the releases set forth above in Sections 8.1 and 8.2 hereof may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such releases.

(b)     Each Borrower and Guarantor agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the releases set forth in Section 8.1 hereof and, when made, Section 8.2 hereof.

9.     CONDITIONS PRECEDENT.

The amendments, representations and warranties, covenants, defaults and all other agreements and obligations contained in Sections 1 through 8 of this Ratification Agreement shall only become effective upon the satisfaction (or waiver) of all of the following conditions precedent (the time of such satisfaction (or waiver) referred to herein as the "**Ratification Closing Date**"):

9.1     as of the Petition Date, the Pre-Petition Financing Agreements shall not have been terminated;

9.2     Borrowers and Guarantors shall have commenced a voluntary case under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court having exclusive jurisdiction over the Chapter 11 Cases by no later than January 16, 2019;

9.3     Borrowers and Guarantors shall have complied in full with the notice and other requirements of the Bankruptcy Code in a manner acceptable to Agent and its counsel, with respect to the Interim Financing Order and Agent shall have received such evidence thereof as it shall reasonably require;

**9.4** no trustee, or other disinterested person with expanded powers pursuant to Section 1104(c) of the Bankruptcy Code, shall have been appointed or designated with respect to any Borrower or Guarantor or their respective business, properties or assets and no motion shall be pending seeking any such relief;

**9.5** all of the first day orders shall have been entered by the Bankruptcy Court by the third (3rd) day following the Petition Date and shall be in form and substance satisfactory to Agent;

**9.6** a cash management order approving the cash management arrangements of Borrowers and Guarantors consistent with the requirements under the Financing Agreements shall have been entered, in form and substance satisfactory to Agent, and shall be in full force and effect, and has not been vacated, reversed or modified (except as consented to by Agent) and is not subject to any pending appeal or stay;

**9.7** the Interim Financing Order as entered by the Bankruptcy Court authorizing the secured financing under the Financing Agreements and, inter alia, modifying the automatic stay, authorizing and granting the security interests and liens described herein, and granting a super-priority administrative expense claim to Agent and other Secured Parties with respect to all obligations to Agent and other Secured Parties, subject to no priority claim or administrative expenses of the Chapter 11 Cases or any other entity, and any future proceeding which may develop out of any such cases, including liquidation in bankruptcy, shall have been entered within three (3) days after the commencement of the Chapter 11 Cases and be in full force and effect and not have been vacated, reversed, modified, amended or stayed and not be subject to a pending appeal or motion or motion for leave to appeal or other proceeding to set aside any such order or the challenge to the relief provided for in it, except as consented to by Agent;

**9.8** receipt by Agent of a proposed Plan of Reorganization, on terms and conditions reasonably satisfactory to Agent, which provides for, among other things, either (i) the entry by Debtors into an exit financing facility on terms and conditions acceptable to Agent or (ii) the indefeasible payment in full of all Pre-Petition Obligations owing under the Pre-Petition Financing Agreements and Post-Petition Obligations owing under the Financing Agreements on or before the "effective date" of the Plan of Reorganization (provided that nothing in this Section 9.8 shall constitute a vote by Agent or any Lender in favor of the Plan of Reorganization or a commitment by Agent or any Lender to vote in favor of the Plan of Reorganization);

**9.9** receipt by Agent, each in form and substance satisfactory to Agent, of (i) the initial Budget, (ii) any updates or modifications to the projected financial statements of Borrowers and Guarantors previously received by Agent, in each case in form and substance satisfactory to Agent, and (iii) copies of satisfactory interim unaudited financial statements for each month ended since the last audited financial statements for which financial statements are available;

**9.10** Agent's completion of its due diligence, with results satisfactory to Agent, which diligence may include receipt by Agent and Lenders of the documentation and other

information that is required by regulatory authorities under applicable "know your customer" and anti-money-laundering rules and regulations, including, without limitation, the Patriot Act. Agent shall be satisfied with the corporate and capital structure and management of Borrowers and Guarantors and with all legal, tax, accounting and other matters relating to Borrowers and Guarantors.  Agent and its counsel will have had the opportunity to conduct customary legal due diligence (the results of which shall be satisfactory to Agent and its counsel);

9.11    no material adverse change in the business, operations, profits, assets or prospects of Borrowers and Guarantors or the Collateral shall have occurred as of the entry of the Interim Financing Order (it being understood that the commencement of the Chapter 11 Cases, and any defaults under agreements that have no effect under the terms of the Bankruptcy Code as a result of the commencement thereof shall not be deemed a material adverse change);

9.12    no defaults or events of default on the closing date under any of the Financing Agreements or on any other debt or any material contract of Borrowers or Guarantors shall exist (other than any defaults under agreements that have no effect under the terms of the Bankruptcy Code as a result of the commencement thereof);

9.13    Agent and Lenders shall have received the payment of all fees required to be paid under the terms hereof or otherwise under the Financing Agreements, including the DIP Fee Letter executed and delivered in connection herewith;

9.14    there shall be no material misstatements in or omissions from the materials previously furnished to Agent by Borrowers and Guarantors;

9.15    Agent shall not become aware of any material information or other matter that is inconsistent in a material and adverse manner with any previous due diligence, information or matter (including any financial information);

9.16    the receipt by Agent of this Ratification Agreement, executed and delivered by Borrowers, Guarantors, Lenders and the other parties hereto;

9.17    the implementation of the terms of this Ratification Agreement and the other Financing Agreements, as modified pursuant to this Ratification Agreement, all of which contains provisions, representations, warranties, covenants and Events of Default, as are satisfactory to Agent and its counsel;

9.18    the receipt by Agent of the following documents, agreements, or other information, in each case, in form and substance satisfactory to Agent and executed and delivered by the parties thereto:

(a)    the Information Certificate,

(b)    the DIP Fee Letter,

(c)    an update to the latest Borrowing Base Certificate that Agent has received from Borrowers that reflects, on a pro forma basis, the changes to the Financing Agreements evidenced by this Ratification Agreement,

(d)    the Store Closing Liquidation Agreement,

(e)    the Rx Bidding Procedures Order, and

(f)    Store Closing GOB Sale Order;

**9.19**    other than the voluntary commencement of the Chapter 11 Case, the Store Closing GOB Sales, and the Rx Sale, no material impairment of the priority of Agent's security interests in the Collateral shall have occurred from the date of the latest field examinations of Agent to the Petition Date;

**9.20**    Borrowers shall have (i) engaged the Financial Advisor in accordance with Section 5.8 of the Ratification Agreement, and (ii) have provided the Financial Advisor with such information as they may reasonably require;

**9.21**    Agent, for the benefit of itself and the other Secured Parties, shall hold perfected, first priority security interests in and liens upon the Collateral (subject to the liens permitted under Section 9.8 of the Loan Agreement and the Carve-Out) and Agent shall have received such evidence thereof as it requires; and

**9.22**    no Default or Event of Default shall have occurred or be existing under any of the Financing Agreements, as modified pursuant hereto, and assumed by Borrowers and Guarantors.

For the purpose of determining satisfaction with the conditions specified in this <u>Section 9</u>, each Lender that has signed and delivered this Agreement shall be deemed to have accepted, and to be satisfied with, each document or other matter required under this <u>Section 9</u> unless the Agent shall have received written notice from such Lender prior to the Ratification Closing Date specifying its objection thereto.

**10.**    <u>ADDITIONAL CONDITIONS PRECEDENT TO ALL LOANS AND LETTERS OF CREDIT.</u>

In addition to the satisfaction of the conditions precedent under Section 9 of this Ratification Agreement with respect to the effectiveness of the noted Sections of this Ratification Agreement and the making of the initial Loans under the Loan Agreement, and the satisfaction of the conditions precedent in Section 4.2 of the Loan Agreement with respect to all Loans and other financial accommodations available to Borrowers (such conditions in Section 4.2 shall remain applicable to the Loans and be applicable to other financial accommodations available to Borrowers), the following are conditions to Agent's and Lenders' obligation to extend further loans, advances or other financial accommodations to Borrowers pursuant to the Loan Agreement:

**10.1**    with respect to further credit after expiration of the Interim Financing Order, on or before the expiration of the Interim Financing Order, the Bankruptcy Court shall have entered the Permanent Financing Order. Neither Agent nor any Lender shall provide any Loans (or other financial accommodations) other than those authorized under the Interim Financing Order unless, on or before the expiration of the Interim Financing Order, the

Permanent Financing Order shall have been entered, and there shall be no appeal or other contest with respect to either the Interim Financing Order or the Permanent Financing Order and the time to appeal to contest such order shall have expired;

      **10.2**    requests for further credit shall only be for purposes and in amounts in accordance with the Budget for the week in which such requests are made;

      **10.3**    subject to the Financing Order, all fees and expenses required to be paid to the Agent and the Lenders pursuant to the Ratification Agreement and the Loan Agreement, as amended thereby, shall have been paid or shall be paid concurrently with the making of the Loans after the Ratification Closing Date; and

      **10.4**    no Default or Event of Default shall have occurred or be existing under any of the Financing Agreements, as amended, supplemented or otherwise modified pursuant this Ratification Agreement and assumed by Borrowers and Guarantor.

      **11.**    <u>MISCELLANEOUS</u>.

      **11.1**    <u>Amendments and Waivers</u>.  Neither this Ratification Agreement nor any other instrument or document referred to herein or therein may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.  Notwithstanding anything to the contrary contained herein or in any other Financing Agreement, amendments, waivers and consents with respect to the provisions of this Ratification Agreement or any other Financing Agreement relating to the Budget, Store Closing GOB Sales, Store Closing Liquidation Agreement, the Rx Auction or Rx Sales, any other sale or disposition of the Collateral, any of the DIP Milestones, any bankruptcy Reserves, or clauses (b), (c) or (d) of the definition of Renewal Date shall not require the approval of any Secured Party other than the Agent.

      **11.2**    <u>Further Assurances</u>.  Each Borrower and Guarantor shall, at its expense, at any time or times duly execute and deliver, or shall use its best efforts to cause to be duly executed and delivered, such further agreements, instruments and documents, and do or use its best efforts to cause to be done such further acts as may be reasonably necessary or proper in Agent's reasonable opinion to evidence, perfect, maintain and enforce the security interests of Agent and/or Collateral Agent, and the priority thereof, in the Collateral and to otherwise effectuate the provisions or purposes of this Ratification Agreement, any of the other Financing Agreements or the Financing Order.  Upon the reasonable request of Agent, at any time and from time to time, each Borrower and Guarantor shall, at its cost and expense, do, make, execute, deliver and record, register or file updates to the filings of Agent and Collateral Agent with respect to the Intellectual Property with the United States Patent and Trademark Office or the United States Copyright Office, the financing statements, and other instruments, acts, pledges, assignments and transfers (or use its best efforts to cause the same to be done) and will deliver to Agent and Lenders such instruments evidencing items of Collateral as may be reasonably requested by Agent.

**11.3**    Headings.  The headings used herein are for convenience only and do not constitute matters to be considered in interpreting this Ratification Agreement.

**11.4**    Counterparts.  This Ratification Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement.  In making proof of this Ratification Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto.  Delivery of an executed counterpart of this Ratification Agreement by telefacsimile or other means of electronic transmission shall have the same force and effect as delivery of an original executed counterpart of this Ratification Agreement.  Any party delivering an executed counterpart of this Ratification Agreement by telefacsimile or other means of electronic transmission also shall deliver an original executed counterpart of this Ratification Agreement, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Ratification Agreement as to such party or any other party.

**11.5**    Additional Events of Default.  The parties hereto acknowledge, confirm and agree that the failure of any Borrower or Guarantor to comply with any of the covenants, conditions and agreements contained herein or in any other Financing Agreement shall constitute an Event of Default under the Financing Agreements.

**11.6**    Costs and Expenses.  Subject to the terms of the Financing Order, Borrowers shall pay to Agent on demand all costs and expenses that Agent pays or incurs in connection with the negotiation, preparation, consummation, administration, enforcement, and termination of this Ratification Agreement and the other Financing Agreements and the Financing Order.  Subject to the terms of the Financing Order, the foregoing shall not be construed to limit any other provisions of the Financing Agreements regarding costs and expenses to be paid by Borrowers.  Subject to the terms of the Financing Order, all sums provided for in this Section 11.6 shall be part of the Obligations, shall be payable on demand, and shall accrue interest after demand for payment thereof at the highest rate of interest then payable under the Financing Agreements.  Agent is hereby irrevocably authorized to charge any amounts payable hereunder directly to any of the account(s) maintained by Agent with respect to any Borrower or Guarantor.

**11.7**    Effectiveness.  This Ratification Agreement shall become effective upon the satisfaction of the conditions precedent set forth in Section 9 hereof, and the entry of the Interim Financing Order.

**11.8**    Patriot Act.  Each Lender subject to the Act hereby notifies Borrowers and Guarantors that pursuant to the requirements of the Act, it is required to obtain, verify and record information that identifies each person or corporation who opens an account and/or enters into a business relationship with it, which information includes the name and address of Borrowers and Guarantors and other information that will allow such Lender to identify such person in accordance with the Act.  Borrowers and Guarantors are hereby advised that this commitment is subject to satisfactory results of such verification.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

BORROWERS

SHOPKO PROPERTIES, LLC
PENN-DANIELS, LLC
SHOPKO OPTICAL MANUFACTURING, LLC
RETAINED R/E SPE, LLC
SHOPKO STORES OPERATING CO., LLC
SPECIALTY RETAIL SHOPS HOLDING CORP.,
    formerly known as SKO Group Holding Corp.
SHOPKO HOLDING COMPANY, LLC, formerly
    known as ShopKo Holding Company, Inc.
SHOPKO INSTITUTIONAL CARE SERVICES
CO., LLC
PAMIDA STORES OPERATING CO., LLC

By: _____
Name: J. Per Brodin
Title: Chief Financial Officer

GUARANTORS

SHOPKO FINANCE, LLC
SVS TRUCKING, LLC
SHOPKO GIFT CARD CO., LLC,
 formerly known as ShopKo Ventures-Duluth, LLC
PAMIDA TRANSPORTATION, LLC

By: _____
Name: J. Per Brodin
Title: Chief Financial Officer


PLACE'S ASSOCIATES' EXPANSION, LLC

By:    Pamida Stores Operating Co., LLC,
       its Sole Member

By: _____
Name: J. Per Brodin
Title: Chief Financial Officer


[Signature Page to Ratification and Amendment Agreement (Shopko)]

AGENTS

WELLS FARGO BANK, NATIONAL
ASSOCIATION,
successor by merger to Wachovia Bank,
National Association, as Agent, Term Loan B
Agent, Collateral Agent and Issuing Bank

By:

Name: MICHAEL WATSON

Title: AUTHORIZED SIGNATORY

TERM LOAN B-1 AGENT

SHOPKO NOTE HOLDING, LLC,
as Term Loan B-1 Agent

By:
Name: Ricardo Rodriguez
Title: Manager

By: SMTA SPE Manager, LLC,
a Delaware limited liability Company

LENDERS

WELLS FARGO BANK, NATIONAL
ASSOCIATION

By: _____
Name: MICHAEL WATSON
Title: AUTHORIZED SIGNATORY

TD BANK, N.A.

By: _____

Name: Antimo Barbieri
Title:  Vice President

Internal

CITIZENS BUSINESS CAPITAL, a division of
Citizens Asset Finance, Inc.

By:    _____

Name: Christine Scott

Title: EVP

BANK OF AMERICA, N.A.

By:
Name:
Title:      Andrew Cerussi
            Sr. Vice President

PNC BANK, NATIONAL ASSOCIATION

By:

Name: Douglas T. Mecklenburg

Title: Vice President

CIT BANK, N.A.

By: _____

Name:  Anthony Masci

Title:  Director

JPMORGAN CHASE BANK, N.A.

By:

Name: James Gurgone

Title:   Authorized Officer

U.S. BANK NATIONAL ASSOCIATION

By: _____
Name: Suzanne E Geiger
Title: SVP

GORDON BROTHERS FINANCE COMPANY, LLC

By:

Name: Felicia Galeota

Title: Vice President

BANK OF MONTREAL

By: _____
Name:
Title:     Aleen M. Hartje
           Managing Director

SHOPKO NOTE HOLDING, LLC

By:
Name: Ricardo Rodriguez
Title: Manager

By: SMTA SPE Manager, LLC,
a Delaware limited liability company

EXHIBIT A
to
RATIFICATION AND AMENDMENT AGREEMENT

**SUMMARY BUDGET**

(see attached)

Case 19-80064-TLS    Doc 425    Filed 02/14/19    Entered 02/14/19 14:39:49    Desc Main
Document    Page 115 of 329

**Shopko**
**DIP Budget**
**($ in 000s)**

| | Petition 2018 Jan-19 01/19/19 | 2018 Jan-19 01/26/19 | 2018 Jan-19 02/02/19 | 2019 Feb-19 02/09/19 | 2019 Feb-19 02/16/19 | 2019 Feb-19 02/23/19 | 2019 Feb-19 03/02/19 | 2019 Mar-19 03/09/19 | 2019 Mar-19 03/16/19 | 2019 Mar-19 03/23/19 | 2019 Mar-19 03/30/19 | 2019 Mar-19 04/06/19 | 2019 Apr-19 04/13/19 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **I. Cash Flows** | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | |
| 1.) Sales Receipts | 23,054 | 36,626 | 37,982 | 39,013 | 40,438 | 40,329 | 33,791 | 36,599 | 35,426 | 36,506 | 35,038 | 28,459 | 31,310 | 454,573 |
| 2.) Proceeds from Rx Asset Sales | - | - | - | 28,080 | 28,080 | 28,080 | - | - | - | - | - | - | - | 84,241 |
| 3.) Total Receipts | 23,054 | 36,626 | 37,982 | 67,094 | 68,518 | 68,410 | 33,791 | 36,599 | 35,426 | 36,506 | 35,038 | 28,459 | 31,310 | 538,813 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| 4.) Merchandise Disbursements | (1,978) | (10,161) | (12,446) | (11,416) | (15,686) | (9,961) | (12,733) | (14,279) | (14,579) | (19,006) | (19,645) | (19,614) | (19,160) | (180,665) |
| 5.) Payroll, Payroll Tax, & Benefits | - | (1,066) | (12,940) | (1,384) | (10,393) | (898) | (10,098) | (968) | (10,428) | (917) | (9,689) | (1,319) | (10,086) | (70,188) |
| 6.) Sales Tax | (15) | (10,670) | (1,336) | (901) | (1,802) | (2,403) | (901) | (732) | (1,463) | (3,658) | (732) | (732) | (1,331) | (26,677) |
| 7.) Other OpEx | (1,534) | (4,626) | (7,208) | (5,750) | (7,076) | (5,666) | (8,071) | (7,550) | (6,558) | (6,598) | (7,970) | (6,234) | (906) | (75,746) |
| 8.) Subtotal | (3,528) | (26,523) | (33,929) | (19,452) | (34,958) | (18,928) | (31,804) | (23,528) | (33,028) | (30,179) | (38,036) | (27,899) | (31,483) | (353,276) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| 9.) Capital Expenditures | - | (185) | (106) | (216) | (176) | (65) | (74) | (115) | (54) | (291) | (61) | (59) | (197) | (1,600) |
| 10.) Interest & Financing | (42) | (80) | (3,147) | (53) | (30) | (46) | (1,937) | - | (133) | (61) | (59) | (1,968) | (80) | (7,636) |
| 11.) Restructuring Related | (6,817) | (1,140) | (1,242) | (1,450) | (3,546) | (250) | (1,477) | (3,270) | (2,751) | (250) | (1,472) | (1,025) | (5,652) | (30,342) |
| 12.) Subtotal | (6,859) | (1,406) | (4,494) | (1,719) | (3,751) | (361) | (3,487) | (3,385) | (2,938) | (603) | (1,593) | (3,052) | (5,929) | (39,577) |
| 13.) Total Disbursements | (10,387) | (27,929) | (38,423) | (21,171) | (38,709) | (19,290) | (35,292) | (26,913) | (35,966) | (30,782) | (39,629) | (30,951) | (37,412) | (392,853) |
| 14.) Net Cash Flow | 12,667 | 8,697 | (440) | 45,923 | 29,809 | 49,120 | (1,501) | 9,686 | (540) | 5,724 | (4,591) | (2,491) | (6,102) | 145,960 |
| **II. Financing** | | | | | | | | | | | | | | |
| 15.) Beginning Bank Cash | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| 16.) Net Cash Flow | 12,667 | 8,697 | (440) | 45,923 | 29,809 | 49,120 | (1,501) | 9,686 | (540) | 5,724 | (4,591) | (2,491) | (6,102) | 145,960 |
| 17.) Revolver Borrowings / (Pay Down) | (12,667) | (8,697) | 440 | (45,923) | (29,809) | (49,120) | 1,501 | (9,686) | 540 | (5,724) | 4,591 | 2,491 | 6,102 | (145,960) |
| 18.) Ending Bank Cash | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| **II. Availability** | | | | | | | | | | | | | | |
| 19.) Gross Borrowing Base | 458,519 | 434,851 | 421,905 | 386,705 | 350,773 | 340,035 | 329,829 | 326,735 | 323,071 | 318,851 | 314,216 | 313,036 | 314,531 | 314,531 |
| 20.) Beginning Revolver Balance | 342,480 | 329,812 | 321,115 | 321,555 | 275,633 | 245,824 | 196,704 | 198,205 | 188,519 | 189,059 | 183,335 | 187,926 | 190,418 | 342,480 |
| 21.) Revolver Borrowings / (Pay Down) | (12,667) | (8,697) | 440 | (45,923) | (29,809) | (49,120) | 1,501 | (9,686) | 540 | (5,724) | 4,591 | 2,491 | 6,102 | (145,960) |
| 22.) Additional Paid in Capital | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 23.) Ending Revolver Balance | 329,812 | 321,115 | 321,555 | 275,633 | 245,824 | 196,704 | 198,205 | 188,519 | 189,059 | 183,335 | 187,926 | 190,418 | 196,519 | 196,519 |
| 24.) + Letters of Credit | 23,930 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 | 21,361 |
| 25.) + Accrued Interest & Fees | 1,872 | 2,373 | 1,002 | 1,458 | 1,887 | 2,270 | 769 | 1,145 | 1,522 | 1,893 | 2,269 | 754 | 1,137 | 1,137 |
| 26.) Total ABL Obligation | 355,615 | 344,849 | 343,919 | 298,452 | 269,071 | 220,335 | 220,334 | 211,024 | 211,942 | 206,589 | 211,556 | 212,532 | 219,017 | 219,017 |
| 27.) ABL Availability | 102,904 | 90,002 | 77,986 | 88,253 | 81,702 | 119,699 | 109,494 | 115,711 | 111,130 | 112,261 | 102,660 | 100,504 | 95,514 | 95,514 |
| 28.) Total Gross Liquidity | 102,954 | 90,052 | 78,036 | 88,303 | 81,752 | 119,749 | 109,544 | 115,761 | 111,180 | 112,311 | 102,710 | 100,554 | 95,564 | 95,564 |
| 29.) - Availability Block [Original] | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) |
| 30.) Total Net Liquidity | 52,954 | 40,052 | 28,036 | 38,303 | 31,752 | 69,749 | 59,544 | 65,761 | 61,180 | 62,311 | 52,710 | 50,554 | 45,564 | 45,564 |

Page 1 of 1
1/15/2019 10:06 PM

EXHIBIT B
to
RATIFICATION AND AMENDMENT AGREEMENT

**Form of Interim Financing Order**

(see attached)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

```
-------------------------------------------------- X
In re:                                             :   Chapter 11
                                                   :
SPECIALTY RETAIL SHOPS HOLDING                     :   Case No. 19-_____ (____)
CORP., et al.,¹                                    :
                                                   :
                    Debtors.                       :   (Joint Administration Requested)
                                                   :
-------------------------------------------------- X   Re: Docket Nos. _____
```

## INTERIM ORDER
## PURSUANT TO 11 U.S.C.
## §§ 105, 361, 362, 363, 364, AND 507 AND
## FED. R. BANKR. P. 2002, 4001 AND 9014 (I)
## AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION
## TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING
## THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING
## LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
## EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO
## THE PREPETITION LENDERS, (V) MODIFYING THE AUTOMATIC STAY,
## (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "Motion")² of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2)

and 364(c)(3), and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules

2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the

"Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States

---

¹    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

²    Capitalized terms used but not defined in this Order shall have the same meanings ascribed to such terms in the Ratification Agreement or Loan Agreement, as applicable.

Bankruptcy Court for the District of Nebraska (the "Local Rules"), *inter alia* seeking, among other things:

(1)      authorization for ShopKo Properties, LLC, a Minnesota limited liability company ("Properties"), Penn-Daniels, LLC, a Delaware limited liability company ("Penn"), ShopKo Stores Operating Co., LLC, a Delaware limited liability company ("ShopKo Operating"), ShopKo Holding Company, LLC, a Wisconsin limited liability company formerly known as ShopKo Holding Company, Inc. ("ShopKo Holdco"), ShopKo Optical Manufacturing, LLC, a Wisconsin limited liability company ("Optical"), Specialty Retail Shops Holding Corp., a Delaware corporation formerly known as SKO Group Holding Corp. ("Parent" or "Company"), ShopKo Institutional Care Services Co., LLC, a Delaware limited liability company ("ShopKo Institutional"), Retained R/E SPE, LLC, a Delaware limited liability company ("Retained R/E"), and Pamida Stores Operating Co., LLC, a Delaware limited liability company ("Pamida Operating", and together with Properties, Penn, ShopKo Operating, ShopKo Holdco, Optical, Parent, ShopKo Institutional and Retained R/E, each as debtor and debtor-in-possession, individually a "Borrower" and collectively, "Borrowers") to obtain, and for ShopKo Finance, LLC, a Delaware limited liability company ("ShopKo Finance"), SVS Trucking, LLC, a Minnesota limited liability company ("SVS"), ShopKo Gift Card Co., LLC, a Minnesota limited liability company ("GiftCard"), Pamida Transportation, LLC, a Nebraska limited liability company ("Transportation"), and Place's Associates' Expansion, LLC, a Missouri limited liability company ("Expansion", and together with ShopKo Finance, SVS, GiftCard and Transportation, each as debtor and debtor-in-possession, individually a "Guarantor" and collectively, "Guarantors") to guarantee, unconditionally, on a joint and several basis, post-petition financing in the form of a revolving credit, letter of credit, and term loan facility in

2

accordance with the terms and conditions set forth in the Pre-Petition Loan Agreement (as defined below), as ratified and amended by that certain Ratification and Amendment Agreement dated as of January [ • ], 2019 (the "Ratification Agreement") a copy of which is attached hereto as **Exhibit 1** (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "Loan Agreement"), by and among the Borrowers, the Guarantors, Wells Fargo Bank, National Association, as administrative agent and collateral agent (as "Prepetition ABL Agent," "Prepetition Term Loan B Agent," "ABL Agent," "Term Loan B Agent," or "Agent," as applicable), and issuing bank (as "Issuing Bank") the revolving loan lenders party thereto (the "Prepetition ABL Lenders or "ABL Lenders," as applicable); the term loan B lenders party thereto (the "Prepetition Term Loan B Lenders" or "Term Loan B Lenders," as applicable and, together with the term loan B-1 lenders under the Pre-Petition Loan Agreement (the "Term Loan B-1 Lenders"), the "Lenders"), and the other Financing Agreements (as defined in the Ratification Agreement), and in accordance with this order ("Interim Order"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below) pursuant to §§ 364(c)(2) and 364(c)(3), and 364(d) of the Bankruptcy Code (subject to the Carve-Out and the Permitted Liens (each as defined below));

(2)     authorization for Borrowers and Guarantors to remit all collections, asset proceeds and payments to Agent and Lenders for application, or deemed application, first to all Pre-Petition ABL Obligations (as defined below) until such obligations are fully repaid, and then to the repayment of all Post-Petition ABL Obligations (as defined below) in accordance with the Loan Agreement and the other Financing Agreements, and to deem all Pre-Petition Obligations with respect to Letters of Credit to have been issued or provided, as applicable, under the Loan Agreement and the other Financing Agreements;

(3)      authorization for the Debtors to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Agent, for the benefit of itself and the other Lenders, in respect of all Post-Petition Obligations (subject to the Carve-Out (as defined below));

(4)      as set forth below, subject to Section 4.1 of this Interim Order, approval of certain stipulations by the Debtors as set forth in this Interim Order in connection with the Pre-Petition Loan Agreement (as each term is defined below);

(5)      authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the Financing Agreements as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable and documented fees and disbursements of the Agents' and Lenders' respective attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the applicable Financing Agreements;

(6)      as set forth below, authorization to use Cash Collateral and all other Pre-Petition Collateral and to provide adequate protection to the Agent and the Lenders (each in their respective capacities under the Pre-Petition Loan Documents (as defined below)) to the extent set forth herein;

(7)      as set forth below, authorization to provide adequate protection to the Agent and the Lenders (each in their respective capacities under the Pre-Petition Loan Documents (as defined below));

(8)     effective only upon entry of a Final Order (as defined below), the waiver of the

Debtors' right to assert claims to surcharge against the Collateral (as defined below) pursuant to

§ 506(c) of the Bankruptcy Code, to the extent set forth below;

(9)     the modification of the automatic stay imposed by section 362 of the Bankruptcy

Code to the extent necessary to implement and effectuate the terms and provisions of this Interim

Order to the extent hereinafter set forth;

(10)    the setting of a final hearing on the Motion ("Final Hearing") to consider entry of

a final order (the "Final Order") authorizing, among other things, the borrowing under the

Financing Agreements on a final basis, as set forth in the Motion and the Loan Agreement filed

with the Court, including the granting to Agent and Lenders the senior security interests and liens

described above and super-priority administrative expense claims (subject to the Carve-Out); and

(11)    related relief.

The initial hearing on the Motion having been held by this Court on January 16, 2019

(the "Interim Hearing"), and upon the record made by the Debtors at the Interim Hearing,

including the Motion, the Declaration of Russell Steinhorst in Support of First Day Motions (the

"First Day Declaration"), the Declaration of Stephen Spencer in Support of Debtors' Motion for

Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and

Fed. R. Bankr. P. 2002, 4001 and 9014 (i) Authorizing Debtors and Debtors in Possession to

Obtain Postpetition Financing, (ii) Authorizing the Debtors to Use Cash Collateral, (iii) Granting

Liens and Superpriority Administrative Expense Status, (iv) Granting Adequate Protection to

Prepetition Lenders, (v) Modifying the Automatic Stay, (vi) Scheduling a Final Hearing, and

(viii) Granting Related Relief (the "Spencer Declaration"), and the filings and pleadings in the

above-captioned chapter 11 cases (the "Cases"), the Court having found that the relief requested

5

in the Motion is in the best interests of Debtors, their estates, their creditors and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing; and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "Notice") was appropriate under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rule 4001 and 9014 and the Local Rules on (i) counsel to the Agent;  (ii) the office of the U.S. Trustee; (iii) the holders of the thirty (30) largest unsecured claims, on a consolidated basis, against the Debtors' estates (the "30 Largest Unsecured Creditors"); (iv) the Internal Revenue Service and applicable state taxing authorities; (v) any party that has asserted or may assert a lien in the Debtors' assets; (vi) the office of attorneys general for the states in which the Debtors operate; (viii) the United States Attorney's Office for the District of Nebraska; (ix) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; and (x) the United States Securities and Exchange Commission (collectively, the "Noticed Parties") and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.      <u>Petition</u>.  On January 16, 2019 (the "<u>Petition Date</u>"), each Debtor filed a voluntary

petition (each, a "<u>Petition</u>") under chapter 11 of the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

§§ 1107(a) and 1108 of the Bankruptcy Code.

B.      <u>Disposition</u>.  The Motion is hereby granted in accordance with the terms of this

Interim Order.  Any objections to the Motion with respect to the entry of the Interim Order that

have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

C.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of this proceeding and the

parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a

"core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases

and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      <u>Committee Formation</u>.  As of the date hereof, the United States Trustee for the

District of Nebraska (the "<u>U.S. Trustee</u>") has not yet appointed an official committee of

unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a

"<u>Committee</u>").  The statutory and legal predicates for the relief sought herein are sections 105,

361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013 and

9014 and the applicable provisions of the Local Rules.

E.      <u>Notice</u>.  Proper, timely, adequate, and sufficient notice of the Motion has been

provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules,

and no other or further notice of the Motion with respect to the relief requested at the Interim

Hearing or the entry of this Interim Order shall be required.

F.      <u>Debtors' Acknowledgments and Agreements</u>.  After consultation with their

attorneys and financial advisors, and without prejudice to the rights of any Committee appointed

in these Cases or other parties-in-interest as and to the extent set forth in Section 4.1 of this Interim Order, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge and agree that:

(i)      <u>Pre-Petition Loan Documents</u>.  Prior to the commencement of the Cases, Agent and the Lenders made loans, advances and provided other financial accommodations to Borrowers (the "<u>Pre-Petition Borrowers</u>"), pursuant to the terms and conditions set forth in (1) the Pre-Petition Loan Agreement (as defined in the Ratification Agreement and referred to herein as the "<u>Pre-Petition Loan Agreement</u>"); and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Agent or any Lender in connection with the Pre-Petition Loan Agreement, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Loan Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "<u>Pre-Petition Loan Documents</u>").

(ii)      <u>Pre-Petition Loan Obligations</u>.   As of the Petition Date, the Debtors were indebted to Agent and the Lenders under the Pre-Petition Loan Documents in respect of outstanding Revolving Loans in an aggregate amount of not less than $295 million (the "<u>Pre-Petition ABL Obligations</u>"), plus all other Loans, Letters of Credit, Bank Products, and all other Obligations (each as defined in the Pre-Petition Loan Agreement) in an aggregate outstanding principal amount of not less than $400 million, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and

other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Obligations", as such term is further defined in the Ratification Agreement). The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description, in any such case, arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Interim Order, which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations or liens and security interest securing the same described in clause (F)(iii) below, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non- bankruptcy law. The Debtors and their estates (a) have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Agent or Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Pre-Petition Loan Documents or Pre-Petition Obligations; and (b) have waived, discharged, and released any right to challenge any of the Pre-Petition Obligations, including the priority of the Pre-Petition Obligations, and the validity, extent, and priority of the liens securing the Pre-Petition Obligations.

(iii)        <u>Pre-Petition Collateral</u>.    As of the Petition Date, the Pre-Petition

Obligations were fully secured pursuant to the Pre-Petition Loan Documents by valid, perfected,

enforceable and non-avoidable first-priority security interests and liens granted by Debtors for

fair consideration and reasonably equivalent value to Agent, for the benefit of itself and the other

Lenders under the Pre-Petition Loan Documents, in and upon all of the Pre-Petition Collateral

(as defined in the Ratification Agreement and hereinafter referred to as the "<u>Pre-Petition</u>

<u>Collateral</u>"), subject only to the Carve Out, and to the liens specifically permitted under Section

9.8 of the Pre-Petition Loan Agreement to the extent that such security interests, liens or

encumbrances are (A) valid, perfected and non-avoidable security interests, liens or

encumbrances existing as of the Petition Date securing valid, binding and unavoidable debt

permitted under the Pre-Petition Loan Documents (or perfected after the Petition Date pursuant

to section 546(b) of the Bankruptcy Code), and (B) senior to, have not been, and are not subject

to being subordinated to Agent's and Lenders' liens on and security interests in the Pre-Petition

Collateral under the Pre-Petition Loan Documents or otherwise avoided, and, in each instance,

only for so long as and to the extent that such encumbrances are and remain senior and

outstanding (hereinafter referred to as the "<u>Permitted Liens</u>").    The Debtors do not possess and

will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which

would in any way affect the validity, enforceability and non-avoidability of any of Agent's and

Lenders' liens, claims or security interests in the Pre-Petition Collateral.

(iv)        <u>Default by the Debtors</u>. The Debtors acknowledge and stipulate that the

Loan Parties are in default of their obligations under the Pre-Petition Loan Documents.

(v)        <u>Proof of Claim</u>.    The acknowledgment by Debtors of the Pre-Petition

Obligations and the liens, rights, priorities and protections granted to or in favor of Agent and

Lenders in respect of the Pre-Petition Collateral as set forth herein and in the Pre-Petition Loan Documents shall be deemed a timely filed proof of claim on behalf of Agent and the Lenders in these Cases.

   (vi)  Intercreditor Agreement. Agent and Sun Retail Finance Holdings, LLC, a Delaware limited liability company are parties to that certain Intercreditor Agreement dated as of February 7, 2012 (as amended, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), which (x) confirms the senior priority of the security interests of Agent in the assets and properties of Borrowers and Guarantors to the security interests of Pre-Petition Junior Lender; (y) acknowledges and confirms the subordination of all liens and claims held by the Pre-Petition Junior Lender against each Borrower and Guarantor and the Pre-Petition Collateral to all such liens and claims held by the Agent and Lenders, and (z) provides certain other rights and obligations between Agent and Lenders, on the one hand, and the Pre-Petition Junior Lender, on the other hand, relating to the Pre-Petition Collateral.

   G.  Findings Regarding the Post-Petition Financing.

   (i)  Post-Petition Financing.  The Debtors have requested from each of the Agent and the Lenders, and the Agent and Lenders are willing, to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in this Interim Order, the Loan Agreement and the other Financing Agreements (as defined in the Ratification Agreement), respectively.

   (ii)  Need for Post-Petition Financing.  The Debtors do not have sufficient available sources of working capital, including cash collateral, to operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their

employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates (as defined below). The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the Agent and Lenders as set forth in this Interim Order, the Loan Agreement, and other Financing Agreements, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor. Accordingly, the Debtors have an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates (as defined under § 541 of the Bankruptcy Code, the "Estates") in order to maximize the value of the Estates.

(iii)     No Credit Available on More Favorable Terms. The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estates, or liens on property of the Estates not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtors have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by each of the Agent and Lenders pursuant to the Financing Agreements.

(iv)     Budget. The Debtors have prepared and delivered to Agent and Lenders an initial 13-week budget (as defined in the Ratification Agreement, the "Budget") a summary of which is attached hereto as **Exhibit 2**. Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected cash receipts and

12

disbursements of the Debtors for the periods covered thereby.  The Debtors represent that the Budget is achievable in accordance with the terms of the Financing Agreements and this Interim Order.  The Agent and Lenders are relying upon the Debtors' compliance with the Budget in accordance with Section 5.3 of the Ratification Agreement, the other Financing Agreements, and this Interim Order in determining to enter into the post-petition financing arrangements provided for herein.  For the avoidance of doubt, all references to the Budget shall be subject in all respects to any permitted variances.

(v)      Business Judgment and Good Faith Pursuant to § 364(e).  The terms of the Financing Agreements and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Financing Agreements and this Interim Order have been negotiated in good faith and at arms' length by and among the Debtors and Agent, with all parties being represented by counsel.  Any credit extended under the terms of this Interim Order shall be deemed to have been extended in good faith by the Agent and Lenders, as that term is used in § 364(e) of the Bankruptcy Code.

(vi)      Good Cause.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and ongoing operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors'

creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(vii)     <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED THAT:

Section 1.     <u>Authorization and Conditions to Financing.</u>

1.1     <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order.  Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2     <u>Authorization to Borrow, Guaranty, and Use Loan Proceeds</u>.  Borrowers are hereby authorized and empowered to immediately borrow and obtain Loans, Letters of Credit and to incur indebtedness and other Post-Petition Obligations (as defined in the Ratification Agreement and hereinafter referred to as the "<u>Post-Petition Obligations</u>" and solely as related to the Revolving Loans A and Revolving Loans A-1, the "<u>Post-Petition ABL Obligations</u>"), and the Guarantors are hereby authorized to guaranty such Post-Petition Obligations, up to an aggregate amount equal to the sum of (i) 115% of all disbursements for the Interim Financing Period (as defined below) in the "Total Disbursements" line item of the Budget, <u>plus</u> (ii) all interest, costs, and fees, accrued or accruing under the Loan Agreement and other Financing Agreements, all

pursuant to the terms and conditions of this Interim Order, the Loan Agreement, and the other

Financing Agreements during the period commencing on the date of this Interim Order through

and including the entry of the Final Order (the "Interim Financing Period"). Subject to the terms

and conditions contained in this Interim Order and the Financing Agreements, Borrowers shall

use the proceeds of the Loans, Letters of Credit and other credit and financial accommodations

provided by Agent and Lenders under the Loan Agreement and the other Financing Agreements

solely for payment of expenses set forth in the Budget and amounts owing to Agent and Lenders

and Debtors' Professionals in accordance with the terms and conditions of the Financing

Agreements and this Interim Order.

1.3    <u>Financing Documents</u>

(a)    <u>Authorization</u>.    Debtors are hereby authorized to enter into,

execute, deliver, perform, and comply with all of the terms, conditions and covenants of the

Loan Agreement and the other Financing Agreements. Upon execution and delivery of the Loan

Agreement and the other Financing Agreements, such agreements and documents shall constitute

valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in

accordance with the terms of such agreements, documents and this Interim Order. Subject to the

rights of the Committee and all other parties in interest under Section 4.1 hereof (as provided in

Section 1.5 hereof), no obligation, payment, transfer or grant of security under the Loan

Agreement, the other Financing Agreements or this Interim Order shall be stayed, restrained,

voidable, or recoverable under the Bankruptcy Code or under any applicable law (including,

without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense,

reduction, setoff, recoupment or counterclaim. The Debtors are hereby authorized and directed

to pay, in accordance with this Interim Order, the principal, interest, fees, expenses and other

amounts described in the Financing Agreements as such become due and without need to obtain further Court approval, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, backstop fees, exit fees, servicing fees, yield maintenance premiums, audit fees, appraisal fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable and documented fees and disbursements of the Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the Financing Agreements. Upon execution and delivery, the Loan Agreement and other Financing Agreements shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

(b)    Approval; Evidence of Borrowing Arrangements.    All terms, conditions and covenants set forth in the Financing Agreements (including, without limitation, the Loan Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Order.    All such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtors, Agent and Lenders, and (b) each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Loan Agreement and the other Financing Agreements for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of Agent's and Lenders' consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Financing Agreements.

(c)    <u>Amendment</u>.   Subject to the terms and conditions of the Loan Agreement and the other Financing Agreements, Debtors and Agent may amend, modify, supplement or waive any provision of the Financing Agreements (a "<u>DIP Loan Amendment</u>") without further approval or order of the Court, so long as  (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the Financing Agreements, increase the Maximum Credit, increase or add an additional early termination fee, prepayment or repayment premium, add specific new events of default or enlarge the nature and extent of default remedies available to Agent and Lenders following an event of default) and is undertaken in good faith by Agent, Lenders and Debtors; (b) the Debtors provide prior written notice of the DIP Loan Amendment (the "<u>DIP Loan Amendment Notice</u>") to (i) the U.S. Trustee, and (ii) counsel to any Committee, or in the event no such Committee is appointed at the time of such DIP Loan Amendment, the 30 Largest Unsecured Creditors (collectively, the "<u>Notice Parties</u>"), and (c) the Debtors file the DIP Loan Amendment Notice with the Court; <u>provided</u>, however, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such amendment, modification or supplement, and provided further that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard.   Any material DIP Loan Amendment to the Financing Agreements must be approved by the Court to be effective.

1.4    <u>Payment of Pre-Petition Debt</u>.   The Debtors are authorized to repay all Pre-Petition Obligations in accordance with the Loan Agreement, the other Financing Agreements and this Interim Order, including, without limitation, Sections 1.5 and 1.6 of this Interim Order.   For the avoidance of any doubt, the rights of the Committee with respect to the

validity, extent, and priority of the Pre-Petition Obligations and the liens securing the Pre-Petition Obligations are fully reserved and preserved to the extent provided in section 4.1 of this Interim Order.

        1.5   <u>Payments and Application of Payments & Collateral Proceeds; Gradual Roll-Up</u>.  The Debtors are authorized to make all payments and transfers of Estate property to the Agent as provided for, permitted and/or required under the Loan Agreement and the other Financing Agreements, which payments and transfers shall not be avoidable or recoverable from the Agent or any Lender under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  All proceeds of the Collateral (as defined herein) received by the Agent or any Lender, and any other amounts or payments received by the Agent or any Lender in respect of the Post-Petition Obligations, may be applied or deemed to be applied by the Agent, in its discretion, first to the indefeasible repayment in full of the Pre-Petition ABL Obligations, and then in repayment of the Post-Petition Obligations, all in accordance with the Loan Agreement, the other Financing Agreements and this Interim Order.  Without limiting the generality of the foregoing, the Debtors are authorized without further order of this Court to pay or reimburse Agent and the Lenders for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Agent or the Lenders in connection with the financing transactions as provided in this Interim Order and the Financing Agreements, all of which shall be and are included as part of the principal amount of the Post-Petition Obligations and secured by the Collateral (as defined herein).

1.6     Continuation of Pre-Petition Procedures.  Except to the extent expressly set forth in the Financing Agreements, all pre-petition practices and procedures for the payment and collection of proceeds of the Collateral (as defined herein), the turnover of cash, the delivery of property to the Agent and the Lenders, including the Deposit Account Control Agreements (as such term is defined in the Loan Agreement) and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Cases.

Section 2.      Post-Petition Lien; Superpriority Administrative Claim Status.

2.1     Post-Petition Lien.

(a)     Post-Petition Lien Granting.  To secure the prompt payment and performance of any and all Post-Petition Obligations (as defined in the Loan Agreement) of Debtors to the Agent and Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Agent, for the benefit of itself and the other Lenders, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of any of the Debtors' Estates may have (but subject to the Carve-Out (as defined below) and the Permitted Liens), in and upon all of the Collateral (as defined in the Loan Agreement and referred to herein as the "Collateral").  For the avoidance of doubt, solely for purposes of this Interim Order, "Collateral" does not include (i) any of the Debtors' unexpired real property leases to the extent that such unexpired leases prohibit the non-consensual grant of security interests or liens in such unexpired leases (in which case, the Collateral shall include the proceeds of such unexpired leases) and (ii) prior to the entry of the Final Order, any property

recovered as a result of transfers or obligations avoided or actions maintained or taken Chapter 5

of the Bankruptcy Code (the "Avoidance Actions").

(b)     Lien Priority in Collateral.    The liens and security interests of

Agent and Lenders granted under the Financing Agreements and this Interim Order in the

Collateral securing all Post-Petition Obligations (as defined in the Loan Agreement) shall be first

and senior in priority to all other interests and liens of every kind, nature and description,

whether created consensually, by an order of the Court or otherwise, including, without

limitation, liens or interests granted in favor of third parties in conjunction with §§ 363, 364 or

any other section of the Bankruptcy Code or other applicable law; provided, however, that

Agent's and Lenders' liens on and security interests in the Collateral shall be subject only to (a)

Permitted Liens, and (b) the Carve-Out (as defined below).

(c)     Right of Repayment.    The right of Agent and Lenders to repayment

in accordance with the Financing Agreements and this Interim Order from the sale or other

disposition of the Collateral, or any proceeds thereof, shall be first and senior in priority to all

other rights of repayment of every kind, nature, and description (other than the Carve-Out).

(d)     Post-Petition Lien Perfection.    This Interim Order shall be

sufficient and conclusive evidence of the priority, perfection and validity of the post-petition

liens and security interests granted herein, effective as of the Petition Date, without any further

act and without regard to any other federal, state or local requirements or law requiring notice,

filing, registration, recording or possession of the Collateral, or other act to validate or perfect

such security interest or lien, including without limitation, control agreements with any financial

institution(s) party to a Deposit Account Control Agreement or holding a Blocked Account (as

defined in the Loan Agreement) or other depository account consisting of Collateral (a

"Perfection Act").  Notwithstanding the foregoing, if Agent, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then Agent is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Agent may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

(e)      Nullifying Pre-Petition Restrictions to Post-Petition Financing. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Financing Agreements, any provision that restricts, limits or impairs in any way any Debtor from granting Agent security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Financing Agreements or this Interim Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or

of the Financing Agreements, shall not (a) be effective and/or enforceable against any such Debtor(s), Agent or Lender(s), as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Agent and Lenders pursuant to this Interim Order or the Financing Agreements, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

2.2     Superpriority Administrative Expenses.  For all Post-Petition Obligations now existing or hereafter arising pursuant to this Interim Order, the Financing Agreements or otherwise, Agent, for the benefit of itself and the other Lenders, is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors (other than the Carve-Out), whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (other than the Carve-Out), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof (the "Post-Petition Superpriority Claim").

2.3     Carve-Out.

(a)     Carve-Out.  As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section

726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Carve-Out"); (iii) to the extent allowed

at any time, whether by interim order, procedural order, or otherwise (and, in the case of the

Committee Professionals (as defined below), subject to the Budget), all unpaid fees and expenses

(the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant

to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and, (subject to

the Budget) the Creditors' Committee  pursuant to section 328 or 1103 of the Bankruptcy Code

(the "Committee Professionals" and, together with the Debtor Professionals, the "Professional

Persons") at any time before or on the first business day following delivery by the Agent of a

Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after

delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional

Persons in an aggregate amount not to exceed $2,500,000 incurred after the first business day

following delivery by the Agent of the Carve Out Trigger Notice, to the extent allowed at any

time, whether by interim order, procedural order, or otherwise (the amounts set forth in this

clause (iv) being the "Post-Carve Out Trigger Notice Cap").[4]  For purposes of the foregoing,

"Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic

means) by the Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and

counsel to the Creditors' Committee, which notice may be delivered following the occurrence

and during the continuation of an Event of Default and acceleration of the Post-Petition

---

[4] Notwithstanding the foregoing, up to $500,000 of the Post-Carve Out Trigger Notice Cap may
be used to pay Allowed Professional Fees of Professional Persons incurred prior to the
delivery of a Carve Out Trigger Notice to the extent such Allowed Professional Fees
exceed the Professional Fee Carve Out Cap (as defined below).

Obligations under the Loan Agreement, respectively, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    <u>Fee Estimates</u>.  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Closing Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "<u>Calculation Date</u>") (collectively, "<u>Estimated Fees and Expenses</u>"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "<u>Weekly Statement</u>"); *provided*, *that* within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "<u>Final Statement</u>") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.  If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Accounts (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Budget (as defined in the Ratification Agreement, the "<u>Budget</u>") for such period for such Professional Person; *provided*, *that* such Professional Person shall be entitled to

be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees

included in the Budget for such period for such Professional Person from a reserve to be funded

by the Debtors from all cash on hand as of such date and any available cash thereafter held by

any Debtor pursuant to paragraph 2.3(c) below.  Any deemed draw and borrowing pursuant to

paragraph 2.3(c)(i)(x) for amounts under paragraph 2.3(a)(iii) above shall be limited to the

greater of (x) the sum of (I) the aggregate unpaid amount of Estimated Fees and Expenses

included in such Weekly Statements timely received by the Debtors prior to the Termination

Declaration Date *plus*, without duplication, and (II) the aggregate unpaid amount of Estimated

Fees and Expenses included in the Final Statements timely received by the Debtors pertaining to

the period through and including the Termination Declaration Date, and (y) the aggregate unpaid

amount of Allowed Professional Fees included in the Budget for the period prior to the

Termination Declaration Date (such amount, the <u>Professional Fee Carve Out Cap</u>").  For the

avoidance of doubt, the Agent shall be entitled to maintain at all times a reserve (the "<u>Carve-Out</u>

<u>Reserve</u>") in an amount (the "<u>Carve-Out Reserve Amount</u>") equal to the sum of (i) the greater of

(x) the aggregate unpaid amount of Estimated Fees and Expenses included in <u>all</u> Weekly

Statements timely received by the Debtors, and (y) the aggregate amount of Allowed

Professional Fees contemplated to be unpaid in the Budget at the applicable time, *plus* (ii) the

Post-Carve Out Trigger Notice Cap, *plus* (iii) an amount equal to the amount of Allowed

Professional Fees set forth in the Budget for the following week occurring after the most recent

Calculation Date, *plus* (iv) the amounts contemplated under paragraph 2.3(a)(i) and 2.3(a)(ii)

above.  Not later than 7:00 p.m. New York time on the fourth business day of each week starting

with the first full calendar week following the Closing Date, the Debtors shall deliver to the ABL

Agent or Term Loan B Agent a report setting forth the Carve-Out Reserve Amount as of such

time  (the "Fee Report"), and, in setting the Carve-Out Reserve, the Agent or Lenders shall be entitled to rely upon such reports in accordance with the Loan Agreement.  Prior to the delivery of the first report setting forth the Carve-Out Reserve Amount, the Agent shall calculate the Carve-Out Reserve Amount by reference to the Budget for subsection (i) of the Carve-Out Reserve Amount.

(c)   Carve Out Reserves.   The delivery of each Fee Report shall be accompanied by a formal borrowing request through the CEO portal and shall be (i) deemed a draw request and notice of borrowing by the Debtors for Revolving Loans under the Loan Agreement in an amount equal to the difference between (a) the current balance of the Pre-Carve Out Trigger Notice Reserve (as defined below) and (b) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors (as reflected in the Fee Report), and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Budget at the applicable time; and (ii) a direction from the Debtors to Agent to promptly wire the proceeds of such draw request to the Pre-Carve Out Trigger Notice Reserve (as defined below); *provided* that, upon the foregoing funding, the Agent and Lenders shall have no further obligation to fund the Pre-Carve Out Trigger Notice Reserve on account of any Allowed Professional Fees incurred through the Calculation Date for the most recent Fee Report delivered in accordance with Section 2.3(b) above.  On the day on which a Carve Out Trigger Notice is given by the Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall be deemed a draw request and notice of borrowing by the Debtors for Revolving Loans under the Loan Agreement in an amount equal to the sum of (x) the amounts set forth in paragraphs (a)(i) and (a)(ii), above, and (y) the then unpaid amounts of the

Allowed Professional Fees up to the Professional Fee Carve Out Cap (any such amounts actually advanced shall constitute Revolving Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable Revolving Loans pursuant to the foregoing clause of this paragraph (c)). The Debtors shall deposit and hold such amounts in a segregated account at the Agent (or such other institution as the Agent and the Debtors agree) in trust exclusively to pay such unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve"). On the Termination Declaration Date, the Carve Out Trigger Notice shall also be deemed a request by the Debtors for (1) Revolving Loans under the Loan Agreement in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute Revolving Loans), and shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to Post-Carve Out Trigger Notice Cap (which cash amounts shall reduce, on a dollar for dollar basis, the draw requests and applicable Revolving Loans pursuant to the foregoing clause of this paragraph (c)). The Debtors shall deposit and hold such amounts in a segregated account at the Agent in trust exclusively to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves"). On the third business day following the Termination Declaration Date and the deemed requests for the making of Revolving Loans as provided in this paragraph (c), notwithstanding anything in the Loan Agreement to the contrary, including with respect to (1) the existence of a Default or Event of Default, (2) the failure of the Debtors to

satisfy any or all of the conditions precedent for the making of any Revolving Loans under the

Loan Agreement, (3) any termination of the Commitments following an Event of Default, or (4)

the occurrence of the Maturity Date, each Lender with an outstanding Commitment shall make

available to the Agent, as applicable, such Lender's pro rata share of such Loans, as applicable.

For the avoidance of doubt, the Carve Out Reserves shall constitute the primary source for

payment of Allowed Professional Fees entitled to benefit from the Carve Out, and any lien

priorities or superpriority claims granted pursuant to this Interim Order to secure payment of the

Carve Out shall be limited to any shortfall in funding as provided below.

(d)    Application of Carve Out Reserves.  (i)  All funds in the Pre-Carve Out

Trigger Notice Reserve shall be used first to pay the obligations set forth in subparagraphs

(a)(i) through  (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out

Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap (other

than amounts up to $500,000 to the extent the Pre-Carve Out Amounts exceed the Professional

Fee Carve Out Cap), until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been

reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed *first* to the

Agent on account of the applicable Obligations until indefeasibly paid in full, in cash, all

Commitments have been terminated, and all Letters of Credit have been cancelled (or all such

Letters of Credit have been fully cash collateralized or otherwise back-stopped, in each case to

the satisfaction of the applicable Issuing Bank), and *thereafter*  to the Prepetition ABL Lenders

in accordance with their rights and priorities as of the Petition Date.

(ii)    All funds in the Post-Carve Out Trigger Notice Reserve (other than up to

$500,000, which may be used to pay Pre-Carve Out Amounts to the extent they exceed the

Professional Fee Carve Out Cap) shall be used first to pay the obligations set forth in clause (iv)

of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"). If the

Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii),

below, all remaining funds shall be distributed *first* to the Agent on account of the applicable

Obligations until indefeasibly paid in full, in cash, all Commitments have been terminated, and

all Letters of Credit have been cancelled (or all such Letters of Credit have been fully cash

collateralized or otherwise back-stopped, in each case to the satisfaction of the applicable Issuing

Bank), and *thereafter* to the Prepetition ABL Lenders in accordance with their rights and

priorities as of the Petition Date.

(iii)    Notwithstanding anything to the contrary in the Financing Agreements or

this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set

forth in this paragraph (c), then, any excess funds in one of the Carve Out Reserves following the

payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be

used to fund the other Carve Out Reserve to the extent of any shortfall in funding prior to making

any payments to the ABL Agent or the Prepetition ABL Lenders, as applicable.

(iv)    Notwithstanding anything to the contrary in the Financing Agreements or

the Interim Order, following the third business day after delivery of a Carve Out Trigger Notice,

the ABL Agent, the Prepetition ABL Agent, the Term Loan B Agent, and the Prepetition Term

Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale

or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully

funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with

any excess paid as provided in paragraphs (ii) and (iii) above.

(v)    Notwithstanding anything to the contrary in this Interim Order, (i) the

failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect

29

the priority of the Carve Out with respect to any shortfall (as described below), and (ii) subject to the limitations with respect to the ABL Agent, ABL Lenders, Prepetition ABL Agent and Prepetition ABL Lenders set forth in paragraph (b), above, in no way shall the Initial Budget, any Approved Budget, Annual Operating Forecast, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Loan Agreement, the Carve Out shall be senior to all liens and claims securing the Loan Agreement, the Adequate Protection Liens, and the Diminution in Value claims, and any and all other forms of adequate protection, liens, or claims securing the Post-Petition Obligations or the Pre-Petition Obligations.

(d)     No Direct Obligation To Pay Allowed Professional Fees.  The Agent and the Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Agent or the Lenders, or any Issuing Bank, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)     Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out; provided that, upon the funding in the first sentence of Section 2.3(c) above, the Agent and Lenders shall have no further obligation to fund the Pre-Carve Out Trigger Notice Reserve on

account of any Allowed Professional Fees incurred through the Calculation Date for the most recent Fee Report delivered in accordance with Section 2.3(b) above.

(f)  <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the Obligations secured by the Post-Petition Collateral and shall be otherwise entitled to the protections granted under this Final Order, the Financing Agreements, the Bankruptcy Code, and applicable law.

2.4  <u>Payment of Carve-Out</u>.

Payment from the Carve-Out, whether by or on behalf of the Agent or any Lender, shall not and shall not be deemed to reduce the Post-Petition Obligations, and shall not and shall not be deemed to subordinate any of any of Agent's or Lender's liens and security interests in the Pre-Petition Collateral, any other Collateral, the Pre-Petition Adequate Protection Superpriority Claim (as defined below), or the Post-Petition Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.

2.5  <u>Excluded Professional Fees</u>.

(a)  Notwithstanding anything to the contrary in this Interim Order, neither the proceeds of Collateral or any Loans, Letters of Credit or any other credit or financial accommodations provided under or in connection with the Financing Agreements shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:

(i)      an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (A) challenging the legality, validity, priority, perfection, or enforceability of (I) the Pre-Petition Obligations or Agent's and any Lender's liens on and security interests in the Pre-Petition Collateral, or (II) the Post-Petition Obligations or Agent's or any Lender's liens on and security interests in the Collateral; (B) invalidating, setting aside, avoiding, recharacterizing or subordinating, in whole or in part, (I) the Pre-Petition Obligations or the Agent's and Lenders' liens on and security interests in the Pre-Petition Collateral, or (II) the Post-Petition Obligations or Agent's or Lenders' liens on and security interests in the Collateral; or (C) preventing, hindering or delaying Agent's or Lenders' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of the Loan Agreement, the Financing Agreements, and this Interim Order;

(ii)      a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code) without the prior written consent of Agent;

(iii)      a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the Bankruptcy Code or otherwise incur Indebtedness (as defined in the Loan Agreement) without the prior written consent of Agent (except to the extent permitted under the Financing Agreements);

(iv)      the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Agent or any Lender or any of their

respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest or disgorge any payments under chapter 5 of the Bankruptcy Code or any applicable state law equivalents;

(v)     the cost of investigation into any claims against Agent or any Lender arising under or in connection with the Pre-Petition Loan Documents in excess of $50,000; or

(vi)     any act which has or could directly, materially and adversely modify or compromise the rights and remedies of Agent or any Lender under this Interim Order, or which directly results in the occurrence of an Event of Default under this Interim Order or any Financing Agreements.

2.6     Limited Use of Cash Collateral; Adequate Protection.

(a)     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, the Loan Agreement, the Financing Agreements, and in accordance with the Budget, Borrowers shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) for the period commencing on the date of this Interim Order and terminating upon the date on which the Agent delivers an Enforcement Notice (as defined below) to counsel for the Debtors, counsel for the Committee (if appointed), and the U.S. Trustee, subject to the liens and security interests granted to the Agent and the Lenders; *provided* that during the Default Notice Period (as defined herein) the Debtors may use Cash Collateral solely for the following amounts and expenses: (i) to fund the Carve Out Reserves, as set forth in paragraph 2.3 above; and (ii) to meet payroll obligations and, as agreed by the Agent, in its sole discretion, to pay expenses critical to the administration of the

Debtors' estates Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the Financing Agreements and in accordance with the Budget.

(b)    Replacement Liens.  As adequate protection for the diminution in value of their interests in the Collateral (including Cash Collateral) on account of the Borrowers' use of such Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out on a dollar-for dollar basis (collectively, the "Diminution in Value"), the Agent, for the benefit of itself and the Lenders, is hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "Pre-Petition Replacement Lien").  The Pre-Petition Replacement Lien shall be junior and subordinate only to (A) the Carve-Out (B) the Permitted Liens, and (C) Agent's and Lenders' liens on the Collateral to secure the Post-Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)    Section 507(b) Priority Claims.  As adequate protection for the Diminution in Value, the Agent, for the benefit of itself and Lenders, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in each of the Cases and any successor bankruptcy cases (the "Pre-Petition Adequate Protection Superpriority Claim").  The Pre-Petition Adequate Protection Superpriority Claim shall be junior only to (A) the Carve-Out, and (B) the Post-Petition Superpriority Claim, and shall otherwise have priority

34

over all administrative expense claims and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)    Adequate Protection Payments and Protections.    As further adequate protection (the "Adequate Protection Payments") for the Diminution in Value, the Debtors are authorized and directed to provide adequate protection to the Agent and Lenders in the form of payment in cash (i) upon entry of this Interim Order of the reasonable fees, expenses, and disbursements (including without limitation, the reasonable and documented fees, expenses, and disbursements of counsel and third-party consultants and other vendors, including without limitation, financial advisors and auditors) incurred by the Agent arising prior to the Petition Date, and (ii) the reasonable fees, expenses, and disbursements (including without limitation, the fees, expenses, and disbursements of counsel and third-party consultants and other vendors, including without limitation, financial advisors and auditors) incurred by the Agent arising subsequent to the Petition Date.

Section 3.      Default; Rights and Remedies; Relief from Stay.

3.1    Events of Default.    The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Order: (a) any Debtor's failure to perform, in any respect, any of their obligations under this Interim Order; or (b) an "Event of Default" under the Loan Agreement or any of the other Financing Agreements (except for an Event of Default under Section 5.4(m) of the Ratification Agreement, neither of which shall not be considered an "Event of Default").[5]

---

[5] NTD: Ratification Agreement addresses the EoD pursuant to Section 10.1(g) of the Pre-Petition Loan Agreement.

3.2     <u>Rights and Remedies upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the Loan Agreement and the other Financing Agreements, and (b) the Agent shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order or any Financing Document, as applicable, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Loans or provide or arrange for Letters of Credit on behalf of Debtors, setting off any Obligations with Collateral or proceeds in Agent's or any Lender's possession, and enforcing any and all rights with respect to the Collateral.  Agent and Lenders shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3     <u>Expiration of Loan Commitment</u>.  Upon the expiration of Borrowers' authority to borrow or otherwise obtain other credit accommodations from Agent and Lenders pursuant to the terms of this Interim Order and the Financing Agreements (except if such authority shall be extended with the prior written consent of Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by Agent or any Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Order, all of the Post-Petition Obligations shall immediately become due and payable and Agent and Lenders shall have no

obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtors or permit the use of Cash Collateral.

3.4    Modification of Automatic Stay.    The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit Agent and each Lender to perform any act authorized or permitted under or by virtue of this Interim Order or the Financing Agreements, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the Financing Agreements, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Pre-Petition Obligations or the Post-Petition Obligations, as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the Financing Agreements (subject to Section 5.12 of this Interim Order) and apply such payments to the Pre-Petition Obligations or Post-Petition Obligations pursuant to the Financing Agreements and/or this Interim Order, as applicable, and upon an Event of Default, (d) declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral and (e) to take any other action and exercise all other rights and remedies provided to it by this Interim Order, the Financing Agreements or applicable law other than those rights and remedies against the Collateral upon the expiration of the Default Notice Period (as defined below).  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days (the "Default Notice Period") prior written notice (the "Enforcement Notice") to (i) counsel for the Debtors, (ii) counsel for the Committee (if appointed), and (iii)  the U.S. Trustee, the

Agent, acting on behalf of itself and the Lenders, without further notice, application or order of the Court, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the Financing Agreements or applicable law that Agent may deem appropriate in its sole discretion to proceed against and realize upon the Collateral or any other assets or properties of Debtors' Estates upon which the Agent, for the benefit of itself and the applicable Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations. Notwithstanding anything to the contrary, any action that Agent is otherwise permitted to take pursuant to this Interim Order to (i) terminate the commitments under the Financing Agreements, (ii) accelerate the Loans, (iii) send blocking notices or activation notices pursuant to the terms of any Deposit Account Control Agreement, (iv) repay any amounts owing in respect of the Obligations (including, without limitation, fees, indemnities and expense reimbursements) and (v) cash collateralize Letters of Credit and/or Bank Products issued pursuant to the Financing Agreements, in each case, shall not require any advance notice to the Debtors.  During the Default Notice Period, the Debtors and the Committee (if appointed) shall be entitled to seek an emergency hearing, and the Agent, and Lenders shall consent to such emergency hearing, within the Default Notice Period with the Court; *provided* that the sole issue that may be raised by the Debtors are whether an Event of Default has occurred and/or is continuing, and the Debtors hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the Agents or the Lenders set forth in this Interim Order or the Financing Agreements.

Section 4.          Representations; Covenants; and Waivers.

          4.1          Objections to Pre-Petition Obligations.  Notwithstanding anything to the

contrary in this Interim Order, any action, claim, defense, complaint, motion or other written

opposition (hereinafter, an "Objection") that seeks to object to, challenge, contest or otherwise

invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or

claim of any kind: (a) the existence, validity or amount of the Pre-Petition Obligations as of the

Petition Date, or (b) the extent, legality, validity, perfection or enforceability of Agent's and

Lenders' pre-petition liens and security interests in the Pre-Petition Collateral shall be properly

filed with the Court on or before the earlier of (x) sixty (60) calendar days from the date of

appointment of the Committee by the U.S. Trustee, or (y) seventy-five (75) calendar days from

the Petition Date; provided, however, that nothing herein shall permit any party to challenge the

extent or validity of the Post-Petition Obligations for any disbursements in excess of the Pre-

Petition Obligations.  If any such Objection is timely and properly filed and a final, non-

appealable order is entered by a court of competent jurisdiction sustaining and ordering some or

all of the relief requested in such Objection, then nothing in this Interim Order shall prevent the

Court from granting appropriate relief with respect to the Pre-Petition Obligations or Agent's or

Lenders' pre-petition liens on the Pre-Petition Collateral.  If no Objection is timely and properly

filed, or if an Objection is timely and properly filed but denied, (i) the Pre-Petition Obligations

shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim,

deduction or claim of any kind, and shall not be subject to any further objection or challenge by

any party at any time, and Agent's and Lenders' pre-petition liens on and security interest in the

Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable

for all purposes and of first and senior priority, subject to only the Carve-Out and Permitted

Liens, and (ii) the Agent and the Lenders, and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Loan Documents and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.   Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Agent or any Lenders in connection with all post-petition Loans and Letters of Credit, and any other post-petition financial and credit accommodations provided by Agent and the Lenders to Debtors in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Financing Agreements.

    4.2 <u>Debtors' Waivers</u>. Prior to the indefeasible payment in full of all Obligations on terms and conditions satisfactory to Agent, (x) it shall be an Event of Default if the Debtors seek further authority, and (y) upon entry of a Final Order, whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have:  (a) to use Cash Collateral of Agent and Lenders under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Interim Order or as may be otherwise expressly permitted pursuant to the Financing Agreements, (c) to challenge the application of any payments authorized by this Interim Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, (d) to propose, support or have a plan of reorganization or liquidation that is either inconsistent with the Ratification Agreement or does not provide for the indefeasible payment in cash in full

and satisfaction of all Obligations (other than unmatured indemnity obligations for which claims have not been asserted and are not reasonably expected to be asserted at any time in the future) on the effective date of such plan in accordance with the terms and conditions set forth in the Loan Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Agent or any Lender as provided in this Interim Order and the Financing Agreements or Agent's or any Lender's exercise of such rights or remedies; provided, however, that Agent may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Agent or any Lender.

4.3     Section 506(c) Claims.  Subject to entry of the Final Order, no costs or expenses of administration which have or may be incurred in the Cases shall be charged against Agent or any Lender, their respective claims or the Collateral pursuant to §§ 105 or 506(c) of the Bankruptcy Code or otherwise without the prior written consent of Agent, and no such consent shall be implied from any other action, inaction or acquiescence by Agent or any Lender.

4.4     Collateral Rights.  Until all Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Loan Agreement and the other Financing Agreements:

(a)     no other party shall foreclose or otherwise seek to enforce any junior lien or claim in Collateral; and

(b)     upon and after the declaration of the occurrence of an Event of Default, and subject to Agent obtaining relief from the automatic stay as provided for herein to enforce its rights and remedies against the Collateral, in connection with a liquidation of any of the Collateral, Agent (or any of its employees, agents, consultants,

41

contractors or other professionals) shall have the right, at the sole cost and expense of Debtors, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses.  Agent and Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Agent actually occupies or uses such assets or properties or for any fees, rentals or other amounts that may become due following the end of Agent's occupation or use).

      4.5    <u>Releases</u>.

Upon the entry of the Final Order, and subject to Section 4.1 above, in consideration of Agent and Lenders permitting Debtors to use the Pre-Petition Collateral (including Cash Collateral) and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the Financing Agreements and this Interim Order, each Debtor, on behalf of itself and its successors and assigns, (collectively, the "<u>Releasors</u>"), shall, forever release, discharge and acquit Agent, each Lender, and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "<u>Pre-Petition Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness

and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that any of the Releasors had, have or hereafter can or may have against Pre-Petition Releasees (or any of them) as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Obligations, Financing Agreements and any Loans, Letters of Credit, Bank Products or other financial accommodations made by Agent and/or the Lenders to Debtors pursuant to the Financing Agreements.   In addition, upon the repayment of all Obligations (as defined in the Loan Agreement) owed to the Agent and the Lenders by Debtors and termination of the rights and obligations arising under the Financing Agreements (which payment and termination shall be on terms and conditions acceptable to the Agent), the Agent and the Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring on or prior to the date of such repayment or termination in connection with or related to the Financing Agreements, this Interim Order or the Final Order.

Section 5.      <u>Other Rights and Post-Petition Obligations</u>.

   5.1 <u>No Modification or Stay of This Interim Order</u>.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the Financing Agreements or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Cases (each, a "<u>Subject Event</u>"), (x) the acts taken by each of the Agent and the Lenders in accordance with this Interim Order, and (y) the Post-Petition Obligations incurred or arising prior to Agent's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by Agent and Lenders in accordance

with this Interim Order, and the liens granted to Agent and Lenders in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Agent and each Lender pursuant to this Interim Order and the Financing Agreements shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Interim Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

    5.2    <u>Power to Waive Rights; Duties to Third Parties</u>.  Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of Agent and Lenders (the "<u>Lender Rights</u>"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by Agent of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Agent or any Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to Agent or any Lender.

    5.3    <u>Disposition of Collateral</u>.  Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside the ordinary course of business, other than pursuant to the terms of the Loan Agreement and the Budget, without the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Agent or any Lenders) and, in each case, an order of this Court.

5.4    Inventory.  Debtors shall not, without the consent of the Agent, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5    Reservation of Rights.    The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Agent and each Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Financing Agreements or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

5.6    Binding Effect.

(a)    The provisions of this Interim Order and the Financing Agreements, the Post-Petition Obligations, the Pre-Petition Adequate Protection Superpriority Claim, the Post-Petition Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of each of the Agent and the Lenders provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order converting one or more of

the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

(b)      Any order dismissing one or more of the Cases under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the Post-Petition Superpriority Claim and Agent's and Lenders' liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)      In the event this Court modifies any of the provisions of this Interim Order or the Financing Agreements following a Final Hearing, such modifications shall not affect the rights or priorities of Agent and Lenders pursuant to this Interim Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and this Interim Order shall otherwise remain in full force and effect to such extent.

(d)      This Interim Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor.  This Interim Order shall also inure to the benefit of Debtors, Agent, Lenders, and each of their respective successors and assigns.

5.7     Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.

(a)     All post-petition advances and other financial accommodations under the Loan Agreement and the other Financing Agreements are made in reliance on this Interim Order and there shall not at any time be entered in the Cases, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (i) authorizes the use of cash collateral of Debtors in which Agent or Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which Agent or Lenders have a lien or security interest, except as expressly permitted hereunder or in the Financing Agreements, or (ii) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Agent or Lenders hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Agent and Lenders herein; unless, in each instance (x) Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Agent or any Lender, or (y) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Loan Agreement and the other Financing Agreements (other than unmatured indemnity obligations for which claims have not been asserted), including, without limitation, all debts and obligations of Debtors to Agent and Lenders which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Agent.  The security interests and liens granted to or for the benefit of Agent and Lenders hereunder and the

rights of Agent and Lenders pursuant to this Interim Order and the Financing Agreements with respect to the Obligations and the Collateral are cumulative.

5.8     No Owner/Operator Liability.  Subject to the entry of the Final Order granting such relief, neither the Agent nor any Lender shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

5.9     Marshalling.  Subject to entry of the Final Order granting such relief, in no event shall Agent or any Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  Agent and Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Agent or any Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

5.10    <u>Right of Setoff</u>.  To the extent any funds were on deposit with Agent as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with Agent or any Lender immediately prior to the filing of the Cases (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "<u>Deposited Funds</u>") are subject to rights of setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of Agent or the applicable Lenders pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

5.11    <u>Right to Credit Bid</u>.  The Agent, on behalf of itself and the Lenders, shall have the right to "credit bid" the amount of its and their claims that are Obligations arising under the terms of the Financing Agreements, during any sale of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

5.12    <u>Payment and Review of Lender Fees and Expenses</u>.  Each Debtor shall pay all reasonable fees and expenses of the Agent and Lenders to the extent provided in the Financing Agreements, including, without limitation, the non-refundable payment to the Agent and the Lenders, as the case may be, including without limitation reasonable and documented professional fees and legal fees and expenses, whether incurred before or after the Petition Date; <u>provided</u>, that Debtors shall pay all such reasonable fees and expenses within seven (7) business days of delivery of a statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such

payments) to the Debtors and the Committee (if appointed), unless, within such seven (7) business day period, the Debtors or the Committee (if appointed) serve a written objection upon the requesting party, in which case, the Debtors shall immediately pay such amounts that are not the subject of any objection and pay the withheld amount as subsequently agreed by the parties or ordered by the Court to be paid.

5.13   <u>Access to Collateral</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Agent and Lenders contained in this Interim Order, the Financing Agreements, or otherwise available at law or in equity, and subject to the terms of the Loan Agreement, upon reasonable prior written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing, the Agent may, subject to the applicable notice provisions, if any, in this Interim Order and any separate applicable agreement by and between such landlord and the Agent  enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the Agent shall be obligated only to pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the Agent, calculated on a daily per diem basis. Nothing herein or otherwise shall require the Agent to assume any lease as a condition to the rights afforded in this paragraph. For the avoidance of doubt, subject to (and without waiver of) the rights of the Agent under applicable nonbankruptcy law, the Agent can only enter upon a leased premises after an Event of Default in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or

(ii) upon entry of an order of this Court obtained by motion of the Agent on such notice to the landlord as shall be required by this Court.

5.14    Notwithstanding anything else contained herein to the contrary, any party may seek marshalling or seek to assert reclamation claims prior to the Final Hearing, solely to the extent that any such remedies or claims exist.

5.15    Term; Termination.  Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtors, Agent and Lenders authorized by this Interim Order may be terminated pursuant to the terms of the Loan Agreement.

5.16    Limited Effect.   In the event of a conflict between the terms and provisions of any of the Financing Agreements and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the Financing Agreements.

5.17    Objections Overruled.  All objections to the entry of this Interim Order are (to the extent not withdrawn, waived, or settled) hereby overruled.

5.18    Retention of Jurisdiction.  The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the Loan Agreement, and the other Financing Agreements.

Section 6.    Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for February 7, 2019, at 1:00 p.m. before this Court.  The Debtors shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee (if appointed) and such Committee's counsel, if

same shall have filed a request for notice.  Such notice is deemed good and sufficient and that no

further notice need be given.  Any party in interest objecting to the relief sought at the Final

Hearing shall serve and file written objections, which objections shall be served upon (a)

proposed restructuring counsel to the Debtors, (i) Kirkland & Ellis LLP, 300 North LaSalle,

Chicago, Illinois 60654, Attn: Travis M. Bayer, Esq.; Kirkland & Ellis LLP, 601 Lexington

Avenue, New York, New York 10022, Attn: Steven Serajeddini, Esq., and (ii) McGrath North,

First National Tower, Suite 3700, 1601 Dodge Street, Omaha, NE  68102, Attn: James J.

Niemeier (b) counsel for the Agent, (i) Otterbourg, P.C., 230 Park Avenue, New York, New

York 10169, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq. (E-Mail:

dfiorillo@otterbourg.com and csimon@otterbourg.com) and (ii) Baird Holm LLP, 1700 Farnam

St., Suite 1500, Omaha, NE 68102, Attn: T. Randall Wright, Esq. and Brandon R. Tomjack, Esq.

(rwright@bairdholm.com and btomjack@bairdholm.com); (c) counsel to the Committee (if

appointed); and (d) the Office of the United States Trustee for the District of Nebraska, 111

South 18th Plaza, Suite 1148 Omaha, Nebraska 68102, Attn: Jerry Jensen, Esq., and shall be

filed with the Clerk of the United States Bankruptcy Court for the District of Nebraska, in each

case, to allow actual receipt of the foregoing no later than ten (10) days prior to the Final

Hearing.


Dated:  Omaha, Nebraska
        January 16, 2019

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1**
**Ratification Agreement**

## **EXHIBIT 2**
**Budget**

EXHIBIT C
to
RATIFICATION AND AMENDMENT AGREEMENT

**Information Certificate**

(see attached)

INFORMATION CERTIFICATE
OF
SPECIALTY RETAIL SHOPS HOLDING CORP.
SHOPKO HOLDING COMPANY, LLC
RETAINED R/E SPE, LLC
SHOPKO FINANCE, LLC
SHOPKO STORES OPERATING CO., LLC
SHOPKO PROPERTIES, LLC
SVS TRUCKING, LLC
SHOPKO INSTITUTIONAL CARE SERVICES, LLC
PENN-DANIELS, LLC
SHOPKO OPTICAL MANUFACTURING, LLC
SHOPKO GIFT CARD CO., LLC
AND ITS SUBSIDIARIES

January 16, 2019

Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National
Association
One Boston Place, Suite 1800
Boston, Massachusetts  02108

In connection with certain financing provided or to be provided or arranged for Wells Fargo
Bank, National Association, successor by merger to Wachovia Bank, National Association
("Wells Fargo") and certain other lenders (together with Wells Fargo in its individual capacity,
collectively, "Lenders") and for whom Wells Fargo will be acting as agent (in such capacity,
"Agent"), each of the undersigned (individually, a "Company" and, collectively, the
"Companies") jointly and severally represents and warrants to Agent and Lenders the following
information about it, its organizational structure and other matters of interest to Agent and
Lenders:

1.      The full and exact name of each Company as set forth in its certificate of incorporation
        (or its certificate of formation or other organizational document filed with the applicable
        state governmental authority, as the case may be) is as follows:

        Entity Name
    1   Specialty Retail Shops Holding Corp. (f/k/a SKO Group Holding Corp.)
    2   Retained R/E SPE, LLC
    3   ShopKo Finance, LLC
    4   ShopKo Holding Company, LLC
    5   ShopKo Stores Operating Co., LLC
    6   ShopKo Properties, LLC

7    Penn-Daniels, LLC
8    SVS Trucking, LLC
9    ShopKo Gift Card Co., LLC (f/k/a ShopKo Ventures – Duluth, LLC)
10   ShopKo Optical Manufacturing, LLC
11   ShopKo Institutional Care Services Co., LLC
12   Pamida Stores Operating Co., LLC
13   Pamida Transportation, LLC
14   Places' Associates' Expansion, LLC

2.    Each Company uses and owns the following trade name(s) in the operation of its business (e.g. billing, advertising, etc.; note: do not include names which are product names only):

Shopko
Shopko Optical Manufacturing
Shopko Express Rx
Shopko Hometown
Shopko RxCare
Pamida

3.    Each Company is a registered organization of the following type (for example, corporation, limited partnership, limited liability company, etc.):

| | Entity Name | Jurisdiction | Type of Organization | Date of Organization |
|---|---|---|---|---|
| 1 | Specialty Retail Shops Holding Corp. | DE | Corporation | 10/12/05 |
| 2 | Retained R/E SPE, LLC | DE | Limited Liability Company | 05/16/06 |
| 3 | ShopKo Finance, LLC | DE | Limited Liability Company | 02/02/12 |
| 4 | ShopKo Holding Company, LLC | WI | Limited Liability Company | 12/09/05 |
| 5 | ShopKo Stores Operating Co., LLC | DE | Limited Liability Company | 10/11/05 |
| 6 | ShopKo Properties, LLC | MN | Limited Liability Company | 12/23/05 |
| 7 | Penn-Daniels, LLC | DE | Limited Liability Company | 12/23/05 |
| 8 | SVS Trucking, LLC | MN | Limited Liability Company | 12/23/05 |
| 9 | ShopKo Gift Card Co., LLC | MN | Limited Liability Company | 12/23/05 |

| 10 | ShopKo Optical Manufacturing, LLC | WI | Limited Liability Company | 10/12/05 |
| 11 | Shopko Institutional Care Services Co., LLC | DE | Limited Liability Company | 01/14/10 |
| 12 | Pamida Stores Operating Co., LLC | DE | Limited Liability Company | 10/11/05 |
| 13 | Pamida Transportation, LLC | NE | Limited Liability Company | 12/23/05 |
| 14 | Place's Associates' Expansion, LLC | MO | Limited Liability Company | 9/11/98 |

4.    The organizational identification number of each Company issued by its jurisdiction of organization is as set forth below (or if none is issued by the jurisdiction of organization indicate "none"):

| Company | ID No. |
|---|---|
| Specialty Retail Shops Holding Corp. | 4044244 |
| Retained R/E SPE, LLC | 4151918 |
| ShopKo Finance, LLC | 5104066 |
| ShopKo Holding Company, LLC | S073100 |
| ShopKo Stores Operating Co., LLC | 4032226 |
| ShopKo Properties, LLC | 1640231-3 |
| Penn-Daniels, LLC | 0930434 |
| SVS Trucking, LLC | 1640231-2 |
| ShopKo Gift Card Co., LLC | 1640231-4 |
| ShopKo Optical Manufacturing, LLC | S066354 |
| ShopKo Institutional Care Services Co., LLC | 4777352 |
| Pamida Stores Operating Co., LLC | 4032229 |
| Pamida Transportation, LLC | 10078892 |
| Place's Associates' Expansion, LLC | LC0022158 |

5.    The Federal Employer Identification Number of each Company is as follows:

| Company | FEIN |
|---|---|
| Specialty Retail Shops Holding Corp. | 20-3940029 |
| Retained R/E SPE, LLC | 20-4936679 |
| ShopKo Finance, LLC | 80-0781152 |
| ShopKo Holding Company, LLC | 20-3940171 |
| ShopKo Stores Operating Co., LLC | 20-3606109 |
| ShopKo Properties, LLC | 41-1740865 |
| Penn-Daniels, LLC | 37-1110040 |
| SVS Trucking, LLC | 41-1400592 |
| ShopKo Gift Card Co., LLC | 39-1739620 |
| ShopKo Optical Manufacturing, LLC | 20-3616346 |
| ShopKo Institutional Care Services Co., LLC | 27-1717112 |
| Pamida Stores Operating Co., LLC | 20-3606157 |
| Pamida Transportation, LLC | 47-0714219 |
| Place's Associates' Expansion, LLC | 43-1827526 |

6.    [Reserved.]

7.    Since the date of its organization, the name of each Company as set forth in its organizational documentation as filed of record with the applicable state authority has been changed as follows:

| Company | Date of Change | Prior Name |
|---|---|---|
| Specialty Retail Shops Holding Corp. | December 6, 2006 | SKO Group Holding Corp. |
| ShopKo Properties, LLC | December 23, 2005 | ShopKo Properties, Inc. |
| Penn-Daniels, LLC | December 23, 2005 | Penn-Daniels, Incorporated |
| SVS Trucking, LLC | December 23, 2005 | SVS Trucking, Inc. |
| ShopKo Optical Manufacturing, LLC | October 11, 2005 | SKO Optical Manufacturing, Inc. |
| ShopKo Holding Company, LLC | February 6, 2012 | ShopKo Holding Company, Inc. |
| ShopKo Gift Card Co., LLC | September 25, 2017 | ShopKo Ventures-Duluth, LLC |

| | | |
|---|---|---|
| ShopKo Ventures-Duluth, LLC | December 23, 2005 | ShopKo Ventures-Duluth, Inc. |
| Pamida Transportation, LLC | December 23, 2005 | Pamida Transportation Conversion LLC |

8.    Since the date of five (5) years prior to the date hereof, each Company has made or entered into the following mergers or acquisitions:

| Company | Merger/Acquisition | Date |
|---|---|---|
| None. | | |

9.    The chief executive office and mailing address of each Company is located at the address indicated for such Company on Schedule 8.2 hereto.

10.    The books and records of each Company pertaining to accounts, contract rights, inventory, and other assets are located at the addresses indicated for such Company on Schedule 8.2 hereto.

11.    Each Company has other places of business and/or maintains inventory or other tangible assets only at the addresses (indicate whether locations are owned, leased or operated by third parties and if leased or operated by third parties, their name and address) indicated for such Company on Schedule 8.2 hereto.

12.    The places of business or other locations of any assets used by each Company during the last four (4) months other than those listed above are as indicated for such Company on Schedule 8.2 hereto.

13.    Each Company's assets are owned and held free and clear of liens, mortgages, pledges, security interests, encumbrances or charges except as set forth on Schedule 8.4 hereto or as otherwise permitted under Section 9.8 of the Third Amended and Restated Loan and Security Agreement, dated as of February 7, 2012 (and as amended through the date hereof, the "Loan and Security Agreement") by and between the Companies, Agent and Lenders and except for licenses of intellectual property. Capitalized terms used but not defined herein have the meaning provided for in the Loan and Security Agreement.

14.    There are no judgments or material litigation pending by or against any Company, its subsidiaries and/or affiliates or any of its officers/principals, except as set forth on Schedule 8.6 hereto.

15.    Except as set forth on Schedule 8.8 hereto, each Company

(a)    has not generated, used, stored, treated, transported, manufactured, handled, produced or disposed of any Hazardous Materials, in any manner which at any time violates any applicable Environmental Law or Permit, except for violations which could not reasonably be expected to result in a Material Adverse Effect, and the operations of Borrowers, Guarantors and any Subsidiary of any Borrower or Guarantor comply with all Environmental Laws and all Permits, except for such non-compliance which could not be reasonably expected to result in a Material Adverse Effect;

(b)    has not been subject to any investigation by any Governmental Authority or any proceeding, complaint, order, directive, claim, citation or notice by any Governmental Authority or any other person nor is any pending or to the best of any Borrower's or Guarantor's knowledge threatened, with respect to any non compliance with or violation of the requirements of any Environmental Law by any Borrower or Guarantor and any Subsidiary of any Borrower or Guarantor or the release, spill or discharge, threatened or actual, of any Hazardous Material or the generation, use, storage, treatment, transportation, manufacture, handling, production or disposal of any Hazardous Materials or any other environmental, health or safety matter, which in any case could reasonably be expected to result in a Material Adverse Effect;

(c)    has no material liability (contingent or otherwise) in connection with a release, spill or discharge, threatened or actual, of any Hazardous Materials or the generation, use, storage, treatment, transportation, manufacture, handling, production or disposal of any Hazardous Materials which in any case could reasonably be expected to result in a Material Adverse Effect; and

(d)    has all Permits required to be obtained or filed in connection with the operations of Borrowers and Guarantors under any Environmental Law, except where the failure to maintain or have such Permits could not reasonably be expected to result in a Material Adverse Effect, and all of such licenses, certificates, approvals or similar authorizations and other Permits are valid and in full force and effect.

16.    No Company has any deposit accounts, investment accounts, securities account or similar accounts with any bank, savings and loan or other financial institution, except as set forth on Schedule 8.10 hereto for the purposes and of the types indicated therein.

17.    No Company owns any registered or applied-for trademarks, patents, patent applications, or copyright registrations, except as set forth on Schedule 8.11 hereto (indicate type of intellectual property, owner, registration or application number, and date of registration or filing, as applicable).

18.    Each Company is affiliated with, or has ownership in, the corporations (including subsidiaries) and other organizations set forth on Schedule 8.12 hereto.

19. The names of the stockholders (or members or partners, including general partners and limited partners) of each Company and their holdings are as set forth on Schedule 8.12 hereto (if stock or other interests are widely held indicate only holders owning 10% or more of the voting stock or other interests).

20. No Company is a party to or bound by an collective bargaining or similar agreement with any union, labor organization or other bargaining agent except as set forth on Schedule 8.13 hereto (indicate date of agreement, parties to agreement, description of employees covered, and date of termination).

21. [Reserved.]

22. No Company has any "indebtedness" except as set forth on Schedule 9.9 hereto. For this purpose, the term "indebtedness" means any liability not otherwise permitted under the Loan and Security Agreement, whether or not contingent, (a) in respect of borrowed money (whether or not the recourse of the lenders is to the whole of the assets of such Company or only to a portion thereof) or evidenced by bonds, notes, debentures or similar instruments; (b) representing the balance deferred and unpaid of the purchase price of any property or services (except any such balance that constitutes an account payable to a trade creditor (whether or not an affiliate) created, incurred, assumed or guaranteed by such Company in the ordinary course of business of such Company in connection with obtaining goods, materials or services that is not overdue by more than ninety (90) days, unless the trade payable is being contested in good faith); (c) all obligations as lessee under leases which have been, or should be, in accordance with generally accepted accounting principles recorded as capital leases; (d) any contractual obligation, contingent or otherwise, of such Company to pay or be liable for the payment of any indebtedness described in this definition of another person or entity, including, without limitation, any such indebtedness, directly or indirectly guaranteed, or any agreement to purchase, repurchase, or otherwise acquire such indebtedness, obligation or liability or any security therefor, or to provide funds for the payment or discharge thereof, or to maintain solvency, assets, level of income, or other financial condition; (e) representing all obligations with respect to redeemable stock and redemption or repurchase obligations under any capital stock or other equity securities issued by such Company (excluding redemption or repurchase obligations that may be triggered solely at the option of such Company unless such obligations have been triggered); (f) representing all reimbursement obligations and other liabilities of such Company with respect to surety bonds (whether bid, performance or otherwise), letters of credit, banker's acceptances, drafts or similar documents or instruments issued for such Company's account; (g) representing all indebtedness of such Company in respect of indebtedness of another person or entity for borrowed money or indebtedness of another person or entity otherwise described in this definition which is secured by any consensual lien, security interest, collateral assignment, conditional sale, mortgage, deed of trust, or other encumbrance on any asset of such Company, whether or not such obligations, liabilities or indebtedness are assumed by or are a personal liability of such Company, all as of such time: provided, that, to the extent such Indebtedness referred to in this clause (g) is non-recourse to such Company, the amount of such Indebtedness shall not be deemed to exceed the less or (1) the principal amount of such Indebtedness or (2) the

value of assets securing such Indebtedness; (h) representing all obligations, liabilities and indebtedness of such Company (marked to market) arising under swap agreements, cap agreements and collar agreements and other agreements or arrangements designed to protect such person against fluctuations in interest rates or currency or commodity values; and (i) all obligations owed by such Company under license agreements with respect to non-refundable, advance or minimum guarantee royalty payments.

23.     No Company has made any loans or advances or guaranteed or otherwise become liable for the obligations of any others not otherwise permitted under the Loan and Security Agreement, except as set forth on Schedule 9.10 hereto.

24.     No Company has any chattel paper (whether tangible or electronic) or instruments as of the date hereof.

25.     No Company has any commercial tort claims except as set forth on Schedule 5.2(g) hereto.

26.     There is no provision in the certificate of incorporation, certificate of formation,  articles of organization, by-laws or operating agreement of any Company (as applicable) or the other organizational documents of such Company, or in the laws of the State of its organization, requiring any vote or consent of it shareholders, members or other holders of the equity interests therein to borrow or to authorize the mortgage or pledge of or creation of a security interest in any assets of such Company or any subsidiary.  Such power is vested exclusively in its Board of Directors (or in the case of a limited partnership, the general partner that is the signatory hereto, or in the case of a limited liability company, the manager that is the signatory hereto).

27.     The officers of each Company and their respective titles are as follows:

| Company | Title | Name |
|---|---|---|
| **Specialty Retail Shops Holding Corp.** | Director and CEO | Russell Steinhorst |
| | CFO | J. Per Brodin |
| | Secretary | Susan A. Buckna |
| | Vice President and Assistant Secretary | Michael J. McConvery |
| | Vice President and Assistant Treasurer | Melissa Klafter |
| **Retained R/E SPE, LLC** | CEO | Russell Steinhorst |
| | CFO and Treasurer | J. Per Brodin |
| | Secretary | Susan A. Buckna |
| **ShopKo Finance, LLC** | CEO | Russell Steinhorst |
| | CFO and Treasurer | J. Per Brodin |
| | Secretary | Susan A. Buckna |

| Company | Title | Name |
|---------|-------|------|
| **ShopKo Holding Company, LLC** | CEO | Russell Steinhorst |
| | CFO and Treasurer | J. Per Brodin |
| | Secretary | Susan A. Buckna |
| **ShopKo Stores Operating Co., LLC** | CEO | Russell Steinhorst |
| | Executive Vice President and CFO | J. Per Brodin |
| | Executive Vice President, Merchandising and Marketing | Ronald Ota |
| | Chief Operations Officer | Jim DePaul |
| | Chief Information Officer | Ray Petersen |
| | Chief Human Resources Officer | Denise Domian |
| | Senior Vice President, Finance | Todd Armstrong |
| | Senior Vice President, Retail Health | Dilip Sedani |
| | Vice President, Associate General Counsel, Corporate Secretary | Susan A. Buckna |
| | Vice President, GMM Consumables | Ronald Milligan |
| | Vice President, Treasurer | Gary Gibson |
| | Vice President, Merchandise Support | Jon Instefjord |
| | Vice President, GMM Home | Matt Schultz |
| | Vice President, GMM Apparel | Debbie Bentlage |
| | Vice President, Inventory Management | Jeff Druley |
| | Vice President, Store Development | Donna Capichano Simmons |
| | Vice President, Controller | Kelly Weerts |
| | Vice President, Managed Care | Jannie Paschal |
| | Vice President, Shopko.com | Jimmy Mansker |
| | Assistant Secretary | Jennifer S. McGinnity |
| **ShopKo Properties, LLC** | Chief Executive Officer | Russell Steinhorst |
| | Chief Financial Officer | J. Per Brodin |
| | Secretary | Susan A. Buckna |
| **Penn-Daniels, LLC** | CEO | Russell Steinhorst |
| | Chief Financial Officer, Treasurer | J. Per Brodin |
| | Secretary | Susan A. Buckna |
| **SVS Trucking, LLC** | CEO | Russell Steinhorst |
| | Chief Financial Officer and Treasurer | J. Per Brodin |

| Company | Title | Name |
|---------|-------|------|
| | Secretary | Susan A. Buckna |
| **ShopKo Gift Card Co., LLC** | CEO<br>Chief Financial Officer, Treasurer<br>Secretary | Russell Steinhorst<br>J. Per Brodin<br>Susan A. Buckna |
| **ShopKo Optical Manufacturing, LLC** | CEO<br>Chief Financial Officer, Treasurer<br>Secretary | Russell Steinhorst<br>J. Per Brodin<br>Susan A. Buckna |
| **ShopKo Institutional Care Services Co., LLC** | CEO<br>Chief Financial Officer, Treasurer<br>Secretary | Russell Steinhorst<br>J. Per Brodin<br>Susan A. Buckna |
| **Pamida Stores Operating Co., LLC** | Chief Executive Officer<br>Chief Financial Officer<br>Secretary<br>Treasurer | Russell Steinhorst<br>J. Per Brodin<br>Susan A. Buckna<br>Gary Gibson |
| **Pamida Transportation, LLC** | Chief Executive Officer<br>Chief Financial Officer, Treasurer, Controller<br>Secretary | Russell Steinhorst<br>J. Per Brodin<br><br>Susan A. Buckna |
| **Place's Associates' Expansion, LLC** | None. | |

The following will have signatory powers as to all transactions of each Company with Agent and Lenders:  J. Per Brodin and Russell Steinhorst

28.    The members of the Board of Directors of each Company (or, if the Company is a limited partnership, the general partner or, if the Company is a limited liability company, the managers) are:

| Company | Directors |
|---|---|
| **Specialty Retail Shops Holding Corp.** | Casey Lanza<br>Donald Roach<br>Russell Steinhorst<br>Mohsin Meghji<br>Steve Winograd |
| **Retained R/E SPE, LLC** | ShopKo Holding Company, LLC, Sole Member and Manager |
| **ShopKo Finance, LLC** | Specialty Retail Shops Holding Corp., Sole Member and Manager |
| **ShopKo Holding Company, LLC** | Specialty Retail Shops Holding Corp., Sole Member and Manager |
| **ShopKo Stores Operating Co., LLC** | ShopKo Holding Company, LLC, Sole Member and Manager |
| **ShopKo Properties, LLC** | ShopKo Stores Operating Co., LLC, Sole Member and Manager |
| **Penn-Daniels, LLC** | ShopKo Stores Operating Co., LLC, Sole Member and Manager |
| **SVS Trucking, LLC** | ShopKo Stores Operating Co., LLC, Sole Member and Manager |
| **ShopKo Gift Card Co., LLC** | ShopKo Stores Operating Co., LLC, Sole Member and Manager |
| **ShopKo Optical Manufacturing, LLC** | ShopKo Stores Operating Co., LLC, Sole Member and Manager |
| **ShopKo Institutional Care Services Co., LLC** | ShopKo Stores Operating Co., LLC, Sole Member and Manager |
| **Pamida Stores Operating Co., LLC** | ShopKo Stores Operating Co., LLC, Sole Member and Manager |
| **Pamida Transportation, LLC** | Pamida Stores Operating Co., LLC, Sole Member and Manager |
| **Place's Associates' Expansion LLC** | Pamida Stores Operating Co., LLC, Sole Member and Manager |

29.     At the present time, there are no delinquent taxes due (including, but not limited to, all payroll taxes, personal property taxes, real estate taxes or income taxes).


30.     Current Certified Public Accountants for each Company is the firm of:

Name:           PricewaterhouseCoopers LLP
Address:        One North Wacker Drive, Chicago, IL 60606
Partner Handling Relationship:       Daniel J. Finneran
Were statements uncertified for any fiscal year?      No.


[SIGNATURE PAGE FOLLOWS]

Agent and Lenders shall be entitled to rely upon the foregoing in all respects and each of the undersigned is duly authorized to execute and deliver this Information Certificate on behalf of the Company for which he or she is signing.

Very truly yours,

SHOPKO PROPERTIES, LLC
PENN-DANIELS, LLC
SHOPKO OPTICAL MANUFACTURING, LLC
RETAINED R/E SPE, LLC
SHOPKO STORES OPERATING CO., LLC
SPECIALTY RETAIL SHOPS HOLDING
CORP., formerly known as SKO Group Holding
Corp.
SHOPKO HOLDING COMPANY, LLC, formerly
known as ShopKo Holding Company, Inc.
SHOPKO INSTITUTIONAL CARE SERVICES
CO., LLC
SHOPKO FINANCE, LLC
SVS TRUCKING, LLC
SHOPKO GIFT CARD CO., LLC, formerly
known as ShopKo Ventures-Duluth, LLC
PAMIDA STORES OPERATING CO., LLC
PAMIDA TRANSPORTATION, LLC

By: _____
Name: J. Per Brodin
Title: Chief Financial Officer

PLACE'S ASSOCIATES' EXPANSION, LLC

By:    Pamida Stores Operating Co., LLC, its
       Sole Member

By: _____
Name: J. Per Brodin
Title: Chief Financial Officer

Signature page to Information Certificate

SCHEDULE 5.2(g)
to
INFORMATION CERTIFICATE

<u>Commercial Tort Claims</u>

Various Companies are investigating potential breach of contract claims against McKesson in relation to potential overcharging for pharmaceuticals in violation of various agreements.

SCHEDULE 8.2
to
INFORMATION CERTIFICATE

Locations

**A.** **Company: Specialty Retail Shops Holding Corp.**

1. Chief Executive Office

   700 Pilgrim Way
   Green Bay, WI 54304

2. Location of Books and Records

   700 Pilgrim Way
   Green Bay, WI 54304

3. Locations of Inventory, Equipment and Other Assets

   **OWNED PROPERTY[1]**

   | Property | Owner | Description |
   |---|---|---|
   | # 0630 Arcadia, WI | Specialty Retail Shops Holding Corp. | 1 Outlot |
   | # 0639 Rockville, IN | Specialty Retail Shops Holding Corp. | 3 Outlots |
   | # 0640 Tuscola, IL | Specialty Retail Shops Holding Corp. | 1 Outlot |
   | # 0669 Oelwein, IA | Specialty Retail Shops Holding Corp. | 2 Outlots |
   | # 0671 Waukon, IA | Specialty Retail Shops Holding Corp. | 1 Outlot |
   | # 0703 Burlington, KS | Specialty Retail Shops Holding Corp. | 1 Outlot |

---

[1]  Entity ownership information in the following table based on best available information. For properties listed as both owned by Specialty Retail Shops Holding Corp. and leased by another entity below, Specialty Retail Shops Holding Corp. owns one or more separate outlots adjacent to or near a leased store property.

| # 0717 Minerva, OH | Specialty Retail Shops Holding Corp. | 3 Outlots |
|---|---|---|
| # 0719 Woodsfield, OH | Specialty Retail Shops Holding Corp. | 1 Outlot |
| # 0726 Loogootee, IN | Specialty Retail Shops Holding Corp. | 2 Outlots |
| # 0727 Bloomfield, IN | Specialty Retail Shops Holding Corp. | 1 Outlot |
| # 0730 Hodgenville, KY | Specialty Retail Shops Holding Corp. | 1 Outlot |
| # 0749 Saint James, MN | Specialty Retail Shops Holding Corp. | 1 Outlot |
| # 0754 Rawlins, WY | Specialty Retail Shops Holding Corp. | 1 Outlot |
| # 0768 Glasgow, MT | Specialty Retail Shops Holding Corp. | 1 Outlot |
| # 0775 Libby, MT | Specialty Retail Shops Holding Corp. | 1 Outlot |
| # 3017 Smithville, TN | Specialty Retail Shops Holding Corp. | 1 Outlot |
| # 3146 Mitchell, IN | Specialty Retail Shops Holding Corp. | 2 Outlots |

4.      Locations of Assets in Prior 4 Months not Listed Above

N/A

**B.      Company: Retained R/E SPE, LLC**

1.      Chief Executive Office

700 Pilgrim Way
Green Bay, WI 54304

2.      Location of Books and Records

700 Pilgrim Way
Green Bay, WI 54304

3.      Locations of Inventory, Equipment and Other Assets

**OWNED PROPERTIES**

| Address | Owner | Asset Type[2] |
|---------|-------|-----------|
| # 4 Green Bay, WI - East Mason Street<br>Green Bay, WI 54302 | Retained R/E SPE, LLC | 1 Outlot parcel – Land only |
| # 31 Kenosha, WI - 52nd Street<br>Kenosha, WI 53144 | Retained R/E SPE, LLC | 3 Outlot parcels – Land only |
| # 46 Omaha, NE - North 90th Street<br>Omaha, NE 68134 | Retained R/E SPE, LLC | 2 Outlot parcels – Land only |
| # 132 Rice Lake, WI - Highway O<br>Rice Lake, WI 54868 | Retained R/E SPE, LLC | 2 Outlot parcels – Land only |
| # 140 Jacksonville, IL | Retained R/E SPE, LLC | 2 Outlots |
| # 142 Fort Madison, IA<br>4810 Avenue O<br>Fort Madison, IA 52627-9667 | Retained R/E SPE, LLC | Land (1 Outlot) and Building |
| # 601 Kewaunee, WI | Retained R/E SPE, LLC | 1 Outlot |

4.     Locations of Assets in Prior 4 Months not Listed Above

       None


C.     **Company:  Shopko Finance, LLC**

1.     Chief Executive Office

       700 Pilgrim Way,
       Green Bay, WI 54304

2.     Location of Books and Records

---

[2]     For properties listed as both owned by Retained R/E SPE, LLC and leased by another entity below, Retained R/E SPE, LLC owns one or more separate outlots adjacent to or near a leased store property.

700 Pilgrim Way
Green Bay, WI 54304

3.   <u>Locations of Inventory, Equipment and Other Assets</u>

N/A

4.   <u>Locations of Assets in Prior 4 Months not Listed Above</u>

N/A

**D.      <u>Company: ShopKo Holding Company, LLC</u>**

1.   <u>Chief Executive Office</u>

700 Pilgrim Way,
Green Bay, WI 54304

2.   <u>Location of Books and Records</u>

700 Pilgrim Way
Green Bay, WI 54303

3.   <u>Locations of Inventory, Equipment and Other Assets</u>

N/A

4.   <u>Locations of Assets in Prior 4 Months not Listed Above</u>

N/A

**E.**     **Companies: ShopKo Stores Operating Co., LLC and SVS Trucking, LLC,**

1.     Chief Executive Office

   700 Pilgrim Way,
   Green Bay, WI 54304

2.     Location of Books and Records

   700 Pilgrim Way,
   Green Bay, WI 54304

3.     Locations of Inventory, Equipment and Other Assets

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00001 - Green Bay, WI 216 South Military Avenue Green Bay, WI 54303-2498 | ShopKo Stores Operating Co., LLC | ShopKo West Associates |
| 00002- Ashwaubenon, WI    301 Bay Park Square Green Bay, WI 54304 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00003 - Manitowoc, WI 3415 Calumet Avenue Manitowoc, WI 54220 | ShopKo Stores Operating Co., LLC | Robin Manitowoc, LLC and BOBO Manitowoc, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00004 - Green Bay, WI - 2430 East Mason Street Green Bay, WI 54302-3759 | ShopKo Stores Operating Co., LLC | Sky Green Bay, LLC |
| 00005 - De Pere, WI - 230 North Broadway De Pere, WI 54115 | ShopKo Stores Operating Co., LLC | Medici Rossmore, LLC |
| 00007 - La Crosse, WI - 4344 Mormon Coulee Rd. La Crosse, WI 54601 | ShopKo Stores Operating Co., LLC | LaCrosse Shopko Properties, LLC |
| 00008-Main - Rothschild, WI 1105 East Grand Avenue Rothschild, WI 54474 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00008-Opt. - Rothschild, WI 1039 East Grand Avenue Rothschild, WI 54474 | ShopKo Stores Operating Co., LLC | RCM Wausau, LLC |
| 00009 - Marshfield, WI 1306 North Central Avenue Marshfield, WI 5444 | ShopKo Stores Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00012 - Wisconsin Rapids, WI 1100 East Riverview Expressway Wisconsin Rapids, WI 54494 | ShopKo Stores Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00014 - Beaver Dam, WI 822 Park Avenue Beaver Dam, WI 53916 | ShopKo Stores Operating Co., LLC | Keller Realtors |
| 00015 - Appleton, WI 1000 West Northland Avenue Appleton, WI 54914-1496 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00017 - St. Cloud, MN 4161 Second Street South St. Cloud, MN 56301-3761 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |

Schedule 8.2-6

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00018 - West Bend<br>1710 South Main Street<br>West Bend, WI 53095-4009 | ShopKo Stores<br>Operating Co., LLC | National Retail Properties, LLC |
| 00019 - Watertown, WI<br>701 South Church Street<br>Watertown, WI 53202 | ShopKo Stores<br>Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00020-Main - La Crosse, WI<br>2500 Rose Street<br>La Crosse, WI 54603 | ShopKo Stores<br>Operating Co., LLC | EQK Bridgeview Plaza, Inc. |
| 00020-Rx - La Crosse, WI<br>2438 Rose Street<br>La Crosse, WI 54603 | ShopKo Stores<br>Operating Co., LLC | EQK Bridgeview Plaza, Inc. |
| 00022 - Mitchell, SD<br>1900 North Main Street<br>Mitchell, SD 57301 | ShopKo Stores<br>Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00023 - Hutchinson, MN<br>125 Main Street North<br>Hutchinson, MN 55350 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00024 - Main - Eau Claire, WI<br>955 Clairemont Avenue<br>Eau Claire, WI 54701 | ShopKo Stores<br>Operating Co., LLC | WI Cal Mar |
| 00024 - Opt. - Eau Claire, WI<br>955 Clairemont Avenue<br>Eau Claire, WI 54701 | ShopKo Stores<br>Operating Co., LLC | Eau Claire Associates L.P. |
| 00025 - Marshall, MN<br>1200 Susan Drive<br>Marshall, MN 56258-1622 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00026 - Beloit, WI<br>2761 Prairie Avenue<br>Beloit, WI 53511 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |

Schedule 8.2-7

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00027 - Racine, WI<br>4810 Washington Ave.<br>Racine, WI 53406 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00028 - Kimberly, WI<br>800 East Maes Street<br>Kimberly, WI 54136 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00029 - Madison, WI<br>7401 Mineral Point Road<br>Madison, WI 53717 | ShopKo Stores<br>Operating Co., LLC | 7401 Mineral Point Road Owner, LLC |
| 00030 - Janesville, WI<br>2500 US Highway 14<br>Janesville, WI 53547 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00031 - Kenosha, WI<br>5300 52nd Street<br>Kenosha, WI 53144-2398 | ShopKo Stores<br>Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00032 - Monona, WI<br>2101 West Broadway<br>Monona, WI 53713 | ShopKo Stores<br>Operating Co., LLC | Jeanine Landsinger |
| 00033-Main - Menasha, WI<br>1578 Appleton Road<br>Menasha, WI 54952 | ShopKo Stores<br>Operating Co., LLC | Alexander & Bishop 1, LLC |
| 00033-Opt. - Menasha, WI<br>1640 Appleton Road<br>Menasha, WI 54952 | ShopKo Stores<br>Operating Co., LLC | RMD Menasha, LLC |
| 00037 - Chippewa Falls, WI<br>2677 State Highway 53<br>Chippewa Falls, WI 54729 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00040 - Sioux City, IA<br>3025 Hamilton Boulevard<br>Sioux City , IA 51104 | ShopKo Stores<br>Operating Co., LLC | Marketplace LLC |

Schedule 8.2-8

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00042 - Oshkosh, WI<br>1300 Koeller Road<br>Oshkosh, WI 54901 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00044-Opt. Omaha, NE<br>3044 South 84th Street<br>Omaha, NE 68124 | ShopKo Stores<br>Operating Co., LLC | Frederick Square Limited Partnership |
| 00048 - Norfolk, NE<br>2005 Krenzien Street<br>Norfolk, NE 68701 | ShopKo Stores<br>Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00050 - Fond du Lac, WI<br>616 West Johnson Street<br>Fond du Lac, WI 54935 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00051 - Fort Atkinson, WI<br>1425 Janesville Avenue<br>Fort Atkinson, WI 53538 | ShopKo Stores<br>Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00052 - Mason City, IA<br>615 South Monroe<br>Mason City, IA 50401-2061 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00053 - North Platte, NE<br>510 East Phillip Avenue<br>North Platte, NE 69101 | ShopKo Stores<br>Operating Co., LLC | NEB Furst, LLC |
| 00054 - Watertown, SD<br>700 9th Avenue SE<br>Watertown, SD 57201 | ShopKo Stores<br>Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00055 - Stevens Point, WI<br>1200 Main Street<br>Stevens Point, WI 54481 | ShopKo Stores<br>Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00056 - Omaha, NE<br>14445 West Center Road<br>Omaha, NE 68114 | ShopKo Stores<br>Operating Co., LLC | Lund 144 Center, LLC & Overland<br>Wolf Building Partnership |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00059 - Fairmont, MN<br>1001 South Highway 15<br>Fairmont, MN 56031 | ShopKo Stores<br>Operating Co., LLC | Capview Income & Value Fund IV, LP |
| 00060 - Albert Lea, MN<br>2610 North Bridge Avenue<br>Albert Lea, MN 56007 | ShopKo Stores<br>Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00063 - Chubbuck, ID<br>4215 Yellowstone Highway<br>Chubbuck, ID 83202 | ShopKo Stores<br>Operating Co., LLC | Haile & Hiwot Tekle |
| 00076 - Sioux Falls, SD<br>1601 West 41st Street<br>Sioux Falls, SD 57105 | ShopKo Stores<br>Operating Co., LLC | Retail on 41st Street, LLC |
| 00078 - Rapid City, SD<br>1845 Haines Avenue<br>Rapid City, SD 57701 | ShopKo Stores<br>Operating Co., LLC | RCSD Retail, LLC & RCAA Owner, LLC |
| 00079 - Wausau, WI<br>200 South 18th Street<br>Wausau, WI 54401 | ShopKo Stores<br>Operating Co., LLC | P.J. Investments |
| 00080 - Madison, WI<br>2201 Zeier Road<br>Madison, WI 53704 | ShopKo Stores<br>Operating Co., LLC | Flintlock Capital, LLC |
| 00082 - Murray, UT<br>5959 South State Street<br>Murray, UT 84107 | ShopKo Stores<br>Operating Co., LLC | Retained R/E SPE, LLC (affiliate)[3] |
| 00083 - Sandy City, UT<br>2165 East 9400 South<br>Sandy City, UT 84093 | ShopKo Stores<br>Operating Co., LLC | RS Sandy Partners, LLC |

---

[3]   Ground is leased, and building will revert to the ground lease provider upon termination of such ground lease.

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00084 - West Jordan, UT<br>1553 West 9000 South<br>West Jordan, UT 84088 | ShopKo Stores<br>Operating Co., LLC | Retreat on Roslyn, LLC |
| 00085 - Taylorsville, UT<br>Midvalley Family Center 5800 South<br>Redwood Road<br>Salt Lake City, UT 85123 | ShopKo Stores<br>Operating Co., LLC | Retained R/E SPE, LLC (affiliate)[4] |
| 00087 - Ogden, UT<br>1018 Washington Boulevard<br>Ogden, UT 84404 | ShopKo Stores<br>Operating Co., LLC | CRG Boise, LLC and The Ridge, L.P. |
| 00088 - Layton, UT<br>1150 North Main<br>Layton, UT 84041 | ShopKo Stores<br>Operating Co., LLC | 2DF No. 2, L.C. and Orbit 1, LLC |
| 00090 - Grafton, WI<br>1771 Wisconsin Avenue<br>Grafton, WI 53204 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00091 - Logan, UT<br>1341 North Main Street<br>Logan, UT 84321 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00092 - Kennewick, WA<br>867 N. Columbia Center Boulevard<br>Kennewick, WA 98336 | ShopKo Stores<br>Operating Co., LLC | Corvalis WA, LLC |
| 00093 - Bend, OR<br>60 NE Bend River Mall Avenue<br>Bend, OR 97701 | ShopKo Stores<br>Operating Co., LLC | Atlas ShopKo-Bend, LLC |
| 00096 - Redding, CA<br>55 Lake Boulevard<br>Redding, CA 96003 | ShopKo Stores<br>Operating Co., LLC | Encinal Shopko Redding, LLC |

---

[4]   Ground is leased, and building will revert to the ground lease provider upon termination of such ground lease.

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00097 - West Valley City, UT<br>4850 West 3500 South<br>West Valley City, UT 84120 | ShopKo Stores Operating Co., LLC | Bridgeport Retail – Utah, LLC |
| 00098 - Eugene, OR<br>2815 Chad Drive<br>Eugene, OR 97408 | ShopKo Stores Operating Co., LLC | Atlas ShopKo-Eugene, LLC |
| 00099 - Onalaska, WI<br>9366 State Highway 16<br>Onalaska, WI 54650 | ShopKo Stores Operating Co., LLC | Paradise Wisconsin Properties, LLC |
| 00100 - Neenah, WI<br>699 Green Bay Road<br>Neenah, WI 54956 | ShopKo Stores Operating Co., LLC | CHL Neenah, LLC |
| 00101 - Sioux Falls, SD<br>4501 East Arrowhead Parkway<br>Sioux Falls, SD 57103 | ShopKo Stores Operating Co., LLC | PAL, Inc. and H. Lauren Lewis Living Trust |
| 00102 - Marinette, WI<br>2741 Roosevelt Road<br>Marinette, WI 54143 | ShopKo Stores Operating Co., LLC | Capview Income & Value Fund IV, LP |
| 00104 - Brigham City, UT<br>747 South Main<br>Brigham , UT 84302 | ShopKo Stores Operating Co., LLC | 1st Avenue Self Storage, LLC |
| 00105 - Orem, UT<br>125 South State Street<br>Orem, UT 84058 | ShopKo Stores Operating Co., LLC | RS Orem Partners, LLC |
| 00106 - Billings, MT<br>905 South 24 West<br>Billings, MT 59102 | ShopKo Stores Operating Co., LLC | 905 South 24th Street West Owner, LLC |
| 00108 - Spanish Fork, UT<br>955 North Main Street<br>Spanish Fork, UT 84660-1150 | ShopKo Stores Operating Co., LLC | Thompson Associates |

Schedule 8.2-12

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00109 - Riverdale, UT<br>4060 Riverdale Road<br>Riverdale, UT 84405 | ShopKo Stores Operating Co., LLC | National Retail Properties, LP |
| 00111 - Salem, OR<br>1230 Lancaster Drive SE<br>Salem, OR 97301 | ShopKo Stores Operating Co., LLC | Atlas ShopKo-Salem, LLC |
| 00112 - Helena, MT<br>3101 Montana Avenue<br>Helena, MT 59601-7813 | ShopKo Stores Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00113 - Lacey, WA<br>5500 Martin Way<br>Lacey, WA 98506 | ShopKo Stores Operating Co., LLC | RS Lacey Partners, LLC |
| 00114 - Duluth, MN<br>801 West Central Entrance<br>Duluth, MN 55811-5468 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00116 - Sheboygan, WI<br>518 South Taylor Drive<br>Sheboygan, WI 53081 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00119 - Dixon, IL<br>1350 North Galleria Avenue<br>Dixon, IL 61021 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00120 - Monroe, WI<br>405 West Eight Street<br>Monroe, WI 53566 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00122 - Wenatchee, WA<br>1340 North Wenatchee Avenue<br>Wenatchee, WA 98801 | ShopKo Stores Operating Co., LLC | Kellogg Shopco Properties, LLC |
| 00125 - Freeport, IL<br>555 West South Street<br>Freeport, IL 61032 | ShopKo Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |

Schedule 8.2-13

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00127 - Delavan, WI<br>1450 East Geneva Street<br>Delavan, WI 53115 | ShopKo Stores Operating Co., LLC | Capview Income & Value Fund IV, LP |
| 00128 - Kalispell, MT<br>1370 Highway 2 East<br>Kalispell, MT 59901 | ShopKo Stores Operating Co., LLC | Smithlin, McIntire & Young |
| 00129 - Spokane, WA<br>4515 South Regal Street<br>Spokane, WA 992 | ShopKo Stores Operating Co., LLC23 | SHS Building, LLC |
| 00130 - River Falls, WI<br>1777 Paulson Road<br>River Falls, WI 54022 | ShopKo Stores Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00132 - Rice Lake, WI<br>320 Highway O, P.O. Box 289<br>Rice Lake, WI 54868 | ShopKo Stores Operating Co., LLC | OB Investors, LLC |
| 00133 - Belvidere, IL<br>1400 Big Thunder Boulevard<br>Belvidere, IL 61008 | ShopKo Stores Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00134 - Pullman, WA<br>South 1450 Grand Avenue<br>Pullman, WA 99163 | ShopKo Stores Operating Co., LLC | Elizabeth Trainor, LLC |
| 00164 - Dubuque, IA<br>225 John F. Kennedy Road<br>Dubuque, IA 52002-5313 | ShopKo Stores Operating Co., LLC | KRC Dubuque 847, Inc. |
| 00170 - Rhinelander, WI<br>East Point Centre<br>2200 Lincoln Street<br>Rhinelander, WI 54501 | ShopKo Stores Operating Co., LLC | Concord 6, LLC |
| 00171 - Plover, WI<br>1800 Plover Road | ShopKo Stores Operating Co., LLC | Friedman Brokerage Company-WI, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| Plover, WI 54467 | | |
| 00172 - Lincoln, NE<br>3400 North 27th Street<br>Lincoln, NE 68521-1314 | ShopKo Stores Operating Co., LLC | Menard, Inc. |
| 00175 - Lincoln, NE (S)<br>6845 South 27th Street<br>Lincoln, NE 68512-4823 | ShopKo Stores Operating Co., LLC | OLP Lincoln LLC |
| 00177 – Suamico, WI<br>2320 Lineville Road<br>Green Bay, WI  54313 | ShopKo Stores Operating Co., LLC | Realty Income Properties 28, LLC |
| 00178 – Sussex, WI<br>N66 W25201 CTH VV<br>Sussex, WI  53089 | ShopKo Stores Operating Co., LLC | Realty Income Properties 28, LLC |
| 00179 – North Branch, MN<br>5630 St. Croix Trail<br>North Branch, MN  55056 | ShopKo Stores Operating Co., LLC | St. Croix Trail, LLC |
| 00200 – Chino Valley, AZ<br>1950 N. Highway 89<br>Chino Valley, AZ 86323 | ShopKo Stores Operating Co., LLC | PD2 |
| 00201 – Emmetsburg, IA<br>3402 Main Street<br>Emmetsburg, IA 50536-1515 | ShopKo Stores Operating Co., LLC | Lucky 13, LLC |
| 00202 – Clifton, TX<br>927 North Avenue G<br>Clifton, TX 76634 | ShopKo Stores Operating Co., LLC | WG REG Clifton LLC |
| 00203 – Jacksboro, TX<br>124 Lumar Drive<br>Jacksboro, TX 76458 | ShopKo Stores Operating Co., LLC | ARG Lumar, LLC |

Schedule 8.2-15

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00205 – Delta, UT<br>94 North 900 East<br>Delta, UT 84624-9467 | ShopKo Stores Operating Co., LLC | Joseph Gallo Farms |
| 00206 – Ely, NV<br>701 Great Basin Boulevard<br>Ely, NV 89301-2069 | ShopKo Stores Operating Co., LLC | H&M Ely, LLC. |
| 00207 – Oldtown, ID<br>67 Selkirk Way<br>Oldtown, ID 83822-8546 | ShopKo Stores Operating Co., LLC | L & C DG Investments, LLC |
| 00208 – Seymour, TX<br>711 S. Main Street<br>Seymour, TX 76380 | ShopKo Stores Operating Co., LLC | CGP Seymour, Ltd. |
| 00209 – Tulia, TX<br>908 NW 6th Street<br>Tulia, TX 79088 | ShopKo Stores Operating Co., LLC | CGSK Tulia, Ltd. |
| 00211 – Estherville, IA<br>2401 Central Avenue<br>Estherville, IA 51334-2770 | ShopKo Stores Operating Co., LLC | Next Generation Properties of Nebraska, LLC |
| 00212 – Gordon, NE<br>301 E Highway 20<br>Gordon, NE 69343 | ShopKo Stores Operating Co., LLC | Don Levin Trust |
| 00213 – Littlefield, TX<br>705 W. Marshall Howard Blvd<br>Littlefield, TX 79339 | ShopKo Stores Operating Co., LLC | SMT Littlefield Partners Limited |
| 00520 – Albion, NE<br>2585 State Highway 14 NE, NE 68620-2820 | ShopKo Stores Operating Co., LLC | W.A. Enterprises, LLC |
| 00532  New Town, ND<br>102 College Drive<br>New Town, ND 58763-9114 | ShopKo Stores Operating Co., LLC | PALCO Investments, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00534 – Rolla, ND<br>602 Main Avenue West<br>Rolla, ND 58367-7606 | ShopKo Stores<br>Operating Co., LLC | Nicmeyer, Inc. |
| 00535 – Bowman, ND<br>320 Highway 12 East<br>Bowman, ND 58623 | ShopKo Stores<br>Operating Co., LLC | PALCO Investments, LLC |
| 00536 – Ulysses, KS<br>515 East Oklahoma<br>Ulysses, KS 67880-2817 | ShopKo Stores<br>Operating Co., LLC | Rayne Company, Inc |
| 00537 – Beloit, KS<br>102 N. Independence Avenue<br>Beloit, KS 67420-2147 | ShopKo Stores<br>Operating Co., LLC | Westwind Plaza, Inc. |
| 00538 – Anthony, KS<br>710 N LL and G Avenue<br>Anthony, KS 67003-2814 | ShopKo Stores<br>Operating Co., LLC | FIDC 50 LLC |
| 00539 – Monahans, TX<br>1907 South Stockton<br>Monahans, TX 79756-6507 | ShopKo Stores<br>Operating Co., LLC | THE BLOCH FAMILY 2005<br>PARTNERSHIP, L.P., |
| 00540 – Kermit, TX<br>334 E Highway 302<br>Kermit, TX 79745-5105 | ShopKo Stores<br>Operating Co., LLC | Zhangusa Investments, LLC d/b/a<br>ZiMart Kermit, LLC |
| 00541 – Dalhart, TX<br>509 Blair Street<br>Dalhart, TX 79022-2557 | ShopKo Stores<br>Operating Co., LLC | ICA Properties, Inc. |
| 00542 – Perryton, TX<br>1301 S Main Street<br>Perryton, TX 79070-4709 | ShopKo Stores<br>Operating Co., LLC | ICA Properties, Inc. |
| 00543 – Wolf Point, MT<br>600 US Highway 2E<br>Wolf Point, MT 59201 | ShopKo Stores<br>Operating Co., LLC | Parks Retail Investment Montana, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00544 – Sidney, MT<br>500 North Central Street<br>Sidney, MT 59270-4200 | ShopKo Stores Operating Co., LLC | Pontus SK Portfolio, LLC |
| 00545 – Mobridge, SD<br>2008 West Highway 12<br>Mobridge, SD 57601-4801 | ShopKo Stores Operating Co., LLC | Chaffin, Inc. |
| 00546 – Burlington, CO<br>333 S Lincoln<br>Burlington, CO 80807-2104 | ShopKo Stores Operating Co., LLC | Donald and Marlyn Herman |
| 00547 – Moose Lake, MN<br>4791 County Road 10<br>Moose Lake, MN 55767-9221 | ShopKo Stores Operating Co., LLC | Stephen S. Leung and Helena S. Leung |
| 00548 – Mahnomen, MN<br>416 US Highway 59<br>Mahnomen, MN 56557-4630 | ShopKo Stores Operating Co., LLC | 4CZECHS, LLC |
| 00549 – Hardin, MT<br>1001 North Central Avenue<br>Hardin, MT 59034 | ShopKo Stores Operating Co., LLC | NLD Hardin, LLC |
| 00550 – Dillon, MT<br>100 East Helena Street<br>Dillon, MT 59725-2611 | ShopKo Stores Operating Co., LLC | Beaver Development, LLC |
| 00551 – DeMott, IN<br>334 N Hallek Street<br>DeMott, IN 46310-9419 | ShopKo Stores Operating Co., LLC | Hamstra Builders, Inc. |
| 00552 – Oakes, ND<br>1420 North 7th Street<br>Oakes, ND 58474 | ShopKo Stores Operating Co., LLC | DAKOTA UPREIT LIMITED PARTNERSHIP |
| 00553 – Abilene, KS<br>1903 N Buckeye Avenue<br>Abilene, KS 67410-1505 | ShopKo Stores Operating Co., LLC | Mr. Leslie K. Halbert |

Schedule 8.2-18

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00554 – Andrews, TX<br>1203 N Main Street<br>Andrews, TX 79714-3630 | ShopKo Stores<br>Operating Co., LLC | LEECO Properties, Inc |
| 00555 – Moab, UT<br>1145 South US Highway 191<br>Moab, UT 84532-3062 | ShopKo Stores<br>Operating Co., LLC | Davidson Children's Trust I and II |
| 00556 Prosser, WA<br>471 Wine Country Road<br>Prosser, WA 99350-9555 | ShopKo Stores<br>Operating Co., LLC | The Patton Group Limited Partnership |
| 00557 – Nephi, UT<br>1174 North Main Street<br>Nephi, UT 84648-1008 | ShopKo Stores<br>Operating Co., LLC | Ensign Development Group, LLC |
| 00558 – Redfield, SD<br>614 West 3rd Street<br>Redfield, SD 57469-1042 | ShopKo Stores<br>Operating Co., LLC | L & S Properties of Redfield, LLC |
| 00559 – Orofino, ID<br>429 SE Michigan Avenue<br>Orofino, ID 83544 | ShopKo Stores<br>Operating Co., LLC | CGP Orofino, LLC |
| 00560 - Fairview, OK<br>816 E State Road<br>Fairview, OK 73737-2601 | ShopKo Stores<br>Operating Co., LLC | Cornelsen Leasing Co |
| 00561 – Cokato, MN<br>145 Broadway Avenue N<br>Cokato, MN 55321-4376 | ShopKo Stores<br>Operating Co., LLC | VEREIT SH Cokato MN, LLC |
| 00562 – Stanley, ND<br>702 Westview Lane<br>Stanley, ND 58784 | ShopKo Stores<br>Operating Co., LLC | Lakeside Storage, LLC |
| 00563 – Mauston, WI<br>406 Gateway Avenue<br>Mauston, WI 53948-1401 | ShopKo Stores<br>Operating Co., LLC | East Med LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00564 – Webster City, IA<br>200 Red Bull Division Dr<br>Webster City, IA 50595-7505 | ShopKo Stores<br>Operating Co., LLC | VEREIT, SH Webster City IA, LLC |
| 00565 – Cherokee, IA<br>1610 North 2nd Street<br>Cherokee, IA 51012-2230 | ShopKo Stores<br>Operating Co., LLC | VEREIT SH Cherokee IA, LLC |
| 00566 – Warroad, MN<br>216 Main Avenue NE<br>Warroad, MN 56763-2344 | ShopKo Stores<br>Operating Co., LLC | Realty Income Corporation |
| 00567 – Paynesville, MN<br>810 Diekmann Drive<br>Paynesville, MN 56362-4657 | ShopKo Stores<br>Operating Co., LLC | Realty Income Corporation |
| 00568 – New Prague, MN<br>200 10th Avenue<br>New Prague, MN 56071-1975 | ShopKo Stores<br>Operating Co., LLC | Dakota UPREIT Limited Partnership |
| 00569 – Milbank, SD<br>1400 Morningside Drive<br>Milbank, SD 57252-1532 | ShopKo Stores<br>Operating Co., LLC | L & S Properties of Milbank, LLC |
| 00570 – Wagner, SD<br>95 W SD Highway 46<br>Wagner, SD 57380-9376 | ShopKo Stores<br>Operating Co., LLC | East Dakota Properties |
| 00571 – Webster, SD<br>620 E Highway 12<br>Webster, SD 57274-1135 | ShopKo Stores<br>Operating Co., LLC | L & S Properties of Webster, LLC |
| 00572 – Leadville, CO<br>401 US Highway 24<br>Leadville, CO 80461-3974 | ShopKo Stores<br>Operating Co., LLC | Leadville Holdings, LLC |
| 00573 – Russell, KS<br>87 S Fossil Street<br>Russell, KS 67665-3007 | ShopKo Stores<br>Operating Co., LLC | KLEMA PLAZA, INC. |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00574 – Lowell, IN<br>2052 E Commercial Avenue<br>Lowell, IN 46356-2116 | ShopKo Stores<br>Operating Co., LLC | Regency North Indiana LLC |
| 00575 – Lovington, NM<br>908 W Avenue D<br>Lovington, NM 88260-3808 | ShopKo Stores<br>Operating Co., LLC | TMM Investments LTD. |
| 00576 – Alpine, TX<br>2500 E Highway 90<br>Alpine, TX 79830-4107 | ShopKo Stores<br>Operating Co., LLC | Rockstep Alpine, LLC |
| 00577 – Canadian, TX<br>308 S 2ND ST<br>Canadian, TX 79014 | ShopKo Stores<br>Operating Co., LLC | CGP CANADIAN, LTD. |
| 00578 – Buena Vista, CO<br>415 US Highway 24 N<br>Buena Vista, CO 81211-9651 | ShopKo Stores<br>Operating Co., LLC | Running Dogs Properties LLC |
| 00579 – Yuma, CO<br>502 E 8th Avenue<br>Yuma, CO 80759-2140 | ShopKo Stores<br>Operating Co., LLC | PPG Yuma, LLC |
| 00580 – Carrington, ND<br>6717 Highway 200<br>Carrington, ND 58421-8701 | ShopKo Stores<br>Operating Co., LLC | Central Dakota Investment, Inc |
| 00581 – Lisbon, ND<br>1809 Main Street<br>Lisbon, ND 58054 | ShopKo Stores<br>Operating Co., LLC | Jay, Inc. |
| 00582 – Presidio, TX<br>1000 US Business 67<br>Presidio, TX 79845 | ShopKo Stores<br>Operating Co., LLC | Realty Income Texas Properties 1, LLC |
| 00583 – Blanding, UT<br>860 S Main Street<br>Blanding, UT 84511-3911 | ShopKo Stores<br>Operating Co., LLC | W.A. Enterprises, LLC |

Schedule 8.2-21

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00584 – Bonners Ferry, ID<br>6355 Main Street<br>Bonners Ferry, ID 83805-8519 | ShopKo Stores<br>Operating Co., LLC | Almond Blossom, LLC |
| 00585 – Mayville, ND<br>935 3rd Street SE<br>Mayville, ND 58257-1630 | ShopKo Stores<br>Operating Co., LLC | Realty Income Corporation |
| 00586 – Phillipsburg, KS<br>1401 State Street<br>Phillipsburg, KS 67661 | ShopKo Stores<br>Operating Co., LLC | Realty Income Corporation |
| 00587 – Clarinda, IA<br>1180 South 16th Street<br>Clarinda, IA 51632-2917 | ShopKo Stores<br>Operating Co., LLC | Realty Income Corporation |
| 00588 – Beaver, UT<br>660 North Main Street<br>Beaver, UT 84713-7725 | ShopKo Stores<br>Operating Co., LLC | Davidson Properties |
| 00589 – Cresco, IA<br>22422 Highway 9<br>Cresco, IA 52136-8267 | ShopKo Stores<br>Operating Co., LLC | Cresco Shopko LLC |
| 00592 – Comanche, TX<br>1300 E Central Avenue<br>Comanche, TX 76442 | ShopKo Stores<br>Operating Co., LLC | Mohave Valley DG, LLC |
| 00594 – Chamberlain, SD<br>1951 E King Avenue<br>Chamberlain, SD 57325 | ShopKo Stores<br>Operating Co., LLC | ShopkoCham LLC |
| 00596 – Dell Rapids, SD<br>1208 N Highway 77<br>Dell Rapids, SD 57022 | ShopKo Stores<br>Operating Co., LLC | Shopko Dell LLC |
| 00597 – Ord, NE<br>133 Trotter Avenue<br>Ord, NE 68862 | ShopKo Stores<br>Operating Co., LLC | Don Levin Trust |

Schedule 8.2-22

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00598 – Springerville, AZ<br>207 S Mountain Avenue<br>Springerville, AZ 85938 | ShopKo Stores<br>Operating Co., LLC | Springerville Plaza, LLC |
| 00600 – Vinton, IA<br>911 South K Avenue<br>Vinton, IA 52349-1073 | ShopKo Stores<br>Operating Co., LLC | Performance Systems, L.C. |
| 00611 – Saint Peter, MN<br>201 S 3rd Street<br>Saint Peter, MN 56082 | ShopKo Stores<br>Operating Co., LLC | FIDC XXIII LLC |
| 00613 – Winneconne, WI<br>916 E. Main Street<br>Winneconne, WI 54986-9782 | ShopKo Stores<br>Operating Co., LLC | ENJG, Ltd. |
| 00788 – Columbus, WI<br>200 Commerce Drive<br>Columbus, WI 53925-9567 | ShopKo Stores<br>Operating Co., LLC | Columbus Commerce Center, LLC |
| 00789 – Waupaca, WI<br>825 West Fulton Street<br>Waupaca, WI 54981-1471 | ShopKo Stores<br>Operating Co., LLC | Pfefferle Management |
| 00790 – Stanley, WI<br>409 Junction Avenue<br>Stanley, WI 54768-8011 | ShopKo Stores<br>Operating Co., LLC | Theodore A & Evangeline Laliotis 2012<br>Revocable Trust |
| 00792 – Tomahawk, WI<br>79 Hometown Road<br>Tomahawk, WI 54487-3301 | ShopKo Stores<br>Operating Co., LLC | SKHT Tomahawk LLC |
| 00793 – Mayville, WI<br>2050 Horicon Street<br>Mayville, WI 53050-1423 | ShopKo Stores<br>Operating Co., LLC | Mayville 2013 Shopko LLC |
| 00794 – Quincy, WA<br>814 13th Avenue SW<br>Quincy, WA 98848 | ShopKo Stores<br>Operating Co., LLC | Quincy 28-13, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00795 – Salmon, ID<br>1026 South Challis Street<br>Salmon, ID 83467-5441 | ShopKo Stores<br>Operating Co., LLC | FIDC XXXVI LLC |
| 00796 – Kasson, MN<br>301 S Mantorville Avenue<br>Kasson, MN 55944 | ShopKo Stores<br>Operating Co., LLC | Kranthi Realty, LLC |
| 00797 – Whitefish, MT<br>6475 Hwy 93 South<br>Suite #15<br>Whitefish, MT 59937-8265 | ShopKo Stores<br>Operating Co., LLC | Argo Whitefish, LLC |
| 00798 – Ballard, UT<br>1635 E Highway 40<br>Ballard, UT 84066 | ShopKo Stores<br>Operating Co., LLC | VEREIT SH BALLARD UT, LLC |
| 00799 – Tremonton, UT<br>440 West Main Street<br>Tremonton, UT 84337 | ShopKo Stores<br>Operating Co., LLC | CH Ag, LLC |
| 00501 - Ledgeview, WI<br>3705 Monroe Road<br>De Pere, WI 54115 | ShopKo Stores<br>Operating Co., LLC | Capview Income & Value Fund IV, LP |
| 00502 - Howard, WI<br>2585 Lineville Road<br>Green Bay, WI 54313 | ShopKo Stores<br>Operating Co., LLC | 2585 Lineville Green Bay LLC |
| 00503 - Port Washington, WI<br>1011 N. Wisconsin Street<br>Port Washington, WI 53074 | ShopKo Stores<br>Operating Co., LLC | 1011 North Wisconsin Street Owner, LLC |
| 00504 – Appleton, WI<br>W3208 Van Roy Road<br>Appleton, WI 54915 | ShopKo Stores<br>Operating Co., LLC | JBOK Enterprises, LLC |
| 00505 – Appleton, WI<br>2101 East Evergreen Drive | ShopKo Stores<br>Operating Co., LLC | BTS Properties, LLC & Trip Investments, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| Appleton, WI  54913 | | |
| 00215 – Rx - Shawano, WI<br>100 Country Road<br>Shawano, WI 54166-7072 | ShopKo Stores<br>Operating Co., LLC | Theda Care |
| 00216 – Opt – Mequon, WI<br>10996 N. Port Washington Road<br>Mequon, WI 53092-5031 | ShopKo Stores<br>Operating Co., LLC | Brixmor SPE 1, LLC |
| 00217 – Opt – Waukesha, WI<br>1166 West Sunset Dr,<br>Suite F 100<br>Waukesha, WI 53189-8420 | ShopKo Stores<br>Operating Co., LLC | Ramco Properties |
| 00218 – Opt – Oshkosh, WI<br>1810 Jackson Street<br>Oshkosh, WI 54901-2204 | ShopKo Stores<br>Operating Co., LLC | Fair Acres Station, LLC – Phillip<br>Edison |
| 00510 – RX - Waupaca, WI<br>800 Riverside Drive<br>Waupaca, WI 54981-1943 | ShopKo Stores<br>Operating Co., LLC | Riverside Medical Center, Inc. |
| 00526 – Afton, WY<br>679 S Washington Street<br>Afton, WY 83110 | ShopKo Stores<br>Operating Co., LLC | FIDC XXX, LLC |
| 00601 – Kewaunee, WI<br>802 N. Main Street<br>Kewaunee, WI  54216 | ShopKo Stores<br>Operating Co., LLC | Holly Plaza, LLC |
| 00602 – Oconto, WI<br>126 Charles Street<br>Oconto, WI  54154 | ShopKo Stores<br>Operating Co., LLC | Holly Plaza, LLC |
| 00604 – Abbotsford, WI<br>1011 E. Spruce Street<br>Abbotford, WI  54405 | ShopKo Stores<br>Operating Co., LLC | Chelt Development LLC |

Schedule 8.2-25

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00605 – Mora, MN<br>340 South Highway 65<br>Mora, MN  55051 | ShopKo Stores<br>Operating Co., LLC | Kamin Realty Co. |
| 00606 – Calumet, MI<br>5350 Station Drive<br>Calumet, MI  49913 | ShopKo Stores<br>Operating Co., LLC | M.A.K. Rentals, LLC |
| 00607 – Seymour, WI<br>1010 South Mainline Drive<br>Seymour, WI  54165 | ShopKo Stores<br>Operating Co., LLC | Backyard Properties of Rock County,<br>LLC |
| 00608 – Brillion, WI<br>1014 W. Ryan Street<br>Brillion, WI  54110 | ShopKo Stores<br>Operating Co., LLC | R. Lewis & R. Lewis Brillion, Inc. |
| 00609 – Kiel, WI<br>1120 S.T.H. 67<br>Kiel, WI53042 | ShopKo Stores<br>Operating Co., LLC | Pontus SK Portfolio, LLC |
| 00610 – Ishpeming, MI<br>650 US Highway 41 West<br>Ishpeming, MI49849 | ShopKo Stores<br>Operating Co., LLC | Marquette Marine LLC |
| 00980 - Optical Lab<br>1450 W. Main Avenue<br>Green Bay, WI 54304 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00998 - Omaha, NE - D.C.<br>10808 South 132nd Street<br>Omaha, NE 68138 | ShopKo Stores<br>Operating Co., LLC | LCN SKO Omaha (Multi), LLC |
| 00999 - De Pere, WI- D. C.<br>1717 Lawrence Drive<br>De Pere , WI 54115 | ShopKo Stores<br>Operating Co., LLC | LCN SKO Omaha (Multi), LLC |
| G.O. - General Office 700 Pilgrim<br>Way, PO Box 19060<br>Green Bay, WI 54304 | ShopKo Stores<br>Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |

**OWNED PROPERTY[5]**

| OWNED PROPERTY | | | | | |
|---|---|---|---|---|---|
| 00533 – Tioga, ND | Shopko Stores Operating Co., LLC | 6527 Highway 40 | Tioga, ND | 58852-9213 | Inactive |
| # 003 Manitowoc, WI | ShopKo Stores Operating Co., LLC | 3415 Calumet Avenue | Manitowoc, WI | 54220 | 2 Outlots |
| # 012 Wisconsin Rapids, WI | ShopKo Stores Operating Co., LLC | 1100 East Riverview Expressway | Wisconsin Rapids, WI | 54494 | 2 Outlots |
| # 022 Mitchell, SD | ShopKo Stores Operating Co., LLC | 1900 North Main Street | Mitchell, SD | 57301 | 1 Outlot |
| # 025 Marshall, MN | ShopKo Stores Operating Co., LLC | 1200 Susan Drive | Marshall, MN | 56258-1622 | 1 Outlot |
| # 026 Beloit, WI | ShopKo Stores Operating Co., LLC | 2761 Prairie Avenue | Beloit, WI | 53511 | 3 Outlots |
| # 037 Chippewa Falls, WI | ShopKo Stores Operating Co., LLC | 2677 State Highway 53 | Cippewa Falls, WI | 54729 | 1 Outlot |
| # 052 Mason City, IA | ShopKo Stores Operating Co., LLC | 615 South Monroe | Mason City, IA | 50401-2061 | 1 Outlot |

---

[5]  For properties listed as both owned and leased by ShopKo Stores Operating Co., LLC, ShopKo Stores Operating Co., LLC owns one or more separate outlots adjacent to or near a leased store property.

Schedule 8.2-27

| # 054 Watertown, SD | ShopKo Stores Operating Co., LLC | 700 9th Avenue SE | Watertown, SD | 57201 | 1 Outlot |
|---|---|---|---|---|---|
| # 060 Albert Lea, MN | ShopKo Stores Operating Co., LLC | 2610 North Bridge Avenue | Albert Lea, MN | 56007 | 1 Outlot |
| # 114 Duluth, MN | ShopKo Stores Operating Co., LLC | 801 West Central Entrance | Duluth, MN | 558811-5468 | 1 Outlot |
| # 125 Freeport, IL | ShopKo Stores Operating Co., LLC | 555 West South Street | Freeport, IL | 61032 | 3 Outlots |
| # 134 Pullman, WA | ShopKo Stores Operating Co., LLC | South 1450 Grand Avenue | Pullman, WA | 99163 | 1 Outlot |
| Store Support Center | ShopKo Stores Operating Co., LLC | Vacant land - no street address | Ashwaubenon, WI | 54304 | 2 Outlots |

| **Freight Forwarders/ Transloaders/Customs Brokers** | **Company** | **Contact Information** |
|---|---|---|
| Transloaders | Performance Team | 11204 Norwalk Blvd
Santa Fe Springs, CA 90670
Jim Snodgrass
Phone # 562-345-2217
Fax #562-741-2501
E-Mail  jim.snodgrassPtgt.Net |
| | Triangle | 9 South Hackensack Ave. Bldg 43 |

|  | International LLC | Kearney, NJ  07032<br>Caryn Bland<br>Phone # 480-980-3114<br>Fax # 973-466-3870<br>E-Mail cblanc@thetrianglegroup.com |
|---|---|---|
| Freight Forwarder | Yusen Logistics (Americas), Inc. successor by merger to  NYK Logistics | 300 Lighting Way – 4th Floor<br>Secaucus, NJ 07094<br>Ron Marotto<br>Phone: 201-553-3803 |
| Customs Broker | Carmichael International Services | 533 Glendal Blvd<br>Los Angeles, CA  90026-5097 |

4.   <u>Locations of Assets in Prior 4 Months not Listed Above</u>

   None.


**F.   Company: ShopKo Properties, LLC**

1.   <u>Chief Executive Office</u>

   700 Pilgrim Way
   Green Bay, WI 54304

2.   <u>Location of Books and Records</u>

   700 Pilgrim Way
   Green Bay, WI  54304

3.   <u>Locations of Inventory, Equipment and Other Assets</u>

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00010 - Marquette, MI<br>1150 West Washington<br>Marquette, MI 49855 | Shopko Stores Operating<br>Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00011 - Kingsford, MI<br>500 South Carpenter Avenue<br>Kingsford, MI 49802-4597 | Shopko Stores Operating<br>Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00016 - Escanaba, MI<br>2530 First Avenue North<br>Escanaba, MI 49829-1396 | Shopko Stores Operating<br>Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00021 - Mankato, MN<br>1850 Madison Avenue<br>Mankato, MN 56001 | Shopko Stores Operating<br>Co., LLC | Spirit SPE Portfolio 2006-2, LLC |
| 00035 - Rochester, MN<br>2820 Highway 63 South<br>Rochester, MN 55904 | Shopko Stores Operating<br>Co., LLC | Spirit SPE Portfolio 2006-2, LLC |
| 00036 - Rochester, MN<br>3708 Highway 63 North<br>Rochester, MN 55904 | Shopko Stores Operating<br>Co., LLC | Spirit SPE Portfolio 2006-2, LLC |
| 00038 - Grand Island, NE<br>2208 North Webb Road<br>Grand Island, NE 68803 | Shopko Stores Operating<br>Co., LLC | Raymond J O'Conner Trust &<br>Jennifer's O'Conner Trust |
| 00039 - Lincoln, NE<br>4200 South 27th Street<br>Lincoln, NE 68502 | Shopko Stores Operating<br>Co., LLC | Red Bishop Heights JV, LLC |
| 00041 - Austin, MN<br>1209 18th Avenue NW<br>Austin, MN 55912 | Shopko Stores Operating<br>Co., LLC | Spirit SPE Portfolio 2006-2, LLC |
| 00045 - Bellevue, NE<br>601 Galvin Road South<br>Bellevue, NE 68005 | Shopko Stores Operating<br>Co., LLC | Devmar Properites, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00047 - Lincoln, NE<br>100 South 66th Street<br>Lincoln, NE 68510 | Shopko Stores Operating Co., LLC | SFI Limited Partnership 100 |
| 00049 - Aberdeen, SD<br>500 North Highway 281<br>Aberdeen, SD 57401 | Shopko Stores Operating Co., LLC | SMTA Shopko Portfolio I, LLC |
| 00057 - Winona, MN<br>405 Cottonwood Drive<br>Winona, MN 55987 | Shopko Stores Operating Co., LLC | CHL Winona, LLC |
| 00058 - Worthington, MN<br>1755 North Humiston Avenue<br>Worthington, MN 56187 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-2, LLC |
| 00061 - St. Cloud, MN<br>501 Highway 10 South<br>St. Cloud, MN 56304 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-2, LLC |
| 00062 - Great Falls, MT<br>301 Northwest Bypass<br>Great Falls, MT 59404-4125 | Shopko Stores Operating Co., LLC | GFS Building, LLC |
| 00064 - Nampa, ID<br>2100 Caldwell Boulevard<br>Nampa, ID 83651-1510 | Shopko Stores Operating Co., LLC | Well Nampa, LLC |
| 00065 - Boise, ID<br>8105 Fairview Avenue<br>Boise, ID 83704-8426 | Shopko Stores Operating Co., LLC | RS Boise Partners, LLC |
| 00066 - Spokane, WANorth<br>9520 Newport<br>HighwaySpokane, WA 99218 | Shopko Stores Operating Co., LLC | National Retail Properties, LP |
| 00067 - Twin Falls, ID<br>1649 Pole Line Road East<br>Twin Falls, ID 83301-8397 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-2, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00068 - Idaho Falls, ID<br>800 East 17th Street<br>Idaho Falls, ID 83404 | Shopko Stores Operating Co., LLC | ID Furst, Shop, LLC |
| 00069 - Coeur d'Alene, ID<br>217 West Ironwood Drive<br>Coeur d' Alene, ID 83814 | Shopko Stores Operating Co., LLC | Foothill Shadows, LLC |
| 00070 - Spokane, WA<br>East 13414 Sprague Avenue<br>Spokane, WA 99216 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00072 - Lewiston, ID<br>2120 Thain Grade<br>Lewiston, ID 83501 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-2, LLC |
| 00073 - Union Gap, WA<br>2530 Rudkin<br>Union Gap, WA 98903 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-2, LLC & Yakima Theaters, Inc. |
| 00075 - Missoula, MT<br>2510 South Reserve Street<br>Missoula, MT 59801 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-2, LLC |
| 00081 - Yakima, WA<br>5801 Summitview Avenue<br>Yakima, WA 98908 | Shopko Stores Operating Co., LLC | Summit Northwest, LLC |
| 00089 - Walla Walla, WA<br>1600 West Rose Street<br>Walla Walla, WA 99362 | Shopko Stores Operating Co., LLC | Table Rock Mobile Estates, Inc. |
| 00095 - Boise, ID<br>2655 South Broadway Avenue<br>Boise, ID 83706 | Shopko Stores Operating Co., LLC | M Group, LLC |
| 00123 - Houghton, MI<br>900 West Memorial Drive<br>Houghton, MI 49931 | Shopko Stores Operating Co., LLC | SMTA Shopko Portfolio I, LLC |

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00997 - Boise, ID D.C.<br>1001 E. Gowen Road<br>Boise, ID 83705 | Shopko Stores Operating Co., LLC | LCN SKO Omaha (Multi), LLC |

### OWNED PROPERTIES[6]

| Store | Owner | Description |
|---|---|---|
| # 011 Kingsford, MI | ShopKo Properties, LLC | 2 Outlots |
| # 061 St. Cloud, MN | ShopKo Properties, LLC | 1 Outlot |
| # 123 Houghton, MI | ShopKo Properties, LLC | 2 Outlots |

Freight Forwarders/Transloaders/Customs Brokers: None.

4.      Locations of Assets in Prior 4 Months not Listed Above

None.

G.      **Company: Penn-Daniels, LLC**

1.      Chief Executive Office

700 Pilgrim Way
Green Bay, WI 54304

---

[6]     For properties listed as both owned and leased in Part F(3), ShopKo Properties, LLC owns one or more separate outlots adjacent to or near leased store property.

2.      Location of Books and Records

700 Pilgrim Way
Green Bay, WI  54304

3.      Locations of Inventory, Equipment and Other Assets

| Store # / Address | Lessee | Landlord |
|---|---|---|
| 00139 - Quincy, IL<br>3200 Broadway<br>Quincy, IL 62301 | Shopko Stores Operating Co., LLC | THBH SL, LLC |
| 00140 - Jacksonville, IL<br>1964 West Morton Avenue<br>Jacksonville, IL 62650 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |
| 00141 - Burlington, IA<br>313 North Roosevelt Avenue<br>Burlington, IA 52601-1757 | Shopko Stores Operating Co., LLC | SVK Capital, LLC |
| 00142 - Fort Madison, IA<br>4810 Avenue O<br>Fort Madison, IA 52627-9667 | ShopKo Stores Operating Co., LLC | Retained R/E SPE, LLC (affiliate) |
| 00145 - Monmouth, IL<br>1190 North Sixth Street Road<br>Monmouth, IL 61462 | Shopko Stores Operating Co., LLC | SMTA Shopko Portfolio I, LLC |

**OWNED PROPERTIES[7]**

| Location | Owner | Description |
|---|---|---|

---

[7]     Penn Daniels, LLC owns one outlot adjacent to or near a leased store property.

Schedule 8.2-34

| # 145 Monmouth, IL | Penn Daniels, LLC | 1 Outlot |
|---|---|---|

Freight Forwarders/Transloaders/Customs Brokers: None.

4. <u>Locations of Assets in Prior 4 Months not Listed Above</u>

None.

**H.** **<u>Company: ShopKo Optical Manufacturing, LLC</u>**

1. <u>Chief Executive Office</u>

700 Pilgrim Way
Green Bay, WI 54304

2. <u>Location of Books and Records</u>

700 Pilgrim Way
Green Bay, WI  54304

3. <u>Locations of Inventory, Equipment and Other Assets</u>

| **<u>Store # / Address</u>** | **<u>Lessee</u>** | **<u>Landlord</u>** |
|---|---|---|
| Optical Lab<br>1450 W. Main Ave.<br>De Pere, WI 54115-5970 | Shopko Stores Operating Co., LLC | Spirit SPE Portfolio 2006-1, LLC |

4. <u>Locations of Assets in Prior 4 Months not Listed Above</u>

None.

Schedule 8.2-35

**I.** **Company: ShopKo Institutional Care Services Co., LLC**

1. <u>Chief Executive Office</u>

   700 Pilgrim Way,
   Green Bay, WI 54304

2. <u>Location of Books and Records</u>

   700 Pilgrim Way
   Green Bay, WI 54304

3. <u>Locations of Inventory, Equipment and Other Assets</u>

   N/A

4. <u>Locations of Assets in Prior 4 Months not Listed Above</u>

   N/A

**J.** **Company: Pamida Stores Operating Co., LLC**

1. <u>Chief Executive Office</u>

   700 Pilgrim Way
   Green Bay, WI 54304

2. <u>Location of Books and Records</u>

   700 Pilgrim Way

Schedule 8.2-36

Green Bay, WI 54304

3.      Locations of Inventory, Equipment and Other Assets

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Spirit SPE Portfolio 2006-3, LLC | 00625- Dyersville, IA | Pamida Stores Operating Co., LLC | 1201 12th Avenue SE | Dyersville, IA | 52040 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00671- Waukon, IA | Pamida Stores Operating Co., LLC | 819 11th Ave. S.W. P.O. Box 469 | Waukon, IA | 52353 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00680 - Perry, IA | Pamida Stores Operating Co., LLC | 1305 141st Street P.O. Box 610 | Perry, IA | 50220 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00716- Mt. Carmel, IL | Pamida Stores Operating Co., LLC | 1520 W. 9th Street | Mt. Carmel, IL | 62863 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00638- Monticello, IL | Pamida Stores Operating Co., LLC | 200 W. Burnside Drive P.O. Box 647 | Monticello, IL | 61856 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00640- Tuscola, IL | Pamida Stores Operating Co., LLC | 700 Progress Boulevard | Tuscola, IL | 61953 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00637 - Attica, IN | Pamida Stores Operating Co., LLC | 1215 E. Main Street P.O. Box 4 | Attica, IN | 47918 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00639 - Rockville, IN | Pamida Stores Operating Co., LLC | 840 North U.S. 41, P.O. Box 20 | Rockville, IN | 47872 | Active |

Schedule 8.2-37

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Spirit SPE Portfolio 2006-3, LLC | 00621 - Manistique, MI | Pamida Stores Operating Co., LLC | 815 E. Lakeshore Drive | Manistique, MI | 49854 | Active |
| Terminal Court LLC | 00642 - Allegan, MI | Pamida Stores Operating Co., LLC | 540 Jenner Drive | Allegan, MI | 49010 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00643 - Newaygo, MI | Pamida Stores Operating Co., LLC | 91 West Pine Lake Road | Newaygo, MI | 49337 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00644 - Clare, MI | Pamida Stores Operating Co., LLC | 11250 North Mission Road | Clare, MI | 48617 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00650- Dowagiac, MI | Pamida Stores Operating Co., LLC | 56419 Pokagon Street/P.O. Box 599 | Dowagiac, MI | 49047 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00651 - Hart, MI | Pamida Stores Operating Co., LLC | 2278 N. Comfort Drive | Hart, MI | 49420 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00733 - Fergus Falls, MN | Pamida Stores Operating Co., LLC | 226 E. Lincoln Avenue | Fergus Falls, MN | 56538 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00739 - Glenwood, MN | Pamida Stores Operating Co., LLC | 710 County Road 21 S P.O. Box 69 | Glenwood, MN | 56334 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00768 - Glasgow, MT | Pamida Stores Operating Co., LLC | 804 Highway 2 West P.O. Box 1210 | Glasgow, MT | 59230 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Spirit SPE Portfolio 2006-3, LLC | 00717 - Minerva, OH | Pamida Stores Operating Co., LLC | 825 Valley Street Route 183 | Minerva, OH | 44657 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00719 - Woodsfield, OH | Pamida Stores Operating Co., LLC | 378 Lewisville Road P.O. Box 651 | Woodsfield, OH | 43793 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00746 Madison, SD | Pamida Stores Operating Co., LLC | 800 S. Washington Avenue | Madison, SD | 57042 | Active |
| East "E" Street Realty, LLC | 00759 - Sturgis, SD | Pamida Stores Operating Co., LLC | 2105 Lazelle St., P.O. Box 760 | Sturgis, SD | 57785 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00630 - Arcadia, WI | Pamida Stores Operating Co., LLC | 1625 E. Blaschko Ave., P.O. Box 340 | Arcadia, WI | 54612 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00626 - Lancaster, WI | Pamida Stores Operating Co., LLC | 1625 Highway 61 North | Lancaster, WI | 53813 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00615 - Clintonville, WI | Pamida Stores Operating Co., LLC | 291 S. Main, P.O. Box 117 | Clintonville, WI | 54929 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00756 - Lander, WY | Pamida Stores Operating Co., LLC | 1255 West Main Street | Lander, WY | 82520 | Active |
| Spirit SPE Portfolio 2006-3, LLC | 00772 - Powell, WY | Pamida Stores Operating Co., LLC | Hwy. 14 West, P.O. Box 945 | Powell, WY | 82435 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| A. J. Palmgren Winterset Wages, L.C. 3517 University Ave., Suite B Des Moines, IA 50311 (515) 778-8000 | 00675- Winterset, IA | Pamida Stores Operating Co., LLC | 402 E. Hwy. 92, P.O. Box 558 | Winterset , IA | 50273 | Active |
| Sharon Solberg, Ruth E. Nelson Revocable Trust 706 W. 2nd St. P.O. Box 455 Red Oak, IA  51566 | 00786 - Red Oak, IA | Pamida Stores Operating Co., LLC | 801 Broadway | Red Oak, IA | 51566 | Active |
| Gordon Sudbeck Noddle Development Company Chariton Properties, Inc. P.O. Box 24169 2285 S. 67th St., Suite 250 Omaha, NE  68106 (402) 496-1616 | 00676 - Chariton, IA | Pamida Stores Operating Co., LLC | 1900 W. Court | Chariton, IA | 50049 | Active |
| Jim Prysiazny Humbolt Plaza Associates c/o The Lerner Co. 10855 West Dodge Road Omaha, NE  68154-2610 (402) 690-1790 | 00664 - Humboldt, IA | Pamida Stores Operating Co., LLC | 511 10th Avenue N, P.O. Box 612 | Humboldt, IA | 50548 | Active |

Schedule 8.2-40

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| James R. Bingham Nottingham Partners 1515 W. Maple Ave. Red Wing, MN 55066-3022 (888) 767-0903 | 00665 - Hampton, IA | Pamida Stores Operating Co., LLC | Hwy. 65 South P.O. Box 210 | Hampton, IA | 50441 | Active |
| Ron Christenson Onawa-Pam, a Minnesota Limited Partnership 12 S. 6th St., Suite 715 Minneapolis, MN  55402 (612) 338-7173 (612) 867-3104 (C) (612) 338-7236 (F) | 00677 - Onawa, IA | Pamida Stores Operating Co., LLC | 2220 Hwy 175 West | Onawa, IA | 51040 | Active |
| Heritage Investment Properties Attn:  Torsten or Lisa Arnold P.O. Box 675 Algona, IA  50511 | 00791 - Forest City, IA | Pamida Stores Operating Co., LLC | 616 E. US Highway 9 | Forest City, IA | 51436 | Active |
| Marvin & Dorothy Uittenbogaard 712 17th Ave. Sheldon, IA  51201 (712) 324-2033 | 00667 - Sheldon, IA | Pamida Stores Operating Co., LLC | 1501 Park Street | Sheldon, IA | 51201 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Roger Croell<br>Croell Redi-Mix, Inc.<br>2010 Kenwood Ave.<br>P.O. Box 430<br>New Hampton, IA<br>50659<br>(641) 394-6789 | 00668 - New Hampton, IA | Pamida Stores Operating Co., LLC | ST. Hwy. 18 at Sherman, P.O. Box 26 | New Hampton, IA | 50659 | Active |
| J.T. Bolger<br>David F. Bolger Revocable Trust<br>79 Chestnut Street<br>Ridgewood, NJ  07450<br>(201) 670-9685<br>(201) 670-9685 (F) | 00669 - Oelwein, IA | Pamida Stores Operating Co., LLC | 1345 S. Frederick P.O. Box 601 | Oelwein, IA | 50662 | Active |
| Robert C. Moorman<br>P.O. Box 1101<br>Cedar Rapids, IA  52406-1101<br>Donald H. Pfeiler<br>Toledo Ventrue<br>3221 Park View Court SE<br>Cedar Rapids, IA  52403<br>(319) 362-0711 | 00679 - Toledo, IA | Pamida Stores Operating Co., LLC | S. County Road P.O. Box 189 | Toledo, IA | 52342 | Active |
| Richard & Donna Mau<br>3002 Okoboji Blvd.<br>Milford, IA  71351<br>(712) 332-5460<br>(305) 853-4753 (C) | 00681- Ida Grove, IA | Pamida Stores Operating Co., LLC | 202 Oak Grove Plaza | Ida Grove, IA | 51445 | Active |

Schedule 8.2-42

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Jim Prysiazny Lerner Harland Partnership 10855 West Dodge Road Omaha, NE  68154 (402) 690-1790 | 00682 - Harlan, IA | Pamida Stores Operating Co., LLC | Hwy. 59 & 44 | Harlan, IA | 51537 | Active |
| Paul Schwabe Pamida Two, LLC 1818 N. Farwell Ave. Milwaukee, WI  53202 (414) 283-2605 | 00635 - Savanna, IL | Pamida Stores Operating Co., LLC | 251 S. 4th Street | Savanna, IL | 61074 | Active |
| William C. McMenamy, Jr. McMenamy Ad Corp. c/o Sentry Properties Co. 81 S. 5th St., Suite 120D Columbus, OH  43215 (614) 228-6321 (614) 565-2652 (C) (614) 228-7502 (F) | 00720 - Batesville, IN | Pamida Stores Operating Co., LLC | 100 Cross Country Plaza | Batesville, IN | 47006 | Active |
| Ignatius & Ivy Lam 9611 Rockpoint Dr. Huntington Beach, CA 92646 (714) 751-3826 (714) 478-4617 (C) (714) 751-3928 | 00647- Syracuse, IN | Pamida Stores Operating Co., LLC | 1101 Indiana Ave. | Syracuse, IN | 46567 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Paul Schwabe Pamida Five, LLC 1818 North Farwell Ave. Milwaukee, WI  53202 (414) 283-2605 | 00693- Clay Center, KS | Pamida Stores Operating Co., LLC | 821 West Crawford | Clay Center, KS | 67432 | Active |
| Norton Area Development, LLC 418 E. Holmes Norton, KS  67654-1412 (785) 877-5833 (785) 877-5833 | 00696 - Norton, KS | Pamida Stores Operating Co., LLC | 505 W. Holmes P.O. Box 361 | Norton, KS | 67654 | Active |
| Jeffrey B. Austin 809 West Spring Street Brownstown, IN  47220 (812) 358-4382 (812) 278-4909 (C) | 00729 - Brandenburg, KY | Pamida Stores Operating Co., LLC | 777 ByPass Road | Brandenburg, KY | 40108 | Active |
| Andy J. Moyle Moyle Development P.O. Box 399 Houghton, MI 49931 (906) 482-3000 | 00622 - Wetmore, MI | Pamida Stores Operating Co., LLC | E9916 M28 East | Wetmore, MI | 49895 | Active |
| Daniel G. Kamin Daniel G. Kamin Realty Co. P.O. Box 10234 Pittsburgh, PA  15232 (412) 661-5233 (O) (412) 661-8160 (F) | 00646 - Standish, MI | Pamida Stores Operating Co., LLC | 3825 S. Huron Road | Standish, MI | 48658 | Active |

Schedule 8.2-44

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| D.J. Martin Donald Martin Family LP 145 W. Chicago Blvd. Tecumseh, MI 49286 (517) 423-02065 | 00648- Tecumseh, MI | Pamida Stores Operating Co., LLC | 2656 East Monroe Road, P.O. Box 306 | Tecumseh, MI | 49286 | Active |
| Marshall Hess MRG, Ltd. 3003 N. Mercer St. New Castle, PA 16105 (724) 658-3335 (724) 658-6630 (F) | 00649 - Imlay City, MI | Pamida Stores Operating Co., LLC | 1995 South Cedar P.O. Box 97 | Imlay City, MI | 48444 | Active |
| Margie G. Simon M.G. Simon Properties 784 W. Lake Lansing Road East Lansing, MI 48823 | 00652 - Brooklyn, MI | Pamida Stores Operating Co., LLC | 400 South Main Street, P.O. Box 340 | Brooklyn, MI | 49230 | Active |
| Paul Schwabe Pamida Seven, LLC 1818 N. Farwell Ave. Milwaukee, WI 53202 (414) 283-2605 | 00653 - Gladwin, MI | Pamida Stores Operating Co., LLC | 174 James Robertson Drive, P.O. Box 391 | Gladwin, MI | 48624 | Active |
| Don Bastianello Angeli Foods Company P.O. Box 312 Iron River, MI 49935 | 00623 - Iron River, MI | Pamida Stores Operating Co., LLC | 890 Riverside Plaza P.O. Box 272 | Iron River, MI | 49935 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Guy Laverty<br>Two Harbors First, LLC<br>48-554 Vista Palomino<br>LaQuinta, CA  92253<br>(760) 584-8952<br>(760) 564-8955 (F) | 00628 - Two Harbors, MN | Pamida Stores Operating Co., LLC | 1009 7th Ave. P.O. Box 358 | Two Harbors, MN | 55616 | Active |
| Kenneth L. Kellar<br>Security State Bank<br>402 Minnesota Ave.<br>Box 170<br>Aitkin, MN  56431<br>(218) 927-2539 | 00735 - Aitkin, MN | Pamida Stores Operating Co., LLC | Highway 169, P.O. Box 348 | Aitkin, MN | 56431 | Active |
| Wayne Lee<br>3110 Van Ave. NE<br>Alexandria, MN  56308<br>(612) 763-3053<br>Mathias F. Breitbach<br>Breitbach Construction<br>1841 Adams Drive<br>Sauk Centre, MN  56378<br>(320) 352-5103 | 00738- Perham, MN | Pamida Stores Operating Co., LLC | 300 Jake Street SE P.O. Box 10 | Perham, MN | 56573 | Active |
| Omer & Evelyn Templin<br>2021 Louden Ave.<br>North Glencoe, MN 55336 | 00732 - Glencoe, MN | Pamida Stores Operating Co., LLC | 3225 10th St. East | Glencoe, MN | 55336 | Active |
| Michael Gunderson<br>Hangun Properties<br>714 Lake Ave. Plaza<br>Detroit Lakes, MN 56501<br>(218) 847-1028 | 00740- Morris, MN | Pamida Stores Operating Co., LLC | 106 East Highway 28 & 59 | Morris, MN | 56267 | Active |

Schedule 8.2-46

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| The Christensen Corporation P.O. Box 628 108 W. Crawford St. Luverne, MN  56156-0628 (507) 283-4267 | 00747 - Luverne, MN | Pamida Stores Operating Co., LLC | 405 W. Interstate Drive P.O. Box 958 | Luverne, MN | 56156 | Active |
| The Christensen Corporation P.O. Box 628 108 W. Crawford St. Luverne, MN  56156-0628 (507) 283-4267 | 00748 - Pipestone, MN | Pamida Stores Operating Co., LLC | 1002 7th Street SE | Pipestone, MN | 56164 | Active |
| Tom Mayberry Mayberry Realty 119 S. 7th St. St. James, MN  56081 (507) 375-3171 (507) 375-5400 (F) | 00749 - St. James, MN | Pamida Stores Operating Co., LLc | 301 1st Avenue South | St. James, MN | 56081 | Active |
| Daniel G. Kamin Daniel G. Kamin Standish, LLC P.O. Box 10234 Pittsburgh, PA  15232 (412) 661-5233 | 00750 - Windom, MN | Pamida Stores Operating Co., LLC | 2155 1st Ave. | Windom, MN | 56101 | Active |

Schedule 8.2-47

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|--------|----------------------|--------|---------------|-------------|-----|----------|
| Michael J. Gunderson HanGun Properties, Inc. 714 Lake Avenue Detroit Lakes, MN 56501 (218) 847-1028 | 00742 - East Grand Forks, MN | Pamida Stores Operating Co., LLC | 421 Gateway Dr. NE | East Grand Forks, MN | 56721 | Active |
| Michael J. Gunderson HanGun Properties, Inc. 714 Lake Ave. Detroit Lakes, MN 56501 (218) 847-1028 | 00744 - Roseau, MN | Pamida Stores Operating Co., LLC | Hwy. 11 West P.O. Box 340 | Roseau, MN | 56751 | Active |
| Jerome & Betty Beary 1325 1st Ave. East Newton, IA  50208 (641) 792-4332 (641) 792-2427 (F) | 00705 - Trenton, MO | Pamida Stores Operating Co., LLC | 2001 E. 9th St. | Trenton, MO | 64683 | Active |
| Christenson Construction Management Shelby-Pam Limited Partnership 12 S. 6th St., Suite 715 Minneapolis, MN  55402 (612) 338-7173 (612) 338-7236 (F) | 00766 - Shelby, MT | Pamida Stores Operating Co., LLC | 1950 Roosevelt Hwy., PO Box 920 | Shelby, MT | 59474 | Active |

Schedule 8.2-48

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Jack R. Clark Richland Center Joint Venture 1708 S. Cooper Arlington, TX  76013 (817) 275-3226 (817) 975-0690 (C) (817) 274-3719 (F) | 00769 - Sidney, MT | Pamida Stores Operating Co., LLC | 1153-1159 South Central Ave. | Sidney, MT | 59270 | Active |
| Gordon Sudbeck N & K Investments Company c/o Noddle Companies 1125 S. 103rdSt., Suite 450 P.O. Box 24169 Omaha, NE  68124-0169 (402) 496-1616 | 00773 - Lewistown, MT | Pamida Stores Operating Co., LLC | 825 NE Main, P.O. Box 699 | Lewistown, MT | 59457 | Active |
| Richard Kvanbeck IRET Properties, A North Dakota Ltd Partnership 10050 Crosstown Cr., Suite 105 Eden Prairie, MN  55344 (952) 401-6600 | 00774 - Livingston, MT | Pamida Stores Operating Co., LLC | 100 W. Washington | Livingston, MT | 59047 | Active |
| Paul Schwabe Pamida Two, LLC 1818 N. Farwell Ave. Milwaukee, WI  53202 (414) 283-2605 | 00775- Libby, MT | Pamida Stores Operating Co., LLC | 1600 Hwy. 2 W., P.O. Box 1526 | Libby, MT | 59923 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Neil Fedje Cavalier Improvements Inc. P.O. Box 131 Cavalier, ND 58220 (701) 265-8484 | 00734 - Cavalier, ND | Pamida Stores Operating Co., LLC | 601 Division Avenue S P.O. Box 66 | Cavalier, ND | 58220 | Active |
| Tom Henning Henning Group, Inc. 20109 Old Ranch Loop Nathrop, CO 81236 (719) 395-3284 (303) 919-8462 (C) | 00736- Valley City, ND | Pamida Stores Operating Co., LLC | 727 14th Avenue SW P.O. Box 564 | Valley City, ND | 58072 | Active |
| Irving D. Bakken Western Plaza, LLC 40534 County Hwy. 56 Frazee, MN 56544 | 00737 - Grafton, ND | Pamida Stores Operating Co., LLC | 932 12th Street West | Grafton, ND | 58237 | Active |
| Randy Westby 216 Broadway #202 Minot, ID 58701 (701) 837-1031 | 00741 - Rugby, ND | Pamida Stores Operating Co., LLC | 225 Hwy 2 SE, P.O. Box 386 | Rugby, ND | 58368 | Active |
| Randy Westby 216 Broadway #202 Minot, ID 58701 (701) 837-1031 | 00743 - Beulah, ND | Pamida Stores Operating Co., LLC | 1900 Hwy. 49 North P.O. Box 1239 | Beulah, ND | 58523 | Active |
| Downtown Modernization Inc. P.O. Box 155 Falls City, NE 68355 (402) 245-2486 | 00704 - Falls City, NE | Pamida Stores Operating Co., LLC | 1300 Stone Street, P.O. Box 590 | Falls City, NE | 68355 | Active |

Schedule 8.2-50

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Gordon Sudbeck N & K, Inc. c/o Noddle Development Co. 1125 S. 103rd St., Suite 450 P.O. Box 24169 Omaha, NE  68124-0169 (402) 496-1616 | 00690 - Holdrege, NE | Pamida Stores Operating Co., LLC | 1533 Burlington | Holdrege, NE | 68949 | Active |
| Paul Schwabe Pamida Three, LLC 1818 N. Farwell Ave. Milwaukee, WI  53202 (414) 283-2605 | 03113 - Ogallala, NE | Pamida Stores Operating Co., LLC | 100 Texas Trail Drive | Ogallala, NE | 69153 | Inactive |
| Paul Schwabe Pamida One, LLC 1818 N. Farwell Ave. Milwaukee, WI  53202 (414) 283-2605 | 00692 - Superior, NE | Pamida Stores Operating Co., LLC | Hwy. 8 & Noren, P.O. Box 6 | Superior, NE | 68978 | Active |
| J.T. Bolger Bolger & Co., Inc. David F. Bolger Revocable Trust 79 Chestnut St. Ridgewood, NJ  07450 (201) 670-9270 (201) 670-9685 (F) | 00670 - Wayne, NE | Pamida Stores Operating Co., LLC | 615 Dearborn Hwy. 35 East | Wayne, NE | 68787 | Active |

Schedule 8.2-51

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|--------|----------------------|--------|---------------|-------------|-----|----------|
| Phillip Stettinger S & V Homebuilders P.O. Box 80467 Lincoln, NE  68501 (402) 477-3515 (O) (402) 477-1893 (F) | 00658 - Beatrice, NE | Pamida Stores Operating Co., LLC | 123 N. 24th Street | Beatrice, NE | 68310 | Active |
| Hinky Dinky Auburn LLC 3012 Paysphere Circle Chicago, IL 60674 | 00659 - Auburn, NE | Pamida Stores Operating Co., LLC | 2410 Dahlke Avenue P.O. Box 306 | Auburn , NE | 68305 | Active |
| C. Blaine & Marilyn McVicker Box 7152 Pueblo West, CO  81007-0152 (719) 547-0787 | 00694- Alliance, NE | Pamida Stores Operating Co., LLC | 3rd & Flack Street, P.O. Box 720 | Alliance , NE | 69301 | Active |
| Pelstar Development LLC 5620 Ames Ave., Omaha, NE 68104 (402) 932-7777 ext 1 | 00695 - Broken Bow, NE | Pamida Stores Operating Co., LLC | 2353 South E Street | Broken Bow, NE | 68822 | Active |
| D&L Development LLC 2299 Hwy. 275 Lot 2 West Point, NE 68788 | 00661 - West Point, NE | Pamida Stores Operating Co., LLC | 500 Plaza Drive | West Point, NE | 68788 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00672 - O'Neill, NE | Pamida Stores Operating Co., LLC | 404 E. Hwy 20 | O'Neill, NE | 68763 | Active |

Schedule 8.2-52

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Alan Peterson<br>8839 Verdon Circle<br>Plattsmouth, NE  68040<br>(402) 235-2535 | 00662 - Plattsmouth, NE | Pamida Stores Operating Co., LLC | 211 South 23rd Street | Plattsmouth, NE | 68048 | Active |
| Albert Casey<br>Olathe Development Co.<br>c/o Central Realty LLC<br>331 West Thornton Ave.<br>Saint Louis, MO 63119<br>(O) (314) 862-5557<br>(F) (314) 862-7796 | 00745 - Winner, SD | Pamida Stores Operating Co., LLC | 1140 E. 5th St. P.O. Box 70 | Winner, SD | 57580 | Active |
| KGL Rentals, Inc.<br>P.O. Box 629<br>Hot Springs, SD  57747<br>(605) 745-6415 | 00753 - Hot Springs, SD | Pamida Stores Operating Co., LLC | 2701 Hwy. 18 West | Hot Springs, SD | 57747 | Active |
| Roger Croell<br>Croell Redi-Mix Inc.<br>2010 Kenwood Ave.<br>P.O. Box 430<br>New Hampton, IA 50659<br>(641) 394-6789 (O)<br>(641) 394-3735 (F) | 00757 - Belle Fourche, SD | Pamida Stores Operating Co., LLC | 1 North 5th Avenue | Belle Fourche, SD | 57717 | Active |
| Richard Kelly<br>65334 Swalley Road<br>Bend, OR  97701<br>(541) 312-9805 | 00627 - Neillsville, WI | Pamida Stores Operating Co., LLC | 1008 E. Division, P.O. Box 385 | Neillsville, WI | 55456 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Phillip Kilinski Pickruhn & Kilinski Enterprise P.O. Box 926 Wausau, WI 54402-0926 (715) 675-3194 | 00620 - Eagle River, WI | Pamida Stores Operating Co., LLC | 750 Hwy. 45 N. | Eagle River, WI | 54521 | Active |
| Lewis & Barbara Krueger N. 9581 Cemetery Road Brillion, WI 54110 (920) 738-5437 (920) 738-5435 (F) | 00617 - Wautoma, WI | Pamida Stores Operating Co., LLC | Hwy. 21 & 73 P.O. Box 1409 | Wautoma, WI | 54982 | Active |
| Rick Callahan 1515 East Main St. LLC c/o RR Callahan Co. 1702 Halstead St., Chicago, IL 60608 (312) 666-8093 | 00618 - Reedsburg, WI | Pamida Stores Operating Co., LLC | 1515 East Main Street | Reedsburg, WI | 53959 | Active |
| Rollie Winter & Associates 3315A N. Ballard Road Appleton, WI 54911 (920) 739-0101 (O) (920) 739-1366 (F) | 00619- Adams, WI | Pamida Stores Operating Co., LLC | 220 Lincoln Street P.O. Box 1299 | Adams, WI | 53910 | Active |
| Michael Dilworth Mike's No. 2 LLC 7300 S. 13th St., Suite 101 Oak Creek, WI 53154 (414) 764-7800 (414) 764-7900 (F) | 00632 - Spooner, WI | Pamida Stores Operating Co., LLC | 651 West Beaverbook Avenue, P.O. Box 7 | Spooner, WI | 54801 | Active |

Schedule 8.2-54

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Phillip Kilinski Pickruhn & Kilinski Enterprise P.O. Box 926 Wausau, WI 54402-0926 (715) 675-3194 | 00633 - Park Falls, WI | Pamida Stores Operating Co., LLC | 1333 South 4th Avenue P.O. Box 526 | Park Falls, WI | 54552 | Active |
| J.T. Bolger Bolger & Co., Inc. David F. Bolger Revocable Trust 79 Chestnut St. Ridgewood, NJ  07450 (201) 670-9270 (201) 670-9685 (F) | 00767 - Worland, WY | Pamida Stores Operating Co., LLC | 100 South 20th Street | Worland, WY | 82401 | Active |
| J.T. Bolger Bolger & Co., Inc. David F. Bolger Revocable Trust 79 Chestnut Street RidgeJ  07450 (201) 670-9270 (201) 670-9685 (F) | 00752 - Torrington, WY | Pamida Stores Operating Co., LLC | 1100 E. Valley Road | Torrington, WY | 82240 | Active |
| William R. Jones Sixteenth Street Development 718 9th St. P.O. Box 189 Wheatland, WY  82201 (307) 322-2882 (307) 322-3075 (F) | 00755 - Wheatland, WY | Pamida Stores Operating Co., LLC | 1701 16th Street | Wheatland, WY | 8221 | Active |

Schedule 8.2-55

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Randy George Douglas Venture P.O. Drawer V Douglas, WY 82633 (307) 358-2881 | 00758 - Douglas, WY | Pamida Stores Operating Co., LLC | 1950 East Richards | Douglas, WY | 82633 | Active |
| Dale Jones Phoenix, Plaza LC 51 North Eastridge Drive St. George, UT 84790 | 00760 - Green River, WY | Pamida Stores Operating Co., LLC | 1105 Bridge Drive | Green River, WY | 82935 | Active |
| Paul Schwabe Pamida Two, LLC 1818 N. Farwell Ave. Milwaukee, WI 53202 (414) 283-2605 | 00761 - Newcastle, WY | Pamida Stores Operating Co., LLC | 205 Boyd Ave. | Newcastle, WY | 82701 | Active |
| Arch Andersen 802 Brookside Drive Audubon, IA 50025 (712) 563-3111(O) (712) 563-2171 (F) | 00683 - Audubon, IA | Pamida Stores Operating Co., LLC | 109 North Market | Audubon, IA | 50025 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00684 - Bloomfield, IA | Pamida Stores Operating Co., LLC | 106 Smith Street | Bloomfield, IA | 52537 | Active |
| Eldora Industrial Development The Corporation 1442 Washington St. Eldora, IA 50627 (641) 939-3241 | 00685 - Eldora, IA | Pamida Stores Operating Co., LLC | 1425 Edgington Avenue | Eldora, IA | 50627 | Active |

Schedule 8.2-56

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Albert Casey Glenwood Plaza Development Company c/o Central Realty 331 West Thronton Ave. Saint Louis, MO 63119 (314) 862-5557 | 00686 - Glenwood, IA | Pamida Stores Operating Co., LLC | 902 South Locust | Glenwood, IA | 51534 | Active |
| Community Development Corporation of Greenfield     P.O. Box 61 Greenfield, IA 50849 (641) 743-6184 | 00687 - Greenfield, IA | Pamida Stores Operating Co., LLC | 202 S. W. Kent | Greenfield, IA | 50849 | Active |
| Ronald D. Hogan c/o Ronald D. Hogan, Trustee Oferon Family Trust P.O. Box 2342 LaMesa, CA 91943-2342 | 00688 - Missouri Valley, IA | Pamida Stores Operating Co., LLC | 413 Huron Street | Missouri Valley, IA | 51555 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00708 - Carrollton, MO | Pamida Stores Operating Co., LLC | 812 Harvest Hills Dr. | Carrollton, MO | 64633 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Donald Wood Woods Super Markets, Inc. c/o Woods Plaza Shopping Ctr P.O. Box 880 Bolivar, MO  65613-0880 (417) 326-7603 | 00709 - El Dorado Springs, MO | Pamida Stores Operating Co., LLC | 1307 Hwy 32 South | El Dorado Springs, MO | 64744 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00674 - Clarion, IA | Pamida Stores Operating Co., LLC | 1003 Central Ave. West | Clarion, IA | 50525 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00689 - Mount Ayr, IA | Pamida Stores Operating Co., LLC | 201 N. Fillmore | Mount Ayr, IA | 50854 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00703 - Burlington, KS | Pamida Stores Operating Co., LLC | 300 Cross Street | Burlington, KS | 66839 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00707 - Albany, MO | Pamida Stores Operating Co., LLC | 101 S. Polk | Albany, MO | 64402 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00710 - Gallatin, MO | Pamida Stores Operating Co., LLC | 212 North Main Street | Gallatin, MO | 64640 | Active |

Schedule 8.2-58

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00711 - Memphis, MO | Pamida Stores Operating Co., LLC | Highway 136 East | Memphis, MO | 63555 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00673 – Ainsworth, NE | Pamida Stores Operating Co., LLC | 1511 East 4th St. | Ainsworth, NE | 69210 | Active |
| Pelstar Development LLC 5620 Ames Ave. Omaha, NE 68104 (402) 932-7777 ext 1 | 00764 – Buffalo, WY | Pamida Stores Operating Co., LLC | 129 Harmony | Buffalo, WY | 82834 | Active |
| Pelstar Custer LLC c/o Pelstar Development LLC 5620 Ames Ave. Omaha, NE 68104 (402) 932-7777 ext 1 | 00763 – Custer, SD | Pamida Stores Operating Co., LLC | 1135 Mount Rushmore Rd. | Custer, SD | 57730 | Active |
| Mitchell Drug, Inc. P.O. Box 145 Dillon, MT 59725 | 00529 – Rx – Dillon, MT | Pamida Stores Operating Co., LLC | 125 E. Glendale | Dillon, MT | 59725 | Active |
| Pelstar Doniphan LLc c/o Pelstar Development LLC 5620 Ames Ave. Omaha, NE 68104 (402) 932-7777 ext 1 | 00706 – Doniphan, MO | Pamida Stores Operating Co., LLC | 111 Leroux St. | Doniphan, MO | 63935 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Anding Dwight LLC c/o Anding Realty 5900 Monona Dr., #401 Monona, WI 53716 | 00641 – Dwight, IL | Pamida Stores Operating Co., LLC | 110 Watters Dr. | Dwight, IL | 60420 | Active |
| JMW Development LLC 5402 Parkside Dr. #280 Minneapolis, MN 55416 | 00512 – Ellsworth, WI | Pamida Stores Operating Co., LLC | 598 Lucas Ln. | Ellsworth, WI | 54011 | Active |
| JMW Development LLC 5402 Parkside Dr. #280 Minneapolis, MN 55416 | 00629 – Ely, MN | Pamida Stores Operating Co., LLC | 1500 E. Sheridan St. | Ely, MN | 55731 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00698 – Gothenburg, NE | Pamida Stores Operating Co., LLC | 718 4th St. | Gothenburg, NE | 68138 | Active |
| Ron's Supermarket, Inc. P.O. Box 272 Greybull, WY 82426 | 00776 – Greybull, WY | Pamida Stores Operating Co., LLC | 925 N. Sixth St. | Greybull, WY | 82426 | Active |
| Catt's Realty Company 829 W. Main St., Suite C Gaylord, MI 49735 | 00656 – Kalkaska, MI | Pamida Stores Operating Co., LLC | 784 S. Cedar St. | Kalkaska, MI | 49646 | Active |
| Pelstar Kimball LLC c/o Pelstar Development LLC 5620 Ames Ave. Omaha, NE 68104 (402) 932-7777 ext 1 | 00700 – Kimball, NE | Pamida Stores Operating Co., LLC | 1217 S. Hwy. 71 | Kimball, NE | 69145 | Active |
| Moyle Real Estate & Development Co. 46702 Hwy. M-26 P.O. Box 414 Houghton, MI 49931 | 00624 – L'Anse, MI | Pamida Stores Operating Co., LLC | 15900 Picture Bay Trail | L'Anse, MI | 49946 | Active |

Schedule 8.2-60

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Pelstar Larned LLC c/o Pelstar Development LLC 5620 Ames Ave. Omaha, NE 68104 (402) 932-7777 ext 1 | 00702 – Larned, KS | Pamida Stores Operating Co., LLC | 746 E. 14th St. | Larned, KS | 67550 | Active |
| Pelstar Lyons LLC c/o Pelstar Development LLC 5620 Ames Ave. Omaha, NE 68104 (402) 932-7777 ext 1 | 00701 – Lyons, KS | Pamida Stores Operating Co., LLC | 1212 West Main | Lyons, KS | 67554 | Active |
| Pelstar Mountain View LLC c/o Pelstar Development LLC 5620 Ames Ave. Omaha, NE 68104 (402) 932-7777 ext 1 | 00765 – Mountain View, WY | Pamida Stores Operating Co., LLC | 1080 Hwy. 414 | Mountain View, WY | 82939 | Active |
| Jorgensen Drug Inc. 606 3rd St. West Roundup, MT 59072 | 00528 – Rx – Roundup, MT | Pamida Stores Operating Co., LLC | 148 Main St. | Roundup, MT | 59072 | Active |
| Wilport LLC 208 Marsh St. Beaufort, NC 28516 | 00697 – Seneca, KS | Pamida Stores Operating Co., LLC | 1710 North St. | Seneca, KS | 66538 | Active |
| JMW Development LLC 5402 Parkside Dr. #280 Minneapolis, MN 55416 | 00751 – Sisseton, SD | Pamida Stores Operating Co., LLC | 1712 SD Hwy. 10 | Sisseton, SD | 57262 | Active |

| Lessor | Store #, City & State | Lessee | Legal Address | City, State | Zip | Property |
|---|---|---|---|---|---|---|
| Krist Properties P.O. Box 64 Ephriam, WI 54211 | 00616 – Sister Bay, WI | Pamida Stores Operating Co., LLC | 2541 South Bayshore Dr. | Sister Bay, WI | 54234 | Active |
| Spirit Realty Capital 2727 North Harwood Street , Suite 300 Dallas, TX 75201 | 00762 – Thermopolis, WY | Pamida Stores Operating Co., LLC | 142 S. Hwy. 20 | Thermopol is, WY | 82443 | Active |
| Richard L. Terry P.O. Box 176 Valentine, NE 69201 | 00523 – Valentine, NE | Pamida Stores Operating Co., LLC | 272 N. Main St. | Valentine, NE | 69201 | Active |

| Owned Properties | | | | | | |
|---|---|---|---|---|---|---|
| 00514 – Lake City, MI | Pamida Stores Operating Co., LLC | 1960 S. Morey Rd. | Lake City, MI | 49651 | Inactive | |
| 03658 – Ontonagon, MI | Pamida Stores Operating Co., LLC | 800 Giesau Dr. | Ontonagon, MI | 49953 | Inactive | |
| 00699 – Scott City, KS | Pamida Stores Operating Co., LLC | 1702 Main St. | Scott City, KS | 67871 | Active | |
| 00771 – Plentywood, MT | Pamida Stores Operating Co., LLC | 117 1st Avenue West | Plentywood, MT | 59254 | Active | |
| # 631 Ashland, WI | Pamida Stores, Operating Co., LLC | Vacant land - no street address | Ashland, WI | 54806 | 1 Outlot | |
| # 728 Centerville, TN | Pamida Stores Operating Co., LLC | Vacant land - no srteet address | Centerville, TN | 37033 | 1 Outlot | |

| Assets Held By Others | | |
|---|---|---|
| **Entity** | **Relationship to Assets** | **Address** |
| Performance Team Freight System | Freight Forwarder | 11204 Norwalk Blvd. Santa Fe Springs, CA 90670 |
| Werner Enterprises | Freight Forwarder | 14507 Frontier Rd Omaha, NE 68138 |
| J.B. Hunt Transport Services, Inc. | Freight Forwarder | 615 J.B. Hunt Corporate Drive Lowell, AR 72745 |
| FedEx Corporation | Freight Forwarder | 942 S. Shady Grove Rd. Memphis, TN 38120 |
| United Parcel Service, Inc. | Freight Forwarder | 55 Glenlake Pkwy. NE Atlanta, GA 30328 |
| Duke Secured Financing 2006, LLC | Bailee | 8888 Keystone Cross, Suite 1200 Indianapolis, IN  46240 |

4.      Locations of Assets in Prior 4 Months not Listed Above

      None.


**K.      Company: Pamida Transportation, LLC, Place's Associates' Expansion, LLC**

1.      Chief Executive Office

      700 Pilgrim Way
      Green Bay, WI 54304

2.      Location of Books and Records

      700 Pilgrim Way
      Green Bay, WI 54304

3. <u>Locations of Inventory, Equipment and Other Assets</u>

None.

4. <u>Locations of Assets in Prior 4 Months not Listed Above</u>

None.

**L.** **<u>Company: ShopKo Gift Card Co., LLC</u>**

1. <u>Chief Executive Office</u>

4161 Second Street South
St. Cloud, MN 56301

2. <u>Location of Books and Records</u>

700 Pilgrim Way,
Green Bay, WI 54304

3. <u>Location of Inventory, Equipment and Other Assets</u>

On file with ShopKo Gift Card Co., LLC

4. <u>Location of Assets in Prior 4 Months not Listed Above</u>

On file with ShopKo Gift Card Co., LLC

SCHEDULE 8.4
to
INFORMATION CERTIFICATE

<u>Existing Liens</u>

**<u>ShopKo Properties, LLC</u>**

None.

**<u>Penn-Daniels, LLC</u>**

None.

**ShopKo Stores Operating Co., LLC**

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 6097213 3 03/22/2006 | SHOPKO STORES OPERATING CO., LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54307-9060 | AMERICAN GREETINGS CORPORATION<br><br>ONE AMERICAN ROAD CLEVELAND, OH 44144 | Inventory heretofore or hereafter consigned to the Debtor, wherever located, including, without limitation, everyday and seasonable counter cards, everyday alternative cards, everyday and seasonable stickers, everyday and seasonal cellos, everyday gift wrap, everyday bows, seasonal gift wrap, seasonal bows, seasonal accessories, stationery, seasonal plush; DesignWare branded party goods, party accessories, party favors, crepe, latex balloons, and birthday candles; and other Goods, together with all proceeds thereof, including, without limitation, cash, accounts, instruments, chattel paper, general intangibles and letter-of-credit rights. |
| Secretary of State, Delaware | CONT 11/19/2018 | 2011 0280480 01/25/2011 | | | Continuation. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | AMEND 11/19/2018 | 2012 2460113 06/26/2012 | | | Restatement of collateral:<br><br>INVENTORY HERETOFORE OR HEREAFTER DELIVERED FROM TIME TO TIME BY SECURED PARTY TO DEBTOR, ITS DIVISIONS AND SUBSIDIARIES, WHEREVER LOCATED, ON A DIRECT-TO-STORE DELIVERY BASIS PURSUANT TO SCAN-BASED TRADING AND CONSIGNMENT METHOD, INCLUDING, WITHOUT LIMITATION: EVERYDAY AND SEASONAL COUNTER CARDS AND EVERYDAY ALTERNATIVE CARDS; EVERYDAY AND SEASONAL STICKERS; EVERYDAY AND SEASONAL CELLS; EVERYDAY AND SEASONAL GIFT WRAP AND BOWS; SEASONAL ACCESSORIES; SEASONAL PLUSH; STATIONERY; AND DESIGNWARE BRANDED PARTY GOODS, PARTY ACCESSORIES, PARTY FAVORS, CREPE, LATEX BALLOONS, AND BIRTHDAY CANDLES; INCLUDING ALL CASH AND NON-CASH PROCEEDS FROM THE SALE THEREOF, INCLUDING ACCOUNTS, CONTRACT RIGHTS, CHATTEL PAPER AND ANY OTHER RIGHTS OT [sic] THE PAYMENT OF MONEY AND SECURITY THEREFORE. |
| Secretary of State, Delaware | CONT 11/19/2018 | 20161135522 02/25/2016 | | | Continuation. |
| Secretary of State, Delaware | AMEND 11/19/2018 | 20165106081 08/22/2016 | | American Greetings Corporation<br><br>One American Boulevard Cleveland, OH 44145 | Secured Party information change to:<br><br>American Greetings Corporation<br><br>One American Boulevard Cleveland, OH 44145 |

Schedule 8.4-3

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2013 4969276 12/16/2013 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2013 5087029 12/23/2013 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2013 5109146 12/24/2013 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 0111534 01/09/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 0130708 01/10/2014 | SHOPKO STORES OPERATING CO., LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | MJ HOLDING COMPANY, LLC<br><br>7001 SOUTH HARLEM AVENUE BEDFORD PARK, IL 60638 | See Exhibit A attached to financing statement for the collateral description. |
| Secretary of State, Delaware | CONT 11/19/2018 | 2018 6919001 10/05/2018 | | | Continuation. |

Schedule 8.4-4

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 0194225 01/15/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 0272112 01/22/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 0621623 02/18/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 0629949 02/18/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 0806802 03/03/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 0969501 03/12/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 1029263 03/17/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 1258946 03/31/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 1675420 04/29/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 1701531 04/30/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 1802859 05/07/2014 | SHOPKO STORES OPERATING CO, LLC  700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC  1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 1899012 05/14/2014 | SHOPKO STORES OPERATING CO, LLC  700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC  1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 1986363 05/20/2014 | SHOPKO STORES OPERATING CO, LLC  700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC  1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 2422814 06/19/2014 | SHOPKO STORES OPERATING CO, LLC  700 PILGRIM WAY GREEN BAY, WI 54304 | CISCO SYSTEMS CAPITAL CORPORATION  170 W. TASMAN DRIVE MS SJ13-3 SAN JOSE, CA 95134 | Lease of specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 2460830 06/23/2014 | SHOPKO STORES OPERATING CO, LLC  700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC  1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 3082229 08/01/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 3184512 08/08/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 3333390 08/19/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 3376142 08/21/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 3587334 09/08/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 3851417 09/25/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 3875200 09/26/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 4775912 11/25/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2014 5214671 12/22/2014 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0528363 02/05/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0590066 02/10/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0649789 02/13/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0717719 02/19/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0809755 02/26/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0809763 02/26/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

Schedule 8.4-10

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0809771 02/26/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0809789 02/26/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0812940 02/26/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0812957 02/26/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 0915859 03/04/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

Schedule 8.4-11

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1124527 03/17/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC 1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1215309 03/23/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC 1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1310696 03/27/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC 1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1350395 03/31/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC 1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1392322 04/01/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC 1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1658466 04/17/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1751980 04/23/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1776474 04/24/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1798627 04/27/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1823359 04/28/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1883676 05/01/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC 1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 1883684 05/01/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC 1 NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 2919883 07/07/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | PAPYRUS-RECYCLED GREETINGS, INC. 111 N. CANAL STREET, SUITE 700 CHICAGO, IL 60606 | INVENTORY HERETOFORE OR HEREAFTER SOLD OR DELIVERED BY SECURED PARTY TO DEBTOR ON A DIRECT TO STORE DELIVERY BASIS PURSUANT TO SCAN-BASED TRADING METHOD OF SALES FOR SALE FROM TIME TO TIME WHEREVER LOCATED. |
| Secretary of State, Delaware | AMEND 11/19/2018 | 2018 0997854 02/12/2018 | | PAPYRUS-RECYCLED GREETINGS, INC. 240 GATEWAY ROAD WEST NAPA, CA 94558 | Secured Party information change to: PAPYRUS-RECYCLED GREETINGS, INC. 240 GATEWAY ROAD WEST NAPA, CA 94558 |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 3554317 08/17/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

Schedule 8.4-14

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 3554473 08/17/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 3630869 08/20/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 3630927 08/20/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 3631206 08/20/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 3921771 09/08/2015 | SHOPKO STORES OPERATING CO, LLC 700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 5376537 11/16/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 5536064 11/23/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 6166374 12/21/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 6166689 12/21/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 6295801 12/29/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

Schedule 8.4-16

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2015 6295975 12/29/2015 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2016 0430353 01/22/2016 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2016 0430379 01/22/2016 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2016 1670544 03/21/2016 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2016 1670569 03/21/2016 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2016 1970381 04/04/2016 | SHOPKO STORES OPERATING CO, LLC  700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC  ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2016 3931084 06/29/2016 | Shopko Stores Operating Co., LLC  700 Pilgrim Way Green Bay, WI 54304 | Payless ShoeSource, Inc.  3231 SE Sixth Avenue Topeka, KS 66607 | All assets (including inventory) of licensee subject to the License Agreement, dated as of July 23, 1999 (as amended from time to time), between Shopko Stores Operating Co., LLC (as successor in interet [sic] to Shopko Stores, Inc.), as licensor and Payless ShoeSource, Inc., and all proceeds thereof. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2016 3946900 06/30/2016 | Shopko Stores Operating Co., LLC<br><br>700 Pilgrim Way Green Bay, WI 54307 | The News Group, L.P., as Representative<br><br>1955 Lake Park Drive, Suite 400 Smyrna, GA 30080<br><br>Benjamin News Group, Inc.<br><br>1701 Rankin Street PO Box 16147 Missoula, MT 59808<br><br>Cowley Distributing, Inc.<br><br>732 Heisinger Road Jefferson City, MO 65109<br><br>Dakota News, Inc.<br><br>221 S. Petro Avenue Sioux Falls, SD 57107-0572<br><br>Kent News Company, L.L.C.<br><br>100511 Airport Road Scottsbluff, NE 69361<br><br>Rushmore News, Inc.<br><br>924 East Saint Andrew St. Rapid City, SD 57701-3931<br><br>Saks News, Inc.<br><br>2210 E Broadway PO Box 1857 Bismarck, ND 58501<br><br>Southern Wisconsin News, Inc.<br><br>1858 Artisan Drive Edgerton, WI 53534<br><br>Valley News Company<br><br>1305 Stadium Road Mankato, MN 56001<br><br>TNG GP<br><br>1955 Lake Park Drive, Suite 400 Smyrna, GA 30080 | All frequencies and categories of magazines, comic books, calendars, puzzles and other periodicals, and other publications from time to time consigned by Secured Party to Debtor, whether located at, on order for, in transit to or otherwise intended for sale at any of Debtor's retail, distribution and other locations, wherever located, and all proceeds thereof. Secured Party has a purchase money security interest in the foregoing consigned goods and retains title to such goods until sold to Debtor or its customers. |

Schedule 8.4-19

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2017 4220544 06/27/2017 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2017 5050965 07/31/2017 | SHOPKO STORES OPERATING CO, LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | IBM CREDIT LLC<br><br>ONE NORTH CASTLE DRIVE ARMONK, NY 10504 | Specific equipment. |
| Department of Financial Institution, Wisconsin | UCC 11/21/2018 | 060009185932 6/14/2006 | SHOPKO STORES OPERATING CO., LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | American Bank Note Company, as agent for the United States Postal Service<br><br>2520 Metropolitan Drive Trevose, PA 19053 | The Consigned Goods are all United States Postal Service postage delivered to Consignee for sale to the public from all establishments maintained by Consignee, including, but not limited to, First Class postage, Express Mail postage, Priority Mail postage, bricks of postage for dispensing in automated teller machines and such other postage as Consignor may deliver to Consignee, as well as all proceeds thereof. |
| Department of Financial Institution, Wisconsin | CONT 11/21/2018 | 110006939229 6/6/2001 | | | Continuation. |
| Department of Financial Institution, Wisconsin | CONT 11/21/2018 | 160003119721 3/8/2016 | | | Continuation. |

Schedule 8.4-20

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Circuit Court, Brown County, Wisconsin | LIT 11/13/2018 | 2017cv001414 10/24/2017 | Defendant:<br><br>ABC Insurance Company (An Unknown Insurance Company)<br><br>Shopko Stores Operating Company, LLC | Plaintiff:<br><br>Palet, Lauri L. | Civil Case. Other - Personal Injury. Open Case. |
| U.S. District Court, Wisconsin Eastern | LIT 11/16/2018 | 1:17-cv-01755 12/18/2017 | Defendant:<br><br>Shopko Stores Operating Co LLC | Plaintiff:<br><br>Randall P Check | Civil Case. Job Discrimination (age). |

Schedule 8.4-21

## ShopKo Holding Company, LLC

None.

## Specialty Retail Shops Holding Corp.

None.

## ShopKo Optical Manufacturing, LLC

None.

## ShopKo Institutional Care Services Co., LLC

None.

**Pamida Stores Operating Co., LLC**

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 6128335 7 04/17/2006 | PAMIDA STORES OPERATING CO., LLC<br><br>8800 F STREET OMAHA, NE 68127 | AMERICAN GREETINGS CORPORATION<br><br>ONE AMERICAN ROAD CLEVELAND, OH 44144 | Inventory heretofore or hereafter consigned to the Debtor, wherever located, including without limitation, greeting cards, stickers, gift wrap, bows, stationery, party goods, party accessories, party favors, crepe, latex balloons, birthday candles, plush, social expression products and other Goods, together with all cash and non-cash proceeds from the sale thereof, including, without limitation, accounts, contract rights, chattel paper, and any other rights to the payments of money and security therefor. |
| Secretary of State, Delaware | CONT 11/19/2018 | 2011 0282239 01/25/2011 | | | Continuation. |
| Secretary of State, Delaware | CONT 11/19/2018 | 20161134541 02/25/2016 | | | Continuation. |
| Secretary of State, Delaware | AMEND 11/19/2018 | 20165106057 08/22/2016 | | American Greetings Corporation<br><br>One American Boulevard Cleveland, OH 44145 | Secured Party information change to:<br><br>American Greetings Corporation<br><br>One American Boulevard Cleveland, OH 44145 |
| Secretary of State, Delaware | AMEND 11/19/2018 | 2013 0843483 03/05/2013 | PAMIDA STORES OPERATING CO., LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | | Debtor information change to:<br><br>PAMIDA STORES OPERATING CO., LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 |
| Secretary of State, Delaware | AMEND 11/19/2018 | 2011 2021031 05/26/2011 | | | Deletion of collateral:<br><br>Specific equipment. Please refer to financing statement and financing statement addendum for a full description. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2007 3878591 10/15/2007 | PAMIDA STORES OPERATING CO., LLC<br><br>8800 F ST OMAHA, NE 68127 | DELL FINANCIAL SERVICES L.P.<br><br>12234 N. IH-35 BLDG B AUSTIN, TX 78753 | All computer equipment and peripherals (collectively "Equipment") wherever located, financed under and described in the Master Lease Agreement ("MLA") entered into between Lessee and Lessor and all of Lessee's rights, title and interest in and to use any software and services (collectively "Software") financed under and described in the MLA, along with any modifications or supplements to the MLA which are incorporated or evidenced in writing and all substitutions, additions, assessions and replacements to the Equipment or Software now or hereafter installed in, affixed to, or used in conjunction with the Equipment or Software and the proceeds thereof together with all payments, insurance proceeds, credits or refunds obtained by Lessee from a manufacturer, licensor or service provider, or other proceeds and payments due and to become due and arising from or relating to such Equipment, Software or the MLA. |
| Secretary of State, Delaware | CONT 11/19/2018 | 2012 3530765 09/13/2012 | | | Continuation. |
| Secretary of State, Delaware | CONT 11/19/2018 | 2017 6232984 09/19/2017 | | | Continuation. |

Schedule 8.4-24

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | UCC 11/19/2018 | 2007 4600671 12/05/2007 | PAMIDA STORES OPERATING CO., LLC<br><br>8800 F. STREET OMAHA, NE 68127 | DELL FINANCIAL SERVICES L.P.<br><br>12234 N. IH-35 BLDG B AUSTIN, TX 78753 | All computer equipment and peripherals (collectively "Equipment") wherever located, financed under and described in the Master Lease Agreement ("MLA") entered into between Lessee and Lessor and all of Lessee's rights, title and interest in and to use any software and services (collectively "Software") financed under and described in the MLA, along with any modifications or supplements to the MLA which are incorporated or evidenced in writing and all substitutions, additions, assessions and replacements to the Equipment or Software now or hereafter installed in, affixed to, or used in conjunction with the Equipment or Software and the proceeds thereof together with all payments, insurance proceeds, credits or refunds obtained by Lessee from a manufacturer, licensor or service provider, or other proceeds and payments due and to become due and arising from or relating to such Equipment, Software or the MLA. |
| Secretary of State, Delaware | ASSGN 11/19/2018 | 2008 1916194 05/23/2008 | | Citicorp Vendor Finance, Inc.<br><br>1255 Wrights Lane West Chester, PA 19380 | Secured Party Partial Assignment (specific equipment) to:<br><br>Citicorp Vendor Finance, Inc.<br><br>1255 Wrights Lane West Chester, PA 19380 |
| Secretary of State, Delaware | ASSGN 11/19/2018 | 2008 1916228 05/23/2008 | | Banc of America Leasing & Capital, LLC - Troy<br><br>305 W. Big Beaver, Suite 400 Troy, MI 48085 | Secured Party Partial Assignment (specific equipment) to:<br><br>Banc of America Leasing & Capital, LLC - Troy<br><br>305 W. Big Beaver, Suite 400 Troy, MI 48085 |
| Secretary of State, Delaware | CONT 11/19/2018 | 2012 4009751 10/17/2012 | | | Continuation. |

Schedule 8.4-25

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | CONT 11/19/2018 | 2017 7206867 10/31/2017 | | | Continuation. |
| Secretary of State, Delaware | UCC 11/19/2018 | 2010 4185470 11/30/2010 | PAMIDA STORES OPERATING CO., LLC<br><br>8800 F. STREET OMAHA, NE 68127 | DELL FINANCIAL SERVICES L.L.C.<br><br>MAIL STOP-PS2DF-23 ONE DELL WAY ROUND ROCK, TX 78682 | All computer equipment, peripherals, and other equipment (collectively "Equipment") wherever located, financed under and described in the Master Lease Agreement ("MLA") between Lessee and Lessor and all of Lessee's rights, title and interest in and to use any software and services (collectively "Software") financed under and described in the MLA, along with any modifications or supplements to the MLA which are incorporated or evidenced in writing and all substitutions, additions, accessions and replacements to the Equipment or Software now or hereafter installed in, affixed to, or used in conjunction with the Equipment or Software and the proceeds thereof together with all payments, insurance proceeds, credits or refunds obtained by Lessee from a manufacturer, licensor or service provider, or other proceeds and payments due and to become due and arising from or relating to such Equipment, Software or the MLA. |
| Secretary of State, Delaware | CONT 11/19/2018 | 201547345959 10/16/2015 | | | Continuation. |
| Secretary of State, Delaware | AMEND 11/19/2018 | 2013 0843525 03/05/2013 | PAMIDA STORES OPERATING CO., LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 | | Debtor information change to:<br><br>PAMIDA STORES OPERATING CO., LLC<br><br>700 PILGRIM WAY GREEN BAY, WI 54304 |
| Secretary of State, Delaware | CONT 11/19/2018 | 20170424256 01/19/2017 | | | Continuation. |
| Secretary of State, Delaware | FTL 11/19/2018 | | | | CLEAR |

Schedule 8.4-26

**SVS Trucking, LLC**

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Minnesota | UCC 11/16/2018 | 815929101340 03/09/2015 | SVS Trucking, LLC<br><br>700 Pilgrim Way<br>Green Bay, WI 54304 | Flex Financing<br><br>P.O. BOX 15270<br>Irvine, CA 92623-5270 | All equipment and other personal property, including but not limited to, furniture, fixtures and equipment subject to that certain Agreement Number LA#211267-000 dated 1/6/2015, between Secured Party as Lessor/Creditor and Debtor as Lessee/Debtor, and subject to any and all existing and future schedules entered into pursuant to and incorporating said Agreement, together with all accessories, parts, attachments and appurtenances appertaining to attached to any of the Equipment, and all substitutions, trade-ins, proceeds, renewals and replacements of, and improvements and accessions to the Equipment. LA#211267-000 |
| Secretary of State, Minnesota | ASSGN 11/16/2018 | 818604302823 03/25/2015 | | Susquchanna Commercial Finance, Inc.<br><br>2 Country View Road, Suite 300<br>Malvern, PA 19355 | Secured Party assignment to:<br><br>Susquchanna Commercial Finance, Inc.<br><br>2 Country View Road, Suite 300<br>Malvern, PA 19355 |
| Secretary of State, Minnesota | UCC 11/16/2018 | 835723800386 08/06/2015 | SVS Trucking, LLC<br><br>700 Pilgrim Way<br>Green Bay, WI 54304 | Balboa Capital Corporation<br><br>2010 Main St., Suite 1100<br>Irvine, CA 92614 | All equipment and other personal property, including but not limited to, furniture, fixtures and equipment subject to that certain Agreement Number LA# 211267-00l dated 6/11/2015, between Secured Party as Lessor/Creditor and Debtor as Lessee/Debtor, and subject to any and all existing and future schedules entered into pursuant to and incorporating said Agreement, together with all accessories, parts, attachments and appurtenances appertaining or attached to any of the Equipment, and all substitutions, trade-ins, proceeds, renewals and replacements of, and improvements and accessions to the Equipment. LA# 211267-001 |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Minnesota | ASSGN 11/16/2018 | 837035700712 08/18/2015 | | Pacific Western Equipment Finance<br><br>6975 Union Park Center, Suite 200 Cottonwood Heights, UT 84047 | Secured Party assignment to:<br><br>Pacific Western Equipment Finance<br><br>6975 Union Park Center, Suite 200 Cottonwood Heights, UT 84047 |
| Secretary of State, Minnesota | ASSGN 11/16/2018 | 889713800033 05/24/2016 | | Engs Commercial Finance Co.<br><br>P.O. Box 4062 Lisle, IL 60532-4062 | Secured Party assignment to:<br><br>Engs Commercial Finance Co.<br><br>P.O. Box 4062 Lisle, IL 60532-4062 |

Schedule 8.4-28

## **ShopKo Gift Card Co., LLC**

None.

## **Retained R/E SPE, LLC**

None.

## **Pamida Transportation, LLC**

None.

## **Place's Associates' Expansion, LLC**

None.

## **ShopKo Finance, LLC**

None.

## **SKO Group Holding, LLC**

None.

SCHEDULE 8.6
to
INFORMATION CERTIFICATE

<u>Pending Litigation</u>

None.

SCHEDULE 8.8
to
INFORMATION CERTIFICATE

<u>Environmental Compliance</u>

Shopko received a notice from the Nebraska DEQ in March, 2018, regarding the requirement to perform a Tier 1 investigation with respect to a release that occurred at a distribution center that was formerly owned by Shopko in La Vista, Nebraska. In cooperation with Shopko's environmental consultant, a work plan was submitted and samples were taken for testing. The testing revealed that petroleum concentration levels are below the NDEQ's risk-based screening levels. A 30-day public comment period is required, but after that step Shopko will pursue final closure of the matter by NDEQ.

SCHEDULE 8.10
to
INFORMATION CERTIFICATE

Deposit Accounts; Investment Accounts

(a)    Part 1 - Deposit Accounts

(i) **Non-Store Deposit Accounts**

| Name of Company | Bank Name | Bank Address | Account No. | Purpose |
|---|---|---|---|---|
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 22223044807 | Depository |
| ShopKo Stores Operating Co., LLC | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910632253 | Depository |
| ShopKo Stores Operating Co., LLC | Wells Fargo | On file with ShopKo Stores Operating Co., LLC | 4128648789 | Depository |
| ShopKo Stores Operating Co., LLC | Wachovia Back Office | On file with ShopKo Stores Operating Co., LLC | 42913108 | Receipts |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 4602292403 | Medicare Optical - Receipts |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223050366 | ACH deposit-receipts |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223069416 | Optical LBX - receipts |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2173324662 | Pharmacy LBX-receipts |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2173324647 | Pharmacy (Medicare/ Medicaid) LBX - receipts |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2173324654 | Vendor LBX - receipts |

Schedule 8.10-1

| | | | | |
|---|---|---|---|---|
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 004602290719 | Receipts |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223057528 | Receipts |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223064102 | IL Lottery Trust - receipts and clearings |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223053485 | Lottery Account - receipts and clearings |
| ShopKo Stores Operating Co., LLC | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 002223135654 | Liquor Acct - clearings |
| ShopKo Stores Operating Co., LLC | Wells Fargo | On file with ShopKo Stores Operating Co., LLC | 5000000030295 | Capital Finance |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 9428400778 | Operating |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 002220001696 | Shopko Merchandise- CD |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 002220001688 | Shopko Expense- CD |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 002220001670 | Shopko Capital Exp. - CD |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 000080216134 | SVS Trucking- CD |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 004611647337 | ADP Payroll- disbursement |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 009419400151 | Tax payments - disbursement |
| ShopKo Stores Operating Co., LLC | Bank of America | On file with ShopKo Stores Operating Co., LLC | 463-605-9586 | Prepaid Card Funding |
| ShopKo Stores Operating Co., | Bank of America | On file with ShopKo Stores Operating Co., LLC | 464-044-6347 | Fintech Liquor |

| LLC | | | | Funding |
|-----|--|--|--|---------|

    (ii) **Store Deposit Accounts**

| Name of Company | Bank Name | Bank Address | Account No. |
|-----------------|-----------|--------------|-------------|
| 001 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 002 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 003 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 004 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 005 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 007 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 008 | Associated Bank | 303 South First Avenue, Wausau, WI 54402 | 2223044807 |
| 009 | Associated Bank | 400 South Chestnut A, Marshfield, WI 5449 | 2223044807 |
| 010 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944598994 |
| 011 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4945159432 |
| 012 | Associated Bank | 303 South First Avenue, Wausau, WI 54402 | 2223044807 |
| 014 | Associated Bank | 201 Park Ave, Beaver Dam, WI 53916 | 2223044807 |
| 015 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944154111 |
| 016 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944599000 |
| 017 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 018 | Associated Bank | 401 E Kilbourn Ave, Milwaukee, WI  53202 | 2223044807 |
| 019 | Associated Bank | 633 S Church Street, Watertown, WI 53094 | 2223044807 |
| 020 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 021 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944154129 |
| 022 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910632535 |
| 023 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219500 |
| 024 | Associated Bank | 4217 Southtowne Dr, Eau Claire, WI 54701 | 2223044807 |
| 025 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4945159440 |
| 026 | Associated Bank | 612 N Main St, Rockford, IL  61103 | 2223044807 |
| 027 | Associated Bank | 5439 Durand Avenue, Suite 100, Racine, WI 53406 | 2223044807 |
| 028 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 029 | Associated Bank | 1720 Monroe Street, Madison, WI 53711 | 2223044807 |
| 030 | Associated Bank | 2720 N. Lexington Dr. Janesville, WI 53545 | 2223044807 |

| 031 | Associated Bank | 401 E Kilbourn Ave, Milwaukee, WI  53202 | 2223044807 |
| 032 | Associated Bank | 1720 Monroe Street, Madison, WI 53711 | 2223044807 |
| 033 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 035 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 036 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 037 | Associated Bank | 4217 Southtowne Dr, Eau Claire, WI 54701 | 2223044807 |
| 038 | Wells Fargo Bank | 304 West 3rd Street, Grand Island | 4944219518 |
| 039 | Wells Fargo Bank | 1248 O Street, Lincoln, NE | 4944219528 |
| 040 | US Bank | 501 Pierce Street, Sioux City, IA 51101 | 153910632543 |
| 041 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 042 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 044 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944972884 |
| 045 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944972892 |
| 047 | Wells Fargo Bank | 1248 O Street, Lincoln, NE | 4944219534 |
| 048 | Wells Fargo Bank | 304 W. 3rd Street, Norfolk, NE | 4944219542 |
| 049 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944154137 |
| 050 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 051 | Associated Bank | 1720 Monroe Street, Madison, WI 53711 | 2223044807 |
| 052 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910632295 |
| 053 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910632550 |
| 054 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4945159457 |
| 055 | Associated Bank | 303 South First Avenue, Wausau, WI 54402 | 2223044807 |
| 056 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944972918 |
| 057 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4945159465 |
| 058 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219559 |
| 059 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 060 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 061 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 062 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944922129 |

Schedule 8.10-4

| 063 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219567 |
| 064 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219575 |
| 065 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219583 |
| 066 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910632329 |
| 067 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219591 |
| 068 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219609 |
| 069 | Wells Fargo Bank | 301 Sherman, Coeur D' Alene | 4944219617 |
| 070 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910632337 |
| 072 | Wells Fargo Bank | 303 Thain Road, Lewiston, ID | 4944219625 |
| 073 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944717701 |
| 075 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944922137 |
| 076 | US Bank | 141 N. Main Avenue, Sioux Falls, SD 57104 | 153910632576 |
| 078 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944154145 |
| 079 | Associated Bank | 303 South First Avenue, Wausau, WI 54402 | 2223044807 |
| 080 | Associated Bank | 2001 Londonderry Drive, Madison, WI 53704 | 2223044807 |
| 081 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944717719 |
| 082 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219633 |
| 083 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219641 |
| 084 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219294 |
| 085 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219302 |
| 087 | Wells Fargo Bank | 260 N. Charles Lindbergh Drive, Salt Lake City Vault | 4944219328 |
| 088 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219336 |
| 089 | US Bank | 1221 N. Columbia Ctr Blvd Kennewick, WA 99336 | 153910632345 |
| 090 | Associated Bank | 1930 Wisconsin Ave, Grafton, WI 53024 | 2223044807 |
| 091 | Wells Fargo Bank | 5th South & Main Street, Logan Branch | 4944219344 |
| 092 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944717727 |

Schedule 8.10-5

| 093 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944154251 |
| 095 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219351 |
| 096 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944154293 |
| 097 | Wells Fargo Bank | 260 N. Charles Lindbergh Drive, Salt Lake City Vault | 4944219369 |
| 098 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944154277 |
| 099 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 100 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 101 | US Bank | 141 N. Main Avenue, Sioux Falls, SD 57104 | 153910632584 |
| 102 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 104 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219377 |
| 105 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219385 |
| 106 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944922145 |
| 108 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219401 |
| 109 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219419 |
| 111 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944154285 |
| 112 | US Bank | 302 N Last Chance Gulch St Helena, MT 59601 | 153910632592 |
| 113 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944717735 |
| 114 | Wells Fargo Bank | 230 W. Superior Street, Duluth | 4944219435 |
| 116 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 119 | US Bank | 98 S Galena Ave Dixon, IL 91021 | 153910632352 |
| 120 | Associated Bank | 1420 11th Street, Monroe, WI 53566 | 2223044807 |
| 122 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944717743 |
| 123 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944219450 |
| 125 | Associated Bank | 612 N Main St, Rockford, IL  61103 | 2223044807 |
| 127 | Associated Bank | 709 E Geneva Street, Delavan, WI 53115 | 2223044807 |
| 128 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4944922152 |
| 129 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910632360 |
| 130 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |

| 132 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
|-----|----------------|-----------------------------------------------|------------|
| 133 | Associated Bank | 612 N Main St, Rockford, IL  61103 | 2223044807 |
| 134 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910632386 |
| 139 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910807087 |
| 140 | US Bank | 322 W. Morton Avenue, Jacksonville, IL 62650 | 153910632394 |
| 141 | US Bank | 3104 West Avenue, Burlington, IA 52601 | 153910632402 |
| 142 | US Bank | 1704 West 2nd Street, Davenport, IA | 153910632410 |
| 145 | Wells Fargo Bank | 100 South Main Street, Monmouth, IL 61462-1752 | 4945176958 |
| 164 | US Bank | 270 W. 7th Street, Dubuque, IA, 52001 | 153910632451 |
| 170 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 171 | US Bank | 5673 US Highway 10 E., Stevens Point, WI 54481 | 153910632469 |
| 172 | Wells Fargo Bank | 1248 O Street, Lincoln, NE | 4944219484 |
| 175 | US Bank | 4000 South 27th Street, Lincoln, NE 68502 | 153910632477 |
| 177 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 178 | Associated Bank | N64 W23710 Main Street, Sussex, WI 53089 | 2223044807 |
| 179 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 214 | US Bank | 450 E Main St Wautoma, WI 54982 | 153911727490 |
| 215 | Associated Bank | 129 E Division St Shawano WI | 2223044807 |
| 501 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 502 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 503 | Associated Bank | 222 N Wisconsin St, Port Washington, WI 53074 | 2223044807 |
| 504 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 505 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 509 | Associated Bank | Bank Vault Associated Bank Green Bay, on file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 510 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 201 | Wells Fargo Bank | 1101 Broadway St Emmetsburg, IA 50536 | 4941014730 |
| 202 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153911680376 |
| 203 | US Bank | Bank Vault Dallas, TX, on file with ShopKo Stores Operating Co., LLC | 153911674833 |
| 205 | Wells Fargo Bank | 225 W Main St Delta, UT 84624 | 4466565579 |
| 206 | US Bank | Bank Vault Reno NV, on file with ShopKo Stores Operating Co., LLC | 153911680384 |
| 207 | US Bank | Bank Vault Spokane, WA, on file with ShopKo Stores Operating Co., LLC | 153911680392 |
| 211 | US Bank | US Banch branch Mason City, IA | 153911635644 |
| 212 | Bank of the West | 205 N Main St Gordon, NE 69343 | 45822616 |

| 213 | US Bank | Bank Vault Lubbock, TX, on file with ShopKo Stores Operating Co., LLC | 153911674841 |
|---|---|---|---|
| 512 | Associated Bank | 420 East Main St Ellsworth, WI 54011 | 2223044807 |
| 520 | US Bank | 1710 Market Ln Norfolk, NE 68701 | 153911325881 |
| 523 | Wells Fargo Bank | 105 N. Main St Valentine, NE 69201 | 4122285182 |
| 526 | Wells Fargo Bank | Cash vault in Salt Lake City, UT, on file with ShopKo Stores Operating Co., LLC | 4122285190 |
| 528 | Wells Fargo Bank | 12 Main St Roundup, MT 59072 | 4945732188 |
| 529 | Wells Fargo Bank | 20 N. Montana St Dillon, MT 59725 | 4122285216 |
| 532 | US Bank | 17 1st Ave SW Minot, ND 58701 | 153911089586 |
| 534 | Dacotah Bank | 15 Main Ave West Rolla, ND 58367 | 810091763 |
| 535 | Wells Fargo Bank | 13 E Divide Bowman, ND 58623 | 4128648789 |
| 536 | Grant County Bank | 201 S Main St Ulysses, KS 67880 | 008834 |
| 537 | First National Bank of Beloit | 101 E Main St Beloit, KS 67420 | 0246700 |
| 538 | Banc Central | 203 W Main St Anthony, KS 67003 | 235202 |
| 539 | Wells Fargo Bank | 11211 Pellicano Dr El Paso, TX 79935 (Lubbock TX Cash Vault) | 4941601619 |
| 540 | Wells Fargo Bank | 11211 Pellicano Dr El Paso, TX 79935 (Lubbock TX Cash Vault) | 4941601627 |
| 541 | Wells Fargo Bank | 1641 Tennessee Ave Dalhart, TX 79022 | 4128648789 |
| 542 | Wells Fargo Bank | 11211 Pellicano Dr El Paso, TX 79935 (Lubbock TX Cash Vault) | 4941601635 |
| 543 | Western Bank of Wolf Point | 111 3rd Ave South Wolf Point, MT 59201 | 1015528 |
| 544 | Wells Fargo Bank | 500 N Central Ave Sidney MT 59270 | 4128648789 |
| 545 | Wells Fargo Bank | 405 N Main St Mobridge, SD 57601 | 4128648789 |
| 546 | Bank of the West | 502 14 St Burlington, CO 80807 | 036917476 |
| 547 | First National Bank of Moose Lake | 400 Elm Ave Moose Lake, MN 55767 | 84172201 |
| 548 | United Valley Bank | 103 N. Main Mahnomen, MN 56557 | 134201 |
| 549 | Little Horn State Bank | 618 N Center Ave Hardin, MT 59034 | 3051033018 |
| 550 | Wells Fargo Bank | 20 N Montana St Dillon, MT 59725 | 4128648789 |
| 551 | DeMotte State Bank | 210 S Halleck St DeMotte, IN 46310 | 1049403 |
| 552 | First State Bank of North Dakota | 620 Main Ave Oakes, ND 58474 | 5505796 |
| 553 | First Bank of Kansas | 1410 N. Buckeye Abilene, KS 67410 | 0007385692 |
| 554 | Wells Fargo Bank | 11211 Pellicano Dr El Paso, TX 79935 (Lubbock TX Cash Vault) | 4941595886 |
| 555 | Wells Fargo Bank | 4 N Main St Moab, UT 84532 | 4128648789 |

| 556 | US Bank | 1022 Meade Ave Prosser, WA 99350 | 153911258926 |
| 557 | US Bank | 1070 W Parkway Ave Salt Lake City, UT 84119 (Salt Lake City Cash Vault) | 153911259759 |
| 558 | Wells Fargo Bank | 25 W 6th Ave Redfield, SD 57469 | 4128648789 |
| 559 | US Bank | 428 W Riverside Ave Spokane, WA 99201(Spokane WA Vault) | 153911258124 |
| 560 | Farmers & Merchants National Bank | 312 N Main St Fairview, OK 73737 | 223492 |
| 561 | Wells Fargo Bank | 1200 Energy Park Dr St Paul, MN 55108 (St Paul MN Cash Vault) | 4941122301 |
| 562 | US Bank | 1200 Energy Park Dr St Paul, MN 55108 (St Paul MN Cash Vault) | 153911258934 |
| 563 | US Bank | 1 S Pinckney St Madison, WI 53703 (Madison WI Cash Vault) | 153911259767 |
| 564 | US Bank | 714 E 2nd St Des Moines, IA 50309 (Des Moines IA Cash Vault) | 153911258967 |
| 565 | Wells Fargo Bank | 1700 Farnam St Omaha, NE 68102 (Omaha Cash Vault) | 4940918527 |
| 566 | Security State Bank | 502 Lake St NE Warroad, MN 56763 | 025668 |
| 567 | Wells Fargo Bank | 1200 Energy Park Dr St Paul, MN 55108 (St Paul MN Cash Vault) | 4942836669 |
| 568 | US Bank | 111 Central Ave N New Prague, MN 56071 | 153911089578 |
| 569 | Wells Fargo Bank | 402 S Main St Milbank, SD 57252 | 4128648789 |
| 570 | First Dakota National Bank | 10 High Ave SW Wagner, SD 57380 | 50031317 |
| 571 | Great Western Bank | 1301 Main St Webster, SD 57274 | 13481188 |
| 572 | Wells Fargo Bank | 1515 Arapahoe St Denver, CO 80202 (Denver Cash Vault) | 4942836677 |
| 573 | Wells Fargo Bank | 1700 Farnam St Omaha, NE 68102 (Omaha Cash Vault) | 4942836685 |
| 574 | Wells Fargo Bank | 601 Lively Blvd Elk Grove Village, IL 60007 (Chicago Cash Vault) | 4942836693 |
| 575 | US Bank | 11211 Pellicano Dr El Paso, TX 79935 (Lubbock TX Cash Vault) | 153911089560 |
| 576 | US Bank | 11114 Cedar Park Ave Baton Rouge, LA (Baton Rouge LA Vault) | 153911259775 |
| 577 | US Bank | 2909 Ave C Lubbock, TX 79404 (Lubbock TX Cash Vault) | 153911258942 |
| 578 | US Bank | 1515 Arapahoe St Denver, CO 80202 (Denver Cash Vault) | 153911259783 |
| 579 | TBK Bank | 615 W 8th Ave Yuma, CO 80759 | 1854754528 |
| 580 | Wells Fargo Bank | 1200 Energy Park Dr St Paul, MN 55108 (St Paul MN Cash Vault) | 4940918535 |

Schedule 8.10-9

| 581 | US Bank | 902 Main St Lisbon, ND 58054 | 153910632253 |
|---|---|---|---|
| 582 | 1st Presidio Bank | 601 North Erma Presidio, TX 79845 | 308339 |
| 583 | Wells Fargo Bank | 55 S. Main St Blanding, UT 84511 | 4128648789 |
| 584 | Wells Fargo Bank | 6764 Main St Bonners Ferry, ID | 4466565561 |
| 585 | US Bank | 212 W Caldeonia Ave Hillsboro, ND 58045 | 153911325899 |
| 586 | Wells Fargo Bank | 21 W 21st St Kearney, NE 68847 | 4942351594 |
| 587 | US Bank | 600 Chestnut St Atlantic, IA 50022 | 153911325907 |
| 588 | Wells Fargo Bank | 640 N. Main St Beaver, UT 84713 | 4942351586 |
| 589 | US Bank | 300 N Main St Stewartville, MN 55976 | 153911325915 |
| 592 | US Bank | 405 N Hwy 171 Godley, TX 76044 | 153911325923 |
| 594 | Wells Fargo Bank | 201 S. Main Street, in Chamberlain | 4926841032 |
| 596 | Wells Fargo Bank | 317 E. 4th Street in Dell Rapids. | 4926841040 |
| 597 | US Bank | US Bank cash vault in Omaha, NE, on file with ShopKo Stores Operating Co., LLC | 153911629001 |
| 598 | US Bank | 1551 E White Mountain Blvd Pinetop, AZ 85935 | 153911325949 |
| 600 | US Bank | 110 W 4th St Vinton, IA 52349 | 153911325873 |
| 601 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 602 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 604 | Associated Bank | 607 E Spruce Street, Abbotsford, WI 54405 | 2223044807 |
| 605 | Associated Bank | On file with ShopKo Stores Operating Co., LLC | 2223044807 |
| 606 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4947823860 |
| 607 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 608 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 609 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 610 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4947823878 |
| 611 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 613 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 615 | Bank First | 135 S Main St Clintonville, WI 54929 | 23200 |
| 616 | Associated Bank | 10440 Townline Dr Sister Bay, WI 54234 | 2223044807 |
| 617 | US Bank | 450 E Main St Wautoma, WI 54982 | 153910810362 |
| 618 | Associated Bank | 750 Viking Dr Reedsburg, WI 53959 | 2223044807 |
| 619 | Adams Community Bank | 501 N. Main St. Adams, WI 53910 | 5135204 |
| 620 | Associated Bank | 711 N. Railroad St Eagle River, WI 54521 | 2223044807 |
| 621 | mBank | Po Box 369 Manistique, MI 49854 | 209457 |
| 622 | People State Bank | 100 E Superior St Munising, MI 49862 | 0027169 |
| 623 | Miners State Bank | Po Box 351 Iron River, MI 49935 | 8180309 |
| 624 | Superior National Bank & Trust | 1 E Broad St L'Anse, MI 49946 | 909101775 |
| 625 | American Trust & Savings | Po Box 307 Dyersville, IA 52040 | 2357502638 |

Schedule 8.10-10

| 626 | First National Bank of Platteville | 10 Keystone Pkwy Platteville, WI 53818 | 125890 |
|---|---|---|---|
| 627 | Associated Bank | 509 N Grand Av Neillsville, WI 54456 | 2223044807 |
| 628 | Wells Fargo Bank | 622 1st Ave Two Harbors, MN 55616 | 4126124064 |
| 629 | Wells Fargo Bank | 104 E. Chapman St Ely, MN 55731 | 4126124072 |
| 630 | State Bank of Arcadia | 131 West Main St Arcadia,WI 54612 | 115756 |
| 632 | Johnson Bank | Po Box 129 Spooner, WI 54801 | 1001507398 |
| 633 | Associated Bank | 1156 4th Ave South Park Falls, WI 54552 | 2223044807 |
| 635 | Savanna Thomson State Bank | 302 Main St Savanna, IL 61074 | 318652 |
| 637 | The Fountain Trust Company | 427 E Main Attica, IN 47918 | 0411849901 |
| 638 | Central Illinois Bank | 204 S Market St Monticello, IL 61856 | 1283154 |
| 639 | Fountain Trust | 1250 North Lincoln Rd Rockville, IN 47872 | 0929873901 |
| 640 | Arcola/Tuscola First National Bank | 127 South Oak Arcola, IL 61910 | 10013555 |
| 641 | First National Bank of Dwight | 122 W Main St Dwight, IL 60420 | 319108 |
| 642 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4943567214 |
| 643 | Choice One Bank | 246 W River Valley Dr Newaygo, MI 49337 | 71006185 |
| 644 | Firstbank | 806 N McEwan Clare, MI 48617 | 2810144945 |
| 646 | Chemical Bank and Trust Co. | Po Box 696 Standish, MI 48658 | 2550397117 |
| 647 | Lake City Bank | 502 South Hungtington St Syracuse, IN 46567 | 1011415615 |
| 648 | Old National Bank | 1208 W Chicago Blvd Tecumseh, MI 49286 | 1100050113 |
| 649 | Tri-County Bank | 6730 Newark Rd Imlay City, MI 48444 | 497281 |
| 650 | Wells Fargo Bank | On file with ShopKo Stores Operating Co., LLC | 4943567222 |
| 651 | West Shore Bank | Po Box 151 Hart, MI 49420 | 20019556 |
| 652 | CP Federal Credit Union | 400 Main St Brooklyn, MI 49230 | 8158543 |
| 653 | Chemical Bank | 1016 E Cedar Ave Gladwin, MI 48624 | 2550396820 |
| 656 | Northwestern Bank | Po Box 120 Kalkaska, MI 49646 | 610265042 |
| 658 | US Bank | 200 N. 6th St Beatrice, NE 68310 | 153910810388 |
| 659 | US Bank | 1301 J St Auburn, NE 68305 | 153910863817 |
| 661 | Wells Fargo Bank | 142 S Main St West Point, NE 68788 | 4126124080 |
| 662 | Sac Federal Credit Union | Po Box 1149 Bellevue, NE 68005 | 2300291954613 |
| 664 | US Bank | 701 Summer Ave Humboldt, IA 50548 | 153910841037 |
| 665 | First National Bank of Hampton | 211 First Ave N.W. Hampton, IA 50441 | 2641291 |

| 667 | Northwestern Bank | 934 3rd Ave Sheldon, IA 51201 | 147737 |
| 668 | Bank Iowa | 606 W. Milwaukee St New Hampton, IA 50659 | 3000212937 |
| 669 | Fidelity Bank | 201 S Frederick Ave Oelwein, IA 50692 | 88003124 |
| 670 | State National Bank & Trust | 122 Main St Wayne, NE 68787 | 584142 |
| 671 | Waukon State Bank | 22 West Main St Waukon, IA 52172 | 214051 |
| 672 | Great Western Bank | 702 E Douglas O'Neill, NE 68763 | 11224110 |
| 673 | First National Bank (Ainsworth) | PO Box 45 Ainsworth, NE 69210 | 766139 |
| 674 | Wells Fargo Bank | 119 Central Ave West Clarion, IA 50525 | 4945721694 |
| 675 | Farmers & Merchants State Bank | 101 West Jefferson Winterset, IA 50273 | 025283 |
| 676 | Great Western Bank | 201 N. Main Chariton, IA 50049 | 11224161 |
| 677 | US Bank | 1030 10th St Onawa, IA 51040 | 153910841045 |
| 679 | State Bank of Toledo | Po Box 309 Toledo, IA 52342 | 201278 |
| 680 | Wells Fargo Bank | 1224 1st Ave Perry, IA 50220 | 4945721686 |
| 681 | First State Bank (Ida Grove) | 200 Moorehead Ave Ida Grove, IA 51445 | 151696 |
| 682 | Shelby County State Bank | 508 Court St Harlan, IA 51537 | 0959502 |
| 683 | Audubon State Bank | Po Box 149 Audubon, IA 50025 | 262178 |
| 684 | Bank of the West | 105 N. Washington St Bloomfield, IA | 028303172 |
| 685 | Great Western Bank | 11 North First Ave Marshalltown, IA 50158 | 11224209 |
| 686 | Great Western Bank | 201 S Locust St Glenwood, IA 51534 | 11224217 |
| 687 | First National Bank (Greenfield IA) | 101 NE Hayes Greenfield, IA 50849 | 90029414 |
| 688 | Great Western Bank | 205 E Erie St Missouri Valley, IA 51555 | 11224065 |
| 689 | Great Western Bank | 100 E. South St Mount Ayr, IA 50854 | 11224081 |
| 690 | Great Western Bank | 321 Burlington St Holdrege, NE 68949 | 11224153 |
| 691 | Pinnacle Bank | Po Box 179 Ogallala, NE 69153 | 2900452056 |
| 692 | Central National Bank | Po Box 268 Superior, NE 68978 | 251500740 |

Schedule 8.10-12

| 693 | Union State Bank | PO Box 518 Clay Center, KS 67432 | 1019791 |
|---|---|---|---|
| 694 | Wells Fargo Bank | 1204 W 3rd Alliance, NE 69301 | 4945721702 |
| 695 | Nebraska State Bank | Po Box 688 Broken Bow, NE 68822 | 387185 |
| 696 | The First State Bank (Norton) | PO Box 560 Norton, KS 67654 | 103 071 7 |
| 697 | United Bank & Trust | PO Box 208 Seneca, KS 66538 | 1430259860 |
| 698 | 1st State Bank (Gothenburg) | 914 Lake Ave Gothenburg, NE 69138 | 332168 |
| 699 | First National Bank (Scott City) | 501 Main St Scott City, KS 67871 | 1142550 |
| 700 | Points West community Bank | 201 S Chestnut St Kimball, NE 69145 | 30311724 |
| 701 | First Bank of Lyon | PO Box 60 Lyons, KS 67554 | 083550 |
| 702 | American State Bank and Trust Co. | 320 Broadway Larned, KS 67550 | 28002 |
| 703 | Central National Bank | Po Box 185 Burlington, KS 66839 | 355001179 |
| 704 | Great Western Bank | 114 W 15th St Falls City, NE 68355 | 11224073 |
| 705 | US Bank | 1801 E 9th St Trenton, MO 64683 | 153910806048 |
| 706 | US Bank | 1407 Walnut St Doniphan, MO 63935 | 153910806030 |
| 707 | Great Western Bank | 224 West Wood St Albany, MO 64402 | 11224196 |
| 708 | Carroll County Trust | 2 South Folger Carrollton, MO 64633 | 355-436-9 |
| 709 | Mid-Missouri Bank | 118 Hwy 54 West El Dorado Springs, MO 64744 | 261132156 |
| 710 | Bethany Trust Co. | 3606 Miller Bethany, MO 64424 | 1025001 |
| 711 | Exchange Bank of NE MO | 304 E Grand Ave Memphis, MO 63555 | 0704080287 |
| 716 | First National Bank of Allendale | 301 East Main Allendale, IL 62410 | 1192210 |
| 717 | Consumer National Bank | 614 E Lincoln Way Minerva, OH 44657 | 102037664 |
| 719 | The Citizens National Bank | Po Box 230 Woodsfield, OH 43793 | 10-18560 |
| 720 | FNC Bank | 1060 State Rd 229 N Batesville, IN 47006 | 10168162 |
| 729 | First Federal Savings Bank | Po Box 307 Brandenburg, KY 40108 | 702720020 |
| 732 | Security Bank & Trust Co. | 735 11th St E Glencoe, MN 55336 | 00-1984-4 |
| 733 | US Bank | 501 W Lincoln Ave Fergus Falls, MN 56537 | 153910832721 |
| 734 | United Valley | Po Box 170 Cavalier, ND 58220 | 6841021140 |

Schedule 8.10-13

| | Bank | | |
|---|---|---|---|
| 735 | Security State Bank | 402 Minnesota Ave N Aitkin, MN 56431 | 1023781 |
| 736 | US Bank | 220 4th St NE Valley City, ND 58072 | 153910839643 |
| 737 | US Bank | 1038 Hill Ave Grafton, ND 58237 | 153910839619 |
| 738 | United Community Bank | 301 West Main St Perham, MN 56573 | 320397 |
| 739 | Glenwood State Bank | 5 E Minnesota Ave Glenwood, MN 56334 | 1011428 |
| 740 | United Farmers & Merchants | 4 Atlantic Ave Morris, MN 56267 | 815829 |
| 741 | Merchants Bank | 210  South Main Ave Rugby, ND 58368 | 309227 |
| 742 | US Bank | 314 14th St NE East Grand Forks, MN 56721 | 153910832713 |
| 743 | US Bank | 113 1st Ave NW Beulah, ND 58523 | 153910839627 |
| 744 | Citizens State Bank | Po Box 160 Roseau, MN 56751 | 026708 |
| 745 | Wells Fargo Bank | 425 S. Main St Winner, SD 57580 | 4946324985 |
| 746 | Great Western Bank | 301 N. Egan Ave Madison, SD 57042 | 11224145 |
| 747 | First Farmers & Merchants Bank | PO Box 989 Luverne, MN 56156 | 4581026744 |
| 748 | First Bank & Trust | 101 NW Second St Pipestone, MN 56164 | 4100113320 |
| 749 | Pioneer Bank | 123 Armstrong Blvd. S St James, MN 56081 | 2105411 |
| 750 | United Prairie Bank | 1545 1st Ave Windom, MN 56101 | 20300005143 |
| 751 | Wells Fargo Bank | 501 Veterans Ave Sisseton, SD 57262 | 4946324993 |
| 752 | US Bank | 2034 W B St Torrington, WY 82240 | 153910839635 |
| 753 | Wells Fargo Bank | 101 S Chicago St Hot Springs, SD 57747 | 4945684348 |
| 755 | Wells Fargo Bank | 874 Gilchrist St Wheatland, WY 82201 | 4945684363 |
| 756 | US Bank | 505 Main St Lander, WY 82520 | 153910841052 |
| 757 | Wells Fargo Bank | 600 State St Belle Fourche, SD 57717 | 4945684355 |
| 758 | Points West Community Bank | 1632 E Richards Douglas, WY 82633 | 90909706 |
| 759 | Wells Fargo Bank | 1040 Main St Sturgis, SD 57785 | 4945721710 |
| 760 | US Bank | 285 Uinta Dr Green River, WY 82935 | 153910841060 |
| 761 | First State Bank of Newcastle | 24 N Sumner Newcastle, WY 82701 | 166-113 |
| 762 | Central Bank & Trust | 435 Arapahoe St. Thermopolis, WY 82443 | 126287 |
| 763 | Black Hills Federal Credit Union | PO Box 1420 Rapid City, SD 57709 | 141899002 |
| 764 | First National Bank of Buffalo | 141 S Main St Buffalo, WY 82834 | 11501952 |
| 765 | Wells Fargo Bank | 111 W Owen Ave Lyman, WY 82937 | 4945721728 |
| 766 | US Bank | 301 Main St Shelby, MT 59474 | 153910832705 |

| 767 | US Bank | 100 S 15th St Worland, WY 82401 | 153910839601 |
| 768 | Wells Fargo Bank | 623 2nd Ave S Glasgow, MT 59230 | 4946324969 |
| 769 | Wells Fargo Bank | 101 2nd Ave SW Sidney, MT 59270 | 4946324977 |
| 771 | Stockman Bank | Po Box 384 Plentywood, MT 59254 | 3110003139 |
| 772 | Wells Fargo Bank | 102 E 2nd St Powell, WY 82435 | 4945684371 |
| 773 | Wells Fargo Bank | 404 W Broadway St Lewistown, MT 59457 | 4945684322 |
| 774 | Wells Fargo Bank | 323 W Park St Livingston, MT 59047 | 4945684330 |
| 775 | First Montana Bank | 504 Mineral Ave Libby, MT 59923 | 102266458 |
| 776 | Bank of Greybull | 601 Greybull Ave Greybull, WY 82426 | 0610001859 |
| 786 | Houghton State Bank | 116 E Coolbaugh Red Oak, IA 51566 | 292494 |
| 788 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 789 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 790 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 791 | Titonka Savings Bank | 101 Highway 69 N. Forest City, IA 50436 | 200102504 |
| 792 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 793 | Associated Bank | 200 N. Adams Green Bay, WI 54307 | 2223044807 |
| 794 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153910932885 |
| 795 | US Bank | On file with ShopKo Stores Operating Co., LLC | 153911084397 |
| 796 | Associated Bank | 2665 Commerce Dr NW Rochester MN | 2223044807 |
| 797 | US Bank | 428 W Riverside Ave Spokane, WA 99201(Spokane WA Vault) | 153911259791 |
| 798 | Wells Fargo Bank | 10 N 200 E Roosevelt, UT 84066 | 4128648789 |
| 799 | Wells Fargo Bank | 140 W Main St Tremonton, UT 84337 | 4128648789 |

(b)    Part 2 - Investment and Other Accounts

| Name of Company | Name and Address of Broker or Other Institution | Account No. | Purpose | Types of Investments |
|---|---|---|---|---|

None.

SCHEDULE 8.11
to
INFORMATION CERTIFICATE

<u>Intellectual Property</u>

**Trademark Registrations and Applications**

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|---|---|---|---|---|
| NORTHCREST | U.S. | 88209058 11/28/2018 | — | ShopKo Stores Operating Co., LLC |
| TRIMMERRY | U.S. | 87348580 2/24/2017 | — | ShopKo Stores Operating Co., LLC |
| ENVISION STUDIO | U.S. | 87348690 2/24/2017 | 5649914 1/8/2019 | ShopKo Stores Operating Co., LLC |
| GREEN SODA | U.S. | 88041415 7/17/2018 | — | ShopKo Stores Operating Company, LLC |
| SHOPKO REWARDS | U.S. | 88000210 6/14/2018 | — | ShopKo Stores Operating Co., LLC |
| SIMPLE. FRIENDLY. LOCAL. | U.S. | 87932024 5/22/2018 | — | ShopKo Stores Operating Co., LLC |
| A&I | U.S. | 87831901 3/13/2018 | — | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE | U.S. | 87825664 3/8/2018 | — | ShopKo Stores Operating Co., LLC |
| STUDIO BY ENERGY ZONE | U.S. | 87693201 11/21/2017 | — | ShopKo Stores Operating Co., LLC |
| SHOPKO MARKET | U.S. | 87418247 4/20/2017 | — | ShopKo Stores Operating Co., LLC |

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|---|---|---|---|---|
| A&I and Design  | U.S. | 87386469 3/27/2017 | — | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE | U.S. | 87373248 3/16/2017 | — | ShopKo Stores Operating Co., LLC |
| PEANUT & OLLIE | U.S. | 87348565 2/24/2017 | — | ShopKo Stores Operating Co., LLC |
| CELEBRATE THE SEASON | U.S. | 87348590 2/24/2017 | — | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE and Design  | U.S. | 87348679 2/24/2017 | — | ShopKo Stores Operating Co., LLC |
| CLUB GRAND | U.S. | 87348770 2/24/2017 | — | ShopKo Stores Operating Co., LLC |
| SHOPKO | U.S. | 87340313 2/17/2017 | — | ShopKo Stores Operating Co., LLC |
| SHOPKO GOOD CHOICES | U.S. | 87139991 8/16/2016 | — | ShopKo Stores Operating Co., LLC |
| 7TH SENSE | U.S. | 87547377 7/28/2017 | 5571806 9/25/2018 | ShopKo Stores Operating Co., LLC |
| WILDPACK | U.S. | 87547554 7/28/2017 | 5596802 10/30/2018 | ShopKo Stores Operating Co., LLC |

Schedule 8.11-2

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|------|--------------|-------------------------|---------------------|--------------------------|
| A&I and Design  | U.S. | 87979065 3/27/2017 | 5634675 12/18/2018 | ShopKo Stores Operating Co., LLC |
| A&I | U.S. | 87978610 3/27/2017 | 5597650 10/30/2018 | ShopKo Stores Operating Co., LLC |
| A&I | U.S. | 87377825 3/20/2017 | 5633553 12/18/2018 | ShopKo Stores Operating Co., LLC |
| A&I | U.S. | 87978426 3/20/2017 | 5582431 10/9/2018 | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE | U.S. | 87977912 3/16/2017 | 5526448 7/24/2018 | ShopKo Stores Operating Co., LLC |
| ENVISION STUDIO | U.S. | 87978060 2/24/2017 | 5547607 8/21/2018 | ShopKo Stores Operating Co., LLC |
| URBANOLOGY | U.S. | 87348559 2/24/2017 | 5623334 12/4/2018 | ShopKo Stores Operating Co., LLC |
| STUDIO BY ENERGY ZONE | U.S. | 87348539 2/24/2017 | 5392923 1/30/2018 | ShopKo Stores Operating Co., LLC |
| BAILEY'S PT. | U.S. | 87348598 2/24/2017 | 5509393 7/3/2018 | ShopKo Stores Operating Co., LLC |
| NORTHCREST and Design  | U.S. | 87348709 2/24/2017 | 5644150 1/1/2019 | ShopKo Stores Operating Co., LLC |

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|---|---|---|---|---|
| EZ ENERGY ZONE in Stylized Letters  | U.S. | 87348718 2/24/2017 | 5318819 10/24/2017 | ShopKo Stores Operating Co., LLC |
| NORTHCREST | U.S. | 87348729 2/24/2017 | 5644151 1/1/2019 | ShopKo Stores Operating Co., LLC |
| ENERGY ZONE | U.S. | 87348751 2/24/2017 | 5607747 11/13/2018 | ShopKo Stores Operating Co., LLC |
| HOTEL BY CLUB GRAND | U.S. | 87348783 2/24/2017 | 5591068 10/23/2018 | ShopKo Stores Operating Co., LLC |
| NORTHCREST and Design  | U.S. | 87977826 2/24/2017 | 5526424 7/24/2018 | ShopKo Stores Operating Co., LLC |
| TRIMMERY | U.S. | 87977719 2/24/2017 | 5537405 8/7/2018 | ShopKo Stores Operating Co., LLC |
| URBANOLOGY | U.S. | 87977529 2/24/2017 | 5510074 7/3/2018 | ShopKo Stores Operating Co., LLC |
| CLUB GRAND | U.S. | 87977185 2/24/2017 | 5460860 5/1/2018 | ShopKo Stores Operating Co., LLC |
| CELEBRATE THE SEASON | U.S. | 87977956 2/24/2017 | 5547595 8/21/2018 | ShopKo Stores Operating Co., LLC |
| HOTEL BY GRAND CLUB | U.S. | 87977184 2/24/2017 | 5460859 5/1/2018 | ShopKo Stores Operating Co., LLC |
| NORTHCREST | U.S. | 87977751 2/24/2017 | 5515649 7/10/2018 | ShopKo Stores Operating Co., LLC |

Schedule 8.11-4

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|------|--------------|-------------------------|---------------------|-------------------------|
| HOMETOWN VALUE and Design  | U.S. | 87978457 2/24/2017 | 5588210 10/16/2018 | ShopKo Stores Operating Co., LLC |
| ENERGY ZONE | U.S. | 87977528 2/24/2017 | 5499650 6/19/2018 | ShopKo Stores Operating Co., LLC |
| CLUB GRAND | U.S. | 87978562 2/24/2017 | 5608753 11/13/2018 | ShopKo Stores Operating Co., LLC |
| PEANUT & OLLIE | U.S. | 87976665 2/24/2017 | 5439892 4/3/2018 | ShopKo Stores Operating Co., LLC |
| SHOPKO | U.S. | 87977467 2/17/2017 | 5504975 6/26/2018 | ShopKo Stores Operating Co., LLC |
| SHOPKO PANTRY | U.S. | 87314838 1/26/2017 | 5325735 10/31/2017 | ShopKo Stores Operating Co., LLC |
| SHOPKO BUCKS | U.S. | 87271768 12/16/2016 | 5419383 3/6/2018 | ShopKo Stores Operating Co., LLC |
| SHOPKO | U.S. | 87269564 12/15/2016 | 5245182 7/18/2017 | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE | U.S. | 87211170 10/21/2016 | 5366058 12/26/2017 | ShopKo Stores Operating Co., LLC |

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|---|---|---|---|---|
| STUDIO BY ENERGY ZONE and Design  | U.S. | 87041267 5/18/2016 | 5370898 1/2/2018 | ShopKo Stores Operating Co., LLC |
| CELEBRATE THE SEASON | U.S. | 86748505 9/4/2015 | 5069882 10/25/2016 | ShopKo Stores Operating Co., LLC |
| OUR CUSTOMERS COUNT | U.S. | 86728315 8/18/2015 | 5120463 1/10/2017 | ShopKo Stores Operating Co., LLC |
| REWARDS COUNT | U.S. | 86727347 8/17/2015 | 5023991 8/16/2016 | ShopKo Stores Operating Co., LLC |
| SHOPKO CASH | U.S. | 86727368 8/17/2015 | 5023992 8/16/2016 | ShopKo Stores Operating Co., LLC |
| SHOPKO THE STUFF THAT COUNTS EST. 1962 and Design  | U.S. | 86658424 6/10/2015 | 5142506 2/14/2017 | ShopKo Stores Operating Co., LLC |
| THE STUFF THAT COUNTS | U.S. | 86656724 6/9/2015 | 5004744 7/19/2016 | ShopKo Stores Operating Co., LLC |

Schedule 8.11-6

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|---|---|---|---|---|
| SHOPKO THE STUFF THAT COUNTS EST. 1962 and Design  | U.S. | 86656776 6/9/2015 | 5105881 12/20/2016 | ShopKo Stores Operating Co., LLC |
| ASHER & IVY | U.S. | 86456049 11/17/2014 | 4768588 7/7/2015 | ShopKo Stores Operating Co., LLC |
| HOMETOWN PANTRY | U.S. | 86317383 6/23/2014 | 4765853 6/30/2015 | ShopKo Stores Operating Co., LLC |
| WILLOW BAY | U.S. | 86306719 6/11/2014 | 4671428 1/13/2015 | ShopKo Stores Operating Co., LLC |
| TREND.SPIRE | U.S. | 86976680 6/9/2014 | 4787531 8/4/2015 | ShopKo Stores Operating Co., LLC |
| SHOPKO CASH GRAB | U.S. | 86304276 6/9/2014 | 4809729 9/8/2015 | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE | U.S. | 85902271 4/12/2013 | 4569383 7/15/2014 | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE | U.S. | 85979954 5/17/2012 | 4412346 10/1/2013 | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE | U.S. | 85628076 5/17/2012 | 4704111 3/17/2015 | ShopKo Stores Operating Co., LLC |
| TOSS & TURN | U.S. | 85627094 5/16/2012 | 4314751 4/2/2013 | ShopKo Stores Operating Co., LLC |
| SHOPKO HOMETOWN | U.S. | 85148148 10/8/2010 | 3988889 7/5/2011 | ShopKo Stores Operating Co., LLC |

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|------|--------------|-------------------------|---------------------|-------------------------|
| TRIMMERY | U.S. | 85013609 4/14/2010 | 3967671 5/24/2011 | ShopKo Stores Operating Co., LLC |
| GOURMETLIVING | U.S. | 85975728 4/14/2010 | 4057731 11/15/2011 | ShopKo Stores Operating Co., LLC |
| GOURMETLIVING | U.S. | 85013919 4/14/2010 | 4238110 11/6/2012 | ShopKo Stores Operating Co., LLC |
| BAILEY'S PT. | U.S. | 77898045 12/21/2009 | 3921778 2/22/2011 | ShopKo Stores Operating Co., LLC |
| SOFT SENSATIONS | U.S. | 77828990 9/17/2009 | 3784156 5/4/2010 | ShopKo Stores Operating Co., LLC |
| ENVISION STUDIO | U.S. | 77759466 6/15/2009 | 3838981 8/24/2010 | ShopKo Stores Operating Co., LLC |
| PEANUT & OLLIE | U.S. | 77742538 5/21/2009 | 3832839 8/10/2010 | ShopKo Stores Operating Co., LLC |
| SHOPKO | U.S. | 77639130 12/23/2008 | 3650890 7/7/2009 | ShopKo Stores Operating Co., LLC |
| EZ ENERGY ZONE and  Design | U.S. | 77639142 12/23/2008 | 3650891 7/7/2009 | ShopKo Stores Operating Co., LLC |
| PEANUT & OLLIE and  Design | U.S. | 77426129 3/19/2008 | 3644548 6/23/2009 | ShopKo Stores Operating Co., LLC |

Schedule 8.11-8

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|------|--------------|-------------------------|---------------------|-------------------------|
| PEANUT & OLLIE | U.S. | 77426134 3/19/2008 | 3644550 6/23/2009 | ShopKo Stores Operating Co., LLC |
| MY SHOPKO REWARDS[8] | U.S. | 77151599 4/9/2007 | 3477556 7/29/2008 | ShopKo Stores Operating Co., LLC |
| SHOPKO | U.S. | 77261833 8/22/2007 | 3547779 12/16/2008 | ShopKo Stores Operating Co., LLC |
| SHOPKO in Stylized SHOPKO Letters | U.S. | 77153193 4/10/2007 | 3502417 9/16/2008 | ShopKo Stores Operating Co., LLC |
| GREEN SODA | U.S. | 76604075 7/26/2004 | 3109799 6/27/2006 | ShopKo Stores Operating Co., LLC |
| NORTHCREST HOME in Stylized Letters NORTHCREST HOME | U.S. | 76599207 6/21/2004 | 3043724 1/17/2006 | ShopKo Stores Operating Co., LLC |
| EERIE ALLEY | U.S. | 76571820 1/26/2004 | 3008257 10/25/2005 | ShopKo Stores Operating Co., LLC |
| STUDIO A | U.S. | 76533115 7/28/2003 | 3004765 10/4/2005 | ShopKo Stores Operating Co., LLC |
| SHOPKO EXPRESS RX | U.S. | 76529304 7/14/2003 | 2972029 7/19/2005 | ShopKo Stores Operating Co., LLC |
| URBANOLOGY | U.S. | 76976052 6/5/2002 | 2841380 5/11/2004 | ShopKo Stores Operating Co., LLC |
| WONDERLIGHT PLUS | U.S. | 76078671 6/22/2000 | 2538654 2/12/2002 | ShopKo Stores Operating Co., LLC |

[8] Has been abandoned and may not be valid or enforceable.  Registration will be abandoned on 1/29/2019.

| Mark | Jurisdiction | Serial No./ Filing Date | Reg. No./ Reg. Date | Current Owner of Record |
|------|--------------|-------------------------|---------------------|-------------------------|
| WONDERLIGHT PLUS | U.S. | 76078673 6/22/2000 | 2611538 8/27/2002 | ShopKo Stores Operating Co., LLC |
| NORTHCREST | U.S. | 75366035 9/30/1997 | 2274947 8/31/1999 | ShopKo Stores Operating Co., LLC |
| NORTHCREST | U.S. | 75978474 7/24/1997 | 2339297 4/4/2000 | ShopKo Stores Operating Co., LLC |
| ENERGY ZONE | U.S. | 75976839 5/2/1996 | 2159748 5/19/1998 | ShopKo Stores Operating Co., LLC |
| SOFT SENSATIONS | U.S. | 74600116 11/17/1994 | 2016241 11/12/1996 | ShopKo Stores Operating Co., LLC |
| HOMETOWN VALUE | U.S. | 74473449 12/27/1993 | 2012231 10/29/1996 | ShopKo Stores Operating Co., LLC |
| SHOPKO | U.S. | 74441207 9/28/1993 | 1847974 8/2/1994 | ShopKo Stores Operating Co., LLC |
| NORTHCREST | U.S. | 74250183 2/27/1992 | 1820673 2/8/1994 | ShopKo Stores Operating Co., LLC |
| WILLOW BAY | U.S. | 74250192 2/27/1992 | 1841376 6/21/1994 | ShopKo Stores Operating Co., LLC |
| SHOPKO | U.S. | 73581403 2/5/1986 | 1408068 9/2/1986 | ShopKo Stores Operating Co., LLC |
| PAMIDA | U.S. | 73152084 12/14/1977 | 1124616 9/4/1979 | Pamida Stores Operating Co., LLC |

SCHEDULE 8.12
to
INFORMATION CERTIFICATE

<u>Subsidiaries; Affiliates; Investments</u>

(a)    <u>Subsidiaries</u> (More than 50% owned by Company indicated)

| <u>Company</u> | <u>Subsidiary</u> | Jurisdiction of <u>Incorporation</u> | Percentage <u>Owned</u> |
|---|---|---|---|
| Specialty Retail Shops Holding Corp. | ShopKo Finance, LLC | Delaware | 100% |
| Specialty Retail Shops Holding Corp. | ShopKo Holding Company, LLC | Wisconsin | 100% |
| ShopKo Holding Company, LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |
| ShopKo Holding Company, LLC | Retained R/E SPE, LLC | Delaware | 100% |
| ShopKo Stores Operating Co., LLC | ShopKo Properties, LLC | Minnesota | 100% |
| ShopKo Stores Operating Co., LLC | Pamida Stores Operating Co., LLC | Delaware | 100% |
| ShopKo Stores Operating Co., LLC | Penn-Daniels, LLC | Delaware | 100% |
| ShopKo Stores Operating Co., LLC | SVS Trucking, LLC | Minnesota | 100% |
| ShopKo Stores Operating Co., LLC | ShopKo Gift Card Co., LLC | Minnesota | 100% |
| ShopKo Stores Operating Co., LLC | ShopKo Optical Manufacturing, LLC | Wisconsin | 100% |
| ShopKo Stores Operating Co., LLC | Shopko Institutional Care Services Co., LLC | Delaware | 100% |
| Pamida Stores Operating Co., LLC | Place's Associates' Expansion, LLC | Missouri | 100% |

Schedule 8.12-1

| Pamida Stores Operating Co., LLC | Pamida Transportation, LLC | Nebraska | 100% |

(b)    Affiliates (Less than 50% Owned by Company)

| Company | Affiliate | Jurisdiction of Incorporation | Percentage Owned |
|---|---|---|---|
| None | | | |

(c)    Affiliates (Subject to common ownership with Company)

| Company | Affiliate | Jurisdiction of Incorporation | Parent | Percentage Owned |
|---|---|---|---|---|
| None | | | | |

(d)    Shareholders (If widely held, only holders with more than 10%)

| Company | Shareholders | Jurisdiction of Incorporation[*] | Percentage Owned |
|---|---|---|---|
| Specialty Retail Shops Holding Corp. | SKO Group Holding, LLC | Delaware | 100% |
| ShopKo Finance, LLC | Specialty Retail Shops Holding Corp. | Delaware | 100% |
| ShopKo Holding Company, LLC | Specialty Retail Shops Holding Corp. | Delaware | 100% |
| ShopKo Stores Operating Co., LLC | ShopKo Holding Company, LLC | Wisconsin | 100% |
| Retained R/E SPE, LLC | ShopKo Holding Company, LLC | Delaware | 100% |
| Pamida Stores Operating Co., LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |
| ShopKo Properties, LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |

---

[*]If shareholders are individuals, indicate "N/A".

Schedule 8.12-2

| Penn-Daniels, LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |
| SVS Trucking, LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |
| ShopKo Gift Card Co., LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |
| ShopKo Optical Manufacturing, LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |
| ShopKo Institutional Care Services Co., LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |
| Pamida Stores Operating Co., LLC | ShopKo Stores Operating Co., LLC | Delaware | 100% |
| Place's Associates' Expansion, LLC | Pamida Stores Operating Co., LLC | Delaware | 100% |
| Pamida Transportation, LLC | Pamida Stores Operating Co., LLC | Delaware | 100% |

Schedule 8.12-3

SCHEDULE 8.13
to
INFORMATION CERTIFICATE

<u>Labor Matters</u>

None.

SCHEDULE 9.9
to
INFORMATION CERTIFICATE

Existing Indebtedness[*]

A.  Capital Leases and Other Obligations in the aggregate amount of $6,315,842.46.

| Company | Name/Address of Payee | Principal Balance as of 1/15/2019 | Nature of Debt | Term |
|---|---|---|---|---|
| Enterprise FM Trust | P.O. Box 800089 Kansas City, MO 64180-0089 | $846,859.87 | Car Leases Capital Lease | Various through 12/31/20 |
| HIGI | 150 North Wacker Drive Suite 1120 Chicago, IL 60606 | $372,434.88 | Blood Pressure Monitoring Machines | 12/31/2019 |
| CISCO Capital | 170 West Tasman Drive San Jose, CA 95134 | $80,335.71 | Computer Equipment | Various though 9/30/2019 |
| Neopost USA | 478 Whellers Farms Road | $185,858.00 | Postage machines in stores | 3/1/2022 |
| Xerox | PO Box 660501 Dallas, TX 75266-0501 | $4,830,354.00 | Copy machines at the Store Support Center | 7/1/2023 |

B.  Other debt obligations:

| Company | Name/Address of Payee | Principal Balance as of 1/15/2019 | Nature of Debt | Term |
|---|---|---|---|---|
| ShopKo Operating Co., LLC | US Bank Corporate Trust Services Attn:  Darlene Garsteig EP-MN-WS3C 60 Livingston Ave | $5,679,769.66 | Senior Unsecured Bond | 03/15/2022 |

---

[*]Do not indicate debt of existing lender to be repaid with proceeds of initial disbursements of loans under Wachovia facility, if any.  The nature of debt might be: "purchase money", "term", "capital lease", "revolving", etc.

|  | St Paul, MN 55107-2292 |  |  |  |
|---|---|---|---|---|
| IBM Global Financing | North Castle Drive Armonk, NY 10504 | $6,937,639.67 | Leasing of IT Equipment & Software | 9/30/2021 |
| City of Estherville | 2 North 7th Street PO Box 417 Estherville, IA 51334 | 60,000.00 | Refundable Development Agreement | 1/14/19 |

C.      Intercompany Debt

| Company | Name/Address of Payee | Principal balance as of 1/15/19 | Nature of Debt | Term |
|---|---|---|---|---|
| Pamida Stores Operating Co., LLC[9] | ShopKo Finance, LLC | $52,116,646.97 | Subordinated Secured Promissory Note | 5/8/2017[10] |

---

[9]     Subordinate and subject to the Pamida Operating Subordination Agreement.

[10]     Intended by Company to be outstanding. Company is going through process of extending.

SCHEDULE 9.10
to
INFORMATION CERTIFICATE

Loans/Advances/Guarantees

A.  Loans and Advances

| Company | Name/Address of Debtor | Outstanding Principal Amount as of 1/15/2019 | Secured/Unsecured | Due Date |
|---------|------------------------|----------------------------------------------|-------------------|----------|
| ShopKo Stores Operating Co., LLC | Pharmacy Intern Notes Receivable | $92,386.00 | Unsecured | Variable |

B.  Guarantees

In connection with the acquisition of P.M. Place Stores Company in 2000, ShopKo Stores Operating Co., LLC assumed the following guaranty obligations previously made by P.M. Place Stores Company or its former principal shareholder:

(i)  Corporate Guaranty of Small Business Administration loan in 1999 to the Grundy Center Development Corporation (Place's landlord for Grundy Center, IA store), in the original amount of $207,000.

EXHIBIT D

to

RATIFICATION AND AMENDMENT AGREEMENT

**Schedule 1**

Commitments

|  | Revolving Loan A | Revolving Loan A-1 | Term Loan B | Term Loan B-1 | Total |
|---|---|---|---|---|---|
| Wells Fargo Bank, National Association | $83,882,583.17 | $9,305,479.45 | $23,005,250.00 | - | $116,193,312.62 |
| PNC Bank, National Association | $41,643,835.62 | $3,123,287.67 | $7,104,562.50 | - | $51,871,685.79 |
| CIT Bank, N.A. | $13,142,857.14 | $4,000,000.00 | $2,029,875.00 | - | $19,172,732.14 |
| Bank of America, N.A. | $72,571,428.57 | $6,000,000.00 | - | - | $78,571,428.57 |
| Citizens Business Capital, a division of Citizens Asset Finance, Inc. | $35,616,438.35 | $2,671,232.88 | - | - | $38,287,671.23 |
| Bank of Montreal | $67,428,571.43 | $4,900,000.00 | - | - | $72,328,571.43 |
| TD Bank, N.A. | $28,571,428.57 | - | - | - | $28,571,428.57 |
| JPMorgan Chase Bank, N.A. | $37,142,857.14 | - | - | - | $37,142,857.14 |
| US Bank National Association | $20,000,000.00 | - | - | - | $20,000,000.00 |
| Gordon Brothers Finance Company, LLC | - | - | $16,915,625.00 | - | $16,915,625.00 |
| Shopko Note Holding, LLC | - | - | - | $34,416,375.00 | $34,416,375.00 |
| **TOTAL** | $400,000,000.00 | $30,000,000.00 | $49,055,312.50 | $34,416,375.00 | $513,471,687.50 |

5551993.7

EXHIBIT E
to
RATIFICATION AND AMENDMENT AGREEMENT

**Schedule 1.79**

**Existing Letters of Credit**

(see attached)

| Product Sub Type Name | Instrument Ref # | Liability Amount | Issue Date | Current Expiry Date | Customer Name | Beneficiary Name |
|---|---|---|---|---|---|---|
| Financial | SC0102813U | 216,700.00 | 26-Apr-11 | 14-Oct-19 | PAMIDA STORES OPERATING CO., LLC | GENERAL ELECTRIC CREDIT CORPORATION |
| Financial | SM227521 | 133,960.00 | 28-Aug-07 | 1-Aug-19 | PAMIDA STORES OPERATING CO., LLC | UNITED STATES FIDELITY & GUARANTY |
| Financial | SC101817U | 6,946,469.00 | 26-Feb-08 | 1-Dec-19 | SHOPKO STORES OPERATING CO | ACE AMERICAN INSURANCE COMPANY |
| Financial | SC100799U | 174,217.00 | 26-Jan-06 | 28-Dec-19 | SHOPKO STORES OPERATING CO | LIBERTY MUTUAL INSURANCE COMPANY |
| Financial | SC102120U | 750,000.00 | 9-Dec-08 | 1-May-19 | SHOPKO STORES OPERATING CO | NINTENDO OF AMERICA INC |
| Financial | SC100798U | 300,000.00 | 24-Jan-06 | 30-Jan-20 | SHOPKO STORES OPERATING CO | SENTRY INSURANCE A MUTUAL COMPANY |
| Financial | SC100942U | 2,248,781.90 | 17-May-06 | 1-Mar-19 | SHOPKO STORES OPERATING CO | SUPERVALU, INC. |
| Financial | SC7004857W | 6,000,000.00 | 18-Aug-17 | 15-May-19 | SHOPKO STORES OPERATING CO | THE CIT GROUP/COMMERCIAL SERVICES, INC |
| Financial | SC7005474W | 50,000.00 | 16-Aug-18 | 31-Aug-19 | SHOPKO STORES OPERATING CO | ADTN INTERNATIONAL LTD. |
| Financial | IS000064693U | 2,100,000.00 | 6-Dec-18 | 1-Dec-19 | SHOPKO STORES OPERATING CO | BANK OF AMERICA, N.A. |
| Financial | SC7005433W | 500,000.00 | 11-Jul-18 | 31-Jul-19 | SHOPKO STORES OPERATING CO | CERTCO, INC. |
| Financial | IS000066508U | 127,200.00 | 14-Dec-18 | 31-Dec-19 | SHOPKO STORES OPERATING CO | RPT REALTY, L.P. |
| Financial | IS000040450U | 30,078.72 | 9-May-18 | 9-May-19 | SHOPKO STORES OPERATING CO | VF JEANSWEAR LIMITED PARTNERSHIP |
| **Total Standby** | | **19,577,406.62** | | | | |

| L/C Bank Reference | L/C Cust Reference | Site | Trans | Beneficiary | Country | Opening Date | Expiry Date | Balance |
|---|---|---|---|---|---|---|---|---|
| IC0597897HK | 18041K14A | HK | IMLC | SENSIO INC | CA | 43420 | 43467 | 95,654.42 USD |
| IC0597898HK | 18041K14B | HK | IMLC | SENSIO INC | CA | 43420 | 43464 | 266,119.58 USD |
| IC0597899HK | 18041J30A | HK | IMLC | SENSIO INC | CA | 43430 | 43478 | 27,864.36 USD |
| IC0597900HK | 18046K23A | HK | IMLC | INTEX DEVELOPMENT COMPANY LIMITED | HK | 43431 | 43502 | 436,964.32 USD |
| IC0597901HK | 18041K27A | HK | IMLC | SENSIO INC | CA | 43437 | 43497 | 156,948.00 USD |
| IC0597902HK | 18041K27B | HK | IMLC | SENSIO INC | CA | 43437 | 43497 | 191,781.00 USD |
| IC0597903HK | 18102J16A | HK | IMLC | FISHER-PRICE BRANDS-A DIVISION OF | HK | 43437 | 43490 | 56,595.00 USD |
| IC0597904HK | 18051K29A | HK | IMLC | SPINMASTER TOYS FAR EAST LTD. | HK | 43441 | 43481 | 32,645.01 USD |
| IC0597905HK | 18051K29B | HK | IMLC | SPINMASTER TOYS FAR EAST LTD. | HK | 43451 | 43514 | 115,279.52 USD |
| IC0597906HK | 18014K14C | HK | IMLC | INSIDE OUT INTERNATIONAL LLC | US | 43448 | 43494 | 1,283,008.54 USD |
| IC0597907HK | 18014L03C | HK | IMLC | INSIDE OUT INTERNATIONAL LLC | US | 43448 | 43499 | 620,566.82 USD |
| IC0597908HK | 18101L12A | HK | IMLC | HASBRO INTERNATIONAL TRADING B.V. | HK | 43451 | 43485 | 72,068.35 USD |
| IC0597909HK | 18041L12A | HK | IMLC | SENSIO INC | CA | 43451 | 43508 | 113,580.00 USD |
| IC0597910HK | 18013K27A | HK | IMLC | INSIDE OUT INTERNATIONAL LLC | US | 43451 | 43497 | 406,182.21 USD |
| IC0597911HK | 18014K14A | HK | IMLC | INSIDE OUT INTERNATIONAL LLC | US | 43451 | 43499 | 142,179.84 USD |
| IC0597912HK | 18014K14B | HK | IMLC | INSIDE OUT INTERNATIONAL LLC | US | 43451 | 43499 | 262,284.88 USD |
| IC0597913HK | 18013L12A | HK | IMLC | INSIDE OUT INTERNATIONAL LLC | US | 43451 | 43497 | 14,839.20 USD |
| IC0597914HK | 18041L21A | HK | IMLC | SENSIO INC | CA | 43468 | 43510 | 58,002.24 USD |
| **Total Doc** | | | | | | | | **4,352,563.29** |

SCHEDULE 1
to
RATIFICATION AND AMENDMENT AGREEMENT

**Pre-Petition Store Closing GOB Sales**

(see attached)

Shopko GOB
Pre Petition Closures

| Count | Store # | Sqft. | Open Date | Address 1 | Address 2 | Address 3 | City | State | Zip | Lease Termination | Expected Store Close |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) | 129 | 99,279 | 07-Mar-95 | 4515 SOUTH REGAL STREET | | | SPOKANE | WA | 99223 | 11/30/2034 | 3/3/2019 |
| 2) | 172 | 109,963 | 04-Apr-00 | 3400 NORTH 27TH STREET | | | LINCOLN | NE | 68521 | 1/30/2021 | 3/3/2019 |
| 3) | 205 | 22,734 | 05-Oct-16 | 94 NORTH 400 EAST | | | DELTA | UT | 84624 | 11/30/2031 | 3/3/2019 |
| 4) | 538 | 21,953 | 21-Jun-15 | 710 N LL AND G AVENUE | | | ANTHONY | KS | 67003 | 2/28/2030 | 3/3/2019 |
| 5) | 548 | 25,614 | 27-Mar-15 | 416 U.S. HIGHWAY 59 | | | MAHNOMEN | MN | 56557 | 2/28/2023 | 3/3/2019 |
| 6) | 552 | 25,614 | 27-Mar-15 | 1420 NORTH 7TH STREET | | | OAKES | ND | 58474 | 10/31/2022 | 3/3/2019 |
| 7) | 557 | 25,869 | 20-Sep-15 | 1174 N. MAIN STREET | | | NEPHI | UT | 84648 | 9/30/2030 | 3/3/2019 |
| 8) | 558 | 21,450 | 21-Jun-15 | 614 W 3RD STREET | | | REDFIELD | SD | 57469 | 3/31/2020 | 3/3/2019 |
| 9) | 563 | 25,860 | 04-Oct-15 | 406 GATEWAY AVENUE | | | MAUSTON | WI | 53948 | 10/31/2030 | 3/3/2019 |
| 10) | 564 | 25,860 | 29-Oct-15 | 200 RED BULL DIVISION DRIVE | | | WEBSTER CITY | IA | 50595 | 10/31/2030 | 3/3/2019 |
| 11) | 565 | 25,860 | 29-Oct-15 | 1620 N. 2ND STREET | | | CHEROKEE | IA | 51012 | 10/31/2030 | 3/3/2019 |
| 12) | 567 | 22,317 | 21-Jun-15 | 810 DIEKMANN DRIVE | | | PAYNESVILLE | MN | 56362 | 6/30/2025 | 3/3/2019 |
| 13) | 570 | 22,000 | 21-Jun-15 | 905 W SD HIGHWAY 46 | | | WAGNER | SD | 57380 | 4/30/2025 | 3/3/2019 |
| 14) | 571 | 22,000 | 21-Jun-15 | 620 E HIGHWAY 12 | | | WEBSTER | SD | 57274 | 3/31/2020 | 3/3/2019 |
| 15) | 572 | 25,614 | 21-Jun-15 | 401 US HIGHWAY 24 | | | LEADVILLE | CO | 80461 | 3/31/2025 | 3/3/2019 |
| 16) | 573 | 21,000 | 21-Jun-15 | 87 S FOSSIL ST | | | RUSSELL | KS | 67665 | 3/31/2025 | 3/3/2019 |
| 17) | 575 | 40,000 | 21-Jun-15 | 908 WEST AVENUE D | | | LOVINGTON | NM | 88260 | 3/31/2022 | 3/3/2019 |
| 18) | 578 | 23,029 | 04-Oct-15 | 415 US HIGHWAY 24 N | PO BOX 5275 | | BUENA VISTA | CO | 81211 | 7/31/2025 | 3/3/2019 |
| 19) | 581 | 22,000 | 04-Oct-15 | 1709 MAIN STREET | | | LISBON | ND | 58054 | 8/31/2025 | 3/3/2019 |
| 20) | 582 | 20,303 | 31-Jan-16 | 1000 US BUSINESS 67 | | | PRESIDIO | TX | 79845 | 1/31/2026 | 3/3/2019 |
| 21) | 583 | 20,337 | 31-Jan-16 | 860 S MAIN STREET | | | BLANDING | UT | 84511 | 1/31/2026 | 3/3/2019 |
| 22) | 585 | 20,633 | 13-Mar-16 | 935 3RD STREET SE | | | MAYVILLE | ND | 58257 | 1/31/2026 | 3/3/2019 |
| 23) | 586 | 20,900 | 13-Mar-16 | 1401 STATE STREET | | | PHILLIPSBURG | KS | 67661 | 1/31/2026 | 3/3/2019 |
| 24) | 588 | 29,985 | 13-Mar-16 | 660 N MAIN ST | | | BEAVER | UT | 84713 | 2/28/2031 | 3/3/2019 |
| 25) | 596 | 22,773 | 08-Jun-16 | 1208 N HIGHWAY 77 | | | DELL RAPIDS | SD | 57022 | 7/31/2031 | 3/3/2019 |
| 26) | 597 | 22,773 | 08-Jun-16 | 133 TROTTER AVENUE | | | ORD | NE | 68862 | 7/31/2031 | 3/3/2019 |
| 27) | 641 | 27,398 | 06-Aug-12 | 110 WATTERS DRIVE | | | DWIGHT | IL | 60420 | 5/31/2024 | 3/3/2019 |
| 28) | 685 | 24,600 | 30-Dec-12 | 1425 EDGINGTON AVENUE | | | ELDORA | IA | 50627 | 9/19/2022 | 3/3/2019 |
| 29) | 693 | 42,456 | 19-Nov-12 | 821 WEST CRAWFORD STREET | | | CLAY CENTER | KS | 67432 | 6/30/2023 | 3/3/2019 |
| 30) | 700 | 26,000 | 30-Dec-12 | 1217 SOUTH HIGHWAY 71 | | | KIMBALL | NE | 69145 | 7/31/2023 | 3/3/2019 |
| 31) | 701 | 32,880 | 19-Nov-12 | 1212 W. MAIN STREET | | | LYONS | KS | 67554 | 8/31/2023 | 3/3/2019 |
| 32) | 702 | 27,659 | 19-Nov-12 | 908 E. 14TH STREET | P.O. BOX 450 | | LARNED | KS | 67550 | 8/31/2023 | 3/3/2019 |
| 33) | 707 | 16,925 | 30-Dec-12 | 101 S. POLK | | | ALBANY | MO | 64402 | 5/31/2021 | 3/3/2019 |
| 34) | 771 | 12,659 | 10-Sep-12 | 117 WEST 1ST AVENUE | | | PLENTYWOOD | MT | 59254 | OWNED | 3/3/2019 |
| 35) | 776 | 21,207 | 15-Oct-12 | 925 NORTH 6TH STREET | | | GREYBULL | WY | 82426 | 1/31/2024 | 3/3/2019 |
| 36) | 65 | 90,539 | 14-Jul-86 | 8105 W FAIRVIEW AVENUE | | | BOISE | ID | 83704 | 1/31/2027 | 3/17/2019 |
| 37) | 83 | 94,092 | 12-Sep-88 | 2165 EAST 9400 SOUTH | | | SANDY CITY | UT | 84093 | 1/31/2027 | 3/17/2019 |
| 38) | 85 | 94,136 | 12-Sep-88 | 5800 SOUTH REDWOOD ROAD | | | SALT LAKE CITY | UT | 84123 | 2/23/2024 | 3/17/2019 |
| 39) | 105 | 100,734 | 03-Oct-90 | 125 S STATE STREET | | | OREM | UT | 84058 | 1/31/2027 | 3/17/2019 |
| 40) | 113 | 98,034 | 15-Oct-93 | 5500 MARTIN WAY E | | | LACEY | WA | 98516 | 1/31/2027 | 3/17/2019 |
| 41) | 646 | 37,899 | 10-Sep-12 | 3825 S. HURON ROAD | | | STANDISH | MI | 48658 | 4/30/2022 | 3/17/2019 |
| 42) | 20 | 60,776 | 20-Oct-72 | 2400 ROSE STREET | | | LA CROSSE | WI | 54603 | 10/18/2019 | 4/8/2019 |
| 43) | 33 | 81,171 | 16-Nov-81 | 1578 APPLETON RD | | | MENASHA | WI | 54952 | 6/30/2021 | 4/8/2019 |
| 44) | 81 | 94,237 | 24-Oct-88 | 5801 SUMMIT VIEW AVE | | | YAKIMA | WA | 98908 | 11/30/2029 | 4/8/2019 |
| 45) | 82 | 94,013 | 12-Sep-88 | 5959 SOUTH STATE STREET | | | MURRAY | UT | 84107 | 2/27/2038 | 4/8/2019 |
| 46) | 90 | 83,363 | 12-Jul-89 | 1771 WISCONSIN AVE | | | GRAFTON | WI | 53024 | 12/31/2031 | 4/8/2019 |
| 47) | 95 | 100,843 | 24-Sep-89 | 2655 SOUTH BROADWAY AVE | | | BOISE | ID | 83706 | 11/30/2029 | 4/8/2019 |
| 48) | 178 | 81,740 | 08-Oct-08 | N 66 W 25201 COUNTY VV | | | SUSSEX | WI | 53089 | 1/27/2029 | 4/8/2019 |
| 49) | 203 | 22,734 | 30-Aug-16 | 124 LUMAR DR | | | JACKSBORO | TX | 76458 | 10/31/2031 | 1/19/2019 |
| 50) | 211 | 25,154 | 26-Jul-16 | 2402 CENTRAL AVE. | | | ESTHERVILLE | IA | 51334 | 8/31/2021 | 4/8/2019 |
| 51) | 504 | 9,412 | 07-Jul-08 | W3208 VAN ROY ROAD | | | APPLETON | WI | 54915 | 2/3/2029 | 2/15/2019 |
| 52) | 543 | 25,614 | 27-Mar-15 | 600 US HIGHWAY 2E | | | WOLF POINT | MT | 59201 | 12/31/2031 | 4/8/2019 |
| 53) | 600 | 20,694 | 13-Mar-16 | 911 S K AVE | | | VINTON | IA | 52349 | 10/31/2030 | 4/8/2019 |
| 54) | 607 | 35,000 | 03-Dec-10 | 1010 SOUTH MAINLINE DR | | | SEYMOUR | WI | 54165 | 9/30/2026 | 4/8/2019 |
| 55) | 622 | 34,502 | 06-Aug-12 | E 9916 M28 EAST | P.O. BOX 110 | | WETMORE | MI | 49895 | 10/18/2019 | 4/8/2019 |
| 56) | 639 | 34,923 | 06-Aug-12 | 840 NORTH U.S. 41 | P.O. BOX 20 | | ROCKVILLE | IN | 47872 | 5/31/2021 | 4/8/2019 |
| 57) | 650 | 35,551 | 15-Oct-12 | 56419 POKAGON STREET | | | DOWAGIAC | MI | 49047 | 5/31/2021 | 4/8/2019 |
| 58) | 662 | 46,556 | 06-Aug-12 | 211 S. 23RD STREET | | | PLATTSMOUTH | NE | 68048 | 12/31/2028 | 4/8/2019 |
| 59) | 703 | 26,400 | 19-Nov-12 | 300 CROSS STREET | | | BURLINGTON | KS | 66839 | 5/31/2021 | 4/8/2019 |
| 60) | 708 | 27,000 | 02-Jul-12 | 812 HARVEST HILLS DRIVE | | | CARROLLTON | MO | 64633 | 5/31/2021 | 4/8/2019 |
| 61) | 716 | 58,150 | 30-Dec-12 | 1520 W. 9TH STREET | | | MT. CARMEL | IL | 62863 | 5/31/2021 | 4/8/2019 |
| 62) | 717 | 35,551 | 30-Dec-12 | 825 VALLEY STREET | ROUTE 183 | | MINERVA | OH | 44657 | 5/31/2021 | 4/8/2019 |
| 63) | 719 | 36,047 | 30-Dec-12 | 378 LEWISVILLE ROAD | P.O. BOX 651 | | WOODSFIELD | OH | 43793 | 5/31/2021 | 4/8/2019 |
| 64) | 720 | 43,200 | 02-Jul-12 | 100 CROSS COUNTRY PLAZA | | | BATESVILLE | IN | 47006 | 6/5/2022 | 4/8/2019 |
| 65) | 743 | 41,354 | 15-Oct-12 | 1900 HWY 49 | P.O. BOX 1239 | | BEULAH | ND | 58523 | 4/30/2021 | 4/8/2019 |
| 66) | 762 | 31,583 | 19-Nov-12 | 54 S HWY 20 | PO BOX 1351 | | THERMOPOLIS | WY | 82443 | 7/31/2029 | 4/8/2019 |
| 67) | 763 | 27,300 | 19-Nov-12 | 1135 MT. RUSHMORE ROAD | | | CUSTER | SD | 57730 | 12/31/2023 | 4/8/2019 |

SCHEDULE 2
to
RATIFICATION AND AMENDMENT AGREEMENT

**Store Closing GOB Sales**

(see attached)

Shopko GOB
Pre Petition Closures

| Count | Store # | Sqft. | Open Date | Address 1 | Address 2 | Address 3 | City | State | Zip | Lease Termination | Expected Store Close |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) | 129 | 99,279 | 07-Mar-95 | 4515 SOUTH REGAL STREET | | | SPOKANE | WA | 99223 | 11/30/2034 | 3/3/2019 |
| 2) | 172 | 109,963 | 04-Apr-00 | 3400 NORTH 27TH STREET | | | LINCOLN | NE | 68521 | 1/30/2021 | 3/3/2019 |
| 3) | 205 | 22,734 | 05-Oct-16 | 94 NORTH 400 EAST | | | DELTA | UT | 84624 | 11/30/2031 | 3/3/2019 |
| 4) | 538 | 21,953 | 21-Jun-15 | 710 N LL AND G AVENUE | | | ANTHONY | KS | 67003 | 2/28/2030 | 3/3/2019 |
| 5) | 548 | 25,614 | 27-Mar-15 | 416 U.S. HIGHWAY 59 | | | MAHNOMEN | MN | 56557 | 2/28/2023 | 3/3/2019 |
| 6) | 552 | 25,614 | 27-Mar-15 | 1420 NORTH 7TH STREET | | | OAKES | ND | 58474 | 10/31/2022 | 3/3/2019 |
| 7) | 557 | 25,869 | 20-Sep-15 | 1174 N. MAIN STREET | | | NEPHI | UT | 84648 | 9/30/2030 | 3/3/2019 |
| 8) | 558 | 21,450 | 21-Jun-15 | 614 W 3RD STREET | | | REDFIELD | SD | 57469 | 3/31/2020 | 3/3/2019 |
| 9) | 563 | 25,860 | 04-Oct-15 | 406 GATEWAY AVENUE | | | MAUSTON | WI | 53948 | 10/31/2030 | 3/3/2019 |
| 10) | 564 | 25,860 | 29-Oct-15 | 200 RED BULL DIVISION DRIVE | | | WEBSTER CITY | IA | 50595 | 10/31/2030 | 3/3/2019 |
| 11) | 565 | 25,860 | 29-Oct-15 | 1620 N. 2ND STREET | | | CHEROKEE | IA | 51012 | 10/31/2030 | 3/3/2019 |
| 12) | 567 | 22,317 | 21-Jun-15 | 810 DIEKMANN DRIVE | | | PAYNESVILLE | MN | 56362 | 6/30/2025 | 3/3/2019 |
| 13) | 570 | 22,000 | 21-Jun-15 | 905 W SD HIGHWAY 46 | | | WAGNER | SD | 57380 | 4/30/2025 | 3/3/2019 |
| 14) | 571 | 22,000 | 21-Jun-15 | 620 E HIGHWAY 12 | | | WEBSTER | SD | 57274 | 3/31/2020 | 3/3/2019 |
| 15) | 572 | 25,614 | 21-Jun-15 | 401 US HIGHWAY 24 | | | LEADVILLE | CO | 80461 | 3/31/2025 | 3/3/2019 |
| 16) | 573 | 21,000 | 21-Jun-15 | 87 S FOSSIL ST | | | RUSSELL | KS | 67665 | 3/31/2025 | 3/3/2019 |
| 17) | 575 | 40,000 | 21-Jun-15 | 908 WEST AVENUE D | | | LOVINGTON | NM | 88260 | 3/31/2022 | 3/3/2019 |
| 18) | 578 | 23,029 | 04-Oct-15 | 415 US HIGHWAY 24 N | PO BOX 5275 | | BUENA VISTA | CO | 81211 | 7/31/2025 | 3/3/2019 |
| 19) | 581 | 22,000 | 04-Oct-15 | 1709 MAIN STREET | | | LISBON | ND | 58054 | 8/31/2025 | 3/3/2019 |
| 20) | 582 | 20,303 | 31-Jan-16 | 1000 US BUSINESS 67 | | | PRESIDIO | TX | 79845 | 1/31/2026 | 3/3/2019 |
| 21) | 583 | 20,337 | 31-Jan-16 | 860 S MAIN STREET | | | BLANDING | UT | 84511 | 1/31/2026 | 3/3/2019 |
| 22) | 585 | 20,633 | 13-Mar-16 | 935 3RD STREET SE | | | MAYVILLE | ND | 58257 | 1/31/2026 | 3/3/2019 |
| 23) | 586 | 20,900 | 13-Mar-16 | 1401 STATE STREET | | | PHILLIPSBURG | KS | 67661 | 1/31/2026 | 3/3/2019 |
| 24) | 588 | 29,985 | 13-Mar-16 | 660 N MAIN ST | | | BEAVER | UT | 84713 | 2/28/2031 | 3/3/2019 |
| 25) | 596 | 22,773 | 08-Jun-16 | 1208 N HIGHWAY 77 | | | DELL RAPIDS | SD | 57022 | 7/31/2031 | 3/3/2019 |
| 26) | 597 | 22,773 | 08-Jun-16 | 133 TROTTER AVENUE | | | ORD | NE | 68862 | 7/31/2031 | 3/3/2019 |
| 27) | 641 | 27,398 | 06-Aug-12 | 110 WATTERS DRIVE | | | DWIGHT | IL | 60420 | 5/31/2024 | 3/3/2019 |
| 28) | 685 | 24,600 | 30-Dec-12 | 1425 EDGINGTON AVENUE | | | ELDORA | IA | 50627 | 9/19/2022 | 3/3/2019 |
| 29) | 693 | 42,456 | 19-Nov-12 | 821 WEST CRAWFORD STREET | | | CLAY CENTER | KS | 67432 | 6/30/2023 | 3/3/2019 |
| 30) | 700 | 26,000 | 30-Dec-12 | 1217 SOUTH HIGHWAY 71 | | | KIMBALL | NE | 69145 | 7/31/2023 | 3/3/2019 |
| 31) | 701 | 32,880 | 19-Nov-12 | 1212 W. MAIN STREET | | | LYONS | KS | 67554 | 8/31/2023 | 3/3/2019 |
| 32) | 702 | 27,659 | 19-Nov-12 | 908 E. 14TH STREET | P.O. BOX 450 | | LARNED | KS | 67550 | 8/31/2023 | 3/3/2019 |
| 33) | 707 | 16,925 | 30-Dec-12 | 101 S. POLK | | | ALBANY | MO | 64402 | 5/31/2021 | 3/3/2019 |
| 34) | 771 | 12,659 | 10-Sep-12 | 117 WEST 1ST AVENUE | | | PLENTYWOOD | MT | 59254 | OWNED | 3/3/2019 |
| 35) | 776 | 21,207 | 15-Oct-12 | 925 NORTH 6TH STREET | | | GREYBULL | WY | 82426 | 1/31/2024 | 3/3/2019 |
| 36) | 65 | 90,539 | 14-Jul-86 | 8105 W FAIRVIEW AVENUE | | | BOISE | ID | 83704 | 1/31/2027 | 3/17/2019 |
| 37) | 83 | 94,092 | 12-Sep-88 | 2165 EAST 9400 SOUTH | | | SANDY CITY | UT | 84093 | 1/31/2027 | 3/17/2019 |
| 38) | 85 | 94,136 | 12-Sep-88 | 5800 SOUTH REDWOOD ROAD | | | SALT LAKE CITY | UT | 84123 | 2/23/2024 | 3/17/2019 |
| 39) | 105 | 100,734 | 03-Oct-90 | 125 S STATE STREET | | | OREM | UT | 84058 | 1/31/2027 | 3/17/2019 |
| 40) | 113 | 98,034 | 15-Oct-93 | 5500 MARTIN WAY E | | | LACEY | WA | 98516 | 1/31/2027 | 3/17/2019 |
| 41) | 646 | 37,899 | 10-Sep-12 | 3825 S. HURON ROAD | | | STANDISH | MI | 48658 | 4/30/2022 | 3/17/2019 |
| 42) | 20 | 60,776 | 20-Oct-72 | 2400 ROSE STREET | | | LA CROSSE | WI | 54603 | 10/18/2019 | 4/8/2019 |
| 43) | 33 | 81,171 | 16-Nov-81 | 1578 APPLETON RD | | | MENASHA | WI | 54952 | 6/30/2021 | 4/8/2019 |
| 44) | 81 | 94,237 | 24-Oct-88 | 5801 SUMMIT VIEW AVE | | | YAKIMA | WA | 98908 | 11/30/2029 | 4/8/2019 |
| 45) | 82 | 94,013 | 12-Sep-88 | 5959 SOUTH STATE STREET | | | MURRAY | UT | 84107 | 2/27/2038 | 4/8/2019 |
| 46) | 90 | 83,363 | 12-Jul-89 | 1771 WISCONSIN AVE | | | GRAFTON | WI | 53024 | 12/31/2031 | 4/8/2019 |
| 47) | 95 | 100,843 | 24-Sep-89 | 2655 SOUTH BROADWAY AVE | | | BOISE | ID | 83706 | 11/30/2029 | 4/8/2019 |
| 48) | 178 | 81,740 | 08-Oct-08 | N 66 W 25201 COUNTY VV | | | SUSSEX | WI | 53089 | 1/27/2029 | 4/8/2019 |
| 49) | 203 | 22,734 | 30-Aug-16 | 124 LUMAR DR | | | JACKSBORO | TX | 76458 | 10/31/2031 | 1/19/2019 |
| 50) | 211 | 25,154 | 26-Jul-16 | 2402 CENTRAL AVE. | | | ESTHERVILLE | IA | 51334 | 8/31/2021 | 4/8/2019 |
| 51) | 504 | 9,412 | 07-Jul-08 | W3208 VAN ROY ROAD | | | APPLETON | WI | 54915 | 2/3/2029 | 2/15/2019 |
| 52) | 543 | 25,614 | 27-Mar-15 | 600 US HIGHWAY 2E | | | WOLF POINT | MT | 59201 | 12/31/2031 | 4/8/2019 |
| 53) | 600 | 20,694 | 13-Mar-16 | 911 S K AVE | | | VINTON | IA | 52349 | 10/31/2030 | 4/8/2019 |
| 54) | 607 | 35,000 | 03-Dec-10 | 1010 SOUTH MAINLINE DR | | | SEYMOUR | WI | 54165 | 9/30/2026 | 4/8/2019 |
| 55) | 622 | 34,502 | 06-Aug-12 | E 9916 M28 EAST | P.O. BOX 110 | | WETMORE | MI | 49895 | 10/18/2019 | 4/8/2019 |
| 56) | 639 | 34,923 | 06-Aug-12 | 840 NORTH U.S. 41 | P.O. BOX 20 | | ROCKVILLE | IN | 47872 | 5/31/2021 | 4/8/2019 |
| 57) | 650 | 35,551 | 15-Oct-12 | 56419 POKAGON STREET | | | DOWAGIAC | MI | 49047 | 5/31/2021 | 4/8/2019 |
| 58) | 662 | 46,556 | 06-Aug-12 | 211 S. 23RD STREET | | | PLATTSMOUTH | NE | 68048 | 12/31/2028 | 4/8/2019 |
| 59) | 703 | 26,400 | 19-Nov-12 | 300 CROSS STREET | | | BURLINGTON | KS | 66839 | 5/31/2021 | 4/8/2019 |
| 60) | 708 | 27,000 | 02-Jul-12 | 812 HARVEST HILLS DRIVE | | | CARROLLTON | MO | 64633 | 5/31/2021 | 4/8/2019 |
| 61) | 716 | 58,150 | 30-Dec-12 | 1520 W. 9TH STREET | | | MT. CARMEL | IL | 62863 | 5/31/2021 | 4/8/2019 |
| 62) | 717 | 35,551 | 30-Dec-12 | 825 VALLEY STREET | ROUTE 183 | | MINERVA | OH | 44657 | 5/31/2021 | 4/8/2019 |
| 63) | 719 | 36,047 | 30-Dec-12 | 378 LEWISVILLE ROAD | P.O. BOX 651 | | WOODSFIELD | OH | 43793 | 5/31/2021 | 4/8/2019 |
| 64) | 720 | 43,200 | 02-Jul-12 | 100 CROSS COUNTRY PLAZA | | | BATESVILLE | IN | 47006 | 6/5/2022 | 4/8/2019 |
| 65) | 743 | 41,354 | 15-Oct-12 | 1900 HWY 49 | | | BEULAH | ND | 58523 | 4/30/2021 | 4/8/2019 |
| 66) | 762 | 31,583 | 19-Nov-12 | 142 S HWY 20 | PO BOX 1351 | | THERMOPOLIS | WY | 82443 | 7/31/2029 | 4/8/2019 |
| 67) | 763 | 27,300 | 19-Nov-12 | 1135 MT. RUSHMORE ROAD | | | CUSTER | SD | 57730 | 12/31/2023 | 4/8/2019 |

Shopko GOB
Post Petition Closures

| Count | Store # | Sqft. | Open Date | Address 1 | Address 2 | Address 3 | City | State | Zip | Lease Termination | Expected Store |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) | 1 | 82,815 | 04-Apr-62 | 216 S. MILITARY AVE. | | | GREEN BAY | WI | 54303 | 2/25/2023 | 4/15/2019 |
| 2) | 3 | 87,954 | 07-Nov-77 | 3415 CALUMET AVE. | | | MANITOWOC | WI | 54220 | 12/31/2035 | 4/15/2019 |
| 3) | 18 | 94,130 | 22-Mar-72 | 1710 S. MAIN ST. | | | WEST BEND | WI | 53095 | 11/30/2029 | 4/15/2019 |
| 4) | 29 | 99,101 | 15-Sep-80 | 7401 MINERAL POINT RD. | | | MADISON | WI | 53717 | 12/31/2038 | 4/15/2019 |
| 5) | 35 | 90,499 | 13-Sep-82 | 2820 HWY 63 SOUTH | | | ROCHESTER | MN | 55904 | 5/31/2026 | 4/15/2019 |
| 6) | 39 | 86,739 | 18-Jul-83 | 4200 SOUTH 27TH STREET | BISHOP HEIGHTS SHOPPING C | | LINCOLN | NE | 68502 | 11/30/2029 | 4/15/2019 |
| 7) | 45 | 67,256 | 15-Oct-84 | 601 GALVIN ROAD SOUTH | | | BELLEVUE | NE | 68005 | 5/31/2026 | 4/15/2019 |
| 8) | 47 | 83,369 | 15-Oct-84 | 100 SOUTH 66TH STREET | | | LINCOLN | NE | 68510 | 2/29/2020 | 4/15/2019 |
| 9) | 55 | 90,334 | 05-Aug-85 | 1200 MAIN STREET | | | STEVENS POINT | WI | 54481 | 12/31/2031 | 4/15/2019 |
| 10) | 59 | 66,781 | 30-Sep-85 | 1001 HIGHWAY 15 SOUTH | | | FAIRMONT | MN | 56031 | 12/31/2035 | 4/15/2019 |
| 11) | 64 | 90,526 | 14-Jul-86 | 2100 CALDWELL BLVD. | | | NAMPA | ID | 83651 | 11/30/2029 | 4/15/2019 |
| 12) | 76 | 90,585 | 19-Oct-87 | 1601 W. 41ST ST | | | SIOUX FALLS | SD | 57105 | 12/31/2035 | 4/15/2019 |
| 13) | 80 | 94,120 | 18-May-88 | 2201 ZEIER RD. | | | MADISON | WI | 53704 | 11/30/2029 | 4/15/2019 |
| 14) | 84 | 94,230 | 12-Sep-88 | 1553 WEST 9000 S | | | WEST JORDAN | UT | 84088 | 5/31/2026 | 4/15/2019 |
| 15) | 87 | 94,230 | 12-Sep-88 | 1018 WASHINGTON BOULEVARD | | | OGDEN | UT | 84404 | 5/31/2026 | 4/15/2019 |
| 16) | 93 | 100,840 | 27-Sep-89 | 60 NE BEND RIVER MALL AVE | | | BEND | OR | 97703 | 1/31/2027 | 4/15/2019 |
| 17) | 97 | 94,336 | 23-Sep-89 | 4850 WEST 3500 SOUTH | | | WEST VALLEY CITY | UT | 84120 | 12/31/2031 | 4/15/2019 |
| 18) | 100 | 94,225 | 05-Jul-90 | 699 S GREEN BAY ROAD | | | NEENAH | WI | 54956 | 12/31/2031 | 4/15/2019 |
| 19) | 101 | 94,230 | 05-Jul-90 | 4501 EAST ARROWHEAD PARKWAY | | | SIOUX FALLS | SD | 57110 | 8/3/2019 | 4/15/2019 |
| 20) | 104 | 71,340 | 05-Jul-90 | 747 SOUTH MAIN | | | BRIGHAM CITY | UT | 84302 | 5/31/2026 | 4/15/2019 |
| 21) | 108 | 71,345 | 06-Mar-91 | 955 NORTH MAIN STREET | | | SPANISH FORK | UT | 84660 | 11/30/2029 | 4/15/2019 |
| 22) | 134 | 77,559 | 09-Jul-96 | 1450 SOUTH GRAND AVE. | | | PULLMAN | WA | 99163 | 5/31/2026 | 4/15/2019 |
| 23) | 141 | 80,327 | 24-Jul-98 | 313 NORTH ROOSEVELT AVE | | | BURLINGTON | IA | 52601 | 11/30/2029 | 4/15/2019 |
| 24) | 142 | 65,709 | 24-Jul-98 | 4810 AVENUE O | | | FORT MADISON | IA | 52627 | OWNED | 4/15/2019 |
| 25) | 171 | 90,804 | 04-Apr-00 | 1800 PLOVER ROAD | | | PLOVER | WI | 54467 | 1/31/2025 | 4/15/2019 |
| 26) | 175 | 111,142 | 03-Oct-00 | 6845 SOUTH 27TH STREET | | | LINCOLN | NE | 68512 | 1/30/2021 | 4/15/2019 |
| 27) | 505 | 9,315 | 07-Jul-08 | 2101 EAST EVERGREEN DRIVE | | | APPLETON | WI | 54913 | 2/3/2029 | 2/28/2019 |
| 28) | 534 | 28,600 | 27-Mar-15 | 602 MAIN AVENUE WEST | | | ROLLA | ND | 58367 | 3/31/2021 | 4/15/2019 |
| 29) | 546 | 24,800 | 27-Mar-15 | 333 S. LINCOLN | | | BURLINGTON | CO | 80807 | 3/31/2021 | 4/15/2019 |
| 30) | 566 | 22,347 | 21-Jun-15 | 216 MAIN AVENUE NE | | | WARROAD | MN | 56763 | 6/30/2025 | 4/15/2019 |
| 31) | 574 | 20,250 | 21-Jun-15 | 2052 E COMMERCIAL AVE | | | LOWELL | IN | 46356 | 12/31/2025 | 4/15/2019 |
| 32) | 587 | 28,373 | 13-Mar-16 | 1180 S 16TH ST | | | CLARINDA | IA | 51632 | 1/31/2026 | 4/15/2019 |
| 33) | 637 | 34,994 | 06-Aug-12 | 1215 E. MAIN STREET | P.O. BOX 4 | | ATTICA | IN | 47918 | 5/31/2021 | 4/15/2019 |
| 34) | 665 | 24,320 | 19-Nov-12 | 808 4TH ST. SOUTHEAST | PO BOX 210 | | HAMPTON | IA | 50441 | 1/31/2023 | 4/15/2019 |
| 35) | 676 | 30,000 | 30-Dec-12 | 1901 COURT AVENUE | | | CHARITON | IA | 50049 | 11/30/2022 | 4/15/2019 |
| 36) | 677 | 42,456 | 19-Nov-12 | 2220 HWY 175 WEST | PO BOX 149 | | ONAWA | IA | 51040 | 2/6/2023 | 4/15/2019 |
| 37) | 684 | 24,900 | 30-Dec-12 | 106 SMITH STREET | | | BLOOMFIELD | IA | 52537 | 10/31/2021 | 4/15/2019 |
| 38) | 699 | 32,600 | 19-Nov-12 | 1702 MAIN STREET | | | SCOTT CITY | KS | 67871 | OWNED | 4/15/2019 |
| 39) | 711 | 27,565 | 02-Jul-12 | 459 GRAND AVE | PO BOX 139B | | MEMPHIS | MO | 63555 | 7/31/2029 | 4/15/2019 |

## **EXHIBIT 2**
**Budget**

**Shopko**
**DIP Budget**
**($ in 000s)**

| ($ in 000s) | Petition 2018 Jan-19 01/19/19 | 2018 Jan-19 01/26/19 | 2018 Jan-19 02/02/19 | 2019 Feb-19 02/09/19 | 2019 Feb-19 02/16/19 | 2019 Feb-19 02/23/19 | 2019 Feb-19 03/02/19 | 2019 Mar-19 03/09/19 | 2019 Mar-19 03/16/19 | 2019 Mar-19 03/23/19 | 2019 Mar-19 03/30/19 | 2019 Mar-19 04/06/19 | 2019 Apr-19 04/13/19 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **I. Cash Flows** | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | |
| 1.) Sales Receipts | 13,891 | 41,113 | 36,301 | 33,340 | 40,047 | 35,845 | 37,087 | 42,522 | 41,819 | 40,631 | 40,357 | 38,263 | 40,457 | 481,675 |
| 2.) Proceeds from Rx Asset Sales | 322 | 289 | 6,701 | 19,378 | 10,117 | 10,339 | 124 | 2,901 | - | - | - | - | - | 50,171 |
| 3.)   Total Receipts | 14,213 | 41,402 | 43,002 | 52,718 | 50,164 | 46,184 | 37,211 | 45,423 | 41,819 | 40,631 | 40,357 | 38,263 | 40,457 | 531,846 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| 4.) Merchandise Disbursements | (161) | (5,307) | (8,814) | (13,503) | (9,137) | (4,373) | (1,450) | (8,130) | (7,941) | (8,671) | (7,856) | (4,733) | (3,780) | (83,856) |
| 5.) Payroll, Payroll Tax, & Benefits | (1,394) | (535) | (12,932) | (1,427) | (10,765) | (1,062) | (10,470) | (1,192) | (10,679) | (1,201) | (9,985) | (1,694) | (10,044) | (73,379) |
| 6.) Sales Tax | - | (8,445) | (3,224) | (874) | (1,749) | (2,331) | (874) | (745) | (1,490) | (3,724) | (745) | (745) | (1,602) | (26,547) |
| 7.) Other OpEx | (427) | (3,874) | (8,394) | (4,582) | (8,021) | (4,896) | (6,631) | (8,157) | (7,181) | (6,724) | (5,808) | (6,779) | (5,232) | (76,706) |
| 8.)   Subtotal | (1,982) | (18,161) | (33,364) | (20,387) | (29,671) | (12,663) | (19,425) | (18,223) | (27,291) | (20,320) | (24,393) | (13,950) | (20,658) | (260,488) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| 9.) Capital Expenditures | - | - | - | (89) | (72) | (27) | (30) | (47) | (22) | (120) | (25) | (24) | (81) | (539) |
| 10.) Interest & Financing | (2,417) | (432) | (3,423) | (53) | (30) | (46) | (1,958) | - | (133) | (61) | (59) | (2,015) | (80) | (10,707) |
| 11.) Restructuring Related | (6,300) | - | (86) | - | (8,049) | - | (2,705) | (3,020) | (5,428) | (2,480) | (2,480) | (3,055) | (10,005) | (43,608) |
| 12.)   Subtotal | (8,717) | (432) | (3,509) | (141) | (8,151) | (73) | (4,693) | (3,067) | (5,584) | (2,661) | (2,565) | (5,095) | (10,166) | (54,853) |
| 13.) **Total Disbursements** | (10,698) | (18,592) | (36,872) | (20,528) | (37,822) | (12,736) | (24,119) | (21,291) | (32,874) | (22,982) | (26,958) | (19,045) | (30,824) | (315,342) |
| 14.)   **Net Cash Flow** | 3,515 | 22,810 | 6,130 | 32,190 | 12,342 | 33,448 | 13,093 | 24,132 | 8,945 | 17,649 | 13,400 | 19,218 | 9,633 | 216,504 |
| **II. Financing** | | | | | | | | | | | | | | |
| 15.) Beginning Bank Cash | 50 | 675 | 6,933 | 4,640 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| 16.) Net Cash Flow | 3,515 | 22,810 | 6,130 | 32,190 | 12,342 | 33,448 | 13,093 | 24,132 | 8,945 | 17,649 | 13,400 | 19,218 | 9,633 | 216,504 |
| 17.) Revolver Borrowings / (Pay Down) | (2,890) | (16,552) | (8,423) | (36,780) | (12,342) | (33,448) | (13,093) | (24,132) | (8,945) | (17,649) | (13,400) | (19,218) | (9,633) | (216,504) |
| 18.)   Ending Bank Cash | 675 | 6,933 | 4,640 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| **II. Availability** | | | | | | | | | | | | | | |
| 19.) Gross Borrowing Base | 464,954 | 444,176 | 419,305 | 388,120 | 359,366 | 333,450 | 323,277 | 308,242 | 286,139 | 271,019 | 254,682 | 238,250 | 218,451 | 218,451 |
| 20.) Beginning Revolver Balance | 344,006 | 341,117 | 324,565 | 316,142 | 279,362 | 267,020 | 233,572 | 220,479 | 196,347 | 187,402 | 169,753 | 156,353 | 137,135 | 344,006 |
| 21.) Revolver Borrowings / (Pay Down) | (2,890) | (16,552) | (8,423) | (36,780) | (12,342) | (33,448) | (13,093) | (24,132) | (8,945) | (17,649) | (13,400) | (19,218) | (9,633) | (216,504) |
| 22.) Additional Paid in Capital | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 23.) Ending Revolver Balance | 341,117 | 324,565 | 316,142 | 279,362 | 267,020 | 233,572 | 220,479 | 196,347 | 187,402 | 169,753 | 156,353 | 137,135 | 127,502 | 127,502 |
| 24.) + Letters of Credit | 23,431 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 | 21,595 |
| 25.) + Accrued Interest & Fees | 127 | 594 | 1,001 | 1,460 | 1,908 | 2,325 | 823 | 1,206 | 1,581 | 1,941 | 2,287 | 676 | 997 | 997 |
| 26.) Total ABL Obligation | 364,675 | 346,753 | 338,737 | 302,416 | 290,522 | 257,492 | 242,896 | 219,148 | 210,578 | 193,288 | 180,235 | 159,406 | 150,093 | 150,093 |
| 27.) ABL Availability | 100,280 | 97,423 | 80,568 | 85,703 | 68,844 | 75,958 | 80,380 | 89,095 | 75,561 | 77,731 | 74,447 | 78,844 | 68,357 | 68,357 |
| 28.) **Total Gross Liquidity** | 100,955 | 104,356 | 85,208 | 85,753 | 68,894 | 76,008 | 80,430 | 89,145 | 75,611 | 77,781 | 74,497 | 78,894 | 68,407 | 68,407 |
| 29.) - Availability Block [Original] | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) |
| 30.) **Total Net Liquidity** | 50,955 | 54,356 | 35,208 | 35,753 | 18,894 | 26,008 | 30,430 | 39,145 | 25,611 | 27,781 | 24,497 | 28,894 | 18,407 | 18,407 |

## **EXHIBIT 3**

**Form of Stub Rent Agreement**

# AGREEMENT REGARDING
# PAYMENT OF STUB RENT

SHOPKO STORES OPERATING CO., LLC ("Debtor"), and [●] ("Landlord") enter into this *Agreement Regarding Payment of Stub Rent*, effective as of [_____], 2019 (this "Agreement").

## RECITALS

A.      Debtor leases the premises listed on Exhibit A from Landlord (the "Leased Premises," and all unexpired leases thereto, as such leases may have been amended, modified, or supplemented, the "Leases,"):

B.      On January 16, 2019 (the "Petition Date"), Debtor and certain of its affiliates (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nebraska (the "Court").

C.      The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered under the lead case, *In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064 (TLS) (collectively, the "Bankruptcy Cases"), pursuant to Bankruptcy Rule 1015(b) [Docket No. 25].  On January 18, 2019, the United States Trustee for the District of Nebraska (the "U.S. Trustee") appointed a committee of unsecured creditors (the "Creditors' Committee") [Docket No. 95].  No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

D.      Debtor has occupied the Leased Premises from the Petition Date through the last date of the billing cycle in effect as of the Petition Date, as stated in Exhibit A (the "Stub Period").

E.      Debtor has not paid to Landlord any rent, common area maintenance, or other monthly charges, cost, or expense chargeable to Debtor under any of the Leases (collectively, "Rent") for the Stub Period (the "Stub Rent").

F.      Debtor and Landlord agree that the Stub Rent owing under all Leases is totaled in Exhibit A.

G.      Landlord acknowledges that Landlord has received payment in full of all Rent obligations coming due under all Leases on and after the Petition Date.

H.      Landlord asserts that it is entitled to payment of the Stub Rent and certain other amounts as an administrative expense in the Bankruptcy Cases under under 11 U.S.C. § 503(b)(1)(A).   In consideration for the Landlord's agreements contained herein, Debtor stipulates that Landlord is entitled to payment of the Stub Rent as an administrative expense.

I.      The parties have agreed to settle their dispute regarding the  priority of  Stub Rent on the terms set forth below:

1

## AGREEMENT

1.      **Agreement to Payment of Stub Rent**.  Debtor agrees to treat the Stub Rent as a postpetition obligation of Debtor's estate and administrative expense under 11 U.S.C. §503(b)(1)(A) and to pay the Stub Rent as soon as reasonably practicable after execution of this Agreement.

2.      **Priority of Postpetition Rent**.  Subject to the payment to Landlord of all amounts due and owing under this Agreement, Landlord agrees that, with respect to each Lease and corresponding Rent obligations:  (a) in full satisfaction of any postpetition obligation owing by Debtor to Landlord under the Leases, Landlord shall have an administrative expense claim for Rent on a *per diem* basis (calculated on the actual number of days in the respective billing cycle) for the period from the end of the Stub Period through the date Debtor rejects such Leases; and (b) Landlord waives any other administrative claim against the Debtors' bankruptcy estates for the payment of Rent accruing from and after the Petition Date.  Nothing herein is a waiver of any claim that Landlord may have as a result of the rejection of any of the Leases by Debtor or any other claim unrelated to any of the Leases that arose prior to the Petition Date.

3.      **Payment of Net Rent Amount**.  Notwithstanding any provision in any of the Leases to the contrary, Debtor and Landlord agree that all Rent following the Stub Period shall be timely paid by Debtor in accordance with the terms of the Leases; *provided* that within seven days of the effective date of the rejection of any of the Leases (the "Rejection Date"), Landlord shall reimburse to Debtor, without setoff, recoupment, or counterclaim, the amount of Rent, calculated on a *per diem* basis, on account of the remaining days after the Rejection Date in the then-current billing cycle.

4.      **Vacating Rejected Premises**.    Pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code, Landlord consents to extend the deadline for Debtor to assume or reject the Leases through August 14, 2019, regardless of when the Debtors' chapter 11 plan (the "Plan") is confirmed.  To the extent the Debtors' chapter 11 plan (the "Plan") is confirmed on or before August 14, 2019, Landlord shall not object to the Plan on the basis that Debtor has not vacated or surrendered possession of the Leased Premises as of the date of confirmation of the Plan and waives any such conditions to the approval of the Plan; *provided* that neither this Agreement, nor the Debtors' continued use of the Leased Premises shall be construed as an assumption of the Lease by Debtor;  *provided*, *further*, that Debtor shall not be considered "holdover tenant" nor shall such use give rise to a new tenancy pursuant to any applicable nonbankruptcy law by virtue of the Debtors' continued use of the Leased Premises.  Furthermore, subject to Court approval of a disclosure statement for the Plan, Landlord agrees to support, and vote any claims it may have against the Debtors in favor of, the Plan.

5.      **Miscellaneous**.  Debtor and Landlord each further agree that: (a) the Court has exclusive jurisdiction and power over any and all matters arising from or related this Agreement, including any disputes with respect thereto and expressly submits to such jurisdiction of the Court; (b) it has the full requisite power and authority to execute and deliver this Agreement and to perform hereunder; (c) this Agreement constitutes the valid and binding agreement of Debtor and Landlord, each as the case may be, and is enforceable against such party in accordance with the

2

terms hereof; (d) this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

[*Remainder of page intentionally left blank*]

This Agreement is effective on the date set forth above.

<u>DEBTOR</u>:

**SHOPKO STORES OPERATING CO., LLC**, a Delaware limited liability company

By:_____
Name:_____
Its:_____


<u>LANDLORD</u>:

[●], a [●] company

By:_____
Name:_____
Its:_____

4

## EXHIBIT A

| The Leased Premises | Date of the Lease | Stub Rent Amount |
|---|---|---|
| [●] | [●] | [●] |