# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064-TLS |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR APPROVAL
## OF A SETTLEMENT WITH COLUMN FINANCIAL, INC.
## PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019
## AND AUTHORIZATION TO DEFER PERFORMANCE UNDER
## CERTAIN MASTER LEASES PURSUANT TO SECTION 365(D)(3)

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.     The Debtors respectfully seek approval of a settlement (the "Settlement"), as set forth and incorporated in this Motion  and the Settlement Term Sheet (the "Settlement Term Sheet") attached hereto as **Exhibit A**, between the Debtors and Column Financial, Inc. (together with its affiliates, successors and assignees, collectively, "Column").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]     A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Russell L. Steinhorst, Chief Executive Officer of Specialty Retail Shops Holding Corp., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 4] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions under chapter 11.

## Jurisdiction and Venue

2.       The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The bases for the relief requested herein are sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 and 1114 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 4001(d), and 9019, and Rule 9013-1.C of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

## Background

5.       The Debtors are engaged in the sale of general merchandise including clothing, accessories, electronics, and home furnishings, as well as company operated pharmacy and optical services departments. The Debtors are headquartered in Green Bay, Wisconsin, and as of the Petition Date, operated approximately 367 stores in 25 states throughout the United States, as well as e-commerce operations. The Debtors and their non-Debtor subsidiaries generated approximately $2.6 billion in revenue in fiscal year 2017 and currently employ approximately 14,000 people throughout the United States.

2

6.     On January 16, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 25].   No party has requested the appointment of a trustee or examiner in these chapter 11 cases.   On January 18, 2019, the United States Trustee for the District of Nebraska (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 95].

## Settlement

7.     On December 14, 2015, ShopKo Stores Operating Co., LLC ("Shopko") and certain affiliates of Spirit Realty, L.P. (the "Master Lease Landlords") entered into that certain Amended and Restated Master Lease (the "Master Lease").   Under the Master Lease, Shopko leases 81 stores, as well as the Debtors' headquarters and optical lab (collectively, the "Master Lease Properties").   Column is the lender to the Master Lease Landlords.

8.     The Master Lease Landlords are in default of their obligations to Column, and Column is in the process of obtaining ownership and control of the Master Lease Landlords. Indeed, any payments made to the Master Lease Landlords at this time are deposited into a lock-box account maintained under Column's exclusive control.   In anticipation of that change of control, the Debtors began discussions with Column seeking support for their restructuring, including, among other things, rejecting certain Master Lease Properties and obtaining certain rent concessions.   After over a month of hard fought, arm's-length negotiations, these efforts bore fruit.

9.     On February 14, 2019, the Debtors and Column finalized the Settlement Term

Sheet.  Subject to Column obtaining control over the Master Lease Landlords and the Court's

approval of this Motion, the parties have agreed to the following key provisions:[3]

(a)     Commencing with accrued and unpaid rent with respect to January, 2019, the Master Lease Landlords will permit the Debtors to defer up to $15 million in rent and other obligations owed to the Master Lease Landlords as they come due under the Master Leases, until the earlier of (i) the occurrence of a Sale Trigger Event, and (ii) April 16, 2019, and the Master Lease Landlords shall receive an allowed superpriority administrative claim in such amounts deferred (including in respect of rent and other obligations payable prior to the Petition Date in January 2019 and any postpetition rent and other obligations that come due prior to Column's obtaining control over the Master Leases) pursuant to section 364(c)(1) of the Bankruptcy Code (the "Master Lease DIP Financing"), having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors (but junior to the Post-Petition Superpriority Claim,[4] the Pre-Petition Adequate Protection Superpriority Claim, and the Carve-Out), whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (but junior to the Post-Petition Superpriority Claim, the Pre-Petition Adequate Protection Superpriority Claim, and the Carve-Out) (the "Post-Petition Master Lease DIP Superpriority Claim"). For the avoidance of doubt, the Debtors are not seeking to defer rent or other obligations pursuant to this Motion on account of any properties not described in the Settlement Term Sheet.

(b)     Upon a Sale Trigger Event, the dismissal of the Debtors' chapter 11 cases, the conversion of the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, the failure of the Debtors to timely pay any third-party obligations as required under the Master Leases (subject to a reasonable opportunity to cure such failure), or the filing of a plan that is not an Acceptable Plan (each a "Trigger Event"), the Post-Petition Master Lease DIP Superpriority Claim shall cease to accrue (if the Master Lease DIP Financing has not then been fully funded) and shall in all cases be paid in full, in cash, to the account indicated below within three (3) business days of a Trigger Event.  Further, upon the earlier of (i) the occurrence of a

---

[3]   The below provisions are in summary form only.  To the extent anything in this Motion is inconsistent with the Settlement Term Sheet, the terms of the Settlement Term Sheet shall control.

[4]   Capitalized terms used herein but not defined have the meanings ascribed to them in the Settlement Term Sheet.

Trigger Event, and (ii) the date that the Master Lease DIP Financing has been fully funded, through the date of rejection and surrender of the Master Leases, any and all rent and other obligations in respect of the Master Leases shall be timely paid in full, in cash, in the manner indicated below in accordance with the terms of the Master Leases.

(c)    Subject to certain terms and conditions, the Debtors are authorized to reject the leases with respect to certain individual premises covered under the Master Lease.

(d)    The Master Lease Landlords shall reimburse the Debtors, without setoff, recoupment, or counterclaim (other than as specified in the Term Sheet) the amount of rent or other obligations owed to the Master Lease Landlords in respect of certain of the Master Lease Properties, calculated on a *per diem* basis, on account of the remaining days after such stores are surrendered in the then-current billing cycle.

(e)    Subject to Court approval of a disclosure statement for an Acceptable Plan, the Master Lease Landlords agree to support, and vote any claims they may have against the Debtors in favor of, the Acceptable Plan. Subject to certain terms and conditions, the Master Lease Landlords shall not object to an Acceptable Plan on the basis that the Debtors have not vacated or surrendered possession of certain Master Lease Properties as of the date of confirmation of an Acceptable Plan and waive any such conditions to the approval of an Acceptable Plan.

(f)    The Master Lease Landlords shall waive any the Post-Petition Master Lease DIP Superpriority Claim upon consummation of an Acceptable Plan and shall not receive a distribution on account thereof under the Acceptable Plan.

(g)    The Debtors shall reimburse Column for the cost and expenses of Column's professionals incurred in connection with the Master Lease Properties; *provided* that the Debtors shall not be obligated to reimburse or pay any of the foregoing amounts in excess of $1,000,000 in the aggregate.

10.    Absent the Settlement provided for herein, the Debtors would likely face significant obstacles in consummating their efforts to right-size their store footprint and conduct a value-maximizing plan sponsor marketing process.  Given that the Master Lease Properties are all governed by the Master Leases, Column would likely argue that the Debtors cannot assume

the leases for certain Master Lease Properties while rejecting others.[5]  If Column were to succeed

on such arguments, the Debtors' business plan and ability to consummate a going concern

transaction would be severely jeopardized.

11.     Additionally, the proposed rent concessions would substantially improve the

Debtors' liquidity to the benefit of all the Debtors' stakeholders.   Accordingly, the Debtors

believe that the compromises memorialized in the Settlement herein represent a sound exercise

of the Debtors' business judgment and should be approved.

**Basis for Relief**

12.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may

approve a compromise or settlement."  *See* Fed. R. Bankr. P. 9019(a).  "To minimize litigation

and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in

bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). *See also Will v.*

*Northwestern Univ. (In re Nutraquest, Inc.*), 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are

favored [in bankruptcy]"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2,

2006) (same); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same).

Settlements are considered a "normal part of the process of reorganization" and a "desirable and

wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly."

*Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602 (5th Cir. 1980) (decided

under the Bankruptcy Act).

13.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate

notice and a hearing, approve a compromise or settlement so long as the proposed settlement is

fair, equitable, and in the best interest of the estate.  *See, e.g., In re Carlson*, No. 04-41534

---

[5]     The Debtors reserve all rights to argue the Master Leases and the leases thereunder are not a single, integrated
agreement.

(TJM), 2008 WL 345606, at *1 (Bankr. D. Neb. Jan. 7, 2008) (citation omitted). Ultimately, "the decision to approve a settlement under [Bankruptcy] Rule 9019 is within the discretion of the bankruptcy judge." *In re Racing Servs., Inc.*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005).When determining whether a settlement is fair, equitable, and in the best interest of an estate, courts in Nebraska consider, among other factors, "the expense, inconvenience, and delay associated with [the dispute] and the paramount interest of the creditors and a proper deference to their reasonable views." *In re Brodkey Bros., Inc.*, No. 13-80203 (TLS), 2013 WL 5636484, at *7 (Bankr. D. Neb. Oct. 15, 2013) (citing *Drexel Burnham Lambert, Inc., v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.),* 730 F.2d 1128, 1135 (8th Cir. 1984) (quoting *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929))); *ReGen Capital III, Inc. v. Official Comm. of Unsec. Creditors (In re Trism, Inc.),* 282 B.R. 662, 667 (B.A.P. 8th Cir.2002)).  For example, courts in Nebraska have found that a settlement is in the best interests of the estate when it reduces attorneys' fees that would otherwise be incurred. *See, e.g.*, *Carlson*, 2008 WL 345606, at *2.

14.    Importantly, it is well established that a proponent of a settlement need not convince the court that a settlement is the best possible compromise, but only that the settlement falls within the "range of reasonable compromises." *Carlson*, 2008 WL 345606, at *2 (citing *PW Enter., Inc. v. Kaler (In re Racing Servs., Inc.),* 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005)).

15.    The Debtors believe that the Settlement is fair, equitable, in the best interests of the Debtors' estates, appropriate in the Debtors' business judgment, and easily falls within the range of reasonable outcomes.  As set forth above, the Settlement is the culmination of hard-fought, good faith negotiation and represents total and fair mitigation of litigation risk regarding the Debtors' store closings to which the Debtors would otherwise be exposed.  Additionally, the

Settlement will substantially improve the Debtors' liquidity and maximize value for the Debtors'

estates.  Accordingly, the Debtors respectfully request that the Court approve the Settlement as

such action is a reasonable exercise of the Debtors' business judgment and in the best interest of

their bankruptcy estates.

16.    Additionally, the Debtors also request authorization, pursuant to Section

365(d)(3) of the Bankruptcy Code, to extend their time for performance under the Master Lease

Properties through March 17. 2019.  Just cause for this extension exists as Column, the ultimate

party in interest in respect of the Master Leases, has agreed to defer (and potentially fully waive)

those and other obligations under the Master Leases (potentially aggregating to $15 million)

conditioned solely on their obtaining control over the Master Lease Landlords prior to the

expiration of such sixty (60) day period (March 17, 2019).  Without the requested relief, the

Debtors may be required to incur significant unnecessary strains on their liquidity while Column,

the ultimate party in interest under the Master Leases undertakes the process of obtaining control

over the Master Lease Landlords.  Moreover, because all Master Lease payments made prior to

the date Colum takes control over the Master Lease Properties are deposited into a lock-box

account under Column's exclusive control, no party in interest is harmed by the deferral of

postpetition rent requested herein.   In the unlikely event that Column does not obtain control

over the Master Lease Landlords prior to such date, the Debtors will be required to make the

deferred rent payments on March 17, 2019 (which in any event will be trapped into the above-

mentioned lock-box).  Out of an abundance of caution, to the extent the Court does not grant the

Debtors' extension under 365(d)(3) of the Bankruptcy Code, the Debtors request that the Court

approve the Settlement *nunc pro tunc* to February 14, 2019 to ensure the Debtors receive the full

benefit of the Settlement.

**Notice**

17.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) counsel to the Committee; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; (j) Column; (k) the Master Lease Landlords; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

**No Prior Request**

18.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the relief sought herein, and granting such other relief as the Court deems appropriate.

Dated:  February 14, 2019          /s/ *Lauren R. Goodman*
   Omaha, Nebraska          James J. Niemeier (NE Bar No. 18838)
                                    Michael T. Eversden (NE Bar No. 21941)
                                      Lauren R. Goodman (NE Bar No. 24645)
                                      **MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
                                      First National Tower, Suite 3700
                                      1601 Dodge Street

                 Omaha, Nebraska 68102
                 Telephone:   (402) 341-3070
                 Facsimile:   (402) 341-0216
                 Email:        jniemeier@mcgrathnorth.com
                                       meversden@mcgrathnorth.com
                                       lgoodman@mcgrathnorth.com

                 - and -

                 James H.M. Sprayregen, P.C.
                 Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
                 Travis M. Bayer (admitted *pro hac vice*)
                 **KIRKLAND & ELLIS LLP**
                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                 300 North LaSalle
                 Chicago, Illinois 60654
                 Telephone:   (312) 862-2000
                 Facsimile:   (312) 862-2200
                 Email:        james.sprayregen@kirkland.com
                                       patrick.nash@kirkland.com
                                       travis.bayer@kirkland.com

                 - and -

                 Steven Serajeddini (admitted *pro hac vice*)
                 Daniel Rudewicz (admitted *pro hac vice*)
                 **KIRKLAND & ELLIS LLP**
                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                 601 Lexington Avenue
                 New York, New York 10022
                 Telephone:   (212) 446-4800
                 Facsimile:   (212) 446-4900
                 Email:        steven.serajeddini@kirkland.com
                                       daniel.rudewicz@kirkland.com

                 *Co-Counsel to the Debtors*

## Exhibit A

**Settlement Term Sheet**

| **Shopko Master Lease Term Sheet** | |
|---|---|
| **Overview** | This Term Sheet is between Specialty Retail Shops Holding Corp. and its subsidiaries as debtors and debtors-in- possession (collectively the "**Debtors**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Column Financial, Inc. ("**Column**" and together with the Debtors, the "**Parties**"), the lender to Spirit SPE Portfolio 2006-1, LLC, Spirit SPE Portfolio 2006-2, LLC, Spirit SPE Portfolio 2006-3, LLC , and SMTA Shopko Portfolio 1, LLC (collectively, the "**Master Lease Landlords**").  The Master Lease Landlords are in default of their obligations to Column, and Column is in the process of foreclosing on the Master Lease Landlords interests in eighty-one (81) of the Debtors' stores, the Debtors' headquarters, and the Debtors' optical lab (collectively, the "**Master Lease Properties**").  Except as otherwise specified herein, the Parties obligations under this Term Sheet shall be subject to, and become effective upon, Column obtaining control over the Master Leases (defined below) and the approval of the Bankruptcy Court. |
| **Post-Petition Master Lease DIP Financing** | Upon Column's obtaining control over the Master Leases, the Debtors shall be entitled to defer all rent or other obligations owed to the Master Lease Landlords (up to a maximum of $15,000,000, inclusive of rent and other obligations payable prior to the Petition Date in January 2019, any postpetition rent and other obligations that come due prior to Column's obtaining control over the Master Leases, and any amounts previously deferred pursuant to § 365(d)(3) of the Bankruptcy Code (the "**Master Lease DIP Financing**")) as they come due under those certain leases between the Debtors and the Master Lease Landlords (the "**Master Leases**" until the earlier of (i) the occurrence of a Sale Trigger Event,[1] and (ii) April 16, 2019, and the Master Lease Landlords shall receive an allowed superpriority administrative claim in such amounts deferred (including in respect of rent and other obligations payable prior to the Petition Date in January 2019 and including Column's cost and expenses of counsel and the other obligations to the extent set forth under this Term Sheet) pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors (but junior to the Post-Petition Superpriority Claim, the Pre-Petition Adequate Protection Superpriority Claim, and the Carve-Out), whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (but junior to the Post-Petition Superpriority Claim, the Pre-Petition Adequate Protection Superpriority Claim, and the Carve-Out) (the "**Post-Petition Master Lease DIP Superpriority Claim**"). |

---

[1]    Capitalized terms used herein but not defined have the meanings ascribed to them in the Final Financing Order.

Upon a Sale Trigger Event, the dismissal of the Debtors' chapter 11 cases, the conversion of the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, the failure of the Debtors to timely pay any third-party obligations as required under the Master Leases in respect of a Master Lease Property (subject to a reasonable opportunity to cure such failure), or the filing of a plan that is not an Acceptable Plan (as defined below) (each a "**Trigger Event**"), the Post-Petition Master Lease DIP Superpriority Claim shall cease to accrue (if the Master Lease DIP Financing has not then been fully funded) and shall in all cases be paid in full, in cash, to the account indicated below (the "**Deposit Account**") within three (3) business days of a Trigger Event. Further, upon the earlier of (i) the occurrence of a Trigger Event, and (ii) the date that the Master Lease DIP Financing has been fully funded, through the date of rejection and surrender of the Master Leases, any and all rent and other obligations in respect of the Master Leases shall be timely paid in full, in cash, to the Deposit Account in accordance with the terms of the Master Leases.

All payments made in connection with the Master Leases shall be paid by wire transfer to the following account:

> Bank Name: Wells Fargo, National Association
> ABA Number: 121000248
> Account Number: 4668492622
> Account Name: SMTA ShopKo Portfolio I, LLC for the benefit of Column Financial, Inc., as Agent for the benefit of Lender

| | |
|---|---|
| **Authorization to Reject Individual Master Lease Properties** | Notwithstanding the provisions of the Master Leases, the Debtors may terminate their obligations to continue to operate the Master Lease Properties set forth in **Exhibit 1**, and so long as such stores are surrendered in accordance with the terms and conditions specified in the applicable Master Lease (the "**Return Conditions**") by no later than May 14, 2019, the Debtors shall not be obligated to pay the Master Lease Landlords any rent or other obligations that become due after May 14, 2019 in connection with the Master Leases related to the Master Lease Properties identified in **Exhibit 1**. Commencing May 15, 2019, the Debtors shall be obligated to timely pay in full, in cash, all rent and other obligations specified in the Master Leases with respect to any Master Lease Property identified in **Exhibit 1** that is not surrendered in accordance with the Return Conditions by no later than May 14, 2019.<br><br>For the sake of clarity, the Debtors shall in all circumstances (i) timely pay all third-party obligations as required under the Master Leases in respect of the Master Lease Properties identified in **Exhibit 1** payable prior to the date of surrender, (ii) pay, within three (3) business days after receipt of an invoice therefor from the Master Lease Landlords, the allocable share of all such third-party obligations payable after the date of surrender but attributable to a period prior to the date of surrender in the then current billing cycle, calculated on a *per* |

2

<table>
<tr><td></td><td>

*diem* basis, on account of the days prior to the date of surrender, and (iii) pay, within three (3) business days after the occurrence of a Trigger Event, the Post-Petition Master Lease DIP Superpriority Claim as set forth above.

The Master Lease Landlords shall reimburse the Debtors, without setoff, recoupment, or counterclaim (other than any amounts as may be owed by the Debtors in connection with the immediately preceding paragraph) the amount of rent or other obligations owed to the Master Lease Landlords in respect of the Master Lease Properties identified in **Exhibit 1**, calculated on a *per diem* basis, on account of the remaining days after such stores are surrendered in the then-current billing cycle.

The Master Lessor's agreement to permit the Debtors to terminate and surrender the Master Lease Properties identified in **Exhibit 1** shall not be deemed a general consent to permit the Debtors to reject individual properties subject to the Master Leases and is without prejudice to, and shall have no effect upon, the Master Lessor's rights at law as a lessor under a master lease to preclude the Debtors from terminating their obligations in respect to any Master Lease Property other than as expressly provided for herein.

</td></tr>
<tr><td>

**Support of an Acceptable Plan**

</td><td>

Subject to Bankruptcy Court approval of a disclosure statement for an Acceptable Plan, the Master Lease Landlords agree to support, and vote any claims they may have against the Debtors in favor of, the Acceptable Plan.

 "Acceptable Plan" means a chapter 11 plan for the Debtors' that (a) provides for (i) the rejection of the Master Leases, (ii) the entry by the Debtors, or their successors and assigns, as applicable, and the Master Lease Landlords into a new master lease (the "**New Master Lease**") on the effective date of the Acceptable Plan (the "**Effective Date**")  that provides for the continued operation of the Master Lease Properties identified in **Exhibit 2** (with such New Master Lease to be on the same terms as the Master Leases with only such changes as necessary to reflect the Master Lease Properties and the revised rent terms (commencing January 15, 2020) identified on **Exhibit 2**, and such other changes as the parties may agree) and (b) in connection therewith, the Debtors or their successors or assigns, as applicable, have demonstrated adequate assurance of future performance of all obligations in respect of the Master Lease Properties identified in **Exhibit 2**.

Commencing May 15, 2019, the Debtors shall timely pay in full, in cash, all rent and other obligations specified in the Master Leases (if the Effective Date occurs before May 15, 2019) or the New Master Leases (if the Effective Date occurs on or after May 15, 2019), as applicable, with respect to any Master Lease Property identified in **Exhibit 2**; *provided* that subject to confirmation of an Acceptable Plan, commencing January 15, 2020 the Debtors shall pay the rates specified in **Exhibit 2** with respect to the Master Lease Properties identified on **Exhibit 2**.

</td></tr>
</table>

3

| | For the sake of clarity, if the Master Lease DIP Financing has not then been fully funded by the Effective Date of an Acceptable Plan, the Master Lease Landlords shall waive all rent and other obligations payable to the Master Lease Landlords under the New Master Leases until the earlier of May 15, 2019, and the date that the Master Lease DIP Financing would have been fully funded. |
|---|---|
| **Continued Use of Premises** | The Master Lease Landlords shall not object to an Acceptable Plan on the basis that the Debtors have not vacated or surrendered possession of the Master Lease Properties identified on **Exhibit 1** as of the date of confirmation of an Acceptable Plan and waive any such conditions to the approval of an Acceptable Plan; *provided* that the Debtors are otherwise in compliance with their obligations described in this Term Sheet; *provided, further*, that neither this Term Sheet, nor the Debtors' continued use of the Master Leases Premises shall be construed as an assumption of the Master Leases by the Debtors; *provided*, *further*, that the Debtors shall not be considered "holdover tenant" nor shall such use give rise to a new tenancy pursuant to any applicable nonbankruptcy law by virtue of the Debtors' continued use of the Master Leases Premises through the effective date of an Acceptable Plan. |
| **Post-Petition Master Lease DIP Superpriority Claim Waiver** | The Master Lease Landlords shall waive the Post-Petition Master Lease DIP Superpriority Claim upon consummation of an Acceptable Plan and shall not receive any distribution in respect of the Post-Petition Master Lease DIP Superpriority Claim under the Acceptable Plan. |
| **Expenses** | Effective upon the Parties agreement to the terms hereof, the Debtors shall immediately reimburse Column for its outstanding cost and expenses of its counsel, Orrick, Herrington & Sutcliffe LLP, incurred to date in connection with the Master Lease Properties and the Debtors' chapter 11 cases, and shall be obligated to pay the ongoing reasonable costs and expenses of its professionals during the Debtors' chapter 11 cases promptly upon receipt of acceptable invoices; *provided* that the Debtors shall not be obligated to reimburse or pay any of the foregoing amounts in excess of $1,000,000 in the aggregate. |

## **Exhibit 1**

**Terminated Master Lease Properties**

| No. | Store No. | Property N | Chain Nan | Address | City | State | Current Rent | Closing List |
|---|---|---|---|---|---|---|---|---|
| 1 | L00010 | Marquette | Shopko | 1150 West | Marquette | MI | 805,520 | Yes |
| 2 | L00016 | Escanaba | Shopko | 2530 First | Escanaba | MI | 608,037 | Yes |
| 3 | L00019 | Watertown | Shopko | 701 South | Watertown | WI | 675,597 | Yes |
| 4 | L00023 | Hutchinson | Shopko | 125 Main S | Hutchinsor | MN | 519,690 | Yes |
| 5 | L00026 | Beloit - S0( | Shopko | 2761 Prairi | Beloit | WI | 701,582 | Yes |
| 6 | L00027 | Racine - S( | Shopko | 4801 Wash | Racine | WI | 722,369 | Yes |
| 7 | L00028 | Kimberly - | Shopko | 800 E. Mae | Kimberly | WI | 754,192 | Yes |
| 8 | L00031 | Kenosha - | Shopko | 5300 52nd | Kenosha | WI | 660,006 | Yes |
| 9 | L00035 | Rochester | Shopko | 2820 High | Rochester | MN | 597,644 | Yes |
| 10 | L00041 | Austin - S0 | Shopko | 1209 18th | Austin | MN | 649,613 | Yes |
| 11 | L00048 | Norfolk - S | Shopko | 2005 Krenz | Norfolk | NE | 597,644 | Yes |
| 12 | L00049 | Aberdeen | Shopko | 500 N. High | Aberdeen | SD | 724,398 | Yes |
| 13 | L00055 | Stevens Pc | Shopko | 1200 Main | Stevens Pc | WI | 322,208 | Yes |
| 14 | L00058 | Worthingto | Shopko | 1755 North | Worthingto | MN | 561,265 | Yes |
| 15 | L00060 | Albert Lea | Shopko | 2610 North | Albert Lea | MN | 493,706 | Yes |
| 16 | L00061 | St. Cloud - | Shopko | 501 Highw | St. Cloud | MN | 556,068 | Yes |
| 17 | L00067 | Twin Falls | Shopko | 1649 Pole | Twin Falls | ID | 498,903 | Yes |
| 18 | L00070 | Spokane - | Shopko | 13414 East | Spokane | WA | 233,861 | Yes |
| 19 | L00073 | Union Gap | Shopko | 2530 Rudk | Union Gap | WA | 363,783 | Yes |
| 20 | L00090 | Grafton - S | Shopko | 1771 Wisc | Grafton | WI | 691,188 | Yes |
| 21 | L00091 | Logan - S0 | Shopko | 1341 North | Logan | UT | 389,768 | Yes |
| 22 | L00116 | Sheboygar | Shopko | 518 S. Tay | Sheboygar | WI | 623,628 | Yes |
| 23 | L00123 | Houghton - | Shopko | 900 West I | Houghton | MI | 514,493 | Yes |
| 24 | L00145 | Monmouth | Shopko | 1190 North | Monmouth | IL | 358,586 | Yes |
| 25 | L00637 | Attica - Hoi | Shopko Ho | 1215 East | Attica | IN | 162,104 | Yes |
| 26 | L00638 | Monticello | Shopko Ho | 200 West E | Monticello | IL | 176,299 | Yes |
| 27 | L00639 | Rockville - | Shopko Ho | 840 N. US | Rockville | IN | 73,313 | Yes |
| 28 | L00640 | Tuscola - H | Shopko Ho | 700 Progre | Tuscola | IL | 157,978 | Yes |
| 29 | L00643 | Newaygo - | Shopko Ho | 91 West Pi | Newaygo | MI | 151,918 | Yes |
| 30 | L00644 | Clare - Hor | Shopko Ho | 11250 Nort | Clare | MI | 192,880 | Yes |
| 31 | L00650 | Dowagiac | Shopko Ho | 56419 Pok | Dowagiac | MI | 64,792 | Yes |
| 32 | L00651 | Hart - Hom | Shopko Ho | 2278 North | Hart | MI | 189,247 | Yes |
| 33 | L00674 | Clarion - H | Shopko Ho | 1003 Centr | Clarion | IA | 137,600 | Yes |
| 34 | L00689 | Mount Ayr | Shopko Ho | 201 North I | Mount Ayr | IA | 164,430 | Yes |
| 35 | L00703 | Burlington | Shopko Ho | 300 Cross | Burlington | KS | 127,043 | Yes |
| 36 | L00707 | Albany - H | Shopko Ho | 101 South | Albany | MO | 47,843 | Yes |
| 37 | L00708 | Carrollton - | Shopko Ho | 812 Harves | Carrollton | MO | 47,182 | Yes |
| 38 | L00710 | Gallatin - H | Shopko Ho | 212 N Mair | Gallatin | MO | 47,095 | Yes |
| 39 | L00711 | Memphis - | Shopko Ho | Highway 1: | Memphis | MO | 54,018 | Yes |
| 40 | L00716 | Mount Carr | Shopko Ho | 1520 West | Mount Carr | IL | 111,444 | Yes |
| 41 | L00717 | Minerva - I | Shopko Ho | 825 Valley | Minerva | OH | 193,868 | Yes |
| 42 | L00719 | Woodsfielc | Shopko Ho | 378 Lewisv | Woodsfielc | OH | 165,756 | Yes |
| 43 | L00756 | Lander - Hi | Shopko Ho | 1255 West | Lander | WY | 87,775 | Yes |
| | | | | | | Total | $15,976,333 | 43 |

**Exhibit 2**

**Retained Master Lease Properties**

| No. | Store No. | Property Name | Chain Name |
|---|---|---|---|
| 1 | HQ | Green Bay - HQ S00000 | Shopko HQ |
| 2 | L00002 | Ashwaubenon - S00002 | Shopko |
| 3 | L00008 | Rothschild - S00008 | Shopko |
| 4 | L00009 | Marshfield - S00009 | Shopko |
| 5 | L00011 | Kingsford - S00011 | Shopko |
| 6 | L00012 | Wisconsin Rapids - S00012 | Shopko |
| 7 | L00015 | Appleton - S00015 | Shopko |
| 8 | L00017 | St. Cloud - S00017 | Shopko |
| 9 | L00021 | Mankato - S00021 | Shopko |
| 10 | L00022 | Mitchell - S00022 | Shopko |
| 11 | L00025 | Marshall - S00025 | Shopko |
| 12 | L00030 | Janesville - S00030 | Shopko |
| 13 | L00037 | Lake Hallie - S00037 | Shopko |
| 14 | L00042 | Oshkosh - S00042 | Shopko |
| 15 | L00050 | Fond du Lac - S00050 | Shopko |
| 16 | L00051 | Fort Atkinson - S00051 | Shopko |
| 17 | L00052 | Mason City - S00052 | Shopko |
| 18 | L00054 | Watertown - S00054 | Shopko |
| 19 | L00072 | Lewiston - S00072 | Shopko |
| 20 | L00075 | Missoula - S00075 | Shopko |
| 21 | L00112 | Helena - S00112 | Shopko |
| 22 | L00114 | Duluth - S00114 | Shopko |
| 23 | L00119 | Dixon - S00119 | Shopko |
| 24 | L00120 | Monroe - S00120 | Shopko |
| 25 | L00125 | Freeport - S00125 | Shopko |
| 26 | L00130 | River Falls - S00130 | Shopko |
| 27 | L00133 | Belvidere - S00133 | Shopko |
| 28 | L00140 | Jacksonville - S00140 | Shopko |
| 29 | L00615 | Clintonville - Hometown 615 | Shopko Hometown |
| 30 | L00621 | Manistique - Hometown 621 | Shopko Hometown |
| 31 | L00625 | Dyersville - Hometown 625 | Shopko Hometown |
| 32 | L00626 | Lancaster - Hometown 626 | Shopko Hometown |
| 33 | L00630 | Arcadia - Hometown 630 | Shopko Hometown |
| 34 | L00671 | Waukon - Hometown 671 | Shopko Hometown |
| 35 | L00680 | Perry - Hometown 680 | Shopko Hometown |
| 36 | L00733 | Fergus Falls - Hometown 733 | Shopko Hometown |
| 37 | L00739 | Glenwood - Hometown 739 | Shopko Hometown |
| 38 | L00768 | Glasgow - Hometown 768 | Shopko Hometown |
| 39 | L00772 | Powell - Hometown 772 | Shopko Hometown |
| 40 | OL980 | De Pere - Optical Lab S00005 | Shopko Optical Lab |

| Address | City | State | Current Rent | Revised Rent | Change from Current Rent |
|---|---|---|---|---|---|
| 700 Pilgrim Way | Green Bay | WI | $1,964,433 | $1,178,660 | ($785,773) |
| 301 Bay Park Square | Ashwaubenon | WI | 1,397,966 | 1,067,442 | (330,524) |
| 1105 E. Grand Avenue | Rothschild | WI | 780,060 | 773,793 | (6,267) |
| 1306 N. Central Avenue | Marshfield | WI | 843,854 | 717,276 | (126,578) |
| 500 South Carpenter Avenue | Kingsford | MI | 665,203 | 565,423 | (99,781) |
| 1100 E. Riverview Expressway | Wisconsin Rapids | WI | 935,442 | 789,480 | (145,962) |
| 1000 W. Northland Avenue | Appleton | WI | 1,086,152 | 941,611 | (144,542) |
| 4161 Second Street South | St. Cloud | MN | 1,023,790 | 895,385 | (128,404) |
| 1850 Madison Avenue | Mankato | MN | 1,003,002 | 842,902 | (160,099) |
| 1900 North Main Street | Mitchell | SD | 743,157 | 631,683 | (111,474) |
| 1200 Susan Drive | Marshall | MN | 753,551 | 403,551 | (350,000) |
| 2500 US Highway 14 | Janesville | WI | 774,338 | 700,323 | (74,015) |
| 2677 S. Prairie View Road | Lake Hallie | WI | 623,628 | 596,349 | (27,279) |
| 1300 Koeller Street | Oshkosh | WI | 878,276 | 328,276 | (550,000) |
| 616 West Johnson Street | Fond du Lac | WI | 951,033 | 351,033 | (600,000) |
| 1425 Janesville Avenue | Fort Atkinson | WI | 441,737 | 375,476 | (66,260) |
| 615 South Monroe | Mason City | IA | 634,022 | 284,022 | (350,000) |
| 700 9th Avenue SE | Watertown | SD | 722,369 | 541,439 | (180,930) |
| 2120 Thain Grade | Lewiston | ID | 291,026 | 247,372 | (43,654) |
| 2510 South Reserve Street | Missoula | MT | 862,686 | 733,283 | (129,403) |
| 3101 Montana Avenue | Helena | MT | 711,975 | 605,179 | (106,796) |
| 801 West Central Entrance | Duluth | MN | 909,458 | 409,458 | (500,000) |
| 1350 North Galena Avenue | Dixon | IL | 424,620 | 360,927 | (63,693) |
| 405 West 8th Street | Monroe | WI | 616,393 | 562,678 | (53,715) |
| 555 West South Street | Freeport | IL | 449,807 | 382,336 | (67,471) |
| 1777 Paulson Road | River Falls | WI | 622,378 | 529,021 | (93,357) |
| 1400 Big Thunder Boulevard | Belvidere | IL | 660,006 | 294,588 | (365,419) |
| 1964 West Morton Avenue | Jacksonville | IL | 784,732 | 494,026 | (290,706) |
| 291 S. Main St | Clintonville | WI | 156,888 | 143,071 | (13,817) |
| 815 East Lakeshore Drive | Manistique | MI | 182,956 | 139,617 | (43,339) |
| 1201 12th Avenue SE | Dyersville | IA | 154,280 | 130,349 | (23,931) |
| 1625 US Highway 61 | Lancaster | WI | 166,988 | 138,764 | (28,224) |
| 1625 Blaschko Ave | Arcadia | WI | 161,675 | 142,759 | (18,916) |
| 819 11th Avenue SW | Waukon | IA | 164,632 | 132,502 | (32,131) |
| 1305 141st Street | Perry | IA | 95,965 | 90,533 | (5,432) |
| 226 E. Lincoln Avenue | Fergus Falls | MN | 174,665 | 93,059 | (81,606) |
| 710 Country Road 21 South | Glenwood | MN | 156,833 | 119,001 | (37,832) |
| 804 Highway 2 West | Glasgow | MT | 243,143 | 229,380 | (13,763) |
| 1005 US Highway 14A | Powell | WY | 205,236 | 151,444 | (53,792) |
| 1450 West Main Avenue | De Pere | WI | 254,648 | 254,648 | - |
| | | **Total** | $24,673,005 | $18,368,120 | ($6,304,885) |

**Privileged & Confidential**

| Closing List |
| --- |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| No |
| 40 |