**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064 (TLS) |
| Debtors. | ) (Jointly Administered) |

**STATEMENT OF THE SPECIAL COMMITTEE
OF INDEPENDENT DIRECTORS OF SPECIALTY RETAIL SHOPS
HOLDING CORP. IN SUPPORT OF THE DEBTORS' DISCLOSURE
STATEMENT MOTION AND PROPOSED CONFIRMATION SCHEDULE**

The Special Committee of Independent Directors (the "Special Committee") of Specialty Retail Shops Holding Corp. ("Specialty Retail," and collectively with the other debtors, "Shopko"), by its undersigned counsel, Willkie Farr & Gallagher LLP ("Willkie Farr"), hereby files this statement (this "Statement") in support of the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection therewith, (IV) Scheduling Certain Dates with Respect thereto and (V) Granting Related Relief* (the "Disclosure Statement Motion") [Docket No. 412], and respectfully states as follows:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); ShopKo Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin, 54304.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *First Amended Chapter 11 Plan of Specialty Retail Shops Holdings Corp. and its Debtor Affiliates* [Docket No. 393] (the "Plan").

28211730

**Preliminary Statement**

1. The Special Committee is comprised of the two independent members of Shopko's board of directors and has been delegated authority to investigate certain insider transactions related to the Debtors and the chapter 11 cases. Since December 2018, the Special Committee has been conducting an active investigation of certain transactions between the Debtors and their equity sponsors (the "Investigation"). That Investigation remains ongoing and is described in more detail below. The Special Committee is sensitive to the complexities and costs of these chapter 11 cases and appreciates the Debtors' need to dual track the Investigation with the plan confirmation process. Time is of the essence to preserve value for all stakeholders.

2. The Special Committee has reviewed and approved the Debtors' proposed disclosure statement, with certain modifications to reflect the content herein, and proposed plan and supports the Debtors' efforts to seek approval of the Disclosure Statement Motion and commence solicitation at this time. In particular, the Special Committee has focused on the release provisions contained in the proposed plan. Although the proposed release provisions would, if approved, extend to the Debtors' equity sponsors, the proposed disclosure statement and proposed plan are abundantly clear that such releases remain subject to the Special Committee's Investigation. To clarify, there will be no releases given to the Debtors' equity sponsors under the proposed plan unless and until the Special Committee completes the Investigation and affirmatively approves such releases in light of the facts and circumstances in existence at the time. The Special Committee has not yet reached any conclusions or made any determinations as to whether any legal or factual bases exist that may give rise to estate causes of action against equity sponsors or any other insider. As such, the Special Committee has required that the Debtors reserve all rights to modify the proposed release provisions of the proposed plan.

3. With this reservation in place, the Special Committee respectfully submits that it is appropriate and in the best interests of these estates to move the chapter 11 plan process forward. Over the course of the next several weeks, the Special Committee expects to continue the Investigation and hopes to make significant progress toward concluding the Investigation. Prior to confirmation, the Special Committee will work with the Debtors and the official committee of unsecured creditors to make any modifications to the proposed plan that become necessary as a result of the Investigation and will continue to keep the Court and parties in interest informed of significant developments. For these reasons and the reasons set forth below, the Special Committee respectfully requests that the Court approve the Disclosure Statement Motion.

### Background[3]

4. In December 2017, to ensure a thorough and fair process with respect to the Debtors' review of their strategic alternatives, Shopko's board of directors (the "Board of Directors") appointed Steve Winograd and Mohsin Meghji to the Board of Directors as independent directors. Each of the independent directors have extensive experience serving on boards of managers and boards of directors in distressed situations. On November 26, 2018, the Board of Directors authorized the formation of the Special Committee to, among other things, review matters regarding transactions or negotiations which the Special Committee determines in whole or in part may result in conflicts of interest. The Special Committee retained Willkie Farr and Ducera Partners LLC ("Ducera," together with Willkie Farr, the "Advisors") as independent counsel and independent financial advisor, respectively, to assist the Independent Directors in their review. As part of this mandate, the Special Committee commenced the Investigation, among

---

[3] The summary below is based on the Special Committee's preliminary review of the relevant documents. Based on the Special Committee's ongoing investigation, the information reflected in the summaries may require modifications.

3

other things, into certain dividend payments to the Debtors' direct or indirect equity owners to determine whether the Debtors' estates may have any claims related to such transactions.

5. Prior to the Petition Date, the Special Committee commenced a detailed review of the transactions involving the Debtors to determine whether there is a legal and factual basis for claims against the Debtors' equity owners. The Investigation has included diligence requests to the Debtors and Sun Capital Partners ("Sun Capital"), Shopko's largest beneficial equity holder. The Special Committee is continuing to seek additional diligence items from the Debtors, Sun Capital and others.

6. The Advisors have received several rounds of diligence materials from Shopko in response to its requests. Diligence materials have included email correspondence from a number of custodians, including senior management of the company. Willkie Farr is conducting a review of this correspondence and other documents. Ducera is also conducting a solvency analysis of Shopko to determine whether it was solvent on certain dates relevant to the Investigation. The Advisors have reviewed over 40,000 documents as of the filing of this statement. The Advisors will plan to shortly commence interviews with a number of Shopko's current and former senior management team.

7. The Advisors sent diligence requests to counsel to Sun Capital on January 11, 2019. After finalizing a non-disclosure agreement with Sun Capital, the Advisors have recently received voluntary productions of documents in response to these requests. Diligence materials have included email correspondence from a number of custodians who were substantively involved with Sun Capital's position in Shopko. Willkie Farr is conducting a review of Sun Capital's email correspondence and documents and other diligence gathering is ongoing, and the Advisors hope to schedule interviews with Sun Capital.

8. Among other things, the Special Committee is currently investigating several dividend payments Shopko made to its direct or indirect equity owners since its acquisition by a group of equity holders in 2005. A summary the circumstances of these payments is below:

- **May 14, 2007**, Shopko Holding Company, LLC, formerly Shopko Holding Company, Inc., ("Shopko Holding") paid a dividend in the amount of $55 million to its parent company, Specialty Retail Shops Holding Corp. ("Specialty Retail"). SKO Group Holding, LLC ("SKO Group") similarly distributed a dividend in the amount of $55 million to its various owners, including Sun Capital. The dividend was financed with additional borrowings under an existing credit facility. In connection with this dividend, the board of directors of Shopko Holding reviewed the audited financial statements of Specialty Retail and a solvency opinion provided by Valuation Research Corp. on the financial condition of Shopko Holding.

- **September 24, 2010**, Shopko Holding paid a dividend in the amount $20 million to its parent company, Specialty Retail, which paid a dividend in the same amount to its parent, SKO Group. SKO Group used the proceeds to pay its various owners, including Sun Capital. The funds for the dividend were borrowed under the company's revolving credit facility, which was governed by the Second Amended and Restated Loan and Security Agreement, dated January 28, 2010 (the "Second RCF").

- **December 3, 2010**, Shopko Holding paid a dividend in the amount of $10 million to its parent, Specialty Retail, which paid a dividend in the same amount to its parent, SKO Group. SKO Group used the proceeds to pay a dividend to its various owners, including Sun Capital. The funds for the dividend were borrowed from Shopko's Second RCF.

- **August 29, 2013**, Specialty Retail paid a dividend in the amount of $44,531,900 to SKO Group, which used the proceeds to pay a dividend to its various owners, including Sun Capital. The dividend was financed through borrowing from Shopko's revolving credit facility, which was governed by the Third Amended and Restated Loan and Security Agreement, dated February 7, 2012 (the "Third RCF"). Specialty Retail engaged Duff & Phelps to perform a "solvency analysis" on Specialty Retail to determine whether it was solvent at the time of the dividend payments. Duff & Phelps provided a solvency opinion dated August 29, 2013.

- **June 19, 2015**: Shopko Holding paid a dividend in the amount of $50 million to its parent Specialty Retail, which paid a dividend in the same amount to its parent, SKO Group. SKO Group used the proceeds to pay a dividend in the same amount to its various owners, including Sun Capital. The dividend was financed through borrowing from Shopko's Third RCF. SKO Group, Specialty Retail, Shopko Holding, and Shopko Stores

5

Operating Co., LLC engaged Duff & Phelps to perform an analysis of the solvency of those four entities. Duff & Phelps provided a solvency opinion dated June 19, 2015.

9. The Special Committee has also focused its investigation on the consulting services arrangements between the Debtors and its equity sponsors. Prior to February 7, 2012, Shopko was party to a long-term management services agreement, under which Sun Capital Partners Management IV, LLC ("SCM") provided Specialty Retail with financial and management consulting services. SCM also provided consulting services to Pamida Holding Company, Inc. ("Pamida") and its affiliates, under a similar agreement. On February 7, 2012, in conjunction with the merger between Specialty Retail and Pamida, Specialty Retail entered into a new consulting agreement with SCM. The Consulting Agreement has a 10 year term. SCM is to render consulting services regarding the business of Specialty Retail and its subsidiaries, including, but not limited to, advice regarding improvements to financial reporting, accounting and management information systems services.

10. In exchange for its consulting services, SCM is entitled to an annual fee of $4 million, and reimbursement for all reasonable out-of-pocket fees and expenses incurred in the performance of the consulting services. Shopko and Pamida affiliates and entities are guarantors of all payments owed pursuant to the agreement. The fee is paid in quarterly installments in advance, each installment equal to $1 million. The Special Committee understands that, in 2017, the Debtors and Sun Capital agreed to reduce the Consulting Fee to approximately $301,000 per quarter, and that no additional Consulting Fees have been paid since December 2017.

11. SCM also is entitled to an additional fee in connection with certain transactions or events ("Consulting Events"), equal to approximately 1% of the value of the transaction. At this time, the Special Committee understands that since 2012, approximately six

6

Consulting Events have occurred that have generated such a fee, including a $445,319.00 fee related to the 2013 dividend and a $500,000.00 fee related to the 2015 dividend.

### The Path Forward

12. As described above, the Special Committee's Investigation is ongoing, and its scope or focus may change as new facts become known. The Special Committee has been briefed extensively by the Advisors, both before and since the Petition Date, regarding the Investigation and analysis of all of the potential claims. The Special Committee's Advisors have also had telephone conferences with the advisors of the official committee of unsecured creditors regarding their views on potential claims and related considerations. Although no conclusions have been reached at this time, substantial progress has been made. Given this progress, the Special Committee supports the Debtors' Disclosure Statement Motion.

13. Section 1125(a)(1) of the Bankruptcy Code provides that the Debtors must provide holders of impaired claims and interest entitled to vote on a plan with a disclosure statement containing "adequate information." 11 U.S.C. § 1125. The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

14. Based on the foregoing, the Special Committee submits that the proposed disclosure statement, as supplemented by this statement, contains sufficient information regarding the existence of the on-going Investigation, the fact that the proposed plan may provide releases

to certain parties subject to the Investigation, and, importantly, that the proposed plan may be modified as a result of the Investigation. Voting creditors are not required to vote in favor of the proposed plan if they have issues with the proposed release or the fact that the proposed release provisions may be modified as the Investigation unfolds. Therefore, such creditors can make an informed judgment regarding whether to vote to accept or reject the proposed plan. Thus, the Special Committee requests that the Court approve the proposed disclosure statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code with such changes that the Court deems just and appropriate.

[*remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: February 27, 2019<br>New York, New York | /s/ *Brian S. Lennon*<br>Brian S. Lennon (admitted *pro hac vice*)<br>**WILLKIE FARR & GALLAGHER LLP**<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 728-8000<br>Facsimile: (212) 728-8111<br>blennon@willkie.com<br><br>*Counsel to the Special Committee of Independent Directors of the Debtors* |