# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | Chapter 11 |
| SPECIALTY RETAIL SHOPS HOLDING CORP., et al.,[1] | Case No. 19-80064-TLS |
| **Debtors.** | (Jointly administered) |

## APPLICATION OF WOODS SUPER MARKETS, INC. FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. §§ 365(d)(3) and 503(b)(1)(A) AND NOTICE OF DEADLINE TO OBJECT

Woods Super Markets, Inc. ("Woods"), a landlord and creditor in the above-referenced jointly administered bankruptcy cases, hereby moves (the "Motion"), pursuant to 11 U.S.C. §§ 365(d)(3), 503(b)(1)(A), and 507(a)(2), for the entry of an order allowing Woods a priority administrative expense claim and directing payment of such claim. In support of this Motion, Woods respectfully states as follows:

### JURISDICTION

1.      The Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and NEGenR 1.5. Venue before this Court is proper pursuant to 28 U.S.C. § 1409(a).

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); and SVS Trucking, LLC (0592).

4835-3420-5841.1

2.    The statutory predicates for the relief sought herein are 11 U.S.C. §§ 365(d)(3), 503(b)(1)(A) and 507(a)(2).

3.    This is a core proceeding arising within 11 U.S.C. §§ 101 et seq. and the Court has the authority to hear and determine this Motion within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), and (M).

## BACKGROUND

### A.    Procedural Background

4.    On January 16, 2018 (the "Petition Date"), the above-captioned debtors (the "Debtors") commenced these cases by filing voluntary petitions under Chapter 11 of the Bankruptcy Code.  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

### B.    The Lease

5.    Woods is the Landlord and debtor Pamida Stores Operating Co., LLC (the "Debtor Tenant") is the tenant under a Lease dated as of October 12, 1993, as amended (the "Lease"), pertaining to non-residential real property located at 1307 S. State Hwy. 32, El Dorado Springs, Missouri 64744, as more specifically defined in the Lease (the "Premises").  A true and correct copy of the Lease and the First, Second, and Third Amendments to Lease are attached hereto as Exhibits 1, 2, 3 and 4 (collectively the "Lease Agreement") and are incorporated herein by this reference.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Lease.

6.    Pursuant to the Lease, Debtor Tenant has, *inter alia*, the following obligations: (i) payment of Base Rent on or before the first day of each month during the Term; (ii) payment of all real property taxes and assessments as and when due; (iii) payment of all utility charges for electricity, propane,

2

telephone, water and sewer that accrue during the Term; (iv) payment of required property insurance and liability insurance premiums so as to provide insurance coverages required by the Lease, and (v) a pro-rata share of the common area maintenance (CAM) costs (collectively, together with all other payment and performance obligations set forth in the Lease, the "Debtor Tenant's Lease Obligations"). *See* Lease paragraphs 3, 4.b., 4.c., 6.e. and 7.d.

7.    Debtor Tenant has been in possession of the Premises continuously from and after the Petition Date and has benefited from the Lease and the Premises by having control of the Premises during such post-petition period.

8.    Each of Debtor Tenant's Lease Obligations that arise after the Petition Date must be performed when it arises pursuant to 11 U.S.C. § 365(d)(3) ("Section 365(d)(3)"). *In re Burival*, 613, F.3d 810, 812 (8th Cir. 2010). Any amounts payable pursuant to Section 365(d)(3), but not paid when due, are accorded administrative expense priority status under 11 U.S.C. §§ 503(b)(1) and 507(a)(2). *Id.* at 812-13.

9.    Separate and apart from Debtor Tenant's obligations pursuant to Section 365(d)(3), each of Debtor Tenant's Lease Obligations that accrues from and after the Petition Date but does not become due prior to any date the Lease may be rejected is nevertheless accorded administrative expense priority status under 11 U.S.C. §§ 503(b)(1) and 507(a)(2). *Id.* at 813 (citing *In re Wedemeier*, 237 F.3d 938, 941 (8th Cir. 2001)). The rent accorded administrative expense priority status under 11 U.S.C. §§ 503(b)(1) and 507(a)(2) is the rent specified in the lease[2] unless the landlord presents convincing evidence that such rent is unreasonable. *See In re JAS Enters.*, 180 B.R. 210, 217 (Bankr. D. Neb. 1995); *see, e.g.*, *In re Litho Specialties*, 154 B.R. 733, 740 (D. Minn. 1993); *In re Espinosa*, 542 B.R. 403, 412 (Bankr. S.D. Tex. 2015); *In re Raymond Cossette Trucking, Inc.*, 231 B.R. 80, 85 (Bankr. D.N.D. 1999) ("As for leased

---

[2] Which, for triple net leases like the Lease, includes taxes, insurance and utilities payable by the tenant.

4835-3420-5841.1

property, most courts take the position that the rent specified in the lease itself is the presumed reasonable value of the property to the debtor-in-possession"); *In re Cybernetics, Inc.*, 111 B.R. 32, 40-41 (Bankr. N.D.N.Y. 1989) (holding that the amount of the lessor's administrative expense claim was based upon the value specified in the lease); *In re Western Monetary Consultants*, 100 B.R. 545, 547 (Bankr. D. Colo. 1989).

10.    As of the date hereof, other than Debtor Tenant's satisfaction of its obligation to pay Base Rent that has come due from and after the Petition Date, Woods does not have actual knowledge of Debtor Tenant's failure to perform Debtor Tenant's Lease Obligations pursuant to Section 365(d)(3) and the Lease has not been rejected.  Nevertheless, pursuant to this Court's Order (Doc. 421) entered on February 14, 2019 setting, *inter alia*, a bar date for asserting administrative expense claims on or before April 1, 2019, Woods is obligated to file this Motion to preserve its entitlement to allowance and payment of an administrative expense claim for: (i) all of Debtor Tenant's Lease Obligations that have arisen after the Petition Date but on or before April 1, 2019 and have not been paid and/or performed pursuant to 11 U.S.C. § 365(d)(3) or otherwise; and (ii) all unpaid Debtor Tenant's Lease Obligations that have accrued from and after the Petition Date but have not become due prior to the date of any rejection of the Lease.

11.    As of the date hereof, the estimated amount of Woods' administrative claim is:

| | | |
|---|---|---|
| a. | Base Rent: | $   0.00 |
| b. | Utilities: | Unknown |
| c. | Real Estate Taxes: | $3,516.41 |
| d. | CAM Charges: | Unknown |
| e. | Total | $3,516.41 |

12.    Woods expressly reserves all claims, rights, powers and privileges under the Lease Agreement including, without limitation, the following:

a.    The right to alter, amend, supplement, or modify or withdraw its claim for administrative expense at any time;

4835-3420-5841.1

b.  The right to assert other claims against the debtor and its bankruptcy estate, including but not limited to claims under 11 U.S.C. § 503(a) and (b), and § 507(b); and

c.  The right to add post-petition interest, fees, expenses, charges and other amounts due under the Lease Agreement as allowed under 11 U.S.C. § 506(b).

13.  By filing this Application, Woods does not intend to waive or release any of the following rights which are expressly reserved:

a.  Any lack of venue or jurisdiction by the Court over this case or any adversary action, contested matter, or other proceeding in this case;

b.  Any right to a jury trial in any adversary action, contested matter or other proceeding in this case;

c.  Any right to *de novo* review of any adversary action, contested matter, or other proceeding in this case;

d.  Any right to contest, deny or defend any claims asserted by the debtor, the bankruptcy estate or any party in interest against Woods in this case or in any adversary action, contested matter, or other proceeding in this case;

e.  Any right to withdrawal of the reference in this case or any adversary action, contested matter, or other proceeding in this case; and

f.  Any other rights, claims actions, defenses, setoff or recoupment against the debtors, the bankruptcy estate or any party in interest in this case or in any adversary action, contested matter, or other proceeding in this case.

**WHEREFORE**, Woods Super Markets, Inc. requests that:

1.  The Court enter its Order granting Woods an allowed administrative expense claim pursuant to 11 U.S.C. § 503(b)(1) with priority as provided in 11 U.S.C. § 507(a)(2) in an amount equal to:

(a)  All unpaid Debtor Tenant's Lease Obligations that have arisen after the Petition Date but on or before April 1, 2019 and have not been paid and/or performed pursuant to 11 U.S.C. § 365(d)(3); and

(b)  All unpaid Debtor Tenant's Lease Obligations that have accrued from and after the Petition Date but have not become due prior to the date of any rejection of the Lease.

4835-3420-5841.1

2.      The Court enter its Order directing that Debtor Tenant immediately pay all of Woods'

allowed administrative expense claims contemporaneously with any assumption or rejection of the Lease.

Dated this 1st day of April, 2019.

KUTAK ROCK LLP

By /s/ Dan R. Nelson
      Dan R. Nelson
      Missouri No. 31486
      300 S. John Q. Hammons Pkwy.
      Suite 800
      Springfield, MO 65806
      (417) 720-1410 (Telephone)
      (417) 720-1411 (Facsimile)
      dan.nelson@kutakrock.com

      *Attorneys for Woods Super Markets, Inc.*

4835-3420-5841.1

## NOTICE UNDER NEB R. BANKR. P. 9013

TO: ALL CREDITORS AND PARTIES IN INTEREST: YOU ARE HEREBY ADVISED that this Notice is being furnished to all parties in interest pursuant to Nebraska Rule of Bankruptcy Procedure 9013-1 and that any objection or resistance with respect to the foregoing Motion must be filed with the Bankruptcy Court Clerk – Omaha, Roman L. Hruska Courthouse, 111 South 18th Plaza, Suite 1125, Omaha, NE 68102, and served on Dan R. Nelson, Kutak Rock LLP, 300 John Q. Hammons Pkwy., Suite 800, Springfield, Missouri 65806, on or before April 21, 2019.  If objections are filed on or before said date, a hearing shall be established by the Bankruptcy Court with Notice being limited to those parties filing objections or resistances. IF NO OBJECTION OR RESISTANCE is filed on or before the date set forth above, the Bankruptcy Court will consider the approval of the foregoing Motion without further notice or opportunity to be heard.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion has been electronically filed with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to the parties on such service list.

Dated this 1st day of April, 2019.

/s/ Dan R. Nelson
Dan R. Nelson

7

4835-3420-5841.1

EXHIBIT 1

[See attached.]

## LEASE AGREEMENT

This Lease Agreement, made and entered into this 14TH day of October, 1993, between **Woods Super Markets, Inc.,** hereinafter referred to as Lessor, and **P.M. Place Stores Company,** a Missouri Corporation, hereinafter referred to as Lessee, WITNESSETH:

**1. Leasing Agreements:** Lessor does hereby lease and demise unto Lessee and Lessee does hereby take and hire from Lessor the following described real estate located in Cedar County, Missouri, to-wit:

An approximate 27,480 square feet commercial building located on a part of the North Half of the Northwest Quarter of the Southwest Quarter of Section 27, Township 36N, Range 28W, being a part of the Woods Shopping Center in El Dorado Springs, Missouri, said building being now occupied by Lessee's business known as "Place's". The leased premises are more particularly shown on the plat which is attached hereto and made a part hereof by reference. This lease also includes all easements and appurtenances thereto belonging, including, but not limited to, the right, privilege and easement to use, in common with other occupants and tenants, all of the shopping center not occupied by buildings, or shown on the plot plan to be delivery or loading areas, which areas are hereinafter referred to as "Public" or "Common" areas; and all of the leased real estate , improvements, easements and appurtenances being sometimes hereinafter referred to as the "Demised Premises".

**2. Term: Renewal Provisions:** The term of this lease shall be for a period of five (5) years beginning October 1, 1993 and expiring at midnight September 30, 1998. Lessee is hereby granted the option of renewing this lease for two (2) additional terms of five (5) years each in the manner and on the terms and conditions hereinafter set forth.

**3. Base Rent:**

a. Amount: The rental agreed upon is as provided in the following schedule:

| | |
|---|---|
| Initial Term | $51,400.00 per year |
| First Renewal Term | $65,000.00 per year |
| Second Renewal Term | $75,000.00 per year |

b. When Due: The annual rental amounts set forth above shall be paid in 12 equal monthly installments, each to be due in advance on the 1st day of the month, and delinquent if not paid by the 20th day of the month. Delinquency in the payment of rentals due hereunder shall be deemed a default which must be cured within 20 days following written notice thereof.

Lease Agreement -- Woods Super
Markets to P.M. Place Stores



Page 1 of 12

4. <u>Additional Rent:</u>

    a. <u>Additions for Delinquent Payment:</u>  In additional to the Base Rent provided in Paragraph 3(a), Lessee shall pay to Lessor as additional rent 1% per day of any base monthly rental which is delinquent, commencing on the 21st day of the month, and continuing until the day prior to full payment of all base and additional rent then due.

    b. <u>Real Estate Taxes:</u>

        (1) <u>Pro-Rata Payment:</u> Within fifteen days after demand, Lessee shall pay to Lessor a proportional share of all City, County or State real estate taxes or special assessments which are levied against the property of which the demised premises are a part. The Lessee's proportional share shall be a fraction, the numerator of which is the square footage of the demised premises, and the denominator of which shall be the total square footage of all buildings in the shopping center of which the demised premises are a part. The parties recite and agree that, as of the date of this Lease, the demised premises contain 27,480 square feet, and the total square feet in the shopping center is 55,180. Lessor's demand shall be accompanied by a copy of all tax statements received from the taxing agency or agencies, which reflect the amount of the taxes levied for the period for which demand is being made. In the case of taxes in the year of commencement and the year of termination of this lease, the total taxes shall be pro-rated on the basis of a 365 day year prior to application of the fraction which is described above; and all pro-rated taxes accrued prior to the date of commencement, or after the date of termination, shall be paid by Lessor. If Lessee shall fail to pay such taxes within the time allowed, the amount due by Lessee to Lessor under this subsection shall bear interest at the rate of 12% per annum until paid in full, compounded monthly. Failure to pay taxes shall, in addition, be deemed a default under this Lease.

        (2) <u>Tax Protests:</u> In the event of any increase in the *ad valorem* real estate assessment for the shopping center of which the demised premises are a part, and the Lessor shall not elect to protest such assessment in its own right, Lessee may at its option, and at its cost and expense, in the name of Lessor, protest, appeal or institute such other legal proceedings as it may consider appropriate to effect a reduction or abatement in such real estate assessment.   To this end, Lessor shall at no cost to Lessee cooperate fully with Lessee, including without limitation, the furnishing of relevant data, documents, information and assistance, and making such appearances as may reasonably be required by

Lessee. In the event a refund is obtained by Lessor for any tax calendar year in which Lessee contributed towards reimbursement of increases in Real Estate Taxes hereunder, Lessor shall promptly pay Lessee it pro rata share of such refund. In the event a protest by Lessee is not finally determined by the due date of the real estate taxes, Lessee shall pay its full proportional share of the taxes as levied or assessed, but Lessor shall pay such taxes under protest in order to preserve all rights of the Lessee with respect to its protest proceedings.

c. <u>Property, Casualty and Liability Insurance:</u> Lessee shall carry a "Business Owner's Policy" of insurance, insuring the demised premises against all perils for the full replacement value of the demised premises with a deductible of no more than $5,000.00, and the demised premises (including accidents which might occur on the common areas) against liability for no less than One Million Dollars ($1,000,000) single pay. Said policy shall name the Lessor and Lessee as the insureds, as their respective interests may appear, and the Lessor shall be furnished with a copy of said policy, which shall be non-cancelable except upon at least fifteen (15) days written notice to the Lessor. The insurer chosen by Lessee to write such insurance must be rated AAA by A.M. Best at the time the policy is issued, and at all times during which the policy remains in effect, unless Lessor shall consent in writing to insurance written through a company not meeting this requirement. If Lessee shall fail to obtain and maintain the insurance required by this sub-section, Lessor may obtain such insurance as it deems necessary for its protection. Lessee shall pay Lessor all premiums incurred by it as a result of such failure, together with interest on the premium so paid by the Lessor at the rate of 12% per annum until paid, compounded monthly. Failure to maintain insurance shall, in addition, be deemed a default under this Lease.

d. <u>Other Charges:</u> Lessee shall pay as additional rent, all charges required to be paid by Lessee under this Lease, whether or not the same are designated as "additional rent". If such charges are not paid at the time provided in this Lease, they shall be payable as additional rent upon demand or with the next installment of rent thereafter falling due, whichever shall first occur, but nothing herein contained shall be deemed to suspend or authorize delay in the payment of any charge at the time the same becomes due and payable under this Lease.

5. <u>Lessor's Covenants:</u> Lessor covenants and agrees as follows:

a. <u>Covenant of Seisin:</u> That it is the owner of the demised premises, and has good right to lease the same and will warrant and defend the leasehold interest hereby created.

b. <u>Covenant of Quiet Enjoyment:</u> That the Lessee may peacefully hold and enjoy the demised premises during the term hereof without any interruption by the Lessor or any other persons claiming under it so long as Lessee shall observe

and perform the several covenants and provisions herein provided; subject, however, to the right of Lessor to inspect the demised premises at reasonable times and intervals.

  c. <u>Payment of Real Estate Taxes and Assessments:</u> That it will pay all real estate taxes and assessments levied against the property during the term hereof; provided, that this shall not be construed as contrary to the provisions of Section 4(b) of this Lease Agreement relating to the duty of Lessee to pay a portion of said taxes to the Lessor upon demand.

  d. <u>No Competitive Occupants of Premises:</u> During the term of this Lease, Lessor agrees that it will not sell, rent or lease, nor permit an assignment nor subletting, of any part of the shopping center of which the Demised Premises are a part, to any other person or entity of any kind which is engaged in the business of a variety or retail general merchandise discount store of the type now conducted by Lessee from the demised premises.

**6. <u>Lessee's Covenants:</u>** Lessee covenants and agrees as follows:

  a. <u>Payment of Rent:</u> To pay the Base and all Additional Rent herein provided to the Lessor within the time provided and at such places as the Lessor may designate in writing.

  b. <u>Use of Demised Premises:</u> To use the Demised Premises for a variety and retail general merchandise discount store, and for no other purpose or purposes without the express written consent of Lessor. Lessee specifically agrees to refrain from the sale of grocery or food products (either packaged or prepared), sundry items, and other products and services now offered by the Lessor, except that this sentence shall not apply to the sale of grocery items where the sale of such items is incidental to and does not constitute a substantial part of the main business of the Lessee.

  c. <u>Compliance with Law:</u> To use the premises in accordance with all applicable local or state regulations, including zoning and subdivision regulations, if any, which may now or hereafter be lawfully enacted.

  d. <u>Care of Demised Premises:</u> To take good care of the premises; not to commit any waste thereon or therein; to keep the premises free of danger of fire or other nuisances of whatever nature; and to render the premises hereby demised to the Lessor at the termination of the term of this lease, whether original or extended, in at least as good a condition as present, usual wear and tear excepted.

  e. <u>Utilities:</u> To pay for all utility services used in or about the Demised Premises, including but not necessarily limited to, electricity, propane, telephone, water and sewer; provided, that Lessor will pay the electricity for parking lot lights.

**7.** Maintenance and Repairs:

a. Lessor's Obligations, Exceptions: Lessor shall keep the foundations, exterior walls, canopy, roof, downspouts, and guttering of the Demised Premises in good order, condition and repair, and if required by governmental authority, make modifications or replacements thereof; provided, that any repairs of the type specified above necessitated by the negligent act(s) or omission(s) of the Lessee shall be done and paid for by the Lessee; and provided, further, that any plate glass windows which are broken as a result of the Lessees' use and occupancy of the demised premises, rather than from a cause unrelated to such use and occupancy, shall be replaced by the Lessee.

b. Lessor's Additional Obligations: Lessor further agrees to make any necessary repairs to the Demised Premises (including the interior of the improvements) resulting from structural defects, settling, fire, or damage by the elements; and shall repair and maintain the heating, air conditioning, and electrical and plumbing equipment, other than as provided in sub-paragraph (f) of this Section, and other than that necessitated by the negligence or misuse by Lessee, its agents, employees and invitees. The repairs provided in this sub-section shall be made within a reasonable period of time following Lessor's obtaining actual knowledge of the condition or conditions.

c. Common Area Operation and Maintenance: Lessor agrees to operate and maintain all the Common Areas of the Shopping Center, including parking lots, lighting, and sidewalks, at its expense; and to keep them free of obstructions, clean, swept and in good repair, reasonable wear and tear excepted; to remove snow and ice therefrom; to keep the parking area properly striped and to keep the Common Areas properly lighted during hours of darkness when Lessee' store is open for business.

d. Common Area Maintenance Costs:

(1) Common Area Contribution: In each calendar year (or partial calendar year) during the term of this Lease, whether original or extended, Lessee shall pay to Lessor an amount (the "Common Area Contribution") equal to a proportion of the "Operating Cost" (as defined in Section 7(d)(3)) of the Common Area computed as set out in Section 7(d)(2).

(2) Calculation of Common Area Contribution: Lessee's proportionate share of the Operating Cost of the Common Area for each calendar year (or partial calendar year) during the term of this Lease (whether original or extended) shall be that portion of the operating cost equal to the product obtained by multiplying the total operating costs for such calendar year (or partial calendar year) by a fraction, the numerator of which shall be the number of

square feet of floor area in the Demised premises, and the denominator of which shall be the total number of square feet of floor area in the Shopping Center as of the last day of such calendar year.

(3) <u>Operating Costs:</u> The term "Operating Costs" shall mean the total reasonable cost (other than the cost properly chargeable to capital cost) and expense incurred in operating, maintaining, equipping, repairing and protecting the Common Area including, without limitation, the cost of operating and maintaining the parking areas (excluding traffic control and security); gardening and landscaping; repairs, lighting, restriping, cleaning and resurfacing the parking lot; snow and ice removal; common area trash, garbage and other refuse removal (with Lessor and Lessee to each be responsible for the removal of their separate trash, garbage and refuse); and the cost of non-administrative personnel (including related payroll tax and insurance expenses) to implement such services. The term "Operating Costs" shall not include any management fee.

(4) <u>Payment:</u> The Common Area contribution payable by Lessee under this Section shall be paid in monthly installments in arrears within twenty (20) days after Lessor delivers to Lessee a statement summarizing the actual operating costs for such immediately preceding month.

e. <u>Lessees' Rights Upon Failure of Lessor to Repair or Maintain:</u> If Lessor shall fail to make any repairs, or to maintain any part of the Demised Premises or Common Area which is its duty to maintain, and such failure shall continue for thirty (30) days after written notice to Lessor from Lessee, Lessee may make such repairs, and deduct the reasonable cost thereof from any rent or additional rent then due, or to become due, hereunder. Lessor shall reimburse Lessee for any such costs incurred by it that it is unable to fully offset by virtue of Lease termination or other cause.

f. <u>Lessees' Obligations:</u> Lessee agrees to maintain and be responsible for the interior of the demised premises, except as has heretofore been made the obligation of Lessor; the plate glass windows, except to the extent that replacement is covered by insurance; to maintain and be liable for minor repairs and maintenance of the electrical system (which shall include switches, fuses, circuit breakers, bulbs, ballasts and starters); to maintain and be liable for minor repairs and maintenance of the heating and air conditional system (which shall include filters, belts, pulleys, valves and ordinary seasonal maintenance to turn the apparatus off and on); to maintain and be liable for minor repairs and maintenance of the plumbing, sewerage and water systems (which shall include the opening of stopped drains or sewers not caused by structural defects, minor leaks

to in-store sewage and water lines, and all plumbing fixtures, including any internal working parts); and decoration and maintenance of walls, floors and ceilings.

8. <u>Maximum Liability for Taxes, Insurance and Common Area Maintenance:</u> Notwithstanding any other provision hereof, the total liability of Lessee for Real Estate Taxes, Insurance and Common Area Maintenance during the initial term of this lease shall not exceed the sum of Sixty Five Thousand Dollars ($65,000.00); during the first renewal term shall not exceed Seventy Thousand Dollars ($70,000.00); and during the final term shall not exceed Seventy Five Thousand Dollars ($75,000.00).

9. <u>Liability for Insured Losses:</u> Neither party shall have any liability to the other for, and each party releases the other from damages caused to their respective property resulting from fire, windstorm, vandalism, or other cause covered under extended coverage insurance, to the extent such losses are covered and paid for by insurance, regardless of the cause of such loss.

10. <u>Fixtures; Structural Alterations:</u>

a. <u>Attachment of Fixtures:</u> Lessee may at any time securely attach to the premises and maintain, during the continuance of the Lease, such fixtures, counters, partitions, shelving, equipment, and like items as may be convenient for the conduct of its business. All such furniture, fixtures and equipment shall remain the property of Lessee, and may be removed at any time prior to, or upon, the expiration or termination of this lease for whatever cause.

b. <u>Abandonment of Lessee's Property:</u> Notwithstanding the provisions of the preceding sub-paragraph, if Lessee shall abandon any furniture, fixtures or equipment by allowing it to remain on or in the demised premises for a period of more than 14 days after termination of this Lease, such property shall, at the option of Lessor, become the Lessor's property. Such election shall be exercised by written notice to the Lessee. Unless and until such notice is given, the base rent and all additional rent, shall continue to accrue.

c. <u>Interior Alterations:</u> Lessee shall have the right and privilege to make such changes, repairs, alterations and improvements to the interior of the building located on the demised premises as it may see fit from time to time for the conduct of its business with the prior written consent of the Lessor, which consent shall not be unreasonably withheld; provided, that Lessor shall be under no obligation to consent to structural changes, repairs, alterations or improvements to the premises which in any way weaken or damage the structural strength of the premises. All such changes, repairs, alterations or improvements shall be made at the sole cost and expense of the Lessee, and shall become the property of the Lessor at the expiration or termination of this lease. Lessee shall indemnify and save the Lessor harmless from all and all costs, damages or expenses (including its reasonable attorney's fees) paid or incurred as a result of any

Mechanic's or Materialmen's Liens, or claims of any type from Contractors and Sub-Contractors, and their respective officers, agents, or employees.

**11.** Surrender, Removal and Restoration by Lessee: On the last day of the term of this Lease, whether original or extended, Lessee shall (1) peaceably surrender the Demised premises (including all repairs, changes and alterations), broom clean and in good order, condition and repair except for reasonable wear and tear, and (ii) at its expense remove from the Demised premises the signs, movable furniture and trade fixtures therein. Any property not so removed within fourteen days of the end of the term of this Lease shall, at the option of the Lessor, be deemed abandoned as provided in Section 9(b) hereof. Any damage to the Demised Premises caused by Lessee in the removal of such items shall be repaired by Lessee at its expense.

**12.** Exercise of Options to Renew: Lessee may exercise its right to renew this Lease as provided in Section 2 hereof by giving to the Lessor no less than six (6) months notice prior to the expiration of the then current term, in writing, of its intention to do so. At the commencement of either renewal term, the Base Rent shall be adjusted as provided in Section 3 hereof. However, no such notice shall be effective if Lessee is then in default hereunder.

**13.** Assignment and Subleasing: Lessee shall have no right to assign this lease or sublet the premises without the prior written consent of Lessor, which consent shall not be unreasonably withheld. Any attempted assignment or subletting shall be void and of no effect whatsoever and shall be considered a default hereunder for which Lessor may exercise the rights granted to it hereunder or by law. This section shall not apply in the event that the proposed assignment or subleasing is to a parent or subsidiary corporation, the shareholders and management of which, is substantially the same as Lessee; provided, that no such assignment nor subleasing shall relieve Lessee of its obligations hereunder.

**14.** Signs: Lessor shall not permit nor allow anyone except Lessee to place, erect, maintain or paint any signs on the roof, walls or any other place upon the leased building located on the Demised Premises. Lessee may elect to place, erect, or maintain signs on said building, or on the parking lot in such visible location or locations as may be approved for that purposes by the Lessor. Signage shall remain the property of the Lessee, who may and shall remove the same at the expiration or termination of this lease; provided, that it shall also repair any damages to the building or paved areas which results from the erection, maintenance or removal of such signs. All signage shall comply with any applicable laws, ordinances or regulations; and shall be used solely to advertise the business of, and/or the products sold by, the Lessee.

**15.** Damage or Destruction to Improvements:

a. Damage Without Loss of Tenantability: In the event the building on the Demised Premises or other improvements which are a part of the Demised Premises are damaged by fire, act of God or other cause beyond the reasonable control of either party, but they remain tenantable, Lessor shall repair such damage as soon as may be practical, and there shall be no abatement in the rent. Any damage caused by, and which is the responsibility of, the Lessee under the

provisions of Section **7** of this Agreement, shall be repaired as soon as practical by the Lessee, and there shall be no abatement in the rent.

b. <u>Damage Resulting in Partial Untenantability:</u> In the event the building on the Demised Premises or other improvements which are a part of the Demised Premises are damaged by fire, act of God, structural failure, settling or similar cause, and are thereby rendered partially untenantable, Lessor shall repair such damage as soon as may be practical, and there shall be an abatement in the rent corresponding to the extent to which, and the period during which, said premises are partially untenantable.

c. <u>Damage Resulting in Complete Untenantability for Limited Period:</u> In the event the building on the Demised Premises or other improvements which are a part of the Demised Premises are damaged by fire, act of God, structural failure, settling or similar cause, and are thereby rendered substantially untenantable, but the damage is such that it may be repaired within 60 working days, Lessor shall repair such damage as soon as may be practical, and all rent shall cease during the period of such untenantability, but the lease shall not terminate; provided, if such damage occurs during the last one (1) year of the initial or any renewal term of this Lease and more than twenty five percent (25%) of the Demised Premises is damaged as certified by an engineer retained by Lessor, then, and in such event, Lessor shall have the right to terminate and cancel this Lease within thirty (30) days following such damage by giving written notice to that effect to Lessee. However, if such notice is given during the one (1) year periods preceding the normal expiration date of the initial or the first renewal term, and the Lessee agrees to and does exercise its option to renew the Lease as herein provided for the next term, within thirty (30) days following the notice by Lessor to Lessee of its intention to terminate the Lease, then, and in that event, the Lease shall not terminate, and the Lessor shall be obligated to make the necessary repairs and/or replacements as set forth in the first sentence of this sub-section.

d. <u>Damage Resulting in Complete Untenantability for Extended Period:</u> In the event the building on the Demised Premises or other improvements which are a part of the Demised Premises are damaged by fire, act of God, structural failure, settling or similar cause, and are thereby rendered substantially untenantable, and the damage is such that it may not be repaired within 60 working days, this lease shall terminate from the date of such damage or destruction. However, if the Lessor elects to rebuild, it shall give Lessee the first right to lease the rebuilt premises at the rental provided herein, unless Lessee desires additional space, in which event, the base rent for the additional space shall be 1% per month of the square foot construction cost.

**16.** <u>Condemnation:</u>

a. <u>Taking of Whole:</u> If the whole of the Demised premises shall be appropriated or condemned under the power of eminent domain or by any competent authority for any public or quasi-pubic use or purpose during the term of this lease (including renewals or extensions thereof), Lessee reserves the right to prosecute a claim for an award based upon its leasehold interest for such appropriation or taking of or injury to the remainder. In such event, this Lease shall terminate when Lessee can no longer use the Demised premises in the manner herein intended, when possession thereof shall be required by the appropriating or condemning authority, or when legal title to the Demised Premises vests in the appropriating or condemning authority, whichever first occurs.

b. <u>Taking of Part:</u> In the event that a part of the Demised premises shall be appropriated or condemned and (1) the part so taken includes the building on the Demised Premises or any part thereof; or (2) that part so taken shall consist of twenty-five percent (25%) or more of the total parking area; or (3) such partial taking shall result in cutting off direct access from the Demised Premises to any adjacent public street or highway, then, and in any such event, Lessee, at any time either prior to or within a period of ninety (90) days after the date when possession of the part of the premise so taken shall be required by the appropriating or condemning authority, may elect to terminate this Lease. Is so terminated, all base rent, and additional rent, shall be pro-rated to the date of termination. If Lessee does not exercise its right to terminate this lease, or it has no such right under the provisions herein set forth, then the lease shall terminate as to that part of the Demised premises so taken. In that event, the Base Rent shall be reduced as of the date when possession of the premises shall be required by the appropriating or condemning authority, by a proportional amount equal to the proportion that the area of the part so taken bears to the total are of the demised premises.

17. <u>Lessee's Right to Close Store:</u> - Landlord agrees that nothing in this Lease shall be construed as compelling tenant to conduct or operate or continue operations of any business whatsoever in or upon the demised premises, and that tenant shall have the right and privilege of closing any business in or upon the demised premises at any time, provided tenant shall continue to pay the minimum monthly rental and to make all other payments and to perform all other obligations required by this Lease to be paid or performed by tenant; provided, however, that in the event tenant shall cease to operate or cause to be operated a business in the demised premises for a period of 180 days during any twelve (12) month period, Landlord shall have the option to terminate and cancel this Lease, except that said option shall not apply if the store is closed for said period by reason of a force majeure, destruction or remodeling which shall take longer than 180 days, and provided further, that in the event Landlord elects to exercise its option to cancel the Lease as provided for in this paragraph, it shall give tenant 30 days prior written notice of its intention to so cancel. In that event, tenant may avoid such cancellation by re-opening the business conducted by tenant, or tenant's sub-tenant or assigns approved by Lessee, within the demised premises during such 30-day period.

18. Use of Shopping Center; Right of Termination for Non-Use: It is understood and agreed by the parties that Lessor now operates a super market in the space adjoining the building hereby leased. If such space shall cease to be used as a super market for a period of six (6) months, Lessee may, at its option, cancel this Lease and be forever discharged in complying with the terms hereof, except for those obligations which arose prior to the date of such termination.

19. Default:

a. By Lessee: In the event the rental payments provided herein shall become delinquent, and such delinquency shall continue for a period of ten (10) days following written notice thereof, or in the event of other default by Lessee hereunder, and such other default shall continue for twenty (20) days following written notice thereof, the Lessor may take any of the following remedial steps: Lessor may reenter and take possession of the premises and sublease the same holding Lessee liable for any difference in rent or at its option, may immediately terminate this lease and retake possession of the premises. In either event, Lessee agrees to peacefully return possession of the premises to Lessor.  In addition, Lessor may pursue such additional remedies as may be available to it at law or in equity.

b. By Lessor: In the event lessor shall default in the performance of any covenant, warranty or obligation hereunder, and such default shall continue for twenty (20) days following written notice thereof, the Lessee may cure such default and offset the cost of such performance against the Base Rent or any Additional Rent then due or thereafter to come due. If the default is such that it may not be readily cured by the Lessee, and the default materially effects the Lessee's use, possession or enjoyment of the Demised Premises, the Lessee may terminate this Lease upon written notice, and shall have no further obligations hereunder, other than those which arose prior to the time of termination.

c. Costs, Expenses and Attorney's Fees Upon Default: A party that breaches this Agreement shall pay to the other all reasonable costs, expenses and fees, including attorney's fees, paid or incurred for the purpose of curing or remedying such breach.

20. Notice: Any notices authorized or required to be given hereunder may be personally delivered to an officer of either as shown by the last records filed by each in the Office of the Secretary of State of the State of Missouri, or to their respective registered agents; or by depositing the same in the United States mail, postage fully prepaid, certified, return receipt requested, and if intended for Lessor addressed as follows:

Woods Super Markets, Inc.
Woods Plaza Shopping Center
Bolivar, MO 65613;

and if intended for Lessee addressed as follows:

> P.M. Place Stores Company
> Outer Road, I-35
> P.O. Box 555
> Bethany, MO 64424

If properly addressed and mailed, delivery shall be deemed made two days after mailing.

21. <u>Corporate Status Authority:</u> Lessor and Lessee each warrant to the other that they are corporations duly organized and existing under the laws of the State of Missouri; that each is now and will remain in good standing under said laws; that the execution of this Lease has been duly authorized by their respective Board of Directors either through a general delegation of authority to the officers executing the same or a special resolution relating to this Lease; and that each will furnish to the other certified copies of the resolutions granting them the authority to enter into this Lease, and the undersigned officers the power and authority to execute the same on behalf of the parties.

22. <u>Effect of Paragraph Title:</u> Paragraph and Sub-Paragraph titles are intended for convenience, and do not constitute a part of this Agreement.

23. <u>Binding Effect:</u> This Lease shall be binding on the parties hereto, and upon their respective successors and assigns.

<u>IN WITNESS WHEREOF</u>, the parties have hereunto set their hands the day and year first above written.

WOODS SUPER MARKETS, INC.

By _____

LESSOR

P.M. PLACE STORES COMPANY

By _____

LESSEE

EXHIBIT 2

[See attached.]

# FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE** (this "Amendment") is made and entered into this _10th_ day of _April_, 2003, by and between Woods Super Markets, Inc. ("Landlord"), and P.M. Place Stores Company, a Missouri corporation, ("Tenant").

**WHEREAS,** Landlord and Tenant entered into that certain Lease, dated October 12, 1993 ("Lease"), pursuant to which Tenant leased from Landlord certain premises (the "Premises") more particularly described in the Lease and located at 1307 Hwy 32 South, El Dorado Springs, MO; and

**WHEREAS,** Tenant exercised its first five year option in that certain Extension Letter, dated May 6, 1998 ("Extension"); and

**WHEREAS,** Landlord and Tenant desire to amend the Lease as set forth below.

**NOW, THEREFORE,** in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do agree as follows:

1.  <u>Paragraph 2, Term; Renewal Provisions</u>.  Paragraph 2 is hereby amended by deleting the last sentence and replacing it with the following:

    > Lessee is hereby granted the option of renewing this lease for one (1) additional term of five (5) years ("First Renewal Term"), one (1) additional term of three (3) years ("Second Renewal Term") and five (5) additional terms of two (2) years each ("Third through Seventh Renewal Term") in the manner and on the terms and conditions hereinafter set forth.  The parties acknowledge that the First Renewal Term (October 1, 1998 – September 30, 2003) has been exercised by Lessee.

2.  <u>Paragraph 3(a), Base Rent</u>.  Paragraph 3(a) is hereby deleted in its entirety and replaced with the following:

    a. <u>Amount</u>;  The rental agreed upon is as provided in the following schedule:

    | | |
    |---|---|
    | Initial Term | $51,400.00 per year |
    | First Renewal Term | $65,000.00 per year |
    | Second Through Seventh Renewal Term | $70,000.00 per year |

3.  <u>Ratification</u>.  Except as specifically changed, modified, or amended by this Agreement, all terms of the Lease shall remain in full force and effect during the additional term of this.

EXHIBIT

2

1

**IN WITNESS WHEREOF,** Landlord and Tenant have caused this Amendment to be executed as of the day and year first written above.

LANDLORD

By: Woods Super Markets, Inc.

PAMIDA, INC.

By:

Title:

By:

Title:

EXHIBIT 3

[See attached.]

## SECOND AMENDMENT TO LEASE

THIS SECOND AMENDMENT TO LEASE (this "Second Amendment") is made as of the 28 day of December, 2015, by and between WOODS SUPER MARKETS, INC. ("Landlord") and PAMIDA STORES OPERATING CO., LLC ("Tenant").

WHEREAS, the parties (or their predecessors-in-interest) entered into a Lease dated October 12, 1993, as amended by a First Amendment to Lease dated April 10, 2003 (the "Lease"), for certain Premises located at 1307 Highway 32 South, El Dorado Springs, Missouri; and

WHEREAS, the current term of the Lease expires on September 30, 2016, and Tenant has no further options to renew the term of the Lease; and

WHEREAS, Landlord and Tenant wish to amend certain terms of the Lease.

NOW THEREFORE, for the mutual promises and covenants contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

1.    Capitalized terms used but not defined herein shall have the meanings assigned to them in the Lease.

2.    Tenant is hereby granted four (4) additional options to renew the term of the Lease for three (3) years each, as follows:

|  |  |
|---|---|
| Option 1: | 10/1/16 – 9/30/19 |
| Option 2: | 10/1/19 – 9/30/22 |
| Option 3: | 10/1/22 – 9/30/25 |
| Option 4: | 10/1/25 – 9/30/28 |

Tenant may exercise the foregoing options by providing written notice to Landlord at least six (6) months prior to the expiration of the current term or then-current option term, as applicable.

3.    Tenant hereby exercises the first option to extend the term of the Lease, commencing on October 1, 2016 and ending on September 30, 2019. Landlord acknowledges such exercise and agrees that no further notice of exercise is required from Tenant with respect to such first option to extend the term of the Lease.

4.    During the first option term (10/1/16 – 9/30/19), the base rent payable by Tenant shall be $74,000 per year ($6,166.67 per month). In the event that Tenant exercises additional options, then on the first day of each subsequent option term the monthly base rent payable by Tenant shall increase by an amount equal to two percent (2%) of the monthly base rent payable immediately prior to such date.



EXHIBIT
3

5.    Except as specifically modified herein, all of the terms, provisions, covenants and conditions of the Lease shall remain in full force and effect between the parties hereto.

**IN WITNESS WHEREOF,** the parties hereto have set their hands and seals on the date and year first above written.

LANDLORD:                          TENANT:

WOODS SUPER MARKETS, INC.          PAMIDA STORES OPERATING CO., LLC

By: _Craig Enslow_                 By: _____
Its: _Chief Executive Officer_     Its: _Secretary_

EXHIBIT 4

[See attached.]

## THIRD AMENDMENT TO LEASE

THIS THIRD AMENDMENT TO LEASE (this "Third Amendment") is made as of the 7th day of January, 2019, by and between WOODS SUPER MARKETS, INC. ("Landlord") and PAMIDA STORES OPERATING CO., LLC ("Tenant").

WHEREAS, the parties (or their predecessors-in-interest) entered into a Lease dated October 12, 1993, as amended by a First Amendment to Lease dated April 10, 2003, and a Second Amendment to Lease dated December 28, 2015 (the "Lease"), for certain Premises located at 1307 Highway 32 South, El Dorado Springs, Missouri; and

WHEREAS, Landlord and Tenant wish to amend certain terms of the Lease.

NOW THEREFORE, for the mutual promises and covenants contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

1. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Lease.

2. The current term of the lease is hereby extended such that the current term will expire on December 31, 2023. Beginning on January 1, 2019, and continuing until the expiration of the current term on December 31, 2023, the monthly base rent payable by Tenant shall be **$5,000.00**.

3. Tenant shall continue to have three (3) remaining options to renew the term of the Lease for three (3) years each, as follows:

   | Option 1: | 1/1/24 – 12/31/26 |
   | Option 2: | 1/1/27 – 12/31/29 |
   | Option 3: | 1/1/30 – 12/31/32 |

   Tenant may exercise the foregoing options by providing written notice to Landlord at least six (6) months prior to the expiration of the current term or then-current option term, as applicable.

4. Wherever there exists a conflict between this Amendment and the Lease, the provisions of this Amendment shall control. Any undefined capitalized term used in this Amendment shall be defined in the manner set forth in the Lease. Except as modified and supplemented herein, the Lease is in full force and effect and all terms thereof shall apply with respect to the Lease and shall continue. The Lease as modified by this Amendment constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties. This Amendment may be executed in counterparts, each of which shall be deemed to be an original, and all of such counterparts shall constitute one agreement. Delivery by Landlord or Tenant of faxed or e-mailed (PDF) signatures shall be deemed original signatures for all purposes.



EXHIBIT
4

IN WITNESS WHEREOF, the parties hereto have set their hands and seals on the date and year first above written.

LANDLORD:                                TENANT:

WOODS SUPER MARKETS, INC.      PAMIDA STORES OPERATING CO., LLC

By: _____      By: _____
Its: Chief Financial Officer            Its: President & CEO

2