# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | Chapter 11 |
| SPECIALTY RETAIL SHOPS HOLDING CORP., et al.,[1] | Case No. 19-80064 (TLS) |
| Debtors. | (Jointly Administered) |

_____/

## UPPER GREAT LAKES FAMILY HEALTH CENTER'S REQUEST FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

Upper Great Lakes Family Health Center ("UGL"), by and through its undersigned counsel, hereby request entry of an order: (a) allowing UGL's administrative expense claims under Section 503(b)(1) and Section 503(b)(9) (defined *infra*, the "Administrative Claims"); and (b) directing that the Administrative Claims be paid in full, in cash, on the "Effective Date" as defined in the Debtors' *Second Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp and Its Debtor Affiliates* (the "Plan"). This request for allowance

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

and payment of the Administrative Claims is brought pursuant to 11 U.S.C. § 503(b) and this Court's Order establishing a bar date for the filing of requests for allowance of administrative expense claims (Doc. No. 421) (the "Bar Date Order"). In support of the relief sought in this request, UGL respectfully states as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.  On January 16, 2019 (the "Petition Date"), Shopko Stores Operating Co. LLC and certain of its affiliated entities (collectively, "Debtors" or "ShopKo") filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code.

3.  The Debtor is continuing to operate and manage its business as a debtor in possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.  UGL is a federally qualified health center ("FQHC") receiving a federal grant under Section 330 of the Public Health Service Act. *See* 42 U.S.C. § 254b. As a Section 330 grantee and FQHC, UGL must serve medically underserved populations by providing required primary health services regardless

of each patient's ability to pay for the services. *See* 42 U.S.C. § 254b(a)(1)(A), (k)(3)(G). Among the required primary health services are "pharmaceutical services." *See* 42 U.S.C. § 254b(b)(1)(A)(i)(V). FQHCs are required to provide the primary health services either directly *or through contracts* or cooperative arrangements. *See* 42 U.S.C. 254b(a)(1) (emphasis added).

5. Because of its status as an FQHC, UGL is entitled to participate in the federal 340B drug discount program ("340B Program"), established under Section 340B of the Public Health Service Act. *See* 42 U.S.C. § 256b(a)(4)(A). The 340B Program enables eligible safety net providers called "covered entities," including UGL and other FQHCs, to purchase outpatient drugs at greatly reduced prices by requiring drug manufacturers that want their drugs covered by Medicaid and Medicare to also agree to sell their drugs to the eligible 340B Program providers at no higher than a formula-based ceiling price that closely approximates what state Medicaid agencies pay for outpatient drugs. *See* 42 U.S.C. § 256b(a)(1).

6. UGL provides its required pharmaceutical services through contractual arrangements, including a contractual arrangement with Shopko. On or about June 28, 2018, UGL and ShopKo Stores Operating Co. entered into a 340B Amended and Restated Contract Pharmacy Services Agreement (the "Agreement"). Per the terms of the Agreement, UGL purchased 340B prescription

3

drugs (the "340B Inventory") and shipped them to Shopko so that it could service its qualifying patients.

7. The Federal Health Resources and Services Administration ("HRSA"), an agency within the Department of Health and Human Services ("HHS") that oversees the FQHC program through its Bureau of Primary Health Care and oversees the 340B Program through its Office of Pharmacy Affairs, has established guidelines (the "Guidelines") for covered entities that contract with third parties to provide pharmacy services using the covered entity's drugs purchased through the 340B Program. *See Final Notice Regarding 340B Drug Pricing Program – Contract Pharmacy Services*, 75 Fed. Reg. 10, 272 (Mar. 5, 2010).

8. The Guidelines are designed to ensure that contract pharmacy arrangements involving 340B drugs are able to comply with certain 340B Program requirements. Specifically, covered entities may not "resell or transfer" their 340B drugs to any individual other than a patient of the covered entity. *See* 42 U.S.C. § 256b(a)(5)(B). In a contract pharmacy arrangement, the covered entity purchases 340B drugs, and ships them to its contracted pharmacy. The contracted pharmacy then maintains that inventory separate from its own inventory, dispenses it only to the covered entity's patients, bills the responsible payer (or patient) for reimbursement, and remits that reimbursement to the covered entity that owns the

drugs (less whatever contractually agreed upon fee the pharmacy is owed for the dispensing and billing services). *See* 61 Fed. Reg. at 10,277-78.

9. Rather than require contract pharmacies to maintain two physically separated inventories (representing the pharmacy's own drugs and its covered entity contract partner's drugs), many contract pharmacy arrangements use a virtual inventory model, in which the pharmacy maintains a single inventory and tracks whenever it dispenses a drug to an individual who is one of the covered entity's patients. Once the pharmacy has dispensed a full package of a particular drug (as identified by its 11-digit National Drug Code), the covered entity replaces the drugs dispensed on its behalf. The contracted pharmacy backfills what it dispensed on the covered entity's behalf with the covered entity's inventory, and the drugs originally dispensed by the pharmacy to the covered entity's patients are virtually swapped with the replenishment such that the drugs dispensed are deemed the 340B drugs and the replacement drugs become the property of the pharmacy. The drugs dispensed to covered entity patients are essentially loaned by the pharmacy to the covered entity until the covered entity pays off the loan with 340B drugs.

10. In nearly all contract pharmacy arrangements, the contract pharmacy pays the reimbursement due to the covered entity as it is received from the responsible payers (the "340B Proceeds" and together with the 340B Inventory, the

5

"340B Property"). Since the pharmacy is dispensing the covered entity's drugs, the reimbursement belongs to the covered entity. It is not the pharmacy's property.

11. Under the Agreement, Shopko does *not* release the reimbursement it collected *until it receives* the replenishment inventory. Accordingly, the replacement drugs in the Agreement remain UGL's property until Shopko releases the reimbursement. If Shopko never pays the reimbursement to UGL, and retains the drugs as an "individual" other than a patient of the entity, then it is illegally diverting the 340B drugs.

12. UGL continued to send replenishment 340B Inventory to Shopko until the Petition Date. It has not received any reimbursement for drugs sent to Shopko since late June 2018. On information and belief, on and after the Petition Date, ShopKo has illegally retained 340B Property that it was obligated to return or pay to UGL, and has or will use the 340B Property in the administration of and to the benefit of its estate, and has not repaid UGL in accordance with the Agreement and applicable law, in an amount of up to $587,605.96. *See* Proof of Claim No. 1935, attached hereto as **Exhibit B**. (the "Post-Petition Claim").[2]

13. UGL reserves all of its rights to argue, in an objection to confirmation of the Debtors' proposed Plan or otherwise, that, in addition or in the alternative,

---

[2] The Post-Petition Claim is subject to amendment upon, if applicable, determination of the value of the 340B Inventory and proceeds of 340B Inventory on hand as of the Petition Date.

6

the 340B Property is not property of the Debtors' estates, and is the property of UGL subject to the interests of the Federal government. *See, e.g.,* 45 CFR 75.2 , 45 CFR 75.307 and 42 USC 254b.

14.     During the 20 day period prior to the Petition Date, the Debtors received at least $125,935.62 of 340B Inventory from UGL (the "503(b)(9) Claim"). *See* Proof of Claim No. 1727, attached hereto as **Exhibit A**.

15.     On February 14, 2019, this Court entered the Bar Date Order. The Bar Date order established a March 18, 2019 deadline for filing claims arising prior to the Petition Date including Section 503(b)(9) administrative priority claims (the "Claims Deadline"). The Bar Date Order also directs all parties asserting a request for payment of administrative expense claims arising between the Petition Date and April 1, 2019 to file a request for payment of such administrative expenses with this Court on or before April 1, 2019 (the "Administrative Claim Bar Date").[3]

---

[3] Notwithstanding the Bar Date Order's clear and unambiguous language that Administrative Claims arising under 11 U.S.C. § 503(b)(9) may be asserted via proof of claim, rather than via a request for administrative expense, Article II.A. of ShopKo's proposed plan (Dkt. No. 570, the "Plan") appears to imply that all Administrative Claims (including those arising under 11 U.S.C. § 503(b)(9)) must be asserted by a request for payment of administrative expense filed and served on the debtors before the Administrative Claims Bar Date (as defined in the Plan) and pursuant to procedures specified in a yet-to-be-issued confirmation order. This inconsistency between the Plan and the Bar Date Order may well be unintentional. However, out of an abundance of caution, UGL hereby reasserts and requests payment of its Administrative Claim arising under 11 U.S.C. § 503(b)(9) as set forth herein and in the attached proof of claim.

16. On or before the Claims Deadline, UGL timely filed Claims Nos. 1723,[4] 1727, and 1935 (the "Claims"). Two of the Claims are administrative claims under Section 503(b) (the "Administrative Claims"): (i) Claim No. 1727, i.e. the 503(b)(9) Claim; and (ii) Claim No. 1935, i.e. the Post-Petition Claim (collectively the "Administrative Claims").

17. UGL now seeks approval of the Administrative Claims and an order from this court that they are paid in full.

## LEGAL AUTHORITY

18. On its face, and as stated in Claim No. 1727, the 503(b)(9) Claim is a valid, allowable administrative expense priority claim pursuant to 11 U.S.C. § 503(b)(9).

19. With respect to *post*-petition administrative expense priority obligations incurred by a debtor, the Supreme Court has held that:

> If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.[5]

---

[4] With respect to Claim No. 1723, the general unsecured claim, such claim is subject to amendment, if applicable, upon the determination of the value of the Post-Petition Claim, which amount would be deducted from the amount of the general unsecured claim.

[5] *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199 (1984).

Lower courts have made similar holdings. *See an re Chateaugay Corp.*, 156 B.R. 391, 399 (S.D.N.Y. 1993) ("the Bankruptcy Code confers an administrative priority when a debtor, by electing post-petition not to disaffirm an executory contract or unexpired lease, induces a creditor to confer a post-petition benefit upon the estate."); *In re A.H. Robins Co., Inc.*, 68 B.R. 705, 711 (Bankr. E.D.Va. 1986) ("[a] passive acceptance of benefits from a creditor during the post-petition period merely converts that creditor's claim for post-petition services into one entitled to an administrative priority.")

20. The policy behind priority treatment for administrative expenses is to encourage creditors to cooperate with the debtor's reorganization effort. *See e.g., In re Pre-Press Graphics Co.*, 300 B.R. 902, 909 (Bankr. N.D. Ill. 2003).

21. Generally, an obligation qualifies as an actual and necessary administrative expense when the obligation arose from a transaction with the estate, which benefited the operation of the debtor's business. *See, e.g., Burival v. Creditor Comm. (In re Burival)*, 406 B.R. 548, 555 (B.A.P. 8th Cir. 2009) ("Section 503(b)(1) of the Bankruptcy Code provides for the allowance of administrative expenses including the actual necessary costs and expenses of preserving the estate and certain taxes and related penalties and fines. In order to obtain administrative expense status under Section 503(b)(1), a claimant must demonstrate that its claim was an actual and necessary cost or expense of

9

preserving the bankruptcy estate. This test generally requires proof of a benefit to the bankruptcy estate.") *aff'd* 613 F.3d 810 (8th Cir. 2010); *Pre-Press Graphics*, 300 B.R. at 909-10 ("in order to demonstrate the priority of an administrative claim, the debt must (1) arise out of a transaction with the debtor-in-possession and (2) benefit the operation of the debtor's business.").

22. The debt owing by Debtors to UGL arising from and related to the 340B Property constitutes an administrative priority claim under Section 503(b) of the Bankruptcy Code because this debt arose post-petition and benefited Debtor's estate. *See* 11 U.S.C. § 503(b)(1)(A).

23. Here, the Debtor continued to possess and use the 340B Property following the Petition Date, and the benefit to the estate was the value of the 340B Inventory and the amount of the 340B Proceeds that remained in possession of the Debtors that were required to be returned or paid to UGL pursuant to applicable law. *See, e.g., In re Thayn Farms, Inc.*, 117 B.R. 510 (Bankr. D. Neb. 1988) ("[T]he appropriate standard for allowance of the administrative expense claim was the 'use value' of the property. If no other contrary evidence is presented, the property's use value is presumed to be the payment called for by the lease, as amortized.").

24. Accordingly, UGL is entitled to full approval and payment of the Administrative Claims.

## RELIEF REQUESTED

25.     UGL respectfully request that the Court enter an Order allowing the Administrative Claims and directing that the Administrative Claims be paid in full, in cash, on the Effective Date of the Plan or as otherwise ordered by the Court.

## RESERVATION OF RIGHTS

26.     UGL reserves any and all rights it has or may have in law and in equity and any and all rights it has or may have under state law and federal law. The Administrative Claims are not intended to be and shall not be construed as: (1) an election of remedies; (2) a waiver of any defaults; or (3) a waiver or limitation of any rights, remedies, claims, or interest that UGL may have against the Debtors or third parties.

**9013-1 NOTICE:** Please take notice that pursuant to Local Rule 9013-1(E), any resistance to *Upper Great Lakes Family Health Center Request for Allowance and Payment of its Administrative Expense Claim*, or request for hearing as to the same, must be filed on or before April 22, 2019 (the "Resistance Date"). Unless a resistance or request for hearing is filed and served on or before the Resistance Date, then Pursuant to Rule 9013(D), the Court may enter an order in favor of the moving party.

Respectfully submitted,

UPPER GREAT LAKES FAMILY
HEALTH CENTER

Date: 4/1/2019

By: *s/Martin P. Pelster*
Martin P. Pelster, #19223
CROKER, HUCK, KASHER,
DeWITT, ANDERSON &
GONDERINGER, L.L.C.
2120 South 72nd Street, Suite 1200
Omaha, Nebraska 68124
(402) 391-6777
(402) 390-9221 (Fax)
mpelster@crokerlaw.com

and

Brendan G. Best (PXXXXX)
William L. Thompson (P80123)
VARNUM LLP
160 W. Fort St., 5th Floor
Detroit, MI 48226
Phone: (313) 481-7300
bgbest@varnumlaw.com
wlthompson@varnumlaw.com

*Attorneys for Upper Great Lakes Family Health Center*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April, 2019, I caused the above document to be filed in the Bankruptcy Court's CM/ECF system which gave notification electronically upon all parties who filed an appearance or requested notice by electronic filing in this case, and I hereby certify that I have mailed by first class United States mail, postage prepaid, the document to the following non-CM/ECF participants:

None.

By  *s/Martin P. Pelster*
    Martin P. Pelster, #19223

#803870