**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] ) | Case No. 19-80064-TLS |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |

**DEBTORS' MOTION FOR ENTRY OF AN
ORDER (I) EXTENDING THE DEBTORS' EXCLUSIVE
PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT
ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF
THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

**Introduction**

1. The Debtors commenced these chapter 11 cases to preserve and maximize the value of their estates and their three core businesses—retail, pharmacy, and optical—in the face of a challenging and diverse capital structure. In the three months since, the Debtors have made substantial progress: marketing and pursuing every viable option to preserve a going concern and reaching an agreement, subject to Court approval, to do so with their optical business (the "Optical Business"); marketing, auctioning, and selling their short-lived pharmacy assets; monetizing their retail and other non-continuing assets to reduce their debt and maximize value; engaging with their

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

KE 60973275

creditor constituencies to build consensus wherever possible; and advancing their chapter 11 plan process, including obtaining approval of a disclosure statement. Although there remain many challenges and contingencies ahead, the Debtors intend to use the Exclusive Periods (as defined below) to continue to work with their stakeholders to maximize value and chart a course to emergence from chapter 11.

2. Since January 16, 2019 (the "Petition Date"), the Debtors have worked diligently to advance these chapter 11 cases. The Debtors built off the prepetition marketing process of their pharmacy business, and launched a court-approved auction process to capture the value of these non-core assets before they suffered further value degradation resulting from the Debtors' restructuring. Based upon months of analysis prior to the chapter 11 cases, the Debtors moved forward with their plan to substantially reduce their retail footprint to make the business more marketable and monetize the associated retail assets through a Court-approved store closing process. While the Debtors undertook these initiatives to preserve value, they worked tirelessly to find a going concern buyer or sponsor, and advance their chapter 11 plan process. While the Debtors were unfortunately unable to find a buyer for their retail business, they were ultimately successful in finding a buyer for their optical assets, subject to court-approval. With respect to their chapter 11 plan, the Debtors filed a plan on the Petition Date (as amended, modified, or supplemented from time to time, the "Plan") and obtained approval of a disclosure statement (the "Disclosure Statement"). In addition, the Debtors have timely met their obligations, filed schedules and statements, obtained approval of a bar date, and otherwise complied with their obligations as chapter 11 debtors.

3. The Debtors have also worked to build meaningful consensus with their stakeholders along the way. The Debtors began these cases with the support of the agent under

their credit facility, Wells Fargo Bank, N.A., and have worked successfully with the agent throughout the cases to resolve issues and obtain its support. After various disputes with their last-out lenders under the facility, Shopko Note Holdings, LLC ("Spirit"), the Debtors have recently made substantial progress in recent weeks with Spirit to reach consensus on the path ahead. Last, the Debtors have worked successfully with their largest landlord and unsecured creditor—first, Credit Suisse and later, by assignment, 2105 Lazelle Street LLC ("Monarch")—to build consensus on various issues, including most recently through the transaction with Monarch to preserve the Optical Business.

4.   While the Debtors have spent the past three months generating as much value for their stakeholders as possible, there is still significant work ahead to resolve these chapter 11 cases. The Debtors intend to use the extension of the Exclusive Periods to: work with Monarch to consummate the sale of the Optical Business to develop and preserve the associated going concern; continue to monetize their retail assets in an efficient manner and realize on other non-operating assets; and negotiate with their stakeholders on an emergence from chapter 11.

5.   Maintaining the Debtors' exclusive right to file and solicit votes on the Plan is critical to achieving a value-maximizing outcome in these chapter 11 cases. Extending the exclusivity periods will afford the Debtors time to achieve their objectives and work with their stakeholders toward a consensual resolution of these cases that maximizes value for all stakeholders. Therefore, the Debtors request an extension of the exclusivity periods by 180 days to allow the Debtors to focus on continuing to advance the process and to preclude the costly disruption and instability that could otherwise occur.

**Relief Requested**

6.   By this Motion, the Debtors seek entry on an order extending (a) the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Filing Exclusivity

Period") through and including December 12, 2019, and (b) the deadline under which the Debtors have the exclusive right to solicit a plan filed during the Filing Exclusivity Period (the "Solicitation Exclusivity Period," and, with the Filing Exclusivity Period, collectively, the "Exclusivity Periods") through and including February 10, 2020.

7. Additionally, the Debtors respectfully request leave to submit a proposed order for the Court's consideration, as to grant the relief requested herein.

## Jurisdiction and Venue

8. The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The bases for the relief requested herein are section 1121 of the Bankruptcy Code, Bankruptcy Rule 3007(d), and Rule 9013-1 of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

## General Background

1. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 16 2019, the Court entered an order [Docket No. 25] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule

4

1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.  On January 18, 2019, the United States Trustee for the Nebraska (the "U.S. Trustee") appointed the Committee [Docket No. 95].

2. A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Russell L. Steinhorst, Chief Executive Officer of Specialty Retail Shops Holding Corp., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed on January 16, 2019 [Docket No. 4], incorporated herein by reference.

### Post-Petition Efforts

3. In less than three months after the Petition Date, the Debtors have made substantial progress towards advancing these cases.  In addition to managing numerous sale processes, including the sale of their pharmacy assets, retail business, and Optical Business, the Debtors have undertaken actions necessary to advance these cases in as time and cost-efficient a manner as possible.  Specifically, the Debtors have accomplished the following:

   a. ***Obtaining Critical Financial and Operational Relief***.  The Debtors stabilized their business operations through various operational first- and second-day motions and orders.  This allowed them to, among other things, continue to use cash collateral, pay employees, pay landlords, and continue to use their cash management system.

   b. ***Chapter 11 Plan and Disclosure Statement***.  The Debtors made numerous changes to the Plan and accompanying disclosure statement since filing the initial versions on the Petition Date.  Following the Court's approval of the disclosure statement on March 1, 2019, the Debtors have continued discussions with the Committee and their other stakeholders to garner support for the Plan.

   c. ***Schedules and Statements***.  The Debtors submitted their schedules of assets and liabilities and statements of financial affairs on February 22, 2019, which required review and analysis of thousands of claims, assets, and contracts of each of the Debtors;

   d. ***Assisting the Stakeholders with Due Diligence Efforts***.  The Debtors have

      expended significant effort and time in assisting their lenders, the Committee, and their advisors with conducting due diligence, including providing documents and holding conference calls and in person meetings regarding the same.

    e.    ***Managing Executory Contracts and Unexpired Leases.*** Pursuant to the *Order (I) Authorizing and Approving the Rejection of Certain Unexpired leases, (II) Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket Entry 76], on the Petition Date, the Debtors rejected 18 unexpired leases, and have filed 11 notices rejecting additional unexpired leases and executory contracts. Moreover, the Debtors are in the process of determining which, if any, executory contracts and unexpired leases to assume.

    f.    ***Claims Bar Date.*** On February 14, 2019, the Court entered an order granting the Debtors' motion to establish certain bar dates. Approximately 2,500 claims have been filed to date, and the Debtors have begun the process of reconciling certain of the claims as promptly as possible.

4.    Despite the significant progress the Debtors have made in these cases, much work remains to be done. Among other things, the Debtors intend to use the months ahead to: (a) consummate the sale for, and work with the buyer to rebuild, the Optical Business; (b) continue to sell their remaining inventory and conduct an orderly wind-down of their retail business; (c) evaluate and seek to realize upon causes of action to fund creditor recoveries; and (d) continue to engage with their creditor constituents to build consensus for their emergence from chapter 11.

5.    Extending the Exclusivity Periods will allow the Debtors time to preserve their business to the greatest extent possible, realize on their non-continuing assets, and develop consensus with stakeholders without the costs and disruption, without any benefit, that would follow an expiration of the Exclusivity Periods.

6.    Therefore, the Debtors request an extension of the Exclusivity Periods by 180 days to allow the Debtors to efficiently conclude the chapter 11 cases and preclude the instability that would occur if one or more competing plans were to be proposed.

6

**Basis for Relief**

7. Section 1121(b) of the Bankruptcy Code establishes an initial period of 180 days after the commencement of a chapter 11 case during which only a debtor may file a plan and an additional 60-day period during which only the debtor may solicit votes for a plan. The foregoing periods may be extended for cause upon "request of a party in interest made within the [foregoing 120 day period] and after notice and a hearing[.]" *See* 11 U.S.C. § 1121(d). Currently, the Filing Exclusivity Period will expire on May 16, 2019, and the Solicitation Exclusivity Period will expire on July 15, 2019. The Debtors believe it is prudent to seek an extension of the Exclusivity Periods in order to preserve their exclusive ability to file and solicit a new plan of reorganization and that cause exists for such extension.

8. Although the Bankruptcy Code does not define "cause," under section 1121(d)(1) of the Bankruptcy Code, bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Tony Downs Foods Co.*, 34 B.R. 405, 406 (Bankr. D. Minn. 1983) (noting that the legislative intent of section 1121 was for the bankruptcy court to have discretion to determine whether "cause" has been shown, which should be viewed in the context of the Bankruptcy Code's goal of fostering reorganizations); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003) (noting that an extension of exclusivity is typically granted where there is "some promise of probable success [for reorganization]") (citation omitted).

9. Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period:

    a. the size and complexity of the case;

    b. the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information for the creditors' committee;

    c.    whether good faith progress is being made toward reorganization;

    d.    whether an unresolved contingency exists;

    e.    the fact that the debtor is paying their bills as they become due;

    f.    the amount of time which has elapsed in the case due to any previous extensions of exclusivity;

    g.    whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

    h.    whether the debtor has resolved fundamental reorganization matters essential to their survival; and/or

    i.    whether there has been a gross mismanagement of the debtor.

*See, e.g.*, *In re Acceptance Ins. Companies, Inc.*, No. BK05-80059-TJM, 2008 WL 3992799, at *2 (Bankr. D. Neb. Aug. 20, 2008) (listing the nine factors relevant to whether "cause" exists to extend exclusivity periods and denying the debtor's extension request after having already received numerous extensions but still not having moved the case forward with respect to any outstanding matters); *see also Hoffinger Indus., Inc.*, 292 B.R. at 643–44 (listing the nine factors relevant to whether "cause" exists to extend exclusivity periods and finding that a five month extension request prior to the exclusivity periods expiring should be granted); *Matter of Fansteel, Inc.*, No. 16-01823-ALS11, 2017 WL 782865, at *2–3 (Bankr. S.D. Iowa Feb. 28, 2017) (affirming that nine factors are used by courts in the Eighth Circuit to determine whether "cause" under section 1121(d)(1) has been shown).

    10.    Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g.*, *In re Standard Mill Ltd. P'ship*, No. BKY 4-96-2656, 1996 WL 521190, at *1 (Bankr. D. Minn. Sept. 12, 1996) (referencing the factors used to show "cause", but claiming that any number of factors can be determinative in the court's decision regarding "cause" under section 1121(d)(1)); *In re*

*Wisconsin Barge Line, Inc.*, 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987) (holding that the following three factors, (a) "the size and complexity of the case," (b) "the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information," and (c) "the good faith progress being made toward reorganization," justified the court "grant[ing] the extension of the exclusive period for cause" due to the debtors diligence of having already filed a plan prior to the extension request in the large and complex case). Moreover, courts routinely grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y. 2011) (same).

11. There is ample precedent in this district and others for an initial extension of exclusivity as the Debtors seek here. *See, e.g.*, *In re Gordmans Stores, Inc.*, Case No. 17-80304 (Bankr. D. Neb. July 7, 2017) (granting 90-day extension request prior to the exclusivity period expiring); *Hoffinger Indus., Inc.*, 292 B.R. at 644 (granting a five-month extension request prior to the exclusivity period expiring); *Wisconsin Barge Line, Inc.*, 78 B.R. at 948 (granting a fifth exclusivity extension for the purpose of soliciting consent for the plan in a large and complex case, thus stretching the exclusivity period for over 16 months); *In re Toys "R" Us, Inc.*, Case No. 17-34555 (KLP) (Bankr. E.D. Va. Dec. 20, 2017) (granting 180-day extension request prior to the exclusivity request expiring); *In re rue21, inc.*, Case No. 17-22045 (GLT) (Bankr. W.D. PA. July 21, 2017) (granting 95-day extension request prior to the exclusivity request expiring); *BCBG*

*Max Azria Global Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. May 9, 2017) (granting 105-day extension request prior to the exclusivity request expiring).[2] An initial extension of exclusivity for at least 180 days promotes case administration efficiencies, as serial short-term extensions lead to instability by forcing parties to continue returning to court over-and-over again to litigate exclusivity. *See In re MSR Resort Golf Course LLC*, No. 11-10372 (SHL) (Bankr. S.D.N.Y), Hr'g Tr. Feb. 21, 2012, 7:24–8:3 (extending exclusivity, in part, because "everything else in the case ground to a significant halt, in light of prior fights about exclusivity").

**I.    The Debtors' Chapter 11 Cases Are Large and Complex.**

12.    As of several months ago, the Debtors operated over 360 stores in 25 states in various formats and as of the Petition Date, employed approximately 14,000 employees. During the fiscal year 2017, the Debtors generated revenues totaling approximately $2.6 billion from sales of clothing, accessories, electronics, and home furnishings, as well as company operated pharmacy and optical services departments.

13.    The Debtors entered these cases with a unitranche credit facility with commitments of up to $408.5 million, subject to a borrowing base, that included two tranches of ABL lenders and two tranches of term loan lenders. Moreover, the Debtors have a wide variety of parties in interest, from landlords and trade vendors to local, state, and federal agencies—many of whom have been very active in these cases. All of the Debtors' store locations, distribution centers, corporate headquarters, and other office space are leased from third-party landlords and must be assumed and assigned or rejected as part of these chapter 11 cases. The Debtors also have a myriad of reporting obligations with respect to local, state, and federal taxing and regulatory agencies that

---

[2]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

the Debtors have continued to comply with, to the extent required by the Bankruptcy Code. These cases are incredibly complex, and among the most complex ever filed in this District, and therefore the size and complexity of these chapter 11 cases thus weigh in favor of extending the Exclusivity Periods.

II. **The Debtors Have Made Substantial Progress in These Cases, But More Time Is Needed to Reach Consensus.**

14. As noted in this Motion, the Debtors have made significant progress in these cases, including completing the sale of approximately 120 pharmacy locations to more than six purchasers after a marketing and auction process, pursuing an extensive marketing process that involved outreach to over a dozen potential purchasers for their retail business, negotiating and implementing a process to realize upon their retail assets, and negotiating and reaching an agreement for the sale of their Optical Business. Additionally, the Debtors have executed many of their important responsibilities as a chapter 11 debtor, including filing schedules and statements and setting bar dates, engaging with their creditor constituencies on these efforts, and, importantly, making meaningful progress on the Plan by obtaining approval of the Disclosure Statement. The Debtors have made tremendous progress in a limited amount of time thus far in these chapter 11 cases.

15. In the weeks ahead, as the Debtors intend to continue to work to preserve the Optical Business, monetize their non-continuing assets efficiently, and reach agreements with their stakeholders and third parties on their emergence from chapter 11. The Debtors substantial progress, when coupled with the need to resolve the many remaining contingencies in these chapter 11 cases to reach consensus, all weigh in favor of a further extension of the Exclusive Periods.

### III. The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusive Periods.

16. The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. Indeed, the Debtors have worked diligently to explore and develop alternatives in these chapter 11 cases with their stakeholders to preserve a going concern and to maximize value. The Debtors' focus during these chapter 11 cases has been to maximize the value of their assets through a potential sale and then to effectuate a liquidation of the Debtors' operations. The Debtors have coordinated extensively with their major stakeholders to further this goal and have made substantial progress with their creditors to date, including their prepetition agent, Spirit, and their largest landlord and unsecured creditor, Monarch. In addition, the Debtors continue to engage with their vendors, landlords, and the unsecured creditors committee to find resolutions and common ground. And while certain parties have advocated for disparate and sometimes conflicting viewpoints on certain issues in these chapter 11 cases, including with respect to the the Plan, the Debtors remain engaged with each of their stakeholders to find resolution on these issues and remain hopeful of a consensual resolution. Accordingly, the Debtors are not seeking an extension to pressure their creditors or other parties in interest.

### V. The Debtors Are Paying Their Bills as They Come Due.

17. Since the Petition Date, the Debtors have paid their vendors and other stakeholders in the ordinary course of business or as required by order of the Court. The Debtors recently filed a revised DIP budget in these chapter 11 cases that demonstrates their intention to do so during going forward.

### IV. Relatively Little Time Has Elapsed in These Chapter 11 Cases.

18. This request for an extension of the Exclusivity Periods is the Debtors' first and comes approximately three months into these chapter 11 cases. As described above, courts

routinely grant a debtor's request for an initial extension. The fact that these cases remain at a relatively early stage in the chapter 11 process and the Debtors have accomplished a great deal in a short amount of time further supports the requested extension.

V.     **An Extension of the Exclusivity Periods Will Not Prejudice Creditors.**

19.    The Debtors seek to maintain exclusivity to focus their efforts on preserving the going concern and jobs related to their Optical Business, to continue to monetize their retail and other non-continuing assets in an efficient manner, and continue to work with their creditors to develop a consensual resolution to these complex chapter 11 cases. Extending the Exclusivity Periods will benefit creditors by avoiding a drain on estate assets relating to the potential competing chapter 11 plans without any benefit associated with doing so. All stakeholders benefit from that continued stability and predictability that comes only with the Debtors being the sole plan proponent. Moreover, even if the Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later appearing before the Court to assert that cause supports termination of the Debtors' exclusivity. Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will instead benefit the Debtors' estates, their creditors, and all other key parties in interest.

20.    Accordingly, the Debtors respectfully submit that sufficient cause exists to extend the Exclusivity Periods as provided herein.

## Notice

21.    The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) the Committee; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the

office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

## No Prior Request

22.    No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request: (1) that the Court enter an order extending the Filing Exclusivity Period and the Solicitation Exclusivity Period by 180 days each; and (2) leave to submit a proposed order for the Court's consideration granting such relief.

| | |
|---|---|
| Dated: April 16, 2019<br>Omaha, Nebraska | /s/ *Lauren R. Goodman*<br>James J. Niemeier (NE Bar No. 18838)<br>Michael T. Eversden (NE Bar No. 21941)<br>Lauren R. Goodman (NE Bar No. 24645)<br>**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**<br>First National Tower, Suite 3700<br>1601 Dodge Street<br>Omaha, Nebraska 68102<br>Telephone: (402) 341-3070<br>Facsimile: (402) 341-0216<br>Email: jniemeier@mcgrathnorth.com<br>meversden@mcgrathnorth.com<br>lgoodman@mcgrathnorth.com |

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Travis M. Bayer (admitted *pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
patrick.nash@kirkland.com
travis.bayer@kirkland.com

- and -

Steven Serajeddini (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors*