**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) ) ) | Case No. 19-80064-TLS |
| Debtors. | ) ) ) | (Jointly Administered) |

**ORDER (I) GRANTING RELIEF RELATED TO THE WIND-DOWN OF THE
DEBTORS' REMAINING OPERATIONS, AND (II) GRANTING RELATED RELIEF**

Upon consideration of the Motion[2] of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"): (a) granting relief related to the wind-down of the Debtors' remaining operations; and (b) granting related relief, all as more fully described in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the *Debtors' Motion for Entry of an Order (I) Authorizing the Sale of the Debtors' Optical Business, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Authorizing a Settlement of Claims and Causes of Action (IV) Granting Relief Related to the Wind-Down of the Debtors' Remaining Operations, and (V) Granting Related Relief* [Docket No. 1020] (the "Motion"); the *Second Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and Its Debtor Affiliates* [Docket No. 570] (as may be modified, amended, or supplemented from time to time, the "Plan"); or the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors and Debtors in Possession to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 425] (the "DIP Order"), as applicable.

the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors provided due and proper notice that is adequate and appropriate under the particular circumstances; and the Court having held a hearing to consider the relief requested in the Motion and any objections or other responses to the relief requested therein (the "Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and upon consideration of the record of the Hearing, and all proceedings had before the Court, the arguments of counsel made, and the evidence proffered and adduced, at the Hearing; and it appearing that due notice of the Motion and the form of this Order has been provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and any objections or other responses to the relief requested herein having been withdrawn, resolved, or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND THAT**:

      A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      B.    The statutory and other legal predicates for the relief sought in the Motion are sections 105(a), 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014 and Local Rules 6004-1 and 9014-1.

C. Except as modified herein, all of the terms of the DIP Order are incorporated herein and made part of this Order. The DIP Order shall remain unchanged and in full force and effect, except to the extent modified by this Order and by the terms of the budget attached hereto as **Exhibit A** (the "Sale Budget"). All factual and other findings and conclusions of law contained in the DIP Order shall remain fully applicable, except to the extent specifically modified herein.

D. A fair and reasonable opportunity to object to and to be heard with respect to the Motion and the relief requested in the Motion has been given, as required by the Bankruptcy Code and the Bankruptcy Rules, to all Persons entitled to notice.

**NOW THEREFORE, IT IS ORDERED THAT:**

1. The Sale Budget and modifications to the DIP Order contained herein are hereby approved.

2. Good cause has been shown for the entry of this Order. The Sale Budget and modifications to the DIP Order are in the best interests of the Debtors, their creditors and their estates and all other parties-in-interest in these chapter 11 cases, and are necessary, essential, and appropriate for the management and preservation of the Debtors' estates.

3. Any responses or objections to, unless otherwise adjourned, or reservations of rights regarding, the entry of this Order or the Sale Budget that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice. All holders of Claims or Interests or other persons and entities that failed to timely object, or withdrew their objections, to the Sale Budget or this Order are deemed to consent to the relief granted herein for all purposes.

4. The Debtors are authorized to enter into the modifications to the DIP Order contained herein, to make, execute, and deliver all instruments and documents, and to perform all

acts in connection therewith that may be reasonably required for the Debtors' performance of their obligations under the DIP Order, as modified herein.

5. The DIP Order is hereby amended as follows:

a. A new Section 2.5(vii) shall be added to the DIP Order as follows: "; and (vii) on and after entry of the *Order (I) Granting Relief Related to the Wind-Down of the Debtors' Remaining Operations, and (II) Granting Related Relief* [Docket No __] (the "DIP Modification Order"), the Debtors may not use the Collateral and proceeds thereof to compensate Committee Professionals for any fees and expenses incurred during such period in excess of $250,000.

b. A new Section 3.1(d) shall be added to the DIP Order as follows: "; and (d) if, on and after the date the the DIP Modification Order is entered, the Debtors use the Collateral and proceeds thereof to compensate Debtor Professionals incurred during such period in excess of the sum of: (x) $1,745,000 and (y) any and all fees and expenses incurred in connection with the transactions described in the *Debtors' Motion for Entry of an Order (I) Authorizing the Sale of the Debtors' Optical Business, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Authorizing a Settlement of Claims and Causes of Action (IV) Granting Relief Related to the Wind-Down of the Debtors' Remaining Operations, and (V) Granting Related Relief* [Docket No. 1020] (the "Sale Motion") or through the prosecution or settlement of any causes of action of the Debtors not settled pursuant to the Sale Motion or in connection with a Sale (as defined in the Sale Motion), including services rendered in connection with the

pursuit, analysis, negotiation, documentation, prosecution and defense of any such transaction or settlement;"

c. Section 2.3(a) of the DIP Order is replaced it in its entirety with the following:

(a) <u>Carve-Out</u>. As used in this Final Financing Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve-Out</u>"); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and, subject to the limitation set forth below, the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first business day following delivery by the Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed the greater of: (x) $1,490,000 less any Allowed Professional Fees incurred pursuant to the Sale Budget on and after the date the DIP Modification Order is entered and (y) $1,000,000, incurred after the first business day following delivery by the Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "<u>Post-Carve Out Trigger Notice Cap</u>"); provided that notwithstanding anything to the contrary set forth herein or otherwise, the Carve Out shall not include any Allowed Professional Fees incurred by the Committee Professionals on and after the entry of the DIP Modification Order in excess of the aggregate amount of $250,000.

6. The modifications to the DIP Order and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the

Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, and the Debtors and their respective successors and assigns; *provided* that the DIP Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

7. This Court shall retain jurisdiction (to the greatest extent allowed by applicable law) with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order and to enforce the injunctions set forth herein.

Omaha, Nebraska
Dated:  April 29   , 2019

/s/Thomas L. Saladino
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Sale Budget**

**Shopko**
**Budget**
**($ in 000s)**

| | 2019 Mar-19 03/23/19 Actual | 2019 Mar-19 03/30/19 Forecast | 2019 Mar-19 04/06/19 Forecast | 2019 Apr-19 04/13/19 Forecast | 2019 Apr-19 04/20/19 Forecast | 2019 Apr-19 04/27/19 Forecast | 2019 May-19 05/04/19 Forecast | 2019 May-19 05/11/19 Forecast | 2019 May-19 05/18/19 Forecast | 2019 May-19 05/25/19 Forecast | 2019 Jun-19 06/01/19 Forecast | 2019 Jun-19 06/08/19 Forecast | 2019 Jun-19 06/15/19 Forecast | 2019 Jun-19 06/22/19 Forecast | 14 Week Total | Stub Wind Down | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **I. Cash Flows** | | | | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | | | | |
| 1.) Sales Receipts | 40,726 | 44,743 | 38,651 | 34,548 | 29,974 | 30,108 | 32,287 | 25,989 | 19,279 | 19,611 | 18,482 | 17,877 | 15,551 | 19,713 | 387,539 | - | 387,539 |
| 2.) Net Proceeds from Other Assets | 1,762 | - | - | - | - | - | - | - | - | - | 4,363 | - | - | 5,849 | 11,974 | 5,560 | 17,534 |
| 3.) Litigation Related Proceeds [1] | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 17,000 | 17,000 |
| 4.) Total Receipts | 42,488 | 44,743 | 38,651 | 34,548 | 29,974 | 30,108 | 32,287 | 25,989 | 19,279 | 19,611 | 22,845 | 17,877 | 15,551 | 25,562 | 399,514 | 22,560 | 422,074 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | |
| 5.) Merchandise Disbursements | (1,992) | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,992) | - | (1,992) |
| 6.) Payroll, Payroll Tax, & Benefits | (627) | (10,044) | - | (9,079) | (577) | (7,669) | (187) | (6,757) | (305) | (5,039) | (163) | (3,545) | (130) | (4,310) | (48,433) | (2,349) | (50,782) |
| 7.) Sales Tax | (3,967) | (748) | (748) | (1,393) | (4,642) | (1,393) | (1,857) | (998) | (1,996) | (2,662) | (998) | (433) | (866) | (4,634) | (27,333) | - | (27,333) |
| 8.) Rent | (7,000) | - | (4,791) | (869) | (3,358) | - | (2,821) | (491) | (2,442) | - | (1,220) | (185) | (1,794) | - | (24,972) | - | (24,972) |
| 9.) Other OpEx | (3,591) | (4,380) | (3,622) | (3,498) | (2,158) | (1,962) | (2,541) | (2,468) | (1,243) | (1,476) | (1,448) | (1,386) | (1,964) | (152) | (31,888) | (2,088) | (33,976) |
| 10.) Subtotal | (17,177) | (15,172) | (9,161) | (14,840) | (10,734) | (11,024) | (7,405) | (10,714) | (5,987) | (9,176) | (3,829) | (5,549) | (4,754) | (9,096) | (134,618) | (4,437) | (139,054) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | | | |
| 11.) Capital Expenditures | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 12.) Interest & Financing | (37) | - | (1,784) | - | - | (135) | (579) | (23) | - | - | (216) | - | (179) | - | (2,953) | (921) | (3,874) |
| 13.) Employee Severance | - | - | - | (195) | - | - | - | - | - | - | - | - | - | - | (195) | - | (195) |
| 14.) Employee PTO | - | - | - | (33) | (508) | (67) | - | (103) | - | (92) | - | - | - | (808) | (1,612) | (77) | (1,688) |
| 15.) Healthcare Tail | - | - | - | - | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (1,250) | (1,250) | (2,500) |
| 16.) Professional Fees | (2,018) | (2,108) | - | - | - | - | - | - | - | - | - | - | - | - | (4,127) | - | (4,127) |
| 17.) Professional Fees (post 3/23) | - | (325) | (270) | (265) | (210) | (205) | (200) | (175) | (175) | (150) | (95) | (95) | (95) | (90) | (2,350) | (400) | (2,750) |
| 18.) Subtotal | (2,055) | (2,433) | (2,054) | (494) | (843) | (531) | (904) | (426) | (300) | (367) | (436) | (220) | (399) | (1,023) | (12,486) | (2,647) | (15,134) |
| 19.) **Total Disbursements** | **(19,232)** | **(17,605)** | **(11,215)** | **(15,333)** | **(11,577)** | **(11,555)** | **(8,309)** | **(11,140)** | **(6,287)** | **(9,543)** | **(4,265)** | **(5,769)** | **(5,153)** | **(10,120)** | **(147,104)** | **(7,084)** | **(154,188)** |
| 20.) **Net Cash Flow** | **23,256** | **27,137** | **27,436** | **19,215** | **18,396** | **18,553** | **23,978** | **14,849** | **12,993** | **10,068** | **18,580** | **12,108** | **10,398** | **15,443** | **252,410** | **15,476** | **267,886** |
| **II. Financing** | | | | | | | | | | | | | | | | | |
| 21.) Beginning Bank Cash | 1,112 | 719 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,112 | 1,000 | 1,112 |
| 22.) Net Cash Flow | 23,256 | 27,137 | 27,436 | 19,215 | 18,396 | 18,553 | 23,978 | 14,849 | 12,993 | 10,068 | 18,580 | 12,108 | 10,398 | 15,443 | 252,410 | 15,476 | 267,886 |
| 23.) Revolver Borrowings / (Pay Down) | (23,649) | (26,857) | (27,436) | (19,215) | (18,396) | (18,553) | (12,010) | (14,849) | (12,993) | (10,068) | (18,580) | (10,686) | - | - | (213,291) | - | (213,291) |
| 24.) Cash to LCs | - | - | - | - | - | - | (11,968) | - | - | - | - | - | - | - | (11,968) | - | (11,968) |
| 25.) Term B-1 Paydown | - | - | - | - | - | - | - | - | - | - | - | (1,422) | (10,398) | (15,443) | (27,262) | (6,538) | (33,800) |
| 26.) Ending Bank Cash | 719 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 9,938 | 9,938 |
| **II. Availability** | | | | | | | | | | | | | | | | | |
| 27.) Gross Borrowing Base | 289,326 | 265,835 | 248,938 | 220,221 | 194,223 | 174,564 | 152,960 | 124,216 | 100,743 | 87,872 | 71,610 | 51,658 | 38,641 | - | - | - | - |
| 28.) Beginning Revolver Balance | 213,291 | 189,642 | 162,786 | 135,350 | 116,135 | 97,739 | 79,186 | 67,176 | 52,327 | 39,334 | 29,266 | 10,686 | - | - | 213,291 | - | 213,291 |
| 29.) Revolver Borrowings / (Pay Down) | (23,649) | (26,857) | (27,436) | (19,215) | (18,396) | (18,553) | (12,010) | (14,849) | (12,993) | (10,068) | (18,580) | (10,686) | - | - | (213,291) | - | (213,291) |
| 30.) Ending Revolver Balance | 189,642 | 162,786 | 135,350 | 116,135 | 97,739 | 79,186 | 67,176 | 52,327 | 39,334 | 29,266 | 10,686 | - | - | - | - | - | - |
| 31.) + Letters of Credit | 11,398 | 11,398 | 11,398 | 11,398 | 11,398 | 11,968 | - | - | - | - | - | - | - | - | - | - | - |
| 32.) + Accrued Interest & Fees | 1,572 | 1,922 | 463 | 770 | 1,060 | 1,199 | 842 | 1,018 | 1,217 | 1,397 | 1,338 | 1,453 | 1,361 | 1,421 | - | - | - |
| 33.) Total ABL Obligation | 202,613 | 176,106 | 147,211 | 128,303 | 110,198 | 92,353 | 68,018 | 53,345 | 40,551 | 30,664 | 12,024 | 1,453 | 1,361 | 1,421 | - | - | - |
| 34.) ABL Availability | 86,713 | 89,728 | 101,727 | 91,917 | 84,025 | 82,211 | 84,942 | 70,871 | 60,191 | 57,209 | 59,586 | 50,205 | | | - | - | - |
| 35.) Beginning B-1 Loan Balance | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 32,378 | 21,980 | 33,800 | 6,538 | 33,800 |
| 36.) Paydown | - | - | - | - | - | - | - | - | - | - | - | (1,422) | (10,398) | (15,443) | (27,262) | (6,538) | (33,800) |
| 37.) Ending B-1 Loan Balance | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 33,800 | 32,378 | 21,980 | 6,538 | 6,538 | - | - |
| 38.) **Total Gross Liquidity** | **87,432** | **90,728** | **102,727** | **92,917** | **85,025** | **83,211** | **85,942** | **71,871** | **61,191** | **58,209** | **60,586** | **51,205** | **1,000** | **1,000** | **1,000** | **9,938** | **9,938** |

[1] Litigation Related Proceeds on row 3 reflects potential recoveries on account of various causes of action and may change based on ultimate recoveries.