# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064 (TLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## NOTICE OF OPTICAL
## ASSET PURCHASE AGREEMENT AND PROPOSED SALE ORDER

**PLEASE TAKE NOTICE** that on April 16, 2019, the United States Bankruptcy Court for the District of Nebraska (the "Court") approved the sale of the Debtors' optical business (the "Optical Business") to Shoptikal LLC (the "Purchaser"), subject to satisfactory documentation and agreement with the objecting landlord parties (the "Objectors") on a proposed sale order (the "Sale Order").

**PLEASE TAKE FURTHER NOTICE** that on April 29, 2019, the Debtors and Purchaser entered into that certain Asset Purchase Agreement (the "APA"), attached hereto as **Exhibit A**. The Debtors shared working drafts of the APA with the Unofficial Committee of Unsecured Creditors (the "UCC"), Objectors, and the agent under the Debtors' postpetition credit facility following the sale hearing, and shared the final APA with such parties on the date hereof.

**PLEASE TAKE FURTHER NOTICE** that the Debtors, Purchaser, Objectors, and the agent under the Debtors' postpetition credit facility negotiated the Sale Order, in substantially final

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

form attached hereto as **<u>Exhibit B</u>**, and the Debtors do not believe any of the foregoing parties has any unresolved objections with regard to the Sale Order.  The Debtors shared working drafts of the Sale Order with the UCC following the sale hearing, and shared the final proposed Sale Order with the UCC on the date hereof.

[*Remainder of page intentionally left blank*]

Dated:  April 29, 2019
Omaha, Nebraska

*/s/ Lauren R. Goodman*
James J. Niemeier (NE Bar No. 18838)
Michael T. Eversden (NE Bar No. 21941)
Lauren R. Goodman (NE Bar No. 24645)
**McGRATH NORTH MULLIN & KRATZ, P.C. LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:    (402) 341-3070
Facsimile:    (402) 341-0216
Email:        jniemeier@mcgrathnorth.com
              meversden@mcgrathnorth.com
              lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Travis M. Bayer (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              patrick.nash@kirkland.com
              travis.bayer@kirkland.com

- and -

Steven Serajeddini (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        steven.serajeddini@kirkland.com
              daniel.rudewicz@kirkland.com

*Co-Counsel to the Debtors*

## **Exhibit A**

**Asset Purchase Agreement**

**Execution Version**

---

**ASSET PURCHASE AGREEMENT**

**DATED AS OF APRIL 29, 2019**

**BY AND AMONG**

**SHOPTIKAL LLC, AS PURCHASER,**

**AND**

**SPECIALTY RETAIL SHOPS HOLDING CORP., AS THE COMPANY,**

**AND**

**THE OTHER SELLERS NAMED HEREIN**

---

# TABLE OF CONTENTS

**Page**

**Article I Purchase and Sale of the Acquired Assets; Assumption of Assumed Liabilities** ....................................................................................................2

| | | |
|---|---|---|
| 1.1 | Purchase and Sale of the Acquired Assets | 2 |
| 1.2 | Excluded Assets | 4 |
| 1.3 | Assumption of Certain Liabilities | 6 |
| 1.4 | Excluded Liabilities | 7 |
| 1.5 | Assumption/Rejection of Certain Contracts | 8 |

**Article II Consideration; Payment; Closing** ....................................................9

| | | |
|---|---|---|
| 2.1 | Consideration; Payment | 9 |
| 2.2 | Closing | 10 |
| 2.3 | Closing Deliveries by Sellers | 10 |
| 2.4 | Closing Deliveries by Purchaser | 11 |

**Article III Representations and Warranties of Sellers** .................................11

| | | |
|---|---|---|
| 3.1 | Organization and Qualification | 11 |
| 3.2 | Authorization of Agreement | 11 |
| 3.3 | Conflicts; Consents | 11 |
| 3.4 | Title to Properties | 12 |
| 3.5 | Litigation | 13 |
| 3.6 | Permits; Compliance with Laws | 13 |
| 3.7 | Intellectual Property | 15 |
| 3.8 | Employee Benefit Matters. | 15 |
| 3.9 | Accounts Receivable | 16 |
| 3.10 | Optical Liquidations | 16 |
| 3.11 | No Other Representations or Warranties | 16 |

**Article IV Representations and Warranties of Purchaser** ...........................17

| | | |
|---|---|---|
| 4.1 | Organization and Qualification | 17 |
| 4.2 | Authorization of Agreement | 17 |
| 4.3 | Conflicts; Consents | 17 |
| 4.4 | Financing | 18 |
| 4.5 | Guarantee | 18 |
| 4.6 | Brokers | 18 |
| 4.7 | No Litigation | 18 |

**Article V Bankruptcy Court Matters** ............................................................18

| | | |
|---|---|---|
| 5.1 | Cure Costs | 18 |
| 5.2 | Sale Order | 18 |
| 5.3 | Settlement of Purchaser's Disputed Administrative Priority Rent Claim. | 18 |

**Article VI Covenants and Agreements** ....................................................................19

    6.1    Conduct of Business of Sellers ..................................................19
    6.2    Access to Information ..............................................................21
    6.3    Employee Matters ....................................................................23
    6.4    Regulatory Approvals ..............................................................24
    6.5    Reasonable Best Efforts; Cooperation ....................................25
    6.6    Further Assurances ..................................................................26
    6.7    Acknowledgment by Purchaser ..............................................27
    6.8    Government Patient Receivables; Purchaser Funds Received Post-Closing.........28
    6.9    Store Locations ........................................................................29
    6.10   Post-Closing Liquidated Store Assets......................................30
    6.11   Post-Closing Transfer of Wind-Down Transfer Assets ............30
    6.12   Transition Services Agreement ................................................30

**Article VII Conditions to Closing**..........................................................................30

    7.1    Conditions Precedent to the Obligations of Purchaser and Sellers......................30
    7.2    Conditions Precedent to the Obligations of Purchaser ...........31
    7.3    Conditions Precedent to the Obligations of the Sellers ..........31
    7.4    Waiver of Conditions ..............................................................32

**Article VIII Termination** ........................................................................................32

    8.1    Termination of Agreement ......................................................32
    8.2    Effect of Termination ..............................................................33

**Article IX Taxes** ......................................................................................................33

    9.1    Transfer Taxes ........................................................................33
    9.2    Allocation of Purchase Price ..................................................34
    9.3    Cooperation ..............................................................................34
    9.4    FIRPTA ....................................................................................34
    9.5    Straddle Period ........................................................................34

**Article X Miscellaneous** ........................................................................................34

    10.1   Non-Survival of Representations and Warranties....................34
    10.2   Expenses ..................................................................................35
    10.3   Notices ....................................................................................35
    10.4   Binding Effect; Assignment....................................................36
    10.5   Amendment and Waiver ..........................................................37
    10.6   Third Party Beneficiaries ........................................................37
    10.7   Non-Recourse ..........................................................................37
    10.8   Severability ..............................................................................37
    10.9   Construction ............................................................................37
    10.10  Disclosure Schedules ..............................................................37
    10.11  Complete Agreement ..............................................................38
    10.12  Specific Performance ..............................................................38
    10.13  Jurisdiction and Exclusive Venue ..........................................39

10.14   Governing Law; Waiver of Jury Trial ................................................................40
10.15   No Right of Set-Off ...........................................................................................40
10.16   Counterparts and PDF........................................................................................40
10.17   Publicity .............................................................................................................41
10.18   Bulk Sales Laws.................................................................................................41

**Article XI ADDITIONAL DEFINITIONS AND INTERPRETIVE MATTERS.......................................41**
11.1   Certain Definitions..............................................................................................41
11.2   Index of Defined Terms......................................................................................49
11.3   Rules of Interpretation .......................................................................................50

## INDEX OF EXHIBITS

EXHIBIT A   FORM OF BILL OF SALE

EXHIBIT B   FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

EXHIBIT C   FORMS OF IP ASSIGNMENT AGREEMENTS

EXHIBIT D   FORM OF SALE ORDER

EXHIBIT E   FORM OF GUARANTEE

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of April 29, 2019, by and among Shoptikal LLC, a Delaware limited liability company ("Purchaser"), and Specialty Retail Shops Holding Corp., a Delaware corporation (the "Company"), and the Subsidiaries of the Company that are indicated on the signature pages attached hereto (together with the Company, each a "Seller" and collectively "Sellers"). Purchaser and Sellers are referred to herein individually as a "Party" and collectively as the "Parties." Capitalized terms used herein shall have the meanings set forth herein or in Article XI.

## RECITALS

WHEREAS, on January 16, 2019, the Company and the other Sellers filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court"), which are being jointly administered under the caption *In re Specialty Retail Shops Holding Corp., et al.*, Case No. 19-80064 (Sellers' Chapter 11 cases jointly administered in respect of such filing, the "Bankruptcy Case");

WHEREAS, Sellers are continuing to manage their properties and operate their businesses as "debtors-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code;

WHEREAS, Sellers believe, following consultation with their financial advisors and consideration of available alternatives, that, in light of the current circumstances, a sale of certain of the Sellers' assets as provided herein is necessary to preserve and maximize value, and is in the best interest of Sellers, their creditors, and equity holders;

WHEREAS, Monarch Capital Partners IV LP, Monarch Capital Partners IV Offshore LP, Monarch Capital Partners IV-A LP and MCP Holdings Ltd (the "Guarantors"), as the direct or indirect owners of 100% of the Purchaser, have delivered a guarantee in the form of Exhibit E hereto (the "Guarantee"), pursuant to which the Guarantors guarantee, severally and jointly, the payment of the cash portion of the Purchase Price to the extent payable pursuant to this Agreement in accordance with its terms;

WHEREAS, Purchaser desires to purchase the Acquired Assets and assume the Assumed Liabilities from Sellers, and Sellers desire to sell, convey, assign and transfer to Purchaser the Acquired Assets together with the Assumed Liabilities, in a sale authorized by the Bankruptcy Court pursuant to the Sale Order and all on the terms and subject to the conditions set forth in this Agreement; and

WHEREAS, the Acquired Assets and Assumed Liabilities shall be purchased and assumed by Purchaser pursuant to the Sale Order approving such sale, free and clear of all Encumbrances (other than Permitted Encumbrances), pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, and rules 2002, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure, which Order will include the authorization for the assumption by the applicable Seller and assignment by the applicable Seller to Purchaser of the Assigned Contracts and the Liabilities thereunder in accordance with Section 365 of the Bankruptcy Code, all in the manner and subject to the terms

and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and the local rules for the Bankruptcy Court (together, the "<u>Bankruptcy Rules</u>").

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and intending to be legally bound, Purchaser and Sellers hereby agree as follows.

## ARTICLE I

## PURCHASE AND SALE OF THE ACQUIRED ASSETS;
## ASSUMPTION OF ASSUMED LIABILITIES

1.1    <u>Purchase and Sale of the Acquired Assets</u>.  Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and on the terms and subject to the conditions set forth herein and in the Sale Order, at the Closing, Sellers shall sell, transfer, assign, convey and deliver to Purchaser, and Purchaser shall purchase, acquire and accept from Sellers, all of Sellers' right, title and interest in and to the following (collectively, the "<u>Acquired Assets</u>"):

(a)    subject to <u>Section 1.5</u>, the Contracts (including the Leases, the right to any unpaid tenant improvement allowances, the right to all security deposits paid by Sellers and all other tenant rights thereunder) listed on <u>Schedule 1.1(a)</u>, including each inbound license agreement of the Sellers set forth therein (together, the "<u>Assigned Contracts</u>" and such Leases, alone, the "<u>Assumed Leases</u>");

(b)    any Leasehold Improvements associated with the Assumed Leases or the leases of the Purchaser Affiliated Landlord Unassumed Leases (to the extent the Purchaser Affiliate Landlord is not entitled to such Leasehold Improvements pursuant to the terms of such applicable lease);

(c)    all Documents Related to the Acquired Business and customer lists that relate to any business of the Company (including the Retained Business);

(d)    other than those tangible assets set forth on <u>Schedule 1.2(n)</u>, all tangible assets (including Equipment and machinery), and accounts of Sellers (i) located at or, with respect to the accounts, associated with any Acquired Store or the Optical Lab (ii) located at the Sellers' Headquarters (the "<u>Sellers Headquarters Tangible Assets</u>") and (iii) that are optical medical equipment located at the Retained Stores (including, with respect to the Post-Closing Liquidated Stores, all optical medical equipment located at such Post-Closing Liquidated Stores as of immediately following a Post-Closing Liquidation Event that Purchaser has the right to receive pursuant to <u>Section 6.10</u>);

(e)    other than those that constitute Excluded Records, all optical prescription and patient files, optical customer lists, optical patient profiles and other patient records held by Sellers, including any of such files or records maintained by computer, in each case located at, or for optical customers serviced from, the Optical Stores ("<u>Optical Patient Records</u>"); <u>provided</u>, that such Optical Patient Records located at a Retained Store and not primarily related to an Acquired Store shall be Wind-Down Transfer Assets transferred in accordance with <u>Section 6.11</u>;

2

(f)      all Permits (as defined below) and pending applications therefore and all of the rights, interests and benefits accruing under all Permits and pending applications therefor, to the extent transferable under applicable Law and Related to the Acquired Business (except to the extent primarily related to the Retained Stores);

(g)      all (i) Intellectual Property owned by any of the Sellers that is (or was) related to, used or held for use by any business of the Sellers (including the Retained Business), (ii) Intellectual Property listed on Schedule 1.1(g) and (iii) claims, rights and causes of action (including for past infringement) against any Persons relating to the Acquired Intellectual Property, in each case excluding the Excluded Records (collectively, the "Acquired Intellectual Property");

(h)      the software, computer programs and hardware listed on Schedule 1.1(h);

(i)      all telephone and facsimile numbers Related to the Acquired Business and all email addresses Related to the Acquired Business or related to the Retained Business, provided, that such telephone and facsimile numbers and email addresses (x) related to the Retained Business and not Related to the Acquired Business shall be Wind-Down Transfer Assets transferred in accordance with Section 6.11 or (y) primarily related to the Post-Closing Liquidated Stores shall be Liquidated Store Acquired Assets transferred in accordance with Section 6.10;

(j)      all prepaid expenses, deposits and Accounts Receivable, in each case to the extent Related to the Acquired Business (including the Retained Stores);

(k)      all inventory (including finished goods, supplies, raw materials, samples, packaging materials, work in progress, spare, replacement and component parts) of Sellers wherever located (collectively, the "Inventory") Related to the Acquired Business; provided, however, that any Inventory located at a Post-Closing Liquidated Store as of immediately following a Post-Closing Liquidation Event shall be transferred to Purchaser in accordance with Section 6.10;

(l)      (i) all benefits, proceeds and other amounts payable under the medical malpractice policy of insurance relating to the Acquired Business, (ii) any rights, claims or causes of action of any Seller against third parties relating to the Acquired Assets or operations of the Acquired Business, and (iii) proceeds of the foregoing assets, in each case other than the rights, claims or causes of action listed on Schedule 1.2(i); provided, however, that the foregoing shall not imply the assumption of any such claims arising prior to Closing;

(m)      any rights, claims or causes of action of any Seller against the trade creditor parties listed on Schedule A under Chapter 5 of the Bankruptcy Code, and any proceeds of the foregoing (the "Acquired Avoidance Actions");

(n)      the Transferred Employees and copies of all personnel and other records related to the Transferred Employees, to the extent not prohibited by applicable Law, and all tax records (including payroll tax records) relating to the Transferred Employees;

(o)      the right to receive, consistent with Section 6.8, an amount equal to the value of the Government Patient Receivables actually collected by the Sellers;

(p)     to the extent transferrable under applicable Law, rights under non-disclosure or confidentiality, non-compete, or non-solicitation agreements related to the Acquired Business or any Acquired Asset, including those agreements executed by potential Bidders (as defined in the Sale Procedures Order) (collectively, the "Acquired NDAs"); provided, that the Acquired NDAs and the rights thereunder shall be Wind-Down Transfer Assets transferred in accordance with Section 6.11;

(q)     all attorney-client work product and other legal privileges of each Seller relating to claims brought or threatened against Sellers in connection with their operation of the Acquired Business, other than such work product or other legal privileges relating to (i) claims brought or threatened against Seller in connection with the transactions contemplated hereby, (ii) claims involving Purchaser or any guarantor under the Limited Guarantee, (iii) claims related to the Excluded Assets referenced in Section 1.2(i), or (iv) the Bankruptcy Case (the "Acquired Privileges"); provided, that such Acquired Privileges and the rights thereunder shall be Wind-Down Transfer Assets transferred in accordance with Section 6.11; and

(r)     any other assets in each case Related to the Acquired Business, other than those assets specifically identified as Excluded Assets in Section 1.2 clauses (a) through (o).

At any time prior to the Closing Date, Purchaser, in its discretion by written notice to Sellers, may (i) add any Contracts or Leases (in each case, to the extent Related to the Acquired Business) as assigned Contracts or Leases pursuant hereto, and such Contracts or Leases shall constitute Assigned Contracts or Assumed Leases, as applicable (ii) add any software, computer programs or hardware (in each case, to the extent Related to the Acquired Business and not with respect to a Retained Store) to Schedule 1.1(h) and (iii) designate any of the Acquired Assets (including Assigned Contracts and Assumed Leases, other than the Assumed Post-Petition Leases) as additional Excluded Assets. Without limitation to the foregoing, if a Final Order determines that the Cure Costs for any Assigned Contract is in excess of the amount provided on the Assumed Contract Notice (as defined in the Sale Order), in accordance with the procedures set forth in the Sale Order, Purchaser, in its discretion by written notice to Sellers, may designate such Assigned Contract as an additional Excluded Asset prior to the Contract Assignment Date (excluding the Assumed Post-Petition Leases, each of which shall remain an Acquired Asset for so long as the Cure Costs associated with such Assumed Post-Petition Lease are zero). Notwithstanding any other provision hereof, any Acquired Asset excluded under this paragraph shall on such exclusion become an Excluded Asset and the Liabilities of Sellers related thereto shall constitute Excluded Liabilities. Upon Purchaser's reasonable request, Sellers shall provide additional detailed information as to any software, computer programs or hardware, Contract or Lease (including the Liabilities thereunder and the estimated Cure Costs associated therewith) sufficient for Purchaser to make an informed assessment whether to accept an assignment and assumption of such software, computer programs, hardware, Contract or Lease in accordance with the terms hereunder. In the event that Purchaser elects to designate a Contract (including a Lease) an Assigned Contract or an Excluded Asset, then Schedule 1.1(a) shall be updated accordingly.

1.2     Excluded Assets. Notwithstanding anything to the contrary in this Agreement, in no event shall Sellers sell, transfer, assign, convey or deliver, or be deemed to sell, transfer, assign, convey or deliver to Purchaser, and Sellers shall retain, all right, title and interest to, in and under

any assets other than the Acquired Assets (collectively, the "Excluded Assets") including such right, title or interest in the following:

(a)    all Cash and Cash Equivalents other than any expressly included in the Acquired Assets;

(b)    all Contracts of Sellers that are not Assigned Contracts;

(c)    all Inventory, supplies, materials and spare parts of Sellers to the extent primarily related to the Retained Business;

(d)    the leased real property for each Retained Store, including any Leasehold Improvements and all permanent fixtures, improvements and appurtenances thereto;

(e)    all Documents (i) to the extent they relate to any of the Excluded Assets or Excluded Liabilities, (ii) that any Seller is prohibited by Law from providing a copy thereof to Purchaser; or (iii) to the extent they constitute Tax Returns and other Tax records that do not exclusively relate to the Acquired Assets or Assumed Liabilities, in each of the foregoing subsections (i) through (iii) to the extent not an Acquired Asset pursuant to Section 1.1(c);

(f)    all Optical Patient Records for patients: (i) in Iowa, South Dakota, Idaho, Washington, Oregon, Illinois, and Montana; or (ii) of Retained Stores, but solely to the extent Sellers (A) have already transferred such Optical Patient Records to an employed optometrist or Leased Optometrist who is no longer an employee or lessee of the Sellers or (B) are not permitted under applicable Law to transfer such Optical Patient Records or provide copies thereof to Purchaser ((i) and (ii) together, the "Excluded Records");

(g)    any claim, right or interest of any Seller in or to any refund, rebate, abatement or other recovery for Taxes, together with any interest due thereon or penalty rebate arising therefrom;

(h)    all shares of capital stock or other equity interests of the Company and its Subsidiaries or securities convertible into, exchangeable or exercisable for any such shares of capital stock or other equity interests;

(i)    any rights, claims or causes of action of any Seller (i) under Chapter 5 of the Bankruptcy Code, other than the Acquired Avoidance Actions or (ii) listed on Schedule 1.2(i);

(j)    all director and officer insurance policies ("D&O Insurance Policies"), employment practices liability insurance policies ("EPLI Insurance Policies"), errors and omissions insurance policies ("E&O Insurance Policies") and any other similar insurance policies providing coverage to Sellers' directors and officers (collectively with the D&O Insurance Policies, EPLI Insurance Policies, E&O Insurance Policies, the "D&O Related Insurance Policies"), and all rights and benefits of any Sellers of any nature with respect to the D&O Related Insurance Policies, including all insurance recoveries or proceeds thereunder and rights to assert claims or actions with respect to any such insurance recoveries or proceeds;

(k)     Sellers' rights under this Agreement, including the Purchase Price hereunder, or any agreement, certificate, instrument or other document executed and delivered between any Seller and Purchaser in connection with the transactions contemplated hereby, or any other agreement between any Seller and Purchaser entered into on or after the date hereof;

(l)     (i) all attorney-client work product and other legal privileges of each Seller other than the Acquired Privileges, (ii) all records and reports prepared or received by Sellers or any of their Affiliates in connection with the Sellers' review, assessment and valuation of Bids (as defined in the Sale Procedures Order), and (iii) all bids and expressions of interest received from third parties with respect thereto;

(m)     each Seller Plan and all right, title and interest in any assets thereof or relating thereto;

(n)     the tangible assets set forth on Schedule 1.2(n); and

(o)     the Retained Stores and any assets located therein, other than those assets that are specifically identified as an Acquired Asset (e.g., optical medical equipment and Inventory).

1.3     Assumption of Certain Liabilities.  On the terms and subject to the conditions set forth in this Agreement and the Sale Order, effective as of the Closing, Purchaser shall irrevocably assume from Sellers (and from and after the Closing pay, perform, discharge or otherwise satisfy in accordance with their respective terms), and Sellers shall irrevocably convey, transfer and assign to Purchaser, the following Liabilities (collectively, the "Assumed Liabilities"):

(a)     all Liabilities and obligations of Sellers under the Assigned Contracts due from and after the Contract Assignment Date with respect to each Assigned Contract;

(b)     all cure costs required to be paid pursuant to Section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts as finally determined by the Bankruptcy Court (the "Cure Costs");

(c)     all Liabilities (including all Assumed Taxes) arising out of the conduct of the Acquired Business or the ownership of the Acquired Assets, in each case, by Purchaser from and after the Contract Assignment Date with respect to each Assigned Lease, which for the avoidance of doubt, shall not include any obligations to pay real estate taxes under the Assumed Leases to the extent such taxes are attributable to the period prior to the Closing, and which shall exclude the Liabilities arising out of the Wind-Down Transfer Assets until they are transferred to Purchaser;

(d)     all Liabilities relating to amounts required to be paid, or actions to be taken or to be omitted to be taken, by Purchaser under this Agreement; and

(e)     all Liabilities and obligations in respect of the Transferred Employees to the extent specifically assumed by the Purchaser pursuant to Section 6.3 or arising from or related to such Transferred Employee's post-Closing employment by Purchaser or any of its Affiliates ("Transferred Employee Liabilities").

Notwithstanding the foregoing and for the avoidance of doubt, Assumed Liabilities shall not include any Liability relating to or arising out of any violation of Law by, or any Action against, any Seller or any breach, default or violation by any Seller of or under any Assigned Contracts, other than the Cure Costs.

1.4     Excluded Liabilities.  Notwithstanding any provision in this Agreement to the contrary, the Parties expressly acknowledge and agree that Purchaser shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of Sellers, whether existing on the Closing Date or arising thereafter as a result of any act, omission or circumstances taking place prior to the Closing, other than the Assumed Liabilities (all such Liabilities that Purchaser is not assuming being referred to collectively herein as the "Excluded Liabilities").  For the avoidance of doubt, the Excluded Liabilities include, without limitation, the following to the extent not expressly identified as an Assumed Liability:

(a)     all Liabilities relating to any of the Excluded Assets or the Contracts and Leases that are not Assigned Contracts;

(b)     all Liabilities for Excluded Taxes;

(c)     any Liability arising from or related to any Proceeding against Sellers, their Subsidiaries, the Acquired Business or the Acquired Assets pending as of the Closing Date or based upon any action, event, circumstance or condition arising as of or prior to the Closing Date (other than the Cure Costs and any other Assumed Liabilities expressly assumed pursuant to Section 1.3);

(d)     all Liabilities (whether known or unknown) arising in respect of or relating to current or former employees of Sellers, arising prior to the Closing or arising after the Closing (other than with respect to Transferred Employee Liabilities), including payroll, paid or unpaid vacation, sick leave, worker's compensation, unemployment benefits, pension benefits, employee stock option or profit sharing plans, health care plans or benefits, or any other employee plans or benefits or other compensation of any kind to any employee, and obligations of any kind including any Liability pursuant to the WARN Act for any action or inaction;

(e)     any Liability under any employment, collective bargaining, severance, retention or termination agreement with any employee, independent contractor or contractor (or their representatives) of Sellers, except to the extent such Liabilities arise under an Assigned Contract;

(f)     any Liability to indemnify, reimburse or advance amounts to any shareholder, officer, director, employee, or agent of Sellers;

(g)     any Liability of Sellers or any of their Subsidiaries to any shareholder or Affiliate of Sellers, including any Liability to distribute to Sellers' shareholders or otherwise apply all or any part of the consideration received hereunder;

(h)     any Liability of Sellers under this Agreement or any other document executed in connection herewith; provided, that, for purposes of clarity, the foregoing designation

7

of an Excluded Liability shall not relieve Purchaser of any of its obligations to the Sellers under the Transition Services Agreement;

(i)    any liability arising from or related to any compliance or noncompliance on or prior to the Closing Date with any Law applicable to Sellers, their Subsidiaries, the Acquired Business or the Acquired Assets; and

(j)    any Liability arising out of or resulting from actions taken by a Seller prior to Closing related to the shutdown of any of its operations or facilities or the termination of any of its employees or independent contractors including any severance obligations.

Purchaser and Sellers hereby acknowledge and agree that disclosure of any Liability on any Schedule to this Agreement shall not create an Assumed Liability or other Liability of Purchaser, except where such disclosed obligation has been expressly assumed by Purchaser as an Assumed Liability in accordance with the provisions of Section 1.3.

1.5    Assumption/Rejection of Certain Contracts.

(a)    Assumption and Assignment of Executory Contracts.  Sellers shall use commercially reasonable efforts to take all actions required to assign the Assigned Contracts to Purchaser (subject to provision by Purchaser of adequate assurance of future performance as may be required under Section 365 of the Bankruptcy Code).  Sellers shall use commercially reasonable efforts to facilitate any negotiations with the counterparties to such Assigned Contracts and to obtain an Order containing a finding that the proposed assumption and assignment of the Assigned Contracts to Purchaser satisfies all applicable requirements of Section 365 of the Bankruptcy Code. Sellers shall have no obligation to Purchaser to provide adequate assurances of future performance under any Assigned Contract in connection with the assignment and assumption thereof by Sellers. At the Closing or, with respect to any Contract for which a final Cure Cost has not been finally determined by Closing, within five Business Days of a Final Order determining the Cure Costs for any Assigned Contract (with respect to each Contract, the "Contract Assignment Date"), Sellers shall, pursuant to the Sale Order and the Assignment and Assumption Agreement, assign to Purchaser (the consideration for which is included in the Purchase Price), all Assigned Contracts that may be assigned by any such Seller to Purchaser pursuant to Sections 363 and 365 of the Bankruptcy Code subject to provision by Purchaser of adequate assurance as may be required under Section 365 of the Bankruptcy Code and payment by Purchaser of the Cure Costs in respect of Assigned Contracts pursuant to and in accordance with Section 365 of the Bankruptcy Code and the Sale Order.  At the Contract Assignment Date, Purchaser shall assume all of the obligations under each Assigned Contract pursuant to Section 365 of the Bankruptcy Code.  Notwithstanding the foregoing, such assignment and assumption of the Assigned Contracts (and related Assumed Liabilities), the payment of Cure Costs and the provision of adequate assurances shall be governed by the procedures set forth in the Sale Order.

(b)    Non-Assignment.  Notwithstanding the foregoing, a Contract shall not be an Assigned Contract hereunder and shall not be assigned to, or assumed by, Purchaser at the Contract Assignment Date and Purchaser shall not be required to pay Cure Costs in respect of such Contract to the extent that such Contract (i) subject to Section 6.1, has been rejected by a Seller or terminated by a Seller or the other party thereto prior to the date hereof, or terminates or expires

8

by its terms, on or prior to such time as it is to be assumed by Purchaser as an Assigned Contract hereunder and is not continued or otherwise extended upon assumption or (ii) requires a third party consent or Governmental Authorization (other than, and in addition to, that of the Bankruptcy Court) in order to permit the sale or transfer to Purchaser of the applicable Seller's rights under such Contract, and such third party consent or Governmental Authorization has not been obtained prior to such time as it is to be assumed by Purchaser as an Assigned Contract hereunder (such Contracts, "Delayed Contracts").  In addition, a Permit shall not be assigned to, or assumed by, Purchaser at Closing to the extent that such Permit requires a third party consent or Governmental Authorization (other than, and in addition to, that of the Bankruptcy Court) in order to permit the sale or transfer to Purchaser of the applicable Seller's rights under such Permit, and no such third party consent or Governmental Authorization has been obtained prior to the Closing.  In the case of Permits, Leases, Delayed Contracts and other commitments that would otherwise constitute an Acquired Asset (x) that cannot be sold or assigned effectively without the consent of Third Parties, which consent has not been obtained prior to the Closing (after giving effect to the Sale Order and the Bankruptcy Code), Sellers shall, subject to any approval of the Bankruptcy Court that may be required, cooperate with Purchaser in all reasonable respects to provide to Purchaser the benefits thereof in some other manner and Purchaser shall bear the burden of associated Liabilities, or (y) that are otherwise not capable of sale and/or assignment (after giving effect to the Sale Order and the Bankruptcy Code), Sellers shall, subject to any approval of the Bankruptcy Court that may be required, reasonably cooperate with Purchaser to provide to Purchaser the benefits thereof in some other manner (including the exercise of the rights of Sellers thereunder) and Purchaser shall assume any Liabilities related to or arising from a Delayed Contract to the extent Sellers are providing the benefits.  Sellers and Purchaser agree that, in the event that any third party consent or Governmental Authorization necessary or desirable to preserve for Purchaser any right or benefit under any Delayed Contract is not obtained prior to the Closing, Sellers will, subsequent to the Closing, cooperate with Purchaser until the conclusion of the wind-down of the estate (the "Wind-Down") in attempting to obtain such third party consent or Governmental Authorization as promptly thereafter as practicable but shall not be required to expend any out-of-pocket costs or expenses in connection therewith or make any commercial concession that negatively impacts the Wind-Down.

## ARTICLE II

## CONSIDERATION; PAYMENT; CLOSING

2.1    Consideration; Payment.

(a)    The aggregate consideration (the "Purchase Price") to be paid by Purchaser for the purchase of the Acquired Assets shall be: (i) the assumption of the Assumed Liabilities; and (ii) a cash payment of (A) $8,500,000 minus (B) the sum of (x) the Deposit and (y) if applicable, the Accounts Receivable Deficiency Amount (such net amount, the "Cash Payment").

(b)    At the Closing, Purchaser shall deliver, or cause to be delivered, to the Company the Cash Payment.  The Cash Payment shall be made in cash by wire transfer of immediately available funds to such bank account as shall be designated in writing by the applicable Party at least two (2) Business Days prior to the date such payment is to be made. The Cash Payment shall be no less than $6,500,000.  At the Closing, the Sellers shall (i) deliver the

Deposit to, and (ii) direct Purchaser to pay the Cash Payment to, Wells Fargo Bank, N.A. as the administrative agent and collateral agent under the Loan Agreement (as defined in the final order authorizing the Debtors to use cash collateral and incur postpetition obligations [Docket No. 425] the "DIP Order") for application and payment of all obligations owing by the Debtors to Agent and the Lenders (as defined in the DIP Order), in accordance with the DIP Order and Section 6.4 of the Loan Agreement, until such time as all such obligations have been fully repaid and satisfied in full in accordance with the terms and conditions of the DIP Order and the Loan Agreement.

2.2    Closing.  The closing of the purchase and sale of the Acquired Assets, the delivery of the Purchase Price and the assumption of the Assumed Liabilities (the "Closing") will take place by telephone conference and electronic exchange of documents (or, if the parties agree to hold a physical closing, at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019) at 8:00 a.m. Central Time on the second (2nd) Business Day following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in Article VII (other than conditions that by their terms or nature are to be satisfied at the Closing), or at such other place and time as the Parties may agree.  The date the Closing occurs is referred to as the "Closing Date."

2.3    Closing Deliveries by Sellers.  At or prior to the Closing, Sellers shall deliver to Purchaser:

(a)    a bill of sale substantially in the form of Exhibit A duly executed by Sellers (the "Bill of Sale");

(b)    an assignment and assumption agreement substantially in the form of Exhibit B (the "Assignment and Assumption Agreement");

(c)    instruments of assignment of the Acquired Intellectual Property, duly executed by Sellers in the forms appropriate for recordation with the appropriate Governmental Bodies and substantially in the forms attached as Exhibit C (the "IP Assignment Agreements" and together with the Bill of Sale, the Assignment and Assumption Agreement, the Transition Services Agreement and the Limited Guarantee, the "Ancillary Agreements") duly executed by Sellers;

(d)    a copy of the Sale Order, as entered by the Bankruptcy Court; and

(e)    an officer's certificate, dated as of the Closing Date, executed by a duly authorized officer of the Company certifying that the conditions set forth in Sections 7.2(b) and 7.2(c) have been satisfied; and

(f)    one Business Day prior to the Closing Date, an officer's certificate, dated as of such date, executed by the chief executive officer of the Company certifying whether or not there is anticipated to be an Accounts Receivable Deficiency Amount as of the Closing, and the amount thereof, with appropriate and reasonable backup (provided, that the Purchaser may object in good faith to such certification, in which case the Parties shall escrow a portion of the Cash Payment sufficient to cover any reasonably disputed Accounts Receivable Deficiency Amount, in order to be available in the event it is determined that there was an Accounts Receivable Deficiency Amount as of the Closing Date).

2.4    <u>Closing Deliveries by Purchaser</u>.  At the Closing, Purchaser shall deliver to (or at the direction of) the Company:

(a)    the Cash Payment;

(b)    the Assignment and Assumption Agreement, duly executed by Purchaser;

(c)    the Transition Services Agreement, duly executed by Purchaser; and

(d)    a certificate, dated as of the Closing Date, executed by a duly authorized person of Purchaser certifying that the conditions set forth in <u>Sections 7.3(b)</u> and <u>7.3(c)</u> have been satisfied.

<h1 style="text-align:center">ARTICLE III</h1>

<h2 style="text-align:center">REPRESENTATIONS AND WARRANTIES OF SELLERS</h2>

Except as set forth in the Disclosure Schedules delivered by Sellers concurrently herewith and <u>Section 10.10</u>, Sellers represent and warrant to Purchaser as follows as of the Closing Date:

3.1    <u>Organization and Qualification</u>.  Each Seller (a) is an entity duly incorporated or organized and validly existing under the Laws of its jurisdiction of incorporation or organization, as applicable, (b) has all requisite corporate or limited liability company power and authority to own and operate its properties and to carry on its businesses as now conducted, subject to the provisions of the Bankruptcy Code, and (c) is qualified to do business and is in good standing (or its equivalent) under the Laws of its jurisdiction of incorporation or organization, as applicable, and in every jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify, except where the failure to be so qualified would not reasonably be expected to have a Material Adverse Effect.

3.2    <u>Authorization of Agreement</u>.  The execution, delivery and performance of this Agreement by each Seller, and the consummation by such Seller of the transactions contemplated hereby, subject to requisite Bankruptcy Court approvals, have been duly and validly authorized by all requisite corporate or similar organizational action, and no other corporate or similar organizational proceedings on its part are necessary to authorize the execution, delivery or performance of this Agreement by such Seller.  Subject to requisite Bankruptcy Court approvals, this Agreement has been duly and validly executed and delivered by such Seller, and, assuming this Agreement is a valid and binding obligation of Purchaser, this Agreement constitutes a valid and binding obligation of such Seller, enforceable against such Seller in accordance with its terms, except as limited by the application of bankruptcy, insolvency, reorganization, fraudulent conveyance, moratorium or other Laws relating to or affecting creditors' rights or general principles of equity (whether considered in a Proceeding in equity or at law) (the "<u>Enforceability Exceptions</u>").

3.3    <u>Conflicts; Consents</u>.

(a)    Except as set forth on <u>Schedule 3.3(a)</u> and assuming that (x) requisite Bankruptcy Court approvals are obtained and (y) the notices, authorizations, approvals, Orders,

permits or consents set forth on Schedule 3.3(b) are made, given or obtained, as applicable, the execution, delivery and performance by Sellers of this Agreement and the consummation by Sellers of the transactions contemplated hereby, do not: (i) violate the certificate of incorporation or formation, bylaws or limited liability company agreement or equivalent organizational documents of any Seller; (ii) violate any Law applicable to any of the Acquired Assets or by which the Acquired Assets are bound; or (iii) result in any breach of, constitute a default (or an event that, with notice or lapse of time or both, would become a default) under, create in any party thereto the right to terminate or cancel, or require any consent under, or result in the creation or imposition of any Encumbrance (other than a Permitted Encumbrance) on any Acquired Asset under, any Lease or Contract listed on Schedule 1.1(a), except, in each case, for any such violations, breaches, defaults or other occurrences that are not material to the Acquired Assets and Assumed Liabilities taken as a whole.

(b)    Except as set forth on Schedule 3.3(b), Sellers are not required to file, seek or obtain any notice, authorization, approval, Order, permit or consent of or with any Governmental Body in connection with the execution, delivery and performance by Sellers of this Agreement or the consummation by Sellers of the transactions contemplated hereby, except (i) requisite Bankruptcy Court approvals, (ii) where failure to obtain such consent, approval, authorization or action, or to make such filing or notification, would not reasonably be expected to have a Material Adverse Effect or (iii) as may be necessary as a result of any facts or circumstances relating to Purchaser or any of its Affiliates.

3.4    Title to Properties; Leases.

(a)    Schedule 3.4(a) contains a list of all agreements pursuant to which the Optical Stores (other than the Retained Stores and Optical Stores associated with the Purchaser Affiliated Landlord Unassumed Leases) are leased (the "Leases").  The copies of all Assumed Leases made available to Purchaser or its Affiliates are true, correct and complete. Except as set forth on Schedule 3.4(a), subject to requisite Bankruptcy Court approvals, and assumption by the applicable Seller of the applicable Lease in accordance with applicable Law (including satisfaction of any applicable Cure Costs) and except as a result of the commencement of the Bankruptcy Case, the Company or its Subsidiaries have a valid leasehold estate in the properties that correspond to the Assumed Leases, free and clear of all Encumbrances, other than Permitted Encumbrances.

(b)    Subject to requisite Bankruptcy Court approvals, and assumption by the applicable Seller of the applicable Contract in accordance with applicable Law (including satisfaction of any applicable Cure Costs) and except as a result of the commencement of the Bankruptcy Case, the Company and its Subsidiaries own good title to, or hold a valid leasehold interest in, all of the material tangible property necessary in the conduct of the Acquired Business as now conducted, free and clear of all Encumbrances, except for Permitted Encumbrances, other than any failure to own or hold such tangible property that is an Excluded Asset or is not material to the Acquired Business.

(c)    Subject to the terms of the Sale Order, the instruments of transfer contemplated herein, and this Agreement constitute the documentation necessary to transfer to Purchaser, all of Sellers' right, title and interest in and to the Acquired Assets free and clear of all Encumbrances, except (a) for the Assumed Liabilities, (b) for Permitted Encumbrances, and (c)

12

subject to the limitation that certain transfers, assignments, licenses, sublicenses, leases and subleases, as the case may be, of Acquired Assets, Assigned Contracts, Assumed Leases, and Permits, and any claim or right or benefit arising thereunder or resulting therefrom, may require consent of a Third Party or Governmental Body, which has not been obtained.

(d)     To the knowledge of Sellers, except as otherwise set forth on Schedule 3.4(d), no landlord who is party to an Assumed Lease is or has been in default of such landlord's obligations under such Assumed Lease, and except for the Bankruptcy Case, there are no defaults by the tenant under any of the Assumed Leases, and no event has occurred that, with the giving of notice and/or the passage of time, would constitute such a default under any of the Assumed Leases.  Schedule 3.4(d) contains (i) a list of security deposits made in accordance with each Assumed Lease and the amount thereof, (ii) all work required to have been performed by any of Sellers, as tenant, in connection with any of the Assumed Leases, (iii) all tenant improvement allowances payable under the Assumed Leases have been fully paid to Sellers, and (iv) any brokerage commission or other compensation payable (or that will, with the passage of time or occurrence of any event, or both, be payable) by any one or more of Sellers with respect to any one or more of the Assumed Leases.

3.5     Litigation; Claims.

(a)     Except as set forth on Schedule 3.5 and solely to the extent Related to the Acquired Business and other than the Bankruptcy Case, there are no Proceedings pending against or by Sellers, at law or in equity, or before or by any Governmental Body, other than any Proceeding or Order where no injunctive or equitable relief is sought and where the monetary damages are covered by insurance or would not reasonably be expected to have a Material Adverse Effect on the Acquired Business.

(b)     Except as set forth on Schedule 3.5, Seller has not brought any claim, suit or cause of action against the parties to the Acquired NDAs seeking to enforce the provisions thereof, and, to the knowledge of Sellers, there are no facts or circumstances presently existing and no event has occurred that may form the basis of a claim, suit or cause of action against the parties to the Acquired NDAs.

3.6     Permits; Compliance with Laws; Healthcare Matters.  Except as set forth on Schedule 3.6 and other than to the extent related to the Excluded Assets, Excluded Liabilities and/or Retained Business:

(a)     Each Seller holds and is in compliance, in all material respects, with all permits, certificates, licenses, accreditations, approvals, registrations, authorizations and Governmental Authorizations, (the "Permits") that are material to the Acquired Business and required in connection with its conduct as presently conducted, including material certificates of occupancy or similar Permits.  All of the Permits are valid and in full force and effect.  There are no Proceedings pending or threatened regarding any of the Permits.

(b)     Sellers are in compliance in all material respects with all applicable Laws and, during the two years immediately prior to the date hereof, neither the Company nor any of its Subsidiaries has received any written notice of any Proceeding against it alleging any failure to

13

comply in any material respect with any such Laws.  No investigation by any Governmental Body with respect to the Acquired Business is pending or, to Sellers' knowledge, threatened, and during the one (1) year immediately prior to the date hereof no Seller has received any written notice of any such investigation, except, in each case, for any such investigation that would not reasonably be expected to have a Material Adverse Effect on the Acquired Business.

(c)      Sellers (i) are in compliance in all material respects with the requirements for participation in the Medicare and Medicaid programs with respect to the Acquired Business, and (ii) have a current provider agreement or contract under Title XVIII and/or XIX of the Social Security Act, which is in full force and effect for the Acquired Business.  Sellers have the requisite valid participation agreement or provider number or other Permit to bill all private payors that currently account for any material portion of Sellers' revenues.   Within the past twelve (12) months, each Seller has paid or caused to be paid in the Ordinary Course all known and undisputed refunds, overpayments or adjustments that have become due to any government or private insurance program.   No Seller (i) has any pending appeals, adjustments, disputes, contested positions, challenges, litigation, or audits pending by or before a Governmental Body or a private insurance program with respect to submitted claims, except for such appeals or individual claim denials that occur in the Ordinary Course; and (ii) is being audited, surveyed or otherwise examined in connection with any government or private insurance program other than audits, surveys or reviews that occur in the Ordinary Course.  No Seller has, within the past twelve months, received any written notice of denial of payment, recoupment, or overpayment from any government or private insurance program other than notices received in the Ordinary Course, and, to the knowledge of Sellers, there are no facts or circumstances that may reasonably be expected to (x) give rise to any material denial, overpayment, refund, or dispute from any government or private insurance program; or (y) indicate a pattern of denial of payments, recoupment, or overpayment from any government or private insurance program with respect to a type of claim or a series of related claims.  There is no investigation, audit, claim review, or other action pending or, to the knowledge of Sellers, threatened which could reasonably be expected to result in a revocation, suspension, termination, probation, restriction, limitation, or non-renewal of any government or private insurance participation agreement or provider number or other Permit.

(d)      Each Seller has in all material respects complied with the terms of its contracts with all government and private insurance programs and has in all material respects charged and billed in accordance with the terms of its respective contracts with any government or private insurance programs and otherwise in accordance with Law, including, where applicable, billing and collection of all deductibles and co-payments.  To Seller's knowledge, all claims that have been filed by any Seller are for services actually rendered, and were properly coded, and were filed in material compliance with all government and private insurance program requirements.

(e)      No Seller nor any member of the governing body of any Seller, or any officer or current employee of any Seller, or to the knowledge of Sellers any third party vendor or independent contractor who furnishes services or supplies to Sellers, is excluded, suspended or debarred from participation, or has been convicted of or charged with any violation of any Law related to the Medicare or Medicaid programs or any other government program that is reasonably likely to serve as the basis for any such exclusion, suspension, debarment or other ineligibility.

14

3.7    <u>Intellectual Property</u>.

(a)    Except as set forth on <u>Schedule 3.7(a)</u>, the Company or one or more of its Subsidiaries owns all of the Acquired Intellectual Property, free and clear of all Encumbrances, other than Permitted Encumbrances.  The Company and its Subsidiaries' rights in the Acquired Intellectual Property are valid, subsisting and enforceable; and the Company and the its Subsidiaries have taken reasonable steps to maintain and protect such Acquired Intellectual Property to the extent such Acquired Intellectual Property is Related to the Acquired Business.

(b)    The conduct of the Acquired Business does not materially infringe, misappropriate or otherwise violate any Intellectual Property of any Third Party and during the two years immediately prior to the date hereof neither the Company nor any of its Subsidiaries has received any written notice of any Proceeding against it alleging any infringement, misappropriation or other violation of Intellectual Property of any Third Party that is Related to the Acquired Business.  To the knowledge of the Company, neither the Company nor any of its Subsidiaries has received any notice, claim or demand from, or is aware of, any Person challenging the scope, ownership, validity or enforceability of the Acquired Intellectual Property.

(c)    To the knowledge of the Company, no Third Party is currently infringing, misappropriating or otherwise violating the Acquired Intellectual Property.

(d)    There are no forbearances to sue, consent decrees, settlement agreements, judgments, orders or similar material obligations that do or may restrict the rights of the Company or any of its Subsidiaries to exploit all or any part of the Acquired Intellectual Property.

(e)    During the one year immediately prior to the date hereof, there has been no (i) failure or other substandard performance of any software system operated by the Company or its Subsidiaries that has caused a material disruption to the conduct of their respective businesses or (ii) data privacy violation or breach affecting the operations of the Company or its Subsidiaries. The Company and its Subsidiaries use commercially reasonable efforts to prevent the introduction into any software or systems owned by the Company or its Subsidiaries that are included in the Acquired Assets do not contain any "back door," "time bomb," "Trojan horse," "worm," "drop dead device" "virus" (as these terms are commonly used in the computer software industry), or other malicious software routines that are intentionally designed to permit unauthorized access to the Company's software or systems.

3.8    <u>Employee Benefit Matters</u>.

(a)    <u>Schedule 3.8(a)</u> contains a true and complete list of each Seller Plan. The Sellers have made available to Purchaser true and complete copies of all Seller Plans listed in <u>Schedule 3.8(a)</u>.

(b)    Each Seller Plan intended to be qualified under Section 401(a) of the Code, and the trust (if any) forming a part thereof, is so qualified and has received a favorable determination letter from the IRS.

(c)    No event has occurred, and no condition exists under Title I or Title IV of ERISA or the penalty, excise tax or joint and several liability provisions of the Code or under other

applicable Laws relating to employee plans, that would, either directly, or by reason of any Seller's affiliation with any of their ERISA Affiliates, subject, on or after the Closing, the Purchaser, or the Acquired Business to any Tax, fine, lien, penalty or other liability imposed by ERISA, the Code or other applicable Law.

3.9     Accounts Receivable.  During the 12 months immediately prior to the date hereof, Sellers have not accelerated the collection of Accounts Receivable and Government Patient Receivables Related to the Acquired Business in any manner outside of the Ordinary Course.

3.10     Optical Liquidations.  With respect to each Acquired Store, during the 12 months immediately prior to the date hereof, other than sales of Inventory in the Ordinary Course, the Sellers have not sold, assigned, licensed, transferred, conveyed, leased, surrendered, relinquished or otherwise disposed of any assets located at or associated with such Acquired Store that would have constituted Acquired Assets if such sale or other disposition had occurred after the date hereof and before the Closing.

3.11     No Other Representations or Warranties.  Except for the representations and warranties expressly made by Sellers to Purchaser in this Article III (as qualified by the Disclosure Schedules and in accordance with the express terms and conditions (including limitations and exclusions) of this Agreement) (the "Express Representations") (it being understood that Purchaser and the Purchaser Group have relied only on such Express Representations), Purchaser acknowledges and agrees, on its own behalf and on behalf of the Purchaser Group, that no Seller nor any other Person on behalf of any Seller makes, and neither Purchaser nor any member of the Purchaser Group has relied on, the accuracy or completeness of any express or implied representation or warranty with respect to the Acquired Business (including the Acquired Assets and the Assumed Liabilities) or with respect to any statement or information of any nature made or provided by any Person, any information, statements, disclosures, documents, projections, forecasts or other material made available to Purchaser or any of its Affiliates or Advisors in that certain datasite administered by Intralinks (the "Dataroom") or elsewhere, or Projections on behalf of any Seller or any of its Affiliates or Advisors to Purchaser or any of its Affiliates or Advisors. Without limiting the foregoing, no Seller nor any other Person will have or be subject to any liability whatsoever to Purchaser, or any other Person, resulting from the distribution to Purchaser or any of its Affiliates or Advisors, or Purchaser's or any of its Affiliates' or Advisors' use of or reliance on, any such information, including any information, statements, disclosures, documents, projections, forecasts or other material made available to Purchaser or any of its Affiliates or Advisors in the Dataroom or elsewhere, Projections or otherwise in expectation of the transactions contemplated by this Agreement or any discussions with respect to any of the foregoing information; provided that nothing in this Section 3.11 shall limit any Person's Liability arising from conduct of such Person that is determined by a Final Order of a court of competent jurisdiction to have constituted an actual fraud, willful breach, knowing and intentional misrepresentation, or criminal act by such Person.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Sellers as follows as of the date hereof and as of the Closing Date:

4.1     <u>Organization and Qualification</u>.  Purchaser (a) is an entity duly incorporated or organized, validly existing and in good standing under the Laws of the jurisdiction of its incorporation or organization, as applicable, (b) has all requisite power and authority to own and operate its properties and to carry on its businesses as now conducted and (c) is qualified to do business and is in good standing (or its equivalent) in every jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on Purchaser's ability to consummate the transactions contemplated hereby.

4.2     <u>Authorization of Agreement</u>.  The execution, delivery and performance of this Agreement and the Ancillary Agreements by Purchaser, and the consummation by Purchaser of the transactions contemplated hereby and thereby, have been duly and validly authorized by all requisite corporate or similar organizational action, and no other corporate or similar organizational proceedings on its part are necessary to authorize the execution, delivery and performance of this Agreement and the Ancillary Agreements by Purchaser.  This Agreement has been duly and validly executed and delivered by Purchaser, and, assuming this Agreement is a valid and binding obligation of Sellers, this Agreement constitutes a valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, except as limited by the Enforceability Exceptions.

4.3     <u>Conflicts; Consents</u>.

(a)     The execution, delivery and performance by Purchaser of this Agreement and the Ancillary Agreements and the consummation by Purchaser of the transactions contemplated hereby and thereby, do not: (i) violate the certificate of formation, limited liability company agreement or equivalent organizational documents of Purchaser; (ii) violate any Law applicable to Purchaser or by which any property or asset of Purchaser is bound; or (iii) result in any breach of, constitute a default (or an event that, with notice or lapse of time or both, would become a default) under, create in any party thereto the right to terminate or cancel, or require any consent under, or result in the creation or imposition of any Encumbrance on any property or asset of Purchaser under, any lease or Contract; except, in each case, for any such violations, breaches, defaults or other occurrences that would not, individually or in the aggregate, reasonably be expected to prevent or materially delay the ability of Purchaser to consummate the transactions contemplated hereby.

(b)     Purchaser is not required to file, seek or obtain any notice, authorization, approval, Order, permit or consent of or with any Governmental Body in connection with the execution, delivery and performance by Purchaser of this Agreement or the consummation by Purchaser of the transactions contemplated hereby, except where failure to obtain such consent,

approval, authorization or action, or to make such filing or notification, would not, individually or in the aggregate, reasonably be expected to prevent or materially delay the ability of Purchaser to consummate the transactions contemplated hereby.

4.4     Financing.  Purchaser has, and will have at the Closing, sufficient immediately available funds in an aggregate amount necessary to pay the Purchase Price and all fees and expenses of Purchaser related to the transactions contemplated by this Agreement, to perform the Assumed Liabilities as they become due in accordance with their terms and to consummate all of the other transactions contemplated by this Agreement.

4.5     Guarantee.  The Guarantee is in full force and effect and is a valid and binding obligation of the Guarantors, enforceable against the Guarantors in accordance with its terms and no event has occurred which, with or without notice, lapse of time or both, could constitute a default on the part of the Guarantors under the Guarantee.

4.6     Brokers.  There is no investment banker, broker, finder or other intermediary which has been retained by or is authorized to act on behalf of Purchaser that might be entitled to any fee or commission in connection with the transactions contemplated by this Agreement.

4.7     No Litigation.   There are no Actions pending or, to Purchaser's knowledge, threatened against or affecting Purchaser that will adversely affect Purchaser's performance under this Agreement or the consummation of the transactions contemplated by this Agreement.

## ARTICLE V

## BANKRUPTCY COURT MATTERS

5.1     Cure Costs.  Subject to entry of the Sale Order, Purchaser shall, on or prior to the Closing or the applicable Contract Assignment Date, pay the Cure Costs and cure any and all other defaults and breaches under the applicable Assigned Contracts so that such Contracts may be assumed by the applicable Seller and assigned to Purchaser (subject to provision by Purchaser of adequate assurance of future performance as may be required under Section 365 of the Bankruptcy Code) in accordance with the provisions of Section 365 of the Bankruptcy Code and this Agreement.  The Company agrees that it will promptly take such commercially reasonable actions as are necessary to obtain a Final Order of the Bankruptcy Court providing for the assumption and assignment of such Contracts.

5.2     Sale Order.  Purchaser agrees that it will promptly take such actions as are reasonably requested by the Company to assist in obtaining Bankruptcy Court approval of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of (x) demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and (y) establishing adequate assurance of future performance within the meaning of Section 365 of the Bankruptcy Code.

5.3     Settlement of Purchaser's Disputed Administrative Priority Rent Claim.   The Debtors and those certain affiliates of the Purchaser that are owners of certain properties leased to the Debtors (such affiliates collectively, the "Landlord") shall: (A) reserve their rights with respect to (i) Landlord's asserted administrative claim for "stub rent," (ii) whether Seller must pay

currently under Bankruptcy Code § 365(d)(3) all items of "Rent" as defined in the Master Leases, including real property taxes, "Impositions," liens, utilities, insurance and common area charges under each of the Master Leases, for the period from the Petition Date to the surrender of premises, and (iii) whether such amounts are administrative priority claims; (B) Landlord will waive any right to assert that, based on the non-severability of the Master Leases, the Sellers must pay 100% of all items of "Rent" as defined in the Master Leases, that come due and owing under the Master Leases until Debtors surrender 100% of the "Premises" as defined in each Master Lease and, after the Closing Landlord shall withdraw the portion of any pleading that made such an assertion, with prejudice, (C) the Landlord's administrative priority claim for base rent amounts that come due during the Chapter 11 Cases for each location that Seller has not surrendered shall be allowed as an administrative claim and timely paid pursuant to Bankruptcy Code § 365(d)(3) (for the avoidance of doubt, if the Closing occurs and the Debtors surrender an individual location to Landlord, the Debtors shall not be responsible for paying any items of "Rent" as defined in the Master Lease, relating to such location that first comes due after the date of such surrender) and (D) if the Closing occurs, the Landlord's allowed administrative priority claims shall be reduced by $1,000,000.

If the Closing occurs prior to the confirmation hearing Purchaser, Landlord, and their affiliates agree to (a) withdraw any objection they have filed to the Debtors' existing Chapter 11 plan as currently filed (the "Plan"), (b) support confirmation of the Plan, and (c) vote any unsecured claims they may have against the Debtors, including any rejection damages claims, in favor of the Plan, and, if applicable, change their vote of any unsecured claims they may have against the Debtors, including any rejection damages claims, to a vote in favor of the Plan; provided, however, that, Landlord will not be required to support confirmation and can object to confirmation if the Debtors do either of the following without Landlord's prior written consent: (i) seek to pay more than $2,500,000 in cash in settlement of administrative claims from cash that would have otherwise been available for distribution to holders of administrative claims under the Plan, or (ii) amend the Plan in a manner that materially adversely impacts the treatment of the claims of Landlord.

## ARTICLE VI

## COVENANTS AND AGREEMENTS

6.1   Conduct of Business of Sellers.   Until the earlier of the termination of this Agreement and the Closing, except (i) for any limitations on operations imposed by, and subject to any Orders entered or approvals or authorizations granted or required by or under, the Bankruptcy Court or the Bankruptcy Code (including in connection with the Bankruptcy Case) or the DIP Facility, (ii) as required by applicable Law, (iii) to the extent exclusively related to the Excluded Assets, Excluded Liabilities and/or Retained Business, unless otherwise covered by clause (i) hereof, (iv) as otherwise expressly contemplated by this Agreement or (v) with the prior written consent of Purchaser (which consent, unless otherwise set forth below, shall not be unreasonably withheld, conditioned or delayed):

(a)   Sellers shall use commercially reasonable efforts, taking into account Sellers' status as a debtor-in-possession in the Bankruptcy Case, to:

(i)    conduct the Acquired Business in all material respects in the Ordinary Course, including with respect to (A) the collection of Accounts Receivable and Government Patient Receivables Related to the Acquired Business and (B) the payment of liabilities and obligations arising under the Post-Petition Assumed Leases;;

(ii)    maintain in full force and effect the Permits;

(iii)    materially maintain and preserve the Acquired Locations and the Acquired Assets (other than Intellectual Property that is not Related to the Acquired Business); and

(iv)    keep intact the material business relationships relating to the Acquired Assets; provided, however, that this clause (iv) shall not obligate Sellers or any of their Affiliates to expend out-of-pocket costs or expenses in connection with compliance herewith; provided further, however, Purchaser acknowledges that Sellers have no ultimate control over the actions of material business relationship counterparties and Seller is not responsible for any impacts on the relationship resulting from Purchaser's own actions;

(b)    Sellers shall not:

(i)    sell, assign, license, transfer, convey, lease, surrender, relinquish or otherwise dispose of any Acquired Assets, other than (i) sales of Inventory in the Ordinary Course, (ii) licenses of Intellectual Property granted on a non-exclusive basis and in the Ordinary Course, or (iii) pursuant to existing Contracts;

(ii)    enter into any new, or amend any existing, license or other similar agreement concerning any Intellectual Property;

(iii)    terminate (other than by expiration), amend, modify (other than by automatic extension or renewal), waive any rights under or create any Encumbrance with respect to, any Assigned Contract (including any Assumed Lease); provided, that if such action would result in any increase in any payments to be made with respect to such Assigned Contract, then Purchaser may withhold its consent to such action in its sole discretion;

(iv)    grant any increase in the rates or terms of compensation payable or to become payable to the employees of Sellers who are primarily engaged in the Acquired Business (the "Business Employees") (including any such increase pursuant to any Seller Plan) except as required by any Seller Plan as in effect on the date hereof other than compensation proposed in the Debtors' Motion (I) Authorizing and Approving the Debtors' Key Employee Retention Program and (II) Granting Related Relief Docket No. 1060 and the proposed key employee incentive program payments listed on Schedule 6.1(b)(iv); or

(v)    announce, implement or effect any material reduction in labor force, lay-off, early retirement program, severance program or other program or effort concerning the termination of employment of any Business Employee; and

(c)    Sellers shall use commercially reasonable efforts to not:

(i)    settle or compromise any pending or threatened material Action that could give rise to Liabilities of the Acquired Business that are not Excluded Liabilities;

(ii)    fail to pay any maintenance or similar fees in connection with the prosecution and maintenance of Intellectual Property Related to the Acquired Business, or otherwise fail to protect and maintain Intellectual Property Related to the Acquired Business  consistent with past practice in any material respect;

(iii)    subject any Acquired Assets to any Encumbrance, except for Permitted Encumbrances;

(iv)    except as required by any Seller Plan in effect as of the date hereof, (A) enter into any material employment, severance, termination, retention, change in control, sale bonus or other similar agreement or arrangement with any Business Employee, (B) adopt any material new employee benefit plan or arrangement covering any Business Employees or (C) amend or modify any existing Seller Plan for the benefit of the Business Employees with respect to each of (A), (B) or (C), in a manner that would result in a material increase in liability for the Purchaser;

(v)    cancel or compromise any claim, right or cause of action or waive or release any right, in each case, that is a claim, right or cause of action related to an Acquired Asset; or

(vi)    agree or commit to do any of the foregoing.

Nothing contained in this Agreement is intended to give Purchaser or its Affiliates, directly or indirectly, the right to control or direct the business of Sellers prior to the Closing.  From the date of this Agreement until the Closing, Sellers shall, and shall instruct their employees, counsel, accountants, financial advisors, and other representatives to, reasonably consult with Purchaser (and its Affiliates, counsel, financial advisors, auditors, employees, agents, and other representatives), to the extent permissible under applicable Law, in connection with planning by Purchaser with respect to patients, services, products, employees, pricing, distribution, suppliers, and any other matters related to the post-Closing operation of the Acquired Business.

6.2    Access to Information.

(a)    From the date hereof until the Closing (or the earlier termination of this Agreement pursuant to Article VIII), the Sellers shall provide Purchaser and its authorized Advisors with reasonable access and upon reasonable advance notice and during regular business hours to the properties, offices, plants and other facilities, and books and records of the Sellers Related to the Acquired Business, in order for Purchaser and its authorized Advisors to access such information regarding the Acquired Business as Purchaser reasonably deems necessary in connection with effectuating the transactions contemplated by this Agreement, and shall furnish Purchaser with such financial, operating and other data and information in connection with the Acquired Business and the Acquired Assets as Purchaser may reasonably request; provided that (i) such access does not unreasonably interfere with the normal operations of the Company and its

Subsidiaries, and (ii) nothing herein will require the Company to provide access to, or to disclose any information to, Purchaser if such access or disclosure (A) would waive any legal privilege or (B) would be in violation of applicable Laws or the provisions of any agreement to which the Company or any of its Subsidiaries is a party; provided that, in the event that the Company withholds access or information in reliance on the foregoing clause (A) or (B), the Company shall provide (to the extent possible without waiving or violating the applicable legal privilege or Law) notice to Purchaser that such access or information is being so withheld and shall use commercially reasonable efforts to provide such access or information in a way that would not risk waiver of such legal privilege or applicable Law.

(b)     The information provided pursuant to this Section 6.2 will be used solely for the purpose of effecting the transactions contemplated hereby, and will be governed by the terms and conditions of the Confidentiality Agreement.  Purchaser shall, and shall cause its Advisors to, abide by the terms of the Confidentiality Agreement with respect to such access and any information furnished to Purchaser or any of its Advisors. Neither the Company nor any Seller makes any representation or warranty as to the accuracy of any information, if any, provided pursuant to this Section 6.2, and Purchaser may not rely on the accuracy of any such information, in each case, other than the Express Representations.

(c)     From and after the Closing for a period of seven (7) years following the Closing Date (or, if later, the closing of the Bankruptcy Case), Purchaser shall provide Sellers and their Advisors with reasonable access, during normal business hours, and upon reasonable advance notice, to the books and records, including work papers, schedules, memoranda, Tax Returns, Tax schedules, Tax rulings, and other documents (for the purpose of examining and copying) relating to the Acquired Assets or the Assumed Liabilities with respect to periods or occurrences prior to the Closing Date and reasonable access, during normal business hours, and upon reasonable advance notice, to employees, officers, advisors, accountants, offices and properties (including for the purpose of better understanding such books and records) of Purchaser; provided that nothing herein will require the Purchaser to provide access to, or to disclose any information to, Sellers if such access or disclosure (A) would waive any legal privilege or (B) would be in violation of applicable Laws or the provisions of any agreement to which the Purchaser or any of its Affiliates is a party (including, without limitation, any of the Assumed Leases); provided that, in the event that the Purchaser withholds access or information in reliance on the foregoing clause (A) or (B), the Purchaser shall provide (to the extent possible without waiving or violating the applicable legal privilege or Law) notice to Sellers that such access or information is being so withheld and shall use commercially reasonable efforts to provide such access or information in a way that would not risk waiver of such legal privilege or applicable Law.  Unless otherwise consented to in writing by the Company, Purchaser shall not, for a period of seven (7) years following the Closing Date (or, if later, the closing of the Bankruptcy Case), destroy, alter or otherwise dispose of any of the books and records without first offering to surrender to the Company such books and records or any portion thereof that Purchaser may intend to destroy, alter or dispose of.

(d)     Purchaser shall not, and shall not permit any member of the Purchaser Group to, contact any officer, manager, director, employee, customer, supplier, lessee, lessor, lender, noteholder or other material business relation of the Company or its Subsidiaries prior to the Closing with respect to the Company, its Subsidiaries, their business or the transactions contemplated by this Agreement without the prior consent of the Company for each such contact,

22

which may be reasonably withheld, and any such contact pursuant to this <u>Section 6.2(d)</u> shall be permitted solely to the extent Related to the Acquired Business or primarily related to the Acquired Assets.

(e)      From the date hereof through the Closing, Sellers shall promptly following Purchaser's request, seek and use their respective reasonable best efforts to arrange such meetings and telephone conferences with material suppliers, vendors and payors of Sellers as may be reasonably requested by Purchaser and necessary and appropriate for Purchaser to coordinate transition of such suppliers, vendors and payors to the Acquired Business following the Closing.

6.3      <u>Employee Matters</u>.

(a)      Purchaser shall consider extending offers of employment to substantially all of the Business Employees as of the Closing (excluding employees of Sellers who are employed to work at the Retained Stores but including those Business Employees on long-term disability, short-term disability or workers' compensation or on a leave of absence, whether paid or unpaid, approved by the Seller or otherwise permitted by applicable Law) ("<u>Transfer Offer</u>") that, if accepted, shall become effective immediately upon the Closing.  Prior to Closing, Sellers will cooperate with Purchaser in furnishing reasonably requested information regarding the Business Employees, as well as coordinating and cooperating in the extension of the foregoing Transfer Offers.  Employees who accept such Transfer Offers and begin active employment with Purchaser in accordance with this <u>Section 6.3</u> shall be referred to herein as "<u>Transferred Employees</u>." Effective as of the Closing, each Transferred Employee shall cease to be an employee of Sellers or their Affiliates. Sellers intend that for purposes of any Seller Plan providing severance or termination benefits, or any comparable plan, program, policy, agreement or arrangement of Sellers, the transactions contemplated by this Agreement shall not constitute a termination of employment of any Transferred Employee prior to or upon the consummation of such transactions; provided, however, that if such a termination is deemed to occur under Law, the Sellers shall be responsible for any such payments, including the payment of any accrued vacation.

(b)      Purchaser shall use commercially reasonable efforts to enter into new agreements, effective as of the Closing, with the counterparties set forth on <u>Schedule 6.3(b)</u> (the "<u>Leased Optometrists</u>") on terms substantially similar to those in the existing contract with such Leased Optometrist.

(c)      Following the Closing, the Sellers and their Affiliates shall retain and be responsible for, as Excluded Liabilities any and all liabilities and obligations (x) under the Seller Plans, regardless of whether such plan is disclosed in the Disclosure Schedules, including for any severance, retention, transaction or other similar payments that may become payable under any Seller Plan in connection with the consummation of the transactions contemplated hereby (either alone or in combination with any other event) and (y) relating to the compensation and employee benefits of (1) the Business Employees (or any other employees of Sellers) who do not become Transferred Employees, whenever arising or occurring and (2) subject to any and all provisions to the contrary in this <u>Section 6.3</u>, the Transferred Employees to the extent arising or occurring prior to the Closing.

(d)      Purchaser shall, or shall cause its Affiliates to, provide any required notice under the Worker Adjustment and Retraining Notification Act or any similar or related Law (the "<u>WARN Act</u>") and to otherwise comply with the WARN Act with respect to any plant closing, mass layoff, group termination or similar event affecting Transferred Employees (including as a result of the consummation of transactions contemplated by this Agreement) and occurring from and after the Closing.

(e)      The provisions of this <u>Section 6.3</u> are for the sole benefit of the Parties to this Agreement and nothing herein, express or implied, is intended or shall be construed to confer upon or give any Person (including for the avoidance of doubt any Business Employees or Transferred Employees), other than the Parties and their respective permitted successors and assigns, any legal or equitable or other rights or remedies (with respect to the matters provided for in this <u>Section 6.3</u> or under or by reason of any provision of this Agreement).  Nothing contained herein, express or implied:  (i) shall be construed to establish, amend, or modify any benefit plan, program, agreement or arrangement, (ii) shall alter or limit Purchaser's or Sellers' ability to amend, modify or terminate any particular benefit plan, program, agreement or arrangement or (iii) is intended to confer upon any current or former employee any right to employment or continued employment for any period of time by reason of this Agreement, or any right to a particular term or condition of employment.

(f)      Sellers hereby acknowledge and agree that any acceptance of a Transfer Offer by a Transferred Employee will not constitute a breach of such Transferred Employee's obligations under any applicable retention agreement and in no event will Sellers have the right to seek repayment of the awards paid to such Transferred Employee pursuant to such retention agreement.

(g)      Seller hereby agrees that paragraph 8 of the Confidentiality Agreement shall become null and void, effective upon the Closing, and there shall be no liability on the part of any Party or Person in respect thereof.

6.4      <u>Regulatory Approvals</u>.

(a)      Sellers shall use commercially reasonable efforts to (i) make or cause to be made all notifications, filings and submissions required to be made by Sellers in connection with the Acquired Assets under any applicable Laws for the consummation of the transactions contemplated by this Agreement set forth on <u>Schedule 6.4</u>, (ii) obtain all necessary Permits and to make all necessary registrations, notices, declarations and filings (including registrations, notices, declarations and filings with Governmental Bodies, if any), (iii) assist Purchaser (including by making filings and delivering notices) to allow Purchaser to obtain all necessary consents and approvals of any Governmental Body and all necessary Permits and Governmental Authorizations, (iv) cooperate with Purchaser in exchanging such information and providing such assistance as Purchaser may reasonably request in connection with the foregoing and (v) (A) supply promptly any additional information and documentary material that may be reasonably requested in connection with such filings and (B) take all actions necessary to obtain all required clearances in connection with such filings.  In furtherance and not in limitation of the foregoing, Sellers shall permit Purchaser reasonably to participate at Purchaser's sole expense in the defense and settlement of any claim, suit or cause of action relating to this Agreement or the transactions

contemplated hereby to the extent related to the Acquired Business or the Acquired Assets, and Sellers shall not settle or compromise any such claim, suit or cause of action without Purchaser's written consent to the extent related to the Acquired Business or the Acquired Assets.

(b)       Purchaser shall, and shall cause its Affiliates and Advisors to, use commercially reasonable efforts to (i) make or cause to be made all filings and submissions required to be made by any member of the Purchaser Group under any applicable Laws for the consummation of the transactions contemplated by this Agreement, (ii) cooperate with Sellers in exchanging such information and providing such assistance as Sellers may reasonably request in connection with all of the foregoing, and (iii) (A) supply promptly any additional information and documentary material that may be reasonably requested in connection with such filings and (B) take all actions necessary to obtain all required clearances.

(c)       Purchaser shall not, and shall not permit any member of the Purchaser Group or their respective Affiliates to, acquire or agree to acquire (by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner), any Person or portion thereof, or otherwise acquire or agree to acquire any assets, if the entering into a definitive agreement relating to, or the consummation of, such acquisition, merger or consolidation could reasonably be expected to (i) impose any delay in the obtaining of, or increase the risk of not obtaining, any permits, Orders or other approvals of any Governmental Body necessary to consummate the transactions contemplated by this Agreement or the expiration or termination of any applicable waiting period, (ii) increase the risk of any Governmental Body entering an Order prohibiting the consummation of the transactions contemplated by this Agreement or (iii) delay the consummation of the transactions contemplated by this Agreement.

6.5      Reasonable Best Efforts; Cooperation.

(a)       Subject to the other terms of this Agreement, each Party shall, and shall cause its Advisors to, use its reasonable best efforts to perform its obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable Law to cause the transactions contemplated herein to be effected as soon as practicable, but in any event on or prior to the Outside Date, in accordance with the terms hereof and to cooperate with each other Party and its Advisors in connection with any step required to be taken as a part of its obligations hereunder. The "reasonable best efforts" of Sellers will not require Sellers or any of their Affiliates or Advisors to expend any money to remedy any breach of any representation or warranty, to commence any Action, to waive or surrender any right, to modify any Contract or to waive or forego any right, remedy or condition hereunder.

(b)       The obligations of Sellers pursuant to this Agreement, including this Section 6.5, shall be subject to any Orders entered, or approvals or authorizations granted or required, by or under the Bankruptcy Court or the Bankruptcy Code (including in connection with the Bankruptcy Case), and the DIP Facility and each Seller's obligations as a debtor-in-possession to comply with any order of the Bankruptcy Court (the Sale Order).

(c)       Sellers shall give promptly such notice to and make filings with third parties and use its commercially reasonable efforts to obtain the third party consents required to be listed on Schedule 3.3 and such other third party consents and estoppel certificates as necessary in

connection with the transactions contemplated by this Agreement and the Transaction Documents. Purchaser shall cooperate with and assist Sellers in giving such notices and obtaining such consents and estoppel certificates; provided, however, that except for the Cure Costs contemplated to be paid by Purchaser in accordance with Section 1.5(a), neither Purchaser nor Sellers shall have any obligation to give any guarantee or other consideration of any nature in connection with any such notice, consent or estoppel certificate or consent to any change in the terms of any such agreement or arrangement**.**

(d)    Neither Purchaser, on the one hand, nor Sellers, on the other hand, shall, after the entry of the Sale Order, enter into any agreement that would have the effect of delaying the consummation of any action contemplated by this Agreement without the written consent of the other Party.

(e)    Prior to the transfer of the Acquired NDAs and Acquired Privileges as Wind-Down Transfer Assets in accordance with Section 6.11, Sellers shall permit Purchaser to control at Purchaser's sole expense the initiation, prosecution, defense and settlement of any claim, suit or cause of action to the extent related to the Acquired Business or the Acquired Assets (including, for purposes of clarity, any confidential information related thereto), and Sellers shall not initiate, prosecute, settle or compromise any such claim, suit or cause of action without Purchaser's written consent to the extent related to the Acquired Business or the Acquired Assets. Sellers shall promptly notify Purchaser of any facts or circumstances or the occurrence of any event that may form the basis of a claim, suit or cause of action described in the foregoing sentence.

(f)    Purchaser hereby grants to Sellers a limited, non-exclusive, non-sublicensable, non-transferable, royalty-free, license to use the Acquired Intellectual Property, to be effective at Closing and to remain in effect up and until the Wind-Down, solely for purposes of (i) operating the Retained Business in the Ordinary Course and (ii) enabling the liquidation of Inventory of the Retained Business in Sellers' possession as of Closing, through the Wind-Down.

6.6    Further Assurances.

(a)    From time to time after the Closing, as and when reasonably requested by any Party, any other Party, using commercially reasonable efforts, will execute and deliver, or cause to be executed and delivered, all such documents and instruments and will take, or cause to be taken, all such further or other actions as such requesting party may reasonably deem necessary or desirable to evidence and effectuate the transactions contemplated by this Agreement.  Sellers and Purchaser agree that, in the event that any consent, approval or authorization necessary or desirable to preserve for Purchaser any right or benefit under any Assigned Contract, Assumed Lease or Permit is not obtained prior to the Closing, Sellers will, subsequent to the Closing, cooperate with Purchaser in attempting to obtain such consent, approval or authorization as promptly thereafter as practicable.

(b)    If, following the Closing, any Seller receives or becomes aware that it holds any Liability, asset, property or right which constitutes an Assumed Liability or Acquired Asset, then Sellers shall transfer such Liability, asset, property or right to Purchaser (including the execution and delivery of all appropriate transfer documents) as promptly as practicable for no additional consideration.

(c)    If, following the Closing, Purchaser receives or becomes aware that it holds any Liability, asset, property or right which constitutes an Excluded Liability or an Excluded Asset, then Purchaser shall transfer such Liability, asset, property or right to Sellers (including the execution and delivery of all appropriate transfer documents) as promptly as practicable for no additional consideration.

6.7    Acknowledgment by Purchaser.

(a)    Purchaser acknowledges and agrees, on its own behalf and on behalf of the Purchaser Group, that it has conducted to its full satisfaction an independent investigation and verification of the business, financial condition, results of operations, assets, Liabilities, properties, Contracts and prospects of Sellers and the Acquired Assets and the Assumed Liabilities, and, in making its determination to proceed with the transactions contemplated by this Agreement, Purchaser and the Purchaser Group have relied solely on the results of the Purchaser Group's own independent investigation and verification and have not relied on, are not relying on, and will not rely on, any Seller, any Subsidiary, any information, statements, disclosures, documents, projections, forecasts or other material made available to Purchaser or any of its Affiliates or Advisors in the Dataroom, Projections or any information, statements, disclosures or materials, in each case, whether written or oral, made or provided by, or as part of, any of the foregoing or any other Seller, or any failure of any of the foregoing to disclose or contain any information, except for the Express Representations (it being understood that Purchaser and the Purchaser Group have relied only on the Express Representations).  Purchaser acknowledges and agrees, on its own behalf and on behalf of the Purchaser Group, that (i) the Express Representations are the sole and exclusive representations, warranties and statements of any kind made to Purchaser or any member of the Purchaser Group and on which Purchaser or any member of the Purchaser Group may rely in connection with the transactions contemplated by this Agreement; and (ii) all other representations, warranties and statements of any kind or nature expressed or implied, whether in written, electronic or oral form, including (1) the completeness or accuracy of, or any omission to state or to disclose, any information (other than solely to the extent expressly set forth in the Express Representations) including in the Dataroom, Projections, meetings, calls or correspondence with any Sellers or any other Person on behalf of any of the Seller Parties or any of their respective Affiliates or Advisors and (2) any other statement relating to the historical, current or future business, financial condition, results of operations, assets (including the Acquired Assets), Liabilities (including the Assumed Liabilities) or the properties, Contracts, and prospects of Sellers, are, in each case, specifically disclaimed by each Seller, on each of their behalf and on behalf of the other Seller Parties.  Purchaser, on its own behalf and on behalf of the Purchaser Group: (x) disclaims reliance on the items in clause (ii) in the immediately preceding sentence and (y) acknowledges and agrees that it has relied on, is relying on and will rely on only the items in clause (i) in the immediately preceding sentence.  Without limiting the generality of the foregoing, Purchaser acknowledges and agrees, on its own behalf and on behalf of the Purchaser Group, that no Seller, nor any other Person (including the Seller Parties), has made, is making or is authorized to make, and Purchaser, on its own behalf and on behalf of the Purchaser Group, hereby waives, all rights and claims it or they may have against any Seller Party with respect to the accuracy of, any omission or concealment of, or any misstatement with respect to, (A) any potentially material information regarding the Seller Parties or any of their respective assets (including the Acquired Assets), Liabilities (including the Assumed Liabilities) or operations and (B) any warranty or representation (whether in written, electronic or oral form), express or implied, as to the quality,

27

merchantability, fitness for a particular purpose, or condition of the Seller Parties' business, operations, assets (including the Acquired Assets), Liabilities (including the Assumed Liabilities), prospects or any portion thereof, except, in each case, solely to the extent expressly set forth in the Express Representations. Except as expressly set forth herein, Purchaser is acquiring the Acquired Assets and assuming the Assumed Liabilities on an "AS IS, WHERE IS" basis. Notwithstanding the foregoing, nothing in this Section 6.7 shall limit any Person's Liability arising from conduct of such Person that is determined by a Final Order of a court of competent jurisdiction to have constituted an actual fraud, willful breach, knowing and intentional misrepresentation, or criminal act by such Person.

(b)    Without limiting the generality of the foregoing, in connection with the investigation by the Purchaser Group of Sellers, Purchaser and the members of the Purchaser Group, and the Advisors of each of the foregoing, have received or may receive, from or on behalf of Sellers, certain projections, forward-looking statements and other forecasts (whether in written, electronic or oral form, and including in the Dataroom, management meetings, etc.) (collectively, "Projections"). Purchaser acknowledges and agrees, on its own behalf and on behalf of the Purchaser Group, that (i) such Projections are being provided solely for the convenience of Purchaser to facilitate its own independent investigation of the Seller Parties, (ii) there are uncertainties inherent in attempting to make such Projections, (iii) Purchaser is familiar with such uncertainties, and (iv) Purchaser is taking full responsibility for making its own evaluation of the adequacy and accuracy of all Projections (including the reasonableness of the assumptions underlying such Projections).

(c)    Purchaser acknowledges and agrees, on its own behalf and on behalf of the Purchaser Group, that it will not assert, institute or maintain, and will cause each member of the Purchaser Group not to assert, institute or maintain, any Action that makes any claim contrary to the agreements and covenants set forth in this Section 6.7, including any such Action with respect to the distribution to Purchaser or any member of the Purchaser Group, or Purchaser's or any member of the Purchaser Group's use, of the Dataroom, Projections or any other information, statements, disclosures or materials, in each case whether written or oral, provided by them or any other Seller Party or any failure of any of the foregoing to disclose any information.

(d)    Purchaser acknowledges and agrees, on its own behalf and on behalf of the Purchaser Group, that the covenants and agreements contained in this Section 6.7 (i) require performance after the Closing to the maximum extent permitted by applicable Law and will survive the Closing for twenty (20) years; and (ii) are an integral part of the transactions contemplated by this Agreement and that, without these agreements set forth in this Section 6.7, Sellers would not enter into this Agreement.

6.8    Government Patient Receivables; Purchaser Funds Received Post-Closing.

(a)    Pursuant to Section 1.1(o) hereof Sellers are obligated to convey to Purchaser an amount equal to the value of the Government Patient Receivables existing as of the Closing Date or amounts derived therefrom that are actually received by the Sellers. For the purpose of clarity, the foregoing shall not be interpreted as a guarantee of collection by Sellers of the Government Patient Receivables or as a guarantee of the value of amounts that will be collected. In connection with such obligation, Sellers shall cause all such Government Patient

Receivables actually received to be paid into that certain current account of Sellers which is subject to an existing account agreement between Sellers, the depositary and Purchaser or into a replacement account subject to a substantially equivalent account agreement satisfactory to Purchaser as needed to comply with applicable Law. Sellers shall not commingle with such Government Patient Receivables paid to such account by depositing into such account any other funds of Sellers. As necessary, Sellers hereby and hereafter shall take any and all other actions and execute any and all documents (including sweep instructions to transfer such collected funds to Purchaser on a daily basis) reasonably requested by Purchaser as may be necessary to effect in compliance with applicable Law the transfer of such amount paid into such account to Purchaser in satisfaction of these Sellers' obligation.

(b)    In addition to the terms of Section 6.8(a), Sellers agree that any amounts that are received by any Seller or that are deposited or paid into any bank or other account of any Seller (whether from a Government Program or any other source) that relate to the operation of the Acquired Business on and after Closing shall be the property of Purchaser, shall be held by Sellers in constructive trust for Purchaser without commingling with any other funds of Sellers and Sellers shall promptly turnover and deliver such amounts to Purchaser. Sellers shall take all actions to establish arrangements to effectuate the terms of this subparagraph in compliance with applicable Law (as determined by Purchaser) including continuing to allow or cause, as the case may be, such funds to be paid into the deposit account referenced in Section 6.8(a).

(c)    In the event the "account" collection arrangement reflected in Section 6.8(a) or any other arrangement in this Section 6.8 is determined by a change in Law or regulation or interpretation by a Governmental Body to be illegal or noncompliant with regulatory requirements, Sellers agree to make such modifications to this Section as requested by Purchaser as may be necessary to comply with applicable Law while fulfilling the intent of this transaction and minimizing the fiscal effect on the Parties of the change.

6.9    Store Locations.

(a)    Master Store List.  Schedule 6.9 contains a true and complete list of each store location of the Sellers related to or conducting the optical business of the Sellers (the "Optical Stores"), and identifies whether such Optical Store is an Acquired Store, a Pre-Signing Liquidated Store, a Post-Closing Liquidated Store, or a Retained Store. The "Pre-Signing Liquidated Stores" have concluded their final liquidation sales (each, a "GOB Sale") prior to the date hereof.

(b)    Acquired Stores.  Schedule 6.9 further designates for each Optical Store that is not a Pre-Signing Liquidated Store whether such Optical Store is an "Acquired Store" or a "Post-Closing Liquidated Store."  Purchaser may from to time adjust such designations by notice to the Company, which may be delivered up to one Business Day prior to the Closing. The "Retained Stores" are the Pre-Signing Liquidated Stores and the Post-Closing Liquidated Stores. For purposes of clarity, the Optical Stores are comprised of Acquired Stores, the Optical Lab and Retained Stores.

(c)    No Acquired Asset Sales.  Consistent with Section 6.1(b)(i), Sellers shall not sell, or permit to be sold, any Acquired Asset pursuant to a GOB Sale.

6.10    <u>Post-Closing Liquidated Store Assets</u>.  Sellers shall convey to Purchaser all optical medical equipment and Inventory Related to the Acquired Business located at a Post-Closing Liquidated Store and all telephone, facsimile and email addresses associated with such Post-Closing Liquidated Store (together, the "<u>Liquidated Store Acquired Assets</u>"), immediately following the earlier of the conclusion of (i) the GOB Sale or (ii) the retail operations of such Post-Closing Liquidated Store (such time, the "<u>Post-Closing Liquidation Event</u>").  Following each Post-Closing Liquidation Event, at Purchaser's request, direction and expense, Sellers shall promptly deliver to Purchaser such Liquidated Store Acquired Assets that were located at or, with respect to telephone, facsimile and email addresses, associated with such Post-Closing Liquidated Store. At no time may Sellers sell, transfer or subject to any Encumbrance any Liquidated Store Acquired Assets located at a Post-Closing Liquidated Store to any Person other than the Purchaser, without the Purchaser's prior written consent.  For purposes of clarity, all Liabilities arising out of the Liquidated Store Acquired Assets prior to the delivery of such Liquidated Store Acquired Assets shall be Excluded Liabilities.

6.11    <u>Post-Closing Transfer of Wind-Down Transfer Assets</u>.  Certain assets have been identified by Sellers and Purchaser herein as assets whose transfer of title will occur at the Closing, but which Sellers shall be entitled to use in the Ordinary Course until, in respect of each such asset, the earlier of (a) the Wind-Down, and (b) the date on which such asset is no longer involved in the active operations of the Retained Business (in each case, a "<u>Transfer Event</u>" and such assets, the "<u>Wind-Down Transfer Assets</u>").  In connection with a Transfer Event, Sellers shall promptly transfer possession of such Wind-Down Transfer Assets.  At no time may Sellers permanently remove (or permit the permanent removal) of the Sellers Headquarters Tangible Assets from the Sellers' Headquarters or otherwise sell, transfer or subject to any Encumbrance any Wind-Down Transfer Asset to any Person other than the Purchaser, without the Purchaser's prior written consent.  For purposes of clarity, all Liabilities arising out of the Wind-Down Transfer Assets (including maintenance and renewal costs) prior to the applicable Transfer Event and delivery of such Wind-Down Transfer Asset shall be Excluded Liabilities.

6.12    <u>Transition Services Agreement</u>.  Purchaser and Sellers shall negotiate in good faith a transition services agreement (the "<u>Transition Services Agreement</u>"), subject to the Parties reaching agreement on terms that are acceptable to each of Purchaser and the Sellers in their respective sole and absolute discretions.

**ARTICLE VII**

**CONDITIONS TO CLOSING**

7.1    <u>Conditions Precedent to the Obligations of Purchaser and Sellers</u>.  The respective obligations of each Party to this Agreement to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by each Seller and Purchaser) on or prior to the Closing Date, of each of the following conditions:

(a)    No court or other Governmental Body has issued, enacted, entered, promulgated or enforced any Law or Order (that is final and non-appealable and that has not been vacated, withdrawn or overturned) restraining, enjoining or otherwise prohibiting the transactions contemplated by this Agreement; and

30

(b)    the Bankruptcy Court shall have entered the Sale Order and such Order shall be a Final Order.

7.2    <u>Conditions Precedent to the Obligations of Purchaser</u>.  The obligations of Purchaser to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Purchaser in its sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)    Sellers shall have delivered to Purchaser a certified copy of the Sale Order and the other items set out in <u>Section 2.3</u>;

(b)    the representations and warranties made by Sellers in <u>Article III</u> shall be true and correct as of the Closing Date (disregarding all qualifications or limitations as to "materiality" or "Material Adverse Effect" and words of similar import set forth therein), as though such representations and warranties had been made on and as of the Closing Date (except that representations and warranties that are made as of a specified date need be true and correct only as of such date), except where the failure of such representations and warranties to be true and correct has not had, and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect; <u>provided</u> that the representations set forth in <u>Sections 3.1(a)</u> and <u>3.2</u> will be true and correct in all material respects;

(c)    Sellers shall have performed in all material respects (without giving effect to any materiality or similar qualification contained therein) all of the covenants and agreements required to be performed by each of them under this Agreement at or prior to the Closing; and

(d)    the conditions set forth on <u>Schedule 7.2(d)</u>.

7.3    <u>Conditions Precedent to the Obligations of the Sellers</u>.  The obligations of Sellers to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers in their sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)    Purchaser shall have delivered to Sellers those items set out in <u>Section 2.4</u>;

(b)    the representations and warranties made by Purchaser in <u>Article IV</u> shall be true and correct in all material respects (without giving effect to any materiality or similar qualification contained therein), in each case as of the date hereof and as of the Closing Date, with the same force and effect as though all such representations and warranties had been made as of the Closing Date (other than representations and warranties that by their terms address matters only as of another specified date, which shall be so true and correct only as of such other specified date), except where the failure of such representations or warranties to be so true and correct has not had, and would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on Purchaser's ability to consummate the transactions contemplated hereby; and

(c)    Purchaser shall have performed in all material respects (without giving effect to any materiality or similar qualification contained therein) all of the covenants and agreements required to be performed by it under this Agreement at or prior to the Closing.

7.4     <u>Waiver of Conditions</u>.  Upon the occurrence of the Closing, any condition set forth in this <u>Article VII</u> that was not satisfied as of the Closing will be deemed to have been waived for all purposes by the Party having the benefit of such condition as of and after the Closing.  None of Purchaser or Sellers may rely on the failure of any condition set forth in this <u>Article VII</u>, as applicable, to be satisfied if such failure was caused by such Party's failure to use, as required by this Agreement, its reasonable best efforts to consummate the transactions contemplated hereby.

**ARTICLE VIII**

**TERMINATION**

8.1     <u>Termination of Agreement</u>.  This Agreement may be terminated only in accordance with this <u>Section 8.1</u>.  This Agreement may be terminated at any time prior to the Closing:

(a)     by the mutual written consent of the Company and Purchaser;

(b)     by written notice of either Purchaser or the Company, upon the issuance by any Governmental Body of an Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement or declaring unlawful the transactions contemplated by this Agreement, and such Order having become final, binding and non-appealable; <u>provided</u> that no termination may be made by a Party under this <u>Section 8.1(b)</u> if the issuance of such Order was caused by the breach or action or inaction of such Party;

(c)     by written notice of either Purchaser or the Company, if the Closing shall not have occurred on or before 15 days after entry of the Sale Order or such later date as Purchaser or Sellers mutually agree (the "<u>Outside Date</u>"); <u>provided</u> that a Party shall not be permitted to terminate this Agreement pursuant to this <u>Section 8.1(c)</u> if the failure of the Closing to have occurred by the Outside Date was caused by the breach or action or inaction of such Party;

(d)     by written notice of either Purchaser or the Company, if the Bankruptcy Case is dismissed or converted to a case or cases under Chapter 7 of the Bankruptcy Code, or if a trustee or examiner with expanded powers to operate or manage the financial affairs or reorganization of the Company is appointed in the Bankruptcy Case;

(e)     by written notice from the Company to Purchaser, upon a breach of any covenant or agreement on the part of Purchaser, or if any representation or warranty of Purchaser will have become untrue, in each case, such that the conditions set forth in <u>Section 7.3(b)</u> or <u>7.3(c)</u> would not be satisfied, including a breach of Purchaser's obligation to consummate the Closing; <u>provided</u> that (i) if such breach is curable by Purchaser then the Company may not terminate this Agreement under this <u>Section 8.1(e)</u> unless such breach has not been cured by the date which is the earlier of (A) two (2) Business Days prior to the Outside Date and (B) ten (10) Business Days after the Company notifies Purchaser of such breach and (ii) the right to terminate this Agreement pursuant to this <u>Section 8.1(e)</u> will not be available to the Company at any time that the Company is in material breach of any covenant, representation or warranty hereunder;

(f)     by written notice from Purchaser to the Company, upon a breach of any covenant or agreement on the part of any Seller, or if any representation or warranty of any Seller will have become untrue, in each case, such that the conditions set forth in <u>Section 7.2(b)</u> or <u>7.2(c)</u>;

32

provided that (i) if such breach is curable by such Seller then Purchaser may not terminate this Agreement under this Section 8.1(f) unless such breach has not been cured by the date which is the earlier of (A) two (2) Business Days prior to the Outside Date and (B) ten (10) Business Days after Purchaser notifies the Company of such breach and (ii) the right to terminate this Agreement pursuant to this Section 8.1(f) will not be available to Purchaser at any time that Purchaser is in material breach of any covenant, representation or warranty hereunder;

(g)    by written notice from the Company to Purchaser, if all of the conditions set forth in Sections 7.1 and 7.2 have been satisfied (other than conditions that by their nature are to be satisfied at the Closing) or waived and Purchaser fails to complete the Closing at the time required by Section 2.2; or

(h)    by written notice from the Company or Purchaser, if

(i)    the Transition Services Agreement has not been mutually agreed upon by April 29, 2019; or

(ii)    the Sale Order has not been entered by April 30, 2019.

8.2    Effect of Termination.  In the event of termination of this Agreement pursuant to Section 8.1, this Agreement shall become null and void and there shall be no liability on the part of any Party or any of its partners, officers, directors or shareholders; provided that Section 6.2(b), this Section 8.2 and Article X shall survive any such termination; provided further that no termination will relieve Purchaser from any liability for damages (including damages based on the loss of the economic benefits of the transactions contemplated by this Agreement, including the Cash Payment, to Sellers), losses, costs or expenses (including reasonable legal fees and expenses) resulting from any willful breach of this Agreement prior to the date of such termination (which, for the avoidance of doubt, will be deemed to include any failure by Purchaser to consummate the Closing if and when it is obligated to do so hereunder); provided, further, such termination shall not limit any Party's liability for any breach prior to the time of such termination. The Company shall be entitled to retain the Deposit pending the final adjudication of any dispute arising under or related to this Agreement or any of the Ancillary Agreements or the transactions contemplated hereunder and thereunder, including in connection with a termination by the Company pursuant to Section 8.1(e) or (g); provided, that following any final adjudication in which it is determined that Purchaser had the right to terminate pursuant to Section 8.1, the Deposit shall be immediately refunded to the Purchaser.

# ARTICLE IX

# TAXES

9.1    Transfer Taxes.  Any sales, use, value-added, goods and services, registration, conveyancing, purchase, transfer, franchise, deed, fixed asset, stamp, documentary, use or similar Taxes and recording charges which may be payable by reason of the sale of the Acquired Assets or the assumption of the Assumed Liabilities under this Agreement or the transactions contemplated hereby (the "Transfer Taxes") shall be borne and timely paid by the Purchaser, but only to the extent not exempt under the Bankruptcy Code, as applicable to the transfer of the

Acquired Assets pursuant to this Agreement. Purchaser shall timely file any Tax Returns and pay such Transfer Taxes as may be required to comply with the provisions of applicable Law in connection with the payment of such Transfer Taxes.

9.2  Allocation of Purchase Price. Purchaser shall prepare an allocation of the Purchase Price and the Assumed Liabilities (plus other relevant items) among the Acquired Assets for all Tax purposes (the "Purchase Price Allocation") in accordance with the principles of Section 1060 of the Code (and any similar provision of state, local, or non-U.S. law, as appropriate). Purchaser shall deliver such allocation to the Company for the Company's review and comment. Purchaser and the Company shall work together in good faith to jointly agree to the final allocation. Purchaser and Sellers will report, act and file Tax Returns (including Internal Revenue Service Form 8594) in all respects and for all purposes consistent with the Purchase Price Allocation unless they cannot agree in good faith on a final allocation. The Company shall provide Purchaser and Purchaser shall provide the Company with a copy of any information required to be furnished to the Secretary of the Treasury under Code Section 1060.

9.3  Cooperation. Purchaser and Sellers shall cooperate fully, as and to the extent reasonably requested by the other Party, in connection with the filing of Tax Returns and any audit, litigation or other Proceeding with respect to Taxes. Purchaser and Sellers further agree, upon request in writing from either party, to use their commercially reasonable efforts to obtain any certificate or other document (including any resale exemption certification) from any Governmental Body or any other Person as may be necessary to mitigate, reduce or eliminate any Tax that could be imposed (including with respect to the transactions contemplated hereby); provided that the requesting party shall reimburse the other party for its reasonable out-of-pocket costs incurred in satisfying the request.

9.4  FIRPTA. The Company shall provide Purchaser with a duly executed non-foreign person affidavit dated as of the Closing Date, sworn under penalty of perjury and in form and substance required under the Treasury Regulations issued pursuant to Section 1445 of the Code, stating that the Company is not a "foreign person" as defined in Section 1445 of the Code.

9.5  Straddle Period. In the case of any taxable period that includes (but does not end on) the Closing Date (a "Straddle Period"), the amount of any property, ad valorem or other Taxes not based on income or gross receipts for a Straddle Period that relates to the Pre-Closing Tax Period shall be deemed to be the amount of such Tax for the entire taxable period multiplied by a fraction the numerator of which is the number of days in the taxable period ending on and including the Closing Date and the denominator of which is the number of days in such Straddle Period. The amount of any Taxes based on income or gross receipts for a Straddle Period shall be determined by an interim closing of the books as of the end of the Closing Date.

## ARTICLE X

## MISCELLANEOUS

10.1  Non-Survival of Representations and Warranties. Each of the representations and warranties and the covenants and agreements (to the extent such covenant or agreement contemplates or requires performance by such party prior to the Closing) of the Parties set forth in

this Agreement or in any other document contemplated hereby, or in any certificate delivered hereunder or thereunder, will terminate effective immediately as of the Closing such that no claim for breach of any such representation, warranty, covenant or agreement, detrimental reliance or other right or remedy (whether in contract, in tort or at law or in equity) may be brought with respect thereto after the Closing.  Each covenant and agreement that explicitly contemplates performance at or after the Closing, will, in each case and to such extent, expressly survive the Closing in accordance with its terms, and if no term is specified, then for twenty (20) years following the Closing Date, and nothing in this Section 10.1 will be deemed to limit any rights or remedies of any Person for breach of any such surviving covenant or agreement.  Purchaser and the Seller Parties acknowledge and agree, on their own behalf and on behalf of the Purchaser Group or the Seller Parties, as the case maybe, that the agreements contained in this Section 10.1 (a) require performance after the Closing to the maximum extent permitted by applicable Law and will survive the Closing for twenty (20) years; and (b) are an integral part of the transactions contemplated hereby and that, without the agreements set forth in this Section 10.1, none of the Parties would enter into this Agreement.

10.2    Expenses.  Whether or not the Closing takes place, except as otherwise provided herein, all fees, costs and expenses (including fees, costs and expenses of Advisors) incurred in connection with the negotiation of this Agreement and the other agreements contemplated hereby, the performance of this Agreement and the other agreements contemplated hereby and the consummation of the transactions contemplated hereby and thereby will be paid by the Party incurring such fees, costs and expenses; it being acknowledged and agreed that all Transfer Taxes will be allocated pursuant to Section 9.1.

10.3    Notices.  Except as otherwise expressly provided herein, all notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing and will be deemed to have been given (a) when personally delivered, (b) when transmitted via facsimile device or by electronic mail (unless if transmitted after 5:00 P.M. Central time or other than on a Business Day, then on the next Business Day), (c) the day following the day on which the same has been delivered prepaid to a reputable national overnight air courier service or (d) the third (3rd) Business Day following the day on which the same is sent by certified or registered mail, postage prepaid, in each case, to the respective party at the number, electronic mail address or street address, as applicable, set forth below, or at such other number, electronic mail address or street address as such party may specify by written notice to the other Party.

Notices to Purchaser:

c/o Monarch Alternative Capital LP
535 Madison Avenue
New York, NY 10022
Attention:  General Counsel
Facsimile:  (212) 554-1701
E-mail:  Michael.kelly@monarchlp.com

with a copy to:

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
Attention:      Jeff Krause
                Benyamin Ross
Facsimile:      (213) 220-6258
Email:          JKrause@gibsondunn.com
                BRoss@gibsondunn.com

Notices to Sellers:

Specialty Retail Shops Holding Corp.
700 Pilgrim Way
Green Bay, Wisconsin 54304
Attention:      Russell Steinhorst, CEO
                Susan Buckna, General Counsel
Facsimile:      (920) 429-7401
Email:          russ.steinhorst@shopko.com
                susan.buckna@shopko.com

with a copy to:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Attention:      Brian Lennon
                Claire E. James
Facsimile:      (212) 728-9767
Email:          BLennon@willkie.com
                CEJames@willkie.com

10.4    Binding Effect; Assignment.  This Agreement shall be binding upon Purchaser and, subject to entry of the Sale Order, Sellers and inure to the benefit of the Parties and their respective successors and permitted assigns, including any trustee or estate representative appointed in the Bankruptcy Case or any successor Chapter 7 case; provided, that neither this Agreement nor any of the rights or obligations hereunder may be assigned or delegated without the prior written consent of Purchaser and the Company; provided, further, that Purchaser shall be permitted, with the prior written consent of Sellers ((x) such consent not to be unreasonably withheld, conditioned or denied, and (y) such consent not required in the event Purchaser assigns this Agreement to one and only one of its Affiliates), to assign all or part of its rights or obligations hereunder to any of its Affiliates or as collateral security to any third party that at any time provides debt financing to Purchaser or its Affiliates, whether in connection with the transactions contemplated hereby or otherwise, but no such assignment shall relieve Purchaser of its obligations under this Agreement.

36

10.5    <u>Amendment and Waiver</u>.  Any provision of this Agreement or the Schedules or Exhibits hereto may be (a) amended only in a writing signed by Purchaser and the Company or (b) waived only in a writing executed by Purchaser, in the case that enforcement of such waiver is sought against Purchaser, or by the Company, in the case that enforcement of such waiver is sought against the Sellers.  No waiver of any provision hereunder or any breach or default thereof will extend to or affect in any way any other provision or prior or subsequent breach or default.

10.6    <u>Third Party Beneficiaries</u>.  Except as otherwise expressly provided herein, nothing expressed or referred to in this Agreement will be construed to give any Person other than the Parties any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement.

10.7    <u>Non-Recourse</u>.  This Agreement may only be enforced against, and any Action based upon, arising out of or related to this Agreement may only be brought against, the Persons that are expressly named as parties to this Agreement.  Except to the extent named as a party to this Agreement, and then only to the extent of the specific obligations of such parties set forth in this Agreement, no past, present or future shareholder, member, partner, manager, director, officer, employee, Affiliate, agent or Advisor of any party to this Agreement will have any liability (whether in contract, tort, equity or otherwise) for any of the representations, warranties, covenants, agreements or other obligations or Liabilities of any of the parties to this Agreement or for any Action based upon, arising out of or related to this Agreement; <u>provided</u>, that nothing in this <u>Section 10.7</u> shall limit any Person's Liability arising from conduct of such Person that is determined by a Final Order of a court of competent jurisdiction to have constituted an actual fraud, willful breach, knowing and intentional misrepresentation, or criminal act by such Person.

10.8    <u>Severability</u>.  Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable Law in any jurisdiction, such provision will be ineffective only to the extent of such prohibition or invalidity in such jurisdiction, without invalidating the remainder of such provision or the remaining provisions of this Agreement or in any other jurisdiction.

10.9    <u>Construction</u>.  The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Person.  The headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and will in no way restrict or otherwise modify any of the terms or provisions hereof.

10.10   <u>Disclosure Schedules</u>.

(a)     The Disclosure Schedules have been arranged for purposes of convenience in separately numbered sections corresponding to the sections of this Agreement; <u>provided</u> that each section of the Disclosure Schedules will be deemed to incorporate by reference all information disclosed in any other section of the Disclosure Schedules to the extent readily apparent on the face of such disclosure.  Capitalized terms used in the Disclosure Schedules and not otherwise defined therein have the meanings given to them in this Agreement.  The specification of any dollar amount or the inclusion of any item in the representations and warranties

37

contained in this Agreement, the Disclosure Schedules or the attached Exhibits is not intended to imply that the amounts, or higher or lower amounts, or the items so included, or other items, are or are not required to be disclosed (including whether such amounts or items are required to be disclosed as material or threatened) or are within or outside of the Ordinary Course or consistent with past practice, and no party will use the fact of the setting of the amounts or the fact of the inclusion of any item in this Agreement, the Disclosure Schedules or Exhibits in any dispute or controversy between the Parties as to whether any obligation, item or matter not set forth or included in this Agreement, the Disclosure Schedules or Exhibits is or is not required to be disclosed (including whether the amount or items are required to be disclosed as material or threatened) or are within or outside of the Ordinary Course.  In addition, matters reflected in the Disclosure Schedules are not necessarily limited to matters required by this Agreement to be reflected in the Disclosure Schedules.  Such additional matters are set forth for informational purposes only and do not necessarily include other matters of a similar nature.  No information set forth in the Disclosure Schedules will be deemed to broaden in any way the scope of the parties' representations and warranties.  Any description of any agreement, document, instrument, plan, arrangement or other item set forth on any Schedule is a summary only and is qualified in its entirety by the terms of such agreement, document, instrument, plan, arrangement or item which terms will be deemed disclosed for all purposes of this Agreement.  For purposes of clarity, this paragraph only applies to the schedules qualifying <u>Article III</u> and Section 6.1 hereof (the "<u>Disclosure Schedules</u>"), and not to the other annexes, appendices, exhibits and schedules hereto.

(b)      The information contained in this Agreement, in the Schedules and Exhibits hereto is disclosed solely for purposes of this Agreement, and no information contained herein or therein will be deemed to be an admission by any Party to any Third Party of any matter whatsoever, including any violation of Law or breach of contract.

10.11   <u>Complete Agreement</u>.   This Agreement, together with the Confidentiality Agreement and any other agreements expressly referred to herein, contains the entire agreement of the parties respecting the sale and purchase of the Acquired Assets and the Assumed Liabilities and the transactions contemplated by this Agreement and supersedes all prior understandings or agreements among the Parties (whether written or oral) respecting the sale and purchase of the Acquired Assets and the Assumed Liabilities and the transactions contemplated by this Agreement. In the event an ambiguity or question of intent or interpretation arises with respect to this Agreement, the terms and provisions of the execution version of this Agreement will control and prior drafts of this Agreement and the documents referenced herein will not be considered or analyzed for any purpose (including in support of parole evidence proffered by any Person in connection with this Agreement), will be deemed not to provide any evidence as to the meaning of the provisions hereof or the intent of the Parties with respect hereto and will be deemed joint work product of the Parties.

10.12   <u>Specific Performance</u>.   The Parties agree that irreparable damage, for which monetary relief, even if available, would not be an adequate remedy, would occur in the event that any provision of this Agreement is not performed in accordance with its specific terms or is otherwise breached, including if any Party fails to take any action required of it hereunder to consummate the transactions contemplated by this Agreement.  It is accordingly agreed that (a) the Parties will be entitled to seek an injunction or injunctions, specific performance or other equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions

hereof in the courts described in <u>Section 10.13</u> without proof of damages, this being in addition to any other remedy to which they are entitled under this Agreement, and (b) the right of specific performance and other equitable relief is an integral part of the transactions contemplated by this Agreement and without that right, neither Sellers nor Purchaser would have entered into this Agreement.   The Parties acknowledge and agree that any Party pursuing an injunction or injunctions or other Order to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement in accordance with this <u>Section 10.12</u> will not be required to provide any bond or other security in connection with any such Order.  The remedies available to Sellers pursuant to this <u>Section 10.12</u> will be in addition to any other remedy to which they were entitled at law or in equity, and the election to pursue an injunction or specific performance will not restrict, impair or otherwise limit any Seller from seeking to collect or collecting damages.  If, prior to the Outside Date, any Party brings any action, in each case in accordance with this <u>Section 10.12</u>, to enforce specifically the performance of the terms and provisions hereof by any other party, the Outside Date will automatically be extended (y) for the period during which such action is pending, <u>plus</u> ten (10) Business Days or (z) by such other time period established by the court presiding over such action, as the case may be.  In no event will this <u>Section 10.12</u> be used, alone or together with any other provision of this Agreement, to require any Seller to remedy any breach of any representation or warranty of any Seller made herein.

10.13   <u>Jurisdiction and Exclusive Venue</u>.  Each of the Parties irrevocably agrees that any Action that may be based upon, arising out of or related to this Agreement or the negotiation, execution or performance of this Agreement and the transactions contemplated hereby brought by any other Party or its successors or assigns will be brought and determined only in (a) the Bankruptcy Court and any federal court to which an appeal from the Bankruptcy Court may be validly taken or (b) in the event the Bankruptcy Case is closed, or if the Bankruptcy Court is unwilling or unable to hear such Action, in the District Court for the Southern District of New York and any state court sitting in the State of New York to which an appeal from the District Court for the Southern District of New York may be validly taken (or, if the District Court for the Southern District of New York declines to accept jurisdiction over a particular matter, any state or federal court within the state of New York) ((a) and (b), the "<u>Chosen Courts</u>"), and each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the Chosen Courts for itself and with respect to its property, generally and unconditionally, with regard to any such Action arising out of or relating to this Agreement and the transactions contemplated hereby.  Each of the Parties agrees not to commence any Action relating thereto except in the Chosen Courts, other than Actions in any court of competent jurisdiction to enforce any judgment, decree or award rendered by any Chosen Court, and no party will file a motion to dismiss any Action filed in a Chosen Court on any jurisdictional or venue-related grounds, including the doctrine of *forum non-conveniens*. The Parties irrevocably agree that venue would be proper in any of the Chosen Courts, and hereby irrevocably waive any objection that any such court is an improper or inconvenient forum for the resolution of such Action.  Each of the Parties further irrevocably and unconditionally consents to service of process in the manner provided for notices in <u>Section 10.3</u>.  Nothing in this Agreement will affect the right of any Party to this agreement to serve process in any other manner permitted by Law.

10.14   Governing Law; Waiver of Jury Trial.

(a)   Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement, and any Action that may be based upon, arise out of or relate to this Agreement or the negotiation, execution or performance of this Agreement or the transactions contemplated hereby will be governed by and construed in accordance with the internal Laws of the State of New York applicable to agreements executed and performed entirely within such State without regards to conflicts of law principles of the State of New York or any other jurisdiction that would cause the Laws of any jurisdiction other than the State of New York to apply.

(b)   EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT, THE DOCUMENTS AND AGREEMENTS CONTEMPLATED HEREBY AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND THEREFORE HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION BASED ON, ARISING OUT OF OR RELATED TO THIS AGREEMENT, ANY DOCUMENT OR AGREEMENT CONTEMPLATED HEREBY OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.  EACH OF THE PARTIES AGREES AND CONSENTS THAT ANY SUCH ACTION WILL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT THE PARTIES TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THE IRREVOCABLE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.  EACH PARTY (I) CERTIFIES THAT NO ADVISOR OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

10.15   No Right of Set-Off.  Purchaser, on its own behalf and on behalf of the Purchaser Group and its and their respective successors and permitted assigns, hereby waives any rights of set-off, netting, offset, recoupment, or similar rights that Purchaser, any member of the Purchaser Group or any of its or their respective successors and permitted assigns has or may have with respect to the payment of the Purchase Price or any other payments to be made by Purchaser to the Sellers pursuant to this Agreement or any other document or instrument delivered by Purchaser in connection herewith.

10.16   Counterparts and PDF.  This Agreement and any other agreements referred to herein or therein, and any amendments hereto or thereto, may be executed in multiple counterparts, any one of which need not contain the signature of more than one party, but all such counterparts taken together will constitute one and the same instrument.  Any counterpart, to the extent signed and delivered by means of a facsimile machine, .PDF or other electronic transmission, will be treated in all manner and respects as an original contract and will be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.  Minor variations in the form of the signature page to this Agreement or any agreement or instrument

contemplated hereby, including footers from earlier versions of this Agreement or any such other document, will be disregarded in determining the effectiveness of such signature.  At the request of any party hereto or to any such contract, each other party hereto or thereto will re-execute original forms thereof and deliver them to all other parties.  No party hereto or to any such contract will raise the use of a facsimile machine, .PDF or other electronic transmission to deliver a signature or the fact that any signature or contract was transmitted or communicated through the use of facsimile machine, .PDF or other electronic transmission as a defense to the formation of a contract and each such party forever waives any such defense.

10.17  <u>Publicity</u>.  Neither the Company nor Purchaser shall issue any press release or public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the other Party, which approval will not be unreasonably withheld or delayed, unless, in the reasonable judgment of Purchaser or the Company, disclosure is otherwise required by applicable Law or by the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement.

10.18  <u>Bulk Sales Laws</u>.  The Parties intend that pursuant to Section 363(f) of the Bankruptcy Code, the transfer of the Acquired Assets shall be free and clear of any security interests in the Acquired Assets, including any liens or claims arising out of the bulk transfer laws, and the parties shall take such steps as may be necessary or appropriate to so provide in the Sale Order.  In furtherance of the foregoing, each Party hereby waives compliance by the Parties with the "bulk sales," "bulk transfers" or similar Laws and all other similar Laws in all applicable jurisdictions in respect of the transactions contemplated by this Agreement.

## ARTICLE XI

### ADDITIONAL DEFINITIONS AND INTERPRETIVE MATTERS

11.1  <u>Certain Definitions</u>.

(a)  "<u>Acquired Business</u>" means the optical business of Sellers, including the Sellers' optical online store and excluding the Retained Stores (but including the Acquired Assets that may be located at, related to, or associated with such Retained Stores (e.g. Inventory)).

(b)  "<u>Accounts Receivable</u>" means all of Sellers' trade accounts receivable and other rights to payment from patients, insurers, licensees, or other third parties, other than Government Patient Receivables.

(c)  "<u>Accounts Receivable Deficiency Amount</u>" shall exist when (and shall be equal to the amount by which) the Accounts Receivable and Government Patient Receivables Related to the Acquired Business, in the aggregate (calculated consistent with past practice), as of the Closing Date are less than $2,000,000.

(d)  "<u>Action</u>" means any action, claim (including a counterclaim, cross-claim, or defense), complaint, grievance, summons, suit, litigation, arbitration, mediation, proceeding (including any civil, criminal, administrative, investigative or appellate proceeding), prosecution, contest, hearing, inquiry, inquest, audit, examination or investigation, of any kind whatsoever, regardless of the legal theory under which such liability or obligation may be sought to be imposed,

whether sounding in contract or tort, or whether at law or in equity, or otherwise under any legal or equitable theory, commenced, brought, conducted or heard by or before, or otherwise involving, any Governmental Body.

(e)    "Acquired Locations" means the Acquired Stores, the Optical Lab and the Sellers' Headquarters.

(f)    "Advisors" means, with respect to any Person, the accountants, attorneys, consultants, advisors, investment bankers, or other representatives of such Person.

(g)    "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by Contract or otherwise.

(h)    "Assumed Post-Petition Leases" means the Leases listed on Schedule 11.1(h).

(i)    "Assumed Taxes" means (i) any Liability for Taxes arising from the ownership or operation of the Acquired Business, the Acquired Assets or the Assumed Liabilities for a Post-Closing Tax Period (other than Excluded Taxes) and (ii) any Liability for Taxes set forth in the proviso to the definition of Excluded Taxes.

(j)    "Business Day" means any day other than a Saturday, Sunday or other day on which banks in New York City, New York or Green Bay, Wisconsin are authorized or required by Law to be closed.

(k)    "Cash and Cash Equivalents" means all of the Company's cash (including petty cash and checks received prior to the close of business on the Closing Date), checking account balances, marketable securities, certificates of deposits, time deposits, bankers' acceptances, commercial paper, security entitlements, securities accounts, commodity Contracts, commodity accounts, government securities and any other cash equivalents, whether on hand, in transit, in banks or other financial institutions, or otherwise held.

(l)    "Code" means the United States Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, as the same may be in effect from time to time.

(m)    "Confidentiality Agreement" means the Confidentiality Agreement, dated as of March 29, 2019, by and between ShopKo Stores Operating Co., LLC and Monarch Alternative Capital LP.

(n)    "Consent" means any approval, consent, ratification, permission, waiver or authorization, or an Order of the Bankruptcy Court that deems or renders unnecessary the same.

42

(o)     "Contract" means any contract, indenture, note, bond, lease, sublease, license or other agreement that is binding upon a Person or its property.

(p)     "Deposit" means the "Deposit" (as defined in the Sale Procedures Order) paid in cash and to be held in a separate account in accordance with the bidding procedures contemplated by the Sale Procedures Order.

(q)     "DIP Facility" means the Third Amended and Restated Loan and Security Agreement, dated as of February 7, 2012 (as amended, including by that certain Ratification and Amendment Agreement, dated as of January 16, 2019, and as further amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and among Wells Fargo Bank, National Association ("Wells Fargo"), successor by merger to Wachovia Bank, National Association and certain other lenders and for whom Wells Fargo is acting as agent, Shopko Note Holding, LLC, a Delaware limited liability company ("ShopKo Note Holding"), successor to Spirit Realty L.P. and certain other lenders and for whom ShopKo Note Holding is acting as agent, Specialty Retail Shops Holding Corp., a Delaware corporation formerly known as SKO Group Holding Corp., as debtor and debtor-in-possession and certain other entities as debtor and debtor-in-possession thereto.

(r)     "Documents" means all of the Company's written files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, plans, operating records, safety and environmental reports, policies and procedures, data, studies and documents, ledgers, journals, title policies, customer lists, regulatory filings, operating data and plans, research material, technical documentation (design specifications, engineering information, test results, maintenance schedules, functional requirements, operating instructions, logic manuals, processes, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.) and other similar materials, in each case whether or not in electronic form.

(s)     "Encumbrance" means any lien (as defined in Section 101(37) of the Bankruptcy Code), encumbrance, claim (as defined in Section 101(5) of the Bankruptcy Code), charge, mortgage, deed of trust, option, pledge, security interest or similar interests, title defects, hypothecations, easements, rights of way, encroachments, judgments, conditional sale or other title retention agreements and other similar impositions, imperfections or defects of title or restrictions on transfer or use.

(t)     "Environmental Laws" all applicable Laws concerning pollution or protection of the environment.

(u)     "Equipment" means any and all equipment, computers, furniture, furnishings, fixtures, office supplies, supply inventory, vehicles and all other fixed assets.

(v)     "Excluded Taxes" means any (i) Taxes imposed on or with respect to, arising out of, or relating to, the Acquired Assets, the Assumed Liabilities or the Acquired Business that are incurred in or attributable to any Pre-Closing Tax Period, (ii) Taxes of the Sellers, and their direct and indirect owners (including without limitation Taxes of the Sellers, or their direct

or indirect owners, that could become a liability of, or be assessed or collected against, the Purchaser, or that could become an Encumbrance on the Acquired Assets), and (iii) Taxes that arise as a result of the transactions contemplated by this Agreement; provided, however, that Excluded Taxes shall not include any (i) Transfer Taxes for which Purchaser is liable under Section 9.1, and (ii) real or personal (including intangible) property Taxes or similar ad valorem Taxes attributable to the Post-Closing Tax Period.

(w)     "Final Order" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the clerk of the Bankruptcy Court or such other court on the docket in Sellers' Bankruptcy Case or the docket of such other court, which has not been modified, amended, reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, motion for new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

(x)     "GAAP" means United States generally accepted accounting principles as in effect from time to time.

(y)     "Government Patient Receivables" means all of Sellers' accounts receivable and other rights to payment from Government Programs arising from the rendering of items and services and provisions of supplies to patients, to the extent arising out of the operation of the Acquired Business on or before the Closing Date.

(z)     "Government Programs" means the Medicare program, state Medicaid programs, and any other, similar or successor federal, state or local health care payment programs with or sponsored by Governmental Bodies in which any Seller participates.

(aa)     "Governmental Authorization" means any authorization, permit, license, certificate, approval, consent, permission, clearance, designation, qualification or authorization issued, granted, given or otherwise made available by or under the authority of any Governmental Body or pursuant to any Law.

(bb)     "Governmental Body" means any government, quasi-governmental entity, or other governmental or regulatory body, agency or political subdivision thereof of any nature, whether foreign, federal, state or local, or any agency, branch, department, official, entity, instrumentality or authority thereof, or any court or arbitrator (public or private) of applicable jurisdiction.

(cc)    "Intellectual Property" means all of the following throughout the world: (i) patents and invention disclosures; (ii) trademarks, service marks, trade dress, corporate names, product names, and Internet domain names, social media accounts and handles, together with all goodwill associated with each of the foregoing; (iii) copyrights, rights in data and databases and moral rights of authors; (iv) registrations and applications for any of the foregoing; (v) trade secrets and know-how; and (vi) all other intellectual property.

(dd)    "Law" means any federal, state, provincial, local, municipal, foreign or international, multinational or other law, statute, legislation, constitution, principle of common law, resolution, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, pronouncement, determination, decision, opinion or requirement issued, enacted, adopted, promulgated, implemented or otherwise put into effect by or under the authority of any Governmental Body.

(ee)    "Leasehold Improvements" means all buildings, structures, improvements and fixtures which are owned by a Seller, regardless of whether title to such buildings, structures, improvements or fixtures are subject to reversion to the landlord or other third party upon the expiration or termination of such applicable lease.

(ff)    "Liability" means, as to any Person, any debt, adverse claim, liability (including any liability that results from, relates to or arises out of tort or any other product liability claim), duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution or premium of any kind or nature whatsoever, whether known or unknown, asserted or unasserted, absolute or contingent, direct or indirect, accrued or unaccrued, liquidated or unliquidated, or due or to become due, and regardless of when sustained, incurred or asserted or when the relevant events occurred or circumstances existed.

(gg)    "Master Lease" means , collectively, all as amended, restated, replaced, supplemented, or otherwise modified from time to time. (a) that certain Amended and Restated Master Lease Agreement, dated as of December 15, 2014 between Shopko Stores Operating Co., LLC, Spirit SPE Portfolio 2006-1, LLC, and Spirit SPE Portfolio 2006-2, LLC, (b) that certain Master Lease, dated as of April 26, 2018, between Shopko Stores Operating Co., LLC and SMTA Shopko Portfolio I, LLC, and (c) that certain Amended and Restated Master Lease, dated as of June 1, 2016, between Pamida Stores Operating Co., LLC and Spirit SPE Portfolio 2006-3, LLC.

(hh)    "Material Adverse Effect" means any event, change, occurrence or effect (each, an "Effect") that, individually or in the aggregate with all other Effects, has had, or would reasonably be expected to have, a material adverse effect on the Acquired Assets and Assumed Liabilities, taken as whole; provided that none of the following shall constitute, or be taken into account in determining whether or not there has been, a Material Adverse Effect:  (i) Effects in, arising from or relating to general business or economic conditions affecting the industry in which the Company and its Subsidiaries operate, (ii) Effects in, arising from or relating to national or international political or social conditions, including the engagement by the United States in hostilities or the escalation thereof, whether or not pursuant to the declaration of a national emergency or war, or the occurrence or the escalation of any military, cyber or terrorist attack upon the United States, or any of its territories, possessions, or diplomatic or consular offices or upon any military installation, asset, equipment or personnel of the United States, (iii) Effects in, arising

from or relating to financial, banking, or securities markets (including (A) any disruption of any of the foregoing markets, (B) any change in currency exchange rates, (C) any decline or rise in the price of any security, commodity, contract or index and (D) any increased cost, or decreased availability, of capital or pricing or terms related to any financing for the transactions contemplated by this Agreement), (iv) Effects in, arising from or relating to changes in, GAAP, (v) Effects in, arising from or relating to changes in, Laws or other binding directives or determinations issued or made by or agreements with or consents of any Governmental Body, (vi) Effects in, arising from or relating to (A) the taking of any action permitted or contemplated by this Agreement or at the request of Purchaser or its Affiliates, (B) the failure to take any action if such action is prohibited by this Agreement, (C) Purchaser's failure to consent to any of the actions restricted by Section 6.1 or (D) the negotiation, announcement or pendency of this Agreement or the transactions contemplated hereby or the identity, nature or ownership of Purchaser, including the impact thereof on the relationships, contractual or otherwise, of the business of the Company or any of its Subsidiaries with employees, customers, lessors, suppliers, vendors or other commercial partners, (vii) Effects in, arising from or relating to any existing event, occurrence, or circumstance with respect to which Purchaser has knowledge as of the date hereof, including any matter expressly set forth in the Disclosure Schedules, (viii) Effects that arise from any seasonal fluctuations in the business, (ix) any failure, in and of itself, to achieve any budgets, projections, forecasts, estimates, plans, predictions, performance metrics or operating statistics or the inputs into such items (whether or not shared with Purchaser or its Affiliates or Advisors) (but, for the avoidance of doubt, not the underlying causes of any such failure to the extent such underlying cause is not otherwise excluded from the definition of Material Adverse Effect), (x) Effects of any action taken by Purchaser or its Affiliates with respect to the transactions completed by this Agreement or the financing thereof (xi) the matters set forth on the Disclosure Schedules and any changes or developments in, or effects or results arising from or relating to, matters expressly set forth on the Disclosure Schedules, or (xii)(A) the commencement or pendency of the Bankruptcy Case; (B) any objections in the Bankruptcy Court to (1) this Agreement or any of the transactions contemplated hereby or thereby, (2) the reorganization of Sellers and any related plan of reorganization or disclosure statement, or (3) the assumption or rejection of any Assigned Contract; or (C) any Order of the Bankruptcy Court or any actions or omissions of Sellers or their Subsidiaries in compliance therewith; except in the case of clauses (i), (ii) or (iii), to the extent such Effects have a materially disproportionate impact on the Acquired Assets and Assumed Liabilities taken as a whole, as compared to other participants engaged in the industries and geographies in which Sellers operate.

(ii)    "Optical Lab" means the optical laboratory located at 1450 W Main Ave, De Pere, Wisconsin, 54115.

(jj)    "Order" means any order, injunction, judgment, decree, ruling, writ, assessment or arbitration award of a Governmental Body, including any Order entered by the Bankruptcy Court in the Bankruptcy Case (including the Sale Order).

(kk)    "Ordinary Course" means the ordinary and usual course of operations of the business of the Company and its Subsidiaries taken as a whole consistent with past practice, taking into account the commencement and pendency of the Bankruptcy Case.

(ll)  "<u>Permitted Encumbrances</u>" means (i) Encumbrances for utilities and current Taxes not yet due and payable, (ii) easements, rights of way, restrictive covenants, encroachments and similar non-monetary encumbrances or non-monetary impediments against any of the Acquired Assets which do not, individually or in the aggregate, materially adversely affect the operation of the Acquired Assets and, in the case of any Acquired Location, which do not, individually or in the aggregate, materially adversely affect the use or occupancy of such Acquired Location as it relates to the operation of the Acquired Assets, (iii) applicable zoning Laws, building codes, land use restrictions and other similar restrictions imposed by Law which are not violated by the current use or occupancy of such Acquired Location, as applicable, (iv) immaterial materialmans', mechanics', artisans', shippers', warehousemans' or other similar common law or statutory liens incurred in the Ordinary Course for amounts not yet due and payable, (v) immaterial licenses granted on a non-exclusive basis in the Ordinary Course, (vi) such other Encumbrances or title exceptions as Purchaser may expressly approve as "Permitted Encumbrances" in writing in its sole discretion, (vii) any Encumbrances set forth on <u>Schedule 11.1(ll)</u> and (viii) any Encumbrances that will be removed or released by operation of the Sale Order.  For the avoidance of doubt, any one or more of the foregoing shall be deemed "material" if it would prevent the Purchaser's operation of the Acquired Locations in substantially the same manner as Seller operated such Acquired Locations in the Ordinary Course.

(mm)  "<u>Person</u>" means an individual, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization, labor union, estate, Governmental Body or other entity or group.

(nn)  "<u>Petition Date</u>" means January 16, 2019, the date that the Company and other Sellers filed voluntary petitions for relief under the Bankruptcy Code.

(oo)  "<u>Pre-Closing Tax Period</u>" means (i) all taxable periods ending on or prior to the Closing Date and (ii) the portion ending on the Closing Date of any taxable period that includes but does not end on the Closing Date.

(pp)  "<u>Post-Closing Tax Period</u>" means (i) all taxable periods that begin after the Closing Date and (ii) the portion beginning after the Closing Date of any taxable period that begins on or prior to the Closing Date and ends after the Closing Date.

(qq)  "<u>Proceeding</u>" means any action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative, or investigative) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Body.

(rr)  "<u>Purchaser Group</u>" means Purchaser, any Affiliate of Purchaser and each of their respective former, current or future Affiliates, officers, directors, employees, partners, members, managers, agents, Advisors, successors or permitted assigns, including any Master Lease counterparties, anyone who could enforce payment under the Master Leases, and the party who filed the motion in the Bankruptcy Case to enforce the Master Leases.

(ss)  "<u>Purchaser Affiliated Landlord Unassumed Leases</u>" means the leases associated with Sellers' Headquarters, the Optical Lab and any Optical Store subject to a lease with the Purchaser or its Affiliate as landlord (a "<u>Purchaser Affiliate Landlord</u>").

(tt)     "<u>Related to the Acquired Business</u>" or "<u>Relating to the Acquired Business</u>" means primarily relating to, primarily held for use with, or primarily used in connection with the Acquired Business.

(uu)     "<u>Retained Business</u>" means Sellers' businesses other than the Acquired Business.

(vv)     "<u>Sale Order</u>" means an order of the Bankruptcy Court approving the transactions contemplated by this Agreement under Section 363 of the Bankruptcy Code, which Order shall be in the form attached as <u>Exhibit D</u> hereto (other than corrections to scrivener's errors, if any, that are consented to by the Parties (such consent not to be unreasonably withheld, conditioned or delayed)).

(ww)     "<u>Sale Procedures Order</u>" means that certain Order Establishing Bidding Procedures for Plan Sponsors entered on February 12, 2019 in the Bankruptcy Case.

(xx)     "<u>Seller Parties</u>" means Sellers and each of their respective former, current, or future Affiliates, officers, directors, employees, partners, members, equityholders, controlling or controlled persons, managers, agents, Advisors, successors or permitted assigns.

(yy)     "<u>Seller Plan</u>" means each "employee benefit plan" within the meaning of Section 3(3) of ERISA and all other compensation and benefits plans, policies, programs, or arrangements, including multiemployer plans within the meaning of Section 3(37) of ERISA, and each other stock purchase, stock option or equity incentive, severance, retention, employment, change-of-control, bonus or incentive, deferred compensation or any other material employee benefit plans, policies, contracts or arrangements, whether written or unwritten, in each case, that is sponsored, maintained or contributed to or required to be contributed to by any Seller or by any trade or business, whether or not incorporated (an "<u>ERISA Affiliate</u>") that together with any Seller would be deemed a single employer within the meaning of Section 414 (b), (c), (m) or (o) of the Code or Section 4001(b) of ERISA, or to which any Seller or an ERISA Affiliate is a party, or to which any Seller or an ERISA Affiliate contributes or is required to contribute or has or could have liability (contingent or otherwise) on behalf of, any Business Employee.

(zz)     "<u>Sellers' Headquarters</u>" means the property located at 700 Pilgrim Way, Green Bay, WI 54304.

(aaa)     "<u>Subsidiary</u>" means, with respect to any Person, any corporation of which a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is at the time owned or controlled, directly or indirectly, by such Person or one or more of the other Subsidiaries of such Person or a combination thereof or any partnership, association or other business entity of which a majority of the partnership or other similar ownership interest is at the time owned or controlled, directly or indirectly, by such Person or one or more Subsidiaries of such Person or a combination thereof.

(bbb)     "<u>Tax</u>" means any federal, state, local, non-U.S. or other income, gross receipts, capital stock, franchise, profits, withholding, social security, unemployment, disability, real property, ad valorem/personal property, stamp, excise, occupation, sales, use, transfer, value

48

added, import, export, alternative minimum or estimated tax, including any interest, penalty or addition thereto.

(ccc)    "Tax Return" means any return (including any information return), report, statement, declaration, estimate, schedule, notice, notification, form, election, certificate or other document or information (including any amendments thereto) that is, has been or may in the future be filed with or submitted to, or required to be filed with or submitted to, any Governmental Body in connection with the determination, assessment, collection or payment of any Tax or in connection with the administration, implementation or enforcement of or compliance with any Law relating to any Tax.

(ddd)    "Third Party" means a Person who or which is neither a Party hereto nor an Affiliate of a Party hereto.

11.2    Index of Defined Terms.

Acquired Assets ........................................... 2
Acquired Avoidance Actions ..................... 3
Acquired Intellectual Property ................... 3
Acquired NDAs .......................................... 4
Acquired Privileges.................................... 4
Acquired Stores......................................... 29
Agreement................................................... 1
Ancillary Agreements ............................... 10
Assigned Contracts .................................... 2
Assignment and Assumption Agreement.. 10
Assumed Leases ......................................... 2
Assumed Liabilities ................................... 6
Bankruptcy Case ........................................ 1
Bankruptcy Code ....................................... 1
Bankruptcy Court....................................... 1
Bankruptcy Rules....................................... 2
Bill of Sale ............................................... 10
Business Employees.................................. 20
Cash Payment............................................. 9
Chosen Courts........................................... 39
Closing ..................................................... 10
Closing Date............................................. 10
Company..................................................... 1
Contract Assignment Date ......................... 8
Cure Costs .................................................. 6
D&O Insurance Policies ............................ 5
D&O Related Insurance Policies ............... 5
Dataroom.................................................. 16
Delayed Contracts ...................................... 9
DIP Order................................................. 10
Disclosure Schedules ............................... 38

E&O Insurance Policies.............................. 5
Effect........................................................ 45
Enforceability Exceptions ........................ 11
EPLI Insurance Policies ............................. 5
Excluded Assets ......................................... 5
Excluded Liabilities ................................... 7
Excluded Records ...................................... 5
Express Representations ........................... 16
GOB Sale ................................................. 29
Guarantee ................................................... 1
Guarantors .................................................. 1
Inventory .................................................... 3
IP Assignment Agreements...................... 10
Landlord................................................... 18
Leased Optometrists................................. 23
Leases....................................................... 12
Liquidated Store Acquired Assets ........... 30
Optical Patient Records............................. 2
Optical Stores........................................... 29
Outside Date............................................. 32
Parties........................................................ 1
Party ........................................................... 1
Permits ..................................................... 13
Plan .......................................................... 19
Post-Closing Liquidated Stores................ 29
Post-Closing Liquidation Event............... 30
Pre-Signing Liquidated Stores ................. 29
Projections................................................ 28
Purchase Price............................................ 9
Purchase Price Allocation ........................ 34
Purchaser.................................................... 1

| Retained Stores | 29 | Transfer Taxes | 33 |
| Seller | 1 | Transferred Employee Liabilities | 6 |
| Sellers | 1 | Transferred Employees | 23 |
| Sellers Headquarters Tangible Assets | 2 | Transition Services Agreement | 30 |
| ShopKo Note Holding | 43 | WARN Act | 24 |
| Straddle Period | 34 | Wells Fargo | 43 |
| Transfer Event | 30 | Wind-Down | 9 |
| Transfer Offer | 23 | Wind-Down Transfer Assets | 30 |

11.3    <u>Rules of Interpretation</u>.  Unless otherwise expressly provided in this Agreement, the following will apply to this Agreement, the Schedules and any other certificate, instrument, agreement or other document contemplated hereby or delivered hereunder.

(a)    Accounting terms which are not otherwise defined in this Agreement have the meanings given to them under GAAP consistently applied.  To the extent that the definition of an accounting term defined in this Agreement is inconsistent with the meaning of such term under GAAP, the definition set forth in this Agreement will control.

(b)    The terms "hereof," "herein" and "hereunder" and terms of similar import are references to this Agreement as a whole and not to any particular provision of this Agreement. Section, clause, Schedule and Exhibit references contained in this Agreement are references to sections, clauses, Schedules and Exhibits in or to this Agreement, unless otherwise specified.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.  Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

(c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Where the context permits, the use of the term "or" will be equivalent to the use of the term "and/or."

(d)    The words "to the extent" shall mean "the degree by which" and not "if."

(e)    When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period will be excluded.  If the last day of such period is a day other than a Business Day, the period in question will end on the next succeeding Business Day.

(f)    Words denoting any gender will include all genders, including the neutral gender.  Where a word is defined herein, references to the singular will include references to the plural and vice versa.

(g)    The word "will" will be construed to have the same meaning and effect as the word "shall".  The words "shall," "will," or "agree(s)" are mandatory, and "may" is permissive.

(h)    All references to "$" and dollars will be deemed to refer to United States currency unless otherwise specifically provided.

(i)      All references to a day or days will be deemed to refer to a calendar day or calendar days, as applicable, unless otherwise specifically provided.

(j)      Any document or item will be deemed "delivered", "provided" or "made available" by the Company, within the meaning of this Agreement if such document or item (a) is included in the Dataroom, (b) actually delivered or provided to Purchaser or any of Purchaser's Advisors or (c) made available upon request, including at the Company's or any of its Subsidiaries' offices.

(k)      Any reference to any agreement or contract will be a reference to such agreement or contract, as amended, modified, supplemented or waived.

(l)      Any reference to any particular Code section or any Law will be interpreted to include any amendment to, revision of or successor to that section or Law regardless of how it is numbered or classified; <u>provided</u> that, for the purposes of the representations and warranties set forth herein, with respect to any violation of or non-compliance with, or alleged violation of or non-compliance, with any Code section or Law, the reference to such Code section or Law means such Code section or Law as in effect at the time of such violation or non-compliance or alleged violation or non-compliance.

(m)      All references to a day or days shall be deemed to refer to a calendar day or calendar days, as applicable, unless otherwise specifically provided.

*Signature page(s) follow.*

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

<u>**PURCHASER**</u>

**SHOPTIKAL LLC**

By: _____
Name: Michael A. Weinstock
Title: Authorized Person

<u>**SELLERS**</u>

**SPECIALTY RETAIL SHOPS HOLDING CORP.**

By: _____
Name:
Title:

**SHOPKO OPTICAL MANUFACTURING LLC**

By: _____
Name:
Title:

**SHOPKO STORES OPERATING CO., LLC.**

By: _____
Name:
Title:

**PAMIDA STORES OPERATING CO., LLC**

By: _____
Name:
Title:

**PAMIDA TRANSPORTATION, LLC**

By: _____
Name:
Title:

*Signature Page to Asset Purchase Agreement*

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

### PURCHASER

**SHOPTIKAL LLC**

By: _____
Name:
Title:

### SELLERS

**SPECIALTY RETAIL SHOPS HOLDING CORP.**

By: _____
Name: Russ Steinhorst
Title: Chief Executive Officer

**SHOPKO OPTICAL MANUFACTURING LLC**

By: _____
Name: Russ Steinhorst
Title: Chief Executive Officer

**SHOPKO STORES OPERATING CO., LLC.**

By: _____
Name: Russ Steinhorst
Title: Chief Executive Officer

**PAMIDA STORES OPERATING CO., LLC**

By: _____
Name: Russ Steinhorst
Title: Chief Executive Officer

**PAMIDA TRANSPORTATION, LLC**

By: _____
Name: Russ Steinhorst
Title: Chief Executive Officer

*Signature Page to Asset Purchase Agreement*

**PENN-DANIELS, LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

**PLACE'S ASSOCIATES EXPANSION, LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

**RETAINED R/E SPE, LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

**SHOPKO FINANCE, LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

**SHOPKO GIFT CARD CO., LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

**SHOPKO HOLDING COMPANY, LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

**SHOPKO INSTITUTIONAL CARE SERVICES CO., LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

*Signature Page to Asset Purchase Agreement*

**SHOPKO PROPERTIES, LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

**SVS TRUCKING, LLC**

By: _____
Name:  Russ Steinhorst
Title:  Chief Executive Officer

*Signature Page to Asset Purchase Agreement*

**SCHEDULE A**

[Attached]

**Vendor / Payee Name**

WISCONSIN VISION ASSOCIATES
CARL ZEISS VISION INCORPORATED
BUHLER INCORPORATED
MARCOLIN USA INCORPORATED
CARL ZEISS VISION INC
CONTINENTAL OPTICAL
WALMAN OPTICAL COMPANY
HILCO THE HILSINGER COMPANY
EYEWEAR BY R O I
YOUNGER OPTICS
MARCHON EYEWEAR INCORPORATED
JOHN GINGRICH
MARTIN HARRIS OD
BRITTANY KRAUSE
MICHAEL JOHNSON
TOPCON MEDICAL SYSTEMS INCORPORATED
CANNON OPTOMETRY PC
MARCO OPHTHALMIC INCORPORATED
JASON LORENZ
D A C VISION
DOUGLAS H GRATWOHL
BRIAN JENSEN OPTOMETRY LLC
LUXOTTICA GROUP
SAFILO USA
GERRIE LUBBEN
SCHNEIDER OPTICAL MACHINES INCORPORATED
AARON CUTLER OD PS
TERRI HALEY
CHERRY OPTICAL INCORPORATED
FLETE CURTIS NEWBY
MEGHAN MONTREAL
SCOTT W HOMER OD P A
THERESA DELLAERT OD PLLC
CARL ZEISS MEDITEC INCORPORATED
ROBERT RUDMAN
JOHN E LAMERS OD PC
ALTAIR EYEWEAR
THOMAS RIEGER
STEVEN D CLEMENTS
ALLISON ZIMMER
REBECCA JANGULA
VALLY MOUA
NANCY HETLAND OD
REBECCA PITT JACKSON
MONDOTTICA USA LLC
DE RIGO REM

ALAN BECKMAN
MICHELLE R SCOTT
ROBERT ULLAND
JASDEEP SIDHU
SANDRA E FLAMMINI OD PC
WALLACE CHRISTENSEN
THOMAS R FERGUSON OD PC
GREGORY ZELL
JOY JOHNSON CHARTERED
L AMY INCORPORATED
MEISYSTEM INCORPORATED
RANDALL HOLLMAN
SATISLOH NORTH AMERICA INCORPORATED
MCGEE GROUP
TRENT ANDERSON
ART OPTICAL
GLENN H ISAACSON OD
BRENT ADAMSON
TANYA REID
ALLURE EYEWEAR
EYE Q EYEWEAR
VISION EASE LENS INSIGHT EQUITY
I DEALOPTICS

# EXHIBIT A

[Attached]

**Final Form**

## BILL OF SALE

This BILL OF SALE (this "Bill of Sale"), dated as of [__], 2019, is made by and among Shoptikal LLC, a Delaware limited liability company ("Purchaser"), and Specialty Retail Shops Holding Corp., a Delaware corporation (the "Company"), and the Subsidiaries of the Company that are indicated on the signature pages attached hereto (together with the Company, each a "Seller" and collectively "Sellers").

## RECITALS

A.      Sellers and Purchaser entered into that certain Asset Purchase Agreement, dated as of April 29, 2019, as amended from time to time (the "Purchase Agreement"), pursuant to which, among other things, (i) Sellers have agreed to sell, and Purchaser has agreed to purchase, all of Sellers' right, title and interest in and to the Acquired Assets; and (ii) Sellers desire that Purchaser assume, and Purchaser has agreed to assume from Sellers, the related Assumed Liabilities, in each case, effective as of the Closing or the Contract Assignment Date, as applicable.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

B.      Sellers have assigned their respective rights, benefits, duties, liabilities and obligations in and to the Acquired Assets and the Assumed Liabilities under the Purchase Agreement to Purchaser pursuant to that certain Assignment and Assumption Agreement, dated as of [__], 2019, by and between Purchaser and Sellers.

C.      Sellers have agreed to execute and deliver this Bill of Sale to Purchaser for the purpose of transferring to and vesting in Purchaser title to the Acquired Assets as set forth herein.

## AGREEMENT

In consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Sellers do hereby sell, convey, transfer, assign, deliver, and vest in Purchaser, its successors and assigns, forever, effective as of the Closing Date or the Contract Assignment Date, as applicable, all of Sellers' rights, titles, and interests in and to the Acquired Assets free and clear of any and all Encumbrances other than Permitted Encumbrances of any and every kind, nature and description, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and the Sale Order.  Purchaser hereby purchases, acquires, and accepts the Acquired Assets free and clear of all Encumbrances other than Permitted Encumbrances pursuant to and in accordance with the terms and conditions of the Purchase Agreement and the Sale Order, effective as of the Closing Date or the Contract Assignment Date, as applicable.

2.      Effective following the earlier of the date the Sellers' Bankruptcy Case is (a) dismissed or (b) converted to chapter 7 cases, Sellers hereby constitute and appoint Purchaser, its successors and permitted assigns, as the Sellers' true and lawful attorney, with full power of substitution, in the Sellers' name and stead, on behalf of and for the benefit of Purchaser, its successors and permitted assigns, to demand and receive any and all of the

Acquired Assets and to give receipts and releases for and in respect of the Acquired Assets, or any part thereof, and from time to time to institute and prosecute in the Sellers' name, at the sole expense and for the benefit of Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, which Purchaser, its successors and assigns, reasonably may require for the collection or reduction to possession of any of the Acquired Assets ("Power of Attorney").  At least 7 Business Days prior to the exercise of the Power of Attorney, Purchaser shall send written notices to Sellers and the lenders (having the notice addresses set forth on Annex A hereto) in accordance with the notice procedures set forth in Section 10.3 of the Purchase Agreement setting forth Purchaser's intent to exercise the Power of Attorney and a clear description of the Acquired Assets at issue and any actions contemplated in connection with the exercise of the Power of Attorney, and unless Sellers reasonably object to such exercise within 5 Business Days of receipt of such notice, then Purchaser may exercise the Power of Attorney in connection with the Acquired Assets and actions outlined in such notice.

3.      Nothing in this Bill of Sale shall change, amend, extend, or alter (nor shall it be deemed or construed as changing, amending, extending, or altering) the terms or conditions of the Purchase Agreement or any liability or obligation of Sellers or Purchaser arising under the Purchase Agreement, which shall govern the representations, warranties, and obligations of the parties with respect to the Acquired Assets.  In the event of any conflict between the Purchase Agreement, the Sale Order and this Bill of Sale, the provisions of the Purchase Agreement and the Sale Order shall control.

4.      This Bill of Sale will be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective successors and permitted assigns.

5.      Sections 6.6 (*Further Assurances*), 10.13 (*Jurisdiction and Exclusive Venue*), 10.14 (*Governing Law; Waiver of Jury Trial*) and 10.16 (*Counterparts and PDF*) of the Purchase Agreement shall be deemed incorporated into, and made a part of, this Agreement.

*The remainder of this page has been intentionally left blank.*

**IN WITNESS WHEREOF**, the parties have executed this Bill of Sale as of the date first written above.

**SELLERS**

**SPECIALTY RETAIL SHOPS HOLDING CORP.**

By:       _____
Name:
Title:

**SHOPKO OPTICAL MANUFACTURING LLC**

By:       _____
Name:
Title:

**SHOPKO STORES OPERATING CO., LLC.**

By:       _____
Name:
Title:

**PAMIDA STORES OPERATING CO., LLC**

By:       _____
Name:
Title:

**PAMIDA TRANSPORTATION, LLC**

By:       _____
Name:
Title:

**PENN-DANIELS, LLC**

By:       _____
Name:
Title:

[Signature Page to Bill of Sale]

**PLACE'S ASSOCIATES EXPANSION, LLC**

By: _____
Name:
Title:


**RETAINED R/E SPE, LLC**

By: _____
Name:
Title:


**SHOPKO FINANCE, LLC**

By: _____
Name:
Title:


**SHOPKO GIFT CARD CO., LLC**

By: _____
Name:
Title:


**SHOPKO HOLDING COMPANY, LLC**

By: _____
Name:
Title:


**SHOPKO INSTITUTIONAL CARE SERVICES CO., LLC**

By: _____
Name:
Title:


**SHOPKO PROPERTIES, LLC**

By: _____
Name:
Title:


[Signature Page to Bill of Sale]

**SVS TRUCKING, LLC**

By: _____

Name:

Title:




**PURCHASER**

**SHOPTIKAL LLC**


By: _____

Name:

Title:

[Signature Page to Bill of Sale]

<u>Annex A</u>
Lender Notice Addresses

Wells Fargo Bank, N.A.
c/o Otterbourg P.C.
230 Park Avenue
New York, New York 10169
Attn: Chad Simon, Esq. and Daniel Fiorillo, Esq.

Shopko Note Holding, LLC successor to Spirit Realty L.P.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Attn: Brad Scheler and Andrew Minear

# EXHIBIT B

[Attached]

**Final Form**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Agreement"), effective as of [__], 2019, is made by and among Shoptikal LLC, a Delaware limited liability company ("Purchaser"), and Specialty Retail Shops Holding Corp., a Delaware corporation (the "Company"), and the Subsidiaries of the Company that are indicated on the signature pages attached hereto (together with the Company, each a "Seller" and collectively "Sellers").

WHEREAS, Sellers and Purchaser entered into a certain Asset Purchase Agreement, dated as of April 29, 2019 (the "Purchase Agreement"); and

WHEREAS, pursuant to the Purchase Agreement, among other things, Sellers have agreed to assign all of their rights, title and interests in, and Purchaser has agreed to assume all of Sellers' duties and obligations under, the Assigned Contracts (including the Assumed Leases, related Assumed Liabilities and Cure Costs, each as defined in the Purchase Agreement) (the "Assigned Agreements").

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Definitions. All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Purchase Agreement.

2.      Assignment and Assumption. Sellers hereby sell, assign, grant, convey and transfer to Purchaser all of Sellers' right, title and interest in and to the Assigned Agreements, effective as of the Contract Assignment Date with respect to each Assigned Agreement. Purchaser hereby accepts such assignment and assumes all of Sellers' duties and obligations under the Assigned Agreements and agrees to pay, perform and discharge, as and when due, all of the obligations of Sellers arising under the Assigned Agreements due from and after the Contract Assignment Date with respect to each Assigned Agreement.

3.      Terms of the Purchase Agreement. This Agreement is executed and delivered in connection with the Purchase Agreement and is subject to the representations, warranties, covenants, and agreements contained in the Purchase Agreement. This Agreement is not intended to, and does not, expand, limit or modify in any way the obligations and rights of the parties hereto contemplated by the Purchase Agreement and in the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

4.      Governing Law. Sections 10.13 and 10.14 of the Purchase Agreement shall be deemed incorporated into, and made a part of, this Agreement.

5.     <u>Counterparts</u>.  Section 10.16 of the Purchase Agreement shall be deemed incorporated into, and made a part of, this Agreement.

6.     <u>Binding Effect</u>.  This Agreement will be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective successors and permitted assigns.

7.     <u>Further Assurances</u>. Subject to the terms and conditions of the Purchase Agreement, each of the parties hereto shall execute and deliver, at the reasonable request of the other parties hereto, such additional documents, instruments, conveyances and assurances and take such further actions as such other parties may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the parties have executed this Agreement to be effective as of the date first above written.

<u>**PURCHASER**</u>

Signed, sealed and delivered
in the presence of:

**SHOPTIKAL LLC**

_____

Witness

By: _____

Name:

Title:

_____

Witness

[Signature Page to Assignment and Assumption Agreement]

## CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF _____

ss:

COUNTY OF _____

      On this ____ day of _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to within the instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of whom the individual acted, executed the instrument.

_____

Notary Signature and Seal

**SELLERS**

Signed, sealed and delivered
in the presence of:

**SPECIALTY RETAIL SHOPS HOLDING
CORP.**

_____
Witness

By: _____
Name:
Title:

_____
Witness

Signed, sealed and delivered
in the presence of:

**SHOPKO OPTICAL MANUFACTURING
LLC**

_____
Witness

By: _____
Name:
Title:

_____
Witness

Signed, sealed and delivered
in the presence of:

**SHOPKO STORES OPERATING CO., LLC.**

_____
Witness

By: _____
Name:
Title:

_____
Witness

Signed, sealed and delivered
in the presence of:

**PAMIDA STORES OPERATING CO., LLC**

_____
Witness

By: _____
Name:
Title:

_____
Witness

[Signature Page to Assignment and Assumption Agreement]

Signed, sealed and delivered
in the presence of:

**PAMIDA TRANSPORTATION, LLC**

_____

By:     _____

Witness

Name:

Title:

_____

Witness

Signed, sealed and delivered
in the presence of:

**PENN-DANIELS, LLC**

_____

By:     _____

Witness

Name:

Title:

_____

Witness

Signed, sealed and delivered
in the presence of:

**PLACE'S ASSOCIATES EXPANSION, LLC**

_____

By:     _____

Witness

Name:

Title:

_____

Witness

Signed, sealed and delivered
in the presence of:

**RETAINED R/E SPE, LLC**

_____

By:     _____

Witness

Name:

Title:

_____

Witness

[Signature Page to Assignment and Assumption Agreement]

Signed, sealed and delivered
in the presence of:

**SHOPKO FINANCE, LLC**

_____

Witness

By:      _____

Name:

Title:

_____

Witness

Signed, sealed and delivered
in the presence of:

**SHOPKO GIFT CARD CO., LLC**

_____

Witness

By:      _____

Name:

Title:

_____

Witness

Signed, sealed and delivered
in the presence of:

**SHOPKO HOLDING COMPANY, LLC**

_____

Witness

By:      _____

Name:

Title:

_____

Witness

Signed, sealed and delivered
in the presence of:

**SHOPKO INSTITUTIONAL CARE
SERVICES CO., LLC**

_____

Witness

By:      _____

Name:

Title:

_____

Witness

[Signature Page to Assignment and Assumption Agreement]

Signed, sealed and delivered
in the presence of:

**SHOPKO PROPERTIES, LLC**

_____

Witness

By:      _____

Name:

Title:

_____

Witness

Signed, sealed and delivered
in the presence of:

**SVS TRUCKING, LLC**

_____

Witness

By:      _____

Name:

Title:

_____

Witness

[Signature Page to Assignment and Assumption Agreement]

## CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF _____

                                                    ss:

COUNTY OF _____


       On this ___ day of _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to within the instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of whom the individual acted, executed the instrument.


_____
Notary Signature and Seal

**EXHIBIT C**

[Attached]

**Final Form**

## <u>TRADEMARK ASSIGNMENT</u>

THIS TRADEMARK ASSIGNMENT ("<u>Trademark Assignment</u>") is made and entered into as of [_____] [____], 2019 (the "<u>Effective Date</u>"), by and between Specialty Retail Shops Holding Corp., a Delaware corporation (the "<u>Company</u>"), and the Subsidiaries of the Company that are indicated on the signature pages attached hereto (together with the Company, "<u>Assignors</u>" and each individually, an "<u>Assignor</u>") and Shoptikal LLC, a Delaware limited liability company ("<u>Assignee</u>").

**WHEREAS**, Assignors and Assignee have entered into that certain Asset Purchase Agreement, dated as April 29, 2019 (the "<u>Purchase Agreement</u>"), pursuant to which Assignors have agreed to assign to Assignee the Marks (as defined below).

**NOW, THEREFORE**, in consideration of the premises and the mutual representations, warranties, covenants and agreements set forth in this Trademark Assignment, the parties agree as follows:

1.    Marks.

"<u>Marks</u>" means the trademark registrations and applications listed on Attachment A-1 hereto.

2.    Assignment.

Each Assignor hereby assigns, transfers, sells and conveys to Assignee all of its rights, title and interest throughout the world in and to the Marks, and the registrations and applications relating thereto, together with the goodwill associated with and symbolized by the Marks, and all rights, claims and privileges pertaining to the Marks, including, without limitation, the right to prosecute and maintain registrations and applications for any of the Marks, and the right to sue and recover damages for past, present and future infringement of any of the Marks.

3.    Purchase Agreement.

This Trademark Assignment is entered into pursuant to, and is governed by, the Purchase Agreement.  Nothing in this Trademark Assignment modifies the Purchase Agreement or changes the parties' respective rights or obligations thereunder.

4.    Disclaimer.

Assignors make no representations or warranties of any kind, express or implied, regarding the Marks, except as otherwise expressly set forth in the Purchase Agreement.

5.    Successors and Assigns.

This Trademark Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

6.      Counterparts.

This Trademark Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[*Remainder of Page Intentionally Left Blank*]

[Signature Page to Trademark Assignment]

**IN WITNESS WHEREOF**, Assignors and Assignee have caused this Trademark Assignment to be signed and executed by the undersigned officers thereunto duly authorized this ___ day of _____, 2019.

**PURCHASER**

**SHOPTIKAL LLC**

By: _____
Name:
Title:

**Final Form**

## CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF _____

                                                                    ss:

COUNTY OF _____


         On this ____ day of _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to within the instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of whom the individual acted, executed the instrument.


                                                   _____
                                                   Notary Signature and Seal

[Signature Page to Trademark Assignment]

**Final Form**

## <u>SELLERS</u>

**SPECIALTY RETAIL SHOPS HOLDING CORP.**

By: _____
Name:
Title:

**SHOPKO OPTICAL MANUFACTURING LLC**

By: _____
Name:
Title:

**SHOPKO STORES OPERATING CO., LLC.**

By: _____
Name:
Title:

**PAMIDA STORES OPERATING CO., LLC**

By: _____
Name:
Title:

**PAMIDA TRANSPORTATION, LLC**

By: _____
Name:
Title:

**PENN-DANIELS, LLC**

By: _____
Name:
Title:

**PLACE'S ASSOCIATES EXPANSION, LLC**

By: _____
Name:
Title:

[Signature Page to Trademark Assignment]

**RETAINED R/E SPE, LLC**

By: _____
Name:
Title:

**SHOPKO FINANCE, LLC**

By: _____
Name:
Title:

**SHOPKO GIFT CARD CO., LLC**

By: _____
Name:
Title:

**SHOPKO HOLDING COMPANY, LLC**

By: _____
Name:
Title:

**SHOPKO INSTITUTIONAL CARE SERVICES CO., LLC**

By: _____
Name:
Title:

**SHOPKO PROPERTIES, LLC**

By: _____
Name:
Title:

**SVS TRUCKING, LLC**

By: _____
Name:
Title:

[Signature Page to Trademark Assignment]

## CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF _____

                                        ss:

COUNTY OF _____


On this ___ day of _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to within the instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of whom the individual acted, executed the instrument.


_____
Notary Signature and Seal

[Signature Page to Trademark Assignment]

**Attachment A-1**

## Registered Trademarks

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| (PAMIDA) PAMIDA | SM | Registered | | 1,124,616 | 9/4/1979 |
| 7TH SENSE | TM | Registered | 87547377 | 5,571,806 | 9/25/2018 |
| A&I (design) | TM | Pending | 87386469 | | |
| A&I (with design) | TM | Registered | 87978610 | 5,597,650 | 10/30/2018 |
| A&I (with design) | TM | Registered | 87979065 | 5,634,675 | 12/18/2018 |
| A&I (word) | TM | Registered | 87978426 | 5,582,431 | 10/9/2018 |
| A&I (word) | TM | Registered | 87377825 | 5,633,553 | 12/18/2018 |
| Asher & Ivy | TM | Registered | 86456049 | 4,768,588 | 7/7/2015 |
| BAILEY'S PT. | TM | Registered | 87348598 | 5,509,393 | 7/3/2018 |
| BAILEY'S PT. | TM | Registered | | 3,921,778 | 2/22/2011 |
| CELEBRATE THE SEASON | TM | Pending | 87348590 | | |
| CELEBRATE THE SEASON | TM | Registered | 87977956 | 5,547,595 | 8/21/2018 |
| CELEBRATE THE SEASON | TM | Registered | 86748505 | 5,069,882 | 10/25/2016 |
| CLUB GRAND | TM | Pending | 87348770 | | |
| CLUB GRAND | TM | Registered | 87977185 | 5,460,860 | |
| CLUB GRAND | TM | Registered | 87978562 | 5,608,753 | 11/13/2018 |
| EERIE ALLEY | SM | Registered | | 3,008,257 | 10/25/2005 |
| ENERGY ZONE | TM | Registered | 87348751 | 5,607,747 | 11/13/2018 |
| ENERGY ZONE | TM | Registered | | 2,159,748 | 5/19/1998 |
| ENERGY ZONE | TM | Registered | 87977528 | 5,499,650 | 6/19/2018 |
| ENVISION STUDIO | TM | Registered | 87348690 | 5,649,914 | 1/8/2019 |
| ENVISION STUDIO | TM | Registered | 77759466 | 3,838,981 | 8/24/2010 |
| ENVISION STUDIO | TM | Registered | 87978060 | 5,547,607 | 8/21/2018 |
| EZ ENERGY ZONE | TM | Registered | 77/639,142 | 3,650,891 | 7/7/2009 |
| EZ ENERGY ZONE (WITH DESIGN) | TM | Registered | 87348718 | 5,318,819 | 10/24/2017 |
| GOURMETLIVING | TM | Registered | 85-975,728 | 4,057,731 | 11/15/2011 |

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| GOURMETLIVING | TM | Registered | 85013919 | 4,238,110 | 11/6/2012 |
| GREEN SODA | TM | Pending | 88041415 | | |
| GREEN SODA | TM | Registered | 76604075 | 3,109,799 | 6/27/2006 |
| HOMETOWN PANTRY | SM | Registered | 86317383 | 4,765,853 | 6/30/2015 |
| HOMETOWN VALUE | TM | Registered | 85628076 | 4704111 | 3/17/2015 |
| HOMETOWN VALUE | TM | Registered | 85979954 | 4,412,346 | 10/1/2013 |
| HOMETOWN VALUE | TM | Registered | 85902271 | 4,569,383 | 7/15/2014 |
| HOMETOWN VALUE | SM | Registered | | 2,012,231 | 10/29/1996 |
| HOMETOWN VALUE | TM | Pending | 87825664 | | |
| HOMETOWN VALUE | TM | Registered | 87978457 | 5,558,210 | 10/16/2018 |
| HOMETOWN VALUE | TM | Registered | 87211170 | 5,366,058 | 12/26/2017 |
| HOMETOWN VALUE (WITH DESIGN) | TM | Pending | 87348679 | | |
| HOMETOWN VALUE (WORD MARK) | TM | Registered | 87373248 | 5,675,846 | 02/23/1029 |
| HOMETOWN VALUE (WORD MARK) | TM | Registered | 87979912 | 5,526,448 | 7/24/2018 |
| HOTEL BY CLUB GRAND | TM | Registered | 87348783 | 5,591,068 | 10/23/2018 |
| HOTEL BY CLUB GRAND | TM | Registered | 87977184 | 5,460,859 | |
| NORTHCREST | TM | Pending | 88209058 | | |
| NORTHCREST | TM | Registered | 87977751 | 5,515,649 | 7/10/2018 |
| NORTHCREST | TM | Registered | 87348729 | 5,644,151 | 1/1/2019 |
| NORTHCREST | TM | Registered | | 2,274,947 | 8/31/1999 |
| NORTHCREST | TM | Registered | | 2,339,297 | 4/4/2000 |
| NORTHCREST | TM | Registered | | 1,820,673 | 2/8/1994 |
| NORTHCREST (WITH DESIGN) | TM | Registered | 87977826 | 5,526,424 | 7/24/2018 |
| NORTHCREST (WITH DESIGN) | TM | Registered | 87348709 | 5,622,150 | 1/1/2019 |
| NORTHCREST HOME | TM | Registered | 76,599,207 | 3,043,724 | 1/17/2006 |
| OUR CUSTOMERS COUNT | SM | Registered | 86728315 | 5,120,463 | 1/10/2017 |
| PEANUT & OLLIE | TM | Registered | | 3,644,550 | 6/23/2009 |
| PEANUT & OLLIE | TM | Registered | 87976665 | 5,439,892 | 4/3/2018 |

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| PEANUT & OLLIE | TM | Registered | | 3,832,839 | 8/10/2010 |
| PEANUT & OLLIE(DESIGN) | TM | Registered | | 3,644,548 | 6/23/2009 |
| Rewards Count | SM | Registered | 86727347 | 5,023,991 | 8/16/2016 |
| RX CARE SHOPKO | SM | Registered | 85/163,927 | 4,088,872 | 1/17/2012 |
| SHOPKO | TM | Registered | 77/639,130 | 3,650,890 | 7/7/2009 |
| SHOPKO | SM | Registered | | 1,408,068 | 9/2/1986 |
| SHOPKO | SM | Registered | 87269564 | 5,245,182 | 7/18/2017 |
| SHOPKO | TM | Registered | | 3,547,779 | 12/16/2008 |
| SHOPKO | TM | Registered | 87977467 | 5,504,975 | 6/26/2018 |
| SHOPKO (Liquor Store) | SM | Registered | | 1,847,974 | 8/2/1994 |
| SHOPKO (new logo) | SM | Registered | | 3,502,417 | 9/16/2008 |
| SHOPKO BUCKS | SM | Registered | 87271768 | 5,419,383 | 3/6/2018 |
| SHOPKO CASH | SM | Registered | 86727368 | 5,023,992 | 8/16/2016 |
| SHOPKO CASH GRAB | SM | Registered | 86304276 | 4,809,729 | 9/8/2015 |
| SHOPKO EXPRESS RX | SM | Registered | | 2,972,029 | 7/19/2005 |
| SHOPKO HOMETOWN | SM | Registered | | 3,988,889 | 7/5/2011 |
| SHOPKO MARKET | TM | Pending | 87418247 | | |
| SHOPKO PANTRY | SM | Registered | 87314838 | 5,325,735 | 10/31/2017 |
| SHOPKO REWARDS | SM | pending | 88000210 | | |
| SHOPKO THE STUFF THAT COUNTS | SM | Registered | 86658424 | 5,142,506 | 2/14/2017 |
| SHOPKO THE STUFF THAT COUNTS | SM | Registered | 86656776 | 5,105,881 | 12/20/2016 |
| SOFT SENSATIONS | TM | Registered | 77828990 | 3,784,156 | 5/4/2010 |
| SOFT SENSATIONS | TM | Registered | 74600116 | 2,016,241 | 11/12/1996 |
| STUDIO A | TM | Registered | | 3,004,765 | 10/4/2005 |
| STUDIO BY ENERGY ZONE (WITH DESIGN) | TM | Registered | 87041267 | 5,370,898 | 1/2/2018 |
| STUDIO BY ENERGY ZONE (WORD MARK) | TM | Registered | 87348539 | 5,329,923 | 1/30/2018 |
| STUDIO BY ENERGY ZONE (WORD MARK) | TM | Pending | 87693201 | | |
| THE STUFF THAT COUNTS | SM | Registered | 86656724 | 5004744 | 7/19/2016 |

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| THE TRIMMERRY | TM | Registered | | 2,088,944 | 8/19/1997 |
| THE TRIMMERRY | TM | Registered | | 2,145,515 | 3/17/1998 |
| TOSS & TURN | TM | Registered | 85627094 | 4,314,751 | 4/2/2013 |
| TREND.SPIRE | SM | Registered | 86976680 | 4,787,531 | 8/4/2015 |
| TRIMMERRY | TM | Registered | 87977719 | 5537405 | 8/7/2018 |
| TRIMMERRY | TM | Registered | 87348580 | 5,662,079 | 1/22/2019 |
| TRIMMERRY | TM | Registered | | 3,967,671 | 5/24/2011 |
| URBANOLOGY | TM | Registered | 87348559 | 5,623,334 | 12/4/2018 |
| URBANOLOGY | TM | Registered | 87977529 | 5,510,074 | 7/3/2018 |
| URBANOLOGY | TM | Registered | | 2,841,380 | 5/11/2004 |
| WILDPACK | TM | Registered | 87547554 | 5,596,802 | 10/30/2018 |
| WILLOW BAY | TM | Registered | | 1,841,376 | 6/21/1994 |
| WILLOW BAY | TM | Registered | 86306719 | 4671428 | 1/13/2015 |
| WONDERLIGHT PLUS | SM | Registered | | 2,611,538 | 8/27/2002 |
| WONDERLIGHT PLUS | TM | Registered | | 2,538,654 | 2/12/2002 |

# REGISTERED COPYRIGHT ASSIGNMENT

THIS REGISTERED COPYRIGHT ASSIGNMENT ("Registered Copyright Assignment") is made and entered into as of [_____] [____], 2019 (the "Effective Date"), by and between Specialty Retail Shops Holding Corp., a Delaware corporation (the "Company"), and the Subsidiaries of the Company that are indicated on the signature pages attached hereto (together with the Company, "Assignors" and each individually, an "Assignor") and Shoptikal LLC, a Delaware limited liability company ("Assignee").

**WHEREAS**, Assignors and Assignee have entered into an that certain Asset Purchase Agreement, dated as of April 29, 2019 (the "Purchase Agreement"), pursuant to which Assignors have agreed to assign to Assignee the Registered Copyrights (as defined below).

**NOW, THEREFORE**, in consideration of the premises and the mutual representations, warranties, covenants and agreements set forth in this Registered Copyright Assignment, the parties agree as follows:

1.      Registered Copyrights.

"Registered Copyrights" means the registered copyrights that are the subject of the registrations and applications listed on Attachment A-1 hereto.

2.      Assignment.

Each Assignor hereby assigns, transfers, sells and conveys to Assignee all of its rights, title and interest throughout the world in and to the Registered Copyrights, and the registrations and applications relating thereto, and all rights, claims and privileges pertaining to the Registered Copyrights, including, without limitation, the right to prosecute and maintain registrations and applications for any of the Registered Copyrights, and the right to sue and recover damages for past, present and future infringement of any of the Registered Copyrights.

3.      Purchase Agreement.

This Registered Copyright Assignment is entered into pursuant to, and is governed by, the Purchase Agreement.  Nothing in this Registered Copyright Assignment modifies the Purchase Agreement or changes the parties' respective rights or obligations thereunder.

4.      Disclaimer.

Assignors make no representations or warranties of any kind, express or implied, regarding the Registered Copyrights, except as otherwise expressly set forth in the Purchase Agreement.

5.      Successors and Assigns.

This Registered Copyright Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

6.      Counterparts.

This Registered Copyright Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF**, Assignors and Assignee have caused this Registered Copyright Assignment to be signed and executed by the undersigned officers thereunto duly authorized this ___ day of _____, 2019.

**PURCHASER**

**SHOPTIKAL LLC**

By: _____
Name:
Title:

[Signature Page to Registered Copyright Assignment]

## CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF _____

                                                  ss:

COUNTY OF _____

        On this ____ day of _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to within the instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of whom the individual acted, executed the instrument.

                                               _____

                                             Notary Signature and Seal

[Signature Page to Registered Copyright Assignment]

**SELLERS**

**SPECIALTY RETAIL SHOPS HOLDING CORP.**

By: _____
Name:
Title:

**SHOPKO OPTICAL MANUFACTURING LLC**

By: _____
Name:
Title:

**SHOPKO STORES OPERATING CO., LLC.**

By: _____
Name:
Title:

**PAMIDA STORES OPERATING CO., LLC**

By: _____
Name:
Title:

**PAMIDA TRANSPORTATION, LLC**

By: _____
Name:
Title:

**PENN-DANIELS, LLC**

By: _____
Name:
Title:

**PLACE'S ASSOCIATES EXPANSION, LLC**

By: _____
Name:
Title:

[Signature Page to Registered Copyright Assignment]

**RETAINED R/E SPE, LLC**

By:    _____
Name:
Title:


**SHOPKO FINANCE, LLC**

By:    _____
Name:
Title:


**SHOPKO GIFT CARD CO., LLC**

By:    _____
Name:
Title:


**SHOPKO HOLDING COMPANY, LLC**

By:    _____
Name:
Title:


**SHOPKO INSTITUTIONAL CARE SERVICES CO., LLC**

By:    _____
Name:
Title:


**SHOPKO PROPERTIES, LLC**

By:    _____
Name:
Title:


**SVS TRUCKING, LLC**

By:    _____
Name:
Title:


[Signature Page to Registered Copyright Assignment]

## CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF _____

ss:

COUNTY OF _____

       On this ____ day of _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to within the instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of whom the individual acted, executed the instrument.

_____
Notary Signature and Seal

[Signature Page to Registered Copyright Assignment]

**Attachment A-1**

**EXHIBIT D**

[Attached]

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064-TLS |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) AUTHORIZING THE SALE OF THE DEBTORS' OPTICAL BUSINESS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III) AUTHORIZING A SETTLEMENT OF CLAIMS AND CAUSES OF ACTION, (IV) GRANTING RELIEF RELATED TO THE WIND-DOWN OF THE DEBTORS' REMAINING OPERATIONS, AND (V) GRANTING RELATED RELIEF

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"):  (a) authorizing sale of the Acquired Assets (the "Transaction") free and clear of liens, claims, interests, and encumbrances (collectively, excluding Assumed Liabilities (as defined below), the "Interests") with any such Interests to attach to the proceeds thereof with the same validity and priority (under the Bankruptcy Code) as such Interests had immediately prior to the consummation of the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the *Debtors' Motion for Entry of an Order (I) Authorizing the Sale of the Debtors' Optical Business, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Authorizing a Settlement of Claims and Causes of Action (IV) Granting Relief Related to the Wind-Down of the Debtors' Remaining Operations, and (V) Granting Related Relief* [Docket No. 1020] (the "Motion"), the *Second Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and Its Debtor Affiliates* [Docket No. 570] (as may be modified, amended, or supplemented from time to time, the "Plan"); the purchase agreement attached hereto as **Exhibit A** (the "Bidder APA"); or the *Order (I) Establishing Bidding Procedures for the Plan Sponsors and (II) Granting Related Relief* [Docket No. 385]  (the "Bidding Procedures Order"), and the bidding procedures attached thereto (the "Bidding Procedures"), as applicable.

Transactions; (b) authorizing the assumption and assignment of certain executory contracts and

unexpired leases to the Winning Bidder; (c) authorizing a settlement of claims and causes of

action; (d) granting relief related to the wind-down of the Debtors' remaining operations; and (e)

granting related relief, all as more fully described in the Motion; and the Court having found that

it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and the Court having found that the Debtors provided due and proper notice

that is adequate and appropriate under the particular circumstances; and the Court having held a

hearing to consider the relief requested in the Motion and any objections or other responses to

the relief requested therein (the "Hearing") at which time all interested parties were offered an

opportunity to be heard with respect to the Motion; and upon consideration of the record of the

Hearing, and all proceedings had before the Court, the arguments of counsel made, and the

evidence proffered and adduced, at the Hearing; and it appearing that due notice of the Motion

and the form of this Order has been provided; and the Court having found and determined that

the relief sought in the Motion relating to the Transaction is in the best interests of the Debtors'

estates, their creditors, and other parties in interest, and that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before the Court; and any objections or other responses to the relief

requested herein having been withdrawn, resolved, or overruled on the merits; and after due

deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND THAT**:

      A.     The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to

this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings

of fact constitute conclusions of law, they are adopted as such.  To the extent any of the

following conclusions of law constitute findings of fact, they are adopted as such.

B.    The statutory and other legal predicates for the relief sought in the Motion

are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006,

and 9019 and Local Rules 6004-1 and 9019-1.

C.    A fair and reasonable opportunity to object to and to be heard with respect

to the Motion, the Transaction, and the relief requested in the Motion relating to the Transaction

has been given, as required by the Bankruptcy Code and the Bankruptcy Rules, to all Persons[3]

entitled to notice, including the following: (a) all parties who have requested notice in these

chapter 11 cases pursuant to Bankruptcy Rule 2002; (b) all known holders of liens,

encumbrances, and other claims secured by the Acquired Assets; and (c) counterparties to

Assumed Contracts ("Contract Counterparties"). Notice of the Motion is sufficient notice of the

Bidder APA and no other notice is required.

D.    The Debtors have demonstrated good, sufficient, and sound business

purposes and justifications for this Court to grant the relief requested in the Motion relating to

the Transaction (specifically, as set forth in and pursuant to the Bidder APA attached hereto as

**Exhibit A**) and such other relief as is expressly set forth herein.  The Debtors' entry into and

performance under the Bidder APA: (a) constitutes a sound and reasonable exercise of the

Debtors' business judgment and are in the best interests of the Debtors, their estates, their

creditors, and all other parties in interest; (b) provides value to and are beneficial to the Debtors'

---

[3]    "Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or any other entity, including any governmental authority (meaning any federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity) or any group of any of the foregoing.

estates, and are in the best interests of the Debtors and their stakeholders; and (c) is reasonable and appropriate under the circumstances.  Business justifications for the Transactions include the following:  (a) the Bidder APA constitutes the highest and best offer received for the Acquired Assets; (b) the Bidder APA presents the best opportunity to maximize the value of the Acquired Assets; (c) unless the Transaction and all of the other transactions contemplated by the Bidder APA is concluded expeditiously, as provided for pursuant to the Bidder APA, recoveries to creditors may be materially diminished; and (d) the value of the Debtors' estates will be maximized through sale of the Acquired Assets pursuant to the Bidder APA.

   E. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  To the extent any inconsistency arises between this Order and the Bidder APA, this Order shall control.

   F. The Debtors and their advisors (i) engaged in a robust and extensive marketing and sale process, and (ii) conducted a fair and open sale process.  The sale process and the Bidding Procedures were non-collusive, duly noticed, pursued diligently and in good faith, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.  The total consideration provided by the Winning Bidder, upon the terms and conditions set forth in the Bidder APA (including the form and total consideration to be realized by the Debtors pursuant to the Bidder APA), is the highest and best offer received by the Debtors and constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value and reasonable market value for the Acquired Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the other laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

G.     Under the facts and circumstances of these chapter 11 cases, the purchase price for the Acquired Assets is fair and reasonable.

H.     The Bidder APA was proposed, negotiated, and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.

I.     The Winning Bidder is a purchaser in good faith with respect to the Acquired Assets, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  The Debtors were free to deal with any other party interested in buying the Acquired Assets on behalf of the Debtors' estates.  The Bidder APA and the transactions contemplated therein were negotiated, proposed, and entered into by the Debtors and the Winning Bidder in good faith, without collusion and from arm's-length bargaining positions.

J.     The Winning Bidder is not, and will not be, a mere continuation of, or successor to, and is not holding itself out as a mere continuation of, or successor to, the Debtors in any respect, and there is no continuity of enterprise between the Debtors or the Winning Bidder.  The Transactions do not amount to a consolidation, merger, or *de facto* merger of the Winning Bidder and the Debtors.   No Winning Bidder or any of its Affiliates[4] and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) and/or any Debtor's estate, including any obligation under any labor practice agreement, except as expressly provided in the Bidder APA or herein.

---

[4]    "Affiliate" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person, where "control" means the power, directly or indirectly, to direct or cause the direction of the management and policies of another Person, whether through the ownership of voting securities, by contract, or otherwise.

K.    The Transactions neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a liquidating plan of reorganization of the Debtors.  The Transactions do not constitute a *sub rosa* plan.

L.    The Agent for the Lenders has provided written consent for the disposition of the Acquired Assets to the Winning Bidder in accordance with this Order.

M.    The Debtors may sell the Acquired Assets free and clear of all Interests, including all liens (including, to the extent permitted under the Bankruptcy Code, those related to the so-called "bulk sales," "bulk transfer" and similar laws), claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights (including reclamation rights, rights of first refusal, rights of first offer, or consent rights), liabilities, judgments, servitudes, encumbrances, options, purchase options, mortgages, subleases, charges, hypothecations, indentures, security interests, security agreements, loan agreements, instruments, conditional sale or other title retention agreements, pledges, demands, offsets, recoupment, rights of recovery, decrees of any court or foreign or domestic governmental entity, and other interests of any kind or nature whatsoever against the Debtors or the Acquired Assets, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Acquired Assets, the operation of the Debtors' businesses before the Closing (throughout this Order, as defined in the Bidder APA), or the transfer of the Debtors' interests in

6

the Acquired Assets to the Winning Bidder, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Without limiting the generality of the foregoing, "Interests" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to: (a) any of the employee benefit plans, including any Interests related to unpaid contributions or current or potential withdrawal or termination liability; (b) the Worker Adjustment and Retraining Notification Act of 1988; or (c) any of the Debtors' current and former employees. For the avoidance of doubt, and without limitation, the interests identified on **Exhibit B** attached hereto constitute Interests and the Acquired Assets may be sold free and clear of such Interests.

N.      The total consideration provided by the Winning Bidder, upon the terms and conditions set forth in the Bidder APA (including the form and total consideration to be realized by the Debtors pursuant to the Bidder APA), reflects the Winning Bidder's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Acquired Assets free and clear of all Interests (including any potential derivative, vicarious, transferee, or successor liability claims) other than those liabilities expressly assumed under or pursuant to the Bidder APA (the "Assumed Liabilities").

O.      The assumption and assignment of the Assumed Contracts is integral to the Bidder APA, is in the best interests of the Debtors and their estates, and represents the reasonable exercise of the Debtors' sound business judgment. Specifically, the assumption and assignment of the Assumed Contracts (a) is necessary to sell the Acquired Assets to the Winning Bidder, (b) limits the losses suffered by Contract Counterparties, and (c) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assumed Contracts.

7

P.      Upon compliance with paragraph 32 of this Order, all the requirements of
sections 363 and 365 of the Bankruptcy Code have been met with respect to the sales of the
Acquired Assets and the assumption and assignment of the Assumed Contracts.    Upon
compliance with Paragraph 32, with respect to each of the Assumed Contracts, the Debtors will
have met all requirements of section 365(b) of the Bankruptcy Code.    Further, based on the
arguments and representations of counsel made, and the evidence proffered and adduced, at the
Hearing, the Winning Bidder has, subject to compliance with Paragraph 32, provided adequate
assurance of future performance under the Assumed Contracts, in satisfaction of sections 365(b)
and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not
waived by the Contract Counterparties.    Accordingly, upon compliance with Paragraph 32, the
Assumed Contracts may be assumed by the Debtors and assigned to the Winning Bidder as
provided for in the Bidder APA.

Q.      As of the Closing, the transfer of the Acquired Assets to the Winning
Bidder will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the
Winning Bidder with all right, title, and interest of the Debtors in, and to, the Acquired Assets,
free and clear of all Interests.

R.      The Debtors (a) have full corporate or limited liability company (as
applicable) power and authority to execute the Bidder APA and all other documents
contemplated thereby, and the Transactions have been duly and validly authorized by all
necessary corporate action of the Debtors, (b) have all of the corporate or limited liability
company (as applicable) power and authority necessary to consummate the transactions
contemplated by the Bidder APA, and (c) upon entry of this Order, other than any consents

8

identified in the Bidder APA (including with respect to antitrust matters), need no consent or approval from any other Person to consummate the Transaction.

       S.      The Transaction must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is of the essence in consummating the Transaction, and the Debtors and Winning Bidder intend to close the Transactions as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions as contemplated by the Bidder APA. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the transactions contemplated by this Order.

       T.      Based on the range of possible outcomes and the cost, delay, and uncertainty associated with further litigation, the Bidder APA, including any settlement of claims against the Debtors or causes of action held by the Debtors contained therein, is fair, well within the range of reasonableness, and cost-effective, and approval of the Bidder APA, including any settlement of claims against the Debtors or causes of action held by the Debtors contained therein, is warranted.

       U.      The Bidder APA, including any settlement of claims against the Debtors or causes of action held by the Debtors contained therein, should be approved.

       V.      The legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS ORDERED THAT:**

9

1.      The relief requested in the Motion relating to the Transaction is granted solely as set forth herein, and nothing herein shall be considered approval of the Sale Budget (as such term is used in the Motion).

2.      Any responses or objections to, or reservations of rights regarding, the entry of this Order or the relief granted herein or requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.  All holders of Interests or other persons and entities that failed to timely object, or withdrew their objections, to the Motion or this Order are deemed to consent to the relief granted herein for all purposes, including pursuant to sections 363(f)(2) of the Bankruptcy Code.

3.      Each holder of any Interest against the Debtors, their estates, or the Acquired Assets: (a) has, subject to the terms and conditions of this Order, consented to the Transaction or is deemed to have consented to the Transaction; (b) could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such Interest; or (c) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.

4.      Notice of the Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

5.      The Bidder APA and the ancillary documents thereto and the consummation thereof, and the Transaction itself shall not be avoided under section 363(n) or chapter 5 of the Bankruptcy Code.  The consideration provided by the Winning Bidder under the Bidder APA is fair and reasonable.  Neither the Debtors nor the Winning Bidder have engaged in

any conduct that would cause or permit the Bidder APA to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

6.      The Bidder APA, any schedules or exhibits thereto, and all transactions contemplated therein, including any assignment and assumption of any Assumed Contract (subject to compliance with paragraph 32 of this Order) and any settlement of claims against the Debtors or causes of action held by the Debtors contemplated therein, and all of the terms and conditions thereof, are hereby approved pursuant to sections 363 and 105(a) of the Bankruptcy Code and in accordance with Bankruptcy Rule 9019 and are incorporated herein by reference, and the Debtors are authorized to take any and all actions necessary or appropriate to consummate the Bidder APA.  The failure specifically to include any particular provision of a Bidder APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidder APA, including any assignment and assumption of any Assumed Contract contemplated therein, be authorized and approved in its entirety.

7.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized to execute, deliver and perform their obligations under and comply with the terms of the Bidder APA and to consummate the Transaction, pursuant to, and in accordance with, the terms and conditions of the Bidder APA and this Order.  The provisions of this Order shall be self-executing, and neither the Debtors nor the Winning Bidder shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

8.      The Debtors, their Affiliates and their respective officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and

11

implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Bidder APA and to take all further actions as may be: (a) reasonably requested by the Winning Bidder for the purpose of assigning, transferring, granting, conveying, and conferring to the Winning Bidder, or reducing to possession, the Acquired Assets; or (b) necessary or appropriate to the performance of the obligations contemplated by the Bidder APA, all without further order of the Court.

9.     Other than the lessees under leases to be assumed and assigned as contemplated by the Bidder APA, all Persons that are currently, or are on or after the Closing, in possession of some or all of the assets of the Acquired Assets are hereby directed to surrender possession of such assets to the Winning Bidder as of the Closing or at such time as the Winning Bidder requests.

10.    Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept this Order and any and all other documents and instruments necessary and appropriate to consummate the transactions contemplated by the Bidder APA.

11.    Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of the Bidder APA (subject to compliance with paragraph 32 of this Order).  The Acquired Assets shall be transferred to the Winning Bidder (or its Affiliates), and upon the Closing, such transfers shall:  (a) be valid, legal, binding, and effective, (b) vest the Winning Bidder with all right, title, and interest of the Debtors (who are presently the sole and rightful owners of the Acquired Assets) in the Acquired Assets, and (c) be free and clear of all Interests in accordance with

12

section 363(f) of the Bankruptcy Code, with all Interests that represent interests in property to

attach to the net proceeds of the Transaction, in the same amount and order of their priority, with

the same validity, force, and effect which they have against the Acquired Assets, and subject to

any claims and defenses the Debtors may possess with respect thereto, in each case immediately

before the Closing.

12.    Except as otherwise provided in the Bidder APA, all Persons (and their

respective successors and assigns) including all debtholders, equityholders, governmental, tax

and regulatory authorities, lenders, employees, former employees, pension plans, multiemployer

pension plans, labor unions, trade creditors, and any other creditors holding Interests against the

Debtors or the Acquired Assets, are hereby forever barred, estopped and permanently enjoined

from asserting or pursuing such Interests against the Winning Bidder, its Affiliates, successors or

assigns, their property or the Acquired Assets.

13.    This Order (a) shall be effective as a determination that, as of the Closing,

all Interests have been unconditionally released, discharged, and terminated as to the Winning

Bidder and the Acquired Assets, and that the conveyances and transfers described herein have

been effected, and (b) is and shall be binding upon and govern the acts of all Persons, including

all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of

state, federal and local officials and all other Persons who may be required by operation of law,

the duties of their office, or contract, to accept, file, register or otherwise record or release any

documents or instruments, or who may be required to report or insure any title or state of title in

or to any asset; and each of the foregoing Persons is hereby directed to accept for filing any and

all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Bidder APA.

14.     Following the Closing, no holder of any Interest shall interfere with the Winning Bidder's title to or use and enjoyment of the Acquired Assets based on or related to any such Interest or based on any actions the Debtors may take in these chapter 11 cases.

15.     Subject to compliance with Paragraph 32, The Debtors have met all requirements of sections 365(b) and 365(f) of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts to the Winning Bidder.  Each of the Assumed Contracts is an "executory contract" or "unexpired lease" within the meaning of section 365 of the Bankruptcy Code.

16.     Pursuant to sections 105, 363(b)(1), and 365(a) of the Bankruptcy Code, subject to compliance with Paragraph 32, the Debtors are hereby authorized to (a) assume and assign the Assumed Contracts to the Winning Bidder free and clear of all Interests; (b) enter into the Bidder APA with the Winning Bidder; and (c) execute and deliver to the Winning Bidder such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Winning Bidder as provided in the Bidder APA.

17.     Subject to compliance with Paragraph 32, The Winning Bidder, as applicable, has provided adequate assurance of their respective future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code.

18.     Upon the effective date of the assumption and assignment (the "Assignment Date") of the Assumed Contracts, the Winning Bidder shall be deemed to be substituted for the Debtors as a party to the Assumed Contracts and all documents related to the

Assumed Contracts.   Upon the Assignment Date, each of the Assumed Contracts, shall be deemed valid and binding, in good standing, in full force and effect in accordance with their terms, and the Winning Bidder shall be fully and irrevocably vested with all right, title, interest, and obligations of the Debtors as tenant or lessor, as applicable, accruing from and after the Assignment Date, under the Assumed Contracts.   Assumption of the Assumed Contracts by the Debtors is contingent upon the concurrent consummation of the assignment of the Assumed Contracts to the Winning Bidder.

19.   Upon the Assignment Date, except as may be provided in this Order, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved of all future liability under the Assumed Contracts for any breach occurring after the assumption and assignment thereof to the Winning Bidder.

20.   Effective on the Assignment Date, (a) the assumption of the Assumed Contracts and the Assumed Liabilities by the Winning Bidder constitutes a legal, valid, effective, complete and absolute sale, conveyance and transfer from the Debtors to the Winning Bidder of the Assumed Contracts and the Assumed Liabilities, including liabilities arising under the Assumed Contracts and (b) the Debtors shall have no liability to Winning Bidder, any governmental agency, surety or any other person for any liabilities with respect to the Assumed Contracts and such Assumed Liabilities *except* any liabilities associated with the Acquired Assets (arising before the Closing) including, without limitation, any other existing indebtedness or encumbrances, any federal, state, or local tax liabilities, any obligations pursuant to any collective bargaining agreements.

21.     Further, it is the Parties' express intention that the Transactions be, and be treated for all purposes, as an absolute sale, conveyance and transfer of all prospective liabilities relating to, in connection with or arising under the Assumed Contracts and Assumed Liabilities.

22.     The Debtors are hereby authorized to take all actions necessary to implement and effectuate the terms of this Order and the relief granted pursuant to this Order, the Transaction, and the Bidder APA.

23.     This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

24.     Pursuant to section 363(m) of the Bankruptcy Code, the Winning Bidder shall be, and hereby is, deemed to have purchased the Acquired Assets in good faith.  The transactions contemplated by the Bidder APA are undertaken by the Winning Bidder in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the Winning Bidder is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code and the reversal or modification on appeal of the authorization provided herein of the Transaction shall neither affect the validity of the Transaction nor the transfer of the Acquired Assets to the Winning Bidder (or its Affiliates), free and clear of Interests.

25.     To the extent any of the deadlines set forth in this Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Order shall govern.

26.     Notwithstanding the applicability, or the possible applicability, of Bankruptcy Rules 4001, 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Order shall not be stayed in any respect and shall be immediately effective and enforceable upon its entry.  This Order constitutes a final order upon which the Debtors and the Winning Bidder are entitled to rely.

16

27.    The terms and provisions of the Bidder APA and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, their estates and their creditors (whether known or unknown), the Winning Bidder, and their respective Affiliates, successors and assigns, and any affected third parties, including all Persons asserting an Interest in the Acquired Assets (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, receiver, party, entity, or other fiduciary under any chapter of the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, or any trustee, examiner or receiver, party, entity, or other fiduciary.   The provisions of this Order and the terms and provisions of the Bidder APA, and any actions taken pursuant hereto or thereto as of the date of the entry of such Order shall survive the entry of any order that may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Bidder APA, as well as the rights and interests granted pursuant to this Order and Bidder APA shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

28.    In the event that there is any conflict or derogation between the terms of this Order and the terms of (a) the Bidder APA, or (b) any other order of this Court other than the DIP Orders, the terms of this Order shall control.   Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, or any order confirming such plan, or any other

17

order in these chapter 11 cases (including any order approving the wind-down or dismissal of these chapter 11 cases or any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from the provisions of the Bidder APA or the terms of this Order.  This Order shall survive any dismissal of any of these chapter 11 cases.

29.    The Bidder APA, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that (a) the Agent consents to any such modification, amendment or supplement, such consent not to be unreasonably withheld, and (b) any such modification, amendment or supplement does not materially change the terms of the Bidder APA or any related agreements, documents, or other instruments.

30.    Notwithstanding anything to the contrary in this Order, the Bidder APA or any related agreements, documents, or other instruments, or otherwise, (a) all cash proceeds of the Transaction, in an aggregate amount to be not less than the greater of (i) $6,500,000, inclusive of the Deposit (as such term is defined in the Bidder APA), and (ii) the amount equal to sum of the Cash Payment (as defined in the Bidder APA) *minus* any amount permitted to be escrowed pursuant to Section 2.3(f) of the Bidder APA  *plus* the Deposit (the greater of such amounts (i) and (ii), the "Cash Purchase Price"), shall be paid at the time of Closing into an account (the "Lender Account") designated by Agent and Lenders (as defined in the DIP Orders); *provided further* that, at the time of Closing, Debtors shall pay the Deposit into the Lender Account, and all such cash proceeds of the Transaction shall be for application against and the indefeasible payment of outstanding Obligations owing by the Debtors to Agent and

18

Lenders (as defined in the DIP Orders), in accordance with the DIP Orders and Section 6.4 of the

Loan Agreement, until such time as all such obligations have been fully repaid and satisfied in

full in accordance with the terms and conditions of the DIP Orders, the Loan Agreement and the

other Financing Agreements; (b) the Liens of Agent and Lenders on the Acquired Assets shall

not terminate and shall continue to secure all Obligations (as defined in the DIP Orders) until the

earlier to occur of (i) receipt of the Cash Purchase Price in the Lender Account, and (ii) Agent's

written confirmation that the Liens of Agent and Lenders on the Acquired Assets have been

released; *provided* that (X) the Liens of Agent and Lenders shall attach to the Debtors' interest in

any funds escrowed pursuant to Section 2.3(f) of the Bidder APA (the "Accounts Receivable

Escrow"), (Y) the funds deposited in the Accounts Receivable Escrow shall not be disbursed

without the consent of Agent or further order of this Court, and (Z)  Winning Bidder and

Debtors, to the extent the amount of the Accounts Receivable Escrow is determined to exceed

the Accounts Receivable Deficiency Amount ("Excess Escrow Amount"), shall transfer or cause

to be transferred all funds from the Accounts Receivable Escrow to the Lender Account in an

amount equal to the Excess Escrow Amount without setoff, recoupment, or deduction of any

kind whatsoever; and (c) to the extent of any conflict between (i) the terms of this Order, the

Bidder APA or any related agreements, documents, or other instruments and (ii) the terms of the

DIP Orders, the terms of the DIP Orders shall control, *provided, however* that this Order shall

control as to the release and termination of Liens on the Acquired Assets upon receipt of the

Cash Purchase Price in the Lender Account as provided for in (b) hereof.

      31.    The following settlement provisions contained in the Bidder APA are

hereby approved: (A) the Parties reserve their rights with respect to (i) Landlord's asserted

administrative claim for "stub rent," (ii) whether Sellers must pay currently under Section

365(d)(3) of the Bankruptcy Code all items of "Rent" as defined in the Master Leases, including

real property taxes, "Impositions," liens, utilities, insurance and common area charges under

each of the Master Leases, for the period from the petition date to the surrender of premises, and

(iii) whether such amounts are administrative priority claims; (B) Landlord waives any right to

assert that, based on the non-severability of the Master Leases, the Sellers must pay 100% of all

items of "Rent" as defined in the Master Leases, that come due and owing under the Master

Leases until Debtors surrender 100% of the "Premises" as defined in each Master Lease and,

upon closing, Landlord shall withdraw the portion of any pleading that made such an assertion,

with prejudice; (C) the Landlord's administrative priority claim for base rent amounts that come

due during the chapter 11 cases for each location that Sellers have not surrendered shall be

allowed as an administrative claim and timely paid pursuant to Section 365(d)(3) of the

Bankruptcy Code (for the avoidance of doubt, if the Closing occurs and the Debtors surrender an

individual location to Landlord, the Debtors shall not be responsible for paying any items of

"Rent" as defined in the Master Lease, relating to such location that first comes due after the date

of such surrender); and (D) if the Closing occurs, the Landlord's allowed administrative priority

claims shall be reduced by $1,000,000.

       32.    All provisions in this Order relating to the assumption and assignment of

any Assumed Contract shall be subject to this Paragraph 32 and Paragraph 33 hereof.  No later

than five (5) days following entry of this Order, the Debtors, with the cooperation of the Winning

Bidder, shall file a notice of Assumed Contracts ("the Assumed Contract Notice"), which shall

include the Debtors' proposed cure amounts for the applicable Assumed Contracts, and serve the

notice on the applicable Contract Counterparties and their counsel, if known, via

email.  Following the filing of the Assumed Contract Notice, if a Contract Counterparty requests

20

adequate assurance of future performance information of the Winning Bidder or any assignee (the "Adequate Assurance"), the Debtors, with the cooperation of the Winning Bidder, shall provide Adequate Assurance to such party and their counsel, if known, via-email within 24 hours after such request. For the avoidance of doubt, any Contract Counterparty that filed an objection or joinder to objection to the Motion shall be deemed to have requested Adequate Assurance. Any Contract Counterparty that wishes to object to the assumption and assignment of any Assumed Contract, including with respect to the proposed Adequate Assurance and/or cure amounts (each a "Adequate Assurance/Cure Objection"), must file its Adequate Assurance/Cure Objection within seven (7) days after the filing of the Assumed Contract Notice. If there is no objection with respect to a particular Assumed Contract, such Assumed Contract shall be assumed and assigned with full effect of all provisions in this Order relating to Assumed Contracts. If a party objects to the assumption and assignment of a particular Assumed Contract, including the proposed cure amounts, such objection shall be heard on a date as soon as the Court has availability following five (5) days after the objection deadline has passed, or such other times as agreed between the applicable parties or otherwise ordered by this Court. The Winning Bidder shall have standing to and be entitled to pursue determination of the cure amount at any such hearing. If the parties are able to consensually resolve an objection prior to an adjudication of the dispute, the applicable Contract Counterparty shall withdraw its objection, and assumption and assignment of such Assumed Contract, along with the applicable relief in this Order, shall be granted without further order from this Court, unless the objecting party requests that a further order be entered approving the assumption and assignment. If, pursuant to final order of the Court, the cure amount for any Assumed Contract shall be established to be in excess of the amount provided on the Assumed Contract Notice, Winning Bidder shall have five

21

(5) business days to remove such contract from the list of Assumed Contracts pursuant to the Bidder APA. Following such removal, all liabilities under such contract shall be Excluded Liabilities. At the Winning Bidder's election, and sole cost and expense, the Debtors shall use reasonable efforts to further assume and assign additional unexpired leases or executory contracts that the Debtors have not already rejected, including by filing one or more amendments to the Assumed Contract Notice, pursuant to this Paragraph 32 or further motion to the Court.

33.     Notwithstanding anything in the Motion, the Bidder APA, any document related thereto, or in this Order, all Contract Counterparties' rights with respect to all issues that may be or have been asserted in an Adequate Assurance/Cure Objection are fully reserved until such issues are resolved or determined pursuant to the procedures set forth in Paragraph 32. For the avoidance of doubt, until ruled upon by a final order, all timely filed objections of Contract Counterparties to the assumption and assignment of any Assumed Contract and joinders to objections to the Motion and all reservations of rights therein are fully preserved and shall be treated in accordance with paragraph 32 of this Order, and no finding of fact, conclusion of law, or other provision of this Order (other than issued in accordance with paragraph 32 of this Order) shall apply, be binding upon any Contract Counterparty, be law of the case, or operate to preclude or collaterally estop any issue with respect to the assumption and assignment or conditions of the assumption and assignment of any Assumed Contract of the Debtors, including without limitation, the Debtors', Winning Bidder's, or any assignee's obligations in connection with same. Notwithstanding anything in the Motion, the Bidder APA, any document related thereto, or this Order, nothing herein shall authorize, absent further order of the Court or written consent of the applicable Objecting Landlords,[5] the sale of any Objectors' Leases[6] free and clear

---

[5]    "Objecting Landlords" shall mean, collectively, IREIT West Bend Main, L.L.C; SFI Limited Partnership 1000's; Capview Income & Value Fund IV, LP; Brixmor SPE 1, LLC and Brixmor Operating Partnership L.P.

of non-monetary interests, covenants, or rights, in each case that run with the land subject to the lease or limit or condition the permitted use of the leased property, including easements, covenants, licenses, or permits.

34.     Notwithstanding anything in the Motion, any notice related thereto, or this Order to the contrary, none of the Cigna Contracts, as defined in the *Objection of Cigna to Debtors' Motion for Entry of an Order (I) Authorizing the Sale of the Debtors Optical Business, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Authorizing a Settlement of Claims and Causes of Action, (IV) Granting Related Relief Related to the Wind-Down of the Debtors Remaining Operations, and (V) Granting Related Relief* [Docket No. 1070], shall be assumed and assigned pursuant to this Order.

35.     Notwithstanding anything to the contrary in the Houlihan Lokey Capital, Inc. ("Houlihan") engagement letter (the "Engagement Letter") or the order approving their retention [Docket No. 184], the transaction fee due from Sellers to Houlihan upon consummation of the sale of the Acquired Assets to the Winning Bidder shall be $300,000.

36.     This Court shall retain jurisdiction (to the greatest extent allowed by applicable law) with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order, the Bidder APA, all amendments thereto, and any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Order or the Bidder APA (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

---

6   The "Objectors' Leases" shall mean the Debtors' unexpired leases for the following properties:  10996 N Port Washington Road, Mequon, WI; 1745 South Main St., West Bend, WI; 1001 State Highway 15 S. Fairmont, MN; 127 1450 E. Geneva Street Delavan, WI; 102 2741 Roosevelt Road Marinette, WI; 100 S 66th St., Lincoln, NE 68510

.

Omaha, Nebraska
Dated: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Bidder APA**

**Exhibit B**

**Listed Interests**

| Party | Interest |
|-------|----------|
| Lenders party to the Credit Agreement | • Any security interest in, a lien upon, or a right of set off against the Acquired Assets pursuant to, and as described more fully in, that certain Third Amended and Restated Loan and Security Agreement, dated as of February 7, 2012 (as amended, including by that certain Ratification and Amendment Agreement, dated as of January 16, 2019, the "Credit Agreement"). |

**EXHIBIT E**

[Attached]

# LIMITED GUARANTEE

This Limited Guarantee, dated as of April 29, 2019 (this "<u>Limited Guarantee</u>"), by Monarch Capital Partners IV LP, a Delaware limited partnership, Monarch Capital Partners IV Offshore LP, a Cayman Islands limited partnership, Monarch Capital Partners IV-A LP, a Delaware limited partnership and MCP Holdings Ltd, a Cayman Islands exempted company (each, a "<u>Guarantor</u>" and, collectively, the "<u>Guarantors</u>"), in favor of Specialty Retail Shops Holding Corp., a Delaware corporation (the "<u>Guaranteed Party</u>").  This Limited Guarantee is entered into in connection with that certain Asset Purchase Agreement, dated the date hereof (the "<u>Purchase Agreement</u>") by and among Shoptikal LLC, a Delaware limited liability company ("<u>Purchaser</u>"), the Guaranteed Party and the other Sellers party thereto.  Capitalized terms used herein but not defined shall have the respective meanings ascribed thereto in the Purchase Agreement.

1.     <u>GUARANTEE</u>.  To induce the Guaranteed Party to enter into the Asset Purchase Agreement, each Guarantor hereby absolutely, unconditionally and irrevocably guarantees (as primary obligor and not merely as a surety) to the Guaranteed Party, on a several and joint basis and on the terms and conditions set forth herein, the due and punctual payment of Purchaser's payment obligation of the Closing Date Payment pursuant to <u>Section 2.1(b)</u> of the Purchase Agreement (the "<u>Obligation</u>") to the extent that such Obligation comes due under the terms of the Purchase Agreement.  The maximum aggregate liability of the Guarantors in respect of the Obligation shall not exceed $8,075,000 (the "<u>Cap</u>"), and the Guaranteed Party hereby agrees that in no event shall this Limited Guarantee be enforced against a Guarantor for any amount in excess of the Cap in respect of the Obligation and that this Limited Guarantee may not be enforced without giving effect to the Cap.  It is acknowledged and agreed that this Limited Guarantee will expire and will have no further force or effect in accordance with the terms of <u>Section 9</u> of this Limited Guarantee. Notwithstanding anything to the contrary contained in this Limited Guarantee, the Guaranteed Party hereby agrees that to the extent Purchaser is relieved of all or any portion of the Obligation by satisfaction thereof (whether by Purchaser or any Guarantor) or pursuant to any agreement with the Guaranteed Party, the Guarantors shall be similarly relieved, to such extent, of their obligations under this Limited Guarantee. The Guaranteed Party, on behalf of itself and the other Sellers, hereby agrees that (a) the Guarantors shall in no event collectively be required to pay an amount in aggregate that is more than the Cap or make any payment (other than payment of the Obligation) pursuant to this Limited Guarantee, (b) that no Guarantor or Non-Recourse Party (as hereinafter defined) shall have any obligation or liability to any Person relating to, arising out of or in connection with, this Limited Guarantee (other than for the Obligation), (c) that no Guarantor or Non-Recourse Party is assuming any other obligations or liabilities of any other Person, whether under the Purchase Agreement or otherwise (including any liability or obligation of Purchaser in respect of the Assumed Liabilities), other than the Obligation, and (d) that this Limited Guarantee may not be enforced against the Guarantors without giving effect to these limitations and the conditions set forth in <u>Section 2</u> of this Limited Guarantee (with it being understood and agreed that such limitations are an integral part of each Guarantor executing and delivering this Limited Guarantee and no Guarantor would have delivered this Limited Guarantee if such limitations were not given full force and effect).

2.    CONDITIONS.  The obligation of each Guarantor to pay the Guaranteed Party the Obligation is subject to the following conditions:  (a) subject to Section 7.4 of the Purchase Agreement, the satisfaction (or waiver by Purchaser) of all conditions precedent set forth in Sections 7.1 and 7.2 of the Purchase Agreement to Purchaser's obligations to consummate the Closing (other than those conditions that are by their terms to be satisfied at the Closing, but subject to such conditions being capable of being satisfied); and (b) the substantially simultaneous consummation of the Closing in accordance with the terms of the Purchase Agreement.

3.    NATURE OF GUARANTEE.  The Guaranteed Party shall not be obligated to file any claim relating to the Obligation in the event that Purchaser becomes subject to a bankruptcy, reorganization or similar proceeding, and the failure of the Guaranteed Party to so file shall not affect the Guarantors' obligations hereunder.  In the event that any payment to the Guaranteed Party in respect of the Obligation is rescinded or must otherwise be returned for any reason whatsoever, each Guarantor shall remain liable hereunder with respect to the Obligation (subject to the Cap) as if such payment had not been made.  This is an unconditional guarantee of payment and not of collection.  Each Guarantor reserves the right to assert defenses which Purchaser may have to payment of the Obligation that arise under the terms of the Purchase Agreement. For the avoidance of doubt, no amendment to the Purchase Agreement shall impose any additional or enhanced liability against any Guarantor beyond the terms of this Limited Guarantee without the express written consent of such Guarantor, and all references to the Purchase Agreement shall be deemed references to the Purchase Agreement as it is in force on the date hereof, without giving effect to any future amendments. In furtherance of the foregoing, each Guarantor acknowledges that its liability hereunder shall extend to the full amount of the Obligation (subject to the Cap), and that the Guaranteed Party may, in its sole discretion, bring and prosecute a separate action or actions against each Guarantor to enforce this Limited Guarantee.

4.    CHANGES IN OBLIGATIONS, CERTAIN WAIVERS.  Each Guarantor agrees that the Guaranteed Party may at any time and from time to time, without notice to or further consent of such Guarantor, extend the time of payment of the Obligation, and may also make any agreement with Purchaser or any Person liable with respect to the Obligation for the extension, renewal, payment, compromise, discharge or release thereof, in whole or in part, without in any way impairing or affecting such Guarantor's obligations under this Limited Guarantee. Each Guarantor agrees that the obligations of such Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by, and each Guarantor hereby expressly waives to the fullest extent permitted by applicable Law any defense now or in the future arising by reason of, any of the following: (a) the failure of the Guaranteed Party to assert any claim or demand or to enforce any right or remedy against Purchaser or any other Person liable with respect to the Obligation; (b) any change in the time, place or manner of payment of the Obligation or any rescission, waiver, compromise, consolidation or other amendment or modification of any of the terms or provisions of the Purchase Agreement made in accordance with the terms thereof or any other agreement evidencing, securing or otherwise executed in connection with the Obligation (so long as such changes do not have the effect of increasing the Cap); (c) any change in the corporate existence, structure or ownership of Purchaser or any other Person liable with respect to the Obligation; (d) any insolvency, bankruptcy, reorganization or other similar proceeding affecting Purchaser or any other Person liable with respect to the

2

Obligation; (e) the existence of any right of set-off which such Guarantor may have at any time against Purchaser or the Guaranteed Party, whether in connection with the Obligation or otherwise; or (f) the adequacy of any other means the Guaranteed Party may have of obtaining payment of the Obligation.  To the fullest extent permitted by law, each Guarantor hereby expressly waives any and all rights or defenses arising by reason of any law which would otherwise require any election of remedies by the Guaranteed Party. Each Guarantor waives promptness, diligence, notice of the acceptance of this Limited Guarantee of the Obligation, presentment, demand for payment, notice of non-performance, default, dishonor and protest, notice of the incurrence of the Obligation and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshalling of assets of Purchaser or any other Person liable with respect to the Obligation, and all suretyship defenses generally (other than fraud and willful misconduct by the Guaranteed Party or any of its Affiliates, any defenses to the payment of the Obligation that are available to Purchaser under the Purchase Agreement or breach by the Guaranteed Party of this Limited Guarantee, each of which are retained by such Guarantor). Each Guarantor acknowledges that it will receive substantial direct and indirect benefits from the transactions contemplated by the Purchase Agreement and that the waivers set forth in this Limited Guarantee are knowingly made in contemplation of such benefits.

Each Guarantor hereby unconditionally and irrevocably waives, and agrees not to exercise, any rights that it may now have or hereafter acquire against Purchaser or any other Person liable with respect to the Obligation that arise from the existence, payment, performance, or enforcement of such Guarantor's obligation under or in respect of this Limited Guarantee or any other agreement in connection therewith, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of the Guaranteed Party against Purchaser or such other Person, whether or not such claim, remedy or right arises at law or equity or under contract, statute or common law, including, without limitation, the right to take or receive from Purchaser or such other Person, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim, remedy or right, unless and until the Obligation and all other amounts payable under this Limited Guarantee shall have been paid in full in cash.  If any amount shall be paid to a Guarantor in violation of the immediately preceding sentence at any time prior to the payment in full in cash of the Obligation and all other amounts payable under this Limited Guarantee, such amount shall be received and held in trust for the benefit of the Guaranteed Party, shall be segregated from other property and funds of such Guarantor and shall forthwith be paid or delivered to the Guaranteed Party in the same form as so received (with any necessary endorsement or assignment) to be credited and applied to the Obligation and all other amounts payable under this Limited Guarantee, in accordance with the terms of the Purchase Agreement, whether matured or unmatured, or to be held as collateral for the Obligation or other amounts payable under this Limited Guarantee thereafter arising.

5.    NO WAIVER; CUMULATIVE RIGHTS.  No failure on the part of the Guaranteed Party to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Guaranteed Party of any right, remedy or power hereunder or under the Purchase Agreement or otherwise preclude any other or future exercise of any right, remedy or power hereunder.  Each and every right, remedy and power hereby granted to the Guaranteed Party shall be cumulative and not exclusive

3

of any other, and may be exercised by the Guaranteed Party at any time or from time to time. The Guaranteed Party shall not have any obligation to proceed at any time or in any manner against, or exhaust any or all of the Guaranteed Party's rights against Purchaser or any other Person prior to proceeding against any Guarantor hereunder; provided however that if the Guaranteed Party proceeds against any Guarantor it shall join Purchaser in any such action.

6.    <u>REPRESENTATIONS AND WARRANTIES</u>.  Each Guarantor hereby represents and warrants that:

(a)    the execution, delivery and performance of this Limited Guarantee have been duly authorized by all necessary action and do not contravene any provision of such Guarantor's charter, partnership agreement, operating agreement or similar organizational documents or any law, regulation, rule, decree, order, judgment or contractual restriction binding on such Guarantor or its assets;

(b)    all consents, approvals, authorizations, permits of, filings with and notifications to, any Governmental Body necessary for the due execution, delivery and performance of this Limited Guarantee by such Guarantor have been obtained or made and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any Governmental Body or regulatory body is required in connection with the execution, delivery or performance of this Limited Guarantee;

(c)    this Limited Guarantee constitutes a legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms, subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium or other similar laws affecting creditors' rights generally, and (ii) general equitable principles (whether considered in a proceeding in equity or at law);

(d)    it, together with the other Guarantors, are the only holders of equity interests of Purchaser; and

(e)    such Guarantor has the financial capacity to pay and perform its obligations under this Limited Guarantee, and all funds necessary for such Guarantor to discharge the Obligation (subject to the Cap) under this Limited Guarantee shall be available to such Guarantor for so long as this Limited Guarantee shall remain in effect in accordance with <u>Section 9</u> hereof.

7.    <u>NO ASSIGNMENT</u>.  No Guarantor nor the Guaranteed Party may assign its rights, interests or obligations hereunder to any other Person (except by operation of law) without the prior written consent of the Guaranteed Party (in the case of an assignment by a Guarantor) or the Guarantors (in the case of an assignment by the Guaranteed Party); <u>provided</u>, that (a) a Guarantor may assign all or a portion of its obligations hereunder to an Affiliate of such Guarantor or to an entity managed or advised by an Affiliate of such Guarantor; <u>provided</u>, <u>further</u>, that at the time of such assignment, the assignee (i) has immediately available funds or uncalled capital commitments to such Person, (ii) makes to the Guaranteed Party the representations and warranties set forth in <u>Section 6</u> above and (iii) certifies to the Guaranteed Party that it is capable of performing all of its obligations hereunder. No permitted assignment

shall relieve such Guarantor of any liability or obligation hereunder except to the extent actually performed or satisfied by the assignee and (b) any attempted assignment in violation of this <u>Section 7</u> shall be null and void and of no force or effect.

   8.  <u>NOTICES</u>.  All notices and other communications hereunder shall be in writing and shall be deemed duly given (a) on the date of delivery if delivered personally, or if by facsimile or e-mail, upon written confirmation of receipt by facsimile, e-mail or otherwise, (b) on the first Business Day following the date of dispatch if delivered utilizing a next-day service by a recognized next-day courier or (c) on the earlier of confirmed receipt or the fifth Business Day following the date of mailing if delivered by registered or certified mail, return receipt requested, postage prepaid.  All notices hereunder shall be delivered to the addresses set forth below, or pursuant to such other instructions as may be designated in writing by the party to receive such notice:

   (i)  if to the Guaranteed Party, to it at:

    Specialty Retail Shops Holding Corp.
    700 Pilgrim Way
    Green Bay, Wisconsin 54304
    Attention:  Russell Steinhorst, CEO
          Susan Buckna, General Counsel
    Facsimile:  (920) 429-7401
    Email:   russ.steinhorst@shopko.com
          susan.buckna@shopko.com

    with a copy (which shall not constitute notice) to:

    Willkie Farr & Gallagher LLP
    787 Seventh Avenue
    New York, New York 10019
    Attention:  Brian Lennon
          Claire E. James
    Facsimile:  (212) 728-9767
    Email:   BLennon@willkie.com
          CEJames@willkie.com

   (ii)  if to a Guarantor, to:

    c/o Monarch Alternative Capital LP
    535 Madison Avenue
    New York, NY 10022
    Attention:  General Counsel
    Facsimile:  (212) 554-1701
    E-mail:  Michael.kelly@monarchlp.com

    with a copy (which shall not constitute notice) to:

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
Attention:      Jeff Krause
                Benyamin Ross
Facsimile:      (213) 220-6258
Email:          JKrause@gibsondunn.com
                BRoss@gibsondunn.com

9.      CONTINUING GUARANTEE.  Unless terminated pursuant to this Section 9, this Limited Guarantee shall remain in full force and effect and shall be binding on each Guarantor, its successors and assigns until the Obligation is satisfied in full.  Notwithstanding the foregoing, this Limited Guarantee shall terminate (other than this Section 9 and Sections 10 through 16) and the Guarantors shall have no further obligations under this Limited Guarantee as of the earliest of (a) the receipt by the Guaranteed Party of the Obligation, or (b) the termination of the Purchase Agreement in accordance with its terms.

10.      LIMITED RECOURSE.

(a)      The Guaranteed Party acknowledges that the sole assets of Purchaser are cash in a *de minimis* amount, the Deposit, and its rights under the Purchase Agreement, and that no additional funds are expected to be contributed to Purchaser unless and until the Closing occurs.  Notwithstanding anything that may be expressed or implied in this Limited Guarantee, the Purchase Agreement or any document or instrument delivered contemporaneously herewith or therewith, and notwithstanding the fact that a Guarantor may be a partnership or limited liability company, the Guaranteed Party, by its acceptance of the benefits hereof, covenants, agrees and acknowledges that (i) no Person other than a Guarantor shall have any obligation (whether of an equitable, contractual, tort, statutory or other nature) hereunder, (ii) it shall have no rights of recovery against, and no recourse hereunder or under any documents or instruments delivered in connection herewith shall be had against, any former, current or future equityholders, controlling persons, directors, officers, employees, agents, general or limited partners, managers, management companies, members, stockholders, Affiliates or assignees of any Guarantor or Purchaser or any former, current or future equity holders, controlling persons, directors, officers, employees, agents, general or limited partners, managers, management companies, members, stockholders, Affiliates or assignees of any of the foregoing, or any former, current or future heirs, executors, administrators, trustees, successors or assigns of any of the foregoing (all of the foregoing collectively, but not including the Guarantors or Purchaser, the "Non-Recourse Parties"), or, other than in respect of the Retained Claims (as hereinafter defined), against a Guarantor or Purchaser, whether by or through attempted piercing of the corporate, partnership or limited liability company veil, by or through a claim by or on behalf of Purchaser against a Guarantor or any Non-Recourse Party, by the enforcement of any assessment or by any legal or equitable proceeding, or by virtue of any statute, regulation or other applicable law or otherwise and (iii) no personal liability whatsoever shall attach to, be imposed on or otherwise be incurred by any Non-Recourse Party as such for any obligations of a Guarantor under this Limited Guarantee or any documents or instruments delivered in connection herewith or in respect of any oral representations made or alleged to have been made in connection herewith or therewith or for any claim (whether at law or equity or in tort, contract or otherwise)

6

based on, in respect of, or by reason of such obligations or their creation.  The Guaranteed Party's rights under the Retained Claims shall be the sole and exclusive remedy of the Guaranteed Party and its Affiliates, Advisors and stockholders against Purchaser or any Guarantor or Non-Recourse Party in respect of any liabilities or obligations arising under, or in connection with, this Limited Guarantee, the Purchase Agreement, or the transactions contemplated hereby or thereby, including by piercing of the corporate veil or by a claim by or on behalf of Purchaser. For purposes of this Limited Guarantee, "Retained Claims" shall mean (A) claims against a Guarantor pursuant to, in accordance with and subject to the terms and conditions of this Limited Guarantee and (B) claims against Purchaser pursuant to, in accordance with and subject to the terms and conditions of the Purchase Agreement.

(b)     The Guaranteed Party hereby covenants and agrees that it shall not institute, directly or indirectly, and it shall cause its Affiliates and Advisors not to institute, any proceeding or bring any other claim arising under, or in connection with, this Limited Guarantee, the Purchase Agreement, or the transactions contemplated hereby or thereby, against any Non-Recourse Party or, other than Retained Claims, against any Guarantor or Purchaser.

(c)     The Guaranteed Party acknowledges that the Guarantors are agreeing to enter into this Limited Guarantee in reliance on the provisions set forth in this Section 10.

11.     GOVERNING LAW; WAIVER OF JURY TRIAL.

(a)     Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Limited Guarantee, and any Action that may be based upon, arise out of or relate to this Limited Guarantee or the negotiation, execution or performance of this Limited Guarantee or the transactions contemplated hereby will be governed by and construed in accordance with the internal Laws of the State of New York applicable to agreements executed and performed entirely within such State without regards to conflicts of law principles of the State of New York or any other jurisdiction that would cause the Laws of any jurisdiction other than the State of New York to apply.

(b)     EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS LIMITED GUARANTEE, THE DOCUMENTS AND AGREEMENTS CONTEMPLATED HEREBY AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND THEREFORE HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION BASED ON, ARISING OUT OF OR RELATED TO THIS LIMITED GUARANTEE, ANY DOCUMENT OR AGREEMENT CONTEMPLATED HEREBY OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.  EACH OF THE PARTIES AGREES AND CONSENTS THAT ANY SUCH ACTION WILL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT THE PARTIES TO THIS LIMITED GUARANTEE MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS LIMITED GUARANTEE WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THE IRREVOCABLE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.  EACH PARTY (I) CERTIFIES THAT NO ADVISOR OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT

SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO THIS LIMITED GUARANTEE BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

12.    <u>JURISDICTION AND EXCLUSIVE VENUE</u>.  Each of the parties irrevocably agrees that any Action that may be based upon, arising out of or related to this Limited Guarantee or the negotiation, execution or performance of this Limited Guarantee and the transactions contemplated hereby brought by any other party or its successors or assigns will be brought and determined only in (a) the Bankruptcy Court and any federal court to which an appeal from the Bankruptcy Court may be validly taken or (b) in the event the Bankruptcy Case is closed, or if the Bankruptcy Court is unwilling or unable to hear such Action, in the District Court for the Southern District of New York and any state court sitting in the State of New York to which an appeal from the District Court for the Southern District of New York may be validly taken (or, if the District Court for the Southern District of New York declines to accept jurisdiction over a particular matter, any state or federal court within the state of New York) ((a) and (b), the "<u>Chosen Courts</u>"), and each of the parties hereby irrevocably submits to the exclusive jurisdiction of the Chosen Courts for itself and with respect to its property, generally and unconditionally, with regard to any such Action arising out of or relating to this Limited Guarantee and the transactions contemplated hereby.  Each of the parties agrees not to commence any Action relating thereto except in the Chosen Courts, other than Actions in any court of competent jurisdiction to enforce any judgment, decree or award rendered by any Chosen Court, and no party will file a motion to dismiss any Action filed in a Chosen Court on any jurisdictional or venue-related grounds, including the doctrine of *forum non-conveniens*. The parties irrevocably agree that venue would be proper in any of the Chosen Courts, and hereby irrevocably waive any objection that any such court is an improper or inconvenient forum for the resolution of such Action.  Each of the Parties further irrevocably and unconditionally consents to service of process in the manner provided for notices in <u>Section 8</u>.  Nothing in this Limited Guarantee will affect the right of any party to this agreement to serve process in any other manner permitted by Law.

13.    <u>NO THIRD PARTY BENEFICIARIES</u>.  Nothing set forth in this Limited Guarantee shall confer or give or shall be construed to confer or give to any Person (including any Person acting in a representative capacity) other than the Guaranteed Party any rights or remedies against any Person including any Guarantor, except as expressly set forth herein; <u>provided</u> that each Non-Recourse Party is an intended third-party beneficiary of, and shall be entitled to enforce, those provisions set forth herein that are expressly for the benefit of any Non-Recourse Party, and all such provisions shall indefinitely survive any termination of this letter agreement.

14.    <u>COUNTERPARTS</u>.  This Limited Guarantee may be executed in counterparts, all of which shall be considered one and the same instrument and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other party.

15.    <u>NO PRESUMPTION AGAINST DRAFTING PARTY</u>.  Each of the parties hereto acknowledges that it has been represented by counsel in connection with this Limited

Guarantee and the transactions contemplated by this Limited Guarantee.  Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Limited Guarantee against the drafting party has no application and is expressly waived.

*The remainder of this page is intentionally left blank.*

IN WITNESS WHEREOF, each of the Guarantors and the Guaranteed Party have caused this Limited Guarantee to be executed as of the date first written above by its officer thereunto duly authorized.

**MONARCH CAPITAL PARTNERS IV LP**

By:  Monarch Alternative Capital LP, as investment manager

By:_____
   Name:
   Title:

**MONARCH CAPITAL PARTNERS IV OFFSHORE LP**

By:  Monarch Alternative Capital LP, as investment manager

By:_____
   Name:
   Title:

**MONARCH CAPITAL PARTNERS IV-A LP**

By:  Monarch Alternative Capital LP, as investment manager

By:_____
   Name:
   Title:

**MCP HOLDINGS LTD**

By:  Monarch Alternative Capital LP, as investment manager

By:_____
   Name:
   Title:

Accepted and Agreed to:

**SPECIALTY RETAIL SHOPS HOLDING CORP.**

By: _____
      Name:
      Title:

**Final Form**

_____

**SCHEDULES**

**TO**

**ASSET PURCHASE AGREEMENT**

**DATED AS OF APRIL 29, 2019**

**BY AND AMONG**

**SHOPTIKAL LLC, AS PURCHASER,**

**AND**

**SPECIALTY RETAIL SHOPS HOLDING CORP., AS THE COMPANY,**

**AND**

**THE OTHER SELLERS NAMED THEREIN**

_____

**<u>Table of Contents</u>**

Schedule 1.1(a)  Assigned Contracts ........................................................................................2

Schedule 1.1(g)  Registered Intellectual Property and Domain Names......................................29

Schedule 1.1(h)  Software, Computer Programs and Hardware ..................................................35

Schedule 1.2(i)  Excluded Rights, Claims and Causes of Actions .............................................36

Schedule 1.2(n)  Tangible Assets................................................................................................40

Schedule 3.3  Conflicts; Consents ..............................................................................................65

Schedule 3.4  Title to Properties .................................................................................................66

Schedule 3.5  Litigation ..............................................................................................................70

Schedule 3.6  Permits; Compliance with Laws; Healthcare Matters ..........................................71

Schedule 3.7(a)  Intellectual Property.........................................................................................72

Schedule 3.8(a)  Seller Plans ......................................................................................................73

Schedule 6.1  Conduct of Business of Sellers.............................................................................74

Schedule 6.3(b)  Leased Optometrists ........................................................................................75

Schedule 6.4  Regulatory Approvals ...........................................................................................76

Schedule 6.9  Master Store List ..................................................................................................77

Schedule 7.2(d)  Conditions Precedent .......................................................................................78

Schedule 11.1(h)  Assumed Post-Petition Leases .......................................................................79

Schedule 11.1(ll)  Permitted Encumbrances ...............................................................................80

These Schedules are furnished by Specialty Retail Shops Holding Corp., a Delaware corporation (the "Company") to Shoptikal LLC, a Delaware limited liability company ("Purchaser") pursuant to and as part of that certain Asset Purchase Agreement (the "Agreement"), dated as of April 29, 2019, by and among the Company, Purchaser, and the Subsidiaries of the Company that are indicated on the signature pages attached thereto. Capitalized terms used in the Schedules and not otherwise defined herein have the meanings given to them in the Agreement.

These Disclosure Schedules have been arranged for purposes of convenience in separately numbered sections corresponding to the sections of the Agreement; provided that each section of these Disclosure Schedules will be deemed to incorporate by reference all information disclosed in any other section of these Disclosure Schedules to the extent readily apparent on the face of such disclosure. Capitalized terms used in these Disclosure Schedules and not otherwise defined herein have the meanings given to them in the Agreement. The specification of any dollar amount or the inclusion of any item in these Disclosure Schedules is not intended to imply that the amounts, or higher or lower amounts, or the items so included, or other items, are or are not required to be disclosed (including whether such amounts or items are required to be disclosed as material or threatened) or are within or outside of the Ordinary Course or consistent with past practice, and no party will use the fact of the setting of the amounts or the fact of the inclusion of any item in these Disclosure Schedules in any dispute or controversy between the Parties as to whether any obligation, item or matter not set forth or included in these Disclosure Schedules is or is not required to be disclosed (including whether the amount or items are required to be disclosed as material or threatened) or are within or outside of the Ordinary Course. In addition, matters reflected in these Disclosure Schedules are not necessarily limited to matters required by the Agreement to be reflected in the Disclosure Schedules. Such additional matters are set forth for informational purposes only and do not necessarily include other matters of a similar nature. No information set forth in these Disclosure Schedules will be deemed to broaden in any way the scope of the parties' representations and warranties. Any description of any agreement, document, instrument, plan, arrangement or other item set forth on any Disclosure Schedule is a summary only and is qualified in its entirety by the terms of such agreement, document, instrument, plan, arrangement or item which terms will be deemed disclosed for all purposes of the Agreement. The information contained in these Disclosure Schedules is disclosed solely for purposes of the Agreement, and no information contained herein will be deemed to be an admission by any Party to any third party of any matter whatsoever, including any violation of Law or breach of contract. For purposes of clarity, this paragraph only applies to the Disclosure Schedules.

**Schedule 1.1(a)**

**Assigned Contracts**

<u>**Assigned Contracts**</u>
*Retention Agreements*

| First Name | Last Name | Retention Amount | Title | Committed End Date | Pay Dates | Notes |
|---|---|---|---|---|---|---|
| ███ | ███ | $5,040.00 | ████████ | 6/8/2019 | 5/1/2019 | paid in 2 equal installments |
| ███ | ███ | $4,875.00 | ████████ | 6/8/2019 | 5/1/2019 | paid in 2 equal installments |
| ███ | ███ | $4,425.00 | ████████ | 6/8/2019 | 5/1/2019 | paid in 2 equal installments |
| ████ | ███ | $7,305.00 | ████████ | 6/15/2019 | 5/1/2019 | paid in 2 equal installments |
| █ | ████ | $21,780.00 | ███████ | 6/15/2019 | 5/1/2019 | verbal offer & acceptance |
| ████ | ██ | $7,825.00 | ███████ | 8/3/2019 | 5/1/19 8/2/19 | verbal offer & acceptance |
| ████ | ████ | $7,644.00 | ███████ | 8/3/2019 | 5/1/19 8/2/19 | verbal offer & acceptance |
| ██ | ███ | $10,608.00 | ██████ ██ | 8/3/2019 | 5/1/19 8/2/19 | verbal offer & acceptance |
| ██ | ███ | $28,540.00 | ████████ | 8/3/2019 | 5/1/19 8/2/19 | verbal offer & acceptance |
| ███ | ███ | $15,000.00 | ██████ ████ | 2/1/2020 | | verbal offer & acceptance |
| ████ | ███ | $15,000.00 | ██████ ████ | 2/1/2010 | | verbal offer & acceptance |
| ███ | ████ | $15,000.00 | █████ █████ ████ | 2/1/2010 | | verbal offer & acceptance |
| ███ | | $10,000.00 | ██████ ███ | 2/1/2020 | | verbal offer & acceptance |
| ███████ | | $5,000.00 | ██████ ████ | 2/1/2020 | | verbal offer - not accepted yet |

| ▮▮ | ▮▮ | $5,000.00 | ▮▮▮ | 2/1/2020 | | verbal offer - not accepted yet |
|---|---|---|---|---|---|---|
| ▮▮▮ | ▮▮ | $5,000.00 | ▮▮▮ | 2/1/2020 | | |
| ▮▮▮ | ▮▮▮ | $5,000.00 | ▮▮▮ | 2/1/2020 | | |
| ▮▮ | ▮▮▮ | $5,040.00 | ▮▮▮ | 2/1/2020 | | |
| ▮ | ▮▮ | $4,875.00 | ▮▮▮ | 2/1/2020 | | |
| ▮▮▮ | ▮▮▮ | $4,425.00 | ▮▮▮ | 2/1/2020 | | |

The entering into of Retention Agreements through February 2020 with the following individuals has been agreed to conditional upon the occurrence of the Closing; it is expected that Purchaser will enter into Retention Agreements with these individuals directly:

- ▮▮▮▮▮ - $15,000
- ▮▮▮▮▮ - $15,000
- ▮▮▮▮▮ - $5,000

### *Suppliers/Service Providers*

| Contract Counterparty | Counterparty Address | Type of Contract | Cure Costs ($) |
|---|---|---|---|
| Allure Eyewear | 48 W 37st, New York, NY 10018 | Shopko Vendor Terms, including Allowance agreement dated January 1, 2015 | Optical frames | 8,777 |
| Altair Eyewear | 10875 Interbational Dr, Rancho Cordova, CA 95670 | Shopko Vendor Terms dated December 9, 2011 | Optical frames | 65,247 |
| Apex Print Technologies | 100 South Owasso Blvd West St. Paul, MN 55117 | Apex Print Technologies, LLC Statement Processing Services Agreement dated July 1, 2014 | Printing of optical customer statements and safety invoices | 3,088 |
| Art Optical Contact Lens | PO Box 1848, Grand Rapids, MI 49501 | Shopko Vendor Terms including Allowance agreement dated January 1, 2009 and September 10, 2013 | Optical Contact Lenses | 16,739 |
| Carl Zeiss Vision | 12121 Scripps Summit Dr, San Diego, CA 92131 | Primary Supplier Agreement dated September 28, 2010, including all addendum and amendments<br><br>Technology License and Distribution Agreement dated November 29, 2011, including all amendments | Optical Lens and technology Provider | 250,000 |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | Manufacture and Distribution Agreement dated August 1, 2011, including all amendments<br><br>Patent and Technology License Agreement dated August 1, 2011, including all amendments |  |  |
| Classic Optical Labs | 3710 Belmont Ave, Youngstown, OH 44505 | Shopko Vendor Terms dated August 15, 2013 | Optical Equipment | 1,749 |
| Eye Kraft Optical | 8 McLeland Rd, St. Cloud, MN 56303 | No agreement but needed as a lab for certain Medical Assistance plans |  | 37 |
| Fitphoto | Batiment Arizona A, 644 Voie l'Occitnae, Labege, France | Service Agreement dated December 13, 2012, including all amendments | Optical Fitting Box | 5,475 |
| Transperfect | 3 Park Ave, 40th floor, New York, NY 10016 | Agreement for Professional Services Remote Interpretation Services dated May 15, 2015 | Translation Services | - |
| Wisconsin Vision Assoc | 139 West Chestnut St, Burlington, WI 53105 | Independent Contractor Agreement dated April 6, 2013<br><br>Shopko Vendor Terms dated December 12, 2011 | Optical Contact lenses | 0 |
| EyeMed | Vice President, Managed Care EyeMed Vision Care 4000 Luxottica Place Mason, OH 45040-3024 | Eyemed Vision Care Professional Agreement dated December 8, 2004, including all addendum and amendments | Payor agreement/Insurance | 375,000 |
| Towers Clock Eye Center SC | 1807 W. Mason Street, Green Bay, WI 54303 | Services Agreement Between Shopko Stores Operating Co., LLC and Tower Clock Eye Center S.C. For Refractive Management dated June 1, 2014 | Co-management agreement | 0 |

## *Business Associate Agreements*

| BA Name | Address | City, State, Zip | Contact Person | Phone # | Effective Date | Revised 2013 HITECH AGMT Rec'd |
|---|---|---|---|---|---|---|
| Art Optical | 3175 3 Mile Road N.W. | Grand Rapids, MI 49501 | Ruth Knight | 616-559-5160 | 7/15/10 | 6/3/13 |
| Associated Bank, National Association | 200 N Adams Street | Green Bay, WI 54301 | Joseph Hockers |  | 8/13/09 | 6/17/13 |

| BA Name | Address | City, State, Zip | Contact Person | Phone # | Effective Date | Revised 2013 HITECH AGMT Rec'd |
|---|---|---|---|---|---|---|
| Carl Zeiss Vision Incorporated | 12121 Scripps Summit Drive, Suite 400 (Fax: 858-790-7590 (Sarah Kalaei-Legal Coordinator) | San Diego, CA 92131 | Cheryl Vescio | 630-842-5404 | 9/1/10 | 7/8/13 |
| Cherry Optical | 1640B Fire Lane Drive | Green Bay, WI 54311 | Adam Cherry | 920-469-2559 | 5/13/16 | 5/13/16 |
| Continental Sales Company | PO Box 50002 | Watsonville, CA 95077-5002 | President/Legal | 831-763-6931 (261) | 2/28/05 | 6/4/13 |
| DMI Studios | 1400 Lombardi Ave, Suite 30 | Green Bay, WI 54304 | Lisa Banker | 920-784-2983 | 12/4/12 | 6/5/13 |
| En-Vision America Inc. | 825 4th Street West | Palmetto, FL 34221 | David Raistrick | 309-452-3088 | 4/5/17 | 4/5/17 |
| Epic Labs | 125 4th St NE | WaitePark, MN 56387 | Jessie Arndt | 320-656-1473 | | 5/31/13 |
| Fujitsu America, Inc. | 2791 Telecom Parkway | Richardson, TX 75082 | Allen Wier | 972-479-6000 | 1/1/00 | |
| HCL America, Inc. | 330 Potrero Avenue | Sunnyvale, CA 94085 | Raghu Raman Lakshmanan | +1.408.733.0480 | 5/17/09 | 9/24/13 |
| IBM Corporation | 3001 W. Beltline Hwy | Madison, WI 53713 | Tom Cain | 317-432-2466 | 5/5/05 | |
| Jobson Medical Information LLC | 27 Danbury Road | Wilton, CT 06897 | Joe Savarese | 203-557-0840 | 6/30/14 | 6/30/14 |
| (LaserNet) Apex | 3170 Yeager Drive | Green Bay, WI 54311 | Jennifer Rief | 844-698-7728 | | |
| Mary Morgan | 1023 Main St | Green Bay, WI 54301 | Joseph Morgan | 920-437-0877 | 7/31/06 | 8/19/13 |
| Optifacts Inc. | 18 Riverside Avenue S #100 | Sartell, MN 56387 | Mike Filipovich | 800-678-4322 | 02/11/05 | 07/25/13 |
| Opticote | 140455 Seymour Ave | Franklin Park, IL 60131 | Donna | 800-248-6784 | 05/16/16 | 05/16/16 |
| OptumHealth Care Solutions Inc. | 6300 Olson Memorial Highway | Golden Valley, MN 55427 | Contracts Administration | n/a | 06/04/13 | |
| Pacific Interpreters Inc. | 707 SW Washington Suite 200 | Portland, OR 97205 | Kathy Peters | | 06/17/13 | 06/17/13 |
| Relay Health (optical) | 301 Data Ct. | Dubuque, IA 52003 | Robin Leib | 563-585-4329 | 06/30/14 | 06/30/14 |
| SDS | 306 S. Washington Suite 228 | Royal Oak, MI 48067 | John Chartres/ Sue Kaleita | 248-542-3130 | 03/08/05 | 01/16/14 |
| TransPerfect Remote Interpreting | 8440 S. Hardy Drive Suite 101 | Tempe, AZ 85284 | Nathan Strohkirch | 480-403-9365 | 07/21/15 | |
| Wisconsin Vision Associates | 139 West Chestnut Street | Burlington, WI 53105 | Chad Moder | 800-747-9000 (8170) | 10/21/2013 | 10/21/2013 |

## Managed Care Agreements

| Contract Counterparty | Address | City, State, Zip | Government Contract? |
|---|---|---|---|
| Allied Eyecare , LLC  dba Advantica Eyecare | 12399 Gravois Road | St. Louis, MO  63127 | Medicare Advantage |
| Asuris Northwest Health | PO Box 21267 | Seattle, WA 9811-3267 | |

| | | | |
|---|---|---|---|
| Avera Health Plans, Inc. DBA: DakotaCare | Attn: CEO 3816 S. Elmwwod Ave | Sioux Falls, SD 57105 | |
| Avesis Third Party Administrators, Inc | 10324 South Dolfield Road | Owings Mills, MY 21117 | |
| BLUE CROSS AND BLUE SHIELD OF NEBRASKA | PO BOX 3248 | Omaha, NE 68180 | |
| Blue Cross Blue Shield of Minnesota | R317 PO BOX 64560 | St. Paul, MN 55104-0560 | Medicare Advantage and Medicaid |
| Blue Cross Blue Shield of Montana | PO BOX 4309 | Helena, MT 59604 | |
| Blue Cross Blue Shield of Wisconsin DBA: Anthem Blue Cross and Blue Shield | N17 W24340 Riverwood Dr | Waukesha, WI 53188 | Medicare Advantage |
| Blue Cross BlueShield of  North Dakota | 4510 13th Avenue S | Fargo, ND 58121-0001 | |
| Blue Cross BlueShield of Illinois | 300 E. Randolph | Chicago, IL 60601 | |
| Blue Cross BlueShield of Michigan | 600 E Lafayette Blvd | Detroit, MI 48226-2998 | Medicare Advantage |
| Blue Cross of Idaho Health Service, Inc. (BCI) | PO BOX 7408 | Boise, ID 83707-1408 | |
| Cigna Health and Life Insurance Company (Provider Services Agreement) | 701 Fifth Avenue, Suite 4900 | Seattle, WA 98104 | |
| Coast to Coast Vision | 13748 Neutron Road | Dallas, TX 75244 | |
| Coventry Health Care of Nebraska Inc. | 15950 West Dodge Road | Omaha, NE 68118 | Medicare Advantage |
| Davis Vision Inc. | 159 Express Street | Plainview, NY 11803 | |
| Dean Health Plans, Inc. | 1277 Deming Way | Madison, WI 53717 | Medicare Advantage |
| DentaQuest of Illinois, LLC | 12121 N. Corporate Parkway | Mequen, WI 53092 | Medicaid |
| Employers Health Care Alliance Cooperative (The Alliance) | PO BOX 44365 | Madison, WI 53744-4365 | |
| Envolve Vision, Inc. | 1151 Falls Road Suite 200 | Rocky Mount, NC 27804 | Medicare Advantage and Medicaid |
| Eyecare Network / Patient Choice | 9801 Dupont Ave S, Ste 425 | Bloomington, MN 55431 | |
| EyeMed Vision Care, LLC | 4000 Luxottica Place | Cincinnati, OH 45040 | |
| First Choice Health Network | 600 University Street, Suite 1400 | Seattle, WA 98101 | |
| First Look Vision Network LLC (Always Vision ) | 7800 Office Park Blvd. PO BOX 98100 | Baton Rouge, LA 70898-9100 | |
| Group Health Cooperative of Eau Claire | PO BOX 3217 | Eau Claire, WI 54702-3217 | |
| Health Partners Inc. | PO BOX 1309 | Minneapolis, MN 5540-1309 | Medicaid |
| Heritage Vision Plans, Inc. | 18984 Livemois Ave Suite B | Detroit, MI 48221 | |

| | | | |
|---|---|---|---|
| Humana Vision( VCP ) | PO BOX 14313 | Lexington, KY 40512-4313 | |
| Kalispel Tribe of Indians | PO BOX 39 | USK, WA 99180 | Tribal Contract |
| March Vision Care Group INC. | 6701 Center Drive West, Suite 790 | Los Angeles, CA 90045 | Medicare Advantage and Medicaid |
| Medica Health Plans | 5601 Smetana Dr | Minneapolis, MN 55440-9310 | Medicare Advantage |
| MercyCare Insurance Company | PO BOX 2770 | Janesville, WI 53547-2270 | |
| MES Vision | PO BOX 25209 | Santa Ana, CA 92799 | |
| N.C.S.R.C.C. Health Fund Carpenters Health Fund | P O Box 4002 | Eau Claire, WI 54702 | |
| National Vision Administrator, LLC | PO BOX 2187 | Clifton, NJ 07015 | |
| Nebraska Dept of Health and Human Services DIV. of Behavioral Health Lincoln Regional Center | PO Box 94949 | Lincoln, NE 94949 | State Contract ( NE) |
| Network Health Plan | 1570 Midway Pl. | Menasha, WI 54952 | Medicare Advantage |
| North Central Health Assocation Inc | 1200 N. Mayfair Rd  Suite 100 | Milwaukee, WI 53226 | |
| North Dakota Vision Services, Inc. | 4510 13th Avenue S | Fargo, ND 58121 | |
| Northwest Administrators, INC  DBA: Northwest Benefits Network (NBN) | 2323 EASTLAKE AVE. E. | Seattle, WA 98102-3393 | |
| ODS Health Plan, INC | 601 S W. Second Ave | Portland, OR 97204-3156 | |
| Opticare of UT | 1901 W. Parkway Blvd. | Salt Lake City, UT  84119 | |
| Optilegra Inc. | PO BOX 91437 | Sioux Falls, SD 57109 | |
| Pacific Hospital Association, d.b.a Pacific Source Health Plans | PO BOX 7068 | Eugene, OR 97401-0068 | |
| Preferred One Administrative Services, Inc. | 6105 Golden Hills Drive | Golden Valley, MN 55416 | |
| PremeraFirst Inc. | PO BOX 327 | Seattle, WA  9811-0327 | |
| PrimeWest Health System | 305 8th Ave | Alexandria, MN 56308 | Medicaid |
| Regence BCBS of Oregon | PO BOX 1271 | Portland, OR 97207-1271 | Medicare Advantage |
| Regence BCBS WA | PO Box 21267 | Seattle, WA 9811-2367 | Medicare Advantage |
| Regence BlueShield of Idaho | PO BOX 1106 | Lewiston, ID 83501 | Medicare Advantage |
| Sandford Health Plan | PO Box 91110 | Sioux Falls, SD 57109-1110 | |
| Security Health Plan of Wisconsin, Inc. | P.O.Box 8000/ 1515 St. Joseph Ave | Marshfield, WI 54449 | Medicare Advantage and Medicaid |

| | | | |
|---|---|---|---|
| Select Health | 4646 West Lake Park Blvrd | Salt Lake City, UT  84120-8212 | |
| Spectera, Inc , its Subsidiaries | Liberty 6, Suite 200 | Columbia, MY 21045 | |
| Optum Health Vision | 6220 Old Dobbin Lane, Suite 200 | Columbia, MD 21045 | |
| SPWI TPA Inc. DBA: Quartz | 840 Carolina Street | Sauk City, WI 53583 | Medicaid |
| Superior Vision Insurance Plan of Wisconsin, Inc | 11101 White Rock Road | Rancho Cordova, CA 95670 | |
| Trillium | 1800 Millrace Drive | Eugene, OR 97403 | Medicare Advantage and Medicaid |
| Trilogy Health Solutions,  Inc. | 18000 W Sarah Ln #310 | Brookfield , WI 53045 | |
| UCare Minnesota | PO BOX 52 | Minneapolis , MN 5540-8551 | Medicare Advantage and Medicaid |
| United Health Care Insurance Company | 5757 Plaza Drive | Cypress, CA 90630 | Medicare Advantage |
| WEA Insurance Corporation | 45 Nob Hill Road | Madison , WI 53707 | |
| Wellmark Blue Cross and Blue Shield of Iowa | 1331 Grand Ave | Des Moines , IA 50309-2901 | Medicare Advantage |
| Wellmark Blue Cross and Blue Shield of South Dakota | Station 348, 1601 West Madison Street | Sioux Falls , SD 57104 | Medicare Advantage |
| WPS Health Plan, Inc. DBA:  Arise Health Plan | PO BOX 8190 | WI 53708-8190 | |

### *Safety Contracts and Accounts*

ShopKo has entered into Safety Contracts and has accounts with each of the following parties:

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| A M V A C Chemical | 410 SIMKPKIN LANE, PO BOX 150 | MARSING | ID | 83639 | 05/08/12 |
| A.C.E Building Service | 3510 S. 26th St, | Manitowoc | WI | 54220 | 11/30/17 |
| Aacer Flooring, Llc | 970 N OGDEN RD, PO BOX 151 | PESHTIGO | WI | 54157-1727 | 08/21/07 |
| Acco Nutting | 450 Pheasant Ridge Drive, | Watertown | SD | 57201 | 04/07/11 |
| Ad Tech | 110 S VOTECH DR, PO BOX 505 | WATERTOWN | WI | 53094 | 03/29/17 |
| Adams Thermal Systems | 47920 5th ST, | Canton | SD | 57013 | 02/01/08 |
| Advanced Barrier Extrusions LLC | 4390 Anderle Dr, | Rhinelander | WI | 54501 | 01/29/15 |
| Aero Industries Inc | 10308 S 144th St, | Omaha | NE | 68138 | 01/24/17 |
| Ag Processing Inc. | 1605 19TH ST SW, PO BOX 1068 | MASON CITY | IA | 50401 | 10/17/07 |
| Aggregate Machinery Inc. | 3575 BLOSSOM DR NE, P.O. Box 17160 | SALEM | OR | 97305-7160 | 10/02/07 |
| Agropur Wi | 3500 E. Destination Dr, | Appleton | WI | 54915 | 12/28/17 |
| Alamco Wood Products | 1410 W 9th St, | Albert Lea | MN | 56007 | 08/22/07 |
| Alkota Cleaning Systems | 105 Broad Street, P O Box 288 | Alcester | SD | 57001 | 01/08/19 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Alliant Castings | 1200 W Third Street, PO BOX 26 | Winona | MN | 55987 | 02/14/12 |
| Amalgamated Sugar Co. LLC | 105 E MAIN, PO BOX 1766 | NYSSA | OR | 97913 | 10/04/07 |
| Amcor Flexible | 2150 E LAKE COOK RD , SUITE 1200 | BUFFALO GROVE | IL | 60089 | 11/03/09 |
| American Aluminum | 5253 McCURRY RD, | ROSCOE | IL | 61073 | 05/15/17 |
| **AMERICAN GIRL BRANDS LLC** | 8400 FAIRWAY PLACE, PO BOX 609 | **MIDDLETON** | **WI** | **53719** | 10/22/08 |
| American West Analytical Lab | 463 WEST 3600 SOUTH, | SALT LAKE CITY | UT | 84115 | 07/23/08 |
| Amesbury Truth | 5001 W DELBRIDGE ST, | SIOUX FALLS | SD | 57107-8508 | 08/27/13 |
| Anchor Harvey | 600 W Lamm Rd, | Freeport | IL | 61032 | 06/14/18 |
| Anderson Machining Service Inc. | 211 Collins Rd, | Jefferson | WI | 53549 | 10/12/07 |
| Android Industries - Belvidere | 1222 Crosslink Pkwy, | Belvidere | IL | 61008 | 09/26/07 |
| **APPLIED MATERIALS** | 655 West Reserve Drive, | **KAILSPELL** | **MT** | **59901** | 09/26/07 |
| Appvion / A P D C | 825 E WISCONSIN AVE, PO Box 359 | APPLETON | WI | 54912-0359 | 11/17/11 |
| Appvion/ Corporate | 825 E WISCONSIN AVE, PO Box 359 | APPLETON | WI | 54912-0359 | 11/17/11 |
| Appvion/Plant | 825 E WISCONSIN AVE, PO Box 359 | APPLETON | WI | 54912-0359 | 11/17/11 |
| Arkema | 157 HWY AVE N, PO BOX 188 | BLOOMING PRAIRIE | MN | 55924 | 03/07/08 |
| Ash Grove Cement | 100 Hwy 518, | Clancy | MT | 59634 | 01/14/13 |
| Attune Foods | 2545 Prairie Road, | Eugene | OR | 97402 | 02/26/14 |
| Austin Utilities | 1908 14th St NE, | Austin | MN | 55912 | 12/13/07 |
| Avon Hi Life | 110 LINCOLN ST, PO BOX 9 | JOHNSON CREEK | WI | 53038 | 09/19/07 |
| B D Medical | 9450 S State St, | Sandy | UT | 84070 | 09/26/07 |
| B M C Aggregates (Basic) | 101 BMK DR, P O Box 2277 | Waterloo | IA | 50704 | 01/23/09 |
| Badger Foundry Company | 1058 E Mark St, | Winona | MN | 55987 | 03/28/18 |
| Badger Packaging | 2035 Stonebridge Rd, | West Bend | WI | 53095 | 02/06/14 |
| Badger State Ethanol  LLC | 820 W 17th ST, PO BOX 317 | Monroe | WI | 53566 | 10/02/07 |
| Baker Mfg. Company ,L L C | 133 Enterprise St, | Evansville | WI | 53536 | 11/09/18 |
| Ball Corporation | 105 E Blackhawk Dr, | Fort Atkinson | WI | 53538 | 01/26/18 |
| Ball Corporation | 600 BALL COURT, | De Forest | WI | 53532 | 03/29/11 |
| Baso Gas Products L L C | 1007 S 12TH ST, PO BOX 170 | Watertown | WI | 53094 | 09/27/07 |
| Battech Enterprises, LLC | 2725 19th St SE, PO Box 13114 | Salem | OR | 97309-3114 | 03/06/15 |
| Battelle | Attn: Bonnie Lehrman P7-08, P.O. Box 999 | Richland | WA | 99352 | 10/01/07 |
| Bauman Construction | 3644 130th ST, | Chippewa Falls | WI | 54729 | 08/16/07 |
| **BAY STATE MILLING COMPANY** | 55 FRANKLIN ST, | **WINONA** | **MN** | **55987** | 12/28/17 |
| Bay Valley Foods | 820 PALMYRA AVE, P.O. Box 19043 | Green Bay | WI | 54307 | 01/01/19 |
| Bcs Ais Us Llc | Attn: Accounts Payable, 5676 Industrial Park Rd | Winona | MN | 55987 | 10/09/07 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Becton Dickinson Vad | 605 North 5600 West, | Salt Lake City | UT | 84116 | 08/06/18 |
| Bell Laboratories | 3699 Kinsman Blvd, | **MADISON** | WI | 53704 | 08/10/07 |
| Beloit Box Board | 801 SECOND ST, PO BOX 386 | Beloit | WI | 53512-0386 | 10/06/10 |
| Berntsen Foundry | 2334 Pennsylvania Ave, | Madison | WI | 53704 | 09/25/07 |
| Best Bath Systems | 723 Garber St, | Caldwell | ID | 83605 | 08/03/17 |
| Blue Ribbon Tank | W 8124 HEMLOC RD, PO BOX | Beaver Dam | WI | 53916 | 11/16/07 |
| Blue Scope Buildings | Plant: Evansville Wi, Po Box 219056 | | | | 06/06/18 |
| Boise Cascade Bldg Materials L L C | 1240 South 29th St, | **BILLINGS** | **MT** | 64141 | 02/11/10 |
| **BOISE CITY SAFETY SERVICES** | 150 N. CAPITAL BLVD., PO BOX 500 | **BOISE** | **ID** | **83702** | 10/28/07 |
| Boise Packaging & Newsprint L L C | Attn: Erica, 2121 Madrona Ave S E | **BOISE** | **ID** | **83702** | 02/22/10 |
| Boise Paper Holdings Inc | 31831 W HWY 12, PO BOX 500 | **WALLULA** | **WA** | **99363** | 04/23/08 |
| **BOISE, INC.** | 1544 WEST 27TH, | **BURLEY** | **ID** | **83318** | 02/15/08 |
| Brickham Stamping Co., Inc. | 2916 ALGOMA BLVD, | **OSHKOSH** | **WI** | **54901** | 08/07/06 |
| Briese Iron Works, Inc. | 310 31ST NE, APT 208 | ROCHESTER | MN | 55906 | 07/26/11 |
| C B C Coating | 820 S OLD ONEIDA ST, | Appleton | WI | 54915 | 09/20/07 |
| C D Smith Construction | 888 E JOHNSON ST, | Fond Du Lac | WI | 54935 | 09/21/07 |
| C N H Industries | 511 E Main Street, | Saint Nazianz | WI | 54232 | 03/17/15 |
| C.M.D. Corporation | P.O. Box 1279, | Appleton | WI | 54912 | 10/20/07 |
| Cal Grinding Inc. | 1401 N 26th St, | Escanaba | MI | 49829 | 08/10/07 |
| Calumet Electronics | 25830 Depot Street, | Calumet | MI | 49913 | 10/11/07 |
| Calumet Electronics Corp. | 25830 Depot Street, | Calumet | MI | 49913 | 01/17/08 |
| Campbell Wrapper Corporation | 1415 Fortune Ave, | DePere | WI | 54115 | 09/26/07 |
| Carboline Co. | 614 Elizabeth St, | Green Bay | WI | 54302 | 01/14/15 |
| Carlisle Food Service Product | 402 S. Black River Street, | Sparta | WI | 54656 | 01/24/17 |
| Carnes Co. | 448 SOUTH MAIN ST, PO BOX 930040 | Verona | WI | 53593 | 03/05/08 |
| Cascade Tissue Group WI | 1200 Forest St, | Eau Claire | WI | 54703 | 01/15/08 |
| CDI, LLC | 305 Nerem Dr., | Forest City | IA | 50436 | 02/09/18 |
| Cerro Gordo County Engineer | 2716 S Federal Ave, | Mason City | IA | 50401 | 09/11/07 |
| Chapter 2 Inc. | 305 S. C P Avenue, Po Box 128 | Lake Mills | WI | 53551 | 02/15/12 |
| Charter Nex | 1710 N Industrial Dr, | Bloomer | WI | 54724 | 12/04/18 |
| Chem Design Products Inc. | 2 Stanton St, | Marinette | WI | 54143 | 12/20/11 |
| Chief Agr Industrial | PO Box 2078, | Grand Island | NE | 68802 | 11/07/18 |
| Chief Construction Co | 2107 S NORTH RD, | Grand Island | NE | 68802 | 11/07/18 |
| Chief Industries, Inc. | 3942 OLD W HIGHWAY 30, | Grand Island | NE | 68802 | 11/07/18 |
| Chromalox, Inc. | 103 GAMMA DR, | PITTSBURGH | PA | 15238 | 08/20/07 |
| City Of Austin | 500 4th Ave N E, | Austin | MN | 55912 | 12/28/07 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| City Of Beaver Dam | 205 S LINCOLN AVE, | BEAVER DAM | WI | 53916 | 05/23/08 |
| City Of Bellevue | 210 West Mission Ave, | Bellevue | NE | 68005 | 02/26/08 |
| City Of Blooming Prairie | 138 HIGHWAY 218 SOUTH, | BLOOMING PRAIRIE | MN | 55917 | 09/11/07 |
| City Of Boise-West Boise | 11818 Joplin Rd, | Boise | ID | 83714 | 11/19/07 |
| City Of Eau Claire | 203 S FARWELL ST, | EAU CLAIRE | WI | 54701 | 10/22/13 |
| City Of Idaho Falls | P.O. Box 50220, | Idaho Falls | ID | 83405 | 06/18/15 |
| City Of Nampa-Street Division | 106 West Railroad St, | Nampa | ID | 83687 | 03/07/16 |
| City Of Rochester | 201 4th ST SE, ROOM 295 | ROCHESTER | MN | 55904 | 10/02/07 |
| Coating Place Inc. | 200 PAOLI ST, | VERONA | WI | 53593 | 07/08/11 |
| Coilcraft Inc. | 1102 SILVER LAKE RD, | CARY | IL | 60013 | 08/14/17 |
| Colby Metal, Inc. | 701 INDUSTRIAL DR, | COLBY | WI | 54421 | 11/22/11 |
| Concentric Rockford Inc.(Haldex) | Accounts Payable, 2222 15th St | Rockford | IL | 61104 | 10/09/07 |
| Contact Rubber Corp | 8635 198th AVE, P.O. Box 97 | BRISTOL | WI | 53104 | 10/08/07 |
| Covia Corporation | N6082 US HWY 51, | PARDEEVILLE | WI | 53954 | 10/03/18 |
| Crane Engineering Sales Inc. | 707 Ford Street, | Kimberly | WI | 54136 | 12/29/10 |
| Crenlo Inc. | Mail Stop 88661, Po Box 413 | Two Harbors | MN | 55616 | 08/14/17 |
| Curries Company | 1502 12th ST N W, | MASON CITY | IA | 50401 | 10/16/07 |
| Curt G Joa, Inc | 100 CROCKER AVE, | Sheboygan Falls | WI | 53085 | 08/02/07 |
| Dairi Concepts | 832 E Arthur, | Bruce | WI | 54819 | 08/06/07 |
| Dairyland Laboratories, Inc | 217 E MAIN ST, | ARCADIA | WI | 54612 | 08/04/16 |
| Dakota Bodies | 601 Pheasant Ridge Drive, P.O. Box 1655 | Watertown | SD | 57201 | 04/09/10 |
| Dalco Metals Inc | 857 Walworth St, | Walworth | WI | 53184 | 09/25/18 |
| Danfoss Power Solutions | 580 N Henderson Rd, | Freeport | IL | 61032 | 01/24/17 |
| De La Rue Authentication Solutions | 1750 N 800 W, | Logan | UT | 84321 | 07/25/17 |
| De Pere Cabinet Inc | 1745 E Matthew, | DE PERE | WI | 54115 | 10/06/16 |
| Decor Products Inc. | 1201 DÉCOR DRIVE, | Wausaukee | WI | 54177 | 10/10/07 |
| Deschutes Brewery | 901 S W Simson Ave, | Bend | OR | 97702 | 09/21/07 |
| Deschutes County | 1300 N W Wall St, | Bend | OR | 97701 | 08/28/14 |
| Dickinson Homes, Inc. | 1500 WEST BREITUNG AVE, | KINGSFORD | MI | 49802-2245 | 08/03/07 |
| Dmg Inc | D/b/a Malloy Electric, 809 W Russell St | Sioux Falls | SD | 57104 | 03/14/14 |
| Dolco Packaging | 460 E. Swedesford Rd, Suite 3000 | Wayne | PA | 19087 | 01/03/08 |
| Domtar Paper Company LLC | Attn: Accounts Payable, 200 N Grand Ave | Rothschild | WI | 54474 | 09/28/07 |
| Donaldson Co. Inc | 815 W. Progress Dr, | Dixon | IL | 61021 | 09/25/17 |
| Donaldson Company, Inc. | 5200 COYE DR, | MINNEAPOLIS | MN | 54481 | 03/19/14 |
| Dowco, Inc | 4230 Clipper Dr, | Manitowoc | WI | 54220 | 08/04/18 |
| Dupont Industrial Biosciences | 2600 Kennedy Dr, | Beloit | WI | 53511 | 02/21/17 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Dura Automotive System | 301 S. Simmons St, | Stockton | IL | 61085 | 04/02/12 |
| Duteau Chevrolet | 7300 S. 27th St., | Lincoln | NE | 68331 | 11/28/12 |
| E.K. Machine Co Inc | 671 South Main St, | Fall River | WI | 53932 | 06/30/15 |
| Eck Industries, Inc. | 1602 NORTH 8th ST, | Manitowoc | WI | 54221 | 10/16/07 |
| Eckmann Pressed Metal | 5300 21st St., | Racine | WI | 53406 | 09/18/07 |
| Edgewood College | 1000 Edgewood College Dr., | Madison | WI | 53711 | 10/28/10 |
| Eggers Industries | 164 North Lake Street, | Neenah | WI | 54956 | 01/21/09 |
| Electrol Specialties Company | 441 Clark St, P.O. Box 7 | South Beloit | IL | 61080 | 08/08/17 |
| Elkay Manufacturing Company | 6400 Penn Avenue, | Savanna | IL | 61074 | 10/01/08 |
| Elston Manufacturing, Inc | 706 N Weber Ave, | Sioux Falls | SD | 57103 | 09/25/07 |
| Encapsys | 2515 Eisenhower Dr, | Appleton | WI | 54915 | 10/05/15 |
| Energy Northwest | P.O. Box 968, | Richland | WA | 99352 | 10/08/18 |
| Enerpac / Actuant | 720 W James St, | Columbus | WI | 53925 | 04/10/08 |
| Engel Metallurgical Ltd. | 925 INDUSTRIAL DR S, | SAUK RAPID | MN | 56379 | 07/25/12 |
| Enterprise Precast Concrete Inc | 13800 Giles Rd, | Omaha | NE | 68138 | 04/08/15 |
| Envigo RMS Inc | 1401 S STOUGHTON RD, | MADISON | WI | 53716 | 06/19/17 |
| Everbrite L L C | 401 S. Main St, | Pardeeville | WI | 53954 | 11/15/10 |
| Evonik Corporation | 900 S. Palm Street, | Janesville | WI | 53547 | 10/03/07 |
| Expera Specialty Solutions, Llc | 200 Main Ave, | DePere | WI | 54115 | 02/09/18 |
| Fabco Equipment | 1111 Applegate Rd, | Madison | WI | 53713 | 06/28/18 |
| Falcon Industries, Inc. | 901 Astro Blvd East, | Cosmos | MN | 56228 | 08/08/07 |
| Fall River Foundry | 670 South Main St, | Fall River | WI | 53932 | 06/14/11 |
| Fedco Electronics, Inc. | 1363 CAPITAL DR, | FOND DU LAC | WI | 54937 | 08/29/07 |
| Federal Foam Tech | 91 16th STREET SOUTH, | NORTHWOOD | IA | 50459 | 03/27/15 |
| Federal Tool & Engineering | N52 W5338 PORTLAND RD, | CEDARBURG | WI | 53012 | 10/16/07 |
| Fiberdome Inc. | 865 E Stoney Road, | Lake Mills | WI | 53551 | 10/26/11 |
| Fisher Barton Inc. | 201 FRODERICH ST, | WATERTOWN | WI | 53094 | 11/12/07 |
| Flakeboard America Limited | 50 N Danebo Ave, | Eugene | OR | 97402 | 05/16/12 |
| Flathead Electric Cooperative | 2510 U S Hwy 2 East, | Kalispell | MT | 59901 | 09/20/10 |
| FLSmidth USA Inc - Sioux City Oper. | 2607 DAKOTA AVE, | Sioux City | NE | 68776 | 10/15/07 |
| Fluor Industrial Services | 5215 WILEY POST WAY, SUITE 110 | SALT LAKE CITY | UT | 84116 | 01/13/16 |
| Fond Du Lac County | 160 SOUTH MACY STREET, | FOND DU LAC | WI | 54935 | 09/27/07 |
| Fondy Auto Electric | 765 Sullivan Drive, | Fond du Lac | WI | 54935 | 08/07/07 |
| Foremost Farms U S A | 1815 W SPENCER ST, | APPLETON | WI | 54912 | 03/25/08 |
| Formrite Companies | 408 Columbus St, | TWO RIVERS | WI | 54241 | 08/14/17 |
| Fosber America | 1333 Parkview Rd., | Green Bay. | WI | 54305 | 01/01/14 |
| Foth & Van Dyke, LLC | 2737 SOUTH RIDGE RD, | GREEN BAY | WI | 54307 | 01/12/12 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Franklin Fueling Systems | 3760 Marsh Rd, | Madison | WI | 53718 | 09/03/08 |
| Franklin Wire And Display, Inc. | 910 E Lincoln, | Belvidere | IL | 61008-2928 | 09/09/15 |
| Freeborn-Mower Cooperative Services | 2501 EAST MAIN ST, | ALBERT LEA | MN | 56007 | 05/02/12 |
| Futura Industries | BLDG HALL FREEPORT CENTER, PO BOX 160350 | CLEARFIELD | UT | 84106 | 10/10/07 |
| G S C Foundries | 2738 Commerce Way, | OGDEN | UT | 84401 | 11/29/07 |
| G.E. Healthcare / Datex Ohmeda | 3030 OHMEDA DR, | MADISON | WI | 53718 | 03/28/16 |
| G2 Paper | 1005 S Perkins St, | Appleton | WI | 54914 | 11/20/14 |
| G4S Regulated Security Solutions | 6610 Nuclear Rd, | Two Rivers | WI | 54241 | 11/12/16 |
| Galloway Company | 601 S COMMERCIAL ST, | NEENAH | WI | 54956 | 11/07/08 |
| Gamber-Johnson | 3001 Borham Ave, | Stevens Point | WI | 54481 | 09/25/07 |
| Gardner Manufacturing Co | 1301 W LAKE ST, | HORICON | WI | 53032 | 03/09/16 |
| Gauthier Industries, Inc. | 3105 N W 22nd St, | Rochester | MN | 55903 | 10/15/07 |
| Gem Buildings, Inc. | 1025 N Watery Lane, | Brigham City | UT | 84302 | 04/14/08 |
| General Mills / Green Giant | 915 E Pleasant St, | Belvidere | IL | 61008 | 06/08/15 |
| General Trailer Parts LLC | 1420 SO B STREET, | SPRINGFIELD | OR | 97477 | 05/24/12 |
| Geneva Rock Products | 1565 WEST 400 NORTH, | OREM | UT | 84057 | 10/01/07 |
| Genus A B S/ P I C | 1525 RIVER ROAD, | DE FOREST | WI | 53532 | 04/09/14 |
| Georgia Pacific Tech Center | 1915 MARATHON AVE, | NEENAH | WI | 54956 | 08/01/07 |
| Giddings & Lewis | 142 Doty Street, | Fond Du Lac | WI | 54935 | 09/20/07 |
| Glacial Lakes Energy L L C | 301 20TH AVE S E, | WATERTOWN | SD | 57201 | 02/06/15 |
| Glory Global Solutions | 705 S 12TH STREET, | WATERTOWN | WI | 53094 | 08/01/07 |
| Golden Grain Energy LLC | 1822 43rd STREET S W, | MASON CITY | IA | 50401 | 11/04/11 |
| Gordon Aluminum Industries Inc | 1000 MASON ST, | SCHOFIELD | WI | 54455 | 10/18/07 |
| Graham | 1502 12th ST N W, | MASON CITY | IA | 50401 | 10/16/07 |
| Graymont | N4520 County Road V, | Eden | WI | 53019 | 10/22/13 |
| Great Dane Trailers | 1200 N Centennial Road, | Wayne | NE | 68787 | 03/04/16 |
| Great Lakes Custom Tool Mfg | 101 N Old Peshtigo Rd, | Peshtigo | WI | 54157 | 08/07/18 |
| Great Northern Corp | 395 STROEBE RD, | APPLETON | WI | 54915 | 08/22/07 |
| Great Northern Corp | 1800 SOUTH ST, | RACINE | WI | 53404 | 07/29/13 |
| Great Northern Corp. | 421 Palmer St, | Chippewa Falls | WI | 54729 | 07/17/14 |
| Great Western Malting | 1666 KRAFT ROAD, | POCATELLO | ID | 83204 | 06/11/13 |
| Greater Omaha Packing Co. Inc. | 3001 "L" ST, | OMAHA | NE | 68107 | 02/19/15 |
| Grede | 801 S Carpenter Ave, | Kingsford | MI | 49802 | 02/03/15 |
| Green Bay Converting | 1001 FERNANDO DRIVE, | HOBART | WI | 54115 | 09/03/10 |
| Green Bay Packaging | Coated Products Division, 3250 S Ridge | Green Bay | WI | 54304 | 10/29/07 |
| Green Bay Packaging | Corporate Office, 1700 N Webster | Green Bay | WI | 54302 | 10/29/07 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Green Bay Packaging | Folding Carton Division, 2275 American Blvd | DePere | WI | 54115 | 10/29/07 |
| Green Bay Packaging - Mill Divison | 1601 N Quincy St, | Green Bay | WI | 54302 | 10/29/07 |
| Green Bay Packaging - Shipping Container Division | 831 RADISSON ST, | GREEN BAY | WI | 54302 | 01/09/13 |
| Green Bay Packaging Inc. | Attn: Wayne Georgia, P.O. Box 19017 | Green Bay | WI | 54307-9017 | 01/09/13 |
| H & K Contractors, Inc | , P O Box 51450 | Idaho Falls | ID | 83405 | 01/14/08 |
| H & K Tool And Die Inc | 5217 Coye Dr, | Stevens Point | WI | 54481 | 08/14/17 |
| H M Clause | 1832 Garrity Blvd, | Nampa | ID | 83687 | 06/19/17 |
| Hacco, Inc. | 110 Hopkins Dr, | Randolph | WI | 53956 | 03/21/13 |
| Hastings Irrigation Pipe Co | P.O. Box 728, | Hastings | NE | 68901 | 08/02/07 |
| Hayfield Window & Door | P. O. Box 25, | Hayfield | MN | 55940 | 12/03/14 |
| Hearth Technologies-Mt Pleasnt | 1915 W Saunders, | Mt Pleasant | IA | 52641 | 07/18/05 |
| Heartland Asphalt, Inc. | 2601 S Federal Ave, | Mason City | IA | 50401 | 10/15/07 |
| Hendrickson Trailer Suspension Syst | Attn: Steve Roth, 5701 Airport Rd | Mitchell | SD | 57301 | 01/12/12 |
| Heron Lake Bio Engery | 91246 390th Ave, | Heron Lake | MN | 56137 | 03/19/08 |
| Hexion Inc | 2522 S 24th Street, | Sheboygan | WI | 53081 | 11/30/07 |
| Hexion Speciality Chemicals Inc | 470 S 2nd St, | Springfield | OR | 97477 | 03/03/07 |
| Hiniker Company | P.O. Box 3407, | Mankato | MN | 56002-3407 | 08/01/14 |
| Hooper Corporation | 2030 Pennsylvania Ave, | Madison | WI | 53704 | 04/26/17 |
| Hoppe North America, Inc. | 205 E Blackhawk Dr, | Fort Atkinson | WI | 53538 | 10/15/07 |
| Horner Flooring Co. | P O Box 380, | Dollar Bay | MI | 49922 | 10/26/10 |
| Hub City Inc | Attn: Jodi, P O Box 1089 | Aberdeen | SD | 57401 | 01/15/08 |
| Hudapack Metal Treating | 979 Koopman Lane, | Elkhorn | WI | 53121 | 06/04/18 |
| Hudson-Sharp Machine Co. | 975 Lombardi Avenue, | Green Bay | WI | 54304 | 06/06/18 |
| Hufcor Inc. | Po Box 5591, | Janesville | WI | 53547-5591 | 08/29/07 |
| Hunter Douglas Fabrication | Attn: Camille Austin, 111 N. Apollo Rd | Salt Lake City | UT | 84116 | 11/14/07 |
| Hutchinson Technology Inc. | 40 W Highland Park Dr, | Hutchinson | MN | 55350 | 09/21/07 |
| Hydro Extrusion Usa, Llc | Attn Account Payable, P O Box 518 | Hazelton | PA | 18201-0518 | 02/10/15 |
| I M A Automation Usa Inc | 4608 Interstate Blvd, | Loves Park | IL | 61111 | 07/01/16 |
| I T W Shakeproof Group | W6331 Bee Rd, | Watertown | WI | 53098 | 09/21/18 |
| Idaho Army National Guard | Attn: Corbin Jones, 4110 W Guard St. Bldg 612 | Boise | ID | 83705-8049 | 02/17/11 |
| Industrial Combustion | 351 21st Street, | Monroe | WI | 53566 | 07/28/10 |
| Infinity Machine & Engineering | 2249 American Blvd, | De Pere | WI | 54115 | 09/09/15 |
| Inland | 2009 West Avenue South, | La Crosse | WI | 54601 | 05/07/18 |
| Innovative Technologies Corp | 201 Industrial Dr, | Horicon | WI | 53032 | 03/03/16 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Interior Systems Inc. | 525 W Rolling Meadows Dr, | Fond Du Lac | WI | 54936 | 10/02/07 |
| Intermountain Lift, Inc | P O Box 686, | Springville | UT | 84663 | 09/26/07 |
| International Paper | Attn: Gayle Heimsness, 1900 8th Street N E | Austin | MN | 55912 | 01/04/07 |
| International Paper | Attn: Lynn Komoroski, 2000 S. 18th | Manitowoc | WI | 54220 | 10/30/07 |
| International Paper | Attn: Ronda Ward, 801 42nd St | Springfield | OR | 97478 | 04/06/10 |
| International Paper | Salt Lake Recycling, 2590 West 1500 South | Salt Lake City | UT | 84104 | 04/15/08 |
| International Papers | Attn: Dee Butler, 1111 Fort St. | Omaha | NE | 68110 | 03/31/08 |
| Iowa Mold Tooling Co., Inc.-Garner | P.O. Box 189, | Garner | IA | 50438 | 12/08/17 |
| Iseli Company | P.O. Box 1060, | Walworth | WI | 53184 | 10/01/07 |
| J R Simplot Co | Zx Ranch, P O Box 7 | Paisley | OR | 97636 | 07/21/09 |
| J.J. Plank Corporation | 728 Watermark Ct, | Neenah | WI | 54956 | 06/08/10 |
| J.R. Simplot - Smoky Canyon | Attn: Accounts Payable, P.O. Box 9168 | Boise | ID | 83707 | 11/13/12 |
| J.R. Simplot Co | Attn: Curtis Nielson Pa-C, P.O. Box 912 | Pocatello | ID | 83204 | 04/14/10 |
| Jacob Leinenkugel Brewing Co | 1 Jefferson Ave, | Chippewa Falls | WI | 54729 | 03/01/17 |
| Johnson Controls | Attn: Accounts Payable, P.O. Box 210769 | Dallas | TX | 75211 | 09/20/07 |
| Johnson Crushers Inc | 86470 Franklin Blvd, | Eugene | OR | 97405 | 01/06/15 |
| Johnson Outdoors | 1531 Madison Ave, | Mankato | MN | 56001 | 02/04/16 |
| Jones Metal Products | 3201 3rd Ave, | Mankato | MN | 56001 | 10/22/18 |
| K & L Services, Inc. | 1101 De Clark St, | Beaver Dam | WI | 53916 | 01/08/10 |
| K I | , 1400 S. 41st Street | Manitowoc | WI | 54220 | 02/15/08 |
| K I | Attn: Andy Bushmaker, 1330 Bellevue St | Green Bay | WI | 54302 | 02/15/08 |
| Kaiser Aluminum | P.O. Box 1070, | Richland | WA | 99352 | 03/24/08 |
| Kapco, Inc. | Attn: Accounting, P O Box 227 | Grafton | WI | 53024 | 09/29/16 |
| Kapstone Paper And Packaging Corp | Twin Falls, Po Box 842159 | Boston | MA | 02284-2159 | 09/11/17 |
| Kapstone Paper And Packing Corp | Spanish Fork, Po Box 842159 | Boston | MA | 02284-2159 | 09/11/17 |
| Karavan Trailers | 100 Karavan Drive, | Fox Lake | WI | 53933 | 07/15/14 |
| Kay Dee L L C | 1919 Grand Ave, | Sioux City | IA | 51106 | 09/12/18 |
| Kenosha Steel Casting | 3303 66th Street, | Kenosha | WI | 53142 | 05/16/16 |
| Kerry Ingredients | 10202 Foremost Drive, | Rothschild | WI | 54474 | 10/09/18 |
| Keweenaw County Road Commission | P.O. Box 327, | Mohawk | MI | 49950 | 10/10/07 |
| Key Technology Inc. | 150 Avery St, | Walla Walla | WA | 99362 | 08/08/07 |
| Kikkoman Foods | P.O. Box 69 | Walworth | WI | 53184 | 10/05/07 |
| Kimberly Clark | 3120 Riverside Ave | Marinette | WI | 54143 | 09/21/15 |
| Kimberly Clark Cold Spring Facility | Attn: Kathleen Fischer, 1050 Cold Spring Road | Neenah | WI | 54956 | 10/07/07 |
| Kimberly Clark Corp N N F | Attn:karen Davis, 1111 Henry St | Neenah | WI | 54956 | 10/07/07 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Kimberly Clark Research & Dev | 1344 Constitution Dr | Neenah | WI | 54956 | 01/15/09 |
| Kirsh Foundry, Inc. | 125 Rowell St, | Beaver Dam | WI | 53916 | 05/06/16 |
| Klune Spanish Fork | C/o Aerospace Dynamics Accts Payable, 25540 Rye Canyon Road | Valencia | CA | 91355 | 01/24/17 |
| Kuhn North America | P O Box 167, | Brodhead | MN | 53520 | 01/02/10 |
| Kulp's Of Stratford L L C | Po Box 147, | Stratford | WI | 54484 | 08/16/11 |
| Kurth Sheet Metal Inc. | 4115 123rd St, | Chippewa Falls | WI | 54729 | 12/03/08 |
| Kusel Equipment Co. | 820 West St, | Watertown | WI | 53094-3608 | 09/20/07 |
| L.E. Jones | 1200 34th Street, | Menominee | MI | 49858 | 09/03/04 |
| Laforce Inc | 1060 W Mason St, | Green Bay | WI | 54303 | 08/22/17 |
| Lakes Precision Inc | , P O Box 630 | Three Lakes | WI | 54562 | 01/13/11 |
| Land O Lakes Purina Animal Nutritio | 101 South Marion Road, | Sioux Falls | SD | 57107 | 01/19/13 |
| Land O'Lakes Feed Plant | B4191 State Hwy 13 N, | Spencer | WI | 54479 | 04/14/12 |
| Larson Contracting, Inc. | P O Box 68, | Lake Mills | IA | 50450 | 08/13/07 |
| Lehigh Hanson,Inc-Mason City, Ia | S S C-A / P Cement, P O Box 660140 | Dallas | TX | 75266-0140 | 01/08/08 |
| Lester Electrical | 625 West A Street, | Lincoln | NE | 68522 | 09/20/07 |
| Liberty Safe | 1199 W. Ut Ave, | Payson | UT | 84651 | 01/11/13 |
| Lignotech Usa Inc | 100 Grand Ave, | Rothschild | WI | 54474 | 10/15/18 |
| Lincoln Industries | 67 Fifth St N E, | Pine Island | MN | 55963 | 10/06/17 |
| Lindsay Corporation | 214 E 2nd St, Po Box 156 | Lindsay | NE | 68644 | 01/05/15 |
| Linetec | 725 S 75th Ave, | Wausau | WI | 54401 | 09/25/07 |
| Little Rapids | P O Box 19031, | Green Bay | WI | 54307-9031 | 02/14/08 |
| Lloyd Flanders Ind. | 3010 10th Street, | Menominee | MI | 49858 | 12/17/15 |
| Loadmaster | P.O. Box 186, | Norway | MI | 49870 | 08/09/07 |
| M R S MaChining Inc. | P.O. Box 24, | August | WI | 54722 | 07/08/12 |
| M T U Onsite Energy Corp | Attn: Accounts Payable, P.O. Box 420 | Indianapolis | IN | 46206-0240 | 02/09/18 |
| Macksteel Warehouse Inc | 415 20th Ave Se, | Watertown | SD | 57201 | 12/01/17 |
| Manitowoc Ice | 2110 S 26th Street, | Manitowoc | WI | 54220 | 10/11/07 |
| Manitowoc Tool And Machining | 4211 Clipper Dr, | Manitowoc | WI | 54220 | 02/09/18 |
| Mankato Kasota Stone | Attn. Mary Johnson, PO Box 669 | Mankato | MN | 56002 | 06/12/08 |
| Maranatha | , 745 W Main St | Watertown | WI | 53094 | 02/18/08 |
| Marathon Electric Manufacturing | Attn: Jill Falkowski, 100 E Randolph St | Wausau | WI | 54401 | 10/02/07 |
| Marchant Schmidt Inc. | 24 W Larson Dr, | Fond Du Lac | WI | 54935 | 10/01/07 |
| Marion Body Works | P.O. Box 500, | Marion | WI | 54950 | 07/09/10 |
| Marquette Board Of Light & Power | , 2200 Wright St | Marquette | MI | 49855 | 05/15/08 |
| Mc Cain Foods U S A Inc | Vendor Invoice Remittance, P O Box 7005 | Troy | MI | 48007-7005 | 04/30/09 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Mccurdy Tool & Machining | 1912 Krupke, | Caledonia | IL | 61011 | 09/19/07 |
| Mcwane Ductile | Attn: Karen, 2550 S. Industrial Pkwy | Provo | UT | 84603 | 02/16/15 |
| Megtec Systems | P.O. Box 5030 | Depere | WI | 54115 | 09/26/07 |
| Menasha Packaging | 1655 Bergstrom | Neenah | WI | 54957 | 08/02/07 |
| Menasha Packaging / Neenah Plant | 1645 Bergstrom Rd | Neenah | WI | 54957 | 08/02/07 |
| Menasha Pkg / P P S | Attn: Tina Opsahl, 2255 Brooks Ave | Neenah | WI | 54956 | 02/21/17 |
| Menasha Pkg / Preprint Group | 1257 Gillingham Rd | Neenah | WI | 54956 | 09/27/11 |
| Menominee Saw And Supply Co. Inc. | P O Box 515 | Menominee | MI | 49858 | 08/08/07 |
| Menzner Lumber And Supply Co. | P O Box 217 | Marathon | WI | 54448 | 08/02/07 |
| Merit Medical Systems, Inc. | Attn: Accounts Payable, 1600 West Merit Parkway | South Jordan | UT | 84095 | 02/18/12 |
| Metal Products | 1201 N Perkins St, | Appleton | WI | 54914 | 08/15/07 |
| Michels Corp. | Attn: Janet Neerhof, P.O. Box 128 | Brownsville | WI | 53006 | 08/28/07 |
| Micro Precision | P.O. Box 327, | Delevan | WI | 53115 | 08/01/07 |
| Microsemi P P G | 405 S W Columbia St, | Bend | OR | 97702 | 10/01/07 |
| Mid-State Truck Service | 2100 East 29th Street, P.O. Box 1150 | Marshfield | WI | 54449 | 08/14/17 |
| Midstates Aluminum Corp. | P O Box 1107, | Fond Du Lac | WI | 54936-1107 | 11/05/07 |
| Mid-States Concrete | P.O. Box 58, | Beloit | WI | 53511-0058 | 05/20/10 |
| Midwest Controlled Storage L L C | Po Box 529, | Quincy | IL | 62306-0529 | 04/08/11 |
| Midwest Railcar Repair Inc | 25965 482nd Ave, | Brandon | SD | 57005 | 01/23/17 |
| Miller Auto & Marine | P.O. Box 7188, | Saint Cloud | MN | 56302 | 08/14/15 |
| Miller Bradford & Risberg | W250 N6851 Hwy 164, P O Box 904 | Sussex | WI | 53089 | 11/26/08 |
| Miller Felpax Corporation | 1155 E 8th St, | Winona | MN | 55987 | 10/20/08 |
| Minnesota Rubber | 1100 Xenium Lane, | Plymouth | MN | 55441 | 12/28/17 |
| Minnesota Rubber And Plastics | 1100 Xenium Lane, | Plymouth | MN | 55441 | 12/28/17 |
| Miron Construction | P.O. Box 509, | Neenah | WI | 54957-0509 | 06/28/10 |
| Mississippi Welding Supply | 5150 West 6th St, | Winona | MN | 55987 | 05/14/15 |
| Modern Machinery | P.O. Box 16660, | Missoula | MT | 59808-6660 | 11/29/07 |
| Molex Incorporated | Attn: Accounts Payable, 2222 Wellington Court | Lisle | IL | 60532 | 08/22/07 |
| Monoco Enterprises | P.O. Box 14129 | Spokane | WA | 99214 | 08/30/10 |
| Monroe Truck Equipment | 1051 W 7th Street, | Monroe | WI | 53566 | 01/15/10 |
| Morgan Corp. | Attn: Lisa Johnson, 3100 E. Morgan Way | Janesville | WI | 53546 | 02/18/08 |
| Motive Power | 4600 Apple St, | Boise | ID | 83716 | 03/23/17 |
| Moutain Rose Herbs Inc | 4020 Stweart Road, | Euguene | OR | 50220 | 08/06/18 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Multi-Color Corporation | 1836 Sal St, | Green Bay | WI | 54302 | 11/20/07 |
| N & M Transfer Co, Inc | 630 Muttart Rd, | Neenah | WI | 54956 | 12/04/17 |
| Nagl Mfg. Co. | 3626 Martha St, | Omaha | NE | 68105 | 10/26/07 |
| Neenah Foundry Company (S1276) | P.O. Box 729, | Neenah | WI | 54956 | 04/24/11 |
| Nestle Nutrition Div.- Eau Claire | Attn: Accounts Payable, P O Box 168 | Eau Claire | WI | 54702-0168 | 07/31/12 |
| Nestle Purina Pet Care | 150 Riverview Dr, | Jefferson | WI | 53549 | 08/17/07 |
| Nestle, U S A | 1111 Carnation Dr., | Jacksonville | IL | 62650 | 10/23/07 |
| New Plastics Corp | 112 4th St, P O Box 480 | Luxemburg | WI | 54217 | 09/13/07 |
| Newpage Corporation | St. Point Mill Attn: Teri Greco, 707 Arlington Place | Stevens Point | WI | 54481 | 01/09/08 |
| Newpage Wi Rapids Mill-Purchasing | Order Processor, P.O. Box 8050 | Wisconsin Rapids | WI | 54495 | 01/09/08 |
| Norlake Inc. | 727 2nd St, | Hudson | WI | 54016 | 12/11/17 |
| North American Pipe Corporation | Attn: Accounts Payable, 2801 Post Oak Blvd Suite 650 | Houston | TX | 77056 | 07/16/09 |
| North American Salt Co. | 4500 - 13th Court, | Kenosha | WI | 53140 | 11/10/08 |
| Northern Hardwoods Div. | 45807 State Highway M26, | Atlantic Mine | MI | 49905-9114 | 06/26/16 |
| Northern Metal Products | Attn: Sara, 6601 Ridgewood Rd | St Cloud | MN | 56302 | 05/05/10 |
| Northern Star Industries, Inc. | Systems Control, P O Box 788 | Iron Mountain | MI | 49801 | 10/17/07 |
| Nucor/ Vulcraft | 1875 W Hwy 13, Po Box 637 | Brigham City | UT | 84302 | 05/14/14 |
| Nueske's Applewood Smoked Meats | 203 N Genessee St, | Wittenberg | WI | 54499 | 02/16/16 |
| Nutraferma, Inc | 1919 Grand Ave, | Sioux City | IA | 51106 | 09/16/18 |
| Ohly Americas | 35 Adams St. N, P.O. Box 100 | Hutchinson | MN | 55350 | 09/03/04 |
| Omni Glass & Paint, Inc. | Po Box 2186, | Oshkosh | WI | 54903 | 10/23/07 |
| Onvoy Division Of Badger Plug | , P O Box 9 | Walworth | WI | 53184 | 08/28/16 |
| Orbis | 1328 Earl St., | Menasha | WI | 54952 | 10/16/07 |
| Orion Energy Symptoms | 2210 Woodland Drive, | Manitowoc | WI | 54220 | 06/28/18 |
| Outlook Group | 1180 American Dr, | Neenah | WI | 54956 | 07/01/09 |
| Pace Industries | P O Box 25, | Grafton | WI | 53024 | 09/04/18 |
| Paper Converting Machine Co. | 2300 S. Ashland Ave, Po Box 19005 | Green Bay | WI | 54307-9005 | 07/11/13 |
| Patterson Medical | 28100 Torch Parkway, | Warrenville | IL | 60555-3938 | 09/01/15 |
| Pellitteri Waste Systems | P O Box 259426, | Madison | WI | 53725-9426 | 05/10/12 |
| Perma-Fix Northwest Inc. | Attn: Accounts Payable, 8302 Dunwoody Place | Atlanta | GA | 30350 | 07/18/18 |
| Pinnacle Foods | 121 Woodcrest Rd., | Cherry Hill | NJ | 8003 | 08/07/18 |
| Pioneer Products Inc. | 1917 S Memorial Dr, | Racine | WI | 53403-2545 | 05/16/11 |
| Piper Products Inc. | 300 S 84th Ave, | Wausau | WI | 54401 | 08/10/07 |
| Plastics Engineering Company | 3518 Lakeshore Road, P.O. Box 758 | Sheboygan | WI | 53082-0758 | 12/28/17 |
| Pointe Precision | , 2675 Precision Dr | Plover | WI | 54467 | 10/16/07 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Poly Vinyl Co | 320 Rangeline Rd, P.O. Box 300 | Sheboygan Falls | WI | 53085 | 08/14/17 |
| Ponderay Newsprint Company | 422767 S R 20, | Usk | WA | 99180-9771 | 05/05/08 |
| Power Packaging, An Excel Co | 525 Dunham Rd., | St. Charles | IL | 60174 | 06/14/17 |
| Powergrid Solutions Inc | , 3110 Progress Dr | Oshkosh | WI | 54901 | 12/22/05 |
| Premier Tooling | 8853 Kapp Dr, | Peosta | IA | 52068 | 08/07/07 |
| Pride Manufacturing Co | Tina Willett -Accounts Payable, 10 North Main Street | Burnham | ME | 4922 | 10/17/07 |
| Printron Engravers, Inc. | 955 Breezewood Lane, P.O. Box 627 | Neenah | WI | 54956 | 03/19/18 |
| Professional Plating, Inc. | 705 Northway Dr, | Brillion | WI | 54110 | 06/18/08 |
| Prop Shaft Supply | 969 Koopman Lane, | Elkhorn | WI | 53121 | 08/31/17 |
| Quality Steel Corp | 5601 Axel Park Raod, | West Jordan | UT | 84081 | 07/01/14 |
| R & B Grinding Company Inc. | 1900 Clark St, | Racine | WI | 53403 | 09/19/07 |
| R R Donnelley | Attn: A.P. Dept., Po Box 282448 | Nashville | TN | 37228 | 12/22/15 |
| Red Arrow Products | P.O. Box 1537, | Manitowoc | WI | 54221-1537 | 08/20/07 |
| Red Arrow Products | Po Box 1537, | Manitowoc | WI | 54221-1537 | 08/20/07 |
| Red Diamond Processing & Packaging Llc | 21778 Highview Ave, | Lakeville | MN | 55044 | 02/09/18 |
| Red Line Plastics Llc | 4230 Clipper Dr, | Manitowoc | WI | 54220 | 09/04/18 |
| REG Madison, LLC | 416 S. Bell Ave, | Ames | IA | 50010 | 01/19/18 |
| Regal Cutting Tools | 5330 East Rockton Road, | Roscoe | IL | 61073 | 01/23/17 |
| Renaissance Marine Group Inc | P O Box 580, | Clarkston | WA | 99403 | 03/03/17 |
| Research Products | P.O. Box 1467, | Madison | WI | 53701 | 09/05/07 |
| Resource One International | 2225 Bohm Drive, | Little Chute | WI | 54140 | 03/20/12 |
| Reynolds Consumer Products | Attn: Trish Keller, 1110 East 200 South | Lewiston | UT | 84320 | 01/01/10 |
| Rink Systems | Attn: Accounts Payable, 1103 Hershey Street | Albert Lea | MN | 56007 | 08/27/14 |
| Riverland Community College | 1900 8th Ave N W, | Austin | MN | 55912 | 09/03/04 |
| Riverside Electronics L T D | One Riverside Drive, | Lewiston | MN | 55952 | 09/19/07 |
| Robbins Manufacturing Inc | 200 Steel Road, P.O. Box 87 | Fall River | WI | 53932 | 09/30/15 |
| Rockline Industries | Attn: Bill Scheidt, P O Box 1007 | Sheboygan | WI | 53081 | 09/24/07 |
| Rockwell Automation | Attn: Stacy Webb, P.O. Box 2167 | Milwaukee | WI | 53201 | 05/31/16 |
| Roundy's Supermarkets, Inc. | 5500 52nd St., | Kenosha | WI | 53144 | 05/31/16 |
| Royal Canin | Attn: Tameka Bennett, 500 Fountain Lakes Blvd Suite 100 | St Charles | MO | 63301 | 03/01/11 |
| Ryder Transportation | 173 S Green Bay Rd, | Neenah | WI | 54956 | 10/02/07 |
| Ryder Transportation | 3207 S. Business Dr, | Sheboygan | WI | 53081 | 09/10/08 |
| S S I Technologies Inc | P O Box 5002, | Janeville | WI | 53547-5002 | 8/13/2013 |
| Sagola Hardwoods, Ltd | P O Box 99, | Sagola | MI | 49881 | 9/28/2007 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Sanimax A T O Inc. | Attn: Scott Sowle, 2099 Badgerland Dr | Green Bay | WI | 54307 | 11/21/2013 |
| Sanimax U S A L L C | Attn: Scott Sowle, 2099 Badgerland Dr | Green Bay | WI | 54307 | 11/21/2013 |
| Schiller Grounds Care, Inc | P O Box 469, | Johnson Creek | WI | 53038 | 10/27/2007 |
| Schneider Electric | Attn: Kathy Spanjer, 1717 Centerpark Road | Lincoln | NE | 68512 | 2/9/2018 |
| Schuette M F G | 5028 Hwy 42, | Manitowoc | WI | 54220 | 3/1/2008 |
| Schwabe North America Inc | 825 Challenger Dr, | Clinton | WI | 53525 | 1/5/2016 |
| Scot Forge Company | 105 Scot Dr., | Green Bay | WI | 54307 | 7/23/2013 |
| Seneca Foods Corp | P O Box 208, | Cambria | WI | 53923 | 12/31/2007 |
| Seneca Foods Corp | P O Box 250, | Clyman | WI | 53016 | 12/31/2007 |
| Seneca Foods Corp. | W13380 Chicago Ave, | Hancock | WI | 54943 | 1/19/2015 |
| Seneca- Oakfield | 229 W Waupun St, | Oakfield | WI | 53065 | 9/29/2009 |
| Seneca Ripon | , P O Box 66 | Ripon | WI | 54971 | 2/6/2008 |
| Sentry Equipment Corp. | 966 Blue Ribbon Circle, | Oconomowoc | WI | 53066-0127 | 2/9/2018 |
| Shearer's Foods Inc. | Attn: Accts Payable Burlington, P.O. Box 932919 | Cleveland | OH | 44193 | 9/15/2014 |
| Shearer's Foods Inc. | Attn: Accts Payable Hermiston, P.O. Box 932919 | Cleveland | OH | 44193 | 9/15/2014 |
| Shopko Stores / 3 M | 700 Pilgrim Way Po Box 19060, Attn: Optical Third Party-Janet L | Kalispell | MT | 59901 | No Contract Dispensing fee only |
| Shopko Stores / Biofire Diagnostics | 390 Wakara Way, | Belvidere | IL | 61008 | 04/16/15 |
| Shopko Stores / Carp Comp Of Il | 2340 Newburg Rd, | Green Bay | WI | 54307-9060 | 10/27/07 |
| Shopko Stores / Cleveland Cliffs | 700 Pilgrim Way Po Box 19060, Attn: Optical- Janet L | Delavan | WI | 53115 | No Contract Dispensing fee only |
| Shopko Stores / Continental Corp | 329 Hallberg, | Mason City | IA | 50401 | 06/23/17 |
| Shopko Stores / Frc Component Products | 1511 S. Benjamin Ave, | Grand Island | NE | 68801 | 05/24/12 |
| Shopko Stores / J.B.S. Swift & Co | 555 S. Stuhr Rd, | Salt Lake City | UT | 84116 | 11/21/07 |
| Shopko Stores / L3 Communication Systems | 322 N. 2200 W. Dock 3, | Bend | OR | 97701 | 03/21/17 |
| Shopko Stores / Lonza | 64550 Research Rd, | Marinette | WI | 54143 | 02/14/12 |
| Shopko Stores / Marinette Marine | 1600 Ely St.., | Redgranite | WI | Redgranite | 11/21/07 |
| Shopko Stores / Milsco Manufacturing Co | 650 W Bannerman Ave, | Mason City | IA | 50401 | 05/20/16 |
| Shopko Stores / Purina Animal Nutrition | 1609 19th Street SW, | Fort Madison | IA | 52627 | 02/22/18 |
| Shopko Stores / Siemens Energy, Inc | 2597 Hwy 61, | Sturtevant | WI | 53177 | 02/18/10 |
| Shopko Stores / Stericycle, Inc. | 14035 Leetsbir Rd, | Orem | UT | 84058 | 10/27/07 |
| Shopko Stores / Us Synthetic | 1260 S. 1600 W. , | Rockford | IL | 61104 | 08/20/10 |
| Shopko Stores / Valspar Sourcing | 1215 Nelson Blvd, | Marshfield | WI | 54449 | 01/25/10 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Shopko Stores /Automated Products, Inc. | 1812 Karau Dr., | Eugene | OR | 97402 | 04/18/18 |
| Shopko Stores Inc / City Of Eug. | 1820 Roosevelt Blvd, | Stevens Point | WI | 54481 | 03/14/14 |
| Shopko Stores Inc / Neenah Paper, Inc | 3243 Whiting Road, | Winona | MN | 55987 | 10/04/07 |
| Shopko Stores Inc / Tthern Inc | 5712 Industrial Park Rd, | Marinette | WI | 54143 | 04/09/13 |
| Shopko Stores Inc. / Ace Marine | 1600 Ely St.., | Brillion | WI | 54110 | 11/21/07 |
| Shopko Stores Inc. / Ariens | 655 West Ryan Street, | Magna | UT | 84044 | 12/01/11 |
| Shopko Stores Inc. / Atk Space | 7812 W.4100 S., | Wisconsin Rapids | WI | 54494 | 05/02/11 |
| Shopko Stores Inc. / Catalyst Biron | 621 North Biron Drive, | Spokane | WA | 99224 | 03/06/17 |
| Shopko Stores Inc. / City Of Spokane | 2900 S. Geiger Blvd, | Watertown | WI | 53094 | 04/15/16 |
| Shopko Stores Inc. / Eaton | 901 S. 12th St., | Menasha | WI | 54952 | 11/21/07 |
| Shopko Stores Inc. / Essity Menasha | 190 Third Street, | Cottage Grove | WI | 53527 | 09/21/15 |
| Shopko Stores Inc. / Hydrite Cottg | 114 N. Main Street, | Sheboygan Falls | WI | 53085 | 10/04/07 |
| Shopko Stores Inc. / Johnsonville | N6928 Johnsville Way, | South Jordan | UT | 84095 | 12/18/13 |
| Shopko Stores Inc. / Kennecott | 4700 W. Daybreak Pkwy, | Nampa | ID | 83687 | 12/23/14 |
| Shopko Stores Inc. / Packaging Corp. | 1808 E. Chisholm Dr., | Depere | WI | 54115 | 05/26/16 |
| Shopko Stores Inc. / R R Donnelley | 1333 Scheuring Rd, | Green Bay | WI | 54307-9060 | 02/17/15 |
| Shopko Stores Inc. / Thermal | 5215 21st Street, | Omaha | NE | 68117 | 05/13/08 |
| Shopko Stores Inc. / Wm Harvey | 4334 S. 67th , | Green Bay | WI | 54304 | 10/14/08 |
| Shopko Stores Inc. /Georgia Pacific | 1919 South Broadway , | Council Bluffs | IA | 51503 | 11/15/13 |
| Shopko Stores Inc./ Bunge | 19560 Bunge Ave, | Green Bay | WI | 54313 | 09/05/18 |
| Shopko Stores Inc./ D C I Cheese | 1319 N. Velp Ave., | Chippewa Falls | WI | 54729 | 04/26/12 |
| Shopko Stores Inc./ Deltar Fasteners | 1700 First Ave, | Neenah | WI | 54956 | 08/29/07 |
| Shopko Stores Inc./ Essity Neenah | 984 Winchester Rd, | Beloit | WI | 53511 | 09/22/15 |
| Shopko Stores Inc./ Fairbanks Morse Eng. | 701 White Avenue, | Waupun | WI | 53963 | 09/11/07 |
| Shopko Stores Inc./ Federal | 401 Industrial Ave., | Green Bay | WI | 54303 | 03/19/10 |
| Shopko Stores Inc./ G.P S A P | 2641 N. Packerland Dr., | Neenah | WI | 54956 | Cannot find |
| Shopko Stores Inc./ K C Kimtec | 1109 Henry St, | Mason City | IA | 50401 | 10/07/07 |
| Shopko Stores Inc./ Kraft Heinz | 1022 12th St. NW, | Fond Du Lac | WI | 54938 | 05/18/09 |
| Shopko Stores Inc./ Mercury Marine | W6250 Pioneer Rd, | Watetown | WI | 53094 | 09/29/16 |
| Shopko Stores Inc./ Perry Way | 1222 Perry Way Foods, | Spokane Valley | WA | 99206 | 04/18/16 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Shopko Stores Inc./ Pyrotek | 9601 E. Montgomery , | Green Bay | WI | 54307-9060 | 11/28/16 |
| Shopko Stores Inc./ R & D Thiel Div | 2340 Newburg Rd, | Belvidere | IL | 61008 | 10/04/12 |
| Shopko Stores Inc./ S P X | 611 Sugar Creek Road , | Delavan | WI | 53115 | 09/28/07 |
| Shopko Stores Inc./ Simplot | 1301 Highway 67, | Grand View | ID | 83624 | 11/14/07 |
| Shopko Stores Inc./ Smith Megadiamond | C/O'' Accenture/BSS EDM, PO BOX 696409 | San Antonio | TX | 78269 | 10/14/07 |
| Shopko Stores Inc./ St. Mary's | 1914 White Oak Lane , | Dixon | IL | 61023 | 01/05/15 |
| Shopko Stores Inc./georgia Pacific | 500 Day Street, | Green Bay | WI | 54307-9060 | 11/15/13 |
| Shopko Stores Inc./hydrite Osh. | 191 W. 28th, | Oshkosh | WI | 54902 | 10/04/07 |
| Shopko Stores Inc./kerry | 324 N. Harding , PO Box 66 | Owen | WI | 54460 | 12/06/16 |
| Shopko Stores Inc/ Allen Edmonds | PO Box 998, | Port Washington | WI | 53074 | 06/17/10 |
| Shopko Stores Inc/ Amalgamated Sugar Co | 138 W. Karcher Rd, | Nampa | ID | 83653 | 02/04/08 |
| Shopko Stores Inc/ Chevron Products Co | 685 South Chevron Way, | North Salt Lake | UT | 84054 | 02/05/08 |
| Shopko Stores Inc/ Danisco Usa | 3322 Agriculture Way, | Madison | WI | 53716 | 06/11/10 |
| Shopko Stores Inc/ Durst & Mastergear | 5560 E. Buss Road, PO Box 298 | Clinton | WI | 53525 | 05/19/16 |
| Shopko Stores Inc/ Graymont Western Us | 450 Indian Creek Rd, | Townsend | MT | 59644 | 02/19/15 |
| Shopko Stores Inc/ Grove Gear | 1524 15th Ave, | Union Grove | WI | 53182 | 10/08/07 |
| Shopko Stores Inc/ Kerry | 6574 Ryland , | Vesper | WI | 54489 | 02/09/11 |
| Shopko Stores Inc/ L S C Communications | N 9234 Lake Park Rd, | Appleton | WI | 54915 | 03/20/18 |
| Shopko Stores Inc/ Marinette Marine | 1600 Ely St.., | Redgranite | WI | Redgranite | 11/21/07 |
| Shopko Stores Inc/ W W Clyde | PO Box 1898, | Orem | UT | 54059 | 11/28/12 |
| Shopko Stores Inc/ Weir Minerals | 2701 S. Stoughton Rd, | Madison | WI | 53716 | 01/09/19 |
| Shopko Stores Inc/chobani | 3450 Kimberly Road, | Twin Falls | ID | 83301 | 06/03/14 |
| Shopko Stores Inc/prince Minerals Inc. | 401 North Prince Plaza, | Quincy | IL | 62305 | 02/09/10 |
| Shopko Stores Inc/trail King Industries | PO Box 1064, | Mitchell | SD | 57301-1064 | 06/04/15 |
| Shopko Stores Operation Co./ Exxon | 700 Exxon Mobile, PO Box 1163 | Billings | MT | 59103-1163 | 11/14/14 |
| Shopko Stores/ Herman Miller Inc(Nemschoff) | 2218 Julson Court, | Sheboygan | WI | 53081 | 08/20/18 |
| Shopko Stores/ Manitowoc Cranes | PO BOX 70 , 2401 S 30th St | Manitowoc | WI | 54221-0070 | 01/05/12 |
| Shopko Stores/ Young Electric | 1605 S. Gramercy Rd, | Salt Lake City | UT | 84104 | 03/05/13 |
| Shopko Stores/cellu Tissue Neenah | 249 N. Lake Rd, | Neenah | WI | 54956 | 10/15/07 |
| Shopko Stores/multicircuits, Inc | 2301Universal Street, | Oshkosh | WI | 54904 | 09/24/07 |
| Shopko Stores/Salt Lake Cty Dept Of Airp | PO Box 145550, | Salt Lake City | UT | 84114-5550 | 12/10/07 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Shopko Support Center / Hexcel | 6700 West 5400, PO BOX 18748 | West Valley City | UT | 84118-0748 | 01/01/10 |
| Shopko Support Center/ A T K | 9160 North Hwy 83, | Green Bay | WI | 54307-9060 | 01/23/17 |
| Shopko Support Center/ Big West Oil | 333 W. Center St., | North Salt Lake | UT | 84054 | 12/06/12 |
| Shopko Support Center/ Biomerics | 6030 Harold Gatty Dr., | Salt Lake City | UT | 84116 | 11/30/15 |
| Shopko Support Center/ Centro | 200 Industrial Dr., | Horicon | WI | 53032 | 09/29/16 |
| Shopko Support Center/ Chase Doors | 2809 SW 13th St. , | Redmond | OR | 94456 | 03/17/14 |
| Shopko Support Center/ Duncan | 3701 Aviation Road, | Lincoln | NE | 68524 | 12/24/12 |
| Shopko Support Center/ Flowserve | 1350 Mountain Springs Parkway N, | Springville | UT | 84663 | 02/19/15 |
| Shopko Support Center/ I-Paper | 600 West ahtanum Rd, | Union Gap | WA | 98903 | 01/30/08 |
| Shopko Support Center/ Kerry | 2402 Seventh St NW, | Rochester | MN | 55901 | 02/15/11 |
| Shopko Support Center/ Rentech(East Dubuque Nitrogen) | 16675 Highway 20 West, | East Dubuque | IL | 61025 | 08/06/18 |
| Shopko Support Center/ Sofidel | 220 Larsen Road, | Green Bay | WI | 54303 | 11/19/15 |
| Shopko Support Center/brenner Tank L L C | 450 Arlington Ave., | Fond Du Lac | WI | 54936 | 10/15/07 |
| Shopko Support Center/seneca | 500 S. Clark St., | Mayville | WI | 53050 | 11/27/07 |
| Silgan Containers | 1400 Plover Rd, | Plover | WI | 54467 | 1/12/2017 |
| Simplot Feeders & Grandview Farms | P.O. Box 1306, | Pasco | WA | 99301 | 9/12/2013 |
| Skana Aluminum Co | Po Box 1477, | Manitowoc | WI | 54221-1477 | 12/2/2015 |
| Smith Equipment | 2601 Lockheed Ave, | Watertown | SD | 57201 | 10/29/2007 |
| Snyder Lance | Attn: Shared Services Support Team, 1250 York St P.O. Box 6917 | Hanover | PA | 17331 | 3/28/2018 |
| Sodexo | Attn: Dana Nava, 501 Eastman Ave | Green Bay | WI | 54302 | 3/21/2013 |
| Solvay Composite Materials | Attn: Lance Westby, 501 W. 3rd | Winona | MN | 55987 | 11/16/2016 |
| Somero Enterprises Inc. | 46980 State Hwy M26, P.O. Box 309 | Houghton | MI | 49931 | 5/5/2010 |
| Sonoco M F G | 1200 Independence Drive, | Neenah | WI | 54956 | 9/12/2007 |
| Sonoco-Us Mills Depere | Attn: Lisa Collar, Po Box 5850 | Depere | WI | 54115 | 9/12/2007 |
| Sorrento Lactalis, Inc. | P.O. Box 1280, | Nampa | ID | 83653 | 1/8/2008 |
| Space Kraft | Attn: Brenda Higgens, 4901 West 79th Street | Indianapolis | IN | 46268 | 5/1/2008 |
| Spacesaver Corporation | Attn: Accts Payable, 1450 Janesville Ave | Fort Atkinson | WI | 53538 | 8/3/2015 |
| Spancrete | 111 Spancrete Rd, | Valders | WI | 54245-0188 | 4/16/2008 |
| Spokane Valley Fire Dept. | 2120 N Wilbur Rd, | Spokane | WA | 99206-5296 | 9/25/2007 |
| Springs Window Fashions | Attn: Accts Payable, 7549 Graber Rd | Middleton | WI | 53562-1096 | 8/24/2007 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Spuncast, Inc. | P.O. Box 521, | Watertown | WI | 53094 | 10/5/2007 |
| States Industries, L L C | P.O. Box 41150, | Eugene | OR | 97404 | 3/11/2013 |
| Steel Tech | Attn: Greg Schuetz, 1251 Phillips S W | Grand Rapids | MI | 49507 | 8/1/2010 |
| Stellar Industries Inc. | P.O. Box 169, | Garner | IA | 50438 | 3/30/2013 |
| Suburban Electric | 709 Hickory Farm Lane, | Appleton | WI | 54914-3074 | 10/17/2007 |
| Sub-Zero / Wolf Inc. | Attn: Amy Cina, 2866 Buds Drive Fitchburg | Madison | WI | 53719 | 9/24/2007 |
| Sukup Manufacturing Co. | P.O. Box 677, | Sheffield | IA | 50475 | 9/20/2007 |
| Suterra | 20950 N E Talus Pl, | Bend | OR | 97701 | 10/30/2007 |
| Swiss-Tech, L L C | 1441 E Wisconsin St, P.O. Box 326 | Delevan | WI | 53115 | 9/27/2007 |
| T C R Composites | 219 North 530 West, | Ogden | UT | 84404 | 8/1/2010 |
| Tandem Products | Attn: Tia, 3444 Dight Avenue South | Minneapolis | MN | 55406 | 11/26/2014 |
| Terex | 500 Oakwood Road, | Watertown | SD | 57201 | 4/20/2015 |
| The Broaster Co. | 2855 Cranston Rd, | Beloit | WI | 53511 | 8/1/2010 |
| The Coleman Company | 1100 COLEMAN DRIVE, | SAUK RAPIDS | MN | 56379 | 8/1/2010 |
| The Toro Company - Account 212250 | Attn: Josh.Debroux@bossplow.Com, 8111 Lyndale Ave South | Minneapolis | MN | 55420-1196 | 1/30/2015 |
| Therma Stor | 4201 Lien Road, | Madison | WI | 53704 | 1/31/2019 |
| Thermal Spray Technologies | 515 Progress Way, | Sun Prairie | WI | 53590 | 10/19/2007 |
| Thermo Fischer Scientific | 3747 Meridian Rd, | Rockford | IL | 61105 | 4/15/2010 |
| Thermo Tech Windows | 1120 38th Ave N E, | Sauk Rapids | MN | 56379 | 10/24/2007 |
| Tidi Products L L C | Attn: A/ P 558070, P O Box 806 | Neenah | WI | 54957-0806 | 8/2/2007 |
| Titletown Leather Llc | Attn: Scott Sowle, 2099 Badgerland Dr | Green Bay | WI | 54307 | 8/1/2010 |
| Top Form Inc. | 409 E Commerce Drive, | Marshfield | WI | 54449 | 5/31/2011 |
| Tramontina U S Cookware, Inc. | 2005 Mirro Dr, | Manitowoc | WI | 54220-6718 | 8/4/2016 |
| Triangle Manufacturing Co | 150 Libbey Ave, | Oshkosh | WI | 54901 | 7/13/2016 |
| Trico Opportunities Inc. | P.O. Box 2610, | Kingsford | MI | 49802 | 6/1/2010 |
| Triumph Gear Systems | 6125 Silver Creek Dr., | Park City | UT | 84098 | 2/24/2012 |
| Trustile Doors Of Iowa | 1585 E 66th Avenue, | Denver | CO | 80229 | 11/27/2011 |
| Tufco Technologies | P.O. Box 23500, | Green Bay | WI | 54305 | 8/2/2007 |
| Tweet/ Garot Mechanical Inc | Attn: Accounts Payable, 325 Reid St | De Pere | WI | 54115-2130 | 9/15/2016 |
| Tyson Fresh Meats, Inc. | Attn: Supply, P.O. Box 4239 | Pasco | WA | 99302 | 9/12/2014 |
| U P M Raflatac | PO Box 13457, | Philadelphia | PA | 19101-3457 | 8/1/2010 |
| U S Bureau Of Reclamation | 1359 Hansen Ave, | Burley | ID | 83318 | 8/1/2010 |
| U S Castings, L L C | P.O. Box 678, | Entiat | WA | 98822 | 2/21/2017 |
| U S Ecology Washington, Inc | 1777 Termina Dr, | Richland | WA | 99354 | 10/1/2007 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| U S P S | Attn: Wendy, 1124 Pacific St | Omaha | NE | 98108-9441 | 9/28/2007 |
| U S U Research Foundation | 1695 N. Research Park Way, | N. Logan | UT | 84341 | 6/19/2017 |
| U.S. Department Of Energy | Attn: Isidro Chavez, P O Box 450/ Msin H6-60 | Richland | WA | 99352 | 9/28/2007 |
| U.S. Postal Service | 1124 Pacific St/ Room 23, Attn: Ramona Cano | Omaha | NE | 68108-9441 | 9/28/2007 |
| Ulti-Med Inc. | 710 4th Street, | Desmet | SD | 57231 | 5/5/2017 |
| Ultrasonic Power Corp | 239 E Stephenson St, | Freeport | IL | 61032 | 8/1/2010 |
| Uniek Inc. | 805 Uniek Dr, | Waunakee | WI | 53597 | 1/15/2010 |
| United Alloy, Inc | 4100 Kennedy Road, | Janesville | WI | 53545 | 5/5/2014 |
| University Housing | 1220 University Of Oregon, | Eugene | OR | 97403 | 10/1/2014 |
| Unlimited Services Of Wi Inc | 170 Evergreen Rd, | Oconto | WI | 54153 | 1/23/2017 |
| Utah Air Natl Guard-150 1st SE Ces | Attn: Pete Wilson Resource Advisor, 765 N 2200 W | Salt Lake City | UT | 84116 | 8/1/2010 |
| V N E Corporation | , P.O. Box 1698 | Janesville | WI | 53547 | 8/1/2010 |
| Valley Regional Transit | 4701 S Northrup, | Boise | ID | 83705 | 7/5/2016 |
| Valley Roller Co | N257 Stoney Brook Rd, | Appleton | WI | 54915-9444 | 2/8/2016 |
| Valmet Inc. Beloit | Attn: Accounts Payable, P.O. Box 1412 S T N St-Laurent | Montreal | QC | H4L 3X3 | 3/23/2017 |
| Valmet Inc. Neenah | Attn: Accounts Payable, P.O. Box 1652 Stn St-Laurent | Montreal | QC | H4L 4Z2 | 3/23/2017 |
| Valmet Inc.-Appleton | Attn: Accounts Payable, Po Box 1382 Stn-St-Laurent | Montreal | QC | H4L-4X3 | 3/23/2017 |
| Valmont-Microflect | 3575 25th Street S E, | Salem | OR | 97302 | 3/23/2017 |
| Van Doren Sales | P.O. Box 1746, | Wenatchee | WA | 98807 | 11/21/2007 |
| Varex Imaging | Attn: Accounts Payable, P.O. Box 26667 | Salt Lake City | UT | 84126-0667 | 10/6/2017 |
| Vasco, Inc. | 1521 E Hawthorne St, | Albert Lea | MN | 56007-3864 | 8/27/2014 |
| Ventura Foods Llc | 919 East 14th St, | Albert Lea | MN | 56007 | 8/17/2018 |
| Veritas Steel | 3526 W Sherman St, | Wausau | WI | 54401 | 9/11/2017 |
| Veritas Steel | Attn: H R, 2800 Melby St | Eau Claire | WI | 54703 | 8/1/2010 |
| Verso | Lake States Fiber Supply, P O Box 8050 | Wisconsin Rapids | WI | 54495 | 8/1/2010 |
| Verso Corp # Technical Center | Attn: Amy Henke, Po Box 8050 | Wisconsin Rapids | WI | 54494 | 8/1/2010 |
| Vogel Bros. Building Co | 2701 Packers Ave., Po Box 7696 | Madison | WI | 53707 | 8/7/2007 |
| Voith Paper Fabric & Roll Systems Inc. | C/o G B S Accounting- A P(Vpun), Po Box 15639 | York | PA | 17405 | 5/2/2016 |
| Voith Paper Fabrics | P O Box 8899, | Appleton | WI | 5912 | 5/2/2016 |
| Voith Paper Inc. | C/o G B S Accounting - A P (Vpaw), Po Box 15639 | York | PA | 17405 | 4/3/2018 |
| Vollrath Co. Llc | Attn: Karen Stelton, 502 Hwy 67 | Kiel | WI | 53042-1650 | 9/12/2017 |
| W A State Dept Of Ecology | P.O. Box 47612, | Olympia | WA | 98504-7612 | 8/1/2010 |
| W O W Logistics | 1450 Mcmahon Drive, | Neenah | WI | 54956 | 8/1/2010 |
| W R R Environmental Services Co, In | 5200 Ryder Rd, | Eau Claire | WI | 54701 | 8/1/2010 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Wahl Clipper Corp | 2900 North Locust, | Sterling | IL | 61081 | 7/5/2007 |
| Wausau Window & Wall Systems | 7800 International Dr, | Wausau | WI | 54401 | 9/21/2007 |
| Weasler Engineering | , P.O. Box 42386 | Indianapolis | IN | 46242 | 9/29/2007 |
| Weigh-Tronix Inc. | 1000 Armstrong Dr, | Fairmont | MN | 56031 | 8/1/2010 |
| Weiler And Company, Inc. | 1116 E Main St, | Whitewater | WI | 53190 | 6/21/2011 |
| Weir Minerals | 3459 S 700 W, | Salt Lake City | UT | 84119 | 6/6/2016 |
| Welch Foods Inc. | Attn: Accounts Payable, Po Box 9180 | Concord | MA | 1742 | 4/8/2016 |
| West Rock C P, L L C | , 2300 Bridgeport Drive | Sioux City | IA | 51111 | 2/4/2019 |
| West Rock C P, L L C | Attn: Amy Shockley, 2350 Springbrook Ct | Beloit | WI | 53511 | 2/4/2019 |
| Westmoreland Coal Company | Attn: Accounts Payable, Po Box 915 | Jewett | TX | 75846 | 8/1/2010 |
| Weyerhaeuser Columbia Falls M.D.F | Attn: M. Elise Garner, 105 Mills Drive | Columbia Falls | MT | 59912 | 5/2/2016 |
| Weyerhaeuser Eugene I Level | , Po Box 22508 | Eugene | OR | 97402 | 5/2/2016 |
| Weyerhauser Columbia Falls Lumber | Attn: M. Elise Garner, 105 Mills Drive | Columbia Falls | MT | 59912 | 5/2/2016 |
| Weyerhauser Columbia Falls Plywood | Attn: M. Elise Garner, 105 Mills Drive | Columbia Falls | MT | 59912 | 5/2/2016 |
| Weyerhauser Evergreen Lumber | Attn: M. Elise Garner, 105 Mills Drive | Columbia Falls | MT | 59912 | 5/2/2016 |
| Weyerhauser Evergreen Plywood | Attn: M. Elise Garner, 105 Mills Drive | Columbia Falls | MT | 59912 | 5/2/2016 |
| Willamette Valley Company | P.O. Box 2280 | Eugene | OR | 97402 | 9/21/2012 |
| Wilson Trailer | Po Box 6300, | Sioux City | IA | 51106 | 10/14/2008 |
| Winnebago County Engineer's Office | 126 S Clark St, | Forest City | IA | 50436 | 10/27/2014 |
| Winona Foods Inc | 1552 Lineville Rd, | Green Bay | WI | 54313 | 3/23/2017 |
| Wisconsin Cheese Group | 105 3rd Street, | Monroe | WI | 53566 | 2/21/2014 |
| Wisconsin Knife Works | 2505 Kennedy Drive, | Beloit | WI | 53511 | 4/24/2018 |
| Wisconsin Lift Truck Corporation | P.O. Box 430, | Brookfield | WI | 53045 | 8/2/2007 |
| Wis-Pak Of Lacrosse, Inc | 3239 Airport Rd, | LaCrosse | WI | 54603 | 8/23/2007 |
| Woodgrain Doors | , 1201 W Karcher Rd | Nampa | ID | 83687-8200 | 2/20/2009 |
| Woodharbor | 3277 9th St S W, | Mason City | IA | 50438 | 10/18/2007 |
| Woods Equipment | P.O. Box 1000, | Oregon | IL | 61061 | 8/8/2007 |
| Woods Equipment Central Fabrication | 1962 Queenland Dr, | Mosinee | WI | 54455 | 9/24/2007 |
| Woods Powr-Grip | , P O Box 368 | Laurel | MT | 59044 | 8/7/2007 |
| World Wide Dispensers | 78 2nd Ave South, | Lester Prairie | MN | 55354 | 1/7/2010 |
| WS Packaging | Vendor Id 10008248 , 2571 S. Hemlock Rd | New Franken | WI | 54229 | 12/3/2014 |
| Yanke Machine Shop Inc. | P.O. Box 5405, | Boise | ID | 83716 | 9/25/2007 |
| Young Living | Attn: Accounts Payable, 3049 Executive Parkway | Lehi | UT | 84043 | 2/10/2015 |
| Youngberg Industries | 6863 Indy Dr, | Belvidere | IL | 61008 | 9/20/2007 |

| Debtor Name | Address | City | State | Zip | Date of Contract or Lease |
|---|---|---|---|---|---|
| Zero Manufacturing Inc. | 500 West 200 North, | North Salt Lake | UT | 84054 | 8/15/2007 |

## *Optical Build-Out Contracts*

| Contract Counterparty | Optical Location | Address of Counterparty |
|---|---|---|
| Innovative Construction Solutions, Inc. | Pewaukee, WI #219 | 21675 Gateway Road, Brookfield, WI 53045 Attn: Dave Schwartz, President |
| Fred J. Piette Company, Inc. | Neenah, WI #222 | 6130 North Richmond Street, Appleton, WI 54913 |
| Fred J. Piette Company, Inc. | Rhinelander, WI #224 | 6130 North Richmond Street, Appleton, WI 54913 |
| Gill Haugan Construction | Sioux Falls, SD #226 | 200 E. 10th Street, Sioux Falls, SD 57105 |
| Hagerty Construction and Design LLC | Marquette, MI #231 | 16 Deer Run Avenue, Marquette, MI 49855 |

## *Software Licenses/Maintenance Agreements*
The following software:
- SDS optical software (no Cure Costs)
- Optifacts/ TNT (Cure Costs of $3,713)
- Google Maps (no Cure Costs)
- Jobson Medical Information LLC (Cure Costs of $17,594)
- DMI Studios d/b/a DCT Technologies (Cure Costs of $4,605) (to be provisionally licensed to Sellers until the Wind-Down pursuant to Section 6.5(f) of the Purchase Agreement)

## *Real Property Licenses*
- License Agreement between Bridgepoint Retail Utah, LLC and ShopKo Stores Operating Co., LLC dated April 22, 2019 regarding location #97 West Valley, UT
- License Agreement between Bobo Manitowoc, LLC and ShopKo Stores Operating Co., LLC dated April 22, 2019 regarding location #3 Manitowoc, WI
- License Agreement between Devman Partners, LLC and ShopKo Stores Operating Co., LLC dated April 22, 2019 regarding location #45 Bellevue, NE

## Assumed Leases

1. Lease between ShopKo and RCM Wausau LLC, dated as of December 1, 1991, for the property located at 1039 E Grand Ave, Rothschild, WI
2. Lease between ShopKo and Eau Claire Associates L.P., dated as of June 3, 1986, for the property located at 963 W CLAIREMONT AVE, EAU CLAIRE, WI
3. Lease between ShopKo and Alexander & Bishop 1, LLC, dated as of May 17, 1996, for the property located at 1640 APPLETON RD, MENASHA, WI

4. Lease between ShopKo and Frederick Square Limited Partnership, dated as of June 19, 2017, for the property located at 3020 S 84TH ST, OMAHA, NE

5. Lease between ShopKo and Brixmor SPE 1 LLC, dated as of April 27, 2018, for the property located at 10996 N Port Washington Road , MEQUON, WI

6. Lease between ShopKo and Ramco Properties, dated as of September 24, 2018, for the property located at 1166 W Sunset Drive, Suite F-100, WAUKESHA, WI

7. Lease between ShopKo and Fair Acres Station LLC - Philips Edison, dated as of September 14, 2018, for the property located at 1810 Jackson Street, OSHKOSH, WI

8. Lease between ShopKo and Meadow Ridge Shops LLC, dated as of December 5, 2018, for the property located at  1440 Capitol Drive, Suite B, PEWAUKEE, WI

9. Lease between ShopKo and Prime Space LLC., dated as of December 7, 2018, for the property located at 1490 Oneida St, APPLETON, WI

10. Lease between ShopKo and DH Prime, Inc. c/o Drifka Group, Inc., dated as of January 8, 2019, for the property located at 1154 Westowne Drive, NEENAH, WI

11. Lease between ShopKo and PH Manitowoc LLC, dated as of January 9, 2019, for the property located at 4530 Calument Avenue Unit 103, MANITOWOC, WI

12. Lease between ShopKo and Lincoln Plaza c/o AIG Properties Ltd., dated as of January 9, 2019, for the property located at 2185 Lincoln Street, RHINELANDER, WI

13. Lease between ShopKo and South Ridge Village, LLC., dated as of January 15, 2019, for the property located at 2801 Pine Lake Road, Suite J, LINCOLN, NE

14. Lease between ShopKo and 41st & Kiwanis Properties, dated as of January 15, 2019, for the property located at 2812 W 41st Street, SIOUX FALLS, SD

15. Lease between ShopKo and OLH, LLC., dated as of January 11, 2019 for the property located at 1212 S Koeller St., OSHKOSH, WI

16. Lease between ShopKo and Capitol Britton Station, LLC., dated as of January 16, 2019, for the property located at 3868 East Washington Ave Suite F, MADISON, WI

17. Lease between ShopKo and Kanter Marquette Center LLC, dated as of January 14, 2019, for the property located at 3107 US Route 41 West, MARQUETTE, MI

18. Lease between ShopKo and Beloit Capital, LLC., dated as of January 15, 2019, for the property located at 2787 Milwaukee Road Suite A, BELOIT, WI

19. Lease between ShopKo and Andy and Hai LLC., dated as of January 15, 2019, for the property located at 2843 South 5600 West Suite 170, WEST VALLEY CITY, UT

20. Lease between ShopKo and Lamont Strip Mall III, LLC., dated as of January 30, 2019, for the property located at 3307 7th Avenue SE, ABERDEEN, SD

21. Lease between ShopKo and Capitol Watertown, LLC, dated as of January 25, 2019, for the property located at 1500 South Church Street, WATERTOWN, WI

22. Lease between ShopKo and Inland Commercial Real Estate Services, LLC., dated as of January 15, 2019, for the property located at 1745 South Main St., WEST BEND, WI

23. Lease between ShopKo and Deseret 9000 S., L.C., dated as of January 31, 2019, for the property located at 9000 South 1500 West Suite E, West Jordan, UT

24. Lease between ShopKo and Water Tower Enterprises, LLC., dated as of February 8, 2019, for the property located at 6000 Monona Drive Unit 1002, Monona, WI

## Schedule 1.1(g)

## Registered Intellectual Property and Domain Names

## Registered Copyrights

None.

## Registered Trademarks

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| (PAMIDA) PAMIDA | SM | Registered | | 1,124,616 | 9/4/1979 |
| 7TH SENSE | TM | Registered | 87547377 | 5,571,806 | 9/25/2018 |
| A&I (design) | TM | Pending | 87386469 | | |
| A&I (with design) | TM | Registered | 87978610 | 5,597,650 | 10/30/2018 |
| A&I (with design) | TM | Registered | 87979065 | 5,634,675 | 12/18/2018 |
| A&I (word) | TM | Registered | 87978426 | 5,582,431 | 10/9/2018 |
| A&I (word) | TM | Registered | 87377825 | 5,633,553 | 12/18/2018 |
| Asher & Ivy | TM | Registered | 86456049 | 4,768,588 | 7/7/2015 |
| BAILEY'S PT. | TM | Registered | 87348598 | 5,509,393 | 7/3/2018 |
| BAILEY'S PT. | TM | Registered | | 3,921,778 | 2/22/2011 |
| CELEBRATE THE SEASON | TM | Pending | 87348590 | | |
| CELEBRATE THE SEASON | TM | Registered | 87977956 | 5,547,595 | 8/21/2018 |
| CELEBRATE THE SEASON | TM | Registered | 86748505 | 5,069,882 | 10/25/2016 |
| CLUB GRAND | TM | Pending | 87348770 | | |
| CLUB GRAND | TM | Registered | 87977185 | 5,460,860 | |
| CLUB GRAND | TM | Registered | 87978562 | 5,608,753 | 11/13/2018 |
| EERIE ALLEY | SM | Registered | | 3,008,257 | 10/25/2005 |
| ENERGY ZONE | TM | Registered | 87348751 | 5,607,747 | 11/13/2018 |

- 29 -

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| ENERGY ZONE | TM | Registered | | 2,159,748 | 5/19/1998 |
| ENERGY ZONE | TM | Registered | 87977528 | 5,499,650 | 6/19/2018 |
| ENVISION STUDIO | TM | Registered | 87348690 | 5,649,914 | 1/8/2019 |
| ENVISION STUDIO | TM | Registered | 77759466 | 3,838,981 | 8/24/2010 |
| ENVISION STUDIO | TM | Registered | 87978060 | 5,547,607 | 8/21/2018 |
| EZ ENERGY ZONE | TM | Registered | 77/639/142 | 3,650,891 | 7/7/2009 |
| EZ ENERGY ZONE (WITH DESIGN) | TM | Registered | 87348718 | 5,318,819 | 10/24/2017 |
| GOURMETLIVING | TM | Registered | 85-975,728 | 4,057,731 | 11/15/2011 |
| GOURMETLIVING | TM | Registered | 85013919 | 4,238,110 | 11/6/2012 |
| GREEN SODA | TM | Pending | 88041415 | | |
| GREEN SODA | TM | Registered | 76604075 | 3,109,799 | 6/27/2006 |
| HOMETOWN PANTRY | SM | Registered | 86317383 | 4,765,853 | 6/30/2015 |
| HOMETOWN VALUE | TM | Registered | 85628076 | 4704111 | 3/17/2015 |
| HOMETOWN VALUE | TM | Registered | 85979954 | 4,412,346 | 10/1/2013 |
| HOMETOWN VALUE | TM | Registered | 85902271 | 4,569,383 | 7/15/2014 |
| HOMETOWN VALUE | SM | Registered | | 2,012,231 | 10/29/1996 |
| HOMETOWN VALUE | TM | Pending | 87825664 | | |
| HOMETOWN VALUE | TM | Registered | 87978457 | 5,558,210 | 10/16/2018 |
| HOMETOWN VALUE | TM | Registered | 87211170 | 5,366,058 | 12/26/2017 |
| HOMETOWN VALUE (WITH DESIGN) | TM | Pending | 87348679 | | |
| HOMETOWN VALUE (WORD MARK) | TM | Registered | 87373248 | 5,675,846 | 02/23/1029 |
| HOMETOWN VALUE (WORD MARK) | TM | Registered | 87979912 | 5,526,448 | 7/24/2018 |

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| HOTEL BY CLUB GRAND | TM | Registered | 87348783 | 5,591,068 | 10/23/2018 |
| HOTEL BY CLUB GRAND | TM | Registered | 87977184 | 5,460,859 | |
| NORTHCREST | TM | Pending | 88209058 | | |
| NORTHCREST | TM | Registered | 87977751 | 5,515,649 | 7/10/2018 |
| NORTHCREST | TM | Registered | 87348729 | 5,644,151 | 1/1/2019 |
| NORTHCREST | TM | Registered | | 2,274,947 | 8/31/1999 |
| NORTHCREST | TM | Registered | | 2,339,297 | 4/4/2000 |
| NORTHCREST | TM | Registered | | 1,820,673 | 2/8/1994 |
| NORTHCREST (WITH DESIGN) | TM | Registered | 87977826 | 5,526,424 | 7/24/2018 |
| NORTHCREST (WITH DESIGN) | TM | Registered | 87348709 | 5,622,150 | 1/1/2019 |
| NORTHCREST HOME | TM | Registered | 76,599,207 | 3,043,724 | 1/17/2006 |
| OUR CUSTOMERS COUNT | SM | Registered | 86728315 | 5,120,463 | 1/10/2017 |
| PEANUT & OLLIE | TM | Registered | | 3,644,550 | 6/23/2009 |
| PEANUT & OLLIE | TM | Registered | 87976665 | 5,439,892 | 4/3/2018 |
| PEANUT & OLLIE | TM | Registered | | 3,832,839 | 8/10/2010 |
| PEANUT & OLLIE(DESIGN) | TM | Registered | | 3,644,548 | 6/23/2009 |
| Rewards Count | SM | Registered | 86727347 | 5,023,991 | 8/16/2016 |
| RX CARE SHOPKO | SM | Registered | 85/163,927 | 4,088,872 | 1/17/2012 |
| SHOPKO | TM | Registered | 77/639,130 | 3,650,890 | 7/7/2009 |
| SHOPKO | SM | Registered | | 1,408,068 | 9/2/1986 |
| SHOPKO | SM | Registered | 87269564 | 5,245,182 | 7/18/2017 |
| SHOPKO | TM | Registered | | 3,547,779 | 12/16/2008 |
| SHOPKO | TM | Registered | 87977467 | 5,504,975 | 6/26/2018 |

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| SHOPKO (Liquor Store) | SM | Registered | | 1,847,974 | 8/2/1994 |
| SHOPKO (new logo) | SM | Registered | | 3,502,417 | 9/16/2008 |
| SHOPKO BUCKS | SM | Registered | 87271768 | 5,419,383 | 3/6/2018 |
| SHOPKO CASH | SM | Registered | 86727368 | 5,023,992 | 8/16/2016 |
| SHOPKO CASH GRAB | SM | Registered | 86304276 | 4,809,729 | 9/8/2015 |
| SHOPKO EXPRESS RX | SM | Registered | | 2,972,029 | 7/19/2005 |
| SHOPKO HOMETOWN | SM | Registered | | 3,988,889 | 7/5/2011 |
| SHOPKO MARKET | TM | Pending | 87418247 | | |
| SHOPKO PANTRY | SM | Registered | 87314838 | 5,325,735 | 10/31/2017 |
| SHOPKO REWARDS | SM | pending | 88000210 | | |
| SHOPKO THE STUFF THAT COUNTS | SM | Registered | 86658424 | 5,142,506 | 2/14/2017 |
| SHOPKO THE STUFF THAT COUNTS | SM | Registered | 86656776 | 5,105,881 | 12/20/2016 |
| SOFT SENSATIONS | TM | Registered | 77828990 | 3,784,156 | 5/4/2010 |
| SOFT SENSATIONS | TM | Registered | 74600116 | 2,016,241 | 11/12/1996 |
| STUDIO A | TM | Registered | | 3,004,765 | 10/4/2005 |
| STUDIO BY ENERGY ZONE (WITH DESIGN) | TM | Registered | 87041267 | 5,370,898 | 1/2/2018 |
| STUDIO BY ENERGY ZONE (WORD MARK) | TM | Registered | 87348539 | 5,329,923 | 1/30/2018 |
| STUDIO BY ENERGY ZONE (WORD MARK) | TM | Pending | 87693201 | | |
| THE STUFF THAT COUNTS | SM | Registered | 86656724 | 5004744 | 7/19/2016 |
| THE TRIMMERRY | TM | Registered | | 2,088,944 | 8/19/1997 |
| THE TRIMMERRY | TM | Registered | | 2,145,515 | 3/17/1998 |
| TOSS & TURN | TM | Registered | 85627094 | 4,314,751 | 4/2/2013 |

| Trademark | Type of Mark | Status | Application No | Registration No | Registration Date |
|---|---|---|---|---|---|
| TREND.SPIRE | SM | Registered | 86976680 | 4,787,531 | 8/4/2015 |
| TRIMMERRY | TM | Registered | 87977719 | 5537405 | 8/7/2018 |
| TRIMMERRY | TM | Registered | 87348580 | 5,662,079 | 1/22/2019 |
| TRIMMERRY | TM | Registered | | 3,967,671 | 5/24/2011 |
| URBANOLOGY | TM | Registered | 87348559 | 5,623,334 | 12/4/2018 |
| URBANOLOGY | TM | Registered | 87977529 | 5,510,074 | 7/3/2018 |
| URBANOLOGY | TM | Registered | | 2,841,380 | 5/11/2004 |
| WILDPACK | TM | Registered | 87547554 | 5,596,802 | 10/30/2018 |
| WILLOW BAY | TM | Registered | | 1,841,376 | 6/21/1994 |
| WILLOW BAY | TM | Registered | 86306719 | 4671428 | 1/13/2015 |
| WONDERLIGHT PLUS | SM | Registered | | 2,611,538 | 8/27/2002 |
| WONDERLIGHT PLUS | TM | Registered | | 2,538,654 | 2/12/2002 |

## Domain Names

| Domain Name | Expiration Date |
|---|---|
| pamida.com | 4/30/2022 |
| peekababe.com | 2/5/2022 |
| shopko.com (to be provisionally licensed to Sellers until the Wind-Down pursuant to Section 6.5(f) of the Purchase Agreement) | 4/2/2022 |
| shopkocashgrab.com | 5/20/2022 |
| shopkocoupon.com | 10/9/2022 |
| shopkocoupon.net | 10/9/2022 |
| shopkoexpress.com | 7/14/2022 |
| shopkoexpressrx.com | 2/10/2022 |
| shopkofoundation.com | 11/29/2022 |
| shopkofoundation.net | 12/6/2022 |
| shopkofoundation.org | 12/6/2022 |
| shopkogolfclassic.com | 2/17/2022 |
| shopkohometowncashgrab.com | 5/20/2022 |
| shopkohr.com | 10/9/2022 |
| shopkorxexpress.com | 2/10/2022 |

| | |
|---|---|
| shopkostores.com | 3/29/2022 |
| shopkostoreslp.com | 3/29/2022 |
| shopko-vendors.com | 7/11/2022 |
| softsensations.com | 2/5/2022 |
| willowbaykids.com | 2/5/2022 |

## **Social Media Accounts**

Facebook (to be provisionally licensed to Sellers until the Wind-Down pursuant to Section 6.5(f) of the Purchase Agreement) and Twitter accounts

**Schedule 1.1(h)**

**Software, Computer Programs and Hardware**

*Hardware*
Optical Thin Clients and Network Hardware located within the Optical Stores, excluding items such as:
- phone system
- laser printers
- intel servers
- POS registers (with MX925 pinpads, Epson receipt printers, Motorola hands canners)
- Wireless Lan Infrastructure
- Uninterruptable power supplies

For clarity, all hardware within the Sellers' Headquarter's Data Center is excluded.


*Software*
The following software:
- SDS optical software
- Optifacts/ TNT

## Schedule 1.2(i)

## Excluded Rights, Claims and Causes of Actions

| Description of Cause of Action | Nature of Claim | Amount Requested | Current Value of Debtor's Interest |
|---|---|---|---|
| Aggrenox (100.196) - Consumers and third party payors are alleging that Boehringer Ingelheim unlawfully paid Teva, as part of a settlement of patent infringement litigation, to delay the launch of a generic Aggrenox product. | Class Action Suit | Unknown | Unknown |
| Ahold USA, Inc. v Allergan, PLC, et al. 1:16-cv-11498 D. Mass Fully Executed Assignments / McKesson Claims Review re: Asacol | Class Action Suit | Unknown | Unknown |
| Ahold USA, Inc. v. Lannett Company, Inc., et al. In re Generic Pharmaceuticals Pricing Antitrust Litigation 2:16-cv-03844 E.D. PA 17-3768 is the civil action Fully Executed Assignments / McKesson Claims Review re: Digoxin and Doxycycline | Class Action Suit | Unknown | Unknown |
| AndroGel Antitrust Litigation N.D. GA 09 MD 02084 1:09-cv-00956 TWT *Make sure to follow the direct purchase case. Fully Executed Assignments / McKesson Claims Review re: AndroGel | Class Action Suit | Unknown | Unknown |
| Automotive Parts - End Payor Class Settlement - Defendants unlawfully raised the price of certain vehicle component parts. Therefore, those who purchased or leased new vehicles may have paid more than they should have. | Class Action Suit | Unknown | Unknown |
| Capacitors Indirect - Defendants, Hitachi, Soshin Electronics, Rubycon, Holy Stone and Nippon/United Chemi-Con have agreed to Seettlement resolving claims that they allegedly fixed the prices of certain capacitors (components that store electric charges between one or more pairs of conductors separated by a insulator) | Class Action Suit | Unknown | Unknown |
| Capacitors Indirect Purchaser - In re Capacitors Antitrust Litigation – All Indirect Purchaser Actions, Master File No. 3:14-cv-03264-JD - Entities that purchased capacitors, manufactured by defendants, from a third party distributor | Class Action Suit | Unknown | Unknown |
| Cathode Ray Tube - Alleged conspiracy by defendants to fix, raise, maintain or stabilize prices of CRT Products resulting in overcharges to consumers. | | | |
| Climate Master's Heating & Cooling, LLC, v. United Rentals - Plaintiff's allege that Climate Master's collected refueling service charges and environmental service charges which were in excess of United Rental's costs for providing those services. | Class Action Suit | Unknown | Unknown |
| Containerboard Products Antitrust Class Action - Linerboard, corrugated medium, corrugated sheets, and corrugated products | Class Action Suit | Unknown | Unknown |
| Doctors Club Unsolicited Fax - Certify that we received unsolicited faxes | Class Action Suit | Unknown | Unknown |
| Domestic Airline Travel Antitrust Litigation - Airline tickets purchased through certain airlines | Class Action Suit | Unknown | Unknown |
| Effexor XR Antitrust Litigation 11 CV 05479 D.NJ 15-1184 3rd Cir Fully Executed Assignments / McKesson Claims Review re: Effexor XR | Class Action Suit | Unknown | Unknown |

| Description of Cause of Action | Nature of Claim | Amount Requested | Current Value of Debtor's Interest |
|---|---|---|---|
| Emery Wilson Corporation Unsolicited Faxes Class Action - Emery Wilson Corporation was sending unsolicited faxes, for advertising purposes, without prior constent. This violates the Telephone Consumer Protection Act. | Class Action Suit | Unknown | Unknown |
| Federal Trade Commission v. Abbvie Inc et al. 2:14-cv-05151-HB E.D. PA Fully Executed Assignments / McKesson Claims Review re: Androgel | Class Action Suit | Unknown | Unknown |
| Flash Memory - Entities that purchased final flash products driectly from SanDisk, or from its controlled and licensed joint venture with Toshiba Corp., while residing in U.S | Class Action Suit | Unknown | Unknown |
| Foreign Exchange Antitrust Litigation - FX-Instrument / FX Exchange Traded Instrument | Class Action Suit | Unknown | Unknown |
| Impax Laboratories, Inc. - Unsolicited Faxes Class Action - Impax Laboratories was sending unsolicited faxes for advertising purposes, without prior consent or business relationship. This violates the Telephone Consumer Protection Act. | Class Action Suit | Unknown | Unknown |
| In re Celebrex Antitrust Litigation 14 CV 00361; 00396 E.D. VA Claims administrator: Thomas Sobol HAGENS BERMAN SOBOL SHAPIRO LLP 55 Cambridge Parkway Suite 301 Cambridge, MA 02142 1-617-482-3700 Fully Executed Assignments / McKesson Claims Review re: Celebrex | Class Action Suit | Unknown | Unknown |
| In Re Niaspan Antitrust Litigation 13 MD 02460 E.D. PA Fully Executed Assignments / McKesson Claims Review re: Niaspan | Class Action Suit | Unknown | Unknown |
| In re Opana ER Antitrust Litigation ND Illinois 1:14-cv-10150 Fully Executed Assignments / McKesson Claims Review re: Opana ER | Class Action Suit | Unknown | Unknown |
| In re Solodyn Antitrust Litigation - 13 CV 12225 D. Mass. info@SolodynCase.com Thomas Sobol HAGENS BERMAN SOBOL SHAPIRO LLP 55 Cambridge Parkway Suite 301 Cambridge, MA 02142 Edward Notargiacomo <EdwardNotargiacomo@hbsslaw.com> Fully Executed Assignments / McKesson Claims Review re: Solodyn | Class Action Suit | Unknown | Unknown |
| In Re: Actos Direct Purchaser Antitrust Litigation Southern District of New York 1:15-cv-03278-RA-RLE Fully Executed Assignments / McKesson Claims Review re: Actos | Class Action Suit | Unknown | Unknown |

| Description of Cause of Action | Nature of Claim | Amount Requested | Current Value of Debtor's Interest |
|---|---|---|---|
| ISDA Fix Instruments - Entities who entered into or made payments on, terminated, transacted in, or held an ISDA fix instrument | Class Action Suit | Unknown | Unknown |
| JM Smith Corp v. Actavis 15-cv-7488 SDNY - Fully Executed Assignments / McKesson Claims Review re: Namenda – Alzheimer's drug | Class Action Suit | Unknown | Unknown |
| Lamictal Antitrust Litigation 12 CV 995 NJ 3rd Circuit Court of Appeals 14-1243 Fully Executed Assignments / McKesson Claims Review re: Lamictal (Tablets and Chewables) | Class Action Suit | Unknown | Unknown |
| Libor-Based Financial Instruments Antitrust Litigation - 1. Eurodollar futures or options 2. U.S. Dollar Libor-based instrument in U.S. | Class Action Suit | Unknown | Unknown |
| Lidoderm (100.199) - Consumers and third party payors are alleging that Endo and Teikoku unlawfully paid Watson, as part of a settlement of patent infringement litigation, to delay the launch of a generic Lidoderm product. | Class Action Suit | Unknown | Unknown |
| Lidoderm Antitrust Litigation 3:14-md-02521 N.D. CA By Phone at 1-866-742-4955 By Email at: By Mail at: info@rg2claims.com Lidoderm Direct Purchaser Antitrust Settlement PO Box 59479 Philadelphia, PA 19102-9479 Lidodermantitrustdppsettlement.com Fully Executed Assignments / McKesson Claims Review re: Lidoderm | Class Action Suit | Unknown | Unknown |
| Lipitor Antitrust Litigation MDL Docket No. 2332 D.NJ 14-4202 3rd Cir. Fully Executed Assignments / McKesson Claims Review re: Lipitor | Class Action Suit | Unknown | Unknown |
| Lithium Ion Batteries Direct Purchaser - Entities that purchased a Lithium Ion Battery or Lithium Ion Battery Product directly from defendant | Class Action Suit | Unknown | Unknown |
| Lithium Ion Batteries Indirect Purchaser - Entities that purchased a Lithium Ion Battery or Lithium Ion Battery Product from third party for own use | Class Action Suit | Unknown | Unknown |
| Loestrin Antitrust Litigation 13 MD 02472 D.RI 1st Circuit – 14-2071 Fully Executed Assignments / McKesson Claims Review re: Loestrin 24 Fe | Class Action Suit | Unknown | Unknown |
| Marion HealthCare, LLC, et al. v. Becton Dickinson, et al. 3:2018cv01059 - Defendants overcharged on syringes and IV catheters. | Class Action Suit | Unknown | Unknown |
| McKesson Corporation and Affiliates – Debtors are investigating whether they may have causes of action related to pricing issues and releasing confidential information. | Class Action Suit | Unknown | Unknown |
| Optical Disk Drive Indirect Purchaser - Purchased ODD Devices such as desktop, mobile or laptop computers, videogame consoles, CD players/recorders, DVD players/recorders, and Blu-Ray disc players/records for personal use from 3rd party | Class Action Suit | Unknown | Unknown |
| PACER Class Action | Class Action Suit | Unknown | Unknown |

| Description of Cause of Action | Nature of Claim | Amount Requested | Current Value of Debtor's Interest |
|---|---|---|---|
| National Veterans Legal Services Program, et al. v. United States, Case No. 1:16-CV-00745-ESH- Nonprofit groups filed this lawsuit against the U.S. government claiming that it unlawfully charged PACER users more than necessary to cover the costs of providing public access to federal court records through PACER. | | | |
| Payment Card Interchange Fee-Mastercard/Visa 1:05-md-1720 - Proposed class of merchants who purchased credit card processing services directly from defendants, Visa and MasterCard, as well as their member banks. Plaintiffs allege that defendants fixed the price of interchange fees charged to merchants. | Class Action Suit | Unknown | Unknown |
| Precision Associates Inc., et al. v. Panalpina World Transport (Holding) Ltd., et al. a/k/a Freight Forwarders Class Action Settlement - Defendant companies conspired to fix the prices for freight forwarding services. | Class Action Suit | Unknown | Unknown |
| Rochester Drug Co-Operative Inc. v. Shire LLC et al. Case No. 16-cv-12653-ADB D. Mass. Fully Executed Assignments / McKesson Claims Review re: Intuniv (ADHD) | Class Action Suit | Unknown | Unknown |
| Solodyn (100.197) - Plaintiffs in lawsuit claim that Defendants hurt competition and violated state laws. Defendants allegedly delayed the availability of generic versions of Solodyn and therefore caused consumers and third-party payors to pay too much. | Class Action Suit | Unknown | Unknown |
| Suboxone Antitrust Litigation 13 MD 2445 E.D. PA Fully Executed Assignments / McKesson Claims Review re: Suboxone (Tablets and Film Strips) | Class Action Suit | Unknown | Unknown |
| Transpacific Passenger Air Transportation Antitrust Litigation - Airline tickets purchased through certain airlines | Class Action Suit | Unknown | Unknown |
| United Healthcare Services Inc. v. Cephalon Inc. et al. 17-cv-00555 E.D. PA 2:17-cv-00555 - Fully Executed Assignments / McKesson Claims Review re: Provigil | Class Action Suit | Unknown | Unknown |
| Urethane Direct Purchaser Antitrust Class Action - Polyether Polyol Products: foam used in furniture, bedding, car seats, etc. | Class Action Suit | Unknown | Unknown |

## Schedule 1.2(n)

## Tangible Assets

IBM has a security interest in the following equipment:

| Vendor | Store # | PO # | Description |
|---|---|---|---|
| ACI Worldwide | 981 | 981-JT011717B | EMV support |
| ATEB | 918 | 918-RC122916A | Hardware for Phase 2 EPS upgrade stores |
| AutoPhone Wholesale | 918 | 918-JW092216A | Cradlepoint backups data paths |
| Barcodes Inc. | 918 | 918-BC061318C | SR-05224 DC998 WIFI Network upgrade |
| Barcodes Ince. | 918 | 918-BC051018A | WIFI Network upgrade DC999 |
| Camera Corner | 8 | 008-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 10 | 010-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 11 | 011-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 16 | 016-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 17 | 017-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 18 | 018-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 20 | 020-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 26 | 026-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 30 | 030-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 32 | 032-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 35 | 035-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 36 | 036-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 37 | 037-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 50 | 050-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 51 | 051-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 55 | 055-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 61 | 061-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 62 | 062-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 81 | 081-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 92 | 092-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 99 | 099-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 102 | 102-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 106 | 106-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 112 | 112-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 114 | 114-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 116 | 116-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 120 | 120-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 122 | 122-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 123 | 123-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 127 | 127-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 132 | 132-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 171 | 171-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 179 | 179-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | 200 | 200-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 200 | 200-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 202 | 202-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 203 | 203-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 205 | 205-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 205 | 205-RC071116C | Hardware for Fall 2016 stores |
| Camera Corner | 205 | 205-RC071116D | Hardware for Fall 2016 stores |

| Camera Corner | 206 | 206-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 207 | 207-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 207 | 207-RC071116C | Hardware for Fall 2016 stores |
| Camera Corner | 208 | 208-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 209 | 209-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 211 | 211-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 212 | 212-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 212 | 212-RC071116C | Hardware for Fall 2016 stores |
| Camera Corner | 212 | 212-RC071116D | Hardware for Fall 2016 stores |
| Camera Corner | 213 | 213-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 520 | 520-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 520 | 520-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 538 | 538-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 544 | 544-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 549 | 549-RC071116C | Hardware for Fall 2016 stores |
| Camera Corner | 549 | 549-RC071116D | Hardware for Fall 2016 stores |
| Camera Corner | 550 | 550-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 558 | 558-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 559 | 559-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 559 | 559-RC071116C | Hardware for Fall 2016 stores |
| Camera Corner | 560 | 560-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 566 | 566-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 567 | 567-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 568 | 568-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 569 | 569-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 570 | 570-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 571 | 571-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 572 | 572-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 573 | 573-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 574 | 574-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 575 | 575-RC030215A | Hardware for all Summer 2015 new stores |
| Camera Corner | 582 | 582-RC092315E | Hardware for Winter 2015 new store |
| Camera Corner | 582 | 582-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 583 | 583-RC092315E | Hardware for Winter 2015 new store |
| Camera Corner | 583 | 583-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 584 | 584-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | 584 | 584-RC071116C | Hardware for Fall 2016 stores |
| Camera Corner | 584 | 584-RC071116D | Hardware for Fall 2016 stores |
| Camera Corner | 585 | 585-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 586 | 586-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 587 | 587-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 588 | 588-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 588 | 588-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 589 | 589-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 589 | 589-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 592 | 592-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 592 | 592-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 593 | 593-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 593 | 593-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 594 | 594-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 594 | 594-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 596 | 596-RC113015D | Spring 2016 replacement of 5 servers |

| Camera Corner | 596 | 596-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 597 | 597-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 597 | 597-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 598 | 598-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 598 | 598-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 600 | 600-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | 600 | 600-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | 798 | 798-RC071116C | Hardware for Fall 2016 stores |
| Camera Corner | 798 | 798-RC071116D | Hardware for Fall 2016 stores |
| Camera Corner | 918 | 918-BC032316A | SR-04624 BOPIS iPod devices for stores |
| Camera Corner | 918 | 918-BC032316A | Taxes |
| Camera Corner | 918 | 918-BC082216C | SR-04832 SFS & DPC expansion |
| Camera Corner | 918 | 918-BS070215A | POS monitor replacement |
| Camera Corner | 918 | 918-BS070215A | Taxes |
| Camera Corner | 918 | 918-JW122817A | DC UPS replacement project |
| Camera Corner | 918 | 918-RC052317B | Servers for ISP replacement & EPS backup |
| Camera Corner | 918 | 918-RC072816A | Hardware and Processor maintenance |
| Camera Corner | 918 | 918-RC092315F | Hardware for Winter 2015 new store |
| Camera Corner | 918 | 918-RC122916B | Hardware for Phase 2 EPS upgrade stores |
| Camera Corner | 979 | 979-DT030415A | Project SD-03986 Mac workstation upgrade |
| Camera Corner | 979 | 979-DT030415X | Project SD-03986 Mac workstation upgrade |
| Camera Corner | 979 | 979-DT063015A | Mac Workstation Upgrade |
| Camera Corner | 979 | 979-MS010815D | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815E | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815F | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815G | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815H | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815I | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815J | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815K | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815L | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815M | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815N | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815O | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815P | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815Q | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815R | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815S | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815T | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815U | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815V | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815W | PCs and monitors for new Spring stores |
| Camera Corner | 979 | 979-MS010815X | Taxes |
| Camera Corner | 979 | 979-MS060115A | Store gift registry |
| Camera Corner | 979 | 979-MS072517A | SR-05042 replace windows servers |
| Camera Corner | 981 | 981-RC120216B | Hardware for IS lab |
| Camera Corner | SSC | SSC-BC050118A | SR-04161 Big Box 2018 Phase 2 |
| Camera Corner | | MAR-RC071116B | Hardware for Fall 2016 stores |
| Camera Corner | | MAR-RC071116C | Hardware for Fall 2016 stores |
| Camera Corner | | MAR-RC071116D | Hardware for Fall 2016 stores |
| Camera Corner | | MS060115A | Taxes |
| Camera Corner | | RC030215A | Taxes |

| | | | |
|---|---|---|---|
| Camera Corner | | RC092315E | Taxes |
| Camera Corner | | RC092315F | Taxes |
| Camera Corner | | RC113015D | Taxes |
| Camera Corner | | RC113015E | Taxes |
| Camera Corner | | S01-RC092315F | Hardware for Winter 2015 new store |
| Camera Corner | | S02-RC092315F | Hardware for Winter 2015 new store |
| Camera Corner | | S03-RC092315E | Hardware for Winter 2015 new store |
| Camera Corner | | S03-RC092315F | Hardware for Winter 2015 new store |
| Camera Corner | | S04-RC092315E | Hardware for Winter 2015 new store |
| Camera Corner | | S04-RC092315F | Hardware for Winter 2015 new store |
| Camera Corner | | S05-RC092315E | Hardware for Winter 2015 new store |
| Camera Corner | | S05-RC092315F | Hardware for Winter 2015 new store |
| Camera Corner | | S06-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S06-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | | S07-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S07-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | | S08-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S08-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | | S09-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S09-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | | S10-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S10-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | | S11-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S11-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | | S12-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S12-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | | S13-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S13-RC113015E | Hardware for new 2016 Spring stores |
| Camera Corner | | S14-RC113015D | Spring 2016 replacement of 5 servers |
| Camera Corner | | S14-RC113015E | Hardware for new 2016 Spring stores |
| CDW | 1 | 001-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 2 | 002-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 5 | 005-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 7 | 007-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 14 | 014-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 15 | 015-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 18 | 018-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 24 | 024-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 26 | 026-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 32 | 032-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 33 | 033-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 50 | 050-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 51 | 051-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 99 | 099-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 130 | 130-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 132 | 132-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 170 | 170-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 178 | 178-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 200 | 200-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 200 | 200-RC113015G | Hardware for Winter 2015 new store |
| CDW | 201 | 201-RC071116G | Hardware for Fall 2016 stores |
| CDW | 202 | 202-KL080216B | Device lincenses Nov 2016 new stores |

| CDW | 203 | 203-KL071516B | Device licenses for new Fall stores |
|-----|-----|---------------|-------------------------------------|
| CDW | 205 | 205-KL080216D | Devise licenses for Nov 2016 Rx |
| CDW | 205 | 205-RC071116G | Hardware for Fall 2016 stores |
| CDW | 206 | 206-KL080216B | Device lincenses Nov 2016 new stores |
| CDW | 207 | 207-KL080216B | Device lincenses Nov 2016 new stores |
| CDW | 207 | 207-KL080216D | Devise licenses for Nov 2016 Rx |
| CDW | 207 | 207-RC071116F | Hardware for Fall 2016 stores |
| CDW | 208 | 208-KL080216B | Device lincenses Nov 2016 new stores |
| CDW | 209 | 209-KL080216B | Device lincenses Nov 2016 new stores |
| CDW | 209 | 209-KL080216D | Devise licenses for Nov 2016 Rx |
| CDW | 209 | 209-RC071116F | Hardware for Fall 2016 stores |
| CDW | 211 | 211-RC071116F | Hardware for Fall 2016 stores |
| CDW | 212 | 212-KL080216B | Device lincenses Nov 2016 new stores |
| CDW | 212 | 212-KL080216D | Devise licenses for Nov 2016 Rx |
| CDW | 212 | 212-RC071116F | Hardware for Fall 2016 stores |
| CDW | 212 | 212-RC071116G | Hardware for Fall 2016 stores |
| CDW | 213 | 213-KLI071516B | Device licenses for new Fall stores |
| CDW | 509 | 509-KL082916B | Device lincenses for Fall 2016 stores |
| CDW | 520 | 520-DS102615C | Hardware for 2016 Spring store |
| CDW | 520 | 520-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 520 | 520-RC113015G | Hardware for Winter 2015 new store |
| CDW | 532 | 532-RC010815D | Hardware for new store # 532 |
| CDW | 532 | 532-RC010815E | Hardware for new store # 532 |
| CDW | 532 | 532-RC011215A | Hardware for new store # 532 |
| CDW | 533 | 533-RC010815D | Hardware for new store # 533 |
| CDW | 533 | 533-RC010815E | Hardware for new store # 533 |
| CDW | 533 | 533-RC011215A | Hardware for new store # 533 |
| CDW | 534 | 534-RC010815D | Hardware for new store # 534 |
| CDW | 534 | 534-RC010815E | Hardware for new store # 534 |
| CDW | 534 | 534-RC011215A | Hardware for new store # 534 |
| CDW | 535 | 535-RC010815D | Hardware for new store # 535 |
| CDW | 535 | 535-RC010815E | Hardware for new store # 535 |
| CDW | 535 | 535-RC011215A | Hardware for new store # 535 |
| CDW | 536 | 536-RC010815D | Hardware for new store # 536 |
| CDW | 536 | 536-RC010815E | Hardware for new store # 536 |
| CDW | 536 | 536-RC011215A | Hardware for new store # 536 |
| CDW | 537 | 537-RC010815D | Hardware for new store # 537 |
| CDW | 537 | 537-RC010815E | Hardware for new store # 537 |
| CDW | 537 | 537-RC011215A | Hardware for new store # 537 |
| CDW | 538 | 538-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 538 | 538-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 539 | 539-RC010815D | Hardware for new store # 539 |
| CDW | 539 | 539-RC010815E | Hardware for new store # 539 |
| CDW | 539 | 539-RC011215A | Hardware for new store # 539 |
| CDW | 540 | 540-RC010815D | Hardware for new store # 540 |
| CDW | 540 | 540-RC010815E | Hardware for new store # 540 |
| CDW | 540 | 540-RC011215A | Hardware for new store # 540 |
| CDW | 541 | 541-RC010815D | Hardware for new store # 541 |
| CDW | 541 | 541-RC010815E | Hardware for new store # 541 |
| CDW | 541 | 541-RC011215A | Hardware for new store # 541 |
| CDW | 542 | 542-RC010815D | Hardware for new store # 542 |
| CDW | 542 | 542-RC010815E | Hardware for new store # 542 |

| | | | |
|---|---|---|---|
| CDW | 542 | 542-RC011215A | Hardware for new store # 542 |
| CDW | 543 | 543-RC010815D | Hardware for new store # 543 |
| CDW | 543 | 543-RC010815E | Hardware for new store # 543 |
| CDW | 543 | 543-RC011215A | Hardware for new store # 543 |
| CDW | 544 | 544-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 544 | 544-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 545 | 545-RC010815D | Hardware for new store # 545 |
| CDW | 545 | 545-RC010815E | Hardware for new store # 545 |
| CDW | 545 | 545-RC011215A | Hardware for new store # 545 |
| CDW | 546 | 546-RC010815D | Hardware for new store # 546 |
| CDW | 546 | 546-RC010815E | Hardware for new store # 546 |
| CDW | 546 | 546-RC011215A | Hardware for new store # 546 |
| CDW | 547 | 547-RC010815D | Hardware for new store # 547 |
| CDW | 547 | 547-RC010815E | Hardware for new store # 547 |
| CDW | 547 | 547-RC011215A | Hardware for new store # 547 |
| CDW | 548 | 548-RC010815D | Hardware for new store # 548 |
| CDW | 548 | 548-RC010815E | Hardware for new store # 548 |
| CDW | 548 | 548-RC011215A | Hardware for new store # 548 |
| CDW | 549 | 549-KL082916B | Device lincenses for Fall 2016 stores |
| CDW | 549 | 549-RC071116G | Hardware for Fall 2016 stores |
| CDW | 550 | 550-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 550 | 550-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 551 | 551-RC010815D | Hardware for new store # 551 |
| CDW | 551 | 551-RC010815E | Hardware for new store # 551 |
| CDW | 551 | 551-RC011215A | Hardware for new store # 551 |
| CDW | 552 | 552-RC010815D | Hardware for new store # 552 |
| CDW | 552 | 552-RC010815E | Hardware for new store # 552 |
| CDW | 552 | 552-RC011215A | Hardware for new store # 552 |
| CDW | 553 | 553-RC010815D | Hardware for new store # 553 |
| CDW | 553 | 553-RC010815E | Hardware for new store # 553 |
| CDW | 553 | 553-RC011215A | Hardware for new store # 553 |
| CDW | 554 | 554-RC010815D | Hardware for new store # 554 |
| CDW | 554 | 554-RC010815E | Hardware for new store # 554 |
| CDW | 554 | 554-RC011215A | Hardware for new store # 554 |
| CDW | 555 | 555-RC010815D | Hardware for new store # 555 |
| CDW | 555 | 555-RC010815E | Hardware for new store # 555 |
| CDW | 555 | 555-RC011215A | Hardware for new store # 555 |
| CDW | 558 | 558-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 558 | 558-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 559 | 559-KL071516B | Device licenses for new Fall stores |
| CDW | 559 | 559-RC071116G | Hardware for Fall 2016 stores |
| CDW | 560 | 560-RC022415C | Hardware for all Summer 2015 new stores |
| CDW | 560 | 560-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 560 | 560-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 566 | 566-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 566 | 566-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 567 | 567-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 567 | 567-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 568 | 568-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 568 | 568-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 569 | 569-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 569 | 569-RC022815C | Hardware for all Summer 2015 new stores |

| | | | |
|---|---|---|---|
| CDW | 570 | 570-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 570 | 570-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 571 | 571-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 571 | 571-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 572 | 572-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 572 | 572-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 573 | 573-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 573 | 573-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 574 | 574-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 574 | 574-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 575 | 575-RC022415C | Hardware for Summer 2015 new stores |
| CDW | 575 | 575-RC022815C | Hardware for all Summer 2015 new stores |
| CDW | 582 | 582-RC092915B | Hardware for Winter 2015 new store |
| CDW | 582 | 582-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 582 | 582-RC113015G | Hardware for Winter 2015 new store |
| CDW | 583 | 583-RC092915B | Hardware for Winter 2015 new store |
| CDW | 583 | 583-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 583 | 583-RC113015G | Hardware for Winter 2015 new store |
| CDW | 584 | 584-KL071516B | Device licenses for new Fall stores |
| CDW | 584 | 584-KL071516B | Devise licenses for new Fall stores |
| CDW | 584 | 584-RC071116G | Hardware for Fall 2016 stores |
| CDW | 585 | 585-DS102615C | Hardware for 2016 Spring store |
| CDW | 585 | 585-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 585 | 585-RC113015G | Hardware for Winter 2015 new store |
| CDW | 586 | 586-DS102615C | Hardware for 2016 Spring store |
| CDW | 586 | 586-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 586 | 586-RC113015G | Hardware for Winter 2015 new store |
| CDW | 587 | 587-DS102615C | Hardware for 2016 Spring store |
| CDW | 587 | 587-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 587 | 587-RC113015G | Hardware for Winter 2015 new store |
| CDW | 588 | 588-DS102615C | Hardware for 2016 Spring store |
| CDW | 588 | 588-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 588 | 588-RC113015G | Hardware for Winter 2015 new store |
| CDW | 589 | 589-DS102615C | Hardware for 2016 Spring store |
| CDW | 589 | 589-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 589 | 589-RC113015G | Hardware for Winter 2015 new store |
| CDW | 592 | 592-DS102615C | Hardware for 2016 Spring store |
| CDW | 592 | 592-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 592 | 592-RC113015G | Hardware for Winter 2015 new store |
| CDW | 593 | 593-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 593 | 593-RC113015G | Hardware for Winter 2015 new store |
| CDW | 594 | 594-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 594 | 594-RC113015G | Hardware for Winter 2015 new store |
| CDW | 596 | 596-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 596 | 596-RC113015G | Hardware for Winter 2015 new store |
| CDW | 597 | 597-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 597 | 597-RC113015G | Hardware for Winter 2015 new store |
| CDW | 598 | 598-DS102615C | Hardware for 2016 Spring store |
| CDW | 598 | 598-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 598 | 598-RC113015G | Hardware for Winter 2015 new store |
| CDW | 599 | 599-DS102615C | Hardware for 2016 Spring store |
| CDW | 600 | 600-DS102615C | Hardware for 2016 Spring store |

| CDW | 600 | 600-RC113015F | Hardware for new 2016 Spring stores |
|-----|-----|---------------|-------------------------------------|
| CDW | 600 | 600-RC113015G | Hardware for Winter 2015 new store |
| CDW | 601 | 601-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 615 | 615-KL021517A | PC licenses for EPS Phase II pilot stores |
| CDW | 795 | 795-RC010815D | Hardware for new store # 795 |
| CDW | 795 | 795-RC010815E | Hardware for new store # 795 |
| CDW | 798 | 798-KL082916B | Device lincenses for Fall 2016 stores |
| CDW | 798 | 798-RC071116G | Hardware for Fall 2016 stores |
| CDW | 914 | 914-DO102016A | AIX backup software |
| CDW | 918 | 918-RC022415C | Spare hardware for Summer 2015 new stores |
| CDW | 918 | 918-RC072816B | Rack & mounting hardware for PDX AIX |
| CDW | 918 | 918-RC082515A | Ipad devices for video upload project |
| CDW | 918 | 918-RC092315G | Hardware for Winter 2015 new store |
| CDW | 918 | 918-RC092915B | Hardware for Winter 2015 new store |
| CDW | 918 | 918-RC113015F | Hardware for new 2016 Spring stores |
| CDW | 918 | 918-RC122916C | Hardware for Phase 2 EPS upgrade stores |
| CDW | 975 | 975-KL020718A | Microsoft System Configuration SR-04990 |
| CDW | 975 | 975-KL030518A | Microsoft Windows Server license & assurance |
| CDW | 975 | 975-KL041018A | Microsoft/Vmware licensing Kronos update |
| CDW | 975 | 975-KL052016A | Microsoft licenses for Dematics upgrade |
| CDW | 975 | 975-KL082216A | Software licensing for Fall expansion |
| CDW | 975 | 975-KL083016A | Microsoft software compliance licenses |
| CDW | 975 | 975-KL083016B | Microsoft software compliance licenses |
| CDW | 975 | 975-KL102717A | Symantec Endpoint protection |
| CDW | 975 | 975-KL122817B | SQL server core licenses SR-05204 |
| CDW | 975 | 975-SF010815A | Software for Store 532 |
| CDW | 975 | 975-SF010815B | Software for Store 533 |
| CDW | 975 | 975-SF010815C | Software for Store 534 |
| CDW | 975 | 975-SF010815D | Software for Store 535 |
| CDW | 975 | 975-SF010815E | Software for Store 536 |
| CDW | 975 | 975-SF010815F | Software for Store 537 |
| CDW | 975 | 975-SF010815G | Software for Store 538 |
| CDW | 975 | 975-SF010815H | Software for Store 539 |
| CDW | 975 | 975-SF010815I | Software for Store 540 |
| CDW | 975 | 975-SF010815J | Software for Store 541 |
| CDW | 975 | 975-SF010815K | Software for Store 542 |
| CDW | 975 | 975-SF010815L | Software for Store 543 |
| CDW | 975 | 975-SF010815M | Software for Store 544 |
| CDW | 975 | 975-SF010815N | Software for Store 546 |
| CDW | 975 | 975-SF010815O | Software for Store 545 |
| CDW | 975 | 975-SF010815P | Software for Store 547 |
| CDW | 975 | 975-SF010815Q | Software for Store 548 |
| CDW | 975 | 975-SF010815T | Software for Alco store locations |
| CDW | 975 | 975-SF010815X | Taxes |
| CDW | 977 | 977-GT012115A | XIV Storage replacement SO-04486 |
| CDW | 977 | 977-LW051917A | Mainframe storage replacement |
| CDW | 977 | 977-LW052617A | IBM V7000 Flash & HDD storage |
| CDW | 977 | 977-LW122817B | Spectrum conversion |
| CDW | 978 | 978-SG062016A | Cisco routers for Internet upgrade |
| CDW | 979 | 979-LK091313A | SO-03753 MS Exchange & LCS IM Upgrade |
| CDW | 979 | 979-LK110113A | SD-03721 Workstation Enterprise Refresh |
| CDW | 979 | 979-LK121813A | SO-03721 Workstation Enterprise Refresh |

| | | |
|---|---|---|
| CDW | DS102615C | Taxes |
| CDW | MAR-RC071116F | Hardware for Fall 2016 stores |
| CDW | MAR-RC071116G | Hardware for Fall 2016 stores |
| CDW | RC010815D | Taxes |
| CDW | RC010815E | Taxes |
| CDW | RC010815X | Taxes |
| CDW | RC011215A | Taxes |
| CDW | RC022415B | Hardware for all Summer 2015 new stores |
| CDW | RC022415B | Taxes |
| CDW | RC022415C | Taxes |
| CDW | RC022815C | Taxes |
| CDW | RC082515A | Taxes |
| CDW | RC092315G | Taxes |
| CDW | RC092915B | Taxes |
| CDW | RC113015F | Taxes |
| CDW | RC113015G | Taxes |
| CDW | S01-DS102615C | Hardware for 2016 Spring store |
| CDW | S01-RC092315G | Hardware for Winter 2015 new store |
| CDW | S02-DS102615C | Hardware for 2016 Spring store |
| CDW | S02-RC092315G | Hardware for Winter 2015 new store |
| CDW | S03-DS102615C | Hardware for 2016 Spring store |
| CDW | S03-RC092315G | Hardware for Winter 2015 new store |
| CDW | S03-RC092915B | Hardware for Winter 2015 new store |
| CDW | S04-DS102615C | Hardware for 2016 Spring store |
| CDW | S04-RC092315G | Hardware for Winter 2015 new store |
| CDW | S04-RC092915B | Hardware for Winter 2015 new store |
| CDW | S05-DS102615C | Hardware for 2016 Spring store |
| CDW | S05-RC092315G | Hardware for Winter 2015 new store |
| CDW | S05-RC092915B | Hardware for Winter 2015 new store |
| CDW | S06-DS102615C | Hardware for 2016 Spring store |
| CDW | S06-RC113015F | Hardware for new 2016 Spring stores |
| CDW | S06-RC113015G | Hardware for Winter 2015 new store |
| CDW | S07-DS102615C | Hardware for 2016 Spring store |
| CDW | S07-RC113015F | Hardware for new 2016 Spring stores |
| CDW | S07-RC113015G | Hardware for Winter 2015 new store |
| CDW | S08-DS102615C | Hardware for 2016 Spring store |
| CDW | S08-RC113015F | Hardware for new 2016 Spring stores |
| CDW | S08-RC113015G | Hardware for Winter 2015 new store |
| CDW | S09-DS102615C | Hardware for 2016 Spring store |
| CDW | S09-RC113015F | Hardware for new 2016 Spring stores |
| CDW | S09-RC113015G | Hardware for Winter 2015 new store |
| CDW | S10-DS102615C | Hardware for 2016 Spring store |
| CDW | S10-RC113015F | Hardware for new 2016 Spring stores |
| CDW | S10-RC113015G | Hardware for Winter 2015 new store |
| CDW | S11-DS102615C | Hardware for 2016 Spring store |
| CDW | S11-RC113015F | Hardware for new 2016 Spring stores |
| CDW | S11-RC113015G | Hardware for Winter 2015 new store |
| CDW | S12-DS102615C | Hardware for 2016 Spring store |
| CDW | S12-RC113015F | Hardware for new 2016 Spring stores |
| CDW | S12-RC113015G | Hardware for Winter 2015 new store |
| CDW | S13-DS102615C | Hardware for 2016 Spring store |
| CDW | S13-RC113015F | Hardware for new 2016 Spring stores |

| | | | |
|---|---|---|---|
| CDW | | S13-RC113015G | Hardware for Winter 2015 new store |
| CDW | | S14-RC113015F | Hardware for new 2016 Spring stores |
| CDW | | S14-RC113015G | Hardware for Winter 2015 new store |
| CDW | | SF010815F | Taxes |
| CPT Network Solutions | 1 | 001-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 2 | 002-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 7 | 007-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 7 | 007-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 9 | 009-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 11 | 011-BC070618A | Big Box phase 2 |
| CPT Network Solutions | 12 | 012-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 14 | 014-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 14 | 014-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 15 | 015-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 16 | 016-BC070618A | Big Box phase 2 |
| CPT Network Solutions | 18 | 018-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 21 | 021-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 24 | 024-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 24 | 024-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 26 | 026-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 32 | 032-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 33 | 033-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 44 | 044-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 45 | 045-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 47 | 047-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 50 | 050-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 51 | 051-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 52 | 052-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 53 | 053-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 62 | 062-BC070618A | Big Box phase 2 |
| CPT Network Solutions | 66 | 066-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 70 | 070-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 72 | 072-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 76 | 076-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 79 | 079-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 80 | 080-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 82 | 082-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 84 | 084-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 90 | 090-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 99 | 099-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 101 | 101-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 109 | 109-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 122 | 122-BC070618A | Big Box phase 2 |
| CPT Network Solutions | 130 | 130-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 132 | 132-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 170 | 170-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 170 | 170-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 175 | 175-BC012917A | Store and DC replacement project |
| CPT Network Solutions | 178 | 178-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 601 | 601-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 615 | 615-RC032317B | Cable install for Phase 2 EPS upgrade |
| CPT Network Solutions | 918 | 918-BC111716A | Wiring and install costs for Ship from store |

| | | | |
|---|---|---|---|
| CPT Network Solutions | 918 | 918-JT083116A | Installation costs for October stores |
| CPT Network Solutions | 918 | 918-JT083116B | Installation costs for October stores |
| CPT Network Solutions | 918 | 918-JT083116C | Installation costs for October stores |
| CPT Network Solutions | 918 | 918-JT083116D | Installation costs for October stores |
| CPT Network Solutions | 918 | 918-JT083116E | Installation costs for October stores |
| Data Sales Co. | 100 | 100-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 171 | 171-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 205 | 205RX-DS070716C | Equipment to finish the year out |
| Data Sales Co. | 207 | 207-DS070716C | Equipment to finish the year out |
| Data Sales Co. | 209 | 209-DS070716C | Equipment to finish the year out |
| Data Sales Co. | 211 | 211-DS070716C | Equipment to finish the year out |
| Data Sales Co. | 212 | 212-DS070716C | Equipment to finish the year out |
| Data Sales Co. | 486 | 486-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 487 | 487-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 520 | 520-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 532 | 532-JT011215A | Lexmark printers for conversion store 532 |
| Data Sales Co. | 533 | 533-JT011215A | Lexmark printers for conversion store 533 |
| Data Sales Co. | 534 | 534-JT011215A | Lexmark printers for conversion store 534 |
| Data Sales Co. | 535 | 535-JT011215A | Lexmark printers for conversion store 535 |
| Data Sales Co. | 536 | 536-JT011215A | Lexmark printers for conversion store 536 |
| Data Sales Co. | 537 | 537-JT011215A | Lexmark printers for conversion store 537 |
| Data Sales Co. | 538 | 538-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | 538 | 538-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 539 | 539-JT011215A | Lexmark printers for conversion store 539 |
| Data Sales Co. | 540 | 540-JT011215A | Lexmark printers for conversion store 540 |
| Data Sales Co. | 541 | 541-JT011215A | Lexmark printers for conversion store 541 |
| Data Sales Co. | 542 | 542-JT011215A | Lexmark printers for conversion store 542 |
| Data Sales Co. | 543 | 543-JT011215A | Lexmark printers for conversion store 543 |
| Data Sales Co. | 544 | 544-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | 544 | 544-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 545 | 545-JT011215A | Lexmark printers for conversion store 545 |
| Data Sales Co. | 546 | 546-JT011215A | Lexmark printers for conversion store 546 |
| Data Sales Co. | 547 | 547-JT011215A | Lexmark printers for conversion store 547 |
| Data Sales Co. | 548 | 548-JT011215A | Lexmark printers for conversion store 548 |
| Data Sales Co. | 549 | 549-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 549 | 549RX-DS070716C | Equipment to finish the year out |
| Data Sales Co. | 550 | 550-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | 550 | 550-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 551 | 551-JT011215A | Lexmark printers for conversion store 551 |
| Data Sales Co. | 552 | 552-JT011215A | Lexmark printers for conversion store 552 |
| Data Sales Co. | 553 | 553-JT011215A | Lexmark printers for conversion store 553 |
| Data Sales Co. | 554 | 554-JT011215A | Lexmark printers for conversion store 554 |
| Data Sales Co. | 555 | 555-JT011215A | Lexmark printers for conversion store 555 |
| Data Sales Co. | 556 | 556-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 557 | 557-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 558 | 558-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | 558 | 558-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 559 | 559-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | 559 | 559-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 560 | 560-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | 560 | 560-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 561 | 561-DS060515C | Hardware for new 2015 Fall stores |

| | | | |
|---|---|---|---|
| Data Sales Co. | 562 | 562-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 563 | 563-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 564 | 564-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 565 | 565-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 566 | 566-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 567 | 567-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 568 | 568-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 569 | 569-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 570 | 570-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 571 | 571-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 572 | 572-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 573 | 573-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 574 | 574-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 575 | 575-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 576 | 576-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 577 | 577-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 578 | 578-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 579 | 579-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 580 | 580-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 581 | 581-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 585 | 585-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 586 | 586-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 587 | 587-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 588 | 588-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 589 | 589-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 592 | 592-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 598 | 598-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 599 | 599-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 600 | 600-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | 797 | 797-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 798 | 798-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 798 | 798RX-DS070716C | Equipment to finish the year out |
| Data Sales Co. | 799 | 799-DS060515C | Hardware for new 2015 Fall stores |
| Data Sales Co. | 918 | 918-DS042418A | 2018 Laser printer refresh |
| Data Sales Co. | 918 | 918-DS062915B | MS810'S replacements in Summer stores |
| Data Sales Co. | 918 | 918-DS081117B | Upgrade DC999 laser printers |
| Data Sales Co. | 918 | 918-JM041916A | 2016 Rx Laser Printer Refresh |
| Data Sales Co. | 918 | 918-JM082015A | SD-4570 Rx Laser Printer Refresh 2015 |
| Data Sales Co. | 918 | 918-JW021617A | 2017 laser printer refresh |
| Data Sales Co. | 918 | 918-RC110513A | Store Laser Printers Replacement |
| Data Sales Co. | 918 | 918-RC110513A | Taxes |
| Data Sales Co. | | 99-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | | DS031915D | Taxes |
| Data Sales Co. | | DS060515C | Taxes |
| Data Sales Co. | | DS111615A | Taxes |
| Data Sales Co. | | Extra-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | JT011215A | Taxes |
| Data Sales Co. | | MarinetteDS070716C | Equipment to finish the year out |
| Data Sales Co. | | S01-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S02-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S03-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S04-DS111615A | Hardware for new 2016 Spring stores |

| | | | |
|---|---|---|---|
| Data Sales Co. | | S05-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S06-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S07-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | S07-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S08-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | S08-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S09-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | S09-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S10-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | S10-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S11-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | S11-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S12-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | S12-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S13-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | S13-DS111615A | Hardware for new 2016 Spring stores |
| Data Sales Co. | | S14-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | | S15-DS031915D | Alco registers Phase 2 |
| Data Sales Co. | 11 | 11-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 26 | 26-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 30 | 30-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 38 | 38-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 39 | 39-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 57 | 57-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 61 | 61-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 63 | 63-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 68 | 68-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 72 | 72-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 78 | 78-DS070716H | Ship from stores & fulfillment centers |
| Data Sales Co. | 81 | 81-DS070716H | Ship from stores & fulfillment centers |
| Direct Source Inc. | 981 | 981-JT021618A | New HP RP9 Cash Registers |
| Fujitsu | 981 | 981-JT011817A | POS functionality upgrade |
| Fujitsu | 981 | 981-JT021218A | Software Certification Windows 10 |
| Fujitsu | 981 | 981-JT061418A | 2019 Loyalty project 1st phase |
| Fujitsu | 981 | 981-JT061418B | 2019 Loyalty project 2nd phase |
| Fujitsu | 981 | 981-JT061418C | 2019 Loyalty project 3rd phase |
| Fujitsu | 981 | 981-JT061418D | 2019 Loyalty project 4th phase |
| Fujitsu | 981 | 981-JT070617A | POS functionality debit key PIN prompting |
| Fujitsu | 981 | 981-JT070716A | Promo Card Modification |
| Fujitsu | 981 | 981-JT070717A | Update to loyalty signup process |
| Fujitsu | 981 | 981-JT081616A | Capital lincense purchase |
| Fujitsu | 981 | 981-JT101717B | Coupons exceptions |
| Fujitsu | 981 | 981-JT102716A | POS functionality support |
| Fujitsu | 981 | 981-MV080116A | PSE integration with POS |
| Graybar | 200 | 200-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 520 | 520-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 532 | 532-RC010815G | Hardware for new store # 532 |
| Graybar | 532 | 532-RC010815G | Wall mount roof fan kit store # 532 |
| Graybar | 533 | 533-RC010815G | Hardware for new store # 533 |
| Graybar | 533 | 533-RC010815G | Wall mount roof fan kit store # 533 |
| Graybar | 534 | 534-RC010815G | Hardware for new store # 534 |
| Graybar | 534 | 534-RC010815G | Wall mount roof fan kit store # 534 |

| Graybar | 535 | 535-RC010815G | Hardware for new store # 535 |
| Graybar | 535 | 535-RC010815G | Wall mount roof fan kit store # 535 |
| Graybar | 536 | 536-RC010815G | Hardware for new store # 536 |
| Graybar | 536 | 536-RC010815G | Wall mount roof fan kit store # 536 |
| Graybar | 537 | 537-RC010815G | Hardware for new store # 537 |
| Graybar | 537 | 537-RC010815G | Wall mount roof fan kit store # 537 |
| Graybar | 538 | 538-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 538 | 538-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 539 | 539-RC010815G | Hardware for new store # 539 |
| Graybar | 539 | 539-RC010815G | Wall mount roof fan kit store # 539 |
| Graybar | 540 | 540-RC010815G | Hardware for new store # 540 |
| Graybar | 540 | 540-RC010815G | Wall mount roof fan kit store # 540 |
| Graybar | 541 | 541-RC010815G | Hardware for new store # 541 |
| Graybar | 541 | 541-RC010815G | Wall mount roof fan kit store # 541 |
| Graybar | 542 | 542-RC010815G | Hardware for new store # 542 |
| Graybar | 542 | 542-RC010815G | Wall mount roof fan kit store # 542 |
| Graybar | 543 | 543-RC010815G | Hardware for new store # 543 |
| Graybar | 543 | 543-RC010815G | Wall mount roof fan kit store # 543 |
| Graybar | 544 | 544-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 544 | 544-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 545 | 545-RC010815G | Hardware for new store # 545 |
| Graybar | 545 | 545-RC010815G | Wall mount roof fan kit store # 545 |
| Graybar | 546 | 546-RC010815G | Hardware for new store # 546 |
| Graybar | 546 | 546-RC010815G | Wall mount roof fan kit store # 546 |
| Graybar | 547 | 547-RC010815G | Hardware for new store # 547 |
| Graybar | 547 | 547-RC010815G | Wall mount roof fan kit store # 547 |
| Graybar | 548 | 548-RC010815G | Hardware for new store # 548 |
| Graybar | 548 | 548-RC010815G | Wall mount roof fan kit store # 548 |
| Graybar | 550 | 550-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 550 | 550-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 551 | 551-RC010815G | Hardware for new store # 551 |
| Graybar | 551 | 551-RC010815G | Wall mount roof fan kit store # 551 |
| Graybar | 552 | 552-RC010815G | Hardware for new store # 552 |
| Graybar | 552 | 552-RC010815G | Outbound freight |
| Graybar | 552 | 552-RC010815G | Wall mount roof fan kit store # 552 |
| Graybar | 553 | 553-RC010815G | Hardware for new store # 553 |
| Graybar | 553 | 553-RC010815G | Wall mount roof fan kit store # 553 |
| Graybar | 554 | 554-RC010815G | Hardware for new store # 554 |
| Graybar | 554 | 554-RC010815G | Wall mount roof fan kit store # 554 |
| Graybar | 555 | 555-RC010815G | Hardware for new store # 555 |
| Graybar | 555 | 555-RC010815G | Wall mount roof fan kit store # 555 |
| Graybar | 558 | 558-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 558 | 558-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 560 | 560-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 560 | 560-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 566 | 566-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 566 | 566-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 567 | 567-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 567 | 567-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 568 | 568-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 568 | 568-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 569 | 569-RC022815D | Hardware for Summer 2015 new stores |

| | | | |
|---|---|---|---|
| Graybar | 569 | 569-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 570 | 570-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 570 | 570-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 571 | 571-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 571 | 571-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 572 | 572-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 572 | 572-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 573 | 573-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 573 | 573-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 574 | 574-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 574 | 574-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 575 | 575-RC022815D | Hardware for Summer 2015 new stores |
| Graybar | 575 | 575-RC030515A | Hardware for all Summer 2015 new stores |
| Graybar | 588 | 588-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 589 | 589-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 592 | 592-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 593 | 593-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 594 | 594-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 596 | 596-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 597 | 597-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 598 | 598-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 600 | 600-RC113015H | Hardware for Winter 2015 new store |
| Graybar | 795 | 795-RC010815G | Hardware for new store # 795 |
| Graybar | 795 | 795-RC010815G | Wall mount roof fan kit store # 795 |
| Graybar | 918 | 918-JW050118A | Replace defective UPS units |
| Graybar | 918 | 918-RC073113F | Taxes |
| Graybar | 918 | 918-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | RC010815G | Taxes |
| Graybar | | RC022815D | Taxes |
| Graybar | | RC030515A | Taxes |
| Graybar | | RC113015H | Taxes |
| Graybar | | S06-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | S07-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | S08-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | S09-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | S10-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | S11-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | S12-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | S13-RC113015H | Hardware for Winter 2015 new store |
| Graybar | | S14-RC113015H | Hardware for Winter 2015 new store |
| HCL Technologies | 915 | 915-JB081616A | Service agreement |
| HCL Technologies | 981 | 981-JH083116A | Service agreement |
| Heartland Business | 978 | 978-BL121417B | Core Firewall hardware & software |
| Heartland Business | 978 | 978-BL121517A | Hardware/Software installation |
| IBM | 977 | 977-DO083017A | IBM V7000 hardware |
| JDA Software | 981 | 981-JT091616C | DEX licenses |
| Magnetic Products and Services | 917 | 917-CS01292014A | 3592 Tape Libraries |
| Magnetic Products and Services | 917 | 917-CS01292014A | Taxes |
| Magnetic Products and Services | 917 | 917-CS01292014B | 3592 Tape Libraries |
| Magnetic Products and Services | 917 | 917-CS01292014B | Taxes |
| Magnetic Products and Services | 917 | 917-CS07032014A | Data tape for mainframe tape libraries |
| Magnetic Products and Services | 917 | 917-CS07032014A | Taxes |

| Moxie Group | 981 | 981-JH103117A | Ecom hosting services for OCP |
| Oracle America | 981 | 981-DO041514A | Professional Services for MDO Clustering |
| Oracle America | 981 | 981-DO041514A | Taxes |
| Oracle America | 981 | 981-DO112917A | MDO modification for Hometowns |
| Oracle America | 981 | 981-DS041514A | Professional Services for MDO Clustering |
| Oracle America | 981 | 981-JH072817A | Oracle profeesional servcies |
| PC Connection | 918 | 918-DS092313C | Depot Spare monitors for POS |
| PC Connection | 979 | 979-DS120215A | Laptops for new store swat team |
| PC Connection | 979 | 979-JB042114A | Workstation Refresh - Clerkship/Pharmacy |
| PC Connection | 979 | 979-LK092613A | Taxes |
| PC Connection | 979 | 979-LK092613B | SO-03721 Workstation Enterprise Refresh |
| PC Connection | 979 | 979-LK092613C | SO-03721 Workstation Enterprise Refresh |
| PC Connection | 979 | 979-LK092613C | Taxes |
| PC Connection | 979 | 979-LK092613D | SO-03721 Workstation Enterprise Refresh |
| PC Connection | 979 | 979-LK092613E | SO-03721 Workstation Enterprise Refresh |
| PC Connection | 979 | 979-LK100213A | SO-03721 Workstation Enterprise Refresh |
| PDX | 981 | 981-MV031217A | PDX Classic to EPS upgrade conversion |
| PDX | 981 | 981-MV080816A | New store pharmacy software licensing |
| PDX | 981 | 981-MV080816B | New store pharmacy software licensing |
| PDX | 981 | 981-MV080816C | New store pharmacy software licensing |
| PDX | 981 | 981-MV080816D | New store pharmacy software licensing |
| PDX | 981 | 981-MV080816E | New store pharmacy software licensing |
| PDX | 981 | 981-MV080816F | New store pharmacy software licensing |
| PDX | 981 | 981-MV080816G | New store pharmacy software licensing |
| PDX | 981 | 981-MV080816H | New store pharmacy software licensing |
| Retail Tech | 538 | S538-DS010515A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 544 | S544-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 550 | S550-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 558 | S558-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 202 | 202-DS052616G | IBM 4846-545 Register |
| Retail Tech | 205 | 205-DS052616G | IBM 4846-545 Register |
| Retail Tech | 206 | 206-DS052616G | IBM 4846-545 Register |
| Retail Tech | 207 | 207-DS052616G | IBM 4846-545 Register |
| Retail Tech | 208 | 208-DS052616G | IBM 4846-545 Register |
| Retail Tech | 209 | 209-DS052616G | IBM 4846-545 Register |
| Retail Tech | 212 | 212-DS052616G | IBM 4846-545 Register |
| Retail Tech | 532 | 532-DS010515A | New store register equipment # 532 |
| Retail Tech | 533 | 533-DS010515A | New store register equipment # 533 |
| Retail Tech | 534 | 534-DS010515A | New store register equipment # 534 |
| Retail Tech | 535 | 535-DS010515A | New store register equipment # 535 |
| Retail Tech | 536 | 536-DS010515A | New store register equipment # 536 |
| Retail Tech | 537 | 537-DS010515A | New store register equipment # 537 |
| Retail Tech | 539 | 539-DS010515A | New store register equipment # 539 |
| Retail Tech | 540 | 540-DS010515A | New store register equipment # 540 |
| Retail Tech | 541 | 541-DS010515A | New store register equipment # 541 |
| Retail Tech | 542 | 542-DS010515A | New store register equipment # 542 |
| Retail Tech | 543 | 543-DS010515A | New store register equipment # 543 |
| Retail Tech | 545 | 545-DS010515A | New store register equipment # 545 |
| Retail Tech | 546 | 546-DS010515A | New store register equipment # 546 |
| Retail Tech | 547 | 547-DS010515A | New store register equipment # 547 |
| Retail Tech | 548 | 548-DS010515A | New store register equipment # 548 |
| Retail Tech | 551 | 551-DS010515A | New store register equipment # 551 |

| Retail Tech | 552 | 552-DS010515A | New store register equipment # 552 |
| Retail Tech | 553 | 553-DS010515A | New store register equipment # 553 |
| Retail Tech | 554 | 554-DS010515A | New store register equipment # 554 |
| Retail Tech | 555 | 555-DS010515A | New store register equipment # 555 |
| Retail Tech | 560 | 560-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 566 | 566-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 567 | 567-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 568 | 568-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 569 | 569-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 570 | 570-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 571 | 571-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 572 | 572-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 573 | 573-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 574 | 574-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | 575 | 575-DS010615A | Registers for ALCO conversion Phase 2 |
| Retail Tech | | DS010515A | Taxes |
| Retail Tech | | DS010615A | Taxes |
| RetailNext | 915 | 915-JB033016A | Hardware and software installation |
| Sirius Computer Solutions | 914 | 914-TV092515A | SD-03728 Refresh p-Series Servers |
| Sirius Computer Solutions | 979 | 979-TC012914A | Replace Main Frame Tape Drives |
| Solarwinds | 918 | 918-JW092216B | Polling engine and NetFlow |
| Solarwinds | 978 | 978-SG051917A | Polling engine for SolarWinds licence |
| Southwick Technologies | 520 | 520-DS110615C | Batteries and chargers |
| Southwick Technologies | 549 | 549-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 556 | 556-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 557 | 557-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 561 | 561-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 562 | 562-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 563 | 563-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 564 | 564-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 565 | 565-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 576 | 576-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 577 | 577-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 578 | 578-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 579 | 579-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 580 | 580-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 581 | 581-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 585 | 585-DS110615C | Batteries and chargers |
| Southwick Technologies | 586 | 586-DS110615C | Batteries and chargers |
| Southwick Technologies | 587 | 587-DS110615C | Batteries and chargers |
| Southwick Technologies | 588 | 588-DS110615C | Batteries and chargers |
| Southwick Technologies | 589 | 589-DS110615C | Batteries and chargers |
| Southwick Technologies | 592 | 592-DS110615C | Batteries and chargers |
| Southwick Technologies | 598 | 598-DS110615C | Batteries and chargers |
| Southwick Technologies | 599 | 599-DS110615C | Batteries and chargers |
| Southwick Technologies | 600 | 600-DS110615C | Batteries and chargers |
| Southwick Technologies | 797 | 797-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 798 | 798-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 799 | 799-DS060515E | Hardware for new 2015 Fall stores |
| Southwick Technologies | 918 | 918-HM110813A | Taxes |
| Southwick Technologies | 918 | 918-HM110813A | Upgrade Store Battery Chargers |
| Southwick Technologies | 918 | 918-ST012216A | Taxes |

| | | | |
|---|---|---|---|
| Southwick Technologies | 918 | 918-ST012216A | Upgrade store battery charges |
| Southwick Technologies | | DS060515E | Taxes |
| Southwick Technologies | | DS110615C | Taxes |
| Southwick Technologies | | S01-DS110615C | Batteries and chargers |
| Southwick Technologies | | S02-DS110615C | Batteries and chargers |
| Southwick Technologies | | S03-DS110615C | Batteries and chargers |
| Southwick Technologies | | S04-DS110615C | Batteries and chargers |
| Southwick Technologies | | S05-DS110615C | Batteries and chargers |
| Southwick Technologies | | S06-DS110615C | Batteries and chargers |
| Southwick Technologies | | S07-DS110615C | Batteries and chargers |
| Southwick Technologies | | S08-DS110615C | Batteries and chargers |
| Southwick Technologies | | S09-DS110615C | Batteries and chargers |
| Southwick Technologies | | S10-DS110615C | Batteries and chargers |
| Southwick Technologies | | S11-DS110615C | Batteries and chargers |
| Southwick Technologies | | S12-DS110615C | Batteries and chargers |
| Southwick Technologies | | S13-DS110615C | Batteries and chargers |
| Storeworks | 206 | S206-JT081516C-1 | Fall 2016 store install |
| Storeworks | 208 | S208-JT081516E-1 | Fall 2016 store install |
| Storeworks | 544 | S544-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 549 | S549-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 549 | S549-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 550 | S550-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 556 | S556-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 556 | S556-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 557 | S557-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 557 | S557-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 558 | S558-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 559 | S559-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 559 | S559-JT081516B-1 | Fall 2016 store install |
| Storeworks | 560 | S560-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 561 | S561-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 561 | S561-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 562 | S562-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 562 | S562-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 563 | S563-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 563 | S563-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 564 | S564-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 564 | S564-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 565 | S565-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 565 | S565-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 576 | S576-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 577 | S577-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 578 | S578-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 579 | S579-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 580 | S580-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 581 | S581-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 584 | S584-JT081516A-1 | Fall 2016 store install |
| Storeworks | 797 | S797-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 797 | S797-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 798 | S798-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | 798 | S798-DS060515H | Hardware for new 2015 Fall stores |
| Storeworks | 799 | S799-DS051315A | Hardware for new stores Phase 3 |

| Storeworks | 799 | S799-DS060515H | Hardware for new 2015 Fall stores |
|---|---|---|---|
| Storeworks | 100 | 100-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 171 | 171-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 200 | 200-DS021616B | MC9090 Summer stores 2016 |
| Storeworks | 200 | 200-RC113015M | Hardware for Spring 2016 |
| Storeworks | 201 | 201-DS021616B | MC9090 Summer stores 2016 |
| Storeworks | 202 | 202-DS052616H | Refurbished MC9090-G |
| Storeworks | 205 | 205-DS052616H | Refurbished MC9090-G |
| Storeworks | 206 | 206-DS052616H | Refurbished MC9090-G |
| Storeworks | 206 | 206-JT081516C | Fall 2016 store install |
| Storeworks | 207 | 207-DS052616H | Refurbished MC9090-G |
| Storeworks | 207 | 207-JT081516F | Fall 2016 store install |
| Storeworks | 208 | 208-DS052616H | Refurbished MC9090-G |
| Storeworks | 208 | 208-JT081516E | Fall 2016 store install |
| Storeworks | 209 | 209-DS052616H | Refurbished MC9090-G |
| Storeworks | 212 | 212-DS052616H | Refurbished MC9090-G |
| Storeworks | 212 | 212-JT081516D | Fall 2016 store install |
| Storeworks | 486 | 486-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 487 | 487-DS082616A | Ship from stores & fulfillment centers |
| Storeworks | 520 | 520-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 520 | 520-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 520 | 520-RC113015M | Hardware for Spring 2016 |
| Storeworks | 532 | 532-DS010615B | Hardware for Store # 532 |
| Storeworks | 533 | 533-DS010615B | Hardware for Store # 533 |
| Storeworks | 534 | 534-DS010615B | Hardware for Store # 534 |
| Storeworks | 535 | 535-DS010615B | Hardware for Store # 535 |
| Storeworks | 536 | 536-DS010615B | Hardware for Store # 536 |
| Storeworks | 537 | 537-DS010615B | Hardware for Store # 537 |
| Storeworks | 538 | 538-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 538 | 538-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 538 | 538-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 539 | 539-DS010615B | Hardware for Store # 539 |
| Storeworks | 540 | 540-DS010615B | Hardware for Store # 540 |
| Storeworks | 541 | 541-DS010615B | Hardware for Store # 541 |
| Storeworks | 542 | 542-DS010615B | Hardware for Store # 542 |
| Storeworks | 543 | 543-DS010615B | Hardware for Store # 543 |
| Storeworks | 544 | 544-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 544 | 544-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 545 | 545-DS010615B | Hardware for Store # 545 |
| Storeworks | 546 | 546-DS010615B | Hardware for Store # 546 |
| Storeworks | 547 | 547-DS010615B | Hardware for Store # 547 |
| Storeworks | 548 | 548-DS010615B | Hardware for Store # 548 |
| Storeworks | 550 | 550-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 550 | 550-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 551 | 551-DS010615B | Hardware for Store # 551 |
| Storeworks | 552 | 552-DS010615B | Hardware for Store # 552 |
| Storeworks | 553 | 553-DS010615B | Hardware for Store # 553 |
| Storeworks | 554 | 554-DS010615B | Hardware for Store # 554 |
| Storeworks | 555 | 555-DS010615B | Hardware for Store # 555 |
| Storeworks | 558 | 558-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 558 | 558-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 559 | 559-JT081516B | Fall 2016 store install |

| Storeworks | 559 | 559-RC113015M | Hardware for Spring 2016 |
|---|---|---|---|
| Storeworks | 560 | 560-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 560 | 560-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 566 | 566-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 566 | 566-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 566 | 566-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 567 | 567-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 567 | 567-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 567 | 567-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 568 | 568-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 568 | 568-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 568 | 568-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 569 | 569-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 569 | 569-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 569 | 569-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 570 | 570-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 570 | 570-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 570 | 570-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 571 | 571-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 571 | 571-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 571 | 571-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 572 | 572-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 572 | 572-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 572 | 572-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 573 | 573-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 573 | 573-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 573 | 573-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 574 | 574-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 574 | 574-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 574 | 574-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 575 | 575-DS022315B | Hardware for new stores Phase 2 |
| Storeworks | 575 | 575-DS022415C | Hardware for new stores Phase 2 |
| Storeworks | 575 | 575-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | 584 | 584-JT081516A | Fall 2016 store install |
| Storeworks | 585 | 585-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 585 | 585-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 586 | 586-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 586 | 586-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 587 | 587-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 587 | 587-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 588 | 588-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 588 | 588-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 588 | 588-RC113015M | Hardware for Spring 2016 |
| Storeworks | 589 | 589-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 589 | 589-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 589 | 589-RC113015M | Hardware for Spring 2016 |
| Storeworks | 592 | 592-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 592 | 592-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 592 | 592-RC113015M | Hardware for Spring 2016 |
| Storeworks | 593 | 593-RC113015M | Hardware for Spring 2016 |
| Storeworks | 594 | 594-DS021616B | MC9090 Summer stores 2016 |
| Storeworks | 594 | 594-RC113015M | Hardware for Spring 2016 |

| Storeworks | 596 | 596-DS021616B | MC9090 Summer stores 2016 |
|---|---|---|---|
| Storeworks | 596 | 596-RC113015M | Hardware for Spring 2016 |
| Storeworks | 597 | 597-DS021616B | MC9090 Summer stores 2016 |
| Storeworks | 597 | 597-RC113015M | Hardware for Spring 2016 |
| Storeworks | 598 | 598-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 598 | 598-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 598 | 598-RC113015M | Hardware for Spring 2016 |
| Storeworks | 599 | 599-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 599 | 599-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 600 | 600-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | 600 | 600-DS110615F | Hardware for new 2016 Spring stores |
| Storeworks | 600 | 600-RC113015M | Hardware for Spring 2016 |
| Storeworks | 795 | 795-DS010615B | Hardware for Store # 795 |
| Storeworks | 918 | 918-BC040616A | SR-04624 BOPIS hand scanners |
| Storeworks | 918 | 918-BC040616A | Taxes |
| Storeworks | 918 | 918-BC083015A | SR-04161 WLAN hardware and licenses |
| Storeworks | 918 | 918-BC121615C | Taxes |
| Storeworks | 918 | 918-BC121615C | WAP replacement project |
| Storeworks | 918 | 918-CM050517A | Upgrade POS hand held scanner |
| Storeworks | 918 | 918-CM050517B | Upgrade POS hand held scanner |
| Storeworks | 918 | 918-CM062315A | Taxes |
| Storeworks | 918 | 918-CM062315A | Upgrade POS hand held scanners SKO |
| Storeworks | 918 | 918-CM062315B | Taxes |
| Storeworks | 918 | 918-CM062315B | Upgrade POS hand held scanners HT |
| Storeworks | 918 | 918-DG080316A | Upgrade/replace POS receipts printers |
| Storeworks | 918 | 918-DG080316B | Upgrade POS receipts printer |
| Storeworks | 918 | 918-DO122916A | WLAN hardware, licenses & kitting |
| Storeworks | 918 | 918-DS011614A | Taxes |
| Storeworks | 918 | 918-DS011614A | Upgrade Self-Checkout Touch Screens |
| Storeworks | 918 | 918-DS061413B | Spare Hand Scanners for POS |
| Storeworks | 918 | 918-DS061413B | Taxes |
| Storeworks | 918 | 918-DS110613A | Taxes |
| Storeworks | 918 | 918-DS110613A | Update POS Printers |
| Storeworks | 918 | 918-HM102213A | POS Hand Held Scanners |
| Storeworks | 918 | 918-HM102213A | Taxes |
| Storeworks | 918 | 918-JT020915A | Smart Card Device for new stores |
| Storeworks | 918 | 918-JT032916A | Replacement of Mx880 pinpads for EMV |
| Storeworks | 918 | 918-JT032916A | Taxes |
| Storeworks | 918 | 918-JT040615A | Alco Fall store pinpads |
| Storeworks | 918 | 918-JT110614A | Taxes |
| Storeworks | 918 | 918-JT110614A | TransArmor CC Encryption Rollout |
| Storeworks | 918 | 918-JW032316A | SR-04161 WLAN hardware and licenses |
| Storeworks | 918 | 918-JW032316A | Taxes |
| Storeworks | 918 | 918-JW050516A | WLAN hardware, licenses & kitting |
| Storeworks | 918 | 918-JW062215A | SD-04601 Upgrade/Replace POS Printers |
| Storeworks | 918 | 918-JW062215B | SD-04600 Upgrade POS Receipt Printer |
| Storeworks | 918 | 918-JW073117A | Upgrade/replace POS receipt printers SKO |
| Storeworks | 918 | 918-JW073117B | Upgrade POS receipts printer HT |
| Storeworks | 918 | 918-RC020414E | Hardware for Spring 2014 New Stores |
| Storeworks | 918 | 918-RC020414E | Taxes |
| Storeworks | 918 | 918-RC092315B | Hardware for Winter 2015 new store |
| Storeworks | 918 | 918-RC110113A | Replace Rx Signature Capture Device |

| | | | |
|---|---|---|---|
| Storeworks | 918 | 918-RC110113A | Taxes |
| Storeworks | 918 | 918-RC122916F | Hardware for Phase 2 EPS upgrade stores |
| Storeworks | 918 | 918-RC122916F-01 | Hardware for Phase 2 EPS upgrade stores |
| Storeworks | 978 | 978-SL061314B | Taxes |
| Storeworks | 978 | 978-SL061314B | Wireless AP project |
| Storeworks | | 99-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | | BC083015A | Taxes |
| Storeworks | | DS010615B | Taxes |
| Storeworks | | DS021616B | Taxes |
| Storeworks | | DS022315B | Taxes |
| Storeworks | | DS022415C | Taxes |
| Storeworks | | DS051315A | Taxes |
| Storeworks | | DS060515H | Taxes |
| Storeworks | | DS110615D | Taxes |
| Storeworks | | DS110615F | Taxes |
| Storeworks | | JT020915A | Taxes |
| Storeworks | | JT040615A | Taxes |
| Storeworks | | JW062215A | Taxes |
| Storeworks | | JW062215B | Taxes |
| Storeworks | | RC061515K | Hardware for new 2015 Fall stores |
| Storeworks | | RC061515K | Taxes |
| Storeworks | | RC092315B | Taxes |
| Storeworks | | RC113015M | Taxes |
| Storeworks | | S01-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | | S01-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | | S01-RC092315B | Hardware for Winter 2015 new store |
| Storeworks | | S02-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | | S02-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | | S02-RC092315B | Hardware for Winter 2015 new store |
| Storeworks | | S03-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | | S03-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | | S03-RC092315B | Hardware for Winter 2015 new store |
| Storeworks | | S04-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | | S04-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | | S04-RC092315B | Hardware for Winter 2015 new store |
| Storeworks | | S05-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | | S05-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | | S05-RC092315B | Hardware for Winter 2015 new store |
| Storeworks | | S06-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | | S06-DS110615D | Epson printers and Motorola Scanners |
| Storeworks | | S06-RC113015M | Hardware for Spring 2016 |
| Storeworks | | S07-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | | S07-RC113015M | Hardware for Spring 2016 |
| Storeworks | | S08-DS051315A | Hardware for new stores Phase 3 |
| Storeworks | | S09-RC113015M | Hardware for Spring 2016 |
| Storeworks | | S10-RC113015M | Hardware for Spring 2016 |
| Storeworks | | S11-RC113015M | Hardware for Spring 2016 |
| Storeworks | | S12-RC113015M | Hardware for Spring 2016 |
| Storeworks | | S13-RC113015M | Hardware for Spring 2016 |
| Storeworks | | S14-RC113015M | Hardware for Spring 2016 |
| Storeworks | | S16-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | | S17-SG022315B | Hardware for all Spring 2015 new stores |

| Storeworks | | S18-SG022315B | Hardware for all Spring 2015 new stores |
|---|---|---|---|
| Storeworks | | S19-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | | S20-SG022315B | Hardware for all Spring 2015 new stores |
| Storeworks | | SG022315B | Taxes |
| Storeworks | 11 | 11-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 26 | 26-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 30 | 30-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 38 | 38-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 39 | 39-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 57 | 57-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 61 | 61-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 63 | 63-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 68 | 68-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 72 | 72-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 78 | 78-DS082916A | Ship from stores & fulfillment centers |
| Storeworks | 81 | 81-DS082916A | Ship from stores & fulfillment centers |
| Synercomm | 978 | 978-DO122016A | Infoblox refresh/DNS Server replacement |
| Synercomm | 978 | 978-JK061614B | SD-04298 Network Malware Prevention |
| Tacit Solutions | 981 | 981-JT092517A | SOW custom development of radio code |
| TEKsystems | 981 | 981-JT081116B | SR-04747 Sales audit improvement |
| TwoPoint Conversions | 981 | 981-MV050918Q | Archiving |
| Various | | Various | Taxes |
| Vertical Communications | 2 | 002-BC020117B | Call button for store phone replacements |
| Vertical Communications | 2 | 002-BC113016A | Hardware for store phone replacements |
| Vertical Communications | 20 | 020-BC020117B | Call button for store phone replacements |
| Vertical Communications | 20 | 020-BC113016B | Hardware for store phone replacements |
| Vertical Communications | 26 | 026-BC020117B | Call button for store phone replacements |
| Vertical Communications | 26 | 026-BC113016C | Hardware for store phone replacements |
| Vertical Communications | 30 | 030-BC020117B | Call button for store phone replacements |
| Vertical Communications | 30 | 030-BC113016D | Hardware for store phone replacements |
| Vertical Communications | 42 | 042-BC020117B | Call button for store phone replacements |
| Vertical Communications | 42 | 042-BC113016E | Hardware for store phone replacements |
| Vertical Communications | 50 | 050-BC020117B | Call button for store phone replacements |
| Vertical Communications | 50 | 050-BC113016F | Hardware for store phone replacements |
| Vertical Communications | 55 | 055-BC020117B | Call button for store phone replacements |
| Vertical Communications | 55 | 055-BC113016G | Hardware for store phone replacements |
| Vertical Communications | 99 | 099-BC020117B | Call button for store phone replacements |
| Vertical Communications | 99 | 099-BC113016H | Hardware for store phone replacements |
| Vertical Communications | 102 | 102-BC020117B | Call button for store phone replacements |
| Vertical Communications | 102 | 102-BC113016I | Hardware for store phone replacements |
| Vertical Communications | 170 | 170-BC020117B | Call button for store phone replacements |
| Vertical Communications | 170 | 170-BC113016J | Hardware for store phone replacements |
| Vertical Communications | 171 | 171-BC020117B | Call button for store phone replacements |
| Vertical Communications | 171 | 171-BC113016K | Hardware for store phone replacements |
| Vertical Communications | 200 | 200-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 205 | 205-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 207 | 207-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 209 | 209-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 211 | 211-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 212 | 212-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 520 | 520-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 532 | 532-RC010815H | Hardware for new store # 532 |

| Vertical Communications | 533 | 533-RC010815H | Hardware for new store # 533 |
| Vertical Communications | 534 | 534-RC010815H | Hardware for new store # 534 |
| Vertical Communications | 535 | 535-RC010815H | Hardware for new store # 535 |
| Vertical Communications | 536 | 536-RC010815H | Hardware for new store # 536 |
| Vertical Communications | 537 | 537-RC010815H | Hardware for new store # 537 |
| Vertical Communications | 538 | 538-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 539 | 539-RC010815H | Hardware for new store # 539 |
| Vertical Communications | 540 | 540-RC010815H | Hardware for new store # 540 |
| Vertical Communications | 541 | 541-RC010815H | Hardware for new store # 541 |
| Vertical Communications | 542 | 542-RC010815H | Hardware for new store # 542 |
| Vertical Communications | 543 | 543-RC010815H | Hardware for new store # 543 |
| Vertical Communications | 544 | 544-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 545 | 545-RC010815H | Hardware for new store # 545 |
| Vertical Communications | 546 | 546-RC010815H | Hardware for new store # 546 |
| Vertical Communications | 547 | 547-RC010815H | Hardware for new store # 547 |
| Vertical Communications | 548 | 548-RC010815H | Hardware for new store # 548 |
| Vertical Communications | 549 | 549-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 549 | 549-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 550 | 550-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 551 | 551-RC010815H | Hardware for new store # 551 |
| Vertical Communications | 552 | 552-RC010815H | Hardware for new store # 552 |
| Vertical Communications | 553 | 553-RC010815H | Hardware for new store # 553 |
| Vertical Communications | 554 | 554-RC010815H | Hardware for new store # 554 |
| Vertical Communications | 555 | 555-RC010815H | Hardware for new store # 555 |
| Vertical Communications | 556 | 556-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 557 | 557-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 558 | 558-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 559 | 559-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 560 | 560-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 561 | 561-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 562 | 562-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 563 | 563-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 564 | 564-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 565 | 565-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 566 | 566-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 567 | 567-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 568 | 568-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 569 | 569-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 570 | 570-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 571 | 571-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 572 | 572-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 573 | 573-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 574 | 574-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 575 | 575-RC022815F | Hardware for Summer 2015 new stores |
| Vertical Communications | 576 | 576-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 577 | 577-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 578 | 578-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 579 | 579-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 580 | 580-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 581 | 581-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 582 | 582-RC092915F | Hardware for Winter 2015 new store |
| Vertical Communications | 583 | 583-RC092915F | Hardware for Winter 2015 new store |

| | | | |
|---|---|---|---|
| Vertical Communications | 584 | 584-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 588 | 588-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 589 | 589-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 592 | 592-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 593 | 593-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 594 | 594-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 596 | 596-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 597 | 597-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 598 | 598-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 600 | 600-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | 797 | 797-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 798 | 798-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 798 | 798-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | 799 | 799-RC061515N | Hardware for new 2015 Fall stores |
| Vertical Communications | 918 | 918-BC010716A | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716B | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716C | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716D | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716E | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716F | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716G | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716G | Taxes |
| Vertical Communications | 918 | 918-BC010716H | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716I | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-BC010716J | Hardware for 2015 store phone replacement |
| Vertical Communications | 918 | 918-RC092915F | Hardware for Winter 2015 new store |
| Vertical Communications | | MAR-RC071116Q | Hardware for Fall 2016 stores |
| Vertical Communications | | RC010815H | Taxes |
| Vertical Communications | | RC022815F | Taxes |
| Vertical Communications | | RC061515N | Taxes |
| Vertical Communications | | RC092315F | Taxes |
| Vertical Communications | | RC092915F | Taxes |
| Vertical Communications | | RC113015P | Taxes |
| Vertical Communications | | S03-RC092915F | Hardware for Winter 2015 new store |
| Vertical Communications | | S04-RC092915F | Hardware for Winter 2015 new store |
| Vertical Communications | | S05-RC092915F | Hardware for Winter 2015 new store |
| Vertical Communications | | S06-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | | S07-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | | S08-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | | S09-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | | S10-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | | S11-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | | S12-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | | S13-RC113015P | Hardware for Spring 2016 |
| Vertical Communications | | S14-RC113015P | Hardware for Spring 2016 |
| Volumatic | 918 | 918-JT102815A | Cash scale for Hometown Stores |
| Volumatic | 918 | 918-JT102815A | Taxes |
| Volumatic | 918 | 918-JT102815B | Cash scale for Hometown Stores |
| Volumatic | 918 | 918-JT102815B | Taxes |
| WaterMark Software | 981 | 981-DO120116A | Consulting for Allocation enhancement |
| WaterMark Software | 981 | 981-DO121516A | Consulting services for pricing project |
| WaterMark Software | 981 | 981-MV072516A | Consulting services for ProviderPay 340b |

**Schedule 3.3**

**Conflicts; Consents**

**(a)**

<u>**Contracts**</u>

*Suppliers/Service Providers*

| Contract Counterparty | Counterparty Address | Type of Contract |
|---|---|---|
| Carl Zeiss Vision | 12121 Scripps Summit Dr, San Diego, CA 92131 | Optical Lens Provider |

*Managed Care Agreements*

| Contract Counterparty | Address | City, State, Zip | Government Contract? |
|---|---|---|---|
| Kalispel Tribe of Indians | PO BOX 39 | USK, WA 99180 | Tribal Contract |

*Software Licenses/Maintenance Agreements*
- SDS optical software
- Optifacts / TNT
- Google Maps
- Jobson Medical Information LLC

**(b)**

None.

## Schedule 3.4

## Title to Properties

**(d)**

None.

**(d)(v)(i), (ii), (iii) and (iv)**

| | Store Address | City | State | Security Deposit Paid? | Security Deposit Applied? | If yes, how much remains? | Term Commencement Date | Term Expiration Date | ESTIMATED Rent Commencement Date | LL Work Completed? | If no, what remains? | T Work Completed? | If no, what remains? | TA Amount | TA Paid To-Date | All Permits / COs Received? | Store Open for Business? | Current Monthly Base Rent | Current Monthly CAM, ins, taxes | % of center on parcel for CAM, ins, taxes | Broker Commission? | If yes, LL or T pays? | If yes, fully paid? | If no, how much remains? *ESTIMATION* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 3307 7th Avenue SE | Aberdeen | SD | 2/1/2019 | $ | $3,00 0.00 | 2/1/2019 | 1/31/2026 | 5/1/2019 | Yes | | No | Tenant Spec | $ 30,000.00 | $ - | Applied for Permits | | $ 3,33 3.33 | $ - | 14.20% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 2 | 1490 Oneida St | Appleton | WI | N/A | $ - | $ - | Est 8/1/19 | TBD | TBD | No | Tenant Spec | No | Tenant Spec | $ 60,000.00 | $ - | Applied for Permits | | $ 4,37 5.00 | $ 883.75 | 32.30% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 3 | 555 Cornhusker Road, Suite 203 & 204 | Bellevue | NE | N/A | $ - | $ - | 1/15/2019 | 5/14/2024 | 5/15/2019 | Yes | | No | Tenant Spec | $ 79,625.00 | $ - | Applied for Permits | | $ 3,79 1.67 | $ 731.80 | 10.62% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 4 | 2787 Milwaukee Road, | Beloit | WI | N/A | $ - | $ - | 1/15/2019 | 5/14/2024 | 5/15/2019 | Yes | | No | Tenant Spec | $ 42,850.00 | $ - | Applied for Permits | | $ 3,14 2.33 | $ 869.86 | 9.30% | Paid By Landlord | Paid By Landlord | | $4 psf |

|  | Suite A |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 963 W Clairemont Ave | Eau Claire | WI | N/A | $ - | $ - | 9/1/1986 | 6/30/2021 | 9/1/1986 | Yes |  | Yes | NA | $ - | $ - | Yes | Yes | $3,214.38 | $1,376.58 | 4.83% | Paid By Landlord | Paid By Landlord | Yes | N/A |
| 6 | 2801 Pine Lake Road, Suite J | Lincoln | NE | 1/31/2019 | $ | $10,235.0 | 6/1/2019 | 1/31/2025 | 6/1/2019 | Yes |  | No | Tenant Spec | $53,340.00 | $ - | Applied for Permits |  | $5,111.75 | $ - | 3.39% | Paid By Landlord | Paid By Landlord |  | $4 psf |
| 7 | 3868 East Washington Ave, Suite F | Madison | WI | N/A | $ - | $ - | 6/15/2019 | 6/14/2024 | 6/15/2019 | Yes |  | No | Tenant Spec | $41,350.00 | $ - | Applied for Permits |  | $2,894.50 | $1,268.07 | 18.54% | Paid By Landlord | Paid By Landlord |  | $4 psf |
| 8 | 4530 Calumet Avenue, Unit 103 | Manitowoc | WI | N/A | $ - | $ - | 2/1/2019 | 5/31/2024 | 6/1/2019 | Yes |  | No | Tenant Spec | $140,280.00 | $ - | Applied for Permits |  | $3,896.67 | $757.50 | 34.90% | Paid By Landlord | Paid By Landlord |  | $4 psf |
| 9 | 3107 US Route 42 West | Marquette | MI | N/A | $ - | $ - | 2/1/2019 | 5/31/2024 | 6/1/2019 | Yes |  | No | Tenant Spec | $ - | $ - | Permits Received |  | $1,585.33 | $1,910.33 | 15.38% | Paid By Landlord | Paid By Landlord |  | $4 psf |
| 10 | 1640 Appleton Road | Menasha | WI | N/A | $ - | $ - | 7/1/1996 | 6/30/2021 | 7/1/1996 | Yes |  | Yes | NA | $ - | $ - | Yes | Yes | $2,526.34 | $520.00 | 2.79% | Paid By Landlord | Paid By Landlord | Yes | N/A |
| 11 | 10996 N Port Washington Road | Mequon | WI | N/A | $ - | $ - | 10/6/2018 | 10/31/2023 | 10/6/2018 | Yes |  | Yes | NA | $85,000.00 | $85,000.0 | Yes | Yes | $3,120.00 | $1,053.66 | 0.66% | Paid By Landlord | Paid By Landlord | Yes | N/A |
| 12 | 6000 Monona Drive, Unit 1002 | Monona | WI | N/A | $ - | $ - | 2/8/2019 | 2/7/2024 | 6/8/2019 | Yes |  | No | Tenant Spec | $35,000.00 | $ - | Applied for Permits |  | $2,261.00 | $633.08 | 6.82% | Paid By Landlord | Paid By Landlord |  | $4 psf |

| # | Address | City | State | | | | | | | | | | | | | | | | | | | | | |
|---|---------|------|-------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | 1154 West owne Drive | Neen ah | WI | N/A | $ - | $ - | 3/4/2019 | 6/30/2024 | 7/4/2019 | Yes | | No | Tenant Spec | $60,920.00 | $ - | Permits Received | | $3,553.67 | $956.95 | 16.99 | | Paid By Landlord | Paid By Landlord | | $4 psf |
| 14 | 3020 S 84th St | Omaha | NE | N/A | $ - | $ - | 6/19/2017 | 9/18/2022 | 9/18/2017 | Yes | | Yes | NA | $25,000.00 | $25,000.00 | Yes | Yes | $2,500.00 | $500.00 | 25.00% | Paid By Landlord | Paid By Landlord | Yes | $4 psf |
| 15 | 1212 S Koeller St | Oshkosh | WI | N/A | $ - | $ - | 1/11/2019 | 1/10/2024 | 5/11/2019 | Yes | | No | Tenant Spec | $103,200.00 | $ - | Applied for Permits | | $4,013.33 | $1,318.66 | 16.04% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 16 | 1810 Jackson Street | Oshkosh | WI | N/A | $ - | $ - | 9/14/2018 | 9/30/2022 | 8/9/2019 | Yes | | Yes | NA | $30,000.00 | $ - | Yes | Yes | $3,500.00 | $991.68 | 2.34% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 17 | 1440 Capitol Drive, Suite B | Pewaukee | WI | N/A | $ - | $ - | 2/15/2019 | 6/14/2024 | 6/15/2019 | No | Tenant Spec | No | Tenant Spec | $81,640.00 | $ - | Permits Received | | $4,592.25 | $1,148.06 | 16.41% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 18 | 2185 Lincoln Street | Rhinelander | WI | N/A | $ - | $ - | 2/1/2019 | 1/31/2024 | 6/1/2019 | Yes | | No | Tenant Spec | $38,925.00 | $ - | Permits Received | | $1,557.00 | $408.71 | 3.40% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 19 | 1039 E Grand Ave | Rothschild | WI | N/A | $ - | $ - | 2/1/1992 | 1/31/2023 | 2/1/1992 | Yes | | Yes | NA | $ - | $ - | Yes | Yes | $1,847.83 | $749.59 | 4.38% | Paid By Landlord | Paid By Landlord | Yes | N/A |
| 20 | 2812 W 41st Street | Sioux Falls | SD | N/A | $ - | $ - | 1/15/2019 | 1/14/2026 | 5/15/2019 | Yes | | No | Tenant Spec | $75,360.00 | $ - | Permits Received | | $4,186.67 | $823.11 | 32.20% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 21 | 1211-1215 E Washington Ave | Union Gap | WA | N/A | $ - | $ - | 1/15/2019 | 5/14/2019 | 5/15/2019 | Yes | | No | Tenant Spec | $50,000.00 | $ - | Applied for Permits | | $4,687.50 | $1,468.74 | 50.00% | Paid By Landlord | Paid By Landlord | | $4 psf |
| 22 | 1500 South Church | Watertown | WI | N/A | $ - | $ - | 5/15/2019 | 6/14/2024 | 6/15/2019 | Yes | | No | Tenant Spec | $48,000.00 | $ - | Applied for | | $3,300.00 | $1,400.00 | 66.67% | Paid By | Paid By Lan | | $4 psf |

| | | | | | | | | | | | | | | | | Perm its | | | | | Landlo rd | dlor d | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 3 | 1166 W Sunset Drive, Suite F-100 | Wauk esha | WI | 12/31 /2018 | $ | LOC $127 ,200 | 4/8/201 9 | 4/30/ 2024 | 12/10/2 018 | Yes | | Yes | NA | $ 127,2 00.00 | $ - | Yes | Yes | $ 4,85 8.33 | $ 874. 50 | 0.7 6% | Paid By Landlo rd | Paid By Lan dlor d | Ye s | N/A |
| 2 4 | 1745 South Main St | West Bend | WI | N/A | $ - | $ - | 2/4/201 9 | 6/30/ 2024 | 6/4/201 9 | Yes | | No | Tena nt Spec | $ 92,00 0.00 | $ - | Appli ed for Perm its | | $ 4,79 1.67 | $ 1,12 5.08 | 2.4 0% | Paid By Landlo rd | Paid By Lan dlor d | | $4 psf |
| 2 5 | 9000 South 1500 West, Suite E | West Jorda n | UT | 3/1/2 019 | $ | $ 5,10 0.00 | 3/1/201 9 | 2/28/ 2026 | 6/1/201 9 | Yes | | No | Tena nt Spec | $ 30,00 0.00 | $ - | Appli ed for Perm its | | $ 5,10 0.00 | $ - | 25. 00 % | Paid By Landlo rd | Paid By Lan dlor d | | $4 psf |
| 2 6 | 2843 South 5600 West, Suite 170 | West Valley City | UT | N/A | $ - | $ - | 1/15/20 19 | 1/14/ 2026 | 5/1/201 9 | Yes | | No | Tena nt Spec | $ 56,57 5.00 | $ - | Appli ed for Perm its | | $ 3,34 5.83 | $ 1,14 0.63 | 21. 79 % | Paid By Landlo rd | Paid By Lan dlor d | | $4 psf |

**Schedule 3.5**

**Litigation**

**(a)**

None.

**(b)**

**Schedule 3.6**

**Permits; Compliance with Laws; Healthcare Matters**

**(b)**

Seller has entered into certain optometry agreements and administrative services arrangements via lease agreements with licensed optometrists pursuant to which Seller provides certain services, property, and equipment to ease the administrative burden on such optometrists in order to allow them to focus on providing optometry services to their patients and Seller's customers. Seller has entered into these agreements in the following six (6) corporate practice of medicine and licensed professional ("CPOM") states: (i) Idaho; (ii) Illinois; (iii) Iowa; (iv) Montana; (v) South Dakota; and (vi) Washington. These agreements do not contain state-specific or other safeguards to ensure Seller is in compliance with the CPOM and all other Laws, Orders, and requirements of Governmental Bodies applicable to such relationships.

**(c)**

In Fiscal 2018, Shopko identified during its routine process review, potential overpayments related to plan (the "Plan") set up for Avesis (the "Payor").  The Plan was set up so that the retail price included a dispensing fee.  After the potential issue was identified, Shopko sent a letter to the Payor which included a check for the calculated overpayment.  Other than this adjustment, ShopKo has only had recoupments when an incorrect government plan was billed and a different government plan needed to be billed.

**Schedule 3.7(a)**

**Intellectual Property**

None.

**Schedule 3.8(a)**

**Seller Plans**

1. Medical plans through Anthem BlueCross BlueShield
2. Medical plans through UnitedHealthcare
3. Medical plans through Cigna
4. Dental plans through Delta Dental
5. Vision plans through EyeMed Vision Care
6. Health Savings Account administered by WageWorks
7. Flexible Spending Account administered by WageWorks
8. Life insurance and accidental death and dismemberment insurance through Lincoln Financial Group
9. Short-term disability through Lincoln Financial Group
10. Long-term disability through Lincoln Financial Group
11. Insurance plans for critical illness, accident, and hospitalization through through MetLife
12. COBRA coverage through Anthem BlueCross BlueShield, United Healthcare, Cigna, Delta Dental, and EyeMed Vision Care.
13. Workers' compensation insurance
14. Pet insurance through Nationwide
15. Legal protection through Hyatt Legal
16. Identity theft protection through InfoArmor
17. 401(k) retirement savings plan through Vanguard
18. Paid time off, including holidays, vacation, and sick leave
19. Additional leave benefits, including bereavement and jury duty
20. Employee Assistance Program through Lincoln Financial Group
21. Educational Assistance Program
22. Business travel accident plan

**Schedule 6.1**

**Conduct of Business of Sellers**

**(b)(i)**

Proposed key employee incentive payments to be distributed among eligible employees based on significance of role in achieving milestones and length of employment during wind down of ShopKo.



**(b)(iv)**

None.

## Schedule 6.3(b)

### Leased Optometrists

| Contract Counterparty | Address | City | State | Zip |
|---|---|---|---|---|
| Brittany Korver | 3025 Hamilton Blve | Sioux City | IA | 51104 |
| John Lamers | 2100 Caldwell Blvd | Nampa | ID | 83651 |
| Jason Lorenz | 500 N Hwy 281 | Aberdeen | SD | 57401 |
| Gerrie Lubben | 615 S Monroe | Mason City | IA | 50401 |
| Mike Johnson | 700 9th Ave SE | Watertown | SD | 57201 |
| Meghan Montreal-Steinocker | 1601 W 41st St | Sioux City | SD | 57105 |
| Vally Moua | 1651 W rose St | Walla Walla | WA | 99362 |
| Curtis Newby | 3101 Montana Ave | Helena | MT | 59601 |
| Rebecca Pitt Jackson | 220 Reserve St | Missoula | MT | 59802 |
| Tayna Reid | S 1450 Grand Ave | Pullman | WA | 99164 |
| Tom Rieger | 4501 East Arrowhead Parkway | Sioux City | SD | 57110 |
| Robert Rudman | 2530 Rudkin Rd | Union Gap | WA | 98903 |
| Michelle Scott | 301 Northwest Bypass | Great Falls | MT | 59404 |
| Jasdeep Sidhu | 1340 N Wenatchee Ave | Wenatchee | WA | 98801 |
| Greg Sorensen | 1845 Haines Ave | Rapid City | SD | 57701 |
| Robert Ulland | 9520 N Newport Hwy | Spokane | WA | 99218 |
| Greg Zell | 2510 S Reserve St | Missoula | MT | 59801 |
| Allison Zimmer | 1340 N Wenatchee Ave | Wenatchee | WA | 98801 |

**Schedule 6.4**

**Regulatory Approvals**

None.

**Schedule 6.9**

**Master Store List**

See attached.

## Optical Stores

| Store # | Address1 | City | State | Zip Code | Pre-Signing Liquidated Store (Optical Center) | Post-Closing Liquidated Store (Optical Center) | Retained Store (Optical Center) | Acquired Store (Optical Center) | Assumed Post-Petition Lease | Assumed Lease | Cure Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 216 S Military Ave | Green Bay | WI | 54303 | x | | x | | | | $ - |
| 2 | 301 Bay Park Square | Ashwaubenon | WI | 54304 | | | | Y | | | $ - |
| 3 | 3415 Calumet Ave | Manitowoc | WI | 54220 | | | | Y | | Y | $ - |
| 4 | 2430 E Mason St | Green Bay | WI | 54302 | | | | Y | | | $ - |
| 5 | 230 N Wisconsin St | Depere | WI | 54115 | | | | Y | | | $ - |
| 7 | 4344 Mormon Coulee Rd | Lacrosee | WI | 54601 | | x | x | | | | $ - |
| 8 | 1039 E Grand Ave | Rothschild | WI | 54474 | | | | Y | | Y | $ 1,847.85 |
| 9 | 1306 N Central Ave | Marschfiled | WI | 54449 | | | | Y | | | $ - |
| 10 | 1150 W Washington | Marquette | MI | 49855 | | | | Y | | Y | $ - |
| 11 | 500 S Carpenter Ave | Kingsford | MI | 49802 | | | | Y | | | $ - |
| 12 | 1100 E Riverview Expy | Wisconsin Rapids | WI | | | | | Y | | | $ - |
| 14 | 822 Park Ave | Beaver Dam | WI | 53916-2206 | | | | Y | | | $ - |
| 15 | 1000 W Northland Ave | Appleton | WI | 54914 | | | | Y | | | $ - |
| 16 | 2530 First Avenue N | Escanaba | MI | 49829 | | | | Y | | | $ - |
| 17 | 4161 2nd St S | St. Cloud | MN | 56301 | | | | Y | | | $ - |
| 18 | 1710 S Main St | West Bend | WI | 53095 | | | | Y | | Y | $ - |
| 19 | 701 S Church St | Watertown | WI | 53094-6213 | | | | Y | Y | Y | $ - |
| 21 | 1850 Madison Ave | Mankato | MN | 56001 | | | | Y | | | $ - |
| 22 | 1900 N Main St | Mitchell | SD | 57301 | | x | x | | | | $ - |
| 23 | 125 Main St. N. | Hutchinson | MN | 55350-1807 | | x | x | | | | $ - |
| 24 | 963 W. Clairemont Ave | EauClaire | WI | 54701 | | | | Y | | Y | $ 4,590.96 |
| 25 | 1200 Susan Dr | Marshall | MN | 56258 | | | | Y | | | $ - |
| 26 | 2761 Prairie Ave | Beloit | WI | 53511-2246 | | | | Y | | Y | $ - |
| 27 | 4801 Washington Ave | Racine | wi | 53406 | | | | Y | | | $ - |
| 28 | 800 E Maes St | Kimberly | WI | 54136 | | | | Y | | | $ - |
| 29 | 7401 Mineral Point Rd | Madison | WI | 53717-1703 | | | | Y | | | $ - |
| 30 | 2500 E. US HWY 14 | Janesville | WI | 53545-0309 | | | | Y | | | $ - |
| 31 | 5300 52nd St | Kenosha | WI | 53144 | | | | Y | | | $ - |
| 32 | 2101 W Broadway | Monona | WI | 53713-1638 | | | | Y | Y | Y | $ - |
| 33 | 1640 Appleton Rd. | Menasha | WI | 54952 | | | | Y | | Y | $ 3,046.34 |
| 35 | 2820 Highway 63 S | Rochester | MN | 55904-5571 | x | | x | | | | $ - |
| 36 | 3708 Hwy 63 N | Rochester | MN | 55906 | | | | Y | | | $ - |
| 37 | 2677 Prairie View | Chippewa Falls | WI | 54729-7506 | | | | Y | | | $ - |
| 38 | 2208 N Webb Rd | Grand Island | NE | 68803 | | | | Y | | | $ - |
| 39 | 4200 S 27th St bish hts ctr | Lincoln | NE | 68502 | x | | x | | | | $ - |
| 40 | 3025 Hamilton Blvd | Sioux City | IA | 51104 | | | | Y | | | $ - |
| 41 | 1209 18th Ave NW | Austin | MN | 55912-1881 | | | | Y | | | $ - |
| 42 | 1300 South Koeller Rd | Oshkosh | WI | 54902 | | | | Y | | Y | $ - |
| 44 | 3044 South 84th Street, Suite 1 | Omaha | NE | 68124 | | | | Y | | Y | $ - |
| 45 | 601 Galvin Rd S | Bellevue | NE | 68005 | | | | Y | | | $ - |
| 47 | 100 S 66th St | Lincoln | NE | 68510 | | | | Y | | | $ - |
| 48 | 2005 Krenzien St | Norfolk | NE | 68701 | | | | Y | | | $ - |
| 49 | 500 N Hwy 281 | Aberdeen | SD | 57401 | | | | Y | Y | Y | $ - |
| 50 | 616 W Johnson St | Fond Du Lac | WI | 54935 | | | | Y | | | $ - |
| 51 | 1425 Janesville Ave | Fort Atkinson | WI | 53538-2705 | | | | Y | | | $ - |
| 52 | 615 S Monroe Ave | Mason City | IA | 50401 | | | | Y | | | $ - |
| 53 | 510 E Phillip Ave | North Platte | NE | 69101 | | x | x | | | | $ - |
| 54 | 700 9th Ave SE | Watertown | SD | 57201 | | | | Y | | | $ - |
| 55 | 1200 Main St | Stevens Point | WI | 54481 | | | | Y | | | $ - |
| 56 | 14445 W Center Rd | Omaha | NE | 68144 | | | | Y | | | $ - |
| 57 | 405 Cottonwood Dr | Winona | MN | 55987 | | | | Y | | | $ - |
| 58 | 1755 N Humiston Ave | Worthington | MN | 56187 | | x | x | | | | $ - |
| 59 | 1001 S Hwy 15 | Fairmont | MN | 56031 | | | | Y | | | $ - |
| 60 | 2610 N Bridge Ave | Albert Lea | MN | 56007 | | x | x | | | | $ - |
| 61 | 501 Highway 10 SE | St. Cloud | MN | 56304-2227 | | x | x | | | | $ - |
| 62 | 301 Northwest Bypass | Great Falls | MT | 59404 | | x | x | | | | $ - |
| 63 | 4215 Yellowstone Hwy | Chubbuck | ID | 83202 | | x | x | | | | $ - |
| 64 | 2100 Caldwell Blvd | Nampa | ID | 83651 | x | | x | | | | $ - |
| 65 | 8105 Fairview Ave | Boise | ID | 83704 | x | | x | | | | $ - |
| 66 | 9520 N Newport Hwy | Spokane | WA | 99218 | | | | Y | | | $ - |
| 67 | 1649 Pole Line Rd E | Twin Falls | ID | 83301 | | x | x | | | | $ - |
| 68 | 800 E 17th St | Idaho Falls | ID | 83404 | | x | x | | | | $ - |
| 69 | 217 W Ironwood Dr | Coeur D' Alene | ID | 83814 | | | | Y | | | $ - |
| 70 | East 13414 Sprague Ave | Spokane | WA | 99216 | | x | x | | | | $ - |
| 72 | 2120 Thain Grade | Lewiston | ID | 83501 | | | | Y | | | $ - |
| 73 | 2530 Rudkin Rd | Union Gap | WA | 98903 | | | | Y | | | $ - |
| 75 | 2510 S Reserve St | Missoula | MT | 59801 | | | | Y | | | $ - |

| # | Address | City | State | Zip | | | | | | | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 76 | 1601 W 41st St | Sioux Falls | SD | 57105 | | | | Y | | Y | $ - |
| 78 | 1845 Haines Ave | Rapid City | SD | 57701 | | x | x | | | | $ - |
| 79 | 200 S 18th Ave | Wausau | WI | | | | | Y | | | $ - |
| 80 | 2201 Zeier Rd | Madison | WI | 53704-7415 | | | | Y | Y | Y | $ - |
| 81 | 5801 Summit View Ave | Yakima | WA | 98908 | x | | x | | | | $ - |
| 82 | 5959 S State St | Murray | UT | 84107 | x | | x | | | | $ - |
| 83 | 2165 E 9400 S | Sandy | UT | 84093 | x | | x | | | | $ - |
| 84 | 1553 W  9000 S | West Jordan | UT | 84088 | | | | Y | Y | Y | $ - |
| 85 | 5800 S Redwood Rd | Taylorsville | UT | 84123 | x | | x | | | | $ - |
| 86 | 1018 Washington Blvd | Ognden | UT | 84404 | x | | x | | | | $ - |
| 88 | 1150 N Main | Layton | UT | 84041 | | | | Y | | | $ - |
| 89 | 1651 W Rose St | Walla Walla | WA | 99362 | | x | x | | | | $ - |
| 90 | 1771 Wisconsin Ave | Grafton | WI | 53024 | x | | x | | | | $ - |
| 91 | 1341 N Main St | Logan | UT | 84341 | | x | x | | | | $ - |
| 92 | 867 N Columbia Cntr Blvd | Kennewick | WA | 99336 | | x | x | | | | $ - |
| 93 | 60 NE Bend River Mall Drive | Bend | OR | 97701 | x | | x | | | | $ - |
| 95 | 2655 S Broadway Ave | Boise | ID | 83706 | x | | x | | | | $ - |
| 97 | 4850 W 3500 S | West Valley | UT | 84120 | | | | Y | | Y | $ - |
| 98 | 2815 Chad Dr | Eugene | OR | 97408 | | x | x | | | | $ - |
| 99 | 9366 State Hwy 16 | Onalaska | WI | 54650 | | | | Y | | | $ - |
| 100 | 699 Green Bay Rd | Neenah | WI | 54956 | | | | Y | | Y | $ - |
| 101 | 4501 East Arrowhead Parkway | Sioux Falls | SD | 57110 | x | | x | | | | $ - |
| 102 | 2741 Roosevelt Rd | Marinette | WI | 54143 | | | | Y | | | $ - |
| 104 | 747 S Main St | Brigham City | UT | 84302 | x | | x | | | | $ - |
| 105 | 125 S State St | Orem | UT | 84058 | x | | x | | | | $ - |
| 106 | 905 S 24th W | Billings | MT | 59102 | | | | Y | | | $ - |
| 108 | 955 N Main St | Spanish Fork | UT | 84660 | x | | x | | | | $ - |
| 109 | 4060 Riverdale Rd | Riverdale | UT | 84405 | | x | x | | | | $ - |
| 111 | 1230 Lancaster Dr SE | Salem | OR | 97317 | | x | x | | | | $ - |
| 112 | 3101 Montana Ave | Helena | MT | 59601 | | x | x | | | | $ - |
| 113 | 5500 Martin Way | Lacey | WA | 98516 | x | | x | | | | $ - |
| 114 | 801 W Central Entrance | Duluth | MN | 55811 | | x | x | | | | $ - |
| 118 | 518 S Taylor Dr | Sheboygan | WI | 53081 | | | | Y | | | $ - |
| 119 | 1350 N Galena Ave | Dixon | IL | 61021 | | | | Y | | | $ - |
| 120 | 405 W 8th St | Monroe | WI | 53566 | | | | Y | | | $ - |
| 122 | 1340 N Wenatchee Ave | Wenatchee | WA | 98801 | | | | Y | | | $ - |
| 123 | 900 W Memorial Dr | Houghton | MI | 49931 | | x | x | | | | $ - |
| 125 | 555 W South St | Freeport | IL | 61032 | | | | Y | | | $ - |
| 127 | 1450 E Geneva St | Delevan | WI | 53115 | | | | Y | | | $ - |
| 128 | 1370 Hwy 2 E | Kalispell | MT | 59901 | | | | Y | | | $ - |
| 129 | 4515 S. Regal St | Spokane | WA | 99223 | x | | x | | | | $ - |
| 130 | 1777 Paulson Rd | River Falls | WI | 54022 | | | | Y | | | $ - |
| 132 | 320 S. Access Rd | Rice Lake | WI | 54868 | | | | Y | | | $ - |
| 133 | 1400 Big Thunder Blvd | Belivedere | IL | 61008 | | | | Y | | | $ - |
| 134 | South 1450 Grand Ave. | Pullman | WA | 99163 | x | | x | | | | $ - |
| 139 | 3200 Broadway | Quincy | IL | 62301 | | x | x | | | | $ - |
| 140 | 1964 West Morton Avenue | Jacksonville | IL | 62650 | | | | Y | | | $ - |
| 141 | 313 N. Roosevelt Avenue | Burlington | IA | 52601 | x | | x | | | | $ - |
| 142 | 4810 Avenue O | Ft. Madison | IA | 52627 | x | | x | | | | $ - |
| 145 | 1190 North 6th Street Road | Monmouth | IL | 61462 | | x | x | | | | $ - |
| 164 | 255 John F. Kennedy Road | Dubuque | IA | 52002 | | | | Y | | | $ - |
| 170 | 2200 Lincoln Street | Rhinelander | WI | 54501 | | | | Y | | Y | $ - |
| 171 | 1800 Plover Road | Plover | WI | 54467 | | | | Y | | | $ - |
| 172 | 3400 N 27th Street | Lincoln | NE | 68521 | x | | x | | | | $ - |
| 175 | 6845 S 27th Street | Lincoln | NE | 68512 | | | | Y | | Y | $ - |
| 177 | 2320 Lineville Road | Green Bay | WI | 54313 | | | | Y | | | $ - |
| 178 | N 66 W 25201 CTH V V | Sussex | WI | 53089 | | | | Y | | Y | $ - |
| 179 | 5630 St. Croix Trail | North Branch | MN | 55056 | | x | x | | | | $ - |
| 216 | 10996 N Port Washington Rd | Mequon | WI | 53092-5031 | | | | Y | | Y | $ 3,780.82 |
| 217 | 1166 W. Sunset Dr. Suite F100 | Waukesha | WI | 53189 | | | | Y | | Y | $ 123.76 |
| 218 | 1810 Jackson Street | Oshkosh | WI | 54901 | | | | Y | | Y | $ 141.55 |
| 219 | 1490 Oneida St. | Menasha | WI | | | | | | | Y | |
| 502 | 2585 Lineville Road | Howard | WA | 54313 | | x | x | | | | $ - |
| 504 | W3208 Van Roy Road | Appleton | WI | 54915 | x | | x | | | | $ - |
| 505 | 2101 E. Evergreen Dr | Appleton | WI | 54913 | x | | x | | | | $ - |
| 602 | 126 Charles Street | Oconto | WI | 54153 | | x | x | | | | $ - |
| 607 | 1010 South Mainline Dr. | Seymour | WI | 54165 | x | | x | | | | $ - |
| 608 | 1010 W. Ryan St. | Brillion | WI | 54110 | | x | x | | | | $ - |
| 609 | 1120 State Road 67 | Kiel | WI | 53042 | | x | x | | | | $ - |
| 617 | N2585 Plaza RD PO Box 1409 | Wautoma | WI | 54982 | | x | x | | | | $ - |
| 662 | 211 S 23rd St | Plattsmouth | NE | 68048 | x | | x | | | | $ - |
| 788 | 200 Commerce Drive | Columbus | WI | 53925-9567 | | x | x | | | | $ - |
| 789 | 825 W. Fulton St | Waupaca | WI | 54981 | | x | x | | | | $ - |

## Schedule 7.2(d)

## Conditions Precedent

- ████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████ .

- ████████████████████████████████████████████ ███████████████████████████████████████ █████████████████████████████████████

### Schedule 11.1(h)

### Assumed Post-Petition Leases

1.      Lease between ShopKo and Lamont Strip Mall III, LLC., dated as of January 30, 2019, for the property located at 3307 7th Avenue SE, ABERDEEN, SD

2.      Lease between ShopKo and Capitol Britton Station, LLC., dated as of January 16, 2019, for the property located at 3868 East Washington Ave Suite F, MADISON, WI

3.      Lease between ShopKo and Water Tower Enterprises, LLC., dated as of February 8, 2019, for the property located at 6000 Monona Drive Unit 1002, MONONA, WI

4.      Lease between ShopKo and Capitol Watertown, LLC, dated as of January 25, 2019, for the property located at 1500 South Church Street, WATERTOWN, WI

5.      Lease between ShopKo and Deseret 9000 S., L.C., dated as of January 31, 2019, for the property located at 9000 South 1500 West Suite E, WEST JORDAN, UT

**Schedule 11.1(ll)**

**Permitted Encumbrances**

None.

**Execution Version**

# LIMITED GUARANTEE

This Limited Guarantee, dated as of April 29, 2019 (this "Limited Guarantee"), by Monarch Capital Partners IV LP, a Delaware limited partnership, Monarch Capital Partners IV Offshore LP, a Cayman Islands limited partnership, Monarch Capital Partners IV-A LP, a Delaware limited partnership and MCP Holdings Ltd, a Cayman Islands exempted company (each, a "Guarantor" and, collectively, the "Guarantors"), in favor of Specialty Retail Shops Holding Corp., a Delaware corporation (the "Guaranteed Party"). This Limited Guarantee is entered into in connection with that certain Asset Purchase Agreement, dated the date hereof (the "Purchase Agreement") by and among Shoptikal LLC, a Delaware limited liability company ("Purchaser"), the Guaranteed Party and the other Sellers party thereto. Capitalized terms used herein but not defined shall have the respective meanings ascribed thereto in the Purchase Agreement.

1.     GUARANTEE. To induce the Guaranteed Party to enter into the Asset Purchase Agreement, each Guarantor hereby absolutely, unconditionally and irrevocably guarantees (as primary obligor and not merely as a surety) to the Guaranteed Party, on a several and joint basis and on the terms and conditions set forth herein, the due and punctual payment of Purchaser's payment obligation of the Closing Date Payment pursuant to Section 2.1(b) of the Purchase Agreement (the "Obligation") to the extent that such Obligation comes due under the terms of the Purchase Agreement. The maximum aggregate liability of the Guarantors in respect of the Obligation shall not exceed $8,075,000 (the "Cap"), and the Guaranteed Party hereby agrees that in no event shall this Limited Guarantee be enforced against a Guarantor for any amount in excess of the Cap in respect of the Obligation and that this Limited Guarantee may not be enforced without giving effect to the Cap. It is acknowledged and agreed that this Limited Guarantee will expire and will have no further force or effect in accordance with the terms of Section 9 of this Limited Guarantee. Notwithstanding anything to the contrary contained in this Limited Guarantee, the Guaranteed Party hereby agrees that to the extent Purchaser is relieved of all or any portion of the Obligation by satisfaction thereof (whether by Purchaser or any Guarantor) or pursuant to any agreement with the Guaranteed Party, the Guarantors shall be similarly relieved, to such extent, of their obligations under this Limited Guarantee. The Guaranteed Party, on behalf of itself and the other Sellers, hereby agrees that (a) the Guarantors shall in no event collectively be required to pay an amount in aggregate that is more than the Cap or make any payment (other than payment of the Obligation) pursuant to this Limited Guarantee, (b) that no Guarantor or Non-Recourse Party (as hereinafter defined) shall have any obligation or liability to any Person relating to, arising out of or in connection with, this Limited Guarantee (other than for the Obligation), (c) that no Guarantor or Non-Recourse Party is assuming any other obligations or liabilities of any other Person, whether under the Purchase Agreement or otherwise (including any liability or obligation of Purchaser in respect of the Assumed Liabilities), other than the Obligation, and (d) that this Limited Guarantee may not be enforced against the Guarantors without giving effect to these limitations and the conditions set forth in Section 2 of this Limited Guarantee (with it being understood and agreed that such limitations are an integral part of each Guarantor executing and delivering this Limited Guarantee and no Guarantor would have delivered this Limited Guarantee if such limitations were not given full force and effect).

2.      <u>CONDITIONS</u>.  The obligation of each Guarantor to pay the Guaranteed Party the Obligation is subject to the following conditions:  (a) subject to <u>Section 7.4</u> of the Purchase Agreement, the satisfaction (or waiver by Purchaser) of all conditions precedent set forth in <u>Sections 7.1</u> and <u>7.2</u> of the Purchase Agreement to Purchaser's obligations to consummate the Closing (other than those conditions that are by their terms to be satisfied at the Closing, but subject to such conditions being capable of being satisfied); and (b) the substantially simultaneous consummation of the Closing in accordance with the terms of the Purchase Agreement.

3.      <u>NATURE OF GUARANTEE</u>.  The Guaranteed Party shall not be obligated to file any claim relating to the Obligation in the event that Purchaser becomes subject to a bankruptcy, reorganization or similar proceeding, and the failure of the Guaranteed Party to so file shall not affect the Guarantors' obligations hereunder.  In the event that any payment to the Guaranteed Party in respect of the Obligation is rescinded or must otherwise be returned for any reason whatsoever, each Guarantor shall remain liable hereunder with respect to the Obligation (subject to the Cap) as if such payment had not been made.  This is an unconditional guarantee of payment and not of collection.  Each Guarantor reserves the right to assert defenses which Purchaser may have to payment of the Obligation that arise under the terms of the Purchase Agreement. For the avoidance of doubt, no amendment to the Purchase Agreement shall impose any additional or enhanced liability against any Guarantor beyond the terms of this Limited Guarantee without the express written consent of such Guarantor, and all references to the Purchase Agreement shall be deemed references to the Purchase Agreement as it is in force on the date hereof, without giving effect to any future amendments. In furtherance of the foregoing, each Guarantor acknowledges that its liability hereunder shall extend to the full amount of the Obligation (subject to the Cap), and that the Guaranteed Party may, in its sole discretion, bring and prosecute a separate action or actions against each Guarantor to enforce this Limited Guarantee.

4.      <u>CHANGES IN OBLIGATIONS, CERTAIN WAIVERS</u>.  Each Guarantor agrees that the Guaranteed Party may at any time and from time to time, without notice to or further consent of such Guarantor, extend the time of payment of the Obligation, and may also make any agreement with Purchaser or any Person liable with respect to the Obligation for the extension, renewal, payment, compromise, discharge or release thereof, in whole or in part, without in any way impairing or affecting such Guarantor's obligations under this Limited Guarantee. Each Guarantor agrees that the obligations of such Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by, and each Guarantor hereby expressly waives to the fullest extent permitted by applicable Law any defense now or in the future arising by reason of, any of the following: (a) the failure of the Guaranteed Party to assert any claim or demand or to enforce any right or remedy against Purchaser or any other Person liable with respect to the Obligation; (b) any change in the time, place or manner of payment of the Obligation or any rescission, waiver, compromise, consolidation or other amendment or modification of any of the terms or provisions of the Purchase Agreement made in accordance with the terms thereof or any other agreement evidencing, securing or otherwise executed in connection with the Obligation (so long as such changes do not have the effect of increasing the Cap); (c) any change in the corporate existence, structure or ownership of Purchaser or any other Person liable with respect to the Obligation; (d) any insolvency, bankruptcy, reorganization or other similar proceeding affecting Purchaser or any other Person liable with respect to the

2

Obligation; (e) the existence of any right of set-off which such Guarantor may have at any time against Purchaser or the Guaranteed Party, whether in connection with the Obligation or otherwise; or (f) the adequacy of any other means the Guaranteed Party may have of obtaining payment of the Obligation.  To the fullest extent permitted by law, each Guarantor hereby expressly waives any and all rights or defenses arising by reason of any law which would otherwise require any election of remedies by the Guaranteed Party. Each Guarantor waives promptness, diligence, notice of the acceptance of this Limited Guarantee of the Obligation, presentment, demand for payment, notice of non-performance, default, dishonor and protest, notice of the incurrence of the Obligation and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshalling of assets of Purchaser or any other Person liable with respect to the Obligation, and all suretyship defenses generally (other than fraud and willful misconduct by the Guaranteed Party or any of its Affiliates, any defenses to the payment of the Obligation that are available to Purchaser under the Purchase Agreement or breach by the Guaranteed Party of this Limited Guarantee, each of which are retained by such Guarantor). Each Guarantor acknowledges that it will receive substantial direct and indirect benefits from the transactions contemplated by the Purchase Agreement and that the waivers set forth in this Limited Guarantee are knowingly made in contemplation of such benefits.

Each Guarantor hereby unconditionally and irrevocably waives, and agrees not to exercise, any rights that it may now have or hereafter acquire against Purchaser or any other Person liable with respect to the Obligation that arise from the existence, payment, performance, or enforcement of such Guarantor's obligation under or in respect of this Limited Guarantee or any other agreement in connection therewith, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of the Guaranteed Party against Purchaser or such other Person, whether or not such claim, remedy or right arises at law or equity or under contract, statute or common law, including, without limitation, the right to take or receive from Purchaser or such other Person, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim, remedy or right, unless and until the Obligation and all other amounts payable under this Limited Guarantee shall have been paid in full in cash.  If any amount shall be paid to a Guarantor in violation of the immediately preceding sentence at any time prior to the payment in full in cash of the Obligation and all other amounts payable under this Limited Guarantee, such amount shall be received and held in trust for the benefit of the Guaranteed Party, shall be segregated from other property and funds of such Guarantor and shall forthwith be paid or delivered to the Guaranteed Party in the same form as so received (with any necessary endorsement or assignment) to be credited and applied to the Obligation and all other amounts payable under this Limited Guarantee, in accordance with the terms of the Purchase Agreement, whether matured or unmatured, or to be held as collateral for the Obligation or other amounts payable under this Limited Guarantee thereafter arising.

5.      <u>NO WAIVER; CUMULATIVE RIGHTS</u>.  No failure on the part of the Guaranteed Party to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Guaranteed Party of any right, remedy or power hereunder or under the Purchase Agreement or otherwise preclude any other or future exercise of any right, remedy or power hereunder.  Each and every right, remedy and power hereby granted to the Guaranteed Party shall be cumulative and not exclusive

of any other, and may be exercised by the Guaranteed Party at any time or from time to time. The Guaranteed Party shall not have any obligation to proceed at any time or in any manner against, or exhaust any or all of the Guaranteed Party's rights against Purchaser or any other Person prior to proceeding against any Guarantor hereunder; provided however that if the Guaranteed Party proceeds against any Guarantor it shall join Purchaser in any such action.

6.     <u>REPRESENTATIONS AND WARRANTIES</u>.  Each Guarantor hereby represents and warrants that:

(a)     the execution, delivery and performance of this Limited Guarantee have been duly authorized by all necessary action and do not contravene any provision of such Guarantor's charter, partnership agreement, operating agreement or similar organizational documents or any law, regulation, rule, decree, order, judgment or contractual restriction binding on such Guarantor or its assets;

(b)     all consents, approvals, authorizations, permits of, filings with and notifications to, any Governmental Body necessary for the due execution, delivery and performance of this Limited Guarantee by such Guarantor have been obtained or made and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any Governmental Body or regulatory body is required in connection with the execution, delivery or performance of this Limited Guarantee;

(c)     this Limited Guarantee constitutes a legal, valid and binding obligation of such Guarantor enforceable against such Guarantor in accordance with its terms, subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium or other similar laws affecting creditors' rights generally, and (ii) general equitable principles (whether considered in a proceeding in equity or at law);

(d)     it, together with the other Guarantors, are the only holders of equity interests of Purchaser; and

(e)     such Guarantor has the financial capacity to pay and perform its obligations under this Limited Guarantee, and all funds necessary for such Guarantor to discharge the Obligation (subject to the Cap) under this Limited Guarantee shall be available to such Guarantor for so long as this Limited Guarantee shall remain in effect in accordance with <u>Section 9</u> hereof.

7.     <u>NO ASSIGNMENT</u>.  No Guarantor nor the Guaranteed Party may assign its rights, interests or obligations hereunder to any other Person (except by operation of law) without the prior written consent of the Guaranteed Party (in the case of an assignment by a Guarantor) or the Guarantors (in the case of an assignment by the Guaranteed Party); <u>provided</u>, that (a) a Guarantor may assign all or a portion of its obligations hereunder to an Affiliate of such Guarantor or to an entity managed or advised by an Affiliate of such Guarantor; <u>provided</u>, <u>further</u>, that at the time of such assignment, the assignee (i) has immediately available funds or uncalled capital commitments to such Person, (ii) makes to the Guaranteed Party the representations and warranties set forth in <u>Section 6</u> above and (iii) certifies to the Guaranteed Party that it is capable of performing all of its obligations hereunder. No permitted assignment

4

shall relieve such Guarantor of any liability or obligation hereunder except to the extent actually performed or satisfied by the assignee and (b) any attempted assignment in violation of this Section 7 shall be null and void and of no force or effect.

       8.      NOTICES. All notices and other communications hereunder shall be in writing and shall be deemed duly given (a) on the date of delivery if delivered personally, or if by facsimile or e-mail, upon written confirmation of receipt by facsimile, e-mail or otherwise, (b) on the first Business Day following the date of dispatch if delivered utilizing a next-day service by a recognized next-day courier or (c) on the earlier of confirmed receipt or the fifth Business Day following the date of mailing if delivered by registered or certified mail, return receipt requested, postage prepaid. All notices hereunder shall be delivered to the addresses set forth below, or pursuant to such other instructions as may be designated in writing by the party to receive such notice:

      (i)      if to the Guaranteed Party, to it at:

      Specialty Retail Shops Holding Corp.
      700 Pilgrim Way
      Green Bay, Wisconsin 54304
      Attention:      Russell Steinhorst, CEO
                      Susan Buckna, General Counsel
      Facsimile:      (920) 429-7401
      Email:      russ.steinhorst@shopko.com
                      susan.buckna@shopko.com

      with a copy (which shall not constitute notice) to:

      Willkie Farr & Gallagher LLP
      787 Seventh Avenue
      New York, New York 10019
      Attention:      Brian Lennon
                      Claire E. James
      Facsimile:      (212) 728-9767
      Email:      BLennon@willkie.com
                      CEJames@willkie.com

      (ii)      if to a Guarantor, to:

      c/o Monarch Alternative Capital LP
      535 Madison Avenue
      New York, NY 10022
      Attention: General Counsel
      Facsimile: (212) 554-1701
      E-mail: Michael.kelly@monarchlp.com

      with a copy (which shall not constitute notice) to:

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
Attention:   Jeff Krause
             Benyamin Ross
Facsimile:   (213) 220-6258
Email:       JKrause@gibsondunn.com
             BRoss@gibsondunn.com

9.      <u>CONTINUING GUARANTEE</u>.  Unless terminated pursuant to this <u>Section 9</u>, this Limited Guarantee shall remain in full force and effect and shall be binding on each Guarantor, its successors and assigns until the Obligation is satisfied in full.  Notwithstanding the foregoing, this Limited Guarantee shall terminate (other than this <u>Section 9</u> and <u>Sections 10</u> through <u>16</u>) and the Guarantors shall have no further obligations under this Limited Guarantee as of the earliest of (a) the receipt by the Guaranteed Party of the Obligation, or (b) the termination of the Purchase Agreement in accordance with its terms.

10.     <u>LIMITED RECOURSE</u>.

(a)      The Guaranteed Party acknowledges that the sole assets of Purchaser are cash in a *de minimis* amount, the Deposit, and its rights under the Purchase Agreement, and that no additional funds are expected to be contributed to Purchaser unless and until the Closing occurs.  Notwithstanding anything that may be expressed or implied in this Limited Guarantee, the Purchase Agreement or any document or instrument delivered contemporaneously herewith or therewith, and notwithstanding the fact that a Guarantor may be a partnership or limited liability company, the Guaranteed Party, by its acceptance of the benefits hereof, covenants, agrees and acknowledges that (i) no Person other than a Guarantor shall have any obligation (whether of an equitable, contractual, tort, statutory or other nature) hereunder, (ii) it shall have no rights of recovery against, and no recourse hereunder or under any documents or instruments delivered in connection herewith shall be had against, any former, current or future equityholders, controlling persons, directors, officers, employees, agents, general or limited partners, managers, management companies, members, stockholders, Affiliates or assignees of any Guarantor or Purchaser or any former, current or future equity holders, controlling persons, directors, officers, employees, agents, general or limited partners, managers, management companies, members, stockholders, Affiliates or assignees of any of the foregoing, or any former, current or future heirs, executors, administrators, trustees, successors or assigns of any of the foregoing (all of the foregoing collectively, but not including the Guarantors or Purchaser, the "<u>Non-Recourse Parties</u>"), or, other than in respect of the Retained Claims (as hereinafter defined), against a Guarantor or Purchaser, whether by or through attempted piercing of the corporate, partnership or limited liability company veil, by or through a claim by or on behalf of Purchaser against a Guarantor or any Non-Recourse Party, by the enforcement of any assessment or by any legal or equitable proceeding, or by virtue of any statute, regulation or other applicable law or otherwise and (iii) no personal liability whatsoever shall attach to, be imposed on or otherwise be incurred by any Non-Recourse Party as such for any obligations of a Guarantor under this Limited Guarantee or any documents or instruments delivered in connection herewith or in respect of any oral representations made or alleged to have been made in connection herewith or therewith or for any claim (whether at law or equity or in tort, contract or otherwise)

6

based on, in respect of, or by reason of such obligations or their creation. The Guaranteed Party's rights under the Retained Claims shall be the sole and exclusive remedy of the Guaranteed Party and its Affiliates, Advisors and stockholders against Purchaser or any Guarantor or Non-Recourse Party in respect of any liabilities or obligations arising under, or in connection with, this Limited Guarantee, the Purchase Agreement, or the transactions contemplated hereby or thereby, including by piercing of the corporate veil or by a claim by or on behalf of Purchaser. For purposes of this Limited Guarantee, "Retained Claims" shall mean (A) claims against a Guarantor pursuant to, in accordance with and subject to the terms and conditions of this Limited Guarantee and (B) claims against Purchaser pursuant to, in accordance with and subject to the terms and conditions of the Purchase Agreement.

(b)     The Guaranteed Party hereby covenants and agrees that it shall not institute, directly or indirectly, and it shall cause its Affiliates and Advisors not to institute, any proceeding or bring any other claim arising under, or in connection with, this Limited Guarantee, the Purchase Agreement, or the transactions contemplated hereby or thereby, against any Non-Recourse Party or, other than Retained Claims, against any Guarantor or Purchaser.

(c)     The Guaranteed Party acknowledges that the Guarantors are agreeing to enter into this Limited Guarantee in reliance on the provisions set forth in this Section 10.

11.     GOVERNING LAW; WAIVER OF JURY TRIAL.

(a)     Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Limited Guarantee, and any Action that may be based upon, arise out of or relate to this Limited Guarantee or the negotiation, execution or performance of this Limited Guarantee or the transactions contemplated hereby will be governed by and construed in accordance with the internal Laws of the State of New York applicable to agreements executed and performed entirely within such State without regards to conflicts of law principles of the State of New York or any other jurisdiction that would cause the Laws of any jurisdiction other than the State of New York to apply.

(b)     EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS LIMITED GUARANTEE, THE DOCUMENTS AND AGREEMENTS CONTEMPLATED HEREBY AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND THEREFORE HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION BASED ON, ARISING OUT OF OR RELATED TO THIS LIMITED GUARANTEE, ANY DOCUMENT OR AGREEMENT CONTEMPLATED HEREBY OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY. EACH OF THE PARTIES AGREES AND CONSENTS THAT ANY SUCH ACTION WILL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT THE PARTIES TO THIS LIMITED GUARANTEE MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS LIMITED GUARANTEE WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THE IRREVOCABLE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. EACH PARTY (I) CERTIFIES THAT NO ADVISOR OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT

SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO
ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE
OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO THIS LIMITED
GUARANTEE BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND
CERTIFICATIONS IN THIS SECTION.

12.    JURISDICTION AND EXCLUSIVE VENUE.  Each of the parties irrevocably
agrees that any Action that may be based upon, arising out of or related to this Limited
Guarantee or the negotiation, execution or performance of this Limited Guarantee and the
transactions contemplated hereby brought by any other party or its successors or assigns will be
brought and determined only in (a) the Bankruptcy Court and any federal court to which an
appeal from the Bankruptcy Court may be validly taken or (b) in the event the Bankruptcy Case
is closed, or if the Bankruptcy Court is unwilling or unable to hear such Action, in the District
Court for the Southern District of New York and any state court sitting in the State of New York
to which an appeal from the District Court for the Southern District of New York may be validly
taken (or, if the District Court for the Southern District of New York declines to accept
jurisdiction over a particular matter, any state or federal court within the state of New York) ((a)
and (b), the "Chosen Courts"), and each of the parties hereby irrevocably submits to the
exclusive jurisdiction of the Chosen Courts for itself and with respect to its property, generally
and unconditionally, with regard to any such Action arising out of or relating to this Limited
Guarantee and the transactions contemplated hereby.  Each of the parties agrees not to
commence any Action relating thereto except in the Chosen Courts, other than Actions in any
court of competent jurisdiction to enforce any judgment, decree or award rendered by any
Chosen Court, and no party will file a motion to dismiss any Action filed in a Chosen Court on
any jurisdictional or venue-related grounds, including the doctrine of *forum non-conveniens*.
The parties irrevocably agree that venue would be proper in any of the Chosen Courts, and
hereby irrevocably waive any objection that any such court is an improper or inconvenient forum
for the resolution of such Action.  Each of the Parties further irrevocably and unconditionally
consents to service of process in the manner provided for notices in Section 8.  Nothing in this
Limited Guarantee will affect the right of any party to this agreement to serve process in any
other manner permitted by Law.

13.    NO THIRD PARTY BENEFICIARIES.  Nothing set forth in this Limited
Guarantee shall confer or give or shall be construed to confer or give to any Person (including
any Person acting in a representative capacity) other than the Guaranteed Party any rights or
remedies against any Person including any Guarantor, except as expressly set forth herein;
provided that each Non-Recourse Party is an intended third-party beneficiary of, and shall be
entitled to enforce, those provisions set forth herein that are expressly for the benefit of any Non-
Recourse Party, and all such provisions shall indefinitely survive any termination of this letter
agreement.

14.    COUNTERPARTS.  This Limited Guarantee may be executed in counterparts, all
of which shall be considered one and the same instrument and shall become effective when one
or more counterparts have been signed by each of the parties and delivered to the other party.

15.    NO PRESUMPTION AGAINST DRAFTING PARTY.  Each of the parties
hereto acknowledges that it has been represented by counsel in connection with this Limited

Guarantee and the transactions contemplated by this Limited Guarantee.  Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Limited Guarantee against the drafting party has no application and is expressly waived.

*The remainder of this page is intentionally left blank.*

IN WITNESS WHEREOF, the Guarantors have caused this Guarantee to be executed and delivered as of the date first written above by its officer thereunto duly authorized.

**MONARCH CAPITAL PARTNERS IV LP**

By:  Monarch Alternative Capital LP, as investment manager

By: _____
Name:    Michael A. Weinstock
Title:    Authorized Person

**MONARCH CAPITAL PARTNERS IV OFFSHORE LP**

By:  Monarch Alternative Capital LP, as investment manager

By: _____
Name:    Michael A. Weinstock
Title:    Authorized Person

**MONARCH CAPITAL PARTNERS IV-A LP**

By:  Monarch Alternative Capital LP, as investment manager

By: _____
Name:    Michael A. Weinstock
Title:    Authorized Person

**MCP HOLDINGS LTD**

By:  Monarch Alternative Capital LP, as investment manager

By: _____
Name:
Title:    Michael A. Weinstock
Authorized Person

[Signature Page to Guarantee]

Accepted and Agreed to:

**SPECIALTY RETAIL SHOPS HOLDING CORP.**

By: _____

Name: Russell Steinhorst

Title: President and CEO

## **Exhibit B**

**Proposed Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064-TLS |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER (I) AUTHORIZING THE SALE OF THE DEBTORS' OPTICAL BUSINESS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III) AUTHORIZING A SETTLEMENT OF CLAIMS AND CAUSES OF ACTION, (IV) GRANTING RELIEF RELATED TO THE WIND-DOWN OF THE DEBTORS' REMAINING OPERATIONS, AND (V) GRANTING RELATED RELIEF

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"):  (a) authorizing sale of the Acquired Assets (the "Transaction") free and clear of liens, claims, interests, and encumbrances (collectively, excluding Assumed Liabilities (as defined below), the "Interests") with any such Interests to attach to the proceeds thereof with the same validity and priority (under the Bankruptcy Code) as such Interests had immediately prior to the consummation of the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the *Debtors' Motion for Entry of an Order (I) Authorizing the Sale of the Debtors' Optical Business, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Authorizing a Settlement of Claims and Causes of Action (IV) Granting Relief Related to the Wind-Down of the Debtors' Remaining Operations, and (V) Granting Related Relief* [Docket No. 1020] (the "Motion"), the *Second Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and Its Debtor Affiliates* [Docket No. 570] (as may be modified, amended, or supplemented from time to time, the "Plan"); the purchase agreement attached hereto as **Exhibit A** (the "Bidder APA"); or the *Order (I) Establishing Bidding Procedures for the Plan Sponsors and (II) Granting Related Relief* [Docket No. 385]  (the "Bidding Procedures Order"), and the bidding procedures attached thereto (the "Bidding Procedures"), as applicable.

Transactions; (b) authorizing the assumption and assignment of certain executory contracts and

unexpired leases to the Winning Bidder; (c) authorizing a settlement of claims and causes of

action; (d) granting relief related to the wind-down of the Debtors' remaining operations; and (e)

granting related relief, all as more fully described in the Motion; and the Court having found that

it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and the Court having found that the Debtors provided due and proper notice

that is adequate and appropriate under the particular circumstances; and the Court having held a

hearing to consider the relief requested in the Motion and any objections or other responses to

the relief requested therein (the "Hearing") at which time all interested parties were offered an

opportunity to be heard with respect to the Motion; and upon consideration of the record of the

Hearing, and all proceedings had before the Court, the arguments of counsel made, and the

evidence proffered and adduced, at the Hearing; and it appearing that due notice of the Motion

and the form of this Order has been provided; and the Court having found and determined that

the relief sought in the Motion relating to the Transaction is in the best interests of the Debtors'

estates, their creditors, and other parties in interest, and that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before the Court; and any objections or other responses to the relief

requested herein having been withdrawn, resolved, or overruled on the merits; and after due

deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND THAT**:

       A.     The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to

this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The statutory and other legal predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9019 and Local Rules 6004-1 and 9019-1.

C.      A fair and reasonable opportunity to object to and to be heard with respect to the Motion, the Transaction, and the relief requested in the Motion relating to the Transaction has been given, as required by the Bankruptcy Code and the Bankruptcy Rules, to all Persons[3] entitled to notice, including the following: (a) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; (b) all known holders of liens, encumbrances, and other claims secured by the Acquired Assets; and (c) counterparties to Assumed Contracts ("Contract Counterparties"). Notice of the Motion is sufficient notice of the Bidder APA and no other notice is required.

D.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for this Court to grant the relief requested in the Motion relating to the Transaction (specifically, as set forth in and pursuant to the Bidder APA attached hereto as **Exhibit A**) and such other relief as is expressly set forth herein.  The Debtors' entry into and performance under the Bidder APA: (a) constitutes a sound and reasonable exercise of the Debtors' business judgment and are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; (b) provides value to and are beneficial to the Debtors'

---

[3]   "Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or any other entity, including any governmental authority (meaning any federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity) or any group of any of the foregoing.

3

estates, and are in the best interests of the Debtors and their stakeholders; and (c) is reasonable and appropriate under the circumstances.  Business justifications for the Transactions include the following:  (a) the Bidder APA constitutes the highest and best offer received for the Acquired Assets; (b) the Bidder APA presents the best opportunity to maximize the value of the Acquired Assets; (c) unless the Transaction and all of the other transactions contemplated by the Bidder APA is concluded expeditiously, as provided for pursuant to the Bidder APA, recoveries to creditors may be materially diminished; and (d) the value of the Debtors' estates will be maximized through sale of the Acquired Assets pursuant to the Bidder APA.

E.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  To the extent any inconsistency arises between this Order and the Bidder APA, this Order shall control.

F.      The Debtors and their advisors (i) engaged in a robust and extensive marketing and sale process, and (ii) conducted a fair and open sale process.  The sale process and the Bidding Procedures were non-collusive, duly noticed, pursued diligently and in good faith, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.  The total consideration provided by the Winning Bidder, upon the terms and conditions set forth in the Bidder APA (including the form and total consideration to be realized by the Debtors pursuant to the Bidder APA), is the highest and best offer received by the Debtors and constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value and reasonable market value for the Acquired Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the other laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

G.      Under the facts and circumstances of these chapter 11 cases, the purchase price for the Acquired Assets is fair and reasonable.

H.      The Bidder APA was proposed, negotiated, and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.

I.      The Winning Bidder is a purchaser in good faith with respect to the Acquired Assets, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  The Debtors were free to deal with any other party interested in buying the Acquired Assets on behalf of the Debtors' estates.  The Bidder APA and the transactions contemplated therein were negotiated, proposed, and entered into by the Debtors and the Winning Bidder in good faith, without collusion and from arm's-length bargaining positions.

J.      The Winning Bidder is not, and will not be, a mere continuation of, or successor to, and is not holding itself out as a mere continuation of, or successor to, the Debtors in any respect, and there is no continuity of enterprise between the Debtors or the Winning Bidder.  The Transactions do not amount to a consolidation, merger, or *de facto* merger of the Winning Bidder and the Debtors.  No Winning Bidder or any of its Affiliates[4] and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) and/or any Debtor's estate, including any obligation under any labor practice agreement, except as expressly provided in the Bidder APA or herein.

---

[4]   "Affiliate" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person, where "control" means the power, directly or indirectly, to direct or cause the direction of the management and policies of another Person, whether through the ownership of voting securities, by contract, or otherwise.

5

K.      The Transactions neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a liquidating plan of reorganization of the Debtors.  The Transactions do not constitute a *sub rosa* plan.

L.      The Agent for the Lenders has provided written consent for the disposition of the Acquired Assets to the Winning Bidder in accordance with this Order.

M.      The Debtors may sell the Acquired Assets free and clear of all Interests, including all liens (including, to the extent permitted under the Bankruptcy Code, those related to the so-called "bulk sales," "bulk transfer" and similar laws), claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights (including reclamation rights, rights of first refusal, rights of first offer, or consent rights), liabilities, judgments, servitudes, encumbrances, options, purchase options, mortgages, subleases, charges, hypothecations, indentures, security interests, security agreements, loan agreements, instruments, conditional sale or other title retention agreements, pledges, demands, offsets, recoupment, rights of recovery, decrees of any court or foreign or domestic governmental entity, and other interests of any kind or nature whatsoever against the Debtors or the Acquired Assets, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Acquired Assets, the operation of the Debtors' businesses before the Closing (throughout this Order, as defined in the Bidder APA), or the transfer of the Debtors' interests in

the Acquired Assets to the Winning Bidder, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Without limiting the generality of the foregoing, "Interests" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to:  (a) any of the employee benefit plans, including any Interests related to unpaid contributions or current or potential withdrawal or termination liability; (b) the Worker Adjustment and Retraining Notification Act of 1988; or (c) any of the Debtors' current and former employees.  For the avoidance of doubt, and without limitation, the interests identified on **Exhibit B** attached hereto constitute Interests and the Acquired Assets may be sold free and clear of such Interests.

N.      The total consideration provided by the Winning Bidder, upon the terms and conditions set forth in the Bidder APA (including the form and total consideration to be realized by the Debtors pursuant to the Bidder APA), reflects the Winning Bidder's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Acquired Assets free and clear of all Interests (including any potential derivative, vicarious, transferee, or successor liability claims) other than those liabilities expressly assumed under or pursuant to the Bidder APA (the "Assumed Liabilities").

O.      The assumption and assignment of the Assumed Contracts is integral to the Bidder APA, is in the best interests of the Debtors and their estates, and represents the reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Assumed Contracts (a) is necessary to sell the Acquired Assets to the Winning Bidder, (b) limits the losses suffered by Contract Counterparties, and (c) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assumed Contracts.

7

P.      Upon compliance with paragraph 32 of this Order, all the requirements of sections 363 and 365 of the Bankruptcy Code have been met with respect to the sales of the Acquired Assets and the assumption and assignment of the Assumed Contracts.  Upon compliance with Paragraph 32, with respect to each of the Assumed Contracts, the Debtors will have met all requirements of section 365(b) of the Bankruptcy Code.  Further, based on the arguments and representations of counsel made, and the evidence proffered and adduced, at the Hearing, the Winning Bidder has, subject to compliance with Paragraph 32, provided adequate assurance of future performance under the Assumed Contracts, in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Contract Counterparties.  Accordingly, upon compliance with Paragraph 32, the Assumed Contracts may be assumed by the Debtors and assigned to the Winning Bidder as provided for in the Bidder APA.

Q.      As of the Closing, the transfer of the Acquired Assets to the Winning Bidder will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Winning Bidder with all right, title, and interest of the Debtors in, and to, the Acquired Assets, free and clear of all Interests.

R.      The Debtors (a) have full corporate or limited liability company (as applicable) power and authority to execute the Bidder APA and all other documents contemplated thereby, and the Transactions have been duly and validly authorized by all necessary corporate action of the Debtors, (b) have all of the corporate or limited liability company (as applicable) power and authority necessary to consummate the transactions contemplated by the Bidder APA, and (c) upon entry of this Order, other than any consents

8

identified in the Bidder APA (including with respect to antitrust matters), need no consent or approval from any other Person to consummate the Transaction.

S.      The Transaction must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Transaction, and the Debtors and Winning Bidder intend to close the Transactions as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions as contemplated by the Bidder APA.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the transactions contemplated by this Order.

T.      Based on the range of possible outcomes and the cost, delay, and uncertainty associated with further litigation, the Bidder APA, including any settlement of claims against the Debtors or causes of action held by the Debtors contained therein, is fair, well within the range of reasonableness, and cost-effective, and approval of the Bidder APA, including any settlement of claims against the Debtors or causes of action held by the Debtors contained therein, is warranted.

U.      The Bidder APA, including any settlement of claims against the Debtors or causes of action held by the Debtors contained therein, should be approved.

V.      The legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS ORDERED THAT:**

1.      The relief requested in the Motion relating to the Transaction is granted

solely as set forth herein, and nothing herein shall be considered approval of the Sale Budget (as

such term is used in the Motion).

2.      Any responses or objections to, or reservations of rights regarding, the

entry of this Order or the relief granted herein or requested in the Motion that have not been

withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any,

hereby are denied and overruled on the merits with prejudice.  All holders of Interests or other

persons and entities that failed to timely object, or withdrew their objections, to the Motion or

this Order are deemed to consent to the relief granted herein for all purposes, including pursuant

to sections 363(f)(2) of the Bankruptcy Code.

3.      Each holder of any Interest against the Debtors, their estates, or the

Acquired Assets: (a) has, subject to the terms and conditions of this Order, consented to the

Transaction or is deemed to have consented to the Transaction; (b) could be compelled, in a legal

or equitable proceeding, to accept money satisfaction of such Interest; or (c) otherwise falls

within the provisions of section 363(f) of the Bankruptcy Code.

4.      Notice of the Hearing was fair and equitable under the circumstances and

complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002,

6004, and 6006.

5.      The Bidder APA and the ancillary documents thereto and the

consummation thereof, and the Transaction itself shall not be avoided under section 363(n) or

chapter 5 of the Bankruptcy Code.  The consideration provided by the Winning Bidder under the

Bidder APA is fair and reasonable.  Neither the Debtors nor the Winning Bidder have engaged in

any conduct that would cause or permit the Bidder APA to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

6.      The Bidder APA, any schedules or exhibits thereto, and all transactions contemplated therein, including any assignment and assumption of any Assumed Contract (subject to compliance with paragraph 32 of this Order) and any settlement of claims against the Debtors or causes of action held by the Debtors contemplated therein, and all of the terms and conditions thereof, are hereby approved pursuant to sections 363 and 105(a) of the Bankruptcy Code and in accordance with Bankruptcy Rule 9019 and are incorporated herein by reference, and the Debtors are authorized to take any and all actions necessary or appropriate to consummate the Bidder APA.  The failure specifically to include any particular provision of a Bidder APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidder APA, including any assignment and assumption of any Assumed Contract contemplated therein, be authorized and approved in its entirety.

7.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized to execute, deliver and perform their obligations under and comply with the terms of the Bidder APA and to consummate the Transaction, pursuant to, and in accordance with, the terms and conditions of the Bidder APA and this Order.  The provisions of this Order shall be self-executing, and neither the Debtors nor the Winning Bidder shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

8.      The Debtors, their Affiliates and their respective officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and

11

implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Bidder APA and to take all further actions as may be: (a) reasonably requested by the Winning Bidder for the purpose of assigning, transferring, granting, conveying, and conferring to the Winning Bidder, or reducing to possession, the Acquired Assets; or (b) necessary or appropriate to the performance of the obligations contemplated by the Bidder APA, all without further order of the Court.

9.     Other than the lessees under leases to be assumed and assigned as contemplated by the Bidder APA, all Persons that are currently, or are on or after the Closing, in possession of some or all of the assets of the Acquired Assets are hereby directed to surrender possession of such assets to the Winning Bidder as of the Closing or at such time as the Winning Bidder requests.

10.     Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept this Order and any and all other documents and instruments necessary and appropriate to consummate the transactions contemplated by the Bidder APA.

11.     Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of the Bidder APA (subject to compliance with paragraph 32 of this Order).  The Acquired Assets shall be transferred to the Winning Bidder (or its Affiliates), and upon the Closing, such transfers shall:  (a) be valid, legal, binding, and effective, (b) vest the Winning Bidder with all right, title, and interest of the Debtors (who are presently the sole and rightful owners of the Acquired Assets) in the Acquired Assets, and (c) be free and clear of all Interests in accordance with

12

section 363(f) of the Bankruptcy Code, with all Interests that represent interests in property to attach to the net proceeds of the Transaction, in the same amount and order of their priority, with the same validity, force, and effect which they have against the Acquired Assets, and subject to any claims and defenses the Debtors may possess with respect thereto, in each case immediately before the Closing.

12.     Except as otherwise provided in the Bidder APA, all Persons (and their respective successors and assigns) including all debtholders, equityholders, governmental, tax and regulatory authorities, lenders, employees, former employees, pension plans, multiemployer pension plans, labor unions, trade creditors, and any other creditors holding Interests against the Debtors or the Acquired Assets, are hereby forever barred, estopped and permanently enjoined from asserting or pursuing such Interests against the Winning Bidder, its Affiliates, successors or assigns, their property or the Acquired Assets.

13.     This Order (a) shall be effective as a determination that, as of the Closing, all Interests have been unconditionally released, discharged, and terminated as to the Winning Bidder and the Acquired Assets, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any asset; and each of the foregoing Persons is hereby directed to accept for filing any and

13

all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Bidder APA.

14.     Following the Closing, no holder of any Interest shall interfere with the Winning Bidder's title to or use and enjoyment of the Acquired Assets based on or related to any such Interest or based on any actions the Debtors may take in these chapter 11 cases.

15.     Subject to compliance with Paragraph 32, The Debtors have met all requirements of sections 365(b) and 365(f) of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts to the Winning Bidder.   Each of the Assumed Contracts is an "executory contract" or "unexpired lease" within the meaning of section 365 of the Bankruptcy Code.

16.     Pursuant to sections 105, 363(b)(1), and 365(a) of the Bankruptcy Code, subject to compliance with Paragraph 32, the Debtors are hereby authorized to (a) assume and assign the Assumed Contracts to the Winning Bidder free and clear of all Interests; (b) enter into the Bidder APA with the Winning Bidder; and (c) execute and deliver to the Winning Bidder such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Winning Bidder as provided in the Bidder APA.

17.     Subject to compliance with Paragraph 32, The Winning Bidder, as applicable, has provided adequate assurance of their respective future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3), and 365(f)(2)(B) of the Bankruptcy Code.

18.     Upon the effective date of the assumption and assignment (the "Assignment Date") of the Assumed Contracts, the Winning Bidder shall be deemed to be substituted for the Debtors as a party to the Assumed Contracts and all documents related to the

Assumed Contracts.   Upon the <u>Assignment Date</u>, each of the Assumed Contracts, shall be deemed valid and binding, in good standing, in full force and effect in accordance with their terms, and the Winning Bidder shall be fully and irrevocably vested with all right, title, interest, and obligations of the Debtors as tenant or lessor, as applicable, accruing from and after the Assignment Date, under the Assumed Contracts.   Assumption of the Assumed Contracts by the Debtors is contingent upon the concurrent consummation of the assignment of the Assumed Contracts to the Winning Bidder.

19.     Upon the Assignment Date, except as may be provided in this Order, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved of all future liability under the Assumed Contracts for any breach occurring after the assumption and assignment thereof to the Winning Bidder.

20.     Effective on the Assignment Date, (a) the assumption of the Assumed Contracts and the Assumed Liabilities by the Winning Bidder constitutes a legal, valid, effective, complete and absolute sale, conveyance and transfer from the Debtors to the Winning Bidder of the Assumed Contracts and the Assumed Liabilities, including liabilities arising under the Assumed Contracts and (b) the Debtors shall have no liability to Winning Bidder, any governmental agency, surety or any other person for any liabilities with respect to the Assumed Contracts and such Assumed Liabilities *except* any liabilities associated with the Acquired Assets (arising before the Closing) including, without limitation, any other existing indebtedness or encumbrances, any federal, state, or local tax liabilities, any obligations pursuant to any collective bargaining agreements.

21.     Further, it is the Parties' express intention that the Transactions be, and be treated for all purposes, as an absolute sale, conveyance and transfer of all prospective liabilities relating to, in connection with or arising under the Assumed Contracts and Assumed Liabilities.

22.     The Debtors are hereby authorized to take all actions necessary to implement and effectuate the terms of this Order and the relief granted pursuant to this Order, the Transaction, and the Bidder APA.

23.     This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

24.     Pursuant to section 363(m) of the Bankruptcy Code, the Winning Bidder shall be, and hereby is, deemed to have purchased the Acquired Assets in good faith.  The transactions contemplated by the Bidder APA are undertaken by the Winning Bidder in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the Winning Bidder is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code and the reversal or modification on appeal of the authorization provided herein of the Transaction shall neither affect the validity of the Transaction nor the transfer of the Acquired Assets to the Winning Bidder (or its Affiliates), free and clear of Interests.

25.     To the extent any of the deadlines set forth in this Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Order shall govern.

26.     Notwithstanding the applicability, or the possible applicability, of Bankruptcy Rules 4001, 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Order shall not be stayed in any respect and shall be immediately effective and enforceable upon its entry.  This Order constitutes a final order upon which the Debtors and the Winning Bidder are entitled to rely.

27.     The terms and provisions of the Bidder APA and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, their estates and their creditors (whether known or unknown), the Winning Bidder, and their respective Affiliates, successors and assigns, and any affected third parties, including all Persons asserting an Interest in the Acquired Assets (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, receiver, party, entity, or other fiduciary under any chapter of the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, or any trustee, examiner or receiver, party, entity, or other fiduciary.  The provisions of this Order and the terms and provisions of the Bidder APA, and any actions taken pursuant hereto or thereto as of the date of the entry of such Order shall survive the entry of any order that may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Bidder APA, as well as the rights and interests granted pursuant to this Order and Bidder APA shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

28.     In the event that there is any conflict or derogation between the terms of this Order and the terms of (a) the Bidder APA, or (b) any other order of this Court other than the DIP Orders, the terms of this Order shall control.  Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, or any order confirming such plan, or any other

17

order in these chapter 11 cases (including any order approving the wind-down or dismissal of these chapter 11 cases or any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from the provisions of the Bidder APA or the terms of this Order.  This Order shall survive any dismissal of any of these chapter 11 cases.

29.    The Bidder APA, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that (a) the Agent consents to any such modification, amendment or supplement, such consent not to be unreasonably withheld, and (b) any such modification, amendment or supplement does not materially change the terms of the Bidder APA or any related agreements, documents, or other instruments.

30.    Notwithstanding anything to the contrary in this Order, the Bidder APA or any related agreements, documents, or other instruments, or otherwise, (a) all cash proceeds of the Transaction, in an aggregate amount to be not less than the greater of (i) $6,500,000, inclusive of the Deposit (as such term is defined in the Bidder APA), and (ii) the amount equal to sum of the Cash Payment (as defined in the Bidder APA) *minus* any amount permitted to be escrowed pursuant to Section 2.3(f) of the Bidder APA  *plus* the Deposit (the greater of such amounts (i) and (ii), the "Cash Purchase Price"), shall be paid at the time of Closing into an account (the "Lender Account") designated by Agent and Lenders (as defined in the DIP Orders); *provided further* that, at the time of Closing, Debtors shall pay the Deposit into the Lender Account, and all such cash proceeds of the Transaction shall be for application against and the indefeasible payment of outstanding Obligations owing by the Debtors to Agent and

18

Lenders (as defined in the DIP Orders), in accordance with the DIP Orders and Section 6.4 of the

Loan Agreement, until such time as all such obligations have been fully repaid and satisfied in

full in accordance with the terms and conditions of the DIP Orders, the Loan Agreement and the

other Financing Agreements; (b) the Liens of Agent and Lenders on the Acquired Assets shall

not terminate and shall continue to secure all Obligations (as defined in the DIP Orders) until the

earlier to occur of (i) receipt of the Cash Purchase Price in the Lender Account, and (ii) Agent's

written confirmation that the Liens of Agent and Lenders on the Acquired Assets have been

released; *provided* that (X) the Liens of Agent and Lenders shall attach to the Debtors' interest in

any funds escrowed pursuant to Section 2.3(f) of the Bidder APA (the "Accounts Receivable

Escrow"), (Y) the funds deposited in the Accounts Receivable Escrow shall not be disbursed

without the consent of Agent or further order of this Court, and (Z)  Winning Bidder and

Debtors, to the extent the amount of the Accounts Receivable Escrow is determined to exceed

the Accounts Receivable Deficiency Amount ("Excess Escrow Amount"), shall transfer or cause

to be transferred all funds from the Accounts Receivable Escrow to the Lender Account in an

amount equal to the Excess Escrow Amount without setoff, recoupment, or deduction of any

kind whatsoever; and (c) to the extent of any conflict between (i) the terms of this Order, the

Bidder APA or any related agreements, documents, or other instruments and (ii) the terms of the

DIP Orders, the terms of the DIP Orders shall control, *provided, however* that this Order shall

control as to the release and termination of Liens on the Acquired Assets upon receipt of the

Cash Purchase Price in the Lender Account as provided for in (b) hereof.

31.    The following settlement provisions contained in the Bidder APA are

hereby approved: (A) the Parties reserve their rights with respect to (i) Landlord's asserted

administrative claim for "stub rent," (ii) whether Sellers must pay currently under Section

365(d)(3) of the Bankruptcy Code all items of "Rent" as defined in the Master Leases, including

real property taxes, "Impositions," liens, utilities, insurance and common area charges under

each of the Master Leases, for the period from the petition date to the surrender of premises, and

(iii) whether such amounts are administrative priority claims; (B) Landlord waives any right to

assert that, based on the non-severability of the Master Leases, the Sellers must pay 100% of all

items of "Rent" as defined in the Master Leases, that come due and owing under the Master

Leases until Debtors surrender 100% of the "Premises" as defined in each Master Lease and,

upon closing, Landlord shall withdraw the portion of any pleading that made such an assertion,

with prejudice; (C) the Landlord's administrative priority claim for base rent amounts that come

due during the chapter 11 cases for each location that Sellers have not surrendered shall be

allowed as an administrative claim and timely paid pursuant to Section 365(d)(3) of the

Bankruptcy Code (for the avoidance of doubt, if the Closing occurs and the Debtors surrender an

individual location to Landlord, the Debtors shall not be responsible for paying any items of

"Rent" as defined in the Master Lease, relating to such location that first comes due after the date

of such surrender); and (D) if the Closing occurs, the Landlord's allowed administrative priority

claims shall be reduced by $1,000,000.

        32.    All provisions in this Order relating to the assumption and assignment of

any Assumed Contract shall be subject to this Paragraph 32 and Paragraph 33 hereof.  No later

than five (5) days following entry of this Order, the Debtors, with the cooperation of the Winning

Bidder, shall file a notice of Assumed Contracts ("the Assumed Contract Notice"), which shall

include the Debtors' proposed cure amounts for the applicable Assumed Contracts, and serve the

notice on the applicable Contract Counterparties and their counsel, if known, via

email.  Following the filing of the Assumed Contract Notice, if a Contract Counterparty requests

adequate assurance of future performance information of the Winning Bidder or any assignee (the "Adequate Assurance"), the Debtors, with the cooperation of the Winning Bidder, shall provide Adequate Assurance to such party and their counsel, if known, via-email within 24 hours after such request.  For the avoidance of doubt, any Contract Counterparty that filed an objection or joinder to objection to the Motion shall be deemed to have requested Adequate Assurance.  Any Contract Counterparty that wishes to object to the assumption and assignment of any Assumed Contract, including with respect to the proposed Adequate Assurance and/or cure amounts (each a "Adequate Assurance/Cure Objection"), must file its Adequate Assurance/Cure Objection within seven (7) days after the filing of the Assumed Contract Notice.  If there is no objection with respect to a particular Assumed Contract, such Assumed Contract shall be assumed and assigned with full effect of all provisions in this Order relating to Assumed Contracts.  If a party objects to the assumption and assignment of a particular Assumed Contract, including the proposed cure amounts, such objection shall be heard on a date as soon as the Court has availability following five (5) days after the objection deadline has passed, or such other times as agreed between the applicable parties or otherwise ordered by this Court.  The Winning Bidder shall have standing to and be entitled to pursue determination of the cure amount at any such hearing.  If the parties are able to consensually resolve an objection prior to an adjudication of the dispute, the applicable Contract Counterparty shall withdraw its objection, and assumption and assignment of such Assumed Contract, along with the applicable relief in this Order, shall be granted without further order from this Court, unless the objecting party requests that a further order be entered approving the assumption and assignment.  If, pursuant to final order of the Court, the cure amount for any Assumed Contract shall be established to be in excess of the amount provided on the Assumed Contract Notice, Winning Bidder shall have five

21

(5) business days to remove such contract from the list of Assumed Contracts pursuant to the Bidder APA. Following such removal, all liabilities under such contract shall be Excluded Liabilities. At the Winning Bidder's election, and sole cost and expense, the Debtors shall use reasonable efforts to further assume and assign additional unexpired leases or executory contracts that the Debtors have not already rejected, including by filing one or more amendments to the Assumed Contract Notice, pursuant to this Paragraph 32 or further motion to the Court.

33.    Notwithstanding anything in the Motion, the Bidder APA, any document related thereto, or in this Order, all Contract Counterparties' rights with respect to all issues that may be or have been asserted in an Adequate Assurance/Cure Objection are fully reserved until such issues are resolved or determined pursuant to the procedures set forth in Paragraph 32. For the avoidance of doubt, until ruled upon by a final order, all timely filed objections of Contract Counterparties to the assumption and assignment of any Assumed Contract and joinders to objections to the Motion and all reservations of rights therein are fully preserved and shall be treated in accordance with paragraph 32 of this Order, and no finding of fact, conclusion of law, or other provision of this Order (other than issued in accordance with paragraph 32 of this Order) shall apply, be binding upon any Contract Counterparty, be law of the case, or operate to preclude or collaterally estop any issue with respect to the assumption and assignment or conditions of the assumption and assignment of any Assumed Contract of the Debtors, including without limitation, the Debtors', Winning Bidder's, or any assignee's obligations in connection with same. Notwithstanding anything in the Motion, the Bidder APA, any document related thereto, or this Order, nothing herein shall authorize, absent further order of the Court or written consent of the applicable Objecting Landlords,[5] the sale of any Objectors' Leases[6] free and clear

---

[5]    "Objecting Landlords" shall mean, collectively, IREIT West Bend Main, L.L.C; SFI Limited Partnership 1000's; Capview Income & Value Fund IV, LP; Brixmor SPE 1, LLC and Brixmor Operating Partnership L.P.

22

of non-monetary interests, covenants, or rights, in each case that run with the land subject to the lease or limit or condition the permitted use of the leased property, including easements, covenants, licenses, or permits.

34.     Notwithstanding anything in the Motion, any notice related thereto, or this Order to the contrary, none of the Cigna Contracts, as defined in the *Objection of Cigna to Debtors' Motion for Entry of an Order (I) Authorizing the Sale of the Debtors Optical Business, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Authorizing a Settlement of Claims and Causes of Action, (IV) Granting Related Relief Related to the Wind-Down of the Debtors Remaining Operations, and (V) Granting Related Relief* [Docket No. 1070], shall be assumed and assigned pursuant to this Order.

35.     Notwithstanding anything to the contrary in the Houlihan Lokey Capital, Inc. ("Houlihan") engagement letter (the "Engagement Letter") or the order approving their retention [Docket No. 184], the transaction fee due from Sellers to Houlihan upon consummation of the sale of the Acquired Assets to the Winning Bidder shall be $300,000.

36.     This Court shall retain jurisdiction (to the greatest extent allowed by applicable law) with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order, the Bidder APA, all amendments thereto, and any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Order or the Bidder APA (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

---

6   The "Objectors' Leases" shall mean the Debtors' unexpired leases for the following properties:  10996 N Port Washington Road, Mequon, WI; 1745 South Main St., West Bend, WI; 1001 State Highway 15 S. Fairmont, MN; 127 1450 E. Geneva Street Delavan, WI; 102 2741 Roosevelt Road Marinette, WI; 100 S 66th St., Lincoln, NE 68510

.

Omaha, Nebraska
Dated: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE