## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) | Case No. 19-80064 (TLS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF CERTAIN REAL PROPERTY, AND (B) GRANTING CERTAIN RELATED RELIEF

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state as follows in support of this motion (this "Motion"). The Debtors submit the *Declaration of Michael Jerbich in Support of the Debtors' Motion for Entry of An Order (A) Establishing Bidding Procedures for the Sale of Certain Real Property, and (B) Granting Certain Related Relief* (the "*Jerbich Declaration*"), filed contemporaneously herewith, in support of this motion (this "Motion").

### Relief Requested

1. By this Motion, the Debtors respectfully seek: (a) entry of an order (the "Bidding Procedures Order") (i) establishing the bidding procedures attached hereto as **Exhibit A** (the "Bidding Procedures"), by which the Debtors will solicit and select the highest or otherwise best

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); Shopko Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

offers for the sale, liquidation, or other disposition (such sales, liquidations, or other dispositions, the "Transactions") of the real property owned by the Debtors, all of which are listed on **Exhibit B** attached hereto, including six store properties and sixty-one out-lots (collectively the "Properties", and each individually, a "Property"); (ii) approving the form and manner of notice with respect to certain procedures, schedules, and agreements described herein and attached hereto as **Exhibit C** (the "Transaction Notice"); (iii) scheduling a final hearing (the "Transaction Hearing") to approve the Transactions; and (iv) approving the form agreements attached to the Bidding Procedures which are attached as **Exhibit D** and **Exhibit E**; (b) following the Transaction Hearing, entry of an order (the "Transaction Order") authorizing the sale, liquidation, or other disposition of the Debtors' Properties free and clear of liens, claims, interests, and encumbrances (collectively, the "Interests") with any such Interests to attach to the proceeds thereof with the same validity and priority (under the Bankruptcy Code) as such Interests had immediately prior to the consummation of the Transactions; and (c) granting related relief.

2.      On the closing date of any Transaction, to the extent the DIP Claims, Prepetition ABL Claims, and Term Loan Secured Claims are not yet Satisfied (as each term is defined in the Third Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and its Debtor Affiliates (the "Plan") as set forth in Article II.C and Article III.B of the Plan, the proceeds of the Properties from the closing of such Transaction shall be paid to the Agent for application and payment of all obligations, if any, owing by the Debtors to Agent and the Lenders, or otherwise in accordance with the DIP Order.

3.      Finally, the Debtors respectfully request leave to submit proposed orders for the Court's consideration to grant the relief requested herein.

## Jurisdiction and Venue

4.      The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code ("the Bankruptcy Code"), Bankruptcy Rules 2002, 6004, and Rule 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Nebraska (the "Local Rules").

## Background

7.      On January 16, 2019 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

8.      By this motion the Debtors seek to implement Bidding Procedures to liquidate all of the Debtors' Properties.  The Debtors have ceased or will be ceasing business operations at all of the Properties within the next thirty days, and the Debtors no longer have need of them.

9.      The Debtors, through its real estate broker, A&G Realty Partners, LLC ("A&G"), has taken substantial steps to market the Properties, including contacting, and distributing marketing packages to, over 15,000 real estate brokers and over 1,500 professionals who have expressed interest to A&G in bankruptcy auctions for leases, fee-owned assets and land parcels in

retail bankruptcy cases in the last five years. (*See Jerbich Declaration*).  The Debtors, through

A&G, have also notified and distributed marketing materials to a significant number of local third

parties and retailers who operate near the specific Properties who may have an interest in the

Properties.  (*Id.*)  The Properties are also published as "for sale" on A&G's website, and "Building

for Sale" signs have been placed in several of the retail Properties.  (*Id.*)  The Debtors will continue

to pursue the highest or otherwise best bids possible for the Properties pursuant to the Bidding

Procedures.   The Debtors respectfully request that the Court approve the following proposed

general timeline, or one substantially similar, in order to allow for an expeditious sale of the

Properties:

| Action | Deadline |
|---|---|
| Bid Deadline | July 22, 2019 at 4:00 p.m. (prevailing Central Time) as the deadline by which bids for the Properties (as well as all other documentation required under the Bidding Procedures for Potential Bidders (as defined in the Bidding Procedures)) must be actually received (the "Bid Deadline"). |
| Auction | July 24, 2019 at 9:00 a.m. (prevailing Central Time) at the offices of Kirkland & Ellis LLP, located at 300 North LaSalle, Chicago, Illinois 60654, (or at any other location as the Debtors may hereafter designate on proper notice). |
| Transaction Objection Deadline | July 26, 2019 at 4:00 p.m. (prevailing Central Time) as the deadline to object to the Transaction. |
| Reply Deadline | July 29, 2019 at the time of the Transaction Hearing (prevailing Central Time) as the deadline to reply to the Transaction Objections, either in writing or in open court at the Transaction Hearing. |

| Transaction Hearing | July 29, 2019 (Central Time) at 1:00 p.m. or as soon thereafter as the Court's calendar would permit |
|---|---|

10.     In formulating Bidding Procedures and the time periods therein for this sale process, the Debtors have attempted to balance their obligation to provide adequate and appropriate notice to parties in interest and potential purchasers against the need to sell the Properties expeditiously. Completion of the sale process in a timely manner will optimize the value of the Properties. Accordingly, the Debtors submit that the relief requested herein is in the best interests of the Debtors' estates.

### *The Bidding Procedures and Auction*

11.     The Bidding Procedures are designed to optimize value for the Debtors' estates and will enable the Debtors, with the assistance of the broker for these sales, A&G, to review, analyze and compare all bids received to determine which bids are in the best interests of the Debtors' estates and creditors.  The Bidding Procedures describe, among other things, the manner by which bidders and bids become "qualified," the receipt and negotiation of bids received, the conduct of an auction, the selection and approval of any ultimately successful bidders, and the deadlines with respect to the foregoing Bidding Procedures.  The Debtors reserve the right under these Bidding Procedures to withdraw any Property from the Auction at any time for any reason, including that the Debtors failed to receive adequate bids.  The Debtors submit that the Bidding Procedures afford the Debtors the best opportunity to pursue a sale process that will maximize the value of their assets for the benefit of creditors.

12.     Certain of the key terms of the Bidding Procedures are highlighted as follows

pursuant to Local Rule 6004-1(c):[2]

a.      **Due Diligence.**   To receive due-diligence information, a party interested in submitting a bid ("Bidder") must deliver (or have delivered) a request therefor prior to the Bid Deadline (defined below) to: (i) A&G Realty Partners, LLC, 525 West Monroe Street, Suite 2330, Chicago, Illinois 60661 (Attn: Michael Jerbich), email: michael@agrealtypartners; (ii) Kirkland & Ellis, LLP, 300 North LaSalle, Chicago, Illinois 60654 (Attn: Travis Bayer), email: travis.bayer@kirkland.com; and (iii) McGrath North Mullin & Kratz, PC LLO, 101 Dodge Street, Suite 3700, Omaha, Nebraska 60102, Attn: James Niemeier, email: jniemeier@mcgrathnorth.com. The due-diligence period will end on the Bid Deadline. Neither Debtors nor their representatives, including A&G, will be obligated to furnish any information following the expiration of the Bid Deadline.  Further, neither the Debtors nor their representatives, including A&G, will be obligated to provide any information to a party that, in the Debtors' reasonable discretion, is not reasonably likely to be a Qualified Bidder.

b.      **Bid Deadline**.  A Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such Bid via email (in .pdf or similar format), so as to be **actually received** on or before **July 22, 2019, at 4:00 p.m. (prevailing Central Time)** (the "Bid Deadline"), to:

   (i)    A&G Realty Partners, LLC, 525 West Monroe Street, Suite 2330, Chicago, Illinois 60661 (Attn: Michael Jerbich), email: michael@agrealtypartners;

   (ii)   Kirkland & Ellis, LLP, 300 North LaSalle, Chicago, Illinois 60654 (Attn: Travis Bayer), email: travis.bayer@kirkland.com; and

   (iii)  McGrath North Mullin & Kratz, PC LLO, 101 Dodge Street, Suite 3700, Omaha, Nebraska 60102, Attn: James Niemeier, email: jniemeier@mcgrathnorth.com.

c.      **Bid Requirements**.  In order for a Bidder to become a Qualified Bidder, a Bidder must submit to Debtors' Counsel, with a copy to A&G, a Bid in writing that satisfies the following requirements (collectively, the "Bid Requirements"), as determined by the Debtors, in their discretion.

   i.     **Bid**.  The Bid must include a completed and signed "Offer and Bidder Registration Form" in the form attached hereto as **Exhibit F**, identifying the

---

[2]      The brief description of the key milestones in the Bidding Procedures described herein is for the convenience of the Court and parties in interest.  The full copy of the Bidding Procedures, which are attached hereto as **Exhibit A**, should be reviewed in its entirety and will control in the event of any inconsistency or ambiguity in any descriptions of them herein.  Capitalized terms used in this summary and not otherwise defined herein have the meanings given to them in the Bidding Procedures.

legal name of the bidder (including any equity holders or other financial backers, if the Bidder is an entity formed for the purpose of consummating the transaction) and stating among other things the amount of the Bid, the Property or Properties to which the Bid pertains, and an allocation of the Bid amount among the Properties included in the Bid.  The minimum bid amount for each Property shall be established at the discretion of the Debtors.  The Bid must expressly state that the Bidder's offer is all cash, on an "as-is, where-is" basis.  The Bid must also state that it is severable by Property if such Bid is not determined by the Debtors to be the Winning Bid or Backup Bid that becomes the Winning Bid with respect to any Property or Properties.

ii.   **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction that demonstrates that the Bidder has received sufficient debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, or shall have covenants and conditions acceptable to the Debtors.

iii.  **Contingencies; No Financing or Diligence Outs**.  A Bid shall contain no contingencies to the validity, effectiveness, and/or binding nature of the Bid, including contingencies for regulatory review or approval, due diligence or inspection, or financing of any kind.

iv.   **APA.**  Each Bid must include a fully completed and executed asset purchase agreement substantially in the forms annexed hereto as **Exhibit D** and **Exhibit E** ("APA").  The APA, as tendered, may not contain any contingencies, including, but not limited to due diligence and financing contingencies.  To the extent any modifications are proposed, a red-lined copy of the APA must be included, provided that modifications that deviate substantially from the form in **Exhibit D** and **Exhibit E** may be rejected, in the Debtors' sole discretion.

v.    **Financial Wherewithal.** Each Bid must provide evidence satisfactory to the Debtors, in their sole discretion, of the bidder's financial wherewithal and ability to consummate the transaction.

vi.   **Good-Faith Deposit.**  Each Bid must include a Good-Faith Deposit in the amount of 10% of the Purchase Price stated in the Bid, in immediately available funds.  The Good-Faith Deposit shall be by wire transfer in accordance with wire instructions provided by A&G.  Good-Faith Deposits shall: (i) be held by the Escrow Agent in a segregated account at First American Title Company; (ii) not be deemed to be property of the Debtors' bankruptcy estates pending further order of the Court (except as provided in the immediately following paragraph);

and (iii) be held in escrow pending further order of the Court or forfeiture as described immediately below, or returned to the Bidder in accordance with the Bidding Procedures or the Bidder's signed agreement. \*\*\*

    viii.   **Irrevocability of Bids; Rejection of Bids.** A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and the Qualified Bidder offering the Qualified Bid is not selected as the Backup Bidder. Unless determined by the Debtors to be the Successful Bid or Backup Bid, all other Qualified Bids and all other successive bids at the Auction shall be deemed rejected at the conclusion of the Auction.

    d.   **Designation of Qualified Bidders.** The Debtors shall determine in their discretion which bids qualify as Qualified Bids and which bids shall be rejected as non-confirming bids. The Debtors shall have the right to reject bids as non-conforming bids; provided, however, the Debtors shall have the right, but not the obligation, to negotiate with any bidder with respect to clarification or modification of any Bid. A Bid will be considered a "Qualified Bid," and each Bidder that submits a Qualified Bid will be considered a "Qualified Bidder," if the Debtors determine, in their discretion, that such Bid:

    (i)  satisfies the Bid Requirements set forth above; and

    (ii) constitutes a good faith, bona fide, offer to purchase one or more of the Properties. \*\*\*

By 2:00 p.m. on July 23, 2019, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties and counsel to the Committee a copy of each Qualified Bid. The Debtors will provide such notice to each Bidder at the email address set forth on the Offer & Bidder Registration Form provided by the Bidder. \*\*\*

    e.   **The Auction**:   \*\*\* As soon as reasonably practicable but prior to the commencement of the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best respective Qualified Bids as to the Properties, as determined in the Debtors' business judgment (each a "Baseline Bid"), and provide copies of the documents supporting the Baseline Bids to all Qualified Bidders, the Committee, and the Notice Parties. The Baseline Bids will serve as the starting point at the Auction as to the applicable Properties, taking into account all relevant considerations, including the financial condition of the applicable bidder and certainty of closing. \*\*\*

Unless otherwise indicated as provided by the Bidding Procedures Order, the Auction shall take place at **9:00 a.m. (prevailing Central Time) on July 24, 2019**, at the offices of Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, or such later date and time or location as selected by the Debtors. The Auction shall be conducted in a timely fashion according to the following procedures:

-8-

i.   **The Debtors' Conduct of the Auction**.  The Debtors and their professionals shall direct and preside over the Auction.  The Debtors may, at the beginning of the Auction, announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit Overbids (as defined herein). The Debtors may, in keeping with the goal of the Auction, offer the Properties for sale separately, all together, or in groups, in their discretion. At the start of the Auction as to each Property or Properties, the Debtors shall describe the terms of the applicable Baseline Bid.  All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid.  ***

f.   **Closing the Auction**.  The Auction as to each Property shall continue until there is only one Qualified Bid that the Debtors determine, in their business judgment, to be the highest or otherwise best Qualified Bid.  Such Qualified Bid shall be declared the "<u>Winning Bid</u>" as to the Property and such Qualified Bidder, the "<u>Winning Bidder</u>," at which point the Auction as to that Property will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid.  Such acceptance by the Debtors of the Winning Bid is conditioned upon satisfactory documentation and approval by the Court of the Winning Bid.***

g.   **Backup Bidder**.

i.   Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid as to a Property or Properties at the Auction, as determined by the Debtors in the exercise of their business judgment, shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>") until such time that the Transaction is consummated, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors. ***

iii.  If the Winning Bidder should fail to consummate the approved Transaction contemplated by its Winning Bid, the Debtors may select the Backup Bidder as the Winning Bidder, and such Backup Bidder shall be deemed a Winning Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate the Transaction contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

h.   **Transaction Hearing.**  A hearing to consider approval of the Transaction(s) (the "<u>Transaction Hearing</u>") pursuant to which the Debtors and the Winning Bidders intend to consummate the Transactions contemplated by the Winning Bids will be held **on or after July 29, 2019** and otherwise in accordance with any scheduling order entered by the Court. ***.

i.   **Closing.**  The closing of the sale of the Properties will occur in accordance with the terms of the Winning Bidder Sale Documents or the purchase agreement of the entity otherwise authorized by the Court to purchase the Properties, as applicable.

j.   **Failure of a Winning Bidder to Consummate Purchase.** If any Winning Bidder should fail to consummate the purchase of the applicable Property pursuant to the terms of the Winning Bidder Sale Documents, and such failure be the result of such Winning Bidder's breach of, or default, or failure to perform under, any Winning Bidder Sale Documents or the terms of these Bidding Procedures (the "Defaulting Bidder"), and/or fail to cooperate with the Debtors and their advisors to contest any objections to the purchase of the applicable Property and/or to appear for testimony, as needed, such Defaulting Bidder's Qualified Bidder Deposit shall be forfeited to the Debtors, and the Debtors shall have all rights and remedies available under applicable law. ***

k.   **Reservation of Rights.**  The Debtors reserve their rights to modify these Bidding Procedures in their business judgment, in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Transaction, including:  (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.  Nothing in these Bidding Procedures shall abrogate the fiduciary duties of the Debtors. ***

l.   **Return of Deposit.**  The Deposit of any Winning Bidder shall be applied to the Purchase Price of the applicable Transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors and shall be returned (other than with respect to the Winning Bidder and the Backup Bidder) on the date that is three business days after the Auction.

If a Winning Bidder fails to consummate a proposed Transaction because of a breach by such Winning Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Winning Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates, and the Debtors shall be free to consummate the proposed Transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

m.   **Commission**:  The Debtors' broker, A&G, shall be paid a commission of 4% of the total purchase price on each sale of Property from the proceeds of the sale of that Property. Except as provided in this paragraph, and except as otherwise agreed by Debtors in writing, the Debtors shall be under no obligation to pay commission to any agent or broker.  All commissions, fees, or expenses for agents, other than as retained by the Debtors, may be paid by bidders at such bidder's discretion.

-10-

*Notice Procedures*

13.    The Debtors propose the following notice procedures to be implemented in connection with the Bidding Procedures process.

14.    As soon as reasonably practicable after the entry of the Bidding Procedures Order, the Debtors shall serve the Transaction Notice, substantially in the form attached hereto as **Exhibit D** or **Exhibit E**, the Form APA, and the proposed Bidding Procedures Order, to the extent such documents have not already been provided, by first-class mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon (a) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Properties within the past six months; (b) all entities known to have or to have asserted any lien, claim, interest, or encumbrance in or upon any of the Properties; and (c) the Office of the United States Trustee for the District of Nebraska (the "U.S. Trustee").

15.    In addition, as soon as reasonably practicable after the entry of the Bidding Procedures Order, the Debtors shall serve the Transaction Notice by first-class mail, postage prepaid or, for those parties who have consented to receive notice by the ECF system, by ECF, upon (a) the office of the U.S. Trustee for the District of Nebraska; (b) counsel for the Official Committee of Unsecured Creditors; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors request that such notice be deemed sufficient and proper notice of the Transaction with respect to known interested parties.

16.     The Auction will be conducted on July 24, 2019 at 9:00 a.m. (prevailing Central Time) at the offices of Kirkland & Ellis LLP, located at 300 North LaSalle, Chicago, Illinois 60654.

17.     As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file on the docket, but not serve, a notice identifying the Successful Bidder (the "Post-Auction Notice"), substantially in the form attached hereto as **Exhibit G**.

18.     The Debtors request that the Court hold the Transaction Hearing on July 29, 2019, at 1:00 p.m. (prevailing Central Time), or as soon thereafter as the Court's schedule would allow. At the Transaction Hearing, the Debtors will seek Court approval of the Successful Bid and the Backup Bids, as applicable.  The Transaction Hearing shall be an evidentiary hearing on matters relating to the Transaction, and there will be no further bidding at the Transaction Hearing. In the event that a Successful Bidder cannot or refuses to consummate the Transaction, the Debtors may, in accordance with the Bidding Procedures, designate the relevant Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors shall be authorized, but not required, to consummate the Transaction with the Backup Bidder without further order of the Court.

19.     As proposed, any and all objections, if any, to the Transaction (a "Transaction Objection") must be filed by July 27, 2019 at 4:00 p.m. (prevailing Central Time) (the "Transaction Objection Deadline") and served on (a) the Debtors, Specialty Retail Shops Holding Corp., 700 Pilgrim Way, Green Bay, Wisconsin 54304, Attn: Russell Steinhorst, Chief Executive Officer; (b) counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Travis Bayer, Esq.; Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Steven Serajeddini, Esq. and Daniel Rudewicz, Esq.; (c) co-counsel to the Debtors, McGrath North Mullin & Kratz, P.C. LLO, 1601 Dodge St., Omaha, Nebraska 68102, Attn: James Niemeier,

Esq.; (d) the Office of the United States Trustee for the District of Nebraska, 111 South 18th Plaza,

#1125, Omaha, Nebraska 68102, Attn: Jerry Jensen, Esq.; (e) counsel to Wells Fargo Bank, N.A.,

Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Chad Simon, Esq.; and (f)

counsel to the Official Committee of Unsecured Creditors, Robert J. Feinstein, Pachulski Stang

Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017. Any party failing to

timely file a Transaction Objection will be forever barred from objecting and will be deemed to

have consented to the Transaction, including the transfer of the Debtors' right, title and interest in,

to, and under the Properties free and clear of any and all liens, claims, interests, and encumbrances

in accordance with the relative definitive agreements for the Transaction(s).

## **Basis for Relief**

I.    **The Bidding Procedures are Fair, Designed to Maximize the Value Received for the Properties, and Consistent with the Debtors' Reasonable Business Judgment.**

20.    Adoption of the Bidding Procedures is a valid exercise of the Debtors' business

judgment.  Courts have consistently held that a debtor's business judgment is entitled to substantial

deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g.*, *In re*

*Trilogy Dev. Co., LLC*, No. 09-42219, 2010 Bankr. LEXIS 5636, at *3–4 (Bankr. W.D. Mo. 2010)

(holding that section 363 of the Bankruptcy Code permits the debtor to sell their assets if a sound

business purpose exists); *In re Channel One Commc'ns, Inc.*, 117 BR 493 (Bankr. E.D. Mo. 1990)

(same); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in

possession can sell property of the estate . . . if he has an 'articulated business justification.'"

(internal citations omitted)); *see also In re Farmland Indus., Inc.*, 294 B.R 855, 881 (Bankr. W.D.

Mo. 2003) (holding that courts in this district are reluctant to interfere with corporate decisions

unless "it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are

in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code"); *In re Integrated Res., Inc.*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

21.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (internal citations omitted)).

22.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g.*, *Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

23.     The Debtors believe that the proposed Bidding Procedures will promote active bidding from interested parties and will maximize the value the Debtors will receive form the Properties for the benefit of the Debtors' estates.  The proposed Bidding Procedures will allow the Debtors to conduct an auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who can demonstrate the ability to close a transaction. In particular, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

24.     The Debtors submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with the controlling legal standard.  Accordingly, the Court should approve the Debtors' adoption of the Bidding Procedures as a valid exercise of the Debtors' business judgment.

## II.     The Expedited Auction Should be Approved as an Exercise of Sound Business Judgment

25.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A disposition of a debtor's assets on an expedited basis should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g., In re George Walsh Chevrolet, Inc*., 118 B.R. 99, 102 (Bankr. E.D. Mo. 1990) (holding that if reasonable notice is given to all creditors and parties in interest, a sound business purpose for the disposition exists, the disposition price is fair and reasonable, and the sale does not unfairly benefit insiders or the prospective purchaser, then the requirements of section 363(b) of the Bankruptcy Code for seeking an expedited are satisfied); *In re Channel One*

*Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (same); In re The Landing, 156 B.R.

246, 249 (Bankr. E.D. Mo. 1993) (same); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149 (3d

Cir. 1986) (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d

1063, 1070 (2d Cir. 1983) (same); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr.

N.D. Ill. 1999) (same).

26.    Once the Debtors articulate a valid business justification, "[t]he business judgment

rule 'is a presumption that in making the business decision the directors of a corporation acted on

an informed basis, in good faith, and in the honest belief that the action was in the best interests of

the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted);

*see also In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988) (holding that section 363(b)

of the Bankruptcy Code is satisfied when using "sound business justifications" and, "absent a

showing of bad faith, the debtors entered into the disposition of substantially all of their assets");

*In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr.

29, 2014) ("If a valid business justification exists, then a strong presumption follows that the

agreement at issue was negotiated in good faith and is in the best interests of the estate . . . ")

(citations omitted); *In re Integrated Res., Inc.*, 147 B.R. at 656 (explaining that the business

judgment rule's presumption that corporate directors "acted on informed basis, in good faith and

in the honest belief that action taken was in the best interests of the company"); *In re Johns-*

*Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of

reasonableness attaches to a Debtor's management decisions.").

### A.    A Sound Business Purpose Exists for the Sale of the Properties on an Expedited Basis

27.    As set forth above, the Debtors have a sound business justification for selling the

Properties.  The Debtors believe that doing so will maximize the Properties' value through a

competitive marketing and auction process, thus subjecting the Properties to competing bids and

enhancing the Debtors' ability to receive the highest, or otherwise best, value for the Properties.

Consequently, the ultimately successful bids, after being subject to a further "market check" in the

form of the Auction, will constitute, in the Debtors' reasonable business judgment, the highest or

otherwise best offer for the Properties and will provide a greater recovery for their estates than any

known or practicably available alternative. *See, e.g., In re Trans World Airlines, Inc.*, No. 01-

00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (holding that while a "section 363(b) sale

transaction does not require an auction procedure . . . the auction procedure has developed over

the years as an effective means for producing an arm's length fair value transaction."); *see also In

re Wintz Cos.*, 219 F.3d 807, 813 (8th Cir. 2000) (holding that an auction procedure for the

disposition of the debtor's property can be structured to "maximize the value of estate property").

Further, the Debtors are reserving their rights to not enter into a sale transaction with respect to

any Property if the Debtors believe in their reasonable business judgment that entry into any such

sale will not maximize the value of the Property being considered.

28.     Furthermore, the Debtors have been engaged in an extensive marketing program

related to the Properties since April 2019.  The Debtors, through their broker A&G, have taken

substantial steps to market the Properties, including contacting, and distributing marketing

packages to, over 15,000 real estate brokers and over 1,500 professionals who have expressed

interest to A&G in bankruptcy auctions for leases, fee-owned assets and land parcels in retail

bankruptcy cases in the last five years. The Debtors, through A&G, have also notified and

distributed marketing materials to a significant number of local third parties and retailers who

operate near the specific Properties who may have an interest in the Properties.  The Properties are

also published as "for sale" on A&G's website, and "Building for Sale" signs have been placed in

several of the retail Properties.   Thus, a prolonged sale process would not benefit the Debtors'

estates.

29.   Lastly, an expedited sale would help the Debtors to avoid additional carrying costs.

30.   Thus, the Debtors submit that the Successful Bidders' Bids will constitute the

highest or otherwise best offer for the Properties and will provide a greater recovery for the Debtors'

estates than would be provided by any other available alternative.   As such, the Debtors'

determination to sell, liquidate, or enter into a disposition regarding the Properties through an

expedited Auction process will be a valid and sound exercise of the Debtors' business judgment.

The Debtors will submit evidence at the Transaction Hearing to support these conclusions.

Therefore, the Debtors request that the Court make a finding that the proposed Transaction is a

proper exercise of the Debtors' business judgment and are rightly authorized on an expedited basis.

**B.      Adequate and Reasonable Notice of the Auction Will be Provided.**

31.   As described above, the sale notice: (a) will be served in a manner that provides

adequate notice of the date, time, and location of the Transaction Hearing; (b) informs parties in

interest of the deadlines for objecting to the Transaction; and (c) otherwise includes all information

relevant to parties interested in or affected by the Transaction.  Significantly, the form and manner

of the Transaction Notice will have been approved by the Court pursuant to the Bidding Procedures

Order.

**C.      The Transactions Are Proposed in Good Faith and Without Collusion, and
Successful Bidder Is a Good-Faith Purchaser.**

32.   The Debtors request that the Court find that the Successful Bidder(s) will be entitled

to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection

with the Transaction.

33.   Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or
> (c) of this section of a sale or lease or property does not affect the validity of a sale
> or lease under such authorization to an entity that purchased or leased such property
> in good faith, whether or not such entity knew of the pendency of the appeal, unless
> such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

34.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold

pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser

leased or purchased the Properties in "good faith."  While the Bankruptcy Code does not define

"good faith," courts have held that a purchaser shows its good faith through the integrity of its

conduct during the course of the sale proceedings, finding that where there is a lack of such

integrity, a good-faith finding may not be made. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788

F.2d 143, 147 (3d Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good faith

status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders

or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Paulson*, 276

F.3d 389, 392 (8th Cir. 2002); *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003); *In re Sasson*

*Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988).  The Debtors submit that the Successful Bidders

will each be deemed a "good faith purchaser" within the meaning of section 363(m) of the

Bankruptcy Code, and the Form APA, or any marked versions thereof, is a good-faith agreement

on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.[3]

---

[3]     The Debtors believe that a finding of good faith within the meaning of section 363(m) of the Bankruptcy
Code is appropriate for the Successful Bidders. Pursuant to the Bidding Procedures, the Successful Bidders
will have had to present a proposal in accordance with the Bidding Procedures. In addition, the Debtors will
not choose as the Successful Bidders or Backup Bidders (as defined in the Bidding Procedures) any entity
whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted, and will be
prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard
of section 363(m) of the Bankruptcy Code has been satisfied.

35.     First, as set forth in more detail above, the consideration to be received by the

Debtors pursuant to the Transactions will be substantial, fair, and reasonable.  Second, any sale

agreement with the Successful Bidders will be the culmination of a competitive Auction in which

the parties will presumably be represented by counsel and all negotiations will be conducted on an

arm's length, good-faith basis.  Third, there is no indication of any "fraud, collusion between the

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other

bidders" or similar conduct that would cause or permit the Transaction to be avoided under section

363(n) of the Bankruptcy Code.  And, with respect to potential bidders, the Bidding Procedures

are designed to ensure that no party is able to exert undue influence over the process.  Fourth, the

Successful Bidders' offer will have been evaluated and approved by the Debtors in consultation

with their advisors.  Accordingly, the Debtors believe that the Successful Bidders and Form APA

(or marked version thereof) will be entitled to the full protections of section 363(m) of the

Bankruptcy Code.

### D.     The Transactions Should Be Approved "Free and Clear" Under § 363(f).

36.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and

clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such

a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale

price of the property exceeds the value of all liens on the property; (d) the interest is the subject of

a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable

proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

37.     Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the

requirements enumerated therein will suffice to warrant the sale of the Debtors' Assets free and

clear of all Interests (i.e., all liens, claims, rights, interests, charges, or encumbrances).  *See In re*

*Heine*, 141 B.R. 185, 189 (Bankr. D. S.D. 1992) ("[O]nly one of the five conditions must be met for authority to sell property free and clear of liens.").

38.     The Debtors submit that any Transaction satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Transaction will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Transaction, subject to any claims and defenses the Debtors may possess with respect thereto.

39.     Accordingly, the Debtors request authority to convey the Properties free and clear of all Interests including liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the Transaction.

### III.     The Form and Manner of the Transaction Notice Should be Approved

40.     As noted above, as soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors will serve the Transaction Notice upon the following parties or their respective counsel, if known:  (a) all entities reasonably known to have expressed an interest in a transaction with respect to the Properties within the past six months; (b) all entities known to have or to have asserted any lien, claim, interest, or encumbrance in or upon any of the Properties; and (c) the Office of the United States Trustee for the District of Nebraska (the "U.S. Trustee").

41.     The Debtors submit that notice of this motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Transaction Notice, constitutes good and adequate notice of the Transaction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. Accordingly, the Debtors request that the Court approve the form and manner of the Transaction Notice.

## IV.    The Breakup Fee Has a Sound Business Purpose and Should Be Approved.

42.    The Debtors also seek authority, but not direction, to pay a Breakup Fee in an amount not to exceed 3% of a stalking-horse bid, only in the event that the Debtors elect to enter into a stalking-horse arrangement with a third-party bidder as to any particular Property.  The use of a stalking horse in a public auction process for dispositions pursuant to section 363 of the Bankruptcy Code is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value."  *Official Comm. of Unsecured Creditors v. Interforum Holding LLC*, 2011 WL 2671254, *1 (E.D. Wis. July 7, 2011); *see also AgriProcessors, Inc. v. Fokkena* (*In re Tama Beef Packing, Inc.*), 321 B.R. 496, 497–98 (B.A.P. 8th Cir. 2005).  As a result, stalking-horse bidders virtually always require break-up fees and, in many cases, other forms of bid protections as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement."  *Interforum Holding*, 2011 WL 2671254, at *1 (internal citations omitted).  "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be ***necessary*** to discharge [such] duties to maximize value."  *In re Integrated Res., Inc.*, 147 B.R. 650, 659–60 (S.D.N.Y. 1992) (emphasis added).  Specifically, bid protections may be necessary to convince a white knight bidder to enter the bidding by providing some form of compensation for the risks that it is undertaking.  *E.g.*, *In re Integrated Res., Inc.*, 147 B.R. at 660–61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Int'l Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder

who would capitalize on the initial bidder's . . . due diligence."). Thus, the use of bid protections

has become an established practice in chapter 11 cases.

43.     As a result, courts routinely approve bid protections in connection with proposed

bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See, e.g.*,

*In re Wintz Cos.*, 230 B.R. 840, 847 (B.A.P. 8th Cir. 1999) (holding that bid protections benefitted

the estate rather than chilled bidding); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir.

1999). The Debtors believe that the allowance of the bid protections is in the best interests of the

Debtors' estates and their creditors.

44.     Accordingly, for the reasons set forth above, the Court should grant the Debtors the

authority to incur and pay the Breakup Fee obligations in their discretion as a valid exercise of the

Debtors' business judgment and otherwise within the controlling legal standards in this district.

## V.     Request for Immediate Relief & Waiver of Stay Under Rule 6004(h)

45.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease

of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise." The Debtors request that the Bidding Procedures Order and Sale Order(s) be

effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rules 6004(h)

is waived.

46.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an

objecting party to appeal before an order can be implemented. *See* Advisory Committee Note to

Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Note

are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen (14)

day stay period, a leading treatise suggests that the fourteen (14) day stay period should be

eliminated to allow a sale or other transaction to close immediately "where there has been no

objection to the procedure." 10 Collier on Bankruptcy, ¶ 6004.11 (L. King, 16th rev. ed. 2019).

Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

47.     Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

48.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

## **Notice**

49.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) counsel for the Official Committee of Unsecured Creditors; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested

notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

50.     No prior request for the relief sought herein has been made to this Court or any other Court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter the Bidding Procedures Order and (ii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated:   July 2, 2019
  Omaha, Nebraska

/s/  Lauren R. Goodman

James J. Niemeier (NE Bar No. 18838)
Michael T. Eversden (NE Bar No. 21941)
Lauren R. Goodman (NE Bar No. 24645)
**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:     (402) 341-3070
Facsimile:     (402) 341-0216
Email:           jniemeier@mcgrathnorth.com
                 meversden@mcgrathnorth.com
                 lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Travis M. Bayer (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:           james.sprayregen@kirkland.com
                 patrick.nash@kirkland.com
                 travis.bayer@kirkland.com

- and -

Steven Serajeddini (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors*