# PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "Agreement") is executed as of the _____ day of _____, 2019 (the "Effective Date"), by and between SHOPKO STORES OPERATING CO., LLC, a Delaware limited liability company ("Seller") and **[●]**, a **[●]** ("Purchaser").

## RECITALS

WHEREAS, on January 16, 2019, Seller and its subsidiaries filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court"), which are being jointly administered under the caption *In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064 (the date of such filing, the "Petition Date" and Seller's and its subsidiaries' Chapter 11 cases administered in respect of such filing, the "Bankruptcy Cases").

WHEREAS, Seller is continuing to manage its properties and operate its businesses as debtors-in-possession under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code;

WHEREAS, Purchaser desires to purchase the real property described on Exhibit A hereto (the "Property") and the personal property, if any, owned by Seller and located at the Property (the "Personal Property" and, together with the Property, the "Acquired Assets") from Seller, and Seller desires to sell to Purchaser the Acquired Assets in a sale authorized by the Bankruptcy Court pursuant to, inter alia, Sections 105 and 363 of the Bankruptcy Code, all on the terms and subject to the conditions set forth in this Agreement and the Bankruptcy Court's order approving this Agreement (such order, the "Sale Order");

WHEREAS, the Acquired Assets shall be purchased by Purchaser pursuant to the Sale Order approving such sale, free and clear of all claims and encumbrances, pursuant to Sections 105 and 363 of the Bankruptcy Code, and Rules 6004 of the Federal Rules of Bankruptcy Procedure, all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and the local rules for the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and conditions stated herein, the sufficiency of which is hereby acknowledged by the parties hereto, Seller and Purchaser hereby agree as follows:

## AGREEMENT

1. Recitals.  The foregoing recitals and all exhibits attached hereto are incorporated into this Agreement as if set forth in full herein.

2. Sale of Acquired Assets.  On the terms and conditions set forth in this Agreement, Seller agrees to sell, assign, convey, and transfer to Purchaser, and Purchaser agrees to purchase from Seller, all rights, title, and interests held by Seller in the Acquired Assets.

3.  Purchase Price.

    A.  Seller is to sell and Purchaser is to purchase the Acquired Assets for a total of _____ Dollars ($_____) (the "Purchase Price").

    B.  The Purchase Price for the Acquired Assets (exclusive of closing adjustments and costs provided for herein) shall be paid in the following manner:

        (i)  An initial non-refundable (except as specifically provided in Section 13 and Section 18(B) below) deposit in the amount of $_____ (the "Deposit")[1] is due when Purchaser signs and submits this Agreement and shall be delivered in immediately available funds to First American Title Company who shall hold such Initial Deposit in a segregated, non-interest bearing account (the "Account") pending the Closing.

        (ii)  The balance of the Purchase Price, exclusive of closing adjustments and costs (the "Balance"), is due at the closing of the transaction contemplated hereunder (the "Closing") and is payable in immediately available funds and shall be delivered to Seller, who shall, upon receipt of such funds, automatically be entitled to receive and apply any proceeds in the Account.

    C.  The acceptance by Purchaser of the delivery of a quitclaim deed or deeds (the "Deed" or "Deeds") for the Property and a bill of sale, in the form attached hereto as Exhibit B, for the Personal Property (the "Bill of Sale") by Seller at Closing shall be deemed to be full performance and discharge of every agreement and obligation (either express or implied) on the part of Seller to be performed pursuant to this Agreement and no representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing (if any).

4.  Access and Cooperation.  Purchaser, its agents, employees, contractors and designees, at any time after the Effective Date, upon 48 hours prior written notice, and continuing through the earlier to occur of Closing and the Sale Closing Deadline, shall have the right to enter upon the Property during reasonable business hours for the purpose of conducting any and all inspections, studies and investigations of the Property which may be desired by Purchaser.  Purchaser shall not perform any invasive testing on the Property. Prior to entry upon the Property, Purchaser shall deliver evidence of its (or its agents' and/or contractors') liability insurance naming Seller as additional insured and in form, substance, and amount(s) reasonably acceptable to Seller. Purchaser shall indemnify and hold Seller harmless from and against any and all cost, expense, liability or damage arising out of: (i) any injury to any person or the Acquired Assets attributable to Purchaser's exercise of any of its rights hereunder (including, but not limited to, the entry upon the Property by Purchaser or any of its agents or contractors); and (ii) any mechanics liens filed against the Property or claims or demands made against Seller for work performed by or on the behalf of Purchaser.  The preceding sentence shall survive the Closing or sooner termination of this Agreement.

---

[1] Deposit to be 10% of Purchase Price.

5. Sale Order. The Seller's right to sell the property without further order from the Bankruptcy Court is authorized by the Sale Order, the terms and provisions of which are incorporated herein by reference, provided, however, that Seller shall be entitled to seek entry of a further order authorizing the sale as a condition to Closing. Where the terms of this Agreement and the Sale Order conflict, the terms of the Sale Order will prevail.

6. Representations of Purchaser. Purchaser covenants, represents, and warrants to Seller that, both now and as of the Closing Date:

A. The proposed sale represents an arms-length transaction between the parties, made without fraud or collusion with any other person (including any other prospective bidder for the Acquired Assets); and

B . There has been no attempt to take any unfair advantage of Seller.

7. Closing Deliveries.

A. At Closing, Seller shall deliver to Purchaser each of the following, executed and acknowledged, as appropriate: (a) Deeds (in proper statutory form for recording) so as to transfer all of its right, title and interest in and to the Property, (b) a settlement sheet, (c) such other documents required to effect a transfer of the Property under applicable state law, and (d) the Bill of Sale. Notwithstanding anything to the contrary contained herein, Seller shall not be required to execute or deliver any Seller's or Vendor's Affidavit or Owner's Title Affidavit.

B. At Closing, Purchaser shall deliver to Seller each of the following, executed and acknowledged, as appropriate: (a) a settlement sheet, and (b) such other documents reasonably requested by the title company handling the Closing ("Title Company") and which are consistent with this Agreement to effectuate the conveyance of real property. Purchaser shall also deliver the Balance of the Purchase Price in accordance with Section 3 hereof.

C. At Closing, the parties shall cause the Deposit to be paid to Seller.

8. Closing Date and Office. The Closing shall take place no later than ten (10) days following the Effective Date (the "Sale Closing Deadline"), at the offices of Seller's attorney, or at such other location as may be mutually agreed by the parties, at a time mutually convenient for all parties pursuant to the terms of an escrow agreement with the Title Company on customary terms reasonably acceptable to Purchaser and Seller. Purchaser and Seller may execute all closing documents offsite, and transmit to Title Company accordingly for delivery at Closing. Time is of the essence with respect to Closing. The actual date on which Closing occurs shall be referred to herein as the "Closing Date".

9. Subject to Provisions. At Closing, Seller shall convey title to the Property on an AS-IS, WHERE-IS basis without any representations or warranties whatsoever, subject to all taxes, assessment, easements, covenants, conditions, restrictions, declarations and agreements of record plus those matters that would be disclosed upon a visual inspection of the Property and/or by a survey of the Property, but expressly free and clear of any mortgages, deeds of trust, tax liens, judgments, mechanics' liens or other monetary encumbrances against the Property ("Permitted

Exceptions," and the condition of the title subject only to the Permitted Exceptions is referred to herein as "Acceptable Title").

10. Title Company Approval. Purchaser shall accept title subject to the Permitted Exceptions. If Purchaser desires to purchase title insurance from the Title Company (or any other title company), Purchaser may do so, at Purchaser's discretion and at its sole cost and expense. Seller shall not be obligated to cause the Title Company to omit any Permitted Exception, including, but not limited to, the satisfaction of any exception to title relating to the filing of Seller's federal or state tax return. Purchaser shall not have the right to terminate this Agreement if Seller is able to provide Acceptable Title.

11. Survey. Purchaser may order a survey of the Property, at its sole cost and expense.

12. Flood Area/Other. If the Property is located in a flood plain, Purchaser may be required to carry insurance at Purchaser's expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Purchaser should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases. In the event the Property requires flood insurance, Purchaser may not terminate this Agreement. Purchaser may not terminate this Agreement if the Property is subject to building or use limitations by reason of the location which materially interfere with Purchaser's intended use of the Property.

13. Insurance and Risk of Loss. Seller shall cause the insurance (if any) on the Property to be canceled as of the Closing Date. In the event that, prior to the Closing, all or substantially all of the Property, any interests therein, or any rights appurtenant thereto are taken or appropriated (either permanently or for temporary periods) under the power of eminent domain or condemnation by any authority having such power, or by virtue of any actions or proceedings in lieu thereof, or if any notice or threat of such taking or appropriation has been given or is pending at the Closing Date, then Purchaser, at its option, may either (a) terminate this Agreement by written notice to Seller, and upon receipt of such written notice, the Deposit shall be refunded to Purchaser and neither party shall have any further obligation hereunder, or (b) elect to proceed with Closing, in which event the Purchase Price shall be reduced by an amount equal to any sums actually received by Seller from the condemning authority by reason of such taking, appropriation or action or proceeding in lieu thereof. In the event the Property is damaged prior to Closing in an amount exceeding $25,000, and there is no insurance to cover the loss, either Purchaser or Seller can terminate this Agreement, by written notice to the other party. In such an event, the Deposit shall be refunded to Purchaser and neither party shall have any further obligation hereunder other than any obligations that expressly survive the termination of this Agreement. In the event the Property is damaged prior to Closing, and there is insurance to cover the loss, then Purchaser shall proceed with Closing in which event the Purchase Price shall be reduced by all insurance proceeds in respect of such damage collected by Seller before the Closing Date and Seller shall assign to Purchaser all of Seller's rights, title and interest in and to all such insurance proceeds payable to but not collected by Seller before the Closing Date.

14. Acceptance of State and Municipal Department Violations and Orders. Purchaser accepts the Acquired Assets subject to all notes or notices of violations, known or unknown, of law or municipal ordinances, orders or requirements noted in or issued by any governmental department

having authority as to lands, housing, buildings, fire and health and labor conditions affecting the Acquired Assets (all of which shall be deemed as additional "Permitted Exceptions"). This provision shall survive Closing.

15. Closing Adjustments and Costs.

    A. Purchaser shall pay the cost of all (i) documentary stamps, recordation taxes, transfer taxes and any other similar tax related to the conveyance of title to the Acquired Assets and (ii) title searches, title commitments, title policies, survey(s), investigations, tests and closing costs of the Title Company.

    B. If at the time of Closing the Property is affected by an assessment which is or may become payable in annual installments, and any installment is then a lien, then for the purposes of this Agreement all the unpaid installments shall be payable by Purchaser when each installment as to such assessment is due and payable upon and after the Closing and all such assessments shall be deemed as additional "Permitted Exceptions."

    C. Each of the following items are to be apportioned as of midnight the day before Closing in a customary manner: (a) real estate taxes on the basis of the fiscal period for which assessed; (b) special assessment liens in accordance with the preceding paragraph; (c) utilities; (d) water and sewer charges; and (e) any other income or charges customarily prorated in similar transactions. If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

16. Use of Purchase Price to Pay Encumbrances. If there is any monetary encumbrance which is capable of being reduced to a sum certain affecting the sale which Seller is obligated to pay and discharge at Closing pursuant to this Agreement, Seller may use any portion of the balance of the Purchase Price to discharge it. As an alternative, Seller may deposit money with the Title Company in such amount as reasonably required by the Title Company to assure its discharge. Upon request made within a reasonable time before Closing, Purchaser agrees to provide separate certified checks to assist in clearing up these matters.

17. Personal Property. Purchaser accepts the Personal Property "as-is" and "where is", without representation as to quantity, quality, or any other matter.

18. Events of Default.

    A. Purchaser shall be in default under this Agreement if Purchaser (1) fails to pay the balance of the Purchase Price on or before the Closing Date, (2) fails to pay, perform or observe any of Purchaser's obligations hereunder, (3) assigns this Agreement without Seller's consent as provided in Section 34 of this Agreement, or (4) records any written instrument regarding this Agreement.

    B. If any payment or any other material covenant of this Agreement hereof is not made, tendered or performed by either Seller or Purchaser, as herein provided, then this Agreement, at the option of the party who is not in default, may be terminated by such party.

(i) In the event of such default by Seller, if Purchaser elects to treat this Agreement as terminated, then, as liquidated damages and not a penalty and as Purchaser's sole and exclusive remedy, the Deposit shall be returned to Purchaser and Seller shall be released from any and all liability hereunder. Purchaser expressly waives its right to seek specific performance or damages in the event of Seller's default hereunder.

(ii) In the event of such default by Purchaser, if Seller elects to treat this Agreement as terminated, then all payments made hereunder shall be forfeited to and retained by Seller and Seller shall be entitled to the retention of the Deposit as liquidated damages and not a penalty, and Seller shall also retain and be entitled to exercise all rights to bring such other causes of action against Purchaser as are allowed by law as a result of Purchaser's default.

C. Notwithstanding the occurrence of an event of default hereunder by Purchaser, the Seller, may, in its sole discretion, keep this Agreement in effect and proceed to Closing.

19. No Representation; Purchaser's Duty to Review.

IT IS UNDERSTOOD AND AGREED THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE ACQUIRED ASSETS INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE ACQUIRED ASSETS WITH GOVERNMENTAL LAWS (INCLUDING, WITHOUT LIMITATION, ACCESSIBILITY FOR HANDICAPPED PERSONS), THE TRUTH, ACCURACY OR COMPLETENESS OF ANY ACQUIRED ASSETS DOCUMENTS OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE ACQUIRED ASSETS.  PURCHASER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND TRANSFER TO PURCHASER AND PURCHASER SHALL ACCEPT THE ACQUIRED ASSETS "AS IS, WHERE IS, WITH ALL FAULTS", EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT.  PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE ACQUIRED ASSETS OR RELATING THERETO (INCLUDING SPECIFICALLY, WITHOUT LIMITATION, ACQUIRED ASSETS INFORMATION PACKAGES DISTRIBUTED WITH RESPECT TO THE ACQUIRED ASSETS) MADE OR FURNISHED BY THE SELLER OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, UNLESS SPECIFICALLY SET FORTH IN THIS AGREEMENT.  PURCHASER REPRESENTS TO SELLER THAT PURCHASER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO CLOSING, SUCH INVESTIGATIONS OF THE ACQUIRED ASSETS, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF,

AS PURCHASER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE ACQUIRED ASSETS AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE ACQUIRED ASSETS, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN SUCH REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER AS ARE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING.

20. <u>Broker's Commission</u>.

   A. Any commission or fee of any type due and payable to a broker on behalf of Purchaser as a result of this Agreement or related to the sale of the Acquired Assets shall be paid solely by Purchaser.  Seller shall have no obligation to fund or cause the funding of any commission or fee due to any broker acting on behalf of Purchaser.  Purchaser indemnifies Seller in this regard including, without limitation, for any such fee and for all expenses incurred in respect of any litigation or claims brought seeking the payment of such fee.  This paragraph shall survive Closing or sooner termination of this Agreement.

   B. Any commission or fee due and payable to A&G Realty Partners on behalf of Seller as a result of this Agreement or related to the sale of the Acquired Assets shall be paid at Closing out of the Purchase Price proceeds.

21. <u>Notices</u>.  All notices hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, addressed, if to Seller, to Shopko Stores Operating Co., LLC, Attn: Russell Steinhorst – CEO, 700 Pilgrim Way, Green Bay, Wisconsin 54304, with a copy to Attn: Legal Department, Shopko Stores Operating Co., LLC, 700 Pilgrim Way, Green Bay, Wisconsin 54304 and if to Purchaser, [●]; provided that each party by like notice may designate any further or different addresses to which subsequent notices shall be sent.

22. <u>Additional Provisions</u>.

   A. The parties agree that neither this Agreement nor any memorandum thereof shall be recorded or filed in any government office charged with the obligation to accept documents for recording or filing, and such office is instructed to refuse to accept same for recordation or filing.

   B. Purchaser and Seller agree that neither party shall produce any press releases or other advertising related to this Agreement or the transactions contemplated hereby at any time prior to or after each Closing unless otherwise agreed upon (as to both timing and content) by both parties except as may be required by law, proceeding (including the Bankruptcy Cases), or stock exchange rules or regulations; provided that in the event any such communication is required by law, proceeding (including the Bankruptcy Cases), or stock exchange rules or regulations, the disclosing party shall, to the extent permitted by law, provide the other party with a reasonable opportunity to review and comment upon any such disclosure and shall take into consideration such comments in good faith.

  C. In the event of litigation between the parties in relation to the interpretation or enforcement of this Agreement, the reasonable attorneys' fees and court costs incurred by the party prevailing in such litigation shall be borne by the non-prevailing party.

  D. Purchaser agrees that it will assist Seller in obtaining Bankruptcy Court approval of the Sale Order and in contesting any objections to transactions contemplated hereby, including furnishing affidavits or other documents or information as may be needed for filing with and appearing for testimony at the Bankruptcy Court.

23. <u>Strict Compliance</u>.  The parties hereto agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, and that money damages or legal remedies would not be an adequate remedy for any such damages. Therefore, it is accordingly agreed that each party shall be entitled to enforce specifically the terms and provisions of this Agreement, or to enforce compliance with, the covenants and obligations of any other party, in any court of competent jurisdiction, and appropriate injunctive relief shall be granted in connection therewith. Any party seeking an injunction, a decree or order of specific performance shall not be required to provide any bond or other security in connection therewith and any such remedy shall be in addition and not in substitution for any other remedy to which such party is entitled at law or in equity. For all purposes of this Agreement, the parties hereto agree that time is of the essence.

24. <u>Governing Law; Waiver of Jury Trial</u>.  This Agreement and all claims, controversies and causes of action arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of _____[2], including all matters of construction, validity, performance and enforcement.  Each party hereto hereby consents to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Nebraska with respect to all matters arising under or relating to this Agreement. Each party hereto hereby irrevocably waives any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY LITIGATION, ACTION, PROCEEDING, CROSS-CLAIM OR COUNTERCLAIM IN ANY COURT (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO (i) THIS AGREEMENT OR THE VALIDITY, PERFORMANCE, INTERPRETATION OR ENFORCEMENT HEREOF OR (ii) THE ACTIONS OF SUCH PARTY IN THE NEGOTIATION, AUTHORIZATION, EXECUTION, DELIVERY, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF.

25. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties and supersedes all prior offers, negotiations, and understandings, whether oral or written, with respect to this transaction between the parties hereto and may only be modified by a writing executed by both parties. The parties hereto agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term,

---

[2] Governing law to be the state where the Property is located if one property is purchased by Buyer. If multiple properties in multiple states are purchased by Buyer, Nebraska law will apply.

condition or provision of any other agreement contemplated hereby, this Agreement shall govern and control.

26. <u>Singular Also Means Plural</u>.  Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

27. <u>Gender</u>.  A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

28. <u>Certain References</u>.  The term "<u>herein,</u>" "<u>hereof</u>" or "<u>hereunder</u>" or similar terms used in this Agreement shall refer to this entire Agreement and not to the particular provision in which the term is used.  Unless otherwise stated, all references herein to paragraphs, subparagraphs or other provisions are references to paragraph, subparagraphs, or other provisions of this Agreement.

29. <u>No Oral Changes</u>.  This Agreement cannot be changed or any provision waived orally.  ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

30. <u>Date of Performance</u>.  If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state where the Property is located, the date for such performance shall be the next succeeding business day.

31. <u>Severability</u>.  Except as set forth herein, if any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby.  Any other clauses or provisions of this Agreement, not found invalid and unenforceable, shall be and remain valid and enforceable.

32. <u>Counterparts</u>.  This Agreement may be executed by facsimile or PDF copies in two or more counterparts and once so executed by the parties hereto, each such counterpart shall be deemed to be an original, but all such counterparts together shall constitute one agreement.

33. <u>Bulk Sales</u>.  The parties each hereby waive compliance by Seller with the provisions of the "bulk sales," "bulk transfer" or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any of the Acquired Assets and the other transactions contemplated hereby. Upon request by Seller, Purchaser shall deliver customary exemption certificates demonstrating Purchaser's exemption from sales and use taxes for each of the jurisdictions in which the Property is located.

34. <u>Binding Effect; Assignment</u>.  This Agreement shall bind and benefit the successors and permitted assigns of the respective parties hereto. This Agreement shall not be assigned by any party hereto, by operation of law or otherwise, without the prior written consent of the other party hereto, and any purported assignment in contravention of this Section 34 shall be null and void and of no force and effect.

35.     <u>Construction of Agreement</u>.  This Agreement has been drafted through a cooperative effort of both parties, and neither party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the parties.

**[Signatures appear on following page]**

IN WITNESS HEREOF, this Agreement has been executed and delivered as of the day and year first above written.

**PURCHASER**:

**[●]**

By:_____

Its:  _____

**SELLER**:

SHOPKO STORES OPERATING CO., LLC

By:_____

Its:  _____

# Exhibit A

## Legal Description of Property

## Exhibit B

### Form of Bill of Sale

KNOW ALL MEN BY THESE PRESENTS, that for the consideration set forth in that certain Purchase and Sale Agreement (the "Agreement") dated _____, 2019 between SHOPKO STORES OPERATING CO., LLC, a Delaware limited liability company ("Seller"), and _____, a _____ ("Buyer"), the receipt and sufficiency of which is hereby acknowledged, Seller does hereby sell, convey, transfer and set over to Buyer, its successors and assigns, all of Seller's right, title and interest in and to the personal property, if any, owned by Seller and located at the following described Seller owned real property:

**[Property description to be completed]**

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Agreement.

TO HAVE AND TO HOLD, the same unto Buyer, its successors and assigns forever.

IN WITNESS WHEREOF, Seller has hereunto caused this Bill of Sale to be executed this _____ day of _____, ____.

SHOPKO STORES OPERATING CO., LLC

By: _____

Title: _____