IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: ) | CASE NO. BK 19-80064-TLS |
| ) | Chapter 11 |
| SPECIALTY RETAIL SHOPS HOLDING ) | |
| CORP., *et al*[1] ) | |
| ) | |
| Debtors. ) | |
| ) | |

**MCKESSON CORPORATION'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF CERTAIN REAL PROPERTY [ETC.]**

McKesson Corporation ("McKesson"), by and through its undersigned counsel, hereby submits this Objection to the Motion for Entry of an Order (A) Establishing Bidding Procedures for the Sale of Certain Real Property, and (B) Granting Certain Related Relief (the "Sale Procedures Motion"), filed in the above-captioned jointly administered cases of Specialty Retail Shops Holding Corp. and its affiliated debtors (collectively, "Debtors").

**I.   INTRODUCTION**

1.   McKesson does not object to the sale of the properties included in the Sale Procedures Motion. In fact, McKesson strongly supports a sale of the properties. McKesson does, however, question the break-neck speed at which Debtors propose to run the process to sell 66 properties located throughout the U.S., in an open auction with no pre-selected stalking horse purchasers – approximately 3 weeks from soup to nuts. Common sense and experience dictate that such a quick process to sell 66 pieces of real property scattered across 15 states is not designed to, and will not, yield maximum value. And, Debtors have offered no evidence to support their assertion that the process must proceed at such a pace. The process should be

---

[1]   The Debtors in these Chapter 11 cases are: Specialty Retail Shops Holding Corp.; Pamida Stores Operating Co., LLC; Pamida Transportation LLC; Penn-Daniels, LLC; Place's Associates' Expansion, LLC; Retained R/E SPE, LLC; Shopko Finance, LLC; Shopko Gift Card Co., LLC; Shopko Holding Company, LLC; Shopko Institutional Care Services Co., LLC; Shopko Optical Manufacturing, LLC; Shopko Properties, LLC; Shopko Stores Operating Co., LLC; SVS Trucking, LLC.

1

slowed at least long enough to permit proper marketing of the properties, and to permit any potential buyers a reasonable opportunity for due diligence before making bids.

## II. BACKGROUND

2. Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 16, 2019. Debtors' bankruptcy cases were administratively consolidated pursuant to an order entered on January 16, 2019 [Dk. No. 25]. An Order confirming the Third Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and Debtor Affiliates (the "Plan") was entered on June 7, 2019 [Dk. No. 1557].[2] The Plan is a liquidating plan, and as was made clear at the hearings on confirmation of the Plan, Debtors are deeply insolvent and there is no realistic likelihood that general unsecured creditors will receive any recovery. In other words, the roughly 100 administrative creditors, with claims totaling between $17 million and $50 million, have the actual economic stake in the success of the proposed sales. McKesson is one of those administrative creditors.

3. Debtors filed the Sales Procedure Motion on July 2, 2019 [Dk. No. 1651]. By the Sales Procedure Motion, Debtors seek approval of an extremely expedited marketing, bidding and sale timeline to sell 60 vacant lots and 6 developed properties located in 15 states, in an open auction. The Court entered its text Order scheduling a hearing on the Sales Procedure Motion for July 12, 2019, with objections due on July 10, 2019 (the "Bid Procedures Hearing") [Dk. No. 1661].

4. Under Debtors' proposed procedures, the bid deadline for all 66 properties would be July 22 (just 10 days after the Bid Procedures Hearing and roughly 3 weeks after the Debtors' real estate broker was engaged to market and sell the properties) and the auction would take place on July 24, 2019 (a mere 12 days after the Bid Procedures Hearing.). To receive due diligence information about the properties, a potential buyer must submit a request for such information by the bid deadline (again, July 22). Under the proposed terms, Debtors would have no obligation to provide any due diligence information after June 22. The proposed procedures

---

[2] The Plan has not yet gone effective.

do not appear to include any opportunity for physical inspection of the properties. Indeed, since the 66 properties are scattered over 15 states, there is simply no time for inspections in Debtors' proposed timeline.

5.  In support of the Sales Procedure Motion, Debtors filed the Declaration of Michael Jerbich [Dk. No. 1663]. According to his Declaration, Mr. Jerbich is a Principal of A&G Realty Partners, LLC ("A&G"), identified as Debtors' real estate broker.[3] Mr. Jerbich notes that while prior to the Petition Date A&G conducted a real property analysis and helped plan a disposition strategy should that become necessary, A&G was only "recently" contacted to actually market the properties. Aside from "recently," Mr. Jerbich offers nothing more specific about when A&G commenced any marketing activities.

6.  Also in support of the Sales Procedure Motion, Debtors filed their Request for an expedited Hearing [etc.] [Dk. No. 1664]. According to Debtors, the reason for such an expedited sale process is to avoid unnecessary and continuing carrying costs, while maximizing value for stakeholders. Yet, nowhere in their papers do Debtors evidence or even suggest what those carrying costs could be. Given that 60 of the 66 properties are vacant lots, carrying costs during the time it would take for a less hurried and more orderly process cannot be much. Debtors also offer that because they have already "undertaken an extensive marketing campaign" through A&G, there is no need for a longer marketing process. Yet, again according to the Jerbich Declaration, A&G was only "recently" contacted to market the properties. Finally, Debtors merely assert, without evidence, that a longer process would not result in a greater yield.

### III. DISCUSSION

7.  As Debtors correctly point out, a debtor's business judgment in determining when and how to dispose of estate assets is generally given deference so long as there is a sound or articulated business justification. See e.g. *In re Trilogy Development Co, LLC*, 201 Bankr. LEXIS 5636, at *3-4 (Bankr. W. D. Mo. 2010); *In re Schipper*, 933 F.2d 513, 515 (7th Cir

---

[33]   Curiously, no application to employ A&G as Debtors' real estate broker, (nor obviously any order approving such application) appears on the docket.

1991). Of course, as Debtors also point out, the paramount goal of any proposed sale of property of the estate is to maximize the proceeds received by the estate. *In re Food Barn Stores, Inc*. 107 F3d 558, 564-65 (8th Cir. 1997).

8.      As discussed above, Debtors have not (and cannot) articulated a sound business justification for the extreme speed of the proposed process. Debtors have offered no evidence that carrying costs demand such a quick process. Again, given that 60 of the 66 properties are vacant lots, carrying costs during the time it would take for a less hurried process cannot be much. Moreover, according to the Jerbich Declaration, A&G was only "recently" contacted to market the properties. Surely, the administrative creditors' interests would benefit from a more proper marketing process. And, a proper process need not be long – perhaps an additional two to three months. Debtors' mere assertion, without evidence, that a longer process would not result in a greater yield should not carry the day, particularly since Debtors have no economic stake in the outcome of the proposed sales.

## IV.    **CONCLUSION**

Undoubtedly, this Court has had considerable experience in the sale of real property. McKesson suspects this Court never (or very rarely) has been asked to approve a 3-week process to market and sell real estate, when no committed buyer has been procured by the debtor/trustee. Now, expand this 3-week marketing, sale process, and auction by 66 properties located in 15 states, with no pre-selected stalking horse purchasers, and the flaws are obvious. So, while McKesson supports the sale of the properties, it cannot support the process Debtors wish to employ as it will not maximize the value—value which will be paid to the administrative

creditors of this estate. For this reason, the Debtors have not satisfied the business judgment test and the motion must be either i) modified to correct the poorly-thought out sale procedures or ii) denied.

Dated: July 10, 2019					CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, L.L.P.


							*/s/ Michael J. Whaley*_____
							Richard P. Garden, Jr., #17685
							Michael J. Whaley, #19390
							Cline Williams Wright Johnson
							Oldfather, L.L.P.
							Sterling Ridge
							12910 Pierce Street, Suite 200
							Omaha, NE  68124
							Telephone:     (402) 397-1700
							rgarden@clinewilliams.com
							mwhaley@clinewilliams.com

							and

							BUCHALTER
							A Professional Corporation


							/s/ *Jeffrey K. Garfinkle*_____
							Jeffrey K. Garfinkle (admitted *pro hac vice*)
							Paul S. Arrow (admitted *pro hac vice*)
							18400 Von Karman Avenue, Suite 800
							Irvine, CA 92612
							Tel: (949) 760-1121
							jgarfinkle@buchalter.com
							parrow@buchalter.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 10th day of July, 2019, I caused the above document to be filed in the Bankruptcy Court's CM/ECF system which gave electronic notification electronically upon all parties who filed an appearance or requested notice by electronic filing in this case.

                                        */s/ Michael J. Whaley*

4824-2095-2988, v. 1