**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064-TLS |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DEBTORS' SECOND OMNIBUS RESPONSE AND OBJECTION TO REQUESTS FOR
ALLOWANCE OF ADMINISTRATIVE EXPENSES
FILED ON OR AFTER MAY 21, 2019**

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file this omnibus response and objection (the "Objection") to the administrative claims filed in this case on or after May 21, 2019 (collectively the "Requests") and in support of thereof state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska. This is a core proceeding within the meaning of 28 US.C. §157(b). The Debtors confirm their consent pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); ShopKo Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin, 54304. The cases have been procedurally consolidated and are being jointly administered under the case caption listed above.

the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

3. The statutory predicates for relief are Bankruptcy Code sections 105(a), 503, and 507; Fed. R. Bankr. P. 3007; and Neb. R. Bankr. P. 3007-1.

## BACKGROUND

6. The Debtors were formerly engaged in the sale of general merchandise including clothing, accessories, electronics, and home furnishings, as well as the operation of pharmacy and optical services departments. The Debtors are headquartered in Green Bay, Wisconsin, and as of January 16, 2019 (the "Petition Date"), operated approximately 367 stores in 25 states throughout the United States, as well as e-commerce operations. The Debtors and their non-Debtor subsidiaries generated approximately $2.6 billion in revenue in fiscal year 2017 and, as of the Petition Date, employed approximately 14,000 people throughout the United States.

7. On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 25]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases. On January 18, 2019, the United States Trustee for the District of Nebraska (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 95].

8. On February 14, 2019, the Court entered its *Order (I) Setting a Bar Date for Filing Proofs of Claim, Including Claims Arising under Section 503(b)(9) of the Bankruptcy Code, (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (III) Setting a Bar Date for the Filing of Requests For Allowance of Administrative Expense Claims, (IV) Setting an Amended Schedules Bar Date, (V) Setting a Rejection Damages Bar Date, (VI) Setting a Premise Liability Claims Bar Date, (VII) Approving the Form of And Manner for Filing Proofs of Claim, (VIII) Approving Notice of the Bar Dates, and (IX) Granting Related Relief* (the "Bar Date Order") [Docket No. 421].

9. On May 21, 2019, the Debtors filed *Debtors' First Omnibus Response and Objection to Requests for Allowance of Administrative Expenses* ("Initial Objection") [Docket No. 1386], which provided the Debtors' response and objection to all applications for payment of administrative expenses filed on or before May 19, 2019.

10. On June 11, 2019, the Court entered its *Order Confirming the Third Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp.* ("Confirmation Order") [Docket No. 1557].

11. On July 3, 2019, the Court enter its *Order on Debtors' Motion for Entry of a Scheduling Order Setting the Procedure to Hear and Determine the Validity of Administrative Claims* ("Administrative Claim Hearing Order") [Docket No. 1656].

12. Since the Initial Objection, numerous parties have filed applications for payment of administrative expenses, or amendments[2] to their applications for payments of administrative

---

[2] Of the 25 applications for payment of administrative claim that were filed since or just before the Debtors' Initial Objection, nine of those Requests (as defined herein) appear to be amendments to previously-filed applications (each an "Amendment"). *See* Doc. Nos. 1373, 1378, 1514, 1515, 1516, 1535, 1626, 1645, 1711. The Debtors renew their objection to the initial applications, and in addition respond and object to each Amendment as set forth herein and on **Exhibit A**. Notwithstanding the Debtors' response and objection, the Debtors note that many of the Amendments present similar, if not identical, legal issues as those already briefed and before the Court pursuant to Administrative Claim Hearing Order. The Debtors submit that the issues raised in the previously filed

expenses (collectively the "Requests"). The Debtors object to those Requests as set forth herein and on the list attached hereto as **Exhibit A**.[3]

### OBJECTION

13. Administrative-expense priority status under 11 U.S.C. § 503(b)(1)(A) is reserved for "the actual, necessary costs and expenses of preserving the estate." In order to qualify for such treatment, the expense must (i) arise from a post-petition transaction between the party claiming the administrative priority and debtor-in-possession, and (ii) confer benefit upon the bankruptcy estate. *See* 11 U.S.C. § 503(b)(1). The Debtors and their advisors have evaluated each of the Requests, carefully comparing the Requests and supporting documentation with the Debtors' books and records, to determine whether there are any discrepancies.

### I.    Objection to Immediate Payment of any Administrative Claims.

14. The Debtors object to the Requests set forth in **Exhibit A**, to the extent they request immediate payment, because immediate payment is in contravention of the Confirmation Order and because none of the applicants have demonstrated there is cause for such relief.

15. Pursuant to the Confirmation Order and Articles VIII(E) and VIII(H) of the Third Amended Plan, a claims reserve is established for holders of allowed administrative claims that did not object to the Third Amended Plan, and each is entitled to participate in the distribution as provided for therein. Additionally, the Confirmation Order sets forth the distribution mechanics

---

applications and Amendments should be resolved together, consistent with the Administrative Claim Hearing Order and the timeline established therein.

[3]   On July 11, 2019, Google, LLC ("Google") filed its *Motion of Google LLC for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503* [Docket No. 1688], based on services that were performed prior to the bar date established by the Bar Date Order. Google, LLC, also filed a *Motion to Deem Administrative Expense Claim of Google LLC Timely Filed*. [Docket No. 1689] (the "Late Filing Motion"). The objection period for the Late Filing Motion runs on August 1, 2019. In filing this Objection, the Debtors address the substance of Google's administrative-expense claim. By filing this Objection, however, the Debtors are not waiving but rather expressly reserve their right to object to the Late Filing Motion.

4

for other holders of allowed administrative claims. These provisions are binding on all parties. There is no basis to collaterally attack the provisions of the Third Amended Plan and Confirmation Order.

16. In addition, and notwithstanding the Confirmation Order, the Bankruptcy Code does not require immediate payment of allowed administrative expenses prior to the effective date of a debtor's chapter 11 plan. *See* 11 U.S.C. § 1129(a). The decision regarding whether to restrict the payment of allowed administrative claims during a debtor's chapter 11 cases is left to the discretion of the court. *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1384 (11th Cir. 1994) (holding that the bankruptcy court did not abuse its discretion by exercising its discretion to find that the debtor should not pay a creditor's administrative expenses in the middle of debtor's chapter 11 cases because there were other significant claims against the estate that held a potentially higher priority or importance in the case); *In re Glob. Home Prod., LLC*, No. 06-10340 KG, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (denying the creditor's request for immediate payment on account of its administrative expense claim); *In re Garden Ridge Corporation,* 323 B.R. 136 (Bankr. D. Del. 2005) (finding that timing of the payment of an administrative claim is within the discretion of the bankruptcy court); *In re Modern Metal Prod. Co.*, No. BKR 08 B 73908, 2009 WL 1362632, at *2 (Bankr. N.D. Ill. May 13, 2009) (same); *In re Bookbinders' Rest., Inc.*, No. BKY 06-12302ELF, 2006 WL 3858020, at *7 (Bankr. E.D. Pa. Dec. 28, 2006) (same).

17. In exercising this discretion, courts have adopted a three-factor test to determine whether to require payment of administrative claims upon request: (a) the prejudice to the debtors in making an early payment; (b) the hardship to the claimant in waiting for payment; and (c) the potential detriment to other creditors that could result from an early payment. *See Garden Ridge*, 323 B.R. at 143 (discussing the foregoing factors that a court should consider when exercising its

discretion to determine whether the administrative claim should be paid immediately); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (same); *Modern Metal Prod. Co.*, 2009 WL 1362632, at *2 (same).

18. None of the Requests provides sufficient evidence to satisfy this test. ***First***, the prejudice to the Debtors weighs heavily in favor of denying the immediate payment of any allowed administrative expense claim. The Debtors have carefully budgeted their operational needs to bring their going-out-of-business sales to completion, which will ultimately maximize potential recoveries for creditors. Moreover, the requested immediate payments would cause a default under the Debtors' postpetition financing.

19. ***Second***, none of the parties requesting immediate payment have put forward any evidence to show that waiting for payment would create a material hardship for them, much less that waiting for payment would cause them to go out of business. *See Glob. Home Prod.*, 2006 WL 3791955, at *5 (finding that the second factor weighs in favor of declining to order immediate payment of an administrative claim where waiting for such payment would not cause the claimant to go out of business as a result thereof).

20. ***Finally***, paying certain administrative creditors ahead of others would undermine one of the Bankruptcy Code's chief goals, namely an orderly distribution. *See In re Glob. Home Prod.*, 2006 WL 3791955, at *3 (citing *In re HQ Global Holdings, Inc.*, 282 B.R. 169 (Bankr. D. Del. 2002)). The Bar Date Order did not require claimants to request, or the Debtors to pay, any administrative expense immediately. Requiring such immediate payment would result in other potential administrative expense claimants requesting similar payment terms, with the ensuing race for payment of administrative claims stretching the Debtors' available funds.

21. Therefore, all three of the factors used by courts in evaluating requests for immediate payment of administrative expenses weigh in favor of denying requests for immediate payment in this case.

II. **Objection to Requests for Payment of Administrative Claims Arising Prior to April 1, 2019.**

22. The Bar Date Order established a deadline for filing requests for payment of administrative claims. Specifically, the Bar Date Order provides:

> All parties asserting a request for payment of Administrative Claims arising between the Petition Date and **April 1, 2019** (the "Administrative Claims Bar Date"), but excluding (a) claims for fees and expenses of professional retained in these proceedings, (b) claims for expenses incurred by the members of the official committee of unsecured creditors (the "Committee") in their performance of the duties of the Committee, (c) claims asserting priority pursuant to section 503(b)(9) of the Bankruptcy Code and (d) claims held by governmental entities covered by section 503(b)(1)(B) or (C) of the Bankruptcy Code, are required file a request for payment of such Administrative Claim with the Court, and if desired, a notice of hearing on such Administrative Claim **so that the Administrative Claim is actually filed with the Court on or before April 1, 2019, at 11:59 p.m. (the "Administrative Claims Bar Date")**; provided, that the Administrative Claims Bar Date shall not apply to claims entitled to administrative priority that arise on or after the Administrative Claims Bar Date in the ordinary course of the Debtors' business.

23. The Bar Date Order requires that all administrative claims that arose prior to April 1, 2019, must be asserted by requesting payment of such claim by no later than April 1, 2019. Notwithstanding this requirement, the Debtors have identified certain Requests, set forth on **Exhibit A**, where the claimants seek payment of stub rent and other costs that were allegedly incurred prior to April 1, 2019. Claims for those costs should have been submitted on or before the April 1, 2019, bar date, but certain claimants identified failed to do so. The Debtors submit that such Requests should be disallowed as late and barred by the Bar Date Order.

III. **Objection to Requests Inconsistent with the Debtors' Books and Records.**

24. Section 503(a) of the Bankruptcy Code allows claimants to file a request for payment of administrative expenses. 11 U.S.C. § 503(a). 11 U.S.C. § 503(b) requires that "the actual, necessary costs and expenses of preserving the estate" receive treatment as an administrative-expense claim. The burden of proof under 503(b)(1) rests upon the claimant to establish tangible benefit to the bankruptcy estate. *Matter of JAS Enterprises, Inc.*, 180 B.R. 210, 218 (Bankr. D. Neb. 1995).

25. The Debtors have identified certain Requests that should be reduced, disallowed and/or expunged because the amount of each request is inconsistent with the Debtors' books and records. Specifically, based on the Debtors' review of the Requests, the amounts asserted either: (i) exceed the amount of liabilities reflected in the Debtors' books and records, or (ii) exceed the charges or other amounts to which the claimants are entitled under their respective contract or applicable law. As such, these Requests must be reduced to their appropriate amount. Because the claimants, who have the burden to prove the validity and amount of their Requests, have failed to do so, the Debtors submit that the Requests identified in **Exhibit A** should be reduced or disallowed as set forth therein.

### IV. Objection to Post-Petition "Stub Rent" and Prorated Taxes.[4]

26. The Debtors object to all Requests seeking administrative-expense priority for rent covering the remaining portion of the billing cycle in effect as of the Petition Date, where such rent had come due before the Petition Date (the "Stub Rent") because such amounts are treated as unsecured claims in the Eighth Circuit.

---

[4] Pursuant to the Court's order, the Debtors will file a reply to certain pleadings regarding the administrative priority of Stub Rent and Prorated Taxes within the August 2, 2019 deadline set by the Court. To the extent applicable, the Debtors incorporate those arguments herein.

27. Section 365(d)(3) of the Bankruptcy Code only requires the Debtor "perform all the obligations . . . *arising from and after the order for relief* under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." (emphasis added). The rule in the Eighth Circuit is clear: obligations of a debtor that arise prior to the order of relief are not entitled to administrative expense, whereas those obligations that arise after the order for relief are. *See, e.g.*, *In re Burival*, 406 B.R. 548 (8th Cir. BAP 2009) (adopting the billing date approach in the context of a claim under Section § 365(d)(3)).

28. *Burvival* establishes that stub rent is not entitled to administrative priority under section 365(d)(3). Indeed, if the facts were reversed, and rent came due on or after the Petition Date, the landlords claiming payment for stub rent would rely on *Burvival* to argue that the full rent was entitled administrative priority, notwithstanding any actual benefit conferred to the Debtors. Instead, the landlords argue that Stub Rent is nonetheless entitled to administrative priority under section 503(b). "The landlords' interpretation would change § 365(d)(3) to require timely performance of all obligations *existing as of,* as well as obligations arising from or after, the order for relief. That language is simply not in the Code[.]" *In re The 1/2 off Card Shop, Inc.*, No. 00- 48425-WS, 2001 WL 1822419, at *3 (Bankr. E.D. Mich. Mar. 7, 2001).

29. Other courts in billing date jurisdictions have also found that stub rent is not allowable as an administrative expense under section 503 of the Bankruptcy Code. *E.g.*, *In re Oreck Corp.*, 506 B.R. 500 (M.D. Tenn. 2014) (holding that the billing date interpretation of section 365(d)(3) precludes the allowance of stub rent under section 503(b)(1)); *In re Baby N' Kids Bedrooms, Inc.*, 2007 WL 1218768, at *4 (E.D. Mich. Apr. 24, 2007) (same). Although courts in the Third Circuit applying a billing date approach have allowed stub rent under section 503(b) of the Bankruptcy Code, those cases are not binding and have failed to "draw the obvious conclusion

9

that rent for the first month is a pre-petition claim only, based on the billing date approach, and that the debtor has the right to use the leased property during the stub period without further liability." *In re Stone Barn Manhattan LLC*, 398 B.R. 359, 366 (Bankr. S.D.N.Y. 2008).

30. The Stub Rent claims in this case relate to a period for which rent was due prior to the Petition Date. Because they did not arise from or after the order for relief, they are not entitled to administrative priority.

31. For the same reasons, all Requests seeking administrative priority for prorated taxes (the "Prorated Taxes") should be denied as well. Under certain of the Debtors' leases, the Debtors are obligated to pay the real estate taxes for the underlying property. The timing of the tax payments vary state by state, but in all instances the Debtors make payments on taxes accrued in previous years. The Debtors do not dispute that in such leases, the Debtors are obligated to make such payments as they come due under section 365(d)(3). But, as with Stub Rent, certain landlords seek to have it both ways: arguing that the Debtors must pay prepetition taxes as they come due *and* that 2019 taxes are entitled to administrative expense status, prorated for the time the Debtors occupied the leased premises.

32. As discussed above, the Bankruptcy Code does not permit expense claims to be prorated under 11 U.S.C. § 365(d)(3). *See Burival*, 406 B.R. at 551. Rather, a debtor is responsible to pay expenses if they arise or become due *after* the order for relief. *See id.* None of the 2019 taxes will come due until 2020, well after rejection of the applicable leases and the likely conclusion of these chapter 11 cases. Therefore, under controlling Eighth Circuit precedent, the Prorated Taxes are not entitled to administrative status.

33. The Requests that seek payment of Stub Rent and Prorated Taxes must therefore be denied.

**VI.  Objections to Requests for Attorneys' Fees and Other Post-Rejection Damages.**

34. The Debtors object to all Requests by landlords for payment of attorneys' fees and other damages, including clean-up costs and disposal fees, that were incurred after the Debtors rejected their unexpired leases and executory contracts because the Debtors are not required to satisfy such Requests under either sections 365(d)(3) or 503 of the Bankruptcy Code.

35. Section 365(d)(3) of the Bankruptcy Code obligates a debtor to "perform all the obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." (emphasis added). After an unexpired lease of nonresidential real property is rejected, any unpaid amount due arising from a debtor's breach of the lease gives rise to a prepetition claim. *See* 11 U.S.C. 365(g)(1) ("[T]he rejection of an . . . unexpired lease of the debtor constitutes a breach of such contract or lease— (1) if such contract or lease has been not been assumed under this section or a plan confirmed under chapter 9, 11, 12 of this title, immediately before the date of the filing of the petition"); 11 U.S.C. 502(g). Accordingly, any obligations under a lease that arise post-rejection are treated as prepetition debts and are not entitled to administrative priority. *See, e.g., In re Burival*, 2010 WL 4875995 (Bankr. Neb. Nov. 24, 2010) (denying administrative claim for attorneys' fees arising post-rejection); *In re Pacific Arts Publishing, Inc.*, 198 B.R. 319 (Bankr. C.D. Cal. 1996) (same); *In re National Refractories & Minerals Corp.*, 297 B.R. 614 (Bankr. N.D. Cal. 2003) (holding that post-rejection damages to leased premises were not entitled to administrative priority).

36. Moreover, the post-rejection claims for attorneys' fees and other damages do not constitute "actual, necessary cost[s] . . . of preserving the estate" under 11 U.S.C. 503(b)(1)(A) (emphasis added). The District Court for the District of Nebraska has held that "actual, necessary costs and expense[s]" must provide a "tangible benefit to the bankruptcy estate; incidental benefit

11

is not sufficient for an administrative expense." *Kinnan & Kinnan Partnership v. Agristor Leasing*, 116 B.R. 162, 166 (D. Neb.1990) (citations omitted); *see, e.g.*, *In re Bellman Farms, Inc.*, 140 B.R. 986, 995 (D.S.D. 1991). In this case, the applicable claimants have put forward no evidence to show that the attorneys' fees and other post-rejection damages constitute the "actual, necessary costs and expenses of preserving the estate" as required by 11 U.S.C. 503(b)(1)(A).

37. Furthermore, any Requests that seek costs to clean up property left at the premises post-rejection are barred by the Court's order dated January 17, 2019 (the "Rejection Procedures Order") [Docket No. 75], which granted the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving The Rejection of Certain Unexpired Leases and (II) Approving Procedures To Assume or Reject Executory Contracts and Unexpired Leases, And (II) Granting Related Relief* (the "Rejection Procedures Motion") [Docket No. 21].

38. Pursuant to the Rejection Procedures Order, the Debtors are specifically allowed to abandon personal property at a leasehold post-rejection without any provision for an administrative expense for the costs resulting from such abandonment. *See* Rejection Procedures Order at p. 4. Parties asserting administrative claims have the burden to establish a benefit to the bankruptcy estate. *See, e.g., In re JAS Enterprises, Inc*., 180 B.R. at 218. The claimants asserting Requests for attorneys' fees and other post-rejection damages have failed to meet that burden. Accordingly, the Debtors submit that any such Requests, as identified on **Exhibit A**, should be denied administrative priority.

### VI. Objection to Amended Application by SFI Limited Partnership 100.

39. The Debtors object to the *Amended Application For Allowance And Payment Of Administrative Expense Claim by SFI Limited Partnership 100* ("SFI"), which seeks payment for

12

Case 19-80064-TLS    Doc 1754    Filed 07/31/19    Entered 07/31/19 18:20:30    Desc Main
Document    Page 13 of 17

(a) repairs allegedly needed for the parking lot,[5] roof, HVAC System and electrical conduit on the leased property (b) for prorated taxes; and (c) attorneys' fees incurred "to collect amounts due from Shopko under the Lease for repairs of the Leased Premises of parts thereof, for rent and the payment of taxes," because none of the amounts are allowable administrative expense under either section 365(d)(4) or 503(b) of the Bankruptcy Code.

40. SFI alleges that the Debtors failed to maintain the parking lot, roof, HVAC and electronical conduit of the leased premises, and as a result, all of those items needed to be repaired. Notably, SFI does not allege when the damage to any of those items occurred. SFI also has not established that the costs to repair those items have actually been incurred and instead relies on "estimates" for its claims. SFI, nonetheless, still seeks payment for this entire expense as an administrative priority.

41. SFI has not cited any case law in support of its claim for repair costs. Indeed, several courts have found that "[o]nly the costs of remedying damages to the Premises which actually occurred after the filing of the bankruptcy petition may be treated as administrative expense." *In re Atl. Container Corp.*, 133 B.R. 980, 992 (Bankr. N.D. Ill. 1991); *In re United Trucking Serv., Inc.*, 851 F.2d 159, 164 (6th Cir. 1988) (same). The Debtors respectfully submit that until SFI can show any of the repair obligations arose postpetition, the repair claim should be denied in its entirety.

42. SFI also seeks priority status for Prorated Taxes. The Debtors incorporate all the arguments above related to payment of Prorated Taxes. SFI relies on the non-controlling case *In re Goody's Family Clothing, Inc.*, 443 B.R. 5 (Bankr. Del. 2010), presumably in support of its tax

---

[5] The Debtors dispute that capital improvements such as replacing the roof and parking lot are required to be performed under the Lease.

claim. That case, which primarily involves the issue of whether property taxes on a commercial property are entitled to administrative priority if the property taxes do not come due prior to the debtor's rejection of the lease, is not applicable here. As described herein, the Eighth Circuit in *In re Burival* has held that in order for taxes to be afforded administrative priority, they must be due prior to the rejection date.

43.     Lastly, SFI seeks payment for attorneys' fees incurred to collect on amounts due from the Debtors under the lease. As with the repairs, SFI does not indicate when it retained an attorney or for what purpose the attorney was retained, and SFI has provided no information as to whether the attorneys' fees were reasonable. Without such information, it is impossible to determine whether SFI is in fact entitled to administrative priority on its claim for attorneys' fees. In addition, the attorneys' fees incurred by SFI provided no benefit to the estate, and therefore are not entitled to administrative priority. *See* 11 U.S. 503(b)(1).

44.     For the foregoing reasons, the Debtors respectfully request that the SFI Amended Application[6] be denied in its entirety.

*[Remainder of page intentionally left blank.]*

---

[6] "SFI Amended Application" shall mean the *Amended Application For Allowance And Payment Of Administrative Expense Claim by SFI Limited Partnership 100 (Case No. 19-80064) And Notice Of Objection/Resistance Deadline* [Docket No. 1626].

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court may deem appropriate under the circumstances.

Dated: July 31, 2019

*/s Michael T. Eversden*
James J. Niemeier (NE Bar No. 18838)
Michael T. Eversden (NE Bar No. 21941)
Lauren R. Goodman (NE Bar No. 24645)
**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:    (402) 341-3070
Facsimile:    (402) 341-0216
Email:        jniemeier@mcgrathnorth.com
              meyersden@mcgrathnorth.com
              lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (*admitted pro hac vice*)
Travis M. Bayer (*admitted pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              patrick.nash@kirkland.com
              travis.bayer@kirkland.com

- and –

Steven Serajeddini (*admitted pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        steven.serajeddini@kirkland.com
*Co-counsel to Debtors*

## Exhibit A

| Name of Claimant | Court Docket Number | Date Request for Payment Was Filed | Requested Amount | | Modified Claim Amount | | Reason for Modification |
|---|---|---|---|---|---|---|---|
| Stored Value Solutions, a Division of Comdata, Inc. | 1414 | 5/23/2019 | $ 33,129.80 | (A) (B) (U) | $ 33,129.80 | (A) (B) (U) | The Debtors have not identified any reason for modification, but contend that payment is only appropriate as set forth in the Confirmation Order. |
| | | | $ 33,129.80 | (T) | $ 33,129.80 | (T) | |
| TRC Master Fund, LLC | 1476 | 5/29/2019 | $ 110,727.00 | (A) (B) (U) | $ 102,941.68 | (A) (B) (U) | Claimant's request for payment of administrative expense was filed after April 1, 2019, and is barred by the Claims Bar Date Order.  In the alternative, Debtors' books and records show that the remaining amount is not due to claimant. |
| | | | $ 110,727.00 | (T) | $ 102,941.68 | (T) | |
| Tianjin QianBaiyi Furniture Co. LTD | 1531 | 6/6/2019 | $ 65,183.20 | (A) (B) (U) | $ 65,183.20 | (A) (B) (U) | Claimant's request for payment of administrative expense was filed after April 1, 2019, and is barred by the Claims Bar Date Order.  In the alternative, Debtors have not identified any reason for modification, but contend that payment is only appropriate as set forth in the Confirmation Order. |
| | | | $ 65,183.20 | (T) | $ 65,183.20 | (T) | |
| Sixteenth Street Development LLC | 1536 | 6/6/2019 | $ 37,147.82 | (A) (B) (U) | $ - | (A) (B) (U) | Debtors will satisfy this administrative claim pursuant to an agreed-upon resolution. |
| | | | $ 37,147.82 | (T) | $ - | (T) | |
| Fiesta Jewelry Corporation (Replaces Doc 1638 | 1641 | 7/1/2019 | $ 55,841.65 | (A) (B) (U) | $ 46,564.38 | (A) (B) (U) | Claimant's request for payment of administrative expense was filed after April 1, 2019, and is barred by the Claims Bar Date Order.  In the alternative, Debtors' books and records show that the remaining amount is not due to claimant. |
| | | | $ 55,841.65 | (T) | $ 46,564.38 | (T) | |
| Kellermeyer Bergensons Services, LLC | 1663 | 7/3/2019 | $ 355,075.76 | (A) (B) (U) | $ 355,075.76 | (A) (B) (U) | The Debtors have not identified any reason for modification, but contend that payment is only appropriate as set forth in the Confirmation Order. |
| | | | $ 355,075.76 | (T) | $ 355,075.76 | (T) | |
| Bowe Industries Inc d/b/a Changes | 1683 | 7/10/2019 | $ 31,582.80 | (A) (B) (U) | $ 30,477.44 | (A) (B) (U) | Debtors' books and records show that the remaining amount is not due to claimant. |
| | | | $ 31,582.80 | (T) | $ 30,477.44 | (T) | |
| MarketTouch Media | 1724 | 7/17/2019 | $ 61,052.91 | (A) (B) (U) | | (A) (B) (U) | Claimant's request for payment of administrative expense was filed after April 1, 2019, and is barred by the Claims Bar Date Order.  In the alternative, there is insufficient claim backup included.  Debtors' books and records show that no amounts are due. |
| | | | $ 61,052.91 | (T) | $ - | (T) | |
| Beaver Development | 1373 | 5/21/2019 | $ 18,820.95 | (A) (B) (U) | $ 7,356.71 $ - $ 11,164.24 | (A) (B) (U) | Stub rent is not an administrative expense.  Property taxes due after lease rejection date do not give rise to an administrative claim |
| | | | $ 18,820.95 | (T) | $ 18,520.95 | (T) | |
| Kellogg Shopco Properties, LLC (Successor in Interest to Diane M. Mayer) **AMENDED- SEE DOC. 927** | 1378 | 5/21/2019 | $ 35,849.72 | (A) (B) (U) | $ 19,104.08 $ 16,745.64 | (A) (B) (U) | Stub rent is not an administrative expense.  Debtors' Books and Records show no other amounts are due. |
| | | | $ 35,849.72 | (T) | $ 35,849.72 | (T) | |
| Well Nampa, LLC | 1400 | 5/23/2019 | $ 48,758.00 | (A) (B) (U) | $ 48,758.00 | (A) (B) (U) | Claimant's request for payment of administrative expense was filed after April 1, 2019, and is barred by the Claims Bar Date Order.  In the alternative, stub rent is not an administrative expense and property taxes due after lease rejection date do not give rise to an administrative claim |
| | | | $ 48,758.00 | (T) | $ 48,758.00 | (T) | |
| Kranthi Realty, LLC | 1424 | 5/23/2019 | $ 64,385.81 | (A) (B) (U) | $ 49,117.00 $ 15,268.81 | (A) (B) (U) | Claimant's request for payment of administrative expense was filed after April 1, 2019, and is barred by the Claims Bar Date Order.  In the alternative, stub rent is not an administrative expense and property taxes due after lease rejection date do not give rise to an administrative claim. |
| | | | $ 64,385.81 | (T) | $ 64,385.81 | (T) | |
| Boise Shopko LLC, Foothill Shadows, LLC, GFS Building, LLC **SEE Doc 801- Earlier Application** | 1514 | 6/5/2019 | $ 149,005.07 | (A) (B) (U) | $ 117,065.00 | (A) (B) (U) | Debtors' Books and Records show that the remaining amount is not due.  Property taxes due after lease rejection date do not give rise to an administrative claim. |
| | | | $ 149,005.07 | (T) | $ 117,065.00 | (T) | |
| Lund 144 Center LLC, Overland Wolf Building Partnership **SEE Doc 833- Earlier Application** | 1515 | 6/5/2019 | $ 92,788.61 | (A) (B) (U) | $ 92,788.61 | (A) (B) (U) | Stub rent is not an administrative claim. Property taxes due after lease rejection date do not give rise to an administrative claim. |
| | | | $ 92,788.61 | (T) | $ 92,788.61 | (T) | |
| Elizabeth Trainor LLC **SEE Docs 802, 1417- Earlier Application** | 1516 | 6/5/2019 | $ 40,588.66 | (A) (B) (U) | $ 1,856.86 | (A) (B) (U) | Debtors' books and records show that the remaining amount is not due to claimant. |
| | | | $ 40,588.66 | (T) | $ 1,856.86 | (T) | |
| East E Street Realty, LLC | 1535 | 6/6/2019 | $ 42,073.24 | (A) (B) (U) | | (A) (B) (U) | Debtors will satisfy this administrative claim pursuant to an agreed-upon resolution. |
| | | | $ 42,073.24 | (T) | $ - | (T) | |
| Lucky 13, LLC and Bullseye Venture, LLC | 1548 | 6/7/2019 | $ 27,375.00 | (A) (B) (U) | $ 27,375.00 | (A) (B) (U) | The Debtors have not identified any reason for modification, but contend that payment is only appropriate as set forth in the Confirmation Order. |
| | | | $ 27,375.00 | (T) | $ 27,375.00 | (T) | |
| Halfwassen Group Savanna, LLC | 1564 | 6/12/2019 | $ 79,669.59 | (A) (B) (U) | $ 63,046.01 $ 16,623.58 | (A) (B) (U) | Property taxes due after lease rejection date do not give rise to an administrative claim. Debtors' books and records show a different amount due. |
| | | | $ 79,669.59 | (T) | $ 79,669.59 | (T) | |
| SFI Limited Partnership 100 **AMENDED- SEE DOC. 831** | 1626 | 6/26/2019 | $ 406,325.00 | (A) (B) (U) | $ 81,759.00 | (A) (B) (U) | Stub rent is not an administrative claim.  Property taxes due after lease rejection date do not give rise to an administrative claim.  Claim for repairs is not an administrative expense.  Debtors' books and records show that the remaining amount is not due to claimant. |
| | | | $ 406,325.00 | (T) | $ 81,759.00 | (T) | |
| 2DF NO.2, L.C., ORBIT 1, LLC | 1645 | 7/1/2019 | $ 18,884.74 | (A) (B) (U) | $ 17,333.59 | (A) (B) (U) | Property taxes due after lease rejection date do not give rise to an administrative claim. Debtors' books and records show the remaining amount is due to claimant. |
| | | | $ 18,884.74 | (T) | $ 17,333.59 | (T) | |

| Name of Claimant | Court Docket Number | Date Request for Payment Was Filed | Requested Amount | | Modified Claim Amount | | Reason for Modification |
|---|---|---|---|---|---|---|---|
| Two Harbors First LLC | 1648 | 7/2/2019 | $ 42,672.74 | (A) | $ 34,961.05 | (A) | Claimant's request for payment of stub rent was filed after April 1, 2019, and is barred by the Claims Bar Date Order. In the alternative, stub rent is not an administrative expense. |
| | | | | (B) | | (B) | |
| | | | | (U) | $ 7,711.69 | (U) | |
| | | | $ 42,672.74 | (T) | $ 42,672.74 | (T) | |
| LCN SKO Omaha LLC | 1711 | 7/15/2019 | $ 600,709.42 | (A) | | (A) | Stub rent is not an administrative claim. Property taxes due after lease rejection date do not give rise to an administrative claim. |
| | | | | (B) | | (B) | |
| | | | | (U) | $ 600,709.42 | (U) | |
| | | | $ 600,709.42 | (T) | $ 600,709.42 | (T) | |
| COMES NOW WY1, LLC | 1729 | 7/18/2019 | $ 23,387.14 | (A) | $ 4,380.82 | (A) | Claminant's request for payment of stub rent was filed after April 1, 2019, and is barred by the Claims Bar Date Order. In the alternative, stub rent is not an administrative expense. Property taxes due after lease rejection date do not give rise to an administrative claim. Debtors' books and records show that the remaining amount is not due to claimant. |
| | | | | (B) | | (B) | |
| | | | | (U) | $ 13,230.07 | (U) | |
| | | | $ 23,387.14 | (T) | $ 17,610.89 | (T) | |
| Google LLC | 1688 | 7/11/2019 | $ 60,544.47 | (A) | | (A) | Debtors' books and records show that the no amount is due to claimant. |
| | | | | (B) | | (B) | |
| | | | | (U) | | (U) | |
| | | | $ 60,544.47 | (T) | $ - | (T) | |
| Royale Linens, Inc. | 1577 | 7/14/2019 | $ 22,999.20 | (A) | | (A) | Debtors have already resolved this administrative claim. |
| | | | | (B) | | (B) | |
| | | | | (U) | | (U) | |
| | | | $ 22,999.20 | (T) | $ - | (T) | |