## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064-TLS |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### DEBTORS' MOTION FOR APPROVAL OF
### SETTLEMENT WITH THE PAYLESS SHOESOURCE, INC.
### PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

#### Relief Requested

1.      The Debtors seek entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Settlement Agreement (the "Settlement Agreement"), attached hereto as **Exhibit A**, by and between the Debtors and Payless ShoeSource, Inc. (together with its affiliated debtors and debtors-in-possession, collectively, "Payless").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Nebraska (the "Court") has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5

of the United States District Court for the District of Nebraska.  The Debtors confirm their consent,

pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to

the entry of a final order by the Court in connection with this Motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, and 363 of title 11 of the

Bankruptcy Code, Bankruptcy Rules 9019, and Rule 9013-1.C of the Nebraska Rules of

Bankruptcy Procedure (the "Local Rules").

## Background

5.      The Debtors were engaged in the sale of general merchandise including clothing,

accessories, electronics, and home furnishings, as well as company operated pharmacy and optical

services departments.  The Debtors are headquartered in Green Bay, Wisconsin.

6.      On January 16, 2019 (the "Petition Date"), each Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business

and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b)

[Docket No. 25].  No party has requested the appointment of a trustee or examiner in these chapter

11 cases.  On January 18, 2019, the United States Trustee for the District of Nebraska (the "U.S.

2

Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 95].

7.      Prior to the Petition Date, Payless and the Debtors had an ongoing business relationship.  The Debtors, as licensor, and Payless, as licensee, are parties to a license agreement dated July 23, 1999 (as may be amended, modified or supplemented from time to time, the "License Agreement") and a license agreement pertaining only to certain stores that were located in the state of Washington (as may be amended, modified or supplemented from time to time the "Washington License Agreement" and together with the 1999 License Agreement, the "License Agreements").  The Debtors and Payless are also parties to a wholesale vendor agreement dated on or about June 20, 2012 (as amended or otherwise modified from time to time, the "Wholesale Vendor Agreement").  Pursuant to the License Agreements, the Debtors sold Payless inventory on a consignment basis in their stores and remitted the proceeds to Payless on a weekly basis, subject to the rights of the Debtors to retain a portion of the proceeds.  Payless filed financing statements in connection with the consigned inventory.

8.      On March 18, 2019, Payless filed proofs of claim against each of the Debtors [Claim Nos. 1951-1955, 1963-1964, 1966-1968, 1970, 1972, 1974] asserting a secured claim against the Debtors in the amount of no less than $2,330,563.14 on account of obligations due and owing from the Debtors to Payless under the License Agreements and Wholesale Vendor Agreement (the "Payless Claim").

9.      The Debtors believe that the Payless Claim is an unsecured claim against the Debtors.  But, given that Payless had a superior interest in the Payless collateral due to its position as a properly perfected consignor, Payless asserts that the Payless Claim is a secured claim and the Debtors' lenders may also be subject to liability for the Payless Claim.  Additionally, given that

the Debtors' lenders have indemnification rights against the Debtors, if Payless' position is correct, the Debtors would ultimately have to pay the Payless Claim in full.

**Settlement Agreement**

10.     In full and final satisfaction of any and all claims Payless may have against the Debtors arising from, under, or relating to the License Agreements or the Wholesale Vendor Agreement, including the Payless Claim, the Debtors and Payless have entered into the Settlement Agreement.  Through negotiations, the Debtors have agreed to pay or cause to be paid to Payless $1,300,000.00 (the "Settlement Amount") in exchange for a full release of any and all claims Payless may have against the Debtors and Wells Fargo Bank, N.A., in each of its capacities as Agent, Collateral Agent, and Term Loan B Agent (the "Credit Agreement Primary Agent").  The terms of the settlement are more fully set forth in the Settlement Agreement.  As both the Debtors and Payless have pending chapter 11 cases, the parties seek to have the Settlement Agreement approved by both this Court and the United State Bankruptcy Court for the Eastern District of Missouri (the "Payless Court") presiding over Payless' chapter 11 cases prior to the Settlement Agreement taking effect.  The Debtors shall pay or cause to be paid to Payless the Settlement Amount within two (2) business days after approval of the Settlement Agreement by this Court and the Payless Court.

**Basis for Relief**

## I.     The Debtors Have a Valid Business Justification for the Settlement Agreement.

11.     Under section 363 of the Bankruptcy Code, a bankruptcy court is empowered to authorize a chapter 11 debtor to use property of the estate, with court approval, outside the ordinary course of business.  *See* 11 U.S.C. § 363.  In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for

the requested use. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1985); *see also In re Bridge Info. Sys., Inc.*, 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003).

12.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to disposing of an estate's assets. *See, e.g., In re Trilogy Dev. Co., LLC*, 2010 Bankr. LEXIS 5636, at \*3-4 (Bankr. W.D. Mo. 2010) (holding that section 363 of the Bankruptcy Code permits the debtor to sell their assets if a sound business purpose exists); *In re Channel One Commc'ns, Inc.*, 117 BR 493 (Bankr. E.D. Mo. 1990) (same); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification.") (internal citations omitted); *see also In re Farmland Indus., Inc.*, 294 B.R 855, 881 (Bankr. W.D. Mo. 2003) (holding that courts in this district are reluctant to interfere with corporate decisions unless "it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code").

13.     Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *see also In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988) (holding that section 363(b) of the Bankruptcy Code is satisfied when using "sound business justifications" and, "absent a showing of bad faith, the debtors entered into the disposition of substantially all of their assets"); *In re Filene's Basement, LLC*, 2014 WL 1713416, at \*12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue

was negotiated in good faith and is in the best interests of the estate . . . ") (citations omitted); *In re Integrated Res., Inc.*, 147 B.R. at 656 (explaining that the business judgment rule's presumption that corporate directors "acted on informed basis, in good faith and in the honest belief that action taken was in the best interests of the company"); *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a Debtor's management decisions.").

14.     Absent the settlement provided for herein, the Debtors would likely incur significant costs associated with an action brought by Payless to recover payment on account of the claims Payless may have against the Debtors arising from, under, or relating to the License Agreements or the Wholesale Vendor Agreement.  Payless filed a secured claim for more than $2.3 million and although the Debtors believe the Payless Claim is unsecured as against the Debtors, litigation of any claim (against the Debtors or the Debtors' lenders) would require a fact-specific analysis and would be costly and time consuming.  The Debtors are confident in their position, however, because the Debtors' lenders have indemnification rights against the Debtors; if Payless were to succeed with its claim against the Debtors or the Debtors' lenders, the Debtors would be liable.  Accordingly, the Debtors believe that the compromise memorialized in the Settlement Agreement represents a sound exercise of the Debtors' business judgment and should be approved.

## II.     The Settlement Agreement is Fair, Equitable, and in the Best Interests of the Estate.

15.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement."  *See* Fed. R. Bankr. P. 9019(a).  "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  *See also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in

bankruptcy]"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006) (same);

*In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same).  Settlements are

considered a "normal part of the process of reorganization" and a "desirable and wise method[] of

bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel*

*(In re Jackson Brewing Co.),* 624 F.2d 599, 602 (5th Cir. 1980) (decided under the Bankruptcy

Act).

16.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate

notice and a hearing, approve a compromise or settlement so long as the proposed settlement is

fair, equitable, and in the best interest of the estate.  *See, e.g., In re Carlson*, No. 04-41534 (TJM),

2008 WL 345606, at *1 (Bankr. D. Neb. Jan. 7, 2008) (citation omitted). Ultimately, "the decision

to approve a settlement under [Bankruptcy] Rule 9019 is within the discretion of the bankruptcy

judge."  *In re Racing Servs., Inc.*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005).When determining

whether a settlement is fair, equitable, and in the best interest of an estate, courts in Nebraska

consider, among other factors, "the expense, inconvenience, and delay associated with [the

dispute] and the paramount interest of the creditors and a proper deference to their reasonable

views."  *In re Brodkey Bros., Inc.*, No. 13-80203 (TLS), 2013 WL 5636484, at *7 (Bankr. D. Neb.

Oct. 15, 2013) (citing  *Drexel Burnham Lambert, Inc., v. Flight Transp. Corp. (In re Flight Transp.*

*Corp. Sec. Litig.),* 730 F.2d 1128, 1135 (8th Cir. 1984) (quoting  *Drexel v. Loomis,* 35 F.2d 800,

806 (8th Cir.1929))); *ReGen Capital III, Inc. v. Official Comm. of Unsec. Creditors (In re Trism,*

*Inc.),* 282 B.R. 662, 667 (B.A.P. 8th Cir.2002)).  For example, courts in Nebraska have found that

a settlement is in the best interests of the estate when it reduces attorneys' fees that would otherwise

be incurred.  *See, e.g.*, *Carlson*, 2008 WL 345606, at *2.

17.     Importantly, it is well established that a proponent of a settlement need not convince the court that a settlement is the best possible compromise, but only that the settlement falls within the "range of reasonable compromises." *Carlson*, 2008 WL 345606, at *2 (citing *PW Enter., Inc. v. Kaler (In re Racing Servs., Inc.),* 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005)).

18.     The Debtors believe that the settlement of the Payless Claim is fair, equitable, in the best interests of the Debtors' estates, appropriate in the Debtors' business judgment, and easily falls within the range of reasonable outcomes.  As set forth above, the terms of the Settlement Agreement are the culmination of good faith negotiations and represent total and fair mitigation of litigation risk regarding the Payless Claim.  The settlement with Payless will provide the Debtors and its stakeholders with certainty regarding the resolution of the Payless Claim.  Denying approval of the Settlement Agreement would force the Debtors to bear the litigation risk and potentially face a judgement amount higher than the Debtors have calculated.  Finally, given that the Debtors' lenders have indemnification rights against the Debtors, if Payless' position is found to be correct, the Debtors would ultimately have to pay the Payless Claim in full.

19.     The Settlement Agreement allows the Debtors to avoid substantial costs and delays and to immediately get certainty regarding the Payless Claim.  The Settlement Agreement was negotiated in good faith and at arm's-length, and represents a resolution without the Debtors having to expend significant time and expense.  Accordingly, the Debtors respectfully request that the Court approve the Settlement Agreement as such action is a reasonable exercise of the Debtors' business judgment and will provide a material benefit to its estates.

**Notice**

20.     The Debtors have provided notice of this Motion to the following parties or their respective counsel:  (a) the office of the U.S. Trustee for the District of Nebraska; (b) counsel to the Committee; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents

8

under the DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the

Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the

office of the attorneys general for the states in which the Debtors operate; (i) the United States

Attorney's Office for the District of Nebraska; (j) Payless; and (k) any party that has requested

notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the

relief requested, no other or further notice need be given.  In light of the nature of the relief

requested, the Debtors submit that no other or further notice is required.

### **No Prior Request**

21.     No prior request for the relief sought in this Motion has been made to this or any

other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the relief sought herein, and granting such other relief as the Court deems appropriate.

Dated: October 2, 2019
Omaha, Nebraska

*/s/ Michael T. Eversden*

James J. Niemeier (NE Bar No. 18838)
Michael T. Eversden (NE Bar No. 21941)
Lauren R. Goodman (NE Bar No. 24645)
**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Telephone:    (402) 341-3070
Facsimile:    (402) 341-0216
Email:    jniemeier@mcgrathnorth.com
meversden@mcgrathnorth.com
lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Travis M. Bayer (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
patrick.nash@kirkland.com
travis.bayer@kirkland.com

- and -

Steven Serajeddini (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    steven.serajeddini@kirkland.com
daniel.rudewicz@kirkland.com

*Co-Counsel to the Debtors*

## Exhibit A

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

Payless ShoeSource, Inc. and its affiliated debtors and debtors in possession (collectively, "Payless"), on the one hand, and Shopko Stores Operating Co., LLC and its affiliated debtors and debtors in possession (collectively, "ShopKo"), on the other hand, hereby enter into this settlement agreement (this "Settlement Agreement") dated as of October 2, 2019.   Payless and ShopKo shall collectively be referred to as the "Parties".

## Recitals

WHEREAS, on January 16, 2019 (the "ShopKo Petition Date"), ShopKo filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Nebraska (the "ShopKo Court");

WHEREAS, on February 18, 2019, Payless filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri (the "Payless Court");

WHEREAS, ShopKo, as licensor, and Payless, as licensee, are parties to a license agreement dated July 23, 1999 (as may be amended, modified or supplemented from time to time, the "License Agreement") and a license agreement pertaining only to ShopKo Big Box Stores in the state of Washington (as may be amended, modified or supplemented from time to time the "Washington License Agreement" and together with the 1999 License Agreement, the "License Agreements");

WHEREAS, (i) Payless asserted a senior lien on and perfected security interest in Payless Inventory (as defined in the *Final Order Pursuant to U.S.C. §§105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001, and 9104 (I) Authorizing Debtors and Debtors-in-Possession to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 425] (the "Final Financing Order")), and (ii) the Final Financing Order preserved the rights of Payless with respect to the Payless Inventory;

WHEREAS, ShopKo and Payless are parties to a wholesale vendor agreement dated on or about June 20, 2012 (as amended or otherwise modified from time to time, the "Wholesale Vendor Agreement");

WHEREAS, on March 18, 2019, Payless filed proofs of claim against each of the ShopKo entities [Claim Nos. 1951-1955, 1963-1964, 1966-1968, 1970, 1972, 1974] asserting a secured claim against ShopKo in the amount of no less than $2,330,563.14 on account of obligations due and owing from ShopKo to Payless under the License Agreements and Wholesale Vendor Agreement (the "Payless Claim");

WHEREAS, the Parties have reviewed and analyzed any and all of their business transactions and potential claims and causes of action in connection with the License Agreements and Wholesale Vendor Agreement; and

WHEREAS, in full and final satisfaction of any and all claims Payless may have against ShopKo arising from, under, or relating to the License Agreements or the Wholesale Vendor Agreement, including the Payless Claim, ShopKo will pay or cause to be paid to Payless $1,300,000.00 (the "Settlement Payment").

## Agreement

**NOW, THEREFORE,** the Parties, intending to be legally bound hereby, in consideration for the mutual covenants and promises contained here, the sufficiency of which is hereby acknowledged, promise and agree:

1.  <u>Recitals</u>.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.  <u>Payment</u>.  No later than two (2) business days after approval of this Settlement Agreement by the Payless Court and the Shopko Court, ShopKo shall pay or cause to be paid to Payless, in immediately available funds, the Settlement Payment.

3.  <u>Release</u>.  On and after the date of the entry of the orders of the Payless Court and the Shopko Court approving this Settlement Agreement and upon the receipt by Payless of the Settlement Payment, for good and valuable consideration, Payless and its estates, on the one hand, and Shopko and its estates, on the other hand, hereby release, acquit, and discharge the other Party from any and all claims, causes of action and/or liability of any kind whatsoever, whether known or unknown, whether fixed or contingent, whether liquidated or unliquidated, whether disputed or undisputed, arising from, under, or relating to the License Agreements or the Wholesale Vendor Agreement, whether prior to or on or after the ShopKo Petition Date (the "Release").

The payment of the Settlement Amount to Payless shall be in full and final satisfaction of any and all liability owed by Wells Fargo Bank, N.A., in each of its capacities as Agent, Collateral Agent, and Term Loan B Agent (the "Credit Agreement Primary Agent") to Payless and in exchange for a complete release of all claims by Payless against (a) the Credit Agreement Primary Agent, (b) the DIP Lenders, (c) the Term Loan B-1 Agent, (d) the Term Loan Lenders (all as defined in the *Third Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp.* [Docket No. 1495] (the "Third Amended Plan")) and (e) each of the foregoing Entities' (as defined in the Third Amended Plan) respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such, or any of their respective assets or properties relating in any way to (i) the Payless Claim, (ii) the Payless Inventory (as defined in the Final Financing Order), or (iii) the Third Amended and Restated Loan and Security Agreement, dated as of February 7, 2012 (as amended, restated, supplemented, or otherwise modified from time to time) (as the same has been ratified, amended, modified or supplemented prior to the date hereof, including by the Ratification and Amendment Agreement, dated as of January 16, 2019, the "Credit Agreement"), the Ratification and Amendment Agreement, dated as of January 16, 2019, by and among the Debtors and the DIP Lenders (as the same has been ratified, amended, modified or supplemented prior to the date

hereof) (the "DIP Credit Agreement"), and the other agreements, documents and instruments referred to therein or at any time executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Credit Agreement and DIP Credit Agreement, as the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced, being collectively referred to herein as the "Financing Agreements"), the ShopKo bankruptcy cases, the Third Amended Plan, the termination of the Financing Agreements, and any instruments or documents contemplated hereby or thereby.

This Settlement Agreement and Release is intended to bind the Parties' successors and assigns, specifically including, without limitation, any and all subsequently appointed bankruptcy trustees, receivers or fiduciaries of Payless and/or ShopKo of any kind.

4.      Representations and Acknowledgements.

The Parties agree, acknowledge, and represent that:

a.      the Parties have reviewed the terms and provisions of this Settlement Agreement and consent to be bound by such terms and that this Settlement Agreement is expressly subject to the approval of the Payless Court and the Shopko Court; and

b.      in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Shopko Court for a determination of their relative rights, in which event, no action may be taken by either Party until a ruling of the Shopko Court is obtained.

5.      Good-Faith Cooperation; Further Assurances.  The Parties shall cooperate with each other in good faith in respect of matters concerning the implementation and consummation of this Settlement Agreement.

6.      No Strict Construction.  This Settlement Agreement shall be deemed to have been jointly drafted by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

7.      Severability.  The invalidity or unenforceability of any provision of this Settlement Agreement will not affect the validity or enforceability of any other provision of this Settlement Agreement, which will otherwise remain in full force and effect.

8.      Entire Agreement; Amendment; Waiver.  This Settlement Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Settlement Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by each of the Parties and approved by the Shopko Court and Payless Court.  The terms and conditions hereof may not be waived except in a writing executed by each of the Parties.

9.      No Admission of Liability.  It is understood and agreed by the Parties that this Settlement Agreement represents a settlement and compromise of any and all claims in any way related to the Payless Claim by among and among each of the Parties, and neither this Settlement

Agreement itself, any of the payments or covenants described herein, nor anything else connected with this Settlement Agreement is to be construed as an admission of fault or liability.

10.    <u>Counterparts</u>.    This Settlement Agreement may be executed in separate counterparts, each of which will be deemed to be an original and all of which taken together will constitute one and the same agreement.  Signed signature pages may be transmitted by facsimile or e-mail, and any such signature shall have the same legal effect as an original.

11.    <u>Headings</u>.    The headings in this Settlement Agreement are for purposes of convenience only, and will not be deemed to amend, modify, expand, limit, or in any way affect the meaning of any of the provisions hereof.

12.    <u>Governing Law</u>.  All issues and questions concerning the construction, validity, enforcement, and interpretation of this Settlement Agreement will be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to any choice of law or conflict of law rules or provisions that would cause the application hereto of the laws of any jurisdiction other than the State of New York.

*[Signatures Follow Beginning Next Page]*

**PAYLESS SHOESOURCE, INC.,** and its affiliated
debtors and debtors-in-possession

Signature: _/s/ Adrian Frankum_

Printed Name:  Adrian Frankum

Title:  Restructuring Officer

Date:  10/2/19


**SHOPKO STORES OPERATING CO., LLC,** and
its affiliated debtors and debtors-in-possession

Signature: _/s/ Susan Buckna_

Printed Name:  Susan Buckna

Title:  Vice President, Assoc. General Counsel

Date:  10/2/19

5