**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064-TLS |
| Reorganized Debtors. | ) (Jointly Administered) |

**DEBTORS' MOTION
TO FURTHER EXTEND THEIR EXCLUSIVE PERIOD TO FILE
A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors" and "Reorganized Debtors")[2] respectfully state as follows in support of this motion (this "Motion"):

**Preliminary Statement**

1. The Debtors have completed substantially all their obligations under chapter 11 and are well-positioned to ultimately emerge from chapter 11. But, as this Court is aware, the Debtors' chapter 11 plan (the "Plan") is currently being appealed by McKesson Corporation ("McKesson"). In the unlikely event that McKesson's appellate efforts succeed and out of an abundance of caution,

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592). The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

[2] A detailed description of the Reorganized Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Russell L. Steinhorst, Chief Executive Officer of Specialty Retail Shops Holding Corp., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 4] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions under chapter 11.

KE 64518435

the Debtors seek to preserve their ability to chart an alternative path for an efficient and expeditious exit from chapter 11.

2. Accordingly, given that the Debtors' exclusive periods to file a plan and solicit acceptances expire on December 12, 2019, and February 10, 2020 respectively, and the typical length of the appellate process, it is imperative that the Debtors exclusive periods to file and solicit chapter 11 plans are extended to their statutory maximums.

3. Such relief is especially appropriate here where the Debtors have demonstrated their ability to build consensus around the Plan and have achieved numerous other milestones throughout these chapter 11 cases. Specifically, the progress that the Debtors have made since the Petition Date includes the following:

   a) ***Obtaining Critical Financial and Operational Relief***. The Debtors stabilized their business operations through various operational first- and second-day motions and orders. This allowed them to, among other things, continue to use cash collateral, pay employees, pay landlords, and continue to use their cash management system.

   b) ***Preserving the Debtors' Optical Business***. Following an extensive marketing process, the Debtors entered into an asset purchase agreement with Shoptikal LLC. On May 1, 2019, this Court approved the sale and it was ultimately consummated. This transaction preserved the Debtors' optical business as a going-concern and saved several jobs.

   c) ***Chapter 11 Plan and Disclosure Statement***. The Debtors made numerous changes to the Plan and accompanying disclosure statement since filing the initial versions on the Petition Date. The Court approved the Debtors' disclosure statement on March 1, 2019. Initially, the Plan faced significant resistance and over 80 objections were filed by various parties in interest. But, the Debtors worked with those parties and were able to build support for the Plan. Ultimately, McKesson was the only party that opposed the Plan. Overruling that opposition, the Court approved the Plan on June 11, 2019. As noted above, the Plan is currently the subject of an appeal by McKesson.

  d) ***Reconciling Administrative Claims.*** Over 100 parties filed applications for administrative expenses. The Debtors and their creditors have worked together in good faith to reconcile those claims. As a result of these efforts, substantially all of those claims have been consensually resolved.

  e) ***Schedules and Statements***. The Debtors submitted their schedules of assets and liabilities and statements of financial affairs on February 22, 2019, which required review and analysis of thousands of claims, assets, and contracts of each of the Debtors.

  f) ***Assisting the Stakeholders with Due Diligence Efforts***. The Debtors expended significant effort and time in assisting their lenders, the Committee, and their advisors with conducting due diligence, including providing documents and holding conference calls and in person meetings regarding the same.

  g) ***Managing Executory Contracts and Unexpired Leases***. Pursuant to the *Order (I) Authorizing and Approving the Rejection of Certain Unexpired leases, (II) Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket Entry 76], on the Petition Date, the Debtors rejected 18 unexpired leases, and have filed numerous notices rejecting additional unexpired leases and executory contracts.

  h) ***Claims Bar Date***. On February 14, 2019, the Court entered an order granting the Debtors' motion to establish certain bar dates. Approximately 2,500 claims have been filed to date, and the Debtors have been working to reconcile these claims as promptly as possible. *See* Docket Nos. 2029, 1876, 1863.

4. The Debtors have achieved this progress against the backdrop of these large, complex chapter 11 cases, a diverse set of stakeholders with competing interests, and hundreds of millions of dollars in funded indebtedness. The Debtors' efforts so far demonstrate that their continued efforts will ensure that the distributable value within their estates are maximized in an orderly manner through a chapter 11 plan process.

5. Accordingly, the Debtors meet the standard for extending the exclusivity periods and request that the Court enter an order granting the extensions.

## Relief Requested

6. The Debtors seek entry of an order (respectfully, the "Order"), (a) extending the period during which the Debtors have the exclusive right to file a chapter 11 plan to July 16, 2020 (the "Filing Exclusivity Period"), and to solicit votes thereon to September 16, 2020 (the "Solicitation Exclusivity Period," and, together with the Filing Exclusivity Period, the "Exclusivity Periods") and (b) granting related relief. The Debtors request permission to submit a proposed Order to this effect.

## Jurisdiction and Venue

7. The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The bases for the relief requested herein are section 1121 of the Bankruptcy Code, Bankruptcy Rule 9006(b)(1), and Rule 9013-1 of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

## Basis for Relief

10. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity for "cause," subject to certain limitations that are not applicable here. Although the Bankruptcy Code does not define "cause," under section 1121(d)(1) of the Bankruptcy Code, bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and

successful reorganization of a debtor's affairs. *See In re Tony Downs Foods Co.*, 34 B.R. 405, 406 (Bankr. D. Minn. 1983) (noting that the legislative intent of section 1121 was for the bankruptcy court to have discretion to determine whether "cause" has been shown, which should be viewed in the context of the Bankruptcy Code's goal of fostering reorganizations); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003) (noting that an extension of exclusivity is typically granted where there is "some promise of probable success [for reorganization]") (citation omitted).

11. Courts often use the following factors in determining whether "cause" exists to extend a debtor's exclusive plan filing period:

    a. the size and complexity of the case;

    b. the need for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

    c. whether the debtor has made progress in negotiations with its creditors;

    d. the existence of good faith progress toward reorganization;

    e. whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

    f. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    g. the fact that the debtor is paying its bills as they become due;

    h. the amount of time which has elapsed in the case; and/or

    i. whether an unresolved contingency exists.

*See, e.g.*, *In re Acceptance Ins. Companies, Inc.*, No. BK05-80059-TJM, 2008 WL 3992799, at *2 (Bankr. D. Neb. Aug. 20, 2008) (listing the nine factors relevant to whether "cause" exists to extend exclusivity periods and denying the debtor's extension request after having already received numerous extensions but still not having moved the case forward with respect to any outstanding matters); *see also Hoffinger Indus., Inc.*, 292 B.R. at 643–44 (listing the nine factors relevant to whether "cause" exists to extend exclusivity periods and finding that a five month

extension request prior to the exclusivity periods expiring should be granted); *In re Fansteel, Inc.*, No. 16-01823-ALS11, 2017 WL 782865, at *2–3 (Bankr. S.D. Iowa Feb. 28, 2017) (affirming that nine factors are used by courts in the Eighth Circuit to determine whether "cause" under section 1121(d)(1) has been shown).

12. Moreover, large, complex chapter 11 cases generally take substantial time to emerge from chapter 11. *See, e.g., In re TSAWD Holdings, Inc., et al. (f/k/a Sports Authority Holdings, Inc.)*, No. 16-10527 (MFW) (Bankr. D. Del. 2016) (660 days between petition date and emergence); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. 2012) (470 days between petition date and emergence); *In re The Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. 2010) (443 days between petition date and emergence); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. 2008) (721 days between petition date and emergence). Therefore, courts regularly grant a debtor's second request to extend the exclusive period to file a chapter 11 plan. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Adelphia* but relying on only four as relevant in determining whether there was "cause" to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (deciding that four factors showed that bondholders' committee failed to show cause to terminate debtors' exclusivity).

13. Here, sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods. As set forth below, each of the relevant factors weighs in favor of extending the Exclusivity Periods:

- *The Debtors' Chapter 11 Cases are Large and Complex.* As of several months ago, the Debtors operated over 360 stores in 25 states in various formats and as of the Petition Date, employed approximately 14,000 employees. During the fiscal year 2017, the Debtors generated revenues totaling approximately $2.6 billion from sales of clothing, accessories, electronics, and home furnishings, as well as company operated pharmacy and optical services departments. The

Debtors entered these cases with a unitranche credit facility with commitments of up to $408.5 million, subject to a borrowing base, that included two tranches of ABL lenders and two tranches of term loan lenders. Moreover, the Debtors have a wide variety of parties in interest, from landlords and trade vendors to local, state, and federal agencies—many of whom have been very active in these cases. Accordingly, these cases are incredibly complex, and, indeed, among the largest and most complex ever filed in this District

- *The Debtors Have Made Good-Faith Progress Toward Exiting Chapter 11.* As discussed above, the Debtors have successfully completed most of their obligations under chapter 11. In addition to satisfying the numerous administrative requirements of the Bankruptcy Code, the Debtors have monetized and maximized the value of their nonoperating assets, including their pharmacy and retail businesses and their owned real estate. The Debtors also preserved their optical business as a going concern. Finally, negotiating with their numerous credit constituencies, the Debtors obtained approval of the Plan. If the Plan were overturned, the Debtors have demonstrated that they have the ability to move these chapter 11 cases toward an efficient and expeditious exit.

- *An Extension of the Exclusivity Periods Will Not Prejudice Creditors.* Continued exclusivity will permit the Debtors to maintain flexibility so competing plans do not derail the Debtors' efforts to conclude these chapter 11 cases in the event that McKesson's appeal is successful. Moreover, the Debtors have had ongoing and transparent communications with their major creditor groups. An extension will prove to be beneficial for the Debtors' estates, their creditors, and all other parties in interest.

- *The Debtors Have Reasonable Prospects for Filing a Viable Plan.* The Debtors have already obtained approval the Plan and believe it is viable. To the extent that the Plan is overturned upon appeal, the Debtors have demonstrated their ability to coalesce a wide array of parties around their chapter 11 efforts. The Debtors' continued communications with their stakeholders will ensure the Debtors make substantial progress toward filing an alternate plan should that become necessary under the circumstances.

- *An Extension Will Not Pressure or Prejudice Creditors.* The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders. On the contrary, the Debtors seek to maintain exclusivity out of an abundance of caution so that they can retain all the progress that has been made in these chapter 11 cases in the unlikely event that McKesson's appeal is successful. Extending the Exclusivity Periods will benefit creditors by avoiding a drain on estate assets relating to the potential competing chapter 11 plans without any benefit associated with doing so. All stakeholders benefit from that continued stability and predictability that comes only with the Debtors being the sole plan proponent. Moreover, even if the Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later appearing before the Court to assert that cause supports termination of the

Debtors' exclusivity. Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will instead benefit the Debtors' estates, their creditors, and all other key parties in interest.

14. An objective analysis of the foregoing factors demonstrates that the Debtors are doing everything required under the Bankruptcy Code to facilitate a successful conclusion to these complex chapter 11 cases. Accordingly, the Debtors respectfully submit that sufficient cause exists to extend the Exclusivity Periods as provided herein. Courts in this district have granted similar relief. *See, e.g.*, *In re Vanity Shop of Grand Forks, Inc.*, Case No. 17-30112 (Bankr. D. N.D. Sept. 29, 2017) (granting a subsequent extension of the exclusive periods by an additional 60 days); *In re Peabody Energy Corporation*, Case No. 16-42529 (Bankr. E.D. MO. Nov. 30, 2016) (same for an additional 35 days); *In re Patriot Coal Corporation*, Case No. 12-515-2 (Bankr. E.D. MO. Apr. 26, 2013) (same for an additional 120 days).[3]

## Notice

15. The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the office of the U.S. Trustee for the District of Nebraska; (b) counsel to the Committee; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the proposed DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

8

**No Prior Request**

16. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  November 14, 2019  
  Omaha, Nebraska

/s/ *Lauren R. Goodman*  
James J. Niemeier (NE Bar No. 18838)  
Michael T. Eversden (NE Bar No. 21941)  
Lauren R. Goodman (NE Bar No. 24645)  
**MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**  
First National Tower, Suite 3700  
1601 Dodge Street  
Omaha, Nebraska 68102  
Telephone: (402) 341-3070  
Facsimile: (402) 341-0216  
Email: jniemeier@mcgrathnorth.com  
      meversden@mcgrathnorth.com  
      lgoodman@mcgrathnorth.com

- and -

James H.M. Sprayregen, P.C.  
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)  
Travis M. Bayer (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
300 North LaSalle  
Chicago, Illinois 60654  
Telephone: (312) 862-2000  
Facsimile: (312) 862-2200  
Email: james.sprayregen@kirkland.com  
      patrick.nash@kirkland.com  
      travis.bayer@kirkland.com

- and -

Steven Serajeddini (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022  
Telephone: (212) 446-4800  
Facsimile: (212) 446-4900  
Email: steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors*