## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| SPECIALTY RETAIL SHOPS HOLDING CORP., *et al.*,[1] | ) Case No. 19-80064-TLS |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

### DEBTORS' MOTION FOR ENTRY OF
### AN ORDER, PURSUANT TO SECTION 105(a) OF THE
### BANKRUPTCY CODE AND BANKRUPTCY RULE 9019,
### AUTHORIZING AND APPROVING SETTLEMENT AND RELEASE
### AGREEMENT WITH PEPSICO, INC. AND SUBSIDIARIES AND AFFILIATES

Specialty Retail Shops Holding Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.     The Debtors seek entry of an order, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Settlement and Release Agreement (the "Settlement Agreement"), attached hereto as **Exhibit A**, by and among PepsiCo., Inc. and its subsidiaries and affiliates, including Frito-Lay North America, Inc., Rolling Frito Lay Sales, LP, Quaker Sales & Distribution, Inc., and Bottling Group, LLC (collectively "Pepsi") and Debtors. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Specialty Retail Shops Holding Corp. (0029); Pamida Stores Operating Co., LLC (6157); Pamida Transportation, LLC (4219); Penn-Daniels, LLC (0040); Place's Associates' Expansion, LLC (7526); Retained R/E SPE, LLC (6679); Shopko Finance, LLC (1152); Shopko Gift Card Co., LLC (2161); ShopKo Holding Company, LLC (0171); ShopKo Institutional Care Services Co., LLC (7112); ShopKo Optical Manufacturing, LLC (6346); ShopKo Properties, LLC (0865); ShopKo Stores Operating Co., LLC (6109); SVS Trucking, LLC (0592).  The location of the Debtors' service address is: 700 Pilgrim Way, Green Bay, Wisconsin 54304.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Nebraska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the United States District Court for the District of Nebraska.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 9019, and Rule 9013-1.C of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

## Background

5.      The Debtors were engaged in the sale of general merchandise including clothing, accessories, electronics, and home furnishings, as well as company operated pharmacy and optical services departments.  The Debtors are headquartered in Green Bay, Wisconsin.

6.      On January 16, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 25].  No party has requested the appointment of a trustee or examiner in these chapter 11 cases.  On January 18, 2019, the United States Trustee for the District of Nebraska

(the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 95].

7.      Prior to the Petition Date, Pepsi supplied the Debtors with products pursuant to the contractual relationship between the parties.  Through the Debtors' post-petition reconciliation of their accounts with Pepsi, they discovered numerous credits for returns, discounts and deposits which amounted to approximately $570,000 (the "Credits").  Upon discovery, the Debtors notified Pepsi which asserted several defenses to the Credits.  Since that time, the Debtors and Pepsi have been negotiating a resolution.

## The Settlement Agreement

8.      To resolve all disputes regarding any rights and entitlement to the Credits and to otherwise settle outstanding claims, the Debtors and Pepsi have entered into the Settlement Agreement attached hereto as **Exhibit A**.  Through negotiations, Pepsi has agreed to pay the Debtors $270,000 (the "Settlement Amount") in exchange for a release of any and all claims the Debtors may have against Pepsi.  In addition to payment of the Settlement Amount, Pepsi has agreed to release any and all claims it may have against the Debtors.  The terms of the settlement are more fully set forth in the Settlement Agreement.

## Basis for Relief Requested

**I.      The Debtors Have a Valid Business Justification for the Settlement Agreement**

9.      Under section 363 of the Bankruptcy Code, a bankruptcy court is empowered to authorize a chapter 11 debtor to use property of the estate, with court approval, outside the ordinary course of business.  *See* 11 U.S.C. § 363.  In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for

the requested use.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1985); *see also In re Bridge Info. Sys., Inc.*, 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003).

10.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to disposing of an estate's assets.  *See, e.g., In re Trilogy Dev. Co., LLC*, 2010 Bankr. LEXIS 5636, at *3-4 (Bankr. W.D. Mo. 2010) (holding that section 363 of the Bankruptcy Code permits the debtor to sell their assets if a sound business purpose exists); *In re Channel One Commc'ns, Inc.*, 117 BR 493 (Bankr. E.D. Mo. 1990) (same); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification.") (internal citations omitted); *see also In re Farmland Indus., Inc.*, 294 B.R 855, 881 (Bankr. W.D. Mo. 2003) (holding that courts in this district are reluctant to interfere with corporate decisions unless "it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code").

11.     Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company.'"  *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *see also In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988) (holding that section 363(b) of the Bankruptcy Code is satisfied when using "sound business justifications" and, "absent a showing of bad faith, the debtors entered into the disposition of substantially all of their assets"); *In re Filene's Basement, LLC*, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue

was negotiated in good faith and is in the best interests of the estate . . . ") (citations omitted); *In re Integrated Res., Inc.*, 147 B.R. at 656 (explaining that the business judgment rule's presumption that corporate directors "acted on informed basis, in good faith and in the honest belief that action taken was in the best interests of the company"); *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a Debtor's management decisions.").

12.     Absent the settlement provided for herein, the Debtors would likely incur significant costs associated with filing an action against Pepsi to recover payment on account of the Credits.  Moreover, if Pepsi were to succeed with its defenses, the Debtors would likely recover substantially less than the Settlement Amount.  The Settlement Amount, furthermore, will improve the Debtors' liquidity to the benefit of all the Debtors' stakeholders.  Accordingly, the Debtors believe that the compromise memorialized in the Settlement Agreement represents a sound exercise of the Debtors' business judgment and should be approved.

**II.     The Settlement Agreement is Fair, Equitable, and in the Best Interests of the Estate.**

13.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement."  *See* Fed. R. Bankr. P. 9019(a).  "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy."  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  *See also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006) (same); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly."  *Rivercity v. Herpel*

*(In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (decided under the Bankruptcy Act).

14.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, equitable, and in the best interest of the estate.  *See, e.g., In re Carlson*, No. 04-41534 (TJM), 2008 WL 345606, at *1 (Bankr. D. Neb. Jan. 7, 2008) (citation omitted).   Ultimately, "the decision to approve a settlement under [Bankruptcy] Rule 9019 is within the discretion of the bankruptcy judge."  *In re Racing Servs., Inc.*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005). When determining whether a settlement is fair, equitable, and in the best interest of an estate, courts in Nebraska consider, among other factors, "the expense, inconvenience, and delay associated with [the dispute] and the paramount interest of the creditors and a proper deference to their reasonable views."   *In re Brodkey Bros., Inc.*, No. 13-80203 (TLS), 2013 WL 5636484, at *7 (Bankr. D. Neb. Oct. 15, 2013) (citing *Drexel Burnham Lambert, Inc., v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.)*, 730 F.2d 1128, 1135 (8th Cir. 1984) (quoting *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir.1929))); *ReGen Capital III, Inc. v. Official Comm. of Unsec. Creditors (In re Trism, Inc.)*, 282 B.R. 662, 667 (B.A.P. 8th Cir.2002)).  For example, courts in Nebraska have found that a settlement is in the best interests of the estate when it reduces attorneys' fees that would otherwise be incurred.  *See, e.g.*, *Carlson*, 2008 WL 345606, at *2.

15.     Importantly, it is well established that a proponent of a settlement need not convince the court that a settlement is the best possible compromise, but only that the settlement falls within the "range of reasonable compromises."  *Carlson*, 2008 WL 345606, at *2 (citing *PW Enter., Inc. v. Kaler (In re Racing Servs., Inc.)*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005)).

The Debtors believe that the settlement of the Credits with Pepsi is fair, equitable, in the best interests of the Debtors' estates, appropriate in the Debtors' business judgment, and easily falls within the range of reasonable outcomes.    As set forth above, the terms of the Settlement Agreement are the culmination of good faith negotiations and represent total and fair mitigation of litigation risk regarding Pepsi's defenses.  The Settlement Amount will  also help to assist the Debtors resolve the remaining issues in these chapter 11 cases.  Denying approval of the Settlement Agreement would not only force the Debtors to bear the risk of the possible difficulties of future collection of a to-be-determined future judgment, but would also deprive the Debtors of funds available to continue the wind-down of the estates for the benefit of all creditors.  By entering into the Settlement Agreement, the Debtors are able to mitigate litigation risk and avoid the cost of litigation, while still receiving the Settlement Payment.

16.    The Settlement Agreement allows the Debtors to avoid substantial costs and delays and to immediately recover the Settlement Amount.  In fact, while the Settlement Agreement contemplates a release by the Debtors of various potential actions, the Debtors do not believe that there is any value associated with the potential actions that will be released.  This is because under the Debtors' confirmed *Third Amended Joint Chapter 11 Plan of Specialty Retail Shops Holding Corp. and Its Debtor Affiliates* [Docket No. 1495], avoidance actions against vendors such as Pepsi have been released.  Even if there were value in any such potential actions, the Debtors' recovery may be offset by Pepsi's defenses to these actions.  The Settlement Agreement was negotiated in good faith and at arm's-length and represents a resolution on account of the Credits for the benefit of the Debtors' estates.  Accordingly, the Debtors respectfully request that the Court approve the Settlement Agreement as such action is a reasonable exercise of the Debtors' business judgment and will provide a material benefit to its estates.

**Notice**

17.     The Debtors have provided notice of this Motion to the following parties or their respective counsel:  (a) the office of the U.S. Trustee for the District of Nebraska; (b) counsel to the Committee; (c) the agents under the Debtors' prepetition asset-based facility; (d) the agents under the DIP Facility; (e) the agents under the Debtors' prepetition term loan facility; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Nebraska; (j) PepsiCo, Inc. and its affiliates; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

18.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting

the relief requested herein and such further relief as it deems just and proper.

Dated: January 17, 2020   /s/ *Lauren R. Goodman*
 Omaha, Nebraska   James J. Niemeier (NE Bar No. 18838)
         Michael T. Eversden (NE Bar No. 21941)
         Lauren R. Goodman (NE Bar No. 24645)
         **MCGRATH NORTH MULLIN & KRATZ, P.C. LLO**
         First National Tower, Suite 3700
         1601 Dodge Street
         Omaha, Nebraska 68102
         Telephone: (402) 341-3070
         Facsimile: (402) 341-0216
         Email:  jniemeier@mcgrathnorth.com
             meversden@mcgrathnorth.com
             lgoodman@mcgrathnorth.com

         - and -

         James H.M. Sprayregen, P.C.
         Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
         Travis M. Bayer (admitted *pro hac vice*)
         **KIRKLAND & ELLIS LLP**
         **KIRKLAND & ELLIS INTERNATIONAL LLP**
         300 North LaSalle
         Chicago, Illinois 60654
         Telephone: (312) 862-2000
         Facsimile: (312) 862-2200
         Email:  james.sprayregen@kirkland.com
             patrick.nash@kirkland.com
             travis.bayer@kirkland.com

         - and -

         Steven Serajeddini (admitted *pro hac vice*)
         **KIRKLAND & ELLIS LLP**
         **KIRKLAND & ELLIS INTERNATIONAL LLP**
         601 Lexington Avenue
         New York, New York 10022
         Telephone: (212) 446-4800
         Facsimile: (212) 446-4900
         Email:  steven.serajeddini@kirkland.com


         *Co-Counsel to the Debtors*

## **EXHIBIT A**

**Settlement Agreement**

## SETTLEMENT AND RELEASE AGREEMENT

Shopko Stores Operating Co., LLC and all of its subsidiaries and affiliates (the "Company"), on the one hand, and PepsiCo, Inc. and all of its subsidiaries and affiliates, including Frito-Lay North America, Inc., Rolling Frito-Lay Sales, LP, Quaker Sales & Distribution, Inc. and Bottling Group, LLC, operating together with its affiliates and subsidiaries as Pepsi Beverages Company (collectively "PepsiCo"), on the other hand, hereby enter into this settlement agreement (the "Settlement Agreement") dated as of the date in PepsiCo's signature block below.  The Company and PepsiCo shall collectively be referred to as the "Parties."

## Recitals

WHEREAS on January 16, 2019 (the "Petition Date") the Company and certain affiliated entities, including the Company (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Nebraska (the "Court").

WHEREAS prior to the Petition Date, PepsiCo and the Debtors conducted business together.

WHEREAS the Debtors and PepsiCo have reviewed and analyzed any and all of their business transactions and potential claims and causes of action.

WHEREAS in full and final satisfaction of any and all claims the Debtors or their estates may have against PepsiCo and any and all claims PepsiCo may have against the Debtors or their estates, the Debtors and PepsiCo agree that PepsiCo will pay the Debtors $270,000 (the "Settlement Payment").

## Agreement

**NOW, THEREFORE**, the Parties, intending to be legally bound hereby, in consideration for the mutual covenants and promises contained here, the sufficiency of which is hereby acknowledged, promise and agree:

1.    Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.    Payment. No later than thirty (30) days after approval of this Settlement Agreement by the Court, PepsiCo shall pay the Debtors the Settlement Payment.

3.    Mutual Release. For good and valuable consideration, including the Settlement Payment, on and after the date of the entry of the Court order approving this Settlement Agreement, the Parties hereby release, acquit, and discharge each other from any and all claims, causes of action and/or liability of any kind whatsoever, including, but not limited to, any claims relating to credits, rebates, advertising incentives, merchandise and/or trade funds and/or allowances, pricing adjustments, coupon and/or promotional funds and like items, whether known or unknown, whether fixed or contingent, whether liquidated or unliquidated, whether

1

disputed or undisputed, relating to the business relationship between PepsiCo and the Debtors or their estates, whether such claims arose prior to or on or after the Petition Date (the "Release"). The Parties agree that such Release is a full and final Release of any and all claims that they may have against each other, including but not limited to any claims, whether administrative, priority, or general unsecured, that PepsiCo may have against the Debtors or their estates. The Vendor/Landlords Release approved by the Court on or about August 21, 2019 shall be effective and provide a release to PepsiCo, among others, from any and all claims and causes of action that were or could have been asserted against PepsiCo under chapter 5 of the Bankruptcy Code.

This Settlement Agreement and Release is intended to bind the Company's successors and assigns, specifically including, without limitation, any and all subsequently appointed bankruptcy trustees, receivers or fiduciaries of the Company of any kind.

4.    Representations and Acknowledgments.

The Parties agree, acknowledge, and represent that:

a.    the Parties have reviewed the terms and provisions of this Settlement Agreement and consent to be bound by such terms and that this Settlement Agreement is expressly subject to the approval of the Court; and

b.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party until a ruling of the Court is obtained.

*[Signatures Follow Beginning Next Page]*

PEPSICO, INC.

Signature: _____

Printed Name: W. Conrad Ragen

Title: Credit Risk Manager

Date: 12/19/2019


FRITO-LAY NORTH AMERICA, INC.

Signature: _____

Printed Name: W. Conrad Ragen

Title: Credit Risk Manager

Date: 12/19/2019


ROLLING FRITO LAY SALES, LP

Signature: _____

Printed Name: W. Conrad Ragen

Title: Credit Risk Manager

Date: 12/19/2019


QUAKER SALES & DISTRIBUTION, INC.

Signature: _____

Printed Name: W. Conrad Ragen

Title: Credit Risk Manager

Date: 12/18/2019

3

**BOTTLING GROUP, LLC**

Signature: _W. Conrad Ragan (signature)_

Printed Name: _W. Conrad Ragan_

Title: _Credit Risk Manager_

Date: _12/19/2019_


**SPECIALTY RETAIL SHOPS HOLDING CORP.**

Signature:_____

Printed Name: _____

Title:_____

Date:_____


**PAMIDA STORES OPERATING CO., LLC**

Signature:_____

Printed Name: _____

Title:_____

Date:_____


**PAMIDA TRANSPORTATION, LLC**

Signature:_____

Printed Name: _____

Title:_____

Date:_____


**PENN-DANIELS, LLC**

Signature:_____

**BOTTLING GROUP, LLC**

Signature:_____

Printed Name:_____

Title:_____

Date:_____


**SPECIALTY RETAIL SHOPS HOLDING CORP.**

Signature:_____

Printed Name:___Susan A Buckne___

Title:___Secretary___

Date:___12/23/19___


**PAMIDA STORES OPERATING CO., LLC**

Signature:_____

Printed Name:___Susan A. Buckne___

Title:___Secretary___

Date:___12/23/19___


**PAMIDA TRANSPORTATION, LLC**

Signature:_____

Printed Name:___Susan A Buckne___

Title:___Secretary___

Date:___12/23/19___

4

**PENN-DANIELS, LLC**

Signature: _____

Printed Name: Susan A Bucken

Title: Secretary

Date: 12/23/19

**PLACE'S ASSOCIATES' EXPANSION, LLC**

Signature: _____

Printed Name: Susan A Bucken

Title: Secretary

Date: 12/23/19

**RETAINED R/E SPE, LLC**

Signature: _____

Printed Name: Susan A Bucken

Title: Secretary

Date: 12/23/19

**SHOPKO FINANCE, LLC**

Signature: _____

Printed Name: Susan A Bucken

Title: Secretary

Date: 12/23/19

**SHOPKO GIFT CARD CO., LLC**

Signature: _____

Printed Name: _____Susan A Bucene_____

Title: _____Secretary_____

Date: _____12/23/19_____


**SHOPKO HOLDING COMPANY, LLC**

Signature: _____

Printed Name: _____Susan A Bucen_____

Title: _____Secretary_____

Date: _____12/23/19_____


**SHOPKO INSTITUTIONAL CARE SERVICES CO., LLC**

Signature: _____

Printed Name: _____Susan A Bucen_____

Title: _____Secretary_____

Date: _____12/23/19_____


**SHOPKO OPTICAL MANUFACTURING, LLC**

Signature: _____

Printed Name: _____Susan A Bucen_____

Title: _____Secretary_____

Date: _____12/23/19_____

**SHOPKO PROPERTIES, LLC**

Signature: _____

Printed Name: _____Susan A Sucker___

Title: _____Secretary___

Date: _____12/23/16___


**SHOPKO STORES OPERATING CO., LLC**

Signature: _____

Printed Name: _____Susan A Sucker___

Title: _____Secretary___

Date: _____12/23/14___


**SVS TRUCKING, LLC**

Signature: _____

Printed Name: _____Susan A Sucker___

Title: _____Secretary___

Date: _____12/23/13___